UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated Bank") respectfully submits this memorandum of law in support of its motion for appointment as lead plaintiff and approval of its selection of Robbins Geller Rudman & Dowd LLP as lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I. INTRODUCTION

The above-captioned putative class action is brought on behalf of purchasers or acquirers of Corrections Corporation of America ("CCA" or the "Company") securities between February 27, 2012 through August 17, 2016 (the "Class Period") against the Company and three of its senior executive officers for alleged violations of the Securities and Exchange Act of 1934 (the "1934 Act"). The PSLRA provides that within 90 days after publication of the notice, the Court "shall consider any motion made by a purported class member" and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

Here, Amalgamated Bank should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, Amalgamated Bank's selection of Robbins Geller as lead counsel and Barrett Johnston as local counsel should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II. STATEMENT OF FACTS

CCA is a real estate investment trust ("REIT") based in Nashville. The Company owns, operates and manages prisons and other correctional facilities for governmental agencies. Federal authorities primarily consist of the Federal Bureau of Prisons ("BOP"), the U.S. Marshals Service ("USMS") and U.S. Immigration and Customs Enforcement ("ICE"). Payments by federal authorities represented 51% of CCA's total revenue for the years ending 2013-2015, with another 40.5% of its total revenues being derived from its state government contracts. Payments by just the BOP represented over 10% of CCA's total revenue for the years ending in 2013-2015.

The main selling point for CCA is that it saves taxpayer dollars by "offering a compelling value": providing equal or better correctional services (housing, food, health and educational opportunities – as well as lower recidivism rates) than a governmental counterpart at a substantially lower price. Unfortunately for investors, CCA systematically misled shareholders about the Company's primary business strategy and long-term growth opportunities by making false statements that misled investors into believing the premise that CCA received government contracts based on a purported competitive advantage over the relevant government counterparty's ability to build and operate a prison, *i.e.*, CCA's ability to provide equal or better correctional services at a lower price.

Instead, CCA was focused on finding ways to cheat by, among other things: (1) falsifying incidents of violence in its prisons; (2) manipulating audits by the American Correctional Association ("ACA") to achieve a 99% compliance rate that was undeserved; (3) concealing and covering up reports of local governments canceling contracts with CCA due to the Company's inability to provide the requisite competitive advantage; and (4) engaging in a lobbying and media campaign aimed at deceiving the government and its shareholders about the true nature and costs of its public prisons and concealing the Company's inability to fairly compete with the government. Defendants' false statements and fraudulent scheme concealed the underlying risk of the fraud – that once discovered, the inefficiency and poor quality of CCA's prisons would be exposed and governments would no longer have that key incentive to contract with them. In addition, while CCA's stock was artificially inflated during the Class Period, 10 directors and 8 senior officers cashed in over $64 million worth of their own CCA shares.

On August 11, 2016, the U.S. Department of Justice ("DOJ") Office of the Inspector General issued a report entitled "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" (the "Review"), which noted that in "recent years, disturbances in several federal contract prisons resulted in extensive property damage, bodily injury, and the death of a Correctional Officer" and, after a comprehensive examination, concluded that "***in most key areas, contract prisons [including CCA] incurred more safety and security incidents per capita than comparable BOP institutions***."

The Review found that contract prisons (including CCA) "had more frequent incidents of contraband finds, assaults, uses of force, lockdowns, guilty findings on inmate discipline charges, and selected categories of grievances" and was unable to conclude that contract prisons offered any cost savings compared to BOP institutions. Among the contract prisons examined in the Review, the Inspector General further concluded that ***CCA specifically had the highest frequency of reports of: (a) assaults by inmates on inmates; (b) sexual assaults by inmates on staff; (c) fights; and (d) suicide attempts and self-mutilation***. ***CCA facilities also had over ten times as many safety and security grievances as other contract prison operators***. In addition, a single CCA facility in Adams County, Mississippi had over twice as many cell phone confiscations during the review period as all 14 BOP institutions combined. CCA was provided with a copy of the Review before its publication and did not dispute any of the data contained therein.

