

In re: UNUMPROVIDENT CORP. SECURITIES LITIGATION

Lead Case No. 1:03-CV-049 CLASS ACTION, MDL Case No. 1:03-md-1552

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

*2003 U.S. Dist. LEXIS 24633*

**November 6, 2003, Filed**

**SUBSEQUENT HISTORY:**   [*1]
Motion denied by *In re Unum Provident Corp. Secs. Litig., 2003 U.S. Dist. LEXIS 24412 (E.D. Tenn., Dec. 29, 2003)*
Related proceeding at *Weiller v. New York Life Ins. Co., 2005 N.Y. Misc. LEXIS 473 (N.Y. Sup. Ct., Mar. 16, 2005)*

**PRIOR HISTORY:** *In re UnumProvident Corp. Secs., Derivitive, & "ERISA" Litig., 280 F. Supp. 2d 1377, 2003 U.S. Dist. LEXIS 15363 (J.P.M.L., 2003)*

**DISPOSITION:**     Intervenor Plaintiff Glickenhaus & Co.'s motion to be appointed lead Plaintiff granted and Intervenor Plaintiffs Teachers' Retirement System of Louisiana and Louisiana School Employees' Retirement System's joint motion to be named co-lead Plaintiffs denied.

**COUNSEL:** For FRANK W KNISLEY, On Behalf of Himself and Others Similarly Situated, plaintiff: George E Barrett, Douglas S Johnston, Jr, Barrett, Johnston & Parsley, Nashville, TN.

For FRANK W KNISLEY, On Behalf of Himself and Others Similarly Situated, plaintiff: Buckley P Hollister, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, CA.

For TEACHERS' RETIREMENT SYSTEM OF LOUISIANA, THE, LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM, plaintiffs: Paul K Bramlett, Nashville, TN.

For TEACHERS' RETIREMENT SYSTEM OF [*2] LOUISIANA, THE, LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM, plaintiffs: Roger J LeBlanc, LeBlanc & Waddell, Baton Rouge, LA.

For TEACHERS' RETIREMENT SYSTEM OF LOUISIANA, THE, LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM, plaintiffs: Bryan A Wood, Julie A Richmond, Kathleen M Donovan-Maher, Jeffrey C Block, Berman, Devalerio, Pease, Tabacco, Burt & Pucillo, Boston, MA.

For TEACHERS' RETIREMENT SYSTEM OF LOUISIANA, THE, LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM, plaintiffs: Javier Bleichmar, Douglas M McKeige, Eitan Misulovin, Bernstein, Litowitz, Berger & Grossman, LLP, New York, NY.

For GLICKENHAUS AND CO, plaintiff: J William Pope, Jr, Ward Crutchfield & Associates, Chattanooga, TN.

For GLICKENHAUS AND CO, plaintiff: Ramzi Abadou, Andrew J Brown, Edward P Dietrich, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA.

For UNUM PROVIDENT CORPORATION, ROBERT C GREVING, defendants: John P Konvalinka, Susan

Kerr Lee, Grant, Konvalinka & Harrison, PC, Chattanooga, TN.

For J HAROLD CHANDLER, defendant: William H Horton, Michael A Anderson, Horton, Maddox & Anderson, PLLC, Chattanooga, TN.

**JUDGES:** CURTIS L. COLLIER, UNITED STATES DISTRICT JUDGE. **[*3]**

**OPINION BY:** CURTIS L. COLLIER

**OPINION**

**MEMORANDUM**

Before the Court are various motions to be named lead plaintiff in this consolidated action seeking class certification and alleging securities fraud on the part of UnumProvident Corp. ("UnumProvident") and certain of its corporate officers and directors ("Defendants"). Intervenor Plaintiffs Teachers' Retirement System of Louisiana ("TRSL") and the Louisiana School Employees' Retirement System ("LSERS") (collectively, "Louisiana Funds") filed a joint motion to be named co-lead plaintiffs (Court File No. 10). Intervenor Plaintiff Glickenhaus & Co. ("Glickenhaus") filed a competing motion to be named lead plaintiff (Court File No. 18). Upon consideration of the competing partes' motions, memoranda of law in support thereof(Court File Nos. 11, 19), various supplements thereto (Court File Nos. 21, 26, 60, 66, 67), and replies and/or statements of opposition (Court File Nos. 22, 39, 48, 51, 58, 69), the Court will **GRANT** Glickenhaus' motion and **DENY** the Louisiana Funds' motion for the reasons set forth herein.

