UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>                        Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>[PROPOSED] JOINT CASE MANAGEMENT ORDER |

Pursuant to Local Rule 16.01(d)(1)(b)(2), Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiff"), and Defendants CoreCivic, Inc., formerly known as Corrections Corporation of America ("CoreCivic" or the "Company"), Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin (collectively, "Defendants"), submit the following [Proposed] Joint Case Management Order.

## I. PROCEDURAL BACKGROUND

Plaintiff brings this action as a putative class action on behalf of a class consisting of all persons who purchased or otherwise acquired CoreCivic securities between February 27, 2012 and August 17, 2016, inclusive (the "Class Period"), and who were allegedly damaged thereby. The Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 57) ("Complaint") alleges claims for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a).

The action was initiated on August 23, 2016. ECF No. 1. On January 10, 2017, the Court issued an order appointing Amalgamated Bank, as Trustee for the LongView Collective Investment Fund, as Lead Plaintiff and appointing Robbins Geller Rudman & Dowd LLP as Lead Counsel and Barrett Johnston Martin & Garrison, LLC as Liaison Counsel. ECF No. 52. Lead Plaintiff's Complaint was filed on March 13, 2017. ECF No. 57.

On May 12, 2017, Defendants moved to dismiss the Complaint. ECF No. 60. On June 26, 2017, Plaintiff filed an opposition to Defendants' motion to dismiss. ECF No. 67. On July 26, 2017, Defendants filed a reply to Plaintiff's opposition. ECF No. 73. On December 18, 2017, Judge Trauger issued a Memorandum and an Order denying Defendants' motion to dismiss. ECF Nos. 76-77.

Because this action is subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(3)(B), discovery and other proceedings were stayed pending resolution of Defendants' motion to dismiss. *See* ECF No. 28.

- 1 -

## II. JURISDICTION

This action alleges violations of §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, by the United States Securities and Exchange Commission, 17 C.F.R. §240.10b-5. The parties agree that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act, 15 U.S.C. §78aa.

## III. STATUS OF SERVICE OF PROCESS

All Defendants have been served, and there is no dispute as to service of process.

## IV. ISSUES IN DISPUTE

The parties have not resolved any substantive issues in the litigation at this time. The parties expect that as discovery proceeds, and discussions continue, it may be possible to narrow the issues in dispute.

The issues currently in dispute are set forth below and include the number of depositions and the language of any protective order in this case governing the designation of discovery as confidential.

## V. PARTIES' THEORIES OF THE CASE

### A. Plaintiff's Theory of the Case

This is a federal securities class action brought on behalf of a class consisting of all persons who purchased or otherwise acquired CoreCivic securities during the Class Period against defendants CoreCivic, its Chief Executive Officer, Hininger, its Executive Vice President and Chief Financial Officer since May 1, 2014, Garfinkle, its Executive Vice President and Chief Financial Officer from March 16, 2007 to May 1, 2014, Mullenger, and its Executive Vice President and Chief Corrections Officer, Lappin, for violations of §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a). ¶¶21-25, 205.[1]

---

[1] All paragraph references ("¶_") are to the Complaint.

Plaintiff contends that throughout (and before) the Class Period, Defendants made numerous false and misleading statements or omissions to the effect that CoreCivic's business model was founded on, and made sustainable by, an ability to provide governments with detention and incarceration services at a level of quality at least equivalent to those that the governments provided themselves, and in compliance with all applicable policies and contractual requirements, but at a lower cost than the government could provide those services. ¶¶115-169. In truth, CoreCivic provided inferior services and could not deliver on quality services at a lower cost. ¶¶37-114, 170. Defendants knew, or were reckless in not knowing, all of these facts through the many notices of concern, contract facility monitoring reports, after-action reports and other information received from external sources, as well as through the Company's own internal systems and controls, including the Quality Assurance Division. ¶¶171-189.

