UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>       Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL |

1438260_1

Case 3:16-cv-02267   Document 92   Filed 06/01/18   Page 1 of 32 PageID #: 1736

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    STATEMENT OF FACTS ........................................................................................2

     A.     Summary of the Alleged Fraud ....................................................................2

     B.     The Proposed Class Representative ..............................................................4

III.   ARGUMENT ............................................................................................................5

     A.     The Standards for Class Certification ..........................................................5

     B.     This Case Meets the Requirements of Rule 23(a) for Class Certification .............6

         1.     The Class Is Numerous ....................................................................6

         2.     Questions of Law and Fact Are Common to the Class ...............................7

         3.     Amalgamated Bank's Claims Are Typical of the Class ...........................8

         4.     Amalgamated Bank Will Fairly and Adequately Protect the
Interests of the Class ......................................................................9

     C.     This Case Meets the Requirements of Rule 23(b)(3)...........................................10

         1.     Common Questions of Law and Fact Predominate ................................11

             a.     The Claims of All Class Members Will Be Proved by the
Same Evidence........................................................................11

             b.     Lead Plaintiff Is Entitled to a Presumption of Reliance
Pursuant to Both *Basic* and *Affiliated Ute* ....................................12

             c.     Lead Plaintiff Is Entitled to a Presumption of Reliance
Pursuant to *Basic*........................................................................12

                 (1)     Average Trading Volume ...................................................13

                 (2)     Number of Analysts ........................................................14

                 (3)     Presence of Market Makers ..............................................14

                 (4)     Eligibility to File an S-3 Registration Statement ...............15

                 (5)     Reaction of Stock to Unexpected Corporate Events
or Financial Releases ......................................................15

                 (6)     Market Capitalization........................................................16

                 (7)     Float ..............................................................................16

                 (8)     Bid-Ask Spread ..............................................................16

      d.     Lead Plaintiff Is Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute* .................................................................17

    2.    A Class Action Is Superior to Alternative Methods for Resolving This Dispute ..........................................................................................18

    3.    The Event Study Methodology Is Capable of Measuring Damages on a Class-wide Basis .............................................................................19

IV.    CONCLUSION .........................................................................................................20

1438260_1

**CASES**

*Affiliated Ute Citizens v. U.S.*,
  406 U.S. 128 (1972) ........................................................................... 2, 12, 17, 18

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 1, 5, 11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  _U.S._, 133 S. Ct. 1184 (2013) ..................................................................... 11, 18

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ..................................................................................... *passim*

*Beach v. Healthways, Inc.*,
  2010 U.S. Dist. LEXIS 33765
  (M.D. Tenn. Apr. 2, 2010) .................................................................................. 5

*Bovee v. Coopers & Lybrand*,
  216 F.R.D. 596 (S.D. Ohio 2003) ..................................................................... 13

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) ......................................................................... 11

*Burges v. BancorpSouth, Inc.*,
  2017 WL 2772122
  (M.D. Tenn. June 26, 2017) ....................................................................... *passim*

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ......................................................................................... 19

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ................................................................. *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ......................................................................... 13

*Castillo v. Envoy Corp.*,
  206 F.R.D. 464 (M.D. Tenn. 2002) ....................................................... 5, 12, 13, 15

*Cates v. Cooper Tire & Rubber Co.*,
  253 F.R.D. 422 (N.D. Ohio 2008) ....................................................................... 8

*Cheney v. Cyberguard Corp.*,
  213 F.R.D. 484 (S.D. Fla. 2003) ....................................................................... 14

*City of Ann Arbor Emps' Ret. Sys. v. Sonoco Prods. Co.*,
   270 F.R.D. 247 (D.S.C. 2010) ........................................................................14

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) ............................................................................6

*Erica P. John Fund, Inc. v. Halliburton*,
   _U.S._, 131 S. Ct. 2179 (2011) .....................................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ........................................................................................11

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ..........................................................................................5

*Freeman v. Laventhol & Horwath*,
   915 F.2d 193 (6th Cir. 1990) .....................................................................12, 13

*Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*,
   2012 U.S. Dist. LEXIS 44445
   (M.D. Tenn. Mar. 29, 2012) .................................................................5, 8, 19

*Goodman v. Genworth Fin. Wealth Mgmt.*,
   300 F.R.D. 90 (E.D.N.Y. 2014) ......................................................................12

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .......................................................................................1, 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   _U.S._, 134 S. Ct. 2398 (2014) .......................................................................12

*Harman v. Lyphomed, Inc.*,
   122 F.R.D. 522 (N.D. Ill. 1988) ......................................................................15

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ..........................................................................................5

*In re Accredo Health Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 97621
   (W.D. Tenn. Mar. 7, 2006) ...............................................................5, 7, 14, 15

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) .......................................................................7, 8, 9

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................................10

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013)...........................................................................20

*In re Direct Gen. Corp. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 56128
   (M.D. Tenn. Aug. 8, 2006) ........................................................................... *passim*

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008)...................................................................14, 15, 16

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011)....................................................................................19

*In re Enron Corp. Sec.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................10

*In re Facebook, Inc., IPO & Secs. & Derivative Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013)......................................................................17

*In re Heckmann Corp. Secs. Litig.*,
   2013 U.S. Dist. LEXIS 79345
   (D. Del. June 6, 2013)..............................................................................................20

