# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>                Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>DEMAND FOR JURY TRIAL |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCLOSURE OF IDENTITY OF PLAINTIFF'S CONFIDENTIAL WITNESS**

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 2 |
| | A. | PLAINTIFF SHOWCASED FE1 IN THE COMPLAINT | 2 |
| | B. | THE COURT RELIED UPON FE1'S ALLEGATIONS IN DENYING DEFENDANTS' MOTION TO DISMISS | 4 |
| | C. | PLAINTIFF REFUSES TO DISCLOSE THE IDENTITY OF FE1 | 5 |
| III. | ARGUMENT | | 5 |
| | A. | THE IDENTITY OF FE1 IS RELEVANT | 5 |
| | B. | THE IDENTITY OF FE1 DOES NOT CONSTITUTE WORK PRODUCT | 6 |
| | C. | EVEN IF THE IDENTITY OF FE1 CONSTITUTED WORK PRODUCT, PLAINTIFF WAIVED ANY PROTECTION BY SHOWCASING FE1 IN THE COMPLAINT | 8 |
| | D. | PUBLIC POLICY DOES NOT PRECLUDE DISCLOSURE OF THE IDENTITY OF FE1 | 9 |
| IV. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
   2012 WL 1134142 (S.D.N.Y. Mar. 6, 2012) ................................................................... 7

*In re Amgen Inc. Sec. Litig.*,
   2013 WL 12139088 (C.D. Cal. Dec. 2, 2013) ............................................................ 5, 7

*In re Connetics Corp. Sec. Litig.*,
   2009 WL 1126508 (N.D. Cal. Apr. 27, 2009) ................................................................. 7

*In re Cooper Companies Inc. Sec. Litig.*,
   2008 WL 11339612 (C.D. Cal. Oct. 1, 2008) ................................................................. 8

*In re Faro Technologies Sec. Litig.*,
   2008 WL 205318 (M.D. Fla. Jan. 23, 2008) ................................................................... 9

*In re Harmonic, Inc. Sec. Litig.*,
   245 F.R.D. 424 (N.D. Cal. 2007) ................................................................................ 6, 8

*Hatamian v. Advanced Micro Devices, Inc.*,
   2015 WL 5604392 (N.D. Cal. Sep. 24, 2015) ................................................................. 7

*Hubbard v. Bankatlantic Bancorp, Inc.*,
   2009 WL 3856458 (S.D. Fla. Nov. 17, 2009) ................................................................. 7

*Miller v. Ventro Corp.*,
   2004 WL 868202 (N.D. Cal. Apr. 21, 2004) ............................................................... 5, 9

*In re MTI Technology Corp. Sec. Litig.*,
   2002 WL 32344347 (C.D. Cal. June 13, 2002) ............................................................... 8

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.*
   *Arbitron, Inc.*,
   278 F.R.D. 335 (S.D.N.Y. 2011) ........................................................................... 6, 8, 9

*Ross v. Abercrombie & Fitch Co.*,
   2008 WL 821059 (S.D. Ohio Mar. 24, 2008) .............................................................. 8, 9

*Schueneman v. Arena Pharm., Inc.*,
   2017 WL 3118738 (S.D. Cal. July 21, 2017) .................................................................. 5

*In re St. Paul Travelers Sec. Litig. II*,
   2007 U.S. Dist. LEXIS 34527 (D. Minn. 2007) ........................................................... 7, 8

**RULES**

Fed. R. Civ. P. 26(b)(3)..................................................................................................................6

## I. INTRODUCTION

In an effort to overcome the heightened pleading standards imposed by the Private Securities Litigation Reform Act (the "PSLRA"), Plaintiff's Complaint features detailed information purportedly provided by a former employee of CoreCivic ("FE1"). Plaintiff claims that FE1 possesses firsthand knowledge of issues that allegedly culminated in violations of the federal securities laws. In fact, Plaintiff devoted seven separate paragraphs of its Complaint to FE1. Thereafter, the Court expressly relied upon the allegations attributed to FE1 in denying Defendants' Motion to Dismiss.

