2015 WL 5604392
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Babak Hatamian, et al., Plaintiffs,
v.
Advanced Micro Devices, Inc., et al., Defendants.

Case No. 14-cv-00226-YGR (JSC)
|
Signed September 24, 2015

**Attorneys and Law Firms**

Joy Ann Kruse, Lieff Cabraser Heimann & Bernstein,
LLP, San Francisco, CA, for Plaintiffs.

Patrick Edward Gibbs, Matthew Rawlinson, Ming M.
Zhu, Latham & Watkins LLP, Menlo Park, CA, Melanie
Marilyn Blunschi, Latham and Watkins LLP, San
Francisco, CA, for Defendants.

**ORDER GRANTING MOTION TO COMPEL**

JACQUELINE SCOTT CORLEY, United States
Magistrate Judge

*1 In this securities fraud putative class action, Plaintiffs
contend that defendant Advanced Microdevices, Inc.
("AMD") made misrepresentations regarding the launch
of its "Llano" microprocessor, and in particular,
misstatements regarding the Llano manufacturing plant's
chip yield. As is the practice in such actions in which the
plaintiffs must satisfy the heightened pleading standard
of the PSLRA, the operative complaint relies upon
statements from unidentified "confidential witnesses"
who are generally identified by job title, employer, and
dates of employment, but are not named. The question
before the Court is whether the name of a confidential
witness whose statements were used in a filed but later
superseded complaint is work product not subject to
production. The Court must also decide whether Plaintiffs
may withhold the name of a person identified in the
operative complaint as an "industry expert" until the time
for expert discovery. After reviewing the arguments made
by the parties in their joint letter brief (Dkt. No. 149), the
Court concludes the answer to both questions is no. [1]

**DISCUSSION**

In their amended complaint Plaintiffs included allegations
from confidential witnesses, identified in the amended
complaint as "CW1" through "CW9." (Dkt. No. 56
¶¶ 93-114.) A couple of weeks after Plaintiffs filed the
amended complaint, the parties stipulated to Plaintiffs'
filing of a "corrected" amended complaint. (Dkt. No. 59.)
The stipulation explained that after Plaintiffs sent a copy
of the amended complaint to CW1, "CW1 insisted on
being removed from the Complaint[.]" (Dkt. No. 59 at 2.)
Accordingly, the corrected amended complaint removes
all allegations attributable to CW1, but is otherwise
identical to the amended complaint. (Dkt. No. 61.) The
district court subsequently denied Defendants' motion to
dismiss the corrected amended complaint (Dkt. No. 110),
which is now the operative complaint.

At a case management conference held following the
denial of the motion to dismiss, and in response to a
comment from defense counsel, the district court asked
Plaintiffs when they would provide Defendants with the
names of the confidential witnesses. (Dkt. No. 142 at 12.)
Plaintiffs responded that they would provide Defendants
with the names of the confidential witnesses and, as
promised, they have provided Defendants with the names
of all but one of the confidential witnesses identified in
the corrected amended complaint. They have refused,
however, on work product grounds, to name CW1 given
that all references to that witness are eliminated from the
operative complaint. They have also refused to name an
unnamed "industry expert" relied upon in the operative
complaint.

**A. Work Product does not Protect the Name of CW1**
Plaintiffs do not dispute the relevance of CW1, and instead
contend that CW1's name is protected from disclosure as
attorney work product. Plaintiffs, as the parties asserting
privilege from production, bear the burden of establishing
that the work product doctrine applies. *See United
States v. Chevron*, 241 F. Supp. 2d 1065, 1080-81 (N.D.
Cal. 2002) (citation omitted). "At its core, the work-
product doctrine shelters the mental processes of the
attorney, providing a privileged area within which he can
analyze and prepare his client's case." *United States v.
Nobles*, 422 U.S. 225, 238 (1975). "The work-product
rule is...a qualified immunity protecting from discovery

documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3).).

**\*2** Plaintiffs have identified by name those confidential witnesses who are referred to in the operative complaint; they contend, however, that the name of CW1 is work product because they are no longer relying on CW1 in the operative complaint. Thus, they argue, disclosure of the name of CW1 is tantamount to requiring Plaintiffs to disclose the names of all persons they interviewed in connection with their pre-complaint investigation and such information is protected attorney work product. *See Plumbers & Pipefitters Local 572 Pension Fund*, No. 01-cv-20418 JW, 2005 WL 1459555, at \*4 (N.D. Cal. June 21, 2005). The Court disagrees.

In the amended complaint Plaintiffs alleged that CW1 made certain statements. Plaintiffs described CW1 by identifying his former and current employers, job titles and dates of employment. (Dkt. No. 56 ¶ 93.) Defendants do not seek any information regarding how Plaintiffs came to include those allegations in the amended complaint, who else Plaintiffs spoke to about the allegations, or who Plaintiffs interviewed but did not include in their amended complaint; instead, Defendants merely seek the name of the person Plaintiffs identified (except by name) in the amended complaint. Such information is not work product.

*Plumbers & Pipefitters Local 572 Pension Fund*, upon which Plaintiffs rely, supports a finding of no work product. There the district court explained:

> "When the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable." *Mass. v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 152 (D. Mass. 1986). The Court is persuaded by the rationale underlying this distinction; that is, "if the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347 (C.D. Cal. June 13, 2002).

2005 WL 1459555, at \*4. Here, Defendants seek the identity of a person Plaintiffs have already identified as someone with knowledge. Such request does not seek work product. *See In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007); *Miller v. Ventro Corp.*, No. C 01-01287 SBA (EDL), 2004 WL 868202, at \*2 (N.D. Cal. April 21, 2004).

Plaintiffs' decision to exclude CW1 from the corrected amended complaint because CW1 did not want to be included does not transform CW1's name into work product. The cat is out of the bag. Plaintiffs previously disclosed that a specific person has knowledge relevant to this lawsuit. Revealing that person's name does not disclose "counsel's tactical or strategic thoughts." *Plumbers & Pipefitters Local 572 Pension Fund*, 2005 WL 1459555, at \*4.

As the name of CW1 is not work product Defendants' motion to compel disclosure of CW1's name is granted. That being said, the Court accepts Plaintiffs' representation that *publicly* disclosing CW1's name could have negative repercussions for CW1. Accordingly, as Defendants have offered (Dkt. No. 149 at n.1) the Court orders that any disclosure be subject to an attorneys' eyes only protective order.

**B. Disclosure of the Unnamed Expert A is not Premature**
Plaintiffs' operative complaint relies on "Industry Expert A" to support an inference that Defendants' statements were false when made. (Dkt. No. 61 at ¶¶ 112-133.) Plaintiffs identify Expert A having "25 years of direct industry experience with microprocessor and chip design, yield, and supply chain management, and gained this experience through various high-level positions at IBM, Intel, Samsung, Sandisk, Texas Instruments, and Qualcomm." (*Id.* at ¶ 112.) Plaintiffs do not contend that the name of Expert A is work product or that it is not relevant; instead, they baldly assert that as the parties are not required to disclose their experts until next summer, Plaintiffs may hide the name of Expert A until that time. Again, the Court disagrees. Plaintiffs have chosen to utilize an expert in their complaint. Plaintiffs have not articulated any prejudice or reason not to treat that "confidential witness" as any other "confidential witness" in the complaint, at least for the purpose of disclosing the confidential expert witness's name. Further, as Plaintiffs agreed in open court before the district court

to identify the "confidential witnesses" in the complaint, that Defendants have not made a formal request for the name of Expert A is of no matter. Plaintiffs shall also provide Defendants with the name of Expert A.

**\*3** This Order disposes of Docket No. 149.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5604392

Footnotes

1    This discovery dispute has been referred to the undersigned magistrate judge for decision. (Dkt. No. 150.)

---

                                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   3

2009 WL 3856458
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. Florida.

Joseph C. HUBBARD, et al., Plaintiffs,
v.
BANKATLANTIC BANCORP,
INC., et al., Defendants.

No. 07-61542-CIV.
|
Nov. 17, 2009.

**Attorneys and Law Firms**

David Reich Chase, David R. Chase PA, Fort Lauderdale, FL, Jules Brody, Stull Stull & Brody, Mark S. Arisohn, Michael W. Stocker, Serena W. Hallowell, Jonathan Gardner, Labaton Sucharow LLP, New York, NY, Julie Prag Vianale, Kenneth J. Vianale, Vianale & Vianale, Boca Raton, FL, Adam Michael Schachter, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Ronald D. Shindler, Fowler White Burnett, Miami, FL, Benjamin J. Hinerfeld, Andrew L. Zivitz, Mark S. Danek, Michelle M. Newcomer, Barroway Topaz Kessler Meltzer & Check LLP, Radnor, PA, Jonathan Louis Alpert, Alpert Law Firm PA, Tampa, FL, for mPlaintiffs.

Eugene E. Stearns, Adam Michael Schachter, Gordon McRae Mead, Jr., Richard Bryan Jackson, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES*

ANDREA M. SIMONTON, United States Magistrate Judge.

**\*1** Presently pending before the Court is Defendants' Motion to Compel Answers To Interrogatories (DE # 151). This motion is referred to the undersigned Magistrate Judge (DE # 154). The motion is fully briefed (DE163, 164). On November 4, 2009, the undersigned Magistrate Judge heard argument on the motion. For the reasons stated below, Defendants' motion is granted.

*I. Background*

On October 27, 2007, Plaintiffs filed their initial Complaint (DE # 1). On April 22, 2008, Plaintiffs filed an Amended Complaint (DE # 51). On June 6, 2008, Defendants moved to dismiss the Complaint on the grounds that it did not adequately plead: 1) material misrepresentations or omissions; 2) scienter; and, 3) loss causation. The motion to dismiss relied on the claimed inadequacy of Plaintiffs' reliance on seven confidential witnesses (DE # 57). On December 12, 2008, the District Court granted the motion to dismiss and dismissed the Amended Complaint without prejudice. In granting the motion to dismiss, the Court considered the heightened pleading requirements under the Private Securities Litigation Reform Act of 1995, codified at 15 U.S.C. § 78u-4(b) (hereafter PSLRA), in finding that the Amended Complaint failed to state a claim as to scienter, primarily because the Court was unable to give any significant weight to the allegations attributed to the confidential witnesses (DE # 70).

On January 12, 2009, Plaintiffs filed their three-count First Amended Consolidated Complaint, alleging a class action securities fraud, under the Securities Exchange Act of 1934 (hereafter Exchange Act). In the Amended Complaint, Plaintiffs allege violations of: Section 10(b) of the Exchange Act and Rule 10b-5 (against all Defendants) (Count I); Section 20(a) of the Exchange Act (against all individual Defendants) (Count II); and, Section 20A of the Exchange Act (against Defendants Abdo and A. Levan) (Count III). To prove scienter, Plaintiffs rely on six confidential witnesses (DE # 80). On February 6, 2009, Defendants moved to dismiss this Complaint, again arguing that the confidential witness allegations did not establish scienter, along with other alleged deficiencies in pleading (DE # 85). On May 11, 2009, the District Court denied the motion to dismiss, finding that Plaintiffs had provided sufficient information concerning the basis for the confidential witnesses' knowledge for the Court to give substantial weight to the allegations made by the confidential witnesses (DE # 94).

On June 10, 2009, Defendants filed their Answer to the First Amended Consolidated Complaint (DE # 100).

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

On June 24, 2009, the District Court entered a scheduling order for this case, setting the discovery deadline for December 4, 2009 (DE # 102). On October 9, 2009, the District Court entered an amended scheduling order for this case, setting the discovery deadline for May 21, 2010 (DE # 148).

## II. *The Parties' Positions*

Defendants move to compel Plaintiffs to answer Interrogatories 1 through 6, which seek the identities and certain other information concerning the six confidential witnesses upon whom Plaintiffs relied in the First Amended Consolidated Complaint. Defendants submit that the identities of the confidential witnesses are discoverable (DE # 151 at 9-11), and that they are not privileged from disclosure. Specifically, they assert that the identities are not protected as work product (DE # 151 at 11-12); do not constitute privileged attorney-client communications (DE # 151 at 12); disclosure is not protected by the public interest (DE # 151 at 12-13); and, disclosure is not protected by privacy concerns (DE # 151 at 14). Defendants finally assert that since discovery is ongoing, it is not too early for Plaintiffs to provide the names of the confidential witnesses (DE # 151 at 14).

**\*2** Initially, Plaintiffs respond that the motion to compel should be denied because it was not timely filed under Local Rule 26.1 H. 1. (DE # 163 at 10-11). Plaintiffs respond on the merits that they presently do not intend to use the confidential witnesses as witnesses at trial, and so, do not have to reveal their identities (DE # 163 at 12); the identities of the confidential witnesses are protected from disclosure as attorney work product (DE # 163 at 12-16); Defendants have no substantial need for the identities of the confidential witnesses (DE # 163 at 17-18); protecting the identities of the non-testifying confidential witnesses serves public policy concerns and the goals of the PSLRA (DE # 163 at 18-20); and, public policy considerations should enhance work product protection where confidential witnesses fear retaliation from a former employer (DE # 163 at 21-24).

Defendants reply that their motion to compel was timely (DE # 164 at 3-4). Defendants then reiterate that 1) the confidential witness information is discoverable (DE # 164 at 4-6); 2) the confidential witness information is not work product (DE # 164 at 6-8); 3) Plaintiff's public interest objection is meritless (DE # 164 at 8-9); and 4)

Plaintiff's retaliation argument is baseless (DE # 164 at 9-10).

## III. *Analysis*

For the reasons stated below, Defendants' motion is granted, and on or before November 30, 2009, Plaintiff shall provide Defendants with better answers to interrogatories, including but not limited to the names of confidential witnesses 1 through 6. The discovery deadline in this case in May 21, 2010, and Defendants must be allowed to obtain the names of the confidential witnesses at this time, depose them if so desired, and conduct any further discovery which results from those depositions.

### A. *Defendants' Motion Will Not Be Denied As Untimely*

Plaintiffs answered Defendants' interrogatories on August 27, 2009. On September 22, 2009, the parties conferred regarding the issue raised in the instant motion. Defendants then filed the instant motion on October 19, 2009, more than thirty days after Plaintiffs answered Defendants interrogatories. This is a violation of Local Rule 26.1 H. 1. However, as the undersigned stated at the hearing, Defendants' motion will not denied on that ground, as the motion was filed within a reasonable time; Defendants conferred with Plaintiffs concerning the subject matter of the motion within thirty days after receiving Plaintiffs' answers to interrogatories; Defendants filed the present motion within thirty days thereafter; and Plaintiffs acknowledge that they have not been prejudiced by the delay.

### B. *Defendants' Motion is Granted*

Defendants' motion is granted. Even if Plaintiffs do not intend to call the confidential witnesses at trial, they must provide the names of the confidential witnesses in response to Defendants' discovery request. Furthermore, the names of the confidential witnesses are not attorney work product. Additionally, there is no public policy which protects the identities of the confidential witnesses and there is no "informer's privilege" for a confidential witness in a case brought under the PSLRA.

### 1. *The Names of the Confidential Witnesses Are Discoverable*

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 2

**\*3** The names of the confidential witnesses whom Plaintiffs relied upon in their Complaint are discoverable. The identities of witnesses are discoverable. *See Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir.1984); *accord Myers v. Goldco, Inc.,* Case No. 4:08cv8-RH/WCS, 2008 WL 1995131 at 1-2 (N.D.Fla. May 6, 2008). Many courts have found that the identities of confidential witnesses in securities fraud class actions are discoverable. *See In re Netbank, Inc. Sec. Litig.,* Case No. 07cv2298, 259 F.R.D. 656, 2009 WL 2461036 at \*17 (N.D.Ga. Aug.7, 2009) ("The Federal Rules of Civil Procedure provide that '[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defenses-including ... the identity and location of persons who know of any discoverable matter"); *Lefkoe v. Jos. A. Bank Clothiers,* Civil No. WMN-06-1892, 2009 WL 3003247 at \*10-11 (D.Md. May 1, 2009); *In re Faro Technologies Sec. Litig .,* Case No. 05cv1810, 2008 WL 205318 at \*2 (M.D.Fla. Jan.23, 2008); *Brody v. Zix Corp.,* Case No. 04cv1931, 2007 WL 1544638 at \*2 (N.D.Tex. May 25, 2007); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631 (N.D.Ga.2002); *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 440, 443-44 (D.Kan.1987).

Plaintiffs are correct that they are not required to provide in their initial disclosure the names of persons with knowledge of the facts of the case, if Plaintiffs do not intend to use those persons to support their claims. *See* Advisory Committee Notes to Fed.R.Civ.P. Rule 26.[1] Here, however, Defendants are requesting the names of the confidential witnesses in a discovery request, not as part of Plaintiffs' initial disclosure, so the limitation on initial disclosures does not apply, and the names must be provided. *See In re Netbank, Inc.,* 259 F.R.D. 656, 2009 WL 2461036 at \*17 fn. 18; *In re Marsh & McLennan Cos., Inc. Sec. Litig.,* Case No. 04cv8144, 2008 WL 2941215 at \*2 (S.D.N.Y. Jul.30, 2008).[2]

2. *The Names of the Confidential Witnesses Are Not Work Product*

Plaintiffs put forward in their Complaint the existence of the confidential witnesses and the information which they provided. Since Plaintiffs have used the confidential witnesses in their Complaint, the identities of the confidential witnesses are not work product because Plaintiffs have already disclosed their existence and some of the information obtained from them. Therefore,

disclosing the identities of the confidential witnesses will not reveal any more of the mental impressions, conclusions, opinions and legal theories of Plaintiffs' attorneys than Plaintiffs' attorneys have already chosen to reveal in the Complaint. *See Cason-Merenda v. Detroit Medical Center,* Case No. 06-15601, 2008 WL 659647 at \*4 (E.D.Mich. Mar.7, 2008); *In re Faro,* 2008 WL 205318 at \*2; *Brody v. Zix Corp.,* 2007 WL 1544638 at \*2; *Mazur v. Lampert,* Case No. 04-61159, 2007 WL 912721 at \*3-4 (S.D.Fla. Mar. 25, 2007); *Norflet v. John Hancock Fin. Servs., Inc.,* Case No. 3:04cv1099(JBA), 2007 WL 433332 at \*2 (D.Conn. Feb. 5, 2007); *In re Theragenics,* 205 F.R.D. at 631; *In re Harmonic, Inc. Sec. Litig.,* 245 F.R.D. 424, 427 (N.D.Cal.2007); *In re Aetna Inc. Sec. Litig.,* Case No. MDL1219, 1999 WL 354527, at \*3, 6 (E.D.Pa. May 26, 1999); *American Floral Servs. Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258 (N.D.Ill.1985).[3]

**\*4** At the hearing, Plaintiffs' counsel stated that they do not presently intend to use the confidential witnesses as trial witnesses, and that Plaintiffs do not know of *any* witnesses they currently intend to use at trial with respect to the issue of scienter, or to prove the allegations of the Complaint which are attributed to these witnesses to prove scienter. At the present time, Plaintiffs intend to prove this element of the case by using documents which are produced to them in the course of discovery. However, Plaintiffs' counsel stated that if Plaintiffs decided to use the confidential witnesses as trial witnesses, Plaintiffs would then reveal their names to Defendants by amending their initial disclosures. In light of this fact, it would be unfair to permit Plaintiffs to rely so heavily in their Complaint on the confidential witnesses, yet allow Plaintiffs to keep their identities from Defendants during discovery, unless and until Plaintiffs decide to use the confidential witnesses at trial witnesses, perhaps at the very end of the discovery period. *See Miller v. Ventro Corp.,* Case No. 01cv01287, 2004 WL 868202, at \*2 (N.D.Cal. Apr.21, 2004).

Moreover, it is even more compelling to provide the names of the confidential witnesses in the instant case, than it was in *In re Harmonic., supra.,* and in *American Floral Servs. Inc. v. Florists' Transworld Delivery Ass'n, supra.* In *In re Harmonic,* the plaintiffs included the confidential witnesses as part of 77 witnesses in their initial disclosures. In *American Floral Servs.,* the plaintiffs included the confidential witnesses as part of 200 witnesses in their initial disclosures. Both courts found that the plaintiffs

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.    3

had to provide the names of the confidential witnesses so that the defendants could avoid looking for a "needle in a haystack". *In re Harmonic,* 245 F.R.D. at 427; *American Floral Servs.,* 107 F.R.D. at 260-61. *Accord Lefkoe v. Jos. A. Bank Clothiers,* 2009 WL 3003247 at *10-11 (the plaintiffs who, in their initial disclosure, named 58 witnesses, including the 19 confidential witnesses, had to provide the names of the confidential witnesses in response to an interrogatory). At the hearing on this motion, Plaintiffs' counsel stated that they had not provided the names of *any* witnesses in their initial disclosures and that they did not know of any witnesses they intended to use at trial (emphasis added). Thus, contrary to Plaintiffs' assertions (DE # 163 at 17-18), Defendants have shown a substantial need for the identities of the confidential witnesses. The undersigned finds that for Defendants to be able to engage in meaningful discovery, Plaintiffs must identify the confidential witnesses now.

3. *There Is No Public Policy Protecting The Names of the Confidential Witnesses*

There is no public interest privilege that precludes lawful discovery of confidential witnesses in this case. *See Higgenbotham v. Baxter Int'l, Inc.,* 495 F.3d 753, 756-57 (noting that there is no "informer's privilege" in civil litigation). Many other courts have rejected Plaintiffs' position. *See In re Netbank.,* 259 F.R.D. 656, 2009 WL 2461036 at *17; *In re Theragenics,* 205 F.R.D. at 637; *In re Aetna Inc.* 1999 WL 354527, at *4. If Congress wished to create an informer's privilege for confidential witnesses in PSLRA case, it knew how to do so and could have done so. *See Mazur v. Lampert,* Case No. 04-61159, 2007 WL 912721 at *4. (S.D.Fla. Mar. 25, 2007).

**\*5** While there may be a privilege that protects persons who give statements to government investigators in a civil context, such as a Fair Labor Standards Act investigation, there is no such privilege for private civil litigation. *See Brody v. Zix Corp.,* 2007 WL 1544638 at *2, n. 3; *accord Mazur v. Lampert,* 2007 WL 912721 at *4.

The cases relied upon by Plaintiffs to support their position that there is a public policy to protect the identities of non-testifying confidential witnesses in PSLRA cases (DE # 163 at 18, fn. 8), are factually distinguishable. All of Plaintiffs' cited cases involve the

permissible use of anonymous confidential witnesses in pleading under the PSLRA, not during the discovery process. Even in this case, the District Court allowed Plaintiffs to use anonymous confidential witnesses in their First Amended Consolidated Complaint.

4. *There Is No Right of Privacy Concerning The Confidential Witnesses*

Plaintiffs have not shown that the confidential witnesses have any right of privacy that would be violated by the disclosure of their identities. While Plaintiffs' counsel may have assured the confidential witnesses that their identities would not be revealed without a court order, that fact would not create any enforceable expectation of privacy. In fact, if Defendants' motion is granted, the identities of the confidential witnesses will be disclosed pursuant to a court order.

Moreover, the only evidence Plaintiffs have presented regarding the belief of the six confidential witnesses that their identities will be kept private, and the fear of retaliation, is one redacted affidavit of one confidential witness, executed in April 2008. This affidavit is insufficient to establish the expectation of privacy and/or fear of retaliation of all six confidential witnesses. Plaintiffs' counsel has not sought any type of protective order, other than non-disclosure; and, did not suggest one at the hearing when the Court commented on that fact. Under the circumstances of this case, the understandable desire for privacy must give way to Defendants' rights to discovery.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Compel Answers To Interrogatories (DE # 151), is **GRANTED.** On or before December 2, 2009, Plaintiff shall provide Defendants with better answers to interrogatories, including but not limited to the names of confidential witnesses 1 through 6.

**DONE AND ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3856458

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Footnotes

1    The undersigned notes that "use" is more broadly defined in the Advisory Committee Notes than "use at trial;" and, the disclosure requirements also apply to "use at a pretrial conference, to support a motion, or at trial."

2    Plaintiffs rely heavily on *Mazur v. Lampert,* Case No. 04-61159, 2007 WL 912721 at *6 (S.D.Fla. Mar. 25, 2007), to support their argument that the identities of their confidential witnesses are not discoverable. To the extent that *Mazur* holds that the plaintiffs in a PLSRA case do not have to disclose the names of confidential witnesses who they do not intend to use as witnesses at trial, the undersigned declines to follow that broad holding. In *Mazur,* unlike the case at bar, all persons with knowledge of the facts alleged in the Complaint had been disclosed in Plaintiffs' Rule 26(a) disclosures; and, certain of the confidential witnesses were going to be used at trial and the identities of those witnesses was ordered disclosed. In this case, unlike *Mazur,* there are no other witnesses identified by Plaintiffs regarding the facts alleged in the Complaint which are attributed to these witnesses to establish scienter; and, Plaintiffs have stated that they do not presently intend to call any of the confidential witnesses used in the Complaint to testify at trial.

3    Plaintiffs have relied on *In re MTI Tech. Corp. Sec. Litig.,* Case No. SACV 00-0745, 2002 WL 323443347 at *2-5 (C.D.Cal. Jun. 13, 2002); *In re Ashworth, Inc. Sec. Litig.,* 213 F.R.D. 385, 389 (S.D.Cal.2002), and *Electronic Data Sys. Corp. v. Steingraber,* Case No. 4:02 CV 225, 2003 WL 21653405 at *2 (E.D.Tex. Jul.9, 2003), for the proposition that the identity of confidential witnesses is attorney work product, and would reveal counsel's opinions regarding the relative importance of the confidential witnesses (DE # 163 at 7-11). The undersigned rejects the reasoning in the above cases, and adopts the contrary rationale of the cases cited in the body of this Order.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

2012 WL 1134142
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

In re AMERICAN INTERNATIONAL GROUP,
INC.2008 SECURITIES LITIGATION.
This Document Relates to: All Actions.

Master File No. 08 Civ. 4772(LTS)(DF).
|
March 6, 2012.

### ORDER

DEBRA FREEMAN, United States Magistrate Judge.

**\*1** In this securities fraud consolidated class action, a discovery dispute has arisen over Plaintiffs' refusal to reveal the identities of confidential witnesses, whose statements were incorporated into the Complaint. Having reviewed the parties' submissions, and for the reasons discussed below, Plaintiffs are hereby ordered to reveal the identities of the confidential witnesses identified as "CW" 1–3, no later than March 13, 2012.

### BACKGROUND

#### A. *Plaintiffs' Complaint*

On May 19, 2009, lead plaintiff State of Michigan Retirement Systems ("SMRS") filed a Consolidated Class Action Complaint on behalf of a putative class of investors ("Plaintiffs"). (*See* Consolidated Class Action Complaint, dated May 19, 2009 ("Compl.") (Dkt.95).) Plaintiffs assert claims under the federal securities laws against American International Group, Inc. ("AIG" or the "Company") and various current or former AIG executives, directors, accountants, and underwriters (collectively, "Defendants"). The Complaint references testimony made by four confidential witnesses. ("CWs" 1–4.) (*See, e.g.* Compl. ¶ 125–7; 134–8; 145; 178; 266(a); 277(a); 302; 351(h); 481–3.)

