# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, <br><br>Plaintiff, <br><br>vs. <br><br>CORRECTIONS CORPORATION OF AMERICA, et al., <br><br>Defendants. | Civil Action No. 3:16-cv-02267 <br><br>Honorable Aleta A. Trauger <br><br>PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL DISCLOSURE OF IDENTITY OF PLAINTIFF'S CONFIDENTIAL WITNESS |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ...........................................................................................................2

    A.    Defendants Are Not Entitled to Know the Identity of FE1 ....................................4

    B.    Defendants Don't Need to Know Which of Their QA Managers is FE1 ...............6

    C.    Public Policy Also Supports Denial of the Motion................................................12

III. CONCLUSION .........................................................................................................13

1453356_1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashmore v. NFL Player Disability & Neurocognitive Benefit Plan*,
2017 U.S. Dist. LEXIS 137128
(S.D. Fla. Aug. 15, 2017) .......................................................................................................7

*Cason-Merenda v. Detroit Med. Ctr.*,
2008 WL 659647 (E.D. Mich. Mar. 7, 2008) .....................................................................2, 4

*Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*,
2009 U.S. Dist. LEXIS 19077
(D. Me. Feb. 25, 2009)..........................................................................................................7, 8

*Gokare v. Fed. Express Corp.*,
2012 U.S. Dist. LEXIS 106913
(W.D. Tenn. Aug. 1, 2012) ...................................................................................................2, 4

*Hatamian v. Advanced Micro Devices, Inc.*,
2015 WL 5604392 (N.D. Cal. Sept. 24, 2015) ......................................................................13

*Hubbard v. Bankatlantic Bancorp., Inc.*,
2009 WL 3856458 (S.D. Fla. Nov. 17, 2009)....................................................................7, 10

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
2012 WL 1134142 (S.D.N.Y. Mar. 6, 2012) .........................................................................10

*In re Amgen Inc. Sec. Litig.*,
2013 WL 12139088 (C.D. Cal. Dec. 2, 2013) .......................................................................11

*In re Ashworth, Inc. Sec. Litig.*,
213 F.R.D. 385 (S.D. Cal. 2002) ..................................................................................2, 5, 13

*In re Cigna Corp. Sec. Litig.*,
2006 WL 263631 (E.D. Pa. Jan. 31, 2006)...................................................................2, 5, 13

*In re Connectics Corp. Sec. Litig.*,
2009 WL 1126508 (N.D. Cal. Apr. 27, 2009) .......................................................................10

*In re Faro Tech. Sec. Litig.*,
2008 WL 205318 (M.D. Fla. Jan. 23, 2008)............................................................................6

*In re Harmonic, Inc. Sec. Litig.*,
245 F.R.D. 424 (N.D. Cal. 2007)...........................................................................................10

*In re MTI Tech. Corp. Sec. Litig. II*,
2002 WL 32344347 (C.D. Cal. June 13, 2002) .......................................................... *passim*

*In re SLM Corp. Sec. Litig.*,
   2011 WL 611854 (S.D.N.Y. Feb. 15, 2011) ..................................................................2, 5, 11

*In re St. Paul Travelers Sec. Litig. II*,
   2007 U.S. Dist. LEXIS 34527
   (D. Minn. May 10, 2007) ..................................................................................................2, 10

*Kas v. Mercedes-Benz U.S.A., LLC*,
   2011 U.S. Dist. LEXIS 129511
   (C.D. Cal. Nov. 8, 2011) .........................................................................................................8

*Miller v. Ventro Corp*
   2004 WL 868202 (N.D. Cal. Apr. 21, 2004) ..........................................................................9

*Plumbers & Pipefitters Local Union No. 630*
*Pension-Annuity Tr. Fund v. Arbitron, Inc.*,
   278 F.R.D. 335 (S.D.N.Y. 2011) ..................................................................................9, 10, 12

*Ross v. Abercrombie & Fitch Co.*,
   2008 WL 821059 (S.D. Ohio Mar. 24, 2008) .................................................................. *passim*

*Schueneman v. Arena Pharms., Inc.*,
   2017 WL 3118738 (S.D. Cal. July 21, 2017) .....................................................................10, 11

