# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) v. ) ) CORRECTIONS CORPORATION OF ) AMERICA, DAMON T. HININGER, ) DAVID M. GARFINKLE, TODD J. ) MULLENGER, and HARLEY G. LAPPIN, ) ) Defendants. ) | Case No. 3:16-cv-2267<br>Judge Aleta A. Trauger |

## MEMORANDUM AND ORDER

CoreCivic, Inc. ("CoreCivic") has filed a Motion to Compel Disclosure of Identity of Plaintiff's Confidential Witness (Docket No. 96), to which Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated"), has filed a Response (Docket No. 103), and CoreCivic has filed a Reply (Docket No. 107-1). For the reasons set out herein, CoreCivic's motion will be denied.

## BACKGROUND

CoreCivic is a publicly traded real estate investment trust that owns and operates correctional, detention, and residential reentry facilities. (Docket No. 57 ¶ 2.) In the period from February 27, 2012, through August 17, 2016 ("Class Period"), CoreCivic's federal clients, including the Federal Bureau of Prisons ("BOP") and other agencies, allegedly accounted for between 43% and 51% of the company's annual revenue. (*Id.* ¶¶ 1, 34) In particular, CoreCivic's BOP contracts—which covered five facilities collectively housing approximately 8,000 inmates—were responsible for at least 11% of CoreCivic's annual revenue. (*Id.* ¶¶ 2, 34.) The

BOP is a subdivision of the United States Department of Justice ("DOJ"). *See Mauldin v. United States*, No. 3:07-0496, 2008 WL 821523, at *3 (M.D. Tenn. Mar. 27, 2008).

On August 18, 2016, Deputy Attorney General Sally Q. Yates issued a memorandum to the BOP entitled "Reducing our Use of Private Prisons" ("Yates Memorandum"). The Yates Memorandum stated that "[p]rivate prisons served an important role during a difficult period, but time has shown that they compare poorly to our own [BOP] facilities." (Docket No. 62-2 at 2.) Private facilities, Yates wrote, "simply do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and . . . they do not maintain the same level of safety and security." (*Id.*) Yates concluded that, in light of those inferior services and the lack of substantial cost savings, the BOP should "begin[] the process of reducing—and ultimately ending—our use of privately operated prisons." (*Id.* at 3.) Yates specifically directed that, "as each [private prison] contract reaches the end of its term, the Bureau should either decline to renew that contract or substantially reduce its scope in a manner consistent with law and the overall decline of the Bureau's inmate population." (*Id.* at 3.) In the wake of the Yates Memorandum, CoreCivic's stock price fell dramatically, dropping from a close of $27.56 per share on August 10, 2016 to an intraday low of $13.04 per share on August 18, 2016. (Docket No. 57 ¶ 14.)

On August 23, 2016, Nikki Bollinger Grae filed a Class Action Complaint in this case, alleging that CoreCivic and its executives had been aware of widespread deficiencies in CoreCivic facilities relative to BOP expectations but had made falsely and/or misleadingly rosy public statements that had concealed the risk of the withdrawal of BOP patronage. (Docket No. 1 ¶ 4.) Notice of the suit was published in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(A)(i), and Amalgamated filed a timely motion

to be appointed lead plaintiff, *see* 15 U.S.C. §78u-4(a)(3)(B)(i). (Docket No. 38.) Amalgamated claimed to have purchased or acquired almost 159,000 shares of CoreCivic stock and suffered over $1.2 million in losses as a result of the conduct covered by the suit. (Docket No. 39 at 5.) The court granted Amalgamated's motion, appointing it the lead plaintiff for the case. (Docket No. 52.) Amalgamated filed an Amended Complaint on March 13, 2017. (Docket No. 57.)

