# TAB 3

2016 WL 8290089
Only the Westlaw citation is currently available.
United States District Court,
W.D. Tennessee, Western Division.

IN RE: REGIONS MORGAN KEEGAN
SECURITIES, DERIVATIVE,
AND ERISA LITIGATION
In re: Regions Morgan Keegan
Open-End Mutual Fund Litigation

No. 07-2784
|
Signed 08/02/2016

### FINAL APPROVAL ORDER and ORDER APPROVING MOTION FOR ATTORNEY'S FEES AND EXPENSES

SAMUEL H. MAYS, JR., UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are the April 22, 2016 Motion for Final Approval of the Class Settlement, Certification of the Class, and Approval of Plan of Allocation (the "Motion") submitted by the Estate of Kathryn S. Cashdollar ("Cashdollar"); Dajalis Ltd. ("Dajalis"); Jeanette H. Landers ("J. Landers"); H. Austin Landers ("H. Landers"); and Frank D. Tutor ("Tutor") (collectively, "Lead Plaintiffs") and the April 22, 2016 Motion for Attorney's Fees and Expenses (the "Motion for Attorney's Fees") submitted by Lead Plaintiffs and by H. Landers; J. Landers; the Estates of Charles M. Crump and Diana W. Crump ("Estate of Crump"); James H. Frazier ("Frazier"); James P. Whitaker ("J. Whitaker"); and Peggy C. Whitaker ("P. Whitaker") (collectively, "Derivative Plaintiffs").[1] (Motion, ECF No. 424; Motion for Attorney's Fees, ECF No. 425.)

[1] For purposes of this Order, the Court adopts all defined terms as set forth in the Class Settlement Agreement unless otherwise defined in this Order.

Defendants do not oppose the Motion or the Motion for Attorney's Fees.[2] (Motion, ECF No. 424 at 3; Motion for Attorney's Fees, ECF No. 425 at 3.) The Open-End Funds' Board of Directors approved the attorney's fees and expenses to be paid from the Derivative Settlement. (Tyras Decl., ECF No. 425-9.) No objections have been filed to either motion.

[2] Defendants in this action are PricewaterhouseCoopers LLP ("PwC"); Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc., and MK Holding, Inc. (collectively, the "Morgan Keegan Defendants"); Regions Financial Corporation ("RFC"); Regions Bank ("RB"); Regions Morgan Keegan Select Short Term Bond Fund ("STF"), Regions Morgan Keegan Select Intermediate Bond Fund ("IBF"), and Regions Morgan Keegan Select High Income Fund ("HIF") (collectively, the "Open-End Funds"); Carter E. Anthony, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, G. Douglas Edwards, Charles D. Maxwell, David M. George, Michelle F. Wood, James C. Kelsoe, Jr., David H. Tannehill, and Thomas R. Gamble (collectively, the "Officer Defendants"); and Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis III (collectively, the "Director Defendants") (collectively, "Defendants"). The Open-End Funds have been renamed as the Helios Select Short Term Bond Fund, the Helios Select Intermediate Bond Fund, and Helios Select High Income Fund. (Proposed Order at n.1.)

For the following reasons, the Motion and the Motion for Attorney's Fees are GRANTED.

### I. Background

This litigation arose from the 2007-2008 collapse of the Open-End Funds. (Vander Weide Decl., ECF No. 424-2 at ¶ 14.) Plaintiffs allege that the Open-End Funds collapsed because of mismanagement and investment in risky securities when compared to respective peer bonds. (Id. at ¶¶ 14-16.) Plaintiffs allege that Defendants misled investors about the degree of investment risk. (Id.) Plaintiffs allege that PwC failed to audit the Funds properly. (Id. at ¶ 17.) The litigation also relates to Landers, et al. v. Morgan Asset Management, Inc., et al., No. 2:08-cv-02260, a derivative action brought by the shareholders of the Open-End Funds. The settlement of the derivative action is addressed in a separate order.

**\*2** Since 2013, the Lead Plaintiffs and the Derivative Plaintiffs, in consultation with the defendants in both

actions, have engaged in negotiations led by a mediator, United States District Court Judge Layn Phillips (Ret.). (Id. at ¶¶ 33-43.) After the total settlement amount of $125 million was determined in consultation with Judge Phillips, the amount to be allocated to the Open-End Funds in the Derivative Settlement was negotiated separately and approved by the Open-End Funds' board of directors. (Id. at ¶¶ 40-42.) The result of those negotiations is the Class Settlement Agreement currently before the Court.[3] (Class Settlement Agreement, ECF No. 415-1.)

