2008 WL 659647
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Pat CASON-MERENDA and
Jeffrey A. Suhre, Plaintiffs,
v.
DETROIT MEDICAL CENTER, et al., Defendants.

No. 06-15601.
|
March 7, 2008.

**Attorneys and Law Firms**

Stephen F. Wasinger, Royal Oak, MI, David P. Dean, James and Hoffman, Washington, DC, Mark A. Griffin, Raymond J. Farrow, Keller Rohrback, Seattle, WA, for Plaintiffs.

Kenneth J. McIntyre, L. Pahl Zinn, Michelle R. Heikka, Dickinson Wright, Alethea A. Wilson, Charles N. Raimi, Patricia C. Schabath, Mark S. Wilkinson, Terrence J. Miglio, Jonathon A. Rabin, Keller Thoma, David A. Hardesty, Thomas M. J. Hathaway, Clark Hill, Fred K. Herrmann, Kerr, Russell, David A. Ettinger, Peter E. Boivin, Jill L. Marr, Honigman, Miller, Bruce L. Sendek, Mark T. Nelson, Michael R. Turco, William B. Slowey, Butzel Long, Sheldon H. Klein, Detroit, MI, David Marx, Jr., Amy J. Carletti, Benjamin J. Hanauer, David L. Hanselman, Jr., Stephen Y. Wu, McDermott, Will, Chicago, IL, Louis P. Gabel, Jones Day, Bethany M. Wimsatt, Shari Ross Lahlou, Crowell & Moring, Washington, DC, Paul F. Novak, Clark Hill, Lansing, MI, Howard B. Iwrey, Dykema Gossett, Bloomfield Hills, MI, Cathrine F. Wenger, Trinity Health, Novi, MI, David B. Gunsberg, Birmingham, MI, Sandra D. Hauser, Sonnenschein, Nath, New York, NY, for Defendants.

*OPINION AND ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANT ST. JOHN'S MOTION TO COMPEL COMPLETE ANSWER TO INTERROGATORY NO. 21*

GERALD E. ROSEN, District Judge.

**\*1** By order dated October 11, 2007, Magistrate Judge Donald A. Scheer granted Defendant St. John Health's motion to compel a complete answer to Interrogatory No. 21 served on May 24, 2007. In particular, the Magistrate Judge directed Plaintiffs to reveal the identities of the individuals referred to as witnesses "A" through "H" in Plaintiffs' initial response to this interrogatory. Plaintiffs now object to this ruling, arguing primarily (i) that the Magistrate Judge erred in his interpretation of the interrogatory at issue, and (ii) that the disclosures ordered by the Magistrate Judge would impermissibly infringe upon the work product protection afforded to an attorney's selection of persons to interview in a pre-filing investigation. For the reasons stated below, the Court finds no such infirmities in the Magistrate Judge's ruling, and thus overrules Plaintiffs' objections.

## I. *BACKGROUND*

In its Interrogatory No. 21, Defendant requested that Plaintiffs:

> Identify each person who participated in any investigation of the facts that formed the basis for the claims asserted in this lawsuit or in gathering any evidence or information supporting, refuting or otherwise relating to the allegations in the Complaint, including without limitation any employee or representative of the Mintz Group, the Feldman Group, Barbara Bergmann, and the Global Strategy Group,[ ] and describe with particularity all such facts and evidence collected or gathered.

In response, Plaintiffs first listed a number of individuals employed by the Mintz Group, Women's Policy Research, and SEIU International, as well as Plaintiffs' counsel, as having participated in the investigation that led to this suit. Plaintiffs then provided a fairly extensive summary of the facts revealed through this investigation, identifying

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

witnesses "A" through "H" as the sources of most or all of these facts.

Upon receiving this response, and after trying but failing to resolve the parties' differences through less formal means, Defendant brought a motion to compel a more complete answer to its interrogatory. Specifically, Defendant argued that Plaintiffs should be ordered to disclose the identities of the witnesses "A" through "H" cited in their answer to the interrogatory. In response, Plaintiffs noted that they already had identified all persons with knowledge of relevant facts relating to the complaint's allegations in their answer to a different interrogatory, and they argued that the more specific disclosure sought by Defendant would impermissibly reveal their counsel's strategic decisions and mental impressions by identifying individuals selected for interviews during counsel's pre-filing investigation.

After extensive briefing and oral argument, the Magistrate Judge granted Defendant's motion. In so ruling, the Magistrate Judge first determined that Defendant's interrogatory did not seek the disclosure of those *selected for interview* in Plaintiffs' pre-filing investigation, bus instead was properly construed as requesting (i) the identities of those individuals who *conducted* the investigation, and (ii) the *facts* gathered in this investigation. The Magistrate Judge then rejected Plaintiffs' appeal to the work product doctrine, reasoning that this doctrine's protection did not extend to the identities of persons with knowledge of facts supporting a party's claims or defenses. Accordingly, Plaintiffs were directed to supplement their interrogatory response by revealing the identities of the individuals referred to as witnesses "A" through "H" in their initial response. Plaintiffs now object to this ruling.

## II. *ANALYSIS*

**\*2** In support of their present challenge to the Magistrate Judge's order granting Defendant's motion to compel, Plaintiffs identify two purported defects in the Magistrate Judge's ruling. First, Plaintiffs contend that the Magistrate Judge erred in construing Defendant's Interrogatory No. 21 as seeking the disclosure only of those persons who conducted Plaintiffs' pre-filing investigation, and not those individuals who were interviewed in this investigation. Second, Plaintiffs argue that the disclosure

of the identities of witnesses "A" through "H," as ordered by the Magistrate Judge, would subvert the work product protection afforded to an attorney's selection of interview subjects in a pre-filing investigation. As explained below, the Court finds no merit in these objections.

**A. The Magistrate Judge Did Not Err in Determining that Interrogatory No. 21 Does Not Seek the Disclosure of the Persons Selected for Interviews in Plaintiffs' Pre-Filing Investigation.**

Plaintiffs' first challenge to the Magistrate Judge's ruling is readily resolved. As the Magistrate Judge properly concluded, Interrogatory No. 21, viewed in its totality, does not call for Plaintiffs to identify any and all persons interviewed, whether by Plaintiffs' counsel or by outside investigators, as part of Plaintiffs' pre-filing investigation of the claims and allegations advanced in their complaint. Indeed, this conclusion is confirmed by Plaintiffs' own response to this interrogatory, which neither supplied such information nor objected to any perceived request for such information. Rather, the Court agrees with the Magistrate Judge that this interrogatory is directed solely at the individuals who conducted Plaintiffs' pre-filing investigation.

In advocating-somewhat perversely, it seems to the Court-a broad reading of Interrogatory No. 21, [2] Plaintiffs focus on the language calling for the identification of "each person who *participated in*" Plaintiffs' pre-filing investigation. Plaintiffs reason that the ordinary understanding of a "participant" in an investigation encompasses both those who interview and those who are interviewed. It follows, in Plaintiffs' view, that Defendant's interrogatory seeks, at least in part, a list of the individuals who Plaintiffs' counsel selected for interview in the investigation leading up to this suit. As Plaintiffs point out, such a discovery request would implicate the work product doctrine, as it would threaten to disclose the thought processes and strategic assessments of Plaintiffs' counsel in deciding who to interview. *See, e.g., Laxalt v. McClatchy,* 116 F.R.D. 438, 443 (D.Nev.1987); *Massachusetts v. First National Supermarkets, Inc.,* 112 F.R.D. 149, 152 (D.Mass.1986).

Fortunately, however, Defendant's interrogatory is readily amenable to a narrower and less troublesome interpretation-one that, as it happens, was evidently shared by Plaintiffs and Defendant alike until they sought

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 2

the Court's intervention in their dispute. In particular, the "participa[nts]" whose identities were sought in this interrogatory were those who "participated in any investigation of the facts that formed the basis for the claims asserted in this lawsuit or in gathering any evidence or information supporting, refuting or otherwise relating to the allegations in the Complaint." The latter half of this quoted passage, of course, explicitly refers only to those who "gather[ed]" evidence or information, and not those who provided it. Similarly, if the former portion of this passage had referred to those who "participated in *investigating* the facts," as opposed to those who "participated in *any investigation of* the facts," this again would most naturally be understood as calling for the identities of the investigators, and not the individuals who supplied facts to these investigators. Reading the entire passage as a whole, it is difficult to believe that Defendant purposefully chose "investigation" over "investigating" in order to sweep in those who had any role in Plaintiffs' pre-filing investigation, whether as information gatherers or providers. This construction becomes even more implausible in light of what follows-namely, a list, by way of example, of outside consultants who were known to have served as investigators in similar nurse wage cases pending in other courts.

 **\*3** But perhaps the most compelling evidence against Plaintiffs' proposed reading of Interrogatory No. 21 is Plaintiffs' own response to this interrogatory. In particular, Plaintiffs neither provided a comprehensive list of individuals selected as interview subjects in their pre-filing investigation, nor did they interpose any objection to any perceived request for such a list. Rather, Plaintiffs simply identified a number of individuals who served as *investigators.* While this list was preceded by an objection on relevance and work product grounds, this objection was expressly limited, once again, to Defendant's perceived request that Plaintiffs identify their pre-filing *investigators.* [3] In short, nothing in Plaintiffs' response evidences even their own belief that Defendant's interrogatory sought the disclosure of any and all "participants" in Plaintiffs' pre-filing investigation, investigators and subjects alike.

Finally, it bears emphasis that Defendant has not advocated such a reading of its interrogatory at any point in the proceedings on its motion to compel. In bringing this motion, Defendant did not ask that Plaintiffs be ordered to identify each and every individual interviewed

by their counsel or outside investigators during the course of their pre-filing investigation. Rather, it has sought only the identities of the specific individuals identified as witnesses "A" through "H" in Plaintiffs' answer to the interrogatory. Under this record pointing uniformly toward a single, narrow construction of Interrogatory No. 21, the Court finds no basis to overturn the Magistrate Judge's decision to adopt this construction.

**B. The Magistrate Judge Did Not Infringe Upon the Protected Work Product of Plaintiffs' Counsel by Ordering Plaintiffs to Disclose the Identities of Witnesses "A" Through "H."**

While the Court has rejected Plaintiffs' proposed reading of Defendant's interrogatory, this is not the end of the matter. Regardless of what Defendant might have initially sought in this interrogatory, Plaintiffs contend that it is now asking for something more-something which *does,* in Plaintiffs' view, intrude upon the protected work product of their counsel. In particular, Plaintiffs argue that the disclosures ordered by the Magistrate Judge-namely, the identities of witnesses "A" through "H" referenced in Plaintiffs' answer to Interrogatory No. 21-would impermissibly reveal a subset, at least, of the individuals who their counsel selected for interviews in Plaintiffs' pre-filing investigation. Although Plaintiffs' characterization is accurate, at least as events have unfolded, the Court cannot agree that these disclosures run afoul of the work product doctrine.

