# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 3:16-cv-02267 |
| Plaintiff, | Honorable Aleta A. Trauger |
| vs. | REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF |
| CORRECTIONS CORPORATION OF AMERICA, et al., | CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL |
| Defendants. | |

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.     Introduction ..................................................................................................................... 1

II.    The Class Is Entitled to the *Affiliated Ute* Presumption of Reliance ................................. 6

III.   Defendants Have Failed to Rebut the *Basic* Presumption of Reliance ............................. 8

    A.     Defendants Must Show a Complete Lack of Price Impact by a Preponderance of the Evidence ....................................................................... 8

    B.     The Yates Memo and the Resulting 43.8% Stock Price Decline Demonstrates Price Impact ............................................................................ 9

        1.     Defendants' Improper Loss Causation Arguments Fail ........................... 11

        2.     Plaintiff Properly Invoked the Price Maintenance Theory as to Defendants' Class Period Half-Truths and Omissions ............................. 14

    C.     Defendants' Other Challenges Are Irrelevant ......................................................... 16

        1.     Defendants' Truth-on-the-Market Defenses Are Improper at Class Certification ........................................................................................ 16

        2.     That the Publication of the OIG Review Did Not Result in a Statistically Significant Price Reaction Does Not Prove a Lack of Price Impact ........................................................................................ 17

        3.     The Partial Post-Class Period Recovery in CCA's Stock Price Is Irrelevant ............................................................................................. 19

IV.   Conclusion ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acticon AG v. China N. E. Petroleum Holdings, Ltd.*,
  692 F.3d 34 (2d Cir. 2012)......................................................................................20

*Affiliated Ute Citizens v. United States*,
  406 U.S. 128 (1972)........................................................................................2, 6, 7, 8

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...............................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)........................................................................................6, 13, 16

*Aranaz v. Catalyst Pharm. Partners Inc.*,
  302 F.R.D. 657 (S.D. Fla. 2014) ..................................................................2, 9, 16

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
  597 F.3d 330 (5th Cir. 2010),
  *vacated sub nom. Halliburton I*,
  563 U.S. 804 (2011) (Opp. ) .................................................................................13

*Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  879 F.3d 474 (2d Cir. 2018)...............................................................................9, 13

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................... *passim*

*Beach v. Healthways, Inc.*,
  2010 U.S. Dist. LEXIS 33765 (M.D. Tenn. Apr. 2, 2010)......................................8

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...................................................................................6

*Burges v. BancorpSouth, Inc.*,
  2017 U.S. Dist. LEXIS 97953 (M.D. Tenn. June 26, 2017),
  *petition for review denied sub nom. In re BancorpSouth*,
  2017 U.S. App. LEXIS 18044 (6th Cir. Sept. 18, 2017) ................................. *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) .......................................................................14, 17

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
HQ*,
  322 F. Supp. 3d 676 (D. Md. 2018) .........................................................................2

*City of Sterling Heights Gen. Emps'. Ret. Sys. v. Prudential Fin., Inc.*,
  2015 U.S. Dist. LEXIS 115287 (D.N.J. Aug. 31, 2015)...................................................8, 10

*Clayton v. Heartland Res., Inc.*,
  754 F. Supp. 2d 884 (W.D. Ky. 2010) ...................................................................................8

*Daffm v. Ford Motor* Co.,
  458 F.3d 549 (6th Cir. 2006) ................................................................................................5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...............................................................................................5, 13, 14

*FindWhat Inv'r Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ...............................................................................14, 15, 16

*Freeman v. Laventhol & Horwath*,
  915 F.2d 193 (6th Cir. 1990) ................................................................................................8

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)........................................................................................17, 19

*Gebhardt v. ConAgra Foods, Inc.*,
  335 F.3d 824 (8th Cir. 2003) ..............................................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ..............................................................................................15

*Greenberg v. Crossroads Sys., Inc.*,
  364 F.3d 657 (5th Cir. 2004) ..............................................................................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  _ U.S. _, 134 S. Ct. 2398 (2014)................................................................................ *passim*

*IBEW Local 98 Pension Fund v. Best Buy Co. Inc.*,
  818 F.3d 775 (8th Cir. 2016) ..............................................................................................14

*In re Am. Serv. Grp., Inc.*,
  2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 31, 2009) ...............................................7

*In re Credit Suisse First Bos. Analyst Sec. Litig.*,
  250 F.R.D. 137 (S.D.N.Y. 2008) ...............................................................................2, 7, 14

*In re Finisar Corp. Sec. Litig.*,
  2017 U.S. Dist. LEXIS 201150 (N.D. Cal. Dec. 5, 2017)..................................................13

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................................17

*In re Goldman Sachs Grp., Inc.*,
   2018 U.S. Dist. LEXIS 137414 (S.D.N.Y. Aug. 14, 2018).................................2, 18

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sept. 24, 2015)....................................12

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ........................................................13

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ..........................................................6

*In re Moody's Corp. Sec. Litig.*,
   274 F.R.D. 480 (S.D.N.Y. 2011) ............................................................................14

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017)....................................................................................17

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2017 WL 2062985 (S.D.N.Y. May 15, 2017) .........................................................14

*In re Vivendi S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)........................................................................4, 14, 15

*Johnston v. HBO Film Mgmt.*,
   265 F.3d 178 (3d Cir. 2001).....................................................................................7

*Kasper v. AAC Holdings, Inc.*,
   2017 WL 3008510 (M.D. Tenn. July 14, 2017),
   *leave to appeal denied sub nom.*
   *In re AAC Holdings, Inc.*, 2017 WL 4801185 (6th Cir. Oct. 24, 2017)......................13, 17, 18

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ................................................................................17

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) ...........................................................................9, 15

*Luna v. Marvell Tech. Grp., Ltd.*,
   2017 U.S. Dist. LEXIS 178674 (N.D. Cal. Oct. 27, 2017)....................................20

*Marcus v. J.C. Penney Co.*,
   2017 U.S. Dist. LEXIS 33257 (E.D. Tex. Mar. 8, 2017)......................................17

*N. Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
  929 F. Supp. 2d 740 (M.D. Tenn. 2013)...................................................................20

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Co.*,
  2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)..............................................8, 18

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  830 F.3d 376 (6th Cir. 2016) ...................................................................................11

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  2018 U.S. Dist. LEXIS 106990 (S.D.N.Y. June 26, 2018)...................................15

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
  292 F.R.D. 515 (N.D. Ohio 2013) ..........................................................................13

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ................................................................................19

*Ret. Sys. of Miss., P.R. Teachers' Ret. Sys. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ..................................................................................18

