UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE JANUARY 18, 2019 ORDER DENYING CLASS CERTIFICATION |

**[REDACTED]**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....... 1

II. ARGUMENT ....... 3

A. The Evidence Shows Price Impact ....... 4

1. Lack of a Statistically Significant Market Reaction to the OIG Review Does Not Establish the Lack of Price Impact ....... 4

a. The Express Limitations of the OIG Review Demonstrate That It Was Not Fully Corrective of the Alleged Fraud ....... 4

b. Evidence Demonstrates that the OIG Review Did Not Disclose CCA's Ongoing Problems or Its Fractured Relationship with the BOP ....... 7

2. The Cibola Announcement Establishes Price Impact ....... 12

B. The Order Contravenes Supreme Court Precedent ....... 14

C. The Order Misapplied the Burdens ....... 18

III. CONCLUSION ....... 19

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................2, 15, 16, 17

*Andren v. Alere, Inc.*,
2018 U.S. Dist. LEXIS 69045 (S.D. Cal. Apr. 24, 2018)....................3

*Baker v. Seaworld Entm't, Inc.*,
2017 U.S. Dist. LEXIS 196235 (S.D. Cal. Nov. 29, 2017)....................17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................15, 16, 18, 19

*Berti v. VideoLan Techs.*,
1998 U.S. Dist. LEXIS 18066 (W.D. Ky. June 10, 1998)....................14

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
710 F.2d 1165 (6th Cir. 1983), *cert. denied*, _U.S._, 138 S. Ct. 1702 (2018)....................18

*Burges v. BancorpSouth, Inc.*,
2017 U.S. Dist. LEXIS 97953 (M.D. Tenn. June 26, 2017)....................19

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)....................3

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)....................3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2015 U.S. App. LEXIS 19519 (5th Cir. Nov. 4, 2015)....................15, 16, 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....................2, 16, 17

*Grant v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*,
2017 WL 1153927 (M.D. Tenn. Mar. 27, 2017)....................3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)....................15, 16, 17, 18

*In re Omnicom Grp., Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 31963 (S.D.N.Y. Apr. 30, 2007)....................17

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)....................17

**Page**

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)....................19

*Jaynes v. United States*,
69 Fed. Cl. 450 (2006)....................3

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014)....................17

*Nutraceutical Corp. v. Lambert*,
No. 17-1094 (U.S. Nov. 27, 2018)....................3, 4

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)....................18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................14

**STATUTES**

Federal Rules of Civil Procedure
23....................16
23(b)(3)....................15
23(f)....................3
30(b)(6)....................8

Federal Rules of Evidence
301....................18, 19

# I. INTRODUCTION

On January 18, 2019, the Court issued an order denying Lead Plaintiff's motion for class certification.[1] Plaintiff respectfully seeks reconsideration of the Order on two grounds: (1) evidence not before the Court, and some evidence before the Court that was overlooked, proves that the OIG Review was not a complete corrective event, as Defendants argued and the Order concluded; and (2) the Order misapplied the law in allocating the burdens of proof and persuasion to demonstrate price impact, and in basing its holding, in part, on findings of materiality and loss causation that do not provide a proper basis for denying certification of a class.

As to the first ground for reconsideration, the evidence establishes that the OIG Review could not have been a complete disclosure of the relevant truth alleged to have been concealed because, as detailed herein:

(1) the OIG Review only assessed the safety and security of private prisons between FY 2011-2014, noted that any violations described therein had been corrected, and was directed solely at improving BOP oversight of private prison contractors on the assumption that existing contractual relationships would continue;[2]

(2)

(3)

[1] "Order" refers to the Memorandum and Order denying Lead Plaintiff's motion for class certification. ECF Nos. 143-144. This brief presumes familiarity with the Order, and uses the same acronyms and terms (*e.g.*, OIG, OIG Review, CCA, Yates Memo, etc.) previously defined in the Order or the underlying briefs filed by the parties.

[2] The OIG Review expressly found, for example, that the facilities it visited had "corrected the safety and security deficiencies that the BOP had identified," and that "the BOP [had] determined that each prison was sufficiently compliant with the safety and security aspects of its contract to continue with the contract during the period covered by our review." Declaration of Willow E. Radcliffe in Support of Lead Plaintiff's Motion for Reconsideration of the January 18, 2019 Order Denying Class Certification ("Radcliffe Decl."), Ex. A at *ii* (all concurrent "Ex._" references are to the Exhibits to Radcliffe Decl. unless otherwise noted. The declaration also sets forth when each of the documents cited herein was produced by Defendants).

