UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>       Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger |

## DEFENDANTS' MOTION FOR CERTAIN CONFIDENTIAL DOCUMENTS TO REMAIN UNDER SEAL

Pursuant to the Stipulation and Protective Order entered in this case (Dkt. No. 84) (the "Protective Order"), Defendants respectfully request that the Court maintain the sealing of the confidential exhibits identified below, which Plaintiff filed in support of its Motion for Reconsideration of the January 18, 2019 Order Denying Class Certification (the "Motion") (Dkt. No. 148). These exhibits – some of which the Court has already found to be confidential and which it previously ordered to be sealed – are non-public documents which Defendants have designated "CONFIDENTIAL" pursuant to the Revised Stipulation and Protective Order (the "Protective Order") (Dkt. No. 86). Each exhibit contains confidential, proprietary information concerning the business strategies and operations of CoreCivic, Inc., formerly known as

- 1 -

Corrections Corporation of America, Inc. (the "Company"), which, if made public, could harm the Company's competitive standing in the marketplace. Furthermore, the public's minimal interest in the contents of these exhibits, and the narrowly tailored nature of Defendants' motion, weigh in favor of maintaining the exhibits under seal.

### Procedural History and the Documents That Should Remain Sealed

In support of its Motion, Plaintiff moved the Court for leave to conditionally file under seal (among other exhibits) twenty-nine documents produced by the Company.[1] *See* Motion for Leave to File Under Seal (Dkt. No. 147) and Exhibits B-C, F-HH filed under seal (Dkt. Nos. 151.2-115.3 and 151.6-151.34). The Court granted Plaintiff's motion, sealed all twenty-nine documents, and gave Defendants until February 8, 2019 to file a motion for the continued sealing of the documents. (Dkt. No. 153.) Through this motion, Defendants respectfully request the Court to maintain the seal on the following exhibits:

1. Email dated August 5, 2016 from Kim White to Ben Elrod, with the subject line "Fwd: OIG Report," filed as Exhibit B to the Motion ("Exhibit B" or "Ex. B");

2. Email dated August 11, 2016 from Ronald Thompson to Michael Nalley, with the subject line "RE: OIG Report," filed as Exhibit C to the Motion ("Exhibit C" or

---

[1] As it did in connection with its Opposition to Defendants' Motion to Compel Disclosure of Identity of Plaintiff's Confidential Witness (Dkt. 103), Plaintiff has once again ignored the terms of the Protective Order, which provides in pertinent part:

> [C]ounsel for the Receiving Party seeking to use Confidential Discovery Material in connection with or in support of any motion or court proceeding shall advise counsel for the Producing Party seven (7) business days in advance of the filing to give the Producing Party the opportunity to move the Court for leave to file the Confidential Discovery Material under seal (or to seek substantially similar protection in the manner provided for by the applicable local rules).

Protective Order, ¶ 12. Plaintiff did not give the required notice prior to filing these confidential documents.

"Ex. C") (the Court previously found that this document was confidential and should remain under seal (Dkt. No. 128));

3. Email dated October 30, 2014 from Michelle Barker to Jeb Beasley, Bart VerHulst and Brian Ferrell, with the subject line "RE: RFP-PCC-022 (CAR 15)," filed as Exhibit F to the Motion ("Exhibit F" or "Ex. F");

4. Email dated November 13, 2014 from David Garfinkle to Harley Lappin and Damon Hininger, with the subject line "Fwd: CAR 15 Request for Revisions #5," filed as Exhibit G to the Motion ("Exhibit G" or "Ex. G");

5. Email dated December 29, 2014 from Brad Wiggins to Todd Mullenger, with the subject line "Fwd: CAR 15," filed as Exhibit H to the Motion ("Exhibit H" or "Ex. H");

6. Email dated December 30, 2014 from Harley Lappin to Kim White, with the subject line "Re: Wow," filed as Exhibit I to the Motion ("Exhibit I" or "Ex. I");

7. Email dated December 30, 2014 from Tony Grande to Jeb Beasley, with the subject line "Fwd: Bid protest timeline_109029186(1)," filed as Exhibit J to the Motion ("Exhibit J" or "Ex. J");

8. Document labeled "Car 15 Debriefing," filed as Exhibit K to the Motion ("Exhibit K" or "Ex. K");

9. Email dated January 26, 2015 from Jeb Beasley to Bart VerHulst, with the subject line "RE: Board book draft," filed as Exhibit L to the Motion ("Exhibit L" or "Ex. L");

10. Email dated August 24, 2012 from Lane Blair to Natasha Metcalf CC'ing Ronald Thompson, with the subject line "FW: Notice of Concern at Adams," filed as Exhibit M to the Motion ("Exhibit M" or "Ex. M");

11. Email dated January 8, 2015 from Kim White to Melanie Carnaggio, with the subject line "RE: Adams/Cibola," filed as Exhibit W to the Motion ("Exhibit W" or "Ex. W");

