# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>Defendants. | Civil Action No. 3:16-cv-02267<br><br>Judge Aleta A. Trauger<br><br>Magistrate Judge Jeffery Frensley |

## DEFENDANTS' MOTION FOR CERTAIN CONFIDENTIAL DOCUMENTS TO REMAIN UNDER SEAL

Pursuant to the Revised Stipulation and Protective Order entered in this case (Dkt. No. 86) (the "Protective Order"), Defendants respectfully request that the Court maintain the sealing of only five privileged and confidential exhibits identified below (of 26, total), which Plaintiff filed in support of its Motion to Compel Production (the "Motion") (Dkt. No. 194). Defendants also request that the Court direct the clerk to file the attached version of Plaintiff's Memorandum of Law in Support of the Motion (the "Memorandum"), which contains limited redactions of quotations from these five privileged and confidential exhibits. A redacted copy of Plaintiff's Memorandum is attached as Exhibit A.

Defendants believe that the five documents at issue are privileged; indeed, Plaintiff submitted them for the Court's *in camera* review. Even if the Court determines that these documents are not privileged, they contain non-public information that Defendants have designated as "CONFIDENTIAL" pursuant to the agreed-upon Protective Order. In other words, each exhibit contains confidential and proprietary information concerning the business strategies and operations of CoreCivic, Inc., formerly known as Corrections Corporation of America, Inc. (the "Company"), which if made public, could harm the Company's competitive standing. The public's minimal interest in the contents of these exhibits, and the very narrowly tailored nature of Defendants' motion, weigh in favor of maintaining the exhibits under seal and redacting limited portions of Plaintiff's Memorandum.

### **Procedural History and the Documents That Should Remain Sealed**

As a preliminary matter, as it did with its Opposition to Defendants' Motion to Compel Disclosure of Identity of Plaintiff's Confidential Witness (Dkt. 103), and then again in its Motion for Reconsideration (Dkt. 148), Plaintiff has again disregarded the terms of the Protective Order, which provides:

> [C]ounsel for the Receiving Party seeking to use Confidential Discovery Material in connection with or in support of any motion or court proceeding shall advise counsel for the Producing Party seven (7) business days in advance of the filing to give the Producing Party the opportunity to move the Court for leave to file the Confidential Discovery Material under seal (or to seek substantially similar protection in the manner provided for by the applicable local rules).

Protective Order, ¶ 12. Plaintiff did not (for the third time) give the required notice prior to filing confidential documents. This practice must stop.

Now, Plaintiff has moved the Court for leave to conditionally file under seal its Memorandum, the Declaration of Christopher M. Wood in Support of the Motion ("Wood Decl."), and 26 exhibits attached to the Wood Decl. *See* Lead Plaintiff's Motion for Leave to File Under Seal (Dkt. No. 193). The Court granted Plaintiff's motion and gave Defendants until March 5,

2020 to file a motion for the continued sealing of these documents. (Dkt. No. 198.) Through this motion, Defendants respectfully request the Court to maintain the seal on only the following five documents (from the 28 filed under seal by Plaintiff). Defendants assert that all five of these documents are privileged:

1. Email dated August 21, 2013, from Michael Pugh to Michael Nalley, with the subject line "RE: FYI only FW: Northeast Ohio Correctional Center," filed as Exhibit 1 to the Wood Decl. (Dkt. 196-1).

2. Email dated April 17, 2014, from Keith Hall to Michael Pugh and others, with the subject line "FW: OIG audit," filed as Exhibit 2 to the Wood Decl. (Dkt. 196-2).

3. Email dated November 22, 2016, from Natasha Metcalf to Samantha Lee, with the subject line "FW: Adams OIG Report," and the corresponding attachment filed as Exhibit 3 to the Wood Decl. (Dkt. 196-3).

4. Email dated April 11, 2014, from Tony Grande to Jeb Beasley and Bart Verhulst, with the subject line "FW: New OIG Audit: Review of the Federal Bureau of Prisons' Private Prison Contract Monitoring," and the corresponding attachment filed as Exhibit 4 to the Wood Decl. (Dkt. 196-4).

5. Email dated March 27, 2015, from Ashley Odubeko to Damon Hininger and others, with the subject line "Approval Request - Eden Detention Center," and the corresponding attachment filed as Exhibit 5 to the Wood Decl. (Dkt. 196-5).

Defendants do not object to the Court unsealing the redacted version of Plaintiff's Memorandum, attached as Exhibit A, the Wood Decl., and Exhibits 6-26 to the Wood Decl. (Dkt. Nos. 195, 196, 196:6-26).

**Argument**

As noted, Defendants initially request that the Court maintain the sealing of the five documents because Defendants believe they are privileged. However, even if the Court determines that the documents are not privileged, Defendants submit that they should remain under seal because they contain confidential and sensitive business information. In determining the appropriateness of sealing court records the Court may consider, among other things, "the privacy rights of participants or third parties, trade secrets, and national security." *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016). With respect to the protection of a party's trade secrets, "[t]he Court should not allow its docket to be used as a source of business information that might harm a litigant's competitive standing," *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2017 U.S. Dist. LEXIS 118712, at *14 (W.D. Ky. July 28, 2017) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). Thus, the Court may seal "documents contain[ing] commercial[] information that, if made available for . . . competitors to view, would put [a party] at a disadvantage in the marketplace." *Id*. Here, good cause exists to maintain Exhibits 1-5 to the Wood Decl. under seal as the public disclosure of these communications would reveal proprietary information, strategic business decisions, and processes of the Company.

