# EXHIBIT A

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, ) ) | Civil Action No. 3:16-cv-02267 |
| Plaintiff, ) ) | Honorable Aleta A. Trauger |
| vs. ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD DOCUMENTS |
| CORRECTIONS CORPORATION OF AMERICA, et al., ) ) | |
| Defendants. ) ) | |

**[FILED UNDER SEAL]**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  RELEVANT BACKGROUND .................................................................................2

    A.  Defendants Produce an Untimely and Inadequate Privilege Log ...........................2

    B.  Defendants Fail to Remediate Their Untimely and Inadequate Logs.....................4

    C.  Defendants' Revised Privilege Logs Remain Deficient .........................................7

III.  LEGAL STANDARD ...............................................................................................8

IV.  ARGUMENT ...........................................................................................................10

    A.  Defendants Have Waived Privilege ......................................................................10

    B.  Defendants Have Improperly Withheld and Clawed Back Documents
        Concerning Non-legal and Ordinary Business Matters .........................................14

    C.  Privilege Is Waived for Documents Shared with Third Parties.............................16

    D.  Defendants Have Improperly Withheld and Clawed Back Non-privileged
        Email Attachments................................................................................................18

V.  CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ajose v. Interline Brands, Inc.*,
2016 WL 6893866 (M.D. Tenn. Nov. 23, 2016) .......................................................11, 12, 13

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
1994 WL 58999 (6th Cir. Feb. 25, 1994) ...........................................................................9, 13

*Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*,
2015 WL 13845881 (M.D. Tenn. Sept. 10, 2015) .................................................................8

*Bennett v. Fieser*,
1994 WL 542089 (D. Kan. Feb. 25, 1994) ...........................................................................8

*Bridgestone Americas, Inc. v. Int'l Bus. Machs., Corp.*,
2015 WL 10990186 (M.D. Tenn. Oct. 1, 2015) ...................................................................16

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
2018 WL 3628890 (M.D. Tenn. Mar. 29, 2018) ...................................................................11

*First Horizon Nat'l Corp. v. Hous. Cas. Co.*,
2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016) .....................................................................18

*Genesco, Inc. v. Visa U.S.A., Inc.*,
302 F.R.D. 168 (M.D. Tenn. 2014) ...............................................................................10, 11

*Hilton-Rorar v. State & Fed. Commc'ns., Inc.*,
2010 U.S. Dist. LEXIS 36121 (N.D. Ohio Apr. 13, 2010)...................................................19

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
293 F.3d 289 (6th Cir. 2002) .......................................................................................10, 16

*In re Haynes*,
577 B.R. 711 (Bankr. E.D. Tenn. 2017) .......................................................................10, 14

*In re King Pharm., Inc. Sec. Litig.*,
2005 WL 8142328 (E.D. Tenn. Sept. 21, 2005)...................................................................18

*In re Powerhouse Licensing, LLC*,
441 F.3d 467 (6th Cir. 2006) ..................................................................................9, 10, 11

*In re Prof'ls Direct Ins. Co.*,
578 F.3d 432 (6th Cir. 2009) ...............................................................................................9

*In re Search Warrant Executed at Law Offices of Stephen Garea*,
1999 WL 137499 (6th Cir. Mar. 5, 1999)............................................................................14

4851-3621-4966.v1

*John B. v. Goetz*,
  879 F. Supp. 2d 787 (M.D. Tenn. 2010) ............................................................9, 14

*Klig v. Deloitte LLP*,
  2010 WL 3489735 (Del. Ch. Sept. 7, 2010) ...........................................................12

*Medinol, Ltd. v. Bos. Sci. Corp.*,
  214 F.R.D. 113 (S.D.N.Y. 2002) ............................................................................18

*Muro v. Target Corp.*,
  250 F.R.D. 350 (N.D. Ill. 2007)
  *aff'd*, 580 F.3d 485 (7th Cir. 2009) ..................................................................18, 19

*Phipps v. Wal-Mart Stores, Inc.*,
  2018 WL 1183746 (M.D. Tenn. Mar. 7, 2018) .....................................................8, 10

*RBS Citizens, N.A. v. Husain*,
  291 F.R.D. 209 (N.D. Ill. 2013)..............................................................................18

*Schuh v. HCA Holdings, Inc.*,
  2014 WL 12768360 (M.D. Tenn. Sept. 16, 2014)...................................................11

*Smith v. Dow Chem. Co.*,
  173 F.R.D. 54 (W.D.N.Y. 1997).................................................................................8

*United States v. Constr. Prods. Research, Inc.*,
  73 F.3d 464 (2d Cir. 1996)......................................................................................12

*von Bulow by Auersperg v. von Bulow*,
  811 F.2d 136 (2d Cir. 1987)......................................................................................8

*Williams v. Big Picture Loans, LLC*,
  303 F. Supp. 3d 434 (E.D. Va. 2018) ......................................................................17

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 26(b)(5)...............................................................................................................8
  Rule 33......................................................................................................................10
  Rule 34...................................................................................................................8, 10
  Rule 37(a)....................................................................................................................8

4851-3621-4966.v1

# I.    INTRODUCTION

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiff"), respectfully moves this Court for an order compelling Defendants[1] to produce documents they have improperly withheld as privileged.

