# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 3:16-cv-02267 |
| Plaintiff, | ) ) ) | Honorable Aleta A. Trauger |
| vs. | ) ) | Magistrate Judge Jeffrey S. Frensley |
| CORRECTIONS CORPORATION OF AMERICA, et al., | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) | |

## <u>MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF FACTS .........................................................................2

III.   LEGAL STANDARD..................................................................................7

IV.   ARGUMENT ...............................................................................................8

      A.     Plaintiffs Have Not Made A *Prima Facie* Showing Of Relevancy ........................8

      B.     Defendants Timely And Specifically Asserted Privilege Claims ...........................8

      C.     Defendants Have Properly Withheld Attachments To Privileged Emails .............14

      D.     Defendants Have Not Waived Privilege or Work Product Protection By Sharing Documents With Their External Counsel and External Auditor .............15

      E.     Defendants Have Not Withheld Documents Concerning "Non-Legal" or Business Matters .........................................................................17

V.     PLAINTIFFS' *IN CAMERA* SUBMISSIONS ....................................................18

VI.   DEFENDANTS' *IN CAMERA* SUBMISSIONS ...............................................19

VII.  CONCLUSION..........................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Ajose v. Interline Brands, Inc.*,
   2016 U.S. Dist. LEXIS 162617 (M.D. Tenn. Nov. 23, 2016) ..............................12, 13, 14, 18

*Armouth Int'l, Inc. v. Dollar Gen. Corp.*,
   U.S. Dist. LEXIS 148784 (M.D. Tenn. Nov. 2, 2015) ..........................................................16

*Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*,
   2015 U.S. Dist. LEXIS 195361 (M.D. Tenn. Sept. 10, 2015).................................................10

*Barton v. Zimmer Inc.*,
   2008 U.S. Dist. LEXIS 1296 (N.D. Ind. Jan. 7, 2008) .........................................................14

*Bluewater Music Servs. Corp. v. Spotify USA Inc.*,
   2019 U.S. Dist. LEXIS 221905 (M.D. Tenn. Feb. 22, 2019) ........................................7, 8, 13

*Broessel v. Traid Guaranty Ins. Corp.*,
   238 F.R.D. 215 (W.D. Ky. 2006)............................................................................................15

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
   293 F.3d 289 (6th Cir. 2002) .................................................................................................17

*Curtis v. Alcoa, Inc.*,
   2009 U.S. Dist. LEXIS 71581 (E.D. Tenn. Mar. 27, 2009)...................................................15

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
   2018 WL 3628890 (M.D. Tenn. Mar. 29, 2018) ...................................................................21

*EPAC Techs., Inc. v. Thomas Nelson, Inc.*,
   2015 WL 13729725 (M.D. Tenn. Dec. 1, 2015).........................................................10, 11, 12

*Genesco, Inc. v. Visa U.S.A., Inc.*,
   296 F.R.D. 559 (M.D. Tenn. 2014) .........................................................................................8

*Greene v. Drobocky*,
   2013 WL 12234609 (W.D. Ky. Aug. 5, 2013) .......................................................................16

*In re Haynes*,
   577 B.R. 711 (Bankr. E.D. Tenn. 2017) ..................................................................................9

*Hilton-Rorar v. State & Federal Communications Inc.*,
   2010 U.S. Dist. LEXIS 36121 (N.D. Ohio Apr. 13, 2010)....................................................15

*Kasper v. AAC Holdings, Inc.*,
   2017 U.S. Dist. LEXIS 144949 (M.D. Tenn. Sept. 7, 2017)....................................................7

*Muro v. Target Corp.*,
250 F.R.D. 350 (N.D. Ill. 2007), aff'd, 580 F.3d 485 (7th Cir. 2009) .....................................14

*In re Nat'l Perscription Opiate Litig.*,
2018 U.S. Dist. LEXIS 142270 (N.D. Ohio Aug. 1, 2018) ..............................................15, 20

*New Phoenix Sunrise Corp. v. Comm'r*,
408 F. App'x (6th Cir. 2010) ...........................................................................................17

*Reed v. Baxter*,
134 F.3d 351 (6th Cir. 1998) ..........................................................................................18

*In re Search Warrant Executed at Law Offices of Stephen Garea*,
1999 U.S. App. LEXIS 3861 (6th Cir. Mar. 5, 1999) ........................................................14

*Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*,
2008 U.S. Dist. LEXIS 128191 (E.D. Tenn. Nov. 4, 2008) ................................................15

*Tibble v. Edison Int'l*,
2008 U.S. Dist. LEXIS 106999 (C.D. Cal. Dec. 30, 2008) ..................................................9

*United States v. Deloitte LLP*,
610 F.3d 129 (D.C. Cir. 2010) .........................................................................................17

*United States v. Roxworthy*,
457 F.3d 590 (6th Cir. 2006) ......................................................................................13, 14

*Viamedia, Inc. v. Comcast Corp.*,
2017 U.S. Dist. LEXIS 101852 (N.D. Ill. June 30, 2017) ....................................................3

*Wellin v. Wellin*,
2015 U.S. Dist. LEXIS 135107 (D.S.C. July 31, 2015) ........................................................9

## RULES

Fed. R. Civ. P.
26..................................................................................................................1, 10, 11
26(b)(1) ....................................................................................................................7
26(b)(5)(A) ................................................................................................................7
37.............................................................................................................................7
37(a)(1) ..................................................................................................................7, 8

## REGULATIONS

M.D. Tenn. Admin. Order
174............................................................................................................................7
174-1 ...............................................................................................................2, 3, 7, 12
174-1, § 3 ...................................................................................................................9
174-1, § 8(b) ........................................................................................................3, 7, 12

## OTHER AUTHORITIES

The Sedona Conference, *Commentary on Protection of Privileged ESI*, 17 Sedona
    Conf. J. 95 (2016) ....................................................................................................................3

# I.    INTRODUCTION

This is a securities class action brought by an institutional investor (and repeat plaintiff in securities cases) on behalf of all shareholders who purchased or acquired stock in CoreCivic between February 27, 2012 and August 17, 2016 (the "Class Period").  Plaintiffs allege that Defendants made false and misleading statements and omissions regarding the quality and cost effectiveness of CoreCivic's operations, including that renewal rates on CoreCivic's contracts with its government partners would remain high.  Fact discovery has been ongoing since January 2018 and closes on April 17, 2020.

