UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NIKKI BOLLINGER GRAE, Individually )
and on Behalf of All Others Similarly )
Situated, )
 )
Plaintiff, )
 )
v. )  **Case No. 3:16-cv-2267**
 )  **Judge Aleta A. Trauger**
CORRECTIONS CORPORATION OF )
AMERICA, DAMON T. HININGER, )
DAVID M. GARFINKLE, TODD J. )
MULLENGER, and HARLEY G. LAPPIN, )
 )
Defendants. )

## MEMORANDUM

Amalgamated Bank, as Trustee for the LongView Collective Investment Fund, ("Amalgamated") has filed a Motion for Review of a Non-Dispositive Order of the Magistrate Judge (Docket No. 213), seeking review of the magistrate judge's April 30, 2020 Order (Docket No. 211) granting in part and denying in part Amalgamated's Motion to Compel (Docket No. 194). The defendants have filed a Response in opposition to the Motion for Review. (Docket No. 217.) For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

The details of the allegations at issue in this case have been set out in several earlier opinions of this court. CoreCivic owns and operates private prisons and detention facilities, including facilities under the auspices of the Federal Bureau of Prisons ("BOP"), a sub-agency of the Department of Justice ("DOJ"). Amalgamated represents a class of CoreCivic stockholders alleging that CoreCivic artificially maintained its stock price by making false and misleading statements and omissions regarding its history of performance relative to BOP expectations and

the likelihood that CoreCivic could rely on the BOP's continued business in the future. The class claims to have suffered losses when the DOJ announced its plans, in 2016, to phase out its dealings with CoreCivic and other private prison operators. Although that change in DOJ policy has since been rescinded, the class seeks to recover securities fraud damages based on the sharp decrease in value of CoreCivic's stock when it was first announced.

The Initial Case Management Order set August 1, 2018, as the initial deadline for substantial completion of discovery. (Docket No. 88 at 6.) According to Amalgamated, it served document requests on the defendants in January and June of 2018, in response to which the defendants served various objections. The parties met and conferred regarding the document requests on July 26, 2018, and one of the issues on which the parties did not have a meeting of the minds was how and when the defendants would assert privilege related to documents that they were refusing to produce. (Docket No. 195 at 2.) On August 1, 2018, the defendants filed a motion seeking relief from that day's deadline. (Docket No. 109.) The court granted the motion and extended the deadline for substantial completion of discovery to September 14, 2018. (Docket No. 114 at 1.) Discovery continued, and, among other things, the defendants clawed back a number of documents that they claimed had been inadvertently produced, despite their privileged nature.

On October 9, 2018, the defendants produced their first privilege logs, which addressed clawed-back documents. (Docket No. 196-11 (excerpt).) They sent additional privilege logs on October 15, 2018. (Docket No. 196-12 (excerpt).) Amalgamated objected to the logs as untimely and inadequate. On December 22, 2018, the defendants produced a new combined privilege log. (Docket No. 196-18 (excerpt).) The new logs contained some additional information, although

2

Amalgamated continued to maintain that their assertions of privilege were inadequate and potentially, in many instances, incorrect.

Meanwhile, the parties litigated the issue of class certification. The court initially denied Amalgamated's motion for class certification on January 18, 2019. (Docket No. 144.) Amalgamated, however, filed a Motion to Reconsider, citing new evidence and additional arguments in support of classwide resolution of claims. (Docket No. 148.) While that issue remained under consideration, the court stayed discovery between the parties, but exempted third-party discovery from the stay. (Docket No. 159.) Amalgamated accordingly continued to pursue third-party discovery from CoreCivic's auditor, Ernst & Young LLP. The defendants asserted privilege over documents in Ernst & Young's possession, leading to the production of additional privilege logs (Docket No. 202-17). On March 26, 2019, the court granted the Motion to Reconsider and certified Amalgamated's class. (Docket No. 166.) The court continued to stay non-third-party discovery as CoreCivic pursued an appeal. (Docket Nos. 169 & 171.) On August 23, 2019, the Sixth Circuit denied CoreCivic's petition for permission to appeal. (Docket No. 174.) Shortly thereafter, discovery between the parties resumed pursuant to a new scheduling order, including a fact discovery cutoff of April 17, 2020. (See Docket No. 180.)

