# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONS CORPORATION OF AMERICA, et al., <br><br> Defendants. | Civil Action No. 3:16-cv-02267 <br><br> Honorable Aleta A. Trauger <br><br> MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO FURTHER RESPOND TO INTERROGATORIES |

# TABLE OF CONTENTS

**Page**

I.      Introduction ........................................................................................................................1

II.     Brief Summary of the Action and the Alleged Fraud ........................................................2

III.    Defendants' Interrogatory Responses Are Inadequate ......................................................4

      A.      Defendants' Use of Vague References to Unspecified Individuals and
           Information Is Improper and Insufficient ................................................................4

      B.      Defendants' Use of Open-Ended Language Is Improper and Insufficient .............6

      C.      Defendants' Evasive Responses Are Improper and Insufficient .........................11

      D.      Defendants' Relevancy Objections Should Be Overruled....................................15

IV.     Conclusion .......................................................................................................................17

Cases\4832-6312-8517.v1-7/27/20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Annabel v. Heyns*,
2014 WL 1207802 (E.D. Mich. Mar. 24, 2014),
*aff'd*, 2018 WL 4870866 (6th Cir. Apr. 10, 2018) ................................................................. 13

*Brown Badgett, Inc. v. Jennings*,
842 F.2d 899 (6th Cir. 1988) ................................................................. 6

*Burges v. BancorpSouth, Inc.*,
2017 WL 4640462 (M.D. Tenn. Oct. 12, 2017) ................................................................. 16

*Castillo v. Morales, Inc.*,
2013 WL 2253207 (S.D. Ohio May 22, 2013) ................................................................. 8

*Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*,
2010 WL 1258105 (S.D. Ohio Mar. 25, 2010) ................................................................. 8

*Dortch v. Fowler*,
588 F.3d 396 (6th Cir. 2009) ................................................................. 16

*Frank Betz Assocs., Inc. v. Builders Mut. Ins. Co.*,
2012 WL 13042564 (M.D. Tenn. Oct. 29, 2012) ................................................................. 5

*Gorrell v. Sneath*,
292 F.R.D. 629 (E.D. Cal. 2013) ................................................................. 4

*Haney v. Saldana*,
No. 1:04-cv-05935, 2010 WL 3341939
(E.D. Cal. Aug. 24, 2010) ................................................................. 4

*Hansel v. Shell Oil Corp.*,
169 F.R.D. 303 (E.D. Pa. 1996) ................................................................. 5

*Herdlein Techs., Inc. v. Century Contractors, Inc.*,
147 F.R.D. 103 (W.D.N.C. 1993) ................................................................. 7

*In re Allergan PLC Sec. Litig.*,
2020 U.S. Dist. LEXIS 56164 (S.D.N.Y. Mar. 30, 2020) ................................................................. 16

*In re Pabst Licensing GmbH Pat. Litig.*,
2001 WL 797315 (E.D. La. July 12, 2001) ................................................................. 9

Cases\4832-6312-8517.v1-7/27/20

*In re Sci.-Atlanta, Inc.*,
  2005 U.S. Dist. LEXIS 47634 (N.D. Ga. Jan. 4, 2005) ...........................................................16

*Johnson Marcraft, Inc v. W. Sur. Co.*,
  2016 WL 3655299 (M.D. Tenn. July 8, 2016) .........................................................................9

*JPMorgan Chase Bank, N.A. v. Neovi, Inc.*,
  2006 WL 3803152 (S.D. Ohio Nov. 14, 2006).........................................................................7

*Kyker v. Malone Freight Lines*,
  17 F.R.D. 393 (E.D. Tenn. 1955).............................................................................................1

*Mohnsam v. Nemes*,
  2019 WL 3307233 (W.D. Ky. July 23, 2019) .........................................................................4

*Mullins v. Prudential Ins. Co. of Am.*,
  267 F.R.D. 504 (W.D. Ky. 2010)..............................................................................................9

*Pulsecard, Inc. v. Discover Card Servs., Inc.*,
  1996 WL 397567 (D. Kan. July 11, 1996) ...............................................................................7

*Roden v. Floyd*,
  No. 2:16-cv-11208, 2019 WL 1098918
  (E.D. Mich. March 8, 2019)...............................................................................................4, 13

*Tucker v. Nelson*,
  390 F. Supp. 3d 858 (S.D. Ohio 2019) ...................................................................................16

