# EXHIBIT 1

**Exhibit 1**

**CHART OF PLAINTIFF'S INTERROGATORIES
AND DEFENDANTS' RESPONSES**

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| <u>ROG No. 1</u>:<br><br>Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period that CCA provided quality corrections services; high standards of quality; high quality operations; "high-quality, safe and secure facilities"; or high-quality services to the BOP. | <u>CoreCivic</u>:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 1 will address the direct representations regarding the quality of CoreCivic's services that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have |

- 1 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 1 will address the direct representations regarding the quality of CoreCivic's services that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements. Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. |

**Garfinkle**:

Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Lappin**:

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the

- 4 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 2**:<br><br>Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period in SEC filings or investor presentations that CCA had earned the confidence of the BOP as result of its operational excellence. | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 2 will address the direct representations that CoreCivic had earned the confidence of the BOP that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making the representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 2 will address the direct representations that CoreCivic had earned the confidence of the BOP that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied |

- 6 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | **Garfinkle**: <br><br> Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements. <br><br> Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications.  In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. <br><br> **Lappin**: <br><br> Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements. |

- 8 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 3**:<br><br>Identify all documents and communications that you relied upon for any direct or indirect representation by you or CCA to investors during the Class Period, in SEC filings or during investor presentations that partnering with CCA to provide correctional services resulted in improvements to the quality of corrections | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 3 will only address the direct representations regarding improvements to the quality of corrections services provided to BOP inmates that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making the representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were |

- 9 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| services provided to BOP inmates. | ongoing and consistent throughout the Class Period.  The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017).  Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response.  *See* Fed. R. Civ. P. 33(d).  Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Mr. Hininger's response to Interrogatory No. 3 will only address the direct representations regarding improvements to the quality of corrections services provided to BOP inmates that are challenged in the Consolidated Complaint.  Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period.  The Company also relied upon the review, certifications, |

- 10 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services. <br><br> **Mullenger**: <br><br> Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements. <br><br> Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Garfinkle**:

Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Lappin**:

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not |

- 12 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 4**:<br><br>Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: We believe our renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, the | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making these representations, CoreCivic relied upon, among other things, publicly available information regarding the U.S. correctional system (*e.g.*, CORECIVIC_1004773), its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, |

- 13 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| constrained supply of available beds within the U.S. correctional system, our ownership of the majority of the beds we operate, and the quality of our operations. | CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**<u>Hininger</u>**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making these representations, Mr. Hininger relied upon, among other things, publicly available information regarding the U.S. correctional system (*e.g.*, CORECIVIC_1004773), the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on |

- 14 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**<u>Mullenger</u>**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects to the extent the Interrogatory seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure |

- 15 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Garfinkle objects to the extent that the Interrogatory seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Lappin**:<br><br>Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that this Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 4, but he believes the statement identified in Interrogatory No. 4 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3. |
| **ROG No. 5**:

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: "We operate our facilities in accordance with both company and facility-specific policies and procedures." | **CoreCivic**:

CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, CoreCivic responds as follows: In making these representations, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment |

- 17 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger:**<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making these representations, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a |

- 18 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects to the extent the Interrogatory seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Garfinkle objects to the extent that the Interrogatory seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Lappin**:

Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 5, but he believes the statement identified in Interrogatory No. 5 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3. |

- 20 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| **ROG No. 6**:<br><br>Describe in detail all reasons for the loss of the Adams County Correctional Center contract with the BOP in or around 2019, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and thus is overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Finally, Mr. Mullenger objects on the basis that the Interrogatory seeks information about an event that transpired more than four years after he retired from his employment as Chief Financial Officer of the Company.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Garfinkle further objects to this Interrogatory on the basis |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Lappin**:<br><br>Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and thus is overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Finally, Mr. Lappin objects on the basis that the Interrogatory seeks information about an event that transpired more than a year after he retired from the Company. |
| **ROG No. 7**:<br><br>Describe in detail all reasons for the loss of the Cibola County Correctional Center contract with the BOP in or around 2016, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: The BOP informed the Company on or around July 29, 2016 (*see* CORECIVIC_0031085) that the BOP did not exercise a renewal option on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.*<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: The BOP informed the Company on or around July 29, 2016 (*see* CORECIVIC_0031085) that the BOP did not exercise a renewal |

- 22 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | option on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.*

**Mullenger**:

Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about an event that transpired more than two years after he retired from his employment as Chief Financial Officer of the Company.

