EXHIBIT 1

# Exhibit 1

## CHART OF PLAINTIFF'S INTERROGATORIES
## AND DEFENDANTS' RESPONSES

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| **ROG No. 1**:<br><br>Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period that CCA provided quality corrections services; high standards of quality; high quality operations; "high-quality, safe and secure facilities"; or high-quality services to the BOP. | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 1 will address the direct representations regarding the quality of CoreCivic's services that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response.  *See* Fed. R. Civ. P. 33(d).  Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Mr. Hininger's response to Interrogatory No. 1 will address the direct representations regarding the quality of CoreCivic's services that are challenged in the Consolidated Complaint.  Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period.  The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017).  Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular |

Cases\4816-9569-6072.v1-8/14/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements. Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. |

Cases\4816-9569-6072.v1-8/14/20

**Garfinkle**:

Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Lappin**:

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 2**:<br><br>Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period in SEC filings or investor presentations that CCA had earned the confidence of the BOP as result of its operational excellence. | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 2 will address the direct representations that CoreCivic had earned the confidence of the BOP that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making the representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 2 will address the direct representations that CoreCivic had earned the confidence of the BOP that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | **Garfinkle**:<br><br>Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Lappin**:<br><br>Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements. |

Cases\4816-9569-6072.v1-8/14/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 3**:<br><br>Identify all documents and communications that you relied upon for any direct or indirect representation by you or CCA to investors during the Class Period, in SEC filings or during investor presentations that partnering with CCA to provide correctional services resulted in improvements to the quality of corrections | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. CoreCivic's response to Interrogatory No. 3 will only address the direct representations regarding improvements to the quality of corrections services provided to BOP inmates that are challenged in the Consolidated Complaint. CoreCivic further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making the representations at issue, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were |

Cases\4816-9569-6072.v1-8/14/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| services provided to BOP inmates. | ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 3 will only address the direct representations regarding improvements to the quality of corrections services provided to BOP inmates that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Mullenger objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development |

- 11 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Garfinkle further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Garfinkle objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Lappin**:<br><br>Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not |

- 12 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.<br><br>Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made. |
| **ROG No. 4**:<br><br>Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: We believe our renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, the | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making these representations, CoreCivic relied upon, among other things, publicly available information regarding the U.S. correctional system (*e.g.*, CORECIVIC_1004773), its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| constrained supply of available beds within the U.S. correctional system, our ownership of the majority of the beds we operate, and the quality of our operations. | CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services.<br><br>**Hininger**:<br><br>Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making these representations, Mr. Hininger relied upon, among other things, publicly available information regarding the U.S. correctional system (*e.g.*, CORECIVIC_1004773), the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017).  Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.  The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Mullenger further objects to the extent the Interrogatory seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint).  In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. |

**Garfinkle**:

Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Garfinkle objects to the extent that the Interrogatory seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

**Lappin**:

Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that this Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
|  | the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit. |
|  | Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 4, but he believes the statement identified in Interrogatory No. 4 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3. |
| **ROG No. 5**:<br><br>Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: "We operate our facilities in accordance with both company and facility-specific policies and procedures." | **CoreCivic**:<br><br>CoreCivic objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. CoreCivic further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. CoreCivic will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in its response. *See* Fed. R. Civ. P. 33(d). CoreCivic further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, CoreCivic responds as follows: In making these representations, CoreCivic relied upon, among other things, its historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, the Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | experience with the BOP) and it relied upon their experience in its communications with government partners and in publicly describing the quality of its services. |

**Hininger**:

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making these representations, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.*, CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.*, CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.*, CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Mullenger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Mullenger further objects to the extent the Interrogatory seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Garfinkle further objects to the Interrogatory on the basis that identifying |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Garfinkle objects to the extent that the Interrogatory seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications. In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.<br><br>**Lappin**:<br><br>Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.<br><br>Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 5, but he believes the statement identified in Interrogatory No. 5 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| **ROG No. 6**:<br><br>Describe in detail all reasons for the loss of the Adams County Correctional Center contract with the BOP in or around 2019, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Mullenger**:<br><br>Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and thus is overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Finally, Mr. Mullenger objects on the basis that the Interrogatory seeks information about an event that transpired more than four years after he retired from his employment as Chief Financial Officer of the Company.<br><br>**Garfinkle**:<br><br>Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Garfinkle further objects to this Interrogatory on the basis |

