# EXHIBIT 4

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>       Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br>Magistrate Judge Jeffery S. Frensley<br><br>DAMON HININGER'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES |

PROPOUNDING PARTY:    Amalgamated Bank, as Trustee for the LongView Collective Investment Fund

RESPONDING PARTY:    Damon T. Hininger

SET NUMBER:    One (Nos. 1-18)

Pursuant to Federal Rules of Civil Procedure 26 and 33, the applicable Local Rules of the United States District Court for the Middle District of Tennessee, and Administrative Order No. 174-1, Defendant Damon T. Hininger ("Mr. Hininger"), by and through his undersigned counsel, hereby objects and responds to the First Set of Interrogatories to Defendants by Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiffs") dated March 17, 2020 (the "Interrogatories").

## PRELIMINARY STATEMENT

The following responses are made in good faith after an inquiry within the timeframe provided. In responding to these Interrogatories, Mr. Hininger states that he has not undertaken to search or review each and every file and record in his possession, custody, or control, because to do so would be unduly burdensome, expensive, and not proportional to the needs of the case. Furthermore, the Interrogatories that ask Mr. Hininger to "[i]dentify all documents and communications that you relied upon" are unduly burdensome, expensive, and not proportional to the needs of the case. Defendants have produced hundreds of thousands of documents in this matter, totaling millions of pages, and the Interrogatories that ask Mr. Hininger to "Identify all documents" requires a re-review of the entire production set. For these Interrogatories, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Hininger will specify the records that must be reviewed, in sufficient detail to allow Plaintiffs to locate and identify the documents requested.

Discovery, investigation, research, and analysis are ongoing in this case and may disclose the existence of additional facts, add meaning or interpretation to known facts or documents, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, and/or changes to these responses. Furthermore, these responses were prepared on Mr. Hininger's good faith interpretation and understanding of the definitions in the Interrogatories, and

1

are subject to correction for inadvertent errors or omissions, if any. Mr. Hininger reserves the right, but does not assume any obligation beyond the requirements of the Federal Rules, to amend or supplement the responses set forth herein if presently existing, different, or additional information is subsequently discovered. A full or partial response to an Interrogatory is not a waiver by Mr. Hininger of his right to object to any other part of the Interrogatory.

In objecting and responding to the Interrogatories, Mr. Hininger does not concede that any of the information provided is relevant, material, or admissible in evidence. No incidental or implied admissions are intended by the responses. Mr. Hininger reserves the right to challenge on evidentiary grounds any information provided in response to the Interrogatories.

Subject to the foregoing, Mr. Hininger responds as follows:

## OBJECTIONS TO INSTRUCTIONS

Mr. Hininger objects to Plaintiffs' Instruction Nos. 1 and 4 on the following bases:

1.      Mr. Hininger objects to Instruction No. 1 to the extent it seeks documents that are not within Defendants' possession, custody or control.

2.      Mr. Hininger objects to Instruction No. 4 as purporting to require disproportionate privilege logging beyond any applicable legal obligation. *See, e.g.,* Fed. R. Civ. P. 26; Admin Order No. 174-1, §8(b).

## OBJECTIONS TO DEFINITIONS

Mr. Hininger objects to Plaintiffs' Definition Nos. 2, 3, 6, 7, and 8 on the following bases:

1.      Mr. Hininger objects to Definition No. 2 "BOP" as overly broad, unduly burdensome, vague and ambiguous because the definition includes various unnamed persons and entities. Mr. Hininger will interpret the term "BOP facilities" herein to refer to Adams County Correctional Center, Cibola County Correctional Center, Eden Detention Center, McRae Correctional Facility, and Northeast Ohio Correctional Center.

2

2.     Mr. Hininger objects to Definition No. 3 "CCA" or the "Company" as overly broad, unduly burdensome, vague and ambiguous because the definition includes "any of its predecessors, successors, parents, subsidiaries, divisions or affiliates." In responding to the Interrogatories, Mr. Hininger will interpret "CCA" or the "Company" as CoreCivic, Inc. and its relevant officers, directors, managers and employees and will respond using the terms "CoreCivic" or the "Company."

