# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 3:16-cv-02267 |
| Plaintiff, ) ) | Honorable Aleta A. Trauger |
| ) | Magistrate Judge Jeffrey S. Frensley |
| vs. ) ) | |
| CORRECTIONS CORPORATION OF AMERICA, et al., ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER INTERROGATORY RESPONSES AND FOR DISCOVERY SANCTIONS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

    A.    Plaintiff Alleges Defendants Committed Securities Fraud; Defendants Contend There Was No Fraud And Shareholder Losses Were Caused By A Political Shift ............................................................................................... 2

    B.    Plaintiff Propounds Burdensome And Overbroad Written Discovery ................... 3

    C.    Plaintiff Harasses The Individual Defendants Regarding Their Interrogatory Responses ........................................................................................ 5

    D.    Plaintiff Now Seeks Sweeping Evidentiary Sanctions .......................................... 7

III. ARGUMENT ......................................................................................................... 8

    A.    Preclusion Of Evidence Under Rule 37(d) Is Inappropriate Absent Extraordinary And Extreme Circumstances Not Present Here ............................... 8

    B.    Defendants Provided Complete Responses To The Reasonable Scope Of Interrogatory Nos. 1–5 ....................................................................................... 12

            1.    Blockbuster Interrogatories Are Unduly Burdensome And Defendants Provided Fair And Complete Responses ............................... 12

            2.    Defendants Properly Relied On Rule 33(d) To Identify Categories Of Responsive Documents ..................................................................... 15

            3.    Individual Defendants' Deposition Testimony Does Not Support Plaintiff's Request For Sanctions ............................................................ 16

            4.    There Is No Basis To Preclude CoreCivic From Relying On Documents Or Communications Beyond What Is Identified In Its Responses To Interrogatory Nos. 1–5 ..................................................... 20

    C.    There Is No Basis to Compel Supplemental Responses To Interrogatory Nos. 6 & 8 Because They Seek Irrelevant Information .......................................... 20

    D.    Defendants' Responses to Interrogatory Nos. 19–22 Are Complete .................... 23

IV. CONCLUSION ................................................................................................... 25

- i -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allianz Ins. Co. v. Surface Specialties, Inc*.,
No. Civ. A. 03–2470–CM–DJW, 2005 WL 44534 (D. Kan. Jan.7, 2005)..............................14

*In re Aredia & Zometa Prods. Liab. Litig.*,
No. 3:06-CV-0380, 2013 WL 1091688 (M.D. Tenn. Mar. 14, 2013) ....................................12

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
No. 08-90234, 2012 WL 5839023 (E.D. Pa. Nov. 16, 2012) ...........................................18, 19

*Boodram v. Coomes*,
No. 1:12CV-00057-JHM, 2015 WL 13783127 (W.D. Ky. July 1, 2015),
*R. & R. adopted*, No. 1:12CV-00057-JHM, 2015 WL 13783450 (W.D. Ky.
July 28, 2015)..............................................................................................................9, 10, 19

*Brevard v. Schunk*,
No. 918CV00042BKSML, 2020 WL 374563 (N.D.N.Y. Jan. 23, 2020)...........................9, 12

*Builders Flooring Connection, LLC v. Brown Chambless Architects*,
No. 2:11CV373-MHT, 2014 WL 1765102 (M.D. Ala. May 1, 2014) ...................................22

*Builders Insulation of Tenn., LLC v. S. Energy Sols.*,
No. 17-cv-2668-TLP-tmp, 2020 WL 265297 (W.D. Tenn. Jan. 17, 2020) ...........................12

*Burges v. BancorpSouth, Inc*.,
No. 3:14–cv–1564, 2017 WL 4640462 (M.D. Tenn. Oct. 12, 2017) .....................................22

*Desai v. Charter Commc'ns*,
No. 3:14-CV-459-DJH, 2016 WL 11658795 (W.D. Ky. July 12, 2016)................................19

*In re Domestic Airline Travel Antitrust Litig.*,
No. MC 15-1404 (CKK), 2019 WL 2191798 (D.D.C. Apr. 14, 2019), *R. & R.
adopted*, No. MC 15-1404 (CKK), 2019 WL 2191153, at *2 (D.D.C. Apr. 23,
2019) .......................................................................................................................................15

*Evans v. Port Auth. of N.Y. and N.J.*,
201 F.R.D. 95 (S.D.N.Y 2001) .............................................................................................24

*Fox v. Studebaker-Worthington, Inc.*,
516 F.2d 989 (8th Cir. 1975) ...................................................................................................9

*Gutierrez v. Johnson & Johnson, Inc*.,
No. 1-cv-5302, 2002 WL 34717245 (D.N.J. Aug. 13, 2002)................................................22

- ii -

*Harmon v. CSX Transp., Inc.*,
110 F.3d 364 (6th Cir. 1997) ............................................11

*Hilt v. SFC, Inc.*,
170 F.R.D. 182 (D. Kan. 1997)...................................................13, 15

*Hiskett v. Wal-Mart Stores, Inc.*,
180 F.R.D. 403 (D. Kan. 1998)..................................................13

*Ibanez v. Miller*,
No. CIV S-06-2668 JAM EFB P, 2009 WL 3481679 (E.D. Cal. 2009) ................................22

*Jackson by Jackson v. Nissan Motor Corp. in USA*,
888 F.2d 1391, 1989 WL 128639 (6th Cir. Oct. 30, 1989) ....................................9

*Jobe O. v. Pataki*,
No. 03 CIV.8331RCCKNF, 2007 WL 844707 (S.D.N.Y. Mar. 15, 2007) ......................9, 23

*Johnson Marcraft, Inc. v. W. Sur. Co.*,
No. 3:15-cv-01482, 2016 WL 3655299 (M.D. Tenn. July 8, 2016)........................................16

*Kuriakose v. Veterans Affs. Ann Arbor Healthcare Sys.*,
No. 14-CV-12972, 2016 WL 4662431 (E.D. Mich. Sept. 7, 2016)........................................10

*Leleux-Thubron v. Iberia Par. Gov't*,
No. 6:13-CV-00852, 2015 WL 5519231 (W.D. La. Sept. 16, 2015) ................................18, 19

*Lillard v. Univ. of Louisville*,
No. 3:11-CV-554-JGH, 2014 WL 12725816 (W.D. Ky. Apr. 7, 2014)...................................13

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*,
No. 1:03–cv–680–SEB–WGH, 2011 WL 4387293 (S.D. Ind. Sept. 20, 2011) .....................16

*Madden v. Calvert*,
No. 1:16-CV-00147-GNS, 2017 WL 3841648 (W.D. Ky. Sept. 1, 2017) .............................10

*Mancini v. Ins. Corp. of N.Y.*,
No. 07cv1750–L(NLS), 2009 WL 1765295 (S.D. Cal. June 18, 2009) .................................13

*Meese v. Eaton Mfg. Co.*,
35 F.R.D. 162 (N.D. Ohio 1964) (superseded by Rule on other grounds as
stated in *Schipper v. BNSF Railway Co.*, 07–02249, 2008 WL 2358748 (D.
Kan. June 6, 2008))....................................................................................23

*Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
830 F.3d 376 (6th Cir. 2016) ....................................................21

*In re Papst Licensing, GmbH, Patent Litig.*,
No. No. CIV. A. 99–MD–1298, 2001 WL 797315 (E.D. La. July 12, 2001) ..................15, 16

*Phipps v. Accredo Health Grp., Inc.*,
No. 215CV02101STACGC, 2017 WL 685579 (W.D. Tenn. Feb. 21, 2017)........................12

*Porreca v. Mitchell L. Morgan Mgmt., Inc.*,
No. CIV JFM 08-1924, 2009 WL 400626 (D. Md. Feb. 13, 2009).......................................10

*In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*,
No. 2:08-CV-02830, 2017 WL 3537597 (W.D. Tenn. Aug. 17, 2017), *aff'd
sub nom. Norris v. MK Holdings, Inc.*, 734 F. App'x 950 (6th Cir. 2018).............................11

