# EXHIBIT C

**Robbins Geller**
**Rudman & Dowd LLP**

Boca Raton    Melville    San Diego
Chicago    Nashville    San Francisco
Manhattan    Philadelphia    Washington, D.C.

Willow E. Radcliffe
WillowR@rgrdlaw.com

June 12, 2020

VIA EMAIL

Sarah A. Tomkowiak  
Latham & Watkins LLP  
555 Eleventh Street, NW, Suite 1000  
Washington, D.C. 20004-1304  

Milton S. "Trey" McGee III  
Riley Warnock & Jacobson, PLC  
1906 West End Avenue  
Nashville, TN 37203-2309

Re: *Grae v. Corrections Corp. of America, et al.*,  
No. 3:16-cv-02267 (M.D. Tenn.)

Dear Counsel:

We write regarding Defendants' interrogatory responses. As we discussed during our call on May 18, 2020, Defendants are required to provide a full and complete response to Plaintiffs' First Set of Interrogatories but have failed to do so with respect to nearly all of their interrogatory responses. You indicated that you would advise us if Defendants were going to supplement the vast majority of responses but we have not yet heard from you regarding Defendants' position.

The law is clear Federal Rule of Civil Procedure 33(b)(3) requires "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." As Courts have explained:

> Interrogatories ***must be answered fully***, and an evasive or incomplete answer is the equivalent of a failure to answer. Fed. R. Civ. P. 33(b)(3), 37(a)(4). Further, while "[l]ack of knowledge or the ability to recollect is, if true, a fair answer," *Weaver v. Mateer & Herbet*, [sic] P.A., 277 F.R.D. 655, 658 (M.D. Fla. 2011), "[a] party answering interrogatories has an affirmative duty to furnish any and all information *available* to that party" *Roden v. Floyd*, No. 2:16-cv-11208, 2019 WL 1098918, at *3 (E.D. Mich. March 8, 2019) (quoting 7 James W.M. Moore et al., Moore's Federal Practice ¶33.102[1]. [3] (3d ed. 2017)) [sic]. *See also Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (quoting *Haney v. Saldana*, No. 1:04-cv-05935, 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010)) ("In general, a responding party is not required 'to conduct extensive research in order to answer an interrogatory, but a reasonable effort must be made.'") [sic].

Cases\4847-5693-7151.v1-6/12/20  
One Montgomery Street   Suite 1800   San Francisco, CA 94104   Tel 415-288-4545   Fax 415-288-4534   rgrdlaw.com

Case 3:16-cv-02267    Document 286-3    Filed 08/21/20    Page 2 of 7 PageID #: 9393

*Mohnsam v. Nemes*, No. 3:17-CV-427-CRS-CHL, 2019 WL 3307233, at *4 (W.D. Ky. July 23, 2019) (emphasis added); *see also Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 106-07 (W.D.N.C. 1993) (ordering party to respond to interrogatory fully and completely; finding response to interrogatory was insufficient where interrogatory called for identification of "all" contracts or subcontracts, and party responded by stating that it entered into "several" oral contracts, and provided examples of only two).

Further, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) ***specifying the records that must be reviewed, in sufficient detail*** to enable the interrogating party to locate and identify them as readily as the responding party could" (emphasis added) Fed. R. Civ. P. 33(d)(1); *see also Johnson Marcraft, Inc v. W. Sur. Co.*, No. 3:15-cv-01482, 2016 WL 3655299, at *4 (M.D. Tenn. July 8, 2016) (advising that sanctions may be entertained if documents are not identified with specificity by bates number in responding to an interrogatory response); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-cv-680-SEB-WGH, 2011 WL 4387293, at *4 (S.D. Ind. Sept. 20, 2011) (responses must be "reasonably specific – at least by Bates stamp number").

Rather than complying with Fed. R. Civ. P. 33, Defendants' responses are deficient. In particular, all of Defendants' responses to Interrogatory Nos. 1-5 are incomplete and deficient. *See* Attachment A setting forth deficiencies. For example, Defendants Garfinkle and Mullenger respond to requests regarding documents and communication they relied on at the time of misrepresentations at issue in this action, by vaguely referring to a list of "among other things" that include unspecified communications with unidentified individuals, unspecified "policies and procedures," unspecified disclosure committee meetings and "feedback from [unspecified CoreCivic employees]." *See* Attachment A; *see also* Garfinkle and Mullenger Interrogatory Response Nos. 1-5. Likewise, Defendant Lappin refers vaguely to "among other things" unspecified communications with unidentified BOP employees, unspecified oversight of CCA's operations of corrections services and unspecified "feedback" from unidentified "various accreditation agencies" and unidentified CCA employees. *See* Attachment A; *see also* Lappin Interrogatory Response Nos. 1-5. Similarly, Defendants Hininger and CCA provide vague and incomplete responses referring to a single example of categories of documents they relied on as well as their reliance on unspecified "a number of individuals who have decades of experience in the public and private corrections industry." *See* Attachment A; *see also* Hininger and CCA Interrogatory Response Nos. 1-5. Defendants need to provide full responses to these interrogatories and provide specific responses sufficiently identifying what documents they relied on (*e.g.*, policies and procedures by bates number), the content of the communications they relied on and the identity of the individuals involved.

