# EXHIBIT F

Videotaped Deposition of

# Harley G. Lappin

July 28, 2020

Grae

vs.

Corrections Corporation of America, et al.

**Confidential**



1          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE

2

3

4    NIKKI BOLLINGER GRAE, Individually
     and Behalf of All Others Similarly

5    Situated,

6                          Plaintiff,

     vs.                                   CASE NO.

7                                          3:16-CV-02267

     CORRECTIONS CORPORATION OF

8    AMERICA, et al.,

9                          Defendants.

10

11

12

13                    CONFIDENTIAL

14       VIDEO DEPOSITION OF HARLEY G. LAPPIN

15     Reported Remotely through Videoconference

16                  July 28, 2020

17

18

19

20   Reported by:

21   Elisabeth A. Miller Lorenz

22   RMR, CRR, LCR No. 66

23

24   Job No.:  10071101

25

www.aptusCR.com

Harley G. Lappin

Confidential

Grae vs.
Corrections Corporation of America, et al.

1              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF TENNESSEE
2

3

4  NIKKI BOLLINGER GRAE, Individually
   and Behalf of All Others Similarly
5  Situated,

6                          Plaintiff,
   vs.                                  CASE NO.
7                                       3:16-CV-02267
   CORRECTIONS CORPORATION OF
8  AMERICA, et al.,

9                          Defendants.

10

11

12

13

14

15

16

17         Video deposition of HARLEY G. LAPPIN was

18  taken on behalf of Plaintiff, Reported Remotely

19  through Videoconference, beginning at

20  11:08 A.M. EST, and ending at 10:28 p.m. EST, on

21  Tuesday, July 28, 2020, before Elisabeth A. Miller

22  Lorenz, RMR, CRR, and LCR No. 66.

23

24

25

www.aptusCR.com

Harley G. Lappin

Confidential
Grae vs.
Corrections Corporation of America, et al.

1    that into the chat box?

2             MR. FORGE:  I am.

3             MR. GLENNON:  Thank you.

4             MR. FORGE:  So this is going to be --

5    this is now going to be Exhibit 480.

6             (Marked Exhibit No. 480.)

7    BY MR. FORGE:

8    **Q**      **This is -- do you have what's now been**

9    **marked as Exhibit 480 in front of you?  It should be**

10    **a document with the caption of Defendants'**

11    **Objections and Responses to Plaintiff's Second Set**

12    **of Interrogatories?**

13    A      Yes.

14    **Q**      **Does this document look familiar to you?**

15    A      Yes.

16    **Q**      **When -- when was the first time you saw this**

17    **document?**

18    A      I don't recall the first time I saw the

19    document.  It wasn't in the same format, but I

20    remember reviewing the responses.

21    **Q**      **When you say it wasn't in this format, what**

22    **format was it in?**

23    A      I -- as I recall, I just got the -- the

24    verbiage.  There was no front -- as I recall, there

25    was nothing at the front.  But I -- I basically had

www.aptusCR.com

Harley G. Lappin

Confidential                    Grae vs.
                  Corrections Corporation of America, et al.

1  the objections and the verbiage that you have beyond

2  Page 1.

3  Q        So you didn't have that -- you didn't have

4  that caption on the front, but the rest of it looks

5  familiar?

6  A        Yes.

7                  MR. GLENNON:  I'm just going to object

8  and instruct the witness not to answer anything

9  that's going to reveal privileged information.

10  BY MR. FORGE:

11  Q        Just that -- just so the record is clear,

12  the first page, the caption wasn't on the document

13  you received, but everything after that page looks

14  familiar?

15  A        I -- yes, I -- I believe it is -- it does.

16  Q        Approximately -- I know you can't remember

17  exactly when, but approximately when did you see

18  this document?

