# EXHIBIT G

Videotaped Deposition of

**Damon Hininger**

July 30, 2020

Volume II


Grae

vs.

Corrections Corporation of America, et al.



```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF TENNESSEE
 2

 3

 4  NIKKI BOLLINGER GRAE, Individually
    and Behalf of All Others Similarly
 5  Situated,

 6                     Plaintiff,
    vs.                                    CASE NO.
 7                                         3:16-CV-02267
    CORRECTIONS CORPORATION OF
 8  AMERICA, et al.,

 9                     Defendants.

10

11

12

13       VIDEO DEPOSITION OF DAMON HININGER

14                    Volume II

15    Reported Remotely through Videoconference

16                  July 30, 2020

17

18

19

20  Reported by:

21  Elisabeth A. Miller Lorenz

22  RMR, CRR, LCR No. 66

23

24  Job No.:  10071103

25
```

Case 3:16-cv-02267    Document 286-7    Filed 08/21/20    Page 3 of 34 PageID #: 9442
www.aptusCR.com

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
2

3

4   NIKKI BOLLINGER GRAE, Individually
    and Behalf of All Others Similarly
5   Situated,

6                          Plaintiff,
    vs.                                    CASE NO.
7                                          3:16-CV-02267
    CORRECTIONS CORPORATION OF
8   AMERICA, et al.,

9                          Defendants.

10

11

12

13

14

15

16

17       Video deposition of DAMON HININGER was taken

18    on behalf of Plaintiff, Reported Remotely through

19    Videoconference, at 10:37 a.m. CST, and ending at

20    2:02 p.m. CST, on Wednesday, July 30, 2020, before

21    Elisabeth A. Miller Lorenz, RMR, CRR, and LCR No.

22    66.

23

24

25

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1                    P R O C E E D I N G S

2                    THE VIDEOGRAPHER:  We are now on the

3    record.  Today's date is July 30, 2020, and the time

4    is 10:37 a.m.  This is the video deposition of

5    Damon T. Hininger, Volume 2; being taken in the

6    matter of Nikki Bollinger Grae versus Corrections

7    Corporation of America, et al.

8                    We are taking this depo via Zoom, and

9    my name is Spencer Benveniste of Aptus Court

10   Reporting.

11                   Will counsel please identify yourselves

12   and state whom you represent.

13                   MR. FORGE:  This is Jason Forge.  I'm

14   here on behalf of the plaintiff and the class.

15                   MR. WOOD:  Christopher Wood on behalf

16   of the plaintiffs and the class.

17                   MS. RADCLIFFE:  Willow Radcliffe on

18   behalf of plaintiff and the class.

19                   MR. LYONS:  Christopher Lyons on behalf

20   of plaintiff and the class.

21                   MR. SCHINDLER:  David Schindler, Latham

22   & Watkins, on behalf of the defendants and the

23   witness.

24                   MR. SAPER:  Nathan Saper, Latham &

25   Watkins, on behalf of the defendants and the

www.aptusCR.com

1  witness.

2              MR. RILEY:  And this is Steve Riley,

3  and I'm here on behalf of the witness as well as the

4  defendants.

5              THE VIDEOGRAPHER:  The court reporter

6  today is Elisabeth Lorenz, and she may now swear in

7  the witness.

8                      * * *

9              DAMON HININGER

10 was called as a witness, and after having been first

11 duly sworn, testified as follows:

12              E X A M I N A T I O N

13 BY MR. FORGE:

**14 Q      Good morning, Mr. Hininger.**

15 A      Good morning.

**16 Q      Mr. Hininger --**

17             MR. RILEY:  Jason, before you get

18 started, we can't see you.

19             MR. FORGE:  I know.  I'm only going on

20 audio to preserve bandwidth.

21             MR. RILEY:  Well, the witness can't see

22 you when you're asking questions.

23             MR. FORGE:  I know.  I'm only going on

24 audio so I can preserve bandwidth.  I said that

25 before we went on the record, so I'm not sure why

Case 3:16-cv-02267   Document 286-7   Filed 08/21/20   Page 6 of 34 PageID #: 9445

www.aptusCR.com

1   believe me, I'm not going to ask him any questions

2   about the document itself; I'm just asking

3   identifying information.

