UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>                    Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS FROM RELYING ON AN ADVICE OF COUNSEL DEFENSE |

## I. INTRODUCTION[1]

Defendants are resorting to hair-splitting semantics to do exactly what this Court already proscribed. After they broadly asserted privilege, including over multiple Disclosure Committee documents, this Court rightly informed Defendants they would be precluded from explicitly or implicitly relying on counsel in their defense. Defendants' opposition (ECF No. 289) ("Opposition" or "Opp.") reveals their refusal to accept this ruling. Defendants contend that, just by disavowing an explicit "reliance on counsel" defense, they are free to invoke arguments and defenses that implicitly rely on counsel. For example, Defendants contend they may invoke CCA's Disclosure Committee even though CCA's Office of General Counsel ("OGC") ran that committee, Hininger admitted he could not distinguish between the legal advice and any other information from the Disclosure Committee on which he relied, and Mullenger testified the ***only*** information on which Defendants relied was legal advice, primarily through the Disclosure Committee.

The scope of preclusion does not turn on an argument's label, but rather on whether the evidence or testimony inherently involves counsel and would be prejudicial to Plaintiff. Here, by withholding thousands of documents and preventing Plaintiff from meaningfully inquiring about the counsel-led processes they wish to invoke to support their defenses, Defendants have foreclosed any inquiry into: (1) the integrity of any process, committee or activity based on the completeness and veracity of the information Defendants provided; (2) whether any attorneys were co-schemers; and (3) whether Defendants followed non-fraudulent recommendations from any such process or committee. Having failed to allow such inquiries, Defendants should be precluded from advancing arguments or evidence at summary judgment or trial on topics for which they have

---

[1] Definitions are those used in Plaintiff's motion (ECF No. 266) ("Motion" or "Mot.").

claimed privilege. Defendants' proposed order, by contrast, would admit evidence that would tie Plaintiff's hands and mislead the jury.

## II. ARGUMENT

### A. The Shield-and-Sword Principle Mandates Preclusion

There is no dispute on the core principle implicated here: "'the attorney-client privilege cannot at once be used as a shield and a sword.'" *Ross v. City of Memphis*, 423 F.3d 596, 604-05 (6th Cir. 2005).[2] One who withholds communications with counsel "has waived the use of any such evidence" even if it "maintains that it does not intend to rely on any advice of counsel documents." *Linear Grp. Servs., LLC v. Attica Automation, Inc.*, 2014 WL 4206871, at *6 (E.D. Mich. Aug. 25, 2014). The appropriate remedy is preclusion. *Owner-operator Indep. Driver Ass'n, Inc. v. USIS Com. Servs., Inc.*, 2006 WL 8454224, at *2 (D. Colo. July 28, 2006).

The supposedly "[k]ey" securities cases Defendants cite (Opp. at 13) – all out of Circuit – are inapt. In *Smilovits v. First Solar, Inc.*, 2019 WL 6698199 (D. Ariz. Dec. 9, 2019), the court barred defendants from "present[ing] evidence that counsel approved the disclosures or plans or that [d]efendants relied on what the lawyers said about the disclosures or plans." *Id.* at *2. It explained that presenting evidence of approval or reliance, while withholding related documents, "would be unfair" as it "would leave the impression that the lawyers provided unqualified approval of all that [d]efendants did" without letting plaintiffs test that conclusion. *Id.* Although the court declined to "preclude [defendants] from making *any* reference to counsel . . . at trial," it made clear it would "draw precise lines during trial" as to which specific testimony would be allowed. *Id.* There was no trial, so the *Smilovits* court never drew these lines, leaving Defendants here with an empty sound bite, though the substance of the court's decision plainly supports Plaintiff's position.

---

[2] All citations and footnotes omitted and emphasis added unless otherwise indicated.

