# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

NIKKI BOLLINGER GRAE,        )
Individually and on Behalf of All     )
Others Similarly Situated,        )
                                )
        Plaintiff,            )
                                )
v.                               )       **Case No. 3:16-cv-02267**
                                )       **Judge Trauger/Frensley**
CORRECTIONS CORPORATION     )
OF AMERICA, et al.,            )
                                )
        Defendants.        )

## ORDER

## I. INTRODUCTION

This is a securities class action brought by Nikki Bollinger Grae on behalf of herself and others who purchased securities issued by Defendant CoreCivic (formerly Corrections Corporation of America) between February 27, 2012 and August 17, 2016. Docket No. 57 (Amended Complaint). Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated") alleges that CoreCivic and the Individual Defendants (Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin) (collectively, "CoreCivic") violated the Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*) by engaging in a scheme to defraud investors that involved making materially false and misleading statements and omissions regarding CoreCivic's business and operations. *Id.* Amalgamated alleges that these false statements included the assertion that CoreCivic's renewal rate on contracts was and would remain high because of the quality of services it provided to

government customers, including the Bureau of Prisons ("BOP"). *Id.*; Docket No. 76, p. 14-19, 24-30.

This matter is now before the Court upon CoreCivic's "Motion to Determine Sufficiency of Responses to CoreCivic's First Set of Requests for Admission and Compel Further Responses to CoreCivic's First Set of Requests for Admission and Second Set of Interrogatories." Docket No. 250. CoreCivic has also filed a Supporting Memorandum. Docket No. 251. Amalgamated has filed a Response in Opposition. Docket No. 262. CoreCivic has filed a Reply. Docket No. 282. For the reasons set forth below, CoreCivic's Motion (Docket No. 250) is GRANTED IN PART and DENIED IN PART.

## II. <u>LAW AND ANALYSIS</u>

### A. <u>Discovery Requests and Motions to Compel</u>

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery. Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1). Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Interrogatories are used to help parties prepare for trial, narrow issues to help determine necessary evidence for trial, and reduce the likelihood of surprise at trial. 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2162, at 217 (2d ed. 1994). "An interrogatory answer should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *United States ex rel. Martin v. Life Care*

*Ctrs. of Am., Inc.*, No. 1:08-CV-251, 2016 U.S. Dist. LEXIS 79892, at *8 (E.D. Tenn. Mar. 24, 2016), *quoting United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) (internal quotation marks and citation omitted). But, interrogatories "are not intended to be used to elicit a narrative response of the opposing party's entire case." *Id.*

Rule 36 of the Federal Rules of Civil Procedure governs requests for admission:

**(a) Scope and Procedure**

> **(1)** *Scope.* A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > **(A)** facts, the application of law to fact, or opinions about either; and
> >
> > **(B)** the genuineness of any described documents.
>
> **(2)** *Form; Copy of a Document.* Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying.
>
> . . .
>
> **(4)** *Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of that matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36.

In general, the scope of discovery extends to nonprivileged information that is relevant to

3

any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery. Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id.* (internal quotation marks and citation omitted).

**B. The Parties' Discovery Dispute**

CoreCivic moves to compel further responses to certain requests for admission ("RFAs") and interrogatories, which the Court will address in turn, using CoreCivic's system of organization in its Supporting Memorandum. *See* Docket No. 251, p. 2.

### 1. Requests for Admission Nos. 4, 5, 11, 16, 18, 23, 24, 34, 45-54

CoreCivic objects to Amalgamated's response that it "lacks sufficient information to answer" these RFAs, asserting that:

> [Amalgamated] has adduced an enormous amount of information in this case through document requests, interrogatories and depositions, from both CoreCivic and the BOP. On top of that discovery, there is a wealth of relevant information publicly available and readily obtainable bearing directly on these RFAs.

Docket No. 251, p. 13. CoreCivic asserts that "[Amalgamated] fails to even make the requisite representation that 'it has *made reasonable inquiry* and that the information it knows or can readily obtain is insufficient to enable it to admit or deny' the request." *Id.* (emphasis in original), *quoting* Fed. R. Civ. P. 36(a)(4). Arguments specific to each RFA are noted below.

### a) RFA No. 4

REQUEST FOR ADMISSION NO. 4:

> Admit that CoreCivic's total contract retention rate exceeded 87% in each year of the Class Period. *See* CoreCivic's 3rd Quarter 2016 Supplemental Disclosure Information dated November 2, 2016.

RESPONSE TO REQUEST FOR ADMISSION NO. 4:

> Neither admitted nor denied. Defendants' use of the term "contract retention rate" is ambiguous and undefined. In addition, Plaintiff lacks sufficient information to answer this Request for Admission or to determine whether the information presented in CoreCivic's 3Q16 Supplemental Disclosure Information, dated November 2, 2016, is accurate.

Docket No. 252-2, p. 6.

5

**b) RFA No. 5**

Admit that CoreCivic's total contract retention rate from January 1, 2011, through September 30, 2016, was 92.7%. *See* CoreCivic's 3rd Quarter 2016 Supplemental Disclosure Information dated November 2, 2016.

RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Neither admitted nor denied. Defendants' use of the term "contract retention rate" is ambiguous and undefined. In addition, Plaintiff lacks sufficient information to answer this Request for Admission or to determine whether the information presented in CoreCivic's 3Q16 Supplemental Disclosure Information, dated November 2, 2016, is accurate.

Docket No. 252-2, p. 6.

