UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NIKKI BOLLINGER GRAE, Individually and
on Behalf of All Others Similarly Situated,

     Plaintiff,

 vs.

CORRECTIONS CORPORATION OF
AMERICA, et al.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:16-cv-02267

Honorable Aleta A. Trauger

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY
SANCTIONS

**[FILED UNDER SEAL]**

4845-1597-3070.v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND RELATED TO DEFENDANTS' PRIVILEGE CLAIMS ....................2

    A. Defendants Produce Untimely Privilege Logs Months After Withholding Purportedly Privileged Documents ............................................................3

    B. Defendants Are on Notice Their Privilege Logs Are Deficient..............................3

    C. Following a Discovery Stay and Lengthy Process to Correct Errors in Defendants' Logs, Defendants Continue to Withhold Privileged Documents on Insufficient Grounds ..........................................................4

    D. Faced with Potential Court Intervention, Defendants Concede They Improperly Withheld Privileged Documents but Continue to Maintain Their Other Privilege Claims Are Proper ..............................................5

III. OVERVIEW OF FINDINGS REGARDING INSUFFICIENT PRIVILEGE ASSERTIONS AND IMPROPERLY WITHHELD DOCUMENTS ...............................5

    E. Magistrate Judge Frensley's Review Confirmed Defendants Improperly Withheld Documents ...................................................................7

    F. Facing Imminent Court Review, Defendants Produce More than 200 Documents that They Previously Maintained Were Privileged..............................8

    G. The Special Master Required Additional Information to Assess Defendants' Claims and Found that They Improperly Withheld Documents ...........................................................................................11

IV. LEGAL STANDARD........................................................................................13

V. ARGUMENT .....................................................................................................16

    A. Defendants' Discovery Abuses Support Sanctions Under Rule 37 .....................17

    B. Application of the Sixth Circuit's Analogous *Beaven* Test Also Warrants Sanctions ........................................................................................21

    C. An Adverse Inference Sanction Is Appropriately Tailored to Defendants' Discovery Abuses .............................................................................23

    D. Special Master Fees Should Be Borne Entirely by Defendants............................24

VI. CONCLUSION....................................................................................................25

4845-1597-3070.v1

Case 3:16-cv-02267     Document 315     Filed 10/06/20     Page 2 of 34 PageID #: 9945

# TABLE OF AUTHORITIES

## CASES

*Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*,
    29 F.3d 863 (3d Cir. 1994)................................................................19

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs*,
    69 F.3d 337 (9th Cir. 1995) ......................................................16, 22

*Arch Ins. Co. v. Broan-NuTone, LLC*,
    509 F. App'x 453 (6th Cir. 2012) ...........................................2, 15, 23

*Beaven v. U.S. Dep't of Just.*,
    622 F.3d 540 (6th Cir. 2010) ...........................................15, 17, 21, 22

*Black v. Franklin Cnty., Ky.*,
    2006 WL 8446198 (E.D. Ky. Dec. 29, 2006) ...................................14

*Byrd v. Alpha All. Ins. Corp.*,
    518 F. App'x 380 (6th Cir. 2013) .....................................................16

*Cecil Corley Motor Co., Inc. v. Gen. Motors Corp.*,
    380 F. Supp. 819 (M.D. Tenn. 1974)........................................14, 20

*Clay v. United Parcel Serv., Inc.*,
    501 F.3d 695 (6th Cir. 2007) ................................................14, 20, 22

*Clemons v. Corr. Corp. of Am., Inc.*,
    2014 WL 3507299 (E.D. Tenn. July 14, 2014) ......................16, 22, 24

*Coral Grp., Inc. v. Shell Oil Co.*,
    286 F.R.D. 426 (W.D. Mo. 2012), *aff'd sub nom.*
    *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919
    (8th Cir. 2014)................................................................................20

*Crown Battery Mfg. Co. v. Club Car, Inc.*,
    185 F. Supp. 3d 987 (N.D. Ohio 2016).............................................16

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
    2018 WL 1542040 (M.D. Tenn. Mar. 29, 2018),
    *aff'd as modified sub nom.*
    *EPAC Techs., Inc. v. Thomas Nelson, Inc.*,
    2018 WL 3322305 (M.D. Tenn. May 14, 2018).................................24

4845-1597-3070.v1

*Evans v. Port Auth. of N.Y. & N.J.*,
  201 F.R.D. 96 (S.D.N.Y. 2001) ................................................................18

*Flagg v. City of Detroit*,
  715 F.3d 165 (6th Cir. 2013) ................................................................15

*Genesco, Inc. v. Visa U.S.A., Inc.*,
  302 F.R.D. 168 (M.D. Tenn. 2014) ........................................................18

*Grange Mut. Cas. Co. v. Mack*,
  270 F. App'x 372 (6th Cir. 2008) ..........................................................14

*Harmon v. CSX Transp., Inc.*,
  110 F.3d 364 (6th Cir. 1997) ................................................................16

*In re Black Diamond Mining Co., LLC*,
  514 B.R. 230 (E.D. Ky. 2014) ..................................................15, 20, 21

*In re Duramax Diesel Litig.*,
  2020 WL 5596096 (E.D. Mich. Sept. 18, 2020) .....................................15

*In re Powerhouse Licensing, LLC*,
  441 F.3d 467 (6th Cir. 2006) ................................................................18

*Kan. City Power & Light Co. v. United States*,
  139 Fed. Cl. 546 (2018) ........................................................................14

*Keck v. Graham Hotel Sys., Inc.*,
  566 F.3d 634 (6th Cir. 2009) ..........................................................14, 20

*Klig v. Deloitte LLP*,
  2010 WL 3489735 (Del. Ch. Sept. 7, 2010) ..........................................19

*Phillips v. Cohen*,
  400 F.3d 388 (6th Cir. 2005) ................................................................14

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ...................................................................15

*Ross v. Home Depot USA Inc.*,
  2014 WL 2805094 (S.D. Ohio June 20, 2014) .......................................23

*Tate v. Gen. Motors LLC*,
  2017 WL 6558580 (N.D. Ohio Dec. 20, 2017) .......................................16

- iii -

*Trimboli v. Maxim Crane Works, L.P.*,
   2020 WL 3546810 (M.D. Tenn. June 30, 2020).......................................................................14

