# EXHIBIT 1

355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: +1.213.485.1234  Fax: +1.213.891.8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

# LATHAM & WATKINS LLP

November 28, 2018

**VIA ELECTRONIC MAIL**

Christopher M. Wood, Esq.
Robbins Geller Rudman & Dowd LLP
414 Union Street, Suite 900
Nashville, TN 37219
cwood@rgrdlaw.com

Re: *Grae v. Corrections Corporation of America, et al.*, No. 3:16-cv-02267

Counsel:

    We write in response to the items raised in your letter dated November 21, 2018 (the "Letter") regarding Defendants' privilege and redaction logs.

    As an initial matter, Plaintiff's aggressive and unsupportable assertions that Defendants' logs are "wholly inadequate," "constitute[] waiver" and that "the documents listed therein should be produced promptly and in full" are unproductive. Defendants have produced a series of comprehensive and compliant privilege logs with more than enough information to allow Plaintiff to dispute any specific entry. To the extent Plaintiff claims that the timing or contents of Defendants' logs waive privilege, we encourage Plaintiff to review Administrative Order 174-1 issued by the Middle District of Tennessee, which makes clear that the Court does not recognize any form of inadvertent waiver of the attorney-client privilege or work product protection.[1]

    Nevertheless, Defendants will address the specific objections set forth in the Letter. First, Plaintiff asserts that Defendants' logs are untimely. (Letter, pp. 1-2.) This argument simply ignores the record on this issue. In our letter to Plaintiff dated August 31, 2018, Defendants indicated they would endeavor to produce a privilege log within 30 days of the substantial completion of document production deadline. Defendants confirmed, by letter, on September 17 that they would produce a privilege log to Plaintiff on or before October 15, 2018, which timing

---

[1] Administrative Order 174-1, ¶ 8(a) ("The production of ESI shall not constitute a waiver of the attorney-client privilege or work product protection, even though there is a failure to take reasonable steps to prevent production of information covered by the attorney-client privilege or work product protection, or a failure to take reasonable steps to rectify the error.")

LATHAM&WATKINS LLP

you acknowledged in your September 25 letter.  Throughout this same time period, Defendants continuously reiterated the timing of their privilege logs in multiple meet and confer calls.  Consistent with our representations, Defendants produced extensive and comprehensive privilege and redaction logs on October 15.[2]  Defendants also produced two additional privilege logs identifying documents protected by the attorney-client privilege that Defendants had clawed backed, one of which was produced before October 15, and the other, consisting of only 14 entries, on October 28.  Given the size of Defendants' document review and production, the submission of Defendants' logs within a month of the "substantial completion" deadline is timely and in accordance with Defendants' obligations under the federal rules and applicable case law.  Nothing in Plaintiffs' cited authority indicates otherwise.

      Second, Plaintiff's assertion that the log and the documents listed on it have not been reviewed by an attorney is demonstrably incorrect.  To be clear, every document described on the privilege and redaction logs has been reviewed and designated as privileged or work product by an attorney.  In creating the description for each protected document, the reviewing attorneys, *based on their review of the document*, selected and inputted the following information: (a) the type of counsel involved in the protected communication (i.e., in-house or outside counsel); (b) whether the communication was seeking or providing legal advice (i.e., a privileged communication) and/or intended for the purpose of litigation (i.e., work product)[3]; and (c) the topic of the protected communication.  The information reflected in the log more than complies with the guidance of Administrative Order 174-1.

      Plaintiff next implies the log is somehow improper because it "constitutes the mechanical extraction of certain information from emails and their attachments."  (Letter, p. 2.)  As set forth above, that assertion is plainly incorrect.  Nevertheless, the fact that Defendants compiled their privilege logs by utilizing metadata and streamlining their privilege descriptions is not only acceptable but actively encouraged by the Court.  *See* Administrative Order 174-1, ¶ 8(b) ("[T]he Court expects the parties to discuss foregoing using traditional document-by-document logs in favor of alternate logging methods, such as identifying information by category or including only information from particular metadata fields (e.g., author, recipient, date).").  As made clear by

---

[2]    To the extent Plaintiff alleges that Defendants failed to produce a sufficient number of documents with redactions (Letter, p. 5), Defendants direct Plaintiff to the extensive Privilege Redaction Logs produced on October 8 and October 15, and the corresponding, substantial production of redacted documents to Plaintiff.

