EXHIBIT 2
[Filed Under Seal]

Robbins Geller
Rudman & Dowd LLP

Boca Raton    Melville    San Diego
Chicago    Nashville    San Francisco
Manhattan    Philadelphia    Washington, D.C.

Kenneth J. Black
kennyb@rgrdlaw.com

January 28, 2020

VIA EMAIL

Brian T. Glennon
Eric C. Pettis
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560

Milton S. "Trey" McGee III
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203-2309

Re: *Grae v. Corrections Corp. of America, et al.*, No. 3:16-cv-02267 (M.D. Tenn.)

Dear Counsel:

Pursuant to our discussion on Friday, January 10, 2020, we write to provide you with a summary of our privilege objections that remain outstanding. We have raised these objections several times before. *See*, *e.g.*, our letters of November 21, 2018 (the "Wood Letter"), December 7, 2018 (the "Black Letter"), and December 20, 2019. Defendants' failure to remediate their defective privilege logs or produce the subject documents, in whole or redacted, constitutes waiver. *See Etheredge v. Etheredge*, 2013 WL 4084642, at *4 (M.D. Tenn. Aug. 12, 2013) (defendant's "'failure to provide the court with sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity'") (quoting *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032, at *2 (W.D. Mich. Feb. 13, 2001)); *In re Haynes*, 577 B.R. 711, 740 (Bankr. E.D. Tenn. 2017) (citing *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 184-85 (N.D. Iowa 2017)).

Our objections are as follows:

1. <u>Privileged information should be redacted, not withheld</u>

Before withholding or clawing back entire documents, rather than producing a redacted version of them, "[c]ourts require . . . a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts.'" *Haynes*, 577 B.R. at 728-29 (quoting *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010)); *see also Meyer v. Bank of Am., N.A.*, 2018 WL 6436268, at *4 (S.D. Ohio Dec. 7, 2018) (same). We object that Defendants have withheld or clawed back the overwhelming majority of the documents in their logs in their entirety, rather than producing or reproducing them with redactions.

4811-5397-9571.v1
One Montgomery Street  Suite 1800  San Francisco, CA 94104  Tel 415-288-4545  Fax 415-288-4534  rgrdlaw.com

Case 3:16-cv-02267   Document 317-1   Filed 10/06/20   Page 2 of 8 PageID #: 9998

2. <u>There is no derivative privilege for email attachments</u>

"[A]ttachments are judged separately from their primary documents and . . . to be withheld, each must individually meet the privilege standard." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013) (collecting cases). We object that Defendants have withheld (or retracted or redacted) thousands of attachments on the sole ground that those documents were attached to a communication over which Defendants have asserted privilege. Indeed, Defendants candidly admit that they have segregated otherwise responsive documents based exclusively on attachment status. In their letter of January 6, 2020, for example, Defendants concede that Contractor Performance Assessment Reports are not privileged, and are only withheld as attachments to otherwise purportedly protected communications. Similarly, Defendants' latest combined log, produced January 23, 2020, now includes a "Privilege Description" column that describes the significant majority of attachments as "Attachment to communication with [type of] counsel seeking or receiving legal advice . . . ."[1] The attachment with Control No. REV00001957, for example, is a 4-page document with file name "11-11-0028 Final Investigation Report McRae CF 1..9.12" and the file extension "doc." Defendants do not claim this document is protected as work product, but instead assert only that it is an "Attachment to communication with In-house counsel seeking or receiving legal advice regarding facility operations." Defendants have never provided support for the proposition that attachments to privileged communications are protected, and Defendants' logs provide no reason to believe that such documents are properly withheld.

3. <u>Defendants have waived privilege with respect to documents shared with third parties for ordinary business purposes</u>

"As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). We object that Defendants' logs are replete with documents that have clearly been shared with third parties, waiving any privilege that might have existed. For example, documents sent to or received from individuals with addresses ending in "@bop.gov" are clearly not protected by the privilege.[2]

---

[1] In Defendants' previous combined log, produced December 22, 2018, the same attachments were described in a "Basis for Protection" column as protected by the "Attorney-client privilege."

[2] To the extent that defendants believe that communications with a government agency may be privileged, they are in error. *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5867268, at *11 (W.D. Tenn. Oct. 5, 2016) ("'[c]onfidentiality is not a recognized basis for withholding discovery,' even when such a confidentiality restriction is imposed by a U.S. agency") (quoting *Hanas v. Inner City Christian Outreach Ctr., Inc.*, 2007 WL 551609, at *2 (E.D. Mich. Feb. 20, 2007) (citing *In re Bankers Tr. Co.*, 61 F.3d 465, 470 (6th Cir. 1995)).