On August 18, 2016, Deputy Attorney General Sally Q. Yates released a memorandum addressed to the director of the BOP, directing that the BOP would be "reducing – and ultimately ending – [its] use of privately operated prisons" by either "declin[ing] to renew that contract or substantially reduce its scope in a manner consistent with law." The rationale for this decision was explained as follows:

> Private prisons served an important role during a difficult period, but time has shown that they compare poorly to our own Bureau facilities. ***They simply do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, they do not maintain the same level of safety and security***. The rehabilitative services that the Bureau provides, such as educational programs and job training, have proved difficult to replicate and outsource - and these services are essential to reducing recidivism and improving public safety.

On this news, CCA's share price fell nearly 40%, to close at $17.57 on August 18, 2016, on volume of almost 40 million shares. The next day, on August 19, 2016, CCA responded to the DOJ's announcement by emphasizing to shareholders that the BOP contracts only account for 7% of CCA's business. Nevertheless, CCA's stock price was unable to rebound to any significant extent. This stock price decline caused hundreds of millions of dollars in losses to CCA investors who relied on the accuracy of defendants' statements and suffered damages when the truth began to be revealed.

- 3 -

1199133_1
Case 3:16-cv-02267   Document 39   Filed 10/24/16   Page 4 of 12 PageID #: 413

## III. ARGUMENT

### A. Amalgamated Bank Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*, 2010 U.S. Dist. LEXIS 42915, at *8-*9 (M.D. Tenn. Apr. 30, 2010) (Haynes, Jr., J.). Amalgamated Bank meets these requirements and should be appointed as Lead Plaintiff.

#### 1. Amalgamated Bank Timely Moved for Appointment

The notice published in connection with the filing of the complaint in this case on August 23, 2016, advised class members of the pendency of the action, the claims asserted, the relevant time period and the right to move the Court for appointment as lead plaintiff within 60 days, or by October 24, 2016. *See* Ex. A to the Declaration of Christopher M. Wood in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Wood Decl."), filed concurrently herewith; 15 U.S.C. §78u-4(a)(3)(A). Because this Motion is being timely filed by the statutory deadline, Amalgamated Bank is entitled to be considered for appointment as lead plaintiff.

- 4 -

### 2. Amalgamated Bank Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its PSLRA Certification, Amalgamated Bank purchased or acquired almost 159,000 shares of CCA stock and suffered over $1.2 million in losses as a result of defendants' alleged misconduct. *See* Wood Decl., Exs. B, C.[1] To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.[2] Therefore, Amalgamated Bank satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Amalgamated Bank Otherwise Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff stage, the Rule 23 considerations are generally limited to the questions of typicality and adequacy. *See Garden City Emps. Ret. Sys*, 2010 U.S. Dist. LEXIS 42915, at *8 (discussing the typicality and adequacy requirements at the lead plaintiff stage).

"In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 44445, at *99-*100 (M.D. Tenn. Mar. 29, 2012) (Haynes, Jr., J.) (certifying securities class action) (citation omitted). Here, if appointed, Amalgamated Bank intends to allege that defendants violated the federal securities laws by disseminating false and misleading statements and omissions and that Amalgamated Bank purchased CCA stock at prices artificially inflated by defendants' misrepresentations and omissions, like all of

---

[1] Amalgamated Bank's loss is $1.2 million calculated pursuant to the FIFO (first-in, first-out) accounting method or more than $913,000 calculated pursuant to the LIFO (last-in, last-out) accounting method. *See generally Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*, 2011 U.S. Dist. LEXIS 149899, at *12-*13 (M.D. Tenn. Nov. 28, 2011) (Knowles, Mag.). In addition, Amalgamated Bank held 77,196 shares as of August 17, 2016 and suffered $1.1 million in harm as a result of the disclosures of defendants' wrongdoing thereafter. *See* Wood Decl., Ex. C.

[2] Based on Nikki Bollinger Grae's certification attached to her complaint, her loss is approximately $5,400. *See* Dkt. No. 1 at 39.

the other class members.  Therefore, the Court should find its claims are typical to the claims of the other class members.