**I. STANDARD OF REVIEW**

**[*4]** The designation of a lead plaintiff in class action securities litigation is governed by the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *15 U.S.C. § 78u-4, 5.* The PSLRA provides courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members." *15 U.S.C. § 78u-4(a)(3)(B)(i).* The PSLRA creates a rebuttable presumption the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); [1]

(bb) in the determination of the court, has the largest financial interest in the relief sought by file class; and

(cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.* [2]

*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).*

[1] The PSLRA requires a plaintiff filing a new putative class action provide notice to the class within 20 days in a "widely circulated national business-oriented publication or wire service." *15 U.S.C. § 78u-4(a)(3)(A)(i).* Once notice has been published, "any member of the purported class may move the court to serve as lead plaintiff for the purported class. *15 U.S.C. § 78u-4(a)(3)(A)(i)(II).*

**[*5]**

[2] *Rule 23(a)* establishes the following prerequisites to a class action: (1) numerosity, (2)common questions of law or fact, (3) typicality of claims or defenses, and (4) fair and adequate representation of the class by the representative parties. *Fed. R. Civ. P. 23(a).* Of primary concern in the determination of lead plaintiff are the third and fourth prerequisites. *In re Telxon Corp. Secs. Litig., 67 F. Supp. 2d 803, 807 n. 10 (N.D. Ohio 1999).*

Once established, the presumption may only be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).* To become the presumptive lead plaintiff, a movant need only make a *prima facie* showing he satisfies the typicality and adequacy requirements of *Rule 23.* **[*6]** *In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001).* To rebut the presumption, however, a competing movant must submit proof the presumptive lead plaintiff does not meet those requirements. *Id. at 263-64.* Thus, "once the presumption is triggered, the question *is not* whether another movant might do a better

job of protecting the interests of the class than the presumptive lead plaintiff; instead the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *Id. at 268* (quoting *Fed. R. Civ. P. 23(a)* ) (emphasis in original). In other words, the inquiry is in no way a relative one.

The PSLRA also erects a competing presumption against the appointment as lead plaintiff of anyone who has served as lead plaintiff in five or more securities class actions during any three year period. *15 U.S.C. § 78u-4(a)(3)(B)(vi)*. Specifically, the "professional plaintiff rule" provides:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary **[*7]** of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

*Id.*

## II. RELEVANT FACTS

UnumProvident, a Delaware corporation with its principal place of business in Chattanooga, Tennessee, is the parent company of a number of insurance companies operating throughout the United States and abroad. Through its subsidiaries, the company provides a wide range of group and individual insurance products including disability insurance, life insurance, long-term care insurance, and payroll-deducted voluntary benefits plans offered by employers to their employees.

On February 12, 2003, Plaintiff Frank W. Knisley ("Knisley") filed a securities fraud lawsuit against UnumProvident; J. Harold Chandler, chairman of UnumProvident's board of directors and the company's president and chief executive officer; and Robert C. Greving, chief financial officer and a UnumProvident director (collectively "Defendants") (Court File No. 1, Case No. 1:03-CV-49). Specifically, Knisley alleged Defendants violated *sections 10(b)and 20(a) of the Securities Exchange Act of 1934* **[*8]** and *Rule 10b-5* promulgated thereunder (*Id.* PP 39-48). Knisley also sought class status on behalf of all those who had

purchased publicly traded UnumProvident securities between May 7, 2001, and February 4, 2003 ("Class Period") (*Id.* P 1).

In accordance with the PSLRA, Knisley published notice of the initiation of his class action and, in response, four intervening parties filed motions seeking appointment as lead plaintiff: Johnson Asset Management (Court File No. 7), the Louisiana Funds (Court File No. 10), J.A. Glynn & Co. (Court File No. 13), and Glickenhaus (Court File No. 18). Each movant alleged it had sustained the greatest loss in connection with purchases of UnumProvident securities during the class period and was otherwise suitable and adequate to serve as lead plaintiff. Specifically, the Louisiana Funds alleged they had lost $ 4,189,422.55 ($ 3,097,211.11 by TRSL and $ 1,092,211.44 by LSERS) (Court File No. 21 P 4) and Glickenhaus alleged it sustained $ 1,532,698.10 in losses (Court File 19, Exh. G) during the Class Period. Johnson Asset Management and J.A. Glynn & Co. both ultimately withdrew their motions (Court File Nos. 24, 27).