The extent of CoreCivic's shortcomings reached the market through a series of partial disclosures, which caused substantial drops in CoreCivic's stock price. ¶196. On August 11, 2016, the United States Department of Justice's Office of the Inspector General ("OIG") released a report entitled "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" (the "Review"), which found that "in most key areas, contract prisons [specifically including CoreCivic] incurred more safety and security incidents per capita than comparable BOP institutions," and which was unable to conclude that the contract prisons were less expensive than Federal Bureau of Prisons ("BOP") institutions. ¶¶12, 197. On August 18, 2016, citing the Review, Deputy Attorney General Sally Q. Yates issued a memorandum stating that private prisons "compare poorly to [BOP] facilities" and directing that the BOP should reduce its use of private prisons. ¶198. As a result of these disclosures, CoreCivic common stock lost 53% of its value, dropping from $27.56 per share on August 10, 2016 to $13.04 per share on August 18, 2016. ¶199. This decline caused hundreds of millions of dollars in losses to CoreCivic

investors, who relied on the accuracy of Defendants' statements and suffered damages when the truth was revealed.

### B. Defendants' Theory of the Case

Plaintiff will be unable to establish a violation of Section 10(b) of the Exchange Act or Rule 10b-5 promulgated thereunder. Defendants deny all allegations made against them and submit that they made no actionable misstatements or omissions, lacked the requisite scienter to give rise to a claim under Section 10(b) or Rule 10b-5, and that their alleged false or misleading Class Period statements did not cause any damage to Plaintiff. Moreover, because there is no predicate violation of Section 10(b), Plaintiff's claim for controlling-person liability under Section 20(a) of the Exchange Act necessarily fails as well.

As a preliminary matter, Defendants did not make any false or misleading statements or omissions during the Class Period. Each of the alleged false or misleading Class Period statements, when viewed in context, is true. Moreover, each is also protected by the "safe harbor" provision of the Private Securities Litigation Reform Act and/or is nothing more than non-actionable "puffery."

Furthermore, the Individual Defendants did not make any alleged false or misleading Class Period statement with an intent to defraud the Company's shareholders, or with "deliberate recklessness," as that term is defined by controlling Supreme Court and Sixth Circuit precedent.

Finally, Plaintiff will not be able to establish that any of the challenged Class Period statements caused Plaintiff's claimed losses. The stock drop purportedly giving rise to Plaintiff's damages followed a memorandum issued by the Department of Justice (the "DOJ") that impacted the entire industry, not just CoreCivic. Indeed, the purported facts that Plaintiff contends were concealed by the alleged false or misleading statements had been disclosed at an earlier point in time, demonstrating that the DOJ memorandum did not reveal new information that previously was concealed by the alleged false or misleading Class Period statements. In any

- 4 -

event, any purported damages sustained by Plaintiff must be reduced by other economic and industry factors unrelated to any alleged fraud.

For each of these reasons, Defendants submit that Plaintiff's claims are without merit and subject to powerful substantive and procedural defenses.

## VI. STATUS OF DISCOVERY

### A. Mandatory Initial Disclosures

Pursuant to Fed. R. Civ. P. 26(a)(1) and this Court's Notice of Setting of Initial Case Management Conference, the parties have met and conferred and will serve their initial disclosures on February 23, 2018.

### B. Document Requests and Interrogatories

Because this action is subject to the PSLRA, 15 U.S.C. §78u-4(b)(3)(B), discovery and other proceedings were stayed pending resolution of Defendants' motion to dismiss. *See* ECF No. 28. Now that Defendants' motion to dismiss has been denied, the PSLRA discovery stay has been lifted and the parties have conducted their Rule 26 conference, the parties intend to proceed to discovery.

### C. Depositions

No depositions have been taken.