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
   757 F.3d 599 (7th Cir. 2014) ..................................................................................19

*In re NetBank Inc. Sec. Litig.*,
   259 F.R.D. 656 (N.D. Ga. 2009)..............................................................................16

*In re Neurontin Antitrust Litig.*,
   2011 U.S. Dist. LEXIS 7453
   (D.N.J. Jan. 25, 2011) ..............................................................................................20

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) ...................................................................17

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42 (S.D.N.Y. 2013) ...............................................................................17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ....................................................................................7

- v -

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005) ....................................................................................14

*Kasper v. AAC Holdings, Inc.*,
    2017 WL 3008510
    (M.D. Tenn. July 14, 2017) ...............................................................................5, 7, 8, 12

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................ *passim*

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ...............................................................................11

*Mayer v. Mylod*,
    988 F.2d 635 (6th Cir. 1993) ...............................................................................19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ..............................................................................................5

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..............................................................................................19

*Powers v. Fifth Third Mortg. Co.*,
    2011 U.S. Dist. LEXIS 96458
    (N.D. Ohio Aug. 12, 2011) ...................................................................................6

*Ross v. Abercrombie & Fitch Co.*,
    257 F.R.D. 435 (S.D. Ohio 2009) ............................................................5, 7, 11, 13

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ...............................................................................8, 12, 13

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ...............................................................................7, 8

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ..............................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................5

*Van Dyke v. Sovereign Int'l Asset Mgmt.*,
    2011 U.S. Dist. LEXIS 113227
    (N.D. Ohio Sept. 30, 2011) ...................................................................................12

*Vervaecke v. Chiles, Heider & Co.*,
  578 F.2d 713 (8th Cir. 1978) ...................................................................................17

*Weinberg v. Insituform Techs., Inc.*,
  1995 U.S. Dist. LEXIS 5124
  (W.D. Tenn. Apr. 10, 1995).......................................................................................9

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
  280 F.R.D. 332 (E.D. Mich. 2012) ............................................................................5

*Willis v. Big Lots, Inc.*,
  242 F. Supp. 3d 634 (S.D. Ohio 2017) .................................................................7, 10

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b)..................................................................................................................8, 11
  §78t(a)..................................................................................................................8, 11

Federal Rules of Civil Procedure
  Rule 23............................................................................................................5, 6, 19
  Rule 23(a).......................................................................................................1, 5, 6
  Rule 23(a)(1).........................................................................................................6
  Rule 23(a)(2).........................................................................................................7
  Rule 23(a)(3).........................................................................................................8
  Rule 23(a)(4).........................................................................................................9
  Rule 23(b)........................................................................................................5, 10
  Rule 23(b)(3)................................................................................................ *passim*

17 C.F.R.
  §240.10b-5 ..........................................................................................................12

Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated Bank" or "Lead Plaintiff"), respectfully submits this memorandum of law in support of the accompanying motion for class certification seeking an order: (a) appointing Amalgamated Bank as Class Representative; and (b) appointing the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    INTRODUCTION

Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Amalgamated Bank seeks certification of the following Class:

> All persons who purchased or otherwise acquired Corrections Corporation of America, Inc. ("CCA") securities between February 27, 2012 and August 17, 2016, inclusive, and who were damaged thereby.  Excluded from the Class are: (a) CCA, its parents, subsidiaries and any other entity owned or controlled by CCA; (b) Damon T. Hininger, Todd J. Mullenger, and Harley G. Lappin; (c) all other executive officers and directors of CCA or any of its parents, subsidiaries or other entities owned or controlled by CCA; (d) all immediate family members of the foregoing, including grandparents, parents, spouses, siblings, children, grandchildren and steprelations of similar degree; and (e) all predecessors and successors in interest or assigns of any of the foregoing.

Defendants' violations of the federal securities laws injured thousands of Class members and the proposed Class Representative in exactly the same manner.  As courts recognize, securities fraud actions, such as this one, are particularly well-suited for class treatment.[1]  Class certification should be granted because Amalgamated Bank's motion satisfies the four requirements of Rule 23(a):

- numerosity – thousands of investors acquired and sold the millions of nationally traded shares of CCA stock during the Class Period.

- commonality and typicality – among other common issues, Defendants issued the same false statements and omitted the same material facts when speaking to all investors.

- adequacy – Amalgamated Bank is committed to and has vigorously prosecuted this action as Lead Plaintiff.

---

[1]    *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 n.11 (1981).

This action also readily meets the two prerequisites for certification under Rule 23(b)(3). Predominance, like commonality, is met because the core elements of securities fraud claims, including falsity, materiality, loss causation, and scienter, all present issues susceptible to common proof. Further, reliance can be presumed under the Supreme Court's *Basic* test because, *inter alia*, CCA's securities traded in an efficient market, and under the Supreme Court's *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972) test because this Court had already found Lead Plaintiff has pled material omissions. Finally, because Defendants' alleged fraud damaged a large number of geographically dispersed investors, a class action is the superior, if not only, method for vindicating both the claims and defenses in this action and for promoting judicial economy.

Amalgamated Bank's motion is well-supported by the weight of authority, the financial economic expertise of Professor Steven P. Feinstein and a declaration of a representative of Amalgamated Bank regarding its commitment to this action. The motion should be granted.