Having unsuccessfully attempted to resolve this issue through discovery and the meet and confer process, Defendants seek the Court's assistance to attain the answer to one simple question: who is FE1? Plaintiff continues to refuse to disclose FE1's identity, claiming that it is irrelevant and constitutes attorney work product. But as an initial matter, because Plaintiff relied upon FE1 in the Complaint, FE1 unquestionably possesses relevant, discoverable information. Moreover, as noted, the Court repeatedly cited FE1's statements in denying Defendants' Motion to Dismiss. Defendants are entitled to question FE1 about the bases for his or her alleged statements, test his or her credibility, and determine whether Plaintiff captured FE1's statements completely and accurately in the Complaint.

As far as any work-product interest is concerned, the cat is out of the bag. Plaintiff told the world that it spoke to FE1—and then conveyed what FE1 purportedly told Plaintiff. Nothing about FE1's identity would reveal any more of Plaintiff's case strategy than it has already voluntarily divulged. The issue, therefore, is not about revealing Plaintiff's work product—there are no mental impressions to disclose—but rather whether Plaintiff should be permitted to rely upon FE1 to satisfy the PSLRA's heightened pleading standards but then jettison FE1 when Defendants attempt to seek discovery to which they are entitled.

Numerous courts, in nearly identical circumstances, have agreed that the mere names of confidential witnesses are not attorney work product. Even if the identities could be considered work product, Plaintiff waived any protection by showcasing FE1's statements in the Complaint. Plaintiff cannot affirmatively use FE1 to bolster its claims, and then invoke the work product doctrine to shield FE1's identity from disclosure. Finally, public policy does not preclude disclosure of FE1's identity. Plaintiff has not articulated any substantiated concern for retaliation considering that, according to the Complaint, FE1's employment at CoreCivic ended sometime during the Class Period. Any "chilling effect" is speculative, is far outweighed by Defendants' need for this discovery, and in any event, can be addressed through careful application of the Protective Order. *See* Stipulation and Protective Order (Dkt. 84).

Accordingly, for the reasons set forth in greater detail below, Defendants respectfully request that the Court order Plaintiff to disclose the identity of FE1.

## II. STATEMENT OF FACTS

### A. PLAINTIFF SHOWCASED FE1 IN THE COMPLAINT

In this case, Plaintiff alleges that Defendants made materially false or misleading statements from February 27, 2012 to August 17, 2016. These statements primarily concern the quality or cost-effectiveness of the services that CoreCivic provided as compared to the Federal Bureau of Prisons ("BOP"), which allegedly painted a misleading picture of the potential for future contract renewals. Plaintiff alleges that the truth of these alleged misstatements were revealed following the release of then-Deputy Attorney General Sally Q. Yates memorandum announcing the U.S. Department of Justice's intention to reduce, and ultimately end, the BOP's use of privately operated corrections facilities.

In an effort to bolster its allegations of scienter under the PSLRA, Plaintiff devoted seven paragraphs of its Complaint to facts allegedly attributed to FE1:

- A former employee of CCA confirms that, in fact, these types of notices and reports were routinely entered into CCA's systems and sent to its most senior executives, including defendants Damon T. Hininger ("Hininger), CCA's chief executive officer ("CEO"), Todd J. Mullenger ("Mullenger"), CCA's chief financial officer("CFO"), and Harley G. Lappin ("Lappin"), CCA's chief corrections officer ("CCO"). This supports a strong inference that the Individual Defendants had actual knowledge or recklessly disregarded the Company's significant and material deficiencies. Consolidated Complaint (Dkt. No. 57) ("Compl."), ¶ 10.