#### B. *Reliance by the Court on the Alleged CW Witness Statements in Denying Defendants' Motion to Dismiss the Complaint*

On September 27, 2010, the Honorable Laura T. Swain, U.S.D.J., denied Defendants' motion to dismiss the Complaint. *See In re American International Group, Inc.2008 Securities Litigation,* 741 F.Supp.2d 511 (S.D.N.Y.2010). From the Court's decision denying that motion, it is apparent that, in finding that Plaintiffs had adequately pleaded their claims, the Court relied on a number of allegations contained in the Complaint that were purportedly derived from statements of the four CWs. *See id.* at 530–35. In particular, the Court cited to CW testimony in finding that Plaintiffs had adequately pleaded material misstatements and omissions, scienter, and a control-person liability claim (under Section 20(a) of the Exchange Act) against executive defendant Alan Frost ("Frost"). (*See id.*)

For example, the Court found that Plaintiffs had adequately pleaded that Defendants had "materially misled the market" by, *inter alia,*

(1) "falsely stating that the Company engaged in extensive due diligence before entering into swap contracts," *id.,* at 530, when, according to the "confidential allegation of an executive who headed the CDO business of a major Wall Street investment bank," Defendants instead "merely requested the underlying and offering documents and did not request access to the counterparties' own valuation or analytical materials relating to the investment," *id .,* at 527 (citing CW statements contained in the Compl. at ¶¶ 351(h), 481);

(2) "repeatedly emphasizing the strength of the Company's risk controls when addressing investor concerns related to exposure in the the subprime mortgage market," *id.,* at 530, when, according to statements of the CWs, the relevant portfolio at AIG Financial Products ("A1GFP") "was in fact not subject to either the risk control processes that governed other divisions of the Company or the risk control processes that previously had been in place at AIGFP," *id.; see also id.,* at 521 (citing CW statements contained in the Compl. at ¶¶ 136–38); and

**\*2** (3) "stating [in a Form 10–K] that the Company had the ability to hedge its CDS portfolio," *id.,* at 530, when, according to the representations of two of the CWs, "it was not economically feasible to do so," *id.;*

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

*see also id.* at 525 (citing CW statements alleged in Compl. at ¶¶ 125–26).

Similarly, the Court relied on allegations based on CW statements in finding that Plaintiffs had adequately pleaded scienter. *See id.* at 533–34. In this regard, the Court noted that

> Plaintiffs can plead conscious misbehavior or recklessness by alleging defendants' knowledge of facts or access to information contradicting their public statements. In cases in which scienter is pled in part by alleging that the defendant knew facts or had access to information suggesting that their public statements were not accurate, the scienter analysis is closely aligned with the analysis as to misleading statements.

*Id.,* at 533 (internal quotation marks and citations omitted). In determining that Plaintiffs' pleading was adequate in this regard, the Court relied on Plaintiffs' allegation, based on CW statements, that "AIG and the Section 10(b) Defendants knew that risk controls had been weakened at AIGFP [, but that] AIG and the Section 10(b) Defendants deliberately declined, nonetheless, to disclose these risks to the marketplace." *Id.* at 533. In addition, the Court relied on allegations derived from CW statements in finding that Plaintiffs had satisfied the pleading standard of Rule 8(a), as to their control-person liability claim against Executive Defendant Frost. *See id.* at 535 (citing to Compl. ¶ 266(a)).

In sum, Plaintiffs incorporated significant CW testimony into their Complaint, and the Court relied on this testimony in finding that Plaintiffs had adequately stated their claims.

### C. *Defendants' Motion To Compel Disclosure of the CWs' Identities*

After the denial of Defendants' motion to dismiss, the Defendants issued discovery requests concerning, *inter alia,* the identities of the CWs. (*See* Letter to the Court from AIG, dated June 9, 2011 ("6/9/11 Def. Ltr.") (Dkt.334), at 1.) Plaintiffs objected to revealing the identifies of the CWs, and, after attempting unsuccessfully

to resolve the issue through good faith conference, the parties sought direction from this Court. (*Id.*) Writing on behalf of all Defendants, AIG notified the Court of Plaintiffs' objections to disclosing the identities of the four CWs referenced in the Complaint. (*See id.*)

At a case management conference before this Court on November 10, 2011, Defendants reported that they had learned the identity of CW 4 from Plaintiffs' counsel, after Plaintiffs' counsel noticed the witness for a deposition. (*See* Letter to the Court from AIG, dated Dec. 9, 2011 ("12/9/11 Def. Ltr.") (Dkt.333), at 3; *see also* Letter to the Court from Plaintiff, dated Dec. 20, 2011 ("12/20/11 Pl. Ltr.") (Dkt. 336 (placed under seal by the Court)), at 1.) Accordingly, Defendants now ask the Court to order Plaintiffs to reveal only the identities of the remaining three CWs.

**\*3** Plaintiffs principally argue that disclosure of the identities of the CWs will reveal confidential attorney work product and that Defendants cannot overcome the work product protection by demonstrating a substantial need for the withheld information, or that they would suffer an undue hardship without disclosure of the information. In stressing the importance of the work product protection, they argue that protection of the confidentiality of the CWs is "necessary to maintain the deterrent effect of the federal securities laws." Plaintiffs ask that they only be required to disclose the identities of CWs noticed by Plaintiffs for deposition or placed on a Plaintiffs' witness list for trial. (*See* Letter to the Court from Lead Plaintiff, dated June 16, 2011 ("6/16/11 Pl. Ltr.") (Dkt.335), at 1; 12/20/11 Pl. Ltr. at 1–2.)

### *DISCUSSION*

In light of the particular circumstances of this case, and in consideration of recent case law in this District, this Court is persuaded that (a) Plaintiffs' claims of work product protection are outweighed by Defendants' interest in discovering the CWs' identities, and (b) the protective order in place in this case will address Plaintiffs' asserted confidentiality concerns.

#### A. *The Work Product Doctrine*
The attorney work product doctrine protects the "mental impressions, conclusions, opinions, or legal theories of

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

a party's attorney" from disclosure. *See Federal Rule of Civil Procedure 26(b)(3)(B).* To be entitled to work-product immunity, the party asserting the protection "must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." *In re Grand Jury Subpoena Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 386 (2d Cir.2003) (internal quotation marks and citations omitted). The attorney work product doctrine is a qualified protection, rather than an absolute one, and can be overcome by a showing that the party seeking discovery (1) "has substantial need of the materials," and (2) "is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Plumbers and Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron, Inc.,* No. 08 Civ. 4063(PAE), 2011 WL 5519840, *4 (S.D.N.Y. Nov.14, 2011)* (internal quotation marks and citations omitted); *see also* Fed.R.Civ.P. 26(b)(3)(A)(ii).

In *In re Bear Sterns Companies, Inc. Securities, Derivative, and ERISA Litigation,* 1:08 MDL No.1963(RWS), 2012 WL 259326 (S.D.N.Y. Jan.27, 2012), the Honorable Robert W. Sweet, U.S.D.J., faced circumstances similar to those presented here. In fact, the very same Lead Plaintiff, SMRS, argued that it should not be required to reveal the identities of confidential witnesses, whose testimony SMRS relied on to state its claims, because of work product privilege, a lack of undue burden on defendants, and the fact that SMRS did not intend to rely on the confidential witnesses at trial. *Id.* at *2. Judge Sweet squarely rejected these arguments, holding that "the work product doctrine cannot be employed to protect the identities of SMRS' confidential witnesses." *Id.* at *3.

**\*4** In his opinion, Judge Sweet cited primarily to another similar and recent opinion, *Plumbers and Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron, Inc.,* No. 08 Civ. 4063(PAE), 2011 WL 5519840 (S.D.N.Y. Nov.14, 2011). In *Arbitron,* the defendant also sought an order directing the lead plaintiff to disclose the names of "Confidential Informants" referred to in the underlying complaint. *Id.* at *1. The Honorable Paul A. Engelmayer, U.S.D.J., held that the names of the confidential informants were not entitled to work product protection. *Id.* at *4. The Court stated:

> It is ... entirely proper and common for a plaintiff to rely on confidential witnesses in a complaint, and

attributions to such witnesses may and often are credited on motions directed to the pleadings. But, once the discovery phase begins, the balance of interests shifts. The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.

*Id.* at *5 (internal citation omitted). The Court further stated that "where a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product." *Id.* at *5 (citing *Ross v. Abercrombie & Fitch Co.,* No. 2:05CV0819, 2008 WL 821059, at *3 (S.D.Ohio Mar.24, 2008)).

Although, as the Court noted in *Bear Stearns,* case law in this area "is not uniform," substantial case law and the circumstances of this particular case support Defendants' position here-that Plaintiffs should not be permitted to rely on the testimony of confidential witnesses to state their claims, and then withhold the identities of the confidential witnesses during discovery. *See generally Bear Stearns; see also In re Marsh & McLennan Comp., Inc. Sec. Litig.,* No. 04 Civ. 8144(SWK), 2008 WL 2941215 (S.D.N.Y. July 30, 2008) (ordering disclosure of confidential witness identities because plaintiffs relied on the witness statements in drafting the complaint, the witnesses possessed discoverable information, and the identities "enjoy[ed] limited, if any, work-product protection"); *In re Dynex Capital, Inc. Sec. Litig.,* No. 05 Civ. 01897(HB)(DF) (S.D.N.Y. Oct. 14, 2010) (Dkt.92) (noting that the Court was not persuaded that the mere identities of confidential witnesses would qualify as work product and determining, nonetheless, that defendants' need for discoverable information would overcome plaintiff's claim of work product protection); *Baughman v. Pall Corp.,* No. CV 07–3359, U.S. Dist. LEXIS 122064, at *7 (JS)(ARL) (E.D.N.Y. Oct. 21, 2011) (ordering disclosure of the identities of confidential witnesses cited in the complaint over plaintiffs' "tenuous work product claim"). [1]

Even if the identity of these witnesses qualifies as work product, the difficulty Defendants would face in trying to ascertain the identity of these witnesses from otherwise available information is a burden that

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

overcomes Plaintiffs' need for protection. CW 1 is described as "an executive who formerly headed the CDO business at a major Wall Street investment bank and two of the largest commercial banks in the United States." (Compl.¶ 125.) According to Defendants, CW 1 could have worked for "at least 15" institutions, all of them "giant financial institutions, like Goldman Sachs and Merrill Lynch, with thousands of employees during the relevant period." (12/9/11 Def. Ltr. at 3.) CW 2 is described as "a former AIGFP vice president who was involved in AIGFP's management information system during the Class Period" (Compl. at ¶ 134), and CW 3 is described as a "former AIGFP executive vice president during the Class Period" (Compl. at ¶ 136). Defendants contend that AIGFP employed "over *140* vice presidents and *14* executive presidents during the Class Period." (12/9/11 Def. Ltr. at 4 (emphasis in original).) In this instance, there is no manageable universe of potential confidential witnesses, and Defendants would face a significant hardship, if they were forced to rely on their own efforts to identify the three CWs whose testimony Plaintiffs used in the Complaint.

**\*5** The Court also rejects Plaintiffs' argument, made in their December 20, 2011 letter, that, in agreeing to waive Rule 26(a) initial disclosures, Defendants waived their right to learn the identities of the CWs. (*See* 12/20/11 PL Ltr. at 2.) Plaintiffs cite no case law to support this argument, and the fact that the parties did not exchange lists of individuals "likely to have discoverable information," only increases the burden placed on Defendants in identifying Plaintiffs' potential witnesses, including the CWs 1–3.

**B. *Concerns Regarding Confidentiality and Retaliation***
Plaintiffs contend that maintaining witness confidentiality is necessary to protect the CWs from retaliation from their past, current or future employers. (6/16/11 PL Ltr. at 7.) Defendants respond that the "existing confidentiality order in this action negates any confidentiality or

public policy rationale for protecting disclosure." (12/9/11 Def. Ltr. at 4; *see also* Confidentiality Stipulation and Order, entered Nov. 5, 2010 (Dkt.243).) In *Arbitron,* the Court rejected the plaintiff's "generic[ ]" assertions of retaliation, but acknowledged a confidential witness's legitimate interest in non-disclosure, and suggested that an appropriate protective order could address such a concern. *Arbitron,* 2011 WL 5519840 at \*8 (noting that "there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation"). Although Plaintiffs, in this case, have not submitted any specific retaliation concerns, and thus the record before the Court does not reflect that any of the CWs face an actual risk of retaliation sufficient to justify non-disclosure of their names, the Court directs the parties to confer in good faith and to utilize the existing confidentiality order in this action to address any *specific* confidentiality concerns of any individual CW. *See In re Marsh & McLennan,* 2008 WL 2941215, at \*5 (rejecting "conclusory" statements regarding retaliation, and stating that risk of retaliation if confidential witness identities were revealed "is less an argument against discovery and more an argument pertinent to the imposition of a protective order limiting access to the requested information").

### *CONCLUSION*

For the reasons stated above, Plaintiffs are directed to reveal the identities of the confidential witnesses identified in the Complaint as "CW 1," "CW 2," and "CW 3," no later than March 13, 2012.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1134142

Footnotes

1    *But see In re SLM Corporation Securities Litigation,* No. 08 Civ. 1029(WHP), 2011 WL 611854, \*1 (S.D.N.Y. Feb.15, 2011) (finding identities of the 16 confidential witnesses cited in plaintiffs' complaint, from among the 73 former employees already identified in plaintiffs' 26(a) disclosures, to be protected work product); *In re Veeco Instruments, Inc. Security Litigation,* No. 05 MD 1695(CM) (GAY), 2007 WL 274800, (S.D.N.Y. Jan. 29, 2007) (declining to require plaintiff to identify confidential witnesses from list of 55 names, which included names of the three confidential witnesses).

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    5

2013 WL 12139088
Only the Westlaw citation is currently available.
United States District Court,
C.D. California, Western Division.

IN RE AMGEN INC. SECURITIES LITIGATION

No. CV 07–2536–PSG (PLAx)
|
Signed 12/02/2013

**ORDER RE DEFENDANT'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 12**

PAUL L. ABRAMS, UNITED STATES
MAGISTRATE JUDGE

**\*1** In this class action alleging securities fraud, plaintiffs
are members of a class of shareholders who purchased
stock in defendant Amgen ("defendant" or "Amgen") at a
purportedly inflated price. Among other things, plaintiffs
assert that defendant made statements in SEC filings that
two of its drugs were marketed and promoted consistent
with FDA approval, when in fact defendant was engaged
in impermissible off-label marketing. The October 1,
2007, Consolidated Amended Class Action Complaint
refers to six confidential witnesses ("CWs") who provided
information about these marketing efforts. [1] On June 19,
2008, defendant propounded an interrogatory seeking the
identity of each confidential witness referred to in the
Complaint. Plaintiffs refused to identify all but one of
the witnesses (CW #1 has been identified), contending
that the information is protected by the attorney work
product doctrine. Defendant has now moved for an order
compelling that information. Having reviewed the Joint
Stipulation, supplemental memoranda, and supporting
declarations and exhibits, the Court has concluded
that oral argument will not be of material assistance
in determining defendant's Motion. Accordingly, the
hearing scheduled for December 10, 2013, is **ordered off
calendar** (see Local Rule 7–15).

Defendant contends that the CWs know of discoverable
matters, that their statements formed the basis for some
of plaintiffs' claims, and that the names of these witnesses
are not work product.

Plaintiffs counter that the work product doctrine protects
against disclosure here; that the usefulness of the CWs
has been "eclipsed" by events since the interrogatory was
originally served, including other actions accusing Amgen
of off-label marketing and as to which Amgen pleaded
guilty, agreed to pay penalties and produced millions of
pages of documents; and that the CW testimony is no
longer necessary for defendants to mount their defense.
Plaintiffs "always intended to develop new evidence of
Defendants' scienter as to the off-label marketing claims
in discovery," and *other* documentation will "form the
backbone of that evidence." Plaintiffs label defendant's
efforts in the Motion as a fishing expedition, and assert
that defendant hopes to "bully" the CWs into recanting
their prior statements. They further objected to the
interrogatory on the grounds that public interest in
effective enforcement of securities laws would be impaired
by revealing the names; that disclosure would violate the
CWs' right to privacy; and that the information possessed
by the CWs is available from other sources.

**\*2** Under Federal Rule of Civil Procedure 26(b)(1),
discovery is permitted of "any nonprivileged matter that is
relevant to any party's claim or defense." This specifically
includes "the identity ... of persons who know of any
discoverable matter." As a general matter, Fed.R.Civ.P.
26(b) is to be "liberally interpreted to permit wide-ranging
discovery of information," even if that information is not
ultimately admitted at trial. See Comcast of Los Angeles,
Inc. v. Top End Int'l, Inc., 2003 WL 22251149, at \*2
(C.D. Cal. July 2, 2003); see also Fed.R.Civ.P. 26(b)(1)
("[r]elevant information need not be admissible at the
trial if the discovery appears reasonably calculated to lead
to the discovery of admissible evidence."). The burden
is on plaintiffs to show that discovery should not be
allowed (Comcast, at \*2, citing Blankenship v. Hearst
Corp., 519 F.2d 418, 429 (9th Cir. 1975)); it is not up
to plaintiffs to decide what defendant needs to defend
this action. Nevertheless, "[d]iscovery must be narrowly
tailored ... and must not be a fishing expedition." Zewdu
v. Citigroup Long Term Disability Plan, 264 F.R.D. 622,
626 (N.D. Cal. 2010) (citing Groom v. Standard Ins. Co.,
492 F.Supp.2d 1202, 1205 (C.D. Cal. 2007)).

Rule 26(b)(3) of the Federal Rules of Civil Procedure
may "protect against disclosure of the mental impressions,
conclusions, opinions, or legal theories of a party's
attorney ... concerning the litigation." The work product
doctrine "is intended to preserve a zone of privacy in

Case 3:16-cv-02267 Document 97-2 Filed 07/11/18 Page 14 of 71 PageID #: 2090

which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2nd Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Furthermore, "[t]o be entitled to the protection of the work product rule, the material must have been generated in preparation for litigation. The prospect of future litigation is insufficient." Whitman v. United States, 108 F.R.D. 5, 9 (D.N.H. 1985).

"[T]here is no Ninth Circuit or Supreme Court precedent on whether the disclosure of the identity of a confidential witness ... is protected by the work product doctrine." In re Connetics Corp. Sec. Litig., 2009 WL 1126508, *1 (N.D. Cal. Apr. 27, 2009). The Court agrees with the conclusions of those courts that have found no violation of the work product doctrine in circumstances similar to those presented here. In In re Harmonic, Inc. Sec. Litig., 245 F.R.D. 424 (N.D. Cal. 2007), plaintiff's second amended complaint contained a section titled "Confidential Sources," in which it identified five CWs, and described facts as to which those individuals had knowledge. The third amended complaint contained the same allegations made by the CWs, but deleted specific reference to the CWs. The court rejected the plaintiff's work product assertion as to the identities of the CWs, as the defendants were not seeking "the preliminary notes or other memoranda written during the interviews of these witnesses, which would be considered protected work product," or even summaries of the substance of interviews. Id., at 427. Indeed, the second amended complaint itself divulged the contents of witness interviews. The Harmonic court went on to determine that *even if* the identities of the CWs were protected work product, "[t]he scope of [the] factual work product is minimal here since the only information being withheld is the identities of the CWs. Defendants' need for and interest in this information would overcome the *de minimis* work product under the balancing process between the work product interest and the interest in discovery." Id., at 429.

The court in In re Connetics Corp. Sec. Litig. also concluded that the requested CW identities were not work product. Counsel for the plaintiff "made no secret of [counsel's] mental impressions" as to which statements were important when those witness statements were included in the complaint and attributed to the CWs. The

court noted that the defendant in any event eventually would find out the identities of the CWs from a disclosed list of 88 names, and that concerns of being labeled as whistleblowers were mitigated by the fact that the company had ceased to exist years earlier. Id. at *2. See also Miller v. Ventro Corp., 2004 WL 868202 (N.D. Cal. Apr. 21, 2004) (list of over 200 individuals with discoverable information that contained the 22 CWs did not constitute work product, but even if it did, the defendants' need for the information and the hardship otherwise involved outweighed any "minimal" work product protection. "Because Plaintiffs chose to build their complaint on a foundation of statements from the ... CWs, the identities of those individuals are highly relevant and reasonably calculated to lead to discoverable evidence.").

**\*3** Here, as in Harmonic, Amgen is not seeking the notes of plaintiffs' counsel, the reports of witness interviews, or summaries of any kind. Counsel's thought processes in determining which witness statements are important are simply not implicated, as those statements have been explicitly set forth in the Complaint. Plaintiffs are also not being asked to identify these CWs from a list of many witnesses, an exercise that could conceivably reveal counsel's thought processes in distinguishing this group from other witnesses and thus how counsel prioritized various witnesses. Disclosure of the CWs' identities will not compromise the strategic or tactical processes of counsel. While recognizing that other courts have come out on the opposite side of this issue, this Court finds that the information being sought by defendant is not work product, and must be produced.

Even if it the names of the CWs were work product, production can still be ordered under certain circumstances. While plaintiffs contend that, since the sought-after information is attorney work product, defendant must show it has a "substantial need" for the materials and cannot obtain equivalent information without "undue hardship" (see, e.g., In re Ashworth, Inc. Sec. Litig., 213 F.R.D. 385, 389–90 (S.D. Cal. 2002); Joint Stipulation, at 16–19), at least one court has concluded that such information would amount to "factual work product," whose scope would be "minimal ... since the only information being withheld is the identities of the CWs. Defendants' need for and interest in this information would overcome the *de minimis* work product under the balancing process between the work product interest

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

and the interest in discovery." In re Harmonic, 245 F.R.D. at 429 ("the minimal substantive content of the witnesses' identities diminishes the showing required by Rule 26(b)(3)," and the " 'avoidance of time and effort' suffices."). The Court finds this reasoning persuasive as well. Defendant here is by no means engaged in a discovery fishing expedition when its goal is simply to identify those individuals whose information plaintiffs found significant enough to include in their Complaint. This is the very essence of the discovery process. Despite plaintiffs' assertions that they will not be relying on these witnesses in presenting their case, they cannot argue that the CWs do not possess relevant evidence. The need for discovery trumps any work product protection this information could conceivably be afforded.

In any event, defendants have shown a substantial need for disclosure and that they cannot readily obtain this information by other means. Plaintiffs' representation that they will not rely on these CWs at trial, or that documents produced in this action since filing the Complaint can establish scienter with respect to plaintiffs' off-label marketing-related claims without regard to the CWs, does not eliminate the need. The CWs unquestionably have relevant information, and defendants are entitled to question them about the basis for their statements, and to explore the circumstances surrounding the statements, the witnesses' motivation, their veracity, and even whether their statements were accurately related in the Complaint. Plaintiffs' argument boils down to assertions that *they* should be allowed to unilaterally evaluate which information should be of most significance to defendant; that since plaintiffs have discovered "more compelling facts" during the course of the litigation the CWs' statements have been rendered irrelevant; and that plaintiffs should be permitted to use information to form the basis of their action but then prevent defendant from testing that information. The Court rejects this position, and finds defendant's need for the information to be substantial. The hardship to defendant weighs in favor of disclosure as well. The CWs are not contained within a larger but manageable group of names disclosed by plaintiffs whom defendant can examine to learn the CWs' identities. Instead, defendant would have to identify all of its former employees with the job titles indicated in the Complaint and then interview or depose all of those individuals to discover the relevant identities. As in Harmonic, defendant's claim of burden is legitimate.

**\*4** To the extent the revelation of the names of the CWs may implicate the privacy rights of those individuals, and while plaintiffs have "committed" to not disclosing the names absent a court order, the Court has balanced plaintiffs' asserted right to privacy against the relevance of the information being sought by defendant. See, e.g., Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604–05 (C.D. Cal. 1995) (the right to privacy is not absolute, but is "subject to invasion depending upon the circumstances"). The Court finds that defendant's discovery needs here outweigh the concerns of plaintiffs, and that the Protective Order entered in this action—which, among other things, limits confidential information to use by the parties and their counsel in this action only and prohibits disclosure to anyone except as provided therein (Protective Order, ¶ 15)—strikes the appropriate balance between the need for the information and any privacy concerns. See, e.g., Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 365 (6th Cir. 1999) (approving of protective orders to protect non-parties from "the harm and embarrassment potentially caused by nonconfidential disclosure of their personnel files"). It also recognizes the public policy concerns in encouraging whistle blowers and protecting confidential sources. A balancing in favor of defendant is especially appropriate where, as here, the CWs no longer work for defendant, a fact that significantly reduces any perceived danger of retaliation. Declaration of Christopher J. McDonald, Exs. L–N. The Court also notes, as described by plaintiffs, that the Sarbanes–Oxley Act of 2002 includes the imposition of severe criminal penalties for "interference with the lawful employment or livelihood" of employees who assist government investigations, and civil remedies for employees who are the subject of retaliation." Joint Stipulation, at 21. Sanctions that could be imposed if defendant should attempt to retaliate against, intimidate or harass the CWs in any manner can serve to minimize plaintiffs' concerns in this regard as well.

Finally, the Court rejects plaintiffs' policy argument that the effective enforcement of securities laws is threatened if the names of the CWs are revealed here. This litigation has been underway for years. The specific allegations of the CWs have long been aired in the Complaint; plaintiffs found those allegations reliable enough to form the basis for part of their Complaint; and the CWs are no longer employed by defendants. The need for the requested discovery must prevail.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Accordingly, for the reasons set forth above, defendant's Motion (Docket No. 366) is **granted**. **No later than December 13, 2013**, plaintiffs shall provide a complete response to Interrogatory No. 12.

**It is so ordered**.

**All Citations**

Slip Copy, 2013 WL 12139088

Footnotes

1    The CWs are described in the Complaint as a former Amgen district sales manager, a former Amgen sales representative and interim district manager, a former Amgen Health Systems manager, and a former oncology sales representative at Amgen. The role of CW #5 is not described. Plaintiffs assert that a reference in the Complaint to a CW #6 was "an inadvertent typographical error" (Joint Stipulation, fn 2), i.e., there are only five CWs.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    4

In re Connetics Corp. Securities Litigation, Not Reported in F.Supp.2d (2009)

2009 WL 1126508

2009 WL 1126508
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

In re CONNETICS CORPORATION
SECURITIES LITIGATION.

No. C 07–02940 SI.
|
April 27, 2009.

**ORDER GRANTING DEFENDANTS'
DISCOVERY REQUEST [Docket No. 170]**

SUSAN ILLSTON, District Judge.

**\*1** Now before the Court is defendants' request
for an order compelling lead plaintiff Teachers'
Retirement System of Oklahoma ("plaintiff") to respond
to Interrogatory No. 9 of defendants' First Set of
Interrogatories. Interrogatory No. 9 states, "Identify
all persons whom you have named as confidential
witnesses in your complaint." Def. Letter Br., ex. 1.
Plaintiffs' Second Amended Consolidated Complaint
("SAC") [Docket No. 86] alleges the existence of twelve
confidential witnesses. *See* SAC ¶ 43. Plaintiff claims
that it disclosed the identities of the twelve witnesses
in its initial disclosures. (It appears that plaintiff has
previously disclosed the names of 200 individuals in its
initial disclosures and a list of 88 percipient witnesses
who are current and former employees, FDA employees
and members of Connetics Corporation's "expert panel."
Def. Letter Br., ex. 4.) Plaintiff contends that the
information requested by defendants (i.e. identification
of the confidential witnesses from among the previously
disclosed witnesses) is protected by the work product
doctrine.

The work product doctrine is codified in Federal Rule of
Civil Procedure 26(b)(3), which provides, in relevant part:

> Ordinarily, a party may not discover documents and
> tangible things that are prepared in anticipation of
> litigation or for trial.... But ... those materials may be
> discovered if:

> (i) they are otherwise discoverable ... and

(ii) the party shows that it has substantial need for
the materials to prepare its case and cannot, without
undue hardship, obtain their substantial equivalent
by other means.

Fed. R. Civ. Pro. 26(b)(3). The Court recognizes that
there is no Ninth Circuit or Supreme Court precedent on
whether the disclosure of the identity of a confidential
witness at this stage in the litigation is protected
by the work product doctrine. District courts have
reached different conclusions on this issue. *Compare
In re Ashworth, Inc. Securities Litigation,* 213 F.R.D.
385, 389 (S.D.Cal.2002) (identity of witnesses plaintiffs'
counsel had interviewed in preparing the complaint
was protected by the work product privilege), *and In
re Veeco Instruments, Inc. Securities Litigation,* 2007
WL 274800 (S.D.N.Y. Jan. 29, 2007) (unpublished
disposition) (same), *with In re Harmonic, Inc. Securities
Litigation,* 245 F.R.D. 424 (N.D.Cal.2007) (disclosure
of confidential witnesses' identities would not reveal
attorney's mental impressions and was therefore not
privileged work product), *and Miller v. Ventro Corp.,* No.
C01–01287, 2004 WL 868202 (N.D.Cal. Apr. 21, 2004)
(unpublished disposition) (same).