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
   2013 WL 7853448 (E.D. Tex. July 22, 2013) ........................................................................8

*United States v. Blue Cross Blue Shield of Michigan*,
   2012 WL 12930840 (E.D. Mich. May 30, 2012) ..................................................................11

*Vasudevan Software, Inc. v. IBM Corp.*,
   2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ..........................................................................8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8(b)(2)...........................................................................................................8
    Rule 8(b)(4)...........................................................................................................8
    Rule 8(b)(5)...........................................................................................................8
    Rule 26(a)(1)(A)(i).................................................................................................7

Middle District of Tennessee Local Rules
    Rule 37(b)(2)(c)....................................................................................................3
    Rule 37.01.............................................................................................................3
    Rule 37.01(b)(1)....................................................................................................3
    Rule 37.01(b)(2)(a)...............................................................................................3

1453356_1

Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("plaintiff") hereby responds as follows to defendants' Motion to Compel Disclosure of Identity of Plaintiff's Confidential Witness (ECF No. 96) and Memorandum Brief in support thereof (ECF No. 97, "Mem. Br."):

## I. INTRODUCTION

FE1, a former Quality Assurance ("QA") Manager at Corrections Corporation of America ("CCA"), told plaintiff that: (i) CCA was regularly subject to audits by the Bureau of Prisons ("BOP"); (ii) the results of those audits were recorded on electronic databases maintained by the company; (iii) the information in the databases was used to prepare for future audits, including through pre-BOP audits conducted by QA Managers; and (iv) the information in the databases was sent to senior management, including the individual defendants named in this Lawsuit. ¶¶10, 174-179.[1] None of this information is controversial. Indeed, it simply corroborates the information about QA activities that CCA itself reported to the U.S. Securities & Exchange Commission ("SEC") during the Class Period. ¶¶172-173. As the Court recognized, the information attributed to FE1 in the complaint merely "completes the picture by confirming" the information contained in CCA's own statements to investors. ECF No. 76 at 40.

Surely, defendants knew that CCA's facilities were being audited by the BOP, knew what databases they were using to track and prepare for audits during the Class Period, and knew how the information developed in the BOP and QA audits was used and disseminated throughout the organization. Why, then, do they need to know the identity of FE1? The simple answer is, they don't. As defendants themselves explain, they want to question FE1 "about the bases for his or her alleged statements, test his or her credibility, ***and determine whether Plaintiff captured FE1's***

---

[1] All paragraph references ("¶_") are to plaintiff's Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 57) ("CAC"). Citations are omitted unless noted otherwise.

*statements completely and accurately in the Complaint*."  Mem. Br. at 1.  In other words, defendants want to identify FE1 only so that they may subject him or her to a deposition, which they will then use to intrude into Lead Counsel's thoughts, mental impressions and strategy – *i.e.*, its work product – by trying to learn what *other* information FE1 may have provided, how Lead Counsel conducted the pre-filing investigation of the CAC, and how Lead Counsel evaluated and used – and what importance they placed on – the information FE1 provided.  And defendants seek to do so without offering even the barest explanation why they have any reason to believe that the information attributed to FE1 is inaccurate in any respect whatsoever.

Recognizing that discovery into such collateral matters is irrelevant and wasteful – and presents grave risks of unwarranted intrusions into work product protections that could have a chilling effect on witnesses' willingness to voluntarily come forward with information bearing on claims of securities fraud – numerous courts have refused to order plaintiffs to reveal their confidential sources to defendants in circumstances such as those present here.[2]  This Court should do the same.

## II. ARGUMENT

It is important to recognize at the outset that defendants' Motion is *not* directed at discovering information about the substantive issues of liability in this case.  The subject discovery does not seek to identify witnesses who participated in or may otherwise have knowledge about BOP's audits or the internal systems and procedures that CCA used for tracking, preparing for, and sharing information about those audits.  Defendants already know how CCA tracked and used the