Amalgamated's Amended Complaint cites information from a number of sources, including an anonymous former CoreCivic employee identified only as "FE1." Amalgamated relies on FE1 primarily for FE1's description of CoreCivic's internal quality assurance practices, including the manner in which senior CoreCivic executives received information regarding facility deficiencies and BOP write-ups thereof. (*Id.* ¶¶ 174–79.) There is no indication, in the Amended Complaint, that FE1 was uniquely or especially well situated to provide the relevant information, relative to other employees with similar duties; rather, he or she merely described aspects of CoreCivic's internal processes that any number of other employees, including the senior executives themselves, presumably could, if true, confirm. (*Id.* ¶¶ 174–79.) CoreCivic's public statements during the Class Period had frequently included references to its quality assurance structures. (*Id.* ¶¶ 135, 137, 172–73.)

CoreCivic moved to dismiss the Amended Complaint (Docket No. 60), and the court denied that motion (Docket No. 77). The parties proceeded to discovery, and CoreCivic issued a first round of Interrogatories to Amalgamated. CoreCivic's Interrogatory No. 8 asks Amalgamated to "[i]dentify the person cited or otherwise referred to as FE1 in the Complaint." (Docket No. 97-1 at 9.) Amalgamated objected to the request, arguing that FE1's identity is irrelevant to any contested issues at trial and, in any event, is protected by the work-product doctrine. (*Id.*) The parties were unable to reach an agreement with regard to how to proceed

regarding Interrogatory No. 8, and CoreCivic filed a Motion to Compel Disclosure of Identity of Plaintiff's Confidential Witness, asking the court to order Amalgamated to reveal the identity of FE1. (Docket No. 96.)

## ANALYSIS

Federal Rule of Civil Procedure 37(a) allows a party to file a motion to compel if the opposing party "fails to answer an interrogatory" or gives an "evasive or incomplete" answer. The court will only grant such a motion, however, if the movant actually has a right to the discovery requested. Under Federal Rule of Civil Procedure 26(b)(1),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Evidence 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," if "the fact is of consequence in determining the action." The parties do not appear to dispute that the definition of relevance found in Rule of Evidence 401 is also the definition that applies under Rule of Civil Procedure 26(b)(1), albeit with the caveat that information discoverable under Rule 26(b)(1) need not be "evidence" in the sense of being admissible as such.

Amalgamated does not dispute that CoreCivic has a right to compel discovery "seeking the identity of witnesses with substantive information about the case." (Docket No. 103 at 7 n.6.) To the contrary, Amalgamated concedes that, "[w]ere defendants to make such a request, plaintiff could be required to identify the witnesses (including FE1) believed to have knowledge of the facts alleged." (*Id.*) Amalgamated argues only that it has no obligation to reveal which

4

former CoreCivic employee is FE1. *Cf. In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 (WHP), 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011) ("While the identities of witnesses with relevant information are discoverable, Defendants are not automatically entitled to know which of those witnesses Plaintiffs consider important.") (citing *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MD 0169, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007); *In re MTI Tech. Corp. Sec. Litig. II*, No. SACV 00-745 DOC, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002)). It is entirely possible, then, for Amalgamated to fully disclose the identities of all potential witnesses without answering Interrogatory 8. This court, therefore, disagrees with those courts that have assumed that, merely because a confidential informant would have relevant evidence, then his or her identity *as a confidential informant* is necessarily relevant as well. *E.g.*, *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959-CAB (BLM), 2017 WL 3118738, at *5 (S.D. Cal. July 21, 2017), *objections overruled*, No. 3:10-CV-1959-CAB-BLM, 2017 WL 3587961 (S.D. Cal. Aug. 21, 2017).

It is easy to understand why CoreCivic would be interested in knowing the identity of FE1. One of its former employees appears to have participated in the development of a lawsuit that not only threatens CoreCivic with significant damages, but expressly impugns the honesty and credibility of CoreCivic executives. FE1 may be someone with whom CoreCivic's executives were familiar and whom they trusted, and he or she may even be someone who continues to work in the corrections field. Ultimately, it would be surprising if CoreCivic and its executives *did not* want to know who FE1 is.