[3]   A correction to the signature block of the Class Settlement Agreement was submitted on January 28, 2015. (Correction, ECF No. 416.)

The proposed settlement class (the "Class") consists of all Persons who (1) purchased any class of redeemable shares of STF, IBF, or HIF at any time during the period from December 6, 2004, through December 6, 2007, inclusive; or (2) held and/or redeemed on or after July 3, 2006, through the end of the Settlement Class Period (December 6, 2004, through May 29, 2009) shares of STF, IBF, or HIF and were damaged thereby, subject to the exclusions listed in the Class Settlement Agreement. (Id.)

The settlement agreements provide for the payment of $125 million for the benefit of the Class and the Open-End Funds. (Vander Weide Decl., ECF No. 424-2 at ¶ at 3.) Of the $125 million, $110 million will be allocated to a Class Settlement Fund. (Id.) The Class Settlement Fund will first be used to pay attorneys' fees and expenses awarded by the Court, notice and administration expenses, and taxes and related expenses. (Class Settlement Agreement, ECF No. 415-1.) The remaining amount will be distributed among all Class Members who submit timely and valid Proofs of Claim accepted by the Claims Administrator and approved by the Court in accordance with the Plan of Allocation. (Id.)

The remaining $15 million in the escrow account will be allocated to the Funds Settlement Fund for the benefit of the Open-End Funds and will be paid to the Open-End Funds Shareholders as part of the Derivative Settlement Agreement. (Id.) Any share of the Class Settlement Fund paid to Class members who are also Open-End Funds Shareholders will be reduced by their share of the Funds Settlement Fund distribution. (Id.)

On November 30, 2015, the Court granted Preliminary Settlement Approval. (Order, ECF No. 420.) On March 1, 2016, the Court extended the Notice Date to March 21, 2016. (Order, ECF No. 422.) On May 27, 2016, the Court held a Final Approval Hearing. The parties sought to extend the objection and opt out date for certain class members to July 18, 2016, and extend the deadline to return Claim Forms for those class members to October 19, 2016. The Court granted the extensions and continued the Final Approval Hearing to August 1, 2016. (Order, ECF No. 431.)

On August 1, 2016, the Court held a Final Approval Hearing. The Lead Plaintiffs, Derivative Plaintiffs, and Defendants in the Class Action and Derivative Action were represented. (Minutes, ECF No. 434.)

Based on its independent assessment of the record and the information presented by the parties, the Court makes the following findings and reaches the following conclusions.

## II. Standard of Review

### A. Settlement Approval

Class settlement approval is committed to the district court's discretion. UAW v. Gen. Motors Corp., 497 F.3d 615, 625 (6th Cir. 2007). To approve a class settlement, the court must conclude that it is "fair, reasonable, and adequate." Id. at 631; Fed. R. Civ. P. 23(e)(1). A number of factors guide that inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. UAW v. Gen. Motors, 497 F.3d at 631. The court must also determine whether the settlement gives preferential treatment to the named plaintiffs. Vassalle v. Midland Funding LLC, 708 F.3d 747, 755 (6th Cir. 2013) (internal quotation marks and citations omitted). The same standard governs the approval of a plan of allocation of a class action settlement fund. In re Packaged Ice Antitrust Litigation, No. 08-MDL-01952, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011).

### B. Attorney's Fees and Expenses

**\*3** Under Rule 23(h), in a "certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When parties to a class action seek attorney's fees and costs, they must comply with the following:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).

Plaintiffs in shareholder derivative actions may recover their expenses and attorney's fees from the corporation on whose behalf their action is taken if the corporation derives a benefit from successful settlement of the case. Granada Inv., Inc. v. DWG Corp., 962 F.2d 1203, 1207–08 (6th Cir. 1992). Such an award must be reasonable. Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974).

In general, "there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 Fed.Appx. 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.' " Id. (quoting Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993)). The award of attorney's fees is within the court's discretion. Bowling v. Pfizer, Inc., 102 F.3d 777, 779-80 (6th Cir. 1996).

In determining whether attorney's fees are reasonable, district courts often address the "Ramey factors":

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Moulton v. U.S. Steel Corp., 581 F.3d 344, 351-52 (6th Cir. 2009) (internal quotation marks and citations omitted); Smillie v. Park Chemical Co., 710 F.2d 271, 275 (6th Cir. 1983) (applying Ramey factors to the fee award in a shareholder derivative action).