As a threshold matter, the Court returns to its earlier observation that, as the Magistrate Judge correctly found, Defendant's interrogatory does not call for Plaintiffs to divulge some or all of the witnesses that their counsel selected for interviews in the pre-filing investigation. Rather, the Court agrees with the Magistrate Judge that the interrogatory seeks (i) the identities of Plaintiffs' investigators, and (ii) the "facts and evidence collected or gathered" by these investigators. The question of witness identities arose only when *Plaintiffs* elected to respond to the second prong of this inquiry by revealing that most or all of the pertinent "facts and evidence" came from the mouths of certain unnamed witnesses. Even then, the *additional* revelation that these unidentified witnesses had been selected for pre-filing interviews by Plaintiffs' counsel emerged only during the meet-and-confer process that preceded the filing of Defendant's motion to compel.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.  3

**\*4** Under these circumstances, the Court views Plaintiffs' appeal to the work product doctrine as an impermissible attempt to sweep ordinary, clearly discoverable facts under the protective cloak of counsel's mental impressions and strategies. It is beyond dispute that Defendant is entitled to discovery as to "the identity and location of persons having knowledge of any discoverable matter." Fed.R.Civ.P. 26(b)(1); *see also Norflet v. John Hancock Financial Services, Inc.,* 2007 WL 433332, at \*2-\*3 (D.Conn. Feb.5, 2007); *In re Theragenics Corp. Securities Litigation,* 205 F.R.D. 631, 634 (N.D.Ga.2002); *American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260 (N.D.Ill.1985). Thus, if Plaintiffs had responded to Defendant's interrogatory merely by recounting the facts they had gathered in their pre-filing investigation, and if Defendant had propounded an additional interrogatory asking Plaintiffs to identify the persons with knowledge of these facts, the Court cannot see how Plaintiffs could plausibly have objected that these identities were protected work product. Whether or not Plaintiffs' counsel actually interviewed some or all of these individuals in a pre-filing investigation, such a hypothetical interrogatory would permissibly be focused upon "persons having knowledge of ... discoverable matter[s]," Fed.R.Civ.P. 26(b)(1), and not counsel's determination of worthy interview subjects. Numerous courts have cited precisely this distinction in allowing such discovery over claims of work product protection. *See, e.g., In re Harmonic, Inc. Securities Litigation,* 245 F.R.D. 424, 427-28 (N.D.Cal.2007);[4] *Brody v. Zix Corp.,* 2007 WL 1544638, at \*1-\*2 (N.D.Tex. May 25, 2007); *Norflet,* 2007 WL 433332, at \*3; *Theragenics Corp. Securities Litigation,* 205 F.R.D. at 634-36; *In re Aetna Inc. Securities Litigation,* 1999 WL 354527, at \*2-\*3 (E.D.Pa. May 26, 1999); *cf. EEOC v. Collegeville/Imagineering Ent.,* 2007 WL 1089712, at \*1-\*2 (D.Ariz. Apr.10, 2007) (disallowing interrogatories that did not "seek to discover the identities of witnesses with information about this case," but instead "ask[ed] what Plaintiff's counsel ha[d] done"); *First National Supermarkets,* 112 F.R.D. at 152-53 (citing the "distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed during an investigation, which is not," and finding that the interrogatory at issue fell on the impermissible side of this line).

Yet, this hypothetical differs from the present situation only because of the additional, unsolicited information

*provided by Plaintiffs* in their response to Interrogatory No. 21 and in the ensuing meet-and-confer process. Simply stated, Defendant has *never sought* any insight into the selection of interview subjects in Plaintiffs' pre-filing investigation. Rather, Defendant has requested only the discoverable *product* of this investigation-namely, the facts uncovered in support of Plaintiffs' claims and the persons with knowledge of these facts. Plaintiffs cannot unilaterally inject their counsel's thought processes into Defendant's otherwise unobjectionable discovery request, and thereby invoke work product protection, by volunteering the fact that their counsel interviewed these individuals in a pre-filing investigation. *See Reed v. Advocate Health Care,* No. 06-3337 (N.D.Ill. Sept. 5, 2007) (attached as Ex. 9 to Defendant's Response).[5] Consequently, the Court rejects Plaintiffs' contention that the disclosures ordered by the Magistrate Judge run afoul of the work product doctrine.

**\*5** To be sure, just as Defendant's Interrogatory No. 21 does not ask Plaintiffs to identify the persons interviewed by their counsel in the pre-filing investigation, this interrogatory *also* does not request the identity of those who supplied or have knowledge of the facts gathered in this investigation. The hypothetical interrogatory discussed earlier, in other words, has never been propounded. Thus, if pressed upon the point, the Court would have to concede that Defendant's motion to compel, and the Magistrate Judge's resulting order, arguably address (and compel) the disclosure of information that Defendant has yet to specifically request in an interrogatory. Instead, Defendant asked only about the facts gathered in Plaintiffs' pre-filing investigation.[6]

Nonetheless, the Court concludes, as a practical matter, that Plaintiffs should make the disclosures ordered by the Magistrate Judge. The central focus of the parties' arguments to this Court, after all, concerns the question whether the witness identities sought by Defendant are protected work product. The Court having addressed this issue and resolved it in Defendant's favor, it would make little sense for the Court to then rule that Defendant is not entitled to the identities of witnesses "A" through "H" because it has yet to explicitly request this information.[7] If the Court were to do so, Defendant surely would respond by propounding precisely such an interrogatory. Under the circumstances, the Court declines to rest its

ruling upon such formalities, but instead affirms the Magistrate Judge's order in all respects.

### III. *CONCLUSION*

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' October 29, 2007 objections to the Magistrate Judge's October 11, 2007 order granting Defendant St.

John Health's motion to compel are OVERRULED. IT IS FURTHER ORDERED that Plaintiffs shall promptly provide a supplemental response to Defendant's Interrogatory No. 21 in accordance with the Magistrate Judge's order. Finally, IT IS FURTHER ORDERED that Plaintiffs' January 16, 2008 motion to strike addendum is DENIED AS MOOT.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 659647

---

Footnotes

1     The specific entities and individual referenced in the interrogatory evidently have served as investigators in other nurse wage cases brought around the country.

2     By the same token, and as discussed below, Defendant's effort to construe its interrogatory more narrowly has some undesired consequences to its overall position as well.

3     As noted, Plaintiffs then proceeded to provide this information notwithstanding their objection.

4     Although the Court identified this decision in its own research, Defendant also has cited this case in a January 14, 2008 letter alerting the Court to this "supplemental authority." Plaintiffs, in turn, have filed a January 16, 2008 motion to strike Defendant's submission, noting that the decision in question was available to Defendant at the time it filed its response to Plaintiffs' objections-and, indeed, had been issued before the Magistrate Judge held a hearing on Defendant's underlying motion to compel.

       The Court agrees with Plaintiffs that parties should be discouraged from alerting the Court to additional authorities that are merely new **to them,** but that were available for discussion in the parties' ordinary round of briefing. Thus, Defendant is cautioned against any further use of this practice in this litigation. Nonetheless, the Court finds it unnecessary to strike Defendant's submission, as the Court views the ruling in question as merely cumulative of the other case law cited by the parties and identified in the Court's research.

5     The September 5, 2007 order in *Reed*-another nurse wage suit in which the plaintiffs are represented by many of the same attorneys who have appeared on Plaintiffs' behalf in this case-has been the subject of still another round of motion practice arising from Defendant's underlying motion to compel. In particular, when Defendant cited *Reed* for the first time in its reply in support of its motion, Plaintiffs sought leave to file a sur-reply brief in order to respond to this new authority. Unfortunately, this matter was not formally referred to the Magistrate Judge until after the hearing on Defendant's motion to compel and the October 11, 2007 order granting this motion. Thus, there is no way to know whether the Magistrate Judge reviewed Plaintiffs' sur-reply brief before deciding Defendant's motion, and Plaintiffs cite this uncertainty as another ground for this Court to overturn the Magistrate Judge's ruling.

       The Court deems it unnecessary to inquire what the Magistrate Judge knew and when he knew it. Through the present objections and corresponding round of briefing, Plaintiffs undeniably have had the opportunity to address the order in *Reed.* Having reviewed both the order itself and Plaintiffs' arguments as to its significance (or lack thereof), the Court agrees with the reasoning of Judge Grady on the point discussed in the text accompanying this footnote-namely, that a party cannot bring the otherwise discoverable identities of fact witnesses within the work product doctrine by volunteering the fact that those witnesses were interviewed by counsel in a pre-filing investigation.

6     As noted earlier, Defendant also propounded a separate interrogatory in which it more broadly asked Plaintiffs to identify all persons with knowledge of relevant facts relating to the complaint's allegations, as well as the specific allegations about which each of these individuals have knowledge. In response, Plaintiffs provided a list of 395 names.

7     Certainly, Plaintiffs do not urge this result, even though they have quite correctly noted the inherent tension in Defendant's arguments (i) that its interrogatory did not seek the identities of witnesses, but (ii) that Plaintiffs nonetheless should be ordered to divulge the identities of the witnesses referenced in their interrogatory response.

---

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.     5



Cited
As of: July 22, 2018 7:32 PM Z

# *Gokare v. Fed. Express Corp.*

United States District Court for the Western District of Tennessee, Western Division

August 1, 2012, Decided; August 1, 2012, Filed

Case No. 2:11-cv-02131-SHM-cgc

**Reporter**
2012 U.S. Dist. LEXIS 106913 *; 2012 WL 3136668

MANJUNATH A. GOKARE, P.C., on behalf of itself and a class of all persons similarly situated, Plaintiff, v. FEDERAL EXPRESS CORPORATION, Defendant.

## Core Terms

Interrogatories, discovery, unidentified, allegations, witnesses, confidential, disclosure, sources

**Counsel: [*1]** For Manjunath A. Gokare, P.C., on behalf of itself and a class of all persons similarly situated, Plaintiff: Jeffrey O. Bramlett, Manoj S. Varghese, Naveen Ramachandrappa, Robert L. Ashe, III, Steven J. Rosenwasser, BONDURANT MIXSON & ELMORE, LLP, Atlanta, GA; William F. Burns, WATSON BURNS, LLC, Memphis, TN.

For Federal Express Corporation, Defendant: Colleen D. Hitch, LEAD ATTORNEY, Justin M. Ross, FEDERAL EXPRESS CORPORATION-Hacks Cross Rd, Memphis, TN; Richard R. Roberts, LEAD ATTORNEY, FEDEX CORPORATION, Memphis, TN.

**Judges:** CHARMIANE G. CLAXTON, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** CHARMIANE G. CLAXTON

## Opinion

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL

Before the Court is Defendant Federal Express Corporation's ("FedEx") Motion to Compel disclosure of the identity of Plaintiff Manjunath A. Gokare, P.C.'s ("Plaintiff") *Rule 26(b)(4)(D)* expert and responses to certain interrogatories. (Docket Entry "D.E." #93). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for determination. (D.E. # 97). For the reasons set forth herein, Defendant's Motion to Compel is GRANTED IN PART AND DENIED IN PART.

### I. Introduction

On February 18, 2011, Plaintiff filed **[*2]** a Complaint seeking damages from FedEx for breach of contract on behalf of Plaintiff and all persons similarly situated. (D.E. # 1). FedEx requested that Plaintiff identify the sources of the allegations in its Complaint, and Plaintiff informed FedEx that the source of some of its allegations was a person (hereinafter "unidentified witness") that it had hired who had knowledge of FedEx's business practices and the general business environment for express shipping. Plaintiff refused to identify the unidentified witness and refused discovery related the confidential individual on the ground that the unidentified witness is protected from discovery under *Rule 26(b)(4)(D)*. Shortly after, FedEx filed this Motion to Compel. (D.E. # 93).

### II. Analysis

First, the Court must consider whether Plaintiff is entitled to conceal the identity of an individual that provided factual substantiation to the Complaint. *Rule 26(a) of the Federal Rules of Civil Procedure* provides that a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . ." *Fed. R. Civ. P. 26(a)*. *Rule 26(b)(1)* allows discovery "regarding any

matter, not **[*3]** privileged, that is relevant to the claim or defense of any party." *Fed. R. Civ. P. 26(b)(1)*.

Although the Sixth Circuit does not appear to have had occasion to address the issue of whether a witness that provided factual substantiation to a complaint may be concealed, at least one District Court within the Sixth Circuit has opined on the question before the Court. *See Ross v. Abercrombie & Fitch Co., No. 2:05-cv-00819-EAS-TPK (S.D.Ohio Mar. 24, 2008)*. The Ross court determined that the names of witnesses who "have knowledge of facts relevant to a claim or defense . . . are clearly within the scope of permissible discovery and must be revealed." *Id.* at *1 (quoting *Brody v. Zix Corp., 2007 U.S. Dist. LEXIS 38230, 2007 WL 1544638, at *2 (N.D.Tex. May 25, 2007))*. [1] The *Ross* court reasoned that such a holding is "hardly controversial." 2008 WL 821059, at *1.