*Seaworld Entm't, Inc.*,
  2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ......................................................14

*Schwab v. E*Trade Fin. Corp.*,
  285 F. Supp. 3d 745 (S.D.N.Y. 2018).......................................................................8

*Silverman v. Motorola, Inc.*,
  259 F.R.D. 163 (N.D. Ill. 2009)...............................................................................15

*Skeway v. China Nat. Gas, Inc.*,
  304 F.R.D. 467 (D. Del. June 18, 2014) ...................................................................6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008).....................................................................................................7

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) ...............................................................................9

*Swack v. Credit Suisse First Bos.*,
  230 F.R.D. 250 (D. Mass. 2005)..............................................................................15

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016)....................................12

1493469_1

*Waggoner v. Barclays PLC*,
 875 F.3d 79 (2d Cir. 2017),
 *cert. denied*, _ U.S. _, 138 S. Ct. 1702 (2018) ....................................................................8, 14

*Waggoner v. Barclays PLC*,
 879 F.3d 79 (2d Cir. 2017) ...................................................................................................9

*Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.*,
 2018 U.S. Dist. LEXIS 53435 (N.D. Ill. Mar. 29, 2018) ....................................................16

*Willis v. Big Lots, Inc.*,
 242 F. Supp. 3d 634 (S.D. Ohio 2017) ................................................................................14

*Wilson v. LSB Indus.*,
 2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug. 13, 2018) ...................................................8

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
 Rule 23 .................................................................................................................................1
 Rule 23(a) .............................................................................................................................1
 Rule 23(b)(3) ........................................................................................................................1
 Rule 23(f) ..........................................................................................................................6, 8

Federal Rule of Evidence
 Rule 301 ................................................................................................................................8

## I.     Introduction

Defendants concede by their silence that Amalgamated has satisfied each of the four elements for class certification under Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality and adequacy.[1]  They also do not challenge that the core elements of the securities fraud claims here – falsity, materiality, loss causation and scienter – are all issues susceptible to common proof, satisfying the predominance requirement of Rule 23(b)(3).  Nor do they dispute that Plaintiff's expert, Steven P. Feinstein, has established that CCA's stock traded in an efficient market, demonstrating that Plaintiff has made a *prima facie* showing sufficient to invoke the *Basic*[2] presumption of reliance.  In other words, Plaintiff has satisfied every requirement for class certification under Rule 23.

Unable to provide ***any*** evidence to deny class certification, Defendants instead suggest there is a lack of evidence of "price impact" to support it.  In so doing, Defendants wrongly attempt to flip the burden to Plaintiff to affirmatively show that the alleged fraud impacted the price of CCA stock, while mischaracterizing Plaintiff's allegations and this Court's prior holdings to assert that an ***undisputed 43.8% drop in CCA's stock price caused by publication of the Yates Memo*** has no connection to the alleged fraud.[3]  Defendants' conclusory and incorrect arguments provide the Court with no grounds to deny certification.

"The burden to prove lack of price impact by a preponderance of the evidence rests on the defendant."  *Burges v. BancorpSouth, Inc.*, 2017 U.S. Dist. LEXIS 97953, at *23 (M.D. Tenn. June 26, 2017), *petition for review denied sub nom. In re BancorpSouth*, 2017 U.S. App. LEXIS 18044

---

[1]     Defendants are Corrections Corporation of America ("CCA" or the "Company") and certain of its executives.  All terms not otherwise defined herein have the same meaning as defined in Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund's ("Plaintiff" or "Amalgamated Bank") motion for class certification (ECF No. 92) (the "Motion" or "Mot.").  Following the filing of this action, Defendants rebranded CCA and now refer to it as CoreCivic.
[2]     *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).
[3]     "Yates Memo" is described at ¶¶13, 41 of the operative complaint (ECF No. 57) ("Complaint").  ECF No. 99-2.

1493469_1

(6th Cir. Sept. 18, 2017); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018). To discharge this burden, Defendants must demonstrate a "***complete*** lack of price impact" – in other words, Defendants must ***prove*** the absence of price impact at the time of the statements or omissions, ***and*** at the time of the corrective disclosures. *In re Goldman Sachs Grp., Inc.*, 2018 U.S. Dist. LEXIS 137414, at \*13 (S.D.N.Y. Aug. 14, 2018).[4] This has rightly been described as a "daunting task." *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014).

Defendants' task is even more daunting here, where the case arises primarily from their failure to disclose the true conditions at CCA's BOP facilities, and the risks those conditions presented to CCA's financial success, including CCA's ability to retain the BOP and other government contracts on which CCA depended. Courts have long recognized that an omission will impact a stock's price by delaying its decline in value until the concealed facts become known. Indeed, that is the linchpin of the *Affiliated Ute*[5] presumption of reliance, which, unlike the *Basic* presumption, requires ***no*** showing of price impact. Under the facts at issue here, reliance can be shown under ***either*** presumption.

***First,*** Defendants ignore that the omission to disclose CCA's widespread poor treatment of inmates, including its lack of effective security and health care at BOP prisons, maintained the price of CCA stock at a level that was higher than it would have been had those conditions been known to investors. Defendants' primary challenge to this undisputed fact is to contend that Plaintiff purportedly did not plead a "'price maintenance theory [of reliance].'" Opp. at 15-16.[6] Not only is this argument incorrect, it is irrelevant because: (i) price impact is not required under *Affiliated Ute*; and (ii) under *Basic*, it is ***defendants***, not plaintiff, that have the burden of proving a lack of price

---

[4]    All emphasis added and citations and footnotes omitted unless otherwise indicated.
[5]    *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).
[6]    ECF No. 98 ("Opposition" or "Opp.").

impact, under any theory, at class certification. Defendants' refusal to credit Plaintiff's omission theory is all the more striking given this Court's prior acknowledgement that the failure to disclose the true condition of CCA's facilities lies at the heart of this case. *See* ECF No. 76 ("MTD Order") at 32.