Because this evidence, including newly discovered evidence, was not before the Court, or was overlooked, the Order's conclusion that the OIG Review disclosed all the information investors needed to understand the risks of investing in CCA securities was incorrect. The OIG Review's focus on old data, together with its underlying assumption that current conditions were improved and contracts would continue, cogently explains the lack of a statistically significant price reaction to its publication.[3] The market reaction to the Yates Memo – which revealed the continuing poor performance of the facilities resulting in the cancellation of private prison contracts – therefore demonstrates that the alleged fraud impacted the price of CCA stock, as does the market reaction to the earlier cancellation of the Cibola contract, which represented a partial manifestation of the concealed risks and their financial impact.[4]

As to the second ground, the Order misapplies the law in concluding that it was Plaintiff's burden to demonstrate price impact for the statistically significant declines accompanying the Yates Memo and the cancellation of the Cibola contract. In particular, the Order was incorrect in concluding that a lack of price impact can be established by determining whether an alleged price decline is "'corrective'" or whether the information causing a decline was immaterial because the truth was already on the market, as both represent findings that the Supreme Court has held cannot form the basis for a decision to refuse to certify a class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ("*Halliburton I*"). As to the Cibola price decline, the Order further erred in concluding that price

---

[3]   So too does confounding information in the OIG Review. While we respectfully disagree with the Order's conclusions in this regard, we recognize that the issue was considered and seek reconsideration as to that issue only on the ground that the Order misapplied the law in placing the burden on the Plaintiff to address that information.

[4]   ███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

2

impact can only be demonstrated by price declines that accompany the revelation of fraud. Again, the Supreme Court has recognized that fraud-caused inflation can come out of a stock price in a myriad of ways, including by leaking out as concealed risks manifest before the existence or full extent of the fraud is revealed. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). Price declines like Cibola accompanying such leakage are therefore sufficient to show price impact.

For all of these reasons, and for the other reasons explained below, Plaintiff respectfully requests that the Court reconsider its decision and certify the class.

## II. ARGUMENT

Because "a district court's order denying or granting class status is inherently tentative," (*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978)), courts have held that traditional standards for reconsideration do not apply to a court's ability to alter or amend a class certification decision under Federal Rules of Civil Procedure ("Rule") 23(c)(1)(C). *E.g.*, *Jaynes v. United States*, 69 Fed. Cl. 450, 453 (2006); *Andren v. Alere, Inc*., 2018 U.S. Dist. LEXIS 69045, at *4-*5 (S.D. Cal. Apr. 24, 2018). In any case, "[i]t is within the sole discretion of the court to determine if a prior ruling should be reconsidered, and the Sixth Circuit has declined to impose any conditions or limitations upon the Court's power to review a prior ruling." *Grant v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 2017 WL 1153927, at * 2 (M.D. Tenn. Mar. 27, 2017).

Plaintiff has also filed a petition for interlocutory review to preserve its rights under Rule 23(f) because there is uncertainty over whether this Motion would toll the time for filing it. *See Nutraceutical Corp. v. Lambert*, No. 17-1094 (U.S. Nov. 27, 2018), argued, awaiting decision. The filing of a petition for interlocutory review does not deprive the District Court of jurisdiction. Fed. R. Civ. P. 23(f). Nor does it bar the Court's reconsideration of its Order.

## A. The Evidence Shows Price Impact

### 1. Lack of a Statistically Significant Market Reaction to the OIG Review Does Not Establish the Lack of Price Impact

The OIG Review was intended to be an evaluation of the BOP's conduct, limited its comparative review to FY11 through FY14 data, and conveyed to investors that any deficiencies it had identified had been corrected. Ex. A at *ii*. [REDACTED] It was not until the Yates Memo was released that the risk of CCA's ongoing severely deficient and poor quality operations was disclosed and investors learned of the risks those conditions presented to CCA's ability to continue operating private prisons under BOP contracts.