12. Email dated January 8, 2015 from Don Murray to Steve Groom, with the subject line "RE: Adams/Cibola," filed as Exhibit X to the Motion ("Exhibit X" or "Ex. X");

13. Email dated January 9, 2015 from Tom Beasley to Jeb Beasley, with the subject line "Re: Adams/Cibola," filed as Exhibit Y to the Motion ("Exhibit Y" or "Ex. Y");

14. Email dated October 22, 2015 from Tony Grande to Damon Hininger, with the subject line "Fwd: Preliminary Report – Cibola," filed as Exhibit Z to the Motion ("Exhibit Z" or "Ex. Z");

15. Email dated October 23, 2015 from Jeb Beasley to Bart VerHulst, with the subject line "RE: Cibola CFM," filed as Exhibit AA to the Motion ("Exhibit AA" or "Ex. AA");

16. Email dated October 26, 2015 from Jeb Beasley to Robert Hobart, with the subject line "RE: Next week," filed as Exhibit BB to the Motion ("Exhibit BB" or "Ex. BB");

17. Email dated January 5, 2016 from David Garfinkle to Michael Nalley, with the subject line "FW: Cibola – NOC," filed as Exhibit CC to the Motion ("Exhibit CC" or "Ex. CC");

18. Email dated May 11, 2016 from Michael Nalley to Michael Nalley, with the subject line "FW: Talking Points for Discussion with Mr. Lappin," filed as Exhibit DD to the Motion ("Exhibit DD" or "Ex. DD");

19. Email dated June 16, 2016 from Michael Nalley to Jeb Beasley, with the subject line "RE: Cibola Medical Review," filed as Exhibit EE to the Motion ("Exhibit EE" or "Ex. EE"); and

20. Email dated August 1, 2016 from Jeb Beasley to Wendy Beasley CC'ing Tom Beasley, Melissa Beasley and Matt Beasley, with the subject line "Re: Cibola County Correctional Center," filed as Exhibit HH to the Motion ("Exhibit HH" or "Ex. HH") (the Court previously found that this document was confidential and should remain under seal (Dkt. No. 128)).

Defendants have no objection to the Court unsealing Exhibits N-V, Z, FF and GG to Plaintiff's Motion. (Dkt. Nos. 151.14-151.22, 151.26, 151.32-33.)

## Argument

In determining the appropriateness of sealing court records the Court may consider, among other things, "the privacy rights of participants or third parties, trade secrets, and national security." *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016). With respect to the protection of a party's trade secrets, "[t]he Court should not allow its docket to be used as a source of business information that might harm a litigant's competitive standing," *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2017 U.S. Dist. LEXIS 118712, at *14 (W.D. Ky. July 28, 2017) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). Thus, the Court may seal "documents contain[ing] commercial[] information that, if made available for . . . competitors to view, would put [a party] at a disadvantage in the marketplace." *Id*. Here, good cause exists to maintain Exhibits B, C, F-M, W-Z, AA-EE, and HH to the Motion under seal as the public disclosure of these communications would reveal proprietary information and strategic business decisions and processes of the Company.

First, Exhibits F-L and DD consist of internal email chains and documents that reflect the processes by which the Company submits a contract bid, evaluates a request for response to a contract bid by a government partner, and makes strategic business decisions following a contract negotiation or decision. *See* Motion, Exs. F-L, DD. The corrections industry is intensely competitive and, if published, the Company would be competitively harmed, particularly with respect to bidding for future government contracts. Simply stated, these communications and documents reflect the Company's "proprietary business communications and operations," which, if made public, would give competitors an advantage in the marketplace. *See Caudil*, 2017 U.S. Dist. LEXIS 118712 at *9.

Second, Exhibits B-C, M, W, X, Z, AA, CC and EE consist of internal email chains in which the Company analyzes and assesses its response to the results of facility audits conducted by its government partners. *See* Motion, Exs. B-C, M, W, X, Z, AA, CC and EE. Most fundamentally, the Company's response to partner audits must remain confidential in order to maintain the safety and security of inmates and security personnel at its facilities. Furthermore, audits are a primary mechanism by which the Company's government partners provide feedback regarding the Company's performance. The Company's analysis, evaluation, and response to audits are business functions that are essential to maintaining the Company's relationships with its partners and to procuring future business. These communications, if disclosed, could be used by competitors "as a source of business information that might harm [the Company's] competitive standing." *See Nixon,* 435 U.S. at 598. In addition, these analyses and communications could negatively impact the Company's standing with its governmental partners, which, of course, could also harm the Company's business and competitive standing.