First, Exhibit 1 is an email chain where Company executives and wardens discuss audit results and staffing policies at one of the Company's facilities, including the procedures that the Company uses to efficiently staff a secure facility. Most fundamentally, the Company's staffing patterns must remain confidential to maintain the safety and security of inmates and correctional staff at the Company's facilities. Additionally, if this information were disclosed, a competitor could be able to implement similar staffing solutions and negatively impact the Company's ability to compete for business. *See Caudill*, 2017 U.S. Dist. LEXIS 118712 at *14.

Second, Exhibits 2-4 consist of email chains in which Company employees analyze, assess, and draft responses to audits conducted by the Office of the Inspector General ("OIG"). OIG audits are one of the ways in which the Company receives feedback regarding the services it performs. Thus, the Company's analysis, evaluation, and response to these audits are business functions that are essential to its relationships with partners and to procuring future business. These communications, if disclosed, could be used by competitors "as a source of business information that might harm [the Company's] competitive standing." *See Nixon*, 435 U.S. at 598. The fact that Exhibit 3 contains communications with consultants, does not change the analysis. Communications with consultants that reveal sensitive business information are properly sealed. *See Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2019 U.S. Dist. LEXIS 9684, *11-12 (W.D. Ky. Jan 18, 2019) (maintaining seal over document containing an exchange between a company and its consultant because it contained "business information that might harm [the company's] competitive standing").

Finally, Exhibit 5 is an email discussing a modification of a contract between the Company and the Bureau of Prisons ("BOP"), and an attachment containing proposed language for that amendment. This Exhibit reveals information about the Company's strategic business decisions during contract negotiations and provides information regarding how the Company evaluates such contractual amendments. The corrections industry is very competitive and, if published, the Company would be competitively harmed. Simply stated, these communications reflect the Company's "proprietary business communications and operations," which, if made public, would give competitors an advantage in the marketplace. *See Caudil*, 2017 U.S. Dist. LEXIS 118712 at *9.

Defendants appreciate that "there is a 'strong presumption' in favor of open court records" given that the "public has an interest . . . in what is done in the Court." *Caudill*, 2017 U.S. Dist.

LEXIS 118712 at *5, *15. However, "the lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of access." *Id*. at *17. Here, the litigation involves a securities class action brought against the Company for harm allegedly suffered by a group of shareholders due to a brief drop in the Company's stock price (a drop in stock price which quickly rebounded). The representative plaintiff for the shareholders, for which the sealed information is apparently relevant, already has access to the documents Defendants now seek to keep confidential. The general public has little to no interest in these internal business documents. Indeed, the most pertinent information (*i.e.*, the release of the underlying OIG audit) has long been a matter of public record. The Company's internal strategies for responding to this event, however, is proprietary, could pose a safety risk to inmates and security personnel alike, be unfairly used by the Company's competitors, and should remain confidential.

Finally, Defendants' request to seal is narrowly tailored. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (holding that a document should be sealed when a party can show a compelling reason why it should be sealed and the request is narrowly tailored to serve that reason). Defendants have not requested that Plaintiff's Motion and all 28 related documents remain sealed. Rather, Defendants' request is limited to redacting a portion of Plaintiff's Memorandum and sealing only the handful of documents that Defendants assert are privileged and that contain a "small amount of information" which "is proprietary and would harm [the Company's] business interests if released." *See Netjets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.*, 2016 U.S. Dist. LEXIS 130837, at *4 (S.D. Ohio Sep. 23, 2016) (upholding order to seal limited proprietary information).

## Conclusion

For the reasons set forth above, Defendants respectfully request that the Court grant this motion and direct the clerk to file the redacted version of Plaintiff's Memorandum attached as Exhibit A and to maintain the sealing of the unredacted Memorandum and Exhibits 1-5 of the Wood Decl.

DATED: March 5, 2020		Respectfully submitted:

 /s/ Steven A. Riley
Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Ave.
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com

Morgan E. Whitworth (admitted *pro hac vice)*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: (202) 637-2335
F: (415) 637-2201
sarah.tomkowiak@lw.com

*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

# CERTIFICATE OF SERVICE

  I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com


Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars
Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

| | |
|---|---|
| Christopher Hamp Lyons<br>Christopher M. Wood<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>414 Union Street<br>Suite 900<br>Nashville, TN 37219<br>clyons@rgrdlaw.com<br>cwood@rgrdlaw.com | Dennis J. Herman<br>Willow E. Radcliffe<br>Kenneth J. Black<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>dennish@rgrdlaw.com<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |

this 5th day of March, 2020.

        /s/ Steven A. Riley
        Steven A. Riley