First, Defendants failed to timely justify their privilege claims and then failed, repeatedly, to remedy the significant deficiencies in the belatedly produced log despite multiple opportunities.  In combination, Defendants' unwillingness to produce a timely and adequate log constitutes waiver. Second, Defendants' logs, including the most recent iteration produced just three ago days on February 24, 2020, contain swaths of unsupported and inappropriate privilege claims.  Defendants' privilege assertions: (i) are boilerplate and conclusory; (ii) fail to establish work product protection by identifying any anticipated litigation; (iii) improperly claim privilege regarding ordinary business matters, some of which were shared outside of the attorney-client relationship; and (iv) include non-communications – *i.e.*, more than 4,000 attachments to emails – wrongly contending they are derivatively protected by the attorney client privilege.

Plaintiff has made extensive efforts to meet and confer to avoid Court intervention, yet Defendants' ever-evolving logs remain wholly inadequate.  Defendants: (i) produced two comprehensive privilege logs between 2018 and 2019, and four revised versions in the last two months; (ii) waited until ***just last month*** to log some 14,000 redacted documents produced in 2018; (iii) contended that metadata fields alone provided sufficient bases for generic privilege assertions; and (iv) dismissed the numerous errors Plaintiff identified as either inadvertent or immaterial, when in fact such errors call into question Defendants' entire privilege review process.

---

[1]    Defendants are Corrections Corporation of America, Inc. ("CCA" or the "Company," now doing business as CoreCivic, Inc.), Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin.

- 1 -

Immediate production of the now 8,931 withheld or clawed back documents in their entirety is the only appropriate remedy. Defendants' ongoing failure to correct the deficiencies in their privilege assertions and the approaching close of discovery require nothing less. The Court should also hold that Defendants have waived any claim to privilege over the approximately 14,843 redacted documents produced in 2018, but not logged until February 2020.

## II. RELEVANT BACKGROUND

The Court is familiar with the parties and issues in this action. This is a securities class action on behalf of purchasers of CCA securities between February 27, 2012 and August 17, 2016 (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934. Plaintiff alleges that throughout the Class Period, Defendants engaged in a scheme to defraud and made numerous materially false and misleading statements and omissions to investors regarding CCA's business and operations, including by falsely stating that CCA's renewal rate on contracts was and would remain high because of the "quality" of services it provided to government customers, including the Bureau of Prisons ("BOP"). *See* ECF No. 76 at 14-19, 24-30.

### A. Defendants Produce an Untimely and Inadequate Privilege Log

On January 30, 2018 and June 1, 2018, Plaintiff served its first and second document requests on Defendants. On March 6, 2018 and July 2, 2018 Defendants served their objections. On July 26, 2018, the parties met and conferred on Plaintiff's second set of requests during which time Defendants contended that they need not produce any privilege logs until they had substantially completed their document production, at that time scheduled for August 1, 2018.

On the August 1 deadline, Defendants requested an indefinite extension. ECF No. 109. Plaintiff instead proposed a definite extension (ECF No. 110), which the Court granted on August 6, 2018, extending the substantial completion deadline to September 14, 2018. ECF No. 114.

Denied a Court-sanctioned indefinite extension, Defendants granted themselves one as to their privilege log. On August 7, 2018, Plaintiff objected, as they had at the July 26, 2018 meet and confer: "There is no reason for not producing privilege logs on a rolling basis, beginning now with the approximately 60,000 documents already produced." Ex. 6 at 3.[2] Defendants refused: "[W]e will produce a privilege log within a reasonable time after the substantial completion of document production deadline." Ex. 7.[3]

On August 22, 2018, Plaintiff persisted in seeking a timely privilege log, writing to Defendants that contemporaneous logging was required and failure to do so constituted waiver. Ex. 8. On August 31, Defendants responded that they had unilaterally set a goal date they did not feel obliged to meet: "We will endeavor to produce a privilege log within 30 days of the substantial completion of document production deadline, but we reserve the right to revisit that date . . . it is important that we be afforded some flexibility to revisit this deadline should circumstances require. We are happy to update you on our progress after the substantial completion of production deadline." Ex. 9 at 2. On September 7, 2018, Plaintiff objected to Defendants' self-set deadline. Ex. 10.

On October 9, 2018, Defendants produced their first logs – covering 823 of 834 documents which they clawed back on September 28, 2018.[4] As support for their privilege assertions, the logs included only a sent date, sender and recipient list, and a generic "Description" of the privilege

---

[2]  Defendants had at that time made productions on April 9, 2018, May 2, 2018, May 21, 2018, July 23, 2018 and July 31, 2018. All "Ex.   " citations herein are to the Declaration of Christopher M. Wood in Support of Lead Plaintiff's Motion to Compel Production of Improperly Withheld Documents, filed concurrently herewith.

[3]  In their August 10, 2018 letter, Defendants also argued that there would be no prejudice since Plaintiff could wait until the end of discovery to press their objections: "[The fact discovery and discovery motions cutoffs] provide Plaintiff ample time to challenge any entries in our anticipated privilege log." Ex. 7 at 2.

[4]  The privilege log listed 707 withheld documents. The redaction log identified another 116 documents to be reproduced with redactions at an unidentified later date. Ex. 11.

- 3 -

asserted. For example, the first entry on the privilege says "Communication with in-house counsel seeking or receiving legal advice regarding facility operations." Ex. 11.