In a securities class action of this size, fact discovery is both voluminous and lopsided, with the burden falling almost entirely on Defendants.  Plaintiffs have produced 115 documents from one custodian (the Lead Plaintiff).  In contrast, Defendants have produced over 420,000 documents, totaling over 2.2 million pages, from 65 custodians.  Defendants have expended millions of dollars and thousands of lawyer hours collecting, reviewing, and producing documents.

Now, over a year after first receiving Defendants' privilege log and five weeks before the close of fact discovery, Plaintiffs ask this Court to compel the production of *every single* document withheld or redacted by Defendants.  Plaintiffs do not articulate any prejudice from not having had access to these documents.  The only rationale that Plaintiffs provide – namely, that the documents withheld might have been (or might be able to) "jog" witnesses' memories during their depositions, despite the fact that documents actually produced have not – is not only highly speculative, it is plainly insufficient to support the wholesale waiver of privilege and work product protections.

Rather, Plaintiffs' Motion is based solely on their unfounded accusations that Defendants "failed to timely justify their privilege claims and then failed, repeatedly, to remedy the significant deficiencies in the belatedly produced" privilege logs.  Mot. at 1.  Neither is true.  Defendants timely asserted privilege claims, in a manner consistent with Federal Rule of Civil Procedure 26,

1

applicable Sixth Circuit law, and the Middle District of Tennessee's Administrative Order 174-1. Plaintiffs' attempt to reframe Defendants' efforts to compromise as "failures to remedy significant deficiencies" is based on the incorrect premise that significant deficiencies existed in the first place. Defendants' "ever-evolving" logs, (Mot. at 1), merely are the product of their good-faith attempts to address Plaintiffs' complaints. When Defendants discovered errors in their process or privilege calls (as identified by Plaintiffs or on their own initiative), they fixed them. But such errors are understandable in a document production of this size and complexity, and do not "call into question Defendants' entire privilege review process." Mot. at 1.

This Motion is baseless and Plaintiffs' requested extraordinary relief – complete and total privilege waiver – is unjustified. Defendants' privilege logs far exceed that which this Court has held to be adequate, and the documents that Plaintiffs and Defendants have presented for *in camera* review show that Defendants have made appropriate privilege calls and redactions. Defendants respectfully request that this Court deny Plaintiffs' Motion in its entirety.

## II.      STATEMENT OF FACTS

Plaintiffs served 49 document requests. To respond to those requests, the parties agreed that Defendants would search 65 custodians' documents using numerous agreed-upon search terms. In order to meet the substantial completion of document production deadline of September 14, 2018, (Dkt. No. 114), Defendants devoted extraordinary resources, including engaging over fifty attorney reviewers to review over one million documents (including over the Labor Day holiday). Declaration of Eric C. Pettis in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("Pettis Decl.") ¶ 3. To help those reviewers identify potentially privileged documents, Defendants asked their e-discovery vendor to highlight the names of all in-house and outside

counsel in the documents in the electronic review platform.[1] *Id.* ¶ 5.

The Revised Stipulation and Protective Order ("Protective Order") did not require privilege logs or include a deadline for the production of privilege logs. *See* Protective Order at ¶ 11, Dkt. 86. However, after meeting the September 14 substantial completion deadline, Defendants turned immediately to their privilege review. They worked diligently to review each potentially privileged document, produce non-privileged documents, and log or redact *each* document family withheld on the basis of attorney-client privilege and/or attorney work product— although it would have been reasonable under Administrative Order 174-1 to use a less costly and time-consuming logging method. *See* A.O. 174-1, § 8(b). On October 8, 2018, less than one month after the substantial completion deadline, Defendants produced their first privilege log. Pettis Decl., Ex. L. On October 15, Defendants followed-up with their first redaction log and second privilege log—which Defendants subsequently agreed to combine with their first privilege log, at Plaintiffs' request. Pettis Decl., Ex. M.

On November 21, 2018, more than a month after receiving Defendants' first privilege log, Plaintiffs broadly objected to the form and substance of the log, including on the grounds that "the log does not attempt to describe the positions and affiliations of all participants in the communications" and "the information in the log is entirely insufficient." Pettis Decl., Ex. O. On December 4, 2018, the parties conducted a telephonic meet and confer. Among other things, Plaintiffs stated that the "Privilege Description" field in Defendants' privilege log was inadequate;

---

[1] This protocol is standard in large e-discovery practice (*see, e.g., Viamedia, Inc. v. Comcast Corp.,* 2017 U.S. Dist. LEXIS 101852, at *12 (N.D. Ill. June 30, 2017) (finding no waiver where "Viamedia's third-party vendor took steps to ensure the [privileged] names and terms were highlighted in the documents")); The Sedona Conference, *Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 170 (2016)). It was also especially important here given that CoreCivic employed 27 in-house counsel and legal staff and over 100 firms and attorneys as outside counsel during the five-year relevant time period.

- 3 -

accordingly, Defendants offered to replace that field with several automatically-generated and manually-populated metadata fields in its stead. With that understanding in place, on December 22, 2018, Defendants produced an amended privilege log which added individual entries for each attachment withheld, and sixteen different fields (columns), including fields identifying all counsel involved in each privileged communication, the subject line for each email communication, the file name for each attachment, the number of pages for each email or attachment, and whether the document was withheld on the basis of attorney-client privilege *or* work product protection. Pettis Decl., Ex. Q. Six days later, Defendants produced a combined redaction log. *Id.*, Ex. R.