On January 23, 2020, the defendants produced a new combined privilege log, which included 8,970 entries. (Docket No 196-21 (excerpt).) On January 28, 2020, Amalgamated sent the defendants a letter summarizing its continuing objections to the privilege logs. The defendants sent a letter on February 5, 2020, disputing that their assertions of privilege were incorrect or inadequate. (Docket No. 196-22.) In the ensuing weeks, the defendants continued to revise and correct their privilege and redaction logs. Finally, on February 24, 2020, the defendants produced what were, for the purposes of the magistrate judge's ruling, the final

privilege and redaction logs. The privilege log contained 8,931 entries, and the redaction log included 16,391 entries. Excerpts have been provided to the court. (*See* Docket Nos. 196-25, 202-4.)

On February 13, 2020, the court held a discovery dispute telephone conference regarding the document production and privilege logs. The conference did not result in a resolution of the underlying issues, and the court entered an Order directing the plaintiffs to file a motion related to the dispute. The court granted each side permission to provide up to five documents for the court to consider *in camera* in resolving the motion. (Docket No. 192.)

On February 27, 2020, Amalgamated filed a Motion to Compel Production of Improperly Withheld Documents. (Docket No. 194.) It asked the court to order that the defendants "produce all documents withheld or clawed backed as privileged pursuant to the attorney client privilege or work product doctrine, including any third party documents [the defendants] have prevented from being produced on these grounds." (Docket No. 194-1 at 2.) Amalgamated argued that the defendants had waived privilege by failing to timely or adequately raise their objections; that both the descriptions in the privilege log and the contents of clawed-back documents revealed that the defendants had improperly withheld or clawed back non-privileged documents concerning non-legal and ordinary business matters; that privilege for many documents had also been waived based on the documents' having been shared with third parties; and that the defendants had, in particular, improperly withheld or clawed back non-privileged email attachments based solely on the fact that the emails to which they were attached included privileged communications. (Docket No. 195 at 10–20.) This court referred the motion to the magistrate judge. (Docket No. 197.)

After briefing by the parties, the magistrate judge entered his Order on the matter on April 30, 2020. (Docket No. 211.) The magistrate judge concluded that Amalgamated's objections were supported in two regards: first, the court concluded that one of the five documents that Amalgamated had produced *in camera*, Docket No. 196-4 (CORECIVIC_0959395), was not, in fact, privileged and therefore must be produced; second, the court agreed that the defendants' privilege logs had failed to adequately address their claims of privilege with regard to e-mail attachments, and the magistrate judge therefore ordered the defendants to revise the privilege logs to provide adequate documentation of those assertions of privilege. (*Id.* at 23.)

The magistrate judge did not, however, otherwise grant Amalgamated any requested relief. Specifically, the magistrate judge held that the privilege logs were not so untimely that it warranted a holding that privilege had been waived; that the privilege logs generally provided sufficient information to assert privilege; that none of the documents or privilege log entries reviewed supported a holding that privilege had been waived based on sharing with a third party; that only one of the ten withheld or clawed-back documents submitted by the parties should have been produced; and that, based on the foregoing, there are not grounds for concluding "that there are widespread problems with CoreCivic's designation of documents or portions of documents as privileged. (*Id.* at 6, 8, 13–14, 21.)

On May 15, 2021, Amalgamated filed its Motion for Review of the Magistrate Judge's Order. (Docket No. 213.) Amalgamated objected to the following aspects of the Order:

1. The magistrate judge's failure to compel the production of "148 documents where the only 'counsel or legal staff' listed was an individual that CCA admits did 'not act in a legal capacity'";

2. The magistrate judge's failure to compel the production of documents shared with third parties;

3. The magistrate judge's failure to compel the production of non-privileged attachments to e-mails;

4. The magistrate judge's failure to compel the production of "documents withheld, clawed back or redacted as work product"; and

5. The magistrate judge's decision not to refer the dispute between the parties to a special master in light of the demonstrated deficiencies in the production, including the one example document identified by the magistrate judge as having been improperly withheld.

(Docket No. 214 at 2.) Amalgamated also objected, throughout its briefing, that the magistrate judge had applied an incorrect burden of proof to the issues before him, effectively requiring Amalgamated to establish a lack of privilege or work product protection, rather than placing the burden appropriately on the defendants. (*E.g.*, *id.* at 5.)