*U.S. ex rel. Fry v. Guidant Corp.*,
  2009 WL 3181315 (M.D. Tenn. Sept. 29, 2009)......................................................................8

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*,
  2011 WL 4387293 (S.D. Ind. Sept. 20, 2011) .........................................................................9

*United States v. Maverick Mktg., LLC*,
  427 F. Supp. 3d 1386 (Ct. Int'l Trade 2020),
  *reconsideration denied*, 439 F. Supp. 3d 1329
  (Ct. Int'l Trade 2020).................................................................................................................7

*United States v. Quebe*,
  321 F.R.D. 303 (S.D. Ohio 2017) .............................................................................................7

*Williams v. Sprint/United Mgmt. Co.*,
  235 F.R.D. 494 (D. Kan. 2006)..................................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78 ............................................................................................................. 2

Federal Rules of Civil Procedure
Rule 26(b)(1) ........................................................................................... 16
Rule 33 ............................................................................................. *passim*
Rule 33(b)(3) ................................................................................. 1, 4, 11
Rule 37(a)(4) ...................................................................................... 4, 11
Rule 33(c) ................................................................................................. 8
Rule 33(d) ............................................................................................ 8, 9
Rule 33(d)(1) ........................................................................................... 8

Federal Rules of Evidence
Rule 401 ................................................................................................. 16

**SECONDARY AUTHORITIES**

8B Wright & Miller,
*Fed. Prac. & Proc. Civ.* §2177
(3d ed., Apr. 2020 update) ................................................................... 13

# I. Introduction

Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiff"), respectfully moves this Court for an order compelling Defendants[1] to provide complete and non-evasive responses to the interrogatories served on them in this action.[2]   Rule 33(b)(3) of the Federal Rules of Civil Procedure requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."   Rather than complying with the Federal Rules of Civil Procedure, Defendants' inadequate interrogatory responses turn the fundamental purpose of contention interrogatories – **to prevent surprise at trial** – on its head.  *See, e.g.*, *Kyker v. Malone Freight Lines*, 17 F.R.D. 393, 395 (E.D. Tenn. 1955)[3] (ordering a response to interrogatories and noting the "Court can see how plaintiff could be prejudiced by surprise at the hearing on the merits if such information is not secured before trial on the merits").

The Court need not go any further than a review of Defendants' interrogatory responses to see the obvious inadequacies, which generally fall into four categories, all of which unfairly leave the door wide open for surprises at trial: (i) vague references to unspecified individuals and information; (ii) improper use of open-ended language, such as "among other things," "including"

---

[1]   Defendants are, collectively, CoreCivic, Inc. ("CCA"), Damon T. Hininger ("Hininger"), David M. Garfinkle ("Garfinkle"), Todd J. Mullenger ("Mullenger"), and Harley G. Lappin ("Lappin").

[2]   Attached to the Declaration of Willow E. Radcliffe in Support of Plaintiff's Motion to Compel Defendants to Further Respond to Interrogatories ("Radcliffe Decl."), filed concurrently herewith, are: (a) a chart setting forth the complete text of each of the specific interrogatories at issue with the responses by each Defendant (Exhibit 1); (b) Plaintiff's [Corrected] First Set of Interrogatories to All Defendants (Interrogatory Nos. 1-18) (Exhibit 2) and the objections and responses to those interrogatories of, respectively, CCA (Exhibit 3), Hininger (Exhibit 4), Garfinkle (Exhibit 5), Mullenger (Exhibit 6) and Lappin (Exhibit 7); (c) Plaintiff's Second Set of Interrogatories to All Defendants (Interrogatory Nos. 19-26) (Exhibit 8); and (d) Defendants' collective objections and responses to those interrogatories (Exhibit 9).  All "Ex. __" references are to the Radcliffe Decl.

[3]   All citations and footnotes are omitted and emphasis is added unless otherwise indicated.

and "*e.g.*"; (iii) improper evasive responses; and (iv) refusing to respond to interrogatories on the grounds of meritless relevancy objections.

For the reasons set forth herein, Defendants should be ordered to comply with Rule 33 of the Federal Rules of Civil Procedure ("Rule 33") and fully respond to each of the interrogatories.