**Garfinkle**:

Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: Mr. Garfinkle did not deal directly with the BOP with respect to negotiating the extension of the Cibola County Correctional Center contract. Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information.

**Lappin**:

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The BOP informed the Company on or around July 29, 2016 (*see* CORECIVIC_0031085), that the BOP did not exercise its option to renew the Cibola County Correctional Center contract on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.* |

- 23 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| **<u>ROG No. 8</u>:**<br><br>Describe in detail all reasons for the loss of the Eden Detention Center contract with the BOP in or around 2017, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **<u>CoreCivic</u>:**<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**<u>Hininger</u>:**<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**<u>Mullenger</u>:**<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about an event that transpired more than two years after he retired from his employment as Chief Financial Officer of the Company.<br><br>**<u>Garfinkle</u>:**<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Garfinkle further objects to this Interrogatory on the basis |

- 24 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled *Reducing our Use of Private Prisons*, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Lappin**:<br><br>Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.  Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled *Reducing our Use of Private Prisons*, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. |
| **ROG No. 9**:<br><br>Describe in detail all reasons for the loss of the Northeast Ohio Correctional Center contract in or around 2014 including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award Northeast Ohio with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government."  *Id.*<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award Northeast Ohio with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*<br><br>**Mullenger**:<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.  Mr. Mullenger further objects on the basis that the Interrogatory seeks information about an event that transpired after he retired from his employment as Chief Financial Officer of the Company.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: Mr. Garfinkle did not deal directly with the BOP with respect to negotiating the extension of the Northeast Ohio Correctional Center contract.  Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information.<br><br>**Lappin**:<br><br>Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.<br><br>Subject to and without waiving any objections, Mr. Lappin responds as follows: The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award Northeast Ohio with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.* |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| <u>**ROG No. 10**</u>:<br><br>Identify all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive. | <u>**CoreCivic**</u>:<br><br>CoreCivic objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: CoreCivic incorporates its response to Interrogatory Nos. 7 and 9 in this response. During the Class Period, CoreCivic offered, but was not awarded a contract for the following facilities:<br><br>• CAR 14 (RFP-PCC-0021): Diamondback Correctional Facility, Prairie Correctional Facility and Lee Adjustment Center.<br>• CAR 15 (RFP-PCC-0022): Diamondback Correctional Facility and Prairie Correctional Facility.<br>• CAR 16 (RFP-PCC-0023): Diamondback Correctional Facility, North Fork Correctional Facility and Tallahatchie County Correctional Facility.<br><br><u>**Hininger**</u>:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: Mr. Hininger incorporates his response to Interrogatory Nos. 7 and 9 in this response. During the Class Period, CoreCivic offered, but was not awarded a contract for the following facilities:<br><br>• CAR 14 (RFP-PCC-0021): Diamondback Correctional Facility, Prairie Correctional Facility and Lee Adjustment Center.<br>• CAR 15 (RFP-PCC-0022): Diamondback Correctional Facility and Prairie Correctional Facility. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | •     CAR 16 (RFP-PCC-0023): Diamondback Correctional Facility, North Fork Correctional Facility and Tallahatchie County Correctional Facility.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about events that transpired after he retired from his employment as Chief Financial Officer of the Company.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: Mr. Mullenger has retired, and he does not have an independent recollection of "all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive[.]" Therefore, Mr. Mullenger believes that the Company would be the best source of responsive information.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Garfinkle further objects on the basis that the Interrogatory seeks information about events that transpired prior to his employment as Chief Financial Officer of the Company.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: Mr. Garfinkle does not have an independent recollection of "all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive[.]" Mr. Garfinkle did not deal directly with the BOP with respect to bids or RFPs for contracts to provide correctional services with the BOP. Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information. |