- 21 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Lappin**:<br><br>Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and thus is overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Finally, Mr. Lappin objects on the basis that the Interrogatory seeks information about an event that transpired more than a year after he retired from the Company. |
| **ROG No. 8**:<br><br>Describe in detail all reasons for the loss of the Eden Detention Center contract with the BOP in or around 2017, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss. | **CoreCivic**:<br><br>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.<br><br>**Hininger**:<br><br>Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | **Mullenger**: <br><br> Mr. Mullenger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Mullenger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Mr. Mullenger further objects on the basis that the Interrogatory seeks information about an event that transpired more than two years after he retired from his employment as Chief Financial Officer of the Company. <br><br> **Garfinkle**: <br><br> Mr. Garfinkle objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Garfinkle further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. <br><br> **Lappin**: <br><br> Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. |
| **ROG No. 19**: <br><br> Identify all facts, documents, testimony and | **Combined Defendants**: <br><br> Defendants object on the basis that the Interrogatory is unduly burdensome because it is wholly redundant of Interrogatory No. 21. Defendants object to the Interrogatory on the basis that identifying "all facts, documents testimony and communications" related to an action taken by then- |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| communications that support any contention made by Defendants in this action that the Yates Memorandum represented a political shift, change or decision, including those contentions made by Defendants in this action that "the Yates Memorandum announced an unanticipated political shift" (ECF No. 98 at 6); "the Yates Memorandum was the result of a political decision" (*id*. at 18); "there was a direct political | Deputy Attorney General Sally Yates, is unduly burdensome, expensive, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent that it calls for information and knowledge in the possession of multiple third parties. Defendants will respond based on the information in their possession, with sufficient detail to enable Plaintiffs to locate and identify the documents and communications described in this response. *See* Fed. R. Civ. P. 33(d). Defendants also object on the basis that the phrase "political shift, change or decision" is vague and subject to different interpretations. Defendants interpret this "political shift, change or decision" to have the same meaning as the statements "unanticipated political shift" and "political decision" referenced in the Request (ECF No. 98 at 6, 18), which are further defined in Defendants' response to Interrogatory No. 20. Finally, Defendants object to the extent that this Interrogatory seeks premature disclosure of expert opinion and materials.<br><br>Subject to the foregoing objections, Defendants incorporate their responses to Interrogatory Nos. 20 and 21 in full. |

- 24 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| motivation that resulted in that memo being released" (Deposition Transcript of Patrick Swindle as CCA's Rule 30(b)(6) designee, dated January 9, 2019 at 36:4-5); or the Yates Memorandum announced or reflected a "policy shift" (*see, e.g.*, ECF No. 98 at 6, ECF No. 160 at 9-11). | |
| **ROG No. 20**:<br><br>Describe in detail what Defendants mean by unanticipated political shift, change or decision in the context of the | **Combined Defendants**:<br><br>Defendants object to this Interrogatory to the extent that it calls for information and knowledge in the possession of numerous third parties. Defendants will therefore respond based on the information in their possession, after a reasonable inquiry. Defendants further object on the basis that the phrase "political shift, change or decision" is vague and subject to multiple interpretations. Defendants interpret this "political shift, change or decision" to have the same meaning as the statements "unanticipated political shift" and "political decision" (ECF No. 98 at 6, 18) referenced in the Request No. 19, and described more fully in their response below. Defendants further object to the extent that this Interrogatory contains multiple discrete subparts, |