3.     Mr. Hininger objects to Definition No. 6 "Disciplinary Action" as vague, ambiguous and overly broad in that it includes, among other things, a "verbal reprimand."

4.     Mr. Hininger objects to Definition No. 7 "[i]dentify" or "identifying" as overly broad, unduly burdensome and as purporting to impose requirements beyond those set forth in Fed. R. Civ. P. 33(d).

5.     Mr. Hininger objects to Definition No. 8 "Individual Defendants" as overly broad, unduly burdensome, vague and ambiguous because it includes "their agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on their behalf." In responding to the Interrogatories, Mr. Hininger will interpret "Individual Defendants" as Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin.

**RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period that CCA provided quality corrections services; high standards of quality; high quality operations; "high-quality, safe

3

and secure facilities"; or high-quality services to the BOP.

**RESPONSE TO INTERROGATORY NO. 1:**

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 1 will address the direct representations regarding the quality of CoreCivic's services that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.,* CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.,* CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.,* CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.,* CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.,* CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.,* CORECIVIC_1206412), contract monitor interviews (*see e.g.,* CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company

4

also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.,* CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.,* CORECIVIC_1115583), and the American Correctional Association (*e.g.,* CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.

**INTERROGATORY NO. 2:**

Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period in SEC filings or investor presentations that CCA had earned the confidence of the BOP as result of its operational excellence.

**RESPONSE TO INTERROGATORY NO. 2:**

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his

response.  *See* Fed. R. Civ. P. 33(d).  Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Mr. Hininger's response to Interrogatory No. 2 will address the direct representations that CoreCivic had earned the confidence of the BOP that are challenged in the Consolidated Complaint.  Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Hininger responds as follows:  In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.,* CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.,* CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period.  The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.,* CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.,* CORECIVIC_0123017).  Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's

6

external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.

**INTERROGATORY NO. 3:**

Identify all documents and communications that you relied upon for any direct or indirect representation by you or CCA to investors during the Class Period, in SEC filings or during investor presentations that partnering with CCA to provide correctional services resulted in improvements to the quality of corrections services provided to BOP inmates.

**RESPONSE TO INTERROGATORY NO. 3:**

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects on the basis that "indirect representations" is vague, and they are not challenged in the Consolidated Complaint or identified in the Interrogatory. Mr. Hininger's response to Interrogatory No. 3 will only address the direct representations regarding improvements to the quality of corrections services provided to BOP inmates that are challenged in the Consolidated Complaint. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making the representations at issue, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.,* CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.,* CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.,* CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.,* CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.

8

**INTERROGATORY NO. 4:**

Identify all documents and communications that you relied upon for CCA's representations

in its SEC filings during the Class Period that:

> We believe our renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, the constrained supply of available beds within the U.S. correctional system, our ownership of the majority of the beds we operate, and the quality of our operations.

**RESPONSE TO INTERROGATORY NO. 4:**

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is

redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory

on the basis that identifying "all documents and communications that you relied upon" is unduly

burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond

with sufficient detail to enable Plaintiffs to locate and identify the documents described in his

response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent

it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities

at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Hininger responds as follows: In

allegedly making these representations, Mr. Hininger relied upon, among other things, publicly

available information regarding the U.S. correctional system (*e.g.,* CORECIVIC_1004773), the

Company's historical contract retention rates (*e.g.,* CORECIVIC_0395027), the percentage of

compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate

climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety

of indicators from the BOP including the percentage of compliance in the Contract Facility

Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports

(*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal

options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor

9

interviews (*see e.g.,* CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.,* CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.,* CORECIVIC_1115583), and the American Correctional Association (*e.g.,* CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.

**INTERROGATORY NO. 5:**

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: "We operate our facilities in accordance with both company and facility-specific policies and procedures."