*Rouse v. Caruso*,
No. 06-CV-10961-DT, 2011 WL 918327 (E.D. Mich. Feb. 18, 2011), *R. & R.
adopted*, No. 06-CV-10961, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011) .........................11

*S. Camden Citizens in Action, v. N.J. Dep't of Envtl. Prots.*,
No. CV 01-0702 (FLW), 2005 WL 8177284 (D.N.J. May 27, 2005) ....................................10

*Shire Labs., Inc. v. Barr Labs., Inc.*,
236 F.R.D. 225 (S.D.N.Y. 2006) ...................................................................................18, 19

*Smith v. TFI Family Servs., Inc.*,
No. 17-02235-JWB-GEB, 2019 WL 266234 (D. Kan. Jan. 18, 2019) ...................................16

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*,
250 F.R.D. 203 (E.D. Pa. 2008).........................................................................................9

*Taylor v. Memphis Area Legal Servs., Inc.*,
No. 12-2467-T-TMP, 2013 WL 2468031 (W.D. Tenn. June 7, 2013) ...................................19

*Victaulic Co. of Am. v. United States*,
8 C.I.T. 127 (1984) ........................................................................................................15

*Webb v. Krudys*,
No. 15-5247 (WHW)(CLW), 2016 WL 4149983 (D.N.J. Aug. 3, 2016)...............................22

- iv -

# RULES

Fed. R. Civ. P.

26 .............................................................................................................4, 12

26(a)(1)(A)(iii) ...............................................................................................12

26(b) ...............................................................................................................15

26(b)(1) ..........................................................................................................14

33 Advis. Comm. Note for 1970 Amendment, Subdivision (c) ...........................16

33 ....................................................................................................................12

33 ......................................................................................................................1

33(d) .........................................................................................................*passim*

33(d)(1) ...........................................................................................................16

37 .............................................................................................................9, 19

37(a)(5) ............................................................................................................8

37(b) .................................................................................................................8

37(d) .........................................................................................................*passim*

# TREATISES

8B Fed. Prac. & Proc. Civ. § 2172 (3d ed.) .....................................................23

Handbk. Fed. Civ. Disc. & Disclosure § 12:14 (4th ed.) ...............................9, 20

## I.   INTRODUCTION

Defendants CoreCivic, Inc. ("CoreCivic"), Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin (collectively, "Defendants") responded to every Interrogatory in Lead Plaintiff Amalgamated Bank's ("Plaintiff") First and Second Set of Interrogatories (the "Interrogatories") consistent with their obligations under the Federal Rules of Civil Procedure. There is no basis to compel any further response to the Interrogatories at issue, or impose evidentiary sanctions of any kind whatsoever.

Plaintiff's Motion rests on inaccurate premises and demonstrably false accusations, such as the assertion that the Individual Defendants "refused to produce meaningful responses;" "had virtually no involvement in preparing their own responses;" swore to "false" verifications of their responses to Plaintiff's First Set of Interrogatories; and did not "even bother[]" to verify their responses to Plaintiff's Second Set of Interrogatories.   In fact, the Defendants provided comprehensive responses to each Interrogatory, with some responses spanning multiple pages (with the exception of two to which Defendants stood on their objections); reviewed and had the opportunity to make changes to initial draft responses prepared by their attorneys; and testified that they did not withhold any responsive information; and believed in good faith that CoreCivic's verification of the Second Set of Interrogatories directed to "All Defendants" was sufficient and individual verifications were not required (to address Plaintiff's concern, the Individual Defendants have now provided these verifications, too).

A review of the Interrogatory responses refutes Plaintiff's dramatic and baseless proclamation that Defendants have made a "mockery" of Federal Rule of Civil Procedure 33. Moreover, the deposition transcripts plainly reflect that Plaintiff's line of questioning regarding the Interrogatory responses was not designed to "discover" anything, but rather, was a mere tactic to try to confuse the deponents and obtain soundbites for Plaintiff's anticipated Motion.  Messrs.

Hininger, Garfinkle and Lappin answered Plaintiff's questions regarding the preparation of their Interrogatory responses (certain of which occurred four months prior to their depositions) to the best of their recollection. The snippets that Plaintiff copies in its Motion are misleading, taken out of context, and simply do not provide the full picture. Plaintiff's overreaching request for sanctions pursuant to Federal Rule of Civil Procedure 37(d) is unwarranted based on the facts and contrary to established law.

Plaintiff has no basis to claim that it does not have the fact discovery that it needs from Defendants to prepare for trial six months from now (or that there will be any unfair surprise). To the contrary, at the close of fact discovery, it is apparent that Plaintiff recognizes the weaknesses in its securities fraud claims. Plaintiff has, therefore, resorted to a trial preparation strategy focused solely on excluding plainly admissible evidence that proves that it has no case.

Defendants respectfully request that this Court deny Plaintiff's Motion.

## II.     STATEMENT OF FACTS

### A.     Plaintiff Alleges Defendants Committed Securities Fraud; Defendants Contend There Was No Fraud And Shareholder Losses Were Caused By A Political Shift

Plaintiff's federal securities claims challenge three categories of statements in CoreCivic's SEC filings between February 27, 2012 and August 17, 2016 (the "Class Period"): (1) statements regarding the "quality" of CoreCivic's services, (2) statements regarding the "cost effectiveness" of CoreCivic's services to its government partners, and (3) statements regarding CoreCivic's "compliance" with contracts and policies. *See* Compl., ECF No. 57 ("Compl.") ¶¶ 120–69. Plaintiff claims these statements fraudulently misrepresented CoreCivic's ability to secure future contract renewals with the BOP, *id.*, and artificially inflated the price of CoreCivic's stock. *Id.* ¶ 191. Plaintiff alleges that the "truth" regarding the quality and cost effectiveness of CoreCivic's services to all of its government partners was revealed on August 11, 2016 in a report from the

Office of Inspector General ("OIG"), and one week later when then-Deputy Attorney General Sally Yates issued a memo ("Yates Memo") that announced the U.S. Department of Justice's intention to reduce, and ultimately end, the BOP's use of privately operated corrections facilities. *Id.* ¶¶ 192–99. Plaintiff further alleges that CoreCivic's stock price declined when the "truth" was revealed, causing investor losses. *Id.* ¶¶ 196–200. Defendants deny these allegations and contend that CoreCivic's stock price dropped in reaction to the unanticipated political shift announced in the Yates Memo.

### B.    Plaintiff Propounds Burdensome And Overbroad Written Discovery

Discovery in this case has been ongoing for nearly two and a half years. It has been extraordinarily burdensome on Defendants. Defendants have produced more than 420,000 documents, totaling over 2.2 million pages, from 65 custodians, and Plaintiff has taken 23 fact witness depositions. Decl. of Meryn C. N. Grant in Support of Defendants' Opp. to Plaintiff's Motion for Sanctions ("Grant Decl.") ¶ 2. On March 17, 2020, Plaintiff served its First Set of Interrogatories to "[CoreCivic] and Individual Defendants," consisting of eighteen identical Interrogatories, after serving 113 identical Requests for Admission. Decl. of Christopher M. Wood in Support of Lead Plaintiff's Motion for Sanctions, ECF No. 279, ("Wood Decl.") Ex. 2 at 2; Grant Decl. ¶ 3. Defendants responded individually to the First Set, and each Individual Defendant verified that response. Wood Decl. Exs. 3–7.

On May 18, 2020, the parties met and conferred regarding their respective written discovery responses. Grant Decl. ¶ 6. Nearly a month later, on June 12, 2020, Plaintiff sent a letter to Defendants outlining purported deficiencies in certain of their Interrogatory responses.