Robbins Geller
Rudman & Dowd LLP

Counsel
June 12, 2020
Page 3

      Further, Defendants Garfinkle's and Mullenger's responses that they did not directly deal with the BOP regarding Cibola and Northeast Ohio (Interrogatory Nos. 7-9) and did not deal directly with the BOP with requests to bids or RFPs (Interrogatory Nos. 10-11) are evasive and incomplete. We are entitled to an informed and reasonable response as to information available to them regarding the reduction or loss of contracts/bids. There is no indication that these Defendants undertook any effort to ascertain information available to them regarding, for example, the reasons for the loss that were conveyed by the BOP in a debriefing or otherwise. In addition, CCA's and Defendants Lappin's and Hininger's responses referring to quotes from a single document are not sufficient to fully and completely respond to the interrogatories as required by Fed. R. Civ. P. 33. *See* CCA, Hininger and Lappin Interrogatory Response Nos. 7-9; CCA and Hininger Interrogatory Response No. 11. Plaintiff is entitled to a response that includes their full knowledge (or information they can reasonably ascertain) of the reasons for the loss or reduction in contracts, including all of the reasons that were conveyed by the BOP.

      Moreover, with respect to the interrogatory regarding discipline, Defendant Hininger and CCA refer to unspecified policies and procedures, or internal controls requiring discipline or "in some instances termination" without identifying any specific discipline. *See* Hininger and CCA Interrogatory Response No. 12. These Defendants also refer to the Company not maintaining a historical list of discipline. *See id*. The responses are incomplete and evasive. To the extent Defendants are aware of (or can reasonably ascertain) any specific discipline received by anyone at CCA for not providing services in accordance with the terms of CCA contract, for example, a sufficient deficiency or a repeat deficiency with respect to a contract term, Plaintiff is entitled to that information.

      As to the interrogatory regarding CCA's trading window for its executive officers (Interrogatory No. 13), as we discussed, the response was answered in the negative (*i.e.* when the window was open). Please provide a revised response providing when the trading window was closed, which is presumably the dates in which CCA's trading window was not open.

      Finally, you indicated during our call that you would advise us if Defendants are standing on their objections to interrogatories requesting information regarding the loss of Adams and Eden (Interrogatory Response Nos. 6 and 8). Defendants have also refused to produce documents pursuant to Plaintiff's Third Set of Requests for Production. As we explained during the call, the loss of these contracts after the political change in November 2016 is highly relevant to Defendants' continued reliance on a "political shift" as the reason for the Yates Memorandum. Please advise us of Defendants' position.

      Please advise us by the end of next week of your position, and if you agree to supplement Defendants' interrogatory responses then you can do so no later than June 19, 2020.

                                      Very truly yours,

                                      WILLOW E. RADCLIFFE

WER:cs
Enclosure

cc:     Brian T. Glennon
        Eric C. Pettis
        Steve Riley
        David Schindler
        Morgan Whitworth
        John Eastly
        Meryn Grant
        Dennis J. Herman
        Christopher M. Wood
        Jason A. Forge
        Christopher H. Lyons
        Kenneth J. Black

# ATTACHMENT A
## (Deficiencies)

| Defendant | Response to Rog Nos. | Express Limitation(s) | Unspecified Reference(s) to Individual(s)/Unidentified Information |
|---|---|---|---|
| Garfinkle | 1-5 | "among other things" | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him" |
| Mullenger | 1-5 | "among other things" | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him" |
| Lappin | 1-5 | "among other things" | "regular communications with the BOP"; "feedback…from various accreditation agencies"; and "feedback…from…CoreCivic employees who directly or indirectly reported to him" |
| Hininger | 1-5 | "among other things"<br><br>"a variety of indicators"<br><br>"*e.g.*" with respect to categories of documents referencing a single Bates Number | "communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors"; "participation in disclosure committee meetings"; and "feedback from CoreCivic employees who directly or indirectly reported to him"; "communications with the BOP" |

Cases\4848-5603-3471.v1-6/12/20

| | | | | "a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP)"; and "communications with government partners" |
|---|---|---|---|---|
| CCA | 1-5 | "among other things"<br><br>"a variety of indicators"<br><br>"*e.g.*" with respect to categories of documents referencing a single Bates Number | | "communications with the BOP"; "a number of individuals who have decades of experience in the public and private corrections industry (including, but not limited to, employment experience with the BOP)"; and "communications with government partners" |