19  A        Don't recall.

20  Q        Was it more than a month ago?

21  A        Could have been.

22  Q        More than two months ago?

23  A        I don't recall.

24  Q        Was it -- but it could have been?

25  A        I don't recall.

Case 3:16-cv-02267    Document 286-6    Filed 08/21/20    Page 6 of 32 PageID #: 9413

www.aptusCR.com

1  Q        Do you recall whether it was this year?

2  A        Yes, it was this year.

3  Q        How did you receive the document?

4  Electronically, physically?

5  A        As I recall, I received it electronically.

6  Q        How did you review it?  Did you print it and

7  review it?  Did you review it on a screen?

8  A        I don't recall.

9  Q        Did you make any changes to it?

10          MR. GLENNON:  I'm -- I'm going to

11  object on the grounds of attorney-client privilege

12  and work product, and I'm going to instruct the

13  witness not to answer.

14          MR. FORGE:  If he made any changes to

15  it -- to a document --

16          MR. GLENNON:  Same -- same -- same

17  objection.  Same objection.  I'm going to stand on

18  this one, Jason.

19          MR. FORGE:  I'm just asking for a yes

20  or no.  I'm not asking what they were yet.

21          MR. GLENNON:  It -- I'm going to stand

22  on my objection and instruct the witness not to

23  answer.

24  BY MR. FORGE:

25  Q        Mr. Lappin, did you have any input into the

Case 3:16-cv-02267    Document 286-6    Filed 08/21/20    Page 7 of 32 PageID #: 9414
www.aptusCR.com

1  content of this document?

2          MR. GLENNON:  He verified it, Jason.

3          MR. FORGE:  Brian, if you could,

4  please, you know that's inappropriate.

5          MR. GLENNON:  I hear you.  I hear you.

6  I'm just trying to streamline this because --

7          MR. FORGE:  And it's factually

8  inaccurate, so not only --

9          MR. GLENNON:  It's not.  It's not.  We

10  can fall all over each other on the record, but --

11  BY MR. FORGE:

12  Q      Mr. -- Mr. Lappin.

13  A      As I recall, the document was provided to me

14  to review and provide input.

15  Q      That's not what I asked you.

16         I asked you, did you provide any input as to

17  this document?

18          MR. GLENNON:  Object to form.

19          THE WITNESS:  As I recall, I received

20  the document, reviewed it, and don't recall what, if

21  any, changes I made, to be honest with you.

22  BY MR. FORGE:

23  Q      So as you sit here today, you cannot

24  identify a single change that you had for this

25  document; is that correct?

www.aptusCR.com

1          MR. GLENNON:  Object to form.

2          THE WITNESS:  As I said, I remember

3    reviewing it.  I don't recall making any changes or

4    edits.

5    BY MR. FORGE:

6    Q      Did you do anything to verify the accuracy

7    of any of the information set forth in here?

8          MR. GLENNON:  Objection, foundation.

9          THE WITNESS:  I relied on my -- the

10   legal counsel and -- and the staff at the Bureau who

11   compile -- at -- at CoreCivic who compiled it for

12   the accuracy of a memo.

13   BY MR. FORGE:

14   Q      So you did not personally do anything to

15   verify the accuracy of the memo; is that correct?

16   A      No.

17   Q      That's correct, right?

18   A      Yes.

19         MR. GLENNON:  Objection, foundation.

20   BY MR. FORGE:

21   Q      So, for example, if you turn to Page 14, do

22   you see there are two columns of numbers or Bates

23   numbers?

24   A      Yes.

25   Q      Did you look at any one of those documents

www.aptusCR.com

1   to confirm its responsiveness to the question posed

2   here?

3   A        No.

4   Q        As you sit here today, do you have any

5   personal knowledge as to the accuracy -- or I should

6   say, as to the responsiveness of any of the

7   documents listed here to the question posed?

8                    MR. GLENNON:  Objection, foundation.

9                    THE WITNESS:  I assume these were

10  supporting documents that were utilized to craft the

11  response.