4             MR. SCHINDLER:  Okay.

5   BY MR. FORGE:

6   Q       **Is Exhibit 480, is that a document that**

7   **begins with a page that has a case caption on it?**

8   A       First line being the United States District

9   Court?

10  Q       **Yes, sir.**

11  A       Yes.

12  Q       **Does the title of the document appear to be**

13  **Defendants' Objections and Responses to Plaintiff's**

14  **Second Set of Interrogatories?**

15  A       Yes, that's correct.

16  Q       **Mr. Hininger, have you seen this document**

17  **before?**

18  A       I have seen interrogatories.  I don't know

19  if I've seen this exact one, but I have seen some

20  earlier this year.

21  Q       **Well, let's -- let's look -- so you don't**

22  **know whether -- this one is identified as**

23  **plaintiff's second set of interrogatories.**

24          **Do you know whether or not you saw**

25  **defendants' objections and responses to plaintiff's**

www.aptusCR.com

1  second set of interrogatories?

2  A      I believe I did.  Again, I -- now seeing

3  inside the actual cover page, I could probably tell

4  you more definitively, but I believe I have.

5  Q      And I'm not trying to restrict you from

6  looking.  Go ahead.  And I was going to have you

7  turn to Page 3 of the document because that's the

8  actual -- where it sets forth -- the first

9  interrogatory is set forth within here.

10              MR. SCHINDLER:  But go ahead and take

11  your time to do what you need to do to answer the

12  question.

13  BY MR. FORGE:

14  Q      There's not a question pending right now, so

15  if I -- if I could --

16              MR. SCHINDLER:  You asked him -- you

17  told him to go ahead and look at it to see if he

18  could answer whether he'd seen it before.

19              MR. FORGE:  No, I actually didn't.  But

20  if I -- if you think I did, I'll withdraw that

21  question.

22  BY MR. FORGE:

23  Q      And ask you to turn to Page 13.

24  A      Page 13?

25  Q      Yes, sir.  And you'll see Interrogatory

Case 3:16-cv-02267    Document 286-7    Filed 08/21/20    Page 8 of 34 PageID #: 9447
www.aptusCR.com

1  No. 23?

2  A      Yes, I see it.

3  Q        Interrogatory No. 23 --

4          MR. SCHINDLER:  Hang on a second,

5  Jason, because I've got to scroll down since, you

6  know, we don't have these in hard copy, so...

7          MR. FORGE:  Okay.

8  BY MR. FORGE:

9  Q      Interrogatory No. 23 asks to identify all

10 notices of concern concerning any of the BOP

11 prisons.

12         Do you see that?

13 A      I do.

14 Q      Had you seen -- does that interrogatory look

15 familiar to you?

16 A      It does.

17 Q      And when did you first see it?

18 A      The question being, see the interrogatory

19 No. 23?

20 Q      Yes, sir.

21 A      I cannot recall the exact date, but it would

22 have been, I believe, earlier this year.

23 Q      Was it more than two months ago?

24         MR. SCHINDLER:  So, Jason, are you

25 asking about this, the response, or the original

Case 3:16-cv-02267    Document 286-7    Filed 08/21/20    Page 9 of 34 PageID #: 9448
www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1  document that you propounded was the interrogatory?

2  Which are you asking about?

3  MR. FORGE:  I asked about Interrogatory

4  No. 23.

5  MR. SCHINDLER:  In the form in which

6  it's in this document or the original form?

7  MR. FORGE:  I asked about Interrogatory

8  No. 23, when you -- when he saw this.  I'm not

9  getting into any form yet, David.  I appreciate the

10  assistance, but I'm just asking when he first saw

11  that Interrogatory No. 23.

12  MR. SCHINDLER:  So I'm going to object

13  as to form.

14  THE WITNESS:  So forgive me, would you

15  mind repeating the question?

16  BY MR. FORGE:

17  Q      No problem.

18         When did you first -- did you first see

19  Interrogatory No. 23 more than two months ago?

20  A      I can't say definitively, but I think that's

21  right.  I think it's been over two months.