In *City of Pontiac Gen. Emps.' Ret. Sys. v. Holley*, 2018 WL 4183243 (W.D. Ark. Mar. 29, 2018) (Opp. at 13), the court found no waiver of privilege because "there [was] no indication that [defendant would] seek to avoid liability by asserting that it relied on advice of counsel in deciding what information to include or omit in [its] filings" or even that it would assert "the veracity or completeness of the SEC disclosures." *Id*. at *3-*4. The court did, however, compel testimony as to facts learned through counsel.[3] In that vein, the *Owner-operator* court precluded evidence of "advice of counsel" while allowing evidence of "***knowledge*** obtained from defendant's attorneys," a distinction that is not relevant (or even possible) here. *See* Opp. at 14-15 (citing *Owner-operator*, 2006 WL 8454224, at *2). Defendants have not provided discovery of facts learned from counsel but have made clear they seek to avoid liability by relying on communications with counsel.

In *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878 (S.D. Cal. 2019), the declarations at issue did "not mention attorney involvement in the disclosure process" and did not "state that SeaWorld's disclosures are accurate or that there is no scienter because of the advice from counsel." *Id*. at 924.[4] Here, Defendants testified extensively to attorney involvement in the disclosure approval process. Mot. at 5-9. They plan "to testify about the purpose, processes, and membership of the Disclosure Committee . . . ***in order to rebut any allegation that Defendants***

---

[3] *Pontiac* and *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 428-33 (D. Kan. 2009), are otherwise irrelevant as neither involves a request to preclude evidence. *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450 (S.D.N.Y. 2010), meanwhile, involved evidence of "the nature of the inquiry that ***U.S. Bank*** undertook" – not "evidence of 'the nature of the inquiry that [counsel] undertook,'" as Defendants claim. *Compare id.* at 474 n.27, *with* Opp. at 13. As *Pontiac* shows, a client's own inquiry that happens to include communications with counsel, but does not involve "legal advice that was eventually provided" (*see CFIP*, 738 F. Supp. 2d at 474 n.27), does not necessarily implicate the shield-and-sword principle because there should be no "shielding" of communications with counsel that do not relate to legal advice. Here, Defendants undisputedly shielded from discovery counsel's communications as to the accuracy and completeness of their statements.

[4] *SeaWorld* also arose at summary judgment, so the risk of jury confusion was not implicated, and the defendants did "not mention attorney involvement in their [summary judgment] brief." 423 F. Supp. 3d at 924.

*made the challenged statements recklessly or without regard for their truth*." Opp. at 16. And they seek leave to "present evidence or testimony that Counsel reviewed corporate disclosures and attended meetings where corporate disclosures were discussed." ECF No. 289-1, ¶3.

Evidence about counsel reviewing disclosures and attending meetings, or any of the other counsel-tinged processes described in the Motion, is irrelevant absent at least an implicit advice-of-counsel defense. "[R]eferences to counsel's communications are not relevant in the absence of an advice-of-counsel defense and should be excluded as well pursuant to Rule 403." *SEC v. Lek Sec. Corp.*, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019); *see* Fed. R. Evid. 401-403. "Such evidence is likely to be misinterpreted by a lay jury as implicit or explicit 'blessings' of the legality and adequacy of all aspects of the transactions at issue." *SEC v. Kokesh*, 2014 WL 11516545, at *3 (D.N.M. July 21, 2014). "[T]he jury could improperly infer that the mere presence of counsel is evidence that [defendants] lacked any intent to defraud." *SEC v. Mapp*, 2017 WL 8780604, at *2-*3 (E.D. Tex. Dec. 4, 2017). That would "give the defendant[s] all of the essential benefits of an advice of counsel defense without" obligating Defendants to waive privilege, produce documents, and "prov[e] any of the elements of the defense." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013). Defendants cannot be allowed to indirectly do what they concede they may not do directly – "advance advice of Counsel as a defense." ECF No. 289-1, ¶1.

B.     **Defendants Should Not Directly or Indirectly Invoke Counsel**

Having chosen to shield communications with counsel from disclosure, Defendants cannot now use counsel's advice or involvement as a sword to convey to the jury that their disclosures were blessed by counsel. The record shows that is exactly what Defendants seek to do.