Discussing RFAs 4 and 5 together, CoreCivic argues that it is "entitled to know whether the contract retention rate reported to investors is in dispute." Docket No. 251, p. 14. Further, CoreCivic contends that "[a]t a minimum, [Amalgamated] can admit that those were the published rates, and if [Amalgamated] does not have any information sufficient to dispute those rates, or wishes to qualify its response, it can do so." Docket No. 282, p. 5-6. Amalgamated objects that:

The RFAs themselves cite [CoreCivic's] own '3rd Quarter Supplemental Disclosure Information dated November 2, 2016' as the sole basis for these RFAs . . . [a]fter years of litigating [CoreCivic's] allegedly fraudulent statements and scheme, it should go without saying that [Amalgamated] does not consider [CoreCivic's] 'disclosures' to be inherently reliable.

Docket No. 262, p. 6.

Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer the RFAs. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement

6

if it cannot admit or deny these RFAs.

### c) __RFA No. 11__

Admit that Damon Hininger never sold any CoreCivic securities during the Class period except to pay tax liabilities incident to securities vesting or pursuant to a 10b5-1 passive trading plan.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 11:</u>

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission or to determine all of Mr. Hininger's sales of CoreCivic securities during the Class Period or why he sold or did not sell CoreCivic securities during the Class Period.

Docket No. 252-2, p. 8.

CoreCivic asserts that Amalgamated should be able to definitively respond to this RFA because "[Amalgamated] requested trading records from Mr. Hininger, and, as an officer, records of his trades are included in CoreCivic's public filings." Docket No. 251, p. 14. Further, CoreCivic asserts that it is "entitled to know if [Amalgamated] plans to dispute that Mr. Hininger never personally profited from the alleged fraud." *Id.* Amalgamated objects that "[t]his RFA demands that [Amalgamated] not only read Hininger's mind, but that [Amalgamated] travel back in time to do so, *and* that [Amalgamated] also divine all Hininger's transactions in [CoreCivic] securities." Docket No. 262, p. 7 (emphasis in original). The Court agrees that the RFA asks Amalgamated to admit or deny something that Amalgamated could not possibly know; namely, Mr. Hininger's motivations for his actions. This is not a proper use of a RFA. If CoreCivic wanted to know "whether [Amalgamated] plans to dispute that Mr. Hininger never personally profited from the alleged fraud," it could have propounded that Request or asked it in an interrogatory. As written, it cannot be answered (other than by Mr. Hininger himself) and no further response is required.

**d) RFA No. 16**

Admit that Wells Fargo was the only analyst that reported on the non-renewal of the BOP's contract with the Cibola County Correctional Center.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

Docket No. 252-2, p. 10.

**e) RFA No. 34**

Admit that there are no securities analyst reports attributing the drop in CoreCivic's stock price on August 18, 2016, to the Challenged Statements.

RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

Docket No. 252-2, p. 14-15.

CoreCivic asserts that "[Amalgamated's] claim that it lacks information to respond to these requests is demonstrably false" because Amalgamated has demonstrated familiarity with the analyst reports referenced in the RFAs. Docket No. 251, p. 14. Further, CoreCivic argues that it is "entitled to know whether or not [Amalgamated] has identified any analyst reports that reported on an alleged corrective disclosure (No. 16) or attributed CoreCivic's stock price drop to the allegedly false statements (No. 34)." Docket No. 282, p. 6. Amalgamated claims that the RFAs are "far more onerous than [CoreCivic] represents" as they demand that Amalgamated admit that "Wells Fargo was *the only* analyst that reported on the non-renewal . . ." and that "*there are no securities analyst reports* attributing the drop in CoreCivic's stock price . . . ." Docket No. 262, p. 8 (emphasis in original), *quoting* RFAs Nos. 16 and 34 (internal quotation marks omitted). The

8

Court agrees that these RFAs are unanswerable as written; Amalgamated cannot possibly admit or deny that no other analyst reports exist on the topics referenced. If CoreCivic wanted to know "whether or not [Amalgamated] has identified any analyst reports that reported on an alleged corrective disclosure (No. 16) or attributed CoreCivic's stock price drop to the allegedly false statements (No. 34)," it could have propounded interrogatories asking those questions. No further response is required.

### f) **RFA No. 18**

> Admit that neither You nor anyone who invested on your behalf has any experience working in the correction industry.

> RESPONSE TO REQUEST FOR ADMISSION NO. 18:

> Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission. Further, this Request is vague, ambiguous and irrelevant to the claims and defenses at issue in this litigation.

Docket No. 252-2, p. 10.

CoreCivic contends that "[t]he notion that [Amalgamated] lacks information about even his own employment history is absurd." Docket No. 251, p. 14. Further, CoreCivic asserts that "[Amalgamated] does not dispute that it has access to employment information." Docket No. 282, p. 6. Amalgamated answers that it is "a socially responsible bank" and that in its RFAs, CoreCivic defined "You" as referring to "'Plaintiff and, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, trustors, agents, representatives, consultants, attorneys, or any other person acting on their behalf.'" Docket No. 262, p. 9. Further, Amalgamated points out that the term "correction industry" is undefined. *Id.* The Court agrees that the RFA cannot be answered as written.

More importantly, as the moving party, CoreCivic "must demonstrate that the requests are

relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at

*5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal

quotation marks omitted). The Court finds that CoreCivic has not met this burden. Nowhere in

its briefs does it offer an explanation for the relevance of the information sought by RFA No. 18.

Given that, the Court finds that, considering the factors established by Rule 26(b), further response

to this RFA would not be proportional to the needs of the case.