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 37(d)(3)...........................................................................................................................14
   Rule 26......................................................................................................................................9
   Rule 26(b)(5)(A) ...............................................................................................................18, 25
   Rule 37 ........................................................................................................................... *passim*
   Rule 53....................................................................................................................................24
   Rule 53(g)(3)..........................................................................................................................24

# I.    INTRODUCTION

For the several years Plaintiff[1] and the Class have spent litigating this action, Defendants have repeatedly improperly withheld documents on privilege grounds and repeatedly provided inadequate descriptions of the bases for withholding those documents.  And after multiple rounds of judicial review, Defendants are still improperly withholding over 1,000 relevant documents.  Fact discovery has been closed for months, and expert disclosures have been made.  This means Defendants have improperly deprived Plaintiff of the opportunity to review and use all these relevant documents during discovery, at summary judgment and at trial, even though the documents were responsive to requests served in 2018.  As the Court implicitly observed on June 5, 2020 (ECF No. 221 at 22), when it suggested corrected entries would likely lead to additional conflicts, we are well beyond the point where Defendants "fixing" their privilege logs would fix anything else.  Further, a waiver of privilege, which is a remedy many courts embrace for improper withholding of privileged documents and insufficient privilege logs, at this juncture would prejudice Plaintiff, requiring a redo of fact discovery, resulting in added delay for those who have suffered due to Defendants' scheme that artificially inflated the value of CCA's stock.  Such a remedy would also not serve as a deterrent for future cases as it would mean key documents may be improperly withheld and/or obscured in an inadequate privilege log, the only risk being that they might have to be disclosed much later, after the close of fact discovery.  Instead of these inadequate remedies, Plaintiff seeks a sanction that would simply provide the triers of fact with a more complete picture of what occurred here and allow them to draw their own inferences.

---

[1]    "Plaintiff" is Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund.  "Defendants" are Corrections Corporation of America ("CCA"), Damon T. Hininger, David M. Garfinkle, Todd Mullenger and Harley G. Lappin. Following the filing of this action, Defendants rebranded CCA and now refer to it as CoreCivic.

4845-1597-3070.v1

Under Rule 37 of the Federal Rules of Civil Procedure, the Court has broad discretion in crafting an appropriate sanction for discovery abuses, ranging from default judgment and issue preclusion to, as Plaintiff seeks here, a lesser remedy of a permissive adverse-inference instruction. Not only did Defendants improperly withhold documents under the guise of privilege, they continued to block the disclosure of non-privileged documents, assuring the Court that thorough reviews for privilege had been conducted and that their privilege assertions were proper. The findings of Magistrate Judge Frensley, coupled with those of Special Master Hon. Faith S. Hochberg (ret.), as well as Defendants' own admissions, confirm that Defendants improperly withheld as privileged hundreds of relevant, non-privileged documents and that their inadequate privilege logs made this bad situation worse. Nevertheless, Plaintiff seeks only a permissive adverse inference that would provide the jury with a brief description of the judicial findings and allow, but not require, the jury to infer that Defendants withheld non-privileged documents that would have been harmful to them. This sanction is considered the least-harsh punishment because it leaves it to "the jury's *discretion* to draw inferences warranted by the evidence," something the jury could do "with or without a permissive instruction" (but only if they receive the relevant background information). *Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 459 (6th Cir. 2012) (emphasis in original).[2]

## II.  BACKGROUND RELATED TO DEFENDANTS' PRIVILEGE CLAIMS

Plaintiff raised objections to Defendants' privilege assertions in 2018. Two years have now passed, during which Defendants have been given every opportunity, yet failed to remedy the deficiencies in their productions and privilege logs.

---

[2]  All emphasis added and citations and footnotes omitted unless otherwise indicated.

4845-1597-3070.v1

## A. Defendants Produce Untimely Privilege Logs Months After Withholding Purportedly Privileged Documents

In April 2018, Defendants began producing documents responsive to discovery requests served in January 2018 (and later June 1, 2018), and withholding documents on privilege grounds, without identifying the grounds for doing so, forcing Plaintiff on July 26, 2018, to seek privilege logs from Defendants. ECF No. 195 at 2-3. Not until October 2018 did Defendants first attempt to justify their privilege claims in a log. *Id.* at 3-4. On April 30, 2020, Magistrate Judge Frensley found Defendants' privilege logs untimely but declined to impose total waiver of privilege as too "harsh" a punishment. ECF No. 211 at 7. Since Judge Frensley's Order, Defendants have supplemented their privilege logs for documents withheld since summer 2018 three times (on May 6, June 19 and July 15, 2020).

## B. Defendants Are on Notice Their Privilege Logs Are Deficient

Once Plaintiff received Defendants' privilege logs, on November 21, 2018, Plaintiff spelled out to Defendants various deficiencies, including that the logs were inadequate and provided no sufficient basis to assess privilege for: (i) documents received or sent by third parties that provided non-legal services, including Akin Gump; or (ii) emails between non-legal CCA employees and unidentified third parties that did not appear to be outside counsel. *See* ECF No. 196-13.[3]

Contrary to the position Defendants recently took before this Court that they would review any individual challenges to withheld documents, in a November 28, 2018 letter Defendants refused to respond to these objections until Plaintiff presented a comprehensive list of all objections – a process made nearly impossible by the paucity of information in Defendants' logs. Ex. 1.[4]

---

[3] Eight days later, Defendants produced eight documents related to fact witness Ashley Daugherty. The plainly non-privileged nature of the documents further underscored the deficiencies in Defendants' privilege review. *See* ECF No. 195 at 4-5.

[4] All "Ex. _" references herein are to the Declaration of Christopher M. Wood, filed concurrently herewith.

4845-1597-3070.v1

The parties thereafter exchanged letters and held a meet and confer, during which Defendants proposed adding certain metadata fields to their privilege log. Plaintiff objected that metadata fields would not address the deficiencies in the privilege logs but agreed to wait until Defendants produced new logs, which they did on December 22 and 28, 2018. ECF No. 195 at 5.