[3]    Plaintiff's claim that "the log nowhere identifies which documents are withheld on the basis of the attorney-client privilege and which on the basis of the work-product doctrine" (Letter, p. 3), is baseless.  As noted above, the nature of the asserted protection is set forth in the description provided for each log entry.

the Court, such logging methods "shall not constitute a waiver of any privilege or protection." *Id.*[4]

Third, Defendants reject Plaintiff's objection that the logs contain "blanket assertions of privilege" or that the privilege assertions are "conclusory." (Letter, pp. 2-3.) As noted above, the log provides detailed information for each communication covered by the attorney-client privilege or work product protection. Log entries that provide (i) sender and recipient names; (ii) email addresses for outside counsel; (iii) the sent date; (iv) the nature of the protection asserted; (v) the type of counsel involved; and (vi) the topic of the protected communication, hardly constitute "conclusory" or "blanket" privilege assertions. Again, as noted above, the provided fields more than comply with the Court's guidance in Administrative Order 174-1. In any event, while Plaintiff argues that the privilege and work product descriptions in Defendants' logs are "plainly insufficient" to support their privilege assertions (*id*. at p. 3), it does not indicate what additional information could or should be added to make the privilege claims sufficient without divulging the contents of the privileged communication.

Next, Plaintiff argues that the logs do not describe the "positions and affiliations of all participants in the communications." (Letter, p. 3.) The logs provide the names of CoreCivic personnel included in the communications (which can be cross-referenced with the employee directory and job descriptions provided to Plaintiff), and the email addresses for outside counsel. The document descriptions in the logs also indicate whether the protected communications involve in-house or outside counsel. This information is sufficient for Plaintiff to determine the "positions and affiliations" of the relevant senders and recipients (though again, not mandated by Administrative Order 174-1). Plaintiff also claims that certain "third parties, such as Akin Gump, are known to have provided non-legal services" and that the "log provides no way for the reader to evaluate whether communications with such third parties were related to legal issues or to business purposes." (*Id*. at p. 4.) But the fact that certain correspondence with Akin Gump have been produced and others have been designated as privileged on Defendants' logs (with a corresponding privilege description) demonstrates that Defendants reviewed these types of communications and withheld only the subset protected by the attorney-client privilege and work product doctrine.[5]

---

[4] Plaintiffs' remaining "evidence" allegedly showing that the logs have not been reviewed by an attorney is misguided. Attachments to emails were assigned the same "Sent Date" as the parent email because that is the date on which the attachment was *sent*. Defendants intended to provide this information, as evidenced by the fact that the log contains a "Sent Date" field instead of a "creation or publication date" field. Moreover, the phrase "Extraneous JPEG attachment" was intentionally inserted into the log *by an attorney* precisely to notify Plaintiff that the entry did not refer to a specific document, but rather a superfluous jpeg image.

[5] Plaintiff also objects that certain documents have been shared with outside parties, thus waiving any claim of privilege. (Letter, p. 4.) To the extent Plaintiff takes issue with any specific privilege designations due to the alleged participation of third parties in the communication, we request that Plaintiff compile and present these specific log entries to Defendants for further discussion.

LATHAM & WATKINS LLP

Plaintiff also appears to take issue with Defendants' assertion of privilege over attachments to "parent" communications covered by the attorney-client privilege and objects that additional identifying information is not provided for the attachments. However, the current notation for these attachments on Defendants' logs is sufficient. Attachments to privileged correspondence, whether or not they are independently protected, are covered by the attorney-client privilege as they are incorporated into the parent communication seeking or providing legal advice. *See Hilton-Rorar v. State & Fed. Communs.*, Inc., 2010 U.S. Dist. LEXIS 36121, at *21-22 (N.D. Ohio, April 13, 2010) ("To the extent these e-mails contain attachments or other e-mail communications that are not otherwise independently privileged, the attorney-client privilege nevertheless applies because to order the disclosure of those e-mails would necessarily reveal the substance of a confidential client communication made seeking legal advice."); *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) ("[T]he fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected."), aff'd, 580 F.3d 485 (7th Cir. 2009). As such, the privilege description provided for each parent email in Defendants' logs is sufficient to demonstrate the nature of the privilege being asserted over the corresponding attachments.

Finally, Plaintiff lists certain information that it asserts is lacking in Defendants' logs (e.g., whether the entry refers to a "memorandum, letter, e-mail, etc."; the "number of pages of the document"). (Letter, p. 4.) The cases Plaintiff cites provide only that certain subsets of the fields included in Defendants' logs, by themselves, are not sufficient. Plaintiff offers no authority for the notion that a log providing the level of detail offered by Defendants is deficient. Furthermore, the information Plaintiff asserts is "missing" does not comport with the guidance in Administrative Order 174-1, which allows "including only information from particular metadata fields." Nevertheless, Defendants are willing to meet and confer with Plaintiff in good faith to discuss this particular issue further.

Please let us know if you have any questions.

Sincerely,

Faraz R. Mohammadi
of LATHAM & WATKINS LLP

cc: David Schindler  Willow E. Radcliffe
Brian T. Glennon  Dennis Herman
Morgan Whitworth  Christopher Lyons
Eric Pettis
Steve Riley
Trey McGee
Russell Taber