Nor are documents sent to or from attorneys who are not providing legal advice entitled to protection. *Haynes*, 577 B.R. at 737-38 (business advice and other non-legal services not protected as privileged); *see also infra* at #6. For example, Natasha Metcalf was appointed VP Partner Contracts in August 2008, a non-attorney position she held throughout the Class Period. Metcalf Deposition Transcript, rough draft, at 7:1-3 (Q: "were you . . . acting as an attorney for CoreCivic prior to July of this year [*i.e.* 2019]?" Metcalf: "No"). Nevertheless, Defendants' logs list her more than 1,300 times, excluding attachments, as a "Counsel and Legal Staff Involved in Communication," and with no further explanation as to what the legal issue involved was.[3] This is clearly insufficient, whether or not Metcalf is an attorney or provided legal advice in a prior or subsequent role. *See*, *e.g.*, *Bridgestone Americas, Inc. v. Int'l Bus. Machs.*, *Corp.*, 2015 WL 10990186, at *2 (M.D. Tenn. Oct. 1, 2015) ("Merely commenting that a document may be subject to review and including an attorney on an email chain does not make it a document seeking legal advice. If this were allowed, almost every document would be privileged anytime an attorney was included on an email."). Similarly, Defendants' logs provide no basis to believe that Akin Gump and other lobbyists provided anything other than lobbying advice. The document with Control No. REV00099852, for example, lists only "Akin Gump" as the "Counsel and Legal Staff Involved in Communication." But the subject of that email ("CCA Responds to DOJ's Decision to Reduce Reliance on Private Prisons") indicates that Akin Gump was functioning in its lobbying capacity, and the email was sent to a half-dozen or more non-attorney third parties, who clearly did not all work pursuant to an attorney-client relationship.[4] Any privilege thus is waived multiple times over.

4. <u>The clawed back documents are not privileged</u>

From what we can tell from the documents that Defendants have clawed back during depositions,[5] none of the clawed back documents are entitled to protection. For example, during the deposition of William DuBray, counsel for Defendants called back Begno_OLD

---

[3] As discussed below, Defendants' January 23, 2020 log adds a new column with descriptions so generic as to be useless. For example, on the January 23, 2020 log the document with Control No. REV00008231 lists Metcalf as legal staff and the privilege description as "Discussion regarding communication with In-house counsel seeking or receiving legal advice regarding general company operations." This purportedly augments the description on the December 22, 2018 log that the email is protected by the "Attorney-client privilege."

[4] *E.g.*, rhobart@hhqventures.com, bob.russell@srgroupdc.com, hrogers@bockornygroup.com, suzanne_barr@hotmail.com, nick@njsconsultingllc.com, timothyaitken@yahoo.com, trustunger@gmail.com, alex@vogelhood.com.

[5] *See also* the Black Letter's discussion of Corel_18 (*i.e.*, the Daugherty production), which further describes instances where Defendants have improperly withheld or clawed back documents.

Robbins Geller
Rudman & Dowd LLP

Brian T. Glennon
Eric C. Pettis
Milton S. "Trey" McGee III
January 28, 2020
Page 4

CoreCivic_1235700 (marked Exhibit 32). DuBray Deposition Transcript at 157:22-158:15. That document was an August 24, 2016 email with the subject line "Class Action Preservation Notice, CCA SEC Claims." DuBray Deposition Transcript at 156:22-157:1. Such preservation notices are not privileged. *See Bagley v. Yale Univ.*, 318 F.R.D. 234, 240 (D. Conn. 2016); *Panattoni Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2012 WL 6567141, at *3 (W.D. Wash. Dec. 14, 2012). The document with Bates Number CoreCivic_0058727-0058736 (marked Exhibit 68 during the Nalley deposition), meanwhile, is an email with the subject "BOP CAR 15 Past Performance Supplemental Response" and its attachment. As the subject line makes clear, the primary purpose of this document was not to seek legal advice, but to respond to a customer (*i.e.*, the BOP) concerning an everyday business matter (*i.e.*, contract(s) under the BOP's criminal alien requirement). *See Guy v. Yusen Logistics (Americas), Inc.*, 2018 WL 8547666, at *3 (W.D. Tenn. Dec. 20, 2018), *objections overruled*, 2019 WL 2465173 (W.D. Tenn. Apr. 11, 2019) ("'communications between an attorney and client of primarily a business nature are outside the scope of the privilege'").