"Inquiry into the adequacy elements requires the Court to consider whether '"(1) the representative[s] . . . have common interests with unnamed members of the class, and (2) it [] appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel."'" *Id*. at *101 (citations omitted).  Amalgamated Bank is trustee to the LongView Funds, which collectively manage about $13 billion in assets for institutional investors, primarily employee benefit funds.  For over two decades, Amalgamated Bank's LongView Funds have pursued a vigorous program of shareholder engagement, promoting the highest standards of environmental, social and corporate governance practices at the companies in which it invests. Amalgamated Bank has prior experience serving as lead plaintiff and overseeing counsel in securities class actions.  *See* Wood Decl., Ex. B.  In fact, Amalgamated Bank has successfully recovered hundreds of millions of dollars for defrauded investors and was the institutional investor that took vigorous action against Enron to preserve evidence in the case arising out of the massive accounting fraud, which case ultimately yielded $7.2 billion for investors.  As such, Amalgamated Bank is not aware of any potential conflicts of interest or any matters that would preclude it from fulfilling its duties as lead plaintiff.  Additionally, as explained below, Amalgamated Bank has hired experienced counsel, further evidencing its willingness to fairly and competently represent the interests of the class.

Because Amalgamated Bank filed a timely motion, has a large financial interest in the relief sought by the class and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

### B. The Court Should Approve Amalgamated Bank's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  Amalgamated Bank selected Robbins Geller as lead counsel and Barrett Johnston as local counsel.

Robbins Geller, a 200-lawyer firm with offices in this District, regularly practices complex securities litigation within the Sixth Circuit and this District.  *See* Wood Decl., Ex. D.  District courts throughout the country, including the Judges of this District, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.  *See, e.g.*, *Burges v. BancorpSouth, Inc.*, 2016 U.S. Dist. LEXIS 56802 (M.D. Tenn. Apr. 28, 2016) (Campbell, J.) (certifying class and appointing Robbins Geller as class counsel); *Garden City Emps. Ret. Sys.*, 2010 U.S. Dist. LEXIS 42915, at *13 (finding Robbins Geller lawyers to be "well qualified and experienced to represent the class"). Notably, the team of Robbins Geller and Barrett Johnston is responsible for obtaining each of the three largest securities fraud class action recoveries ever obtained in this District.  *See, e.g., Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016) (Sharp, J.) (in granting final approval to $215 million recovery, the largest securities class action recovery ever in Tennessee, Judge Sharp stated that lawyers with Robbins Geller and Barrett Johnston "were gladiators" and "[l]ooking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this").  Robbins Geller attorneys have also obtained the largest securities fraud class action recovery in the Sixth Circuit as well as the Fifth, Seventh, Eighth, Tenth and Eleventh Circuits.[3]

The members of the class will receive the highest caliber of legal representation available from Robbins Geller and Barrett Johnston.  Accordingly, Amalgamated Bank's selection of counsel should be approved.

---

[3]  *See In re Enron Corp. Sec.*, No. H-01-3624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-00575 (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the 6th Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the 7th Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691 (D. Minn.) ($925 million recovery is the largest securities class action recovery in the 8th Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.) ($445 million recovery is the largest securities class action recovery in the 10th Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the 11th Circuit).

## IV. CONCLUSION

Amalgamated Bank has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, Amalgamated Bank respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED: October 24, 2016

Respectfully submitted,

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193

             s/ Jerry E. Martin
            JERRY E. MARTIN

Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 24, 2016.

    s/ JERRY E. MARTIN
    JERRY E. MARTIN

    BARRETT JOHNSTON MARTIN
        & GARRISON, LLC
    Bank of America Plaza
    414 Union Street, Suite 900
    Nashville, TN  37219
    Telephone:  615/244-2202
    615/252-3798 (fax)

    E-mail: jmartin@barrettjohnston.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **James A. Holifield , Jr**
  aholifield@hapc-law.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Nathan M. Saper**
  nathan.saper@lw.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)