TRSL is a public **[*9]** pension fund founded in 1936 to provide retirement benefits to Louisiana public school teachers, principles, and food service workers and their beneficiaries (Court File No. 11). LSERS is a separate public pension fund organized for the benefit of current and retired public school employees in Louisiana (*Id.*). Collectively, the Louisiana Funds manage assets of approximately $ 12.1 billion (*Id.*). Glickenhaus is an institutional investment firm which manages approximately $ 688 million of assets for its clients (Court File No. 22, p. 6). According to the parties' declarations and to the best of the Court's knowledge, the Louisiana Funds have served as lead plaintiff in thirteen securities fraud class actions in the past three years (ten by TRSL and three by LSERS) and Glickenhaus has served as lead plaintiff in four such cases (Court File Nos. 12, Exh. B; 20, Exh. A).

On May 21, 2003, the Knisley case was consolidated with four other putative class action securities fraud lawsuits filed in this Court (Court File No. 50). [3] Defendants additionally filed a Motion for Transfer and Coordination or Consolidation with the Judicial Panel on Multidistrict Litigation ("MDL Panel") seeking **[*10]** to consolidate a number of actions pending against UnumProvident and its officers and directors in this jurisdiction and others. [4] Defendants provided Plaintiffs

with notice of this motion on May 16, 2003 (Court File No. 49). On September 2, 2003, the MDL Panel granted Defendants' motion and consolidated Plaintiffs' cases with twelve other lawsuits filed in various district courts around the country and transferred those actions to this Court for coordinated pretrial proceedings. *See In re UnumProvident Corp. Secs., Derivitive, & "ERISA" Litig., 280 F. Supp. 2d 1377, 2003 WL 22076554 (Jud. Pan. Mult. Lit. Sept. 2, 2003).* On October 6, 2003, five additional cases were transferred to this Court as "tag-along" cases. *See* "Conditional Transfer Order (CTO-1)," *In re UnumProvident Corp. Sec., Derivative, & "ERISA" Litig.*, MDL No. 1552 (Jud. Pan. Mult. Lit. Oct. 6, 2003).

> 3   The consolidated cases were: *Knisley v. UnumProvident Corp., et al.*, No. 1:03-CV-49; *Rasner v. UnumProvident Corp., et al.*, No. 1:03-CV-54; *Elias v. UnumProvident Corp., et al.*, No. 1:03-CV-81; *Stolz v. UnumProvident Corp., et al.*, No. 1:03-CV-84; and *Miller v. UnumProvident Corp., et al.*, No. 1:03-CV-119. The consolidated action was renamed *In re UnumProvident Corp. Securities Litigation* (Court File No. 50).

**[*11]**

> 4   The various actions submitted to the MDL Panel for pretrial consolidation included securities fraud class actions, shareholder derivative suits for violations of state law fiduciary duties, and actions for breaches of fiduciary duties under the Employee Retirement Security Income Act of 1974 ("ERISA"), *29 U.S.C. §§ 1001-1461.*

## III. DISCUSSION

The arguments presented by the Louisiana Funds and Glickenhaus in support of their competing motions touch upon a number issues of law under the PSLRA. The Louisiana Funds contend they should be appointed co-lead plaintiffs because they have the largest financial interest and because, as an investment manager, Glickenhaus has suffered no loss and, therefore, lacks standing to serve as lead plaintiff and, in any event, has not made a sufficient showing of adequacy under *Rule 23* (*see* Court File No. 26). Glickenhaus does not dispute the Louisiana Funds have a larger financial interest, but argues the professional plaintiff rule bars the Louisiana Funds from serving as lead plaintiff, defects in the Louisiana Funds' **[*12]** pleadings should disqualify

them from consideration, and through their filings in this case the Louisiana Funds have already demonstrated their own inadequacy and inability to effectively monitor their attorneys (*see* Court File Nos. 22, 58).