#### 1. Plaintiff's Position.

Plaintiff contends that this complex action will require more than the ten one-day depositions permitted under Fed. R. Civ. P. 30(a)(2)(A). While the number of depositions required will not be reasonably known until initial disclosures have been exchanged and further discovery is completed, based on the presently available information it is apparent that more than 10 depositions will be required to adequately prepare this case for trial against a company with more than 15,000 employees. At a minimum, Plaintiff anticipates deposing: (1) each of the four named individual defendants; (2) CoreCivic, pursuant to Fed. R. Civ. P. 30(b)(6); (3)

- 5 -

Case 3:16-cv-02267   Document 82   Filed 02/06/18   Page 6 of 17 PageID #: 1632

representatives and/or employees of the Adams County Correctional Center, Cibola County Correctional Center, Eden Detention Center, and McRae Correctional Facility; (4) representatives and/or employees of other correctional facilities and detention centers as pertinent to the alleged claims and defenses; (5) representatives and/or employees of the United States Bureau of Prisons and the Department of Justice; (6) current or former inmates of CoreCivic's BOP facilities; (7) representatives of the approximately nine Wall Street analysts who covered CoreCivic during the Class Period; (8) various current or former executives, managers or other employees of CoreCivic, including those in its Quality Assurance Division, and its investor relations, finance, accounting and administration departments; (9) members of CoreCivic's board of directors; (10) representatives and/or employees of lobbying and/or public relations firms engaged by CoreCivic during the Class Period; and (11) representatives and/or employees of the American Correctional Association and any other relevant regulatory or credentialing entities. Additional categories of deponents are likely to be identified as discovery occurs.

Given the number of potential deponents, and in order to further the efficient management of discovery in this action, Plaintiff proposes that each side be permitted 200 hours of depositions (exclusive of experts) to be calculated based on the "chess clock" method, wherein each party's permitted time is calculated based on the amount of time spent on the record eliciting testimony during a deposition. This method has been successfully used in other cases of this nature, including cases litigated in this district involving similar issues and some of the same counsel as are involved in this proceeding. *See Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882-WJH, ECF No. 146 at 7 (M.D. Tenn Aug. 30, 2011).

### 2. Defendants' Position.

Plaintiff is seeking substantially more depositions than the number allowed by the Federal Rules of Civil Procedure. Specifically, Plaintiff requests 200 hours of depositions per

party (excluding expert depositions), with no limit on the number of deponents. Under Plaintiff's proposal, Plaintiff and Defendants would each have the ability to call nearly 30 witnesses for seven hours of deposition testimony, or an unlimited number of witnesses for shorter amounts of time on the record. Moreover, Plaintiff identifies 11 categories of deponents – including, among others, current and former prison inmates, representatives of nine Wall Street analyst firms, representatives of lobbying and/or public relation firms, and representatives from regulatory and credentialing entities – without explaining why these depositions justify such a drastic departure from the Federal Rules in a case alleging violations of the securities laws.

In order to exceed the default limit imposed by the Federal Rules, a party must demonstrate a particularized showing of the need for additional depositions. The rationale underlying this rule is clear: prior to exhausting the permitted depositions, movants can "only speculate as to what the other [] depositions they are permitted to take by rule will reveal." *Smith v. Ardew Wood Prods.*, 2008 U.S. Dist. LEXIS 93855, at *3 (W.D. Wash. Nov. 6, 2008) (denying leave to take additional depositions where only one had been taken); *see also, e.g., Martensen v. Koch*, 2013 U.S. Dist. LEXIS 86416, at *3 (N.D. Cal. June 19, 2013) ("[H]aving taken not a single deposition to date, Plaintiff cannot possibly know what information he needs but cannot obtain from his 10 permitted depositions") (quotations and citation omitted); *Guthrey v. California Dept. of Corrections and Rehabilitation*, 2012 WL 3249554, at *7 (E.D. Cal. Aug. 7, 2012) (without exhausting permitted depositions, "[n]either the parties, nor the Court, has any information whether nineteen additional depositions" would be appropriate); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 587 (D. Minn. 1999) ("At a minimum, [plaintiff] should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses[.]").