## II.   STATEMENT OF FACTS

### A.   Summary of the Alleged Fraud

This is a securities class action on behalf of purchasers of CCA securities between February 27, 2012 and August 17, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). *See* ¶1. [2] CCA, a publicly traded real estate investment trust ("REIT"), that operates private prisons. ¶2. Five of its facilities were operated pursuant to contracts with the Federal Bureau of Prisons ("BOP"), from which CCA received over 10% of its revenue throughout the Class Period. ¶2.

The Complaint alleges that throughout the Class Period, Defendants engaged in a scheme to defraud and made numerous materially false and misleading statements and omissions to investors

---

[2]   All paragraph references ("¶_") are to Lead Plaintiff's Consolidated Complaint for Violation of the Federal Securities Laws (the "Complaint"). ECF. No. 57. Citations are omitted and emphasis added unless noted otherwise.

regarding CCA's business and operations, including by falsely stating that: (i) the outsourcing of correctional services to CCA resulted in improving correctional services for government agencies, including the BOP; (ii) CCA's facilities were operated "in accordance with" applicable policies, procedures and contractual requirements; (iii) CCA's renewal rate on contracts was and would remain high because of the "quality" of services it provided to government customers; and (iv) the outsourcing of correctional services to CCA resulted in significant costs savings for government agencies, including the BOP. *See* ECF No. 76 at 14-19.

Defendants knew or recklessly disregarded when making misrepresentations to investors: (i) that outsourcing correctional services to CCA did not result in higher quality services to government agencies; (ii) that CCA's facilities emphatically were not operated in accordance with government policies and contractual requirements; (iii) that CCA did not provide "quality" services that would cause government agencies to continue to renew their contracts with CCA; and (iv) that CCA did not create cost savings for the government. ¶170; ECF No. 76 at 24-30. In truth, the BOP regularly raised concerns with CCA's understaffing of facilities and failure to provide adequate health care to its inmates. ¶¶44-46, 53-58, 60, 62-66, 72-77, 79-80, 87-88, 92-95, 117; ECF No. 76 at 29, 41. Defendants consistently had access to and notice of these deficiencies, yet concealed them from investors and the public. ¶¶171-185; ECF No. 76 at 41-42.

On August 11, 2016, the U.S. Department of Justice Office of the Inspector General issued a report entitled "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons," which found that "in most key areas, contract prisons [specifically including CCA] incurred more safety and security incidents per capita than comparable BOP institutions." ¶¶38-39; ECF No. 76 at 19, 27. On August 18, 2016, Deputy Attorney General Sally Q. Yates issued a memorandum entitled "Reducing our Use of Private Prisons," which stated that contract prisons operated lower-quality facilities without saving substantially on costs and that the BOP should reduce the use of private

prisons. ¶¶41, 198; ECF No. 76 at 20, 27, 31. Following these revelations, CCA's stock price collapsed, dropping 53% in less than a week from a close of $27.56 per share on August 10, 2016 to an intraday low of $13.04 per share on August 18, 2016. ¶¶199-200; ECF No. 76 at 36-37. This stock price decline caused hundreds of millions of dollars in losses to CCA investors, who suffered damages when the truth began to be revealed. Lead Plaintiff seeks to recover these losses on behalf of the investors who purchased or otherwise acquired CCA securities during the Class Period.

B.      The Proposed Class Representative

On January 10, 2017, Amalgamated Bank was appointed Lead Plaintiff. ECF No. 52. Amalgamated Bank acts as Trustee for the LongView Collective Investment Fund. Amalgamated Bank is a socially responsible bank with over $4 billion in assets, and over $40 billion in custody and investment assets under management.[3] Amalgamated Bank acquired almost 159,000 shares of CCA common stock during the Class Period and suffered over $1.2 million in damages as a result of the violations of the federal securities laws alleged herein. ECF No. 40-3.

As Lead Plaintiff, Amalgamated Bank has expended time and effort informing itself about this case and in vigorously prosecuting this action on behalf of the proposed Class. Amalgamated Bank has participated in discovery and monitored and overseen the work of Lead Counsel, including by reviewing relevant pleadings and staying apprised of the developments in the case. *See* Innes Decl., ¶3. Court appointed Lead Counsel Robbins Geller, in turn, conducted an extensive investigation into Defendants' alleged misconduct, drafting a comprehensive consolidated complaint, successfully opposed Defendants' motion to dismiss, and has diligently pursued the discovery necessary to prove the Class' claims. *See* ECF Nos. 60-62, 67, 73, 76-77.

---

[3]     Declaration of Eleanor Innes ("Innes Decl."), ¶¶1-2, attached as Exhibit A to the Declaration of Christopher M. Wood ("Wood Decl."), submitted herewith.

# III.    ARGUMENT

Class actions "'vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.'" *Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 U.S. Dist. LEXIS 44445, at *87 (M.D. Tenn. Mar. 29, 2012) (alteration in original) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.11, (1981)).  The Supreme Court[4] and courts within the Sixth Circuit[5] overwhelmingly find that, in securities fraud actions, class treatment is an appropriate way to vindicate investors' rights. Because all of Rule 23's requirements are satisfied, the proposed Class should be certified.