- In addition to these extensive systems and controls described by CCA, a former CCA employee ("FE1"), who worked at one of CCA's BOP facilities for over ten years, including for most of the Class Period, reported how senior CCA officers became aware of deficiencies in CCA's facilities. For most of that time, and until FE1 left CCA, FE1 acted as a Quality Assurance ("QA") Manager. As QA Manager, FE1 was a direct liaison to the BOP regarding the facility's compliance with BOP standards and requirements. Compl., ¶ 174.

- According to FE1, CCA facilities were regularly audited by the BOP, and CCA would be aware of the questions and items to be examined. FE1 reported that CCA had an audit tool that was given to the facilities, which enabled the facilities to know what would be examined during the audit and thereby help prepare for it. In addition, if a facility experienced that the BOP was looking at a particular area, then the facility would send the individual from the facility who was responsible for that area to the other facilities so they could benefit from this advance knowledge. Compl., ¶ 175.

- The results of the audits of the various BOP facilities were disseminated by e-mail to the other QA Managers at CCA's BOP facilities. The results of the audits were also entered into and available in two databases. One database was used for deficiencies related to the facilities. Another database was used to document specific incidents at the facilities. According to FE1, the results of every audit of CCA's prisons were required to be entered into and available in these two systems, and reports were generated on a monthly basis. According to FE1, the QA Managers at the facilities entered the data into the system, and an individual at the corporate headquarters was in charge of data tracking related to the systems. The QA Managers also reported into the systems any and all contacts they had with BOP personnel. Compl., ¶ 176.

- According to FE1, the QA Managers were also responsible for auditing all of the six key operating areas of their prisons (e.g., security, medical and human resources, among others). Each month a different operating area would be audited by the QA Managers so that every six months they would begin looking at the same areas again. The results of these QA Manager audits were also entered into the systems. Compl., ¶ 177.

- According to FE1, in addition to the BOP's regular audits (the results of which were entered into the systems), the BOP also conducted *ad hoc*

- 3 -

inspections. These *ad hoc* inspections could result in Notices of Concern, which were also entered into the systems. Compl., ¶ 178.

- According to FE1, all of the information related to audits, both by the BOP and by CCA, that was entered into the systems would go to senior executives at CCA headquarters, including defendants Hininger, Mullenger and Lappin. According to FE1, BOP policy required that CCA senior executives receive the results of facility audits. Compl., ¶ 179.

### B. THE COURT RELIED UPON FE1'S ALLEGATIONS IN DENYING DEFENDANTS' MOTION TO DISMISS

The allegations of FE1 were thereafter featured prominently in the Court's order denying Defendants' Motion to Dismiss:

- Amalgamated identifies a pseudonymous former CoreCivic employee, "FE1," who worked as a quality assurance ("QA") manager for CoreCivic during some of the Class Period. According to FE1, CCA facilities were regularly audited by the BOP, and FE1 and other QA managers routinely communicated about the subject and results of the audits. The results of BOP and internal QAD audits, as well as BOP Notices of Concern, were entered into two databases, one for deficiencies and one for specific incidents. According to FE1, reports were generated from the databases on a monthly basis. ***FE1 claims that the audit information entered into the databases would "go to senior executives . . . including defendants Hininger, Mullenger and Lappin."*** FE1 claims specifically that BOP policy required that CoreCivic senior executives receive the results of facility audits. Motion to Dismiss Order ("MTD Order") (Dkt. No. 77), p. 13-14 (citations omitted) (emphasis added).

- At the very least, CoreCivic's own statements establish that (1) the company engaged in ongoing monitoring and analysis of the quality of its services and (2) key CoreCivic decision makers were made aware of the results thereof. ***The information provided by FE1 completes the picture by confirming that (3) the ongoing QAD tracking included the results of BOP audits and Notices of Concern and (4) Hininger, Mullenger, and Lappin were among the senior executives who routinely received QAD information***. MTD Order, p. 40 (citations omitted) (emphasis added).