The Court finds *Harmonic* and *Ventro* persuasive and
finds that, under the circumstances of this case, the
information defendants request is not attorney work
product. In *Harmonic,* Judge Chen reasoned:

> The issue here, like that in *Ventro,* is not *if*
> the [confidential witnesses'] identities will ever be
> discovered, but rather *when* they will be discovered.
> [citation] Plaintiffs admit as much by acknowledging
> that the five CWs have been identified among the
> list of 77 witnesses in their initial disclosures. They
> concede that by deposing or otherwise investigating
> all of the 77 witnesses, [d]efendants will eventually be
> able to discern who the five CWs are.... While there
> are some instances in which the timing or sequencing
> of disclosures may affect counsel's strategy (such as
> the sequence and timing of expert disclosures), here
> there is no cognizable strategic advantage to be gained
> by [p]laintiffs in withholding the information. The only
> effect is to force the [d]efendants to expend resources
> on taking the depositions of 77 people in order
> to obtain the information. Because the information
> will inevitably be disclosed and the earlier disclosure
> does not compromise [p]laintiffs' strategic or tactical

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In re Connectics Corp. Securities Litigation, Not Reported in F.Supp.2d (2009)

2009 WL 1126508

position, there is no basis for finding work product protection. *See United States v. Nobles,* 422 U.S. 225, 238 (1975) ("At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *Hickman v. Taylor,* 329 U.S. 495, 512 (1947) (basing work product protection on attorney's need to "prepare his legal theories and plan his strategy without undue interference"); *Admiral Ins. Co. v. U.S. Dist. Court,* 881 F.2d 1486, 1494 (9th Cir.1989) ("The conditional protections afforded by the work product rule prevent exploitation of party's efforts in preparing litigation."). Rather, requiring such a dilatory exercise runs counter to the "just, speedy, and inexpensive determination" directed by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 1.

**\*2** 245 F.R.D. 427–28.

Here, just as in *Ventro* and *Harmonic,* counsel for plaintiff have made no secret of their mental impressions. They reveal which witness statements they evaluated as being important by attributing statements to particular witnesses in the SAC. *See, e .g.,* SAC ¶¶ 96–98, 166–68. Plaintiff does not argue that revealing this information at this stage would prejudice it by affecting its trial strategy. While plaintiff is correct that defendants will eventually be able determine the identities of the confidential witnesses from among the 88 disclosed names, they do not explain the benefit of proceeding in this inefficient way.

Plaintiff also argues that disclosure could be prejudicial to the confidential witnesses as they may be labeled whistleblowers. The Court recognizes the policy concerns implicated by revealing the identities of whistleblowers. *See Ferruza v. MTI Tech.,* 2002 WL 32344347 at \*5 (C.D. Cal. June 13, 2002) (unpublished disposition) ("Although the whistle-blower privilege is not available in this private suit, that does not lessen the need to consider the practical results of an order requiring disclosure of the employees' identities."). These concerns are mitigated in this case, however, by the fact that Connectics Corporation ceased to exist three years ago. Plaintiff points out that many of the witnesses still work in the same industry, but the Court finds that this concern is too attenuated here, where the witnesses' identities will eventually be revealed irrespective of whether plaintiff provides this information.

Finally, plaintiff contends that defendants have no need for this information because plaintiff is under no obligation to rely on the statements in the SAC in proving its case at trial. This argument might have more weight if plaintiff had stipulated that it no longer intended to use or rely on these witnesses at trial, which it has not done.

For these reasons, the Court GRANTS defendants' discovery request and orders plaintiff to provide the names of the individuals identified in the SAC *within seven days of the filing of this order.*

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1126508

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 11339612
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

IN RE COOPER COMPANIES
INC. SECURITIES LITIGATION

Case No. SACV 06–0169–CJC (RNBx)
|
Filed 10/01/2008

**PROCEEDINGS: (IN CHAMBERS)**

**Defendant Cooper's Motion to Compel Plaintiff to
Respond to Cooper's First Set of Interrogatories**

ROBERT N. BLOCK, UNITED STATES
MAGISTRATE JUDGE

**\*1** After duly considering the parties' respective
contentions, the Court has concluded that oral argument
will not be of material assistance to the Court's
determination of this discovery motion. Accordingly, the
hearing noticed for October 14, 2008 is ordered off
calendar (see Local Rule 7–15) and the Court now rules
as follows.

To satisfy the stringent pleading standards of the
Private Securities Litigation Reform Act of 1995,
plaintiff included in the operative Amended Consolidated
Complaint specific statements that allegedly were
attributable to twelve confidential witnesses (all of whom
apparently are former employees of Cooper). Cooper
is seeking to compel plaintiff to provide identifying
information for these twelve confidential witnesses.
Plaintiff contends that the identifying information sought
by Cooper is protected by the attorney work product
doctrine and that it was sufficient for plaintiff to simply
direct Cooper to plaintiff's initial disclosures pursuant
to Rule 26(a)(1)(A), which listed the 140 persons who
plaintiff believed might have discoverable information
concerning the allegations of its complaint (including
the twelve confidential witnesses). [1] Cooper disputes that
a party can affirmatively use confidential witnesses to
bolster the allegations of its complaint and then invoke
the attorney work doctrine to shield from discovery the
identities of those witnesses.

The Court has reviewed the cases upon which each
side is relying. Neither side contends that there is any
binding Supreme Court or Ninth Circuit authority on
point. Rather, there is a split of district court authority
on the question of whether the identities of confidential
witnesses specifically referenced in a securities class action
complaint are discoverable. In support of its position
that Cooper is improperly attempting to usurp the work
product that plaintiff's counsel gathered in conducting
his investigation, plaintiff is relying principally on a 2002
decision by Judge Carter of this district, In re MTI Tech.
Corp. Sec. Litig. II, 2002 WL 323443347 (C.D. Cal. June
13, 2002) ["MTI"]. Faced with essentially the same issue
as is presented here, Judge Carter concluded that the
identity of former employees mentioned in the operative
complaint constituted protectible work product. (See id. at
\*3). In support of its position, Cooper has cited a number
of district court decisions that it contends represent the
current majority view, many of which post-date Judge
Carter's decision and elected not to follow it. The cases
cited by Cooper stand for the following propositions: (a)
the identity of a witness simply is not work product; (b) the
work product doctrine does not apply when the plaintiff
chooses to disclose confidential witnesses in its complaint;
and (c) any minimal claim of work product must yield
to the defendant's substantial need for information to
prepare its case.

**\*2** The Court notes that the issue here is not whether
the identities of the twelve confidential witnesses will ever
be discovered, but rather when will they be discovered. [2]
Plaintiff acknowledges that the twelve confidential
witnesses have been included among the 140 persons listed
in plaintiff's initial disclosures pursuant to Rule 26(a)(1)
(A). Plaintiff would simply foist on Cooper the burden
and expense of conducting an investigation to determine
who, among the 140 persons listed in plaintiff's initial
disclosures, made the statements attributed to the twelve
confidential witnesses in the Amended Consolidated
Complaint.

The Court further notes that Cooper is not seeking the
disclosure of the identity of all witnesses interviewed
by plaintiff's counsel, but rather solely the identity
of the particular witnesses specifically referenced in
the Amended Consolidated Complaint. Nor is Cooper
seeking the disclosure of plaintiff's counsel's interview
notes or memoranda written by plaintiff's counsel
reflecting plaintiff's counsel's mental impressions of the

Case 3:16-cv-02267 Document 97-2 Filed 07/11/18 Page 20 of 71 PageID #: 2096

twelve confidential witnesses or mental thought processes concerning the information obtained from those witnesses during their interviews. Indeed, plaintiff already has divulged in the Amended Consolidated Complaint certain statements allegedly made by the twelve confidential witnesses during their interviews. Moreover, by including their statements in the Amended Consolidated Complaint, plaintiff's counsel implicitly has already indicated that plaintiff's counsel considers the knowledge of these witnesses important.

For the foregoing reasons, the Court does not share the concern of the court in MTI, 2002 WL 32344347 at *4, that disclosing the identity of the twelve confidential witnesses "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future factual statements by the witnesses with Plaintiff's counsel's legal theories and conclusions as outlined in the complaint." To the contrary, the Court finds that merely disclosing the identities of the twelve confidential witnesses will **not** implicate plaintiff's counsel's mental impressions, conclusions, opinions, or heretofore unrevealed legal theories.

The Court therefore concurs with those district courts that have held that the identities of confidential witnesses specifically referenced in a securities class action complaint do not constitute work product. See, e.g., In re Faro Technologies Securities Litigation, 2008 U.S. Dist. Lexis 4789, at *6–*7 (M.D. Fla. Jan. 23, 2008); In re Harmonic, Inc. Securities Litigation, 245 F.R.D. 424, 427–28 (N.D. Cal. 2007); Brody v. Zix Corp., 2007 WL 1544638, at *1–*2 (N.D. Tex. May 25, 2007); Mazur v. Lampert, 2007 WL 917271, at *6 (S.D. Fla. March 25, 2007); Miller v. Ventro Corp., 2004 WL 868202, at *2 (S.D. Cal. April 21, 2004). In the alternative, the Court finds, that even if the identities of the confidential witnesses do arguably constitute work product, Cooper has met its burden under Rule 26(b) (3)(A)(ii) because plaintiff's work product interest in this factual information is *de minimis* and clearly outweighed by Cooper's substantial need for and interest in the identifying information in order to narrow the focus of its discovery efforts without incurring undue expense. See In re Harmonic, Inc. Securities Litigation, 245 F.R.D. at 429; see also, e.g., United States v. Amerada Hess Corp.,

619 F.2d 980, 988 (3d Cir. 1980) (holding that, where the "work product in question is of rather minimal substantive content" and "presents none of the classic dangers to which the Hickman v. Taylor rule is addressed," the showing of need for production "can be comparatively lower" and "[a]voidance of the time and effort involved in compiling a similar list from other sources" will suffice); In re Priceline.Com Inc. Securities Litigation, 2005 WL 1366450, at *4 (D. Conn. June 7, 2005) (finding that defendants' need for identifying information for witnesses referenced in the complaint "substantially outweighs the potential for an intrusion into plaintiffs' counsel's case preparation" and that "forcing defendants to ferret through the substantial list of individuals who have information relevant to plaintiffs' claims in order to discover those individuals upon whose knowledge plaintiffs have framed their allegations would be an undue hardship").

**\*3** Finally, the Court finds unpersuasive plaintiff's argument that public policy supports the protection of the twelve confidential witnesses' identities. See, e.g., Higginbotham v. Baxter Intern., Inc., 495 F.3d 753, 757 (7th Cir. 2007) ("There is no 'informer's privilege' in civil litigation. Defendants are entitled to learn in discovery who has relevant evidence, and to obtain that evidence."); Mazur, 2007 WL 917271 at *5 ("If there is no factual dispute that they are former employees, just exactly how is it that revealing their identities could result in material prejudice to them now? If that potential harm is due to their new positions with a new employer, why is that a problem that should trump these Defendants' rights to discovery under Rule 26 in this case?").

Accordingly, Cooper's Motion to Compel is granted as follows. Within ten (10) days of the service date of this Minute Order, plaintiff is ordered to serve a full and complete answer without objections to Interrogatory No. 1. However, if plaintiff timely objects to this ruling pursuant to Fed. R. Civ. P. 72(a), then compliance with it shall be stayed until the District Judge rules on plaintiff's objection.

**All Citations**

Slip Copy, 2008 WL 11339612

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Footnotes

1    In its Supplemental Memorandum, plaintiff maintains that only 88 of the witnesses listed in its initial disclosures are former employees of Cooper).

2    Unlike in one of the cases upon which plaintiff is relying, In re St. Paul Travelers Securities Litigation, 2007 WL 1424673 (D. Minn. May 10, 2007), plaintiff has made no affirmative representation here that it will not be relying upon the confidential witnesses at trial. Instead, plaintiff merely has asserted that "at this point it is too early to determine if plaintiff will rely on the testimony of confidential witnesses to prove its allegations."

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   3

2008 WL 205318
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Orlando Division.

In re FARO TECHNOLOGIES
SECURITIES LITIGATION.

Lead Case No. 6:05–cv–1810–Orl–22DAB.
|
Jan. 23, 2008.

**Attorneys and Law Firms**

James E. Miller, Karen M. Leser, Patrick A. Klingman, Shepherd, Finkelman, Miller & Shah, LLC, Chester, CT, James C. Shah, Nathan Zipperian, Shepherd, Finkelman, Miller & Shah, LLC, Media, PA, John F. Edgar, Edgar Law Firm, LLC, Kansas City, MO, Scott R. Shepherd, Shepherd, Finkelman, Miller & Shah, LLC, Weston, FL, Daniel S. Sommers, Marka Peterson, Steven J. Toll, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Jonathan L. Alpert, The Alpert Law Firm, Tampa,

FL, Brian Murray, Murray, Frank & Sailer, LLP, New York, NY, Julie Prag Vianale, Vianale & Vianale, LLP, Maya S. Saxena, Joseph E. White, III, Saxena White, PA, Boca Raton, FL, Lionel Z. Glancy, Glancy Binkow & Goldberg, LLP, Los Angeles, CA, Arthur L. Shingler, III, Scott & Scott, LLC, San Diego, CA, Charles Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD, David R. Scott, Scott & Scott, LLC, Colchester, CT, for Plaintiff.

Donald D. Lewis, Jay B. Kasner, Susan L. Saltzstein, Skadden, Arps, Slate, Meagher & Flom, LLP, Robert A. Scher, Foley & Lardner, LLP, New York, NY, Nancy J. Sennett, Foley & Lardner, LLP, Milwaukee, WI, Richard S. Davis, Foley & Lardner, LLP, Orlando, FL, for Defendant.

**ORDER**

DAVID A. BAKER, United States Magistrate Judge.

 **\*1** This cause came on for consideration without oral argument on the following motions filed herein:

| MOTION: | DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO CERTAIN DISCOVERY REQUESTS AND LIMIT CERTAIN OF PLAINTIFF'S DISCOVERY REQUESTS (Doc. No. 134) |
|---|---|
| FILED: | January 11, 2008 |

THEREON it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

| MOTION: | PLAINTIFF'S MOTION TO COMPEL [INCORPORATED IN PLAINTIFF'S RESPONSIVE MEMORANDUM] (Doc. No. 135) |
|---|---|
| FILED: | January 11, 2008 |

THEREON it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

As set forth at the discovery conference and in the motions, the parties currently have four outstanding issues regarding the scope of discovery in this putative securities class action lawsuit. As time is of the essence due to the case management deadlines and the upcoming February mediation, the parties have expedited the briefing of these issues and the matter is now ripe for resolution. The Court addresses each issue, in turn.

**The extent of any work product protection afforded to the Confidential Witnesses**

Defendants have served Interrogatories Nos. 10 and 11, which seek:

> INTERROGATORY NO. 10: Identify each person who has knowledge or information regarding the claims set forth in the Consolidated Second Amended Class Action Complaint, and the responses and defenses asserted in the FARO Defendants' Answer and Affirmative Defenses, and, for each person, provide a detailed summary of that person's knowledge or information regarding such matters.

> INTERROGATORY NO. 11: Identify, by "CW" number, each Confidential Witness described or mentioned in the Consolidated Second Amended Class Action Complaint. For each Confidential Witness, state or describe (by "CW" number): whether the Confidential Witness first contacted KCM, KCM's counsel or their representatives, or whether KCM, KCM's counsel or their representatives first contacted the Confidential Witness; the date, manner and participants of and to each contact or communication with the Confidential Witness; the location of each contact or communication with the Confidential Witness; whether the Confidential Witness was a current FARO employee or a former FARO employee at the time of each contact with the Confidential Witness; whether the Confidential Witness had any confidentiality obligation or other obligation to FARO at the time of each contact; whether KCM, KCM's counsel or their representatives knew or were aware of such obligations at the time of each contact; the identity of all documents transmitted by KCM, KCM's counsel or their representatives to the Confidential Witness, and the date and manner of such transmission; the identity of all documents received by KCM, KCM's counsel or their representatives from the Confidential Witness, and the date and manner of such receipt; and whether, during each contact with the Confidential Witness, any financial payment or other benefit, incentive, reimbursement, or remuneration to the Confidential Witness was discussed (and, if so, what was discussed, and by whom, including, but not limited to, the terms of any agreement relating to such financial payment or other benefit, incentive, reimbursement, or remuneration).

**\*2** Lead Plaintiff objects to these Interrogatories to the extent they seek *specific* identification of the Confidential Witnesses (herein "CW") by the number ascribed to them in the Second Amended Complaint, contending that such disclosure *at this time* is violative of the work-product privilege set forth in Federal Rule of Civil Procedure 26(b) (3). Plaintiff argues that it has already disclosed all known witnesses (necessarily including the CW's) in a general fashion in its Initial Disclosures and that it should be allowed to protect the specific identities of these witnesses, until such time as it makes a determination to use a particular witness for trial.

As noted by Defendant, Fed.R.Civ.P. 26(b)(1) (2007) states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The names and addresses of witnesses are non-privileged and discoverable. *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir.1984). Thus, solely as to the issue of *identity,* the Court agrees with the majority of the courts that have recently addressed the issue, and finds "the work product immunity does not allow Plaintiffs to conceal the identity of those "Confidential Witnesses" identified by title in the complaint." *Mazur v. Lampert* 2007 WL 917271, \*4 (S.D.Fla.2007), citing *In re Aetna, Inc. Sec. Litig.,* 1999 WL 354527 (E.D.Pa. May 26, 1999); *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258 (N.D.Ill.1985); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631 (N.D.Ga.2002); *Accord, Brody v. Zix, Corp.,* 2007 WL 1544638 (N.D.Tex.2007); *In re Harmonic, Inc. Securities Litigation,* 245 F.R.D. 424 (N.D.Cal.2007). To the extent the Interrogatories seek the specific identification of the CW's, the motion to compel is **granted.** [1]

That said, the Court **denies** the motion to compel, to the extent Interrogatory 11 seeks clearly protected work-product information, such as the particulars of any and all contacts with Plaintiff's attorneys or investigators. Although Defendant states in a footnote that it does not seek to compel discovery concerning Plaintiff's investigators, the information sought in Interrogatory 11 is so broad as to inappropriately uncover what the lawyer did and thought, rather than what the witness knows. *See Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

L.Ed. 451 (1947) (noting, among other things and subject to exception, that work-product includes information which an attorney secures from a witness while acting for his client in anticipation of litigation). Defendants are free to seek the factual information regarding the knowledge of a witness directly from the witness, but there is no showing that details regarding which attorney asked which question, and where, is even relevant, let alone of such importance as to override the traditional protection offered to such information. *See* Rule 26(b)(3) (A)(ii), Federal Rules of Civil Procedure.

**\*3** Plaintiff contends that if it must identify the CW's, it be allowed to wait to do so, until thirty days before the close of the discovery period. The Court declines to adopt this proposal, which is markedly inconsistent with Plaintiff's position that it should be allowed to engage in early merit discovery "in order to prepare for the [February] mediation." As Plaintiff recognizes, it has a "right to prepare the case on the merits and for mediation" (Doc. No. 135 at 25). Certainly, Defendants have no less a right to do so. Plaintiff shall supplement its response to the Interrogatories to include the specific identification of the CW's within five days of the date of this Order.

### Plaintiff's Relationship with co-lead counsel

Defendants move to compel Plaintiff to produce documents related to Plaintiff's current and past relationship with the Edgar Firm and Shepherd, Finkelman, Miller and Shah, LLC, the two law firms currently serving as Co–Lead Counsel, including all fee arrangements and agreements (Defendants' First Set of Interrogatories, No. 16; Defendants' First Set of Requests for Production of Documents Nos. 43–45.) Plaintiff objects on relevance grounds.

With respect to the fee agreements themselves, the Court finds them to be relevant and discoverable here. There is nothing magical or privileged about a fee agreement in class action litigation. Indeed, courts are heavily involved in the selection process of the attorney representing the class, as well as the ultimate compensation paid to class counsel; perhaps more so than in any other kind of litigation. While fee arrangements are not always relevant to class certification issues, and, in fact, numerous courts have found them to be irrelevant in that context, here,

the appointment of two firms to represent Lead Plaintiff and the class, based on a strong pre-existing professional relationship, is sufficiently unusual as to warrant the disclosure of the fee agreements. *See, generally, In re Sheffield,* 280 B.R. 719 (S.D.Ala.2001) (collecting cases). The motion is **granted, with respect to production of the fee agreements.** To the extent Defendants seek documents or discovery regarding Plaintiff's oversight of the action or other documents regarding its relationship with counsel, the motion is **denied, as moot.** *See* Doc. No. 135, n. 8.

### The ability to conduct "limited" merit discovery prior to the mediation date

To the extent there are motions to either allow or limit this discovery, both are **denied.** The Case Management and Scheduling Order (Doc. No. 116) does not purport to limit merits discovery until after class certification issues are completed, and the relatively expedited nature of the case does not warrant such treatment, in any event. Plaintiff need not seek permission to conduct discovery, and Defendant's have not presented sufficient grounds to avoid it. The parties are ably represented and the Court trusts that they are capable of working cooperatively to schedule discovery.

### Pre and post-Class Period Discovery

**\*4** The final issue presented to the Court is the proper scope of discovery in the pre and post-class period, with Plaintiff seeking six months on either end and Defendants offering three months. The Court finds the arguments both for and against this issue to be unenlightening. On one hand, six months in either direction does not appear to be that unreasonable a time period, considering the nature of the case and the fact that this is a public company. On the other hand, absent a showing of relevance, such a time period appears to be no more than arbitrary. In the absence of any showing of particular burdensomeness or other prejudice, the Court finds the six month "cushion" not inappropriate.

**DONE** and **ORDERED** in Orlando, Florida on January 22, 2008.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 205318

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

Footnotes

1    The Court rejects Plaintiff's contention that revealing the identity of the CW would permit opposing counsel to infer which
     witnesses counsel considers important, thus revealing mental impressions and strategy. (Doc. No. 135 at 9). Here, Plaintiff
     has already revealed which witnesses counsel finds important, by setting forth specific information as to their knowledge,
     in the SAC. Plaintiff has already pled *generally* who they are (*e.g.,* "a manager in FARO's purchasing department") and
     *specifically* what they know. Their name and address does not add to counsel's mental impression.

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.                4

🚩 KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Ross v. Abercrombie & Fitch Co., S.D.Ohio,
March 24, 2008

245 F.R.D. 424
United States District Court,
N.D. California.

In re HARMONIC, INC. SECURITIES LITIGATION.
This Document Relates to: All Actions.

No. C–00–2287 PJH (EMC).
|
Sept. 13, 2007.

**Synopsis**
**Background:** In securities fraud action, defendants
brought motion to compel plaintiffs to reveal, in their
answers to interrogatories, the names of five confidential
witnesses.

**[Holding:]** The District Court, Edward M. Chen, United
States Magistrate Judge, held that names of confidential
witnesses did not constitute attorney work-product.

Motion granted.

West Headnotes (3)

**[1]** **Federal Civil Procedure**
🔑 Work product privilege;trial preparation
materials
Disclosure, through plaintiffs' answers to
defendants' interrogatories in securities fraud
action, of names of five confidential
witnesses (CW) whose allegations were relied
upon by plaintiffs to support their claims,
would not reveal mental impressions of
plaintiffs' counsel and the names therefore
did not constitute attorney work-product,
for purposes of attorney work-product
privilege; such information would inevitably
be disclosed during depositions because
confidential witnesses were included in
the 77 witnesses listed by plaintiffs in

their initial disclosures, and plaintiffs had
already revealed their legal strategy by
including confidential witnesses' statements
in complaint. Securities Act of 1933, § 1 et
seq., 15 U.S.C.A. § 77a et seq.; Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

22 Cases that cite this headnote

**[2]** **Federal Civil Procedure**
🔑 Work product privilege;trial preparation
materials
Even assuming that names of five confidential
witnesses (CW) whose allegations were relied
upon by plaintiffs to support their securities
fraud claims constituted attorney work-
product, the names were factual work-
product, so that defendants' need for and
interest in disclosure of such information,
through plaintiffs' answers to defendants'
interrogatories, would overcome the de
minimis work product under balancing
process between work-product interest and
interest in discovery. Securities Act of 1933, §
1 et seq., 15 U.S.C.A. § 77a et seq.; Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

18 Cases that cite this headnote

**[3]** **Federal Civil Procedure**
🔑 Work Product Privilege;Trial
Preparation Materials
In cases involving attorney work-
product of minimal substantive content,
showing of substantial need and
undue hardship, as required to compel
disclosure, is comparatively lower. Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

4 Cases that cite this headnote

**Attorneys and Law Firms**

**\*425** William S. Lerach, Christopher Lometti,
Schoengold & Sporn, P.C., Robert I. Harwood, Wechsler
Harwood LLP, Laura M. Perrone, Law Offices of Laura
M. Perrone PLLC, New York, NY, Jay P. Saltzman,

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

Samuel P. Sporn, Stephen R. Basser, Matthew P. Montgomery, Barrack Rodos & Bacine, San Diego, CA, Patrick J. Coughlin, Susan K. Alexander, Milberg Weiss Bershad Hynes Lerach LLP, Christopher T. Heffelfinger, Berman Devalerio Pease Tabacco Burt & Pucillo, San Francisco, CA, Reed R. Kathrein, Andrew L. Barroway, David Kessler, Schiffrin & Barroway LLP, Bala Cynwyd, PA, Joseph J. Tabacco, Jr., Edward M. Gergosian, for Plaintiff.

Melinda S. Blackman, Morrison & Foerster LLP, San Francisco, CA, Margaret L. Wu, Terri A. Garland, Melvin R. Goldman, Brandon H. Pace, Wilson Sonsini Goodrich Rosati, Palo Alto, CA, Hanley N. Chew, Jerome F. Birn, Jr., Terry T. Johnson, for Defendant.

### ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES REGARDING "CONFIDENTIAL WITNESSES"

EDWARD M. CHEN, United States Magistrate Judge.

On June 27, 2007, Defendants filed a motion to compel answers to interrogatories regarding five "confidential witnesses" ("CWs"). Plaintiffs made specific reference to the CWs and cited information they provided to support the 1934 Securities Exchange Act claims, which were asserted in Plaintiffs' second amended complaint ("SAC"). Although the 1934 Act claims were eventually dismissed and Plaintiffs later filed a third amended complaint ("TAC") which no longer made specific reference to the CWs, the information provided by the CWs was still used to support the 1933 Securities Act claims in the TAC. Plaintiffs claim that the witnesses' identities are protected by the work product privilege.

Having reviewed the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendants' motion to compel.

### *426 I. *FACTUAL & PROCEDURAL BACKGROUND*

Harmonic, Inc. is a Silicon Valley-based cable equipment supplier. *See* TAC ¶ 24. In October 1999, Harmonic and C–Cube Microsystems, Inc. announced that Harmonic would acquire C–Cube's DiviCom division, conditioned on shareholder approval by both Harmonic and C–Cube

shareholders. In March 2000, Harmonic and C–Cube filed a Form S–4 Registration Statement with the SEC, which contained the Harmonic and C–Cube joint proxy statement/prospectus. In April 2000, Harmonic and C–Cube's shareholders voted to approve the merger, and the merger closed in May 2000.

In June 2000, Harmonic announced that it did not expect to meet analysts' expectations for the second quarter of 2000. Thereafter, Plaintiffs initiated this lawsuit, alleging violations of the Securities Exchange Act of 1934 as well as the Securities Act of 1933.