---

[2]    *E.g.*, *Ross v. Abercrombie & Fitch Co.*, 2008 WL 821059, at *2 (S.D. Ohio Mar. 24, 2008); *Gokare v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 106913, at *3-*7 (W.D. Tenn. Aug. 1, 2012); *In re St. Paul Travelers Sec. Litig. II*, 2007 U.S. Dist. LEXIS 34527 (D. Minn. May 10, 2007); *Cason-Merenda v. Detroit Med. Ctr.*, 2008 WL 659647, at *4 (E.D. Mich. Mar. 7, 2008); *In re Cigna Corp. Sec. Litig.*, 2006 WL 263631, at *1 (E.D. Pa. Jan. 31, 2006); *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002); *In re SLM Corp. Sec. Litig.*, 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011); *In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 388-89 (S.D. Cal. 2002).

information that was developed during BOP and internal QA audits of its facilities. Defendants also know who each of their QA Managers, including FE1, were during the Class Period.[3] The only thing defendants don't know is **which** of their former employees talked to plaintiff's representatives before the CAC was filed. Defendants' discovery was therefore directed solely at uncovering details as to how plaintiff prepared its complaint. This is core work product that defendants are not entitled to receive. *E.g.*, *Ross*, 2008 WL 821059, at *2.

Defendants' Motion obfuscates this fact – and violates M.D. Tenn. L.R. 37.01 – by failing to identify, much less quote or specifically address, the discovery requests to which they seek to compel a response.[4] Reviewing the actual discovery requests lays bare that the Motion is not directed at learning any substantive information about this case. It is directed only at intruding into the work product protections by learning who Lead Counsel or their investigators had talked to, what documents they had reviewed, and what was discussed during plaintiff's pre-filing investigation leading to the CAC:

> INTERROGATORY NO. 8:
>
> Identify the person cited or otherwise referred to as FE1 in the Complaint.
>
> INTERROGATORY NO. 9:
>
> State the dates, times, and durations of each meeting, telephone call, email or text exchange, or other form of interaction with FE1, and identify each person who was present during or participated in each of those interactions.

---

[3]   Nothing in defendants' Motion or the allegations pertaining to FE1 suggest that there is anything unusual or unique about the information provided by that witness. Rather, the alleged information is of a type that would be possessed by any of CCA's QAs during the Class Period.

[4]   Local Rule 37.01 of the Middle District of Tennessee required defendants to "file only that portion" of the discovery requests that are objected to, and to "[q]uote verbatim each … interrogatory … to which objection has been taken." M.D. Tenn. L.R. 37.01(b)(1), (2)(a). Instead, defendants attach the entire set of interrogatory responses and the Motion says only that "[d]efendants requested information regarding FE1 in three of its [interrogatories] and seven of its [document requests]." *See* Mem. Br. at 5, Exhibit A. The Motion may be denied on this ground alone. *See* M.D. Tenn. L.R. 37(b)(2)(c) ("Such objections and grounds shall be addressed to the specific deposition question, interrogatory, request for admission, or request for production and may not be made generally.").

INTERROGATORY NO. 10:

Identify all persons, documents, reports, and QA systems discussed in each meeting, telephone call, email or text exchange, or other form of interaction with FE1.

INTERROGATORY NO. 11:

Identify all current or former employees of CoreCivic you contacted in addition to FE1 prior to filing the Complaint.

*See* Mem. Br., Ex. A at 9-11. We presume the Motion is directed only at Interrogatory No. 8, as defendants have ceased efforts to compel further responses to the other quoted interrogatories, presumably because they now recognize that such inquiries would impermissibly invade the work product protection without just cause.

### A. Defendants Are Not Entitled to Know the Identity of FE1

As Interrogatory No. 8 and the related requests make clear, defendants want to force plaintiff to identify FE1 only *because* s/he was a confidential informant – *not* because they are seeking information about any substantive matters at issue in this case. That is protected work product information that should not be compelled to be disclosed. In *Ross*, the Southern District of Ohio drew a sharp distinction between discovery directed at learning the identities of individuals with information relevant to the claims at issue and discovery directed at uncovering the identities of witnesses who cooperated with plaintiff in putting together the complaint, finding that the former is permitted but the latter is not. 2008 WL 821059, at *2 ("requiring such disclosures would unnecessarily intrude on the work product process"). Other courts across the country have done the same. *E.g.*, *Gokare v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 106913, at *3-*8 (W.D. Tenn. Aug. 1, 2012) ("Consistent with *Ross*, the Court finds that a request for which individuals' were interviewed while preparing the pleadings or which individuals provided information underlying specific paragraphs of the pleading should not be permitted on grounds of work product."); *Cason-Merenda*, 2008 WL 659647, at *4 (E.D. Mich. Mar. 7, 2008) (noting the "'distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity

of persons contacted and/or interviewed during an investigation, which is not'"); *Cigna*, 2006 WL 263631, at *3 ("[I]f an individual who is a confidential informant does have relevant information, that person's identity should be disclosed as a discoverable matter, but without disclosing that he or she is a confidential informant."); *MTI*, 2002 WL 32344347, at *3 ("Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected, the identity of witnesses interviewed by opposing counsel is protected."); *accord SLM*, 2011 WL 611854, at *1; *Ashworth*, 213 F.R.D. at 388-89.

The cases defendants rely upon are inconsistent with the foregoing line of authority, and incorrectly find that the work product doctrine does not apply. There is no binding authority from the Sixth Circuit or, so far as plaintiff here is aware, any other appellate court, on this issue. We submit that the more cogent, balanced and persuasive decisions are those like *Ross* where courts permit defendants to discover the sources of information bearing on the lawsuit, while protecting plaintiffs from having to identify which of those sources their lawyers specifically consulted or relied upon in crafting the allegations of the complaint. As recognized in *Ross*, the work product protections are grounded in the concept that attorneys must have "working space" to consult and sift through evidence to decide what is important and what is not, what leads to pursue, who to interview, what information will best support the claims, and which legal theories are viable in light of that evidence:

> Drafting a pleading – deciding exactly what to allege and how to allege it – is a quintessential function of a litigating attorney. That attorney makes key strategic decisions about whom to interview in preparing that pleading, and whose information is reliable enough to persuade the attorney that he or she may aver a fact provided by that witness without violating Rule 11's mandate that all facts alleged "have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." It therefore seems beyond dispute that if an attorney has to tell opposing counsel exactly whom he or she chose to interview when preparing a pleading, and which information obtained from those interviews was deemed worthy enough to support each specific allegation within that pleading, there will be a substantial intrusion upon the attorney's "working space."

- 5 -

2008 WL 821059, at *2 (ellipses in original). To the extent the cases cited by defendants find that the work product doctrine does not protect plaintiff from identifying the specific witnesses interviewed or relied upon in drafting the complaint, they are wrongly decided and should not be followed by the Court.

Unlike the cases defendants rely on – where defendants sought to identify the witness to learn substantive information about plaintiffs' claims – defendants here want to identify the witness only so they can inquire into their communications with counsel, including information shared that was not alleged, so that they can decide whether they think the witness's communications with plaintiff were reflected "completely" and "accurately" in the complaint. Even defendants' authorities recognize that these types of inquiries intrude upon the work product doctrine and are improper. *In re Faro Tech. Sec. Litig.*, 2008 WL 205318, at *2 (M.D. Fla. Jan. 23, 2008) (granting motion to compel but limiting discovery to "factual information regarding the knowledge of the witness" and barring inquiry into the particulars of communication with attorneys as not sufficiently relevant or important "to override the traditional protection afford to such information").[5]

Because defendants seek to identify FE1 only because s/he was a confidential informant and only to inquire into the details of the witness's communications with opposing counsel, and do not seek to compel responses to any requests directed at substantive information underlying this action, their discovery improperly intrudes on the work product doctrine and their Motion to compel a response should be denied.

### B. Defendants Don't Need to Know Which of Their QA Managers is FE1

Plaintiff does not intend, or need, to call FE1 as a witness at trial. Internal documents produced in discovery will identify CCA's audit tracking tools, reveal the information contained in

---

[5]    Defendants' argument that any work product protection has been waived by including information learned in the witness interview in the complaint misses the mark for the same reason – defendants want to depose the witness to discover what s/he told plaintiff that was ***not*** alleged in the complaint.

- 6 -

its databases, and establish how those systems were used and by who. Defendants' Rule 26 disclosures do not identify FE1 or any of CCA's other QA Managers as relevant witnesses on who they intend to rely.[6] Thus, there is no need for defendants to identify FE1, much less to depose them to understand the "basis" for their statements or test their "credibility." Mem. Br. at 1. Nor is it proper or "legitimate" for defendants to take such discovery merely to "probe the accuracy and veracity of the statements attributed to FE1" in the CAC. *See id.* at 6.