Understandable curiosity, however, is not the standard for discoverability under Rule 26(b)(1).[1] Before any other factors come into play, a party seeking discovery must establish that

---

[1] Indeed, some of the reasons that a defendant might be curious about the identity of a whistleblower are also reasons why disclosing the whistleblower's identity would be inadvisable. *See In re Cigna Corp. Sec.*

the information sought is "relevant," as that term is understood under the Rules. "Relevant," moreover, does not refer to some general, colloquial relevance to the litigation as a whole. As explained by Rule 401, the relevance that matters in a litigation setting is relevance to the disposition of the action. CoreCivic, however, has struggled to articulate why FE1's identity would be relevant to any contested issue underlying Amalgamated's claims themselves. Instead, CoreCivic keeps harkening back to the disposition of its Motion to Dismiss and the court's citations to FE1's allegations in its Memorandum supporting its ruling.

The kind of *post hoc* investigation into the sourcing of a complaint's allegations that CoreCivic envisions, however, is untethered to any mechanism, under the Federal Rules of Civil Procedure, for resolving the case. CoreCivic's Rule 12(b)(6) motion was properly addressed to the allegations of the Amended Complaint on its face; even under the demanding pleading standards of the PSLRA, *see* 15 U.S.C. § 78u-4(b), investigation into the identity and credibility of FE1 would have been beside the point. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."). If, in the future, CoreCivic wishes to seek a judgment in its favor based on the evidence, it can file a motion for summary judgment under Rule 56, which the court will consider in light of the parties' statements of undisputed material facts and responses—not by going back to re-litigate the motion to dismiss. *See* Local R. 56.01(b)–(d). Finally, if the case is not resolved on summary judgment, the claims will

---

*Litig.*, No. CIV.A. 02-8088, 2006 WL 263631, at *1 (E.D. Pa. Jan. 31, 2006) (denying motion to disclose identity of confidential informants in PSLRA case in light of, *inter alia*, "fear of . . . retribution"); *In re MTI Tech. Corp. Sec. Litig. II,* No. SACV 00-0745 DOC, 2002 WL 32344347, at *5 (C.D. Cal. June 13, 2002) ("[T]here are important public policy concerns implicated by disclosure of former employees acting as informants. . . . [F]ormer employees acting as informers could face serious consequences if their identities were revealed by plaintiff's counsel.").

proceed to trial, where what will matter will be the evidence actually presented, not the bare allegations of the Amended Complaint. *Cf. In re MTI*, 2002 WL 32344347, at *5 (concluding that plaintiffs had not waived protection of identities of confidential informants who assisted in complaint because "[t]he fact-finder in this case will not be invited to rely upon the work product information" sought). Regardless of how understandable CoreCivic's desire to re-fight the last war may be, the Rules of Civil Procedure envision that a case will progress and the parties will move on to more concrete concerns.[2]

CoreCivic's claim to be entitled to know FE1's identity might have more persuasive weight if FE1 had alleged some uniquely personal detail, such that the fact alleged and the identity of the person revealing it were inextricable from each other. The information for which Amalgamated relied on FE1, however, was entirely mundane and should easily be addressable by the parties in discovery without diving into the details of FE1's personal experience. Although FE1 offered a number of contextual details, the core of FE1's information was that certain reports and information were distributed, within CoreCivic, to senior executives. Because these actions were wholly internal, there was a need for Amalgamated to rely on an inside source. The facts themselves, however, are hardly arcane or salacious. Indeed, CoreCivic itself spent the Class Period routinely boasting about how well its management handled quality assurance issues—which presumably would have required them to receive at least some

---

[2] As Amalgamated notes, the Rule that comes closest to addressing the issues that CoreCivic apparently envisions is Rule 11, which might provide for sanctions if counsel for Amalgamated included FE1's allegations with knowledge that those allegations were baseless. *See also* 15 U.S.C. § 78u-4(c)(1) ("In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion."). No such motion, however, has been filed, nor has CoreCivic identified any basis for believing that one would be appropriate at this juncture. Unless there is some reason to think that Amalgamated's Rule 11 compliance is suspect, the court sees no reason to allow discovery on the matter in the simple hope that a violation will emerge.