### III. Analysis

#### A. Settlement Approval

##### 1. The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. See, e.g., Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); In re Telectronics Pacing Sys., 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001).

There is no evidence of fraud or collusion. The record shows that the Class Settlement developed from vigorous, arm's length negotiations. Lead Plaintiffs took part in extensive negotiations led by a distinguished and experienced mediator, Judge Layn R. Phillips (Ret.). (Vander Weide Decl., ECF No. 425-2 at ¶¶ 33,39-43.) Judge Phillips used a "double blind" process to make recommendations to the parties to exclude any risk of fraud or collusion. (Phillips Decl., ECF No. 424-7 at ¶ 8.) He declares that the Class Settlement is "the product of vigorous and independent advocacy and arm's length negotiation conducted in good faith, with no collusion whatsoever." (Id. at ¶ 15.) Millions of pages of confidential

documents were exchanged. (Vander Weide Decl., ECF No. 425-2 at ¶ 34.) The parties discussed liability, factual allegations, causation, damages, and expert analyses. (Id. at ¶¶ 36-38.) The Class Settlement was developed after the parties had a thorough understanding of the merits of the claims and possible defenses. (Id. at ¶ 44.) Because there is no evidence of fraud or collusion, this factor weighs in favor of approving the Class Settlement and Plan of Allocation.

### 2. The Complexity, Expense, and Likely Duration of the Litigation

**\*4** In evaluating a proposed settlement, the court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal. UAW v. Gen. Motors, 497 F.3d at 631; Thacker v. Chesapeake Appalachia, L.L.C., 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010). "[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." In re Telectronics Pacing Sys., 137 F. Supp. 2d at 1013 (internal quotation marks omitted).

This litigation has been pending for almost nine years. (Vander Weide Decl., ECF No. 424-2 at ¶ 20.) The original complaint has been amended three times. (Id. at ¶ 55.) Defendants have filed multiple motions to dismiss, a motion to strike, and multiple motions for reconsideration. (Id.) Hundreds of exhibits have been submitted to support and oppose those motions. (Id.) Defendants continue to dispute the merits of Plaintiffs' claims. (Id. at ¶ 36.) PwC continues to defend its audits. (Id. at ¶ 37.) Judge Phillips declares that continued litigation would involve motions to dismiss, opposition to class certification, summary judgment motions, Daubert motions, a lengthy trial, and appeal. (Phillips Decl., ECF No. 424-7 at ¶ 11.) Continued litigation would be lengthy and complex. Including an auditor as a defendant adds complexity to the legal and factual issues. (Id. at ¶ 13.) Millions of documents were reviewed in negotiating the Class Settlement and continued litigation would require revisiting those documents. Some claims would be subject to a battle of experts. (Vander Weide Decl., ECF No. 424-2 at ¶¶ 36,38,54.)

The parties expect that the Class will receive approximately 33% of their estimated damages before the deduction of attorney's fees and expenses. (Vander Weide Decl., ECF No. 424-2 at ¶ 79.) At the Final Approval Hearing, Lead Counsel represented that it believes 33% represents the "floor recovery" and that the Class is likely to recover more than 33%. That compares favorably to settlements in comparable cases. (Id. at ¶¶ 76-77,79-81; Fitzpatrick Decl., ECF No. 425-7 at ¶ 18.) The recovery also compares favorably to other settlements with Defendants where similar claims have been alleged against them. (Vander Weide Decl., ECF No. 424-2 at ¶¶ 75,82-83.) The structure of the Class Settlement was designed to allow more recovery than standard securities settlements by calculating claims on a "holders/sellers basis, versus a purchasers basis". (Id. at ¶¶ 66-68.) Even if a different settlement were reached after continued litigation, the parties anticipate that recovery would, "at most, be only marginally greater than this Settlement." (Motion, ECF No. 424-1 at 17.) The parties expect that almost all of the Derivative Settlement will be distributed to the Class. (Id. at 13 (citing Vander Weide Decl., ECF No. 424-2 at ¶¶ 3-5,78.))

Given the likelihood of lengthy, continuing litigation, the cost of that litigation, and the Class Settlement's expedient provision of monetary relief, this factor weighs heavily in favor of approving the Class Settlement and Plan of Allocation.