Although the *Ross* court determined that the issue in that case was more complex, the *Brody* **[*4]** court which it relied upon squarely faced the issue of an attempt to prevent the disclosure of the identity of witnesses that provided factual allegations in the Complaint. The court concluded that plaintiffs "cannot avoid their disclosure obligations under the federal rules by characterizing these witnesses, who unquestionably have knowledge of relevant facts, as 'confidential sources.'" *2007 U.S. Dist. LEXIS 38230, 2007 WL 1544638, at *2*. The *Brody* court found that public policy considerations likewise do not prevent defendant from disclosing the identities of the witnesses, even if they allege that the witnesses could fact "serious consequences." *Id.* The court held that such a "conclusory assertion does not come close to establishing a genuine risk of retaliation." *Id.* The court further determined that, even if the plaintiffs do not plan to use their confidential source beyond the pleading stage, which "may or may not be the case," the sources unquestionably have knowledge of facts relevant to a claim or defense, as evidenced by statements attributed to them in plaintiffs' complaint." and, thus, the "names of these witnesses are clearly within the scope of permissible discovery and must be revealed." *Id.* This **[*5]** Court finds the reasoning in *Ross* and *Brody* to be highly persuasive.

However, this case presents one additional complexity that the Court must consider. Plaintiff alleges that its designation of the unidentified witness as a *Rule 26(b)(4)(D)* expert shields his identity from discovery. However, as Defendant correctly points out, *Rule 26(b)(4)(D)* of the Federal Rules of Civil Procedure merely limits the discovery of the "facts known or opinions held" by an expert unless exceptional circumstances are present. *Rule 26(b)(4)(D)* does not bar the disclosure of a the identity of a witness, and it does not negate the requirements under *Rule 26(a)(1)* and *Rule 26(b)(1)* that the identity of an individual that provides factual allegations in the complaint must be provided. [2]

The only remaining question for the Court is whether Plaintiff must respond to Defendant's **[*6]** First and Second Sets of Interrogatories. Specifically, Defendant argues that Plaintiff should respond to Interrogatories 2, 11, 12, 13, 14, 15, 16, 17 of the First Set and Interrogatories 1 and 2 of the Second Set. The *Ross* and *Brody* courts also dealt with this issue. In *Brody*, the court explained that "[m]any of the discovery requests seek information and documents that go beyond merely identifying confidential sources." *2007 U.S. Dist. LEXIS 38230, 2007 WL 1544638, at *2 n.4*. The Court said it would not "suggest a view as to whether some or all of the information and documents in these other discovery requests, as phrased, may be entitled to work product protection," as those issues were not briefed before the Court because the plaintiffs "elected to focus their argument on protecting the *identity* of their confidential sources." *Id.* The *Brody* court did consider a few limited disputes regarding interrogatories and requests for production, however, that had been briefed by the parties. The Court analyzed them under *Rule 26* without any special consideration for the previous dispute regarding whether the identity of the witness must be disclosed.

In *Ross*, the court faced a much more unique issue—namely, whether **[*7]** the plaintiffs were required to disclose (1) which persons were interviewed while the party was drafting the pleading, and (2) which persons provided the information underlying specific paragraphs or subparagraphs of that pleading. The opponents

---

[1] In *Ross*, the parties did not filed objections to the United States Magistrate Judge's Order. In *Brody*, Lead Plaintiffs did object to the United States Magistrate Judge's Order, but the objections were denied by the District Court in a September 26, 2007 Order.

[2] The Court need not determine whether the unidentified witness shall or shall not be deemed an expert witness, a fact witness, or a dual fact/expert witness for purposes of this motion. Under the Federal Rules of Civil Procedure, it is sufficient for this Court's determination that the unidentified witness provided allegations in the Complaint.

objected on grounds of attorney work-product protection, which the Court found to be meritorious.

Upon review of the Interrogatories posed in the instant case, the Court finds that Interrogatory 2 of the First Set and Interrogatories 1 and 2 of the Second Set request general information. Namely, these requests as follows: (1) all persons who have knowledge concerning the allegations in the complaint and the substance of the knowledge; (2) the identity, name, address, and telephone number of all *Rule 26(b)(4)(D)* experts; and (3) the dates the expert was first consulted, formally retained, or specially employed. This information is discoverable pursuant to *Rule 26.*

With respect to Interrogatories 11-17 of the First Set, Plaintiff has objected on the grounds that these requests contain attorney work product. Consistent with *Ross*, the Court finds that a request for which individuals' were interviewed while preparing the pleadings or which individuals **[*8]** provided information underlying specific paragraphs of the pleading should not be permitted on grounds of work product. 2008 WL 821059, at *2.

### III. Conclusion

For the reasons set forth herein, Defendant's Motion to Compel is GRANTED IN PART AND DENIED IN PART. Plaintiff is ORDERED to supplement its *Rule 26(a)(1)* disclosures to provide the identity of the unidentified witness. Plaintiff is ORDERED to respond to Interrogatory 2 of the First Set and Interrogatories 1 and 2 of the Second Set. Plaintiff shall not be required to respond to Interrogatories 11-17 of the First Set.

**IT IS SO ORDERED** this 1st day of August, 2012.

/s/ Charmiane G. Claxton

CHARMIANE G. CLAXTON

UNITED STATES MAGISTRATE JUDGE

2015 WL 5604392
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Babak Hatamian, et al., Plaintiffs,

v.

Advanced Micro Devices, Inc., et al., Defendants.

Case No. 14-cv-00226-YGR (JSC)
|
Signed September 24, 2015

**Attorneys and Law Firms**

Joy Ann Kruse, Lieff Cabraser Heimann & Bernstein,
LLP, San Francisco, CA, for Plaintiffs.

Patrick Edward Gibbs, Matthew Rawlinson, Ming M.
Zhu, Latham & Watkins LLP, Menlo Park, CA, Melanie
Marilyn Blunschi, Latham and Watkins LLP, San
Francisco, CA, for Defendants.

### ORDER GRANTING MOTION TO COMPEL

JACQUELINE SCOTT CORLEY, United States
Magistrate Judge

*1 In this securities fraud putative class action, Plaintiffs
contend that defendant Advanced Microdevices, Inc.
("AMD") made misrepresentations regarding the launch
of its "Llano" microprocessor, and in particular,
misstatements regarding the Llano manufacturing plant's
chip yield. As is the practice in such actions in which the
plaintiffs must satisfy the heightened pleading standard
of the PSLRA, the operative complaint relies upon
statements from unidentified "confidential witnesses"
who are generally identified by job title, employer, and
dates of employment, but are not named. The question
before the Court is whether the name of a confidential
witness whose statements were used in a filed but later
superseded complaint is work product not subject to
production. The Court must also decide whether Plaintiffs
may withhold the name of a person identified in the
operative complaint as an "industry expert" until the time
for expert discovery. After reviewing the arguments made
by the parties in their joint letter brief (Dkt. No. 149), the
Court concludes the answer to both questions is no.

### DISCUSSION

In their amended complaint Plaintiffs included allegations
from confidential witnesses, identified in the amended
complaint as "CW1" through "CW9." (Dkt. No. 56
¶¶ 93-114.) A couple of weeks after Plaintiffs filed the
amended complaint, the parties stipulated to Plaintiffs'
filing of a "corrected" amended complaint. (Dkt. No. 59.)
The stipulation explained that after Plaintiffs sent a copy
of the amended complaint to CW1, "CW1 insisted on
being removed from the Complaint[.]" (Dkt. No. 59 at 2.)
Accordingly, the corrected amended complaint removes
all allegations attributable to CW1, but is otherwise
identical to the amended complaint. (Dkt. No. 61.) The
district court subsequently denied Defendants' motion to
dismiss the corrected amended complaint (Dkt. No. 110),
which is now the operative complaint.

At a case management conference held following the
denial of the motion to dismiss, and in response to a
comment from defense counsel, the district court asked
Plaintiffs when they would provide Defendants with the
names of the confidential witnesses. (Dkt. No. 142 at 12.)
Plaintiffs responded that they would provide Defendants
with the names of the confidential witnesses and, as
promised, they have provided Defendants with the names
of all but one of the confidential witnesses identified in
the corrected amended complaint. They have refused,
however, on work product grounds, to name CW1 given
that all references to that witness are eliminated from the
operative complaint. They have also refused to name an
unnamed "industry expert" relied upon in the operative
complaint.

### A. Work Product does not Protect the Name of CW1

Plaintiffs do not dispute the relevance of CW1, and instead
contend that CW1's name is protected from disclosure as
attorney work product. Plaintiffs, as the parties asserting
privilege from production, bear the burden of establishing
that the work product doctrine applies. *See United
States v. Chevron*, 241 F. Supp. 2d 1065, 1080-81 (N.D.
Cal. 2002) (citation omitted). "At its core, the work-
product doctrine shelters the mental processes of the
attorney, providing a privileged area within which he can
analyze and prepare his client's case." *United States v.
Nobles*, 422 U.S. 225, 238 (1975). "The work-product

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

rule is...a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3).).

**\*2** Plaintiffs have identified by name those confidential witnesses who are referred to in the operative complaint; they contend, however, that the name of CW1 is work product because they are no longer relying on CW1 in the operative complaint. Thus, they argue, disclosure of the name of CW1 is tantamount to requiring Plaintiffs to disclose the names of all persons they interviewed in connection with their pre-complaint investigation and such information is protected attorney work product. *See Plumbers & Pipefitters Local 572 Pension Fund*, No. 01-cv-20418 JW, 2005 WL 1459555, at \*4 (N.D. Cal. June 21, 2005). The Court disagrees.

In the amended complaint Plaintiffs alleged that CW1 made certain statements. Plaintiffs described CW1 by identifying his former and current employers, job titles and dates of employment. (Dkt. No. 56 ¶ 93.) Defendants do not seek any information regarding how Plaintiffs came to include those allegations in the amended complaint, who else Plaintiffs spoke to about the allegations, or who Plaintiffs interviewed but did not include in their amended complaint; instead, Defendants merely seek the name of the person Plaintiffs identified (except by name) in the amended complaint. Such information is not work product.

*Plumbers & Pipefitters Local 572 Pension Fund*, upon which Plaintiffs rely, supports a finding of no work product. There the district court explained:

"When the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable." *Mass. v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 152 (D. Mass. 1986). The Court is persuaded by the rationale underlying this distinction; that is, "if the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347 (C.D. Cal. June 13, 2002).

2005 WL 1459555, at \*4. Here, Defendants seek the identity of a person Plaintiffs have already identified as someone with knowledge. Such request does not seek work product. *See In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007); *Miller v. Ventro Corp.*, No. C 01-01287 SBA (EDL), 2004 WL 868202, at \*2 (N.D. Cal. April 21, 2004).

Plaintiffs' decision to exclude CW1 from the corrected amended complaint because CW1 did not want to be included does not transform CW1's name into work product. The cat is out of the bag. Plaintiffs previously disclosed that a specific person has knowledge relevant to this lawsuit. Revealing that person's name does not disclose "counsel's tactical or strategic thoughts." *Plumbers & Pipefitters Local 572 Pension Fund*, 2005 WL 1459555, at \*4.

As the name of CW1 is not work product Defendants' motion to compel disclosure of CW1's name is granted. That being said, the Court accepts Plaintiffs' representation that *publicly* disclosing CW1's name could have negative repercussions for CW1. Accordingly, as Defendants have offered (Dkt. No. 149 at n.1) the Court orders that any disclosure be subject to an attorneys' eyes only protective order.

**B. Disclosure of the Unnamed Expert A is not Premature**
Plaintiffs' operative complaint relies on "Industry Expert A" to support an inference that Defendants' statements were false when made. (Dkt. No. 61 at ¶¶ 112-133.) Plaintiffs identify Expert A having "25 years of direct industry experience with microprocessor and chip design, yield, and supply chain management, and gained this experience through various high-level positions at IBM, Intel, Samsung, Sandisk, Texas Instruments, and Qualcomm." (*Id.* at ¶ 112.) Plaintiffs do not contend that the name of Expert A is work product or that it is not relevant; instead, they baldly assert that as the parties are not required to disclose their experts until next summer, Plaintiffs may hide the name of Expert A until that time. Again, the Court disagrees. Plaintiffs have chosen to utilize an expert in their complaint. Plaintiffs have not articulated any prejudice or reason not to treat that "confidential witness" as any other "confidential witness" in the complaint, at least for the purpose of disclosing the confidential expert witness's name. Further, as Plaintiffs agreed in open court before the district court

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   2

to identify the "confidential witnesses" in the complaint, that Defendants have not made a formal request for the name of Expert A is of no matter. Plaintiffs shall also provide Defendants with the name of Expert A.