**Second**, Defendants' arguments are contradicted by undisputed evidence showing that CCA's stock price **did** decline when the risks and conditions concealed by their fraud came to light. In particular, Defendants attempt to explain away the 43.8% drop in CCA's stock price that accompanied the release of the Yates Memo – which disclosed that CCA's BOP contracts were likely to be cancelled as a result of its poor performance and the unsafe conditions at its facilities – by contending that it was somehow unrelated to the alleged fraud.[7] Defendants compound this error by arguing that an absence of price impact can be shown simply by the lack of a statistically significant price decline on the release of the OIG Review,[8] which included the comparison of conditions at private prisons operated by CCA and other companies to BOP prisons. But this argument ignores that confounding information – here, the denials of the validity of the OIG Review and the incorrect belief that CCA's business would not suffer as a result – can, much like an omission, maintain fraud-caused inflation in the price of a stock. Moreover, Defendants are also incorrect that a lack of statistical significance **alone** is sufficient to rebut the *Basic* presumption, irrespective of other evidence, such as that present here, that explains why a stock price did not move significantly on a given day. That CCA's stock price did not react in the way Defendants contend it

---

[7] Defendants' expert, Lucy P. Allen, admits that the Yates Memo was "new information" and that the 43.8% price decline following its publication was statistically significant. Allen Tr. at 45:22-56:6, 47:4-48:8, 48:25-51:7. All "Allen Tr." citations herein are to Exhibit D of the Declaration of Christopher M. Wood in Support of Reply in Further Support of Lead Plaintiff's Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel ("Wood Decl."), filed concurrently herewith, unless otherwise indicated; *see also* Expert Report of Lucy P. Allen (ECF No. 99-3) ("Allen Rep.").

[8] Office of the Inspector General ("OIG") review (ECF No. 99-1) ("OIG Review").

should have merely raises issues for discovery, summary judgment and trial. It provides no ground for determining that this case cannot proceed as a class action.

The price impact inquiry is not – as Defendants urge – whether the stock moved at a statistically significant level, but rather, "what would have happened if [defendants] had spoken *truthfully*." *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (emphasis in original); *Halliburton Co. v. Erica P. John Fund, Inc.*, _ U.S. _, 134 S. Ct. 2398 (2014) ("*Halliburton II*"). Here, the price reaction following the release of the Yates Memo is strong evidence of what would have happened had the condition of CCA's facilities and the risks to its government contracts been revealed at the time the alleged misrepresentations were made. Defendants' concealment of these conditions and the risks they created permitted them to reiterate the Company's value proposition to investors – higher quality at a lower cost – without impacting the stock price in the manner that would have occurred (and later did occur) if investors had known that the Company in fact lacked the ability to provide the services required under its BOP contracts at a compelling price.

In calling for the reduction of reliance on private prisons, the Yates Memo emphasized that facilities like those operated by CCA do ***not*** provide high quality services at a lower cost: "They simply do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and as noted in a recent report by the Department's [OIG], they do not maintain the same level of safety and security." Yates Memo at 1. Ignoring this, Defendants contend that the 43.8% price decline in CCA stock on August 18, 2016, resulted from a "policy shift," by the government. But this so-called "policy shift" was driven by the very conditions they had long concealed from investors and that the Yates Memo was the first time that the consequences of those conditions on CCA's business became known. *See* MTD Order at 36-37 ("CoreCivic gave a misleadingly incomplete picture of the issues that ultimately resulted in the DOJ's shift"). Defendants also conveniently forget CCA's CEO contended when the Yates Memo was released that

- 4 -

it did ***not*** reflect any such "policy shift" by the government: "[T]his has been part of the Bureau's, really the way they operated and used contract beds over the last 15 years-plus. . . . ***So really, not a change of practice, as we see it with this directive***." Ex. F at 4.

While the price decline accompanying the release of the Yates Memo is alone sufficient to reject Defendants' "no price impact" argument, it is not the only evidence of price impact in this case. Defendants – and their expert – deliberately ignore another statistically significant 6.4% decline in the price of CCA's stock that occurred weeks earlier, when reports surfaced that the BOP had cancelled CCA's contract to operate the Cibola Facility in Milan, New Mexico. Feinstein Rebut., ¶¶81-86; Ex. 3 at 65.[9] That decline – which is evident on the face of Plaintiff's opening expert report but was nowhere discussed by Allen in her report – also shows price impact, as it revealed a portion of the financial impact to the Company caused by the poor condition of its BOP facilities. Feinstein Rep., Ex. 4 at 106;[10] Feinstein Rebut., ¶¶81-86. The impact on the stock price was attenuated, however, because Defendants concealed that the contract had been cancelled due to ████████████████████████████████████████████████████████, thus hiding both the existence and impact of ██████████ at Cibola, as well as the extent of the risks to CCA's business as a whole presented by similar (and still undisclosed) conditions at the other facilities it operated.

Importantly, the real issue Defendants attempt to raise in their Opposition is whether there was a causal connection between either of these (or other) price declines and Plaintiff's loss. But this is a common question of loss causation that the Supreme Court has repeatedly held ***cannot*** be answered at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807-08 (2011) ("*Halliburton I*"); *Daffm v. Ford Motor* Co., 458 F.3d 549, 553 (6th Cir. 2006) (whether the class can "win on the merits" is "not a factor" in class certification). And whether the August 18,

---

[9]   All "Feinstein Rebut." citations herein are to the Rebuttal Report of Professor Steven P. Feinstein, Ph.D., CFA, attached as Exhibit E to the Wood Decl.
[10]   All "Feinstein Rep." citations herein are to the Report on Market Efficiency Professor Steven P. Feinstein, Ph.D., CFA (ECF No. 93-3).

2016 disclosure is actually corrective of prior misrepresentations is an improper truth-on-the-market defense, again common to the Class and impermissible at class certification. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 480 (2013). So too are Defendants' challenges to certification based on other "disclosures" referenced by Defendants, each of which turns on questions of content, materiality and truth on the market.

In short, Defendants are not permitted to transform the narrow inquiry they are afforded to prove a lack of price impact into a blunderbuss assault on the merits of the case, especially where their predicate legal arguments have already been rejected by this Court, and fact discovery is far from complete. Plaintiff's Motion should be granted.

## II. The Class Is Entitled to the *Affiliated Ute* Presumption of Reliance

The Motion establishes that Plaintiff is entitled to the *Affiliated Ute* presumption of reliance. Mot. at 17-18. Defendants' failure to meaningfully address or rebut *Affiliated Ute* is telling. The allegations in the Complaint, this Court's decision on the motion to dismiss and Defendants' own papers all belie any notion that this case does not revolve around their omission to disclose CCA's massive operational deficiencies in basic services such as safety and health care, lack of cost savings to its customers, and the associated risks to its government contracts. Consequently, the Class is entitled to rely on the *Affiliated Ute* presumption.[11] *E.g.*, *BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *26-*27 ("[w]here plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption").[12]

---

[11] *See also Blackie v. Barrack*, 524 F.2d 891, 902, 905 (9th Cir. 1975) (applying *Affiliated Ute* where omissions predicated on misrepresentations regarding financial reporting); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *6-*7 (N.D. Cal. Apr. 21, 2016) (applying *Affiliated Ute* where the omissions were predicated on misrepresentations in defendants' SEC filings); *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 475-76 (D. Del. June 18, 2014) (applying *Affiliated Ute* where the underlying conduct caused the misrepresentations).