#### a. The Express Limitations of the OIG Review Demonstrate That It Was Not Fully Corrective of the Alleged Fraud

The stated purpose of the OIG Review was to "examine how the BOP monitored its contract prisons for the period ***FY 2011 through FY 2014***."[5] Ex. A at 3. It concluded that while "the BOP relies on contract prisons to house federal inmates and help alleviate overcrowding at its own institutions" (*id*. at 44), the BOP should "evaluate why contract prisons had more safety and security incidents per capita than BOP institutions in a number of key indicators, and identify appropriate action, if necessary," and "improve monitoring and oversight of BOP contract prisons." *Id*. at 45. Thus, the OIG Review was focused on the BOP's oversight, ***not*** on the current conditions of the

[5] All citations and footnotes omitted and emphasis added unless otherwise indicated.

Case 3:16-cv-02267 Document 150 Filed 02/01/19 Page 8 of 27 PageID #: 4010

facilities or assessment of whether private prison contracts should continue. [REDACTED]

[6] Thus, nothing in the OIG Review could have revealed that the "low quality of [CCA's] services was leading one of its most important client relationships ***to the brink of collapse***." Memorandum of the Court to Defendant's Motion to Dismiss (ECF Nos. 76-77) ("MTD Order") at 36 (recognizing theory of fraud pled in Complaint). On the contrary, the OIG Review's conclusions regarding safety and security expressly disclaim the notion that the issues identified were sufficient to call CCA's existing and future contracts into question, noting that the facilities it visited had ***"corrected the safety and security deficiencies that the BOP had identified***," and that "the BOP [had] determined that each prison was sufficiently compliant with the safety and security aspects of its contract to continue with the contract during the period covered by our review." Ex. A at *ii*.

Moreover, the OIG Review could not have given a "full and truthful contemporaneous representation of the business fundamentals and client relationships on which [a CCA] investor's own prediction could be based" (MTD Order at 33), because its analysis of safety and security-related incidents stopped in FY14.[7] Ex. A at 20. Not only did it not include [REDACTED] it also "excluded inmate deaths" and "the clinical adequacy of inmate medical care fell outside the scope of [its] review." *Id.*, Ex. A. The market was thus unable to fully

6 All ¶_ or ¶¶_ citations herein are to the Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 57) ("Complaint").

7 The BOP's fiscal year ends on September 30.

"evaluate the probability of [a BOP policy] shift and therefore price that risk into its valuation of [CCA]." MTD Order at 37.

Thus, the OIG Review did not disclose the real risk faced by CCA – [REDACTED] Rather, the OIG Review was directed solely at contract oversight assuming existing contracts would be renewed. In fact, its recommendations that the BOP "improve the monitoring and oversight of its contract prisons" implicitly acknowledged that the use of private prisons was expected to continue. Ex. A at *iii*. The BOP itself "continue[d] to caution against drawing comparisons of contract prisons to BOP operated facilities as the different nature of the inmate populations and programs offered in each facility limit such comparisons," further suggesting that, irrespective of other concerns it may have had regarding CCA, the BOP did not necessarily agree with the OIG Review's comparative analysis, much less that it thought the problems were so bad that existing contracts should not be renewed. *Id*., at 68. And, just days earlier on August 4, 2016, and [REDACTED] Defendants had falsely reassured investors that the "quality of [their] operations," supported their belief that CCA's "renewal rate on existing contracts," would "remain high." ¶¶132-133.

While the historic problems identified in the OIG Review may have been a contributing factor in the DOJ's decision to reduce reliance on private prisons generally, evidence adduced in discovery also demonstrates that [REDACTED]



The Yates Memo itself also identifies additional factors besides the OIG Review as justifying the DOJ's decision to reduce or end reliance on private prisons. This includes the fact that private prisons "do not provide the same level of correctional services, programs, and resources," and fail to provide comparable rehabilitative services. Ex. D at 1; ¶¶157-158, 170(a). Wall Street analysts quickly picked up on the fact that the Yates Memo had revealed – for the first time – that the Cibola contract had not been renewed as part of the initiative to reduce the use of private prisons which the Yates Memo indicated was due to their poor quality, lower services, lack of proper staffing, higher costs and other reasons stated in the memo., Ex. E; *see also* Ex. D at 2 (discussing cancellation of 1200 bed facility (*i.e.* Cibola) as the first step in an effort to eliminate use of private prisons).

Both the evidence and the face of the OIG Review show that the OIG Review could not have fully revealed the relevant truth alleged in the Complaint and upheld by the Court. Therefore, the Order should be reconsidered.