Third, Exhibits Y and HH consist of email chains which begins with an internal communication from Company executives to the Company's employees announcing news

- 6 -

regarding the Company's facilities. *See* Motion, Exs. Y and HH. Specifically, the email chains relate to (1) the results of audits at two of the Company's facilities, and (2) a government partner's decision not to renew its management contract with one of the Company's facilities. In both initial emails, the executives outline and discuss the Company's strategy for responding to these events. *See id*. If disclosed, a competitor may attempt to take advantage of, among other things, the timing and protocol described in Exhibit HH to target and recruit employees away from the Company following the announcement of a contract non-renewal. *See Caudill,* 2017 U.S. Dist. LEXIS 118712 at *14. The remainder of both email chains involve communications between a Company employee and his immediate family regarding (a) the internal communications among management and (b) the Company's business strategies. While the Sixth Circuit has long recognized that it must consider "privacy rights of…third parties" when determining whether to allow access to a document, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) (citing *Nixon*, 435 U.S. 589, 598), here the third parties include the co-founder of the Company and members of his immediate family. These communications are thus not that of the lay-person – their analysis necessarily amplifies the sensitive business nature of the information and would further put the Company "at a disadvantage in the marketplace." *See Caudill,* 2017 U.S. Dist. LEXIS 118712 at *14.

Finally, Exhibit BB consists of an email chain between Company executives and a Company consultant. In the email chain, the executives evaluate the result of facility audits, reveal the Company's internal decision-making process with respect to the management of its employees and discuss strategy with respect to its government partners. Communications with consultants that reveal sensitive business information such as this are properly sealed. *See Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2019 U.S. Dist. LEXIS 9684, *11-12 (W.D. Ky. Jan 18, 2019) (maintaining seal over document containing an exchange between a company and its

- 7 -

Case 3:16-cv-02267   Document 155   Filed 02/08/19   Page 7 of 12 PageID #: 4213

consultant because it contained "business information that might harm [the company's] competitive standing").

Defendants acknowledge that "there is a 'strong presumption' in favor of open court records" given that the "public has an interest . . . in what is done in the Court." *Caudill*, 2017 U.S. Dist. LEXIS 118712 at *5, *15. However, "the lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of access." *Id.* at *17. Here, the litigation involves a securities class action brought against the Company for harm allegedly suffered by a group of shareholders due to a brief drop in the Company's stock price. The representative plaintiff for the shareholders, for which the sealed information is apparently relevant, already has full access to the documents Defendants seek to keep confidential. The public at large has little interest in these internal business documents. Indeed, the most pertinent information (*i.e.*, the expiration of a government contract at a Company facility and the release of the results of facility audits) has long been a matter of public record. The Company's internal strategies for responding to those events, however, is proprietary, could pose a safety risk to inmates and security personnel alike, be of great value to the Company's competitors, and should therefore remain confidential. In fact, disclosure of this proprietary business information would place the Company at a competitive disadvantage vis a vis its competitors, potentially harming its current shareholders.

Further bolstering the Company's request is the procedural posture of this case. As Plaintiff pointed out in its Federal Rule of Civil Procedure 23(f) petition for permission to appeal to the Sixth Circuit Court of Appeals, denial of class certification would be the "death knell" of this case. (Dkt. No. 1, pp. 22-23, Case No. 19-502, Sixth Circuit Court of Appeals.) Given the likelihood that this case will soon be over, the interest of the public having access to these

confidential and sensitive business documents at this juncture is greatly diminished and not worth the harm that it will currently cause the Company in the marketplace.

Finally, Defendants' request to seal is narrowly tailored. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (holding that a document should be sealed when a party can show a compelling reason why it should be sealed and the request is narrowly tailored to serve that reason). Defendants have not requested that Plaintiff's Motion be sealed in its entirety. Rather Defendants' request is limited to only those documents containing a "small amount of information" which "is proprietary and would harm [the Company's] business interests if released." *See Netjets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.*, 2016 U.S. Dist. LEXIS 130837, at *4 (S.D. Ohio Sep. 23, 2016) (upholding order to seal limited proprietary information).

## Conclusion

Accordingly, Defendants respectfully request that the Court grant this motion and direct the clerk to maintain the sealing of Exhibits B, C, F-M, W-Z, AA-EE, and HH of the Motion.

DATED: February 8, 2019   Respectfully submitted:

 /s/ Steven A. Riley
Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Faraz Mohammadi (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Ave.
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
faraz.mohammadi@lw.com

Morgan E. Whitworth (admitted *pro hac vice)*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com


Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars
Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

- 11 -

Case 3:16-cv-02267    Document 155    Filed 02/08/19    Page 11 of 12 PageID #: 4217

| | |
|---|---|
| Christopher Hamp Lyons<br>Christopher M. Wood<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>414 Union Street<br>Suite 900<br>Nashville, TN 37219<br>clyons@rgrdlaw.com<br>cwood@rgrdlaw.com | Dennis J. Herman<br>Willow E. Radcliffe<br>Kenneth J. Black<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>dennish@rgrdlaw.com<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |

this 8th day of February, 2019.

                                        /s/ Steven A. Riley
                                        Steven A. Riley