On October 15, 2018, Defendants sent logs for documents withheld and redacted throughout 2018, which listed the same relevant categories of information as the October 9 logs. Ex. 12.

## B.    Defendants Fail to Remediate Their Untimely and Inadequate Logs

Defendants' untimely privilege logs were deficient from the beginning, and Plaintiff attempted to have Defendants remediate their deficiencies. On November 21, 2018, Plaintiff objected that the overbroad and conclusory nature of Defendants' assertions precluded the ability to assess each claim of privilege. Ex. 13. For example, the privilege log described all 4,954 documents in one of only four ways: (i) "communication[s] with" counsel; (ii) "discussion[s] regarding communication with" counsel; (iii) "attachment[s] to communication with" counsel; and (iv) combined "communication[s] with" counsel "(and attachments)"). *Id*. at 3. These conclusory descriptions failed to so much as assert which of the attorney client privilege or work product doctrine was being asserted, and on what ground(s).

Similarly, the logs conclusorily described the documents as "regarding" generic matters such as "facility operations," "government contract" or "general company operations." *Id.* And the logs failed to identify information such as what litigation was anticipated or basic information such as the subject line (for emails) or creation date or document title (for attachments and other non-emails). *Id*. at 4. Plaintiff also objected that Defendants still had not produced a combined or consistent log; the logs, serially produced in inconsistent formats months after the various productions, constituted (further) waiver; and Defendants had waived privilege by sharing certain documents with third parties. *Id.*

On November 29, 2018, Plaintiff requested that Defendants release, with redactions, 35 withheld documents apparently sent to or from fact witness Ashley Daugherty (who was deposed

one week later), on December 7, 2018). Ex. 14. In response, on December 3, Defendants clawed back another 16 documents from Daugherty's custodial file, and on December 4, Defendants produced eight[5] of the 35 documents requested. Exs. 15-16. Also on December 4, the parties met and conferred about the privilege dispute. The meet and confer did not resolve any part of the dispute, but Defendants agreed to produce a combined log with more information.

On December 7, 2018, Plaintiff sent Defendants a letter explaining that the regularly created "Weekly Audit Summary" reports (and parent emails) that comprised the Daugherty documents were clearly not privileged, such that they indicated widespread error with the privilege log and Defendants' review process. Ex. 17. In particular, Plaintiff was unable to match the released Daugherty documents to their log entries, because no log entries indicated withheld "Weekly Audit Summary Report(s)," or even "report(s)," and none of the entries indicated the existence of parent-attachment relationships of any kind between the documents. Thus, even with the document in hand, Plaintiff could not match it to the log.

On December 22, 2018, Defendants produced a combined privilege log for the first time, logging 8,655 documents. Ex. 18. Then, on December 28, 2018, Defendants produced a combined redaction log with 1,543 documents. The privilege log now included additional mechanically generated metadata fields – including subject for emails and file name for the attachments. The new privilege log also listed for the first time a column identifying "Counsel and Legal Staff Involved in Communication." *Id.* The privilege description field was not updated for either. *Id.*

On February 12, 2019, the Court stayed discovery between the parties but allowed discovery from third parties to proceed. ECF No. 159; *see also* ECF No. 169. As relevant here, Plaintiff continued to pursue discovery from Ernst & Young LLP ("EY"), CCA's auditor. Defendants asserted privilege over documents in EY's possession. On June 10, 2019, October 23, 2019, January

---

[5]    Hereinafter the "Daugherty documents."

2, 2020 and February 21, 2020, EY produced privilege logs prepared by Defendants. The operative log lists 27 withheld documents.

After the August 30, 2019 expiration of the discovery stay and the September 3, 2019 entry of a new scheduling order (ECF No. 180), the parties resumed discovery, including by scheduling and taking depositions and working to conclude document production. On December 20, 2019, Plaintiff reached out to Defendants to address errors in Bates numbering in Defendants' privilege logs and to discuss Plaintiff's outstanding objections. Ex. 19. The ensuing discussion, by letter and meet and confer, once again failed to resolve any aspect of the dispute.

On January 23, 2020, Defendants produced a new combined privilege log, which "includ[ed] the re-insertion of the privilege description field," and purported to add "more detail for each entry." Ex. 20. The new log included 8,970 entries. The entries in the log, however, continued to be conclusory. *See* Ex. 21.

On January 28, 2020, as agreed to during meet and confer, in a letter Plaintiff summarized its outstanding objections, including examples of issues Defendants had never addressed. In a February 5, 2020 letter, Defendants stood by their privilege assertions. Ex. 22.

Defendants thereafter continued to correct purported errors and add entries to their logs. On February 6, 2020, Defendants produced a new combined privilege log and a new combined redaction log. Ex. 23. The new privilege log listed 8,907 documents, while the new redaction log listed 16,412, *almost 15,000 more entries* than their December 28, 2018, redaction log. In a letter sent February 14, 2020, Defendants attached an updated combined privilege log with 8,919 entries. Ex. 24. On February 17, 2020, Defendants also produced an updated, combined redaction log listing 16,414 documents. On February 24, 2020, in response to errors again identified by Plaintiff,

Defendants produced the final and now operative logs, containing 8,931 privilege log entries and 16,391 redaction log entries. Ex. 25.