Fact discovery between the parties was stayed from February 12, 2019 until August 30, 2019, but third-party discovery proceeded. *See* Order Staying Discovery, Dkt. 159; Revised Case Management Order, Dkt. 180. As relevant here, during that time, Plaintiffs pursued discovery from Ernst & Young ("EY"), CoreCivic's external auditor. EY produced 108 documents, including 32 with redactions for information over which Defendants asserted privilege and/or attorney work product. (The operative privilege log (the "EY Privilege Log") now lists a mere 27 documents (26 of which are redacted) with (in some cases, narrower) redactions for information over which Defendants have asserted attorney work product, *see infra* § IV.D. and Pettis Decl., Ex. V.)

Plaintiffs did not raise any concerns with Defendants' amended privilege log (or the EY Privilege Log) until December 20, 2019—***nearly an entire year*** after Plaintiffs first received Defendants' amended log. Declaration of Christopher Wood in Support of the Motion ("Wood Decl.") Ex. 19. Notwithstanding the discovery stay in the middle of that time period, Defendants were left to believe that their amended log satisfied Plaintiffs' complaints for the approximate six months that the case was active. Frustratingly, Plaintiffs' latest round of objections included

- 4 -

several that were contrary to their prior positions. For example, on a January 10, 2020 meet and confer call, Plaintiffs argued that because the log did not include a "Privilege Description" field, Plaintiffs had no way to assess whether the withheld documents contained privilege information. Defendants pointed out that the Privilege Description field had been removed ***at Plaintiffs' request***, but in the spirit of compromise, agreed to re-insert that field. On January 23, 2020, Defendants produced an amended log. Wood Decl., Ex. 20.

Plaintiffs were still not satisfied. On January 28, 2020, Plaintiffs raised a host of objections – many of which Defendants believed had been already addressed based on the meet and confer correspondence – regarding the form of Defendants' privilege log and the adequacy of Defendants' privilege determinations. Pettis Decl., Ex. S. Defendants reviewed and responded to Plaintiffs' objections and, again, in the spirit of compromise, re-reviewed categories of withheld documents, including communications with outside counsel at Akin Gump, and all documents on the EY Privilege Log. On February 5, 2020, Defendants notified Plaintiffs that they would roll off the log and produce a small subset of emails with Akin Gump, and request that EY produce a handful of documents, and reproduce a small subset of documents with certain redactions removed. Wood Decl., Ex. 22. The next day, Defendants produced the Akin Gump documents, an updated privilege log to reflect the removal and production of those documents, and an updated redaction log that contained every document Defendants had produced that was redacted for privacy and/or privilege—809 for privilege and 15,603 for privacy.[2]

Defendants have clawed back inadvertently produced documents protected by the attorney client privilege and/or attorney work product on several occasions. Two instances of e-discovery

---

[2] Defendants have redacted social security numbers, inmate names/numbers, sensitive security information, phone numbers, financial account numbers, and sensitive medical information.

vendor error represent the significant majority of the approximately 1,200 privileged documents Defendants have clawed back in this case. Pettis Decl. ¶¶ 4-5. First, just after substantially completing its document production on September 13, 2018, Defendants discovered that 834 documents that Defendants had coded as privileged in the review platform had been inadvertently produced due to a vendor error. Defendants clawed back those documents on September 28, 2013. Pettis Decl. ¶ 4; *see id.* Ex. F. Second, on October 29, 2019, at a deposition, Plaintiffs attempted to introduce privileged documents involving the law firm Wiley Rein LLP. Pettis Decl. ¶ 5. After investigating, Defendants discovered that a subset of in-house and outside counsel were not highlighted in the document review platform, resulting in the inadvertent production of privileged documents, including communications seeking and providing legal advice from Wiley Rein attorneys. *Id;* Ex. U. Defendants promptly identified and clawed back on November 12, 2018 the 399 documents affected by this vendor error. *Id.*; Ex. G.[3]

Contrary to Plaintiffs' belief, all clawed back documents have been logged. *See* Mot. at 15-16. The 834 documents clawed back due to vendor error on September 28, 2018 were logged either in Defendants' October 8, 2018 privilege log or Defendants' October 15, 2018 redaction log. *See* Pettis Decl., Exs. F, L, M. The documents that were clawed back on October 18, 2018, December 3, 2018, and December 12, 2018 (23 documents in total), were logged in Defendants' December 22, 2018 amended privilege log. *See id.* Exs. N, P, Q, T. The 399 documents clawed back due to vendor error on November 12, 2019, and 12 documents that were clawed back on February 14, 2019, were logged in Defendants' February 14, 2020, amended privilege log. *See id.* Ex. G; Wood Decl., Ex. 24.

On February 24, 2020, Defendants produced the final and now operative logs, containing

---

[3] Defendants also clawed back a document at the deposition of Jeb Beasley on March 10, 2020, and are currently assessing whether similar documents have been inadvertently produced.

- 6 -

8,931 privilege log entries and 16,391 redaction entries (15,603 for privacy, 809 for privilege).
*See* Pettis Decl., Ex. I.

## III.    LEGAL STANDARD

The scope of discovery extends to non-privileged information that is relevant to any party's
claim or defense, if it is "proportional to the needs of the case." *Bluewater Music Servs. Corp. v.
Spotify USA Inc.*, 2019 U.S. Dist. LEXIS 221905, at *6 (M.D. Tenn. Feb. 22, 2019) (denying
motion to compel) (quoting Fed. R. Civ. P. 26(b)(1)).  Under Rule 37, Plaintiffs may move for an
order compelling discovery.  Fed. R. Civ. P. 37(a)(1).  To succeed, they "must demonstrate that
the requests are relevant to the claims or defenses" in this case.  *Bluewater*, 2019 U.S. Dist. LEXIS
221905, at *6-7 (citation omitted).  If relevancy is shown, Defendants then bear the burden of
demonstrating why the documents are not otherwise discoverable, *id.*, including the burden of
demonstrating that the attorney-client privilege and attorney work product protections apply.
*Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 144949, at *12 (M.D. Tenn. Sept. 7, 2017)
(finding no privilege waiver where attorney held dual role as lobbyist and legal counsel).