## II. LEGAL STANDARD

While a *de novo* standard of review applies to objections to a magistrate judge's ruling on a dispositive matter, this court's review of a magistrate judge's resolution of a non-dispositive pretrial matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review."). "A finding [of fact] is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

6

conviction that a mistake has been committed." *Adams Cty. Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A legal conclusion is contrary to law if it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (quoting *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D. Cal.1983)).

## III. ANALYSIS

### A. Burden to Establish Privilege

One issue that Amalgamated raises repeatedly throughout its objections is that the magistrate judge, in evaluating the defendants' assertions of privilege, improperly shifted the burden to Amalgamated. It is well-settled that, as a general proposition, "[t]he burden of establishing privilege rests with the person asserting it." *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013) (quoting *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir.1983)). In his Order, the magistrate judge identifies and describes that burden correctly. (Docket No. 211 at 4.) However, Amalgamated—sometimes relying on snippets of language and sometimes relying on specific analytical steps taken by the magistrate judge—disputes whether the burden was consistently applied. The court, therefore, will begin by establishing some general principles to guide its analysis.

Assertions of privilege in discovery are governed by Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, which provides that, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material," the party must "expressly make the claim" and "describe the nature of the

7

documents, communications, or tangible things not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Although Rule 26 does not mention privilege logs *per se*, a privilege log or something like it is naturally what arises when a party seeks to comply with Rule 26(b)(5)(A) while asserting privilege with regard to a large number of documents; one or two Rule 26(b)(5)(a) assertions may just be assertions, but if one puts a hundred or a thousand of them together, what results is, whatever term one wishes to use, effectively a privilege log.

In other words, Rule 26 does place the burden on the party asserting the privilege, but it is perhaps a misnomer—or at least confusing—to say that the Rule creates a burden to "establish" privilege, at least insofar as one mistakenly reads into the word "establish" something akin to a conventional evidentiary standard. A privilege log, in and of itself, cannot really "establish" privilege in the way that matters are typically established in court, because it consists only of unrebutted assertions and second-order descriptions. What Rule 26 imposes is, instead, a burden to assert privilege with adequate particularity and context for the assertion to be evaluated.

The most effective—but probably least efficient—way to actually *establish* privilege would be to examine a document itself, alongside any necessary evidence explaining its context. Rule 26, however, does not, on its face, require a court to do so, and the caselaw confirms that *in camera* review is not required merely because a party has objected to an assertion of privilege. Rather, it is within the discretion of the district court, "depend[ing] on the facts and circumstances of the case," whether and how extensively to engage in an *in camera* review of actual documents. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 382 (W.D. Ky. 2007).

A motion to compel the production of documents claimed as privileged, therefore, raises at least two inquiries. The first inquiry involves bare compliance with Rule 26(b)(5)(A). If the party asserting privilege fails to describe the information at issue and the basis for privilege in a manner that is adequate to "enable other parties to assess the claim," Fed R. Civ. P. 26(b)(5)(A)(ii), then the party has not carried its initial burden, and the assertion of privilege must be supplemented or the documents must be produced. The second inquiry, however, goes beyond merely the face of the privilege log to consider, within the court's discretion, what additional information or evidence, if any, is necessary. The ultimate burden of the party asserting privilege is of less importance to this interstitial inquiry, because the court is not considering whether one side or the other will ultimately prevail, but rather how to choose between the multiple possible courses of action, which may include *in camera* review and/or supplementation of the record but may also—if the privilege log is adequate and there is no reason to doubt it—involve no further steps at all. *See, e.g.*, *Pinnacle Sur. Servs., Inc. v. Manion Stigger, LLP*, 370 F. Supp. 3d 745, 755 (W.D. Ky. 2019) (declining to perform *in camera* review); *Keathley v. Grange Ins. Co. of Mich.*, No. 15-CV-11888, 2017 WL 1173767, at *3 (E.D. Mich. Mar. 30, 2017) (ordering *in camera* review); *Bridgestone Ams., Inc. v. Int'l Bus. Machs. Corp.*, No. 3:13-CV-1196, 2015 WL 10990187, at *4 (M.D. Tenn. Nov. 19, 2015) (discussing practice of requiring *in camera* review of only a sampling of documents); *NetJets Large Aircraft, Inc. v. United States*, No. 2:11-CV-1023, 2015 WL 1526346, at *7 (S.D. Ohio Apr. 3, 2015) (requiring supplemental affidavit or declaration). "In making these determinations, the court should be guided by a sense of reasonableness in deciding what should be required." 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.).