The undersigned counsel certifies that the parties have met and conferred in good faith to resolve the issues set forth in this discovery dispute. Counsel for the parties discussed the interrogatory responses at issue here telephonically on May 18, 2020 and July 2, 2020 and exchanged a series of written correspondence regarding the parties' positions and supporting authority. Further, counsel again conferred on July 22, 2020, as directed by Your Honor's July 16, 2020 Order (ECF No. 244). During that meeting, counsel for Defendants suggested they might be amenable to removing some, but not all, open-ended language only if they could add some additional language to their interrogatory responses. So that we could understand the proposal, Plaintiff requested that Defendants set forth their proposal in writing. At approximately 11:26 p.m. CDT on Sunday July 26, 2020, Defendants sent their proposal agreeing to remove the use of "among other things" in their existing responses to Interrogatory Nos. 1-5 and the word "including" in their existing responses to Interrogatory Nos. 21-22 but continuing to reserve the use of "including" in future responses. The proposal was conditioned on Plaintiff agreeing not to raise the issue of open-ended language with the Court. Unfortunately, Defendants' last-minute proposal does not entirely resolve the improper use of open-ended language or any of the other issues discussed below.

## II.     Brief Summary of the Action and the Alleged Fraud

This case has been certified as a class action by the Honorable Aleta A. Trauger for all purchasers of CCA securities between February 27, 2012 and August 17, 2016, inclusive (the "Class Period"), and the class is pursuing remedies under the Securities Exchange Act of 1934 for

- 2 -

Defendants' materially false and misleading statements and fraudulent scheme, which artificially inflated the price of CCA's stock. *See* ECF Nos. 165-166.

Plaintiff alleges that, throughout the Class Period, Defendants engaged in a scheme to defraud and made numerous materially false and misleading statements and omissions to investors regarding CCA's business and operations, including by falsely stating that CCA's renewal rate on contracts was and would remain high because of the "quality" of services it provided to government customers, including the Federal Bureau of Prisons ("BOP"). *See* ECF No. 76 at 14-19, 24-30. Further, Defendants knew or recklessly disregarded, when making misleading statements to investors, that: (i) outsourcing correctional services to CCA did not result in higher quality services to government agencies; (ii) CCA's facilities were not operated in accordance with government policies and contractual requirements; (iii) CCA did not provide "quality" services that would cause government agencies to continue to renew their contracts with CCA; and (iv) likewise, CCA did not create cost savings for the government. ¶170;[4] ECF No. 76 at 24-30. In truth, the BOP regularly raised concerns with CCA's understaffing of facilities and failure to provide adequate medical care to inmates. ¶¶44-46, 53-58, 60, 62-66, 72-77, 79-80, 87-88, 92-95, 117; ECF No. 76 at 29, 41.

On August 18, 2016, Deputy Attorney General Sally Q. Yates issued a memorandum entitled "Reducing our Use of Private Prisons" (the "Yates Memorandum"), which stated that contract prisons operated lower-quality facilities without saving substantially on costs and that the BOP should reduce the use of private prisons. ¶¶41, 198; ECF No. 76 at 20, 27, 31. Following these revelations, CCA's stock price collapsed, dropping 53% in less than a week from a close of $27.56 per share on August 10, 2016 to an intraday low of $13.04 per share on August 18, 2016. ¶¶199-200; ECF No. 76 at 20, 36-37.

---

[4] All "¶" references are to the Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 57) ("Complaint").

## III.  Defendants' Interrogatory Responses Are Inadequate

By this Motion, Plaintiff simply seeks for Defendants to fulfill their obligations under Rule 33 to provide complete, non-evasive interrogatory responses so that Plaintiff can properly and fairly prepare for trial.  As courts have explained:

> Interrogatories *must be answered fully, and an evasive or incomplete answer is the equivalent of a failure to answer*.  Fed. R. Civ. P. 33(b)(3), 37(a)(4).  Further, while "[l]ack of knowledge or the ability to recollect is, if true, a fair answer," *Weaver v. Mateer & Herbet* [sic], *P.A.*, 277 F.R.D. 655, 658 (M.D. Fla. 2011), "*[a] party answering interrogatories has an affirmative duty to furnish any and all information available to that party*."  *Roden v. Floyd*, No. 2:16-cv-11208, 2019 WL 1098918, at *3 (E.D. Mich. March 8, 2019) (quoting 7 James W.M. Moore et al., Moore's Federal Practice ¶33.102[1]. [3] (3d ed. 2017)) [sic].  *See also Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (quoting *Haney v. Saldana*, No. 1:04-cv-05935, 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010)) ("In general, a responding party is not required 'to conduct extensive research in order to answer an interrogatory, but a reasonable effort must be made.'") [sic].

*Mohnsam v. Nemes*, 2019 WL 3307233, at *4 (W.D. Ky. July 23, 2019).