- 28 -

Cases\4826-5272-6213.v1-7/27/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | **Lappin**: |
| | Mr. Lappin objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. |
| | Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin has retired, and he does not have an independent recollection of "all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive[.]" Therefore, Mr. Lappin believes that the Company would be the best source of responsive information. |
| **ROG No. 11**:<br><br>Describe in detail all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic objects to this Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: CoreCivic incorporates its response to Interrogatory Nos. 7 and 9 in this response. The BOP informed the Company that the BOP did not award contracts to CoreCivic on the following grounds:<br><br>• CAR 14 (RFP-PCC-0021) was cancelled by the BOP in September 2013.<br>• CAR 15 (RFP-PCC-0022): The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award any of the facilities offered by CoreCivic with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.* |

- 29 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | •     CAR 16 (RFP-PCC-0023): The Company withdrew its bid for North Fork Correctional Facility in May 2016, Diamondback Correctional Facility in August 2016 and Tallahatchie County Correctional Facility in August 2016.<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger objects to this Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: Mr. Hininger incorporates his response to Interrogatory Nos. 7 and 9 in this response. The BOP informed the Company that the BOP did not award contracts to CoreCivic on the following grounds:<br><br>•     CAR 14 (RFP-PCC-0021) was cancelled by the BOP in September 2013.<br>•     CAR 15 (RFP-PCC-0022): The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award any of the facilities offered by CoreCivic with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*<br>•     CAR 16 (RFP-PCC-0023): The Company withdrew its bid for North Fork Correctional Facility in May 2016, Diamondback Correctional Facility in August 2016 and Tallahatchie County Correctional Facility in August 2016.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects to this Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to |

- 30 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about events that transpired after he retired from his employment as Chief Financial Officer of the Company.

Subject to and without waiving any objections, Mr. Mullenger responds as follows: Mr. Mullenger has retired, and he does not have an independent recollection of "all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]" Therefore, Mr. Mullenger believes that the Company would be the best source of responsive information.

**Garfinkle**:

Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Garfinkle further objects to this Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Garfinkle further objects on the basis that the Interrogatory seeks information about events that transpired prior to his employment as Chief Financial Officer of the Company.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: Mr. Garfinkle does not have an independent recollection of "all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]" Mr. Garfinkle did not deal directly with the BOP with respect to bids or RFPs for contracts to provide correctional services with the BOP. Therefore, Mr. Garfinkle believes that the Company would be the best source of responsive information. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | **Lappin**: <br><br> Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period and is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. <br><br> Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin has retired, and he does not have an independent recollection of "all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]" Therefore, Mr. Lappin believes that the Company would be the best source of responsive information. |
| **ROG No. 12**: <br><br> Describe in detail any discipline received by you or anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP. | **CoreCivic**: <br><br> CoreCivic objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. CoreCivic further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege, the workproduct doctrine, or any other applicable privilege or immunity. <br><br> Subject to and without waiving any objections, CoreCivic responds as follows: During the Class Period, the Company had extensive policies and procedures, a reporting structure, and internal controls that ensured that to the extent that any of its policies or procedures were violated (including those relating to the terms of contracts with the Company's government partners) in a manner that required disciplinary action to be taken, including in some instances termination, such action was appropriately taken. The Company does not maintain a historical list of discipline specifically received by "anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP." |

- 32 -

**Hininger**:

Mr. Hininger objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Hininger further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving any objections, Mr. Hininger responds as follows: During the Class Period, the Company had extensive policies and procedures, a reporting structure, and internal controls that ensured that to the extent that any of its policies or procedures were violated (including those relating to the terms of contracts with the Company's government partners) in a manner that required disciplinary action to be taken, including in some instances termination, such action was appropriately taken. The Company does not maintain a historical list of discipline specifically received by "anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP."