- 25 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| Yates Memorandum including identifying what precisely was the shift, change or decision announced in the Yates Memorandum, how it was tied to politics, what political factors explained the shift, change or decision, and why it was unanticipated. | each of which could constitute a separate Interrogatory for purposes of the limits set by Federal Rule of Civil Procedure 33. Defendants will therefore respond to the Request insofar as it seeks a description of "what Defendants mean by unanticipated political shift, change or decision in the context of the Yates Memorandum" and not each separate subpart. Defendants also object to the extent that this Interrogatory seeks premature disclosure of expert opinion and materials.<br><br>Subject to the foregoing objections, Defendants respond as follows: The decision to utilize privately-operated correctional facilities by local, state and/or federal governments is a policy decision. For over 30 years, politicians and political parties have debated and introduced legislation regarding the privatization of prisons at the local, state, and federal government level. In 1996, Congress first directed the BOP to begin a 5-year prison-privatization demonstration project at a federal prison in Taft, California. Thereafter, with Congressional authorization and U.S. Department of Justice approval, the BOP chose to expand its use of privately-operated correctional facilities to house federal inmates, as a method to address overcrowding and increase its capacity to house federal inmates. The BOP (along with other government partners) chose to utilize privately-operated correctional facilities, as opposed to building and operating additional prisons, to increase its capacity to house inmates.<br><br>All private corrections contracts, including those between CoreCivic and the BOP, are subject to risks related to political opposition to privatized corrections and changes in government policy that could affect incarceration rates (as CoreCivic consistently disclosed to investors). Indeed, various political stakeholders and interest groups regularly lobbied and voiced opposition to the privatization of correctional facilities. There have been numerous pieces of legislation introduced that have attempted to eliminate the use of privately-operated correctional facilities, including Federal legislation. In addition to introducing legislation, politicians regularly address their position on privatization of prisons in campaign platforms or debates. For example, in 2016, the issue of privatization of prisons was raised in a presidential debate between Donald Trump and Hilary Clinton, and Ms. Clinton expressed support for "ending private prisons in the federal system" and wanted state governments to end their use of private prisons, as well. |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | The Yates Memorandum reflected a politically driven policy decision to end the Federal government's use of private corrections contractors. In August 2016, although prison populations were declining to some extent related to policy changes affecting incarceration rates and prison sentencing guidelines, the BOP's need for additional capacity to house federal inmates had not been eliminated. In fact, in the DOJ's Annual Financial Report for 2015, the Attorney General reported that prison overcrowding in BOP facilities was a "material weakness" and "the BOP's formal Corrective Action Plan includes utilizing contract facilities," among other things. Despite this persistent need, to the best of Defendants' knowledge, the BOP did not make any arrangements to secure additional facilities necessary to prevent overcrowding prior to the issuance of the Yates Memorandum. Nor did the BOP notify CoreCivic that it would stop using privately-operated correctional facilities. Further, the Yates Memorandum did not contain any new information regarding the performance of any private correctional facility operator, including CoreCivic, who had contracted to provide services to the BOP.<br><br>The issuance of the Yates Memorandum was unanticipated. It was issued without any advance notice, warning, debate or discussion about the new direction with any Defendants, or to Defendants' knowledge, with any other private contractor, who provided services to the BOP. Based on information available to Defendants, the Yates Memorandum represented a departure from a general trend of governments increasing their use of privately operated correctional facilities. Given that, neither CoreCivic, nor any other government contractor, could have predicted that the Department of Justice would have issued the Yates Memorandum.<br><br>Based on information presently available, the Yates Memorandum was motivated by a desire for politicians, and their supporters, to garner support of voters and interest groups—who do not support the privatization of correctional services—during an election year. The circumstances of the Yates Memorandum's release further support this conclusion. The policy change presented in the Yates memorandum was not pursued through any legislative or regulatory process. Rather, this policy shift was implemented through an internal memorandum directly from the Deputy Attorney General to the Acting Director of the BOP, which, unlike other internal memoranda, was also released to the press. (Indeed, articles on the Yates Memorandum were published within hours of its release). |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | The political decision reflected in the Yates Memorandum was reversed after the 2016 election, when the Republican Party won the majority of seats in Congress and Donald Trump was elected President. President Trump appointed Republican Senator Jefferson Sessions to serve as Attorney General, and Sessions rescinded the Yates Memorandum. According to Mr. Sessions, the Yates Memorandum "changed long-standing policy and practice, and impaired the [BOP's] ability to meet the future needs of the federal correctional system." Sessions therefore directed the BOP to return "to its previous approach." *See* "Rescission of Memorandum on Use of Private Prisons," Office of the Attorney General, February 21, 2017, available at https://www.bop.gov/resources/news/pdfs/20170224_doj_memo.pdf. |
| **ROG No. 21**:<br><br>Identify all facts, documents, testimony and communications that support Defendants' response to Interrogatory No. 20. (ROG No. 20: "Describe in detail what Defendants mean by unanticipated political shift, change or decision in the context of the Yates Memorandum including | **Combined Defendants**:<br><br>Defendants object to the Interrogatory on the basis that identifying "all facts, documents testimony and communications" related to an action taken by then-Deputy Attorney General Sally Yates, is unduly burdensome, expensive, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent that it calls for information and knowledge in the possession of an infinite number of third parties. Defendants will respond based on the information in their possession, with sufficient detail to enable Plaintiffs to locate and identify the documents and communications described in this response. *See* Fed. R. Civ. P. 33(d). Finally, Defendants object to the extent that this Interrogatory seeks premature disclosure of expert opinion and materials.<br><br>Subject to the foregoing objections, Defendants reiterate their response to Interrogatory No. 20 and further identify the following facts, testimony and documents:<br><br>• Testimony from Kim White regarding her experience with OIG audits and political motivations behind those audits; her experience working at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum;<br>• Testimony from Bill Dalius regarding his experience at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum;<br>• Testimony from Harley Lappin regarding privatization of prisons, his experience at the BOP and conversations with BOP employees after the issuance of the Yates Memorandum; |