**RESPONSE TO INTERROGATORY NO. 5:**

Mr. Hininger objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Hininger further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Hininger will respond

with sufficient detail to enable Plaintiffs to locate and identify the documents described in his response. *See* Fed. R. Civ. P. 33(d). Mr. Hininger further objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Hininger responds as follows: In allegedly making these representations, Mr. Hininger relied upon, among other things, the Company's historical contract retention rates (*e.g.,* CORECIVIC_0395027), the percentage of compliance in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the staff and inmate climate surveys conducted annually at each BOP facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from the BOP including the percentage of compliance in the Contract Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222), Contractor Performance Assessment Reports (*e.g.*, CORECIVIC_1472457), BOP contract decisions, including the BOP's exercise of renewal options at the Company's BOP facilities (*e.g.*, CORECIVIC_1206412), contract monitor interviews (*see e.g.,* CORECIVIC_0125614), as well as its communications with the BOP – both written and oral – which were ongoing and consistent throughout the Class Period. The Company also relied upon the review, certifications, and accreditations from the Department of Justice (*e.g.,* CORECIVIC_0284254), Joint Commission on Accreditation of Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the American Correctional Association (*e.g.,* CORECIVIC_0123017). Finally, in allegedly making these statements, Mr. Hininger relied upon, among other things, his decades of experience in the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were

11

purportedly made. The Company employs a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP) and Mr. Hininger relied upon their experience in his communications with government partners and in publicly describing the quality of the Company's services.

**INTERROGATORY NO. 6:**

Describe in detail all reasons for the loss of the Adams County Correctional Center contract with the BOP in or around 2019, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 6:**

Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

**INTERROGATORY NO. 7:**

Describe in detail all reasons for the loss of the Cibola County Correctional Center contract with the BOP in or around 2016, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 7:**

Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The BOP informed the Company on or around July 29, 2016 (*see* CORECIVIC_0031085) that the BOP

did not exercise a renewal option on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.*

**INTERROGATORY NO. 8:**

Describe in detail all reasons for the loss of the Eden Detention Center contract with the BOP in or around 2017, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 8:**

Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

**INTERROGATORY NO. 9:**

Describe in detail all reasons for the loss of the Northeast Ohio Correctional Center contract in or around 2014 including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 9:**

Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award Northeast Ohio with the CAR XV contract on the following grounds: "As

the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*

**INTERROGATORY NO. 10:**

Identify all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive.

**RESPONSE TO INTERROGATORY NO. 10:**

Mr. Hininger objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Hininger responds as follows: Mr. Hininger incorporates his response to Interrogatory Nos. 7 and 9 in this response. During the Class Period, CoreCivic offered, but was not awarded a contract for the following facilities:

- CAR 14 (RFP-PCC-0021): Diamondback Correctional Facility, Prairie Correctional Facility and Lee Adjustment Center.

- CAR 15 (RFP-PCC-0022): Diamondback Correctional Facility and Prairie Correctional Facility.

- CAR 16 (RFP-PCC-0023): Diamondback Correctional Facility, North Fork Correctional Facility and Tallahatchie County Correctional Facility.

**INTERROGATORY NO. 11:**

Describe in detail all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise.

**RESPONSE TO INTERROGATORY NO. 11:**

Mr. Hininger objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Hininger objects to this

14

Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Hininger responds as follows: Mr. Hininger incorporates his response to Interrogatory Nos. 7 and 9 in this response. The BOP informed the Company that the BOP did not award contracts to CoreCivic on the following grounds:

- CAR 14 (RFP-PCC-0021) was cancelled by the BOP in September 2013.

- CAR 15 (RFP-PCC-0022): The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award any of the facilities offered by CoreCivic with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*

- CAR 16 (RFP-PCC-0023): The Company withdrew its bid for North Fork Correctional Facility in May 2016, Diamondback Correctional Facility in August 2016 and Tallahatchie County Correctional Facility in August 2016.

**INTERROGATORY NO. 12:**

Describe in detail any discipline received by you or anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP.

**RESPONSE TO INTERROGATORY NO. 12:**

Mr. Hininger objects to this Interrogatory on the basis that the term "discipline" and the phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Hininger further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege,

15

the work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving any objections, Mr. Hininger responds as follows: During the Class Period, the Company had extensive policies and procedures, a reporting structure, and internal controls that ensured that to the extent that any of its policies or procedures were violated (including those relating to the terms of contracts with the Company's government partners) in a manner that required disciplinary action to be taken, including in some instances termination, such action was appropriately taken. The Company does not maintain a historical list of discipline specifically received by "anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP."