Ex. C.[1]  Defendants responded via letter on June 22, 2020.  Ex. D.  During this process, the parties articulated the following positions, as relevant to this Motion:

- <u>Responses to Interrogatory Nos. 1–5</u>:  These Interrogatories seek identification of "all documents and communications that you relied upon at the time of any direct or indirect representation" regarding the subject matters of the alleged misstatements.  Wood Decl. Ex. 1 at 1–20.  Defendants objected to these Interrogatories as overly broad and unduly burdensome, but nonetheless provided a narrative response, and identified categories of documents and communications (and provided references, by Bates number, to examples in each category) that informed their respective statements over the four-and-a-half year Class Period (beginning eight years ago).  *Id*.  Plaintiff demanded that Defendants identify each document they relied on, specific communications they relied on, and the identity of each individual involved in those communications.  Ex. C at 2.  Defendants explained that such a task was nearly impossible and unduly burdensome, and that their responses complied with both Rule 26 and Rule 33(d).  Ex. D at 1–2.

- <u>Responses to Interrogatories No. 6–8</u>:  These Interrogatories sought the reasons for the BOP's decisions not to renew contracts with CoreCivic for two facilities, in 2017 and 2019, *i.e.*, years after the Class Period.  Wood Decl. Ex. 1 at 21–23.  Defendants objected to these Interrogatories as calling for speculation as to a third party's decisions, seeking irrelevant post-Class Period information, and being unduly burdensome.  *Id.*  Plaintiff claimed that these Interrogatories were "highly relevant" to an evaluation of Defendants' contention that the August 2016 Yates Memo reflected a political decision.  Ex. C at 3.  Defendants disagreed.  Ex. D at 2–3.

On May 15, 2020, Plaintiff served eight additional contention Interrogatories, styled as "Plaintiff's Second Set of Interrogatories to All Defendants."  Wood Decl. Ex. 8 at 1.  The Interrogatories that are at issue in this Motion sought a description of "all" facts supporting Defendants' contentions related to the element of loss causation.  *Id.* at 3–4.  Defendants requested a brief extension of time to respond (consistent with the extensions that both parties have received and provided to each other as a matter of courtesy throughout this case).  Grant Decl. ¶¶ 3–5.  On June 24, 2020, Defendants responded to these Interrogatories collectively, providing a verification from CoreCivic.  Wood Decl. Ex. 9.  The parties then met and conferred telephonically, and through letters.  Grant Decl. ¶¶ 9–11.  The parties discussed the following issues:

---

[1] All lettered Exhibits A–N refer to the Grant Decl. filed concurrently herewith.

- Interrogatory No. 21: This Interrogatory seeks "all facts, testimony and documents" that support Defendants' contention that the Yates Memo reflected an unanticipated political shift or decision. Wood Decl. Ex. 1 at 28–31. In their response, Defendants identified specific facts, documents (some individually, and some categorically), and testimony (both deposition testimony, and a description of anticipated testimony from witnesses who either were not asked about the Yates Memo during their depositions or witnesses who had not been deposed yet). *Id.* At the time, Plaintiff challenged the response to the extent it did not include citations to specific deposition testimony for the witnesses who either were not asked about the Yates Memo during their depositions or who had not yet been deposed. Wood Decl. Ex. 10 at 1. Defendants explained that there were no specific citations to identify (because none existed yet), but in a good faith effort to be complete, Defendants identified the subject of these witnesses' anticipated testimony. *Id.* Ex. 11 at 1.

- Interrogatory Nos. 21 and 22: These Interrogatories seek "all documents, testimony and communications" supporting Defendants' contentions that Plaintiff cannot prove loss causation. *Id.* Ex. 1 at 28–32. Plaintiff again requested that Defendants identify documents specifically rather than by category, ignoring Rule 33(d). *Id.* Ex. 10 at 2. Plaintiff also (again) challenged the use of the word "including" as improper (which Defendants used to identify specific documents or examples within a category of documents). *Id.* Defendants confirmed that all responsive categories had been identified. *Id.* Ex. 11 at 2. In an effort to narrow the dispute, Defendants agreed to supplement their responses with respect to certain categories of public documents where Plaintiff claimed it could not identify all documents within that category. *Id.*

- Verifications: Plaintiff requested verifications from the Individual Defendants. *Id.* Ex. 10 at 2. In later meet and confer discussions, Defendants informed Plaintiff it did not believe that Interrogatories from each Individual Defendant were necessary because the Interrogatories were served on all Defendants, the responses were identical, and CoreCivic had verified them. Grant Decl. ¶ 22. But, Defendants indicated that they would in good faith work to obtain individual verifications. *Id.* (Plaintiff itself waited to serve a verification over a month after serving its Interrogatory responses, Ex. B.)

The parties then raised their respective written discovery issues—seeking to compel further answers—with Judge Trauger, who referred them to Judge Frensley. ECF Nos. 240, 244. In an effort to resolve Plaintiff's purported concerns regarding the inclusive language in Interrogatory Nos. 1–5 and 20–21, Defendants offered to remove that language. Grant Decl. ¶ 14, Ex. E. Plaintiff rejected that offer. Ex. E. Plaintiff filed a motion to compel further responses on July 27, 2020. ECF No. 254 ("Motion to Compel").

### C. Plaintiff Harasses The Individual Defendants Regarding Their Interrogatory Responses

Plaintiff took Individual Defendant Mullenger's deposition on February 13, 2020, before the First Set of Interrogatories was served. *Id.* ¶ 17. Depositions of the remaining three Individual Defendants (Messrs. Lappin, Garfinkle, and Hininger) took place virtually during the week of July 27, 2020. *Id.*[2] During those depositions, Plaintiff spent hours, at the end of long days on the record, questioning Messrs. Lappin, Garfinkle, and Hininger about the preparation of their Interrogatory responses. Ex. F, Dep. Tr. of Harley G. Lappin ("Lappin Tr.") at 67:8–80:21, 233:21–241:15; Ex. H, Dep. Tr. of David M. Garfinkle ("Garfinkle Tr.") at 293:9–294:24, 309:19–310:22; Ex. G, Dep. Tr. of Damon T. Hininger ("Hininger Tr.") at 306:6–324:9, 333:8–340:17. Plaintiff suggested, that the process each individual undertook to respond was insufficient to swear to the accuracy of the responses under oath, and asked several questions in an attempt to confuse the witnesses. *Id.*; *see e.g.*, Ex. F, Lappin Tr. at 74:7 ("Now you have me confused.").

Messrs. Lappin and Hininger testified that while they did not draft the responses, they reviewed them, had an opportunity to (and where applicable did) make changes, and discussed the responses with counsel. *See, e.g.*, Ex. F, Lappin Tr. at 234:13–20; Ex. G, Hininger Tr. at 311:14–312:20, 337:6–338:4.[3] And, when asked, these Defendants confirmed that the responses were accurate, signed under penalty of perjury, and "did not conceal any additional responsive information." Ex. F, Lappin Tr. at 235:7–23, 240:22–241:13,[4] 235:11–23; *see* Ex. G, Hininger Tr.

---

[2] Plaintiff claims fact discovery is over at "Defendants' insistence," Mot. at 20, but that was the Court's decision to reject Plaintiff's request for more time to complete the remaining depositions of three individual defendants in person, notwithstanding the global pandemic. ECF No. 220.

[3] Plaintiff persists with the false claim that Mr. Garfinkle did not review his responses at all, Mot. at 9, based on his lack of recollection during his deposition. Ex. H, Garfinkle Tr. at 309:19–310:6. As Defendants later confirmed to Plaintiff, Mr. Garfinkle did, in fact, receive and provide comments to the responses to the Second Set of Interrogatories, but did not recall those facts during his deposition. Grant Decl. ¶ 22. His deposition errata will correct this mis-recollection.