12  BY MR. FORGE:

13  Q        And that's what I'm getting at.

14           That is simply an assumption, correct?

15  A        Correct.

16                   MR. GLENNON:  Objection, foundation.

17  BY MR. FORGE:

18  Q        You cannot -- as you sit here today, you

19  cannot swear under penalty of perjury that these --

20  that any of these documents are, in fact, responsive

21  to the question, correct?

22                   MR. GLENNON:  Objection, foundation,

23  calls for expert conclusion.

24                   THE WITNESS:  No.

25

Harley G. Lappin

Confidential                          Grae vs.
                    Corrections Corporation of America, et al.

1  BY MR. FORGE:

2  Q       No, you cannot swear under penalty of

3  perjury that these are responsive?

4               MR. GLENNON:  Same objection.

5               THE WITNESS:  I cannot swear that every

6  document here, to their accuracy, to the -- to the

7  framework of the document.

8  BY MR. FORGE:

9  Q       Can you swear as to any document here as to

10 the accuracy of the framework for the

11 interrogatories posed here?

12              MR. GLENNON:  Objection, foundation,

13 harassing the witness.

14              THE WITNESS:  Again, given the fact I

15 did not pull up and review every one of these

16 documents, I cannot verify that.

17 BY MR. FORGE:

18 Q       We're kind of talking past each other,

19 Mr. Lappin.

20         You're saying you didn't pull up and review

21 every document; I'm asking you if you pulled up and

22 reviewed a single document.

23 A       I don't re- --

24              MR. GLENNON:  Same objections.

25              THE WITNESS:  I do not recall that I

www.aptusCR.com

1 did.

2 BY MR. FORGE:

3 **Q  As you sit here today, can you swear under**

4 **penalty of perjury that any one of these documents**

5 **is, in fact, responsive to these interrogatories?**

6      MR. GLENNON: Same objections.

7      THE WITNESS: Now you have me confused.

8 BY MR. FORGE:

9 **Q  So as you can see here, at Page 13,**

10 **Interrogatory No. 23 says, Identify all notices of**

11 **concern concerning any of the BOP prisons.**

12    **Do you see that?**

13 A  I do.

14 **Q  Then there's a paragraph of objections.**

15    **And after that paragraph of objections, it**

16 **says, Subject to the foregoing objections,**

17 **defendants identify the following documents**

18 **reflecting notices of concern and responses.**

19    **Do you see that?**

20 A  Yes.

21 **Q  And what I'm asking you is, can you swear**

22 **under penalty of perjury that any of these documents**

23 **is, in fact, a notice of concern?**

24      MR. GLENNON: Same objections.

25      THE WITNESS: I made the assumption

www.aptusCR.com

1  that these were all the notices applicable to each

2  of these facilities about efficiencies, CFM result,

3  so on and so forth.

4          But, no, I did not open the documents.

5  BY MR. FORGE:

6  Q      Were the documents provided to you?

7  A      The list of them.  What I -- what I see here

8  is what I had.

9  Q      So you just received a list of numbers?

10 A      That's correct.

11 Q      And you did not receive a big stack of

12 documents?

13         MR. GLENNON:  Objection, vague, calls

14 for speculation.

15         THE WITNESS:  That is correct.  I

16 received a document that's reflective of what I'm

17 reading right here, the interrogatories followed by

18 a list -- these lists.

19 BY MR. FORGE:

20 Q      And if you'll look at the -- at the top

21 of -- if you'll look at the top of Page 13, there

22 are other -- there are bullet point citations.  The

23 first one says, Analyst reports regarding CoreCivic

24 stock.

25         Do you see that?

www.aptusCR.com

 1   A       Yes.

 2   Q       Were any of these cited documents, did you

 3   confirm whether or not they are responsive to the

 4   interrogatory that are listed below?

 5               MR. GLENNON:  I'm going to object to

 6   the form of the question and also instruct the

 7   witness not to reveal any attorney-client privileged

 8   communications.