22  Q      When you -- how did you receive -- did you

23  receive a document that contained Interrogatory

24  No. 3 -- 23?

25  A      Did I -- did -- I'm sorry, could you repeat

Case 3:16-cv-02267   Document 286-7   Filed 08/21/20   Page 10 of 34 PageID #: 9449

www.aptusCR.com

1  that question?

2  Q       When you first saw Interrogatory No. 23, did

3  you see it electronically, in a hard copy document,

4  in an e-mail?  In what form was it?

5  A       I think it was a file, so it was a -- like a

6  Word document attached to an e-mail.

7  Q       The response set forth below here, was that

8  included beneath the interrogatory when you received

9  it?

10  A       I don't know if it was exact -- exactly as

11  it is here on paper.  I think -- I think I saw

12  probably a couple different drafts, so it may have

13  been a variation of the -- at least the initial one

14  that I received.

15  Q       So if you can just look at the response to

16  Interrogatory No. 23, and tell me if there's any

17  aspect of the response that differs from the

18  response that is set forth when you first received

19  Interrogatory No. 23.

20  A       Yeah, going -- going from memory, again,

21  it -- I probably saw a draft or two, but it looks --

22  looks consistent with what I would say is kind of

23  like the first draft that I saw.

24  Q       At least as -- based on your review this

25  morning, you cannot identify any differences between

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1    the version set forth in Exhibit 480 and the version

2    of the response you received when you first received

3    the interrogatory, No. 23, correct?

4    A       Can I trouble you to just let me reread it

5    one more time?

6    Q       Sure.

7    A       So, yes, sir, I believe that the initial

8    draft and this version are consistent.

9    Q       Meaning at least as you're reviewing it

10   today, you don't see any differences between this

11   version and the initial version you received when

12   you first received the interrogatory, correct?

13   A       That is correct.

14   Q       How long did you spend looking at the

15   interrogatories and the responses when you first

16   received the interrogatories?

17            MR. SCHINDLER:  Objection as to form.

18            THE WITNESS:  Would you mind repeating

19   the question?  I'm sorry.

20   BY MR. FORGE:

21   Q       How much time did you spend looking at the

22   interrogatories and the responses when you first

23   received the interrogatories?

24            MR. SCHINDLER:  Same objection.

25            THE WITNESS:  I don't -- I don't recall

Case 3:16-cv-02267   Document 286-7   Filed 08/21/20   Page 12 of 34 PageID #: 9451
www.aptusCR.com

1    the -- the exact amount of time.

2    BY MR. FORGE:

3    Q       What's your best estimate?

4    A       I'm going to say that probably from the time

5    I received it to the time I responded it was

6    probably 24 to 72 hours.

7    Q       That's not really what I'm asking.  I'm not

8    asking for the time between when you received them

9    and when you responded.

10          I'm asking, how much time in between then

11   that you spent reviewing them.

12                  MR. SCHINDLER:  Objection as to form.

13                  Are you talking about this set?  All

14   interrogatories?

15   BY MR. FORGE:

16   Q       You can go ahead and answer the question,

17   Mr. Hininger.

18   A       The actual time reviewing?

19   Q       Yes.

20   A       I'm going to say probably a couple hours.

21   Q       Now, you said you received the

22   interrogatories contained in Interrogatory No. 23 as

23   an attachment to an e-mail; is that right?

24   A       I believe that's correct.

25   Q       Did that e-mail contain any other attached

www.aptusCR.com

1  documents?

2  A       I do not recall.

3  Q       Did that e-mail contain a link to any other

4  documents?

5  A       I do not recall.

6  Q       As -- as you can see, the response to

7  Interrogatory No. 23 sets forth a number of

8  documents that are provided in a bullet-pointed

9  list.

10         Do you see those that are on Page 14?  And

11 then for some reason, they're on the next two pages,

12 but the page numbering is kind of whacky because it

13 goes from Page 14 to Page 2 to Page 3.

14         Do you see that?

15 A       I do.

16 Q       I'll -- I'll represent to you that there are

17 over a hundred documents set forth in this response.