The interrogatory responses are unequivocal. Hininger, Garfinkle and Mullenger each swore they "'relied upon, among other things . . . in-house and outside counsel.'" Mot. at 9. Lappin and CCA cited unidentified employees who, given the extensive use of counsel, clearly

- 4 -

included counsel. *Id.* at 9 n.6. The deposition testimony goes even further. Mullenger not only testified counsel were "'closely consulted,'" but he could "[n]ot . . . recall" anyone or anything "other than the advice of counsel" on which Defendants relied for disclosure purposes. *Id.* at 5-6. Hininger admitted he could not distinguish between legal advice and other information on which he relied. *Id.* at 8-9. Nonetheless, Defendants withheld thousands of documents as privileged (*see id.* at 10-11) and blocked key questioning about their omissions (*e.g.*, *id.* at 21-22).

Defendants now try to distance themselves from their own sworn testimony. They make frequent references to the depositions of lower-level employees who did ***not*** testify about advice of counsel at all, as if the lack of testimony from non-party witnesses can negate the sworn testimony of actual parties. *See, e.g.*, *id.* at 16. But Defendants themselves provided this evidence. They cannot run from it now.

### 1. The Disclosure Committee Is Inseparable from Counsel

Defendants say they "have not advanced, and will not advance, advice of counsel as a defense" in this case. *Id.* at 1. But they acknowledge that "[a]dvice of counsel is typically advanced as a defense to the element of scienter" (*id.*), and insist that they must be allowed to testify about the Disclosure Committee – and particularly about the "membership" of that committee and the fact that "'[c]ounsel reviewed corporate disclosures and attended meetings where corporate disclosures were discussed'" – to "rebut any allegation that Defendants made the challenged statements recklessly or without regard for their truth." *Id.* at 1, 16. And when asked "what the considerations were that the [D]isclosure [C]ommittee had when they . . . were deciding whether a fact was material and should be disclosed," Mullenger said they "rely on the advice of counsel" and could "[n]ot . . . recall" anything else. Mot. at 5-6. Hininger was not able to distinguish between "input from the general counsel's lawyers" at Disclosure Committee meetings and "the portions of the meetings that did not include any input from general counsel lawyers."

- 5 -

*Id.* at 8. Meanwhile, Defendants have refused to produce documents or allow testimony regarding the substance of counsel's involvement in the Disclosure Committee. *Id.* at 10-11.

On these facts, evidence "that Counsel approved Defendants' public disclosures or any alleged omissions," which Defendants agree they cannot introduce, is functionally indistinguishable from "evidence or testimony that Counsel reviewed corporate disclosures and attended meetings where corporate disclosures were discussed." *See* ECF No. 289-1, ¶¶2-3. Having elected to withhold evidence, Defendants cannot now use counsel's involvement "'as a shield and a sword.'" *Ross*, 423 F.3d at 604-05. Defendants may not have "all of the essential benefits of an advice of counsel defense" without satisfying the prerequisites. *Tourre*, 950 F. Supp. 2d at 684; *Mapp*, 2017 WL 8780604, at *2-*3; *Kokesh*, 2014 WL 11516545, at *3.

### 2. Defendants' Testimony Implicates Advice of Counsel

Separate from counsel's direct involvement in the Disclosure Committee, Defendants ask permission "to testify that they relied on [CCA's] Partnership Development team and QA Division without implicating advice of counsel at all." Opp. at 15. But the QA Division reported to the OGC, and Vice President of Partnership Development Metcalf has attested to her role as agent for the OGC. Mot. at 4. Accordingly, Defendants have asserted privilege over more than 2,000 communications involving Metcalf and Murray of QA, including many documents as to which no active attorneys are listed as senders or recipients, on the basis that non-legal employees like Metcalf and Murray were acting as agents of counsel. *Id*. at 15-17. Defendants' attempts to sever CCA's Partnership Development and QA Divisions from its OGC (Opp. at 4-5) contradict their privilege log, as well as Metcalf's declaration and their own briefing.[5]

---

5   *See also* ECF No. 225, ¶8 (Metcalf: "***I worked closely with the Legal Department or outside counsel*** in [performing everyday responsibilities] ***including seeking legal advice,*** . . . ***gathering information*** from Company employees ***to obtain legal advice***, and ***incorporating that legal advice*** from in-house or outside counsel into the Company's draft responses [to the BOP and customers], among other things."); ECF No. 201 at 18 ("'Company personnel . . . regularly interact with in-