### g) **RFA No. 23**

Admit that the populations of the BOP Facilities consisted almost
exclusively of low-security, criminal aliens during the Class
Period.

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Neither admitted nor denied. Plaintiff lacks sufficient information
to answer this Request for Admission, which is vague and
ambiguous.

Docket No. 252-2, p. 12.

### h) **RFA No. 24**

Admit that CoreCivic currently operates at least six facilities under
contracts with the BOP.

RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Neither admitted nor denied. Plaintiff lacks sufficient information
to answer this Request for Admission.

*Id.*

CoreCivic asserts that Amalgamated should be able to admit or deny this RFA because

"[Amalgamated] has requested and [CoreCivic] produced hundreds of thousands of documents

regarding CoreCivic's BOP facilities" and "[Amalgamated] ignored publicly available

information." Docket No. 251, p. 15. Regarding RFA No. 23 specifically, CoreCivic asserts that

10

"all that RFA No. 23 asks [Amalgamated] to admit or deny" is "that CoreCivic's contracts with the BOP specify the population of inmates CoreCivic is expected to house for the BOP." Docket No. 282, p. 6. Amalgamated contends that it "cannot possibly determine whether these inmates" fit the description in the RFA, because CoreCivic has not identified "the documents that would enable [Amalgamated] to confirm the security levels, nationalities and immigration status of every BOP inmate housed in [CoreCivic's] for-profit prisons." Docket No. 262, p. 10. The Court construes that as an argument that it would be too burdensome to respond to the RFA as written, and finds, considering all of the factors set forth in Rule 26(b)(1) that the effort would not be proportional to the needs of the case. But, since CoreCivic has clarified that all it is seeking is an admission or denial from Amalgamated "that CoreCivic's contracts with the BOP specify the population of inmates CoreCivic is expected to house for the BOP," the Court will direct Amalgamated to respond to that statement as "Modified RFA No. 23."

Regarding RFA No. 24, CoreCivic argues that "[Amalgamated] does not deny that information regarding CoreCivic's current BOP facilities is publicly available." Docket No. 282, p. 6. Amalgamated responds that despite CoreCivic's reference to the production of "hundreds of thousands of documents regarding CoreCivic's BOP facilities," CoreCivic has not identified the documents containing the relevant information, and in some instances, has refused to produce the relevant documents. Docket No. 262, p. 10. Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer the RFA. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement if it cannot admit or deny the RFA.

### i) **RFA No. 45**

Admit that for each year of the Class Period, the average per capita per diem rate paid by the BOP to house inmates at the Adams County Correctional Center was lower than the Total Daily Cost per capita reported to Congress by the BOP for BOP-managed low security facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 45:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

Docket No. 252-2, p. 17.

### j) **RFA No. 46**

Admit that for each year of the Class Period, the average per capita per diem rate paid by the BOP to house inmates at the Cibola County Correctional Center was lower than the Total Daily Cost per capita reported to Congress by the BOP for BOP-managed low security facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 46:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.* at 18.

### k) **RFA No. 47**

Admit that for each year of the Class Period, the average per capita per diem rate paid by the BOP to house inmates at the Eden Detention Center was lower than the Total Daily Cost per capita reported to Congress by the BOP for BOP-managed low security facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 47:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.*

### l) **RFA No. 48**

Admit that for each year of the Class Period, the average per capita per diem rate paid by the BOP to house inmates at the McRae Correctional Facility was lower than the Total Daily Cost per capita reported to Congress by the BOP for BOP-managed low security facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 48:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.*

**m) RFA No. 49**

Admit that for each year of the Class Period, the average per capita per diem rate paid by the BOP to house inmates at the Northeast Ohio Correctional Center was lower than the Total Daily Cost per capita reported to Congress by the BOP for BOP-managed low security facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 49:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.* at 19.

**n) RFA No. 50**

Admit that the Total Daily Cost per capita reported to Congress by the BOP during the Class Period for BOP-managed low security facilities did not include the cost of the real estate on which BOP-operated facilities sit.

RESPONSE TO REQUEST FOR ADMISSION NO. 50:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.*

**o) RFA No. 51**

Admit that the Total Daily Cost per capita reported to Congress by the BOP during the Class Period for BOP-managed low security

13

facilities did not include the cost of retirement benefits for BOP employees.

RESPONSE TO REQUEST FOR ADMISSION NO. 51:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.*

p) **RFA No. 52**

Admit that the Total Daily Cost per capita reported to Congress by the BOP during the Class Period for BOP-managed low security facilities did not include the cost of constructing BOP-operated facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 52:
Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.* at 20.

q) **RFA No. 53**

Admit that the Total Daily Cost per capita reported to Congress by the BOP during the Class Period for BOP-managed low security facilities did not include the cost of maintenance repair costs exceeding $10,000.

RESPONSE TO REQUEST FOR ADMISSION NO 53:

Neither admitted nor denied. Plaintiff lacks sufficient information to answer this Request for Admission.

*Id.*

r) **RFA No. 54**

Admit that the Total Daily Cost per capita reported to Congress by the BOP during the Class period for BOP-managed low security facilities did not include the cost of litigation against those facilities.

RESPONSE TO REQUEST FOR ADMISSION NO. 54:

> Neither admitted nor denied. Plaintiff lacks sufficient information
> to answer this Request for Admission.