## C. Following a Discovery Stay and Lengthy Process to Correct Errors in Defendants' Logs, Defendants Continue to Withhold Privileged Documents on Insufficient Grounds

Following a fact discovery stay (*see* ECF No. 159) and revised scheduling Order (ECF No. 180), as well as efforts to first resolve numbering and other issues with Defendants' logs, Plaintiff again notified Defendants on December 20, 2019, that their privilege logs were deficient, for the same reasons stated in Plaintiff's 2018 correspondence. ECF No. 196-19. Plaintiff's letter provided a further example of improper withholding, noting that despite Defendants' intention to rely on certain BOP reports referred to as CPARs, they were withholding a document with the file name "Adams CPAR 8-1-12-7-31-13 (Final)" (REV00051578), yet their log provided no entry or information under "Basis for Protection."[5]  *Id.*

Thereafter, despite having previously explained that Defendants' privilege log entries contained widespread deficiencies in their descriptions that made it difficult or impossible for Plaintiff to ascertain the basis for privilege, during a January 10, 2020 meet and confer, Plaintiff agreed to set forth in writing (again) Plaintiff's objections to the privilege logs. Plaintiff did so on January 28, 2020. Ex. 2.

---

[5]  Subsequent logs added "attorney-client privilege" to the previously blank "Basis for Protection" field for this document.

4845-1597-3070.v1

D. **Faced with Potential Court Intervention, Defendants Concede They Improperly Withheld Privileged Documents but Continue to Maintain Their Other Privilege Claims Are Proper**

On February 5, 2020, Defendants sent a letter in which they admitted they had improperly withheld certain documents yet stood on their remaining privilege claims despite Plaintiff's objections. ECF No. 196-22. Plaintiff challenged the withholding of documents to/from the BOP and third-party lobbyists 14 months earlier (ECF No. 196-13); but not until faced with justifying these submissions to the Court did Defendants concede they had improperly withheld certain documents. ECF No. 196-22. Even then, Defendants only re-reviewed emails sent to or from @bop.gov email addresses and documents for which Akin Gump is the **only** listed counsel. *Id.* [6] Based on this re-review, Defendants admitted they had improperly withheld a significant majority of the documents (11 out of 11 BOP emails; 40 out of 76 Akin Gump documents) – this was well over a year after Plaintiff had specifically pointed out to Defendants this category of documents. Defendants stood on their remaining privilege assertions. ECF No. 196-22; *see also* ECF No. 201.

As a result, Plaintiff requested and the Court held a telephonic conference on February 13, 2020, and, with leave of Court, Plaintiff filed its Motion to Compel Production of Improperly Withheld Documents on February 27, 2020 (ECF No. 194).

III. **OVERVIEW OF FINDINGS REGARDING INSUFFICIENT PRIVILEGE ASSERTIONS AND IMPROPERLY WITHHELD DOCUMENTS**

The observations and findings of Magistrate Judge Frensley in response to Plaintiff's motion to compel (ECF No. 195), this Court and, most recently, Special Master Hochberg all confirm Defendants' failures with respect to their privilege assertions. Indeed, this Court found that Defendants' "bare-bones assertions made in the defendants' privilege logs . . . test the boundaries of

---

[6] Defendants purported to also re-review documents shared with their auditor, but under a theory of auditor-as-agent to counsel so expansive that any results were preordained. *See* ECF No. 305 at 12 (Special Master's report criticizing withholding of non-privileged auditor documents).

4845-1597-3070.v1

how generic a privilege log description can be."  ECF No. 221 at 20-21.  There was also universal agreement by the judges that it was Defendants' burden to provide sufficient information to at least "'enable other parties to assess the [privilege] claim.'"  ECF No. 221 at 7-8; *see also* ECF No. 211 at 6 (must provide "'ample basis to assess the privilege issues'"); ECF No. 305 at 9-10 ("opposing counsel [must] have some knowledge as to why [documents] may . . . be correctly withheld").

Further, the findings with respect to the *in camera* samples of privileged documents that Magistrate Judge Frensley and Special Master Hochberg reviewed reflect systemic flaws in Defendants' approach to withholding documents.  Extrapolating from the findings of Magistrate Judge Frensley and Special Master Hochberg, it can be inferred that Defendants are still withholding a thousand or more non-privileged documents.  Specifically, these judges found that there was insufficient justification for withholding the following documents:

| Document Set | Reviewer | Total Reviewed | # Found Non-Privileged | Percent |
|---|---|---|---|---|
| *In camera* | Judge Frensley | 5[7] | 1 | 20% |
| Random sample | Judge Hochberg | 202 | 33 | 16% |
| After Action inquiry | Judge Hochberg | 14 | 2 | 15% |

These numbers would have been even worse if Defendants had not repeatedly withdrawn privilege assertions just prior to judicial review, despite having defended the assertions for over a year, as they did in the case of the Metcalf documents, after the Court ordered them to produce her documents *in camera*:

---

[7]  As discussed *infra* at 8 n.10, the five documents submitted by Defendants should be excluded. But even if included, they are immaterial to the totals or percentages.

| Document Set | Reviewer | Total Reviewed | # Found Non-Privileged | Percent |
|---|---|---|---|---|
| Daugherty documents | Defendants[8] | 35 | 8 | 22% |
| @bop.gov emails | Defendants | 11 | 11 | 100% |
| Akin Gump solos[9] | Defendants | 76 | 40 | 53% |
| Metcalf solos | Defendants | 260 | 232 | 89% |

In total, after Defendants wasted over a year insisting they had properly withheld all the documents on their privilege logs, 603 of these documents were reviewed, and 327, or 54%, have been found (or belatedly admitted by Defendants) to have been improperly withheld. As to those reviewed by Magistrate Judge Frensley or Special Master Hochberg, 36 of 221, or 16.3%, have been found not to warrant withholding. There are approximately 8,760 documents on Defendants' privilege logs. Even an evaluation limited to the most recent review by Special Master Hochberg – a random sample of 2.5% of Defendants' privilege log entries – suggests that 16%, or, extrapolating from the sample, 1,401 of the documents on Defendants' log were improperly withheld.

Set forth below is a summary of the various findings and observations of three judges – Magistrate Judge Frensley, Your Honor and Special Master Hochberg.

**E. Magistrate Judge Frensley's Review Confirmed Defendants Improperly Withheld Documents**

The Court referred Plaintiff's motion to compel to Magistrate Judge Frensley (ECF No. 197), who found significant deficiencies with Defendants' privilege claims. First, Judge Frensley found that Defendants had not properly justified their withholding of documents, concluding Defendants' "'Privilege Descriptions' are cursory and categorical, as [Plaintiff] describes," and "the 'Created

---

[8] Whether Defendants' reviews captured the totality of improperly withheld documents on the grounds of privilege remains disputed.

[9] Solos refer to documents where the firm or person is the only attorney listed as having received or sent the document.