Given the quantity of documents clawed back,[6] Defendants' ongoing failure to substantiate their clawbacks, and the absence of any risk to Defendants if counsel reviews them, we intend to challenge Defendants' privilege claims with respect to these documents, and confirm with Judge Trauger that we can submit examples of the clawed back documents for the Court's review.

5. <u>Defendants have failed to substantiate that any document is privileged, and thus waived any claim that any documents are protected as such</u>

Defendants have entirely failed to substantiate their privilege claims by demonstrating that any document "contained legal matters" or "was prepared or obtained because of the prospect of litigation." *See Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 1303622, at *3 (E.D. Mich. Mar. 28, 2013) (collecting 6th Cir. caselaw on the requirements to assert privilege). Concerning the work product protection, while the logs produced on or after December 22, 2018 now list which documents Defendants believe are protected as work product, they do not address the objection that "Defendants have never told plaintiff when they reasonably anticipated litigation, related to this action or otherwise, such that there is no stated basis for any assertion of work-product protection in the log . . . ." *See* Wood Letter at 3 (collecting supporting case law). For example, "Attachment to communication with In-house counsel for the purposes of litigation

---

[6] The January 23, 2020 log includes over 900 clawed back documents, though it excludes CoreCivic_1235700 and CoreCivic_0058727-0058736 and possibly others. By our count more than 1,250 documents have been clawed back (834 documents on September 28, 2018, six on October 28, 2018, 16 on December 3, 2018, and 398 on December 13, 2019, excluding documents clawed back at deposition).

Robbins Geller
Rudman & Dowd LLP

Brian T. Glennon
Eric C. Pettis
Milton S. "Trey" McGee III
January 28, 2020
Page 5

regarding general company operations" is the stated basis, as of January 23, 2020 (previously it was simply "Attorney work product") for withholding the document with Control No. REV00003365. But that description tells us nothing about what type of or actual litigation was anticipated or pending; adding "for the purposes of litigation" is entirely conclusory and cannot explain how a report, created by a third party and titled "OSHA Report – Adams 10 16 2012," somehow constitutes "attorney work product."

In the same way, Defendants have entirely failed to substantiate their claims that any documents are entitled to protection under the attorney-client privilege. The belated inclusion on December 22, 2018 of the "Counsel and Legal Staff Involved in Communication" column fails to address our objection that "even where known attorneys are included on communications, it is entirely unclear from the privilege log that anything privileged was at issue." *Id.* at 4. Only on January 23, 2020 did Defendants produce a log that purported to describe in any manner the basis for the privilege they invoke. But Defendants' privilege bases remain so generic as to be meaningless. "Communication . . . seeking or receiving legal advice regarding facility operations" is so broad and vague that it appears verbatim 2,421 times on the new log. "Communication[s] . . . regarding general company operations" is even more vague, and appears more than 3,300 times. Such descriptions are patently insufficient. *See Clark Constr. Grp., Inc. v. City of Memphis*, 2005 WL 6187896, at *3 (W.D. Tenn. Feb. 9, 2005) ("'[D]escribing a document as "legal advice" or "work product" is not the same as establishing that the documents are immune from discovery.'"); *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 476 (W.D. Mich. 1997) ("A log must be sufficiently detailed so that the court can judge the propriety of assertion of the privilege.").

Nor does any of the other information provided by Defendants establish anything close to a legitimate claim of privilege. The log is replete with document titles that indicate non-privileged communications, such as emails with the following subjects reflecting everyday business matters: "Copy of Medical-Dental Entity Information_Update 12-2012.xls"; "8-12 Status"; "RE: CSR Meeting at 2 PM"; "FW: Slide Show"; "ACA Directories"; "change to H Lappin's bio – *see* attached"; "Cibola Recruitment Plan"; or "FW: Eden Perimeter Road – Costs and Savings Finalized." The log also fails to properly identify the "Counsel and Legal Staff Involved in Communication," leaving plaintiff to guess whether and when any attorney participated in an earlier email captured within a later thread.[7] Nor are emails privileged because an attorney is cc:ed.[8] *See*