Since it is undisputed the Louisiana Funds have the greater financial interest, the Court will proceed from the assumption the Louisiana Funds are entitled to the presumption afforded under *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. Thus, the first question is whether the Louisiana Funds are qualified to be considered for the presumption. If they are, the Court must then consider whether Glickenhaus has proven the Louisiana Funds do not meet the typicality and adequacy requirements of *Rule 23*. If, on the other hand, the Court concludes the Louisiana Funds should not be lead plaintiff, the Court must then determine whether Glickenhaus is eligible to serve as lead plaintiff and, if so, whether the Louisiana Funds have offered proof to rebut the presumption.

### A. The Professional Plaintiff Rule & Institutional Investors

Glickenhaus argues the professional plaintiff rule, *15 U.S.C. § 78u-4(a)(3)(B)(vi)* **[*13]** , bars the Louisiana Funds from being considered for lead plaintiff in this case as TRSL and LSERS have collectively served as lead plaintiff in thirteen securities class actions in the last five years. In response, the Louisiana Funds contend the professional plaintiff rule should not be interpreted to apply to institutional investors such as themselves.

The PSLRA expressly prohibits a person from being a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in more than five (5) securities class actions during any three year period, "except as the court may otherwise permit consistent with the purposes of this section." *15 U.S.C. § 78u-4(a)(3)(B)(vi)*. On its face, the statute appears to bar a group such as the Louisiana Funds, who have served as lead plaintiff in thirteen such cases in the past three years, [5] from being appointed lead plaintiff in this case. Glickenhaus argues precisely this, citing to principles of statutory interpretation and contending the Court's analysis should be confined to the clear and unambiguous words in the text. [6] Glickenhaus goes on to argue because the text of the statute includes words that apply exclusively **[*14]** to institutions (*i.e.*, officer, director, or fiduciary), it should be read to expressly contemplate the imposition of the professional plaintiff rule to institutional investors (Court File No. 22, p. 3).

5 The Court notes LSERS, one of the two public pension funds comprising the group referred to as the Louisiana Funds, has only served as lead plaintiff in three securities class actions in the past five years. However, the Court will not consider the eligibility of LSERS as an individual entity because its claimed financial interest (roughly $ 1.1 million) is smaller than that claimed by Glickenhaus (more than $ 1.5 million), thus preventing LSERS from obtaining the benefit of the presumption in any event.

6 In support of its position, Glickenhaus cites to the writings of both Justice Scalia and Lawrence Tribe as well as the opinion of this Court in *In re Stockburger, 192 B.R. 908, 910 (E.D. Tenn. 1996)* (Collier, J.) ("'courts must presume that a legislature says in a statute what it means and means in a statute what it says there'") (quoting *Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992))* (*see* Court File No. 22, pp. 1-4).

[*15] The Louisiana Funds argue the legislative history of the PSLRA clearly establishes Congress' intent that courts allow institutional investors to exceed the five-in-three limit. The Louisiana Funds contend the professional plaintiff rule was primarily designed to prevent individuals with nominal losses from repeatedly filing massive securities class actions where the plaintiff's attorneys, rather than the individual plaintiff, were the primary driving force behind and beneficiaries of the lawsuits. Consistent with this purpose, the Louisiana Funds argue, Congress "intended for institutional investors to exceed the so-called five-in-three rule" (Court File No. 26, p. 9). Therefore. the Louisiana Funds contend the Court should exercise the discretion accorded it by the PSLRA consistent with the purposes underlying that statute (Court File No. 26, p. 10 (quoting *Hall v. Hall, 738 F.2d 718, 720 (6th Cir. 1984))* and exempt them from the five-in-three bar.

To be sure, the statute itself provides no explicit blanket exception from the professional plaintiff rule for institutional investors. Rather, courts are merely allowed to exercise their discretion to make exceptions [*16] in certain instances when consistent with the underlying purposes of the PSLRA.

Without intending to place undue weight on the legislative history, it is instructive to engage in a short review of that history. The legislative history of the PSLRA does demonstrate a strong congressional preference institutional investors serve as lead plaintiffs in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (stating the Conference Committee "seeks to increase the likelihood that institutional investors will serve as lead plaintiffs," believing this "will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (stating "the Committee [on Banking, Housing, and Urban Affairs] intends to increase the likelihood that institutional investors will serve as lead plaintiffs"). The House Conference Report goes on to state:

> The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiffs by limiting a person from serving in that capacity more than [*17] five times in three years. Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years.