- 7 -

Here, as Plaintiff acknowledges, the parties have not even exchanged initial disclosures. Indeed, Plaintiff has not issued a single deposition notice. "[C]ourts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right." *Osborne v. Billings Clinic*, 2015 WL 150252, at *2 (D. Mont. Jan. 12, 2015). Nevertheless, in the spirit of compromise, Defendants are willing to agree to expand the number of depositions to fifteen (of seven hours each). That will allow Plaintiff to depose each of the individual defendants, CoreCivic (pursuant to Fed. R. Civ. P. 30(b)(6)), and ten additional witnesses of its choosing. Moreover, during the course of discovery, should it appear to either party that additional depositions are necessary, Defendants respectfully submit that the parties should meet and confer in a good faith attempt to informally resolve the issue. Should these efforts fail to result in a suitable compromise, each party reserves its right to seek relief from the Court. Defendants submit that this compromise proposal is reasonable, and far more manageable, than Plaintiff's proposition.

### D. Protective Order

The parties have substantially agreed to a proposed protective order governing the designation of discovery materials as confidential.[2] The parties, however, dispute the breadth of the ability to designate materials as confidential.

#### 1. Plaintiff's Position

Defendants broadly seek to designate discovery materials as confidential on a document by document basis rather than limiting their designations to the information that is actually confidential. Courts recognize that "[p]arties frequently abuse Rule 26(c) by seeking protective orders for material not covered by the rule," and courts have repeatedly condemned the improper use of confidentiality designation. *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1358 (Fed. Cir.

---

[2] Attached hereto is the [Proposed] Protective Order the parties have agreed to with the language in dispute bolded in brackets.

2011). Defendants' broad sweeping request to designate entire documents as confidential is such an abuse because it removes the necessity for a designating party to have a factual basis for designating material as confidential and the particularity requirements of Rule 26(c). *See, e.g.*, *Fears v. Wilhelmina*, No. 02 Civ. 4911 (HB), 2003 WL 21737808, at *1 (S.D.N.Y. July 25, 2003) ("If I find that counsel has designated documents 'confidential–attorneys' eyes only' in bad faith and without an adequate factual basis, I will not hesitate to impose sanctions . . . .").

While defendants object to the requirement for line-by-line designations on grounds of burden, they fail to recognize that they cannot designate a document as "Confidential" without first reviewing it to determine that it contains specific information that meets the requirements of the protective order. Plaintiffs fail to see how it would be burdensome for defendants to mark the information they have identified as supporting the designation unless defendants propose to mark documents without such a review, which is not permitted by the protective order.

### 2. Defendants' Position

Defendants reasonably anticipate that the burden of reviewing, redacting and producing the overwhelming majority of documents in this case will fall to them. Over the course of fact discovery, however, the universe of potentially relevant documents will narrow as the issues are refined, and the volume of documents that ultimately will be filed with the court will almost certainly represent a small fraction of the overall discovery record. The Protective Order contemplates an agreed-upon meet and confer process whereby the parties must discuss – and may then redact with precision – the much smaller body of evidence that would need to be filed under seal, with the Court's permission. Defendants believe that it is at that point in the process that the parties should engage in line-by-line redactions, as necessary and appropriate, to protect confidential information.

Defendants' proposal not only will streamline fact discovery, it is consistent with established 6th Circuit jurisprudence. The Sixth Circuit has expressly recognized the "stark

- 9 -

difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016). Protective orders "allow the parties to determine in the first instance whether particular materials fall within the order's protection" because "[d]iscovery concerns the parties' exchange of information that might or might not be relevant to their case." *Id*. Thus, "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record." *Id*. (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). Plaintiff's proposal – that the parties (here, primarily Defendants) analyze every sentence of every arguably responsive document to determine whether it falls within the ambit of the Protective Order – imposes a burden that is one-sided, time-consuming, expensive, and at the end of the day, largely unnecessary. Accordingly, Defendants respectfully request that the Court adopt the version of the Protective Order that contemplates confidentiality designations be made on a document-by-document basis.