## A.    The Standards for Class Certification

"In order to certify a class, the Court must be satisfied that the [plaintiff] has met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure." *BancorpSouth*, 2017 WL 2772122, at *2.  Rule 23(a) has four requirements: "the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative party are typical of those of the class; and the representative party will fairly and adequately protect the interests of the class."  *Id.*

A party seeking class certification must also satisfy the requirements of one of the categories of Rule 23(b).  Amalgamated Bank seeks certification pursuant to Rule 23(b)(3), which requires Lead Plaintiff to show that "common questions of law or fact predominate over any questions

---

[4]    *E.g.*, *Basic*, 485 U.S. at 229-30, 249-50; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 (2007); *Amchem*, 521 U.S. at 625; *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976)); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

[5]    *See, e.g.*, *Kasper v. AAC Holdings, Inc.*, 2017 WL 3008510, at *5 (M.D. Tenn. July 14, 2017); *Burges v. BancorpSouth, Inc.*, 2017 WL 2772122, at *11 (M.D. Tenn. June 26, 2017); *Psychiatric Sols.*, 2012 U.S. Dist. LEXIS at 44445; *Beach v. Healthways, Inc.*, 2010 U.S. Dist. LEXIS 33765 (M.D. Tenn. Apr. 2, 2010); *In re Direct Gen. Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006); *Castillo v. Envoy Corp.*, 206 F.R.D. 464 (M.D. Tenn. 2002); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009); *In re Accredo Health Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006).

- 5 -

affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at *6.

"'In determining the propriety of a class action, the question is not whether the plaintiff . . . ha[s] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Powers v. Fifth Third Mortg. Co.*, 2011 U.S. Dist. LEXIS 96458, at *30 (N.D. Ohio Aug. 12, 2011). Thus, Amalgamated Bank does not have to show that it will prevail on the merits of its claims. *Id.* As demonstrated below, this action satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3).

**B.    This Case Meets the Requirements of Rule 23(a) for Class Certification**

**1.    The Class Is Numerous**

Rule 23(a)(1) requires the class to be so numerous that joinder is impracticable. "Numerosity" is not measured by a "strict numerical test." *BancorpSouth*, 2017 WL 2772122, at *2 (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). Rather, a "substantial" number of members usually satisfies the requirement. *Id.* Further, "[p]laintiffs need not demonstrate that it would be impossible to join all the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Direct Gen*, 2006 U.S. Dist. LEXIS 56128, at *8-*9.

Though the exact number of persons who acquired CCA securities during the Class Period is not known, substantial numbers of investors traded in CCA securities. CCA issued more than 110 million shares of common stock that were traded on the New York Stock Exchange ("NYSE"), and at least 783 large institutional investors owned the Company's common stock.[6] Collectively, the members of the Class likely number in the thousands and reside in many states, making joinder impracticable.

---

[6] *See* Report on Market Efficiency, Professor Steven P. Feinstein, Ph.D., CFA ("Feinstein Report"), ¶¶61, 79, attached as Exhibit C to the Wood Declaration.

Nothing more is required to establish numerosity. Indeed, in cases like this one involving a nationally traded security, "[n]umerosity . . . is generally assumed to have been met." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 644 (S.D. Ohio 2017).[7] The proposed Class satisfies the numerosity requirement.

### 2. Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality does not require that all class members make identical claims and arguments. *Ross*, 257 F.R.D. at 442. Nor does it preclude class certification where "questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved." *BancorpSouth*, 2017 WL 2772122, at *3. Rather, "there need only be one question common to the class," so long as "the answer of that question [is] central to and advance[s] the litigation." *Kasper*, 2017 WL 3008510, at *10 (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).

Defendants made uniform misrepresentations to investors through their public statements filed with the U.S. Securities and Exchange Commission ("SEC") as well as in conference calls and investor presentations. Defendants' misrepresentations and omissions injured each Class member who acquired CCA securities during the Class Period. Thus, virtually all of the questions of law or fact at issue are common to Amalgamated Bank and all other acquirers of CCA securities during the Class Period, including: (a) whether the alleged statements and omissions were materially false or misleading; (b) whether the Exchange Act was violated by Defendants' acts; and (c) to what extent the Class members have sustained damages and the proper measure of damages. ¶¶205-210.

---

[7] *See also Accredo*, 2006 U.S. Dist. LEXIS 97621, at *17; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *8 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)) (certifying similar class); *Ross*, 257 F.R.D. at 442.

Evidentiary proof of these claims will necessarily be common to all members of the Class. *See Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010). In similar circumstances, courts have found the commonality requirement satisfied.[8] The proposed Class satisfies commonality.

### 3. Amalgamated Bank's Claims Are Typical of the Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." The Sixth Circuit has summarized the test: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. "The requirement of typicality is not onerous." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). The claims and defenses of a proposed class representative are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082; *BancorpSouth*, 2017 WL 2772122, at *4; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *11. Typicality exists where a "sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399.

The claims asserted by Amalgamated Bank are typical of the claims of the other Class members, in that Amalgamated Bank, like other Class members, purchased CCA securities at times and amounts reflecting the then prevailing market price without knowledge that it was artificially inflated, in violation of §§10(b) and 20(a) of the Exchange Act, by Defendants' fraud, causing the Class, including Amalgamated Bank, to suffer losses when the relevant truth was revealed. This is sufficient to establish typicality. *See Kasper*, 2017 WL 3008510, at *10.