- CoreCivic makes much of the fact that FE1 has not claimed to have spoken directly to any of the Individual Defendants. Amalgamated, however, has explained ***the basis of FE1's claims: as a QA manager, he was ensconced in the company's QA processes and knowledgeable of the company's practices.*** MTD Order, fn. 8 (citations omitted) (emphasis added).

### C. PLAINTIFF REFUSES TO DISCLOSE THE IDENTITY OF FE1

Defendants requested information regarding FE1 in three of its First Set of Interrogatories and seven of its First Set of Requests for Production of Documents. Through the meet and confer discussions that followed, the parties were able to narrow dispute to one single question: who is FE1? Plaintiff continues to refuse to identify FE1. The Court held a telephonic conference on this issue on July 6, 2018 and ordered Defendants to file this Motion. *See* Dkt. No. 95.

### III. ARGUMENT

Plaintiff claims: (1) FE1 is "not relevant" because Plaintiff does not intend to call FE1 as a witness at trial; (2) the identity of FE1 is "protected work product"; and (3) public policy supports keeping the identity of FE1 confidential. As set forth below, Plaintiff's arguments are unfounded as a matter of law and should be rejected in their entirety.

### A. THE IDENTITY OF FE1 IS RELEVANT

Plaintiff first argues that FE1 is not relevant because it "does not presently intend to call FE1 as a witness at trial." *See* Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories, Response to Interrogatory No. 8 (attached hereto as Exhibit A). That argument misses the mark. Plaintiff chose to bolster its Complaint with the statements of FE1, and thus "the identit[y] of [FE1 is] highly relevant and reasonably calculated to lead to discoverable evidence." *See Miller v. Ventro Corp.*, 2004 WL 868202, at *2 (N.D. Cal. Apr. 21, 2004). Requiring Plaintiff to identify the names of an individual whose statements it found important enough to include in its Complaint is not only appropriate, it is the "very essence of the discovery process." *In re Amgen Inc. Sec. Litig.*, 2013 WL 12139088, at *3 (C.D. Cal. Dec. 2, 2013). Indeed, in light of Plaintiff's repeated assertion in the Complaint that FE1 possesses firsthand knowledge of the facts underlying its claims, the deposition of FE1 is likely to reveal "admissible, and possibly highly probative, evidence." *Schueneman v. Arena Pharm., Inc.*, 2017

- 5 -
Case 3:16-cv-02267   Document 97   Filed 07/11/18   Page 9 of 16 PageID #: 2053

WL 3118738, at *5 (S.D. Cal. July 21, 2017); *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 339 (S.D.N.Y. 2011) ("Inasmuch as Lead Plaintiff has represented that the 11 CIs have 'firsthand knowledge' of specific facts tending to establish Arbitron's liability for securities fraud, such interviews or depositions are reasonably likely themselves to constitute or reveal admissible, if not highly probative, evidence.").

If there were any doubt, the Court need look any further than its own Order on Defendants' Motion to Dismiss. In denying Defendants' Motion to Dismiss, the Court stated:

> At the very least, CoreCivic's own statements establish that (1) the company engaged in ongoing monitoring and analysis of the quality of its services and (2) key CoreCivic decision makers were made aware of the results thereof. ***The information provided by FE1 completes the picture by confirming that (3) the ongoing QAD tracking included the results of BOP audits and Notices of Concern and (4) Hininger, Mullenger, and Lappin were among the senior executives who routinely received QAD information***.

MTD Order, p. 40 (citations omitted) (emphasis added).

Plaintiff's apparent decision to no longer rely on FE1, and outright refusal to even identify FE1 begs the question: why would Plaintiff strategically include FE1 in its pleadings only to then stonewall Defendants' legitimate efforts to probe the accuracy and veracity of the statements attributed to FE1. Regardless of the reasons behind Plaintiff's manifest change in strategy, Defendants are entitled to explore these relevant issues.