In July 2001, Judge Hamilton dismissed Plaintiffs' complaint with leave to amend. In response, Plaintiffs filed a SAC, which again alleged violations of the 1934 Act and the 1933 Act and which contained a section titled "Confidential Sources." In this lawsuit, Plaintiffs identified five CWs; provided information as to their job titles while employed by Harmonic, C–Cube, or DiviCom; asserted that they had personal knowledge of certain facts; and then described in detail what those facts were. *See* Rodriguez Decl., Ex. 1 (SAC).

Judge Hamilton dismissed the SAC with prejudice in November 2002. Thereafter, Plaintiffs appealed to the Ninth Circuit. The Ninth Circuit affirmed the dismissal of the 1934 Act claims but reversed the dismissal of the 1933 Act claims. In May 2006, Plaintiffs filed their TAC.

In the TAC, Plaintiffs allege that they bring their action on behalf of those who received, purchased, or otherwise acquired Harmonic stock issued pursuant to Harmonic's Form S–4 Registration Statement filed in March 2000, which contained the Harmonic and C–Cube joint proxy statement/prospectus. *See* TAC ¶ 2. According to Plaintiffs, Defendants violated the 1933 Act because the registration statement issued by Harmonic was misleading. For example, the registration statement highlighted Harmonic's strong business trends, in particular its increased sales to AT & T in 1988 and the first three quarters of 1999, but did not disclose that, in mid–1999, AT & T was actually turning away from improving and expanding its network and that Harmonic sales to AT & T had actually declined from the third quarter to the fourth quarter of 1999. *See id.* ¶¶ 7–8. According to Plaintiffs, the registration statement also failed to disclose that, immediately after the October 1999 announcement of the merger with Harmonic, DiviCom's

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 2

sales declined precipitously during the fourth quarter of 1999 and the first quarter of 2000 because key DiviCom customers, concerned about DiviCom's being acquired by a cable company, started canceling orders. *See id.* ¶ 11.

## II. *DISCUSSION*

As indicated above, Plaintiffs' SAC contained allegations based on statements made by the CWs. Plaintiffs' TAC— while it no longer makes specific reference to the CWs— repeats the same allegations.

For example, in the SAC, Plaintiffs allege that Confidential Witness No. 1 ("CW–1"), a former high-ranking DiviCom employee, had personal knowledge that "DirecTV, Look TV, and Echo Star all 'openly expressed' serious concerns that DiviCom's acquisition by a cable company would draw the company's focus and development away from the satellite products." SAC ¶ 32(g). The TAC contains the same allegation, asserting that, "[i]mmediately upon learning of the Agreement [between Harmonic and C–Cube], Divicom's largest satellite customers ... openly expressed serious concern that Divicom's acquisition by a cable company would draw the company's focus and development efforts away from satellite products in favor of its cable products." TAC ¶ 36. Apart from slight variations in wording, the primary difference between the factual allegation made in the SAC and that in the TAC is the lack of attribution to CW–1.

Plaintiffs repeat this practice throughout the TAC. There are several instances where alleged facts in the TAC arise out of CWs' **\*427** statements in the SAC. However, these alleged facts in the TAC are no longer attributed to a CW as they were in the SAC.

Although the TAC no longer makes specific reference to the CWs, Defendants have—not surprisingly— sought to discover the identities of the CWs since, as demonstrated by the SAC, their statements underlie many of the allegations in the TAC. At issue here is an interrogatory which Defendants propounded on Plaintiffs. That interrogatory asks Plaintiffs to "[i]dentify each Confidential Witness mentioned in the Second Consolidated Amended Complaint ... and state the corresponding number by which the Confidential Witness was designated." Mot. at 5. Plaintiffs refused to respond to the interrogatory on the basis of the work product privilege. Plaintiffs have maintained this position even after Defendants stated that they were willing to "accept the names of the five witnesses without Plaintiffs having to link the names to the corresponding confidential witness number." *Id.*

As a preliminary matter, the Court notes that the identities of the CWs are relevant to Plaintiffs' claims. The fact that the CWs were mentioned in a complaint that has since been dismissed has no bearing on their relevance since their statements are now relied upon to support the current complaint. Plaintiffs cannot expect that merely removing attribution in the TAC will raise a protective wall around the CWs' identities. The Court therefore turns to the main issue here which is whether the work product privilege protects against the disclosure by way of an interrogatory of the identities of the confidential witnesses.

**[1]** Plaintiffs' claim of protection rests on the theory that disclosing the identities of the CWs will reveal the mental impressions of counsel. The Court is not persuaded. Defendants are not seeking the preliminary notes or other memoranda written during the interviews of these witnesses, which would be considered protected work product. *See, e.g., Upjohn Co. v. U.S.,* 449 U.S. 383, 399, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("Forcing an attorney to disclose notes and memoranda of witness' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."). Nor are Defendants asking for Plaintiffs to summarize the substance of those interviews in an interrogatory response. Plaintiffs have already divulged the contents of those interviews or at least substantial portions thereof by filing the SAC. What Defendants seek here is only the identities of witnesses whom Plaintiffs have deemed credible enough to rely upon in two of their complaints.

There is no binding precedent as to whether disclosure of the mere identity of a CW at this juncture is protected work product. Neither the Supreme Court nor the Ninth Circuit has opined on the matter. As to those courts that have addressed the issue, some have held that the identities are privileged; other courts have held they are not. *Compare, e.g., Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,* No. C01–20418 JW, 2005 WL 1459555 (N.D.Cal. June 21, 2005) (concluding that witnesses' identities reveal counsel's mental impressions

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

and trial strategy and therefore work product protections apply), and *In re MTI Tech. Corp. Sec. Litig. II,* No. SACV 00–0745 DOC, 2002 WL 32344347 (C.D.Cal. June 13, 2002) (concluding that the identity of witnesses contains work product content), *with Miller v. Ventro Corp.,* No. C01–01287 SBA (EDL), 2004 WL 868202 (N.D.Cal. Apr. 21, 2004) (concluding that disclosure of CWs' identities would not reveal attorney's mental impressions and therefore work product doctrine does not apply).

The Court finds the reasoning in *Ventro* more persuasive. The issue here, like that in *Ventro,* is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered. *See Ventro,* 2004 WL 868202, at *2 (finding that the CWs identities would be inevitably revealed over the course of the trial process). Plaintiffs admit as much by acknowledging that the five CWs have been identified among the list of 77 witnesses in their initial disclosures. They concede that by deposing or otherwise investigating all of the 77 witnesses, Defendants will eventually be able to discern who the five CWs are. Thus, as in *Ventro,* it is a matter of when, not if, the CWs' identities will be discovered. While there are some instances in which the **\*428** timing or sequencing of disclosures may affect counsel's strategy (such as the sequence and timing of expert disclosures), here there is no cognizable strategic advantage to be gained by Plaintiffs in withholding the identities. The only effect is to force the Defendants to expend resources on taking the depositions of 77 people in order to obtain the information. Because the information will inevitably be disclosed and the earlier disclosure does not compromise Plaintiffs' strategic or tactical position, there is no basis for finding work product protection. *See United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *Hickman v. Taylor,* 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (basing work product protection on attorney's need to "prepare his legal theories and plan his strategy without undue interference"); *Admiral Ins. Co. v. U.S. Dist. Court,* 881 F.2d 1486, 1494 (9th Cir.1989) ("The conditional protections afforded by the work product rule prevent exploitation of party's efforts in preparing litigation."). Rather, requiring such a dilatory exercise runs counter to the "just, speedy, and inexpensive determination" directed by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 1.

Plaintiffs contend that *Ventro* is distinguishable from the instant case because the TAC does not contains claims governed by the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs note that *Ventro* and other cases resulting in the disclosure of witness identities involved the PSLRA's heightened pleading requirements. *See Ventro,* 2004 WL 868202, at *1 ("To satisfy the heightened pleading requirements for securities fraud litigation contained in the Private Securities Litigation Reform Act of 1995, Plaintiffs relied heavily in their complaint on twenty-two Confidential Witnesses (CWs)...."); *In re Aetna Inc. Sec. Litig.,* 1999 WL 354527, at *4 (E.D.Pa. May 26, 1999) ("Furthermore, the disclosure of names and addresses of persons interviewed by Plaintiffs' counsel is consistent with the policy considerations underlying the [PSLRA]."). Since the current case at bar deals with claims outside the purview of the PSLRA, Plaintiffs argue that this Court cannot reach the same conclusion as these prior cases.

That PSLRA claims no longer obtain in this suit is irrelevant. A close reading of *Aetna* and *Ventro* reveals that the PSLRA's heightened pleading requirement was not essential to those courts' decisions. The essence of *Ventro, Aetna,* and other related cases is that resources should not be wasted if the relevant information sought will inevitably come to light. That fact remains whether there are PSLRA claims or not in this case, the information which came from the CWs is relevant to the 1933 Securities Act claims and will inevitably be disclosed.

The instant case is distinguishable from *Plumbers,* one of the cases upon which Plaintiffs rely in support of their position. In *Plumbers,* the interrogatory at issue requested a list of "all persons that [were] interviewed during the course of the investigation." *Plumbers,* 2005 WL 1459555, at *5. This broad request would undoubtedly provide insight into counsel's thought processes during preparation for litigation. For example, one would be able to discern how counsel structured the pretrial investigation as well as the entire universe of potential witness which counsel believed had relevant information. In the instant case, the interrogatory propounded by Defendants is not so broad and would not implicate the same threat to counsel's thought process.

The main concern cited by *Plumbers* and *MTI* is that legal strategy would be revealed by disclosing the identities.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 4

*See Plumbers,* 2005 WL 1459555, at *4; *MTI,* 2002 WL 32344347, at *3. As discussed above, the Court does not believe that such a threat is present in the instant case. Plaintiffs have already revealed their legal strategy by including the CWs' statements in the SAC. It is obvious that Plaintiffs considered these five CWs' knowledge important. Furthermore, Plaintiffs have already provided substantial indicators as to who the CWs are. *See, e.g.,* SAC ¶ 33 (identifying CW–2 as a "former high ranking employee at Harmonic working in an administrative/ purchasing capacity **\*429** from prior to the Class Period through 5/00" and "responsible for maintaining Harmonic's daily backlog reports"). They have indeed named them within a list of 77 witnesses.

 **[2]**  **[3]**  Even if the CWs' identities were protected work product, disclosure would nonetheless be required because, at best, the information is factual work product. The scope of that factual work product is minimal here since the only information being withheld is the identities of the CWs. Defendants' need for and interest in this information would overcome the *de minimis* work product under the balancing process between the work product interest and the interest in discovery. *See United States v. Amerada Hess Corp.,* 619 F.2d 980, 988 (3d Cir.1980) (concluding that the work product doctrine requires a "balancing of competing interests" and that the minimal substantive content of the work product being sought was outweighed by the need to avoid time and effort); *In re Auto. Refinishing Paint Antitrust Litig.,* No. MDL 1426, 2006 WL 1479819, at *5 (E.D.Pa. May 26, 2006) (compelling responses to interrogatories in light of minimal substantive content); *Computer Assocs. Int'l, Inc. v. Quest Software, Inc.,* No. 02 C 4721, 2003 WL 22159022, at *1 (N.D.Ill. Sep. 17, 2003) (stating that, "[w]hile it is true that defendants have an opportunity to interview these employees on their own, we believe that the disclosure of the names is extremely unlikely to have a prejudicial effect on [the plaintiff] or give defendants any insight into its preparation for litigation[—][i]nstead, it will serve only to expedite the gathering of relevant information"); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631, 636 (N.D.Ga.2002) (compelling answers to interrogatories since disclosure "will provide minimal, if any, disclosure of an attorney's thought processes"). In cases involving work product of "minimal substantive content," the showing of "substantial need" and "undue hardship" required by Rule 26(b)(3) is "comparatively lower." *Amerada,* 619 F.2d at 988. In this case, as in *Amerada,* the minimal substantive content of the witnesses' identities diminishes the showing required by Rule 26(b)(3). The "avoidance of time and effort" suffices. *Id.; see also Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (noting that "discovery provisions, like all of the Federal Rules of Civil Procedure are subject to the injunction of Rule 1 that they be construed to secure the just, *speedy,* and, *inexpensive* determination of every action") (emphasis in original and internal quotation marks omitted); *Computer Assocs.,* 2003 WL 22159022, at *1 (noting that disclosure will expedite the litigation process).

### III. *CONCLUSION*

For the foregoing reasons, the Court concludes that the identities of the five confidential witnesses (CWs) in the context of the motion at bar are not protected by the work product privilege. Even if the identities were protected by the work product privilege, the balancing of interests would strongly favor Defendants since the *de minimis* content of the witnesses' identities is outweighed by Defendants' interest in the information and value of expediting the litigation. Accordingly, the Court grants the Defendants' motion to compel answers to the interrogatories regarding the confidential witnesses.

This order disposes of Docket No. 237.

IT IS SO ORDERED.

**All Citations**

245 F.R.D. 424

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Rejected by *Hubbard v. Bankatlantic Bancorp, Inc.,* S.D.Fla.,
November 17, 2009

2002 WL 32344347
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

In re MTI TECHNOLOGY
Corp. Securities Litigation II

No. SACV 00–0745 DOC.
|
June 13, 2002.

**Attorneys and Law Firms**

William S Lerach, Darren J Robbins, Spencer A
Burkholz, Denise M Douglas, Milberg Weiss Bershad
Hynes & Lerach, San Diego, CA, Jeffrey C Block, Berman
DeValerio Pease Tabacco, Burt & Pucillo, Boston, MA,
Richard D Kranich, Richard D Kranich Law Offices,
New York, NY, for Plaintiff.

Robert S Stern, John W Alden, Jr, Sumako J McCallum,
Morrison & Foerster, Los Angeles, CA, for Defendant.

*CIVIL MINUTES—GENERAL*

CARTER, J.

PROCEEDING (IN CHAMBERS):
GRANTING MOTION FOR REVIEW AND
RECONSIDERATION OF MAGISTRATE JUDGE'S
ORDER COMPELLING DISCOVERY

**\*1** Before the Court is Plaintiffs' motion for review and
reconsideration of Magistrate Judge Arthur Nakazato's
order compelling discovery. The Court finds that the
matter is appropriate for decision without oral argument.
Fed.R.Civ.P. 78; Local Rule 7–15. After reviewing the
moving, opposing and replying papers, and for the reasons
set forth below, the Court GRANTS the motion.

I. BACKGROUND

This is a class action brought by shareholders of
Defendant MTI Technology Corporation for violation of
the Securities Exchange Act of 1934. *See* 15 U.S.C. §§
78j(b), 78t(a). The original complaint in this action was

filed on July 31, 2000. Subsequently, various shareholder
actions were consolidated, a class of shareholders was
certified and a consolidated complaint filed in December
2000. Defendants brought a motion to dismiss which was
granted on March 27, 2001 with leave to amend. The First
Amended Consolidated Complaint (FACC) was then
filed with Defendants again responding with a motion
to dismiss. This motion was denied but Plaintiffs were
granted leave to file a Second Amended Consolidated
Complaint (SACC) in order to add newly discovered
supporting evidence. This is the operative complaint at
this time.

Both of Defendants' motions to dismiss were predicated
on the argument that Plaintiffs failed to satisfy the
stringent pleading standards of the Private Securities
Litigation Reform Act of 1995 (PSLRA). 15 U.S.C. §
78u–4. The PSLRA governs allegations for violations of
the Securities Exchange Act and requires that Plaintiffs
"specify each statement alleged to have been misleading,
[and] the reason or reasons why the statement is
misleading." 15 U.S.C. § 78u–4(b)(1). Plaintiffs must also
"state with particularity all facts on which their belief is
based." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d
970, 983 (9th Cir.1999) (citing to the PSLRA). It is this
standard that has contributed to the current discovery
dispute before the Court.

The FACC and the SACC both refer to six former
employees of MTI (designated EE1–EE6). These former
employees are not named, although some identifying
characteristics regarding their prior positions within the
corporation are mentioned. (*See, e.g.,* SACC ¶ 73(e)
("According to EE4 who is knowledgeable about MTI's
accounts....").) The paragraphs incorporating the six
informants were added to satisfy the PSLRA and the
standard of *Silicon Graphics.* The information regarding
the former employees adds details and credibility
regarding the more general allegations of Defendants'
misconduct. Reference to the employees, their job
positions, and their specific observations states with
particularity the facts upon which the general allegations
are based. (*See, e.g.,* SACC 73(b) ("According to EE6,
a former employee, some of MTI's products were
intentionally produced without serial numbers so they
could not be tracked.").)

During the course of discovery, Defendants propounded
Special Interrogatory 1 requesting Plaintiffs to "identify,

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.   1

respectively, EE1 through EE6, as referenced in the Second Amended Complaint." As part of its Rule 26 initial disclosures, Plaintiffs produced a list of 71 "former or present employees, officers and directors who may have discoverable information." Plaintiffs, however, refused to specifically identify the six former employees referenced in the SACC, stating simply that they are among the 71 individuals identified in their Rule 26 disclosures. Defendants, brought a motion to compel identification of EE1 through EE6 in front of the Honorable Arthur Nakazato. Plaintiffs opposed, claiming the protection of the work product rule and the need to protect the confidential informants. Magistrate Judge Nakazato granted the motion to compel and Plaintiffs have brought the instant motion before this Court to reconsider the magistrate judge's order. (*See* Apr. 5, 2002 Order.)

## II. LEGAL STANDARD

**\*2** Plaintiffs bring the current motion to reverse the magistrate judge's April 5, 2002 order compelling discovery. Pursuant to Local Rule (Chapter V) Governing Duties of Magistrate Judges 3.3, within ten days of service of a written ruling by a magistrate judge an aggrieved party "may file ... and serve a motion for review and reconsideration before the district judge to whom the case is assigned, specifically designating the portions of the decision objected to and specifying wherein such portions of the decision are clearly erroneous or contrary to law, with points and authorities in support thereof." This Local Rule implements Federal Rule of Civil Procedure 72(a), which provides that "a party may serve and file objections" to a magistrate judge's order within ten days of being served with it, and 28 U.S.C. § 636(b)(1), which provides that a district judge "may reconsider any pretrial matter [ruled on by a magistrate judge] ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Therefore, the standard applied in a review of a discovery matter, such as the one at issue, is the "clearly erroneous or contrary to law" standard. Haines v. Liggett Group Inc., 975 F.2d 81, 92 (3d Cir.1992) (noting that the proper standard for review of discovery orders is the "clearly erroneous or contrary to law" standard).

The "clearly erroneous" standard applies to the magistrate judge's factual determinations. Maisonville v. F2 Am., Inc., 902 F.2d 746, 748 (9th Cir.1990). Under this standard, the district court should overturn the magistrate judge's ruling only when the district court is "left with the definite

and firm conviction that a mistake has been committed." Concrete Pipe & Prods. of Cal., Inc. v. Constrs. Laborers Pension Trust, 508 U.S. 602, 622, 113 S.Ct. 2264, 2279, 124 L.Ed.2d 539 (1993). The "contrary to law" standard applies to the magistrate judge's legal conclusions. Haines, 975 F.2d at 91 ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law."). A contrary to law review amounts to a *de novo* review of the magistrate judge's legal conclusions. *See* United States v. McConney, 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc) ("Questions of law are reviewed under the non-deferential, de novo standard."), *abrogated on other grounds by* Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

## III. DISCUSSION

The work product doctrine-protecting trial preparation materials that reveal an attorney's strategy, evaluation and investigation-is well-established under federal law. *See* Fed.R.Civ.P. 26(b)(3), Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). The doctrine provides only a qualified protection from discovery; disclosure may be required if the party seeking discovery shows a substantial need of the materials and that it is unable to obtain the equivalent without undue hardship. Fed.R.Civ.P. 26(b)(3); *see also* Hickman, 329 U.S. at 511–12, 67 S.Ct. at 394. This standard applies to nonparty witness statements, for instance. Fed.R.Civ.P. 26(b)(3).

**\*3** Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected,[1] the identity of witnesses interviewed by opposing counsel is protected. Massachusetts v. First Nat'l Supermarkets, Inc., 112 F.R.D. 149, 154 (D.Mass.1986); Laxalt v. McClatchy, 116 F.R.D. 438, 443 (D.Nev.1987); *see also* McIntyre v. Main St. & Main Inc., 2000 WL 33117274, at \*2 (N.D.Cal. Sept.29, 2000). The rationale behind this distinction is that if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. *See* Laxalt, 116 F.R.D. at 443. Such evaluations, impressions, and strategy are at the heart of the work product rule. The identity of witnesses is subject to qualified protection and thus opposing counsel may obtain disclosure based upon the requisite showing of need and undue hardship. *See* Am. Floral Servs., Inc.

*v. Florists' Transworld Delivery,* 107 F.R.D. 258, 260 (N.D.Ill.1985).

In one district court case, for instance, defendants sought "the identity of witnesses known to [the government] with knowledge of facts underlying the allegations in the Supplemental Complaint." *United States v. Dist. Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of Am.,* No. 90 CIV 5722, 1992 WL 208284, at *4 (S.D.N.Y. Aug.18, 1992). The court declined to order disclosure stating:

> [T]he identity of people mentioned in the Supplemental Complaint to whom [the governmental agent] spoke, and the substance of her conversations, also constitute work product. How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. Disclosure of this information would inevitably teach defendants which individuals the Government considered more or less valuable as witnesses and how it was preparing for trial.

1992 WL 208284, at *10 (emphasis added). Pointing to defendants' access to the universe of individuals with information relevant to the issues in the case, the court additionally found that defendants had not shown the requisite need to overcome qualified protection. *Id.*

This Court finds that the identity of the former employees mentioned in the SACC includes work product content. This finding is made in light of the established law concluding that there is work product in the identity of witnesses interviewed or otherwise relied upon by plaintiffs. Reaching an opposite conclusion on a similar issue, however, *In re Aetna Inc. Securities Litigation*[2] held that the identity of persons described in an amended complaint is not work product or, at the most, has limited work product content. No. CIV.A.MDL. 1219, 1999 WL 354527, at *2–3 (E.D.Pa. May 26, 1999). The court further found that even if work product, then "the need for disclosure of the information outweighs the minimal work product content of the information." 1999 WL 354527, at *4. In that case, plaintiffs' Rule 26 disclosures included a list of 750 individuals with knowledge of discoverable material and, for example, listed over 200 individuals with knowledge of a single paragraph of the amended complaint. *Id.* at *1. While acknowledging the analogous situation presented in *Aetna,* this Court finds the *Aetna* court's rationale for discounting any potential

work product content unpersuasive for numerous reasons and declines to follow the district court opinion.

**\*4** First, *Aetna* followed a Third Circuit case finding that a list of witnesses identified by counsel had only minimal work product content but did not point to any cases finding no work product value in the identity of witnesses. *Aetna,* 1999 WL 354527, at *2–3 (citing *United States v. Amerada Hess Corp.,* 619 F.2d 980 (3d Cir.1980). The Third Circuit case identified several factors for consideration in a work product analysis and found that, in the particular circumstances presented, no policy reasons existed for protection of the work product. *Amerada Hess,* 619 F.2d at 987–88 (pointing to the extent the information reveals counsel's mental processes, the likely reliability of its reflection of witness' statements, the possibility it will convert counsel into a witness, and the degree of availability of the information from other sources). Applying some of these same factors, the *Aetna* court concluded that the disclosure of names and addresses of those individuals interviewed by counsel would not reveal "mental impressions, conclusions, opinions or legal theories" of plaintiff's attorneys and thus there was no work product value. This Court disagrees. This is not a mere list of interviewees, but the identification of individuals that are linked to very specific factual contentions in the SACC. Disclosure of their identity would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future factual statements by the witnesses with Plaintiffs' counsel's legal theories and conclusions as outlined in the complaint.

Second, the *Aetna* court stressed that the plaintiffs named 750 individuals and, without the court's intervention, that "[d]efendants would be forced to engage in a time-consuming and expensive effort to ferret out the veritable needle in the haystack." 1999 WL 354527, at *4. Thus, the court found that the defendants had made a showing of need sufficient to override the limited work product protection. *Id.* Here, Plaintiffs have provided a list of 71 names that includes current and former employees. This is not even close to the unmanageable number present in *Aetna* and it provides a limited universe for Defendants to conduct discovery. Additionally, all 71 individuals are, or were, employees of Defendant MTI and thus Defendants are in the best position to know what type of information each individual may possess. Defendants have not shown

that there is either a substantial need for the particular information sought, beyond reducing their investigative costs by riding on Plaintiffs' coattails, or that they will face an undue hardship without Plaintiffs' identification of the six former MTI employees. [3]

Third, the *Aetna* court noted that its holding was "consistent with the policy considerations underlying" the PSLRA, 1999 WL 354527, at *4. The PSLRA's involvement in this issue cannot be ignored as it was undoubtedly the strict requirements of the PSLRA, and subsequent case law, that caused Plaintiffs to include mention of specific former employees in the complaint. Yet, this Court does not believe that requiring disclosure at the discovery stage furthers the goals of the PSLRA. Although the PSLRA has a tangential effect upon discrete discovery rules, *see, e.g., Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.,* 99 F.3d 325, 327 (9th Cir.1996) (noting that 15 U.S.C. § 78u–4(b)(3)(B) impacts the timing of initial disclosures under Rule 26(b)(1) by providing for a stay of discovery during pendency of a motion to dismiss brought pursuant to the PSLRA), its primary impact is upon the pleading standards in private securities fraud cases, *see generally* 15 U.S.C. § 78u–4(b). Congress may have sought to reduce discovery costs, but the tool it selected was a heightened pleading standard–limiting the number of complaints alleging securities fraud that make it to the discovery stage—and not a revision of the discovery rules themselves. *See SG Cowen Secs. Corp. v. U.S. Dist. Court for N. Dist. of Cal.,* 189 F.3d 909, 911–13 (9th Cir.1999). After all, discovery is only stayed until plaintiffs have met the requisite pleading requirements and then the parties proceed as in any other case. *See id.;* 15 U.S.C. § 78u–4(b)(3)(B).

**\*5** Neither the court in *Aetna* not the Defendants in this case have pointed to a persuasive reason why the PSLRA should be interpreted to alter the traditional discovery dynamics in this adversary system. Although Defendants reference *Silicon Graphics* for support, it merely requires that plaintiffs identify their sources of information specifically enough so as to show a credible basis for the complaint's assertions and to meet the PSLRA's particularity standard. *Silicon Graphics,* 183 F.3d at 984 ("[The plaintiff] fails to state facts relating to the internal reports, including their contents, who prepared them, which officers reviewed them and from whom she obtained the information ... [the] complaint is not sufficiently specific to raise a strong inference of

deliberate recklessness."). The Ninth Circuit case falls far short of imposing a blanket requirement that the identities of confidential informants be disclosed.

Plaintiffs in this case have already passed the PSLRA hurdle by stating their allegations with particularity. This Court will not presume to question the basis for the factual contentions at this stage. The only proper challenge to the sufficiency of the underlying bases for Plaintiffs' complaint allegations would be a motion brought pursuant to Federal Rule of Civil Procedure 11. *See* Fed.R.Civ.P. 11(b),(c) (requiring counsel to certify that all factual contentions in pleadings have evidentiary support and allowing a motion for sanctions if opposing counsel believes the allegation is not warranted). Rule 11 serves to keep a plaintiff's allegations in all case, including PSLRA cases, in check. *See* 15 U.S.C. § 78u–4(c)(2).

Defendants contend that Plaintiffs have waived any right to protect their work product by referring to the former employees in the SACC. Defendants cite to several cases as support but all involve work product information that has been submitted as evidence to the ultimate fact-finder. *See, e.g., United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975) (rejecting defendant's work product argument to protect an investigator's report when the investigator served as a witness at trial and the report was used by defendant's counsel to impeach plaintiff's witnesses). The parties in those cases then sought to preclude full disclosure to opposing counsel. *See id.* Here, Plaintiffs simply referenced former employees to provide a credible basis and specific context for allegations that will be proved with admissible evidence at a later date. The fact-finder in this case will not be invited to rely upon the work product information. Thus, Plaintiffs have not waived any work product protection.