As the *MTI* court recognized, discovery into the "veracity" of the CAC is neither necessary nor appropriate after a complaint has passed the Private Securities Litigation Reform Act ("PSLRA") hurdle. 2002 WL 32344347, at *5. "The only proper challenge to the sufficiency of the underlying bases for Plaintiffs' complaint allegations would be a motion brought pursuant to Federal Rule of Civil Procedure 11." *Id.* Here, defendants have not brought such a motion, nor have they identified any basis for such a motion, much less for discovery in support of such a motion. Their Motion should therefore be denied. *E.g.*, *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, 2009 U.S. Dist. LEXIS 19077, at *5-*6 (D. Me. Feb. 25, 2009) ("In the context of Rule 11 motions for sanctions, discovery is permitted only in 'extraordinary circumstances.'"); *Ashmore v. NFL Player Disability & Neurocognitive Benefit Plan*, 2017 U.S. Dist. LEXIS 137128, at *3-*4 (S.D. Fla. Aug. 15, 2017) (where "Defendant has not provided a sufficient factual basis for

---

[6]    Nor was FE1 identified in plaintiff's Rule 26 disclosures. Such disclosure was not required because plaintiff does not intend to call FE1 as a witness. *Hubbard v. Bankatlantic Bancorp., Inc.*, 2009 WL 3856458, at *3 (S.D. Fla. Nov. 17, 2009); Fed. R. Civ. P. 26(a)(1)(A)(i). Defendants have raised no objection to plaintiffs' disclosures, nor does their Motion otherwise seek to compel a response to a discovery request seeking the identity of witnesses with substantive information about the case. Were defendants to make such a request, plaintiff could be required to identify the witnesses (including FE1) believed to have knowledge of the facts alleged. But, as recognized by *Ross* and the other cases cited above, plaintiff could not thereafter be compelled to identify which of those witnesses is FE1. The result in *Ross* and the other cited cases does not turn on whether the witness was previously disclosed under Rule 26 or otherwise. Rather, like the instant Motion, it is concerned solely with whether a party can be compelled to identify which of the universe of fact witnesses was interviewed by the other side during its investigation of the claims alleged.

Rule 11 discovery" "discovery solely relevant to possible future filing of a motion for Rule 11 sanctions is improper").[7]

Neither have defendants asserted, provided any evidence to support, or even suggested, that any of the information attributed to FE1 is not correct. Rather, in their Answer to the CAC, defendants merely state that they lack information or belief as to the allegations based upon information provided by FE1. ECF No. 81 ("Answer"), ¶¶174-179. Indeed, defendants do so as to information attributed to the witness which defendants clearly know is true or could easily have denied if they believed it to be false, including allegations describing CCA's audit tools and explaining how the information reflected therein was created, stored and disseminated throughout the company.[8] *See* Answer, ¶¶175-179.[9] CCA's job description for its QA Managers, produced in discovery, further supports FE1's credibility, as it confirms that the witness was in a position to

---

[7] Many other courts have similarly rejected efforts to pursue Rule 11 discovery without any reason to suspect a violation has occurred. *E.g.*, *Kas v. Mercedes-Benz U.S.A., LLC,* 2011 U.S. Dist. LEXIS 129511, at *8-*9 (C.D. Cal. Nov. 8, 2011) ("'[I]t would be unwise and unwarranted to permit Rule 11 discovery (*i.e.*, discovery into the quality and scope of the investigation that [preceded] the filing of a claim) until after the party seeking the Rule 11 discovery has shown, through traditional discovery, that there is more than a speculative basis for believing that its opponent may have violated the norms set forth in Rule 11.'") (second alteration in original); *Vasudevan Software, Inc. v. IBM Corp.*, 2011 WL 940263, at *4 & n.2, *5 (N.D. Cal. Feb. 18, 2011) (refusing to compel answers to interrogatories asking the plaintiff to "'describe in detail'" the plaintiff's pre-filing investigation and noting that the defendant admitted that it served the interrogatories "to determine if [the plaintiff] failed to conduct a reasonable pre-filing investigation in violation of Rule 11" and that "courts are discouraged from using Rule 11 as a basis for discovery"); *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, 2013 WL 7853448, at *1 (E.D. Tex. July 22, 2013) (refusing to compel a response to an interrogatory asking the plaintiff to "[e]xplain in detail . . . all communications between [the plaintiff and another entity] relating to the pre-filing investigation, filing, and prosecution of the case"; noting that no Rule 11 motion had been filed and no other basis for discovery had been offered); *see also* Fed. R. Civ. P. 11 (Advisory Committee Notes to 1983 amendment ) ("To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances."); *Fairchild*, 2009 U.S. Dist. LEXIS 19077, at *5-*6 (citing/quoting advisory committee notes).