7

information about what those issues were. FE1 added some meat to the bones of those claims, but the same could have been done by any employee who dealt with quality assurance at CoreCivic. *Cf. In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 389 (S.D. Cal. 2002) (denying motion to compel identification of confidential witnesses who assisted in drafting complaint in part because the information could be obtained from the defendant's own "former or current employees" and, therefore, the "investigative efforts would not be cost prohibitive"). That one of those employees assisted Amalgamated and others is of little importance to any actually contested issue in the case.

This is not a case where, as in some others in which courts found confidential informants' identities to be discoverable, Amalgamated "buil[t] [its] complaint on a foundation of statements from the" confidential witness. *In re Amgen Inc. Sec. Litig.*, No. CV-07-2536-PSG (PLAx), 2013 WL 12139088, at *2 (C.D. Cal. Dec. 2, 2013) (quoting *Miller v. Ventro Corp.*, No. C01-01287 SBA (EDL), 2004 WL 868202 (N.D. Cal. Apr. 21, 2004)). In such a case, responding to the allegations and responding to the confidential informant might be, essentially, one and the same, and the confidential informant's identity might indeed be relevant. Amalgamated's Amended Complaint, however, was built on a foundation much broader and deeper than the statements from FE1. Amalgamated assembled a detailed case based on an exhaustive review of the dealings between CoreCivic and the BOP, the numerous alleged deficiencies at BOP facilities, and the long history of the BOP's communicating its displeasure with those deficiencies to CoreCivic. Amalgamated turned to FE1 merely to bolster one particular supportive detail—the fact that information about the BOP's complaints regarding the facilities' deficiencies was communicated to senior executives. Now that the parties have moved into discovery, however, that issue can be addressed by looking to any number of other sources, from the executives

8

themselves—who can confirm or deny that they received the information—to any paper trail of the relevant communications. This is not a case where, if the defendant is denied the identity of a confidential informant, it will be forced into a "costly process of elimination" in order to track down the relevant information. *Schueneman*, 2017 WL 3118738, at *6. There is no reason to think CoreCivic will have any difficulty in ascertaining what information its own executives received or did not receive. The question of who initially helped fill in the picture for Amalgamated is beside the point.

Moreover, even if FE1's identity were somehow relevant to the disposition of Amalgamated's claims, it would be protected by the work-product doctrine, which generally protects materials compiled in the course of litigation. *See* Fed. R. Civ. P 26(b)(3); *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp. (In re Columbia/HCA Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 304 (6th Cir. 2002). "Proper preparation of a client's case demands that [a lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). In order to do so, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id*. at 510. "At its heart, the work product privilege provides space for an attorney to think, strategize, and recommend without fear that the essential parts of his or her thought processes will be laid bare for opposing counsel." *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-0819, 2008 WL 821059, at *2 (S.D. Ohio Mar. 24, 2008).

"Drafting a pleading—deciding exactly what to allege and how to allege it—is a quintessential function of a litigating attorney." *Id.* In the preparation of its Amended Complaint,

Amalgamated assembled a wide array of information about CoreCivic, its internal practices, its business model, and its public statements. In so doing, counsel for Amalgamated presumably made innumerable decisions about what information to include and how to convey that information so as to best serve the interests of its client while maintaining the basic ethical obligation of candor that every attorney owes the court. One of those many decisions was to reveal that some of the information in the Amended Complaint came from one particular former CoreCivic employee—but not reveal that employee's identity. If Amalgamated is forced to divulge the identity of FE1, then CoreCivic will know that Amalgamated elected not to rely on other employees and will know that Amalgamated decided, based on its professional judgment, that something about FE1's current wishes and/or circumstances warranted anonymizing him or her. It would be impossible, therefore, to force Amalgamated to reveal FE1's identity now without providing at least some window into the decision-making process of Amalgamated's counsel in drafting the Amended Complaint.