### 3. The Amount of Discovery Engaged in by the Parties

In evaluating a proposed class settlement, the court must consider the amount of discovery the parties have conducted. UAW v. Gen. Motors, 497 F.3d at 641. The parties' discovery must enable them to evaluate frankly the merits of the case and determine an appropriate settlement value. Discovery provides a level playing field for negotiations and ensures that the negotiations are informed rather than the product of uneducated guesswork. Olden v. Gardner, 294 Fed.Appx. 210, 218 (6th Cir. 2008). The absence of expert opinions or formal discovery suggests that class counsel might not have obtained the best agreement possible for the plaintiff class. Id.

**\*5** The parties have engaged in extensive discovery. Millions of pages of confidential information were exchanged. (Vander Weide Decl., ECF No. 424-2 at ¶ 34.) Lead Plaintiffs offered Defendants hundreds of

exhibits supporting their allegations and analyses they had conducted of damages and comparing the strength of their claims to other cases against Defendants. (Id. at ¶ 38.) Lead Plaintiffs had read millions of pages of discovery before settlement negotiations. (Id. at ¶ 54.) Judge Phillips declares that the parties performed a thorough examination of the underlying facts with the aids of experts and used experienced attorneys to determine the merits of the claims. (Phillips Decl., ECF No. 424-7 at ¶ 7.)

There is no evidence to suggest that the settlement negotiations were uninformed or the product of uneducated guesswork. The parties engaged in aggressive fact discovery before and after settlement negotiations. This factor weighs in favor of approving the Class Settlement and Plan of Allocation.

### 4. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011). "The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." Id. A plaintiff's likelihood of success should be weighed against the amount and form of relief offered in the settlement. UAW v. Gen. Motors, 497 F.3d at 631 (internal quotation marks and citation omitted).

"Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions, [the court] cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." Id. "[The court's] task is not to decide whether one side is right or even whether one side has the better of these arguments." Id. at 632. "Otherwise, [the court] would be compelled to defeat the purpose of a settlement in order to approve a settlement." Id. "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." Id.

Defendants have raised many defenses to Plaintiffs' allegations. (Vander Weide Decl., ECF No. 424-2 at ¶ 36.) PwC "vigorously" defends its audits. (Id. at ¶ 37.) Lead Plaintiffs have said that, although they are confident in the merits of their claims, Defendants have raised defenses to liability that make success at trial uncertain. (Motion, ECF No. 424-1 at 21-22.) New case law has also affected the strategies on which the parties must rely in continued litigation. (Id. at 23 (citing Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135 (2011)).) The factual and legal issues are complex and would be difficult to litigate. (Phillips Decl., ECF No. 424-7 at ¶¶ 12-13.)

The Court must weigh the likelihood of success on the merits against the amount and form of recovery. The Class Settlement guarantees Class Members an expedient payment. The amount of recovery the Class would receive at trial is uncertain, especially given the hurdle that Lead Plaintiffs would face in proving loss causation. Defendants have argued that Lead Plaintiffs could not show their losses were caused by mismanagement of the Open-End Funds and not by the market decline. (Motion, ECF No. 424-1 at 20-21.) Proving loss causation in securities cases often involves a battle of experts. In re Global Crossing Securities & ERISA Litigation, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (collecting cases). It is uncertain that a jury would award damages exceeding the amount the Class will receive from the Class Settlement. The Plan of Allocation provides that each Class Member will receive a pro rata share of his or her losses.

*6 The Class Settlement offers immediate recovery. The amount that each Class Member will receive is fair, reasonable, and adequate given the legitimate factual and legal disputes that would arise during litigation. This factor weighs in favor of approval.

### 5. The Opinions of Class Counsel and Class Representatives

In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. See, e.g., Thacker, 695 F. Supp. 2d at 532-33; UAW v. Ford Motor Co., No. 07-CV-14845, 2008 WL 4104329 at *26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); Stewart v. Rubin, 948 F. Supp. 1077, 1087 (D.D.C. 1996) (the trial court "should defer to the

judgment of experienced counsel who have competently evaluated the strength of the proof"").

Class Counsel are Lockridge Grindal Nauen P.L.L.P. (""Lockridge""), Apperson Crump PLC (""Apperson Crump""), and Zimmerman Reed LLP (""Zimmerman Reed""). Class Counsel and Lead Plaintiffs have concluded that the Class Settlement is fair, adequate, and reasonable in light of the risks and costs of continued litigation. (Motion, ECF No. 424-1 at 23.)