**\*3** This Order disposes of Docket No. 149.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5604392

Footnotes

1      This discovery dispute has been referred to the undersigned magistrate judge for decision. (Dkt. No. 150.)

**End of Document**                                                                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                3

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

2012 WL 1134142
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

In re AMERICAN INTERNATIONAL GROUP,
INC.2008 SECURITIES LITIGATION.
This Document Relates to: All Actions.

Master File No. 08 Civ. 4772(LTS)(DF).
|
March 6, 2012.

### ORDER

DEBRA FREEMAN, United States Magistrate Judge.

**\*1** In this securities fraud consolidated class action, a discovery dispute has arisen over Plaintiffs' refusal to reveal the identities of confidential witnesses, whose statements were incorporated into the Complaint. Having reviewed the parties' submissions, and for the reasons discussed below, Plaintiffs are hereby ordered to reveal the identities of the confidential witnesses identified as "CW" 1 3, no later than March 13, 2012.

### BACKGROUND

#### A. *Plaintiffs' Complaint*
On May 19, 2009, lead plaintiff State of Michigan Retirement Systems ("SMRS") filed a Consolidated Class Action Complaint on behalf of a putative class of investors ("Plaintiffs"). (*See* Consolidated Class Action Complaint, dated May 19, 2009 ("Compl.") (Dkt.95).) Plaintiffs assert claims under the federal securities laws against American International Group, Inc. ("AIG" or the "Company") and various current or former AIG executives, directors, accountants, and underwriters (collectively, "Defendants"). The Complaint references testimony made by four confidential witnesses. ("CWs" 1 4.) (*See, e.g.* Compl. ¶ 125 7; 134 8; 145; 178; 266(a); 277(a); 302; 351(h); 481 3.)

#### B. *Reliance by the Court on the Alleged CW Witness Statements in Denying Defendants' Motion to Dismiss the Complaint*

On September 27, 2010, the Honorable Laura T. Swain, U.S.D.J., denied Defendants' motion to dismiss the Complaint. *See In re American International Group, Inc.2008 Securities Litigation,* 741 F.Supp.2d 511 (S.D.N.Y.2010). From the Court's decision denying that motion, it is apparent that, in finding that Plaintiffs had adequately pleaded their claims, the Court relied on a number of allegations contained in the Complaint that were purportedly derived from statements of the four CWs. *See id.* at 530 35. In particular, the Court cited to CW testimony in finding that Plaintiffs had adequately pleaded material misstatements and omissions, scienter, and a control-person liability claim (under Section 20(a) of the Exchange Act) against executive defendant Alan Frost ("Frost"). (*See id.*)

For example, the Court found that Plaintiffs had adequately pleaded that Defendants had "materially misled the market" by, *inter alia,*

(1) "falsely stating that the Company engaged in extensive due diligence before entering into swap contracts," *id.,* at 530, when, according to the "confidential allegation of an executive who headed the CDO business of a major Wall Street investment bank," Defendants instead "merely requested the underlying and offering documents and did not request access to the counterparties' own valuation or analytical materials relating to the investment," *id .,* at 527 (citing CW statements contained in the Compl. at ¶ ¶ 351(h), 481);

(2) "repeatedly emphasizing the strength of the Company's risk controls when addressing investor concerns related to exposure in the the subprime mortgage market," *id.,* at 530, when, according to statements of the CWs, the relevant portfolio at AIG Financial Products ("A1GFP") "was in fact not subject to either the risk control processes that governed other divisions of the Company or the risk control processes that previously had been in place at AIGFP," *id.; see also id.,* at 521 (citing CW statements contained in the Compl. at ¶ ¶ 136 38); and

**\*2** (3) "stating [in a Form 10 K] that the Company had the ability to hedge its CDS portfolio," *id.,* at 530, when, according to the representations of two of the CWs, "it was not economically feasible to do so," *id.;*

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   1

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

*see also id.* at 525 (citing CW statements alleged in Compl. at ¶¶ 125 26).

Similarly, the Court relied on allegations based on CW statements in finding that Plaintiffs had adequately pleaded scienter. *See id.* at 533 34. In this regard, the Court noted that

> Plaintiffs can plead conscious misbehavior or recklessness by alleging defendants' knowledge of facts or access to information contradicting their public statements. In cases in which scienter is pled in part by alleging that the defendant knew facts or had access to information suggesting that their public statements were not accurate, the scienter analysis is closely aligned with the analysis as to misleading statements.

*Id.,* at 533 (internal quotation marks and citations omitted). In determining that Plaintiffs' pleading was adequate in this regard, the Court relied on Plaintiffs' allegation, based on CW statements, that "AIG and the Section 10(b) Defendants knew that risk controls had been weakened at AIGFP [, but that] AIG and the Section 10(b) Defendants deliberately declined, nonetheless, to disclose these risks to the marketplace." *Id.* at 533. In addition, the Court relied on allegations derived from CW statements in finding that Plaintiffs had satisfied the pleading standard of Rule 8(a), as to their control-person liability claim against Executive Defendant Frost. *See id.* at 535 (citing to Compl. ¶ 266(a)).

In sum, Plaintiffs incorporated significant CW testimony into their Complaint, and the Court relied on this testimony in finding that Plaintiffs had adequately stated their claims.

### C. *Defendants' Motion To Compel Disclosure of the CWs' Identities*

After the denial of Defendants' motion to dismiss, the Defendants issued discovery requests concerning, *inter alia,* the identities of the CWs. (*See* Letter to the Court from AIG, dated June 9, 2011 ("6/9/11 Def. Ltr.") (Dkt.334), at 1.) Plaintiffs objected to revealing the identifies of the CWs, and, after attempting unsuccessfully

to resolve the issue through good faith conference, the parties sought direction from this Court. (*Id.*) Writing on behalf of all Defendants, AIG notified the Court of Plaintiffs' objections to disclosing the identities of the four CWs referenced in the Complaint. (*See id.*)

At a case management conference before this Court on November 10, 2011, Defendants reported that they had learned the identity of CW 4 from Plaintiffs' counsel, after Plaintiffs' counsel noticed the witness for a deposition. (*See* Letter to the Court from AIG, dated Dec. 9, 2011 ("12/9/11 Def. Ltr.") (Dkt.333), at 3; *see also* Letter to the Court from Plaintiff, dated Dec. 20, 2011 ("12/20/11 Pl. Ltr.") (Dkt. 336 (placed under seal by the Court)), at 1.) Accordingly, Defendants now ask the Court to order Plaintiffs to reveal only the identities of the remaining three CWs.

**\*3** Plaintiffs principally argue that disclosure of the identities of the CWs will reveal confidential attorney work product and that Defendants cannot overcome the work product protection by demonstrating a substantial need for the withheld information, or that they would suffer an undue hardship without disclosure of the information. In stressing the importance of the work product protection, they argue "that protection of the confidentiality of the CWs is "necessary to maintain the deterrent effect of the federal securities laws." Plaintiffs ask that they only be required to disclose the identities of CWs noticed by Plaintiffs for deposition or placed on a Plaintiffs' witness list for trial. (*See* Letter to the Court from Lead Plaintiff, dated June 16, 2011 ("6/16/11 Pl. Ltr.") (Dkt.335), at 1; 12/20/11 Pl. Ltr. at 1 2.)

### *DISCUSSION*

In light of the particular circumstances of this case, and in consideration of recent case law in this District, this Court is persuaded that (a) Plaintiffs' claims of work product protection are outweighed by Defendants' interest in discovering the CWs' identities, and (b) the protective order in place in this case will address Plaintiffs' asserted confidentiality concerns.

### A. *The Work Product Doctrine*
The attorney work product doctrine protects the "mental impressions, conclusions, opinions, or legal theories of

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

a party's attorney" from disclosure. *See* Federal Rule of Civil Procedure 26(b)(3)(B). To be entitled to work-product immunity, the party asserting the protection "must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." *In re Grand Jury Subpoena Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 386 (2d Cir.2003) (internal quotation marks and citations omitted). The attorney work product doctrine is a qualified protection, rather than an absolute one, and can be overcome by a showing that the party seeking discovery (1) "has substantial need of the materials," and (2) "is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Plumbers and Pipefitters Local Union No. 630 Pension Annuity Trust Fund v. Arbitron, Inc.,* No. 08 Civ. 4063(PAE), 2011 WL 5519840, *4 (S.D.N.Y. Nov.14, 2011)* (internal quotation marks and citations omitted); *see also* Fed.R.Civ.P. 26(b)(3)(A)(ii).

In *In re Bear Sterns Companies, Inc. Securities, Derivative, and ERISA Litigation,* 1:08 MDL No.1963(RWS), 2012 WL 259326 (S.D.N.Y. Jan.27, 2012), the Honorable Robert W. Sweet, U.S.D.J., faced circumstances similar to those presented here. In fact, the very same Lead Plaintiff, SMRS, argued that it should not be required to reveal the identities of confidential witnesses, whose testimony SMRS relied on to state its claims, because of work product privilege, a lack of undue burden on defendants, and the fact that SMRS did not intend to rely on the confidential witnesses at trial. *Id.* at *2. Judge Sweet squarely rejected these arguments, holding that "the work product doctrine cannot be employed to protect the identities of SMRS' confidential witnesses." *Id.* at *3.

 **4** In his opinion, Judge Sweet cited primarily to another similar and recent opinion, *Plumbers and Pipefitters Local Union No. 630 Pension Annuity Trust Fund v. Arbitron, Inc.,* No. 08 Civ. 4063(PAE), 2011 WL 5519840 (S.D.N.Y. Nov.14, 2011). In *Arbitron,* the defendant also sought an order directing the lead plaintiff to disclose the names of "Confidential Informants" referred to in the underlying complaint. *Id.* at *1. The Honorable Paul A. Engelmayer, U.S.D.J., held that the names of the confidential informants were not entitled to work product protection. *Id.* at *4. The Court stated:

> It is ... entirely proper and common for a plaintiff to rely on confidential witnesses in a complaint, and

attributions to such witnesses may and often are credited on motions directed to the pleadings. But, once the discovery phase begins, the balance of interests shifts. The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.

*Id.* at *5 (internal citation omitted). The Court further stated that "where a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product." *Id* . at *5 (citing *Ross v. Abercrombie & Fitch Co.,* No. 2:05CV0819, 2008 WL 821059, at *3 (S.D.Ohio Mar.24, 2008)).

Although, as the Court noted in *Bear Stearns,* case law in this area "is not uniform," substantial case law and the circumstances of this particular case support Defendants' position here-that Plaintiffs should not be permitted to rely on the testimony of confidential witnesses to state their claims, and then withhold the identities of the confidential witnesses during discovery. *See generally Bear Stearns; see also In re Marsh & McLennan Comp., Inc. Sec. Litig.,* No. 04 Civ. 8144(SWK), 2008 WL 2941215 (S.D.N.Y. July 30, 2008) (ordering disclosure of confidential witness identities because plaintiffs relied on the witness statements in drafting the complaint, the witnesses possessed discoverable information, and the identities "enjoy[ed] limited, if any, work-product protection"); *In re Dynex Capital, Inc. Sec. Litig.,* No. 05 Civ. 01897(HB)(DF) (S.D.N.Y. Oct. 14, 2010) (Dkt.92) (noting that the Court was not persuaded that the mere identities of confidential witnesses would qualify as work product and determining, nonetheless, that defendants' need for discoverable information would overcome plaintiff's claim of work product protection); *Baughman v. Pall Corp.,* No. CV 07 3359, U.S. Dist. LEXIS 122064, at *7 (JS)(ARL) (E.D.N.Y. Oct. 21, 2011) (ordering disclosure of the identities of confidential witnesses cited in the complaint over plaintiffs' "tenuous work product claim").