[12] The Sixth Circuit held that: "Although *Affiliated Ute* has never been applied at the class-certification stage, the district court did not abuse its broad discretion in doing so." *BancorpSouth*, 2017 U.S. App. LEXIS 18044, at *4. While the Sixth Circuit correctly rejected the *BancorpSouth* defendants' Rule 23(f) petition, *Affiliated Ute* is in fact routinely applied at class certification.

- 6 -

That Plaintiff alleges statements that give rise to the duty to disclose while omitting material information does not change the fact that "the investor to whom the duty was owed need not provide specific proof of reliance." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (citing *Affiliated Ute*, 406 U.S. at 153-54).

Contrary to Defendants' suggestion, the thrust of this case is omissions. **First**, the Complaint alleges that Defendants' "statements were materially and objectively false and misleading because defendants ***failed to disclose and omitted to state*** that CCA's CAR facilities were not high quality, their services were poor and they consistently violated BOP policies and contractual requirements with often dire and deadly consequences." ¶116.[13] Likewise, Defendants' "statements were materially false and misleading because they ***failed to disclose and omitted to state*** that CCA's CAR facilities did not result in any significant cost savings to the BOP." ¶117. The Complaint also expressly cites *Affiliated Ute*. ¶190. **Second**, this Court has previously recognized that CCA's alleged "***[f]ail[ure]*** to acknowledge and ***disclose*** the dire status of its relationship with a client as large and important as the BOP, however, is not 'speak[ing] fully and truthfully on th[e] subject' of its client relationships and reputation for quality." MTD Order at 32. **Third**, Defendants' own brief and expert acknowledge that Plaintiff alleges omissions. Allen Rep., ¶¶1, 3, 13, 95; Opp. at 16 (acknowledging allegations of "'omissions'").

Even Defendants' authorities support applying the *Affiliated Ute* presumption and granting class certification. In *In re Am. Serv. Grp., Inc.*, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 31, 2009), the Court acknowledged the *Affiliated Ute* presumption was applicable given defendants' withholding of material facts from investors. And in *Johnston v. HBO Film Mgmt.*, 265 F.3d 178

---

[13] All "¶_" references herein are to the Complaint, unless otherwise indicated.

- 7 -

(3d Cir. 2001), the court noted that *Affiliated Ute* is applicable to cases, like this one, arising from

"'nondisclosures and half-truth.'"[14] *Id*. at 192-94.

## III. Defendants Have Failed to Rebut the *Basic* Presumption of Reliance

Defendants "do not dispute Feinstein's conclusion that [CCA's] stock traded on an efficient

market."[15] Opp. at 5. This is sufficient to invoke the *Basic* presumption of reliance because in an

efficient market, reliance is presumed. *Halliburton II*, 134 S. Ct. at 2407-08; *Basic*, 485 U.S. at 247;

*Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990). Having satisfied *Basic*, the

burden shifts to Defendants to rebut the presumption by proving the lack of price impact. They have

failed to do so.

### A. Defendants Must Show a Complete Lack of Price Impact by a Preponderance of the Evidence

Contrary to Defendants' contentions regarding Federal Rule of Evidence 301 (Opp. at 12),

"[t]he burden to prove lack of price impact by a preponderance of the evidence rests on the

defendant." *BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *23; *see also City of Sterling Heights*

*Gen. Emps'. Ret. Sys. v. Prudential Fin., Inc.*, 2015 U.S. Dist. LEXIS 115287, at *31 (D.N.J. Aug.

31, 2015); *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), *cert. denied*, _ U.S. _, 138 S. Ct.

---

[14]   *Clayton* is simply inapplicable. *Clayton v. Heartland Res., Inc*., 754 F. Supp. 2d 884, 895 (W.D. Ky. 2010) (loss causation was required to be established to defeat summary judgment in connection with a scheme liability claim). And *Schwab v. E\*Trade Fin. Corp.*, 285 F. Supp. 3d 745 (S.D.N.Y. 2018), is a motion-to-dismiss opinion.

[15]   On August 29, 2018, Defendants submitted *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Co*., 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("*FHLM*"), as supplemental authority. ECF No. 116. Notably, despite their ham-handed attempts to impugn Feinstein's reputation, Defendants have **not** filed a *Daubert* motion or otherwise sought to disqualify him from testifying, nor do they have any legitimate grounds to do so. While the *FHLM* court disagreed with Feinstein's conclusion, holding that market efficiency was not established under the facts of that case, efficiency here is undisputed. Moreover, *FHLM* is subject to a pending Rule 23(f) petition, and a similar analysis submitted by Feinstein was recently endorsed in *Wilson v. LSB Indus*., 2018 U.S. Dist. LEXIS 138832, at *51 (S.D.N.Y. Aug. 13, 2018). Feinstein's methodology has been relied upon in dozens of other cases, including in this District. *E.g.*, *Beach v. Healthways, Inc*., 2010 U.S. Dist. LEXIS 33765, at *9 (M.D. Tenn. Apr. 2, 2010); *BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *21 (rejecting defendants' contentions that Feinstein's conclusions were inadequate). Further, as set forth in the Mot. at 19-20, Feinstein Rep., ¶¶149-155 and Feinstein Rebut., ¶¶93-103, damages can be calculated using a common methodology.

- 8 -

1702 (2018); *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 485 (2d Cir. 2018). The "daunting task" of doing so is not "easily done." *Aranaz*, 302 F.R.D. at 673; *aff'd sub nom. Waggoner v. Barclays PLC*, 879 F.3d 79 (2d Cir. 2017); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 324 (S.D.N.Y. 2016).[16]   As Justice Ginsburg reasoned in the Supreme Court's most recent discussion of the issue, "it is incumbent upon the defendant to show the absence of price impact. The Court's judgment, therefore, should impose no heavy toll on securities-fraud plaintiffs with tenable claims." *Halliburton II*, 134 S. Ct. at 2417 (Ginsburg, J., concurring).  Here, Defendants have not come close to meeting this heavy burden.

**B.    The Yates Memo and the Resulting 43.8% Stock Price Decline Demonstrates Price Impact**

After repeatedly being misled by Defendants' reinforcement of CCA's value proposition – higher quality at a lower cost – even in the face of reductions in the prison population and changes in political parties, the market learned on August 18, 2018, with the issuance of the Yates Memo, that CCA's government contracts were in jeopardy because it had not, in fact, been able to deliver on the fundamental value proposition of its business:

> [T]ime has shown that [private prison operators] compare poorly to our own Bureau facilities.  They simply do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, they do not maintain the same level of safety and security.  The rehabilitative services that the Bureau provides, such as educational programs and job training, have proved difficult to replicate and outsource – and these services are essential to reducing recidivism and improving public safety.