**b. Evidence Demonstrates that the OIG Review Did Not Disclose CCA's Ongoing Problems or Its Fractured Relationship with the BOP**







Case 3:16-cv-02267    Document 150    Filed 02/01/19    Page 14 of 27 PageID #: 4016



[redacted] Meanwhile, in both February and May 2016, CCA had again told investors its "renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, . . . the quality of our operations." ¶¶132-133. Similarly, Hininger's annual letter to shareholders in March 2016 declared "We take pride in our strong record of operational excellence that has earned CCA the confidence of our government partners." ¶35. Again, statements like these maintained fraud-caused inflation in CCA's stock price, and nothing in the OIG Review could possibly have eliminated it.

### 2. The Cibola Announcement Establishes Price Impact

Separate and apart from the evidence that shows the OIG Review was not a complete disclosure of the fraud, the evidence also shows that the price decline resulting from the loss of the Cibola contract ***was*** a partial (albeit incomplete) disclosure of the fraud, such that it independently establishes price impact. In particular, the loss of the Cibola contract reflected a manifestation of the concealed risks of continuing performance problems and the likelihood that those conditions would cause CCA's BOP contracts not to be renewed.

[redacted]

The non-renewal of the Cibola contract was announced on August 3, 2016, a week before the release of the OIG Review, causing a statistically significant 6.4% decline in the price of CCA's

common stock. CCA said in the announcement that it was reducing its FY16 earnings guidance by $0.01 to reflect the loss of the contract, further alerting investors to the economic consequences of the alleged fraud, even if the fraud itself had yet to be revealed. Reply at 5, 10-11 (ECF No. 121); Feinstein Rebuttal at ¶82.[11]

[11] The "Feinstein Rebuttal" refers to the Rebuttal Report of Professor Steven P. Feinstein, attached as Exhibit E to the Declaration of Willow E. Radcliffe in Support of Reply in Further Support of Lead Plaintiff's Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel (ECF No. 122).

[12] "Sur-Reply" refers to Defendants' Sur-Reply in Opposition to Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel (ECF No. 134).


Case 3:16-cv-02267 Document 150 Filed 02/01/19 Page 17 of 27 PageID #: 4019



[13]

Thus, the price decline accompanying the announcement that the Cibola contract was not renewed and corresponding downward guidance demonstrates price impact.

### B. The Order Contravenes Supreme Court Precedent

Additional grounds exist for the Court to reconsider the Order. Whether the relevant truth had previously entered the market, and whether the disclosures at issue are causally connected to the alleged fraud are questions of materiality and loss causation. Because both of these inquires produce classwide answers on the merits, their very existence ***supports***, rather than prevents, certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ('"What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."'). Nonetheless, the Order prematurely resolved, at Defendants' urging, these common issues on an incomplete record in determining when the "relevant truth" was revealed. Order at 15, 18.

---

13 *E.g., Berti v. VideoLan Techs.*, 1998 U.S. Dist. LEXIS 18066, at *21 (W.D. Ky. June 10, 1998) ('"Even in a fraud on the market case, corporate insiders are not relieved of their duty to disclose material information where that information has received only brief mention in a few poorly-circulated or lightly-regarded publications."').

It is not that Defendants can never challenge whether the truth was revealed at some point before the Yates Memo, or whether the Yates Memo or the news of Cibola's nonrenewal were causally connected to the alleged fraud. The opportunity to do so, however, is at trial. *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 U.S. App. LEXIS 19519, at *6-*8 (5th Cir. Nov. 4, 2015) ("*Halliburton III*"). It was manifest error for the Court to decide the issues common to the class under the guise of "price impact."

***First***, in *Amgen*, 568 U.S. 455, the Supreme Court rejected the notion that a defendant can assert a '"truth-on-the-market"' (*id*. at 481) defense to rebut the *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) presumption of reliance. Like here, the *Amgen* defendants conceded market efficiency, yet claimed that "evidence . . . demonstrated that the market was well aware of the truth regarding its alleged misrepresentations and omissions." *Amgen*, 568 U.S. at 464. Like here, the *Amgen* defendants asserted a '"truth-on-the-market,"' defense to defeat Rule 23(b)(3)'s predominance requirement. *Id.* at 481. The Supreme Court rejected these contentions, finding them to be a '"matter for trial."' *Id.* at 481-82 ("'truth-on-the-market'" rebuttal evidence properly disregarded because "the potential immateriality of Amgen's alleged misrepresentations and omissions is no barrier to finding that common questions predominate"); Reply at 16. This is not because materiality is unrelated to price impact, but rather because "even a definitive rebuttal on the issue of materiality would not undermine the predominance of questions common to the class," and "individual reliance questions will not overwhelm questions common to the class." *Amgen*, 568 U.S. at 481; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) ("*Halliburton II*") ("materiality can be left to the merits stage without risking the certification of classes in which individual issues will end up overwhelming common ones").