### C. Defendants' Revised Privilege Logs Remain Deficient

Despite numerous opportunities, Defendants' February 24, 2020 privilege and redaction logs, like their previous logs, remain deficient. For example, the 8,931 entries on the privilege log contain the same boilerplate descriptions of privilege, such as: "Communication with In-house counsel seeking or receiving legal advice regarding general company operations," a phrase that appears verbatim ***1,958 times***. *Id.* The same phrase, but with "outside counsel" replacing "in-house counsel," appears ***1,738 times***. *Id.* And the logs remain error-filled. Even after Defendants' updates just this week, the privilege log does not include any entries for 150 clawed-back documents. *Id.*; *e.g.*, Ex. 1; Ex. 4. The privilege log contains some 4,700 documents, mostly email attachments, for which nobody is listed as "Counsel and Legal Staff Involved in Communication." *E.g.*, Ex. 25 at REV03058631. The totality of these and other errors demonstrate the inherently flawed nature of Defendants' assertions.

Plaintiff has taken 17 depositions in this case, and not only have Defendants clawed back documents based on dubious privilege claims during many of those, but Plaintiff has had to take them without the benefit of the almost 9,000 documents improperly withheld by Defendants. And there is substantial to reason to believe those documents would have been relevant, not least because many of the deponents have professed an inability to recall key facts from the Class Period and appear hundreds of times on the logs. For example, during his January 15, 2019 deposition, Michael Nalley who could remember little[6] from his time as Vice President of Business Unit 1 (*i.e.*, the unit, which included BOP facilities), is listed 450 times. Those 450 documents surely would have been

---

[6]   *See, e.g.*, Transcript of Deposition of Michael Nally at 157:3-10; 158:20-21 (Q: "Are you the 'Nalley' being referred to?" A: "Well, I don't know . . . I don't remember saying this, 'this is going to kill us at both Cibola and Eden' . . . I am . . . Michael Nalley, but I don't remember this.").

useful in jogging his memory. And if, say, Defendant Lappin's memory is just as bad, it might be useful to have the "Adams County BOP letter" he and other Defendants received on April 23, 2014 (REV03058632),[7] or any of the other 513 withheld documents that involve him, and to have them produced before his deposition a month from now. Ex. 25.

## III.    LEGAL STANDARD

Under Rule 37(a), the Court may compel the disclosure of documents improperly withheld after a request has been made under Fed. R. Civ. P. 34. *Phipps v. Wal-Mart Stores, Inc.*, 2018 WL 1183746, at *2 (M.D. Tenn. Mar. 7, 2018).[8]

Fed. R. Civ. P. 26(b)(5) requires the party withholding documents to "describe the nature of the . . . things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the [privilege] claim." "The party raising a privilege has the burden of establishing the existence of the privilege." *Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, 2015 WL 13845881, at *1 (M.D. Tenn. Sept. 10, 2015). The log (or other method) should include "***the purpose in preparing the document***, the privilege or privileges asserted with respect to the document, and ***how each element of the privilege is met as to that document***." *Smith v. Dow Chem. Co.*, 173 F.R.D. 54, 57-58 (W.D.N.Y. 1997) (citing Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes, 1993 Amendments; *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *Bennett v. Fieser*, 1994 WL 542089, at *3 (D. Kan. Feb. 25, 1994)); *accord Auto-Owners*, 2015 WL 13845881, at *2 ("'[E]ach document in a privilege log should contain

---

[7]    The log fails to provide a non-conclusory basis for privilege as to REV03058632, which is withheld solely because it is an attachment to a purportedly privileged email and not because it is itself privileged. Ex. 25. The email it was attached to was sent by Jeb Beasley to Hininger, Lappin, Mullenger, and Garfinkle, as well as "Karen White (whitek@franklinroadacademy.com)," who is apparently a teacher at a local school. One in-house counsel, Steve Groom, is included as a recipient. *Id.* The subject of the email is "Adams update." The privilege description is "Communication with In-house counsel seeking or receiving legal advice regarding government contract."

[8]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

details including: date, author and all recipients of the document, subject matter, and ***an explanation as to why the document should be privileged and not produced in discovery***.'").

The test for what constitutes a protected attorney-client communication is multi-part but straightforward and "well-settled in this circuit":

> "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived."

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1994 WL 58999 (6th Cir. Feb. 25, 1994). "'The attorney-client privilege is "narrowly construed" because it reduces the amount of information discoverable during the course of a lawsuit.'" *John B. v. Goetz*, 879 F. Supp. 2d 787, 892-93 (M.D. Tenn. 2010). "Where the facts suggest combined business and legal advice in a document, courts can inquire about which purpose predominates" and the asserting party "***must make a clear showing*** that documents containing technical matters are communicated in confidence and are primarily legal in nature. There must be a finding that each document is involved in the rendition of legal assistance." *Id.* at 894-95.

The work product doctrine requires the asserting party to identify anticipated litigation. *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438-39 (6th Cir. 2009). To determine whether a document has been prepared "'in anticipation of litigation,'" courts "ask two questions: (1) whether that document was prepared '***because of***' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that ***subjective anticipation was objectively reasonable***." *Id.* at 439. "[T]he burden is on the party claiming protection to show that anticipated litigation was the '***driving force*** behind the preparation of each requested document.'" *Id.* "If that burden is not met, ***the court's inquiry ends and the documents must be produced***." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006).