The parties' Protective Order contemplates that privilege logs shall be prepared "in
accordance with the Federal Rules of Civil Procedure or other applicable authority."  Protective
Order ¶ 11.  Fed. R. Civ. P. 26(b)(5)(A) requires Defendants provide information that "describe[s]
the nature of the documents, communications, or tangible things not produced or disclosed—and
do so in a manner that, without revealing information itself privileged or protected, will enable
other parties to assess the claim."  Administrative Order 174-1 – which Plaintiffs ignore – is the
operative default standard on privilege logging in the Middle District of Tennessee.  It provides:
"If a log is produced, the Court expects the parties to discuss foregoing using traditional document-
by-document logs in favor of alternate logging methods, such as identifying information by
category or including only information from particular metadata fields (*e.g.*, author, recipient,

date)."  Admin. Order No. 174-1, § 8(b).

## IV.  ARGUMENT

### A.  Plaintiffs Have Not Made A *Prima Facie* Showing Of Relevancy

Plaintiffs have not even attempted to "demonstrate that the [withheld documents] are relevant to the claims or defenses" in this case.  *Bluewater*, 2019 U.S. Dist. LEXIS 221905, at *6-7 (citation omitted); Fed. R. Civ. P. 37(a)(1).  Nowhere do they try to tie the privileged documents to any of their Requests for Production, or explain why the more than 420,000 documents that Defendants have produced are not enough pursuant to the proportionality standards outlined in the Federal Rules and followed by this Court.  This inadequacy alone is enough to permit the Court to deny Plaintiffs' Motion.  *Id.*

### B.  Defendants Timely And Specifically Asserted Privilege Claims

Should the Court nevertheless find that the burden has shifted to Defendants to demonstrate that attorney-client privilege and work product protections apply to the withheld documents and have not been waived, they amply satisfy this burden.  The parties agree that privilege claims must be asserted "in a ***timely and proper*** manner."  Mot. at 10 (emphasis in original) (citing *Genesco, Inc. v. Visa U.S.A., Inc.,* 296 F.R.D. 559, 582 (M.D. Tenn. 2014)).  Defendants have done just that.

*First*, after lodging their privilege objections, Defendants timely provided Plaintiffs with a privilege log.  Neither the Protective Order, the Federal Rules, Administrative Order 174-1, nor any other Order from this Court set a deadline by which Defendants' privilege log had to be prepared.  Defendants' first privilege log was produced less than 30 days after the September 14 deadline for substantial completion of document production.  This is standard e-discovery practice in a case of this size and complexity.  *See Wellin v. Wellin*, 2015 U.S. Dist. LEXIS 135107 (D.S.C. July 31, 2015) (in a case involving a substantial number of documents to review, finding no waiver where privilege log was produced three months after discovery responses were provided); *see also*

- 8 -

*Tibble v. Edison Int'l,* 2008 U.S. Dist. LEXIS 106999 (C.D. Cal. Dec. 30, 2008). Moreover, Administrative Order No. 174-1 envisions that the parties confer regarding whether a privilege log is necessary and, if so, what it may contain. *See, e.g.*, Admin. Order No. 174-1, § 3 (envisioning "on-going meet and confer discussions" that may involve privilege logging issues referenced in the accompanying checklist). Plaintiffs' suggestion that Defendants' log should have been produced "contemporaneously with the ***signed discovery responses***" (*see* Mot. at 10 (emphasis added)), is absurd.[4] It would be impossible for Defendants to provide written responses and objections to Plaintiffs' 49 document requests *and* simultaneously log every document that they would ultimately withhold, *before* collecting documents, negotiating custodians, negotiating and running search terms, reviewing for responsiveness, and reviewing for privilege. Plaintiffs' own authority provides no support for imposing this unattainable burden on Defendants, much less the draconian remedy of waiver for failing to meet it. The court in *In re Haynes* (cited in Mot. at 10), did not hold that the defendant had waived privilege by failing to provide a privilege log contemporaneously with written discovery responses. Rather, the Court held that the defendant waived privilege only *after* "*the Court* ha[d] given the proponent repeated opportunities to get it right, including express instructions about what should be included in privilege logs." *In re Haynes*, 577 B.R. 711, 720, 740 (Bankr. E.D. Tenn. 2017) (emphasis added). No such instructions were provided by the Court here. Moreover, Plaintiffs have not articulated any prejudice from Defendants' purported "delay." Indeed, they sat on Defendants' log for longer than it took Defendants to produce it before they levied their first objections, long before the first depositions were taken in this case, and well before the close of fact discovery.

---

[4] To be clear, Defendants objected on the grounds of privilege to certain requests in both Plaintiffs' First and Second Set of Requests for Production. Pettis Decl., Exs. J, K.

- 9 -

*Second*, Defendants' privilege log contains more than sufficient information to invoke the attorney-client privilege and meet their obligations under the Protective Order, Federal Rule of Civil Procedure 26, and Sixth Circuit law. *See* Protective Order § 11 ("[A]ny log prepared by a Producing Party . . . shall be done [ ] in accordance with the Federal Rules of Civil Procedure or other applicable authority"); Fed. R. Civ. P. 26 (parties are to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); *Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, 2015 U.S. Dist. LEXIS 195361, at *4 (M.D. Tenn. Sept. 10, 2015) (requiring that privilege logs include "[i] date, [ii] author and all recipients of the document, [iii] subject matter, and [iv] an explanation as to why the document should be privileged and not produced in discovery"); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2015 WL 13729725, at *4-5 (M.D. Tenn. Dec. 1, 2015) (finding a privilege log which contained only the date, to/from/cc, description, and basis for withholding the document fields sufficient). In fact, Defendants' privilege log includes additional details above and beyond these requirements, such as the subject line of emails, the file names of attachments, and number of pages per document. Pettis Decl., Ex. I. In all, Defendants' log contains sixteen different fields by which Plaintiffs, and for that matter the Court, can assess the privilege claim asserted.