Given the broad nature of this second inquiry, it is fair for the court to consider what, if anything, the party disputing privilege has produced to bring privilege into question—even if the ultimate burden remains on the party asserting the privilege in the first place. Indeed, at least in the narrow area of the crime-fraud exception, the Supreme Court has held that, "before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *United States v. Zolin*, 491 U.S. 554, 574–75 (1989). Although that rule does not apply here, it highlights the fact that, when a court makes decisions about *in camera* review (including whether further *in camera* review is necessary after the court has considered a few examples), there is nothing inherently inappropriate about expecting the moving party to back up its request with evidence that the further review is warranted.

The court's review of the magistrate judge's Order will, therefore, be guided by the following principles: (1) the burden of establishing or adequately asserting privilege is on the party claiming that privilege; (2) Rule 26(b)(5)(A) permits a party to assert privilege without producing the underlying information for *in camera* review, but the party asserting the privilege has a duty to comply with the minimum particularity requirements of the Rule in order to rely on the assertion; and (3) where the minimum requirements of Rule 26(b)(5)(A) have been met, but questions remain about the adequacy or accuracy of the assertion of privilege, the court may act, within its discretion and based on all available information, to determine what, if any, further inquiry is necessary. That inquiry may include comprehensive *in camera* review, partial *in camera* review, or a supplemental evidentiary inquiry regarding the context of the underlying materials.

**B. Metcalf Documents**

Amalgamated objects, first, to the magistrate judge's determination regarding certain documents sent to Natasha Metcalf, a CoreCivic employee who was an attorney but did not function in a legal capacity. In the excerpt of the privilege log provided, Natasha Metcalf is listed among the "Counsel and Legal Staff Involved in Communication" for numerous withheld documents. (*See, e.g.*, Docket No. 202-4, entries 7, 532, 540, 977, 1201.) For many of these documents, however, Metcalf is not the sole member of the legal staff identified. Fairly often, though, she is the only ostensible legal staff listed—such as in, by the court's cursory review of the available sample, entries 7, 1215, 1238, 4309, 4312, 4313, 4314, 6100, 6134, 6139, 6142, and 6146. Other times, Metcalf is the only individual listed alongside, generically, "Akin Gump," a firm that, as this opinion will later discuss, sometimes served CoreCivic in a legal capacity and sometimes did not. (*E.g.*, *id.* at entries 1201–02, 1231–32.) Metcalf was included in one of the sample documents offered for *in camera* review, although that document was not one of the documents for which Metcalf was offered as the sole relevant counsel. (*See* Docket No. 196-3; Docket No. 211 at 19 (noting inclusion of outside counsel Samantha Lee).)

Regarding the Metcalf issue, the magistrate judge wrote that "Amalgamated's concern about documents where Natasha Metcalf . . . is listed as 'Counsel and Legal Staff Involved in Communication' may be valid where Ms. Metcalf is the only person identified in that role for a given document." (Docket No. 211 at 11.) The magistrate judge reasoned, however, that Amalgamated's objection was "undercut" by two facts. First was that the particular example provided for *in camera* review had involved other claimed legal personnel who were attorneys. Second was that CoreCivic had told Amalgamated, during discovery, that the "Counsel and

11

Legal Staff Involved" field included "other [CoreCivic] personnel . . . who regularly interact with in-house and outside counsel, and[,] therefore, facilitate or assist with the provision or receipt of legal advice, and is not intended to indicate, in every instance, that the individual is providing legal advice." (*Id.* (quoting Docket No. 196-22 (Letter of February 5, 2020) at 5).)