### A.  Defendants' Use of Vague References to Unspecified Individuals and Information Is Improper and Insufficient

Defendants' interrogatory responses are so vague that they are utterly meaningless as to preclude surprises at trial.  When asked in Interrogatory Nos. 1-5 on what they relied when making statements at issue in this litigation regarding the supposed high quality of CCA's services, they fail to provide full responses as required by Rule 33.  Instead, they respond by citing unspecified communications with unidentified individuals and/or reliance on unspecified "policies and procedures," as set forth in the chart below:

| Defendant | Interrogatory Nos. | Ex. | Unspecified Reference(s) to Individual(s)/ Unidentified Information |
|---|---|---|---|
| Garfinkle | 1-5 (Ex. 1 at 4, 8, 12, 16, 20) | 5 | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him" |

Cases\4832-6312-8517.v1-7/27/20

| Defendant | Interrogatory Nos. | Ex. | Unspecified Reference(s) to Individual(s)/ Unidentified Information |
|---|---|---|---|
| Mullenger | 1-5 (Ex. 1 at 3, 7, 12, 15-16, 19) | 6 | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him" |
| Lappin | 1-5 (Ex. 1 at 5, 9, 13) | 7 | "regular communications with the BOP"; "feedback . . . from various accreditation agencies"; and "feedback . . . from . . . CoreCivic employees who directly or indirectly reported to him" |
| Hininger | 1-5 (Ex. 1 at 2-3, 6-7, 10-11, 14-15, 18-19) | 4 | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him"; "communications with the BOP"<br><br>"a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP)"; and "communications with government partners" |
| CCA | 1-5 (Ex. 1 at 1-2, 4-7, 9-10, 14, 17-18) | 3 | "communications with the BOP"; "a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP)"; and "communications with government partners" |

"Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996); *cf. Frank Betz Assocs., Inc. v. Builders Mut. Ins. Co.*, 2012 WL 13042564, at *2 (M.D. Tenn. Oct. 29, 2012) (Brown, Mag. J.) (granting motion to compel supplemental interrogatory responses where party had "rel[ied] on vague responses instead of detailed ones").

The federal rules regulating discovery are directed toward the same goal. Together with other pretrial procedures, these rules "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." The purposes underlying the federal rules are to avoid

surprise and the possible miscarriage of justice and to eliminate the "sporting theory
of justice."

*Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988).  By failing to identify the actual

"individuals," "team[]" members, "communications," "feedback," and the like on which they relied,

Defendants violated both the letter and spirit of Rule 33.  They should be compelled to provide

complete responses (specifying the individuals, communication or information on which they

relied).[5]

### B. Defendants' Use of Open-Ended Language Is Improper and Insufficient

Throughout Defendants' interrogatory responses, Defendants also improperly include open-

ended language.  For example, Interrogatory Nos. 1-5 asked Defendants to identify all documents

and communications on which they relied at the time they made various representations at issue in

this litigation regarding CCA's purported high quality services to the BOP.  The fact discovery

cutoff in this action is four days away, and Rule 33 requires these interrogatories to be answered

fully.  They were not.  Rather, the responses by Defendants (each of which included open-ended

language) signaled that at trial they might testify they relied on a whole host of other documents and

communications not identified in their interrogatory responses, as reflected in the chart below:

| Defendant | Response to Interrogatory Nos. | Ex. | Express Limitation(s) |
|---|---|---|---|
| Garfinkle | 1-5 | 5 | "among other things" |
| Mullenger | 1-5 | 6 | "among other things |
| Lappin | 1-5 | 7 | "among other things" |
| Hininger | 1-5 | 4 | "among other things" "a variety of indicators" "*e.g.*" with respect to categories of documents referencing a single Bates Number |

---

[5]   Plaintiff also notes that communications with "policies and procedures" does not make sense.  To the extent Defendants relied on policies and procedures, those should be specified with detail.

| Defendant | Response to Interrogatory Nos. | Ex. | Express Limitation(s) |
|---|---|---|---|
| CCA | 1-5 | 3 | "among other things"<br>"a variety of indicators"<br>"*e.g.*" with respect to categories of documents referencing a single Bates Number |