**Mullenger**:

Mr. Mullenger objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Mullenger further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about events that allegedly transpired after he retired from his employment as Chief Financial Officer of the Company.

Subject to and without waiving any objections, Mr. Mullenger responds as follows: to the extent the Company's policies or procedures were violated in a manner that required disciplinary action during the portion of the Class Period when he was employed as Chief Financial Officer of the Company, Mr. Mullenger believes that such action was appropriately taken. Mr. Mullenger cannot recall a specific instance in which disciplinary action was taken solely and specifically because of "the failure of CCA to provide contractual

- 33 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | services to the BOP in conformance with the terms of any CCA contract with the BOP" because of the passage of time, and because that is not how the Company's policies and procedures were written, interpreted, applied, or documented. Mr. Mullenger notes that he was never subjected to disciplinary action for "failure . . . to provide contractual services to the BOP[,]" either by the BOP or the Company.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Garfinkle further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Garfinkle further objects on the basis that the Interrogatory seeks information about events that allegedly transpired prior to his employment as Chief Financial Officer of the Company.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: to the extent the Company's policies or procedures were violated in a manner that required disciplinary action during the portion of the Class Period when he was employed as Chief Financial Officer of the Company, Mr. Garfinkle believes that such action was appropriately taken. Mr. Garfinkle cannot recall a specific instance in which disciplinary action was taken solely and specifically because of "the failure of CCA to provide contractual serviced to the BOP in conformance with the terms of any CCA contract with the BOP" because of the passage of time, and because that is not how the Company's policies and procedures were written, interpreted, applied, or documented. Mr. Garfinkle notes that he never received disciplinary action for "failure . . . to provide contractual services to the BOP[.]"<br><br>**Lappin**:<br><br>Mr. Lappin objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from |

- 34 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.<br><br>Subject to and without waiving any objections, Mr. Lappin responds as follows: During the Class Period, to the extent the Company's policies or procedures were violated in a manner that required disciplinary action, Mr. Lappin believes that such action was appropriately taken. Mr. Lappin cannot recall a specific instance in which disciplinary action was taken solely and specifically because of "the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP" because of the passage of time, and because that is not how the Company's policies and procedures were written, interpreted, applied or documented. Mr. Lappin notes that he was never subjected to disciplinary action for "failure . . . to provide contractual services to the BOP[,]" either by the BOP or the Company. |
| **ROG No. 21**:<br><br>Identify all facts, documents, testimony and communications that support Defendants' response to Interrogatory No. 20. (ROG No. 20: "Describe in detail what Defendants mean by unanticipated political shift, change or decision in the context of the Yates Memorandum | **Combined Defendants**:<br><br>Defendants object to the Interrogatory on the basis that identifying "all facts, documents testimony and communications" related to an action taken by then-Deputy Attorney General Sally Yates, is unduly burdensome, expensive, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent that it calls for information and knowledge in the possession of an infinite number of third parties. Defendants will respond based on the information in their possession, with sufficient detail to enable Plaintiffs to locate and identify the documents and communications described in this response. *See* Fed. R. Civ. P. 33(d). Finally, Defendants object to the extent that this Interrogatory seeks premature disclosure of expert opinion and materials.<br><br>Subject to the foregoing objections, Defendants reiterate their response to Interrogatory No. 20 and further identify the following facts, testimony and documents:<br><br>• Testimony from Kim White regarding her experience with OIG audits and political motivations behind those audits; her experience working at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum;<br><br>• Testimony from Bill Dalius regarding his experience at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum; |