- 28 -

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| identifying what precisely was the shift, change or decision announced in the Yates Memorandum, how it was tied to politics, what political factors explained the shift, change or decision, and why it was unanticipated.") | <ul><li>Testimony from Damon Hininger regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;</li><li>Testimony from Tony Grande regarding conversations with government employees union after the issuance of the Yates Memorandum;</li><li>Testimony from Jeremy Wiley regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;</li><li>Testimony from Jeb Beasley regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;</li><li>Testimony from Bart VerHulst regarding privatization of prisons, interactions with interest groups and BOP employees before and after the issuance of the Yates Memorandum;</li><li>Testimony from Steven Feinstein, including deposition testimony dated July 12, 2018, at Tr. 154:11-155:9;</li><li>Testimony from Lucy Allen, including deposition testimony dated October 20, 2018, at Tr. 48:10-49:7, 52:17-64:4, 168:15-180:3, 188:15-189:15, 193:10-18;</li><li>Testimony from Cameron Hopewell, including deposition testimony dated January 17, 2020, at Tr. 92:21-94:15; 98:14-99:23;</li><li>Testimony of Todd Mullenger, including deposition testimony dated March 13, 2020, at 11:16-12:18;</li><li>Lucy Allen Report, Dkt. 99-3 ¶¶67-95;</li><li>Lucy Allen Supplemental Report, Dkt. 135-1 ¶¶17-22;</li><li>"Private Prisons: Cost Savings and BOP's Statutory Authority Need to Be Resolved", U.S. General Accounting Office, Report to the Chairman, Subcommittee on Regulation, Business Opportunities and Energy, Committee on Small Business, House of Representatives, February 1991;</li><li>"Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons", Department of Justice, Office of Inspector General, August 2016 (Dkt. 99-1);</li><li>"Reducing our Use of Private Prisons," Office of the Deputy Attorney General, August 18, 2016 (CORECIVIC_0038964-66);</li><li>"Rescission of Memorandum on Use of Private Prisons," Office of the Attorney General, February 21, 2017;</li></ul> |

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | • "Review of the Department's Implementation of Prosecution and Sentencing Reform Principles under the Smart on Crime Initiative" Office of Inspector General, June 2017, available at https://oig.justice.gov/reports/2017/e1704.pdf<br>• Department of Justice FY 2015 Agency Financial Reports, available at https://www.justice.gov/doj/file/794631/download; and https://www.justice.gov/doj/file/793386/download<br>• "Audit of the Federal Bureau of Prisons' Contract with CoreCivic, Inc. to Operate the Adams County Correctional Center in Natchez, Mississippi," Department of Justice, Office of Inspector General, December 2016;<br>• Edited Transcript of Conference Call, "Corrections Corp of America Responds to the Department of Justice's Decision to Reduce Reliance on Privately Operated Prisons Conference Call," dated August 19, 2016, Ex. 46 of Patrick Swindle Deposition, dated January 9, 2020;<br>• E-mail Exchange Between John Vanyur and Kim White, dated September 30, 2016, Ex. 139 to Kim White Deposition;<br>• CORECIVIC_1224206;<br>• CORECIVIC_1367591;<br>• CORECIVIC_2206023;<br>• CORECIVIC_2207909-11;<br>• BOP_0148858-60;<br>• BOP_0284736-753;<br>• Contractor Performance Assessment Reports (listed in response to Interrogatory No. 23);<br>• CoreCivic FY2010 Form 10-K, filed February 25, 2011, pp. 21-22;<br>• CoreCivic FY2011 Form 10-K, filed February 27, 2012, pp. 23-24;<br>• CoreCivic FY2012 Form 10-K, filed February 27, 2013, pp. 26-29;<br>• CoreCivic FY2013 Form 10-K, filed February 27, 2014, pp. 27-29;<br>• CoreCivic FY2014 Form 10-K, filed February 25, 2015, pp. 26-28;<br>• CoreCivic FY2015 Form 10-K, filed February 25, 2016, pp. 28-31;<br>• Publicly available documents and news articles related to the introduction of The Justice Is Not for Sale Act in the Senate on September 17, 2015, including those available at |