**INTERROGATORY NO. 13:**

Identify all instances where CCA's trading window was closed for its executive officers subject to Section 16 of the Securities and Exchange Act of 1934 and for what period of time.

**RESPONSE TO INTERROGATORY NO. 13:**

Mr. Hininger objects to this Interrogatory on the basis that it requests information outside of the Class Period and that the Consolidated Complaint contains no allegations, nor has the discovery record developed any evidence, of trading on the basis of material, non-public information; the Interrogatory is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The instances during the Class Period when the trading window was open for executive officers are as follows:

- February 29, 2012 – March 28, 2012

- May 13, 2013 – June 11, 2013

- November 11, 2013 – December 10, 2013

- February 21, 2014 – March 18, 2014

- November 6, 2014 – December 8, 2014

- August 10, 2015 – September 10, 2015

- November 9, 2015 – December 10, 2015

- February 12, 2016 – March 31, 2016

- May 9, 2016 – May 24, 2016[1]

- August 5, 2015 – August 24, 2016

## INTERROGATORY NO. 14:

For all instances where CCA's trading window was closed (as identified in response to Interrogatory No. 13) describe in detail the reasons why, including identifying any material information that formed the basis for the closure of the trading window.

## RESPONSE TO INTERROGATORY NO. 14:

Mr. Hininger objects to this Interrogatory on the basis that it requests information outside of the Class Period and that the Consolidated Complaint contains no allegations, nor has the discovery record developed any evidence, of trading on the basis of material, non-public information; the Interrogatory is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Hininger responds as follows: CoreCivic's insider trading guidelines are outlined in its Insider Trading policy (Policy No. 3-21). CORECIVIC_0006186 *et seq*. CoreCivic's trading windows and blackout periods are defined in

---

[1] The trading window remained closed to David Garfinkle, Tony Grande, Brian Hammonds, Damon Hininger, Natasha Metcalf, Alexander Sherling, Patrick Swindle, Bart VerHulst and Johnpaul Wooden.

17

the Addendum to Insider Trading Guidelines (Policy No. 3-21BB). CORECIVIC_0006200. Per policy, CoreCivic's executive officers were only permitted to trade CoreCivic securities within established quarterly window periods that were not otherwise subject to a Special Blackout. The quarterly trading windows traditionally open one full trading day after the Company's quarterly earnings press release and will close at the close of the trading on the last day of the quarter. *See id.* A Special Blackout period was instituted from May 10, 2016 – May 24, 2016 because the Company was assembling information for public release of interim earnings guidance or other potentially material information.

**INTERROGATORY NO. 15:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the cure notice it received with respect to its Cibola facility on or about January 9, 2015, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 15:**

Mr. Hininger objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Hininger further objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The Company's Forms 10-K and 10-Q as well as its quarterly earnings releases are reviewed, and approved by the Disclosure Committee. The Disclosure Committee includes members of the Company's Executive Leadership Team and Real Estate, Human Resources, Operations, Finance, Partnership Development, Quality Assurance, Ethics & Compliance and Legal departments. The Public Affairs and Communications departments review certain other disclosures, and they typically rely on the Company's subject matter experts in crafting and/or approving those

disclosures. The Company historically did not disclose detailed information regarding the aspects of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 16:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the significant findings it received from the BOP with respect to CCA's contract performance, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 16:**