[4] Plaintiff spends pages mischaracterizing the deposition testimony. By way of example, Plaintiff represents that Mr. Lappin testified that his attorneys prepared the responses, that they did not change after he reviewed them, and that Mr. Lappin did not independently consider whether or not he had a recollection of certain events. Mot. at 8, 19. This is misleading. As the transcript reflects,

at 318:18–319:15, 333:13–23; Ex. H, Garfinkle Tr. at 293:9–294:14.  Defense counsel objected to questions calling for privileged attorney-client communications regarding the substance of those responses.[5]  Messrs. Lappin, Hininger, and Garfinkle followed their counsel's instruction not to answer on that basis.  Defense counsel did not, however, object to narrow questions regarding the preparation of the responses, and Messrs. Lappin, Hininger, and Garfinkle answered all of them to the best of their recollection.  *See, e.g.*, Ex. F, Lappin Tr. at 68:16–80:7, 239:2–241:13; Ex. G, Hininger Tr. at 309:17–317:10; Ex. H, Garfinkle Tr. at 293:14–294:24.

## D.    Plaintiff Now Seeks Sweeping Evidentiary Sanctions

On August 3, 2020, Plaintiff notified Defendants that it wished to withdraw its Motion to Compel and to file a different motion based on unidentified issues raised by the deposition testimony described above, after the deadline for discovery motions.  Ex. J.  During a discovery conference on August 10, 2020, Judge Frensley granted Plaintiff's request.  ECF No. 260.  The parties then met and conferred on the instant Motion and, for the first time, Plaintiff previewed the bases for its anticipated request for evidentiary sanctions.  Grant Decl. ¶ 22.  Plaintiff refused to engage in a discussion of potential remedies—other than evidentiary sanctions—to address its purported concerns regarding the preparation of the Interrogatory responses, arguing that neither further supplementation nor receiving verifications from the Individual Defendants for the Second Set of Interrogatories would resolve the dispute.  *Id.*  On August 14, 2020, Plaintiff filed its Motion. Because the issue of Individual Defendants' verifications remained an issue in Plaintiff's refiled

---

Mr. Lappin confirmed that although his attorneys prepared the first draft, he reviewed the responses, they were accurate when he signed them, and if he, in fact, had a recollection of certain events, he would have said so.  Ex. F, Lappin Tr. at 284:18–287:6.

[5] Contrary to Plaintiff's position, Defendants are not required to waive that privilege based on Plaintiff's unfounded accusations of impropriety, *cf.* Mot. at 8–11.

motion, all four Individual Defendants provided Plaintiff with verifications to the Second Set of Interrogatories on August 21, 2020. Ex. N.

## III. ARGUMENT

Despite representing to this Court during the August 10 discovery conference that it is only interested in the search for the "truth," (Grant Decl. ¶ 21) and claiming in its (withdrawn) Motion to Compel that it wants only to "avoid surprise at trial," (ECF No. 255 at 1), Plaintiff jettisoned any notion of obtaining additional information it claims to need and demands that the Court order evidence be excluded. Instead, Plaintiff seeks primarily to preclude Defendants from introducing at summary judgment or trial *any* evidence or testimony (or, at most, limited evidence and testimony) regarding (1) what they relied on in making the challenged statements in this action; and (2) their loss causation defense. Mot. at 18–25. Put differently, based on their criticisms of Defendants' preparation of their Interrogatory responses and purported deficiencies in their substantive responses to nine Interrogatories (and objections to two Interrogatories), Plaintiff asks this Court to impose extraordinarily broad evidentiary sanctions that would result in precluding, or severely limiting, Defendants' ability to defend their public statements or show that Plaintiff cannot prove loss causation. Defendants understand why Plaintiff does not want those facts before the Court or the jury because they plainly, and Defendants suggest conclusively, contradict Plaintiff's theory of this case. But neither the facts nor the law remotely support the sweeping and draconian sanctions Plaintiff requests here.

### A. Preclusion Of Evidence Under Rule 37(d) Is Inappropriate Absent Extraordinary And Extreme Circumstances Not Present Here

As a preliminary matter, Plaintiff requests sanctions pursuant to Federal Rule of Civil Procedure 37 without specifying which subsection supports its request. *See* Mot. at 17. This Court has not previously issued any order compelling further responses, so subsections (a) and (b) are

inapplicable. *See* Fed. R. Civ. P. 37(a)(5), 37(b) (making sanctions available where there is a prior order compelling discovery). Plaintiff is limited, therefore, to pursuing relief under subsection (d), which allows a party to move for sanctions without first moving to compel if the opposing party "fails to serve its [interrogatory] answers, objections or written response." *See id.* 37(d)(3). As the text of the rule makes clear, Rule 37(d) sanctions are inappropriate absent a total failure to respond. *See Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975); *see also State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc*., 250 F.R.D. 203, 220 (E.D. Pa. 2008) ("The provisions of Rule 37(d) with regard to interrogatories do not apply for anything less than a serious or total failure to respond to interrogatories." (quotations omitted)). Indeed, "[a]lthough an order compelling discovery is not a prerequisite to sanctions under Fed. R. Civ. P. 37(d), courts are unlikely to impose sanctions without such an order, absent egregious behavior." Handbk. Fed. Civ. Disc. & Disclosure § 12:14 (4th ed.); *see also Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2015 WL 13783127, at *4 (W.D. Ky. July 1, 2015), *R. & R. adopted*, 2015 WL 13783450 (W.D. Ky. July 28, 2015) (noting courts refuse to impose sanctions unless "a responding party's evasive, misleading, or incomplete responses to proper interrogatories . . . so impedes discovery efforts as to constitute a failure to answer or respond" (citing *Jackson by Jackson v. Nissan Motor Corp. in USA*, 888 F.2d 1391, 1989 WL 128639, at *5 (6th Cir. Oct. 30, 1989))).

Preclusion of evidence is an "extreme sanction, and courts are obligated to consider less drastic responses before precluding documentary evidence or testimony." *Brevard v. Schunk*, No. 918CV00042BKSML, 2020 WL 374563, at *5 (N.D.N.Y. Jan. 23, 2020) (quotations omitted). Plaintiff's cited authority confirms as much. *Jobe O. v. Pataki*, No. 03 CIV.8331RCCKNF, 2007 WL 844707, at *4 (S.D.N.Y. Mar. 15, 2007) ("The harshest sanctions available [under Rule 37(d)] are preclusion of evidence and dismissal of the action. Those sanctions should be imposed only

in rare situations." (quotations omitted)).  Moreover, when a Rule 37(d) motion is based upon a party not providing a verification to its discovery responses, several courts have held that the appropriate remedy is to order that a verification be provided, not to impose evidentiary sanctions. *See, e.g.*, *Madden v. Calvert*, No. 1:16-CV-00147-GNS, 2017 WL 3841648, at *3 (W.D. Ky. Sept. 1, 2017) (ordering the responding party to cure verification deficiencies where there was "no evidence" that the "responses to discovery . . . so impeded . . . discovery efforts as to constitute a failure to comply . . . within the meaning of Rule 37(d)").[6]

As the weight of this authority makes clear, any discovery sanction limiting the admissibility of evidence at trial, as requested by Plaintiff, would be far too severe here, where Plaintiff abandoned its earlier Motion to Compel and the Court has not issued any orders that Defendants have ignored.  *See, e.g.*, *Porreca v. Mitchell L. Morgan Mgmt., Inc.*, No. CIV JFM 08-1924, 2009 WL 400626, at *7 (D. Md. Feb. 13, 2009) (declining to issue evidentiary sanctions where no motion to compel was filed and no previous orders were issued).  Nor can Defendants' responses be credibly deemed evasive or akin to a failure to respond.  *Boodram*, 2015 WL 13783127, at *4.  Defendants provided substantive responses to twenty-four out of twenty-six Interrogatories.  Defendants declined to answer two Interrogatories, based on their objections (over which the parties have a legitimate dispute, which no Court has ruled on).