 9               THE WITNESS:  So the question again?

10   BY MR. FORGE:

11   Q       The question again is, for these documents

12   described in the bullet points at the top of

13   Page 13, did you review any of those documents --

14               MR. GLENNON:  Same objection.

15   BY MR. FORGE:

16   Q       -- in conjunction with your review of

17   Exhibit 480?

18               MR. GLENNON:  Same objection.

19               THE WITNESS:  I do not recall reviewing

20   any of these documents.

21   BY MR. FORGE:

22   Q       So as to these documents at the top of

23   Page 13, can you swear under penalty of perjury that

24   these documents are responsive to any of the

25   interrogatories posed in Exhibit 480?

Case 3:16-cv-02267    Document 286-6    Filed 08/21/20    Page 14 of 32 PageID #: 9421

www.aptusCR.com

 1              MR. GLENNON:  Objection, foundation.

 2              THE WITNESS:  Again, based on my trust

 3    in the staff that compiled this, I assume that they

 4    supported the interrogatories, but I did not check

 5    myself.

 6    BY MR. FORGE:

 7    Q       And because you did not check yourself, you

 8    cannot swear under penalty of perjury that any of

 9    these are responsive to the interrogatories?

10              MR. GLENNON:  Object to the form --

11    object to form.

12              THE WITNESS:  No.

13    BY MR. FORGE:

14    Q       And that's true for all of the documents

15    referenced in Exhibit 480, correct?

16              MR. GLENNON:  Same objection.

17              THE WITNESS:  Correct.

18    BY MR. FORGE:

19    Q       That's true for all the transcripts

20    referenced in Exhibit 480, correct?

21              MR. GLENNON:  Same objection.

22              THE WITNESS:  The transcripts?

23    BY MR. FORGE:

24    Q       So, for example, if you look at Page -- if

25    you look at Page 10 -- do you have it on Page 10?

www.aptusCR.com

 1  A      I'm working on it, yes.

 2  Q      Second bullet point, Edited transcript of

 3  conference call.

 4         You cannot confirm whether that edited

 5  transcript of conference call is responsive to any

 6  of the interrogatories in Exhibit 480, can you?

 7              MR. GLENNON:  Objection, vague, calls

 8  for a legal conclusion.

 9              Mr. Lappin, just let me insert my

10  objections, please.

11              THE WITNESS:  No.

12  BY MR. FORGE:

13  Q      And on the previous page, there's -- you

14  might see -- well, you should see at the top, the

15  first three bullet points are testimony from

16  different witnesses.

17         Do you see that?

18  A      Yes.

19  Q      And then there's transcript citations there.

20         Do you see that?

21  A      Yes.

22  Q      And, again, you cannot confirm whether these

23  transcript citations are, in fact, responsive to any

24  of the interrogatories posed in Exhibit 480, can

25  you?

www.aptusCR.com

 1              MR. GLENNON:  Objection, vague, calls

 2   for a legal conclusion.

 3              THE WITNESS:  Correct.

 4   BY MR. FORGE:

 5   Q      You cannot?

 6   A      I cannot.

 7              MR. GLENNON:  Same objection.

 8   BY MR. FORGE:

 9   Q      Approximately how long did you spend

10   reviewing these responses?

11   A      An hour.

12   Q      Did you ever review a different version of

13   these responses than the version set forth in

14   Exhibit 480?

15              MR. GLENNON:  I'm -- I'm going to

16   object and instruct the witness not to answer.

17              Mr. Lappin, I'm instructing you not to

18   answer, please.

19   BY MR. FORGE:

20   Q      Did you review these responses on more than

21   one occasion?

22   A      Do not recall.

23   Q      Do you recall any additional occasions that

24   you reviewed them other than the one you described

25   to us, which was about an hour?