18         And do you see that each one has a unique

19 Bates number?

20 A       I do.

21 Q       Did you review any of the documents set

22 forth in the response to Interrogatory No. 23

23 bearing these Bates numbers prior to today?

24 A       Did I review or see I guess -- you know,

25 review or see these documents or review or see these

www.aptusCR.com

 1  documents prior to today?

 2  Q       Yeah, with these actual Bates numbers on

 3  them, yes.

 4  A       I didn't -- I don't know.  It would be --

 5  just looking at the list with the numbers, it would

 6  be hard for me to remember.

 7  Q       Do you remember in the course of your

 8  two-hour review of the interrogatories looking at

 9  over a hundred additional documents?

10  A       Did I, as part of my review of the

11  interrogatory, review additional -- review another

12  hundred documents?

13  Q       Yes.

14  A       I did not.

15  Q       During your review of the interrogatories

16  and the responses that were sent along with them,

17  did you review any documents other than the

18  interrogatories and the responses themselves?

19  A       I believe I reviewed other documents, but,

20  yeah, it definitely wasn't in a quantity of a

21  hundred.

22  Q       What's your best estimate of the number of

23  other documents you reviewed in the course of

24  reviewing the interrogatories and responses set

25  forth in Exhibit 480?

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

 1  A       I'm going to say it was maybe a couple.

 2  Definitely, no more than five.  I'd say probably a

 3  couple.

 4  **Q       At any point after that first review of a**

 5  **couple hours, did you review another version that**

 6  **apparently didn't change between the first version**

 7  **of interrogatories and responses and this one --**

 8               MR. SCHINDLER:  Objection as to form.

 9  BY MR. FORGE:

10  **Q       -- Exhibit 480?**

11               MR. SCHINDLER:  Objection as to form.

12               THE WITNESS:  Are you asking about just

13  Interrogatory No. 23, or are you talking about all

14  interrogatories?

15  BY MR. FORGE:

16  **Q       I'm talking about all the interrogatories in**

17  **this second set.  So this second set, just so we're**

18  **clear, it contained Interrogatories No. 19 through**

19  **26.  So the -- the first 18 interrogatories are**

20  **completely a different document, a different set of**

21  **interrogatories.  I'm not asking you about those**

22  **yet.**

23        **I'm asking you about this second set of**

24  **interrogatories and whether your -- your best**

25  **estimate was you spent about two hours reviewing**

www.aptusCR.com

1    them.  And I just wanted to check to see if you

2    spent any additional time reviewing any additional

3    versions of this second set.

4    A      I believe -- I believe what I would do is

5    I'd get a draft, review the entire document

6    completely -- completely, and then if there was

7    another version or two, I believe it was provided to

8    me in a way to where I would see the -- the changes.

9          So you had a version -- from version to

10   version, you had an indication of what the changes

11   were over the previous version, if that makes sense.

12   Q      It does.

13          Is the -- the document that you saw that

14   would reflect the differences, was that a redline

15   document?  Did it have colors?

16   A      I don't believe so.  I think it may have

17   been in the text of the e-mail or maybe in another

18   document.  But I'm not recalling a -- what you would

19   typically see as a -- proofreader marks in, like, a

20   Word document.

21   Q      So the changes might have just been

22   described to you as opposed to in -- what you

23   referred to as a proofreader document; is that

24   right?

25   A      I believe that is correct.

1    Q       Do you recall any of those changes?

2    A       Sitting here today, I cannot.

3    Q       Prior to receive -- first receiving this

4    second set of interrogatories, along with the

5    responses that we're looking at in Exhibit 480, had

6    you verbally -- had anybody read the interrogatories

7    to you?

8    A       Read them out loud to me?

9    Q       Yes.

10   A       No, I don't believe anybody did that.

11   Q       Had you -- prior to receiving the

12   interrogatories with the responses, had you verbally

13   provided any responses to any of the

14   interrogatories?

15           MR. SCHINDLER:  Objection as to form.

16           THE WITNESS:  You're asking if I --

17   I -- I verbally responded to a draft to the

18   interrogatories?

19   BY MR. FORGE:

20   Q       No.

21           I'm saying, prior to receiving the

22   interrogatories with the responses, had you provided

23   verbal responses prior to receiving these written

24   responses?