- 6 -
Cases\4845-2499-4249.v1-8/31/20
Case 3:16-cv-02267   Document 300   Filed 08/31/20   Page 7 of 13 PageID #: 9833

Defendants claim the fact that the QA or Partnership Development Divisions "were 'housed' *under* or 'reported to' the OGC . . . is irrelevant." Opp. at 16. But again, this contradicts Hininger's testimony. Asked "on what types of communications *with all those lawyers* did you rely in making the representations," he included communications with divisions responsible for facility performance: "Those would be communications relative to performance at facilities, maybe a – *under* general counsel's office." Mot. at 7. Again, Mullenger testified that advice of counsel was the only thing on which Defendants relied from the Disclosure Committee – which included Partnership Development and QA representatives. *Id.* at 6-7. Defendants have failed to establish that *any* input from Partnership Development and QA was distinct from the OGC's oversight. Thus, allowing evidence that Defendants relied on Partnership Development and QA would hamstring Plaintiff's ability to respond due to Defendants' withholding of evidence concerning the General Counsel's oversight.

### 3. Defendants Should Lie in the Bed They Made

In their Requests for Admission directed to Plaintiff, and their related motion, Defendants demand Plaintiff admit the Individual Defendants "never sold any [CCA] securities during the Class Period except to pay tax liabilities." Ex. 13 at 6. Apparently this is part of Defendants' attempt to show that they did not profit from the alleged fraud. But Defendants have withheld over 80 documents about "'stock purchase,'" "'insider trading'" or "'stock ownership'" as privileged. Mot. at 22-23. And in years of discovery, they have chosen to not produce evidence "[e]xplain[ing] [t]he [r]easons [f]or [t]he Individual Defendants' [s]tock [t]ransactions [w]ithout [r]eference [t]o [c]ounsel." Opp. at 19; ECF No. 262 at 4-5. That choice has consequences.

---

house and outside counsel, and therefore, facilitate or assist with the provision or receipt of legal advice'").

Defendants' assertion, that Plaintiff has not "identified any document or testimony suggesting that the Individual Defendants based trading decisions on advice of counsel" (Opp. at 19), is demonstrably false. Plaintiff repeatedly cited an e-mail in which Garfinkle explained that, following receipt of a Cure Notice, CCA closed the insider trading window after "'discussions with Latham'" but chose *not* to disclose the Cure Notice to investors because doing so might "spook[] the market." Mot. at 21; Ex. 17. Yet Defendants withheld related documents and objected to related questioning, preventing "identif[ication]" of similar evidence. Opp. at 19. This is the "'shield and . . . sword'" use of privilege that courts proscribe. Mot. at 12-13.

### 4. Defendants' Good Faith Defense Relies on Counsel

Defendants have made clear they intend to rely on a good faith "statutory defense" at trial. Opp. at 19-20. In the face of their own testimony, Defendants nonetheless argue that "[t]here are several non-legal sources of Defendants' good faith, including most notably the Disclosure Committee and the various non-legal inputs to the committee." *Id.* at 20. Defendants' own testimony confirms unequivocally that the "legal" input from the Disclosure Committee is indistinguishable from its "non-legal" input, if any. And even if that were not so:

> Because legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness, that is, it would be unfair to allow a party to "use[] an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion."

*Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010), *objections overruled*, 2011 WL 2946380 (S.D.N.Y. July 14, 2011) (alteration in original). Defendants' "good faith" defense is inextricably intertwined with lawyers. It must be excluded.

### III. CONCLUSION

For these reasons and those set forth in the Motion, the Motion should be granted in full.

DATED: August 31, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 31, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

        s/ Christopher M. Wood
        CHRISTOPHER M. WOOD

        ROBBINS GELLER RUDMAN
            & DOWD LLP
        414 Union Street, Suite 900
        Nashville, TN 37219
        Telephone: 800/449-4900
        615/252-3798 (fax)

        E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,crosini@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

Case 3:16-cv-02267    Document 300    Filed 08/31/20    Page 12 of 13 PageID #: 9838

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`