*Id.*

CoreCivic characterizes these RFAs as asking Amalgamated "to compare costs and per diem rates to house inmates at BOP-managed facilities (as reported to Congress by the BOP), with costs and per diem rates paid by the BOP to CoreCivic to house inmates at CoreCivic's facilities." Docket No. 251, p. 14. CoreCivic argues that the relevant information is "publicly available and contained in the voluminous fact record developed in this case." *Id.* CoreCivic disputes Amalgamated's contention that "a calculation based on the number of inmates is required to respond to these RFAs." Docket No. 282, p. 6. Amalgamated responds that "[CoreCivic] know[s] [Amalgamated] does not have sufficient records to confirm exactly how many BOP inmates [CoreCivic] housed throughout the Class Period and exactly how much the BOP paid [CoreCivic] (*e.g.*, [CoreCivic] know[s] that [it has] not given [Amalgamated] full access to [CoreCivic's] inmate rolls and general ledgers) . . . ." Docket No. 262, p. 11.

Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer these RFAs. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement if it cannot admit or deny these RFAs.

### 2. **Requests for Admission Nos. 6, 8, 14, 15, 17, 20, 22, 33, 39, 40**

CoreCivic groups these RFAs together because in each instance, Amalgamated responded by objecting that each request "'fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires [Amalgamated] to authenticate' unattached documents, which 'speak for

themselves.'"  Docket No. 251, p. 15, *quoting* Docket No. 252-1, p. 1-4.  CoreCivic argues that

"[n]one of the RFAs ask [Amalgamated] to admit the genuineness of a document" and states that

the referenced documents are mentioned solely "in order to avoid any ambiguity."  Docket No.

251, p. 16.  Further, CoreCivic contends that "[e]ven if these RFAs could be interpreted as

implicating the genuineness of any document, Rule 36 remains inapplicable because the

documents referenced . . . are already in [Amalgamated's] possession."  *Id.*  CoreCivic also argues

that it is an improper evasion to state that a document "speaks for itself."  *Id.* at 17.

### a) **RFA No. 6**

Admit that "Prison Riot Leaves One Dead, Others Injured," which
reported on a disturbance at the Adams County Correctional
Center, was published in the Natchez, MS *Democrat* on May 21,
2012.

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Neither admitted nor denied.  This Request fails to comply with
Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires
Plaintiff to authenticate an unattached document and then attest to
its content, which speaks for itself.  Plaintiff admits that a "riot"
occurred at the Adams County Correctional Center on May 20,
2012.

Docket No. 252-2, p. 6-7.

### b) **RFA No. 8**

Admit that "They Knew Something Was Going On," which
reported that CoreCivic had received a "Cure Notice" from the
BOP relating to operations at the Cibola County Correctional
Center, was published in *The Nation* on June 15, 2016.

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Neither admitted nor denied.  This Request fails to comply with
Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires
Plaintiff to authenticate an unattached document and then attest to
its content, which speaks for itself.

16

*Id.* at 7.

CoreCivic asserts that "[Amalgamated] has these articles – it included them as exhibits to court filings and used them as exhibits in depositions." Docket No. 251, p. 16. Regarding RFA No. 6. Amalgamated asserts that it "has no reasonably available information that would enable it to confirm that statement" because "[m]erely acknowledging or even citing this article hardly confirms when it first appeared in print." Docket No. 262, p. 12. Further, Amalgamated argues that the RFA mischaracterizes the article:

> There is no article from the Natchez, MS *Democrat* that reported on a mere "disturbance" at [CoreCivic's] Adams County Correctional Center, rather there is an article that reported on a "riot" at [CoreCivic's] Adams County Correctional Center with no mention of the word "disturbance." [Amalgamated] has no obligation to accede to [CoreCivic's] efforts to use RFAs to slip misinformation into the record.

*Id.*

Regarding RFA No. 8, Amalgamated argues that "it appears to be false that *The Nation* has ever published an article titled "They Knew Something Was Going On;" that the RFA describes a different article than the one Amalgamated has used and is attached to CoreCivic's Motion; and that Amalgamated "has no reasonably available information" that would enable it to confirm the article's print date. Docket No. 262, p. 13.

Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer these RFAs. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement if it cannot admit or deny these RFAs.

**c) RFA No. 14**

Admit that on August 1, 2016, an ABC affiliate in Albuquerque, New Mexico, reported on the non-renewal on the BOP's contract for the Cibola County Correctional Center.

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires Plaintiff to authenticate an unattached document and then attest to its content, which speaks for itself.

Docket No. 252-2, p. 9.

**d) RFA No. 15**

Admit that on August 2, 2016, an article published in *The Gallup Independent* cited a letter from a CoreCivic spokewoman confirming the non-renewal of the BOP's contract for the Cibola County Correctional Center.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:
Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires Plaintiff to authenticate an unattached document and then attest to its content, which speaks for itself.

*Id.*

**e) RFA No. 17**

Admit that Wells Fargo's analyst report dated August 4, 2016, observed that the non-renewal of the BOP's contract with the Cibola County Correctional Center was announced publicly prior to August 4.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires Plaintiff to authenticate an unattached document and then attest to its content, which speaks for itself.

*Id.* at 10.

CoreCivic contends that these RFAs refer to publicly available documents and analyst reports cited in the expert reports of either Lucy Allen, Stephen Feinstein, or both. Docket No. 251, p. 17. Amalgamated characterizes these RFAs as "so imprecise as to make it far from clear what they even refer to." Docket No. 262, p. 13. Specifically with regard to RFA No. 14, Amalgamated asks:

> What ABC affiliate? What reporter? What time on August 1, 2016? Where can this footage be viewed? How can viewing such footage confirm when it aired? If such a report aired and is important to [CoreCivic], why did [it] fail to depose a representative of "an ABC affiliate in Albuquerque, New Mexico" to authenticate it?