4845-1597-3070.v1

Date' and 'File Name' columns [of the log] contain no data." ECF No. 211 at 8. Judge Frensley also found that a thread of emails Plaintiff submitted as one of the five documents Plaintiff submitted *in camera*[10] was "clearly" not privileged: "While an in-house attorney (Steve Groom) is the recipient of one of the redacted emails, the email is clearly directed to Harley Lappin, who is copied on it." ECF No. 211 at 20. Judge Frensley's review (of an admittedly non-statistically significant sample) at a minimum called into question whether Defendants had properly considered the content of their withheld documents.

These findings notwithstanding, Magistrate Judge Frensley believed he was limited to a document-by-document review and thus constructively limited[11] his review to the documents submitted *in camera*. ECF No. 211 at 4-5 ("privilege . . . must be asserted, challenged, ***and examined*** on a document-by-document basis . . . the Court can ***only*** evaluate the adequacy of CoreCivic's logs (based on the ***samples*** provided), make decisions as to the privileged or protected status of the ***documents actually submitted*** to the Court"). Further, the only remedy he considered was total waiver, rejecting it as overly "harsh" based on what was presented to him. *Id.* at 7.

## F. Facing Imminent Court Review, Defendants Produce More than 200 Documents that They Previously Maintained Were Privileged

On May 15, 2020, Plaintiff objected to Judge Frensley's report and recommendation principally on the ground that Judge Frensley's findings warranted additional relief. ECF No. 213. In particular, Judge Frensley found that CCA employee Natasha Metcalf, whom Defendants listed as the sole basis for withholding hundreds of documents, operated in a non-legal role – yet he

---

[10]  Defendants also submitted five documents *in camera*. It is not surprising they managed to withhold some documents that were, in fact, privileged and submitted those for review. These can be disregarded. ECF No. 221 at 21.

[11]  Respectfully, Judge Frensley misread the case he relied on, *Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, which requires the withholding party to justify privilege assertions on a document-by-document basis, but not for Courts to evaluate privilege claims in the same manner. 2015 WL 13845881, at *2 (M.D. Tenn. Sept. 10, 2015).

recommended no remedial action. ECF No. 211 at 11. In response, Defendants unequivocally claimed "Defendants Appropriately Asserted Privilege Over Documents In Which A Non-Attorney [*i.e.*, Metcalf] Facilitated Or Assisted With Legal Advice." ECF No. 217 at 10.

In response to Plaintiff's objection, this Court issued an Order indicating:

> This court's consideration of remedy must also take into account [Judge Frensley's] conclusion that the defendants' assertions of privilege were inadequate in at least one other regard – the failure to adequately account for the basis of the privilege asserted with regard to documents for which Metcalf was the only named ostensible legal personnel.

ECF No. 221 at 21. The Court continued by ruling that: "the defendants shall provide, for *in camera* review, all documents" "withheld for which Metcalf was the sole identified legal staff." *Id.* at 22. In so ordering, the Court noted the late stage of the litigation and the likelihood that allowing Defendants further opportunity to address their own failures "could simply occasion a new round of conflict." *Id.*

The Court also agreed that there were larger problems with Defendants' privilege assertions but stopped short of finding reversible error in Judge Frensley's ultimate conclusion that total waiver was too harsh a sanction. *See, e.g.*, ECF No. 221 at 20. As the Court explained:

> [E]ven if one concludes that the bare-bones assertions made in the defendants' privilege logs met the minimum requirements of Rule 26, the entries' lack of detail would certainly weigh in favor of a decision by the court, in its discretion, to require some supplementation of the record or at least limited *in camera* review. The court, accordingly, has concerns about the way work product claims have been asserted.

*Id.*; *see also id.* at 21 ("defendants' descriptions test the boundaries of how generic a privilege log description can be"); *id.* at 22 ("defendants' errors may simply reflect a lack of sufficient detail").

Defendants responded to the Court's Order on June 19, 2020 but did not submit Metcalf's documents *in camera* as ordered. ECF No. 224. As explained in Plaintiff's response to Defendants' submission, faced with Court review of the Metcalf documents, Defendants were forced to concede that 232 of 260 documents were not privileged. ECF No. 228 at 1-6. To put this concession in

context, it is important to remember that it was two years ago when Defendants reviewed these documents, determined they were relevant and had the chance to produce them. Instead, Defendants affirmatively represented that they were privileged and withheld them. In November 2018, and in the months that followed, Defendants had the chance to re-review these documents in response to Plaintiff's objections. Again, Defendants stuck with their affirmative representation that they were privileged and continued to withhold them. Then, in spring 2020, when litigating this issue before Judge Frensley, Defendants had the chance to re-re-review these documents in response to Plaintiff's arguments. Again, Defendants stuck with their affirmative representation that they were privileged and continued to withhold them. Then, in early summer 2020, when briefing this issue before this Court, Defendants had the chance to re-re-re-review these documents in response to Plaintiff's arguments. Again, Defendants stuck with their affirmative representation that they were privileged and continued to withhold them. This Court then called Defendants' bluff and ordered them to produce the Metcalf documents. Only then, after all this time, all those passionate arguments wholeheartedly defending their privilege assertions and the completion of nearly all the fact depositions, did Defendants finally admit what Plaintiff had been alleging for nearly two years: they had improperly withheld as privileged over 200 (out of 260) documents.

This dramatic reversal confirmed Plaintiff's suspicions that Defendants were not acting in good faith. They were either repeatedly asserting privilege over documents without a reasonable basis for doing so, or they were intentionally falsely representing non-privileged documents to be privileged. Either way, seeing this many improperly withheld documents meant many others were still in the shadows, so Plaintiff asked the Court to allow a Special Master to review a larger sample. Defendants argued that such a review was unnecessary because they had worked out all the bugs with their prior reviews and could now assure the Court that, with the possible exception of one or

two documents they were in the process of reviewing more closely (once again), all the documents on their privilege logs were in fact privileged. The Court ordered a Special Master review. ECF Nos. 236. 275.

### G. The Special Master Required Additional Information to Assess Defendants' Claims and Found that They Improperly Withheld Documents

The Honorable Judge Faith S. Hochberg (ret.) was appointed as Special Master by the Court (ECF No. 243) and assigned to review a random sample of documents on Defendants' privilege logs (ECF No. 246). She was also subsequently asked to review 14 (non-random) documents to determine whether they could shed any light on the conflict between two Defendants' sworn testimony that they received and read a BOP Adams After Action Report back in 2012[12] versus their lawyers' representations that their clients' sworn testimony was false. ECF No. 269. Defendants provided 216 documents to the Special Master: 202 randomly selected documents and their families, and 14 documents related to the inquiry concerning that BOP Adams After Action report. Each of the randomly selected document's families was produced to Special Master Hochberg with additional descriptions beyond Defendants' privilege log entries that were not previously provided to Plaintiffs.