---

[7] For example, the document with Control No. REV00001956 lists Scott Craddock, Stephanie Parker, and Susan Lindsey as the counsel involved in the email with the subject "Report #11-11-0028." But that document is an email from Ronald Thompson to Harley Lappin and no one else. So too the document with Control No. REV00447742 lists "Samantha Lee" as the "Counsel and Legal Staff Involved in Communication." But the log that document describes an email sent from Natasha Metcalf to David Berkebile and cc:ing Emilee Beach with subject "Re: Adams OIG Report"; Samantha Lee neither sent nor received the email. Indeed, the fact that such documents were not sent to or received by

Brian T. Glennon
Eric C. Pettis
Milton S. "Trey" McGee III
January 28, 2020
Page 6

*Haynes*, 577 B.R. at 737-38. Another clear deficiency concerns dates: Defendants' inclusion of a creation date column is useless because the log just assigns the date of the email to every attachment, despite file names clearly indicating substantially different creation dates.[9]

Defendants have failed to substantiate their claimed privilege for such documents. The logs, recent edits notwithstanding, entirely fail to demonstrate that any legal advice was ever sought or provided, and the information they do provide, when not woefully insufficient to establish valid claims of privilege, demonstrates that defendants have withheld thousands of documents sent to and from non-attorneys concerning everyday business matters.

6. The EY documents are not privileged

We object to Defendants' assertion of privilege over a nonparty, EY's, documents. Defendants do not have standing to assert privilege over documents in an auditor's possession that were created pursuant to auditing services. *See Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 446 (E.D. Va. 2018) ("'If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.'") (collecting support). Here, because all EY documents were produced from EY's annual audit files, these documents were created by or transmitted to EY for the purpose of obtaining auditing services, not seeking legal advice.

---

counsel entirely contradicts Defendants' purported "Privilege Description" for each document: REV00001956 is ***not*** a "Communication with In-house counsel"; REV00447742 – which is not even a forward, but a reply, email – is ***not*** a "Communication with Outside counsel." And, to the extent Defendants believed these emails were threads containing earlier sent privileged communications, they were free to: (i) say so; and (ii) redact the earlier portions of those emails. Having failed to do so, however, Defendants have waived any such argument.

[8] The document with Control No. REV00013896, for example, is an email from "Metcalf, Natasha </o=ccaexchange/ou=first administrative group/cn=recipients/cn=nmetcalf>" to other non-attorney personnel, *i.e.*, "Lappin, Harley </o=ccaexchange/ou=first administrative group/cn=recipients/cn=lapp0420>;Nalley, Michael </o=ccaexchange/ou=first administrative group/cn=recipients/cn=nall3813>;Hall, Keith </o=ccaexchange/ou=first administrative group/cn=recipients/cn=hall5609>;Robinson, John </o=ccaexchange/ou=first administrative group/cn=recipients/cn=jorobinson>," concerning a non-legal CCA response to the OIG Audit of Adams (Subject: "Adams OIG"; attachment file name: "Letter to OIG re draft Adams report 100516").

[9] For instance, the email with Control No. REV00051564, appears to have 12 attachments (REV00051565-76), many of which are reports for different facilities that were created on different dates according to their file names (*e.g.*, "Adams CPAR 8-1-12-7-31-13 (Final)"; "CFM Report 5-2-13"; "Cibola CPAR 2013 (final submission)"; "CibolaCPAR 10-1-11 to 9-30-12"; "Eden CPARS 5-1-11 to 4-30-12"; "eden CPARS 5-1-12 to 4-30-13"). Yet the creation date for each of these documents is the same as the sent date of the email: "4/30/2014."

   Defendants have also waived any privilege claim over such documents by virtue of sharing them with a third party auditor. *First Horizon*, 2016 WL 5867268, at *10 ("disclosure of privileged communications to outside auditors waives both attorney-client privilege and the work-product protection") (citing *In re King Pharm., Inc. Sec. Litig.*, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005). As Judge Hellerstein has explained, where a defendant and "its outside auditor Ernst & Young d[o] not share 'common interests' in litigation . . . disclosures to Ernst & Young as independent auditors d[o] not therefore serve the privacy interests that the work product doctrine was intended to protect." *Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 116-17 (S.D.N.Y. 2002).

   Please let us know when you are available to discuss these objections with the Court.

              Very truly yours,

              KENNETH J. BLACK

KJB:rb

cc: Steve Riley
   David Schindler
   Morgan Whitworth
   John Eastly
   Sarah A. Tomkowiak
   Meryn Grant
   Willow E. Radcliffe
   Dennis J. Herman
   Christopher M. Wood
   Jason A. Forge
   Christopher H. Lyons