*Id.* at 35. The reasoning behind Congress' preference for institutional investors was based on an understanding of institutional investors and other large shareholders as better able to advance the interests of the class as a whole and effectively monitor the plaintiffs' attorneys. *See, e.g.,* S. Rep. No. 104-98, at 6 (stating PSLRA "is intended to empower investors so that they, not their lawyers, control securities litigation").

Generally, courts have declined to carve out a blanket exception to the professional plaintiff rule for institutional investors. *See Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999)* (holding PSLRA creates a rebuttable presumption the same plaintiff should not direct more than five securities class [*18] actions in three years which institutional investor may overcome upon a showing of certain circumstances); *In re Telxon Corp. Secs. Litig., 67 F.*

*Supp. 2d 803, 821 (N.D. Ohio 1999)* ("The purported blanket exemption reflected in the Conference Report cannot be squared with the more limited grant of discretion contained in the statute itself."); *Contra Naiditch v. Applied Micro Circuits Corp., 2001 U.S. Dist. LEXIS 21374, 2001 WL 1659115, at *2-3 (S.D. Cal. Nov. 5, 2001)* (unpublished decision) ("the preference for large institutional investors should not be overridden by the professional plaintiff restriction"). Courts have sharply disagreed, however, regarding the factors or circumstances necessary to warrant a discretionary exemption. Some courts have determined they should exercise the discretion afforded them by the professional plaintiff rule only in narrow circumstances. *See, e.g., Aronson, 79 F. Supp. 2d at 1156-57* (noting special circumstances warranting exception may include where institutional investor is the only movant or the other movants "had accrued an even longer record of participation in securities litigation"); **[*19]** *Telxon, 67 F. Supp. 2d at 822* (noting exception would be warranted only where alternative candidates are either a group of unrelated investors or an individual investor whose loss is dwarfed by that of the institutional investor). Other courts have exercised their discretion more expansively and allowed exceptions for institutional investors unless there is an affirmative reason not to do so. *See, e.g., Piven v. Sykes Enters., 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000)* (holding institutional investor should be exempted from professional plaintiff restriction unless court finds institution is, in fact, "some sort of shell corporation created for the purpose of marshaling claims to be asserted in a class action securities claim").

While the statutory text and the case law clearly indicate the professional plaintiff rule does not provide a blanket exemption for institutional investors, it is equally clear the rule does not create an absolute bar to litigious persons or entities serving as lead plaintiff in securities class actions. The Court believes *15 U.S.C. § 78u-4(a)(3)(B)(vi)* is best interpreted as imposing a **[*20]** *presumptive* bar against lead plaintiff candidates who have served in that same capacity in five other cases over the past three years. *See Aronson, 79 F. Supp. 2d at 1156; Telxon, 67 F. Supp. 2d at 820.* Thus, the burden is upon the presumptively barred candidate to demonstrate why the bar should not be applied in a given case. The congressional preference for institutional investors underlying the PSLRA is properly considered in determining whether a particular institutional investor lead plaintiff candidate has overcome the presumption

imposed by the professional plaintiff rule, but it is not the dispositive factor. *Telxon, 67 F. Supp. 2d at 822.* Accordingly, a lead plaintiff seeking to overcome the presumption against professional plaintiffs must persuade the court failure to grant an exception in the case at bar would be *inconsistent* with the purposes of the PSLRA.

In addition to the preference for institutional investors, another purpose of the PSLRA was to ensure control over securities class actions is vested in plaintiffs rather than in their attorneys. *See* S.Rep.No. 104-98, at 6; **[*21]** *Aronson, 79 F. Supp. 2d at 1156* ("Congress also desired to increase client control over plaintiff's counsel"). The professional plaintiff rule instructs courts to exercise their discretion and make exceptions to the five-in-three prohibition when consistent with the purposes of the PSLRA as a whole, not just when consistent with the congressional preference for institutional investors. *See 15 U.S.C. § 78u-4(a)(3)(B)(vi).* While granting the Louisiana Funds an exception to the bar on professional plaintiffs might be consistent with Congress' preference institutional investors be lead plaintiffs in securities class actions, the Court believes it would be decidedly inconsistent with the other purposes underlying the PSLRA. Congress hoped to cure perceived abuses of securities class actions by wresting control of such actions from professional plaintiffs and overly-aggressive attorneys and giving it to institutional investors and other large shareholders who would presumably have greater incentive to monitor counsel and insure the interest of all shareholders were protected. The larger the number of cases being directed by a single institutional **[*22]** investor, the less likely it is these purposes are being served. Simultaneous prosecution of nine [7] different securities class actions would stretch the resources of even the largest institutional investors. Further, the Court understands in addition to the thirteen cases in which they have actually served as lead plaintiff, the Louisiana Funds have collectively sought to be named lead plaintiff in twenty-four other cases, including several motions which the Court presumes are still pending (Court File Nos. 22, Exh. G; 60).