### E. Other Discovery Issues

Discovery is not stayed during dispositive motions unless ordered by the court. Local Rule 33.01(b) is expanded to allow 40 interrogatories, including sub-parts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger. The parties anticipate that discovery may involve the production of confidential, proprietary and/or trade secret information, and contemporaneously herewith have submitted and request entry of a protective order by the Court.

### F. Electronic Discovery

The parties have agreed that they will fully comply with Administrative Order No. 174 and exchange the disclosures required therein when exchanging their initial disclosures.

## VII. PROPOSED PRETRIAL SCHEDULE

The parties have agreed to the vast majority of the dates for a proposed pretrial schedule, as set forth below:

| Matter | Agreed Date |
|---|---|
| Defendants' Answer | February 2, 2018 |
| Rule 26(a)(1) Initial Disclosures | February 23, 2018 |
| Class Certification | |
| • Motion for Class Certification | June 1, 2018 |
| • Opposition | July 16, 2018 |
| • Reply | September 5, 2018 |
| Deadline to substantially complete production of documents | August 1, 2018 |
| Deadline to amend the pleadings to add parties | September 7, 2018 |
| Fact discovery cutoff | March 29, 2019 |
| Deadline for Filing of Discovery-Related Motions | April 17, 2019 |
| The parties declare experts and produce expert reports pursuant to Fed. R. Civ. P. 26(a)(2) | May 15, 2019 |
| • Rebuttal | June 19, 2019 |
| • Completion of expert depositions | July 31, 2019 |
| Dispositive & *Daubert* Motions[3] | |
| • Opening Briefs | September 27, 2019 |
| • Oppositions | November 15, 2019 |
| • Replies | December 20, 2019 |
| • Hearing on Dispositives, *Daubert*s, and Case Management Conference | January 24, 2020 |
| Joint Proposed Pretrial Order, Proposed Jury Verdict Forms, Stipulations, Motions *in Limine*, Witness List, and Exhibit List | 2 weeks before pretrial conference |
| Pretrial Conference | 1 month before trial |

---

[3] Briefs shall not exceed **20 pages** without leave of court. No motion for *partial* summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of the overall economy of time and expense for the parties, counsel and the court. The following are deadlines. The parties may file motions earlier than the proposed dates.

| Matter | Agreed Date |
|---|---|
| Trial | **April __, 2020**, or as soon thereafter as the Court's schedule permits (two weeks) |

ENTERED this ___ day of February, 2018.

                                              THE HONORABLE ALETA A. TRAUGER
                                              UNITED STATES DISTRICT JUDGE

Submitted by:

DATED: February 6, 2018

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN (*pro hac vice*)
WILLOW E. RADCLIFFE (*pro hac vice*)


        s/ Willow E. Radcliffe
            WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

- 12 -
Case 3:16-cv-02267   Document 82   Filed 02/06/18   Page 13 of 17 PageID #: 1639

RILEY WARNOCK & JACOBSON, PLC
STEVEN A. RILEY, #6258
MILTON S. McGEE, III #024150


       s/ Milton S. McGee III
         MILTON S. McGEE, III

1906 West End Ave.
Nashville, TN 37203
Telephone: 615/320-3700
615/320-3737 (fax)

LATHAM & WATKINS LLP
DAVID J. SCHINDLER
BRIAN T. GLENNON
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213/485-1234
213/891-8763 (fax)

LATHAM & WATKINS LLP
ANNA E. BERCES
MORGAN E. WHITWORTH
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415/391-0600
415/395-8095 (fax)

Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 6, 2018.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail:willowr@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anna E. Berces**
  anna.berces@lw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,smcclenahan@barrettjohnston.com,tellis@barrettjohnston.com,nchanin@barrettjohnston.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,ptiffith@rgrdlaw.com,hdeshmukh@rgrdlaw.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`