---

[8] *E. g.*, *Kasper*, 2017 WL 3008510, at *5; *BancorpSouth*, 2017 WL 2772122, at *11; *Psychiatric Sols.*, 2012 U.S. Dist. LEXIS 44445, at *92-*97; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *10.

### 4. Amalgamated Bank Will Fairly and Adequately Protect the Interests of the Class

Adequacy requires that: (i) "the representative must have common interests with unnamed members of the class"; and (ii) "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083. The first of these two requirements overlaps with the commonality and typicality prerequisites and merely acts to ensure that the representatives have interests coextensive with, rather than antagonistic to, the interests of the unnamed class members. *See Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *14; *see also Weinberg v. Insituform Techs., Inc.*, 1995 U.S. Dist. LEXIS 5124, at *14-*15 (W.D. Tenn. Apr. 10, 1995). The second factor requires that the representatives have sufficient financial and personal involvement to encourage them to prosecute the action vigorously and adequate resources and legal representation to meet the demands of maintaining the action. *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *14. Lead Plaintiff clearly satisfies both prongs of Rule 23(a)(4)'s adequacy test.

Amalgamated Bank's interests are neither antagonistic to nor in conflict with the interests of the other Class members. To the contrary, Amalgamated Bank acquired CCA securities during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Class members. *See* Innes Decl., ¶2; ECF No. 40-3. Amalgamated Bank has been vigorously prosecuting this action to date and will continue to do so as Class Representative.

Amalgamated Bank has a significant financial stake in this litigation. *Id*. It has also demonstrated a willingness and ability to take an active role in the litigation to protect the interests of Class members. As set forth in its Declaration, Amalgamated Bank: (i) understands the requirements and responsibilities of serving as a class representative in a securities class action under the Private Securities Litigation Reform Act of 1995; (ii) has reviewed key pleadings in this action; (iii) intends to continue to supervise and monitor the progress of this litigation; and (iv) intends to work with counsel to maximize the recovery to the Class. Innes Decl., ¶¶3-5.

Amalgamated Bank has also demonstrated its adequacy by retaining attorneys with considerable experience in securities class actions. Robbins Geller has either served or is serving as lead counsel in many of the largest and most significant securities class actions in history. Wood Decl., Ex. B. Robbins Geller (then known as Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia")) served as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (MH) (S.D. Tex.) in which it secured the largest recovery ever obtained in a shareholder class action. The court in *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 790 (S.D. Tex. 2008), stated, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *Id.* at 789-90, 797; *see also Willis*, 242 F. Supp. 3d at 650 ("there can be no serious dispute that Robbins Geller is qualified, experienced, and generally able to conduct the litigation.").[9]

And more recently, Robbins Geller obtained recoveries in several cases in this district, including *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, and *Garden City v. Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 3:09-cv-00882. There can be no dispute that Amalgamated Bank's chosen counsel has, and will continue to, zealously represent the interests of all Class members.

### C. This Case Meets the Requirements of Rule 23(b)(3)

A class action must also satisfy one of the three conditions imposed by Rule 23(b). Amalgamated Bank moves for class certification under Rule 23(b)(3), which mandates certification where: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[9]    Robbins Geller, then known as Coughlin Stoia, also served as class counsel in *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio), obtaining the then-largest securities settlement in the Sixth Circuit. In approving the requested attorneys' fees, the court noted that "[t]he quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

## 1. Common Questions of Law and Fact Predominate

"Predominance is a test readily met in certain cases alleging . . . securities [claims]." *Amchem*, 521 U.S. at 625; *see also Basic*, 485 U.S. 224, 241. This is because the core elements of the claim – falsity, materiality, scienter, reliance, loss causation, and damages – all present issues susceptible to common proof as recognized by the Supreme Court and the Fifth Circuit.[10]

Predominance requires "a showing that ***questions*** common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191 (emphasis in original). "[P]laintiffs seeking class certification "need not prove that each element of a claim can be established by class-wide proof: 'What the rule does require is that common questions *predominate* over any questions affecting only individual [class] members.'" *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016), *cert. denied*, *Top Flite Fin. Inc. v. Bridging Cmtys. Inc.*, _U.S._, 138 S. Ct. 80 (2017) (quoting *Amgen*, 133 S. Ct. at 1196).

### a. The Claims of All Class Members Will Be Proved by the Same Evidence

Proving the relevant §10(b) claim for securities fraud requires proof of: (i) a misleading statement or omission; (ii) made by a defendant; (iii) while acting with scienter; (iv) that is material; (v) that was relied upon; and (vi) causing damage to the plaintiff. *E.g.*, *Ross*, 257 F.R.D. 439-40. A §20(a) control person claim requires proof of an additional element of "control." *Id.*

It is readily apparent that, as in most such cases, these elements will be tried and proven by common evidence. *See supra* at §III.B.2. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. "When a company's stock trades in a large and efficient market [as it does here], the contestable

---

[10]    *E.g.*, *Basic*, 485 U.S. 224, 241 (1988) (reliance); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, _U.S._, 133 S. Ct. 1184, 1196-97 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 812 (2011) (loss causation); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015), *cert. denied*, _U.S._, 136 S. Ct. 1824 (2016) (damages).

elements of the Rule 10b-5 claim reduce to false-hood, scienter, materiality, and loss. Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Schleicher*, 618 F.3d at 682.