### B. THE IDENTITY OF FE1 DOES NOT CONSTITUTE WORK PRODUCT

The work product doctrine shelters counsel's "mental impressions, conclusions, opinions, or legal theories" (Fed. R. Civ. P. 26(b)(3))—none of which are revealed by disclosing the names of confidential witnesses, as numerous courts have found. *See, e.g., Arbitron*, 278 F.R.D. at 340 ("the names of the persons identified in the SAC as confidential informants are not entitled to any work product protection"); *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 428-29 (N.D.

Cal. 2007) (rejecting plaintiff's claim that "disclosing the identities of the CWs will reveal the mental impressions of counsel"); *Amgen*, 2013 WL 12139088, at *3 ("[T]he [identity of the confidential witnesses] is not work product, and must be produced.").

This is especially true when the plaintiff, as Plaintiff has here, relies on statements of a confidential witness for allegations in the complaint. *See, e.g., In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 2012 WL 1134142, at *4 (S.D.N.Y. Mar. 6, 2012) ("[S]ubstantial case law…support[s] Defendants' position here – that Plaintiffs should not be permitted to rely on the testimony of confidential witnesses to state their claims, and then withhold the identities of the confidential witnesses during discovery."); *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 5604392, at *2 (N.D. Cal. Sep. 24, 2015) (finding the name of a confidential witness not to be work product because revealing the name did "not disclose counsel's tactical or strategic thoughts" since counsel had already included the witness' statements in the complaint); *Hubbard v. Bankatlantic Bancorp, Inc.*, 2009 WL 3856458, at *2 (S.D. Fla. Nov. 17, 2009) ("The names of the confidential witnesses whom Plaintiffs relied upon in their Complaint are discoverable.").

Plaintiffs thus "have made no secret of their mental impressions. [It] reveal[ed] which witness statements [it] evaluated as being important by attributing statements to particular witnesses" in the Complaint. *In re Connetics Corp. Sec. Litig.*, 2009 WL 1126508, at *2 (N.D. Cal. Apr. 27, 2009). Identifying FE1 "will not reveal any more of the mental impressions, conclusions, opinions and legal theories of Plaintiff['s] attorneys than Plaintiff['s] attorneys have already chosen to reveal in the Complaint." *Hubbard*, 2009 WL 3856458, at *3.

Against the substantial weight of the case law, during the July 6, 2018 telephonic hearing with the Court, Plaintiff cited *In re St. Paul Travelers Sec. Litig. II,* 2007 U.S. Dist. LEXIS 34527 (D. Minn. 2007). That case is readily distinguishable. First, the *St. Paul* court applied an "extremely deferential" standard in reviewing a magistrate judge's discovery order. *Id.* at *4.

- 7 -

More importantly, there is no indication from the court's decision about the extent to which the confidential witness was relied upon in ruling on the motion to dismiss. *Id.* at *5-7. To the contrary, the court noted that the "information that could be provided by the confidential witness does not appear to be crucial." *Id.* at *7. Finally, and in any event, the *St. Paul* case represents a stark outlier when viewed alongside the bulk of the other (and more recent) legal authorities on this issue.[1]

### C. EVEN IF THE IDENTITY OF FE1 CONSTITUTED WORK PRODUCT, PLAINTIFF WAIVED ANY PROTECTION BY SHOWCASING FE1 IN THE COMPLAINT

Even if FE1's identity constituted work product (it does not), Plaintiff has waived that protection by divulging the statements made by FE1. *See Arbitron*, 278 F.R.D. at 341 ("[W]here a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product.") (*citing Ross v. Abercrombie & Fitch Co.*, 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008); *id.* ("[P]artial disclosure of information protected by the work product doctrine may constitute a waiver, and [] a party is not permitted to use such doctrines as both a shield and a sword.") (*citing Ross*, 2008 WL 821059, at *3); *In re Cooper Companies Inc. Sec. Litig.*, 2008 WL 11339612, at *2 (C.D. Cal. Oct. 1, 2008) ("plaintiff already has divulged in the Amended Consolidated Complaint certain statements allegedly made by the [witnesses]" and "implicitly has already indicated that plaintiff's counsel considers the