Finally, there are important public policy concerns implicated by disclosure of former employees acting as informants. Although the whistle-blower privilege is not available in this private suit, that does not lessen the need to consider the practical results of an order requiring disclosure of the employees' identities. The Fifth Circuit generally recognized that former employees acting as informers could face serious consequences if their identities were revealed by plaintiff's counsel. *See Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972). The court

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 4

noted that although defendant's counsel may ultimately obtain the same information from the former employees without disclosure, including whether they have spoken to plaintiff's counsel, whether the witness is approached as an informant or merely an uninterested witness may have significant consequences. *See Hodgson,* 459 F.2d at 306 (noting that when counsel speaks to a witness, counsel can then ascertain "whether the information was given reluctantly or voluntarily, whether the tone and manner in which was given it was friendly to the defendant or unfriendly, and whether it was accusatory or favorable."). Thus, there is a legitimate policy concern that militates against requiring disclosure.

**\*6** In sum, the magistrate judge's order compelling disclosure of the identities of the former employees referenced in the SACC is contrary to law. Although there is no precedential authority directly on point, the established law regarding the work product doctrine, the particular circumstances of this case, the purpose and reach of the PSLRA, and public policy concerns lead this Court to conclude that disclosure is unwarranted under existing law.

For the reasons set forth above, the Court GRANTS Plaintiffs' motion for review and reconsideration and reverses the magistrate judge's April 5, 2002 order compelling discovery.

The Clerk shall serve this minute order on all parties to the action.

### All Citations

Not Reported in F.Supp.2d, 2002 WL 32344347

---

Footnotes

1   Fed.R.Civ.P. 26(b)(1)
2   Defendants stress this decision and the magistrate judge relied upon the case in finding that disclosure is required. Thus, it is necessary to examine the case closely in this Order.
3   Although the magistrate judge found the *Aetna* analysis applicable, the court did not make any specific factual findings regarding Defendants' showing of need or undue hardship. Thus, this Court's finding in this area does not contravene the "clearly erroneous" standard that applies to a review of the magistrate judge's factual findings.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    5



⚠ Caution
As of: July 3, 2018 5:41 PM Z

## *In re St. Paul Travelers Secs. Litig. II*

United States District Court for the District of Minnesota

May 10, 2007, Decided ; May 10, 2007, Filed

Civil No. 04-4697 (JRT/FLN)

**Reporter**
2007 U.S. Dist. LEXIS 34527 *

In re ST. PAUL TRAVELERS SECURITIES LITIGATION II

**Subsequent History:** Motion granted by *In re St. Paul Travelers Secs. Litig. II, 2007 U.S. Dist. LEXIS 40326 (D. Minn., June 1, 2007)*

**Prior History:** *In re St. Paul Travelers Sec. Litig. II, 2006 U.S. Dist. LEXIS 70261 (D. Minn., Sept. 25, 2006)*

## Core Terms

witnesses, confidential, Defendants', attorney's work product, plaintiffs', identities, contrary to law, disclosure, waived, cases, attorney work product privilege, motion to compel discovery, provided information, standard of review, clearly erroneous, further support, individuals, securities, affirms, intend

**Counsel: [*1]** For Sidney Kahn, on behalf of himself and all others similarly situated, Plaintiff: Adam J Levitt, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Christopher-NA S Hinton, LEAD ATTORNEY, Not Admitted; Daniel-NA W Krasner, LEAD ATTORNEY, Not Admitted; Demet Basar, LEAD ATTORNEY, Wolf Haldenstein, New York, NY; Fred Taylor Isquith, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman & Herz, New York, NY; Gustavo Bruckner, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman & Herz, New York, NY; Jack L Chestnut, LEAD ATTORNEY, Chestnut & Cambronne, Mpls, MN; Karl L Cambronne, LEAD ATTORNEY, Chestnut & Cambronne, Mpls, MN; Mark C Rifkin, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman & Herz, New York, NY; Paulette S Fox, LEAD ATTORNEY, Wolf Haldenstein, New York, NY; Renae D Steiner, LEAD ATTORNEY, Gustafson Gluek PLLC, Mpls, MN; Daniel E Gustafson, Gustafson Gluek PLLC, Mpls, MN.

For New Mexico State Funds, Plaintiff: Daniel C Hedlund, LEAD ATTORNEY, Gustafson Gluek PLLC, Mpls, MN; Demet Basar, LEAD ATTORNEY, Wolf Haldenstein, New York, NY; Javier Bleichmar, LEAD ATTORNEY, Labaton Sucharow & Rudoff LLP, New York, NY; Lynda J Grant, LEAD ATTORNEY, Labaton Sucharow & Rudoff **[*2]** LLP, New York, NY; Paulette S Fox, LEAD ATTORNEY, Wolf Haldenstein, New York, NY; Renae D Steiner, LEAD ATTORNEY, Gustafson Gluek PLLC, Mpls, MN; Thomas A Dubbs, LEAD ATTORNEY, Labaton Sucharow & Rudoff LLP, New York, NY.

For St Paul Travelers Companies Inc, The, Defendant: David H LaRocca, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Michael J Chepiga, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Michael J Garvey, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Patrick T Shilling, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Paul C Curnin, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Peter W Carter, LEAD ATTORNEY, Dorsey & Whitney LLP, Minneapolis, MN; Richard B Solum, LEAD ATTORNEY, Dorsey & Whitney LLP, Minneapolis, MN; Daniel C Hedlund, LEAD ATTORNEY, Gustafson Gluek PLLC, Mpls, MN; Marisa A Hesse, Dorsey & Whitney LLP, Minneapolis, MN.

For Robert Lipp, Jay Fishman, Bruce A Backberg, Thomas A Bradley, John C Treacy, Paul Liska, Douglas Leatherdale, Defendants: David H LaRocca, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Michael J Chepiga, LEAD ATTORNEY, Simpson Thacher & Bartlett **[*3]** LLP, New York, NY; Michael J Garvey, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Patrick T Shilling, LEAD ATTORNEY, Simpson Thacher & Bartlett LLP, New York, NY; Paul C Curnin, LEAD ATTORNEY,

Simpson Thacher & Bartlett LLP, New York, NY; Peter W Carter, LEAD ATTORNEY, Dorsey & Whitney LLP, Minneapolis, MN; Richard B Solum, LEAD ATTORNEY, Dorsey & Whitney LLP, Minneapolis, MN; Marisa A Hesse, Dorsey & Whitney LLP, Minneapolis, MN.

For Michael A. Bernstein Profit Sharing Plan, Movant: Carolyn Glass Anderson, Zimmerman Reed, PLLC, Mpls, MN.

For Minnesota Department of Commerce, Objector: Michael J Tostengard, LEAD ATTORNEY, Minnesota Attorney General's Office, St. Paul, MN.

**Judges:** JOHN R. TUNHEIM, United States District Judge.

**Opinion by:** JOHN R. TUNHEIM

# Opinion

## ORDER

This is a securities fraud case brought by a putative class of persons who purchased securities of The St. Paul Companies, Inc., and those of its successor, St. Paul Travelers Companies, Inc. In an order dated March 28, 2007, United States Magistrate Judge Franklin L. Noel denied defendants' motion to compel discovery regarding confidential witnesses relied upon in the complaint. Defendants appeal the **[*4]** Order pursuant to *Federal Rule of Civil Procedure 72(a)* and D. Minn. LR 72.2(a). [1] For the reasons stated below, the Court affirms the Magistrate Judge's order.

## ANALYSIS

## I. STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn.*

---

[1] On May 9, 2007, defendants filed a Motion for Leave to File a Reply in further Support of Objections to Magistrate Judge Noel's Order Denying Defendants' Motion to Compel [Docket No. 139]. The briefing currently before the Court is sufficient to assess the merits of the appeal, and the Court therefore denies the motion.

*1999)*. This Court will reverse such an order only if it is clearly erroneous or contrary to law. *28 U.S.C. § 636(b)(1)(A)*; *Fed. R. Civ. P. 72(a)*; D. Minn. LR **[*5]** 72.2(a).

## II. DISCOVERY REGARDING CONFIDENTIAL WITNESSES

Defendants seek the identity of two confidential witnesses referred to as Confidential Witness 1 and Confidential Witness 3 in plaintiffs' complaint. Defendants also seek any documents exchanged with individuals who provided information relied on in the complaint. Plaintiffs have objected to the disclosure of this information as protected by the attorney work product privilege. Plaintiffs maintain that they do not intend to rely upon Confidential Witness 1 or Confidential Witness 3 at trial. Plaintiffs further maintain that the only documents pertaining to individuals who provided information in the complaint are the interview notes of plaintiffs' counsel.

The Magistrate Judge denied defendants' motion to compel discovery. The Magistrate Judge reasoned that the identity of the confidential witnesses is protected by attorney work product privilege, and that defendants have not met the burden to overcome the privilege at this stage in the litigation.

In their appeal of the Magistrate Judge's Order, defendants point to cases holding that the identities of confidential witnesses are not protected from disclosure as attorney **[*6]** work product. Plaintiffs respond by pointing to cases with the opposite holding. *See, e.g., In re MTI Tech. Corp. Sec. Litig. II, 2002 U.S. Dist. LEXIS 13015, 2002 WL 32344347, at *3-5 (C.D. Cal. June 13, 2002)*("Disclosure of their identity would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future factual statements by the witnesses with Plaintiffs' counsel's legal theories and conclusions as outlined in the complaint."). As such, the Court concludes that the Magistrate Judge's determination that the identities are protected as attorney work product is not contrary to law.

Defendants further argue that even if the identities are protected as attorney work product, plaintiffs have waived the privilege by including statements of the confidential witnesses in the complaint. The cases cited by defendants held that the privilege must be waived in

the interest of fairness. *See, e.g., Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002)* ("With respect to the issue of implied waiver, the Court must not only look at whether Pamida intended to waive the **[*7]** privilege, but also whether the interests [of] fairness and consistency mandate a finding of waiver."). Here, the information that could be provided by the confidential witnesses does not appear to be "crucial and unavailable by other means." *Id.* Plaintiffs maintain that they do not intend to have the witnesses testify at trial, and that there is an abundance of independent evidence that is not based on the confidential witnesses that can demonstrate the same information supplied by those witnesses and alleged in the complaint. Further, the Magistrate Judge carefully sought to balance plaintiffs' attorney work product interest with defendants' need for the identity of the witnesses. Specifically, the Magistrate Judge ordered that plaintiffs must disclose the identities of the witnesses if they later choose to rely on these witnesses, and ordered plaintiffs to make this decision by September 1, 2007.

In sum, the Court cannot conclude that the Magistrate Judge's Order is clearly erroneous or contrary to law, and the Court affirms the Order.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion **[*8]** for Leave to File a Reply in Further Support of Objections to Magistrate Judge Noel's Order Denying Defendants' Motion to Compel Plaintiff to Identify "Confidential Witnesses" Relied on in the Complaint [Docket No. 139] is **DENIED.**

2. The Magistrate Judge's March 28, 2007 Order [Docket No. 117] is **AFFIRMED.**

DATED: May 10, 2007

at Minneapolis, Minnesota.

s/ JOHN R. TUNHEIM

United States District Judge

KeyCite Yellow Flag - Negative Treatment

Disagreed With by In re Ashworth, Inc. Securities Litigation, S.D.Cal., August 6, 2002

205 F.R.D. 631
United States District Court,
N.D. Georgia,
Atlanta Division.

In re THERAGENICS CORP.
SECURITIES LITIGATION.

No. CIV.A.1:99–CV–141–TWT.
|
March 5, 2002.

**Synopsis**

In a securities fraud action asserting that defendants touted the success of a product without disclosing circumstances that would adversely affect future demand for the product, defendants' moved to compel plaintiffs to answer interrogatories. The District Court, Thrash, J., held that plaintiffs would be required to identify employees and doctors referred to in an amended complaint, from whom they allegedly received information.

Motion granted.

West Headnotes (7)

**[1]** **Federal Civil Procedure**
    Work Product Privilege;Trial Preparation Materials

Rule protecting from discovery documents and things prepared by a party or his representative in anticipation of litigation or in preparation for trial contemplates that even when a party can justify the production of work product documents, the court must protect against the disclosure of the opinions, mental processes and legal theories of an attorney. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

8 Cases that cite this headnote

**[2]** **Federal Civil Procedure**
    Identity and location of witnesses and others

**Federal Civil Procedure**
    Work Product Privilege;Trial Preparation Materials

Plaintiffs in a securities fraud action, despite attempts to assert the work product doctrine, would be required to identify former employees with whom they or their representatives allegedly communicated in investigating the allegations of the complaint or amended complaints, and to identify the "senior supplier management employee" who allegedly provided information concerning what was "common knowledge"; disclosure sought would provide minimal, if any, disclosure of an attorney's thought processes, and would not reveal the plaintiffs' litigation strategy. Securities Exchange Act of 1934, § 21D(b)(1), as amended, 15 U.S.C.A. § 78u–4(b)(1); Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

15 Cases that cite this headnote

**[3]** **Federal Civil Procedure**
    Identity and location of witnesses and others

**Federal Civil Procedure**
    Work Product Privilege;Trial Preparation Materials

Names of medical doctors who told securities fraud plaintiffs or their representatives that a competing product was preferable to defendant's product were not work product; defendants merely sought the identity of "occurrence witnesses," which were discoverable at any time. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

8 Cases that cite this headnote

**[4]** **Federal Civil Procedure**
    Identity and location of witnesses and others

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

Discovery request for names of medical doctors who told securities fraud plaintiffs or their representatives that a competing product was preferable to defendant's product sought only the names of doctors on whom the plaintiffs actually relied, and thus, the request was not overbroad. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

Cases that cite this headnote

**[5]** **Federal Civil Procedure**
     Liberality in allowance of remedy

Discovery rules are to be accorded a broad and liberal treatment; mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation.

8 Cases that cite this headnote

**[6]** **Federal Civil Procedure**
     Identity and location of witnesses and others

Securities fraud defendants' alleged knowledge of the universe of doctors who prescribed the defendants' product did not relieve plaintiffs of a discovery obligation to identify the doctors upon whom they have based their allegations. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

3 Cases that cite this headnote

**[7]** **Federal Civil Procedure**
     Identity and location of witnesses and others

Securities fraud plaintiffs' alleged lack of intention to rely on doctors they referred to in their pleading as witnesses at trial did not relieve them of their obligation to identify those doctors in discovery.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*632** Martin D. Chitwood, Chitwood & Harley, Atlanta, GA, Steven G. Schulman, phv, Salvatore J. Graziano, phv, Samuel H. Rudman, phv, Keith M. Fleischman, phv, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, phv, Finkelstein & Krinsk, San Diego, CA, M. Richard Komins, phv, Barrack Rodos & Bacine, Philadelphia, PA, Leonard Barrack, phv, Barrack Rodos & Bacine, Philadelphia, PA, Zachary Alan Starr, phv, Starr & Holman, New York City, Fred Taylor Isquith, phv, Shane T. Rowley, phv, Wolf Haldenstein Adler, New York City, Robert I. Harwood, phv, Frederick W. Gerkens, phv, Wechsler Harwood Halebian & Feffer, New York City, Marc H. Edelson, phv, Hoffman & Edelson, Doylestown, PA, Joshua H. Rubin, phv, Abbey Gardy, New York City, Paul J. Scarlato, phv, Robert S. Kitchenoff Scarlato & Goldman, Philadelphia, PA, Bruce G. Murphy, phv, Law Offices of Bruce G. Murphy, Vero Beach, FL, Jonathan M. Plasse, phv, Goodkind Labaton Rudoff & Sucharow, New York City, Jeffrey L. Kodroff, phv, Spector Roseman & Kodroff, Philadelphia, PA, Dennis J. Johnson, phv, Jacob B. Perkinson, phv, Law Offices of Dennis J. Johnson, South Burlington, VT, Kevin J. Yourman, phv, Jordan L. Lurie, phv, Weiss & Yourman, Los Angeles, CA, Michael D. Braun, phv, Stull Stull & Brody, Los Angeles, CA, Jacqueline Sailer, phv, Brian P. Murray, phv, Rabin & Peckel, New York City, for Plaintiffs.

Michael R. Smith, Martin Robert Thornton, Letitia A. McDonald, Dan Shamus McDevitt, John Patterson Brumbaugh, King & Spalding, Atlanta, GA, for Defendants.

*ORDER*

THRASH, District Judge.

This is a securities fraud action. It is before the Court on Defendants' Motion to Compel Plaintiffs to Answer Interrogatories [Doc. 49]. For the reasons set forth below the Court grants the Defendants' Motion to Compel.

*I. BACKGROUND*

Plaintiffs allege in their Second Amended Complaint that Defendants defrauded the investing public by touting

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

the success of Theragenics' product TheraSeed® without disclosing circumstances that would adversely affect future demand for the product. This Court dismissed Plaintiffs' initial consolidated complaint, holding that Plaintiffs failed to allege sufficient facts upon which their information and belief allegations were based. The Plaintiffs were given permission to file an amended complaint. On October 6, 2000, Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"), arguing that the amendments Plaintiffs made to their original amended pleading still failed to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C.A. § 78u–4 (West 1997). This Court in its March 30, 2001 Order denied Defendants' motion, holding, with respect to Plaintiffs' "information and belief" allegations, that the Reform Act's "all facts" requirement "does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity sufficient facts to support those beliefs." However, this Court added that the "all facts" requirement "gets a commitment from the plaintiffs as to the sources of their information and belief **\*633** that can be tested at the summary judgement stage of the litigation." The Court also indicated that "[t]he additional information may be obtained through discovery, but is not required to be included in the Complaint."

On August 6, 2001, Defendants served their First Interrogatories on Plaintiffs, requesting the names of the individuals upon whom Plaintiffs relied in making the allegations in the SAC. (Motion to Compel Plaintiffs to Answer Interrogatories, Ex. 1). Plaintiffs objected and refused to name anyone with knowledge of the facts underlying their claims, despite having specifically alleged the existence of such persons. (*See* Lead Plaintiff Robert L. Thomas, Jr.'s Objections and Responses to Defendants' First interrogatories to Plaintiffs, Response to Interrogatory Nos. 2, 3, 5, and 13 (Motion, Ex. 2)). On October 15, 2001, Defendants' counsel conferred by telephone with Plaintiffs' counsel to address Plaintiffs' objections to Defendants' Interrogatories. After the telephone conference, Plaintiffs by letter provided the names of fifty-four Amersham and Indigo employees whom Plaintiffs contend have knowledge of the facts underlying Plaintiffs' claims. (*See* Letters from Salvatore J. Graziano to M. Robert Thornton, dated October 16 and October 17, 2001 (Motion Exs. 3 and 4)). This

information was responsive to Defendants' Interrogatory No. 13, which requested the names, addresses, and phone numbers of persons other than Theragenics employees whom Plaintiffs believe have knowledge of the facts and circumstances of Plaintiffs' claims.

Defendants' Interrogatory No. 2 called upon the Plaintiffs to "[i]dentify all former employees of Indigo Medical, Inc. and Amersham with whom you or your representatives communicated, as alleged in the preamble paragraph of the Second Amended Complaint, in investigating the allegations of Plaintiffs' initial complaints, First Amended Complaint, or Second Amended Complaint." Plaintiffs, however, refused to identify the persons interviewed as alleged in the SAC and as requested in Interrogatory No. 2. (Motion Ex. 3). Plaintiffs also refused to respond to Defendants' request in Interrogatory No. 3 which called upon Plaintiffs to "[i]dentify all medical doctors who 'were more comfortable using Iodine 125 to treat cancer' as you allege in paragraph 20 of the Second Amended Complaint." Finally, Plaintiffs refused to answer Interrogatory No. 5 which called upon Plaintiffs to "[i]dentify the 'senior supplier management employee' at Indigo who provided information concerning what was 'common knowledge' at Indigo as alleged in paragraph 25 of the Second Amended Complaint." In this motion, Defendants request that the Court intervene and order Plaintiffs to respond to Interrogatories No. 2, 3, and 5 as written.

## II. DISCUSSION

### A. *Work Product Doctrine*

The principles underlying the work product doctrine and Rule 26(b)(3) of the Federal Rules of Civil Procedure were set forth by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). [1] There, the Supreme Court recognized that "not even the most liberal discovery theories can justify unwarranted inquiries into files and mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court, in disallowing discovery of witness statements or notes of interviews conducted by counsel, set forth the underlying purpose of protecting an attorney's trial preparation materials, stating that "it is essential that a lawyer work with a certain degree of privacy" and that proper preparation of a client's case demands that he assemble information, decide what he

considers to be relevant, prepare his legal theories and plan his strategy without needless interference. *Id.* at 511, 67 S.Ct. 385. In *Hickman,* the Supreme Court also made clear that the work product doctrine does not protect against the discovery of relevant non-privileged facts, whether or not they are contained in protected documents **\*634** or were learned by an attorney. *Id.* at 501, 507, 67 S.Ct. 385.

[1]   The work product doctrine was partially codified in 1970 in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Rule explicitly protects from discovery documents and things prepared by a party or his representative in anticipation of litigation or in preparation for trial. Production of those documents can be compelled only where the seeking party demonstrates a "substantial need" for the materials and an inability to obtain the substantial equivalent of the desired information by other means. Rule 23(b)(3) contemplates, however, that even when a party can justify the production of work product documents, the court must protect against the disclosure of the opinions, mental processes and legal theories of an attorney.

B. *Interrogatory Nos. 2 and 5*

[2]   Numerous courts since *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451(1947), have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine. Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023 (Before and after the amendment to Rule 26, "the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery."). Recently, in *In re Aetna Inc., Sec. Litig.,* 1999 WL 354527 (E.D.Pa.1999), the district court in a securities fraud case held that the names and addresses of individuals interviewed by Plaintiffs' counsel are not protected by the attorney work product doctrine because, at most, such information has minimal work product content. In re Aetna, 1999 WL 354527 at \*2. In *Aetna,* the defendants' interrogatory read "[f]or each of the paragraphs of the Complaint set forth below, state the name and address of any supporting witness who was the basis for the allegation in each paragraph." The plaintiffs

provided a list of 750 names of individuals with knowledge pertaining to the allegations in the specific paragraphs. The court found that the defendants were merely seeking the disclosure of a "specific subcategory of all potential fact witnesses: those that are described in the Plaintiffs' Second Amended Complaint." *Aetna,* 1999 WL 354527, at \*3.

The fact that those individuals described in the Second Amended Complaint were interviewed by Plaintiffs' counsel during its investigation in anticipation of litigation does not change the Court's conclusion. The Supreme Court in *Hickman v. Taylor* made clear that the work product doctrine protects against the disclosure of an attorney's mental processes and legal opinions; the critical question is the extent to which the information discloses an attorney's thought processes. The disclosure of the names and addresses of those individuals interviewed by Plaintiffs' counsel will not reveal the "mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorneys."

*Id.* The defendants' motion to compel was granted.

In reaching its conclusion, the court in *Aetna* looked to the Third Circuit's decision in United States v. Amerada Hess Corp., 619 F.2d 980 (3d Cir.1980). In *Amerada,* the court held that a list of persons interviewed by Amerada's outside counsel as part of an Amerada internal investigation constituted work product because it had been compiled by outside counsel. However, because its work product content was minimal the court decided that the list should be produced. The court reasoned that the application of the rule

> depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources.

**\*635** Amerada, 619 F.2d at 987–88. The court stressed that production of the list would not jeopardize any of the policy reasons behind the protection of work product. Amerada, 619 F.2d at 988.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.   4

Other courts have reached similar conclusions. The District Court for the Northern District of Illinois in *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260–261 (N.D.Ill.1985), ordered the identification of witnesses interviewed by the plaintiff. The facts of that case are also similar to those of the instant case. The plaintiff in *American Floral* identified over 200 witnesses having knowledge of the defendant's procedures, but refused to identify specifically the two employees having inculpatory information. The court held that the identity of employees having knowledge of relevant facts was discoverable information despite the work product doctrine. *American Floral,* 107 F.R.D. at 262. Even though the two employees were included in the list of 200, the court found that the defendants ability to distill a 200 person list into the two names of persons with inculpatory information is "time-consuming, wasteful and expensive" and that process shouldn't be forced on the defendants just because the alternative of disclosure makes the job easier for the defendants at the plaintiffs' expense. *American Floral,* 107 F.R.D. at 261. Further, the court stressed that as a result of a policy judgement made by the Rules' draftsmen, every disclosure in the course of discovery makes the other side's job easier. *Id.* Finally, the court stated that the identification of persons who know facts bearing on the claim tells the defendants nothing new about the mental processes of the plaintiff's lawyers, leaving the policy behind the work product doctrine intact. *Id.*

These conclusions are consistent with the Eleventh Circuit case of *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464 (11th Cir.1984). In *Castle,* the issue was whether "substantial need" and "undue hardship" justified the compelled production of attorneys' witness statements and interview notes in an employment discrimination case. The Court of Appeals held that the defendant had not made the required showing. *Id.* at 1467. The court, however, went on to say that "[i]n particular, we note that appellee had failed to take even the fundamental first step in discovery of requesting the names and addresses of the witnesses the appellants had interviewed. The law is clear that such information is subject to discovery." *Id.* Although this statement is dicta, there is no reason to disregard the Eleventh Circuit's guidance in this matter when the court accurately describes the state of the law in this area. *See* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023. The burden is upon the

Plaintiffs to provide compelling reasons of public policy or manifest injustice for the Court to depart from a road map laid out by a panel of the Eleventh Circuit, even if dicta.

The Plaintiffs assert that the identity of persons contacted and interviewed by attorneys in anticipation of litigation is core work product. They cite several cases that seem to agree with their assertion. However, this Court feels that these cases are distinguishable from the instant case. Plaintiffs look to the Northern District of California for guidance in *In re Gupta Corp. Sec. Litig.,* No. C–94–1517–FMS, 1995 U.S. Dist. LEXIS 21847 (N.D.Cal. July 14, 1995). That court imposed sanctions on defendants for pursuing responses to interrogatories that asked for the identity of each person contacted by plaintiffs' counsel, finding that such interrogatories were well beyond an appropriate request for the identity of persons with knowledge. *In re Gupta,* 1995 U.S. Dist. LEXIS 21847, at *3. However, in that case, the court appeared chiefly concerned with the defendants' inquiry into the substance of plaintiff's counsel's interviews, not just the identity of the interviewees. *Id.* at *2.

The Plaintiffs also look to a prior decision by Judge O'Kelley of this District for support. In *Seebeck v. General Motors Corp.,* Nos. 1:96–CV–449–452–WCO, 1996 WL 742914, 1996 U.S. Dist. LEXIS 22629 (N.D.Ga. May 17, 1996), the plaintiffs in a products liability action against General Motors sought documents and information relating to an internal corporate investigation conducted by outside counsel into allegations made by a former employee about an alleged defect in a GM vehicle. GM objected to **\*636** disclosing any documents or information relating to outside counsel's investigation. The court held that disclosure of the identities of persons interviewed by outside counsel "would provide plaintiff a window into [outside counsel's] thought process during his execution of the task for which he was retained by GM" and, therefore, constituted attorney work product. In the instant case, in contrast, Plaintiffs have made no showing that discovery of the names of the persons referenced in the SAC would provide any insight into Plaintiffs' counsel's litigation strategy. Moreover, Plaintiffs have already revealed through their allegations what information was provided by the witnesses whose identity Defendants seek in this motion. In *Seebeck,* on the other hand, outside counsel's investigation was intended to be and did remain confidential.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Furthermore, the disclosure of names and addresses of persons interviewed by Plaintiffs' counsel is consistent with the policy considerations underlying the Reform Act. The Reform Act was passed in an effort to curtail the filing of so-called strike suits. *In re Aetna,* 1999 WL 354527 at *4. Congress imposed more stringent pleading requirements on plaintiffs in securities fraud cases. One such requirement imposed upon plaintiffs the burden of identifying the sources for allegations pled on information and belief. 15 U.S.C.A. § 78u–4(b)(1). Disclosing the names of those interviewed by the Plaintiff reinforces this policy. However, it must be stressed that the Reform Act has not expressly or impliedly changed the rules governing work product. Discovery in a post-Reform Act securities fraud class action is still evaluated under the Federal Rules of Civil Procedure applicable to all civil cases. *Stanley v. Safeskin Corp.,* slip op., Civil No. 99–CV–0454–BTM (LSP) (S.D.Cal. Apr. 12, 2001).