[8] In fact, defendants admit that the company maintains audit tools of the type described by FE1, as they reported to the SEC. *See* Answer, ¶¶172-173.

[9] By failing to meet the substance of these allegations, defendants' Answer also violates both the letter and the spirit of Rule 8. *See* Fed. R. Civ. P. 8(b)(2), (4), (5).

- 8 -

know the information attributed to them in the complaint.  *See* Ex. 1, attached hereto.[10]  This underscores that defendants themselves have no reason to believe that FE1's statements were incorrect or misrepresented, much less any basis for pursuing discovery into how plaintiff put together its complaint.

In attempting to describe the relevancy of the discovery in their Motion, defendants make no argument that the information attributed to FE1 is important or necessary for them to properly conduct discovery or prepare their case for trial.  Mem. Br. at 5-6.  This case is therefore markedly different from *Miller v. Ventro Corp.*, where the court found that defendants had a substantial need for the names of the confidential witnesses in light of the upcoming fact discovery deadline and trial date in that case, and the court's finding that – unlike FE1 here – the informants were "highly relevant potential witnesses" whose identities would be disclosed in short order regardless of the decision on the discovery motion.  2004 WL 868202, at *2 (N.D. Cal. Apr. 21, 2004) ("the issue of disclosure is really a matter of when, not whether").   Even then, the Court recognized, consistent with *Ross* and the other cases cited above, that "[p]laintiffs need not link up any particular CW with a paragraph in the complaint, and may identify the witnesses in any order."  *Id.*

Like *Ventro, m*any of the other cases cited by defendants involve circumstances where the court was convinced that defendants had a substantial need to know who the confidential witnesses were so they could prepare their case for trial.  In *Arbitron*, the court noted that the witnesses had provided detailed and specific information regarding the company's data reliability and methodology, equipment shortages and other problems concealed from investors regarding a new product rollout.  *Plumbers & Pipefitters Local Union No. 630  Pension-Annuity Tr. Fund v.*

---

[10]    Although this document does not on its face appear to include any information that qualifies as a protected trade secret or other sensitive information, defendants have nevertheless marked it confidential.  Plaintiff has, as required by the Protective Order, filed it under seal.  We leave it to defendants to explain why confidential treatment is necessary for this document, as we can ascertain no reason for the designation.

*Arbitron, Inc.*, 278 F.R.D. 335, 339 (S.D.N.Y. 2011). The court also noted (as in *Ventro*) that the witnesses "names will almost certainly eventually become known" during discovery, including because plaintiffs themselves intended to depose them. *Id.* at 340-41 & n.5. In *Arena Pharmaceuticals*, the court similarly noted that the witnesses had provided "a basis for proving Defendants' alleged misconduct," and then distinguished *MTI* on grounds that the witnesses in that case had merely been included "to provide a credible basis and specific context for allegations that will be proved with admissible evidence at a later date." *Schueneman v. Arena Pharms., Inc.*, 2017 WL 3118738, at *7 n.3 (S.D. Cal. July 21, 2017). Other cases cited by defendants are similarly inapposite.[11]

By contrast, defendants here have not articulated any reason why they need to identify FE1 to discover information important to the trial of the case. Moreover, because information of the type attributed to FE1 is readily available, defendants have failed to demonstrate any need to learn the witness's identity. *See St. Paul Travelers*, 2007 U.S. Dist. LEXIS 34527, at *7 (denying disclosure of confidential witness identities where "[p]laintiffs maintain that they do not intend to have the witnesses testify at trial, and that there is an abundance of independent evidence that is not based on the confidential witnesses that can demonstrate the same information supplied by those witnesses and alleged in the complaint."). Unlike *Arbitron* and *Arena Pharmaceuticals*, it is the audits and other evidence of conditions at the BOP facilities that will be the proof of the misconduct underlying