CoreCivic responds by suggesting that disclosure of FE1's identity would not reveal anything meaningful about Amalgamated's litigation strategy and, therefore, would not amount to an intrusion onto work product. CoreCivic's own briefing, however, contradicts any such argument. By CoreCivic's own admission, Interrogatory 8 is not focused on identifying the universe of witnesses that might have relevant information, but "[r]equiring [Amalgamated] to identify the name[] of an individual whose statements *it found important*." (Docket No. 97 at 5 (emphasis added).) Counsel's assessment of what is important is precisely the type of value judgment that the work-product doctrine is designed to protect. *See* Fed. R. Civ. P. 26(b)(3)(B) (requiring the court to "protect against disclosure of the mental impressions, conclusions, [or] opinions . . . of a party's attorney or other representative concerning the litigation"). At some

point, Amalgamated's counsel made a judgment that one former CoreCivic employee was particularly suited as a source in a proceeding against his or her former employer. Presumably, there are multiple former CoreCivic employees who theoretically could have fit the bill; otherwise, there would be no need for the present motion. Amalgamated's selection of which employee would guide it through CoreCivic's internal quality assurance practices, then, was an instance of professional judgment sufficient to give rise to work-product protection, as was its decision that the costs and/or risks associated with revealing FE1's identity outweighed any benefits.

CoreCivic argues next that, even if FE1's identity was, at one point, protected by the work-product doctrine, Amalgamated has waived any such protection by "showcasing" FE1 in its Amended Complaint in order to "satisfy the pleading requirements of the PSLRA." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 341 (S.D.N.Y. 2011) (quoting *Ross*, 2008 WL 821059, at *3). As CoreCivic has repeatedly pointed out, the PSLRA, among other things, "imposes '[e]xacting . . . requirements for pleading scienter.'" *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 469 (6th Cir. 2011) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). The plaintiff must, "with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Scienter can be difficult to establish in any setting—even after discovery or at trial—but it is especially challenging for the drafter of a complaint, who, unless he is a whistleblower himself, has likely had no access to the kinds of internal communications or deliberations in which scienter would manifest itself. CoreCivic is, therefore, probably correct that the PSLRA's heightened pleading requirements are why Amalgamated felt the need to divulge the existence of FE1 in the first

11

place. After all, in an ordinary, non-PSLRA complaint, Amalgamated could have simply alleged the facts that FE1 provided without any explanation of where they were from and likely would have met the requirements of Rule 8 and even Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally*." (emphasis added)). Only the PSLRA made any mention of FE1 necessary.

If anything, though, the fact that the pleading requirements of the PSLRA are what occasioned this conflict weighs against a finding of waiver. When Congress enacted the PSLRA, it could have imposed both heightened pleading requirements and heightened disclosure obligations, but it did not. To the contrary, nothing about the text of the PSLRA suggests any intent to "alter the traditional discovery dynamics in th[e] adversary system." *In re MTI,* 2002 WL 32344347, at *5. CoreCivic's waiver argument, however, would give a PSLRA defendant a right to discover information that an ordinary defendant could not, because a PSLRA plaintiff would, in order to meet the statute's pleading requirements, be forced into waivers he could otherwise avoid. CoreCivic, in other words, seeks to take its already extraordinarily favorable pleading standard and parlay that advantage into an extratextual right to greater discovery. Neither the PSLRA, the Rules of Civil Procedure, nor traditional notions of work-product protection support such a rule.

CoreCivic's motion, therefore, is **DENIED**.

It is so **ORDERED**.

ENTER this 31st day of July 2018.

_____
ALETA A. TRAUGER
United States District Judge