Class Counsel and Lead Plaintiffs are generally experienced and are familiar with this case. Their opinion is entitled to deference. Class Counsel have extensive experience in complex class action litigation. Class Counsel have been involved in the case since its filing in 2007 and helped draft complaints on Plaintiffs' behalf. (Compl., ECF No. 1; Am. Compl., ECF No. 53; CACAC, ECF No. 218; SCACAC, ECF No. 395.) Judge Phillips declares that counsel thoroughly examined and analyzed all facts with the help of experts and are "extremely qualified". (Phillips Decl., ECF No. 424-7 at ¶¶ 7,9,15.) Lead Plaintiffs participated in settlement negotiations and agreed to the settlement after "careful investigation and evaluation of the facts and law relating to the allegations in the Complaint, and consideration of the facts noted and views expressed by Judge Phillips and Defendants during the mediation process." (Motion, ECF No. 424-1 at 23-24.)

Given their experience in other cases and intimate knowledge of the legal and factual issues in this case, Class Counsel and Lead Plaintiffs' recommendation is entitled to deference. Given their endorsement, this factor weighs in favor of approving the Class Settlement and Plan of Allocation.

### 6. The Reaction of Absent Class Members

An "overwhelming positive class response highlights the fairness of the settlement[ ] to unnamed class members and weighs heavily in favor of approval of the settlement[ ]." In re Southeastern Milk Antitrust Litig., No. 2:07-cv-208, 2012 WL 2236692 at *4, (E.D. Tenn. June 15, 2015); Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("[T]he Court considers the fact that not one class member objected to the settlement agreement to be most persuasive.")

Garden City Group sent over 41,000 claim packets to potential Class Members and Open-End Funds Shareholders. (Fraga Decl., ECF No. 433-1 at 2.) All Shareholders are also members of the Class. No Class Member has objected to the Derivative Settlement or the Class Settlement. Only seven Class members have excluded themselves from the Class. (Revised Proposed Order.) This factor weighs strongly in favor of approval.

### 7. The Public Interest

**\*7** The law favors the settlement of class action litigation. See UAW v. Gen. Motors, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions").

The resolution of this litigation will, among other things, (1) provide timely payment to thousands of Class Members, (2) increase the certainty of those payments without more delay, (3) obviate the need for years of litigation, (4) ensure each Class Member receives a pro rata share of the payment in accordance with his or her recognized loss, and (5) conclude a significant part of a multidistrict litigation that has continued for almost nine years. In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.") (internal quotation marks omitted).

Because the Class Settlement provides the Class with expedient payment and increases the certainty of that payment without further delay, this factor weighs in favor of approving the Class Settlement and Plan of Allocation.

### 8. Lead Plaintiffs' Relief Compared to Unnamed Class Members' Relief

There is no evidence that Lead Plaintiffs will receive payment not available to the rest of the Class. Because the Plan of Allocation provides the same relief for Class Members who are not named, this factor weighs in favor of approval.

For the foregoing reasons, the Class Settlement and Plan of Allocation warrant final approval.

### B. Attorney's Fees and Expenses

The submitted request complies with the requirements of Fed. R. Civ. P. 23(h). (Motion for Attorney's Fees, ECF No. 425.) No objections have been raised to the requested fees.

A court has discretion to choose between the lodestar method and the percentage-of-the-fund method when awarding attorney's fees. Van Horn, 436 Fed.Appx. at 498. "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516. The court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.' " Id. (quoting Moulton, 581 F.3d at 352). In the Sixth Circuit, a district court may base its fee award on a percentage of the common fund and cross-check the fee against the Lodestar. Bowling, 102 F.3d at 779-80; In re Southeastern Milk Antitrust Litig., 2013 WL 2155387, at *2 (noting that the trend in the Sixth Circuit is toward use of the percentage of the fund method). The lodestar is the product of "the number of hours reasonably expended on the litigation [and] a reasonable hourly rate." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). Lodestar multipliers may be applied to account for the risk that counsel assumes in undertaking a case, the quality of the work product, and the public benefit achieved. Rawlings, 9 F.3d at 516. Lodestar multipliers in securities class actions generally range from 1.3 to 4.5. In re Cardinal Health Inc. Securities Litigations, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007).