Even if the identity of these witnesses qualifies as work product, the difficulty Defendants would face in trying to ascertain the identity of these witnesses from otherwise available information is a burden that

In re American Intern. Group, Inc.2008 Securities Litigation, Not Reported in F.Supp.2d...

2012 WL 1134142

overcomes Plaintiffs' need for protection. CW 1 is described as "an executive who formerly headed the CDO business at a major Wall Street investment bank and two of the largest commercial banks in the United States." (Compl.¶ 125.) According to Defendants, CW 1 could have worked for "at least 15" institutions, all of them "giant financial institutions, like Goldman Sachs and Merrill Lynch, with thousands of employees during the relevant period." (12/9/11 Def. Ltr. at 3.) CW 2 is described as "a former AIGFP vice president who was involved in AIGFP's management information system during the Class Period" (Compl. at ¶ 134), and CW 3 is described as a "former AIGFP executive vice president during the Class Period" (Compl. at ¶ 136). Defendants contend that AIGFP employed "over *140* vice presidents and *14* executive presidents during the Class Period." (12/9/11 Def. Ltr. at 4 (emphasis in original).) In this instance, there is no manageable universe of potential confidential witnesses, and Defendants would face a significant hardship, if they were forced to rely on their own efforts to identify the three CWs whose testimony Plaintiffs used in the Complaint.

*5 The Court also rejects Plaintiffs' argument, made in their December 20, 2011 letter, that, in agreeing to waive Rule 26(a) initial disclosures, Defendants waived their right to learn the identities of the CWs. (*See* 12/20/11 PL Ltr. at 2.) Plaintiffs cite no case law to support this argument, and the fact that the parties did not exchange lists of individuals "likely to have discoverable information," only increases the burden placed on Defendants in identifying Plaintiffs' potential witnesses, including the CWs 1–3.

**B.** *Concerns Regarding Confidentiality and Retaliation*
Plaintiffs contend that maintaining witness confidentiality is necessary to protect the CWs from retaliation from their past, current or future employers. (6/16/11 PL Ltr. at 7.) Defendants respond that the "existing confidentiality order in this action negates any confidentiality or

public policy rationale for protecting disclosure." (12/9/11 Def. Ltr. at 4; *see also* Confidentiality Stipulation and Order, entered Nov. 5, 2010 (Dkt.243).) In *Arbitron,* the Court rejected the plaintiff's "generic[ ]" assertions of retaliation, but acknowledged a confidential witness's legitimate interest in non-disclosure, and suggested that an appropriate protective order could address such a concern. *Arbitron,* 2011 WL 5519840 at *8 (noting that "there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation"). Although Plaintiffs, in this case, have not submitted any specific retaliation concerns, and thus the record before the Court does not reflect that any of the CWs face an actual risk of retaliation sufficient to justify non-disclosure of their names, the Court directs the parties to confer in good faith and to utilize the existing confidentiality order in this action to address any *specific* confidentiality concerns of any individual CW. *See In re Marsh & McLennan,* 2008 WL 2941215, at *5 (rejecting "conclusory" statements regarding retaliation, and stating that risk of retaliation if confidential witness identities were revealed "is less an argument against discovery and more an argument pertinent to the imposition of a protective order limiting access to the requested information").

### *CONCLUSION*

For the reasons stated above, Plaintiffs are directed to reveal the identities of the confidential witnesses identified in the Complaint as "CW 1," "CW 2," and "CW 3," no later than March 13, 2012.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1134142

---

Footnotes

1    *But see In re SLM Corporation Securities Litigation,* No. 08 Civ. 1029(WHP), 2011 WL 611854, *1 (S.D.N.Y. Feb.15, 2011) (finding identities of the 16 confidential witnesses cited in plaintiffs' complaint, from among the 73 former employees already identified in plaintiffs' 26(a) disclosures, to be protected work product); *In re Veeco Instruments, Inc. Security Litigation,* No. 05 MD 1695(CM) (GAY), 2007 WL 274800, (S.D.N.Y. Jan. 29, 2007) (declining to require plaintiff to identify confidential witnesses from list of 55 names, which included names of the three confidential witnesses).

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    4

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   5



⚠ Caution
As of: July 22, 2018 7:35 PM Z

## *In re Ashworth Sec. Litig.*

United States District Court for the Southern District of California

August 6, 2002, Decided ; August 6, 2002, Filed

Civil No. 99cv0121 L (JAH)

**Reporter**
213 F.R.D. 385 *; 2002 U.S. Dist. LEXIS 14971 **; 2002 WL 32026608

IN RE: ASHWORTH, INC. SECURITIES LITIGATION

**Prior History:** *In re Ashworth, Inc. Secs. Litig., 2002 U.S. Dist. LEXIS 27991 (S.D. Cal., May 10, 2002)*

**Disposition: [**1]** Defendant's motion to compel further responses to special interrogatories DENIED.

## Core Terms

disclosure, plaintiffs', witnesses, special interrogatory, interrogatories, individuals, work product, discovery, employees, interview, court found, responses, Reply, cases, second amended complaint, undue hardship, identities, instant case, legal theory, allegations, conclusions, materials, parties

## Case Summary

### Procedural Posture

Defendant company moved to compel further responses to special interrogatories served on plaintiff individuals.

### Overview

The company sought, inter alia, the names of current or former employees and sales representatives of the company who provided information regarding allegations in the individuals' second amended complaint. The individuals argued that the information sought was protected under the work-product doctrine, and that the identities of whistle-blowers should be protected from disclosure. The court found that there was a reasonable possibility that information as to names of persons that the individuals interviewed could be ferreted out if the individuals were required to more fully respond. Such response would necessarily reveal counsel's opinions regarding the relative importance of the witnesses, the highlights of their testimony/factual knowledge, and would link future statements by the witnesses with the individuals' counsel's legal theories and conclusions as outlined in the complaint. Thus, the information was protected as attorney work product. Further, the company failed to demonstrate substantial need and undue hardship sufficient to overcome the work-product protection.

### Outcome

The court denied the motion to compel.

## LexisNexis® Headnotes

Civil Procedure > ... > Privileged Communications > Work Product Doctrine > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > Inspection & Production Requests

*HN1*[⬇]  **Privileged Communications, Work Product Doctrine**

See *Fed. R. Civ. P. 26(b)(3)*.

Civil Procedure > ... > Privileged Communications > Work Product Doctrine > General Overview

Page 2 of 6

213 F.R.D. 385, *385; 2002 U.S. Dist. LEXIS 14971, **1

HN2[⤓]  **Privileged Communications, Work Product Doctrine**

Work product protection is afforded to materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews.

> Civil Procedure > ... > Privileged
> Communications > Work Product
> Doctrine > General Overview

HN3[⤓]  **Privileged Communications, Work Product Doctrine**

The work product doctrine only provides a qualified protection from discovery. *Fed. R. Civ. P. 26(b)(3)*. The information sought by defendant could still be ordered disclosed upon a showing that defendant has substantial need of the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Fed. R. Civ. P. 26(b)(3)*.

**Counsel:** For BRIAN JOHNSON, plaintiff: William S Lerach, Arthur Charles Leahy, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA. Todd S Collins, Berger and Montague, Philadelphia, PA.

For JOHN GERVAIS, DEBRA KOPP, TONY LE, plaintiffs: Arthur Charles Leahy, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA. Todd S Collins, Berger and Montague, Philadelphia, PA.

For ASHWORTH INC, RANDALL L HERREL, SR, GERALD W MONTIEL, JOHN NEWMAN, defendants: Elizabeth Warke Brem, Gibson Dunn and Crutcher, Irvine, CA.

For A JOHN NEWMAN, ANDRE P GAMBUCCI, defendants: Thomas S Jones, Gibson Dunn and Crutcher, Irvine, CA.

For THOMAS KIDDER, JAMES R SANDOVAL, SHIRLEY SANDOVAL, plaintiffs: Arthur Charles Leahy, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA. Jeffrey R Krinsk, Finkelstein and Krinsk, San Diego, CA. Todd S Collins, Berger and Montague, Philadelphia, PA.

For NEW HAMPSHIRE RETIREMENT SYSTEM, plaintiff: Arthur Charles Leahy, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA. John W Jeffrey, Jeffrey and Dreher, San Diego, CA. Todd S Collins, Berger and Montague, Philadelphia, **[**2]** PA. Kurt B Olsen, The Olsen Law Firm, Washington, DC.

For FRED COUPLES, JOHN DAVID HANSON, defendants: Thomas S Jones, Gibson Dunn and Crutcher, Irvine, CA.

**Judges:** JOHN A. HOUSTON, United States Magistrate Judge.

**Opinion by:** JOHN A. HOUSTON

# Opinion

 [*385] ORDER DENYING DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSES TO SPECIAL INTERROGATORIES [DOC. # 117]

## INTRODUCTION

The matter is now before this Court on defendant Ashworth, Inc.'s motion to compel **[*386]** further responses by plaintiffs to special interrogatories. Plaintiffs have filed an opposition to the motion and defendant has filed a reply brief. With leave of Court, defendant also filed a supplemental reply brief in response to plaintiffs' late submittal of an unpublished slip opinion in support of their opposition. After a thorough review of the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below, this Court DENIES defendant's motion to compel.

## BACKGROUND

On February 8, 2002, defendant served upon plaintiffs their First Set of Special Interrogatories seeking, *inter alia*, the names of current or former employees and sales representatives of defendant Ashworth who provided **[**3]** information regarding the allegations contained in the Second Amended Complaint. In their initial disclosures pursuant to *Fed.R.Civ.P. 26(a)*, which were exchanged on March 1, 2002, prior to plaintiffs' response to the special interrogatories, plaintiffs identified approximately 75 current or former employees of Ashworth that were "likely to have discoverable information that plaintiffs may use to support their claims." Zavala Decl., Exh. C at 1. Plaintiffs also noted, next to each of the names, the "subject of information" of which the individuals may have knowledge. Id.

Page 3 of 6

213 F.R.D. 385, *386; 2002 U.S. Dist. LEXIS 14971, **3

Plaintiffs subsequently served their responses to defendant's special interrogatories. In their responses, plaintiffs objected to the interrogatories on work product grounds and referenced their initial disclosures in response to Nos. 1 through 3. *See* Zavala Decl., Exh. D. Plaintiffs also responded by listing approximately 40 additional names of sales representatives plaintiffs deem knowledgeable of the issues presented in their Second Amended Complaint. *See* id.

Defendant contends that plaintiffs' responses to defendant's Special Interrogatory Nos. 1 through 3 [1] are insufficient. The parties met **[**4]** and conferred in an effort to resolve the dispute informally, with no success. Thereafter, on May 30, 2002, defendant filed the instant motion to compel. Plaintiffs filed their opposition to the motion on June 13, 2002. On June 20, 2002, defendant filed their reply brief. With leave of Court, plaintiffs filed a notice of recent authority in support of their opposition. Subsequently, this Court granted defendant's unopposed request to file a supplemental reply brief addressing the recent authority notice. On June 27, 2002, this Court took the motion under submission without oral argument, pursuant to Local Rule 7.1(d.1).

**[**5] <u>DISCUSSION</u>**

Defendant moves to compel further responses by plaintiffs to Special Interrogatory Nos. 1 through 3. Plaintiffs oppose the motion on the grounds that: (1) the information sought by defendant is protected under the work product doctrine; and (2) the identities of whistle-blowers should be protected from disclosure. [2]

---

[1] Interrogatory No. 1 states, in pertinent part: "Identify each former or current employee of Ashworth … who has provided information which forms the basis for any allegations of the Second Amended Complaint ("SAC") and identify the specific paragraphs of the SAC which contain information about which that individual has personal knowledge." Zavala Decl., Exh. B at 2. Interrogatory No. 2 states: "To the extent any current or former employee of Ashworth is the source of information which forms the basis for plaintiffs' belief in the truth of any of the facts alleged in the SAC, identify each such former or current employee … the paragraph of the SAC as to which each employee was a source of information, and the information provided by each such employee which gave rise to the basis for the belief in the truth of the facts alleged." Id. at 2-3. Interrogatory No. 3 states: "Identify by full name, address, and telephone numbers each and every lay witness whose testimony you may use at trial of this case and describe the specific factual issues to which that testimony is expected to relate." Id. at 3.