Yates Memo at 1.

On this news, CCA's stock price dropped 43.8%.  There is no dispute that this decline was caused by the Yates Memo and was statistically significant.  ¶199; Feinstein Rep., Ex. 5 at 137;

---

[16]   *See also Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (court's price impact analysis should be "limited in scope . . . *Halliburton II* by no means holds that in every case in which such evidence is presented, the presumption will always be defeated").

Allen Tr. at 45:22-46:6, 47:4-48:8; Feinstein Rebut., ¶73. Defendants concede that the publication of the Yates Memo revealed "new information" that was not previously reflected in the market price of CCA stock. Allen Tr. at 48:25-51:7. These facts alone, which are uncontested, are sufficient to demonstrate price impact, and should end the Court's inquiry. *BancorpSouth*, 2017 U.S. App. LEXIS 18044, at *4 ("price impact may be demonstrated either at the time that the alleged misrepresentations were made, ***or at the time of their correction***").

Nevertheless, in an attempt to salvage the unsalvageable, Defendants contend the Yates Memo was not "corrective" of any of the misrepresentations or omissions because it did not reveal the "truth . . . concealed by the alleged fraud," but instead just reflected "a shift in policy driven by politics."[17] Opp. at 18; Allen Rep., ¶¶68-69. Defendants' contention that this shift was "driven by politics" rather than by the conditions at CCA's facilities – as the Yates Memo states and as Plaintiff alleges – raises common questions to be resolved by a jury. It provides no grounds to conclude that there is a lack of price impact or that individual issues predominate. *Prudential*, 2015 U.S. Dist. LEXIS 115287, at *31-*32 (that defendants "point[] to other potential causes for a stock price change following a corrective disclosure is . . . not enough to rebut the *Basic* presumption"). These contentions are also irreconcilable with Defendants' reassurances to investors at the time the Yates Memo was released, when CCA's CEO claimed it was ***not*** the result of a political shift: "[T]his has been part of the Bureau's, really the way they operated and used contract beds over the last 15 years-plus. . . . ***So really, not a change of practice, as we see it with this directive***." Ex. F at 4.

The fact that CCA's stock price also suffered a statistically significant decline just weeks before, when the Company announced the BOP had not renewed its Cibola contract, further undermines Defendants' price impact contentions. Feinstein Rebut., ¶¶81-86. Indeed, while announcing Cibola's non-renewal, Defendants continued to mislead CCA's shareholders and

---

[17] Allen testified that she has no opinion on whether any of the alleged disclosures are actually corrective. Allen Tr. at 18:18-25.

employees, failing to disclose that the BOP terminated Cibola because of █████████████

███████████████████████ *See* Ex. G ("███████████████."); Ex. H

("███████████████████████████████████████████████

███████████████." ).

## 1.    Defendants' Improper Loss Causation Arguments Fail

Defendants' "policy shift" conjecture was rejected by this Court in its MTD Order, which

Defendants' expert simply ignored.  *See* Allen Tr. at 41:16-42:7 ("Q. Did reading the Court's order

impact your analysis at all?. . .  [A.] Not particularly. . . .  I don't think [the MTD Order] had a

particular effect on the analysis . . . .").  In their motion to dismiss, Defendants asserted Plaintiff

could not show loss causation because the Yates Memo merely announced a "political shift" that was

unrelated to Plaintiff's claims.  MTD Order at 36-37.  The Court rejected this argument, explaining

that, even if Defendants' "political shift" argument was correct, "the scope of [Plaintiff's] loss was

determined by the degree to which the market was able to evaluate the probability of such a shift and

therefore price that risk into its valuation of [CCA]."  *Id*. at 37.  The Court, consistent with the Sixth

Circuit's endorsement of a "materialization of the risk" theory of loss causation, held that CCA's

"argument, if accepted, would effectively immunize any company that concealed or misleadingly

minimized a known risk from the damage done when that risk came to fruition."  *Id*. at 36-37.[18]

Thus, the underlying conduct serving as the impetus for any such shift would be just as important as

the purported shift itself, which did not, as Defendants contend, take place in a vacuum or result

from conditions entirely outside Defendants' control or divorced from their repeated

misrepresentations and omissions about their business.  *See* Feinstein Rebut., ¶¶75-80.

Defendants' expert's attempt to cherry-pick phrases taken out of context from two analyst

reports does not suffice to prove that the reduction in government contracts was a purely political

---

[18]    *See also Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384-85 (6th
Cir. 2016) (embracing the materialization of the risk theory of loss causation).

1493469_1

decision or that investors were unconcerned with Defendants' prior concealment of the risk that such contracts could be lost due to the operating conditions at CCA's BOP facilities. *See* Feinstein Rebut., ¶¶75-86. Courts consistently reject "expert analysis" of market commentary to prove the absence of price impact. *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 33637, at *45 (S.D. Fla. Mar. 16, 2016); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 128856, at *21 (S.D.N.Y. Sept. 24, 2015) ("analysis [of the focus of market commentary] fails to demonstrate that no part of the decline was caused by the corrective disclosure"). Further, the evidence shows that investors *did* understand the Yates Memo to disclose new information as a result of their failure to live up to CCA's value proposition. Feinstein Rebut., ¶¶87-92.[19]

The financial bias of the analysts Allen relies on also makes it improper to rely on their reports to conclude that price impact is not present. SunTrust Robinson Humphrey disclosed that in the 12 months prior to August 2016, it or its affiliates received significant compensation for assisting CCA in securities offerings, providing it with a motive *not* to attribute loss of government contracts to problems within its business.[20] Ex. I at 7. Canaccord disclosed that it "or one or more of its affiliated companies intend to seek or expect to receive compensation for Investment Banking services from [CCA] in the next three months." Ex. J at 8. And Wells Fargo disclosed that it or its affiliates receive compensation for services from CCA and it "has a *significant financial interest* in [CCA]" Ex. K at 3. When asked what Wells Fargo's "significant financial interest" was, Allen could provide no answer, demonstrating her failure to consider this issue in analyzing the reliability of the opinions in its, or any other analyst's, report. Allen Tr. at 182:7-16.