In this respect, the Order was not wrong that Defendants' argument was "an ancillary component of its price impact analysis." Order at 15. But *Amgen*'s fundamental holding is that not

every method by which a Defendant may seek to rebut the presumption of reliance is permissible at class certification, and challenging materiality, a necessary prerequisite to reliance under *Basic*, is nonetheless expressly prohibited. *Amgen*, 568 U.S. at 466-67 ("Merits questions may be considered to the extent – ***but only to the extent*** – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied . . . ***the pivotal inquiry is whether proof of materiality is needed to ensure that the questions of law or fact common to the class will*** '***predominate over any questions affecting only individual members***.'"). As the Fifth Circuit recognized, "[t]he Court did not hold that issues that would otherwise be strictly merits issues under *Amgen* can be raised at the class certification stage merely because they bear on the issue of price impact . . . . *Halliburton II* . . . only allows defendants to introduce at the class certification stage evidence of lack of price impact ***that Amgen does not otherwise preclude***." *Halliburton III*, 2015 U.S. App. LEXIS 19519, at *6-*7. Because the Order is irreconcilable with *Amgen*, it should be reconsidered.

***Second,*** while the Order indicated that "[i]t is difficult to imagine how one could perform a price impact analysis in a price maintenance case ***without*** considering the threshold issue of whether the relevant event or disclosure was [corrective]," Order at 15, *Halliburton I*, prohibits precisely this inquiry. 563 U.S. at 813 ("The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory. Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory."); *Halliburton III*, 2015 U.S. App. LEXIS 19519, at *7-*8 ("a finding that the relevant disclosure . . . is not corrective [and] would defeat every plaintiff's claim on the merits . . . even though it bears on the issue of price impact, it does not affect the issue of predominance at the class certification stage"); *Baker v. Seaworld Entm't, Inc.*, 2017

U.S. Dist. LEXIS 196235, at *38-*39 (S.D. Cal. Nov. 29, 2017) (Agreeing, in a price maintenance case, that whether a disclosure can be considered corrective '"is a class loss causation argument that is premature . . . at this stage."').[14]

Consistent with *Halliburton II,* even in a price maintenance case, Defendants remain free to attempt to rebut the presumption of reliance by proving a lack of price impact with respect to the alleged misstatements and their alleged correction. This may be challenging in many cases, and it should be. Consideration of "price impact evidence" is supposed to be "limited in scope." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1258-59 (11th Cir. 2014). What *Halliburton I*, *Amgen*, and *Halliburton II* show Defendants cannot do, and what they have done here, is to indirectly attack price impact by challenging the merits of Plaintiff's case (such as whether an alleged disclosure was indeed corrective), under the guise of so-called price impact. "[W]here the evidence relates to an issue that is 'susceptible to common, classwide proof' and whose resolution in favor of the defendant will 'necessarily defeat every plaintiff's claim on the merits,' the consideration of such evidence should be left to the merits stage." *Halliburton III*, 2015 U.S. App. LEXIS 19519, at *6-*8 (quoting *Halliburton II*, 573 U.S. at 282).

***Third***, even if issues of loss causation could be considered at this stage, the finding of a lack of price impact was contrary to the evidence [REDACTED] and even after the OIG Review was published. For example, Defendants had reassured investors on May 5, 2016, and again even on August 4, 2016, that they believed CCA's "renewal rate on existing contracts remains high as a result of a variety of reasons including . . . the

---

[14] *In re Omnicom Grp., Inc. Sec. Litig*., 597 F.3d 501 (2d Cir. 2010), which the Defendants cited, and the Court relied upon (Order at 14), was an appeal of a summary judgment order, at which loss causation *was* appropriately at issue. At class certification, however, the district court recognized that "it would be inappropriate to render the determination as to loss causation at this stage of the litigation." *In re Omnicom Grp., Inc. Sec. Litig*., 2007 U.S. Dist. LEXIS 31963, at *27 (S.D.N.Y. Apr. 30, 2007).