- 9 -

The burden under either the attorney client or work product standards is the same, and placed squarely on the party asserting privilege. *See Id*. at 474; *Phipps*, 2018 WL 1183746, at *2.

## IV.  ARGUMENT

Defendants have repeatedly failed to sufficiently support their privilege assertions.  And the insufficient and piecemeal steps they have taken instead confirm that they have improperly withheld scores of documents.  The comprehensive nature of the deficiencies are irreparable; full production of the withheld documents is the only appropriate remedy.

### A.  Defendants Have Waived Privilege

Failure to timely object, including "fail[ure] to state the reason for an objection," "raises a question of potential wholesale waiver."  *In re Haynes*, 577 B.R. 711, 722, 724 (Bankr. E.D. Tenn. 2017).  Withheld documents must be logged "'in a *timely and proper* manner,'" otherwise the "'failure to provide . . . sufficient specificity [is] *an independent ground for finding a waiver*.'"  *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 191 (M.D. Tenn. 2014) (collecting and quoting authority).  Repeated failure to supply support for "boilerplate" or otherwise insufficient objections "after multiple chances to do so" also "constitutes a waiver of the objection to production of the documents under Rules 33 and 34."  *Haynes*, 577 B.R. at 740.  "[O]nce the privilege is waived, waiver is complete and final."  *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir. 2002).

As in *Haynes*, "the privilege and redaction logs . . . were not provided contemporaneously with the signed discovery responses."  577 B.R. at 728.  Defendants offer no justification for tying production of the first version of their log to 30 days following the extended substantial completion deadline.  In fact, the relevant date is when initial responses are served, which here is when Defendants invoked privilege in their objections of March 6, 2018 and July 2, 2018.  Certainly, a July 2 to October 15 delay is not timely.  *See, e.g.*, *id*. at 736 (finding "first iteration of [privilege]

logs [not produced] until sixty-one days after [responding party's] initial responses were served" to be tardy). Nor do Defendants justify waiting until December 22, 2018 – two months after their October 18, 2018 promise to promptly update or supplement their prior logs – to expand their logs.[9] Defendants' claw back and withhold now, substantiate months (or years) later process constitutes waiver.

Moreover, Defendants' repeated failure[10] to justify their assertions with "'sufficient specificity to permit the court to determine whether the privilege asserted applies'" (*see Genesco*, 302 F.R.D. at 191) supports waiver independent of timeliness. The clearest example concerns Defendants' work product assertions, which never identify any pending litigation to support the claims. *See Ajose v. Interline Brands, Inc.*, 2016 WL 6893866, at *2 (M.D. Tenn. Nov. 23, 2016). To establish "the party anticipated litigation, the party seeking to withhold the materials may submit proof 'such as affidavits made on personal knowledge, depositions, or answers to interrogatories.'" And though Plaintiff repeatedly raised the issue (*see, e.g.*, Ex. 13), Defendants waited until February 5, 2020 to make their first substantive response, at which time they identified three withheld emails that had a subject indicating litigation and characterized any further request that anticipated litigation be identified as "baseless." Ex. 22.[11] Thus, "the court's inquiry ends and the documents must be produced." *Powerhouse Licensing*, 441 F.3d at 473.

---

[9] Defendants were "on notice that [Plaintiff] objected" to the proposed addition of new metadata before production of the December 22, 2018 log. *EPAC Techs.. Inc. v. HarperCollins Christian Publ'g. Inc.*, 2018 WL 3628890 (M.D. Tenn. Mar. 29, 2018). "Faced with [Plaintiff's] objections and the sheer volume of documents to be logged. counsel could have sought a protective order. [Defendants] did not, and that ship has now sailed." *Id.* at *2.

[10] To summarize, Defendants have produced cumulative or combined privilege logs on October 15, 2018, December 22, 2018, January 23, 2020, February 6, 2020, February 14, 2020 and February 24, 2020, and privilege logs for narrow sets of documents on October 9, 2018, October 28, 2018, June 26, 2019, December 10, 2019, January 2, 2020 and February 21, 2020.

[11] Courts, in fact, typically require significantly more basis than simply identifying an event or litigation. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, 2014 WL 12768360, at *8 (M.D. Tenn. Sept. 16, 2014) (discussing facts such as supervision of an investigation and whether an audit was requested as

Defendants' efforts to justify their attorney client privilege assertions fare no better. As described above, Defendants have repeatedly offered to add non-substantive data, like certain metadata fields (as well as to add, remove and re-insert the privilege description column), but have consistently failed to offer anything beyond boilerplate assertions or to tie the metadata in a meaningful way to the assertion. Defendants' unwillingness to meaningfully improve their log despite ample opportunity – the December 22, 2018 log provides essentially the same information as the January 23, 2020, February 6, 2020, February 14, 2020, and February 24, 2020 logs – is also independent grounds for waiver.

Finally, Defendants' operative privilege log remains deficient in a host of ways small and large. Defendants' "general allegations of privilege . . . are not supported by the information provided." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996). *United States v. Constr. Prods. Research, Inc*. is instructive because the asserting party there provided very similar information as Defendants here, namely: "[A] cursory description of each document, the date, author, recipient, and 'comments,'" as well as a "'Basis of Claim.'" *Id*. The "comments" there provided information similar to Defendants' email subject or file name columns. *Id.* The Second Circuit found the log insufficient because the numerous fields did not support the assertion of privilege. *Id*.