Take Log Entry # 28 (REV00000695) for example. The log provides the following information: Sent Date (10/8/2014); Document Type (Email); Counsel and Legal Staff Involved (Cole Carter, Dianna Shew, Natasha Metcalf); From (John Baxter); To (Jeb Beasley); CC (Harley Lappin); Subject (RE: Residency Requirement); Document Extension (msg); No. of Pages (2); Basis for Protection (Attorney-Client Privilege); Privilege Description (Communication with In-

- 10 -

house counsel seeking or receiving legal advice regarding government contract).[5] Taken together, this information (i) expressly makes a claim of privilege; and (ii) describes the nature of the withheld email in a manner that, without revealing information itself privileged or protected, will enable Plaintiffs to assess the claim. Fed. R. Civ. P. 26. Courts in the Middle District of Tennessee have found logs with less information to be sufficient to invoke privilege, even in cases involving a much smaller number of documents to log than in this case. In *EPAC*, for example, the court concluded that the defendants' log was sufficient where it "contain[ed] the date, sender, recipient(s), a description of the document, and the basis for redacting or withholding the document" and "members of the [defendant's] legal team are identified with an asterisk," and because "[defendants] supplemented its description of the documents in which no attorney was involved." *EPAC*, 2015 WL 13729725, at *5. This is exactly what Defendants have provided here, ***and more***.

Take Log Entry # 42 (REV00001956), a "Communication with In-house counsel seeking or receiving legal advice regarding facility operations," (Mot. at 12), as another example. The log provides the following information: Sent Date (1/12/2012); Document Type (Email); Counsel and Legal Staff Involved (Scott Craddock, Stephanie Parker, Susan Lindsey); From (Ronald Thompson); To (Harley Lappin); Subject (FW: Report #11-11-0028); Document Extension (msg); No. of Pages (1); Basis for Protection (Attorney-Client Privilege); Privilege Description (Communication with In-house counsel seeking or receiving legal advice regarding facility operations). Plaintiffs challenge this entry in two respects. First, they argue that the subject line of the email, "FW: Report #11-11-0023," does not suggest that "facility operations" was being

---

[5] Note that not all sixteen fields are populated for each document because some are not relevant for certain types of documents (*e.g.*, the "File Name" field is not populated for emails because emails do not have a file name separate from their subject).

discussed.  Defendants disagree.  But more to the point, that disagreement highlights why it makes no sense to rely on the subject line of an email alone to ascertain its substance.  An email with the generic subject line "Hi," might seek or provide legal advice.  Second, Plaintiffs point out that the Privilege Description field describes the email as a communication "with" counsel, when the "Counsel and Legal Staff Involved in Communication" (attorneys Scott Craddock, Stephanie Parker and Susan Lindsey) are not in the "To" or "From" fields.  Mot. at 13.  Plaintiffs do not dispute that "[c]ommunications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *EPAC Techs., Inc.*, 2015 WL 13729725, at *2; *see also Ajose v. Interline Brands, Inc.*, 2016 U.S. Dist. LEXIS 162617, at *23 (M.D. Tenn. Nov. 23, 2016) ("[C]ommunications between non-legal individuals may be privileged.").  Rather, they criticize Defendants for describing this as a communication "with" counsel, when a more accurate description might be a communication "reflecting" or "transmitting" legal advice from counsel.  Mot. at 13.  But that inference is clearly to be drawn from the inclusion of three attorneys in the "Counsel and Legal Staff Involved in Communication" field, and it was reasonable for Defendants to categorically describe the types of communications on their log.  A.O. 174-1, § 8(b).

Relatedly, Plaintiffs broadly criticize phrases in the Privilege Description field like "'facility operations,' 'government contract' or 'general company operations,'" as too conclusory, boilerplate or generic.  Mot. at 4.  Again, in cases involving massive volumes of e-discovery, Administrative Order No. 174-1 expresses a preference for identifying privileged information categorically.  It would be burdensome to go into greater specificity on a document-by-document basis regarding which "operations" or "government contract" was the subject of the request for, or provision of, legal advice.  The cost of requiring Defendants to add more detail on a document-by-

- 12 -

document basis (*i.e.,* adding facility name to "facility operations," or adding which contract to "government contract") is not proportional to the needs of this case. *See Bluewater*, 2019 U.S. Dist. LEXIS 221905, at *6. Likewise, Plaintiffs' complaint that the "Privilege Log" field begins the privilege description "in one of only four ways," (Mot. at 4), is beside the point. While it is true that each privilege description begins with either (1) "communication with," (2) "discussion regarding communications with," (3) "attachment to communications with," or (4) "communication with," (Pettis Decl., Ex. I), that is only part of the "Privilege Description," and there is nothing wrong with putting documents into these categories, for efficiency.

*Third*, Plaintiffs' claim that Defendants have improperly withheld documents on the basis of attorney work product is also baseless. In order to claim attorney work product, a party must show (i) that the party created the document "because of [its] subjective anticipation of litigation," and (ii) that the subjective anticipation of litigation "was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Defendants have only withheld 108 documents on the basis of attorney work product alone. *See* Wood Decl., Ex. 22 at 6. Plaintiffs do not challenge any specific entry. Rather, Plaintiffs suggest that, for each document, Defendants are required to "identify [the] pending litigation to support" their claim.[6] But the sole case Plaintiffs cite for that proposition, *Ajose*, 2016 U.S. Dist. LEXIS 162617, provides no support. *Ajose* involves the narrow issue of determining "whether files created in response to direct claims and subrogation demands may be withheld as work product" based on a subjectively reasonable anticipation of litigation. *See id.* at *8. It did not hold that work product protection can only be invoked if the party specifically identifies a *pending* litigation matter; indeed, the work product doctrine itself

---

[6] Requiring Defendants to undergo such a task would not be "proportional to the needs of the case." *See Bluewater*, 2019 U.S. Dist. LEXIS 221905, at *6.