The court shares the magistrate judge's initial conclusion that Amalgamated's objection appears to be legitimate with regard to documents for which Metcalf is the sole identified legal personnel. The court, however, does not find that the objection is in any way undercut by the lack of an appropriate *in camera* example of such a document. As the court has explained, *in camera* examples are only a supplemental aid and do not relieve a party of the obligation to assert privilege adequately under Rule 26 for each underlying document, including those for which no example has been provided. A party challenging an assertion of privilege has no obligation to provide an exemplary document *in camera* if the relevant privilege log entries are themselves deficient. That is particularly clear where, as here, counsel for the party challenging the privilege has had access to only a small number of inadvertently disclosed relevant documents. Insofar as the magistrate judge based his decision regarding the Metcalf-only documents on the lack of an *in camera* example, it was a clearly erroneous application of the Rule 26 framework.

The determinative issue, instead, is whether the defendants, in light of the definition they used for legal staff, adequately asserted privilege with regard to documents featuring only Metcalf. As the magistrate judge correctly observed, "[i]n the corporate context, the attorney-client privilege may extend to communications between employees that convey legal advice given by an attorney to the corporation." *Ajose v. Interline Brands, Inc.*, No. 3:14-CV-1707, 2016 WL 6893866, at *8 (M.D. Tenn. Nov. 23, 2016) (Brown, M.J.) (citing *Broessel v. Triad*

*Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006)). That rule, however, comes with an important corollary that, "while it is possible that communications between non-legal individuals may be privileged, the withholding party must identify through a privilege log or through other means why the communication is privileged." *Id.* (citing *Sid Mike 99, L.L.C. v. Suntrust Bank*, No. 2:07-CV-02453-STADKV, 2009 WL 3255209, at *5 (W.D. Tenn. Oct. 6, 2009)). In other words, where there are no actual attorneys on a communication, the description of the communication becomes even more important than it usually is, because it must establish, not only the subject matter covered and the purpose of the communication, but also where and how the attorney-client relationship is implicated at all.

The court concludes, based on its review of the document descriptions that the defendants have provided with regard to the Metcalf documents, that the defendants' entries frequently fall short of what is required by Rule 26, and it was clearly erroneous to conclude otherwise. For example, the document covered by entry 4309 is an email, and the privilege log identifies Metcalf as the only potential legal personnel associated with the email. The description of the document is "Communication with In-house counsel for the purposes of litigation regarding facility operations." But Metcalf is not in-house counsel. It is possible that the document could still be privileged, if, for example, Metcalf was serving as an intermediary between counsel and non-legal employees. The entry, however, simply does not contain enough information to know whether that is being asserted; to the contrary, the description does not appear to acknowledge Metcalf's non-legal role at all. Similar lack of information appears throughout the Metcalf-only entries. The court therefore concludes that the defendants' assertions of privilege for the Metcalf-only entries are insufficient to satisfy Rule 26, and that it was clear error to conclude otherwise.

The magistrate judge therefore also clearly erred by neither compelling production of the documents nor, in the alternative, requiring some supplementation of the assertions of privilege.

## C. Documents Shared with Third Parties

Generally speaking, "[b]oth the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties." *New Phoenix Sunrise Corp. v. Comm'r*, 408 F. App'x 908, 918 (6th Cir. 2010) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 306 (6th Cir. 2002)). Amalgamated argues that the magistrate judge erred in his consideration of the defendants' privilege claims with regard to documents shared with non-counsel third parties, most prominently Akin Gump—which sometimes worked for CoreCivic in a legal capacity and sometimes in a lobbying capacity—and Ernst & Young, CoreCivic's auditor.

### 1. Akin Gump

Akin Gump is a firm that provides both legal counsel and lobbying services. CoreCivic availed itself of both, and it concedes that (1) communications with Akin Gump in its lobbying capacity are not privileged and (2) privilege between CoreCivic and another attorney could be waived by sharing the communication with Akin Gump in the lobbying context. "[L]awyers . . . can wear two hats and may provide legal advice, business advice, or a combination of the two," and the validity of an assertion of privilege will depend on the role played by the lawyer in a particular conversation. *JP Morgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2010 WL 11545362, at *6 (E.D. Mich. Dec. 10, 2010). During discovery, the defendants produced many documents shared with Akin Gump—either because the firm was not acting in a legal capacity at the time or because privilege did not exist for some other reason—but withheld a smaller number

of documents based on their assertion that Akin Gump, in those instances, was engaged in the provision of legal advice. (*See* Docket No. 211 at 12.)