There is no excuse for Defendants not to disclose fully on what they relied when they made statements to investors. The plain language of Rule 33 requires that interrogatories be responded to "fully." Accordingly, courts have not countenanced such open-ended language; neither should this Court, given the late stage of this litigation. *See, e.g.*, *United States v. Quebe*, 321 F.R.D. 303, 308 (S.D. Ohio 2017) (finding open-ended language in an interrogatory response insufficient and noting that "Defendants' use of the phrase 'include, but is not limited to . . .' points to future information that they might provide to Plaintiff about additional uncertainties inherent in each project" when they should know presently); *United States v. Maverick Mktg., LLC*, 427 F. Supp. 3d 1386, 1400 (Ct. Int'l Trade 2020), *reconsideration denied*, 439 F. Supp. 3d 1329 (Ct. Int'l Trade 2020) (ordering conclusive responses where interrogatory responses contained non-exhaustive examples and use of language such as "'includes'").[6] If Defendants do not recall on what they relied when they made their representations to investors, then their interrogatory responses should so state. *See JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, 2006 WL 3803152, at *5 (S.D. Ohio Nov. 14, 2006) ("Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. Gamesmanship to evade answering as required, is not allowed. If a party is

---

[6] *See also Pulsecard, Inc. v. Discover Card Servs., Inc*., 1996 WL 397567, at *8 (D. Kan. July 11, 1996) (interrogatory response that contained "'including but not limited to'" was insufficient); *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 106-07 (W.D.N.C. 1993) (ordering party to respond to interrogatory fully and completely; finding response to interrogatory was insufficient where interrogatory called for identification of "all" contracts or subcontracts, and party responded by stating that it entered into "several" oral contracts, and provided examples of only two); *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 500 (D. Kan. 2006) (interrogatory responses that included "'not limited to'" language were insufficient even where further discovery was anticipated).

unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information.") (internal quotation marks omitted). As of late yesterday, Defendants appear to have recognized their responses were deficient but conditioned their proposal on Plaintiff not pursuing other improper open-ended language, to which Plaintiff could not agree. An order should issue directing Defendants to revise their interrogatory responses to eliminate open-ended language.

Defendants CCA and Hininger's use of "*e.g.*" after a general description of documents they relied on is also insufficient and improperly open ended. Defendants refuse to supplement their interrogatories to remove this language. For example, they assert that they relied on "historical contract retention rates (*e.g.* CORECIVIC_0395027)" when they made statements about high quality to investors. Ex. 1 at 1-2, 5-6, 9-10, 13-14, 17-18; Exs. 3-4. "Although a party has the option to produce business records in response to an interrogatory, the Rule requires the responding party to **'specify[] the records that must be reviewed, in sufficient detail** to enable the interrogating party to locate and identify them **as readily as the responding party could** . . . .'" *Castillo v. Morales, Inc.*, 2013 WL 2253207, at *1 (S.D. Ohio May 22, 2013) (quoting Fed. R. Civ. P. 33(d)(1)). Rule 33 was amended in 1980 "to make it clear that a responding party has the duty to specify, by category **and location**, the records from which answers to interrogatories can be derived." Fed. R. Civ. P. 33(c) advisory committee's notes to 1980 amendment (amendment to Subdivision (c), which has been renumbered and revised as Fed. R. Civ. P. 33(d)); *U.S. ex rel. Fry v. Guidant Corp.*, 2009 WL 3181315, at *2 (M.D. Tenn. Sept. 29, 2009) (ordering party responding to interrogatories to "specify the business records that it has produced in response to this interrogatory sufficiently for plaintiffs to locate and identify them as readily as [the responding party] could, as required by Rule 33(d)"); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2010 WL 1258105, at *2 (S.D. Ohio Mar. 25,

2010) (same).  Providing a single Bates number when Defendants suggest that other documents exist by the use of "*e.g.*" is not "sufficient detail" and flies in the face of the spirit and plain language of Rule 33.  *In re Pabst Licensing GmbH Pat. Litig.*, 2001 WL 797315, at *10 (E.D. La. July 12, 2001) (finding that "prefac[ing] their reference to written communications with '*See, e.g.*' indicat[es] on the face of the answer that all responsive written communications have not been identified"); *see also Johnson Marcraft, Inc v. W. Sur. Co.*, 2016 WL 3655299, at *4 (M.D. Tenn. July 8, 2016) (advising that sanctions may be entertained if documents are not identified with specificity by Bates number in responding to an interrogatory response); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 2011 WL 4387293, at *4 (S.D. Ind. Sept. 20, 2011) (responses must be "reasonably specific – at least by Bates stamp number").  Defendants would have Plaintiff guess on which documents – of the nearly 400,000 Defendants have produced in this action – Defendants relied.  They would also have Plaintiff guess which documents are final copies and whether they also relied on other documents not precisely in the format of the type of document they reference.  Such a response is insufficient. *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514 (W.D. Ky. 2010) ("A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded.").  Defendants should be ordered to supplement their responses.