- 35 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| including identifying what precisely was the shift, change or decision announced in the Yates Memorandum, how it was tied to politics, what political factors explained the shift, change or decision, and why it was unanticipated.") | • Testimony from Harley Lappin regarding privatization of prisons, his experience at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum;<br>• Testimony from Damon Hininger regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;<br>• Testimony from Tony Grande regarding conversations with government employees union after the issuance of the Yates Memorandum;<br>• Testimony from Jeremy Wiley regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;<br>• Testimony from Jeb Beasley regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;<br>• Testimony from Bart VerHulst regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;<br>• Testimony from Steven Feinstein, including deposition testimony dated July 12, 2018, at Tr. 154:11-155:9;<br>• Testimony from Lucy Allen, including deposition testimony dated October 20, 2018, at Tr. 48:10-49:7, 52:17-64:4, 168:15-180:3, 188:15-189:15, 193:10-18;<br>• Testimony from Cameron Hopewell, including deposition testimony dated January 17, 2020, at Tr. 92:21-94:15; 98:14-99:23;<br>• Testimony of Todd Mullenger, including deposition testimony dated March 13, 2020, at 11:16-12:18;<br>• Lucy Allen Report, Dkt. 99-3 ¶¶67-95;<br>• Lucy Allen Supplemental Report, Dkt. 135-1 ¶¶17-22;<br>• "Private Prisons: Cost Savings and BOP's Statutory Authority Need to Be Resolved", U.S. General Accounting Office, Report to the Chairman, Subcommittee on Regulation, Business Opportunities and Energy, Committee on Small Business, House of Representatives, February 1991;<br>• "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons", Department of Justice, Office of Inspector General, August 2016 (Dkt. 99-1);<br>• "Reducing our Use of Private Prisons," Office of the Deputy Attorney General, August 18, 2016 (CORECIVIC_0038964-66);<br>• "Rescission of Memorandum on Use of Private Prisons," Office of the Attorney General, February 21, 2017; |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | • "Review of the Department's Implementation of Prosecution and Sentencing Reform Principles under the Smart on Crime Initiative" Office of Inspector General, June 2017, available at https://oig.justice.gov/reports/2017/e1704.pdf<br>• Department of Justice FY 2015 Agency Financial Reports, available at https://www.justice.gov/doj/file/794631/download; and https://www.justice.gov/doj/file/793386/download<br>• "Audit of the Federal Bureau of Prisons' Contract with CoreCivic, Inc. to Operate the Adams County Correctional Center in Natchez, Mississippi," Department of Justice, Office of Inspector General, December 2016;<br>• Edited Transcript of Conference Call, "Corrections Corp of America Responds to the Department of Justice's Decision to Reduce Reliance on Privately Operated Prisons Conference Call," dated August 19, 2016, Ex. 46 of Patrick Swindle Deposition, dated January 9, 2020;<br>• E-mail Exchange Between John Vanyur and Kim White, dated September 30, 2016, Ex. 139 to Kim White Deposition;<br>• CORECIVIC_1224206;<br>• CORECIVIC_1367591;<br>• CORECIVIC_2206023;<br>• CORECIVIC_2207909-11;<br>• BOP_0148858-60;<br>• BOP_0284736-753;<br>• Contractor Performance Assessment Reports (listed in response to Interrogatory No. 23);<br>• CoreCivic FY2010 Form 10-K, filed February 25, 2011, pp. 21-22;<br>• CoreCivic FY2011 Form 10-K, filed February 27, 2012, pp. 23-24;<br>• CoreCivic FY2012 Form 10-K, filed February 27, 2013, pp. 26-29;<br>• CoreCivic FY2013 Form 10-K, filed February 27, 2014, pp. 27-29;<br>• CoreCivic FY2014 Form 10-K, filed February 25, 2015, pp. 26-28;<br>• CoreCivic FY2015 Form 10-K, filed February 25, 2016, pp. 28-31;<br>• Publicly available documents and news articles related to the introduction of The Justice Is Not for Sale Act in the Senate on September 17, 2015, including those available at |