Cases\4816-9569-6072.v1-8/14/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| | https://www.sanders.senate.gov/newsroom/press-releases/sanders-house-leaders-introduce-bill-to-ban-private-prisons; <br> •    Publicly available documents and news articles related Senator Elizabeth Warren's proposal and campaign promise to end the use of private prisons, including those available at https://elizabethwarren.com/plans/end-private-prisons; <br> •    Publicly available documents and news articles related to states banning the use of private prisons, including for example, Assembly Bill 32 (AB 32), which became effective on January 1, 2020, which bans the operation of private detention facilities in California; <br> •    Analyst Reports regarding CoreCivic's stock, including those issued between January 5, 2011 and November 30, 2017 as identified by Lucy Allen in Dkt. Nos. 99-3, 135-5; <br> •    Publicly available news articles and reports regarding changes in stock prices of private corrections operators, such as CoreCivic and The Geo Group, in reaction to the 2016 presidential debates and presidential election, including those identified by Lucy Allen in Dkt. Nos. 99-3, 135-5; <br> •    Publicly available records reflecting the stock price of CoreCivic during and after the Class Period, through December 2017; and <br> •    Publicly available records reflecting the stock price of The Geo Group during and after the Class Period, through December 2017. |
| **ROG No. 22**: <br><br> Identify all facts, documents, testimony and communications that support any contention by Defendants that it was public knowledge prior to the announcement of the Yates Memorandum that | **Combined Defendants**: <br><br> Defendants object to the Interrogatory on the basis that identifying "all facts, documents testimony and communications" bearing on "public knowledge" is unduly burdensome, expensive, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent that it calls for information and knowledge in the possession of an infinite number of third parties. Defendants will respond based on the information in their possession, with sufficient detail to enable Plaintiffs to locate and identify the documents and communications described in this response. *See* Fed. R. Civ. P. 33(d). Defendants also object on the basis that "deficient" is vague, ambiguous and unintelligible in this context; the term is subject to multiple interpretations and undefined in the Interrogatory. Defendants interpret "deficient" to mean significantly and consistently worse than comparable BOP facilities. Defendants object to the extent that this Interrogatory seeks premature disclosure of expert testimony and materials. |

Cases\4816-9569-6072.v1-8/14/20

| Interrogatory ("ROG") | Defendants' Response |
|---|---|
| CCA's performance with respect to its BOP contracts was deficient. | Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants do not contend that CoreCivic's performance with respect to its BOP contracts was "deficient"; therefore investors could not have knowledge of "deficient" performance. Defendants do contend that there was no material information regarding CoreCivic's performance with respect to its performance on BOP contracts that it had any obligation to disclose, but was not disclosed to investors during the Class Period. To the extent that Plaintiff seeks information regarding public knowledge of CoreCivic's performance of its contractual obligations to the BOP, Defendants identify the following documents and/or categories of documents:<br><br>• Complaint (Dkt No. 1) and Consolidated Complaint (Dkt No. 57) filed in the above-captioned action;<br>• Lucy Allen Report, Dkt. 99-3 ¶¶67-95;<br>• Lucy Allen Supplemental Report, Dkt. 135-1 ¶¶17-22;<br>• News articles, reports and broadcasts regarding CoreCivic's operation of its BOP facilities published during the Class Period, including those identified by Lucy Allen in Dkt. Nos. 99-3, 135-5 and CORECIVIC_0045371-85;<br>• Analyst Reports regarding CoreCivic's stock, including those issued between January 5, 2011 and November 30, 2017 as identified by Lucy Allen in Dkt. Nos. 99-3, 135-5;<br>• "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons", Department of Justice, Office of Inspector General, August 2016 (Dkt. 99-1);<br>• "Reducing our Use of Private Prisons," Office of the Deputy Attorney General, August 18, 2016 (CORECIVIC_0038964-66);<br>• "Rescission of Memorandum on Use of Private Prisons," Office of the Attorney General, February 21, 2017; and<br>• CoreCivic's publicly available SEC Filings and public disclosures for the duration of the Class Period. |