Mr. Hininger objects to this Interrogatory on the basis that the phrase "significant findings" is vague and ambiguous. Mr. Hininger will interpret "significant findings" to mean a Significant Finding issued by the BOP in a Contract Facility Monitoring Report. Mr. Hininger further objects to the extent that the Interrogatory mischaracterizes the Company's public statements. Mr. Hininger further objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Hininger further objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The Company's Forms 10-K and 10-Q as well as its quarterly earnings releases are reviewed, and approved by the Disclosure Committee. The Disclosure Committee includes members of the Company's Executive Leadership Team and Real Estate, Human Resources, Operations, Finance, Partnership Development, Quality Assurance, Ethics & Compliance and Legal departments. The Public Affairs and Communications departments review certain other disclosures, and they typically rely on the Company's subject matter experts in crafting and/or approving those

disclosures. The Company historically did not disclose detailed information regarding the aspects of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 17:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the repeat deficiencies it received from the BOP with respect to CCA's contract performance, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 17:**

Mr. Hininger objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Hininger further objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The Company's Forms 10-K and 10-Q as well as its quarterly earnings releases are reviewed, and approved by the Disclosure Committee. The Disclosure Committee includes members of the Company's Executive Leadership Team and Real Estate, Human Resources, Operations, Finance, Partnership Development, Quality Assurance, Ethics & Compliance and Legal departments. The Public Affairs and Communications departments review certain other disclosures, and they typically rely on the Company's subject matter experts in crafting and/or approving those disclosures. The Company historically did not disclose detailed information regarding the aspects of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 18:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the amount of staffing vacancy-related fines issued against it by the BOP or the amount of staffing vacancy-related fines issued against it by all government partners, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 18:**

Mr. Hininger objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. Hininger further objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Hininger responds as follows: The Company's Forms 10-K and 10-Q as well as its quarterly earnings releases are reviewed, and approved by the Disclosure Committee. The Disclosure Committee includes members of the Company's Executive Leadership Team and Real Estate, Human Resources, Operations, Finance, Partnership Development, Quality Assurance, Ethics & Compliance and Legal departments. The Public Affairs and Communications departments review certain other disclosures, and they typically rely on the Company's subject matter experts in crafting and/or approving those disclosures. The Company historically did not disclose detailed information regarding the aspects of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

21

DATED:  May 1, 2020                          Respectfully submitted:

                                             /s/ Steven A. Riley
                                             Steven A. Riley (TN #6258)
                                             Milton S. McGee, III (TN #024150)
                                             W. Russell Taber, III (TN #024741)
                                             RILEY WARNOCK & JACOBSON, PLC
                                             1906 West End. Ave.
                                             Nashville, TN 37203
                                             T: (615) 320-3700
                                             F: (615) 320-3737
                                             sriley@rwjplc.com
                                             tmcgee@rwjplc.com

                                             David J. Schindler
                                             Brian T. Glennon
                                             LATHAM & WATKINS LLP
                                             355 South Grand Ave.
                                             Los Angeles, CA 90071
                                             T: (213) 485-1234
                                             F: (213) 891-8763
                                             david.schindler@lw.com
                                             brian.glennon@lw.com

                                             Morgan E. Whitworth
                                             LATHAM & WATKINS LLP
                                             505 Montgomery Street, Suite 2000
                                             San Francisco, CA 94111
                                             T:  (415) 391-0600
                                             F:  (415) 395-8095
                                             morgan.whitworth@lw.com

                                             *Attorneys for Defendants Corrections
                                             Corporation of America, Damon T.
                                             Hininger, David M. Garfinkle, Todd J.
                                             Mullenger, and Harley G. Lappin*

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 3:16-cv-02267 |
| Plaintiff, | Honorable Aleta A. Trauger<br>Magistrate Judge Jeffery S. Frensley |
| vs. | VERIFICATION FOR DAMON HININGER'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES |
| CORRECTIONS CORPORATION OF AMERICA, et al., | |
| Defendants. | |

I, Damon T. Hininger, based upon my personal knowledge, verify under penalty of perjury

that my Responses to Plaintiffs' First Set of Interrogatories as served on May 1, 2020 are true and

correct.

Executed this 29ᵗʰ day of April 2020.

_____
Damon T. Hininger

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2020, this notice was served by email on the following counsel for Plaintiff:

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)


ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
Lead Counsel for Plaintiff


BARRETT JOHNSTON MARTIN
& GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)
Local Counsel

/s/ Eleanor L. Eaton
Eleanor L. Eaton