Nor has Plaintiff identified any actual prejudice that would support the extraordinary sanctions it seeks.  Plaintiff claims that it is "too little too late" for supplementation, Mot. at 20,

---

[6] *See also S. Camden Citizens in Action, v. N.J. Dep't of Envtl. Prots.*, No. CV 01-0702 (FLW), 2005 WL 8177284, at *5 (D.N.J. May 27, 2005) ("Nevertheless, as the Court does not view SCCIA's failure to certify the responses as an abuse of discovery or a willful attempt to evade discovery, the Court finds that an award of sanctions pursuant to Rule 37(d) would be unjust at this time."); *Kuriakose v. Veterans Affs. Ann Arbor Healthcare Sys.*, No. 14-CV-12972, 2016 WL 4662431, at *4 (E.D. Mich. Sept. 7, 2016) (ordering the responding party to provide a verification to interrogatories).

but the Court's schedule always contemplated the resolution of motions to compel, after fact discovery—more than six months before trial. If the Court found supplemental responses were warranted, receiving them before summary judgment (as was always anticipated by the schedule) cannot, by itself, establish prejudice. *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *4 (E.D. Mich. Feb. 18, 2011), *R. & R. adopted*, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011) (denying motion for Rule 37(d) sanctions where "the most significant prejudice suffered by [Plaintiff] at this stage of the proceedings is some delay in receiving this information"). "This is not a case in which [Plaintiff] ha[s] been unable to investigate [Defendants'] claims right up to the eve of trial" and "there is no suggestion by [Plaintiff] that any evidence sought by the discovery requests is now unavailable due to the delay." *Id.*

None of Plaintiff's cited authority supports its request for broad evidentiary sanctions here. Mot. at 19–20. Rather, all of Plaintiff's cases involve situations where a party persistently failed to respond to a discovery request *at all* and failed to comply with a court order. *See, e.g.*, *In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, No. 2:08-CV-02830, 2017 WL 3537597, at *9–10 (W.D. Tenn. Aug. 17, 2017), *aff'd sub nom. Norris v. MK Holdings, Inc.*, 734 F. App'x 950 (6th Cir. 2018) (granting motion for default judgment based on numerous and persistent discovery violations, including failure to disclose witnesses and exhibits and failure to provide responses to interrogatories where "[d]efendants have documented more than eight months of letters, e-mails, calls and a Motion, to which no response was filed, and a court Order, which has not been fully complied with, all to obtain complete answers"); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368–69 (6th Cir. 1997) (upholding dismissal of complaint based on "stubbornly disobedient and willfully contemptuous" conduct including failure to respond to requests to supplement improper discovery responses, failure to comply with court order requiring

supplementation, and failure to respond to motion to dismiss).[7]  The only case that Plaintiff cites where the court even granted a request to preclude evidence was based on a party's failure to comply with both Rule 26 and Rule 33 obligations and *five court orders*.  *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-CV-0380, 2013 WL 1091688, at *3 (M.D. Tenn. Mar. 14, 2013) (granting motion for preclusion based on party's failure to disclose damages required by Rule 26(a)(1)(A)(iii) years after they were due, and responses to related interrogatories, after five court orders requiring disclosures/responses).

If anything, Plaintiff's cases confirm the impropriety of the relief it seeks.  Unlike in Plaintiff's cited authority, Defendants served timely responses, subject to good faith objections, that were proportional to the reasonable scope of the requests.  Defendants repeatedly met and conferred with Plaintiff, outlining their objections and confirming that no responsive information was withheld.  Grant Decl. ¶¶ 6–11, Exs. C–D; Wood Decl. Exs. 10–11.  No Court has ruled on the sufficiency of those responses and objections, and the process by which they were prepared.  Should the Court determine that any deficiencies exist, the far "less drastic" remedy is further supplementation.  *Brevard*, 2020 WL 374563, at *5.

## B. Defendants Provided Complete Responses To The Reasonable Scope Of Interrogatory Nos. 1–5

### 1. Blockbuster Interrogatories Are Unduly Burdensome And Defendants Provided Fair And Complete Responses

Plaintiff first challenges Defendants' responses to Interrogatory Nos. 1–5, which ask each Defendant to identify "all documents and communications that you relied upon at the time of any

---

[7] *See also Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 17-cv-2668-TLP-tmp, 2020 WL 265297, at *7 (W.D. Tenn. Jan. 17, 2020) (granting request to re-open depositions for repeated failure to produce unredacted bank records in compliance with court order); *Phipps v. Accredo Health Grp., Inc.*, No. 215CV02101STACGC, 2017 WL 685579, at *2 (W.D. Tenn. Feb. 21, 2017) (granting plaintiff's motion to re-open discovery and summary judgment briefing for the second time, after defendant failed to produce documents in compliance with first sanctions motion).

direct or indirect representation by you or [CoreCivic] during the Class Period" for five categories of alleged misrepresentations in CoreCivic's public filings. Wood Decl. Ex. 1 at 1–20. That is, Plaintiff asks for every shred of support for broad, sweeping statements regarding CoreCivic's correctional services and the operations of its facilities (*i.e.*, the crux of its business)—made during the course of the four-and-a-half year Class Period, which began in 2012—eight years ago.

So-called "blockbuster" interrogatories like these—which require the responding party to identify each and every fact related to the central element of the case—are routinely found to be improper. *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404–05 (D. Kan. 1998) (courts generally find "blockbuster" interrogatories to be overly broad and unduly burdensome on their face to the extent they ask for every fact that supports identified allegations or defenses); *see also Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *7 (W.D. Ky. Apr. 7, 2014) (recognizing "'blockbuster interrogatories' that require a responding party to identify each and every fact supporting the allegations of its answer and affirmative defenses . . . . are understandably met with concern by the courts"); *Mancini v. Ins. Corp. of N.Y.*, No. 07cv1750–L(NLS), 2009 WL 1765295, at *3 (S.D. Cal. June 18, 2009) (explaining that, while contention interrogatories are permitted, they "are often overly broad and unduly burdensome when they require a party to state 'every fact' or 'all facts' supporting identified allegations or defenses"); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (blockbuster interrogatories "do not comport with the just, speedy and inexpensive determination of [an] action").

Accordingly, Defendants properly objected to these Interrogatories as overbroad and unduly burdensome.[8] However, Defendants did not then "fail[] to make a reasonable effort to

---

[8] Plaintiff makes no attempt to defend the proportionality of *any* of its Interrogatories—as Magistrate Judge Frensley's rules require it to do in a Motion to Compel. *See* M.D. Tenn. S.O. M.J. Frensley R. III.D.5. ("Any motion to compel or for a protective order must address the proportionality considerations in Fed. R. Civ. P. 26(b)(1)."); *see generally* Fed. R. Civ. P. 26(b)(1).

meaningfully respond." Mot. at 19. To the contrary, Defendants provided responses to the extent of their personal knowledge and Messrs. Hininger and Lappin confirmed at their depositions that no responsive category of information was omitted from those responses. Ex. G, Hininger Tr. at 343:14–347:15; Ex. F, Lappin Tr. at 241:10–13. The problem here is not Defendants' answers, it is Plaintiff's questions. Defendants' entire business is providing corrections services to its government partners. Statements made reflecting beliefs formed regarding the quality and cost-effectiveness of CoreCivic's services (*i.e.*, the very statements challenged here) spanning a four-year time period conceivably could be based on every email received during the course of the Individual Defendants' employment, every meeting regarding quality assurance, client services or operations, every communication with any CoreCivic employee involved in operations or in the provision of client services, every meeting or communication with the BOP (or other government partner), what was said or not said during those meetings, and any other communications regarding the same. *See* Ex. D at 1–2. In theory, any document or communication that did *not* contradict the challenged statements would also be responsive.

Plaintiff's complaint that Defendants did not identify "actual" individuals (rather than committees and groups of individuals), specific emails, phone calls, and conversations (as opposed to types of communications), or "feedback" (instead of identifying categories of documents or other input) with specificity ignores that doing so would require perfect recollection of minute events occurring over eight years ago. Mot. at 19. This type of narrative response encompassing a central element of this case over the period of four and a half years is not required. *Allianz Ins. Co. v. Surface Specialties, Inc*., No. Civ. A. 03–2470–CM–DJW, 2005 WL 44534, at *8 (D. Kan. Jan.7, 2005) ("Interrogatories should not require the answering party to provide a narrative account

of its case."); *see also Hilt*, 170 F.R.D. at 187 ("The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know.").