Case 3:16-cv-02267   Document 286-6   Filed 08/21/20   Page 17 of 32 PageID #: 9424
www.aptusCR.com

 1              MR. GLENNON:  Object to form.

 2              THE WITNESS:  Don't recall.

 3   BY MR. FORGE:

 4   Q      So that's a no, you don't recall any other

 5   times in which you reviewed it?

 6              MR. GLENNON:  Object to form.

 7              THE WITNESS:  No.

 8              MR. GLENNON:  Jason, can we take a

 9   short break?

10              MR. FORGE:  Brian, there's pretty much

11   no request you can make of me that I can refuse

12   after the debacle today, so --

13              MR. GLENNON:  So my next request is,

14   dismiss the lawsuit.

15              MR. FORGE:  You're free to take breaks

16   whenever you want.  If that's what you want, you've

17   got it.

18              MR. GLENNON:  Yeah, I don't need long.

19              Mr. Lappin, do you want 15 minutes?

20              THE WITNESS:  I need to use the

21   restroom during the break.

22              MR. GLENNON:  Sure.

23              15 minutes, Jason, please.

24              MR. FORGE:  Absolutely.

25              THE VIDEOGRAPHER:  We are going off the

www.aptusCR.com

1   ended contracts during the time I was director, that
2   was built into the expense, because, typically, we
3   were moving those inmates to a lower cost facility
4   that more than covered the -- the small expense in
5   transferring the inmates.
6           So, again, it's more of a business
7   proposition as well, because, typically, they were
8   moving into a -- a lower cost facility, and the cost
9   of covering -- the cost to cover -- the cost
10  associated with moving the inmates was easily
11  covered by the savings they generated in moving to a
12  less -- a less expensive facility.
13          MR. FORGE:  Let's mark the next
14  document -- let's see, I think we're at 489.
15          (Marked Exhibit No. 489.)
16          MR. FORGE:  And this is going to be
17  Tab 1.
18  BY MR. FORGE:
19  Q       Do you see Tab 1?
20  A       Yes.
21  Q       Does that appear to be a true and correct
22  copy of your objections and responses to plaintiff's
23  first set of interrogatories?
24  A       Yes.
25  Q       When did you first receive this document --

Page 233
Case 3:16-cv-02267   Document 286-6   Filed 08/21/20   Page 19 of 32 PageID #: 9426
www.aptusCR.com

1  have you seen this document before?

2  A       Yes.

3  Q       **When did you first receive it?**

4  A       Don't recall.

5  Q       **Do you recall ever signing anything in**

6  **connection with this document?**

7              MR. GLENNON:  I'm just going to

8  instruct the witness not to disclose any privileged

9  communications.

10             THE WITNESS:  I'm sure I signed my

11 interrogatories.  I don't remember the date.

12 BY MR. FORGE:

13 Q       **Do you recall signing the interrogatories on**

14 **the same day you reviewed them?**

15 A       No, I don't think I did.  As I recall, I

16 read through them.  I waited another day or two.  I

17 think I was traveling, as I recall.

18         And so I think it took me a few days before

19 I got back to the legal counsel, had a discussion,

20 and then finally signed the document.

21 Q       **Now, you said you were traveling.**

22         **Where were you traveling?**

23 A       I was probably visiting my 98-year-old

24 mother in Ohio.

25 Q       **So did you receive this electronically?**

www.aptusCR.com

1    A       Yes.

2    Q       Did you ever print out these responses?

3    A       Oh, I have printed out the responses.  I

4    don't recall if I printed out this one, but it looks

5    like I signed this on -- unless I'm mistaken, the

6    last page says April 27th, 2020.

7    Q       Do you see right above your signature it

8    says, I, Harley G. Lappin, based upon my personal

9    knowledge?  Do you see that?

10   A       I do.

11   Q       Verify under penalty of perjury that my

12   responses to plaintiff's first set of

13   interrogatories, as served on May 1st, 2020, are

14   true and correct.