25           MR. SCHINDLER:  Objection as to form.

```
 1                 THE WITNESS:  I'm sorry, I'm not sure
 2   if I'm following your question.
 3                 The question being, did I provide some
 4   response prior to receiving the interrogatory --
 5   interrogatories?  I'm not sure if I follow you.  I'm
 6   sorry.
 7   BY MR. FORGE:
 8   Q       Let -- if -- you said before the first time
 9   you saw these interrogatories, you saw them with the
10   responses -- with -- with responses already set
11   forth beneath them, correct?
12   A       That is correct.
13   Q       And what I'm asking you is, had -- and --
14   and nobody ever read the interrogatories to you
15   before then, right?
16   A       Yeah, I don't -- I -- I don't recall anybody
17   reading these to me.
18   Q       Did you sign a verification under penalty of
19   perjury for this set of interrogatories to your
20   knowledge, Mr. Hininger?
21   A       I don't recall the exact process on
22   verification, but I did -- I did say that after
23   review --
24                 MR. SCHINDLER:  I'm going to object as
25   to form at this point.
```

www.aptusCR.com

 1  BY MR. FORGE:

 2  Q        You can continue to finish your answer,

 3  Mr. Hininger.

 4  A        Forgive me, if you would, re- -- reask the

 5  question.

 6  Q        Sure.

 7           Did you sign a verification under penalty of

 8  perjury for this set of interrogatories to your

 9  knowledge?

10               MR. SCHINDLER:  Objection as to form.

11               THE WITNESS:  I -- I gave some, I

12  believe, verification after my review of the -- the

13  document.  I don't recall signing and having -- and

14  how that -- how that was done and how it was

15  described to me.

16  BY MR. FORGE:

17  Q        And since -- your best estimate was you

18  reviewed over -- I'm sorry, you reviewed under five

19  documents in connection with your review of this

20  second set of interrogatories, you --

21               MR. SCHINDLER:  Objection,

22  mischaracterizes testimony.

23  BY MR. FORGE:

24  Q        You never confirmed whether or not the

25  hundred-plus documents listed below the response to

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

 1   Interrogatory No. 23, you never personally confirmed

 2   whether they are actually responsive to the

 3   interrogatory, did you, sir?

 4   A      Forgive me, that was -- that was -- that was

 5   quite a mouthful.

 6          Could you repeat that question?

 7   Q      Sure.

 8          Have you ever confirmed whether or not the

 9   hundred-plus documents listed in the response to

10   Interrogatory No. 23 are, in fact, responsive to

11   Interrogatory No. 23?

12   A      I did not personally -- personally verify

13   the hundred-plus documents myself.

14   Q      And that's true to this day, correct, sir?

15   A      Yes, sir.

16   Q      That is also true with respect to the

17   documents set forth as part of the answer to

18   Interrogatory No. 24, correct?

19              MR. SCHINDLER:  Objection as to form.

20              THE WITNESS:  You're asking about

21   Interrogatory No. 24?

22   BY MR. FORGE:

23   Q      Yes, sir.

24   A      Do you mind if I take a peek at it?

25   Q      Please do, sir.

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1  A        Thank you for that.

2         Your question was, did I review the -- the

3  documents listed in Interrogatory No. 24?

4  Q        **Yes.**

5  A        I -- I didn't look at all of them.  I don't

6  recall if I looked at any of them, but I definitely

7  didn't look at all of them.

8  Q        **Have you, to this day, confirmed whether the**

9  **documents set forth in the response to Interrogatory**

10  **No. 24 are, in fact, responsive to the**

11  **interrogatory?**

12             MR. SCHINDLER:  Objection as to form.

13             THE WITNESS:  You're asking me if I

14  personally have verified if -- if all of the

15  documents listed in Interrogatory 24, I -- I

16  personally reviewed them and verified?

17  BY MR. FORGE:

18  Q        **Verified the responsiveness of the**

19  **interrogatory, yes, sir.**

20  A        I didn't personally verify.

21  Q        **If you could, turn to, please, Interrogatory**

22  **No. 25.  Same -- same question.**

23         **Did you -- have you to this day personally**

24  **verified whether the documents set forth in the**

25  **response to Interrogatory No. 25 are, in fact,**

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1  responsive to that interrogatory?