*Id.* at 14. Similar arguments are made with respect to RFAs Nos. 15 and 17. *See id.* at 14-15.

Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer these RFAs. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement if it cannot admit or deny these RFAs.

### f) <u>RFA No. 20</u>

> Admit that statements substantially similar to the statement quoted in the preceding Request also appeared in CoreCivic's 10-K for 2011, filed on February 27, 2012 (the first day of the Class Period), and in its 10-Ks for 2012 through 2015, filed during the Class Period on February 27, 2013, February 27, 2014, February 25, 2015, and February 25, 2016, respectively.

> <u>RESPONSE TO REQUEST FOR ADMISSION NO. 20</u>:

> Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2).

Docket No. 252-2, p. 11.

**g) RFA No. 22**

Admit that statements substantially similar to the statement quoted in the preceding Request also appeared in CoreCivic's 10-K for 2011, filed on February 27, 2012 (the first day of the Class Period), and in its 10-Ks for 2012 through 2015, filed during the Class Period on February 27, 2013, February 27, 2014, February 25, 2015, and February 25, 2016, respectively.

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2).

*Id.* at 12.

CoreCivic asserts that these RFAs "refer to CoreCivic's Form 10-Ks for 2011 and each year of the Class Period, which are cited throughout [Amalgamated's] Complaint (and are also publicly available)." Docket No. 251, p. 17. Further, CoreCivic argues that "[a] simple search for the first words of each risk disclosure at issue identifies the language in CoreCivic's risk disclosures." Docket No. 282, p. 8. Amalgamated distinguishes these RFAs from RFAs Nos. 19 and 21, which "set forth actual quotes from [CoreCivic's] SEC filings" such that Amalgamated was able to "verify quoted language." Docket No. 262, p. 16. RFAs 20 and 22, in contrast, "are unclear as to what portions of the filings they refer" although the language is "supposedly 'substantially similar'" to the quotes in RFAs 19 and 21. *Id.*

The Court finds that these RFAs improperly ask Amalgamated to interpret the term "substantially similar" (which the RFAs appear not to define) in order to respond. If CoreCivic wanted to have Amalgamated confirm actual language from CoreCivic's filings, it could have included that language in the RFAs as it did in RFAs 19 and 21. As the RFAs are currently worded, Amalgamated's responses are sufficient.

**h) RFA No. 33**

> Admit that Canaccord Genuity stated that "the political environment is a large factor and driver behind the DOJ's memo" on August 23, 2016, and called the OIG Report "politically motivated" on January 13, 2017.

> RESPONSE TO REQUEST FOR ADMISSION NO. 33:

> Neither admitted nor denied. This Request fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires Plaintiff to authenticate an unattached document and then attest to its content, which speaks for itself.

Docket No. 252-2, p. 14.

CoreCivic asserts that this RFA refers to an analyst report from Canaccord Genuity, and that "[Amalgamated's] expert, Dr. Feinstein, referred to Canaccord Genuity analyst reports throughout his report." Docket No. 251, p. 17. Amalgamated identifies several "problems" with this RFA, including that "it appears to refer to two different statements, apparently made on two different dates, possibly by two different speakers;" "there is absolutely no description as to the medium in which either alleged statement was made;" "there is no indication as to why these supposed statements are remotely relevant;" and "if some individual(s) from Canaccord Genuity made statements that are important to [CoreCivic], why did [it] fail to depose the individual(s) or identify them in their Rule 26 disclosures (or in their Motion) . . . ?" Docket No. 262, p. 16-17.

As the moving party, CoreCivic "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). The Court finds that CoreCivic has not met this burden. Nowhere in its briefs does it offer an explanation for the relevance of the information sought by RFA No. 33. Given that, the Court finds that, considering the factors established by Rule 26(b), further response to this RFA would not be proportional to the needs of the case.

i) **RFA No. 39**

Admit that in every Contractor Performance Assessment Report
(CPAR) for the BOP Facilities during the Class Period, the
contracting officer stated that they would recommend CoreCivic
for similar contracts in the future.

RESPONSE TO REQUEST FOR ADMISSION NO. 39:

Neither admitted nor denied. This Request fails to comply with
Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires
Plaintiff to authenticate an unspecified number of unattached and
unidentified reports and then attest to their contents, which speak
for themselves.

j) **RFA No. 40**

Admit that in no Contractor Performance Assessment Reports
(CPAR) for the BOP Facilities during the Class Period did the
contracting officer state that they would not recommend CoreCivic
for similar contracts in the future.

RESPONSE TO REQUEST FOR ADMISSION NO. 40:

Neither admitted nor denied. This Request fails to comply with
Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires
Plaintiff to authenticate an unspecified number of unattached and
unidentified reports and then attest to their contents, which speak
for themselves.

Docket No. 252-2, p. 15-16.

CoreCivic states that these RFAs "refer to Contractor Performance Assessment Reports

("CPARs"), which have been produced to [Amalgamated] during discovery." Docket No. 251, p.

17. CoreCivic further takes issue with Amalgamated's "hyper-technical denial of the RFA based

on the slightly different language in 1 out of 29 CPARs" and argues that:

CoreCivic is entitled to understand whether [Amalgamated] denies
that in every one of the 29 CPARs, the officer stated it would
recommend CoreCivic for similar contracts (RFA No. 39); and not

one of those CPARs states that the officer would not recommend
CoreCivic for similar contracts in the future (RFA No. 40).