Despite even this additional detail, the Special Master was unable to complete her review without further information from Defendants. ECF No. 305 at 1-2 (noting request for additional information). For example, as to ten documents and their families for which "the Special Master does not have enough information to determine whether the sampled document and family members relate to a request for, or rendering of, legal advice," Ex. 3 at 1, the Special Master was forced to request the entirety of the information that should have been in Defendants' privilege log in the first

---

[12] The Adams After Action report was a report the BOP created evaluating the May 2012 riot and murder of a corrections officer at CCA's Adams County Correctional facility.

4845-1597-3070.v1

place: "Please provide for *in camera* inspection an explanation of the context around the communication that makes it privileged and/or any related documents that substantiate that the communication reflects a request for legal advice or the rendering of legal advice." *Id.*, ¶1. In the end, Judge Hochberg expressly based her findings on this supplemental information (ECF No. 305 at 2 n.1 ("The Special Master requested additional information . . . . Each such document is evaluated based on the information received from Defendants.")), which is the same kind of information Plaintiff requested and Defendants refused to provide since 2018.

Special Master Hochberg also noted the lack of adequate information for privilege assertions regarding employees (like Metcalf) with potentially legal and business hats, including Scott Craddock: "[I]t appears that Scott Craddock is an attorney, who at certain times, served as counsel to CCA, but at some point became a compliance officer and may have stopped functioning as counsel for CCA. . . . Please provide *any* additional information related to Mr. Craddock's role." Ex. 3, ¶3.

And Special Master Hochberg noted the same concerns that Plaintiff had raised earlier regarding third parties and waiver, asking first: "Was the sampled attachment at tab 18 (and the other attachments to that email) disseminated to third parties?" And second:

> If the final reports that comport with the documents in the sample have already been shared with third parties such as the BOP, please so state, including a statement of whether the sampled document is a draft of the eventual document, or whether the sampled document is the final report that was to be sent to the BOP or other third party.

*Id.*, ¶¶2, 4. The necessity of additional information to evaluate Defendants' claims of privilege only highlights the deficiencies in their privilege logs – deficiencies Plaintiff had challenged for years.

On September 18, 2020, Special Master Hochberg submitted the "Report & Recommendation by the Special Master: Attorney-Client Privilege Review" (ECF No. 305) (the "Report"). In total, the Report found 33 of the 202 randomly selected documents, and 2 of the 14 Adams After Action documents, not privileged (roughly 16%). This included several documents

that were plainly not privileged, including documents to which Plaintiff has repeatedly objected.

The Report cites, for example, "letters from [the] BOP," as well as "performance evaluations; a final

executed contract; an org chart; a compilation of data to be disclosed to a third-party auditor; and

audit-related materials that are not legal in nature and were widely distributed . . . with no request for

legal advice," as examples of documents that could not be inadvertently withheld. *Id.* at 12.

In addition, Special Master Hochberg questioned other categories of documents withheld,

including ten emails that originated with third parties but were then forwarded among CCA

employees "where legal advice was requested or rendered" (*i.e.*, Category 2), as follows:

> The Special Master finds that the method chosen by Defendant is not itself
> improper, as long as more senior counsel on the team – with knowledge of the case
> and the role of persons who are attorneys – have made a judgment as to whether legal
> advice is being sought or being given in these email chains that contain portions
> which, standing alone, would be non-privileged third-party communications.

*Id.* at 3-4.

Special Master Hochberg also found fault with Defendants' privilege log. For example,

though the Report ultimately found privileged 17 attachments that reflect legal advice (Category 7),

she noted that "the basis for the privilege may not be apparent on the privilege log, insofar as the

sender and recipients of the email are not attorneys." *Id.* at 11.

Despite Judge Hochberg's findings and Defendants' lack of objection to her Report,

Defendants are still withholding the 35 documents she determined were not privileged.

## IV. LEGAL STANDARD

***This Court has broad discretion under Rule 37 to sanction Defendants***.[13] Rule 37 provides

an array of sanctions designed to punish discovery abuses, such as failure to produce discoverable

---

[13] The Court is familiar with the well-settled authority placing the burden on Defendants, as the designating party, to properly justify their privilege assertions. *See* ECF No. 221 at 7; ECF No. 195 at 8-10.

4845-1597-3070.v1

documents. *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Rule 37 sanctions are "many and . . . varied" and "vested in the court's discretion." Fed. R. Civ. P. 37(d)(3); *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005); *Black v. Franklin Cnty., Ky.*, 2006 WL 8446198, at *5 (E.D. Ky. Dec. 29, 2006). As this Court has explained, "[s]anctions serve 'both fairness and punitive functions' and may be as severe as the court's outright 'granting summary judgment' to the wronged party" but can also include "lesser steps such as instructing the jury that it 'may infer a fact based on lost or destroyed evidence.'" *See Trimboli v. Maxim Crane Works, L.P.*, 2020 WL 3546810, at *5 (M.D. Tenn. June 30, 2020).

Courts typically punish insufficient or improper assertions of the attorney-client privilege or work product doctrine that are at issue here by ordering that the withholding party has waived those privileges and must produce all documents withheld as privileged – as Plaintiff argued months ago before the parties were on the eve of summary judgment. ECF No. 195 at 8-10 (citing cases). But where a party's improper assertions of privilege occur or continue to occur at "later" stages of the litigation, such as the case here, the noncompliance rises to the point where other punishments – in particular, the ordering of an adverse inference – become appropriate. *See Kan. City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 553, 577-78 (2018) (noting that "an adverse inference may be warranted at a later date if" the party that "withheld information on the basis that it is protected by the attorney-client privilege or work-product doctrine" again so "fails to comply with future discovery obligations"). Indeed, "'the general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'" *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 712 (6th Cir. 2007); *see also Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 640 (6th Cir. 2009) (quoting *Cecil Corley Motor Co., Inc. v. Gen. Motors Corp.*, 380 F. Supp. 819, 859

(M.D. Tenn. 1974) ("'When a litigant . . . withholds records or documents while litigation is pending . . . the strongest inferences may be drawn against that party which the opposing evidence in the record permits.'").  An adverse inference is appropriate for improperly withheld documents such as those here.