[7] According to the Louisiana Funds' certification, TRSL is currently acting as lead plaintiff in the prosecution of eight securities class actions (Court File No. 12, Exh. B). If the Court were to appoint the Louisiana Funds co-lead plaintiffs in this case, that number would rise to

nine.

The Court cannot help but conclude the Louisiana Funds' resources are being spread too thin. Further weighing against granting an exception for the Louisiana Funds is the fact an alternative lead plaintiff [*23] candidate with a significant financial interest of its own is available. *Cf. In re Critical Path, Inc. Sec. Litig., 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001)* (granting exception where institutional investor was only acceptable candidate who was an institutional investor or a large shareholder). Under the circumstances, the Court cannot conclude granting the Louisiana Funds an exception to the professional plaintiff rule would be consistent with the purposes of the PSLRA. Neither the PSLRA nor its legislative history express any congressional desire institutional investors be permitted to dominate or monopolize the lead plaintiff role. *See Telxon, 67 F. Supp. 2d at 821.* Accordingly, the Court finds no justification for granting an exception to a party which has so significantly exceeded the limitations of the professional plaintiff rule, at least where a viable alternative is available which would be just as, if not more, consistent with the purposes underlying the PSLRA. [8]

> 8    Because the Court finds the professional plaintiff rule bars de Louisiana Funds from serving as lead plaintiff, the Court offers no opinion regarding the propriety of allowing TRSL and LSERS to aggregate their losses and/or resources or the impact of the strict time requirements imposed by *15 U.S.C. § 78u-4(a)(3)(A)(i)* on the ability of the Court to even consider the Louisiana Funds' motion in the first place (*see* Court File No. 22, pp. 4-5).

## [*24] B. Typicality & Adequacy of Glickenhaus as Lead Plaintiff

After the Louisiana Funds, Glickenhaus has the second largest financial interest in the relief sought by the class (approximately $ 1.5 million). Therefore, Glickenhaus will be considered the presumptive lead plaintiff if the Court finds Glickenhaus has made a *prima facie* showing of the typicality and adequacy required by *Rule 23(a). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Cendant, 264 F.3d at 263-64.* This preliminary inquiry should be confined to the movant's pleadings and declarations; arguments by other class members should be considered only in the context of assessing whether the presumption

has been rebutted. *In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)* (noting during the initial, *prima facie* inquiry courts "must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims." The threshold determination of typicality and adequacy "should be the product of the court's independent judgment. [*25] *Cendant, 264 F.3d at 263.*

In making the *prima facie* determinations of typicality and adequacy, courts are to apply traditional *Rule 23* principles. *Id. at 265.* A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory," *In re American Medical Sys., 75 F.3d 1069, 1082 (6th Cir. 1996).* Glickenhaus and each of the five original plaintiffs in this consolidated putative class action claim Defendants violated *§§ 10(b) and 20(a) of the Exchange Act* and *Rule 10b-5* by disseminating materially misleading statements or omissions which caused the class members to purchase publicly traded UnumProvident securities at inflated prices. All plaintiffs, including Glickenhaus, assert the same causes of actions based on the same series of acts and the same legal theories. Any factual distinctions which may exist are clearly outweighed by the issues of law and fact predominating the claims of all class members. [*26] *In re Telectronics Pacing Sys., Inc., 168 F.R.D. 203, 213 (S.D. Ohio 1996)* ("The typicality requirement may be satisfied even if there are factual distinctions between the named plaintiffs and those of other class members.").