**b.**     **Lead Plaintiff Is Entitled to a Presumption of Reliance Pursuant to Both *Basic* and *Affiliated Ute***

Common questions of law and fact also predominate because the Class is entitled to a presumption of reliance. *See Castillo*, 206 F.R.D. at 473-74. "[T]he Supreme Court has identified two avenues through which plaintiffs may invoke a rebuttable presumption of reliance." *Kasper*, 2017 WL 3008510, at *11. In an action involving false and misleading statements, courts look to the fraud-on-the-market presumption articulated by the Supreme Court in *Basic* and most recently reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, ("*Halliburton II*"), _U.S._, 134 S. Ct. 2398, 2407-08 (2014). In an action involving material omissions, plaintiffs rely on the *Affiliated Ute* presumption.[11] The application of one or the other depends on the "thrust" of the action. *Goodman v. Genworth Fin. Wealth Mgmt.*, 300 F.R.D. 90, 104 (E.D.N.Y. 2014) (application of *Basic* or *Affiliated Ute* depends on "the crux of plaintiffs' claims"). As Judge Crenshaw has recently determined, a plaintiff in a securities suit may rely on both the *Basic* and *Affiliated Ute* presumptions of reliance. "Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have [also] acknowledged the applicability of *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions." *BancorpSouth*, 2017 WL 2772122, at *10.

**c.**     **Lead Plaintiff Is Entitled to a Presumption of Reliance Pursuant to *Basic***

In an efficient market, reliance is presumed. *Halliburton II*, 134 S. Ct. at 2407-08; *Basic*, 485 U.S. at 247; *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990). This is

---

[11] *Van Dyke v. Sovereign Int'l Asset Mgmt.*, 2011 U.S. Dist. LEXIS 113227, at *19 (N.D. Ohio Sept. 30, 2011) ("reliance is presumed where the omitted information is material"); *Affiliated Ute*, 406 U.S. at 153-54 ("All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

because an efficient market rapidly reacts to new information, causing the price of securities to rise or fall as investors trade on the news. By purchasing a security at the price set by an efficient market, an investor is therefore constructively relying on all of the public information about the company.[12] Because reliance is presumed, individual issues of proof do not predominate, and a class may properly be certified. *E.g.*, *Basic*, 485 U.S. at 247; *Ross*, 257 F.R.D. at 453 ("The fraud on the market theory is key to satisfying the predominance requirement in class certification of securities fraud cases.").

Courts employ a well-known and straightforward test that relies principally on the *Cammer*[13] factors to asses market efficiency:

> In evaluating whether the market for an individual stock is efficient, courts have looked to a number of factors. The *Cammer* court identified five factors relevant to the determination of market efficiency: (1) the stock's average trading volume; (2) the number of analysts that followed and reported on the stock; (3) the number of market makers; (4) eligibility to file an S-3 Registration Statement; and (5) the reaction of the stock price to unexpected news events. Other courts have applied additional factors, based on economic literature, including: (1) the [market] capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock, not held by insiders (the "float").

*Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001); *accord Freeman*, 915 F.2d at 199. No one of these factors is determinative, nor are the factors to be applied as a "checklist." *BancorpSouth*, 2017 WL 2772122, at *8 n.10. "In most cases, evidence that a stock trades at high volumes on a large national market, such as the NYSE or NASDAQ, and is followed by a large number of analysts will be sufficient to satisfy the *Basic* presumption on class certification." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 83 (S.D.N.Y. 2015).

---

[12] *Basic*, 485 U.S. at 241-42; *accord Erica P. John Fund, Inc. v. Halliburton*, _U.S._, 131 S. Ct. 2179, 2185 (2011); *Freeman*, 915 F.2d at 197; *Schleicher*, 618 F.3d at 682; *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003); *Castillo*, 206 F.R.D. at 473-74; *Ross*, 257 F.R.D. at 453-54.

[13] *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989).

### (1) Average Trading Volume

Courts recognize an average weekly trading volume that exceeds 2% of the total outstanding shares of the company as a sign of an efficient market. *E.g.*, *Krogman*, 202 F.R.D. at 474; *Cammer*, 711 F. Supp. at 1293; *e.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *22 n.3. Here, the benchmark is exceeded, as CCA's average weekly turnover rate was 4.6 million shares, or 4.19% of its outstanding shares. Feinstein Report, ¶50.

### (2) Number of Analysts

The existence of numerous analysts is another indicator of an efficient market, as it indicates that new information is rapidly being disseminated to and acted on by investors. *E.g.*, *Krogman*, 202 F.R.D. at 474. The presence of even a single analyst can support an efficient market. *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514-15 (1st Cir. 2005).[14] Here, there were at least 15 different firms that covered CCA during the Class Period, eight of which published analyst reports (analyst issued at least 218 reports about CCA during the Class Period). Feinstein Report, ¶¶55-56; *see also id.* at Appendix-1.