---

[1] During the July 6, 2018 telephonic hearing, Plaintiff also cited *In re MTI Technology Corp. Sec. Litig.*, 2002 WL 32344347 (C.D. Cal. June 13, 2002) – which Plaintiff referred to as *Ferruza v. MTI Technology*. *MTI* involved a situation where defendants sought disclosure of witnesses interviewed for purposes of drafting the complaint, *but that were not named in the complaint*. *See MTI*, 2002 WL 32344347, at *3 ("the identity of witnesses interviewed by opposing counsel is protected…[s]uch evaluations, impressions, and strategy are at the heart of the work product rule"). The *Arbitron* case explained this important distinction: "[W]here a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product." *Arbitron*, 278 F.R.D. at 341 (*citing Ross v. Abercrombie & Fitch Co.*, 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008).

knowledge of these witnesses important"); *Harmonic,* 245 F.R.D. at 428 (plaintiffs "already revealed their legal strategy by including the CWs' statements in the [complaint]"); *In re Faro Technologies Sec. Litig.*, 2008 WL 205318, at *2 n.1 (M.D. Fla. Jan. 23, 2008) ("Plaintiff has already pled *generally* who they are . . . and *specifically* what they know.  Their name and address does not add to counsel's mental impression.").

It would be "unfair to permit Plaintiff[] to rely so heavily on [FE1] in the complaint, yet to keep [his or her] identit[y]" from Defendants.  *Ventro*, 2004 WL 868202, at *2.  For this reason, where "a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of a confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product." *Arbitron*, 278 F.R.D. at 341 (*citing Ross*, 2008 WL 821059, at *3).

That is precisely what Plaintiff attempts to do here.  It swung the sword of firsthand confidential witness knowledge to bolster the allegations in its Complaint.  Now it wields the work product shield to prevent Defendants from testing those allegations.  When Plaintiff disclosed FE1's statements in its Complaint, it waived any protection over the identity of FE1 for purposes of discovery.

### D. PUBLIC POLICY DOES NOT PRECLUDE DISCLOSURE OF THE IDENTITY OF FE1

Finally, Plaintiff claims that public policy precludes it from disclosing the identity of FE1.  This argument can be disposed of in short order.  To date, Plaintiff has not articulated any substantiated bases for retaliation, particularly in light of what the Complaint makes clear – that FE1 has not worked for CoreCivic since sometime during the Class Period.  Moreover, to the extent there is any concern regarding a broader "chilling effect," that concern is purely speculative and can be addressed through careful application of the Protective Order.

## IV. CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court grant its Motion to Compel and require Plaintiff to disclose the identity of FE1.

DATED: July 11, 2018

Respectfully submitted:

 /s/ Steven A. Riley
Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Faraz Mohammadi (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Ave.
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
faraz.mohammadi@lw.com

Anna E. Berces (admitted *pro hac vice)*
Morgan E. Whitworth (admitted *pro hac vice)*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
T: (415) 391-0600
F: (415) 395-8095
anna.berces@lw.com
morgan.whitworth@lw.com

*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com


Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars
Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

- 11 -
Case 3:16-cv-02267   Document 97   Filed 07/11/18   Page 15 of 16 PageID #: 2059

| | |
|---|---|
| Christopher Hamp Lyons<br>Christopher M. Wood<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>414 Union Street<br>Suite 900<br>Nashville, TN 37219<br>clyons@rgrdlaw.com<br>cwood@rgrdlaw.com | Dennis J. Herman<br>Willow E. Radcliffe<br>Kenneth J. Black<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>dennish@rgrdlaw.com<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |

this 11th day of July, 2018.

  /s/ Steven A. Riley
Steven A. Riley