The disclosure sought here will provide minimal, if any, disclosure of an attorney's thought processes. It will not reveal Plaintiffs' litigation strategy. Certainly, the work product doctrine was not devised to protect all work by attorneys in the global sense. Because the names and addresses that Defendants seek in the instant case are not protected by the work product doctrine and producing these names complies with the policy behind the Reform Act, Plaintiffs are ordered to provide the requested information to Interrogatory Nos. 2 and 5.

### C. *Interrogatory No. 3*

**[3]** Similarly, the names of the medical doctors who told Plaintiffs or their representatives that Iodine–125 seeds were preferable to Theragenics' product TheraSeed® are not work product. It is clearly established that Defendants may discover the facts upon which Plaintiffs base their allegations and such facts include names of witnesses from whom counsel obtained their information. *In re Dayco Corporation Derivative Sec. Litig.,* 99 F.R.D. 616, 624 (S.D.Ohio 1983). Defendants merely seek the identity of "occurrence witnesses" which are discoverable at any time. *Id.*

**[4]** **[5]** Plaintiffs object to Interrogatory No. 3 on the grounds that it is "overbroad and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any matter, not privileged,

that is relevant to the claim or defense of any party, including ... the identity and location of persons having knowledge of any discoverable matter." Fed.R.Civ.P. 26(b)(1). Relevance has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Furthermore, the discovery rules are to be accorded a "broad and liberal treatment ... [m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation." *Hickman,* 329 U.S. at 507, 67 S.Ct. 385.

Here the Court must look no further than the plain language of Rule 26(b), which recognizes that the identities of individuals "having knowledge of any discoverable matter" are relevant. By expressly pleading that paragraph 20 of the Second Amended Complaint is based on the opinions of "numerous **\*637** medical doctors," Plaintiffs have already conceded the relevancy of this subject. Moreover, this Interrogatory seeks only the names of doctors on whom Plaintiffs actually relied, and thus, Plaintiffs' claim that this request is overbroad is without merit.

**[6]** **[7]** Plaintiffs argue that because the Defendants already know the universe of doctors who prescribe Theragenic's TheraSeed® product they can complete their own survey. However, this Court disagrees. First, whether Theragenics possesses the names of all its customers does not relieve Plaintiffs from identifying the witnesses upon whom they have based their allegations. Fed.R.Civ.P. 26(b)(1). Plaintiffs' suggestion that Defendants should survey all of their customers to determine which, if any, believe that I–285 seeds are the better product is not a substitute for discovering the witnesses upon whose information Plaintiffs based their allegations. Finally, Plaintiffs argue that because they do not intend to rely on the doctors they referred to in their pleading as witnesses at trial they are relieved of their obligation to provide this information in discovery. Plaintiffs cite to the Eighth Circuit case of *Fla. State Bd. Of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645 (8th Cir.2001) to support this proposition. In that case, the court stated in dicta that "... there is no need for the name of the money manager to be pleaded in the complaint, although it appears it will soon have to be disclosed under Fed.R.Civ.P. 26(a)(1)(A) if the shareholders intend to make use of it." *Green Tree Fin. Corp.,* 270 F.3d at 668. However, this Court is not

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

obligated to follow the example in *Green Tree* because it is non-binding to this Court. Additionally, the statement is dicta and not central to the holding in *Green Tree.* Plaintiffs' decision not to rely upon testimony from the doctors does not relieve them of the obligation to respond to appropriate discovery. At a minimum, the Defendants are entitled to a verified response that Plaintiffs cannot identify by name any such doctors, if that is the case. This Court feels that by granting the Motion to Compel on Interrogatory No. 3, it reinforces the primary goal of the Reform Act by preventing baseless strike suits. Thus, because the names and addresses that Defendants seek here are not protected by the work product doctrine and producing these names complies with the policy behind

the Reform Act, Plaintiffs are ordered to provide the requested information to Interrogatory No. 3.

## *III. CONCLUSION*

For the reasons set forth above, Defendants' Motion to Compel Plaintiffs to Answer Interrogatories [Doc. 49] is GRANTED.

**All Citations**

205 F.R.D. 631

Footnotes

1    For the historical background of the case and Rule 26(b)(3), see *Wright, Miller & Marcus, Federal Practice and Procedure: Civil* 2d §§ 2021–23.

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.    7

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by In re Hardwood P-G, Inc., Bankr.W.D.Tex.,
April 10, 2009

2004 WL 868202
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

David MILLER, et al. Plaintiffs,

v.

VENTRO CORPORATION, et al. Defendants.

No. C01–01287 SBA (EDL).
|
April 21, 2004.

**Attorneys and Law Firms**

Stuart H. Savett, Savett Frutkin Podell & Ryan PC,
Philadelphia, PA, Reed R. Kathrein, Patrick J. Coughlin,
John K. Grant, Shirley H. Huang, William S. Lerach,
Willow E. Radcliffe, Milberg Weiss Bershad Hynes &
Lerach LLP, San Francisco, CA, William S. Lerach,
Milberg Weiss Bershad Hynes & Lerach LLP, Francis
M. Gregorek, Betsy C. Manifold, Wolf Haldenstein Adler
Freeman & Herz LLP, San Diego, CA, for Plaintiffs.

Steven M. Schatz, Lloyd Winawer, Cynthia A. Dy, Daniel
W. Turbow, Wilson Sonsini Goodrich & Rosati, Palo
Alto, CA, John Nadolenco, Mayer Brown & Platt, Los
Angeles, CA, Jeffrey S. Facter, Emily V. Griffen, Stephen
D. Hibbard, Shearman & Sterling LLP, San Francisco,
CA, for Defendants.

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL PLAINTIFF'S
ANSWER TO INTERROGATORY 5

LAPORTE, Magistrate J.

**\*1** To satisfy the heightened pleading requirements
for securities fraud litigation contained in the Private
Securities Litigation Reform Act of 1995, Plaintiffs relied
heavily in their complaint on twenty-two Confidential
Witnesses (CWs) to plead their fraud claims with
particularity. These CWs allegedly have information
supporting Plaintiffs' claims that Defendants' system
architecture did not have the capabilities described in
Defendants' SEC filings. Plaintifs did not identify the
CWs by name.

At issue in this motion to compel is Defendants'
Interrogatory 5, which states: "Identify all Confidential
Witnesses described in or referenced in the Complaint." In
response, Plaintiffs stated: "Plaintiff hereby incorporates
the General Objections above. Plaintiff has identified
the confidential witnesses in their initial disclosures.
Plaintiff otherwise objects to this Request on the basis
of attorney-work product." Plaintiffs' initial disclosures
list more than 200 individuals who are believed to have
discoverable information. Defendants state that while
some of those individuals can be ruled out as not matching
the complaint's general descriptions of the CWs, there are
at least 165 persons who appear to fit the various CW
descriptions. Defendants also dispute the work product
claim.

The Court held a hearing on April 20, 2004 at which all
parties were represented by counsel. Based on the parties'
papers and their oral argument, the Court enters the
following Order.

There is no binding authority on the question of whether
the identities of the CWs in a securities class action
are discoverable. District courts have split on the issue,
albeit based in part on factual differences. *Compare
In re Aetna Inc. Securities Litigation,* 1999 WL 354527
(E.D.Pa.) (granting the defendants' motion to compel
response to interrogatories seeking the identity of persons
described only generally in the complaint where the
plaintiffs objected based on the work product doctrine
and referred the defendants to the plaintiffs' list of 750
individuals with discoverable information; holding that
the interrogatories sought relevant factual information
and that the need for the information outweighed the
minimal work product protection, if any, the information
may have); *In re Theragenics Corp. Securities Litigation,*
205 F.R.D. 631 (N.D.Ga.2002) (following *Aetna* and
granting the defendants' motion to compel answers to
interrogatories seeking identities of individuals upon
whom the plaintiffs relied in making the allegations in
the complaint; holding that the information is not entitled
to work product protection and disclosure of the names
is consistent with the policies of the Private Securities
Litigation Reform Act); *In re Northpoint Communications
Group, Inc.,* C–01–1473 WHA (Judge Alsup stated in
a telephone conference that when a plaintiff showcases

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

information obtained from confidential witnesses in an effort to meet the requirements of the Private Securities Litigation Reform Act, the plaintiff must disclose the identities of those witnesses upon proper interrogatory); *with In re MTI Technology Corp. Securities Litigation II,* 2002 U.S. Dist. LEXIS 13015 (C.D.Cal.) (holding that the identity of the witnesses interviewed by the attorneys and linked to specific allegations in the complaint was protected by the work product doctrine, focusing on the facts that the 71 potential witnesses were either currently or previously employed by Defendant, that 71 potential witnesses was not an unmanageable number for which to conduct discovery, that disclosure would not further the policies of the Private Securities Litigation Reform Act and that the witnesses could experience retaliation); *In re Ashworth, Inc., Securities Litigation,* 213 F.R.D. 385 (S.D.Cal.2002) (finding the *MTI* reasoning persuasive to deny a motion to compel identification of witnesses who provided information that formed the basis for any allegations in the complaint based on work product doctrine, where the plaintiff had refused to substantively respond to interrogatories and referred to a list of over 100 persons with discoverable information, and there was no substantial need and undue hardship to overcome the work product protection).

**\*2** Under the circumstances of this case, the Court is persuaded by the reasoning in *Aetna* and *Theragenics.* The Court holds that a list containing the names of the twenty-two CWs does not constitute work product and that even if it were work product, the need for the information and the hardship otherwise entailed outweighs any minimal work product protection. Because Plaintiffs chose to build their complaint on a foundation of statements from the twenty-two CWs, the identities of those individuals are highly relevant and reasonably calculated to lead to discoverable evidence. Moreover, the issue of disclosure is really a matter of when, not whether. The fact discovery cutoff of September 2, 2004, is rapidly approaching, all motions must be heard by November 9, 2004 and trial begins on January 19, 2005. Accordingly, the identities of most if not all of these CWs will be revealed in the next few months, either in a class certification motion, in any number of pretrial motions or at trial. It would be unfair to permit Plaintiffs to rely so heavily on the CWs in the complaint, yet to keep those identities from Defendants, especially given the schedule in this case. Defendants are not seeking any documents prepared by counsel, but are instead seeking a list of the subset of highly relevant

potential witnesses. This list would not reveal counsel's mental impressions or processes and therefore is not protected by the work product doctrine.

Even if the list were protected by the work product doctrine, the need for the information under the procedural posture of this case outweighs the minimal work product protection, due to the timing of this case and to the relatively large list of potential witnesses. Plaintiffs made no showing that disclosure now rather than in the coming months would cause undue prejudice. Plaintiffs' counsel's statement at the hearing that disclosure should be denied because some of the descriptions in the complaint are sufficiently detailed to enable Defendants to identify the individuals from the list of potential witnesses is unavailing; to the extent that the complaint enables identification, there is no confidentiality to preserve. Finally, while the Court recognizes that the number of potential witnesses in this case is not as large as in *Aetna,* it is substantially more than in *MTI* and *Ashworth.* Given the compressed discovery schedule, it is simply not practical for Defendants to interview or depose all 165 individuals who could possibly be the CWs.

Accordingly, it is hereby ordered that Defendants' motion to compel further response to interrogatory 5 is granted. Plaintiffs need not disclose that counsel spoke to certain witnesses, or the substance of any interviews, but shall disclose a list of the identities of the twenty-two CWs to Defendants. Plaintiffs need not link up any particular CW with a paragraph in the complaint, and may identify the witnesses in any order. No later than April 26, 2004, Plaintiffs shall either disclose the list or file objections to this Order with Judge Armstrong.

**\*3** The Court declines to enter a protective order limiting the disclosure of these witnesses' identities because there has been no showing on this record of good cause. Although the Court agrees that, in general, whistle-blowers may often need protection from retaliation, here Plaintiffs conceded at the hearing that there was no evidence of any likelihood of retaliation in this case. None of the twenty-two CWs are current employees of Defendants, and Defendants' company no longer exists in the form that it previously did. The Court appreciates Plaintiffs' zealous attempts to protect the identities of these individuals, but without any showing of specific need, a protective order is not warranted. Of course, Plaintiffs may inform the witnesses of this Court's Order

and their right to talk or not talk to the Defendants informally as they see fit. And, if any retaliation or abuse occurs, the Court will take prompt action, as Defendants recognized at the hearing.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 868202

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   3

278 F.R.D. 335
United States District Court,
S.D. New York.

PLUMBERS AND PIPEFITTERS LOCAL
UNION NO. 630 PENSION–ANNUITY
TRUST FUND, individually and on behalf
of others similarly situated, Plaintiff,
v.
ARBITRON, INC. et al., Defendants.

No. 08 Civ. 4063(PAE).
|
Nov. 14, 2011.

**Synopsis**
**Background:** Investors brought action against corporation
engaged in radio audience measurement and its chief
executive officer (CEO) and chief financial officer (CFO),
alleging securities fraud. Corporation moved to compel
disclosure of its former employees whom complaint
designated as confidential informants (CIs), and for
production of documents that CIs provided to investors'
counsel.

**Holdings:** The District Court, Paul A. Engelmayer, J., held
that:

[1] names of CIs were relevant information, the discovery
of which was reasonably calculated to lead to discovery of
admissible evidence, and thus investors would be required
to produce CIs names, unless names were held to be
privileged, and

[2] names of CIs were not protected as attorney opinion
work product.

Motions granted.

West Headnotes (12)

**[1]     Federal Civil Procedure**
    ⟜ Discretion of Court

Management of discovery lies within the
broad discretion of the district court.

Cases that cite this headnote

**[2]     Federal Civil Procedure**
    ⟜ Identity and location of witnesses and
    others

Names of corporation's former employees
who were designated as confidential
informants (CIs) in investors' securities fraud
complaint were relevant information, the
discovery of which was reasonably calculated
to lead to discovery of admissible evidence,
and thus investors would be required to
produce CIs names, unless names were held to
be privileged; knowing who CIs were would
help corporation find and interview or depose
them, and such interviews or depositions
were likely to constitute or reveal admissible
evidence because investors alleged CIs had
"firsthand knowledge" of, and quoted CIs
extensively about, specific facts tending to
establish corporation's liability for securities
fraud. Securities Exchange Act of 1934, §
10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. §
240.10b–5; Fed.Rules Civ.Proc.Rule 26(b)(1),
28 U.S.C.A.

Cases that cite this headnote

**[3]     Federal Civil Procedure**
    ⟜ Work Product Privilege;Trial
    Preparation Materials

Names of corporation's former employees
who were designated as confidential
informants (CIs) in investors' securities
fraud complaint were not protected as
attorney opinion work product; depositions
were likely to eventually reveal identity
of the 11 CIs, whom investors admitted
were among the 83 named witnesses they
identified as having discoverable information,
and permitting corporation to learn which
witnesses corresponded to the CIs would
expedite discovery by avoiding costly and
lengthy process of elimination, and naming
CIs would not reveal mental impressions

or trial strategy of investors' counsel with respect to relative importance of CIs and other witnesses, as many plausible reasons existed for not listing other witnesses in complaint. Securities Exchange Act of 1934, §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u–4; 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

1 Cases that cite this headnote

**[4]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

Under the attorney work product doctrine, opinion work product, which reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, is entitled to greater protection than fact work product. Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

6 Cases that cite this headnote

**[5]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

To be entitled to protection for attorney opinion work product, the party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation. Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

4 Cases that cite this headnote

**[6]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

The party asserting attorney work product protection bears the burden of establishing all of its elements, specifically, that the materials sought were prepared principally or exclusively to assist in anticipated or ongoing litigation. Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

1 Cases that cite this headnote

**[7]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

Attorney work product protection is a qualified protection, and can be overcome by a showing that the party seeking discovery: (1) has substantial need of the materials; and (2) that the party is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means.

3 Cases that cite this headnote

**[8]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

Where a party has attempted to satisfy the pleading requirements of the Private Securities Litigation Reform Act (PSLRA) by showcasing statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who the confidential witnesses are on grounds of attorney work product protection. Securities Exchange Act of 1934, § 21D, 15 U.S.C.A. § 78u–4; Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

6 Cases that cite this headnote

**[9]**    **Federal Civil Procedure**
☞ Work Product Privilege;Trial Preparation Materials

Corporation's substantial need and undue hardship overcame any minimal attorney work product protection for names of corporation's former employees who were designated as confidential informants (CIs) in investors' securities fraud complaint; investors admitted that the 11 CIs designated in complaint were among the 83 named witnesses they identified as having discoverable information, and if CIs were not revealed, corporation could be required to greatly increase number of its ten planned

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.    2

depositions, as depositions of almost all of investors' 83 witnesses might be needed simply to determine who CIs were. Securities Exchange Act of 1934, §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u–4; 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 26(b)(3)(B), 28 U.S.C.A.

2 Cases that cite this headnote

[10] **Federal Civil Procedure**
 Identity and location of witnesses and others
**Privileged Communications and Confidentiality**
 Miscellaneous privileges;particular cases

A confidential witness may have a legitimate interest in non-disclosure, where revealing his or her name may lead to retaliation in a current or future job.

2 Cases that cite this headnote

[11] **Privileged Communications and Confidentiality**
 Informer's privilege;identity of informer
**Privileged Communications and Confidentiality**
 Miscellaneous privileges;particular cases

A court may decline to order disclosure of a confidential informant's (CI's) name, or fashion an appropriate protective order, in order to guard against the risk that revealing the CI's name may lead to retaliation.

1 Cases that cite this headnote

[12] **Federal Civil Procedure**
 Particular Subject Matters

Although attorney work product protection did not extend to documents provided by corporation's former employees who were designated as confidential informants (CIs) in investors' securities fraud complaint, corporation's request for production of all such documents was overbroad, as the mere fact that a CI produced a document did not make it relevant, and thus court would require

investors to produce only those documents provided by CIs that were responsive to another valid document request. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 26(b), 28 U.S.C.A.

Cases that cite this headnote

***337** *OPINION AND ORDER*

PAUL A. ENGELMAYER, District Judge:

This decision addresses a discovery dispute. Defendant Arbitron, Inc., moves for an order directing the lead plaintiff, Plumbers and Pipefitters Local Union No. 630 Pension–Annuity Trust Fund (Plaintiff), to disclose the names of 11 former Arbitron employees whom the Complaint designates as "Confidential Informants" (CIs). Arbitron also seeks an order directing Plaintiff to produce all documents that these 11 CIs provided to Plaintiff's counsel.

For the reasons that follow, Arbitron's motion to compel disclosure of the names of the CIs is granted, subject to the opportunity the Court will afford the Plaintiff to substantiate, as described herein, its claim that disclosure of a CI's name may result in retribution. Arbitron's motion to compel production of all documents provided to the Plaintiff by the CIs is also granted, to the extent that such documents are responsive to other valid discovery requests in this case.

**I. Background**

The Second Amended Complaint (SAC) in this securities class action litigation was filed on October 19, 2009. It alleges that Arbitron and two officers, Stephen B. Morris and Sean R. Creamer, violated Section 10(b) of the Securities Exchange Act, and Rule 10b–5 promulgated thereunder, by making false and misleading statements about Arbitron's planned rollout of a technology known as the "Portable People Meter" (PPM). In essence, the SAC alleges that, between July 19, 2007, and November 26, 2007, the defendants failed to disclose material information regarding various problems and delays adversely affecting the scheduled PPM rollout.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

The SAC further alleges that defendants made various statements tending to falsely portray the PPM technology as "on schedule" or "on track" for a December 31, 2007 rollout.

On September 30, 2010, this Court denied Arbitron's motion to dismiss. *See Plumbers and Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron, Inc. et al.,* 741 F.Supp.2d 474 (S.D.N.Y.2010). [1] Discovery, which had been stayed pursuant to the automatic stay provision of the Private Securities Litigation Reform Act, *see* 15 U.S.C. § 78u–4(b)(3)(B), commenced soon thereafter. Under the schedule in place, fact discovery is due to close February 28, 2012; expert discovery closes May 3, 2012. Document production is substantially complete. Depositions will commence shortly but have been deferred pending resolution of the instant dispute. A protective order negotiated by the parties is in place governing the handling of confidential discovery materials.

Arbitron presently seeks this Court's intervention in connection with two closely related discovery disputes.

*Identification of Confidential Informants:* Arbitron asks the Court to enforce an interrogatory (Interrogatory No. 1) which directs Plaintiff to "specifically identify all Confidential Informants referenced in the Complaint by the Confidential Informant number in the Complaint, and include the person's full name, present or last known address, and present or last known place of employment."

Plaintiff has refused to identify these 11 persons. It has given two independent reasons. First, Plaintiff asserts that it has fully complied with any duties that **\*338** Federal Rule of Civil Procedure 26 imposes as to identification of the CIs. Plaintiff notes that—to comply with its required initial disclosures under Rule 26(a)(1)(A)—it has furnished the defense with a list of 83 current or former Arbitron officers or employees likely to have discoverable information. Plaintiff represents that this list contains the names of all 11 CIs (although they are not identified as such).

Second, Lead Plaintiff asserts that the attorney work product doctrine protects it from having to reveal the CIs' identities. As to the latter, Plaintiff argues that, were it to disclose the CIs' identities,

Arbitron would be able to discern which witnesses counsel for Lead Plaintiff considers important, thereby revealing counsel for Lead Plaintiff's mental impressions, opinions, and/or legal theories regarding information provided by these CIs. Specifically, disclosing this information is tantamount to revealing how counsel for Lead Plaintiff analyzed and used the information provided by the CIs, as well as the conclusions, opinions, and potentially even trial strategy developed during counsel for Lead Plaintiff's investigation.

Plaintiff also argues that the SAC's descriptions of the CIs permit Arbitron to winnow out various people listed on its initial disclosure list. Thus, the task for Arbitron of identifying the CIs on its own steam is less substantial than initially might appear. Plaintiff finally states that "the CIs have legitimate concerns that they will suffer retaliation regarding their current or future employment in the industry if they are identified."

Arbitron disputes both arguments. Particularly salient here, it disputes that the work product doctrine applies to the CI's identities. It asserts that even if any limited work product protection applies to those identities, that protection is overcome by defendants' interest in efficiently discovering relevant information. As Arbitron put the point in its moving papers: "Arbitron should not be forced to depose as many as 83 persons to learn the identity of 11 CIs."

*Documents produced by the CIs:* In the second discovery dispute, Arbitron asks this Court to enforce a document request, which, as narrowed by the parties, calls upon Plaintiff to produce all documents provided to it by the CIs. The parties have largely treated this dispute as derivative of the first.

On November 8, 2011, the Court held a lengthy, on-the-record, telephone conference with counsel to discuss these motions.

## II. Discussion

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

### a. Fed.R.Civ.P. 26(b)(1)

**[1]** Management of discovery lies within the broad discretion of the district court. *See Baguer v. Spanish Broadcasting Systems, Inc.,* 423 Fed.Appx. 102, 103 (2d Cir.2011) (summary order); *Allied Maritime, Inc. v. Descatrade SA,* 620 F.3d 70, 74 (2d Cir.2010); *In re IPO Securities Litigation,* 471 F.3d 24 (2d Cir.2006).

**[2]** The threshold discovery issue here is whether, as Lead Plaintiff has argued, its disclosure duties under Fed.R.Civ.P. 26 with regard to the CIs were satisfied by including their names in its initial disclosures, among a list of 83 Arbitron officers or employees. *See Fed.R.Civ.P. 26(a)(1)(A)(i)* (requiring parties to identify the names and contact information of persons "likely to have discoverable information ... that the disclosing party may use to support its claims or defenses"). Specifically, the question is whether the additional fact now sought by Arbitron—the names of the 11 CIs—is relevant information that "appears reasonably calculated to lead to the discovery of admissible evidence" and thus responsive to a separate part of Rule 26, Rule 26(b)(1).

The answer to that question is clearly yes, as a review of the SAC demonstrates. The SAC prominently states that its allegations of securities fraud "are supported by the first-hand knowledge of eleven (11) confidential informants." It describes these 11 as "former Arbitron employees who provided facts from various departments within the [c]ompany," and who "served in positions at Arbitron which provided them with access to the information they are alleged to possess." SAC ¶ 33. The SAC then devotes 11 paragraphs to setting out, to varying degrees, the backgrounds and qualifications of each of the CIs. SAC ¶¶ 34–44.

**\*339** The SAC proceeds to quote the CIs extensively, and/or to paraphrase their accounts of various allegedly material deficiencies relating to the PPM rollout which, the SAC centrally alleges, Arbitron either failed to disclose or affirmatively concealed. Thus, CIs 1, 2, 3, 6, and 7 are quoted at length in a section of the SAC describing Arbitron's problems with recruiting panelists to participate in the PPM surveys, SAC ¶¶ 74–80; CIs 1, 2, and 4 are quoted in a section describing problems with PPM data reliability and methodology, SAC ¶¶ 83, 85, 91–92; CIs 2, 5, 9, and 10 are quoted in a section describing the PPM's system's underrepresentation of the ages 18–34 and minority demographics, SAC ¶¶ 93, 96–

97, 100–101; and CIs 1 and 8 are quoted in a section describing a shortage of PPM equipment, SAC ¶ 104. In a section summarizing Arbitron's allegedly false and misleading statements, the SAC also cites data provided by CI 1 as a basis to impeach the company's claim that installation of the PPM equipment had been successful, SAC ¶ 111.

In light of these details, Rule 26(b)(1) clearly requires that the names of the 11 CIs be produced (unless they are held to be privileged). Simply put, knowing who the CIs are would help the defense to find and interview and/or depose them. Inasmuch as Lead Plaintiff has represented that the 11 CIs have "firsthand knowledge" of specific facts tending to establish Arbitron's liability for securities fraud, such interviews or depositions are reasonably likely themselves to constitute or reveal admissible, if not highly probative, evidence. Furthermore, it is reasonable to expect that defense counsel would then pursue leads from information provided by the CIs, and that this follow-on investigation might in turn yield other admissible evidence. [2] *See In re Marsh & McLennan Sec. Litig.,* No. 04–CV–8144, 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) ("[b]ecause Lead Plaintiffs relied upon the CWs in drafting the [Complaint], the CWs possess discoverable information") (citations omitted); *In re Harmonic, Inc. Sec. Litig.,* 245 F.R.D. 424, 427 (N.D.Cal.2007) (holding that "the identities of the [confidential witnesses] are relevant to Plaintiff's claims," and required to be revealed in response to interrogatories, even where the complaint that had mentioned these witnesses had since been dismissed and had been succeeded by an amended complaint that removed references to them); *In re Aetna, Inc. Sec. Litig,* No. Civ. A. MDL 1219, 1999 WL 354527, at *2 (E.D.Pa. May 26, 1999) (names and addresses of confidential informants to whom factual allegations are attributed in the Complaint "are obviously 'relevant to the subject matter involved in the pending action' and [are] 'reasonably calculated to lead to the discovery of relevant evidence' ").