---

[11]    *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007) ("The issue here, like that in *Ventro*, is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered.") (emphasis in original); *Hubbard*, 2009 WL 3856458, at *3 n.2, *4 (compelling disclosure where plaintiffs reserved the right to decide to call the witnesses at trial and "there are no other witnesses identified by Plaintiffs regarding the facts alleged in the Complaint which are attributed to these witnesses . . . ."); *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 2012 WL 1134142, at *4 (S.D.N.Y. Mar. 6, 2012) (compelling disclosure of three important witnesses, including two former executive vice presidents of defendant and an executive of a Wall Street bank involved in one of its transactions); *In re Connectics Corp. Sec. Litig.*, 2009 WL 1126508, at *2 (N.D. Cal. Apr. 27, 2009) (rejecting argument that disclosure should be prohibited because plaintiffs might not use confidential witness testimony at trial: "This argument might have more weight if plaintiff had stipulated that it no longer intended to use or rely on these witnesses at trial, which it has not done.").

- 10 -

this case – **not** the testimony of FE1, who simply corroborated CCA's own statements about its QA practices by providing basic information about the systems that CCA employed to track and disseminate data collected during audits of its facilities. Thus, there is insufficient need for defendants to identify FE1. *SLM*, 2011 WL 611854, at *1 ("Absent a showing of need and undue hardship, Defendants may not force Plaintiffs to disclose the identities of witnesses interviewed during the investigation leading to the Second Amended Complaint.").

Nor can defendants' Motion be justified by the expense of discovery. Although some courts have found that defendants have a need to know who confidential witnesses are so they can streamline their discovery efforts, other courts have recognized that there is little justification for this result, which merely permits defendants to save discovery costs by piggy-backing on the substantial efforts required of plaintiffs to satisfy the requirements of the PSLRA. *Compare Arena Pharmaceuticals*, 2017 WL 3118738, at *5 and *In re Amgen Inc. Sec. Litig.*, 2013 WL 12139088, at *3 (C.D. Cal. Dec. 2, 2013) *with Ross*, 2008 WL 821059, at *4 and *MTI*, 2002 WL 32344347, at *4. We submit that the cases rejecting discovery on such grounds are more well-reasoned, particularly considering the practicalities of cases such as this where defendants and their counsel already have broad and unfettered access to far more witnesses and far more sources of internal information than plaintiff will ever receive, even with the benefit of (hotly-contested) discovery. *See, e.g.*, *MTI*, 2002 WL 32344347, at *4 ("Defendants are in the best position to know what type of information each individual may possess."); *United States v. Blue Cross Blue Shield of Michigan*, 2012 WL 12930840, at *4 (E.D. Mich. May 30, 2012) ("Here, as in *Abercrombie*, the mere fact that BCBS will have to do some work to get the same information as Plaintiffs does not mean that BCBS is entitled to Plaintiffs' fact work product."). To the extent cases like *Arena Pharmaceuticals* and *Amgen* find that defendants' interest in reducing discovery expenses is enough to justify discovery, their conclusions are incorrect, and appear to be largely driven by their failure to recognize the

application of the work product doctrine to the information, such that they did not require the "substantial need" necessary to overcome those protections. Moreover, unlike *Arbitron*, defendants here have failed to present ***any*** evidence of their need for the information or their inability to identify the witness without substantial expense. *See Arbitron*, 278 F.R.D. at 341-42.

Because there is no basis or relevance for defendants' proposed inquiry into the "veracity" of the CAC, and because defendants have articulated no need – much less a substantial need – for the information possessed by FE1, the witness's identity is both irrelevant and unlikely to lead to the discovery of relevant or admissible evidence. Accordingly, the Motion should be denied on this ground as well.