**\*8** Lockridge, Apperson Crump, and Zimmerman Reed are Class and Derivative Counsel. (Motion for Attorney's Fees, ECF No. 425 at 2.) They seek $37,500,000, which is 30% of the Settlement Amount. (Id.) The Open-End Funds' board of directors approved a 30% fee to be paid out of the Open-End Funds' $15 million share of the Settlement Amount. (Tyras Decl., ECF No. 181-9 at ¶ 11.) The fee is reasonable on its face given the benefit of the settlements to the Class and Open-End Funds Shareholders. District courts in the Sixth Circuit have often approved thirty percent fees. Griffin v. Flagstar Bancorp, Inc., 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013); Swigart v. Fifth Third Bank, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014); In re Skelaxin, 2014 WL 2946459, at *1-3 (E.D. Tenn. June 30, 2014); Milk Antitrust, 2013 WL 2155387, at *3; Bowers v. Windstream Kentucky East, LLC, No. 09-440, 2013 WL 5934019, at *5 (W.D. Ky. Nov. 1, 2013); Thacker, 695 F. Supp. 2d at 528; In re Cincinnati Gas & Electric Company Security Litigation, 643 F. Supp. 148, 150 (S.D. Ohio 986). Professor Brian Fitzpatrick ("Fitzpatrick") of Vanderbilt University, who specializes in the research of complex litigation, has declared that the fees requested are within the range of reasonable fees awarded in comparable actions. (Fitzpatrick Decl., ECF No. 425-7.)

A 30% fee is reasonable given Class and Derivative Counsel's Lodestar. Lead Counsel submitted timesheets demonstrating 73,790.04 attorney and professional hours devoted to the prosecution of the cases. (Lockridge Decl., ECF No. 425-8.) The hours and rates are reasonable given the length and complexity of the cases. The resulting Lodestar is $39,595,559. (Id.) That yields a Lodestar multiplier of .947, which is below the range generally approved in securities cases. In re Cardinal Health Inc. Securities Litigations, 528 F. Supp. 2d at 767; (Fitzpatrick Decl., ECF No. 425-7 at ¶¶ 21-22.) Fitzpatrick opines that, according to comparable cases' Lodestars, the fee request is "incredibly modest". (Fitzpatrick Decl., ECF No. 425-7 at ¶ 22.)

The Ramey factors also support approval of a 30% fee. In their Motion for Attorney's Fees, Lead and Derivative Counsel address each of the Ramey factors. (Motion for Attorney's Fees, ECF No. 425-1 at 11-18.) They conclude correctly that all six factors favor approving the fee. The cases were taken on a contingency basis. They were some of the first cases arising out of the 2007-2008 financial crises. The Class Settlement and Derivative Settlement offer expedient recovery whereas continued litigation would be complex and take years to complete. All counsel involved in the settlement process are highly qualified and negotiated in good faith. (Phillips Decl., ECF No. 424-7.) For the foregoing reasons, as well as for the reasons set forth in the Motion for Attorney's Fees, the $37,500,000 fee is reasonable.

Class and Derivative Counsel seek payment of expenses totaling $792,560.50. (Motion for Attorney's Fees, ECF No. 425-1 at 19.) No objections have been raised.

Expenses are reasonable if they are the type routinely billed by attorneys to paying clients in similar cases. In re Cardizem, 218 F.R.D. at 535. The expenses on the itemized Expense Reports are those typically billed by attorneys to paying clients, such as research costs, expert fees, mediation fees, and administrative costs. (Lockridge Decl., ECF No. 425-8 at 7,14,24,29.) The requested expenses are reasonable.

**IV. Conclusion**

For the foregoing reasons, the Motion and the Motion for Attorney's Fees are GRANTED. The Court FINDS, CONCLUDES, and ORDERS that:

1. This Order incorporates the Class Settlement Agreement, including the Exhibits.

2. The Court has jurisdiction over the subject matter of the Class Action Lawsuit and over all parties to the Class Action Lawsuit, including all Class Members who did not timely file a valid request for exclusion from the Class by the May 6, 2016 deadline, or the July 18, 2016 deadline, pursuant to the November 30, 2015 Preliminary Approval Order (the "Class Preliminary Approval Order") and the May 27, 2016 Order Extending Deadline for certain plaintiffs (the "Order Extending Deadline").

\*9 3. The following Class, provisionally certified on November 30, 2015, is CERTIFIED for final settlement purposes only under Fed. R. Civ. P. 23:

> All persons who (1) purchased any class of redeemable shares of STF, IBF, or HIF at any time during the period from December 6, 2004, through December 6, 2007, inclusive; or (2) held and/or redeemed on or after July 3, 2006, through the end of the Settlement Class Period (December 6, 2004, through May 29, 2009) shares of STF, IBF, or HIF and were damaged thereby, subject to the exclusions listed in the Class Settlement Agreement.