**1. Attorney Work Product Protection**

Plaintiffs object to disclosure of the information sought by defendant in Special Interrogatory Nos. 1 through 3 based on the protections afforded under the attorney work product doctrine. *Federal Rule of Civil Procedure* [*387] *26(b)(3)*, which codifies the doctrine, provides in pertinent part that:

> *HN1*[↑] a party may obtain discovery of documents and tangible things … prepared in anticipation of litigation or for trial … only upon a showing that the party seeking discovery has substantial **[**6]** need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*Fed.R.Civ.P. 26(b)(3)*; *see* *Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385, 34 Ohio Op. 395* (*HN2*[↑]) 1947)(work product protection is afforded to materials that "reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews.").

Plaintiffs argue that the interrogatories at issue seek to discover the identities of those persons plaintiffs have selected to interview in their pretrial investigation which, in plaintiff's view, is protected under the doctrine. Defendant counters that the interrogatories are "only seeking the names of the witnesses who plaintiffs allege provided them with the facts supporting the allegations in the [second amended complaint]." Reply at 3. Thus, defendant contends the interrogatories do not require plaintiffs to reveal their investigatory strategy. Id.

Whether the information sought by defendant in this case is protected as work product is unclear. Both parties cite non-binding [3] case **[**7]** law in support of their respective positions.

Defendant cites two cases: *In re Aetna Inc. Sec. Litigation, 1999 U.S. Dist. LEXIS 8038, 1999 WL 354527 (E.D. Pa. 1999)* and *In re Theragenics Corp Securities Litigation, 205 F.R.D. 631 (N.D. Ga. 2002)* as

---

[2] Because this Court ultimately finds the information is protected as work product, this Court declines to address plaintiffs' remaining argument.

[3] Neither party cites Ninth Circuit authority on point and this Court's independent research has revealed no clear binding authority for either party's position.

Page 4 of 6

213 F.R.D. 385, *387; 2002 U.S. Dist. LEXIS 14971, **7

most analogous to the instant case. [4] In Aetna, defendant sought, through interrogatories, the identities of persons described in the complaint along with the identities of supporting witnesses who were the basis for the allegations set forth in the complaint. Plaintiff responded with a list of 750 names and identified which paragraphs of the complaint each individual were deemed knowledgeable, claiming that a specific reference to those persons plaintiff interviewed constituted work product. *1999 U.S. Dist. LEXIS 8038, 1999 WL 354527* at *1. The Aetna court found that such information was not protected as work product **[**8]** because "the disclosure of the names and addresses of those individuals interviewed … will not reveal the 'mental impressions, conclusions, opinions, or legal theories' of [plaintiffs'] attorneys.'" *Id. 1999 U.S. Dist. LEXIS 8038* at *3 (quoting *Fed.R.Civ.P. 26(b)(3)*).

The Theragenics court similarly found that plaintiff's list of 54 of plaintiff's employees with knowledge **[**9]** of facts alleged in the complaint was an insufficient response to interrogatories propounded by defendant. *205 F.R.D. at 633*. Defendant's interrogatories asked for the identities of those employees that plaintiff had communicated with and who had provided information regarding certain paragraphs in their complaint. Id. The Theragenics court found that disclosure of this information would only minimally, if at all, reveal plaintiff's litigation strategy and, therefore, was not protected by the work product doctrine. *Id. at 636*.

Conversely, plaintiffs cite [5] to a recent unpublished

decision handed down by a District **[*388]** Court in the Central District of California, in which the court found the identity of employees mentioned in plaintiff's complaint protected as work product. In re MTI Technology Corp. Securities Litigation II, No. SACV 00-0745 DOC (Anx) (C.D.Cal. June 13, 2002); *see* Pltffs' *Ex Parte* App. for Leave to File Not. of Recent Auth., Exh. A at 4. The court in MTI Technology found the rationale set forth in Aetna unpersuasive and, therefore, declined to follow it for several reasons. Id. at 4. First, contrary to the **[**10]** Aetna court's finding, the MTI Technology court found that the "identification of individuals that are linked to very specific factual contentions in the [complaint] … would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with plaintiff's counsel's legal theories and conclusions as outlined in the complaint." *Id. 2002 U.S. Dist. LEXIS 13015 at 5*. Second, the court found that in comparison to the "unmanageable" number of individuals named by the Aetna plaintiff, a list of 71 individuals was not cost prohibitive. Id. Finally, the court discounted the Aetna court's reliance on policy considerations under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Id. 2002 U.S. Dist. LEXIS 13015 at 6*.

**[**11]** Plaintiffs' opposition is based on the premise that defendant's interrogatories seek the names of persons that plaintiffs interviewed. *See* Opp. at 3 ("Plaintiffs objected, however, to the discovery as seeking to ferret out the identity of those persons whom plaintiffs' counsel selected to interview."). Defendant maintains that the interrogatories do not seek such information. *See* Reply at 1 ("Ashworth has not asked for … information" regarding disclosure by plaintiffs of the names of persons selected for interview). This Court's review of the interrogatories indicates that the questions do not specifically request such information, but, in this Court's view, there is a reasonable possibility that such information could be ferreted out if plaintiffs were required to more fully respond. Therefore, this Court must decide whether such information is protected as work product.

---

[4] Defendant also relies on *American Floral Services, Inc. v. Florists' Transworld Delivery Assn., 107 F.R.D. 258 (N.D.Ill. 1985)*. In that case, the court found no work product protection because "the separation of … two interviewees from the universe of 2000 (or even 200) potential witnesses … reveals nothing other than … information … relevant to this lawsuit." *Id. at 262*. This case is the most extreme example of the three cases relied upon by defendant and, in this Court's view, the least analogous to the instant case. This Court has read and considered the American Floral court's holding and finds it unpersuasive.

[5] Plaintiffs, in their opposition, as noted by defendant, cite cases that are, for the most part, distinguishable from the facts of this case or not directed at the issues presented herein. *See* Reply at 2-2 n.1 (citing *Laxalt v. McClatchy, 116 F.R.D. 438 (D.Nev. 1987)*; *Massachusetts v. First National Supermarkets, 112 F.R.D. 149 (D.Mass. 1986)*; *Board of Educ. v. Admiral Heating and Vent., Inc., 104 F.R.D. 23 (N.D.Ill 1984)*; *In re Gupta Corp. Sec. Litig., 1995 U.S. Dist. LEXIS 21847*

*(N.D.Cal. 1995)*; *Nacht & Lewis Architects, Inc. v. Superior Court, 47 Cal.App. 4th 214, 54 Cal. Rptr. 2d 575 (3rd Dist. 1996)*). This Court's review of these cases reveals that the rationales used by these courts have little, if any, impact on the issues or facts presented herein. Accordingly, this Court deems these cases unpersuasive and directs its attention to the most analogous case cited by plaintiffs.

Page 5 of 6

213 F.R.D. 385, *388; 2002 U.S. Dist. LEXIS 14971, **11

Of the three cases discussed earlier, this Court finds the MTI Technology case most persuasive. This Court notes that defendant concedes the case involves "essentially the same facts as here." Suppl. Reply at 1. Defendant, however, urges this Court not to follow the decision because "it is not binding **[**12]** and is not based on sound reasoning." Id. As to the latter point, defendant notes that the court in MTI Technology, in reaching its decision, relied upon some of the same cases that plaintiffs cited in support of their opposition which, as previously explained, were not squarely on point with the instant case. See *id. 2002 U.S. Dist. LEXIS 13015 at 2* (noting reliance upon *Mass. v. First Nat'l Supermarkets, 112 F.R.D. at 154*; *Laxalt v. McClatchy*, 116 F.R.D. at 443; and *McIntyre v. Main St. & Main. Inc., 2000 U.S. Dist. LEXIS 19617 2000 WL 33117274* *2 (N.D.Cal. 2000)). Defendant also points out that the MTI Technology court failed to "sufficiently address[] or distinguish[] all of the directly contrary authority which support [defendant's] position that it is entitled to know the identities of the witnesses in the [second amended complaint]." Id. Defendant goes on to assert that the court's decision is "nonsensical and not sound policy," arriving at a "sweeping conclusion [that] is wholly unfounded." *Id. 2000 U.S. Dist. LEXIS 19617 at 4*. [6] Thus, defendant contends that the court's rejection of the Aetna case "is simply not tenable" because its rationale for rejection was flawed. **[**13]** *Id. 2000 U.S. Dist. LEXIS 19617 at 3*.

This Court agrees that the decision is not binding on this Court. However, this Court's review of the decision reveals that the court, **[*389]** in MTI Technology, adequately justified its reasoning by presenting sufficient support for its rationale. The fact that the court did not fully discuss every case cited by defendant is not, in this Court's view, persuasive reasoning to disregard the holding. This Court finds that the MTI Technology court's decision was neither "unfounded" nor as "sweeping" as defendant suggests. **[**14]** The Aetna court, in finding little or no work product protection, concluded that "the disclosure of the names and addresses of those individuals interviewed by plaintiffs' counsel will not reveal the 'mental impressions,

conclusions, opinions, or legal theories of [plaintiffs'] attorneys." *1999 U.S. Dist. LEXIS 8038, 1999 WL 354527* at *3. The court, in Aetna, did not explain how it reached that conclusion. See id.

The instant case can be distinguished from the facts in Aetna. Unlike the 750 witnesses in Aetna, here there are approximately 100 potential witnesses who are, for the most part, former or current employees of defendant. Thus, in this Court's view, the number of individuals from which defendant may investigate the facts is not as unmanageable as the 750 individuals in the Aetna case, particularly where defendant is in the best position to know what type of information each individual may possess. Additionally, due to the relationship between defendant and the potential witnesses, investigative efforts would not be cost prohibitive.

Although the facts involved in the Theragenics case are not as distinguishable from those in the instant case, the court **[**15]** in Theragenics relied specifically, and clearly based its holding, on the Aetna court's rationale in determining whether the information was protected as work product. See *Theragenics, 205 F.R.D. at 634*. This Court is not persuaded by the rationale presented in Aetna. Therefore, this Court finds the Theragenics decision also unpersuasive.

Additionally, this Court agrees with the MTI Technology court's rejection of the Aetna court's finding that disclosure would be "consistent with the policy considerations underlying" the PSLRA. Pltffs' *Ex Parte* Appl., Exh. A at 6; *Aetna, 1999 U.S. Dist. LEXIS 8038, 1999 WL 354527* at *4. The MTI Technology court found it unlikely that "altering the traditional discovery dynamics" by "requiring disclosure at the discovery stage" would "further[] the goals of the PSLRA." Pltffs' *Ex Parte* Appl., Exh. A at 5-6. The court noted that "the tool [Congress] selected was a heightened pleading standard--not a revision of the discovery rules themselves." Id. This Court also finds it unreasonable to conclude that the PSLRA's goal of reducing discovery costs was intended to transform the traditional rules of **[**16]** discovery for securities fraud cases.

This Court further agrees with the MTI Technology court regarding the public policy implications in disclosure of former (and current) employees who inform against their employer. See Pltffs' *Ex Parte* Appl., Exh. A at 7. The MTI Technology court noted that where a witness may be identified as an informant rather than an uninterested witness, significant consequences may result. Id. (citing

---

[6] Defendant directs this Court's attention to the MTI Technology court's statement that "'disclosure of [the] identify [of the witnesses referred to in the complaint] would necessarily reveal counsel's opinions regarding the relative importance of these witnesses [and] the highlights/factual knowledge'" and "that disclosure 'would link any future factual statements by the witnesses with plaintiffs' counsel's legal theories and conclusions as outlined in the complaint.'" Id.

Page 6 of 6

213 F.R.D. 385, *389; 2002 U.S. Dist. LEXIS 14971, **16

_Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 306 (5th Cir. 1972)_. Thus, the court found that "there is a legitimate policy concern that militates against requiring disclosure." even though "the whistle-blower privilege is not available in [a] private suit." Id.