---

[19] For example, the news media *did* connect the Yates Memo with safety and efficiency. *E.g.*, Ex. L; Exs. AA-BB.
[20] SunTrust also ███████████████████████ and promotes the fact that it acted as either "Joint Lead Arranger/Bookrunner" or "Joint Bookrunner" for $350 million worth of CCA offerings between September and October 2015 alone. Ex. M; Ex. N.

Defendants' contention that the market did not shift its view on quality is an impermissible fact-based attack on materiality that cannot be considered at this stage. *Amgen*, 568 U.S. at 469-70. Courts in the Sixth Circuit have rejected identical contentions. *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 527-28 (N.D. Ohio 2013) (contention rejected as "irrelevant to the inquiry regarding whether the class should be certified"); *BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *20 (materiality should be left for the trier of fact); *Kasper v. AAC Holdings, Inc.*, 2017 WL 3008510, at *11 (M.D. Tenn. July 14, 2017), *leave to appeal denied sub nom. In re AAC Holdings, Inc.*, 2017 WL 4801185 (6th Cir. Oct. 24, 2017) (same).[21]

Simply put, Defendants, under the guise of price impact, have merely copied and pasted their arguments that were rejected on the pleadings and have attempted to repackage them as grounds to deny certification of the Class. These arguments are even worse now that it is Defendants who must prove a lack of price impact, and should again be rejected. Moreover, having previously raised this argument to attack loss causation, Defendants cannot now recast it as something else. Defendants' loss causation argument therefore presents an impermissible ground upon which to refuse certification. *Halliburton I*, 563 U.S. at 813; *accord BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *25 (defendants' "assert[ion] that any decline in stock price after the corrective disclosure likely reflects other factors besides the corrective disclosure . . . involves merits issues as to causation" that are not to be resolved at class certification).[22]

---

[21]   Defendants' authority is unavailing. *See* Opp. at 11. *In re Finisar Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 201150, at *7-*8 (N.D. Cal. Dec. 5, 2017) (unlike this case, the plaintiff was "not proceeding on a price maintenance theory," and there was no evidence that the analysts were influenced by the defendants); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *14-*16 (N.D. Cal. Dec. 22, 2016) (Court found price impact, rejecting as unconvincing defendants' contention that "information revealed by the disclosure was unrelated to any alleged misrepresentation" and only concluded no impact where disclosures related to dismissed allegations). *Goldman Sachs*, 879 F.3d 474, does not overrule *Halliburton I*'s prohibition on fact-based loss causation determinations at class certification.

[22]   Defendants' reliance on *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330 (5th Cir. 2010) ("*AMSF*"), *vacated sub nom. Halliburton I*, 563 U.S. 804 (2011) (Opp. at 10), demonstrates why their arguments should be rejected. The Supreme Court reversed *AMSF*,

### 2. Plaintiff Properly Invoked the Price Maintenance Theory as to Defendants' Class Period Half-Truths and Omissions

"[T]he price maintenance theory – the theory that a misrepresentation can have a price impact not only by raising a stock's price but also by maintaining a stock's already artificially inflated price – is consistent with the Supreme Court's discussion of price impact." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 656-57 (S.D. Ohio 2017). Courts acknowledge "that statements that merely maintain inflation already extant in a company's stock price, but do not add to that inflation, nonetheless affect a company's stock price." *Vivendi*, 838 F.3d at 256; *accord Waggoner*, 875 F.3d at 104; *BancorpSouth*, 2017 U.S. Dist. LEXIS 97953, at *24-*25. This is because misrepresentations that falsely confirm market expectations, such as the incomplete statements and omissions at issue here, will not necessarily lead to an observable change in price. *See, e.g.*, *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011) ("A corollary of the efficient market hypothesis is that disclosure of confirmatory information – or information already known by the market – will not cause a change in the stock price.").[23] Allen agrees – the lack of

---

rejecting that loss causation and "correct[iveness]" must be demonstrated at class certification. *Halliburton I*, 563 U.S. at 805, 812 (finding *AMSF*'s requirement to prove that a price decline was "'because of the correction to a prior misleading statement'" was "not justified by *Basic* or its logic"). Further, the Fifth Circuit, with Justice O'Connor sitting by designation, specifically rejected what Defendants insinuate here – that to be "corrective," a disclosure must "'precisely mirror [an] earlier misrepresentation.'" *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) (alteration in original).

[23] Defendants' authorities do not compel a different result. *IBEW Local 98 Pension Fund v. Best Buy Co. Inc.*, 818 F.3d 775, 884 (8th Cir. 2016), not only conflicts with the Sixth Circuit's decision in *BancorpSouth*, 2017 U.S. App. LEXIS 18044, at *4, but also a prior Eighth Circuit decision. *See Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 831-32 (8th Cir. 2003) (recognizing that "[i]f a stock does not appreciate as it would have absent the fraudulent conduct," then "investors have suffered a harm"); *see also v. Seaworld Entm't, Inc.*, 2017 WL 5885542, at *11 (S.D. Cal. Nov. 29, 2017) (distinguishing *Best Buy* because the "allegedly 'inflated price' was established by [a] non-fraudulent" disclosure); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480 (S.D.N.Y. 2011), and *In re Credit Suisse First Bos. Analyst Sec. Litig.*, 250 F.R.D. 137 (S.D.N.Y. 2008), were decided before *Halliburton II.* And *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985 (S.D.N.Y. May 15, 2017), merely cites *Credit Suisse* with no analysis. *Cf. Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015). Nonetheless, *Virtus* places the burden on defendants of demonstrating a lack of price impact by a preponderance of the evidence and embraces the price maintenance theory. *Virtus*, 2017 WL 2022985, at *4-*5 (rejecting defendants' claim that the alleged disclosures could not have impacted the stock price because the truth had already been revealed in other articles as an inappropriate truth-on-the-market defense).

- 14 -

price movement ***does not prove*** that the misstatements did not affect CCA's stock price.  Allen Tr. at 28:23-29:7; *see also* Feinstein Rebut., ¶¶21-22, 34-43.

Contrary to Defendants' contentions, Plaintiff is not introducing a new theory on reply.  Opp. at 16.[24]  The Complaint alleges facts consistent with the price maintenance theory: "Defendants' false statements and omissions inflated the price of CCA securities both ***before*** and during the Class Period."  ¶191; *see also* ¶3 ("Throughout and ***prior to*** the Class Period, defendants engaged in a scheme to defraud . . . ."); ¶37 ("From the beginning of the Class Period ***and even before***, the prisons CCA ran for the BOP were plagued with material deficiencies.").  Until such time as the truth regarding the risks CCA faced as a result of its poor operations manifested themselves in the form of lost business, the Company's stock price remained artificially inflated as investors continued to believe that CCA was living up to its stated value proposition.