quality of our operations." ¶¶132-133; MTD Order at 18, 31-32. These statements were false because, "CCA failed to disclose that its contracts were at risk of being terminated or not renewed because of the poor quality of its facilities." ¶134. Defendants continued to mislead investors about the risks of contract renewal due to poor quality when the OIG Review was published, when they challenged its conclusions and asserted that its criticisms of CCA's operations were unfounded, even [redacted] This further explains why both the Cibola and Yates Memo price declines can be used to show price impact.

### C. The Order Misapplied the Burdens

Having found Plaintiff sufficiently invoked the *Basic* presumption of reliance, Defendants had the burden of introducing evidence sufficient to rebut that. Reply at 8. While the Court cited Fed. R. Evid. 301 for the proposition that "the burden of ***production*** shifts to CoreCivic to rebut the presumption" (Order at 10), courts have expressly rejected the notion that it is Plaintiff, not Defendants, who bear the burden of ***persuasion*** in seeking to rebut the presumption of reliance. For example, the Second Circuit explained that "[i]n *Halliburton II* the Supreme Court stated that '[a]lthough the [*Basic*] presumption is a judicially created doctrine designed to implement a judicially created cause of action, we have described the presumption as a substantive doctrine of federal securities–fraud law.'" *Waggoner v. Barclays PLC*, 875 F.3d 79, 103 (2d Cir. 2017) (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983), *cert. denied*, _U.S._, 138 S. Ct. 1702 (2018). "Rule 301 therefore imposes no impediment to our conclusion that the burden of persuasion, not production, to rebut the *Basic* presumption shifts to Defendants." *Id.*

Therefore, in order to meet ***their*** burden, ***Defendants*** were required to ***prove*** by the preponderance of the evidence that the corrections of their alleged misstatements had no price impact. *Burges v. BancorpSouth, Inc.*, 2017 U.S. Dist. LEXIS 97953, at *23 (M.D. Tenn. June 26, 2017) ("[t]he burden to prove lack of price impact by a preponderance of the evidence rests on the

defendant”). Here, the Order impermissibly shifted that burden to Plaintiff to prove price impact. For example, it was not incumbent on Plaintiff to persuade or prove to this Court that the confounding letters disputing the OIG Review “wholly offset the price impact” of the report. Order at 17. The burden was on Defendants to prove this confounding information had zero impact and it is an “extremely difficult [task] to isolate the price impact of any one piece of information in the presence of confounding factors.” *See In re Petrobras Sec.*, 862 F.3d 250, 279 (2d Cir. 2017). Further, it’s not Plaintiff who needed to “demonstrate price impact” for the Yates Memo or the August 4, 2016 disclosure of the nonrenewal of CCA’s contract with the BOP but rather Defendants who had the heavy burden of proving the ***complete*** lack of price impact on these disclosures.

Applying the proper burdens, reconsideration is warranted and the class should be certified.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider the Order and certify the proposed class.

DATED: February 1, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 1, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: willowr@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anna E. Berces**
  anna.berces@lw.com
- **Kenneth J. Black**
  kennyb@rgrdlaw.com
- **Paul Kent Bramlett**
  pknashlaw@aol.com
- **Robert P. Bramlett**
  robert@bramlettlawoffices.com
- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com
- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com
- **Brian T. Glennon**
  brian.glennon@lw.com
- **Michael Goldberg**
  michael@goldberglawpc.com
- **Marc Gorrie**
  mgorrie@pomlaw.com
- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com
- **J. Alexander Hood , II**
  ahood@pomlaw.com
- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com
- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com
- **Jerry E. Martin**
  jmartin@barrettjohnston.com,eseaborn@barrettjohnston.com,nchanin@barrettjohnston.com,jmartin@rgrdlaw.com,ggilbert@barrettjohnston.com
- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com
- **Faraz Mohammadi**
  faraz.mohammadi@lw.com
- **Willow E. Radcliffe**
  willowr@rgrdlaw.com
- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com
- **Brian Schall**
  brian@goldberglawpc.com
- **David J. Schindler**
  david.schindler@lw.com
- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,9101599420@filings.docketbird.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)