So too here. Consider entry REV00001956. Defendants' description for that document is "Communication with In-house counsel seeking or receiving legal advice regarding facility operations." Ex. 25.[12] But, aside from the communication being identified as an email, no other

---

evidence that there was in fact basis for invocation of the protection); *Ajose*, 2016 WL 6893866, at *5 (even reports created in anticipation of litigation not protected if their creation is "standard practice").

[12]  The evidently generic nature of this description – which appears some 1,950 time on the log – is itself grounds for finding the logs insufficient. *See, e.g.*, *Klig v. Deloitte LLP*, 2010 WL 3489735, at *2 (Del. Ch. Sept. 7, 2010) (Finding privilege waived where privilege "description afforded

information from the log supports that description. The log provides "FW: Report #11-11-0028," as the subject of the email. But that bare subject in no way supports the claim that "facility operations," or anything confidential, legal or anything at all was discussed. *See, e.g.*, *Ajose*, 2016 WL 6893866, at *5. Meanwhile, the log lists "Scott Craddock; Stephanie Parker; Susan Lindsey" as the "Counsel and Legal Staff Involved in Communication." But none of those individuals sent or received the email; it was sent from Ronald Thompson to Defendant Lappin. Nor does the fact the email was forwarded support Defendants' assertion; even if in-house counsel did send or receive a prior, in fact privileged, email (unlikely: No other document with a similar subject appears on the log), Defendants have not claimed that the email "reflected" or "transmitted" a request for or the provision of confidential and primarily legal advice, or that anyone involved was serving as an "agent" of in-house counsel.[13] Rather, Defendants claim the document is itself a "***Communication with*** In-house counsel." Ex. 25.

After several opportunities, Defendants' logs still fail to provide the specificity necessary to assess Defendants' assertions. All of the withheld and clawed-back documents should be produced immediately.

Even if Defendants had not waived privilege with respect to the entirety of the documents on their logs, there are nevertheless numerous categories of documents for which no protection applies and which should be produced immediately.

---

[movant] no way to assess the propriety of the assertion of privilege. And with the same five descriptions replicated 332 times, I am confident that was precisely [the non-movant's] intent.").

[13]    *See Arkwright Mut. Ins. Co.*, 1994 WL 58999, at *5 ("the district court ***must*** find . . . that the document reflects confidential communications made by [the client] to [the intermediate party] for the purpose of ultimately receiving legal advice, and that [the intermediate party] was acting as the agent of [the client]'s counsel").

**B.    Defendants Have Improperly Withheld and Clawed Back Documents Concerning Non-legal and Ordinary Business Matters**

"[W]here a lawyer acts as a business advisor . . . there is not any special relationship to give rise to a privilege to protect counsel's advice from disclosure." *John B.*, 879 F. Supp. 2d at 894. "It is, of course, well established that attorney-client communications related to areas other than legal counseling, such as business advice, are not privileged." *In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 WL 137499, at *1 (6th Cir. Mar. 5, 1999); *Haynes*, 577 B.R. at 737-38 (business advice and other non-legal services not protected as privileged).

The log is filled with documents that do not appear to fall within the attorney-client relationship, even where a lawyer is involved.  For example, hundreds of email subjects indicate non-privileged communications, such as: "Adams update"; "change to H Lappin's bio – see attached"; "Cibola Recruitment Plan"; and "Talking Points Regarding Adams."  Ex. 25.

Further, as explained in Plaintiff's January 28, 2020 letter, Natasha Metcalf, VP Partner Contracts, was not in-house counsel, yet is listed on Defendants' log "more than 1,300 times, excluding attachments, as a 'Counsel and Legal Staff Involved in Communication.'"  For more than 140 of these entries, Metcalf is the *sole* individual in the "Counsel and Legal Staff Involved in Communication" column.  Yet there is no dispute that "Ms. Metcalf *does not act in a legal capacity* at the Company."  Ex. 22; *see also* Transcript of Deposition of Natasha Metcalf at 10:7-9 (Q: "were you . . . acting as an attorney for CoreCivic prior to July of this year [*i.e.* 2019]?" A: "No").  Defendants refuse to produce any of these documents.

Defendants contend that personnel "who regularly interact with in-house and outside counsel, and therefore, facilitate or assist with the provision or receipt of legal advice" may accurately be described as legal staff.  Ex. 22 at 4-5.  But this claim is belied by their admission that Metcalf "*does not act in a legal capacity*."  *Id.*  Nor is it supported by the privilege log, which nowhere claims that

- 14 -

Metcalf "regularly interact[ed]" with anybody, or ever "facilitated or assist[ed] with the provision or receipt of legal advice." *Id.* In Exhibit 5, an email titled "Approval Request -Eden Detention Center," Metcalf is also listed as counsel, along with two others. Ex. 5 at CORECIVIC_1197546.[14] This document (and attachment) was withheld as a "Communication with In-house counsel seeking or receiving legal advice regarding facility operations and government contract." Ex. 25. What is not apparent from the log, but is from the face of the document, is that the email is a description of

████████████████████████████████████████████████████████████

████████████████████████ Ex. 5 at CORECIVIC_1197546. No legal advice is sought or provided; instead the email sender is asking ████████████████████████████████

██████████████████████ Similarly, Exhibit 4 is a widely circulated email thread in which Defendant Lappin, as former BOP Director, discusses ████████████████████████

████████████████████████ Ex. 4. Counsel Steve Groom is included as a recipient on one of the three emails in the thread, but no legal advice is provided or sought. *Id.* at CORECIVIC_0959395. Yet, the Document and its attachment are withheld – but not logged.