contemplates that litigation must only be *anticipated*.[7]

### C. Defendants Have Properly Withheld Attachments To Privileged Emails

The parties agree that non-privileged documents do not become privileged solely by virtue of being transmitted to counsel. Mot. at 19. For that reason, Defendants have produced several documents, including Contractor Performance Assessment Reports – the example provided by Plaintiffs – despite the fact that such documents were subsequently sent to counsel. *See* Pettis Decl., Ex. S at 2. However, emails attaching pre-existing unprivileged emails or documents may be protected even if that underlying information remains unprotected. *See Barton v. Zimmer Inc.*, 2008 U.S. Dist. LEXIS 1296, at *17 (N.D. Ind. Jan. 7, 2008). In other words, "even though one e-mail is not privileged, a second e-mail forwarding [it] to counsel might be privileged in its entirety [including (apparently) the attachment as attachment]." *Id.*; *see also In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 U.S. App. LEXIS 3861, at *3 (6th Cir. Mar. 5, 1999) (non-privileged attachments may become privileged "because their transmission between client and attorney represents an independent, confidential communication."); *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) ("[T]he fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected."), aff'd, 580 F.3d 485 (7th Cir. 2009).

On this basis, Defendants have withheld (and clawed back) attachments that are not independently privileged but, together with the parent email, would "necessarily reveal the

---

[7] It is worth noting that many of the documents that Defendants have withheld on the basis of Attorney Work Product alone in fact identify pending litigation in the subject line field. *See e.g.,* Defendants' January 23, 2020 Privilege Log at REV00414471 (subject line "FW: Sefidkar v. CCA [IWOV-Jackson.FID1285523]"); REV00414604 (subject line "RE: Janali v. CCA [IWOV-Jackson.FID1285523]"); REV00481133 (subject line "FW: Hammonds v. CCA, L8775 [REV00481133]").

substance of a confidential client communication."[8] *Hilton-Rorar*, 2010 U.S. Dist. LEXIS 36121, at \*22.  This "derivative" privilege claim is valid and Plaintiffs offer no Sixth Circuit law to support their contrary position.  Mot. at 18-20.  In addition, an attorney's selection of documents can be work product even if the underlying documents themselves are not privileged.  *See In re Nat'l Perscription Opiate Litig.*, 2018 U.S. Dist. LEXIS 142270, at \*67 (N.D. Ohio Aug. 1, 2018) ("[D]ocuments selected as most relevant [by counsel] necessarily reflect counsel's mental impressions, opinions, judgments, and legal theories"); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.,* 2008 U.S. Dist. LEXIS 128191, at \*14 (E.D. Tenn. Nov. 4 , 2008) ("[T]he selection of documents from among the larger number already furnished to the plaintiff constituted defendants' attorney work product.").  Defendants have also withheld attachments on this basis.

### D.  Defendants Have Not Waived Privilege or Work Product Protection By Sharing Documents With Their External Counsel and External Auditor

Here too, the parties agree on the general principle of law:  the attorney-client privilege is waived by voluntary disclosure to third parties outside of the privilege.  Mot. at 16.  Plaintiffs claim that Defendants' log contains "numerous entries" where documents appear to have been shared with third parties, (*id.*), but, in fact, primarily challenge two categories of documents.[9]

---

[8] Defendants' log also contains information beyond the "Privilege Description" field that indicates that certain attachments have been withheld as independently privileged.

[9] Plaintiffs also challenge communications in which consultants Rob Hobart and Katie Lilley are copied.  But as agents of CoreCivic, their presence on any otherwise privileged communication does not "break" privilege.  *See Curtis v. Alcoa, Inc.*, 2009 U.S. Dist. LEXIS 71581, at \*34-35 (E.D. Tenn. Mar. 27, 2009); *Broessel v. Traid Guaranty Ins. Corp.*, 238 F.R.D. 215, 218-19 (W. D. Ky. 2006) ("[C]onfidential communications disclosed to or made in the presence of certain agents of the attorney (*e.g.*, accountants, engineers, or experts) to further the rendition of legal advice or in connection with the legal representation are subject to the attorney-client privilege.").  Finally, Plaintiffs also challenge entries (one email that was collected from multiple custodians) in which Karen White, a teacher of the email author's child, was inadvertently copied, instead of the similarly-named CoreCivic employee Kim White.  The law does not require waiver for such an inadvertent disclosure.

- 15 -

Specifically, Plaintiffs challenge (1) Defendants' withholding of 37 emails where the only basis for the privilege is a communication with outside counsel Akin Gump (a law firm that also provides lobbying services to CoreCivic); and (2) Defendants' claim of attorney work product over 27 documents (26 are redacted) EY documents. No waiver has occurred with respect to either.

*First*, Plaintiffs argue that Akin Gump serves the Company in a non-legal (lobbying) capacity, but avoid mentioning that Akin Gump functions in a legal capacity as well. Mot. at 17. Recognizing that Akin Gump wears "two hats," Defendants have reviewed each document in which Akin Gump appears and have produced 651 documents in which Akin Gump was functioning in a non-legal role, and withheld 37 communications involving legal advice, primarily regarding CoreCivic's government contracts. *See, e.g.*, Pettis Decl., Ex. I at Entry #1006. This reflects a careful determination of whether privilege applies on a document-by-document basis. *See, e.g., Armouth Int'l, Inc. v. Dollar Gen. Corp.*, U.S. Dist. LEXIS 148784, at *3 (M.D. Tenn. Nov. 2, 2015) (determining whether the attorney was wearing his "business hat" or "legal hat" to assess privilege); *cf.* Mot. at 17 (arguing that the subject line of certain emails indicates that Akin Gump was functioning in its lobbying capacity). Defendants re-reviewed these privileged determinations as recently as February 2020, and as a result, produced an additional 40 documents in which Akin Gump was functioning in a non-legal capacity. *See* Wood Decl., Ex. 22 at 5. The remaining 37 logged documents reflect privileged communications with Akin Gump.