Akin Gump appears several times in the privilege log, sometimes as the only purported counsel or legal personnel relevant to a particular entry. (*See, e.g.*, Docket No. 202-4, entries 21–23, 990, 1006–07, 1013, 1023, 1025, 1220, 1241.) The descriptions of these entries frequently mention "outside counsel"—seemingly a refence to Akin Gump. (*See, e.g., id.* at entries 21, 990, 1006–07, 1013, 1023, 1220, 1241.) The few entries identifying both Akin Gump and Metcalf as legal personnel also refer to "outside counsel"—presumably Akin Gump, since Metcalf was a CoreCivic employee. (*Id.* at entries 1201–03, 1231–32.) A small number of entries, somewhat confusingly, include descriptions mentioning only in-house counsel, which Akin Gump was not. (*See, e.g., id.* at entries 22–23.) Those two entries, however, may simply reflect the kind of stray errors or confusing descriptions that inherently arise in any privilege log; although they may need to be corrected, they are not substantial enough to suggest that there is some pervasive problem. The overwhelming majority of the Akin Gump entries that the court has reviewed appear to describe the firm as outside counsel.

Amalgamated argues that the defendants' assertions of privilege were insufficient due to the "two hats" worn by the Akin Gump. It is not clear to the court, however, what else the defendants would need to include to make the entries complete. In the relevant entries, Akin Gump is referred to as outside counsel, the subject matter described involves legal advice, and privilege is claimed; there is no doubt, in other words, which hat CoreCivic claims was being worn. Amalgamated may doubt the accuracy of CoreCivic's characterizations, but, as far as adequately asserting privilege is concerned, the defendants have said all they need to say. Unlike with the entries regarding Metcalf—which often provided no meaningful path from the

15

document to any attorney—the Akin Gump-related entries can be reasonably construed as completing the circle with regard to an assertion of privilege. More detail or clarity could always be added, but the entries are within ordinary and accepted practice for a privilege log involving a production of this size.

The only remaining question, then, is whether there is any basis for concluding that the court should go beyond the log in its evaluation of the Akin Gump documents. The magistrate judge concluded that such further investigation was unnecessary, and this court finds no error in that holding. In particular, the court notes that the fact that the defendants produced a large number of documents in which Akin Gump was *not* acting as counsel weighs strongly in favor of crediting their assertions of privilege with regard to other documents. The magistrate judge acted within his discretion in concluding that Amalgamated's suspicions regarding those assertions of privilege were too speculative to support further judicial investigation.

### 2. Ernst & Young

Ernst & Young was CoreCivic's auditor, and the defendants asserted work product protection for a number of files from Ernst & Young's audit files. (*See* Docket No. 202-17 (privilege log related to Ernst & Young).) The work product doctrine, which is distinct from and broader than the attorney-client privilege, protects documents prepared by a lawyer in anticipation of litigation. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 304. As with attorney-client privilege, however, the client may waive work product protection "by conduct which implies a waiver of the privilege or a consent to disclosure." *Id.* at 294, 305 n.24 (citation omitted).

The Ernst & Young-related privilege log entries describe the basis of the work product protection as the fact that the documents, each identified by name, "[r]eflect[] the legal advice of

in-house counsel regarding company operations and potential litigation," or some slight variation thereon. (*E.g.*, Docket No. 202-17 at 1.) The court will address the adequacy of the defendants' work product assertions, as a general matter, later in this opinion. Aside from those alleged problems, however, the court sees no clear error in the magistrate judge's consideration of the Ernst & Young-related assertions of protection. Amalgamated's only objection with regard to Ernst & Young at this stage, aside from a general complaint about boilerplate language, seems to be that the defendants were not required to provide more evidence establishing protection. As the court has explained, however, the decision of whether to require supplemental evidence in the evaluation of an assertion of privilege or work product protection is within the discretion of the court, and the court sees no basis for concluding that the magistrate judge committed a reversible error in his exercise of discretion here.