Likewise, in response to Interrogatory No. 21, which seeks Defendants to "[i]dentify all facts, documents, testimony and communications that support Defendants' response to Interrogatory No. 20" regarding what Defendants mean by their reference to an "unanticipated political shift," Defendants use the limiting language "including" with respect to testimony that supports their contentions.  Ex. 1 at 35-38; Ex. 9.  They do the same for Interrogatory No. 22, which seeks Defendants to "[i]dentify all facts, documents, testimony and communications that support any contention by Defendants that it was public knowledge prior to the announcement of the Yates

Cases\4832-6312-8517.v1-7/27/20

Memorandum that CCA's performance with respect to its BOP contracts was deficient." Ex. 1 at 38-39; Ex. 9. For example, Defendants' response includes that "Analyst Reports regarding CoreCivic's stock, *including* those issued between January 5, 2011 and November 30, 2017 as identified by Lucy Allen in Dkt. Nos. 99-3, 135-5," support their contention that the Yates Memorandum was a political shift. Ex. 1 at 38; Ex. 9. And while Defendants have agreed to supplement Interrogatory Nos. 21-22 to provide further detail to identify their vague references to "publicly available documents and news articles" regarding, for example, the Justice is Not for Sale Act, campaign promises of Elizabeth Warren regarding the use of private prisons and Assembly Bill 32, and now, at the last minute, propose to remove the open-ended "including" language from their existing responses conditioned on Plaintiff abandoning its Motion on other grounds, Defendants continue to reserve their right to use such language in the future. As a result, Plaintiff simply seeks an order precluding Defendants from using any limiting or open-ended language in any of their future interrogatory responses and to revise Interrogatory Nos. 21-22 accordingly.

Defendants also use open-ended language in another context in response to Interrogatory Nos. 21-22. For example, they respond that the following supports their contention: "Testimony from Todd Mullenger, *including* deposition testimony dated March 13, 2020, at 11:16-12:18." *Id.* Defendants have clarified that their contention is also supported by future (nonexistent) testimony of certain individuals listed in Defendants' response and that the "including" language is used to refer to existing testimony. This clarification needs to be included in a supplemental response specifying on which witnesses Defendants will rely for future testimony, as well as providing citations to the pages and line numbers of all existing deposition testimony Defendants claim supports their contention with respect to existing testimony (the latter of which is not in dispute).

### C. Defendants' Evasive Responses Are Improper and Insufficient

Defendants' responses to Interrogatory Nos. 7 and 9-12 are deficient and evasive. Interrogatory Nos. 7 and 9 seek Defendants to "[d]escribe in detail all reasons for the loss of [the Cibola County Correctional Center/the Northeast Ohio Correctional Center] contract with the BOP in or around [2016/2014], including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss." Ex. 1 at 22, 25; Exs. 2-4, 7. Defendants CCA, Hininger and Lappin object, in substantively similar language, to Interrogatory No. 7 on the grounds of speculation and respond as follows:

> Subject to and without waiving any objections, CoreCivic responds as follows: The BOP informed the Company on or around July 29, 2016 (see CORECIVIC_0031085) that the BOP did not exercise a renewal option on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.*

Ex. 1 at 22; Ex. 3. In so doing, Defendants fail to fully respond to the interrogatory by not "including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss." *Id.* Communications from the BOP as to the reasons for the loss go directly to Defendants' state of mind when they spoke to investors about the quality of CCA's services and the state of their business relationship with the BOP. Debriefings were a means for CCA to learn from the BOP why a particular contract was lost. Defendants' failure to respond to these interrogatories with the specific information conveyed to Defendants by the BOP was deliberately evasive. Fed. R. Civ. P. 33(b)(3), 37(a)(4). As such, they should be ordered to comply with Rule 33.

Similarly, Interrogatory Nos. 10-11 seek Defendants to: (i) "[i]dentify all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive" (Interrogatory No. 10); and (ii) "describe in detail all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise" (Interrogatory No. 11). Ex. 1 at

27, 29; Exs. 2-4, 7. Defendants CCA, Hininger and Lappin objected and responded, in substantively similar language, to Interrogatory No. 11 as follows:

> Subject to and without waiving any objections, CoreCivic responds as follows: CoreCivic incorporates its response to Interrogatory Nos. 7 and 9 in this response. The BOP informed the Company that the BOP did not award contracts to CoreCivic on the following grounds:

- CAR 14 (RFP-PCC-0021) was cancelled by the BOP in September 2013.