- 37 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | https://www.sanders.senate.gov/newsroom/press-releases/sanders-house-leaders-introduce-bill-to-ban-private-prisons;<br><br>• Publicly available documents and news articles related Senator Elizabeth Warren's proposal and campaign promise to end the use of private prisons, including those available at https://elizabethwarren.com/plans/end-private-prisons;<br><br>• Publicly available documents and news articles related to states banning the use of private prisons, including for example, Assembly Bill 32 (AB 32), which became effective on January 1, 2020, which bans the operation of private detention facilities in California;<br><br>• Analyst Reports regarding CoreCivic's stock, including those issued between January 5, 2011 and November 30, 2017 as identified by Lucy Allen in Dkt. Nos. 99-3, 135-5;<br><br>• Publicly available news articles and reports regarding changes in stock prices of private corrections operators, such as CoreCivic and The Geo Group, in reaction to the 2016 presidential debates and presidential election, including those identified by Lucy Allen in Dkt. Nos. 99-3, 135-5;<br><br>• Publicly available records reflecting the stock price of CoreCivic during and after the Class Period, through December 2017; and<br><br>• Publicly available records reflecting the stock price of The Geo Group during and after the Class Period, through December 2017. |
| **ROG No. 22**:<br><br>Identify all facts, documents, testimony and communications that support any contention by Defendants that it was public knowledge prior to the announcement of the Yates Memorandum that | **Combined Defendants**:<br><br>Defendants object to the Interrogatory on the basis that identifying "all facts, documents testimony and communications" bearing on "public knowledge" is unduly burdensome, expensive, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent that it calls for information and knowledge in the possession of an infinite number of third parties. Defendants will respond based on the information in their possession, with sufficient detail to enable Plaintiffs to locate and identify the documents and communications described in this response. *See* Fed. R. Civ. P. 33(d). Defendants also object on the basis that "deficient" is vague, ambiguous and unintelligible in this context; the term is subject to multiple interpretations and undefined in the Interrogatory. Defendants interpret "deficient" to mean significantly and consistently worse than comparable BOP facilities. Defendants object to the extent that this Interrogatory seeks premature disclosure of expert testimony and materials. |

- 38 -

Case 3:16-cv-02267    Document 256-1    Filed 07/27/20    Page 39 of 40 PageID #: 7524

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| CCA's performance with respect to its BOP contracts was deficient. | Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants do not contend that CoreCivic's performance with respect to its BOP contracts was "deficient"; therefore investors could not have knowledge of "deficient" performance. Defendants do contend that there was no material information regarding CoreCivic's performance with respect to its performance on BOP contracts that it had any obligation to disclose, but was not disclosed to investors during the Class Period. To the extent that Plaintiff seeks information regarding public knowledge of CoreCivic's performance of its contractual obligations to the BOP, Defendants identify the following documents and/or categories of documents:<br><br>• Complaint (Dkt No. 1) and Consolidated Complaint (Dkt No. 57) filed in the above-captioned action;<br>• Lucy Allen Report, Dkt. 99-3 ¶¶67-95;<br>• Lucy Allen Supplemental Report, Dkt. 135-1 ¶¶17-22;<br>• News articles, reports and broadcasts regarding CoreCivic's operation of its BOP facilities published during the Class Period, including those identified by Lucy Allen in Dkt. Nos. 99-3, 135-5 and CORECIVIC_0045371-85;<br>• Analyst Reports regarding CoreCivic's stock, including those issued between January 5, 2011 and November 30, 2017 as identified by Lucy Allen in Dkt. Nos. 99-3, 135-5;<br>• "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons", Department of Justice, Office of Inspector General, August 2016 (Dkt. 99-1);<br>• "Reducing our Use of Private Prisons," Office of the Deputy Attorney General, August 18, 2016 (CORECIVIC_0038964-66);<br>• "Rescission of Memorandum on Use of Private Prisons," Office of the Attorney General, February 21, 2017; and<br>• CoreCivic's publicly available SEC Filings and public disclosures for the duration of the Class Period. |