Defendants responded to Interrogatories No. 1–5 with a fair summary of the bases for their statements, providing an overview of the types of communications and meetings that they relied upon, and identifying responsive categories of responsive documents with a sample Bates number, pursuant to Rule 33(d). *See* Wood Decl. Ex. 1 at 1–20. This response matches (if not exceeds) the specificity captured by Plaintiff's requests, and thus provides an adequate answer to these Interrogatories. *See In re Domestic Airline Travel Antitrust Litig.*, No. MC 15-1404 (CKK), 2019 WL 2191798, at *2 (D.D.C. Apr. 14, 2019), *R. & R. adopted*, No. MC 15-1404 (CKK), 2019 WL 2191153, at *2 (D.D.C. Apr. 23, 2019) (plaintiffs' interrogatory asking defendant to describe certain "processes" was found to be a "general question" that appropriately received, in turn, "a general response"); *In re Papst Licensing, GmbH, Patent Litig.*, No. CIV. A. 99–MD–1298, 2001 WL 797315, at *11 (E.D. La. July 12, 2001) (finding "full identification of all communications of the sort requested in the interrogatory" would be unduly burdensome and would violate Rule 26(b), and requiring only that the answer "describe generally the nature of such communications"); *see also Victaulic Co. of Am. v. United States*, 8 C.I.T. 127, 129–30 (1984) ("If plaintiff desired a factually specific response, it should have submitted a fact-specific question; [plaintiff] cannot now complain that its broad interrogatory 13 did not elicit specific facts.").

### 2. Defendants Properly Relied On Rule 33(d) To Identify Categories Of Responsive Documents

Throughout its Motion, Plaintiff claims that Defendants only identified ten documents in response to Interrogatory Nos. 1–5. Mot. at 5. That is wrong. Defendants identified categories of documents pursuant to Rule 33(d), which permits a party to respond by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify

- 15 -

them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1); *Smith v. TFI Family Servs., Inc.*, No. 17-02235-JWB-GEB, 2019 WL 266234, at *2 (D. Kan. Jan. 18, 2019) ("The purpose of this [Rule 33(d)] is to relieve a party from 'having to engage in burdensome or expensive research into [its] own business records in order to give an answer' where the burden of ascertaining the information would be same on the interrogating party." (quoting Fed. R. Civ. P. 33 Advis. Comm. Note for 1970 Amendment, Subdivision (c))). Defendants specified ten records—examples in each category—in sufficient detail to enable Plaintiff to locate the rest of the documents in each category. For example, Defendants responded that they relied upon facts in "Contractor Performance Assessment Reports" (CPARs) and then provided an "*e.g.*, [BATES NUMBER]" to direct Plaintiff to one CPAR which would enable Plaintiff to locate and identify the rest of the CPARs in the fact discovery record. Wood Decl. Ex. 1 at 1–5. Plaintiff does not have to "guess" which documents those are. Mot. at 22, n.18. It merely has to do the work[9]; indeed, Plaintiff has never disputed that it *could* locate the rest of the documents in each category using the Bates numbered examples. *See* Fed. R. Civ. P. 33(d)(1).[10] It just chose not to.

### 3. Individual Defendants' Deposition Testimony Does Not Support Plaintiff's Request For Sanctions

---

[9] In fact, Plaintiff propounded an Interrogatory asking Defendants to identify all CPARs for the Class Period, which Defendants responded to, in full. Wood Decl. Ex. 9 at 22–21. There can be no question that Plaintiff has that information.

[10] Plaintiff's cited authority in support of its argument that providing exemplars is insufficient is inapposite. Rather, those cases concern Interrogatories seeking the identification of a narrow and defined category of information and the responding parties' complete failure to oblige. *See Johnson Marcraft, Inc. v. W. Sur. Co.*, No. 3:15-cv-01482, 2016 WL 3655299, at *4 (M.D. Tenn. July 8, 2016) (ordering party to answer interrogatory requesting identification of "all demands for indemnity" made by a particular plaintiff); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03–cv–680–SEB–WGH, 2011 WL 4387293, at *4 (S.D. Ind. Sept. 20, 2011) (holding relator was required to "identify all documents and witnesses that he intends to use at trial to support his claims and state with specificity" the part numbers that formed the basis of the claim in order to narrow issues for trial); *see also In re Pabst Licensing GmbH*, 2001 WL 797315, at *10 (granting motion to compel response to particular interrogatory without discussion of any objection).

Plaintiff attempts to manufacture via deposition testimony the egregious circumstances under which the Individual Defendants' good faith, meaningful responses might nonetheless be deemed a complete "failure" to respond, warranting sweeping preclusion of ***any*** evidence and testimony supporting their defenses to Plaintiff's claims. Mot. at 19–21. Not only is this a gross overreach, it is gamesmanship.

*First*, Plaintiff claims that deposition testimony reveals that Messrs. Garfinkle, Hininger and Lappin made "no good-faith effort to respond to these interrogatory requests" and instead let their attorney dictate the extent of their own personal knowledge. Mot. at 19. That is not true (and is an unwarranted attack on these individuals). Those individuals repeatedly discussed the issues in this case over a long period of time, then individuals reviewed draft responses to Interrogatory Nos. 1–5, had the opportunity to make changes, confirmed they were accurate and verified them under oath. *Supra* Section II.C. Plaintiff also points to testimony indicating that counsel provided certain Individual Defendants were with a copy of the Interrogatories and draft responses simultaneously. Mot. at 19. Then, Plaintiff makes the unsupported inference that those individuals might have responded differently had the attorneys not prepared the first draft, and their failure to come up with initial responses was improper. *Id.*[11] This is unfounded speculation.

With respect to Mr. Mullenger, Plaintiff offers no real argument that he did not respond in good faith to the Interrogatories. Plaintiff deposed him before it propounded its First Set of Interrogatories. Grant Decl. ¶ 17. Plaintiff suggests that Mr. Mullenger's testimony is somehow

_____

[11] Plaintiff also claims that Mr. Garfinkle's testimony regarding his attendance at a BOP briefing session was inconsistent with his responses to Interrogatory No. 9, an Interrogatory that is not at issue in this Motion. Mot. at 12. During his deposition, after reviewing further documents, Mr. Garfinkle recalled attending a briefing session and answered questions on that briefing session. Ex. H, Garfinkle Tr. at 231:19–23. Accordingly, in compliance with his obligations under the Federal Rules of Civil Procedure, Mr. Garfinkle amended his response to Interrogatory No. 9 after his deposition. Grant Decl. ¶ 25, Ex. M. There is nothing nefarious about a witness recalling more than they did when they reviewed and verified Interrogatories.

inconsistent with his later Interrogatory responses.  Mot. at 14.  But, Mr. Mullenger was never asked the overly broad question posed by the Interrogatories at his deposition.  (Nor could such a question—seeking everything the individuals relied upon over a four-and-a-half year period— possibly be answered in the level of detail Plaintiff is demanding now.)  Instead, he was asked questions about the process for preparing a Form 10-K, including the disclosure committee process.  *See, e.g.*, Ex. I, Dep. Tr. of Todd J. Mullenger at 46:15–54:22.  Nothing in that testimony is inconsistent with his Interrogatory responses or warrants barring him from introducing evidence on that subject.