15           Do you see that?

16   A       Yes.

17   Q       Did you write that language?

18   A       No.

19   Q       Somebody else wrote it for you?

20   A       Yes.

21   Q       And you just went ahead and signed this on

22   April 27th, 2020?

23   A       Yes.

24               MR. GLENNON:  Object to form.

25               THE WITNESS:  Yes.

Case 3:16-cv-02267    Document 286-6    Filed 08/21/20    Page 21 of 32 PageID #: 9428
www.aptusCR.com

1  BY MR. FORGE:

2  Q      **Didn't it raise a red flag for you that**

3  **you're signing something on April 27th, 2020, that**

4  **says it wasn't served until May 1st, 2020?**

5  A      No, it didn't.

6  Q      **Did you even read that?**

7  A      I probably did before I signed it.

8  Q      **What makes you think you did?**

9              MR. GLENNON:  Objection, form.

10             THE WITNESS:  I typically read the

11 document before I sign it.

12 BY MR. FORGE:

13 Q      **Well, why do you typically read a document**

14 **before you sign it?**

15 A      To make sure it's accurate.

16 Q      **This is -- this is one sentence.**

17         **Is this one sentence accurate?**

18 A      I assume so.

19 Q      **So you think these interrogatories were**

20 **served on May 1st, 2020; yet you executed this thing**

21 **four days earlier on April 27th?**

22             MR. GLENNON:  Object to form.

23             Jason, this could be a typo.  This is a

24 silly line of questioning.

25             MR. FORGE:  Brian, you know that's not

www.aptusCR.com

1 appropriate.

2          THE WITNESS:  Obviously, if it's an

3 error, it's my mistake.

4 BY MR. FORGE:

5 Q      And that's what I'm asking you.

6        Do you think it was your mistake, or do you

7 think maybe you just didn't read it?

8 A      I think I read it --

9          MR. GLENNON:  Object to form.

10          THE WITNESS:  I'm sorry.

11          I probably read it and just didn't make

12 that connection.

13 BY MR. FORGE:

14 Q      And that's what I'm getting at.

15        What makes you confident that you read this

16 in light of the fact that it's dated four days

17 earlier than when it says the interrogatories were

18 served?

19 A      I don't know.  I'm sorry.  I either read it

20 too quickly, didn't make the connection.  But I read

21 the document, I signed it assuming that it was

22 correct.

23 Q      Did you sign it -- did you hand sign this,

24 or did you use electronic signature?

25 A      I hand signed this.

                                        Page 237
Case 3:16-cv-02267    Document 286-6    Filed 08/21/20    Page 23 of 32 PageID #: 9430
www.aptusCR.com

1  Q        How did you transmit it?

2  A        I probably scanned it and faxed it.

3  Q        Scanned it and faxed it?

4  A        Sorry, scanned it and e-mailed it.  My

5  apologies.

6  Q        You probably did, but you don't know?

7  A        I don't recall mailing it.

8  Q        And I wasn't sure about your answer earlier.

9           Did you ever print out a copy of the

10  objections and responses to this set of

11  interrogatories?

12  A        I don't recall.

13              MR. GLENNON:  Object to form.

14              THE WITNESS:  I don't recall.

15  BY MR. FORGE:

16  Q        You said -- you said you received this while

17  visiting with your mother in Ohio; is that right?

18  A        I -- I know that I wasn't --

19              MR. GLENNON:  Object to form.

20              THE WITNESS:  I know that I wasn't in

21  my home when I received it.  I don't know -- my

22  guess is given this year, the only person -- the

23  only place I've traveled is to Ohio.  So -- I've not

24  gone anywhere other than Ohio, so it was -- it was

25  probably one of two trips that I made to -- to that

www.aptusCR.com

1  location.