2  A      I'll take a read of this real quick too, if

3  you don't mind.

4  Q      Not at all.

5  A      Thank you.

6        So the question is, did I personally review

7  all the documents left -- set forth in Interrogatory

8  No. 25?

9  Q      Very close.

10        The question is whether you personally

11  confirmed that the documents set forth in the

12  response to Interrogatory No. 25 are, in fact,

13  responsive to the interrogatory.

14  A      I didn't -- I didn't personally confirm that

15  all the documents listed forth in Interrogatory

16  No. 25 were responsive to their request.

17  Q      Are there any documents set forth in the

18  response to Interrogatory No. 25 that you believe

19  you reviewed to confirm are, in fact, responsive to

20  the interrogatory?

21  A      Again, I don't -- I definitely didn't review

22  all the documents.  I don't recall if I reviewed --

23  maybe one or two.  So it would be similar to the --

24  or a similar answer to the other interrogatories.

25  Q      If we could turn to Interrogatory No. 26.

www.aptusCR.com

1  Same inquiries here, sir, just have you reviewed any

2  of the documents set forth in the response to

3  Interrogatory No. 26 to confirm whether they are, in

4  fact, responsive to the interrogatory?

5  A       Thank you.  All right.  Let me take a peek

6  here.

7          Thank you.

8          So the request is, did I review to make sure

9  the documents were completely responsive to the

10 request?

11 Q       Yes.

12 A       I did not review all -- all the documents

13 set forth in Interrogatory 26 to make sure they were

14 responsive to the request.

15 Q       Sorry for being so tedious about it, but can

16 you identify any of the documents set forth in the

17 response to Interrogatory No. 26 that you confirmed

18 are, in fact, responsive to the interrogatory?

19 A       Can I identify -- forgive me, would you

20 repeat the question?

21 Q       Sure.

22         It's -- it's really kind of in-the-margin

23 type of question.  You said -- your answer said that

24 you didn't review all of them, and I just want to

25 make sure that your answer for this is the same as

www.aptusCR.com

1   the others, that at least as you sit here today, you

2   cannot identify any one of these documents that you

3   reviewed to confirm whether or not it is, in fact,

4   responsive to Interrogatory No. 26.

5   A       Thank you.

6           Yeah, definitely did not review all these

7   documents.  I cannot recall if I reviewed maybe one

8   or two, but it definitely wasn't the -- the entire

9   list.

10  Q       Now, if you turn to Page 8 of Exhibit 480.

11  A       And that would be what tab?

12  Q       I'm sorry, it's the same -- I apologize,

13  it's the same tab.  It's the same document.  We're

14  just turning back.

15  A       Okay.

16  Q       And remember the page numbering is a little

17  bit whacky with this.  So I know -- Page -- Page No.

18  26 is on Page 5, but somehow if you back up several

19  pages, you'll eventually get to Page 8.

20  A       Understood.  Thank you.

21  Q       And so just to make sure you have the right

22  page, I'm just going to say that Page -- the Page 8

23  I'm talking about should begin at the top with,

24  Subject to the foregoing objections, defendants

25  reiterate their response to Interrogatory No. 20 and

1  know where we left off -- where yesterday's

2  deposition left off with exhibits.

3              (Discussion off the record.)

4              MR. FORGE:  This will be 499.  I'm

5  going to send it to everybody.

6              (Marked Exhibit No. 499.)

7  BY MR. FORGE:

8  Q       Mr. Hininger, does Tab 1, which is marked as

9  Exhibit 499, does that appear to be a true and

10 correct copy of your objections and responses to

11 plaintiff's first set of interrogatories?

12 A       Yes, sir, it does.

13 Q       Now, the last page of this exhibit is an

14 unnumbered page, and it has a title of Verification

15 for Damon Hininger's Responses to Plaintiff's First

16 Set of Interrogatories.

17         Do you see that?

18 A       I do.

19 Q       And you were asked to sign this

20 verification, correct, sir?