Docket No. 282, p. 8.

Amalgamated objects that it has "no way of knowing whether it has received" all of the relevant CPARs and that the documents that it does have do not contain the language set forth in the RFAs. Docket No. 262, p. 17-18. Amalgamated states that it will be amending its response to RFA 39 accordingly. *Id.* at 17. Regarding RFA No. 40, Amalgamated asserts that:

> The best [Amalgamated] can say is that the documents [CoreCivic]
> identif[ies] as CPARs in its response to [Amalgamated's]
> Interrogatory No. 26 . . . do not contain the words "recommend,"
> "similar" or "future," so these documents do not state that the
> contracting officer would or would not "recommend CoreCivic for
> similar contracts in the future."

*Id.* at 18.

Pursuant to Rule 36, Amalgamated is entitled to respond by stating that it lacks sufficient information to answer these RFAs. But, that response must be accompanied by a statement indicating that Amalgamated has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). In order to comply with the Rule, Amalgamated must supplement its Responses to include this statement if it cannot admit or deny these RFAs.

### 3. **Interrogatories Nos. 29-40**

CoreCivic describes these as "companion" Interrogatories to certain RFAs (3, 5, 11, 18, 23, 24, 25, 28, 34, 40, 45, and 50), and asserts that their purpose is to get Amalgamated to provide factual support for any RFA answers that are not unqualified admissions. Docket No. 251, p. 19. Generally, CoreCivic argues that Amalgamated's responses do not comply with Rule 33. *Id.*

### a) **Interrogatory No. 29**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 3 is not an unqualified admission, please identify all statements supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 29:

Plaintiff reiterates each of its General Objections above. Further, in response to Interrogatory No. 29 Plaintiff refers Defendants to its objections and response to Interrogatory No. 13.

Docket No. 252-3, p. 153.

Stating that it propounded RFA No. 3 "hoping to narrow the issues for trial," CoreCivic argues that it is "entitled to know whether [Amalgamated] plans to argue that the challenged statements referred exclusively to BOP facilities, as well as the facts that support such an assertion." Docket No. 251, p. 19; Docket No. 282, p. 8. Amalgamated answers that "[i]n response [to the RFA], [Amalgamated] referred to its response to Interrogatory No. 13 – which spans 138 pages – rather than repeating that full response verbatim" and that while CoreCivic "might not agree that the 138-page explanation supports [Amalgamated's] denial of RFA No. 3 . . . Interrogatory No. 29 asks [Amalgamated] to identify what it contends supports its denial, and that is what [Amalgamated] has done." Docket No. 262, p. 19-20.

Generally, "[a]n interrogatory answer should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Life Care*, 2016 U.S. Dist. LEXIS 79892, at *8. Yet in this case, the Interrogatory asks for "all statements" supporting Amalgamated's denial, which necessarily calls for an extensive narrative that Amalgamated contends it has already provided in response to another Interrogatory. The Court finds that the response is appropriate under the circumstances, which include a case based upon claims of "[CoreCivic] deceiving

24

investors with statements that were rendered misleading by *omitting* information that exclusively pertained to BOP facilities."  Docket No. 262, p. 19 (emphasis added).  Considering that claim, a Request to "[a]dmit that none of the Challenged Statements in the Complaint exclusively pertained to the BOP Facilities" might reasonably require a lengthy response.  Docket No. 252-2, p. 3.  While it would have been more proper for Amalgamated to respond without referencing the answer to another interrogatory, the Court finds it permissible given that the answer in question is apparently 138 pages long.

### b)  Interrogatory No. 36

> With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 28 is not an unqualified admission, please identify all facts supporting such qualification or denial.

> RESPONSE TO INTERROGATORY NO. 36:

> Plaintiff reiterates each of its General Objections above.  In addition, the Yates Memo speaks for itself and discusses, among other things, the Department of Justice's conclusion that private prisons, including CCA, "compare poorly to our own Bureau facilities."

Docket No. 252-3, p. 155.

CoreCivic states that this Interrogatory "seeks, appropriately, to understand the factual basis for Plaintiff's inability to admit that the Yates Memo at the heart of its loss causation theory *cites* nothing besides the OIG Report as support for the government's decision to reduce its use of private prisons."  Docket No. 251, p. 20 (emphasis in original).  Further, CoreCivic argues that "[Amalgamated's] hyper-technical explanation as to why it offered only a single fact in support of its denial is evasive."  Docket No. 282, p. 8.  Amalgamated responds that "[b]y asserting that the Yates Memo cites 'nothing' other than the OIG Report in support for the announced reduction in the use of private prisons, [Amalgamated] need identify only one item other than the OIG Report

in order to have a complete basis for denial – any other support is superfluous." Docket No. 262, p. 20. The Court agrees. RFA No. 28 requests that Amalgamated "[a]dmit that the Yates Memo cites *nothing* besides the OIG Report as support for the government's decision to reduce its use of private prisons." Docket No. 252-2, p. 11 (emphasis added). Amalgamated responded by denying the RFA. *Id.* In response to Interrogatory No. 36, Amalgamated identified what it contends is an additional citation of the Yates Memo. Docket No. 252-3, p. 153; *see* Docket No. 262, p. 20-21. This response is sufficient.

### c) Interrogatory No. 38

> With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 40 is not an unqualified admission, please identify all facts supporting such qualification or denial.