***The Sixth Circuit's Beaven test for spoliation also provides guidance as to the appropriate sanctions to be applied here***.  The *Beaven* test has three elements:

> "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  It has been applied where, as here, Defendants had possession of the relevant documents and intentionally withheld them.  *In re Duramax Diesel Litig.*, 2020 WL 5596096, at *4 (E.D. Mich. Sept. 18, 2020) (an adverse inference sanction pursuant to the Sixth Circuit's *Beaven* test for spoliation appropriate where "the records, which may or may not have been destroyed, have been intentionally withheld").

While "not fixed rules," generally "a permissive or rebuttable adverse inference instruction is adequate punishment for [even] negligent spoliation. . . .  A non-rebuttable, mandatory adverse inference jury instruction is considered proper if the [c]ourt finds that a party's destruction of evidence was intentional."  *In re Black Diamond Mining Co., LLC*, 514 B.R. 230, 242 (E.D. Ky. 2014) (collecting Sixth Circuit authority); *see also Beaven*, 622 F.3d at 555 (adverse inference sanction appropriate even for negligence).  This follows from the fact that a permissive adverse inference is hardly a punishment at all because the decision still rests with the jury.  *Arch Ins.*, 509 F. App'x at 459; *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013).  Indeed, because "non-

mandatory inference instructions are a very mild sanction," gross negligence may be sufficient for a mandatory instruction. *Clemons v. Corr. Corp. of Am., Inc.*, 2014 WL 3507299, at *5 (E.D. Tenn. July 14, 2014).

Further, though not necessary, courts also consider prejudice, such as the real prejudice facing Plaintiff, in fashioning sanctions.[14] "[E]ven when conduct is less culpable [than bad faith], dismissal may be necessary if the prejudice . . . is extraordinary." *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 386 (6th Cir. 2013).[15] The fact alone that the withheld or destroyed documents were relevant under *Beaven*'s third prong establishes prejudice for purposes of an adverse inference sanction, *Tate v. Gen. Motors LLC*, 2017 WL 6558580, at *4 (N.D. Ohio Dec. 20, 2017), as does the inherent prejudice from the delays associated with Defendants' improper withholding of documents. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) ("no doubt that [the propounding party] was prejudiced [where it was] . . . unable to secure the information requested [and] was also required to waste time, money, and effort in pursuit of cooperation which [responding party] was legally obligated to provide").

## V. ARGUMENT

The record shows that Defendants withheld relevant documents from Plaintiff under the guise of unsubstantiated and improper privilege claims. They did this time and time again, including repeated assurances to this Court, Judge Frensley and even Judge Hochberg that proved false. As to Judge Hochberg, once the randomly selected documents had been identified, Defendants could have

---

[14] Even for the extreme sanction of dismissal, Courts disagree over whether a showing of prejudice to the moving party is required. *See Anheuser-Busch, Inc. v. Nat. Beverage Distribs*, 69 F.3d 337, 353 (9th Cir. 1995) (describing "conflicting signals as to whether prejudice to the party moving for dismissal must be demonstrated for dismissal to be considered an appropriate sanction pursuant to the court's inherent power").

[15] *See also, e.g.*, *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 1003 (N.D. Ohio 2016) (ordering a mandatory inference where "a permissive-inference is inadequate to cure the prejudice").

4845-1597-3070.v1

done the right thing and saved everyone time by withdrawing their privilege assertion for the 30+ documents that were clearly not privileged. Instead, they maintained all their privilege assertions. Now, more than two months after the close of discovery, it is too late to remediate Defendants' discovery abuses with a general waiver of Defendants' claims of privilege as to the approximately 8,500 documents Defendants have withheld. Such a remedy would require discovery to begin again at extreme prejudice to Plaintiff. Moreover, Plaintiff is not looking for more than what is necessary to level the playing field; a waiver as to 8,500 documents to remedy the improper withholding of over 1,400 documents could be something Defendants would try to appeal immediately to delay this litigation.

The Court has broad discretion to impose an appropriate sanction under its inherent powers pursuant to Rule 37, or under the *Beaven* factors, all of which are met here. While the record likely supports a stronger sanction, Plaintiff submits that, at the very least, a permissive adverse instruction would help level the playing field against Defendants' discovery abuses tilted in their favor.

### A.     Defendants' Discovery Abuses Support Sanctions Under Rule 37

Under Rule 37, Defendants' discovery abuses warrant sanctions. Defendants: (i) failed to timely produce privilege logs (§III.A); (ii) were on written notice from Plaintiff of the deficiencies in their privilege logs, and of apparently improperly withheld documents, including detailed objections provided to them on November 21, 2018 and February 5, 2020 (§III.B); (iii) belatedly produced certain non-privileged third-party communications 14 months after Plaintiff challenged their withholding (§III.D); (iv) assured the Court that they had properly withheld certain documents on the grounds of privilege and then only produced the vast majority of the documents withheld that they reviewed when confronted with a Court Order requiring production (§IV); (v) have been found by two judges, when sampling documents withheld as privileged, to have improperly withheld double-digit percentages of documents, implicating by extrapolation close to 1,500 documents that remain

4845-1597-3070.v1

improperly withheld (*id.*); and (vi) have been found or conceded to having withheld documents that appear facially non-privileged, such as communications with the BOP and organization charts (§§III.D, IV). As detailed above, 327 of the 603 documents so reviewed, or more than half, have been determined not to warrant privileged protections.