To satisfy the adequacy requirement of *Rule 23(a)(4),* "there must be an absence of a conflict of interest, and the presence of common interests and injury" as among the class representative and the rest of the class. *Rutherford v. City of Cleveland, 137 F.3d 905, 909 (6th Cir. 1998).* In considering lead plaintiff motions under the PSLRA, other courts have additionally looked to "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Cendant, 264 F.3d at 265; In re Quintus Sec. Litig., 201 F.R.D. 475, 485 (N.D. Cal. 2001).* On their face, Glickenhaus' pleadings and declarations present no evidence of any conflict between Glickenhaus' interests and those of the class members nor do they give any indication Glickenhaus' injury differs from that suffered by the rest of the class in any [*27] way other than

magnitude. Moreover, Glickenhaus has selected a law firm experienced in securities class action litigation, Milberg Weiss Bershad Hynes & Lerach, to serve as lead counsel (Court File No. 19, p. 11). The Court believes Glickenhaus has the ability and incentive to adequately represent the class and discerns no conflict between its claims and those of the class as a whole.

Once the presumptive lead plaintiff has been determined, the presumption may be rebutted upon proof from any other member of the purported class showing the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. The Louisiana Funds argue Glickenhaus should be disqualified because it is subject to a unique defense. Specifically, the Louisiana Funds allege Glickenhaus lacks standing because as an investment management firm it suffered no financial loss; any loss accrued solely to the detriment of its clients (*see* Court File Nos. 26, 39). The Louisiana Funds contend appointing Glickenhaus lead **[*28]** plaintiff would subject the action to the risk of non-certification or outright dismissal (Court File No. 26, p. 5).

The Louisiana Funds' concerns are unfounded. The implied cause of action under *§ 10(b) of the Exchange Act* and *Rule 10b-5* promulgated thereunder is limited to purchasers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731, 95 S. Ct. 1917, 1923, 44 L. Ed. 2d 539 (1975)*; *Gaff v. FDIC, 814 F.2d 311, 318-19 (6th Cir. 1987)*. Thus, the fact Glickenhaus was not the beneficial owner of the UnumProvident securities is not determinative of the issue of Glickenhaus' standing to sue under *Rule 10b-5*. An investment adviser qualifies as a "purchaser" under the federal securities laws, and may sue in its own name, if it has been delegated the authority to make investment decisions on behalf of its clients. *DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 299 (D. Del. 2003)*; *The Ezra Charitable Trust v. Rent-Way, Inc., 136 F. Supp. 2d 435, 442 (W.D. Pa. 2001)*. *See also* **[*29]** *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc., 800 F.2d 177, 181-82 (7th Cir. 1986)* (affirming grant of summary judgment in favor of defendants holding plaintiff-investor was not "purchaser" entitled to bring *Rule 10b-5* claim, but rather investment adviser to whom investor had delegated authority was proper plaintiff). [9]

9  As contrary authority, the Louisiana Funds cite *In re Bank One Shareholders Class Actions, 96 F. Supp. 2d 780 (N.D. Ill. 2000)*. However, because *Bank One* involved a hedge fund seeking to be named lead plaintiff, the Court finds this case inapplicable to the present facts, *Id. at 783-84*.

Some courts considering this question have limited investment manager standing in securities fraud cases to situations where the adviser or manager holds unrestricted decision-making authority to purchase stock on behalf of its clients *and* is also the attorney-in-fact for its clients. *See* **[*30]** *Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 255 (S.D.N.Y. 2003)*; *Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002)*. Even under this narrower approach, the Court finds Glickenhaus has provided sufficient evidence to support the conclusion it has standing to assert the claims common to the class Glickenhaus has provided a sworn declaration from its general partner, James Glickenhaus, stating it "has complete investment discretion in choosing securities to purchase for the benefit of its clients" and is "attorney-in-fact for all [its] clients and [is] authorized to bring suit on behalf of [its] clients" (Court File No. 48, Exh. C). Glickenhaus need not provide the Court with copies of all its contracts to meet its burden, rather the Louisiana Funds must affirmatively prove Glickenhaus does not have standing. That Glickenhaus' declaration was submitted with its Reply (Court File No. 48) to the Louisiana Funds' attacks on its motion (Court File Nos. 26,39) rather than with its original motion (Court File No.18) is of no consequence since the PSLRA does not require intervening class members seeking **[*31]** to be named lead plaintiff file a sworn certification at all, much less with their initial motions. *See 15 U.S.C. § 78u-4(a)(2)(A)*; *Greebel v. FTP Software, Inc., 939 F. Supp. 57, 61-62 (D. Mass. 1996)*.