### (3) Presence of Market Makers

A market maker is an entity that agrees to purchase or sell securities on demand to support a liquid market for the shares. The more market makers a security has, the more traders there are and the more efficient the market will be in responding to new information about the issuer, thereby incorporating that information into the market price. *Cammer*, 711 F. Supp. at 1286-87. During the Class Period, there were at least 223 market makers for CCA stock. Feinstein Report, ¶67. This supports market efficiency.[15]

---

[14] *See also In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008) (three analysts sufficient) *aff'd*, 639 F.3d 623 (3rd Cir. 2011); *City of Ann Arbor Emps' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 256 (D.S.C. 2010) (six analysts sufficient).

[15] *E.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *23 (37 market makers "strongly supports" market efficiency); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 500 (S.D. Fla. 2003) (15-19

### (4)    Eligibility to File an S-3 Registration Statement

The SEC permits the use of an S-3 short form Registration Statement by issuers whose securities are presumed to be actively traded and widely followed, as demonstrated by a history of making required SEC filings and a market capitalization in excess of $75 million.[16]  As a public company with a market capitalization that averaged $3.7 billion throughout the Class Period, CCA was eligible to use the Form S-3 Registration Statement throughout the Class Period.  Feinstein Report, ¶72.  In fact, CCA did file an S-3 Registration Statement during the Class Period, on May 15, 2015.  *Id*. at ¶73.  This factor supports a finding that the market for CCA securities was efficient.

### (5)    Reaction of Stock to Unexpected Corporate Events or Financial Releases

Evidence that the price of a security regularly reacts to news about the issuer is strong evidence of an efficient market.  *E.g.*, *Cammer*, 711 F. Supp. at 1287.  The event study conducted by Professor Feinstein conclusively demonstrates that CCA's stock reacted rapidly to new and unexpected information.  *See* Feinstein Report, ¶¶87-148.

Professor Feinstein analyzed whether CCA's stock reacted to new information by performing a collective analysis of news days.  For this test, he examined CCA's earnings and guidance announcements that occurred over the course of the Class Period.  His expert report shows that greater stock price movements occurred on earnings and guidance announcement days as compared to all other days, 47.37% for news days against only 5.05% for non-news days, which is indicative of market efficiency.  Feinstein Report, ¶¶127-128; *see also id*. at ¶¶129-143.  Professor Feinstein's analyses show that for the events tested, there was a strong, statistically significant price reaction to

---

market makers sufficient to show market is efficient); *Cammer*, 711 F. Supp. at 1283 n.30 (11 market makers justifies substantial presumption of efficiency).

[16]  *E.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *24 n.4 ("'eligibility to file the S-3 form is predicated on the SEC's belief that the market for the company's stock already operates efficiently'"); *accord Harman v. Lyphomed, Inc.*, 122 F.R.D. 522, 525 (N.D. Ill. 1988); *Krogman*, 202 F.R.D. at 477; *Castillo*, 206 F.R.D. at 470; *DVI*, 249 F.R.D. at 210.

new, Company-specific news. *Id.* This demonstrates the market for CCA securities was efficient. *See* Feinstein Report, ¶144.

### (6)     Market Capitalization

The greater level of demand for investments in highly capitalized companies typically results in an active market for the securities they issue, leading some courts to presume that the market for such securities is efficient. *E.g.*, *Krogman*, 202 F.R.D. at 478. CCA's market capitalization averaged $3.7 billion throughout the Class Period, providing significant support for a finding of market efficiency. Feinstein Report, ¶¶75-76; *see, e.g.*, *DVI*, 249 F.R.D. at 212 (market capitalization of between $12 million and $300 million supports market efficiency); *In re NetBank Inc. Sec. Litig.*, 259 F.R.D. 656, 672 (N.D. Ga. 2009) ($246 to $432 million sufficient).

### (7)     Float

"In determining efficiency, courts also consider the percentage of shares held by the public, rather than insiders," also known as float. *Krogman*, 202 F.R.D. at 478. Here, CCA's float averaged $3.7 billion during the Class Period, meaning the Company's float was still larger than the total market capitalization of at least 80% of all other publicly-traded companies in the U.S. Feinstein Report, ¶¶78-80. And as a percentage of shares, CCA's float averaged 98.8% of shares outstanding (*i.e.*, an average of 110.7 million shares outstanding held by non-insiders, against an average of 112.0 million shares outstanding insiders and non-insiders, total). *Id.* at ¶79. The large size of CCA's float, measured as an absolute number or as relative value, is indicative of the efficiency of the market for its stock throughout the Class Period.

### (8)     Bid-Ask Spread

The bid-ask spread reflects the difference between the price at which investors are willing to buy and the price at which they are willing to sell a security. *Krogman*, 202 F.R.D. at 478. The smaller the bid-ask spread, the more efficient the market is presumed to be. *Id.* Here, the average

bid-ask spread for CCA common stock was 0.03% during the Class Period.  Feinstein Report, ¶¶84-85.  Hence, this factor, too, weighs in favor of a finding of market efficiency.  *Id*.; *e.g.*, *Krogman*, 202 F.R.D. at 478 (median bid-ask spread of 5.6% supports market efficiency); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1339 (N.D. Ga. 2007) (that spread never exceeded 1.9% "weighs heavily in favor of a finding of market efficiency").

Because the *Cammer* and *Krogman* factors are easily satisfied here, members of the Class are entitled to a presumption that they relied on each of the false and misleading statements and omissions on which this action is based.  *E.g.*, *Basic*, 485 U.S. at 247.