### b. The Attorney Work Product Doctrine

**[3]** The Court therefore turns to what it regards as the heart of the matter, which is whether the names of the 11 CIs referenced in the SAC are protected from disclosure under the attorney work product doctrine.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 5

**[4]** **[5]** The attorney work product doctrine was first articulated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It was later partially codified in Fed.R.Civ.P. 26(b)(3)(B). The work product doctrine is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel"; as such, it protects such materials as notes, internal memoranda, statements, and mental impressions from disclosure to the attorney's adversary. *Hickman,* 329 U.S. at 510, 67 S.Ct. 385. Under the doctrine, "opinion work product," which "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' ... is entitled to greater protection than fact work product." *In re Grand* **\*340** *Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir.2007) (citing *United States v. Adlman,* 134 F.3d 1194, 1197 (2d Cir.1998) (quoting Fed.R.Civ.P. 26(b)(3))). But, "[t]o be entitled to protection for opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.' " *Id.* at 183–84 (citing *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 386 (2d Cir.2003) (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir.1987))).

**[6]** **[7]** The party asserting work product protection bears the burden of establishing all of its elements, specifically, that the materials sought were " 'prepared principally or exclusively to assist in anticipated or ongoing litigation.' " *In re Initial Pub. Offering Sec. Litig.,* 220 F.R.D. 30, 34 (S.D.N.Y.2003) [hereinafter *IPO Securities Litigation* ] (quoting *United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 473–74 (2d Cir.1996)). Where it applies, "the work product protection is a qualified protection; it is not absolute"; it "can be overcome by a showing that the party seeking discovery (1) has substantial need of the materials, and (2) that the party is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Id.* (citations omitted).

In this Court's view, the names of the persons identified in the SAC as confidential informants are not entitled to any work product protection; and if any work product protection does apply to these names, it is minimal. [3] In the first instance, it is important to isolate just how limited a disclosure is at issue in this case. Plaintiff

has already disclosed the fact that these 11 people (and 72 others), all identified to the defense by name, likely possess discoverable information. Plaintiff has also already disclosed important aspects of what the 11 CIs have stated in interviews about the events at issue in this case. To the extent Lead Plaintiff has chosen not to reveal other parts of the CIs' witness statements, Arbitron's present motion does not seek their disclosure. All that Arbitron seeks to learn is which of the 83 names identified by Plaintiff correspond to the 11 CIs described in the SAC. This would expedite the discovery process, for all parties, by allowing Arbitron (as it has explained) to focus its depositions immediately on these important "firsthand" witnesses, rather than having to engage in a costly process of elimination in which it would take numerous depositions simply to smoke out which of the 83 disclosed names are the 11 CIs.

It is difficult to see how syncing up the 11 CIs with these already disclosed names would reveal Plaintiff's counsel's mental impressions, opinions, or trial strategy. Plaintiff's argument on this point was that opposing counsel, upon learning the names of the 11 CIs, might surmise that Plaintiff's counsel had judged the other 72 named witnesses to be less helpful witnesses for its cause. Perhaps so, but any such surmise would be just that, surmise—not a reliable indicator of counsel's actual thought processes. There are many other plausible reasons for a counsel not to list a witness in a complaint (as a CI or by name) apart from an assessment that the witness was peripheral. These may include, among others, the witness's insistence on not being quoted, even pseudonymously, until later in the case; and a strategic judgment by counsel that it is best *not* to unduly showcase or "out" a particularly potent trial witness early in the life-cycle of a case. The Court thus finds, on the facts here, that an insufficient showing has been made that opinion work product would be implicated by granting the pending motion. *See In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d at 183–84.

It is also relevant to the Court's work product analysis that the CI's names will almost certainly eventually become known during this litigation, if Arbitron pursues the deposition process long enough (as it has represented that it will given the CIs' centrality). In colloquy, counsel for both sides acknowledged that, if asked in a deposition **\*341** whether they had spoken to Plaintiff's counsel, the 83 named witness would each be obliged to answer (*i.e.,* no

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 6

privilege would apply). Both counsel also acknowledged that such a witness would be obliged to answer whether he or she had made statements to Plaintiff's counsel along the lines of those that the SAC attributed to a particular CI. These lines of examination would likely reveal which witnesses are the CIs. [4] Denying the instant motion would thus not permanently keep the 11 CIs' identities under wraps. Instead, it would merely elongate the deposition discovery process, imposing costs and burdens on all parties. [5]

In holding that the CIs' names in this case are not entitled to work product protection, the Court is, finally, mindful that Plaintiff has utilized the CIs offensively. By attributing extensive factual allegations to the 11 CIs in the SAC, Plaintiff buttressed its complaint, presumably with the goal of protecting it against dismissal. It is, of course, entirely proper and common for a plaintiff to rely on confidential witnesses in a complaint, and attributions to such witnesses may and often are credited on motions directed to the pleadings. *See Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir.2000). But, once the discovery phase begins, the balance of interests shifts. The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence. *See IPO Securities Litigation,* 220 F.R.D. at 37. The parties' interrogatories—including interrogatories aimed at helping the propounding party assess which witnesses are most likely to possess probative, admissible evidence —are an integral part of this process.

[8] In the Court's view, where a party has attempted to satisfy the pleading requirements of the PSLRA "by 'showcasing' statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are" on grounds of work product. *Ross v. Abercrombie & Fitch Co.,* No. 2:05CV0819, 2008 WL 821059, at *3 (S.D.Ohio Mar. 24, 2008); *id.* ("partial disclosure of information protected by the work product doctrine may constitute a waiver, and [ ] a party is not permitted to use such doctrines as both a shield and a sword."); *cf. NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 142 (N.D.N.Y.2007) ("Just as the attorney-client privilege cannot be used as a shield and sword, neither can a work product document, especially one that does not include an attorney's impression, opinions, or strategies."); *Computer Assoc. Int'l, Inc. v. Simple.com, Inc.,* No. 02–CV–2748, 2006 WL 3050883, at *3 (E.D.N.Y. Oct. 23, 2006) (as to assertions of fact work product, noting the need for

"courts to 'balance the policies to prevent sword and shield litigation tactics with the policy to protect work product' ") (citing *In re EchoStar,* 448 F.3d 1294, 1302 (Fed.Cir.2006)).

[9] Even assuming some minimal work product protection applies to the 11 CIs' identities, such protection would be overcome in this case. Arbitron's counsel has represented that counsel and human resources personnel at Arbitron have compared the list of 83 named former employee witnesses against the SAC's descriptions of the 11 CIs; the goal was to identify which of the 83 can be eliminated as a CI. That review eliminated between 12 and 17 of the 83. [6] Depending on how quickly the 11 CIs are identified in depositions, the deposition process aimed at ensuring that all 11 CIs were deposed could **\*342** therefore entail as many as 66 to 71 depositions. Independent of these depositions, Arbitron presently intends to take approximately 6 to 10 depositions; Plaintiff expects to take approximately 20.

The deposition process in this case thus could potentially vary in scope by threefold or more depending on whether Arbitron's interrogatory as to the names of the CIs is enforced. In the Court's view, Arbitron has shown both a "substantial need" for these names, and that it would entail "undue hardship [ ] to obtain the substantial equivalent ... by other means." *IPO Securities Litigation,* 220 F.R.D. at 35. Relevant in this regard, Arbitron is a mid-size company (between 1,200 and 1,500 employees during the events at issue) and its counsel has represented that the cost of preparing for and taking dozens of additional depositions of former employees would impose a substantial expense on the company. [7]

On the facts before it, the Court, balancing the relevant considerations, does not believe that the work product doctrine compels Arbitron (or, derivatively, its shareholders) to bear these costs. The discovery rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. These goals are disserved by forcing a party, in the name of an opponent's evanescent work product interest, to play a high-cost game of "Where's Waldo?".

In reaching this conclusion, the Court has carefully reviewed the many cases addressing similar applications. Although many such cases turn on particular facts, it

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.  7

is safe to say that the case law is not unitary as to the application of the work product doctrine to motions to compel the names of a witness referenced but not named in a complaint. Of these cases, the Court found the analysis in four particularly instructive.

In *In re Aetna, supra,* the court enforced interrogatories that sought the names of witnesses identified in the complaint by such terms as "a former regional general manager of Aetna" or "a former Aetna vice-president of sales and customer service." The court held that the names of such individuals were not protected by the work product doctrine. It noted that "[p]laintiffs chose to include this allegation in their Second Amended Complaint and chose the way in which this allegation was framed. Defendants are entitled to the discovery of the name and address of those persons described in the Second Amended Complaint." 1999 WL 354527, at *2. The court also held that disclosure of the names would not reveal opinion work product; and that even if any "minimal work product content" were implicated, it was outweighed: "Without the Court's intervention, Defendants would be forced to engage in a time-consuming and expensive effort to ferret out the veritable needle in the haystack." *Id.* at *4 (any qualified protection "must yield to the need of the Defendants to get on with discovery in this case").

In *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631 (N.D.Ga.2002) [hereinafter *In re Theragenics* ], the court addressed a set of interrogatories, upholding two (No. 2 and No. 5) which sought the names of persons referenced but not named in the complaint. Rejecting the claim that such information was "core work product," the court observed that identifying such persons "tells the defendants nothing new about the mental processes of the plaintiff's lawyers, leaving the policy behind the work product doctrine intact." *Id.* at 635 (citing *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 261 (N.D.Ill.1985)). The Court added: "The disclosure sought here will provide minimal, if any, disclosure of an attorney's thought processes. It will not reveal Plaintiffs' litigation strategy. Certainly, the work product doctrine was not devised to protect all work by attorneys in the global sense." *Id.* at 636.

**\*343** In *In re Harmonic, supra,* the court similarly enforced interrogatories as to the names of five confidential witnesses, holding that the work product doctrine does not apply. It noted, on facts closely akin to

those here, that because plaintiff's initial disclosures had already listed the five among the 77 witnesses listed on its initial disclosures, "[t]he issue here ... is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered." 245 F.R.D. 424, 427 (N.D.Cal.2007) (citation omitted). Thus, "there is no cognizable strategic advantage to be gained by Plaintiffs in withholding the identities. The only effect is to force the Defendants to expend resources on taking the depositions of 77 people in order to obtain the information." *Id.* at 428. The court rejected the claim that revealing the CWs' names would reveal trial strategy. "Plaintiffs have already revealed their legal strategy by including the CWs' statements in the SAC." *Id.* As in *Aetna,* the court concluded by holding that even if some *de minimus* factual work product were implicated, that interest was outweighed by "the interest in discovery." *Id.* at 429.

Finally, in *In re Marsh & McLennan, supra,* a case brought in this District, the court upheld a discovery demand seeking production of "documents sufficient to identify each and every" of the 17 confidential witnesses referenced in the complaint. The court held that any privilege that attached to these identities is "limited in nature," because those identities bear only an "attenuated" relationship to an attorney's case strategy or mental impressions, and reveal no more "about an attorney's mental processes than does the identification of a witness by name in the complaint itself." No. 04–CV–8144, 2008 WL 2941215, at *3 n. 5 (S.D.N.Y. July 30, 2008). The court also noted that CWs who will serve as trial witnesses will necessarily be identified; and as to others, it may be possible to deduce their identities from the complaint; thus, "there is actually little confidentiality at stake." *Id.* Further, even if some work product protection attached to the identities, it was outweighed, because identifying the CWs by other means would take a "substantial number" of depositions. *Id.* at *4.[8]

**\*344** The Court therefore holds that the work product doctrine does not protect Plaintiff from having to respond to Interrogatory No. 1.

#### c. The Witnesses' Interest in Avoiding Retribution

**[10]** **[11]** A confidential witness may have a legitimate interest in non-disclosure, where revealing his or her name may lead to retaliation in a current or future job. This interest belongs to the witness—it is not one protected

Case 3:16-cv-02267 Document 97-2 Filed 07/11/18 Page 57 of 71 PageID #: 2133

by the attorney work product doctrine. In an appropriate case, a court may decline to order disclosure of a CI's name, or fashion an appropriate protective order, in order to guard against this risk.

In this case, Plaintiff asserts generically that the 11 CIs "have legitimate concerns" about such retaliation. However, there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation. Rather, this designation appears to have been made on a global basis: Every Arbitron employee (save the individual defendants) to whom statements are attributed in the SAC is identified as a CI. In colloquy, Plaintiff's counsel represented that each of the 11 CIs had been told counsel would "do what we can" to keep the CI's name confidential, but that it was possible that the CI's name would be disclosed. Plaintiff's counsel further represented that each of the 11, aware of this possibility, consented to being identified as a CI in the complaint. The Court further observes that each of the 11 CIs is described in the SAC as a former Arbitron employee, which would appear to limit (although not eliminate) the risk of future employment retaliation for supplying information here.

On this record, there is no reliable, non-conclusory basis to find that any of the CIs here faces a risk of retaliation sufficient to justify non-disclosure of his or her name to the defense. *See Rahman v. Smith & Wollensky Restaurant Group, Inc.,* No. 06–CV–6198, 2007 WL 1521117, at *11 (S.D.N.Y. May 24, 2007) ("the mere spectre of retaliation, without more, does not establish good cause for [a protective order]"); *In re IPO Securities Litigation,* 220 F.R.D. at 37 (ordering disclosure of witness names where "plaintiffs have failed to show the 'particular and specific demonstration of fact ...' that is necessary to support a showing of good cause") (citation omitted).

The Court is, however, mindful that additional facts bearing on this concern may be known to Plaintiff's counsel. Accordingly, the Court will afford Plaintiff's counsel one week (until Monday, November 21, 2011) to submit an *ex parte* affidavit setting forth particularized facts (if any) known to counsel at the time of the original confidentiality designation that would substantiate the concern that disclosure of a particular CI's name would result in retribution. Upon review of such an affidavit, the Court will promptly determine whether these facts justify (a) non-disclosure, (b) disclosure but with limitations on

further dissemination to be set forth in an appropriate protective order, or (c) a follow-up telephonic inquiry of the witness by the Court, to be arranged and attended by Plaintiff's counsel. If by that date no such affidavit has been submitted as to a particular CI, Plaintiff that day shall disclose the CI's name to the defense. [9]

### d. Arbitron's Request for Documents

**[12]** Turning, finally, to Arbitron's request for the production of all documents that the CIs have provided to Plaintiff (including Plaintiff's counsel), it follows from the discussion above that the work product doctrine does not protect Plaintiff from this request. However, that is not the end of the inquiry. Although this objection was not raised by Plaintiff, in the Court's view, this request is overbroad, in that it would sweep in documents (if any) provided by the CIs that are of no relevance whatsoever to this litigation. Put differently, the mere fact that a CI produced a document to Plaintiff does not make it relevant. Relevancy turns on the document's content.

**\*345** The Court therefore directs the Plaintiff to produce all documents provided by the CIs that are responsive to any other valid document request in this case. This modification is designed to ensure that only relevant documents are produced. The Court expects that, as to each document that is produced, the producing party will identify by name the source of the document. Plaintiffs therefore are directed, as to any document provided by a CI responsive to the document request as modified by the Court, to indicate to the defense the name of the person who provided that document.

### CONCLUSION

For the reasons stated:

1. Arbitron's motion to compel disclosure of the names of the CIs is granted. The CIs' names are to be provided to the defense by November 21, 2011. However, Plaintiff's counsel is authorized to submit to the Court, by November 21, 2011, an *ex parte* affidavit setting forth, with particularity, any facts known to Plaintiff's counsel at the time of the initial confidentiality designation that would substantiate the concern that disclosure of a particular CI's name would result in retribution. As to any CI addressed in such affidavit, Plaintiff's obligation to

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.   9

identify the CI to the defense is stayed pending the Court's review of the affidavit.

2. Arbitron's motion to compel production of all documents provided to Plaintiff by the CIs is also granted, to the extent that such documents are responsive to other valid discovery requests in this case.

SO ORDERED.

**All Citations**

278 F.R.D. 335

Footnotes

1    The Court's decision on the motion to dismiss supplies a more detailed summary of Plaintiff s allegations. The Court also denied Morris' motion to dismiss, while granting Creamer's. At the time of the motion to dismiss, the judge assigned to this matter was the Hon. John G. Koeltl, to whom this case was assigned until October 5, 2011. On September 6, 2011, Judge Koeltl granted Plaintiff's motion to certify this action as a class action, pursuant to *Fed.R.Civ.P. 23(a) and (b)(3).* *See Plumbers and Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron, Inc. et al.,* No. 08–CV–4063 (S.D.N.Y. Sept. 9, 2011) (Dkt. No. 115).

2    Identifying the CIs would also help the defense to more accurately assess the strength of the SAC's claims and Plaintiff's case-in-chief. For example, the identity of a CI to whom damaging facts are attributed may shed light on whether the CI in fact had a firsthand basis for his or her allegations, or had been misquoted in the SAC. *See, e.g., Campo v. Sears Holdings Corp.,* 371 Fed.Appx. 212, 216 (2d Cir.2010) (summary order) ("neither of the confidential witnesses ... offered testimony supporting plaintiffs' allegations"). It may also help the defense assess whether there were reasons to credit, discredit, or view in a different context particular allegations attributed to that CI.

3    A motion to compel disclosure of a confidential witness's name also implicates the *witness's* interest in maintaining confidentiality, and that interest may carry the day in particular cases, but that distinct interest is not implicated by the work product doctrine. The Court's assessment of that interest as applied to this case is discussed *infra,* in Section C.

4    The task of identifying the CIs' identities via the deposition process is further likely to be successful because the Complaint identifies (at least generally) each CI's job titles, duties, and approximate tenure at the company. *See, e.g.,* SAC ¶ 36 ("CI 3 is a former PPM Research Associate employed by Arbitron from July 2007 through March 1, 2008, in Columbia, Maryland. CI 3 was responsible for recruiting individuals into the Diary and the PPM survey methods."); *id.* ¶ 43 ("CI 10 is a former Vice President of Marketing for Arbitron in Columbia, Maryland. CI 10 was employed by Arbitron from approximately 2000 until September 2007"); *see generally id.* ¶¶ 33–44.

5    In colloquy, Plaintiff's counsel stated that he himself presently expects to take pretrial depositions of some of the CIs. Any such deposition would itself tend to reveal that the deponent was the CI.

6    In colloquy, the Court probed with counsel the nature of this screening process. The Court was assured that Arbitron's screening had eliminated both (1) current employees (all 11 CIs are former employees), and (2) employees whose job titles and functions are inconsistent with the descriptions of the CIs.

7    Relative to other securities class-action litigations premised on claims that a company's stock price dropped as a result of the revelation of a material misstatement or omission, this litigation is also properly classed as "mid-size." Counsel estimated that the outer conceivable damages, assuming that Arbitron's stock's entire stock-price drop in November 2007 was attributable to actionable misstatements or material omissions, would be approximately $55 million. The volume of documents produced (as represented to the Court, a little over 200,000 pages by the defendants; 75 pages by Plaintiff; and 15,700 by third parties) is not large by the standards of present-day securities class-action litigation.

8    Although it addresses an issue not raised here—a discovery demand that plaintiff identify the names of all persons alleged in its pleadings to have engaged in allegedly wrongful business practices—the decision in *IPO Securities Litigation, supra,* also from this District, also offers relevant guidance. Upholding that demand, the court there noted that the work product privilege "does not ... ordinarily protect the identities of ... witnesses." 220 F.R.D. 30, 34, n. 23 (S.D.N.Y.2003) (citing Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 302–03 (1997)). The court in *IPO Securities Litigation* also distinguished as inapposite the circumstance in which a party demands a list of persons whom opposing counsel has interviewed. *Id.* at 35. That circumstance—in which one party is essentially seeking, and potentially piggybacking on, a roadmap of an adversary's pretrial investigation—implicates core policies behind the work product doctrine. A number of the cases that Plaintiff has cited here, in fact, arise from such a demand or ones similar to it, not from an interrogatory akin to the one here. *See, e.g., Electronic Data Systems Corp. v. Steingraber,* No. 4:02–

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 10

CV–225, 2003 WL 21653405, at *1 (E.D.Tex. July 9, 2003) (interrogatory asked defendant "to identify individuals who have been interviewed concerning the relevant allegations in the case"); *In re Ashworth, Inc., Sec. Litig.,* 213 F.R.D. 385, 386 n. 1 (S.D.Cal.2002) (interrogatory asked adversary to identify each former employee "who has provided information which forms the basis for any allegations" in the complaint); *In re Gupta Corp. Sec. Litig.,* 1995 U.S. Dist. LEXIS 21847, at *3 (N.D.Cal. July 18, 1995) (interrogatories "asked counsel for plaintiff to identify each person counsel for plaintiff had contacted about this case and to disclose what each such person told counsel for plaintiff"); *Commonwealth of Massachusetts v. First Nat'l Supermarkets, Inc.,* 112 F.R.D. 149 (D.Mass.1986) (interrogatory asked adversary, *inter alia,* to "[i]dentify each person who was interviewed in connection with any ... investigation"); *Board of Education of Evanston Township High School,* 104 F.R.D. 23, 32 (N.D.Ill.1984) (interrogatory asked adversary "to identify anyone they may have interviewed" concerning the subject of the litigation). The Court acknowledges, however, contrary authority as to the application of the work product doctrine to the identification of confidential witnesses named in a complaint. *See, e.g., In re SLM Corp. Sec. Litig.,* No. 08–CV–1029, 2011 WL 611854 (S.D.N.Y. Feb. 15, 2011); *In re Veeco Instruments, Inc. Sec. Litig.,* No. 05–MD–1695, 2007 WL 274800 (S.D.N.Y. Jan. 29, 2007); *In re MTI Technology Corp. Sec. Litig.,* No. SACV 00–0745 DOC, 2002 WL 32344347 (C.D.Cal. June 13, 2002). For the reasons set forth in this opinion, the Court finds the analysis in *In re Aetna, In re Theragenics, In re Harmonic,* and *In re Marsh & McLennan* the most persuasive.

**9** To the extent the parties believe that limitations as to the parties' use or dissemination of the CI's names prior to trial are appropriate and would not interfere with discovery, the Court will entertain a proposed protective order. For example, the parties might agree that witnesses will not be identified in publicly filed court papers as having been CIs, without leave of the Court to do so.

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 11

2008 WL 821059
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Robert ROSS, Individually, and on behalf
of all others similarly situated, Plaintiff,
v.
ABERCROMBIE & FITCH
COMPANY, et al., Defendants.

Nos. 2:05–cv–0819, 2:05–cv–0848, 2:05–
cv–0860, 2:05–cv–0879, 2:05–cv–0893,
2:05–cv–0913, 2:05–cv–0959, 2:05–
cv–0964, 2:05–cv–0998, 2:05–cv–1084.
|
March 24, 2008.

**Attorneys and Law Firms**

Laura M. Andracchio, Coughlin Stoia Geller Rudman & Robbins LLP, Ted Minahan, San Diego, CA, Mark C. Gardy, Abbey & Ellis, Nancy Kaboolian, Abbey Gardy Llp, Beth A. Keller, Nadeem Faruqi, Faruqi & Faruqi, Llp, New York, NY, Brian K. Murphy, Geoffrey J. Moul, Joseph F. Murray, Murray Murphy Moul & Basil, Mark Mathew Kitrick, Kitrick & Lewis CO LPA, Columbus, OH, Jennifer F. Sherrill, Sara E. Collier, Federman & Sherwood, Oklahoma City, OK, Laurie Largent, Matthew Isaac Alpert, Michael F. Ghozland, Michelle M. McCarron, Coughlin Stoia Gellar Rudman & Robbins LLP, Los Angeles, CA, for Plaintiff.

Philip Albert Brown, Albert Grant Lin, Alycia N. Broz, John Joseph Kulewicz, William J. Pohlman, Michael Roy Szolosi, Sr., McNamara and McNamara, Albert Grant Lin, Vorys, Sater, Seymour and Pease LLP, John Cooper McDonald, Katherine G. Manghillis, Matthew L. Fornshell, Schottenstein Zox & Dunn, Columbus, OH, David Stewart Cupps, Abercrombie & Fitch CO., New Albany, OH, Jay B Kasner, Joseph Andrew Matteo, ASharon Garb, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Julianna Gonen, Julianna Gonen, Attorney At Law, Stuart Gerson, Epstein, Becker & Green PC, Washington, DC, for Defendant.

*OPINION AND ORDER*

TERENCE P. KEMP, United States Magistrate Judge.

**\*1** These securities cases are before the Court by way of Defendant Abercrombie & Fitch Co.'s motion to compel discovery filed on December 17, 2007. The motion seeks an order compelling the lead plaintiff, City of Dearborn Heights Act of 345 Police and Fire Retirement System, to provide certain additional information which, according to Abercrombie, is relevant to the issue of class certification. The motion originally sought information about the City's other investment activity, but the parties have advised the Court that they are likely to resolve that issue among themselves. The remaining issue is whether the City must disclose information about certain persons who may have provided the City with the facts underlying certain allegations in the complaint. For the following reasons, the motion will be denied.

I.

The parties agree on the relevant facts. Interrogatories six and seven of Abercrombie's first set of interrogatories asked the City to identify each person, each document, or each other source of information that supported the allegations in paragraphs 4, 10, 11, 50, 112, and three subparagraphs of paragraph 89 of the complaint. Abercrombie separately requested the City to produce all documents which supported those same allegations as well as any documents reflecting communications between the City and its sources of information.

The City generally objected to both interrogatories but provided the following substantive answer: "[A]ll witnesses of whom it is aware that may have knowledge of the referenced allegations have been identified in its Rule 26 initial disclosures." It reiterated its general objection to these inquiries in its response to the document request, but added that any documents or communications with sources about those allegations were protected by either the work product or attorney-client privilege. The City's initial Rule 26 disclosures identified 84 witnesses (all of whom are former Abercrombie employees) who have relevant knowledge concerning its claims. In correspondence, counsel for the City stated that although all of the persons who provided information in support of the complaint were identified in the initial disclosures, the City was under no obligation to specify which persons provided information in support of specific allegations

found within the complaint. The question is whether the City can invoke the work-product privilege in support of its refusal to answer Abercrombie's inquiries on this subject.

## II.

It is important to note at the outset that the issue here is not whether the City is entitled to conceal from Abercrombie the identity of those witnesses whom it relied upon in crafting the complaint. It has already provided their names in its initial disclosures. That fact alone distinguishes this case from, for example, *Brody v. Zix Corp.,* 2007 WL 1544638 (N.D.Tex. May 25, 2007), where it appeared that the plaintiff objected to any disclosure of the names of the confidential sources who supplied information supporting specific allegations in the complaint. The holding of that case—that the names of witnesses who "have knowledge of facts relevant to a claim or defense ... are clearly within the scope of permissible discovery and must be revealed," *id.* at *2—is hardly controversial. The issue in this case, however, is much more complex.

**\*2** Leaving aside for the moment the fact that, up to this point, Abercrombie has asked only for the names of witnesses whom the City relied on in making a few key allegations in the complaint, the issue is this: May any party in litigation force the opposing party not only to comply with Rule 26(a)(1) by disclosing the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses," but also to state (1) which of those persons the opponent interviewed when that party was drafting its pleading, and, even more specifically, (2) which of those persons provided the information underlying specific paragraphs or subparagraphs of that pleading? Because requiring such disclosures would unnecessarily intrude on the work product process, the Court holds that Abercrombie is not entitled to any further information on this subject.

## III.

At its heart, the work product privilege provides space for an attorney to think, strategize, and recommend without fear that the essential parts of his or her thought processes will be laid bare for opposing counsel. Certainly, a part of the rationale for the doctrine is to prevent opposing counsel simply from piggy-backing on the work done by others, but the more important theoretical justification for having a work product privilege at all relates to this concept of "working space." As the Supreme Court noted in *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947),

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.... [If][a]n attorney's thoughts, heretofore inviolate, would not be his own.[ ... ] [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Drafting a pleading—deciding exactly what to allege and how to allege it—is a quintessential function of a litigating attorney. That attorney makes key strategic decisions about whom to interview in preparing that pleading, and whose information is reliable enough to persuade the attorney that he or she may aver a fact provided by that witness without violating Rule 11's mandate that all facts

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 2

alleged "have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." It therefore seems beyond dispute that if an attorney has to tell opposing counsel exactly whom he or she chose to interview when preparing a pleading, and which information obtained from those interviews was deemed worthy enough to support each specific allegation within that pleading, there will be a substantial intrusion upon the attorney's "working space." Further, the Court sees no practical distinction between asking an attorney to say which witness or witnesses supported specific allegations in a pleading and asking that attorney to disclose the contents of any statement taken from the witness, together with the attorney's mental impression concerning the credibility of that witness's statement. Such mental impressions are not only unquestionably work product but have been given a heightened level of protection from disclosure. *See, e.g., In re Antitrust Grand Jury,* 805 F.2d 155 (6th Cir.1986).