## C. Public Policy Also Supports Denial of the Motion.

Separate and apart from the relevancy and work product issues raised by defendants' discovery, public policy also supports denial of their Motion. Compelling disclosure of the identities of whistleblowers in circumstances such as those present here would have a chilling effect on the willingness of witnesses to come forward in other cases. As the Eastern District of Pennsylvania recognized more than a decade ago when presented with a similar motion:

> Confidential informants play a decidedly important role in many areas of public life. They are essential to the craft of espionage, and there are many books revealing the valuable role which confidential information has played in enabling our country to survive numerous wars. In the field of law enforcement, confidential informants are, of course, heavily relied upon by police and other law enforcement agents to detect everything from drug dealing to kidnaping to solving gruesome murders. The role of confidential informants in providing information to the press has recently been under great attention with regard to the so-called "CIA leak case" …[¶]. In addition, the Federal Whistleblower Act, 5 U.S.C. §§ 1201 et seq. (2005), and the *qui tam* provisions of the False Claim Act, 31 U.S.C. §§ 3729 et seq. (2005), allow the use of confidential informants who maintain their anonymity for cases to be filed under seal, and for recovery of damages.

> With this background, there seems to be little public policy to support the Court requiring Lead Plaintiff to disclose its confidential informants in this case.

- 12 -

*Cigna*, 2006 WL 263631, at *1.  In weighing the competing interests for and against disclosure the court struck the proper balance, finding that while defendants are entitled to learn the identities of witnesses with substantive information about the case, they are not entitled to know who among them was a confidential informant.  *Id.* at *3 ("The Court concludes that requiring specific identification of confidential sources from among the universe of individuals with relevant knowledge in a securities fraud case would chill informants from providing critical information which may end up being in the public eye."); *accord MTI*, 2002 WL 32344347, at *5; *Ashworth*, 213 F.R.D. at 389.

Because defendants' discovery here is directed only at learning the identities of confidential informants, their Motion should similarly be denied.  If the Court nevertheless concludes that the information must be provided, it should be on an attorneys'-eyes-only basis to protect FE1 from potential retaliation or harm to their reputation or future job prospects, and to avoid unnecessarily chilling the willingness of whistleblowers to assist litigants in judicial proceedings.  Defendants' authorities support entry of such an order,[12] and defendants concede that such a requirement is both necessary and appropriate if the Court compels disclosure of FE1's identity.  *See* Mem. Br. at 9 (acknowledging appropriateness of protective order to address public policy concerns).

## III.    CONCLUSION

Defendants' Motion to compel disclosure of FE1's identity should be denied because it violates the work product doctrine, seeks information that is not relevant to trial, and offends public

---

[12]    *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 5604392, at *2 (N.D. Cal. Sept. 24, 2015).

policy.  If disclosure is nonetheless ordered, it should be on an attorneys'-eyes-only basis to protect

both the witness and the integrity of the judicial system.

DATED:  July 18, 2018                 ROBBINS GELLER RUDMAN & DOWD LLP
                                       DENNIS J. HERMAN
                                       WILLOW E. RADCLIFFE
                                       KENNETH J. BLACK

                                                s/ Dennis J. Herman
                                        DENNIS J. HERMAN

                 Post Montgomery Center
                 One Montgomery Street, Suite 1800
                 San Francisco, CA  94104
                 Telephone:  415/288-4545
                 415/288-4534 (fax)

                 ROBBINS GELLER RUDMAN & DOWD LLP
                 CHRISTOPHER M. WOOD, #032977
                 CHRISTOPHER H. LYONS, #034853
                 414 Union Street, Suite 900
                 Nashville, TN  37219
                 Telephone:  800/449-4900
                 615/252-3798 (fax)

                 Lead Counsel for Plaintiff

                 BARRETT JOHNSTON MARTIN
                   & GARRISON, LLC
                 JERRY E. MARTIN, #20193
                 Bank of America Plaza
                 414 Union Street, Suite 900
                 Nashville, TN  37219
                 Telephone:  615/244-2202
                 615/252-3798 (fax)

                 Local Counsel

- 14 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 18, 2018, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Dennis J. Herman
DENNIS J. HERMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: dennish@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anna E. Berces**
  anna.berces@lw.com

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,smcclenahan@barrettjohnston.com,nchanin@barrettjohnston.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,ptiffith@rgrdlaw.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)