4. The record shows that Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Notice: (i) constitutes reasonable notice and the best notice practicable, under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise all Class Members who could reasonably be identified of the pendency of the Class Action, the terms of the Class Settlement, and the Class Members' right to object to or exclude themselves from the class and to appear at the Final Approval Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process, Federal Rule 23, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-l(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, and other applicable law.

5. The appropriate officials have been served with the notice set forth in 15 U.S.C. § 1715(b) and were served at least ninety (90) days before the entry of this Order.

6. The only individuals or entities that have timely and validly excluded themselves from the class are Caudill Family Revoc. TR U/A/ 9/10/03; Ceil Walker Norris, Co-Trustee of Vernon Deloss Marital TR2; Ceil Walker Norris, Trustee O/T Ceil Walker Revoc. Tr.; Ceil Walker Norris, Walker & Assoc. Inc.; Ceil Walker Norris, Trustee of the Vernon D. Walker TRFOR Cecilia Vernon D. Walker TTEE Cecilia Agency Acct.; Ceil Walker Norris, TTEE Vernon D. Walker TUA Deloss Agency Acct.; and Ceil T. Walker Rollover IRA (Revised Proposed Order). This Order shall have no force or effect on those individuals or entities.

7. In light of the benefits to the Class, the complexity, expense, and possible duration of further litigation against Defendants, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the Class Settlement, pursuant to Federal Rule 23, as set forth in the Class Settlement Agreement in all respects, and finds that the Class Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of Plaintiffs, the Class, and each of the Class Members. The Court finds the Class Settlement set forth in the Class Settlement Agreement is the result of arm's length negotiations between experienced counsel representing the interests of the Class and Defendants.

\*10 8. The Plan of Allocation is approved as fair and reasonable.

9. The Parties are directed to implement and consummate the Class Settlement according to the terms and provisions of the Class Settlement Agreement. The

Parties are authorized to agree to and adopt such amendments and modifications to the Class Settlement Agreement, or any Exhibits attached thereto, to effectuate the Class Settlement if they (i) are consistent in all material respects with this Order, and (ii) do not limit the rights of the Class in connection with the Class Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Class Settlement Agreement.

10. Except as to any individual claim of those Persons or entities that have been excluded from the Class (identified in Paragraph 6 of this Order), the Class Action Lawsuit and all claims asserted therein are dismissed with prejudice as to the Plaintiffs and the other Class Members, and as to each and all of the Defendants. The Parties are to bear their own costs, except as otherwise provided in the Class Settlement Agreement.

11. The Court finds, after review of the record of this Class Action Lawsuit, including the Second Consolidated Class Action Complaint and the dispositive motions, that during the course of the Class Action Lawsuit, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, and in particular with Rule 11(b).

12. On the Effective Date of the Class Settlement (as defined in Paragraph 38 of the Class Settlement Agreement), the Settlement Class (as defined in Paragraph 1(d) of the Class Settlement Agreement, other than those Persons or entities listed in Paragraph 6 of this Order that have timely and validly requested exclusion from the Class), shall be deemed to have, and by operation of the Order shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (as defined in Paragraph 1(qq) of the Class Settlement Agreement) to the full extent set forth in the Class Settlement Agreement, including Unknown Claims (as defined in Paragraph 1(ddd) of the Class Settlement Agreement), as against the Released Defendant Parties (as defined in Paragraph 1(rr) of the Class Settlement Agreement).

13. On the Effective Date of the Class Settlement (as defined in Paragraph 38 of the Class Settlement Agreement), Defendants, on behalf of themselves, and their heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have, and by operation of this Order shall have, fully, finally, and forever released, relinquished, and discharged the Released Plaintiff Parties (as defined in Paragraph 1(uu) of the Class Settlement Agreement) from all claims related to the commencement, continuation, or prosecution of Released Defendants' Claims (as defined in Paragraph 1(ss) of the Class Settlement Agreement), as set forth in the Class Settlement Agreement.