Accordingly, this Court finds persuasive the reasoning of the court in MTI Technology. This Court, therefore, finds, as did the MTI Technology court, that any further response by plaintiffs to defendant's Special Interrogatory Nos. 1 through 3 "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements **[\*\*17]** by the witnesses with plaintiff's counsel's legal theories and conclusions as outlined in the complaint." Pltffs' _Ex Parte_ Appl., Exh. A at 5. Accordingly, this Court finds that the information sought by defendant is protected as attorney work product.

**2. Substantial Need and Undue Hardship**

_HN3_[↑] The work product doctrine, however, only provides a qualified protection from discovery. _See Fed.R.Civ.P. 26(b)(3)_; _see also Hickman, 329 U.S. at 511-12_. The information sought by defendant could still be ordered disclosed upon a showing **[\*390]** that defendant "has substantial need of the materials" and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." _Fed.R.Civ.P. 26(b)(3)_. Defendant claims that it will "be forced to undertake the time-consuming and exorbitantly expensive task of deposing the over 100 persons named in plaintiffs' Initial Disclosures and Responses to [defendant's] Special Interrogatories." Mot. at 11. Plaintiffs contend that because the 100 named individuals are, for the most part, defendant's own employees, defendant cannot show substantial need or undue hardship. _See_ Opp. at 6-7. Plaintiffs **[\*\*18]** note that "defendants are in the best position to know what type of information each of these individuals would have." Id. at 7. Thus, plaintiffs claim that defendant should be required to "do their own work and interview the persons already listed in plaintiffs' disclosures." Id.

This Court agrees with plaintiffs' assessment. Because the 100 individuals are current or former employees or sales representatives of defendant, this Court is unconvinced that defendant must depose each and every one of these individuals in order to ascertain whether they contributed to the allegations contained in

the plaintiffs' second amended complaint. Therefore, this Court finds that defendant has failed to demonstrate substantial need and undue hardship sufficient to overcome the work product protection for the information sought in its Special Interrogatory Nos. 1 through 3. _See Fed.R.Civ.P. 26(b)(3)_.

**CONCLUSION**

For the reasons set forth above, this Court finds that the additional information sought by defendant in its Special Interrogatory Nos. 1 through 3 is protected as work product and that defendant has not demonstrated substantial need or undue hardship sufficient to **[\*\*19]** overcome the protection. Accordingly, IT IS HEREBY ORDERED that defendant's motion to compel further responses to special interrogatories is DENIED.

Dated: August 6, 2002

JOHN A. HOUSTON

United States Magistrate Judge

2008 WL 205318
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Orlando Division.

In re FARO TECHNOLOGIES
SECURITIES LITIGATION.

Lead Case No. 6:05–cv–1810–Orl–22DAB.
|
Jan. 23, 2008.

**Attorneys and Law Firms**

James E. Miller, Karen M. Leser, Patrick A. Klingman, Shepherd, Finkelman, Miller & Shah, LLC, Chester, CT, James C. Shah, Nathan Zipperian, Shepherd, Finkelman, Miller & Shah, LLC, Media, PA, John F. Edgar, Edgar Law Firm, LLC, Kansas City, MO, Scott R. Shepherd, Shepherd, Finkelman, Miller & Shah, LLC, Weston, FL, Daniel S. Sommers, Marka Peterson, Steven J. Toll, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Jonathan L. Alpert, The Alpert Law Firm, Tampa,

FL, Brian Murray, Murray, Frank & Sailer, LLP, New York, NY, Julie Prag Vianale, Vianale & Vianale, LLP, Maya S. Saxena, Joseph E. White, III, Saxena White, PA, Boca Raton, FL, Lionel Z. Glancy, Glancy Binkow & Goldberg, LLP, Los Angeles, CA, Arthur L. Shingler, III, Scott & Scott, LLC, San Diego, CA, Charles Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD, David R. Scott, Scott & Scott, LLC, Colchester, CT, for Plaintiff.

Donald D. Lewis, Jay B. Kasner, Susan L. Saltzstein, Skadden, Arps, Slate, Meagher & Flom, LLP, Robert A. Scher, Foley & Lardner, LLP, New York, NY, Nancy J. Sennett, Foley & Lardner, LLP, Milwaukee, WI, Richard S. Davis, Foley & Lardner, LLP, Orlando, FL, for Defendant.

**ORDER**

DAVID A. BAKER, United States Magistrate Judge.

*1 This cause came on for consideration without oral argument on the following motions filed herein:

| MOTION: | DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO CERTAIN DISCOVERY REQUESTS AND LIMIT CERTAIN OF PLAINTIFF'S DISCOVERY REQUESTS (Doc. No. 134) |
|---|---|
| FILED: | January 11, 2008 |

THEREON it is ORDERED that the motion is GRANTED in part and DENIED in part.

| MOTION: | PLAINTIFF'S MOTION TO COMPEL [INCORPORATED IN PLAINTIFF'S RESPONSIVE MEMORANDUM] (Doc. No. 135) |
|---|---|
| FILED: | January 11, 2008 |

THEREON it is ORDERED that the motion is GRANTED in part and DENIED in part.

As set forth at the discovery conference and in the motions, the parties currently have four outstanding issues regarding the scope of discovery in this putative securities class action lawsuit. As time is of the essence due to the case management deadlines and the upcoming February mediation, the parties have expedited the briefing of these issues and the matter is now ripe for resolution. The Court addresses each issue, in turn.

**The extent of any work product protection afforded to the Confidential Witnesses**

Defendants have served Interrogatories Nos. 10 and 11, which seek:

> INTERROGATORY NO. 10: Identify each person who has knowledge or information regarding the claims set forth in the Consolidated Second Amended Class Action Complaint, and the responses and defenses asserted in the FARO Defendants' Answer and Affirmative Defenses, and, for each person, provide a detailed summary of that person's knowledge or information regarding such matters.

> INTERROGATORY NO. 11: Identify, by "CW" number, each Confidential Witness described or mentioned in the Consolidated Second Amended Class Action Complaint. For each Confidential Witness, state or describe (by "CW" number): whether the Confidential Witness first contacted KCM, KCM's counsel or their representatives, or whether KCM, KCM's counsel or their representatives first contacted the Confidential Witness; the date, manner and participants of and to each contact or communication with the Confidential Witness; the location of each contact or communication with the Confidential Witness; whether the Confidential Witness was a current FARO employee or a former FARO employee at the time of each contact with the Confidential Witness; whether the Confidential Witness had any confidentiality obligation or other obligation to FARO at the time of each contact; whether KCM, KCM's counsel or their representatives knew or were aware of such obligations at the time of each contact; the identity of all documents transmitted by KCM, KCM's counsel or their representatives to the Confidential Witness, and the date and manner of such transmission; the identity of all documents received by KCM, KCM's counsel or their representatives from the Confidential Witness, and the date and manner of such receipt; and whether, during each contact with the Confidential Witness, any financial payment or other benefit, incentive, reimbursement, or remuneration to the Confidential Witness was discussed (and, if so, what was discussed, and by whom, including, but not limited to, the terms of any agreement relating to such financial payment or other benefit, incentive, reimbursement, or remuneration).

**\*2** Lead Plaintiff objects to these Interrogatories to the extent they seek *specific* identification of the Confidential Witnesses (herein "CW") by the number ascribed to them in the Second Amended Complaint, contending that such disclosure *at this time* is violative of the work-product privilege set forth in Federal Rule of Civil Procedure 26(b)(3). Plaintiff argues that it has already disclosed all known witnesses (necessarily including the CW's) in a general fashion in its Initial Disclosures and that it should be allowed to protect the specific identities of these witnesses, until such time as it makes a determination to use a particular witness for trial.

As noted by Defendant, Fed.R.Civ.P. 26(b)(1) (2007) states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The names and addresses of witnesses are non-privileged and discoverable. *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir.1984). Thus, solely as to the issue of *identity,* the Court agrees with the majority of the courts that have recently addressed the issue, and finds "the work product immunity does not allow Plaintiffs to conceal the identity of those "Confidential Witnesses" identified by title in the complaint." *Mazur v. Lampert* 2007 WL 917271, \*4 (S.D.Fla.2007), citing *In re Aetna, Inc. Sec. Litig.,* 1999 WL 354527 (E.D.Pa. May 26, 1999); *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258 (N.D.Ill.1985); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631 (N.D.Ga.2002); *Accord, Brody v. Zix, Corp.,* 2007 WL 1544638 (N.D.Tex.2007); *In re Harmonic, Inc. Securities Litigation,* 245 F.R.D. 424 (N.D.Cal.2007). To the extent the Interrogatories seek the specific identification of the CW's, the motion to compel is **granted.**

That said, the Court **denies** the motion to compel, to the extent Interrogatory 11 seeks clearly protected work-product information, such as the particulars of any and all contacts with Plaintiff's attorneys or investigators. Although Defendant states in a footnote that it does not seek to compel discovery concerning Plaintiff's investigators, the information sought in Interrogatory 11 is so broad as to inappropriately uncover what the lawyer did and thought, rather than what the witness knows. *See Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   2

L.Ed. 451 (1947) (noting, among other things and subject to exception, that work-product includes information which an attorney secures from a witness while acting for his client in anticipation of litigation). Defendants are free to seek the factual information regarding the knowledge of a witness directly from the witness, but there is no showing that details regarding which attorney asked which question, and where, is even relevant, let alone of such importance as to override the traditional protection offered to such information. *See* Rule 26(b)(3) (A)(ii), Federal Rules of Civil Procedure.

**\*3** Plaintiff contends that if it must identify the CW's, it be allowed to wait to do so, until thirty days before the close of the discovery period. The Court declines to adopt this proposal, which is markedly inconsistent with Plaintiff's position that it should be allowed to engage in early merit discovery "in order to prepare for the [February] mediation." As Plaintiff recognizes, it has a "right to prepare the case on the merits and for mediation" (Doc. No. 135 at 25). Certainly, Defendants have no less a right to do so. Plaintiff shall supplement its response to the Interrogatories to include the specific identification of the CW's within five days of the date of this Order.

**Plaintiff's Relationship with co-lead counsel**
Defendants move to compel Plaintiff to produce documents related to Plaintiff's current and past relationship with the Edgar Firm and Shepherd, Finkelman, Miller and Shah, LLC, the two law firms currently serving as Co Lead Counsel, including all fee arrangements and agreements (Defendants' First Set of Interrogatories, No. 16; Defendants' First Set of Requests for Production of Documents Nos. 43 45.) Plaintiff objects on relevance grounds.

With respect to the fee agreements themselves, the Court finds them to be relevant and discoverable here. There is nothing magical or privileged about a fee agreement in class action litigation. Indeed, courts are heavily involved in the selection process of the attorney representing the class, as well as the ultimate compensation paid to class counsel; perhaps more so than in any other kind of litigation. While fee arrangements are not always relevant to class certification issues, and, in fact, numerous courts have found them to be irrelevant in that context, here,

the appointment of two firms to represent Lead Plaintiff and the class, based on a strong pre-existing professional relationship, is sufficiently unusual as to warrant the disclosure of the fee agreements. *See, generally,* In re Sheffield, 280 B.R. 719 (S.D.Ala.2001) (collecting cases). The motion is **granted, with respect to production of the fee agreements.** To the extent Defendants seek documents or discovery regarding Plaintiff's oversight of the action or other documents regarding its relationship with counsel, the motion is **denied, as moot.** *See* Doc. No. 135, n. 8.

**The ability to conduct "limited" merit discovery prior to the mediation date**
To the extent there are motions to either allow or limit this discovery, both are **denied.** The Case Management and Scheduling Order (Doc. No. 116) does not purport to limit merits discovery until after class certification issues are completed, and the relatively expedited nature of the case does not warrant such treatment, in any event. Plaintiff need not seek permission to conduct discovery, and Defendant's have not presented sufficient grounds to avoid it. The parties are ably represented and the Court trusts that they are capable of working cooperatively to schedule discovery.