The Second, Seventh and Eleventh Circuits have all held that "'theories of "inflation maintenance" and "inflation introduction" are not separate legal categories.'"  *Vivendi*, 838 F.3d at 259 (quoting *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 418 (7th Cir. 2015), and citing *FindWhat*, 658 F.3d at 1316).  And how the stock became inflated in the first place is irrelevant, because each subsequent false statement prevented the price from falling to its true value and therefore caused the price to remain elevated.  Plaintiff is also not required to demonstrate that the stock price was inflated prior to the beginning of the Class Period.  *Glickenhaus*, 787 F.3d at 418.[25]  Nor is Plaintiff required to prove that the alleged misrepresentation played a significant role in the stock's price movement, as Defendants urge.  Opp. at 11-12 (citing the summary judgment

---

[24]  Even if true, courts allow plaintiffs to proceed on the price maintenance theory even if not specifically alleged.  *E.g.*, *Pirnik v. Fiat Chrysler Autos., N.V.*, 2018 U.S. Dist. LEXIS 106990, at *10 n.4 (S.D.N.Y. June 26, 2018) ("Although [p]laintiffs do not use the term 'price maintenance theory' until their reply, their initial submissions make clear that they subscribe to that theory.").
[25]  *Regions Fin.*, 762 F.3d at 1256 (same); *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 174 (N.D. Ill. 2009) (rejecting assertion that plaintiffs "cannot proceed as a class without first demonstrating share price inflation"); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 272 (D. Mass. 2005) (same).

opinion in *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004)). Neither *Halliburton II*, decided ten years after *Crossroads*, nor any "other circuit has embraced this view." *FindWhat.com*, 658 F.3d at 1314 n.33. Rather, Defendants bear the burden of demonstrating a complete lack of price impact, which requires them to analyze ***all*** of the stock price movements under ***any*** theory that could show price impact.[26]

## C.     Defendants' Other Challenges Are Irrelevant

Because price declines accompanying the Yates Memo and the Cibola cancellation announcement conclusively demonstrate price impact, the remainder of Defendants' contentions can never be sufficient to demonstrate a ***lack*** of price impact. Nevertheless, as shown below, their assertions fail.

### 1.     Defendants' Truth-on-the-Market Defenses Are Improper at Class Certification

The contention that "all of the alleged misstatements already had been 'corrected'" (Opp. at 17) should be rejected because it is a quintessential truth-on-the-market defense that "may not be used at the class certification stage to prove an absence of price impact so as to show a lack of predominance because it goes to materiality." *Aranaz*, 302 F.R.D. at 671; *Amgen*, 568 U.S. 455.[27] Truth on the market is subject to a class-wide common answer and requires an examination of the complete evidentiary record, a task suited for the trier of fact.[28] *See* MTD Order at 37.

---

[26]     Thus, Allen's conclusions are also unreliable because, contrary to Defendants' contentions, she did ***not*** analyze all of the alleged misstatements. Feinstein Rebut., ¶29. Among those she ignored was a statement found by the Court to be the most significant: "'Every day we remain focused on providing high-quality, safe and secure facilities that meet the needs of our government partners. By consistently doing so, we have experienced more than three decades of continued growth and contract retention rates in excess of 90 percent.'" MTD Order at 18-19; ¶35. The letter boasted that CCA's "'strong record of operational excellence'" had "'earned CCA the confidence of our government partners.'" *Id.*; MTD Order at 18-19; ¶35.

[27]     "Numerous courts have agreed that a 'truth on the market' defense cannot be used to rebut the presumption of reliance at the class-certification stage." *Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.*, 2018 U.S. Dist. LEXIS 53435, at *13 (N.D. Ill. Mar. 29, 2018) (collecting cases).

[28]     The analysis Allen purportedly conducts regarding purported cost and quality disclosures is unreliable. For example, Allen cites a September 13, 2012 report by *Justice Strategies* as disclosing issues at Adams and notes that there was no statistically significant price reaction following its

- 16 -

## 2. That the Publication of the OIG Review Did Not Result in a Statistically Significant Price Reaction Does Not Prove a Lack of Price Impact

It is undisputed that CCA's stock price declined for several days following the August 11, 2016 OIG Review. *See* Feinstein Rebut., Ex. 3 at 65-66. That it did not decline at a 95% confidence level does not prove the stock price was not "impacted" by Defendants' misstatements and omissions or their correction. Feinstein Rebut., ¶¶51-52; *Carpenters*, 310 F.R.D. at 95 (lack of statistical significance does not prove there was no price impact).

The market did not immediately and fully understand the implications of the OIG Review's observations – masked as they were in denials by CCA and others (*see* Feinstein Rebut., ¶¶53-63) – until the Yates Memo was released, causing the statistically significant stock price decline of 43.8%. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (impact of an FDA warning letter issued nearly three months earlier not felt until the company issued a press release disclosing resulting slowing demand); *Kasper*, 2017 WL 3008510, at *13 ("the Court finds that this disclosure fails to convey the extent of the indictment, suggests that AAC has only recently come to understand the case, and also tempers by claiming the case is without merit"). Where previously disclosed information "included tempering language," it is not sufficient to demonstrate that the information "had been previously disclosed to the market." *Marcus v. J.C. Penney Co.*, 2017 U.S. Dist. LEXIS 33257, at *8 (E.D. Tex. Mar. 8, 2017).

Further, Defendants cannot prove lack of price impact because they have not undertaken the "extremely difficult [task] to isolate the price impact of any one piece of information in the presence of confounding factors." *See In re Petrobras Sec. Litig.*, 862 F.3d 250, 279 (2d Cir. 2017). Here,

---

publication. Allen Rep., ¶63. Yet Allen had no idea what *Justice Strategies* was. *See* Allen Tr. at 206:4-18; *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("corrective information must be conveyed to the public 'with a degree of intensity, and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements"); *see Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1204 (9th Cir. 2016) (market may not credit "an anonymous blogger").

there are at least three confounding factors: (i) statements by CCA and others rejecting the OIG's observations; (ii) the appointment of a Board Member, Stacia Hylton, who CEO Hininger claimed would be a "'valuable asset'" (Ex. O); and (iii) the announcement of a dividend of $0.54 per share (Ex. P).[29] Allen conceded the Board appointment and dividend announcements, at the very least, were "not negative" (Allen Tr. at 136:5-13[30]), and in her report inconsistently claims that CCA's dividend announcement on February 27, 2012, did cause a price increase. *See* Allen Rep., ¶35.