Exhibit 2 is an email thread widely distributed, including to lobbyist Rob Hobart. Metcalf is copied to the first email in the chain, and by virtue of this fact alone she is listed as one of two counsel supporting privilege for that document.[15] The emails are not a "Discussion regarding communication with In-house counsel seeking or receiving legal advice regarding OIG audit or OIG Review" but are instead ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Ex. 2.

---

[14] Demonstrating the arbitrary nature of their assertions, in certain instances Defendants have asserted privilege and clawed back documents yet not asserted privilege or clawed back substantially similar versions of such documents appearing in other parts of their production.

[15] The other is Dianna Shew (in-house counsel), who did not send or receive the email(s).

Exhibit 1 involves Dianna Shew, who appears in the log nearly 2,500 times, and also raises alarm bells.  Ex. 1.  Exhibit 1 was clawed back but not logged.  It is a thread of ten emails concerning the Northeast Ohio facility.  The subject and the text of the email to Shew states "FYI only"; it is not an email seeking or receiving legal advice.  Ex. 1 at CORECIVIC_1246798.  And rather than providing legal advice, Shew just reports ████████████████████████████ ████████████████████████████ *Id.*  After the report is forwarded to others, and one executive asks ██████████████████████████████████ *Id.* at CORECIVIC_1246747.  The document may be unhelpful to Defendants' defenses, but it is not privileged, nor would it be, even were it logged.

Similarly, the Daugherty document entries on the log demonstrate that Defendants have consistently over-withheld documents on unsupported[16] pretexts.  *See Bridgestone Americas, Inc. v. Int'l Bus. Machs., Corp.*, 2015 WL 10990186, at *2 (M.D. Tenn. Oct. 1, 2015) ("Merely commenting that a document may be subject to review and including an attorney on an email chain does not make it a document seeking legal advice.  If this were allowed, almost every document would be privileged anytime an attorney was included on an email.").  In short, even if privilege were not waived outright, all non-legal, ordinary business communications should be produced.

### C.     Privilege Is Waived for Documents Shared with Third Parties

"As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties,'" *Columbia/HCA Healthcare*, 293 F.3d at 294, yet Defendants' log contains numerous entries where documents appear to have been shared with third parties.  Though Defendants may regret that they "inadvertently withheld"

---

[16]   The log often describes the documents inaccurately.  As Plaintiff explained concerning the eight Daugherty documents: "Seven of those documents are Weekly Audit Summary Reports, and the remaining document is a "Written Update for the Ethics and Compliance Committee."  None of these documents are "Communication[s] with in-house counsel" or "outside counsel" or "Discussion[s] regarding communication with in-house counsel" or "outside counsel" as they were described on the privilege log.  Ex. 17 at 2.

documents shared with third parties, they have refused to meaningfully address the issue, instead wrongly claiming it is Plaintiff's burden to comb their list of 9,000 withheld documents and identify every third party for them. Ex. 22 at 4.

In support of its objections, Plaintiff has raised the example of Akin Gump – a law firm that provided lobbying services to CCA (and which, as a third party, has itself produced 426 documents). For example, the documents with Control Nos. REV00099852, REV00099862 and REV00099863 list only "Akin Gump" as the "Counsel and Legal Staff Involved in Communication." Exs. 21, 25. But the subject of those emails ("CCA Responds to DOJ's Decision to Reduce Reliance on Private Prisons") indicate that Akin Gump was functioning in its lobbying capacity, and the email thread was sent to a half-dozen or more non-attorney third parties, who clearly did not all work pursuant to an attorney-client relationship. Ex. 25.[17] As an example, after Plaintiff raised REV00099852, Defendants apparently produced the document, on February 7, 2020, but did not produce the other emails in the thread, which remain withheld on the same baseless grounds. Ex. 21. As described above, Plaintiff has provided numerous other examples – such as Karen White, a pre-kindergarten school teacher and recipient of an "Adams County BOP letter" email. Ex. 25. Similarly, Exhibit 2, another email discussing the OIG audit, was shared with lobbyist Rob Hobart, while Exhibit 3 was shared with lobbyist Katie Lilley (an employee at the lobbying firm Hillenby), and included Lilley's edits to a draft response to the OIG's Adams Report. Ex. 2 at CORECIVIC_1265122; Ex. 3 at CORECIVIC_1057702.

Defendants' privilege assertions with respect to EY documents outside of their possession are also improper. Defendants do not have standing to assert privilege over documents in an auditor's possession that were created pursuant to auditing services. *See Williams v. Big Picture Loans, LLC*,

_____

[17] *E.g.*, rhobart@hhqventures.com, bob.russell@srgroupdc.com, hrogers@bockornygroup.com, suzanne_barr@hotmail.com, nick@njsconsultingllc.com, timothyaitken@yahoo.com, trustunger@gmail.com, alex@vogelhood.com. *See* REV0009852. Ex. 21.