*Second*, Plaintiffs' argument that Defendants waived work product by sharing documents with its external auditor, EY, is equally meritless. As an initial matter, Plaintiffs are wrong that Defendants do not have standing to assert privilege over these documents. *See Greene v. Drobocky*, 2013 WL 12234609, at *2 (W.D. Ky. Aug. 5, 2013) (allowing a client to assert privilege over attorney work product). And contrary to Plaintiffs' contention, those documents were not

- 16 -

"created pursuant to auditing services," rather they were created by CoreCivic in anticipation of litigation and only later provided to EY. It does not matter that the files were produced "from" EY's annual audit files. Mot. at 18. Moreover, Defendants do not contend that such documents were transmitted to EY for the purpose of "seeking legal advice." Mot. at 18. Rather, Defendants have redacted certain portions of those documents that constitute attorney work product. Plaintiffs' argument that Defendants waived work product protection by disclosing this information to its auditor is unsupported by the case law. The law is well-settled that work product wavier occurs only when "the original disclosure [was made] to an 'adversary.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002). The Sixth Circuit, as well as the majority of other district courts that have addressed whether an independent auditor constitutes an adversary, have found that disclosure of attorney work product to an auditor ***does not*** result in waiver. *See New Phoenix Sunrise Corp. v. Comm'r*, 408 F. App'x at 919 (6th Cir. 2010); *see also United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010).

### E. Defendants Have Not Withheld Documents Concerning "Non-Legal" or Business Matters

Again, here, the parties agree on the basic principle of law: communications from legal counsel solely related to areas other than legal advice (*e.g.*, business advice) are not privileged. Mot. at 14. But Plaintiffs' continued reliance on email subject lines cannot serve as the lone basis for determining whether an email relates to legal or business advice, and further exemplifies why each entry in Defendants' log must be viewed holistically. Plaintiffs also point out that "Natasha Metcalf, VP Partner Contracts, was not in-house counsel yet is listed . . . [as] the sole individual in the 'Counsel and Legal Staff Involved in Communication'" field more than 140 times. *Id.* While it is true that Ms. Metcalf does not act in a legal capacity at the Company, the "Counsel and Legal Staff Involved in Communication" field includes, as Plaintiffs know, "a much broader set

- 17 -

of individuals than only those attorneys acting in a legal capacity." Wood Decl., Ex. 22 at 4. Rather, "that field includes other Company personnel [*i.e.*, Legal Staff] who regularly interact with in-house and outside counsel, and therefore, facilitate or assist with the provision or receipt of legal advice," and is not intended to indicate, in every instance, that the individual is providing legal advice. *See id.* at 4-5. And as set forth above, it is well-settled that communications between non-lawyers (or, lawyers not acting in a legal capacity) may still be privileged, if they reflect or request legal advice. *Ajose*, 2016 U.S. Dist. LEXIS 162617, at *23 (M.D. Tenn. Nov. 23, 2016) ("[C]ommunications between non-legal individuals may be privileged.").

## V. PLAINTIFFS' *IN CAMERA* SUBMISSIONS

Plaintiffs have submitted five documents for the Court to review *in camera*. Each of these documents was inadvertently produced and subsequently clawed back (and logged) by Defendants. In the Sixth Circuit, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). Pursuant to this standard, each document submitted by Plaintiffs is protected by the attorney-client privilege.

- **EXHIBIT 1 –** CORECIVIC_1246797: This document is an email chain ending in an August 21, 2013, email from Michael Pugh to Michael Nalley. It was clawed back on October 18, 2018, and, contrary to Plaintiffs contention (*see* Mot. at 16), appears on Defendants' redaction log at Entry # 6234.[10] The second email in the chain, is a discussion between in-house counsel Tom Shaw and Dianna Shew[11] that reflects Ms. Shew's evaluation of an issue at one of the Company's facilities. Ms. Shew then transmits this evaluation and provides legal advice to other Company employees, who discuss this advice. The redacted portions of this email are clearly privileged.

---

[10] This log entry lists a different bates number than Plaintiffs cite in their Motion, as the bates number for this document changed since the time of the claw back. Pettis Decl., Exs. H, AA.

[11] Ms. Shew was Associate General Counsel for the Company during the relevant time period, so Plaintiffs' claim that her appearance on the log "raises alarm bells" defies logic. Mot. at 16.

- 18 -

*See* Pettis Decl., Ex. AA.

- **EXHIBIT 2** – CORECIVIC_1265122: This document is an email chain ending in an April 17, 2014 email from Keith Hall to Michael Pugh, Stacey Stone, Laura Bedard, Barbara Wagner, and Joe Pryor cc'ing John Robinson. It was clawed back on October 18, 2018, and appears on Defendants' privilege log at Entry #7103. In the last-in-time email, Mr. Hall is discussing Mr. Beasley's update and requesting that Company employees gather information for the facilitation of legal advice from in-house counsel Dianna Shew. This is a privileged communication. To the extent that Plaintiffs claim that only the top email should have been redacted, the bottom email was produced ***twice*** and is in Plaintiffs possession. *See* Pettis Decl., Exs. W, X.

- **EXHIBIT 3** – CORECIVIC_1057702: This document is an email chain ending in a November 22, 2016 email from Natasha Metcalf to Samantha Lee. It was clawed back on November 12, 2019, and appears on Defendants' privilege log at Entry # 4324. In the last-in-time email, Ms. Metcalf forwards outside counsel Samantha Lee, attorney at Wiley Rein LLP, a draft response to an audit conducted at a Company facility requesting that she review the changes made by a Company consultant. This is a privileged communication. Again, to the extent that Plaintiffs claim that only the top email should have been redacted because the remainder of the chain "was shared with lobbyist Katie Lilley" (Mot. at 17), the remainder of the chain was produced and is in Plaintiffs' possession. *See* Pettis Decl., Ex. Y.