### 3. Miscellaneous Additional Third-Parties

The magistrate judge also addressed potential waiver related to disclosure of documents to three other individuals: two alleged lobbyists, Rob Hobart and Katie Lilley; and a pre-kindergarten teacher who was included on an e-mail erroneously based upon her name's similarity to another person's. With regard to the teacher, the magistrate judge reasonably applied recognized principles regarding waiver by inadvertent disclosure. *See Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01-02417 MAV, 2002 WL 31741282, at *3 (W.D. Tenn. Dec. 5, 2002) (setting forth a balancing test in which "[t]he factors to consider include: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error, (3) the scope of the production; (4) the extent of the disclosure, and (5) overriding issues of fairness") (citing *In re Copper Market Anti-trust Litig.*, 200 F.R.D. 213, 222 (S.D.N.Y.2001)). With regard to Hobart and Lilley, Amalgamated argues that the magistrate

judge improperly shifted the burden of proof by not requiring the defendants to provide evidence establishing that they were agents of CoreCivic, which formed the basis of the magistrate judge's finding of no waiver.

As the court has explained, the initial burden on a party producing a privilege log is not a burden to resolve the issue of privilege conclusively with all the necessary evidence, but rather a burden to assert privilege with sufficient particularity and context to allow the claim to be evaluated. Typically, whether to require further evidence is within the discretion of the court. With regard to Hobart and Lilley, the magistrate judge's analysis did cross over the threshold from assertion to a deeper evidentiary inquiry, because the two lobbyists appeared in *in camera* examples, not simply as entries on a privilege log. In this respect, it was, potentially, problematic that the defendants did not provide, for example, declarations establishing Hobart's and Lilley's roles. The magistrate judge, however, recognized this and did not rely on the defendants' unsupported assertions regarding the two individuals in his analysis of the *in camera* examples. (*See* Docket No. 211 at 19 ("The Court need not decide whether the email from Mr. Beasley to other CoreCivic personnel and lobbyist Rob Hobart is privileged or whether the privilege was waived by the inclusion of Mr. Hobart, because it has been produced (apparently twice). . . . The Court need not evaluate whether the rest of the email chain is privileged, or whether any privilege was waived because it was shared with Ms. Lilley, because the rest of the email chain has been produced to Amalgamated.") The magistrate judge, therefore, did not err in his decision not to require further evidence regarding Hobart and Lilley, because further evidence was not necessary for the purposes of the *in camera* review.

**D. E-Mail Attachments**

The magistrate judge acknowledged that the defendants' treatment of e-mail attachments in their privilege logs was inadequate and ordered the defendants to revise the logs accordingly. Amalgamated argues that the magistrate judge should have ordered the attachments produced based on the defendants' failure to comply with Rule 26. While the magistrate judge could have done so, Amalgamated has identified no basis for concluding that it was an error of law or abuse of discretion to instead allow the defendants a chance to fix their logs. This objection is groundless.

**E. Work Product**

Amalgamated identifies a number of alleged flaws in the defendants' assertion of work product protection, many of which are simply extensions of the general objections that the court has already addressed. Particularly, Amalgamated faults the defendants for failing to produce evidence in support of their claims, but, as the court has held, that argument entails asking the court to apply an evidentiary burden at the assertion-of-privilege stage that Rule 26 does not require. Amalgamated also complains about the treatment of e-mail attachments related to work product claims, but, as the court has held, the magistrate judge acknowledged and appropriately addressed the issue of e-mail attachments. Amalgamated does, however, specifically take issue with the defendants' assertion of the circumstances giving rise to work product protection in particular. Specifically, the defendants' privilege logs rely on boilerplate language mentioning "litigation" but not identifying the litigation involved.

Although Amalgamated has not identified any rule or caselaw categorically stating that a party asserting work product protection must identify the particular litigation underlying the claim, some courts have, at times, required parties to do so or to provide similar contextual specifics. *See, e.g.*, *Ala. Aircraft Indus., Inc., v. Boeing Co.*, No. 2:11-CV-03577-RDP, 2017 WL