- CAR 15 (RFP-PCC-0022): The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award any of the facilities offered by CoreCivic with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*

- CAR 16 (RFP-PCC-0023): The Company withdrew its bid for North Fork Correctional Facility in May 2016, Diamondback Correctional Facility in August 2016 and Tallahatchie County Correctional Facility in August 2016.

Ex. 1 at 29-30; Exs. 2-4, 7.

Defendant Garfinkle's responses to these interrogatories are also evasive but in a different manner, objecting to the interrogatories and responding as follows:

- "Mr. Garfinkle did not deal directly with the BOP with respect to negotiating the extension of the [Cibola County Correctional Center/Northeast Ohio Correctional Center] contract. Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information." (Ex. 1 at 23, 26; Ex. 5 at Interrogatory Nos. 7, 9.)

- "Mr. Garfinkle does not have an independent recollection of 'all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive[.]' Mr. Garfinkle did not deal directly with the BOP with respect to bids or RFPs for contracts to provide correctional services with the BOP. Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information." (Ex. 1 at 28; Ex. 5 at Interrogatory No. 10.)

- "Mr. Garfinkle does not have an independent recollection of 'all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]' Mr. Garfinkle did not deal directly with the BOP with respect to bids or RFPs for contracts to provide correctional services with the BOP. Therefore, Mr. Garfinkle

believes that the Company would be the best source of responsive information." (Ex. 1 at 31; Ex. 5 at Interrogatory No. 11.)

Plaintiff is entitled to a full response from Defendant Garfinkle, who was employed at CCA during the entire time covered by these requests. He signed SEC filings and participated in conference calls and presentations, where it is alleged material misrepresentations and omissions were made to investors, including regarding CCA's "high quality operations." *See, e.g.*, ¶¶23, 116, 166. It is of no matter whether he directly dealt with the BOP; he was privy to both the loss of contracts and the reasons why, given the financial implications and his role in finance at CCA. While a "'[l]ack of knowledge or the ability to recollect is, if true, an acceptable answer' to an interrogatory," *Annabel v. Heyns*, 2014 WL 1207802, at *1 (E.D. Mich. Mar. 24, 2014), *aff'd*, 2018 WL 4870866 (6th Cir. Apr. 10, 2018), "'[a] party answering interrogatories has an affirmative duty to furnish any and all information *available* to that party.'" *Roden v. Floyd*, 2019 WL 1098918, at *3 (E.D. Mich. March 8, 2019) (emphasis in original). It is black-letter law that "[i]n answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit." 8B Wright & Miller, *Fed. Prac. & Proc. Civ.* §2177 (3d ed., Apr. 2020 update). "A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party." *Id.* Garfinkle must provide a complete response to these interrogatories based on all information reasonably available to him.

The same applies to Defendant Mullenger's responses to Interrogatory Nos. 10-11 which, after his list of objections, read as follows:

- "Mr. Mullenger has retired, and he does not have an independent recollection of 'all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive[.]' Therefore, Mr. Mullenger believes that the Company would be the best source of responsive information." (Ex. 1 at 28; Ex. 6 at Interrogatory No. 10.)

- 13 -

- "Mr. Mullenger has retired, and he does not have an independent recollection of 'all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]' Therefore, Mr. Mullenger believes that the Company would be the best source of responsive information." (Ex. 1 at 31; Ex. 6 at Interrogatory No. 11.)

Defendant Mullenger has an affirmative duty to furnish the information available to him. His response reflects that he has failed in this duty. As such, he should be compelled to provide complete responses to Interrogatory Nos. 10-11.

Likewise, Interrogatory No. 12 requested Defendants to "[d]escribe in detail any discipline received by you or anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP." Ex. 1 at 32; Exs. 2-7. Defendants CCA's and Hininger's responses are evasive. Each responded that: "[s]ubject to and without waiving any objections, [CoreCivic/Mr. Hininger] responds as follows: During the Class Period, the Company had extensive policies and procedures, a reporting structure, and internal controls that ensured that to the extent that any of its policies or procedures were violated (including those relating to the terms of contracts with the Company's government partners) in a manner that required disciplinary action to be taken, including in some instances termination, such action was appropriately taken. The Company does not maintain a historical list of discipline specifically received by 'anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP.'" Ex. 1 at 32-33; Exs. 3-4. Defendants CCA and Hininger fail to specify any details in their responses, including the policies or procedures violated, the discipline received and who received it. Accordingly, they should be ordered to provide further detailed responses to Interrogatory No. 12.

## D.    Defendants' Relevancy Objections Should Be Overruled

Defendants refuse to respond at all to Interrogatory Nos. 6 and 8, which request Defendants to "[d]escribe in detail all reasons for the loss of the [Adams County Correctional Center/Eden Detention Center] contract with the BOP in or around [2019/2017], including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss." Ex. 1 at 20, 23; Exs. 2-5, 7. Defendants CCA, Hininger, Garfinkle and Lappin improperly respond on the basis of relevancy as follows by:

> object[ing] to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Ex. 1 at 21-22, 24-25; Exs. 2-5, 7.[7]

Defendants have injected as part of their defense strategy the notion that the Yates Memorandum was not the materialization of the risk of CCA's poor performance and quality but rather a "political shift." *See, e.g.*, Ex. 1 at 35; Ex. 9. Judge Trauger has recognized that the Yates Memorandum was subsequently rescinded by the U.S. Attorney General on February 21, 2017. ECF No. 76 at 20. The BOP considers past performance in considering whether to award contracts. That CCA continued to lose contracts after the Yates Memorandum was rescinded is highly relevant to counter Defendants' contention that the Yates Memorandum was a political shift in the first instance. The continued loss of contracts by CCA after the Yates Memorandum was rescinded is highly

---

[7]    Mullenger includes the same response but further responds that "Mr. Mullenger further objects on the basis that the Interrogatory seeks information about an event that transpired more than two years after he retired from his employment as Chief Financial Officer of the Company." Ex. 1 at 23-24; Ex. 6. To the extent that Mullenger has knowledge or was privy to knowledge of the reasons for the loss of these contracts, he should amend his response. Likewise, if he has no knowledge and was never privy to such knowledge, he should so state.

relevant to the defense Defendants seek to inject here that their loss of BOP business was merely due to a "political shift," rather than the poor quality of its services.

A party seeking discovery is entitled to all relevant, non-privileged information in the responding party's possession, custody or control. Fed. R. Civ. P. 26(b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' . . . ." *Tucker v. Nelson*, 390 F. Supp. 3d 858, 861 (S.D. Ohio 2019) (citing *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009); *Burges v. BancorpSouth, Inc*., 2017 WL 4640462, at *4 (M.D. Tenn. Oct. 12, 2017) (Frensley, Mag. J.) (citing "the liberal standard for determining the scope of discovery"). That these events took place outside the Class Period is of no matter. *Burges*, 2017 WL 4640462, at *3 (ordering documents to be produced outside the Class Period and recognizing that "'[t]he proposed class period dates function only to define the Plaintiff class, not to restrict the universe of relevant or actionable facts in this case'"); *In re Sci.-Atlanta, Inc.*, 2005 U.S. Dist. LEXIS 47634, at *22 (N.D. Ga. Jan. 4, 2005) (finding "Plaintiffs should not be limited to the putative Class Period in seeking discovery" and ordering production of documents from defendants' auditor and others created after the class period); *In re Allergan PLC Sec. Litig.*, 2020 U.S. Dist. LEXIS 56164, at *8 (S.D.N.Y. Mar. 30, 2020) (rejecting attempt to limit discovery to the class period, noting "'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues'"). Indeed, Defendants themselves, in verified interrogatory responses, have stated that analyst reports issued more than a year after the Class Period ends (*i.e.*, "November 30, 2017") support their contention that the Yates Memorandum was a political shift. Ex. 1 at 38-39; Ex. 9. In short, Defendants should be ordered to respond to

Interrogatory Nos. 6 and 8 and to do so consistently with any other directives this Court issues regarding responding "fully" to interrogatories.

## IV.    Conclusion

For the reasons set forth above, Defendants should be ordered to provide further responses to Interrogatory Nos. 1-12 and 21-22.  Further, future responses should not include open-ended language and should fully comply with Rule 33 of the Federal Rules of Civil Procedure.

DATED:  July 27, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK


s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

- 17 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 27, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  willowr@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,crosini@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,nchanin@barrettjohnston.com,jmartin@rgrdlaw.com,ggilbert@barrettjol

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`