In any event, Plaintiff's argument ignores common practice and established authority on the role attorneys play in preparing laypersons' written discovery responses.  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 08-90234, 2012 WL 5839023, at *9 (E.D. Pa. Nov. 16, 2012) ("We acknowledge, of course, that information contained in responses to interrogatories often are prepared by counsel. . . .  We accept that counsel will investigate their clients' claims and will aid in answering discovery."); *Leleux-Thubron v. Iberia Par. Gov't*, No. 6:13-CV-00852, 2015 WL 5519231, at *2 (W.D. La. Sept. 16, 2015) ("[I]t is [the party's] counsel's professional responsibility to assist the [party] in answering the discovery requests fully and in accordance with the law." (quotations omitted)).  As Plaintiff itself must know, the "the common practice is for the attorney to prepare the answers and have the party swear to them."  *Shire Labs., Inc. v. Barr Labs., Inc.*, 236 F.R.D. 225, 228 (S.D.N.Y. 2006) (citing Wright & Miller).[12]  Moreover, none of the

---

[12] Plaintiff's argument that Messrs. Lappin and Hininger did not review every single document cited in the Interrogatories does not change the analysis.  Plaintiff does not offer any authority that parties cannot rely on their attorneys to identify Bates numbered documents within a category that they confirm is responsive.  *See supra* Section B.3. (citing *In re Asbestos*, 2012 WL 5839023, at *9; *Shire Labs., Inc.* 236 F.R.D. at 228; and *Leleux-Thubron*, 2015 WL 5519231, at *2).  Plaintiff also claims (for the first time) that some of the documents cited post-date the Class Period or do not exist.  Mot. at 6, n.7–8 (citing Wood Decl. Exs. 16–17 and CORECIVIC_0050222).  It is unclear what Plaintiff is talking about.  The Bates numbered document CORECIVIC_0050222

individuals testified that the responses to Interrogatory Nos. 1–5 did *not* reflect their personal knowledge. Absent such evidence, Rule 37(d) sanctions are utterly inappropriate. *See Boodram*, 2015 WL 13783127, at *5 (refusing to impose Rule 37(d) sanctions absent evidence of a clear misrepresentation in discovery responses). There is nothing problematic about that where, as here, those individuals obviously communicated with their counsel throughout this case regarding the basis for those statements—which are at the center of Plaintiff's claim—prior to Plaintiff serving the Interrogatories. Moreover, Plaintiff's claim that "Defendants refused or were instructed not to answer related questions at their depositions" is misleading. Mot. at 20, n.16. Defense counsel properly objected to questions calling for communications regarding the preparation of discovery responses on privilege grounds, instructed the Individual Defendants not to answer, and they followed that instruction. *See supra* Section II.C.[13]

*Second*, Plaintiff claims that Messrs. Hininger and Lappin confirmed "there are no further responses that could be given" in an effort to suggest that sanctions, and not supplementation is the correct remedy. Mot. at 19. But that distorts what those individuals actually said. In response to confusing, repetitive, and harassing questioning, Messrs. Hininger and Lappin confirmed in their depositions that, from their perspective, no responsive information was withheld. *See* Ex. G,

_____

does in fact exist. It is a contract facility monitoring report (as identified in the response), accompanied by a cover letter that begins at CORECIVIC_0050222. The post-Class Period documents Plaintiff complains about are simply examples of the categories of documents referred to in the response—contract amendments and ACA Accreditation Reports. Plaintiff offers no legitimate argument that it could not find other Class Period documents in these categories. *See* Wood Decl. Exs. 16–17.

[13] The authority Plaintiff relies on is easily distinguishable, as that case involved clearly erroneous objections and a consistent unwillingness to answer virtually any deposition question. *See Taylor v. Memphis Area Legal Servs., Inc.*, No. 12-2467-T-TMP, 2013 WL 2468031, at *3–4 (W.D. Tenn. June 7, 2013). Where, as here, a party seeks sanctions based on inconsistent deposition testimony, courts in the Sixth Circuit have refused to impose Rule 37 sanctions. *See, e.g.*, *Desai v. Charter Commc'ns*, No. 3:14-CV-459-DJH, 2016 WL 11658795, at *1–2 (W.D. Ky. July 12, 2016) (denying Rule 37 sanctions where deposition testimony purportedly revealed inconsistencies in earlier interrogatory responses).

Hininger Tr. at 345:23–347:15; Ex. F, Lappin Tr. at 286:3–11. That is, those individuals simply confirmed what their counsel had been telling Plaintiff all along. Ex. D at 2 ("[E]ach Defendant made a reasonable effort to describe, under oath, the categories of documents. . . .").

### 4. There Is No Basis To Preclude CoreCivic From Relying On Documents Or Communications Beyond What Is Identified In Its Responses To Interrogatory Nos. 1–5

With respect to CoreCivic, Plaintiff asks that it should be precluded from "introducing any evidence of [sic] testimony regarding what Defendants relied on in making the statements and omissions at issue in this action, aside from the documents that are specifically referenced by Bates numbers in its responses to Interrogatory Nos. 1–5. Mot at 22. In other words, based on the same issues discussed above, Plaintiff believes that CoreCivic should be limited at trial to introducing the ten example documents that Defendants identified for Plaintiff, in good faith, pursuant to Rule 33(d). That is absurd. Even if the Court were to overrule CoreCivic's objections or find that its responses did not comply with Rule 33(d)—which it should not—the proper remedy is to compel a further response. *See* Handbk. Fed. Civ. Disc. & Disclosure § 12:14 (4th ed.).

### C. There Is No Basis to Compel Supplemental Responses To Interrogatory Nos. 6 & 8 Because They Seek Irrelevant Information

Plaintiff next asks this Court to compel Defendants to respond to Interrogatory Nos. 6 & 8 (in Plaintiff's First Set of Interrogatories). Mot. at 22. Interrogatory Nos. 6 and 8 seek the reasons for the *BOP's* non-renewal of two contracts with CoreCivic (Adams County Correctional Facility and Eden Detention Center), which occurred in February 2019 and October 2017, respectively— years after the Yates Memo and the end of the Class Period. Wood Decl. Ex. 1 at 21–23. Plaintiff mischaracterizes Defendants' objection as being solely on the ground that they "concern two facts beyond the Class Period," but Defendants' objection is much more than that. Mot. at 23. Defendants objected to these Interrogatories because they call for speculation by seeking the basis

for the BOP's decisions, and because this particular information (the BOP's decision not to renew these two contracts in 2017 and 2019) is utterly irrelevant to either party's claims or defenses with respect to loss causation. Wood Decl. Ex. 1 at 21–23.

Plaintiff claims that the Yates Memo revealed new information that corrected Defendants' alleged misstatements regarding the quality and cost-effectiveness of CoreCivic's services to its government partners, and that CoreCivic's stock price declined as a result. Compl. ¶¶ 192–99. Defendants dispute this allegation, and contend that the Yates Memo did not correct anything and was not a materialization of any concealed risk, but rather, reflected a political decision to move away from privatization of prison services, which in turn impacted CoreCivic's valuation and led to the stock price decline. In an attempt to justify Interrogatory No. 6 & 8, Plaintiff asserts that the fact "[CoreCivic] continued to lose contracts after the Yates Memorandum was rescinded is highly relevant to counter Defendants' contention that the Yates Memorandum was a political shift in the first instance." Mot. at 15. But, this tortured effort to manufacture relevance does not withstand scrutiny. What is relevant to loss causation is what information was released to the market in the Yates Memo, how the market perceived that information at the time, and how their valuation of CoreCivic may have changed accordingly. *See Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384–85 (6th Cir. 2016) (explaining that loss causation turns on "negative investor inferences drawn from a particular event or disclosure" causing investor losses). Whether or not the Yates Memo was, in fact, politically motivated *doesn't matter in and of itself* if investors perceived it to be so. Whether or not CoreCivic continued to contract with the BOP years after the Yates Memo (or the rescission thereof) is beside the point.[14]

---

[14] Contrary to Plaintiff's claim, Defendants have not put these facts at issue by identifying post-Class Period events in its own responses. Mot. at 23. The facts Defendants identified—the rescission of the Yates Memo immediately, after a change in administration—are directly relevant to a determination of whether the Yates Memo was issued for political reasons. That does not,

Even if the actual (as opposed to perceived) motivation for issuing the Yates Memo is minimally relevant, the most obvious proof of motivation is the facts that were known at the time the decision was made, in August 2016. Plaintiff does not (and cannot) offer any facts connecting the later non-renewal of contracts to what was known at the time the Yates Memo was issued. Decisions made by the BOP—a different government entity—years later, operating under a different administration and after myriad intervening events, have no bearing on the motivations behind the Yates Memo or the reason for CoreCivic's stock price decline in August 2016. Simply put, these post-Class Period events are too attenuated to have any bearing on the motivation for, or more importantly investors' reaction to, the Yates Memo. So, there is nothing to compel. *Builders Flooring Connection, LLC v. Brown Chambless Architects*, No. 2:11CV373-MHT, 2014 WL 1765102, at *2 (M.D. Ala. May 1, 2014) (denying motion to compel further answers to interrogatories "because the information sought is outside the relevant market and too attenuated to be relevant to a claim in this action"); *Ibanez v. Miller*, No. CIV S-06-2668 JAM EFB P, 2009 WL 3481679, *2–3 (E.D. Cal. 2009) (denying discovery request because, even if the document sought was relevant, its relevance is attenuated and plaintiff could present his claim without the document); *Webb v. Krudys*, No. 15-5247 (WHW)(CLW), 2016 WL 4149983, at *2 (D.N.J. Aug. 3, 2016) (affirming magistrate judge's finding that interrogatories were irrelevant, and reasoning that "the information Defendant [sought] is 'of such marginal relevance that the potential harm occasioned by discovery . . . outweigh[s] the ordinary presumption in favor of broad disclosure" (quoting *Gutierrez v. Johnson & Johnson, Inc.*, No. 1-cv-5302, 2002 WL 34717245 at *3 (D.N.J. Aug. 13, 2002)).[15]

---

however, render all post-Class Period events relevant, much less facts related to decisions made by the BOP after months or years of intervening events.

[15] The authority cited by Plaintiff does not compel a different conclusion. Mot. at 23. *Burges v. BancorpSouth, Inc.* stands for the unremarkable (and undisputed) proposition that discovery is not

### D. Defendants' Responses to Interrogatory Nos. 19–22 Are Complete

Plaintiff claims that the Individual Defendants "have failed to respond to" Interrogatory Nos. 19–22 because they did not verify them, and with respect to CoreCivic, that its responses were "incomplete." Mot. at 23–24. This again is grossly overreaching.

CoreCivic (via a representative) provided a sworn verification to Defendants' collective responses to the Second Set of Interrogatories, at the time the responses were served. Mot. at 23–24.[16] Defendants took this approach because, unlike Plaintiff's First Set of Interrogatories (which were directed to "[CoreCivic] and the Individual Defendants"), Plaintiff's Second Set of Interrogatories was directed to "All Defendants," so Defendants responded collectively and submitted one verification. *See Wood Decl. Ex. 2 at 2; id.* Ex. 8 at 2. Designating one person to verify identical interrogatories is not improper. *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 164 (N.D. Ohio 1964) (superseded by Rule on other grounds as stated in *Schipper v. BNSF Railway Co.*, 07–02249, 2008 WL 2358748, at *1 (D. Kan. June 6, 2008)); *see also* 8B Fed. Prac. & Proc. Civ. § 2172 (3d ed.) ("If identical interrogatories are submitted to several parties, they may designate one of their number to answer for all of them, provided that they agree on the record that all are bound by the answers." (citing *Meese*, 35 F.R.D. at 162)). Plaintiff's own cited authority (again) confirms as much. *Jobe O.*, 2007 WL 844707, at *3 ( "where identical interrogatories have been served on multiple parties, they may designate one of their number to answer on behalf of all

---

necessarily limited to the Class Period. No. 3:14–cv–1564, 2017 WL 4640462, at *3 (M.D. Tenn. Oct. 12, 2017). But, the fact that some post-Class Period events are relevant does not mean all post-Class Period events are relevant. This case simply has no bearing here where Plaintiff seeks discovery regarding events years after the alleged corrective disclosures without offering a coherent explanation of how those facts are connected to the loss causation element of its case.

[16] Plaintiff further resorts to suggesting that sanctions are appropriate because although the Individual Defendants testified that they reviewed their responses, their review was not meaningful. Mot. at 24. That accusation is purely speculative and if based only on the fact that they did not review every document cited in the response, is insufficient to justify Rule 37(d) relief. *See supra* at 19, n.10.

of them."). However, when this dispute first arose, Defendants acknowledged their willingness to procure verifications from the individuals, and have since done so. Grant Decl. ¶ 22, Ex. N.

Plaintiff claims that it was prejudiced by the fact that the Individual Defendants did not verify these responses (and then claimed in meet and confers that verification now would not cure this prejudice, *id.*. ¶ 22) because it was "entitled to know many months ago" the sources "constituting the universe of potential documents and communications" supporting Defendants' loss causation contentions.[17] Mot. at 24. That makes no sense and is belied by the record. Plaintiff received Defendants' collective responses on June 24, 2020, which spanned 10 pages and included all of the information set forth above. Wood Decl. Ex. 9. These responses provided Plaintiff the information it needed to prepare for expert disclosures, summary judgment, and trial. Plaintiff's claim of prejudice is undermined by the fact that its loss causation expert apparently did not even review the ten pages of responses that Defendants provided. ECF No. 283-7 at App. B. And again, Plaintiff's own responses contradict any assertion of prejudice: Plaintiff has refused to provide any response at all to Defendants' contention interrogatories regarding its loss causation theory— even after conceding that a response was required. ECF No. 262 at 21.

With respect to CoreCivic, Plaintiff's accusation that its responses were incomplete is meritless. Interrogatory Nos. 19–22 sought, among other things, an articulation of Defendants' contention that the Yates Memo represented a political shift (as discussed above) and "all facts, documents, testimony and communications" that support that contention. Wood. Decl. Ex. 1 at

---

[17] Plaintiff relies on this language in an attempt to equate its claim to *Evans v. Port Auth. of N.Y. and N.J.*, 201 F.R.D. 95, 98–99 (S.D.N.Y 2001). That case is distinguishable. There, plaintiff failed to proffer an answer until six months after answers were due and three months after the date the Court ordered them to response. Even then, the response provided was "transparently evasive" and "patent obstructionism." *Id.* (granting motion for sanctions to preclude late-disclosed witnesses). Here, Defendants have provided a fulsome response identifying the facts they intend to rely on at trial.

23–32.  Defendants objected to the request for "all facts and documents" as unduly burdensome and duplicative, but nonetheless, provided substantive responses to these four Interrogatories spanning ten pages, including lengthy narrative explanations of their theory, plus identification of categories of documents they would rely upon pursuant to Rule 33(d) and responsive deposition testimony and witnesses on whom they may rely upon at trial.  *Id.*  These responses are robust, and Plaintiff cannot meaningfully challenge the completeness of them.  *See generally id.* Ex. 11.

At bottom, Plaintiff's request for broad sanctions untethered to any prejudice demonstrates its true purpose—to win this case not on the merits, but by preventing Defendants from presenting evidence showing that Plaintiff's loss causation theory cannot succeed.  That is underscored by the overbreadth (and, impracticality) of the relief it requests.  Specifically, based on the lack of individual verifications served at the time of the responses, Plaintiff now asks that the Court preclude the Individual Defendants from introducing *any* evidence whatsoever on the topics responsive to Interrogatory Nos. 19–22, and preclude CoreCivic from relying on any evidence not specifically set forth in Defendants' responses.  Mot. at 24–25.  That extreme sanction has no relationship to any purported harm to Plaintiff based on the Individual Defendants providing a verification after being put on notice that Plaintiff believed a collective verification was insufficient (individual verifications which simply confirmed the accuracy of the responses that Plaintiff had ample opportunity to depose those individuals on).

IV.    **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion.


DATED:  August 21, 2020            Respectfully submitted:

                                    /s/ Steven A. Riley

Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Meryn C. N. Grant (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Ave., Suite 100
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
meryn.grant@lw.com

Morgan E. Whitworth (admitted pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: (202) 637-2335
F: (415) 637-2201
sarah.tomkowiak@lw.com
*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars
Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL &
ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

this 21st day of August, 2020.

                                                        /s/ Steven A. Riley
                                                       Steven A. Riley