2  BY MR. FORGE:

3  **Q       Did you read it on your phone?**

4              MR. GLENNON:  Object to form.

5              THE WITNESS:  No, I didn't.  I think I

6  waited until I got home, and I used my iPad to

7  review the document.

8  BY MR. FORGE:

9  **Q       So you read it on your iPad?**

10  A       Yes.

11  **Q       And do you recall whether it was a PDF**

12  **document?**

13  A       I don't.

14  **Q       Do you recall if you made any changes to it?**

15              MR. GLENNON:  I would instruct the

16  witness to answer only insofar as he doesn't reflect

17  discussions with counsel.

18              THE WITNESS:  I do not recall making

19  any changes.

20  BY MR. FORGE:

21  **Q       So the answers that are reflected here are**

22  **the same answers that existed when you received it?**

23  A       I believe so.

24              MR. GLENNON:  Do you need a moment to

25  review the document, sir?

1           THE WITNESS:  I'm looking through it,

2   but I don't recall making any changes.

3   BY MR. FORGE:

4   Q       **So the attorneys provided these answers to**

5   **you, right?**

6   A       Yes, I received this from the attorneys.

7   Q       **And you did not -- to the extent there are**

8   **documents referenced in this, you did not actually**

9   **review the documents to confirm the accuracy of**

10  **those citations, did you?**

11          MR. GLENNON:  Object to form.

12          Jason, we spent 20 minutes on this

13  earlier.

14          MR. FORGE:  You're wrong, and that's

15  not an appropriate objection.

16          MR. GLENNON:  I don't rely on you to

17  rule on my objections.

18          But you can answer the question,

19  Mr. Lappin.

20          THE WITNESS:  No, I didn't.

21  BY MR. FORGE:

22  Q       **Did you do anything to verify the accuracy**

23  **of any of the responses that the attorneys sent to**

24  **you?**

25  A       I read them and agreed with the -- the

www.aptusCR.com

1  written document.

2  Q        If you could, please, turn to Interrogatory

3  No. 9.  This is Page 10.

4          Do you see that?

5  A        Yes, I do.

6  Q        These -- in signing this document, were you

7  affirming that your answers to these questions are

8  complete and accurate under penalty of perjury?

9  A        Yes.

10  Q        Are you affirming that none of your

11  responses conceal any additional responsive

12  information?

13  A        Yes.

14                 MR. GLENNON:  Objection, vague.

15                 THE WITNESS:  Yes.

16  BY MR. FORGE:

17  Q        Now, in -- Interrogatory No. 9 asks to

18  describe in detail all reasons for the loss of the

19  Northeast Ohio Correctional Center contract in or

20  around 2014, including any information conveyed by

21  the BOP and any debriefing or otherwise as to the

22  reasons for the loss.

23          Do you see that?

24  A        Yes.

25  Q        Now, you're aware that the BOP -- one of the

www.aptusCR.com

1                    THE WITNESS:  Correct.

2    BY MR. FORGE:

3    **Q        So you never attempted to answer these**

4    **interrogatories on your own, correct?**

5                    MR. GLENNON:  Object to form.

6                    THE WITNESS:  Not entirely, no.

7    BY MR. FORGE:

8    **Q        Well, you never even considered the**

9    **interrogatories independently of the answers -- of**

10   **the responses that were included in here, did you,**

11   **sir?**

12                   MR. GLENNON:  Objection, compound,

13   form.

14                   THE WITNESS:  Please re- -- please --

15   I -- please repeat the question.

16   BY MR. FORGE:

17   **Q        Sure.**

18   **        You never considered the interrogatories**

19   **independently of the responses you received when you**

20   **received the interrogatories, correct?**

21                   MR. GLENNON:  Same objections.

22                   THE WITNESS:  I -- I did -- I did

23   consider the responses based on my knowledge of

24   the -- of the question, and I respond -- I -- I

25   agreed accordingly.

www.aptusCR.com

1 BY MR. FORGE:

2 Q  I think maybe you misheard my question.

3    I said you never considered the

4 interrogatories independently of the responses that

5 you received when you received the interrogatories,

6 correct?

7     MR. GLENNON: Object to form.

8     THE WITNESS: No, I did consider the --

9 the question in the interrogatory as I reviewed my

10 response to that interrogatory.

11 BY MR. FORGE:

12 Q  Maybe a simpler way to ask it is, you never

13 received just the interrogatories without the

14 responses, correct?

15     MR. GLENNON: Object to form.

16     THE WITNESS: No, I did not.

17 BY MR. FORGE:

18 Q  So that's -- that's correct?

19 A  That's correct.

20 Q  So you only received the interrogatories

21 with all the responses set forth in Exhibit 489,

22 correct?

23 A  Yes.

24 Q  And those responses never changed, correct?

25     MR. GLENNON: Object to form.

www.aptusCR.com

1                    THE WITNESS:  Correct.

2    BY MR. FORGE:

3    Q        So if a response says that you don't have a

4    recollection of something, somebody else wrote that

5    for you, and then you just agreed to it, correct?

6                    MR. GLENNON:  Objection, foundation,

7    form.

8                    THE WITNESS:  Not necessarily.

9    I reviewed it.  I -- I agreed with -- after some

10   discussion with the response that was -- was

11   provided.

12   BY MR. FORGE:

13   Q     My question was, somebody -- if a response

14   states that you don't have a recollection of

15   something, somebody else wrote that response for

16   you, and then you just agreed to it, correct?

17   A        After --

18                   MR. GLENNON:  Object to the form and

19   foundation.

20                   THE WITNESS:  After my review and

21   discussion about the response.

22   BY MR. FORGE:

23   Q        In other words, somebody else wrote you

24   don't have a recollection before you informed

25   somebody that you don't have a recollection,

www.aptusCR.com

 1   correct?

 2                   MR. GLENNON:  Objection, form and

 3   foundation.

 4                   THE WITNESS:  And, again, as I read

 5   that, if I did have a recollection, I would have

 6   indicated that.

 7   BY MR. FORGE:

 8   Q      Again, turning to my question, somebody else

 9   wrote that you don't have a recollection before you

10   informed anyone that you don't have a recollection,

11   correct?

12                   MR. GLENNON:  Objection, form,

13   foundation.

14                   THE WITNESS:  Yes.

15   BY MR. FORGE:

16   Q      And, in fact, in not a single instance in

17   which someone else wrote that you don't have a

18   recollection, in not a single instance did you say,

19   Hold on, I do have a recollection, correct?

20                   MR. GLENNON:  Objection, calls for

21   attorney-client communications.  I'm instructing the

22   witness not to answer.

23   BY MR. FORGE:

24   Q      You verified these answers, right, sir?

25   A      Yes.

www.aptusCR.com

1        I, the undersigned, a Licensed Court

2   Reporter of the State of Tennessee, do hereby

3   certify:

4        That the foregoing proceedings were

5   taken before me at the time and place herein set

6   forth; that any witnesses in the foregoing

7   proceedings, prior to testifying, were duly sworn;

8   that a record of the proceedings was made by me

9   using machine shorthand, which was thereafter

10  transcribed under my direction; that the foregoing

11  transcript is a true record of the testimony given.

12       Further, that if the foregoing pertains

13  to the original transcript of a deposition in a

14  federal case, before completion of the proceedings,

15  review of the transcript [ X ] was [  ] was not

16  requested.

17       I further certify I am neither

18  financially interested in the action nor a relative

19  or employee of any attorney or party to this action.

20       IN WITNESS WHEREOF, I have this date

21  subscribed my name.

22  Dated: August 3, 2020

23  _____

24       Elisabeth A. Miller Lorenz
         RMR, CRR, LCR No. 66
25       Georgia CR No. 5266-8739-6377-3952

www.aptusCR.com