21 A       Yes, sir.

22 Q       You did, in fact, sign it, correct?

23 A       That is correct.

24 Q       And do you recall whether you signed it

25 electronically or signed it, you know, with a wet

Case 3:16-cv-02267   Document 286-7   Filed 08/21/20   Page 26 of 34 PageID #: 9465
www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1  signature?

2  A        Seeing this document, I believe I did it

3  with a wet signature.

4  **Q        And do you recall how you transmitted it to**

5  **anyone else?**

6  A        I believe it was submitted a couple ways.  I

7  think it was electronically, and then I think I

8  forwarded it to -- the hard copy to counsel.

9  **Q        And you received this verification without**

10  **your signature from counsel, correct?**

11  A        I'm sorry, sir, your question?

12  **Q        You received this verification without your**

13  **signature, in other words, a blank verification,**

14  **from counsel, correct?**

15  A        That's correct.  Thank you.

16  **Q        And that second set of interrogatories we**

17  **were talking about earlier, Exhibit 480, when you**

18  **mentioned receiving the e-mail that had the**

19  **interrogatories and the responses, the first time**

20  **you ever saw the interrogatories, you received that**

21  **e-mail from counsel, correct?**

22  A        That is correct.

23  **Q        Now -- and counsel asked you to sign this**

24  **verification that we're looking at now, right?**

25              MR. SCHINDLER:  Objection as to form.

www.aptusCR.com

1   We're not going to get into things that his lawyer

2   talked to him about or told him to do, so I'm going

3   to instruct him not to answer.

4   BY MR. FORGE:

5   Q       Mr. Hininger, was it your idea to sign a

6   verification for plaintiff's first set of

7   interrogatories?

8              MR. SCHINDLER:  Objection as to form.

9   This calls for legal conclusions.

10  BY MR. FORGE:

11  Q       You can go ahead and answer.

12  A       Would you mind reasking?

13  Q       Sure.

14          Was it your idea to sign a verification for

15  your responses to plaintiff's first set of

16  interrogatories?

17  A       I don't believe it was my idea.

18  Q       Did you create this verification form?

19  A       I did not.

20  Q       Are you responsible for any of the language

21  in the -- the one sentence of the verification?

22  A       Other than maybe the date, I don't believe

23  any other words are my own.

24  Q       So someone else wrote those other words for

25  you, correct?

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1   A        That is correct.

2   Q        And what you did was, you dated and signed

3   the document, correct?

4   A        Yes, sir.

5   Q        So you filled in the 29th in the sentence

6   that reads, Executed this 29th day of April, 2020?

7   A        Yes, sir.

8   Q        And then you signed above the signature

9   block for Damon T. Hininger, right?

10  A        That is correct.

11  Q        So the -- the one sentence for the

12  verification itself, someone else wrote that

13  sentence, correct?

14  A        That's correct.

15  Q        Had you seen these interrogatory responses

16  prior to April 29th, 2020?

17  A        Yes, I believe I did.

18  Q        When did you first see the responses?

19  A        I -- I don't recall the date.  I don't

20  recall.

21  Q        Approximately how many days before

22  April 29th, 2020, did you first see them?

23  A        I want to say it was less than a week, so

24  I'd say less than seven days.

25  Q        Did you receive them electronically or in

www.aptusCR.com

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1    paper form?

2    A        I believe I received them electronically.

3    Q        **Did you print them out?**

4    A        I don't recall if I printed them out.  I may

5    have reviewed them just electronically.

6    Q        **So since you don't remember printing them**

7    **out, I take it you don't remember making any**

8    **handwritten changes to them?**

9    A        Yeah, I believe any changes I would have

10   made would have been electronically.

11   Q        **Do you recall making any changes to them?**

12   A        It seemed like there were a couple.  I

13   can't -- I can't remember the exact number, but it

14   was -- it was definitely probably more than one and

15   maybe two or three.

16   Q        **Do -- which two or three interrogatories do**

17   **you believe you changed?**

18   A        In my -- let me take a peek and see if I can

19   recall.

20   Q        **Absolutely.**

21   A        I'm sorry, I'm doing a quick review here.  I

22   cannot remember exactly.  Again, my memory is, it

23   was -- it was more than one.  I think it was maybe

24   two or three.  But, I'm sorry, I can't -- I can't

25   point to it specifically.

www.aptusCR.com

1  Q       And as you best recall, to the extent you

2  did have any changes, you would have transmitted

3  those in an e-mail?

4  A       Yes, that's correct.

5  Q       And if I'm understanding you correctly, the

6  first time you saw the interrogatories that are set

7  forth in plaintiff's first set of interrogatories,

8  they were sent to you in the same form that you have

9  here, the interrogatories with draft responses

10  already in place; is that correct?

11  A       That is correct.

12  Q       And that was a week or less prior to signing

13  this verification, correct?

14  A       I believe that's correct.

15  Q       Approximately how much time did you spend

16  reviewing those responses that have been written for

17  you?

18  A       I'm going to say it was probably -- it

19  wasn't more than five.  I'm going to say between two

20  and three.

21  Q       Two and three hours?

22  A       Yes, sir.

23  Q       Now, when you received the interrogatories

24  for the first time along with the responses, did

25  you -- you received that in an e-mail?

www.aptusCR.com

 1  A       That is correct.

 2  Q       Did that e-mail contain -- did that e-mail

 3  attach any documents in addition to the

 4  interrogatories with the responses?

 5  A       I don't recall.  I don't recall.

 6  Q       Did you review any documents other than the

 7  single document that contained the interrogatories

 8  and responses in the course of your review of those

 9  responses?

10  A       And we're talking about just this

11  interrogatories?

12  Q       This -- this first set of interrogatories,

13  so the interrogatories that are set forth in

14  Exhibit 499, which is the first set of

15  interrogatories containing Interrogatories No. 1

16  through 18.

17              MR. SCHINDLER:  Just to be clear, it's

18  not the interrogatories; it's his response to

19  interrogatories, right?

20              MR. FORGE:  Well, it contains the

21  interrogatories also.

22              THE WITNESS:  So did I review other

23  documents in addition to this?

24  BY MR. FORGE:

25  Q       Correct.

www.aptusCR.com

```
 1   A        Yeah, I believe it was only just a couple,
 2   one or two.
 3   Q        Any idea what those one or two documents
 4   were?
 5   A        I do not recall.
 6   Q        Prior to receiving the responses to the
 7   interrogatories that someone else had written, had
 8   anyone else read these interrogatories to you?
 9   A        Read them to me verbally?
10   Q        Yes.
11   A        No, sir, no one read them to me verbally.
12   Q        So your first awareness of the substance of
13   the interrogatories themselves was when you received
14   the electronic document that contained both the
15   interrogatories and the responses to the
16   interrogatories, correct?
17   A        That is correct.
18   Q        If you turn, Mr. Hininger, to Page 3 of
19   Exhibit 499, it's where the actual responses and
20   objections begin to the specific interrogatories.
21            Do you see near the bottom of the page it
22   says, Responses and objections to first set of
23   interrogatories?
24   A        Yes, sir, I do.
25   Q        It says, Interrogatory No. 1, and then it
```

www.aptusCR.com

 1            I, the undersigned, a Licensed Court

 2    Reporter of the State of Tennessee, do hereby

 3    certify:

 4            That the foregoing proceedings were

 5    taken before me at the time and place herein set

 6    forth; that any witnesses in the foregoing

 7    proceedings, prior to testifying, were duly sworn;

 8    that a record of the proceedings was made by me

 9    using machine shorthand, which was thereafter

10    transcribed under my direction; that the foregoing

11    transcript is a true record of the testimony given.

12            Further, that if the foregoing pertains

13    to the original transcript of a deposition in a

14    federal case, before completion of the proceedings,

15    review of the transcript [ X ] was [  ] was not

16    requested.

17            I further certify I am neither

18    financially interested in the action nor a relative

19    or employee of any attorney or party to this action.

20            IN WITNESS WHEREOF, I have this date

21    subscribed my name.

22    Dated: August 3, 2020

23    _____

24            Elisabeth A. Miller Lorenz
              RMR, CRR, LCR No. 66
25            Georgia CR No. 5266-8739-6377-3952

www.aptusCR.com