> RESPONSE TO INTERROGATORY NO. 38:

> Plaintiff reiterates each of its General Objections above. In addition, RFA No. 40 fails to comply with Fed. R. Civ. P. 36(a)(2) because the Request implicitly requires Plaintiff to authenticate an unspecified number of unattached and unidentified reports and then attest to their contents, which speak for themselves. Because RFA No. 40 is improper, no further response is required.

Docket No. 252-3, p. 156.

CoreCivic asserts that Amalgamated has all of the CPARs in its possession, and argues that Interrogatory No. 38 "seeks to understand the facts supporting [Amalgamated's] inability to review this small set of documents and admit or deny that none of them contain the statement referenced in RFA No. 40." Docket No. 251, p. 20. Amalgamated reiterates its argument from the consideration of RFA 40 (discussed above); namely, that it has no way of knowing whether it has received every CPAR for the BOP Facilities during the Class Period. Docket No. 262, p. 22. Regarding its Interrogatory Response, Amalgamated restates its objections. *Id.*, *quoting* Docket

26

No. 252-3, p. 154.

As the moving party, CoreCivic "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). The Court finds that CoreCivic has not met this burden. Nowhere in its briefs does it offer an explanation for the relevance of the information sought by Interrogatory No. 38. Given that, the Court finds that, considering the factors established by Rule 26(b), further response to this Interrogatory would not be proportional to the needs of the case.

### d) **Interrogatory No. 30**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 5 is not an unqualified admission, please identify all statements supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 30:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' Requests for Admission ("RFA") No. 5, Plaintiff is not in a position to identify all facts supporting its response. In addition, Defendants' use of the term "contract retention rate" is ambiguous and undefined.

### e) **Interrogatory No. 31**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 11 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 31:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' Requests for Admission ("RFA") No. 11, Plaintiff is not in a position to identify all facts supporting its response.

**f) Interrogatory No. 32**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 18 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 32:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 18, Plaintiff is not in a position to identify all facts supporting its response.

**g) Interrogatory No. 33**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 23 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 33:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 23, Plaintiff is not in a position to identify all facts supporting its response.

**h) Interrogatory No. 34**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 24 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 34:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 24, Plaintiff is not in a position to identify all facts supporting its response.

**i) Interrogatory No. 35**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 25 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 35:

Plaintiff reiterates each of its General Objections above. In addition, the Complaint speaks for itself and alleges that CoreCivic's stock price was artificially inflated throughout the Class Period.

. . .

j) **Interrogatory No. 37**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 34 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 37:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 34, Plaintiff is not in a position to identify all facts supporting its response.

. . .

k) **Interrogatory No. 39**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 45 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 39:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 45, Plaintiff is not in a position to identify all facts supporting its response.

l) **Interrogatory No. 40**

With respect to CoreCivic's First Set of Requests for Admission, if your response to Request for Admission No. 50 is not an unqualified admission, please identify all facts supporting such qualification or denial.

RESPONSE TO INTERROGATORY NO. 40:

Plaintiff reiterates each of its General Objections above. In addition, because Plaintiff lacks sufficient information to admit or deny Defendants' RFA No. 50, Plaintiff is not in a position to identify all facts supporting its response.

Docket No. 252-3, p. 153-57.

Regarding this group of Interrogatories, CoreCivic asserts that they "concern RFA Nos. 5, 11, 18, 23, 24, 25, 34, 45, and 50, which, as discussed above, seek admission of facts verifiable based on publicly available documents or facts exclusively within [Amalgamated's] possession." Docket No. 251, p. 20. CoreCivic argues that it is "at least entitled to an explanation of *why* [Amalgamated] claims to 'lack sufficient information to admit or deny' the referenced RFAs." *Id.* (emphasis in original). Amalgamated asserts that it has addressed each of the disputed RFAs and the reasons for its answers in its Response. Docket No. 262, p. 22. CoreCivic replies that it would like to "conduct a limited deposition of [Amalgamated's] verifier on the preparation of these responses and any inquiry she undertook prior to verifying them." Docket No. 282, p. 9.

Above, the Court has already analyzed the sufficiency or lack thereof of Amalgamated's answers to the disputed RFAs for which these are the "companion" Interrogatories, and directed the Parties accordingly. Beyond that, the Court finds that CoreCivic has not met its burden to establish the relevancy of additional responses to these Interrogatories. Therefore, considering all of the factors set forth in Rule 26(b), such discovery is not proportional to the needs of the case and will not be ordered. Further, CoreCivic's request to take the deposition of Amalgamated's verifier to ask questions regarding "the preparation of these responses and any inquiry she

undertook prior to verifying them" is denied, as CoreCivic has not established the relevance of such "discovery about discovery."

### 4. **Interrogatories Nos. 17-21, 27-28**

#### a) **Interrogatory No. 17**

State each disclosure that you contend revealed the relevant truth regarding one or more of the Challenged Statements listed in your response to Interrogatory No. 12.

RESPONSE TO INTERROGATORY NO. 17:

Plaintiff reiterates each of its General Objections set forth above. Plaintiff further objects that Interrogatory No. 17 calls for legal conclusions, mischaracterizes the pleadings or Plaintiff's legal theories, and is unduly burdensome and harassing to the extent it seeks information already available in the litigation, including in the pleadings, the briefing and the Court's Orders on Defendants' motion to dismiss the complaint and Plaintiff's motions for class certification and reconsideration, and the expert reports submitted by Steven P. Feinstein in support of that briefing. Plaintiff further objects to the extent that Defendants prematurely seek information subject to expert testimony and reports that will be produced at a later stage of this litigation pursuant to the Court's Revised Case Management Order dated March 20, 2020.

Subject to and without waiving the foregoing objections, Plaintiff responds by citing the Court's Order on Defendants' motion to dismiss (ECF No. 76 at 36-37) and the Court's Order on Plaintiff's motion for reconsideration (ECF No. 165 at 33 n.8).

#### b) **Interrogatory No. 18**

For each disclosure that You identified in response to Interrogatory No. 17, describe in detail which Challenged Statement(s) was corrected and how the alleged disclosure revealed the relevant truth about the Challenged Statement(s).

INTERROGATORY NO. 18:

In response to Interrogatory No. 18 Plaintiff reiterates the objections and response to Interrogatory No. 17.

#### c) **Interrogatory No. 19**

For each disclosure that You identified in response to Interrogatory No. 17, describe in detail when the purportedly corrective information could have been disclosed and what information should have been disclosed at that time.

<u>RESPONSE TO INTERROGATORY NO. 19</u>

In response to Interrogatory No. 19, Plaintiff reiterates the objections and responses to Interrogatory Nos. 13 and 17. Plaintiff further objects that defendants [*sic*] "should" have done is irrelevant to Plaintiff's claims.

**d) <u>Interrogatory No. 20</u>**

For each disclosure that You identified in response to Interrogatory No. 17 and allege corrected a prior omission, describe in detail what material information was revealed by the alleged disclosure and how that information corrects the alleged omission.

<u>RESPONSE TO INTERROGATORY NO. 20</u>

In response to Interrogatory No. 20, Plaintiff reiterates the objections and responses to Interrogatory No. 17. Plaintiff also specifically objects and reiterates that Interrogatory No. 20 calls for expert testimony.

**e) <u>Interrogatory No. 21</u>**

For each disclosure that You identified in response to Interrogatory No. 17 and allege corrected a prior omission, describe in detail when the purportedly corrective information could have been disclosed and what material information should have been disclosed at that time.

<u>RESPONSE TO INTERROGATORY NO. 21</u>:

In response to Interrogatory No. 21, Plaintiff reiterates the objections and responses to Interrogatory Nos. 13 and 17. Plaintiff further objects that what Defendants "should" have done is irrelevant to Plaintiff's claims.

. . .

**f) <u>Interrogatory No. 27</u>**

Describe in detail all facts that the Yates Memo revealed that were not already known to the public as of August 17, 2016.

RESPONSE TO INTERROGATORY NO. 27:

Plaintiff reiterates each of its General Objections set forth above. Plaintiff further objects that Interrogatory No. 27 calls for expert testimony and is unduly burdensome and harassing to the extent it seeks information already available in the litigation, including in the pleadings, the briefing and the Court's Orders on Defendants' motion to dismiss the complaint and Plaintiff's motions for class certification and reconsideration, and the expert reports submitted by Steven P. Feinstein in support of that briefing.

Subject to and without waiving the foregoing objections, Plaintiff responds that the parties' experts agree that the Yates Memo revealed new information not already known to the public. *See, e.g.*, Transcript of Deposition of Lucy Allen at 48:25-49:7.

## g) **Interrogatory No. 28**

State the basis for, and identify all Documents supporting, your contention that CoreCivic's stock price dropped on August 18, 2016, as a result of investors learning that CoreCivic did not provide quality corrections services or cost savings to its government partners, and not because of some other reason.

RESPONSE TO INTERROGATORY NO. 28

Plaintiff objects that Interrogatory No. 28 mischaracterizes the pleadings, calls for expert testimony, and is unduly burdensome and harassing to the extent it seeks information already available in the litigation, including in the pleadings and Plaintiff's legal theories, the briefing and the Court's Orders on Defendants' motion to dismiss the complaint and Plaintiff's motions for class certification and reconsideration, and the expert reports submitted by Steven P. Feinstein in support of that briefing.

Docket No. 252-3, p. 147-49, 152-53.

CoreCivic asserts that these Interrogatories "seek[] to understand [Amalgamated's] theory of loss causation – an *essential* element of its Section 10(b) claim – and identify all facts supporting that theory." Docket No. 251, p. 21 (emphasis in original). CoreCivic argues that Amalgamated

has responded by identifying materials that are not "*factual evidence* capable of being used by either party" as required by Rule 33(c). *Id.* at 22-23 (emphasis in original). Further, CoreCivic contends that "[t]he fact that [Amalgamated] may offer expert testimony on loss causation does not obviate its obligation to respond to Interrogatories with the factual bases for its claim, based on information currently known to [Amalgamated]." *Id.* at 23. Amalgamated responds that "[Amalgamated's] forthcoming expert report(s) will provide the more-complete answers to these 'expertise-intensive questions'" and promises that "[Amalgamated] will supplement its answers based on the expert report(s) when they have all been submitted." Docket No. 262, p. 24. But, CoreCivic argues that Amalgamated's expert disclosures (served on August 7, 2020, after the Motion was filed) "did not contain any new opinions regarding what caused CoreCivic's stock price to decline, each alleged corrective disclosure, or what new information those disclosures purportedly 'corrected' or 'revealed'" and further, "that report was submitted over 10 days ago, and [Amalgamated] has yet to provide any supplement." Docket No. 282, p. 9.

While Amalgamated seemed certain that its expert report(s) would provide the additional information that CoreCivic requires, it seems that such is not the case. As Amalgamated has agreed to supplement its responses to these Interrogatories based on the expert reports, the Court orders it to do so no later than October 20, 2020.

## III. <u>CONCLUSION</u>

For the foregoing reasons, CoreCivic's Motion (Docket No. 250) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**

34