In addition, this Court, as well as both Judge Frensley and Special Master Hochberg, have all found Defendants' privilege log lacking. Your Honor observed that the log "test[ed] the boundaries of how generic a privilege log description can be." §IV. The current inadequacies in Defendants' privilege log are particularly highlighted by Special Master Hochberg, who could not evaluate privilege assertions without additional information. §IV.C. Even where Special Master Hochberg did not outright overrule privilege assertions, she questioned the sufficiency of the privilege log entries and Defendants' overall process for producing documents. *Id.*

The more traditional remedy of a general waiver of privilege claims is appropriate for insufficient and improper privilege assertions. ECF No. 195 at 10; *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006) ("If that burden [to support a privilege claim] is not met, the court's inquiry ends and the documents must be produced."); *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 191 (M.D. Tenn. 2014) (withheld documents must be logged "'in a timely and proper manner,'" and "'failure to provide . . . sufficient specificity [is] an independent ground for finding a waiver'" (collecting and quoting authority)). But now, that remedy would be too little, too late, given the late stage of this litigation, Defendants' repeated failures to provide a sufficient privilege log as required by Rule 26(b)(5)(A) as late as July 15, 2020, and the repeat findings implicating the credibility of Defendants' privilege review determinations. It would also be highly prejudicial to Plaintiff at this stage to review the approximately 8,760 documents withheld, re-depose witnesses, supplement interrogatory responses and revise expert reports. *See, e.g.*, *Evans v. Port Auth. of N.Y.*

& *N.J.*, 201 F.R.D. 96, 99-100 (S.D.N.Y. 2001) (sanctions appropriate where responding party

withheld information that moving party was "entitled to know many months ago . . . in order to make

intelligent decisions . . . in order to prepare for trial"); *Adams v. Trs. of N.J. Brewery Emps.' Pension*

*Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) ("Prejudice also includes deprivation of information

through non-cooperation with discovery, and costs expended obtaining court orders to force

compliance with discovery.")  Nor would such a remedy serve as a sufficient deterrent for such

future conduct as it would do little to deter discovery violations and could actually encourage them

as the end result is to prejudice at no "cost" to the violator.

> [P]roblematic incentives . . . already pervade the preparation of privilege logs.
> Lawyers know they rarely will be second-guessed by their clients for taking an
> expansive view of privilege and withholding borderline documents. . . . For there to
> be [a] downside from this strategy, an adversary first must challenge the privilege
> calls.  With all that needs doing in litigation, the opposing party may never do so. . . .
> If nothing else, every step takes time.  With many a slip 'twixt cup and lip, the
> aggressive privilege call becomes second nature.

*Klig v. Deloitte LLP*, 2010 WL 3489735, at *6-*7 (Del. Ch. Sept. 7, 2010).

Defendants are fully exploiting the time-intensive demands of these inquiries, which is why

they have refused to withdraw their improper assertions until the very last minute or not at all,

requiring document-by-document findings, knowing there is simply no way the Court or the Special

Master could get through their 8,400 documents this year (or next; after all, the Special Master

needed over a month to complete her review of 216 documents – Defendants can do this math).  For

example, when Plaintiff challenged the withholding of Metcalf documents on the grounds there was

no basis to ascertain she was working in a legal capacity, Defendants opposed the motion before

Judge Frensley (ECF No. 201 at 17); and when Plaintiff objected to Judge Frensley's Order,

Defendants told this Court: "Defendants Appropriately Asserted Privilege Over [the Metcalf]

Documents" (ECF No. 217 at 10-11).  Only after this Court ordered the Metcalf documents be

submitted for *in camera* review did Defendants produce 232 out of the 260 documents they

"reviewed" as non-privileged to Plaintiffs (not to the Court as ordered). ECF Nos. 224, 227. Defendants' conduct here, including their hollow assurances, indicates a culpable state of mind. *See Coral Grp., Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 436 (W.D. Mo. 2012), *aff'd sub nom. Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919 (8th Cir. 2014) ("even if [the party improperly withholding documents as privileged] sincerely believed the documents were privileged, their belief did not void the Court's order or authorize [the withholding party] to ignore it").

In other cases of withheld documents, courts have imposed sanctions under Rule 37 recognizing the importance of deterrence. *See Black Diamond*, 514 B.R. at 235 ("a single document could cost a party victory in a lawsuit. For this reason, courts must faithfully enforce discovery rules to deter abuses"); *Keck*, 566 F.3d at 640 ("refusal [to produce single list of customers] may lead to an adverse inference"); *Cecil*, 380 F. Supp. at 859 ("the strongest inferences may be drawn against that party" that "withholds records"). Here, a permissive adverse-inference instruction, at minimum, is tailored to the discovery abuse at issue – the improper withholding of relevant privileged documents. *See Clay*, 501 F.3d at 712 ("'[T]he general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'"). Moreover, in addition to being permissive, the instruction Plaintiff requests would simply inform the jury of the undisputed procedural facts here, allowing both sides equal opportunity for argument and ultimately letting the jury do what all jurors do: consider this evidence, along with all other evidence, and draw common-sense inferences to inform their deliberations. Far from putting the Court's finger on the scale of this case, such a remedy would just balance out the hundreds of documents Defendants have improperly withheld.

**B. Application of the Sixth Circuit's Analogous *Beaven* Test Also Warrants Sanctions**

The three requirements of the *Beaven* test are soundly satisfied. *Beaven*, 622 F.3d at 553. First, Defendants having reviewed, assessed and logged the documents at issue, the possession requirement cannot be disputed.

Second, Defendants' conduct demonstrates a culpable state of mind. As discussed above in §III, despite repeated notice of their deficiencies and inclusion of non-privileged documents, Defendants have repeatedly failed to prepare adequate privilege logs and corrupted the integrity of the discovery process by withholding hundreds of non-privileged documents, despite multiple assurances to Plaintiff and the Court. Indeed, whether it is Defendants' 14-month delay in producing third-party (BOP) emails; the one out of five documents, or 20%, found by Judge Frensley to be improperly withheld; the 16% of the random sample of documents found by Special Master Hochberg to have been improperly withheld; or the 89% of Metcalf documents turned over by Defendants as non-privileged when facing Court review, there is an undeniable consistency that cannot be passed off as even gross negligence. It is one thing for Defendants to offer assurances to Plaintiff without having properly reviewed the documents that are the subject of the assurances. Perhaps that could be considered merely grossly negligent. But to give such false assurances to a federal judge and the Court to rely on them as Defendants did here? That is going way too far. In any event, even simple negligence warrants a permissive adverse inference instruction, and we are way past simple negligence here. *Black Diamond*, 514 B.R. at 242 ("a permissive or rebuttable adverse inference instruction is adequate punishment for negligent spoliation").

Further, any efforts by Defendants to claim they voluntarily produced certain documents after Plaintiff's challenges (§§III-IV), or could voluntarily produce documents previously withheld as privileged, does not negate their culpable state of mind in withholding documents:

4845-1597-3070.v1

> [I]t is appropriate to presume that where documents relevant to the merits of the litigation have ***been concealed the deception casts doubt on the concealing party's case.***
>
> ***[The withholding party's] argument that because she "voluntarily" produced the documents to [the moving party] it is not reasonable to infer that the documents hurt her case is not persuasive given the district court's finding that she intentionally concealed the documents for three years*** and then when she did inform [the objecting party] that the documents existed, she ***produced only part of them***. [The objecting party] had to subpoena the rest.

*Anheuser-Busch*, 69 F.3d at 354.

Third, there is no doubt that "relevant information . . . is in the possession of [Defendants] and not provided." *See Clay*, 501 F.3d at 712. Most obviously, the documents only appear on the privilege log because they were responsive to Plaintiff's discovery requests and Defendants' own review determined them to be relevant (*see* §§III-IV). The log entries also make clear the documents are relevant.[16] The obvious relevance of these documents supports sanctions. *See Clemons*, 2014 WL 3507299, at *16 ("Nor is there a requirement within the Sixth Circuit that the party seeking sanctions show the spoliated evidence ***would*** support her claim. Rather, the movant for sanctions need only show that the spoliated evidence ***could*** have been useful to her claim.") (applying *Beaven*). Because Plaintiff satisfies the three requirements of the *Beaven* test, an adverse-inference instruction is appropriate.

---

[16] For example, Defendants' most recent log contains over 100 references to BOP-issued CPAR reports. Defendants themselves continue to claim that CPARs support their defenses. *See* ECF No. 267-1 at 289:13-292:15. For the same reasons, any BOP-created reports or audits, or CCA responses to the same, are highly relevant. Defendants' log is replete with such documents and communications, such as the Notice of Concern responses discussed above (more than 100 references in the log), the 115 references to BOP audits (or "CFMs," for Contract Facility Monitoring) or the 27 references to bid protests (*i.e.*, CCA complaints about lost BOP business).

- 22 -

### C. An Adverse Inference Sanction Is Appropriately Tailored to Defendants' Discovery Abuses

In light of all these facts, a permissive adverse inference, at minimum, is a properly tailored sanction. Plaintiff hereby requests, subject to any modifications the Court finds appropriate, a permissive adverse inference similar to that found by another court for spoliation:

> The Court has found, and you must accept this finding to be true, that Defendants negligently failed to produce evidence – that is, they withheld relevant evidence pursuant to erroneous claims that the evidence was privileged even though two current judges and one retired judge examined sample sets of withheld documents and found each set contained documents that were not privileged; the percentage of improperly withheld documents varied from sample to sample but each was over 10%, and Defendants continue to withhold as privileged over 8,000 documents that no judge has reviewed.
>
> From this Court's findings, you are allowed to infer, or conclude, that Defendants withheld relevant evidence that would have shown something favorable to the Plaintiff and unfavorable to Defendants.
>
> I am not telling you that you have to reach that conclusion, only that you can if you think it reasonable. Whether or not you do so is solely a matter within your collective discretion based on your consideration of this instruction and all of the other evidence in the case.[17]

*Ross v. Home Depot USA Inc.*, 2014 WL 2805094, at *6 (S.D. Ohio June 20, 2014). This instruction is narrowly tailored to Defendants' sanctionable behavior. With discovery closed and the prejudice to Plaintiff not curable, it avoids further prejudice to Plaintiff, which would have to expend resources reviewing documents and re-deposing witnesses under other remedies, such as waiver. Nor does it do significant harm to Defendants, who will still be able to make any argument they wish to a jury. *See Arch Ins.*, 509 F. App'x at 459.

Of course, the Court may, in its discretion, find that another sanction is warranted. For example, the above permissive adverse-inference instruction could be changed to mandatory; any

---

[17] This instruction is modeled on the one given in *Ross v. Home Depot USA Inc.*, which the court described as "appropriate when the culpable state of mind is negligence." 2014 WL 2805094, at *5-*6 (S.D. Ohio June 20, 2014).

- 23 -

finding that Defendants' noncooperation was made with gross negligence or intentionality, and that Plaintiff was prejudiced, would support this. The United States District Court for the Eastern District of Tennessee took exactly this step against the same corporate defendant: "CCA argues that even if the video evidence was relevant and CCA acted with gross negligence in losing it, the Magistrate Judge nonetheless erred in recommending a mandatory adverse instruction rather than a permissive one." "However, courts have also noted that non-mandatory inference instructions are a very mild sanction" and a mandatory adverse instruction "is appropriate to account for the culpability of CCA and remedy the prejudice to Plaintiffs." *Clemons*, 2014 WL 3507299, at \*5-\*6.

### D. Special Master Fees Should Be Borne Entirely by Defendants

The Court has withheld its decision on the allocation of Special Master fees between Defendants and Plaintiff until consideration of the instant Motion. *See* ECF Nos. 246, 308. Plaintiff hereby requests that Special Master Hochberg's fees and expenses be allocated to Defendants alone.[18]

Under Rule 53(g)(3) of the Federal Rules of Civil Procedure, the "court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53. Under Rule 53, "delays in production" and "loss of evidence," especially those that "occasion" the appointment of a Special Master, support allocation of fees to the offending party. *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, at \*28 (M.D. Tenn. Mar. 29, 2018), *aff'd as modified sub nom. EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2018 WL 3322305 (M.D. Tenn. May 14, 2018).

---

[18] The parties have already split the fees 50/50, but that "interim allocation may be amended to reflect a decision on the merits." Fed. R. Civ. P. 53(g)(3).

As described above, Defendants' sanctionable discovery abuses led directly to: the appointment of Special Master Hochberg; her need to request, and expend otherwise unnecessary resources reviewing, additional information from Defendants; and her findings, which concluded that Defendants' logs were deficient (*e.g.*, "the basis for the privilege may not be apparent on the privilege log") and that Defendants' privilege review was so deficient that obviously non-privileged documents, such as "letters from the BOP" and "org charts," had been withheld, corresponding by extrapolation to some 1,400 improperly withheld documents. *Supra* §III.G. At the very least, once the sample documents were identified, Defendants should have withdrawn their privilege assertions as to the dozens for which there was no basis for such an assertion. They did not. These facts all support the Court's allocating the Special Master fees to Defendants alone.

## VI. CONCLUSION

As it stands today, Defendants have faced no consequences for having repeatedly improperly withheld privileged documents or for repeatedly failing to provide an adequate privilege log as required by Rule 26(b)(5)(A). Sanctions are more than appropriate here and well within the Court's wide discretion. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff's motion for sanctions and order Defendants to pay all of Special Master Hochberg's costs and fees.

DATED: October 6, 2020         Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853


                     s/ Christopher M. Wood
                 CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

- 25 -

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 6, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

Email: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`