The Court additionally notes the distinctions between the nature of Glickenhaus' financial interest and that of other class members might well provide even greater incentive for Glickenhaus to effectively pursue the claims of the class. The incentive for investors who were both purchasers and owners of UnumProvident securities rises out of a desire to recoup personal losses. As a result, the magnitude of the incentive would be roughly proportionate to the amount of the loss. However, Glickenhaus' incentive results from a desire to recover losses incurred by its clients as a result of the advice or

management of Glickenhaus. Therefore, Glickenhaus' incentive is much greater than the actual dollar value of its clients' loss because Glickenhaus also seeks to maintain customer trust and goodwill in order to sustain its business.

The Louisiana Funds also argue Glickenhaus is not adequate to serve as lead plaintiff because (1) Glickenhaus has **[*32]** failed to provide the Court with sufficient information and/or declarations to insure Glickenhaus is willing and able to take on the responsibilities of serving as lead plaintiff (Court File No. 26, pp. 6-8); and (2) Glickenhaus has not included in its declarations a statement it had "entered into a reasonable retainer agreement with counsel" (*Id.* at 8). The Court finds the Louisiana Funds' contentions unpersuasive. First, the Court finds Glickenhaus has, in fact, provided sufficient declarations of its willingness and ability to serve as lead plaintiff (*see* Court File Nos. 19; 48, Exh. C). Second, a detailed account of the terms of a movant's fee agreement with proposed lead counsel (or even the mere existence of such an agreement) is neither a prerequisite to nor especially persuasive evidence in support of a motion to be named lead plaintiff. *See In re Cavanaugh, 306 F.3d at 733* ("Negotiations with counsel before lead plaintiff has even been appointed have an inherently hypothetical and contingent quality, making them a relatively poor indicator of plaintiff's adequacy to serve as lead."). **[*33]** Third and finally, that the Louisiana Funds might have provided more detail in their declarations and certifications is of no consequence. Once the presumption has been established, the Court will not engage in a relative inquiry comparing the adequacy of the presumptive lead plaintiff to that of other class members. *Cendant, 264 F.3d at 268.*

### IV. CONCLUSION

For the reasons stated herein, the Court will **DENY** the Louisiana Group's motion to be appointed lead plaintiff (Court File No. 10) and **GRANT** Glickenhaus' motion to be so designated (Court File No. 18). Accordingly, Intervenor Glickenhaus & Co. will be appointed Lead Plaintiff in this securities class action and its chosen attorneys, Milberg Weiss Bershad Hynes &

Lerach, LLP, shall be Lead Counsel. Lead Plaintiff Glickenhaus will be required to file an amended consolidated complaint in accordance with the Court's Order accompanying this memorandum. However, the Court pretermits a determination of whether Liaison Counsel should be appointed and, if so, who should be Liaison Counsel.

An Order shall enter.

CURTIS L. COLLIER

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons **[*34]** stated in the accompanying Memorandum, the Court **GRANTS** Intervenor Plaintiff Glickenhaus & Co.'s motion to be appointed lead plaintiff (Court File No. 18) and **DENIES** Intervenor Plaintiffs Teachers' Retirement System of Louisiana and Louisiana School Employees' Retirement System joint motion to be named co-lead plaintiffs (Court File No. 10). The Court hereby **APPOINTS** Intervenor Plaintiff Glickenhaus & Co. Lead Plaintiff in this consolidated putative securities class action and **APPROVES** its selection of Milberg Weiss Bershad Hynes & Lerach, LLP, as Lead Counsel. However, the Court defers its decision of whether Liaison Counsel should be appointed. Lead Plaintiff Glickenhaus shall file an amended consolidated complaint on behalf of the class no later than **Monday, December 8, 2003**, and Defendants shall file an answer within twenty (20) days of the filing of the consolidated complaint in accordance with the Federal Rules of Civil Procedure.

The Court hereby sets an initial management conference in this case for **Friday, January 16, 2004, at 9:00 a.m.**

**SO ORDERED.**

**ENTER:**

CURTIS L. COLLIER

UNITED STATES DISTRICT JUDGE