### d.  Lead Plaintiff Is Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute*

Lead Plaintiff is also entitled a presumption of reliance pursuant to *Affiliated Ute*.  The *Affiliated Ute* presumption applies to claims "involving primarily a failure to disclose."  406 U.S. at 153; *see, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  In such circumstances, "positive proof of reliance is ***not*** a prerequisite to recovery."  *Affiliated Ute*, 406 U.S. at 153-54; *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 717 (8th Cir. 1978) (acknowledging "'"reliance has little rational role" in cases of nondisclosure, largely because of the difficulty of proving reliance on the negative'").  Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision."  *Affiliated Ute*, 406 U.S. at 153-54.

The *Affiliated Ute* presumption reflects the reality that where information is omitted, "'reliance as a practical matter is impossible to prove.'"  *In re Facebook, Inc., IPO & Secs. & Derivative Litig*., 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013); *In re Smith Barney Transfer Agent Litig*., 290 F.R.D. 42, 47 (S.D.N.Y. 2013).

Furthermore, because materiality itself is a common question, a plaintiff need not prove materiality in order to invoke the *Affiliated Ute* presumption; it need only be alleged.  "[B]ecause

'[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class." *Amgen*, 133 S. Ct. at 1195.

The Court has found that Lead Plaintiff has alleged actionable omissions, holding that "where a defendant initially had no obligation to disclose facts on a particular subject, but he chooses voluntarily to address the subject in relation to a securities transaction, he 'assume[s] a duty to speak fully and truthfully on th[e] subject[].'" ECF No. 76 at 25. The Court also found Defendants understood that violations of their contractual obligations could "if of a significant magnitude, give rise to a disclosure obligation." *Id.* at 29-30. Because the Complaint alleges actionable omissions, Amalgamated Bank is also entitled to rely on the *Affiliated Ute* presumption to establish reliance and Rule 23(b)(3) is satisfied.

## 2. A Class Action Is Superior to Alternative Methods for Resolving This Dispute

Rule 23(b)(3) requires that a class action also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides four factors for courts to consider in evaluating the superiority requirement: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.

Courts have found superiority met where: (i) many class members likely suffered only small losses, making it impracticable to proceed with their claims as individuals; (ii) use of the class vehicle will achieve judicial economy, as well as prevent inconsistent judgments; and (iii) there are

no other actions against the company involving the same claims, and the court foresees no particular difficulties with adjudicating the class action.[17]

Here, a class action is superior to any other available method of adjudication. Defendants' alleged violations of the federal securities laws caused economic injury to a large number of geographically dispersed investors, making the cost of pursuing individual claims plainly impracticable. Resolving the claims in this case on a class-wide basis will promote judicial economy since the alternative would be to have thousands of separate individual actions, which offers no practical recourse for most Class members and would indisputably burden the judicial system. Finally, there is no reason to expect any difficulty in the management of this case as a class action.

The alternatives to a class action are either no recourse for thousands of class members or a multiplicity of suits, which would result in the inefficient administration of justice and the risk of inconsistent judgments. *See Psychiatric Sols.*, 2012 U.S. Dist. LEXIS 44445, at *105. This is precisely the "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979). Thus, the class action device is superior to any other means to adjudicate this action.

### 3. The Event Study Methodology Is Capable of Measuring Damages on a Class-wide Basis

Proof of damages is not a prerequisite to class certification, nor does it present individual issues likely to predominate over common issues.[18] Where, like here, Lead Plaintiff has demonstrated "'a "viable method" is available to prove damages on a classwide basis,'" that is more

---

[17] *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually); *Psychiatric Sols*, 2012 U.S. Dist. LEXIS 44445, at *105 ("certification of [a securities] class action is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency").

[18] *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993) (class action certification was appropriate, even though some investors made money and some lost money, because questions of liability were common to all class members regardless of their level of damages); *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (commonality of damages is not legally indispensable to certification); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 640 n.23 (3d Cir. 2011).

than sufficient. *In re Heckmann Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 79345, at *42 (D. Del. June 6, 2013) (quoting *In re Neurontin Antitrust Litig.*, 2011 U.S. Dist. LEXIS 7453, at *40 (D.N.J. Jan. 25, 2011)).

Amalgamated Bank has shown how the event study methodology is capable of calculating damages on a class-wide basis, consistent with its theory of the case. Feinstein Report, ¶¶149-155. The event study methodology is a widely accepted method for evaluating market efficiency, materiality and damages. *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 251 (N.D. Cal. 2013). The use of the event study methodology, detailed in the Feinstein Report, is capable of calculating class-wide damages in accordance with widely used and generally accepted methodologies and the applicable statutes. *See id.* at ¶153. Further, the approach described allows the calculation of class-wide damages to be specifically responsive to varying allegations of misrepresentation and omission. *Id.* at ¶151.

## IV. CONCLUSION

For the foregoing reasons, the Motion should be granted.

DATED: June 1, 2018        ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853


            s/ Christopher M. Wood
            CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 1, 2018.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anna E. Berces**
  anna.berces@lw.com

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,smcclenahan@barrettjohnston.com,nchanin@barrettjohnston.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,ptiffith@rgrdlaw.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)