**\*3** None of the cases cited by Abercrombie directly reject this analysis. Abercrombie's two best cases, *In re Harmonic Inc. Securities Litigation,* 245 F.R.D. 424 (N.D.Cal.2007) and *Miller v. Ventro Corp.,* 2004 WL 868202 (N.D.Cal. April 21, 2004), both involved situations where, for whatever reason, the attorney who drafted the complaint chose to allege in the complaint itself that certain allegations were based on statements from specific confidential witnesses (five in one case, and 22 in the other). Thus, the attorney made at least a partial disclosure of protected information. *Miller,* upon which *Harmonic* heavily relied, reached its result in part on the alternative rationale that any work product protection attaching to the list of names of the 22 witnesses in question was overcome by the defendants' substantial need for the information and the difficulty involved in culling those names from a list of at least 165 potential witnesses. The court noted that the case was on a "compressed" discovery schedule and that it simply would not be possible for the defendants to interview that many witnesses to find out who the key ones were. It also relied on a case, cited as *In re Northpoint Communications Group, Inc., Securities Litigation,* 221 F.Supp.2d 1090 (N.D.Cal.2002), for the proposition that when a plaintiff attempts to satisfy the pleading requirements of the Private Securities Litigation Reform Act by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are. These decisions are

entirely consistent with the dual propositions that partial disclosure of information protected by the work product doctrine may constitute a waiver, and that a party is not permitted to use such doctrines as both a shield and a sword. *Cf. In re Echostar Communications Corp.,* 448 F.3d 1294 (Fed.Cir.2006). Those considerations come into play, however, once work product protection is found in the first instance.

This Court is persuaded by the reasoning above, and by decisions such as *In re MTI Technology Corp. Securities Litigation II,* 2002 WL 32344347 (C.D.Cal. June 13, 2002), that the disclosures Abercrombie has requested in this case are "at the heart of the work product rule" and that counsel should not be forced to make those disclosures absent either a waiver of the privilege or a showing of need and hardship sufficient to overcome it. Further, the work product protection is particularly strong here (and stronger than in some of the cases cited with approval in *MTI Technology* ) because Abercrombie has asked not just for a list of witnesses whom counsel interviewed in order to prepare the complaint—a request that some of those decisions denied on work product grounds—but for information that would link specific witnesses to specific allegations.

Abercrombie's justification for overcoming the work product privilege here is tied to its belief that without such information, it will be required to depose or interview in excess of eighty witnesses to find out what support may exist for certain allegations in the complaint. The Court does not view that as a substantial hardship in a case of this magnitude, especially when discovery is in its infancy and it is impossible even to predict when the first wave of document production will be substantially complete. Further, the allegations of the complaint about which Abercrombie has inquired are pleaded with a high degree of specificity. Presumably, many of the former Abercrombie employees whose names appear on the initial disclosures can be ruled out as sources of this information either because of dates of employment, where they were located at the time of the alleged actions, or the positions they held.

**\*4** The mere fact that counsel may have to do some investigative work to determine which witnesses have knowledge of which relevant facts is clearly insufficient to justify an intrusion into the particulars of how opposing counsel structured their interviews and how

much credence they gave to the statements of individual witnesses. This is especially true where nothing about the amended complaint suggests an effort to bolster its credibility through targeted references to confidential sources. Thus, there is no inherent unfairness created here by such pleading methods. Rather, this appears to be a garden-variety situation where plaintiff's counsel interviewed some number of witnesses before preparing a complaint and based the allegations in the complaint on that and other information. While counsel may not withhold either the names of witnesses with relevant information or the location of relevant documents— and that has not happened here—they simply cannot be compelled to give opposing counsel all of the details of how they decided to plead each allegation in the complaint. Defense counsel can clearly replicate the process by interviewing or deposing the same universe of witnesses, and there is neither a substantial need for them to find out more about the other side's strategies and thoughts, nor an undue hardship if they do not.

IV.

For the foregoing reasons, the Motion of Defendant Abercrombie & Fitch Co. to Compel Discovery (# 166) is denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 821059

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3118738
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Todd SCHUENEMAN, et al., Plaintiffs,

v.

ARENA PHARMACEUTICALS,
INC., et al., Defendants.

Case No.: 10cv1959-CAB (BLM)
|
Signed 07/21/2017

**Attorneys and Law Firms**

Laurence D. King, Kaplan Fox and Kilsheimer, Richard M. Heimann, Lieff Cabraser Heimann and Bernstein LLP, Aaron M. Sheanin, Girard Gibbs LLP, San Francisco, CA, Daniel J. Mogin, The Mogin Law Firm, San Diego, CA, for Plaintiffs.

John C. Dwyer, Cooley, LLP, Palo Alto, CA, Koji F. Fukumura, Mary Kathryn Kelley, Michael A. Attanasio, Peter M. Adams, Ryan E. Blair, William E. Grauer, Cooley Godward Kronish, San Diego, CA, for Defendants.

ORDER

(1) DENYING LEAD PLAINTIFF'S
MOTION TO COMPEL

AND

(2) GRANTING DEFENDANTS'
MOTION TO COMPEL

[ECF Nos. 113, 117]

Hon. Barbara L. Major, United States District Judge

**\*1** Currently before the Court is Lead Plaintiff's "Motion to Compel" [ECF No. 117-1 ("Pl.'s MTC") ], Defendants' "Motion to Compel Response to Interrogatory No. 8 Relating to Confidential Witnesses" [ECF No. 113-1 ("Defs.' MTC") ], Defendants' opposition to Lead Plaintiff's motion [ECF No. 120

("Defs.' Oppo.") ], and Lead Plaintiff's opposition to Defendants' motion [ECF No. 121 ("Pl.'s Oppo.") ]. For the reasons set forth below, Lead Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED**.

## FACTUAL BACKGROUND

The facts set forth are taken from the Consolidated Amended Class Action Complaint [ECF No. 43 ("Compl.") ] and Second Amended Complaint [ECF No. 59 ("SAC") ] or documents incorporated therein. The Consolidated Amended Class Action Complaint and the SAC allege that Arena Pharmaceuticals, Inc. ("Arena") and its senior executives violated Section 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by making materially false statements and/or omitting to disclose material facts concerning the safety and the completeness of the data needed for the U.S. Food and Drug Administration's ("FDA") approval of Arena's developmental weight loss drug, Lorcaserin.[1] Compl.; SAC; see also Schueneman v. Arena Pharms., Inc., 840 F.3d 698, 709 (9th Cir. 2016) (finding that Lead Plaintiff's theory is that "Defendants intentionally withheld information material to the market's assessment of whether and when the FDA would likely approve [L]orcaserin").

To obtain FDA approval to market Lorcaserin, Arena had to demonstrate Lorcaserin's safety and efficacy based on non-clinical/pre-clinical animal studies and clinical trials on humans. Compl. at 12-13. As part of Lorcaserin's new drug application to the FDA, Arena was required to conduct a long-term study of the potential carcinogenesis on rats ("Rat Study"). Id. at 14. The Rat Study was a two-year non-clinical/pre-clinical carcinogenicity study on rats that began in 2007 and was designed to approximate a lifetime of human use and to assess the risk to humans. SAC at 5, 17.

By February 2007, the Rat Study indicated that Lorcaserin caused mammary, brain, skin, and nerve-sheath tumors, including lethal, malignant mammary and brain tumors. Id. at 6. In September 2007, the FDA told Arena it was concerned that the Rat Study data reflected potential effects in humans and that Arena needed to dispel this concern with data on animals and humans exposed to Lorcaserin. ECF No. 61-5 at 7, Exhibit D.

In April 2008, the FDA and Arena representatives met to discuss the causes of mammary tumors in rats and the FDA's concern about the tumors' significance to humans. ECF No. 61-5 at 8. The FDA approved Arena's written warning to humans in the clinical trials and told Arena that animal mechanistic studies and continued clinical studies of humans exposed to Lorcaserin could dispel its concern about the Rat Study data. Id. At that time, Arena representatives hypothesized that the tumors were attributable to a rodent-specific mechanism. Id. The FDA did not halt Lorcaserin's ongoing human clinical trials, but did request bi-monthly updates. SAC at 7-9, 18-20.

*2 Arena provided the bi-monthly updates until completion of the Rat Study and submission of the draft report on the Rat Study to the FDA on February 3, 2009. ECF No. 61-4 at 14, Exhibit C. Arena's bi-monthly updates included "initial reads" of data that were not reviewed by outside pathologists. Compl. at 20-22. The Rat Study concluded that "breast tumors developed at all doses, and that Lorcaserin caused brain tumors as well as many other malignant tumors." SAC at 9, 22. Arena's final report to the FDA included a peer-reviewed analysis by "three [non-Arena] veterinary pathologists" who concluded there were fewer malignant tumors than Arena initially reported to the FDA, but there was an "apparent increase in aggressiveness of adenocarcinoma in rats administered Lorcaserin." Compl. at 5, 8. Plaintiffs allege that the data submitted to the FDA failed to show that the results of the Rat Study were irrelevant to humans. SAC at 22.

In December 2009, Defendants filed Lorcaserin's New Drug Application ("NDA") and the FDA appointed the Advisory Committee, comprised of physicians and scientists, to discuss and vote on whether to recommend FDA approval for Lorcaserin. Compl. at 7. The Advisory Committee was scheduled to meet on September 16, 2010. Id. Investors first learned about the Rat Study data in September 2010, when the Advisory Committee voted 9-5 against recommending approval for Lorcaserin. Id. at 6-8.

In October 2010, Arena publicly disclosed that the FDA completed its review of the NDA and found that it could not approve the NDA "in its present form" because it failed to demonstrate that the Rat Study was irrelevant to humans. Id. at 19-22.

Plaintiffs allege that Defendants knew by the beginning of the Class Period (March 17, 2008 through January 27, 2011) that the Rat Study indicated that Lorcaserin caused cancer and yet failed to disclose that information to investors. Compl. at 14. Plaintiffs further allege that the negative results of the Rat Study and the FDA's concerns over the data constituted material facts that should have been, but were not, disclosed to investors and that instead of disclosing this information, Defendants repeatedly falsely represented that Lorcaserin was safe and made materially false and misleading representations about non-clinical study results. Id. at 54-55. Additionally, Plaintiffs allege that when the misrepresentations were disclosed and became apparent on the market, Arena's securities declined precipitously. Id. Plaintiffs allege that as a result of their purchases of Arena securities during the Class Period, they suffered economic loss. Id.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. [2]

Fed. R. Civ. P. 26(b)(1).

*3 District courts have broad discretion to determine relevancy for discovery purposes. See Hallet v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must

limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the requirements of Rule 26. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. July 17, 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden on "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## DISCUSSION

The Court will first address Lead Plaintiff's motion to compel the production of documents responsive to requests 34-37. Then, the Court will address Defendants' motion to compel a response to Interrogatory Number 8.

## A. LEAD PLAINTIFF'S MOTION TO COMPEL

The documents at issue concern Arena's application to market Lorcaserin in the European Union. Pl.'s MTC at 4. In March 2012, Arena applied to market Lorcaserin within the European Union. Defs.' Oppo. at 8. A committee of the European Medicines Agency ("EMA") provided Arena with a list of "outstanding issues" in 2013, which included concerns about the Rat Study, valvulopathy, and other matters that "the FDA believed Arena had adequately addressed given its approval of the drug." Id. Arena determined that it could not resolve the issues in the time prescribed by the EMA and withdrew its application. Id.

On January 20, 2017, Lead Plaintiff served Requests for the Production of Documents ("RFP") on Defendants. Pl.'s MTC at 6. Requests 34-37 seek "all documents concerning" 1) the application for approval from the EMA to market the drug in the European Union, 2) the

EMA's objections to the "nonclinical and clinical issues concerning Lorcaserin," 3) Defendants' belief that they could not resolve the EMA's objections, and 4) the reasons for Defendants' withdrawal of their application. Id. at 6-7. Defendants timely objected to RFPs 34-37 on May 26, 2017, on the grounds that the information sought is irrelevant and disproportional. Id. at 6; Defs.' Oppo. at 9. The parties met and conferred on June 5, 2017 and June 13, 2017, but were unable to resolve the dispute. Pl.'s MTC at 7.

Lead Plaintiff argues that the requested documents are relevant because they involve the same Rat Study evidence presented to the FDA and "the EMA's objections and discussion of the relevance of the Rat Study to humans directly bear on the issue of Defendants' interpretation of the nonclinical studies and whether Defendants had a 'good faith' basis to make their misstatements." Pl.'s MTC at 9. Lead Plaintiff also asserts that the requested documents are relevant "to the issue of whether the misleading statements 'were rebutted by contrary information' .... [,] whether Defendants' statements were truthful[,] and whether Defendants were 'justified' in making these misstatements." Id. Lead Plaintiff further asserts that the fact that the documents post-date the Class Period is irrelevant because they discuss events that occurred during the Class Period and may shed light on the veracity of statements made during the Class Period. Id. Lead Plaintiff does not address the proportionality of his requests. See Pl.'s MTC.

**\*4** Defendants counter that Lead Plaintiff's "theory 'is that Defendants intentionally withheld information material to the market's assessment of whether and when *the FDA* would likely approve [L]orcaserin.' " Defs.' Oppo. at 9 (citation omitted) (emphasis in original). Accordingly, Defendants argue that only the FDA's concern about Lorcaserin is relevant and that "[w]hatever other regulators may have later thought, based on their own standards and guidelines, cannot change that in the slightest." Id. (citation omitted). Defendants also argue that the requested discovery is not proportional to the needs of this case as it seeks " 'all' documents that 'concern' " four broad categories of documents and the requested documents have limited, if any, relevance. Id. at 10-11.

To the extent Lead Plaintiff is arguing that the Ninth Circuit's decision in this case requires the production of

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

3

the requested documents relating to Arena's application to market Lorcaserin in the European Union, Lead Plaintiff is incorrect. See Pl.'s MTC at 4. While the Ninth Circuit's decision held that Defendants had an obligation to disclose the Rat Study results when they made representations regarding other animal studies which indicated a likelihood of FDA approval, the Ninth Circuit did not address the relevance, if any, of the effect of the Rat Study on the EMA and Arena's application for approval within the European Union. See Schueneman, 840 F.3d at 704-709 (9th Ci r. 2016) ("Defendants may not have had a duty to disclose the Rat Study had they not been representing that animal studies supported [L]orcaserin's safety and therefore its likelihood of being approved."). Lead Plaintiff states that the EMA's objections bear on the veracity of Defendants' statements made during the FDA approval process and whether Defendants were justified in making the statements, but Lead Plaintiff does not explain that conclusion given the different standards utilized by the EMA and the FDA and the different time frames of the statements. Moreover, Lead Plaintiff's requests are very broad and he does not explain how documents presented to the EMA, especially those unrelated to the Rat Study, are relevant to the issue in this case of whether Defendants "intentionally withheld information material to the market's assessment of whether and when the FDA would likely approve [L]orcaserin." Id. at 709. Finally, with regard to the Rat Study documents, Lead Plaintiff does not explain what discovery already has been produced in relation to the FDA application and the relevance of non-repetitive documents provided to the EMA. The Court therefore finds that the four document requests are overbroad and seek a large amount of irrelevant information, and the relevance of the remaining responsive documents is minimal given the EU medical standards and the time frames.

Lead Plaintiff also fails to establish that requests 34-37 are proportional to the needs of this case as required by Fed. R. Civ. P. 26(b)(1). See Pl.'s MTC. As previously stated, the requests at issue are extremely broad. See Pl.'s MTC, Declaration of Mario M. Choi in Support of Lead Plaintiff's Motion to Compel ("Choi Decl."), Exhibit B. Defendants indicate that they already have produced thousands of documents and are currently reviewing 200,000 emails and attachments from 16 custodians to produce. Defs.' Oppo. at 11. Defendants explain that they ran test searches on documents already collected

and identified 43,000 emails and attachments potentially responsive to Plaintiff's requests at issue. Id. Moreover, Defendants estimate that reviewing material responsive to requests 34-37 for relevance and privilege would take weeks and cost more than $80,000. Id. Given the extremely broad discovery requests, including the fact that the requests are not limited to the Rat Study, the minimal relevance of statements made after the class period in an application in the European Union involving drug standards that are different from those in the United States, and the large number of potentially responsive documents, the Court finds that requests 34-37 are not proportional to the needs of the case.

**\*5** The Court therefore **DENIES** Plaintiff's motion to compel a response to RFP numbers 34-37 on the grounds that the requested documents have little, if any, relevance to Lead Plaintiff's theory that "Defendants intentionally withheld information material to the market's assessment of whether and when the FDA would likely approve [L]orcaserin" and are not proportional to the needs of this case. See Schueneman, 840 F.3d at 709.

## B. DEFENDANTS' MOTION TO COMPEL

Plaintiffs relied heavily in their SAC on six Confidential Informants ("CI") to plead their claims with particularity. SAC at 5-10, 18-22. These CIs allegedly have information supporting Plaintiffs' claims that Defendants made misrepresentations of material facts which caused economic damages to Plaintiffs. See SAC. Plaintiffs did not identify the CIs by name. See id.

At issue in Defendants' motion to compel is Defendants' Interrogatory 8, which states: "Identify each person identified as a confidential informant in the complaint, including but not limited to, (i) the name of each confidential informant, (ii) the telephone number of each confidential informant, and (iii) the address of each confidential informant." Defs.' MTC, Declaration of Ryan E. Blair in Support of Defendants' Motion to Compel Response to Interrogatory No. 8 Relating to Confidential Witnesses ("Blair Decl."), Exhibit 1 at 10. In response, Lead Plaintiff objects on the grounds that identifying the CIs would violate the attorney work product doctrine. Pl.'s Oppo. at 7.

Lead Plaintiff's initial disclosures list more than 60 individuals, 52 of which are current and former Arena employees, who are believed to have discoverable

information. Defs.' MTC at 11; Pl.'s Oppo. at 15. While Lead Plaintiff concedes that the six CIs are on that list, Defendants argue they should not be required to depose dozens of witnesses to determine who the CIs are. Defendants also dispute Lead Plaintiff's objections.

### 1. Relevance

The threshold discovery issue is whether identifying the CIs is relevant information. Defendants assert that this information is relevant because Lead "Plaintiff quotes or paraphrases the CIs in nearly two dozen paragraphs of the Complaint and they " 'unquestionably have relevant information.' " Id. at 9 (citing In re Amgen Inc. Sec. Litig., 2013 WL 12139088, at *3 (C.D. Cal. Dec. 2, 2013)). Notably, Lead Plaintiff does not dispute that the identities of the six CIs are relevant. See Pl.'s Oppo.

The Court finds that the SAC demonstrates that the identities of the six CIs are relevant. The SAC quotes and/or paraphrases the CIs extensively regarding the Rat Study, Arena's knowledge of the Rat Study data, and Arena's alleged misrepresentation of Lorcaserin. SAC at 5-10, 18-22. The SAC also devotes several footnotes setting out, to various degrees, the backgrounds and qualifications of each of the CIs. Id. at 5 ns.1 & 2, 7 n.3, 8 n.4, 9 n.5, 10 n.6.

In light of these details, Rule 26(b)(1) requires that the names of the six CIs be produced, unless they are held to be privileged. Knowing identities of the CIs will help the defense find and interview and/or depose them. Lead Plaintiff has represented that the six CIs have firsthand knowledge of specific facts tending to establish Defendants' liability for securities fraud and such interviews or depositions are likely to constitute or reveal admissible, and possibly highly probative, evidence. It is also reasonable to expect that Defendants would pursue leads from information provided by the CIs, and that this might yield other admissible evidence. See In re Marsh & McLennan Sec. Litig., 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) ("[b]ecause Lead Plaintiffs relied upon the CWs in drafting the [Complaint], the CWs possess discoverable information") (citations omitted); In re Harmonic, Inc. Secs. Litig., 245 F.R.D. 424, 427 (N.D. Cal. 2007) (holding that "the identities of the [confidential witnesses] are relevant to Plaintiff's claims," and required to be revealed in response to interrogatories); In re Aetna, Inc. Sec. Litig., 1999 WL 354527, at *2 (E.D. Pa. May 26, 1999) (names and addresses of confidential informants to

whom factual allegations are attributed in the Complaint are "obviously 'relevant to the subject matter involved in the pending action' "). Additionally, identifying the CIs might help Defendants assess the strength of the SAC's claims. Finally, Lead Plaintiff has not argued or established that Defendants' request is not proportional. See Pl.'s Oppo.

### 2. Work-Product Doctrine

**\*6** The Court therefore turns to whether the names of the six CIs referenced in the SAC are protected from disclosure under the attorney-work product doctrine.

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id. However, even when substantial need for work product has been shown, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation. See Griffith v. Davis, 161 F.R.D. 687, 698-99 (C.D. Cal. June 9, 1995) (citations omitted). That is, work product protection applies only to material "that would not have been generated but for the pendency or imminence of litigation." See id. (citing Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. Feb. 26, 1987)). Further, "a mere allegation that the work product rule applies is insufficient to invoke its protection." Medina v. County of San Diego, 2014 WL 4793026, at *17 (S.D. Cal. Sept. 25, 2014) (citation omitted).

Defendants contend that the attorney work product doctrine does not protect the identity of witnesses when their statements appear in the complaint. Defs.' MTC at 10. Even if the work product doctrine were to

apply, Defendants argue that the qualified protection is overcome because they have a substantial need for the information and obtaining the information by other means would result in an undue hardship. Id. at 9-10. Lead Plaintiff argues that the disclosure of the CIs' identities would reveal counsel's opinions regarding the importance of these witnesses, thereby violating the work product doctrine. Pl.'s Oppo. at 11. Further, Lead Plaintiff asserts that Defendants cannot show a substantial need or undue burden required to overcome the qualified privilege. Id. at 12-16. Finally, Lead Plaintiff argues that disclosure of the CIs' identities would go against public policy. Id. at 16-17.

The names, phone numbers, and addresses of the persons identified in the SAC as CIs are not entitled to work product protection. Lead Plaintiff disclosed the fact that the six CIs (as well as approximately 54 other people) likely possess discoverable information because they identified them by name in the initial disclosures. See Pl.'s Oppo. at 15. The SAC also already disclosed important aspects of what the six CIs have stated about the events at issue in this case and their backgrounds and qualifications. See SAC. All that Defendants seek are the names, phone numbers, and addresses of the six CIs described in the SAC. Defs.' MTC, Blair Decl., Exhibit 1 at 6. This would expedite the discovery process by allowing Defendants to focus its depositions immediately on these important witnesses, rather than having to engage in a costly process of elimination in which it would take numerous depositions simply to determine which of the disclosed names are the six CIs.

*7 Contrary to Lead Plaintiff's argument, revealing the identity of the CIs would not reveal Lead Plaintiff's counsel's mental impressions, opinions, or trial strategy. [3] See Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc., 278 F.R.D. 335, 340 (S.D.N.Y. Nov. 14, 2011) (finding the work product doctrine inapplicable to the identity of confidential informants listed in a complaint). It is both proper and common for a plaintiff to rely on CIs in a complaint, however, "once the discovery phase begins, the balance of interests shifts. The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000); Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund, 278 F.R.D. at 341 (citing IPO Securities Litigation, 220 F.R.D. 30, 37 (S.D.N.Y. Oct. 30, 2003)). A party who attempted to

satisfy the pleading requirements by including statements from CIs "may not thereafter refuse to disclose who they are" on the grounds of work product. Ross v. Abercrombie & Fitch Co., 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008).

Accordingly, the Court finds that the work product doctrine is not implicated by granting Defendants' motion to compel. See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183-84 (2d Cir. 2007); Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund, 278 F.R.D. at 340; In re Aetna, 1999 WL 354527, at *2 (enforcing interrogatories that sought the names of witnesses identified in the complaint by such terms as "a former regional general manager at Aetna" or "a former Aetna vice-president of sales and customer service" and finding that the names of these individuals were not protected by the work product doctrine); In re Theragencies Corp. Secs. Litig., 205 F.R.D. 631 (N.D. Ga. 2002) (enforcing interrogatories which sought the names of persons referenced, but not named, in the complaint and rejecting the claim that the information was core work product); In re Harmonic, 245 F.R.D. at 427 (enforcing interrogatories as to the names of five CIs, finding the work product doctrine inapplicable and noting that CI identities constitute factual, as opposed to opinion, work product, and contain "minimal substantive content"); In re Marsh & McLennan, 2008 WL 2941215, at *3 n.5 (S.D.N.Y. July 30, 2008) (enforcing a discovery demand seeking production of "documents sufficient to identify each and every" of "the 17 CIs referenced in the complaint" and rejecting Plaintiff's contention that revelation of the identity of a CI reveals more about an attorney's mental processes than does the identification of a witness by name in the complaint itself).

### 3. Conclusion

*8 Because the identities of the six CIs listed in the SAC are relevant and do not implicate protection under the work product doctrine, the Court **GRANTS** Defendants' motion to compel.

## CONCLUSION

For the reasons stated herein, the Court finds that:

1. Lead Plaintiff's motion to compel production of documents responsive to requests 34-37 [ECF No. 117] is **DENIED**; and

2. Defendants' motion to compel disclosure of the names, addresses, and phone numbers of the CIs [ECF No. 113] is **GRANTED**. The CIs' names, addresses, and phone numbers are to be provided to the defense by **July 28, 2017**.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2017 WL 3118738

Footnotes

1  Lorcaserin is intended for weight loss and maintenance of weight loss, representing "the first in a new class of selective serotonin 2C receptor agonists." Compl. at 12.

2  Lead Plaintiff states that "[t]he Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding 'any nonprivileged matter that is relevant to any party's claim or defense.' " Pl.'s MTC at 7 (quoting Eclipse Grp. LLP v. Target Corp., 2017 WL 2692883, at *1 (S.D. Cal. June 21, 2017)). Lead Plaintiff cuts the quotation from that case short to leave out the portion stating that discovery also must be "proportional to the needs of the case...." Eclipse Grp. LLP v. Target Corp., 2017 WL 2692883, at *1 (S.D. Cal. June 21, 2017). Lead Plaintiff's statement is both inaccurate and misleading. As counsel for Lead Plaintiff hopefully knows, the Federal Rules of Civil Procedure were modified in 2015 and Rule 26 now requires both relevancy and proportionality. The Court will utilize the correct standard.

3  In support, Lead Plaintiff cites to Ferruza v. MTI Technology, 2002 WL 32344347 (C.D. Cal. June 13, 2002). In Ferruza, the court found that six confidential informants' identities were protected work product because they "simply referenced former employees to provide a credible basis and specific context for allegations that will be proved with admissible evidence at a later date." Id. at *5. The instant case differs because the SAC quotes and/or paraphrases the CIs as a basis for proving Defendants' alleged misconduct. See SAC. Lead Plaintiff also cites to In re Ashworth, Inc. Securities Litigation, 213 F.R.D. 385 (S.D. Cal. Aug. 6, 2002). In that case, Defendants did not seek the identity of CIs specifically listed in the complaint, but sought the identity of each former or current employee who provided information which formed the basis for any of the allegations in the second amended complaint, which formed the basis for plaintiff's belief in the truth of any of the facts alleged in the second amended complaint, and sought each and every lay witness whose testimony might be used at trial. Id. at 386. In contrast, Defendants' request is much narrower and specifically limited to the six CIs heavily relied upon in the SAC. See Defs.' MTC, Blair Decl., Exhibit 1.

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:16-cv-02267   Document 97-2   Filed 07/11/18   Page 71 of 71 PageID #: 2147