14. On the Effective Date of the Class Settlement (as defined in Paragraph 38 of the Class Settlement Agreement), all Class Members, either directly, representatively, or in any other capacity (other than those Persons or entities listed in Paragraph 6 of this Order that have timely and validly requested exclusion from the Class), are hereby permanently enjoined from commencing, continuing, or prosecuting against any or all Released Defendant Parties (as defined in Paragraph 1(rr) of the Class Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the Released Claims (as defined in Paragraph 1(qq) of the Class Settlement Agreement). On the Effective Date, and without any further action, the Lead Plaintiffs shall not knowingly and voluntarily assist in any way any third party in commencing or prosecuting any suit against the Released Defendant Parties relating to any Released Claim, including any derivative suit not otherwise released.

*11 15. Each Class Member (other than those Persons or entities listed Paragraph 6 of this Order who have timely and validly requested exclusion from the Class), whether or not such Class Member executes and delivers a Proof of Claim form, is bound by this Order, including, without limitation, the release of claims as set forth in the Class Settlement Agreement and this Order.

16. Any plan for allocating the Net Class Settlement Fund (as defined in Paragraph 1(ee) of the Class Settlement Agreement) to eligible Class Members submitted by Class Counsel or any order regarding the Fee and Expense Application (as defined in Paragraph 13 of the Class Settlement Agreement), or any appeal modification or change thereof, shall in no way disturb or affect this Order approving the Class Settlement or any releases contained therein, and shall be considered separate from this Order.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 9

17. This Order, the Class Settlement Agreement and its terms, the negotiations leading up to the Class Settlement Agreement, the fact of the Class Settlement, and the proceedings taken pursuant to the Class Settlement, shall not: (1) be construed as an admission of liability or an admission of any claim or defense on the part of any party, in any respect; (2) form the basis for any claim of estoppel by any third party against any of the Released Defendant Parties; or (3) be admissible in any action, suit, proceeding, or investigation as evidence, or as an admission, of any wrongdoing or liability whatsoever by any of the Released Defendant Parties or as evidence of the truth of any of the claims or allegations contained in any complaint filed in the Class Action Lawsuit or deemed to be evidence of or an admission or concession that Lead Plaintiffs or any Class Members have suffered any damages, harm, or loss. Neither this Order, the Preliminary Approval Order, the Class Settlement Agreement, nor any of their terms and provisions, nor any of the negotiations or proceedings connected with them, nor any action taken to carry out this Order, the Preliminary Approval Order, or the Class Settlement Agreement by any of the Parties shall be offered into evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceeding, except: in a proceeding to enforce this Order, the Preliminary Approval Order, the Class Settlement Agreement, or to enforce any insurance rights; to defend against the assertion of Released Claims (including to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction); by Lead Counsel to demonstrate its adequacy to serve as class counsel pursuant to Federal Rule 23(g) (or its state law analogs); subject to the prohibited purposes identified in Paragraph 46 (a)-(e) of the Class Settlement Agreement and in Paragraph 17(1)-(3) of this Order; or as otherwise required by law.

18. Class and Derivative Counsel are hereby awarded attorney's fees in the amount of $37,500,000, which the Court finds to be fair and reasonable, and $792,560.50 in reimbursement of Class and Derivative Counsel's reasonable expenses incurred in prosecuting the Class Action and Derivative Lawsuits.

19. The attorney's fees and expenses so awarded, plus earnings thereon, shall be paid from the Qualified Settlement Fund pursuant to the terms of the Class and Derivative Settlement Agreements.

*12  20. Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Class Settlement Agreement, the Class Settlement, and of this Order, to protect and effectuate this Order, and for any other necessary purpose. Defendants, Class Representatives, and Class Members are deemed to have irrevocably submitted to the exclusive jurisdiction of this Court for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Class Settlement or the Class Settlement Agreement, including the Exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Order, the Court retains exclusive jurisdiction over any such suit, action, or proceeding. Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, Defendants, Class Representatives, and Class Members are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

21. Defendants have no responsibility for, interest in, or liability in connection with the Plan of Allocation; the distribution of the Net Class Settlement Fund to the Class; the determination, administration, or calculation of claims; the determination of any investments; the requested attorney's fees; or the payment or withholding of taxes of the Settlement Fund. Defendants do not have to appear at or participate in any hearing or determination about those matters.

22. In the event that the Class Settlement does not become effective in accordance with the terms of the Class Settlement Agreement or the Effective Date does not occur, or in the event that the Class Settlement Fund, or any portion thereof, is returned to the Defendants, this Order shall be rendered null and void to the extent provided by and in accordance with the Class Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the

extent provided by and in accordance with the Class Settlement Agreement.

So ordered this 2nd day of August, 2016.

**All Citations**

Slip Copy, 2016 WL 8290089

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.