**Pre and post-Class Period Discovery**
**\*4** The final issue presented to the Court is the proper scope of discovery in the pre and post-class period, with Plaintiff seeking six months on either end and Defendants offering three months. The Court finds the arguments both for and against this issue to be unenlightening. On one hand, six months in either direction does not appear to be that unreasonable a time period, considering the nature of the case and the fact that this is a public company. On the other hand, absent a showing of relevance, such a time period appears to be no more than arbitrary. In the absence of any showing of particular burdensomeness or other prejudice, the Court finds the six month "cushion" not inappropriate.

**DONE** and **ORDERED** in Orlando, Florida on January 22, 2008.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 205318

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

Footnotes

1    The Court rejects Plaintiff's contention that revealing the identity of the CW would permit opposing counsel to infer which witnesses counsel considers important, thus revealing mental impressions and strategy. (Doc. No. 135 at 9). Here, Plaintiff has already revealed which witnesses counsel finds important, by setting forth specific information as to their knowledge, in the SAC. Plaintiff has already pled *generally* who they are (*e.g.,* "a manager in FARO's purchasing department") and *specifically* what they know. Their name and address does not add to counsel's mental impression.

**End of Document**                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    4

2008 WL 821059
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Robert ROSS, Individually, and on behalf
of all others similarly situated, Plaintiff,

v.

ABERCROMBIE & FITCH
COMPANY, et al., Defendants.

Nos. 2:05–cv–0819, 2:05–cv–0848, 2:05–
cv–0860, 2:05–cv–0879, 2:05–cv–0893,
2:05–cv–0913, 2:05–cv–0959, 2:05–
cv–0964, 2:05–cv–0998, 2:05–cv–1084.
|
March 24, 2008.

**Attorneys and Law Firms**

Laura M. Andracchio, Coughlin Stoia Geller Rudman
& Robbins LLP, Ted Minahan, San Diego, CA, Mark
C. Gardy, Abbey & Ellis, Nancy Kaboolian, Abbey
Gardy Llp, Beth A. Keller, Nadeem Faruqi, Faruqi &
Faruqi, Llp, New York, NY, Brian K. Murphy, Geoffrey
J. Moul, Joseph F. Murray, Murray Murphy Moul &
Basil, Mark Mathew Kitrick, Kitrick & Lewis CO LPA,
Columbus, OH, Jennifer F. Sherrill, Sara E. Collier,
Federman & Sherwood, Oklahoma City, OK, Laurie
Largent, Matthew Isaac Alpert, Michael F. Ghozland,
Michelle M. McCarron, Coughlin Stoia Gellar Rudman
& Robbins LLP, Los Angeles, CA, for Plaintiff.

Philip Albert Brown, Albert Grant Lin, Alycia N. Broz,
John Joseph Kulewicz, William J. Pohlman, Michael
Roy Szolosi, Sr., McNamara and McNamara, Albert
Grant Lin, Vorys, Sater, Seymour and Pease LLP, John
Cooper McDonald, Katherine G. Manghillis, Matthew L.
Fornshell, Schottenstein Zox & Dunn, Columbus, OH,
David Stewart Cupps, Abercrombie & Fitch CO., New
Albany, OH, Jay B Kasner, Joseph Andrew Matteo,
ASharon Garb, Skadden, Arps, Slate, Meagher & Flom
LLP, New York, NY, Julianna Gonen, Julianna Gonen,
Attorney At Law, Stuart Gerson, Epstein, Becker &
Green PC, Washington, DC, for Defendant.

*OPINION AND ORDER*

TERENCE P. KEMP, United States Magistrate Judge.

**\*1** These securities cases are before the Court by way
of Defendant Abercrombie & Fitch Co.'s motion to
compel discovery filed on December 17, 2007. The motion
seeks an order compelling the lead plaintiff, City of
Dearborn Heights Act of 345 Police and Fire Retirement
System, to provide certain additional information which,
according to Abercrombie, is relevant to the issue of class
certification. The motion originally sought information
about the City's other investment activity, but the parties
have advised the Court that they are likely to resolve that
issue among themselves. The remaining issue is whether
the City must disclose information about certain persons
who may have provided the City with the facts underlying
certain allegations in the complaint. For the following
reasons, the motion will be denied.

I.

The parties agree on the relevant facts. Interrogatories
six and seven of Abercrombie's first set of interrogatories
asked the City to identify each person, each document,
or each other source of information that supported
the allegations in paragraphs 4, 10, 11, 50, 112, and
three subparagraphs of paragraph 89 of the complaint.
Abercrombie separately requested the City to produce all
documents which supported those same allegations as well
as any documents reflecting communications between the
City and its sources of information.

The City generally objected to both interrogatories
but provided the following substantive answer: "[A]ll
witnesses of whom it is aware that may have knowledge of
the referenced allegations have been identified in its Rule
26 initial disclosures." It reiterated its general objection
to these inquiries in its response to the document request,
but added that any documents or communications
with sources about those allegations were protected by
either the work product or attorney-client privilege. The
City's initial Rule 26 disclosures identified 84 witnesses
(all of whom are former Abercrombie employees) who
have relevant knowledge concerning its claims. In
correspondence, counsel for the City stated that although
all of the persons who provided information in support
of the complaint were identified in the initial disclosures,
the City was under no obligation to specify which persons
provided information in support of specific allegations

found within the complaint. The question is whether the City can invoke the work-product privilege in support of its refusal to answer Abercrombie's inquiries on this subject.

## II.

It is important to note at the outset that the issue here is not whether the City is entitled to conceal from Abercrombie the identity of those witnesses whom it relied upon in crafting the complaint. It has already provided their names in its initial disclosures. That fact alone distinguishes this case from, for example, *Brody v. Zix Corp.,* 2007 WL 1544638 (N.D.Tex. May 25, 2007), where it appeared that the plaintiff objected to any disclosure of the names of the confidential sources who supplied information supporting specific allegations in the complaint. The holding of that case that the names of witnesses who "have knowledge of facts relevant to a claim or defense ... are clearly within the scope of permissible discovery and must be revealed," *id.* at *2 is hardly controversial. The issue in this case, however, is much more complex.

 **\*2** Leaving aside for the moment the fact that, up to this point, Abercrombie has asked only for the names of witnesses whom the City relied on in making a few key allegations in the complaint, the issue is this: May any party in litigation force the opposing party not only to comply with Rule 26(a)(1) by disclosing the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses," but also to state (1) which of those persons the opponent interviewed when that party was drafting its pleading, and, even more specifically, (2) which of those persons provided the information underlying specific paragraphs or subparagraphs of that pleading? Because requiring such disclosures would unnecessarily intrude on the work product process, the Court holds that Abercrombie is not entitled to any further information on this subject.

## III.

At its heart, the work product privilege provides space for an attorney to think, strategize, and recommend without fear that the essential parts of his or her thought processes

will be laid bare for opposing counsel. Certainly, a part of the rationale for the doctrine is to prevent opposing counsel simply from piggy-backing on the work done by others, but the more important theoretical justification for having a work product privilege at all relates to this concept of "working space." As the Supreme Court noted in *Hickman v. Taylor,* 329 U.S. 495, 510 11, 67 S.Ct. 385, 91 L.Ed. 451 (1947),

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.... [If][a]n attorney's thoughts, heretofore inviolate, would not be his own.[ ... ] [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Drafting a pleading deciding exactly what to allege and how to allege it is a quintessential function of a litigating attorney. That attorney makes key strategic decisions about whom to interview in preparing that pleading, and whose information is reliable enough to persuade the attorney that he or she may aver a fact provided by that witness without violating Rule 11's mandate that all facts

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   2

alleged "have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." It therefore seems beyond dispute that if an attorney has to tell opposing counsel exactly whom he or she chose to interview when preparing a pleading, and which information obtained from those interviews was deemed worthy enough to support each specific allegation within that pleading, there will be a substantial intrusion upon the attorney's "working space." Further, the Court sees no practical distinction between asking an attorney to say which witness or witnesses supported specific allegations in a pleading and asking that attorney to disclose the contents of any statement taken from the witness, together with the attorney's mental impression concerning the credibility of that witness's statement. Such mental impressions are not only unquestionably work product but have been given a heightened level of protection from disclosure. *See, e.g., In re Antitrust Grand Jury,* 805 F.2d 155 (6th Cir.1986).

**\*3** None of the cases cited by Abercrombie directly reject this analysis. Abercrombie's two best cases, *In re Harmonic Inc. Securities Litigation,* 245 F.R.D. 424 (N.D.Cal.2007) and *Miller v. Ventro Corp.,* 2004 WL 868202 (N.D.Cal. April 21, 2004), both involved situations where, for whatever reason, the attorney who drafted the complaint chose to allege in the complaint itself that certain allegations were based on statements from specific confidential witnesses (five in one case, and 22 in the other). Thus, the attorney made at least a partial disclosure of protected information. *Miller,* upon which *Harmonic* heavily relied, reached its result in part on the alternative rationale that any work product protection attaching to the list of names of the 22 witnesses in question was overcome by the defendants' substantial need for the information and the difficulty involved in culling those names from a list of at least 165 potential witnesses. The court noted that the case was on a "compressed" discovery schedule and that it simply would not be possible for the defendants to interview that many witnesses to find out who the key ones were. It also relied on a case, cited as *In re Northpoint Communications Group, Inc., Securities Litigation,* 221 F.Supp.2d 1090 (N.D.Cal.2002), for the proposition that when a plaintiff attempts to satisfy the pleading requirements of the Private Securities Litigation Reform Act by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are. These decisions are

entirely consistent with the dual propositions that partial disclosure of information protected by the work product doctrine may constitute a waiver, and that a party is not permitted to use such doctrines as both a shield and a sword. *Cf. In re Echostar Communications Corp.,* 448 F.3d 1294 (Fed.Cir.2006). Those considerations come into play, however, once work product protection is found in the first instance.

This Court is persuaded by the reasoning above, and by decisions such as *In re MTI Technology Corp. Securities Litigation II,* 2002 WL 32344347 (C.D.Cal. June 13, 2002), that the disclosures Abercrombie has requested in this case are "at the heart of the work product rule" and that counsel should not be forced to make those disclosures absent either a waiver of the privilege or a showing of need and hardship sufficient to overcome it. Further, the work product protection is particularly strong here (and stronger than in some of the cases cited with approval in *MTI Technology* ) because Abercrombie has asked not just for a list of witnesses whom counsel interviewed in order to prepare the complaint a request that some of those decisions denied on work product grounds but for information that would link specific witnesses to specific allegations.

Abercrombie's justification for overcoming the work product privilege here is tied to its belief that without such information, it will be required to depose or interview in excess of eighty witnesses to find out what support may exist for certain allegations in the complaint. The Court does not view that as a substantial hardship in a case of this magnitude, especially when discovery is in its infancy and it is impossible even to predict when the first wave of document production will be substantially complete. Further, the allegations of the complaint about which Abercrombie has inquired are pleaded with a high degree of specificity. Presumably, many of the former Abercrombie employees whose names appear on the initial disclosures can be ruled out as sources of this information either because of dates of employment, where they were located at the time of the alleged actions, or the positions they held.

**\*4** The mere fact that counsel may have to do some investigative work to determine which witnesses have knowledge of which relevant facts is clearly insufficient to justify an intrusion into the particulars of how opposing counsel structured their interviews and how

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

much credence they gave to the statements of individual witnesses. This is especially true where nothing about the amended complaint suggests an effort to bolster its credibility through targeted references to confidential sources. Thus, there is no inherent unfairness created here by such pleading methods. Rather, this appears to be a garden-variety situation where plaintiff's counsel interviewed some number of witnesses before preparing a complaint and based the allegations in the complaint on that and other information. While counsel may not withhold either the names of witnesses with relevant information or the location of relevant documents and that has not happened here they simply cannot be compelled to give opposing counsel all of the details of how they decided to plead each allegation in the complaint. Defense counsel can clearly replicate the process by interviewing or deposing the same universe of witnesses, and there is neither a substantial need for them to find out more about the other side's strategies and thoughts, nor an undue hardship if they do not.

IV.

For the foregoing reasons, the Motion of Defendant Abercrombie & Fitch Co. to Compel Discovery (# 166) is denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91 3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 821059

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.