Nor have Defendants credited the confounding information. Feinstein Rebut., ¶¶53-63. For example, Allen did not recall that letters from private prison companies, including CCA, were "***attached to***" the OIG Review and hotly disputed the OIG Review's conclusions. Allen Tr. at 108:16-109:1; ECF No. 99-1 at 70-77. Management and Training Corporation ("MTC") stated that it "***strongly disagrees*** with the conclusions and inferences of [the OIG Report]. Any casual reader would come to the conclusion that contract prisons are not as safe as BOP prisons. ***The conclusion is wrong and is not supported by the work done by the OIG***." ECF No. 99-1 at 76. Allen testified that she did not "particularly consider" whether MTC's denials could have offset the OIG Review's findings. Allen Tr. at 109:16-22. This renders her analysis unreliable. *Kasper*, 2017 WL 3008510, at *13 (criminal indictment of executives "not curative, as it was tempered by a positive financial report"); *Goldman Sachs*, 2018 U.S. Dist. LEXIS 137414, at *15 (faulting defendants' expert for

---

[29]   Likewise, Allen discusses negative reporting by *The Nation* as a purported disclosure without grappling with the effects of CCA's ███████████████████ the reporting, despite ██████████████████████████. Ex. Q; Ex. R; *Pub. Emps.' Ret. Sys. of Miss., P.R. Teachers' Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014) ("After each negative partial disclosure, [d]efendants attempted to mitigate the impact of those disclosures by making contemporaneous misstatements to the market and prevented the full truth from being revealed at once.").

[30]   Allen contends news of both of these announcements was issued after the market closed on August 11, 2016. Allen Tr. at 136:16-21. However, LexisNexis appears to show that several news sources published both announcements prior to the close of trading. *See* Exs. S-U. In any case, while Allen focuses on CCA's stock price return on August 11, 2016, she herself, as well as her colleagues at NERA Economic Consulting, have previously endorsed analyzing multi-day returns when it suited their needs. Ex. V. Here, aside from August 17, CCA's stock price declined ***every single day*** between the publication of the OIG Report on August 11 and the Yates Memo on August 18, 2016. Feinstein Rebut., Ex. 3 at 65-66.

focusing on 36 media reports while ignoring "the presence of the denials and rebuttals that accompanied some of the reports"). CCA itself tried to discredit the OIG Review in its attached response, disputing that it revealed more safety and security issues at private prisons by suggesting that "'inmate demographics and facility locations,'" or varying "interdiction efforts," could explain the disparate data. ECF No. 99-1 at 70. It did so again, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. W ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").[31]

Moreover, nothing in the OIG Review revealed that CCA's BOP operations were in jeopardy.[32] *See* MTD Order at 26. To the contrary, the focus of the OIG Review was that the BOP needed "to improve the monitoring and oversight of its contract prisons." ECF No. 99-1 at iii. Indeed, the very title of the document is "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons." ECF No. 99-1. Allen also conceded that the market was informed of additional information when the Yates Memo was published. Allen Tr. at 188:5-14 (basis for Yates Memo's statements, aside from OIG Review, was that, "over time," poor quality had become apparent).

Even if portions of the Yates Memo had been previously reported with the same "'degree of intensity and credibility,'"[33] which they had not, Allen makes no attempt to disaggregate the impact to CCA's stock price from the new information contained in the Yates Memo, failing to demonstrate a complete lack of price impact as a matter of law.

### 3. The Partial Post-Class Period Recovery in CCA's Stock Price Is Irrelevant

Citing no authority, Defendants contend the rebound in CCA's stock price following the 2016 presidential election demonstrates a lack of price impact. Opp. at 18. Yet, "a bounce back of

<hr/>

[31] Defendants and their cohorts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ disputing the OIG Review's findings further confounding investors. *E.g.*, Ex. X.
CCA's executives also acknowledged in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ Ex. Y ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").
*Ganino*, 228 F.3d at 167; *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996).

the stock's value after an initial drop does not preclude a Section 10(b) claim," [34] and should be resolved by "'a trier of fact.'" *N. Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 788 (M.D. Tenn. 2013).[35]

Even if the subsequent increase in CCA's stock price was relevant (it is not), Allen **admittedly** ignores evidence that any stock price increase was caused by events unrelated to the fraud – for example, the expectation that CCA would benefit from directives that U.S. Immigration and Customs Enforcement dramatically increase the incarceration of immigrants.[36] Allen also ignored that when the Yates Memo was rescinded by the Sessions Memo, CCA's stock price did not increase (as might be expected if Allen were correct) (Allen Tr. at 178:22-179:6), as well as evidence that even the ███████████████████████████████████, prompting CCA's ███████████████ ████████████████████████████████. Ex. Z.

## IV. Conclusion

The Court should grant Class certification, appoint Amalgamated as the Class representative and reaffirm its appointment of Robbins Geller Rudman & Dowd LLP as Class Counsel.

DATED: October 26, 2018          Respectfully submitted,

                                      ROBBINS GELLER RUDMAN & DOWD LLP
                                      CHRISTOPHER M. WOOD, #032977
                                      CHRISTOPHER H. LYONS, #034853

                                         s/ Christopher M. Wood
                                         CHRISTOPHER M. WOOD

---

[34] The Private Securities Litigation Reform Act of 1995's 90-day look back also renders almost all of CCA's rebound irrelevant to calculating damages, which is itself a common question, supporting certification. *Luna v. Marvell Tech. Grp., Ltd.*, 2017 U.S. Dist. LEXIS 178674, at *10-*11 (N.D. Cal. Oct. 27, 2017) ("The Exchange Act's ninety-day damages period further prevents exactly the defense espoused here – that eventual return to purchase price wipes out interim losses.").

[35] *See also Marvell*, 2017 U.S. Dist. LEXIS 178674, at *10 ("The mere fact that at some later time Marvell's stock returned to its purchase price does not cure the alleged fraud."); *Acticon AG v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (same).

[36] Allen Tr. at 170:13-15 ("I didn't particularly try to parse the various reasons."); *id.* at 180:13-18 ("there was an expectation that the Trump administration may increase incarcerations of immigrants"); Ex. K at 1 ("[I]n our view, investors will continue to focus on potential future ICE contract wins related to President Trump's strict border/immigration plans.").

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 26, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<u>s/ Christopher M. Wood</u>
CHRISTOPHER M. WOOD
ROBBINS GELLER RUDMAN
    & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)
E-mail:  CWood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anna E. Berces**
  anna.berces@lw.com

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,nchanin@barrettjohnston.com,jmartin@rgrdlaw.com,ggilbert@barrettjohnston.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`