4851-3621-4966.v1

303 F. Supp. 3d 434, 446 (E.D. Va. 2018) ("'If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.'") (collecting support).  Here, because all EY documents were produced from EY's annual audit files, these documents were created by or transmitted to EY for the purpose of obtaining auditing services, not seeking legal advice.

To the extent any privilege might have applied in the first place, Defendants have waived it by sharing the documents with a third-party auditor.  *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, 2016 WL 5867268, at *10 (W.D. Tenn. Oct. 5, 2016) ("disclosure of privileged communications to outside auditors waives both attorney-client privilege and the work-product protection") (citing *In re King Pharm., Inc. Sec. Litig.*, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005)).  Where a defendant and "its outside auditor Ernst & Young d[o] not share 'common interests' in litigation . . . disclosures to Ernst & Young as independent auditors d[o] not therefore serve the privacy interests that the work product doctrine was intended to protect." *Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 116-17 (S.D.N.Y. 2002).

### D. Defendants Have Improperly Withheld and Clawed Back Non-privileged Email Attachments

Defendants have withheld thousands of email attachments solely on the basis that they are attached to a purportedly privileged email and without regard to whether the attachment is itself privileged.  But "attachments are judged separately from their primary documents and . . . to be withheld, each must individually meet the privilege standard." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013) (collecting cases).

Defendants have claimed that *RBS Citizens* is not controlling but misrepresented their own cited caselaw.  *See* Ex. 22.  For example, *Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009), says only that such forwarded materials "***might*** be

- 18 -

privileged" and "*may* be privileged, even if the underlying information remains unprotected." *Id.* at 363. *Hilton-Rorar v. State & Fed. Commc'ns., Inc.*, 2010 U.S. Dist. LEXIS 36121 (N.D. Ohio Apr. 13, 2010), says the same, while adding:

> Unless the document itself is protected under another privilege, transfer by a client to an attorney of an independent or pre-existing document (such as business records, letters, memos, e-mails, or other items from the client's business or business files) that was not created for or because of (or that do not arise out of) the attorney-client relationship or consultation, ***does not bring the document within the attorney-client privilege***.

*Id.* at \*18-\*19. *Hilton-Rorar* also recognized that "a claim of privilege cannot be a ***blanket*** claim and, instead, must be made and sustained on a question-by-question or ***document-by-document*** basis." *Id*. at \*20.

Here, however, Defendants have indiscriminately withheld and clawed back non-privileged attachments as derivatively protected by the attorney client privilege. They have withheld 4,780 attachments, only 65 of which they claim are protected as work product. The rest all contain derivative – and conclusory – privilege claims. The significant majority of attachments are described as "Attachment to communication with [type of] counsel seeking or receiving legal advice regarding [general topic]." Ex. 25. Indeed, Defendants candidly admit that they have segregated otherwise responsive documents based exclusively on attachment status. For example, in their letter of February 5, 2020, Defendants concede that Contractor Performance Assessment Reports are not privileged, and are only withheld as attachments to otherwise purportedly protected communications. Defendants do not explain how a Contractor Performance Assessment Report might reveal the privileged contents of an email to which it was attached. Similarly, Defendants' December 12, 2018 letter acknowledged not only that the Daugherty documents produced "included only email attachments and inadvertently excluded corresponding parent email communications," but admitted

that: "[T]he parent emails at issue ***do not contain any substantive information***." Ex. 26 at 1.[18] As another example, the four exhibits were clawed back together with the parent email in Exhibit 4. Ex. 4 at CORECIVIC_0959395. One of those attachments is a letter from the OIG to the BOP: Clearly relevant, but in no way revealing any privileged contents of the parent email.

## V.    CONCLUSION

Because Defendants have failed to appropriately justify their privilege assertions, all of the withheld and clawed back documents should be produced immediately. In the alternative, the Court should order production of all documents that primarily contain business advice, were shared with third parties or were withheld solely as attachments to otherwise purportedly privileged documents.

DATED: February 27, 2020          ROBBINS GELLER RUDMAN & DOWD LLP
                                  CHRISTOPHER M. WOOD, #032977
                                  CHRISTOPHER H. LYONS, #034853


                                        s/ Christopher M. Wood
                                  _____
                                     CHRISTOPHER M. WOOD

                                  414 Union Street, Suite 900
                                  Nashville, TN  37219
                                  Telephone:  800/449-4900
                                  615/252-3798 (fax)
                                  cwood@rgrdlaw.com
                                  clyons@rgrdlaw.com

---

[18]    The same letter contradicts itself by claiming the parent emails to the Daugherty documents "on their face, sought input or feedback from . . . in-house counsel." Ex. 26. This argument is absurd; the example parent email had the subject line "QA weekly Audit Summary," and stated only: "Attached please find the [previously withheld report]" and "***If*** you have any questions or concerns, please let us know." *Id*. at Ex. A. Further, the email was sent from the Director of QA Systems and Compliance, Ward Cullum, to 99 other individuals (five of which are in-house counsel); "on its face" it is nothing more than a regularly created business document, regularly distributed to senior management, discussing everyday (or at least "weekly") business matters.

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
 & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on February 27, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,crosini@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,eseaborn@barrettjohnston.com,nchanin@barrettjohnston.com,jmartin@rgrdlaw.com,ggilbert@barrettjohnston.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)