- **EXHIBIT 4** – CORECIVIC_0959395: This document is an email chain ending in an April 11, 2014 email from Tony Grande to Jeb Beasley and Bart Verhulst. It was clawed back on October 18, 2018, and, contrary to Plaintiffs contention (*see* Mot. at 15), appears on Defendants' redaction log at Entry # 4239.[12] Defendants have only redacted the top two emails in the chain. In those emails, Mr. Grande is soliciting advice regarding a government audit from various Company executives, including in-house counsel Steve Groom. Mr. Grande then notifies other Company employees that the legal advice has been solicited. The redacted portions are privileged. *See* Pettis Decl., Ex. BB.

- **EXHIBIT 5** – CORECIVIC_1197546: This document is an email from Ashley Odubeko to various Company executives and employees including in-house counsel Steve Groom and Stacey Cason. It was clawed back on October 18, 2018, and appears on Defendants' privilege log at Entry # 6133. In the email, Ms. Odubeko attaches a proposed contract modification and requests that the recipients of the email, including in-house counsel, evaluate and express their approval or disapproval of the modification. Again, to the extent that Plaintiffs claim that the attachment, the BOP contract modification, is not privileged, it was produced and is in Plaintiffs' possession. *See* Pettis Decl., Ex. Z.

## VI.    **DEFENDANTS' *IN CAMERA* SUBMISSIONS**

To facilitate the Court's review of the issues herein, Defendants are submitting five

---

[12] This log entry lists a different bates number than Plaintiffs cite in their Motion, as the bates number for this document has changed since the time of the claw back. Pettis Decl., Exs. H, BB.

- 19 -

documents for the Court to review *in camera*:

- **EXHIBIT A** – This document, one of 37 withheld involving Akin Gump, appears as Entry # 1241 on Defendants' log. The first email in the chain is a clearly privileged communication from Akin Gump that contains Akin Gump's legal advice regarding a government contract. Although the log entry only lists the recipients of the final email in the to/from/cc/bcc columns, the "Counsel and Legal Staff Involved" and "Privilege Description" columns make clear that Akin Gump's legal advice is the basis for the privilege assertion. The substance of the email reflects that the nature of this advice is legal, not business-related.

- **EXHIBIT B** – This document appears as Entry # 7 on EY Production Log. Pettis Decl., Ex. V. Also attached is Exhibit B-2, an unredacted version of the document. Defendants have only redacted the "Reserved" and "Incurred" columns, on work product grounds. These columns clearly reflect "the mental processes of the attorney" regarding the potential value of the workers compensation cases listed in the chart. *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 142270, at *61.

- **EXHIBIT C** – This document appears as Entry # 523 on Defendants' log. Susan Lindsey, in-house counsel, emailed Natasha Metcalf and other high-ranking CoreCivic employees with legal advice related to a compliance review at a CoreCivic facility. This is just one of the many privileged documents on the log in which Ms. Metcalf sought or received legal advice, but is not herself the basis upon which Defendants are asserting privilege.

- **EXHIBIT D** – This document appears as Entry # 988 on Defendants' log. Cole Carter, CoreCivic's General Counsel, discusses potential FOIA litigation with a Company employee.

- **EXHIBIT E** – This document and the corresponding attachment appear as Entry # 3294 and 3295 on Defendants' log. The cover email is from CoreCivic's outside counsel, Samantha Lee of Wiley Rein, and both the email *and* its attachment represent a privileged communication regarding the legal interpretation of a contract between CoreCivic and a government partner. It is worth noting that despite the "PRIVILEGED and CONFIDENTIAL" disclaimer on the document and attachment, Plaintiffs did not notify Defendants that such document had been produced to them, but rather attempted to introduce this document at Tameka Smith's deposition. *See* Pettis Decl., Ex. U at 138:24-139:5. Defendants have since clawed it back.

## VII.  CONCLUSION

Defendants respectfully request that Plaintiffs' Motion to Compel be denied in its entirety. If the Court finds that any privileged document has not been properly logged, the appropriate remedy is not waiver, as Plaintiffs request. Rather, Defendants respectfully request leave to remedy the deficiencies in an amended privilege log. *See, e.g., EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 3628890 (M.D. Tenn. Mar. 29, 2018).

DATED: March 12, 2020                    Respectfully submitted:

                                          /s/ Steven A. Riley
                                         Steven A. Riley (TN #6258)
                                         Milton S. McGee, III (TN #024150)
                                         RILEY WARNOCK & JACOBSON, PLC
                                         1906 West End Avenue
                                         Nashville, TN 37203
                                         T: (615) 320-3700
                                         F: (615) 320-3737
                                         sriley@rwjplc.com
                                         tmcgee@rwjplc.com

                                         David J. Schindler (admitted *pro hac vice*)
                                         Brian T. Glennon (admitted *pro hac vice*)
                                         LATHAM & WATKINS LLP
                                         355 South Grand Ave.
                                         Los Angeles, CA 90071
                                         T: (213) 485-1234
                                         F: (213) 891-8763
                                         david.schindler@lw.com
                                         brian.glennon@lw.com

                                         Morgan E. Whitworth (admitted *pro hac vice*)
                                         LATHAM & WATKINS LLP
                                         505 Montgomery Street, Suite 2000
                                         San Francisco, CA  94111
                                         T: (415) 391-0600
                                         F: (415) 395-8095
                                         morgan.whitworth@lw.com

                                         Sarah A. Tomkowiak (admitted *pro hac vice*)
                                         LATHAM & WATKINS LLP
                                         555 Eleventh Street, NW, Suite 1000
                                         Washington, DC 20004-1304
                                         T:  (202) 637-2335
                                         F:  (415) 637-2201
                                         sarah.tomkowiak@lw.com

                                         *Attorneys for Defendants Corrections Corporation*
                                         *of America, Damon T. Hininger, David M.*
                                         *Garfinkle, Todd J. Mullenger, and Harley G.*
                                         *Lappin*

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars
Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL &
ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

this 12th day of March, 2020.

/s/ Steven A. Riley
Steven A. Riley

- 23 -