134764, at *1 (N.D. Ala. Jan. 13, 2017) (requiring that "any assertion of the work product doctrine, in particular, shall be accompanied by an identification of the specific litigation that was anticipated in creating the document at issue"); *Trabakoolas v. Watts Water Techs., Inc.*, No. 3:12-cv-01172-WHO (EDL), 2013 WL 12173937, at *2 (N.D. Cal. Aug. 1, 2013) (requiring party to "identify a trigger event to assert it reasonably anticipates litigation for each document it claims to be protected as work product"). The details of the ongoing or allegedly anticipated litigation underlying an assertion of work product protection are often important, because a court must be able to tell when a document is sufficiently related to actual potential litigation as opposed to mere general issues of compliance or a purely speculative concern. *See Meadows v. Uniglobe Courier Serv. Inc.*, No. 5:08CV2530, 2009 WL 10719820, at *4 n.6 (N.D. Ohio July 29, 2009) ("The work product doctrine, . . . require[s] that litigation . . . be . . . 'fairly foreseeable at the time' the materials were prepared.") (quoting *Hetzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003)); *Parry v. Highlight Indus., Inc.*, 125 F.R.D. 449, 451 (W.D. Mich. 1989) ("[W]hether a document may be said to have been prepared in anticipation of litigation depends upon whether, 'in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (quoting *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983)).

Moreover, even if one concludes that the bare-bones assertions made in the defendants' privilege logs met the minimum requirements of Rule 26, the entries' lack of detail would certainly weigh in favor of a decision by the court, in its discretion, to require some supplementation of the record or at least limited *in camera* review. The court, accordingly, has concerns about the way work product claims have been asserted.

Nevertheless, the court cannot conclude that the magistrate judge's treatment of the matter amounted to clear error. Although the defendants' descriptions test the boundaries of how generic a privilege log description can be while still satisfying Rule 26, they do not clearly cross it. Moreover, the magistrate judge did not clearly err in concluding, based on the totality of available information, that further investigation was unnecessary. Despite the court's concerns, therefore, it finds no grounds for reversal related to the work product assertions.

## F. Remedy

Finally, Amalgamated argues that the magistrate judge erred by declining to order a special master review of the documents claimed as privileged, despite the fact that the magistrate judge found that at least one of the documents offered as an *in camera* example was, in fact, not privileged. This court's consideration of remedy must also take into account the conclusion that the defendants' assertions of privilege were inadequate in at least one other regard—the failure to adequately account for the basis of the privilege asserted with regard to documents for which Metcalf was the only named ostensible legal personnel.

The court finds no reversible error in the magistrate judge's decision not to order a comprehensive special master review. The magistrate judge considered ten *in camera* examples and found that only one was improperly withheld, an error rate of 10%. Arguably, the court should largely discount any error rate that includes the examples provided by the defendants—after all, it would be truly shocking if the defendants, with thousands of withheld documents to choose from, could not find five that were actually privileged. Even then, though, the error rate would be only one in five, or 20%—and that is not 20% of a random sample, but 20% of the examples specifically selected by the party challenging privilege. *See Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, No. 11-12557, 2013 WL 1688463, at *2 (E.D. Mich. Apr.

21

18, 2013) (stating that disclosure will be required if "20% or more of . . . *randomly selected* attachments are not privileged" (emphasis added)). The magistrate judge was within the ordinary bounds of discretion to conclude that one erroneously classified document fell short of requiring the expensive and time-consuming step of comprehensive review.

The magistrate judge, however, never reached a decision regarding how to address the Metcalf documents, because the magistrate judge did not find the defendants' assertions of privilege insufficient. As the court has held, that was clear error; accordingly, this court must fashion an appropriate remedy. Given the contentious nature of the privilege assertion process so far and the upcoming deadline for dispositive motions, the court is wary of merely requiring supplementation of the privilege log, which could simply occasion a new round of conflict. On the other hand, requiring blanket disclosure would be a drastic remedy, given that many of the documents may indeed be privileged and the defendants' errors may simply reflect a lack of sufficient detail. Accordingly the court will order the following: the defendants shall furnish to Amalgamated and the court a privilege log consisting of entries for all documents withheld for which Metcalf was the sole identified legal staff in prior privilege logs; the privilege log shall include a field, "Counsel Creating Privilege," in which the defendants shall identify, by name, the attorney or attorneys from whom the privilege flows; the defendants shall provide the court with an affidavit or declaration explaining Metcalf's role at CoreCivic as it relates to the assertion of privilege; and the defendants shall provide, for *in camera* review, all documents included in the log.

## IV. CONCLUSION

For the foregoing reasons, Amalgamated's Motion for Review of a Non-Dispositive Order of the Magistrate Judge (Docket No. 213) will be granted in part and denied in part.

22

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge