# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 3:16-cv-02267 |
| Plaintiff, | Honorable Aleta A. Trauger |
| vs. | Magistrate Judge Jeffrey S. Frensley |
| CORRECTIONS CORPORATION OF AMERICA, et al., | DEMAND FOR JURY TRIAL |
| Defendants. | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II. STATEMENT OF FACTS .......................................................................2

    A.    Defendants Review More Than One Million Documents, Produce Over 420,000, And Withhold Fewer Than 8,800 .............................................3

    B.    Defendants Produce A Privilege Log To Plaintiff Less Than One Month After Substantially Completing Document Productions..........................3

    C.    Defendants Inadvertently Produce, And Then Claw Back And Log, Privileged Documents ...............................................................................4

    D.    Plaintiff Sporadically Raises Issues With Defendants' Privilege Logs, But Rebuffs Defendants' Offers To Resolve The Alleged Issues .................4

    E.    Plaintiff Challenges Defendants' Privilege Logs Before Three Federal Judges, And All Three Find In Favor Of Defendants .............................5

        **1.**    Judge Frensley Determines Defendants' Logs Were Appropriate And Finds No Negligence Or Bad Faith........................................5

        **2.**    Plaintiff Seeks Reconsideration Of Judge Frensley's Order And Again Loses On Every Issue But One ........................................8

        **3.**    The Special Master Finds Most Withheld Documents To Be Privileged ..................................................................................10

III. LEGAL STANDARD.............................................................................15

IV. ARGUMENT .........................................................................................17

    A.    Defendants Have Not Acted In Bad Faith; Defendants Complied With Their Discovery Obligations—As Three Federal Judges Have Found ................17

    B.    An Adverse Inference Sanction Based On Spoliation Precedent Is Not Warranted And Would Be Highly Prejudicial ......................................19

    C.    Plaintiff Should Pay All Of The Special Master Fees .........................24

V.  CONCLUSION......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Applebaum v. Target Corp.*,
831 F.3d 740 (6th Cir. 2016) ...................................................................23

*Auto-Owners Ins. Co. v. A.G.O. Constr., Inc.*,
2015 U.S. Dist. LEXIS 195361 (M.D. Tenn. Sept. 10, 2015)...................7

*Beaven v. U.S. Dep't of Just.*,
622 F.3d 540 (6th Cir. 2010) ...................................................................24

*In re Black Diamond Mining Co., LLC*,
514 B.R. 230 (E.D. Ky. 2014) ................................................................23

*Clemons v. Corrections Corp. of America*,
No. 1:11-CV-339, 2014 WL 3507299 (E.D. Tenn. July 14, 2014) .......21

*Courser v. Mich. House of Representatives*,
No. 19-1840, 2020 WL 5909505 (6th Cir. Oct. 6, 2020) ......................24

*E.E.O.C. v. New Breed Logistics*,
No. 10-2696 STA/TMP, 2012 WL 4361449 (W.D. Tenn. Sept. 25, 2012).....................16, 17

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
No. 3:12-cv-00463, 2018 WL 1542020 (M.D. Tenn. Mar. 29, 2018)...................25

*Evans v. Port Authority of New York & New Jersey*,
201 F.R.D. 96 (S.D.N.Y. 2001) ..............................................................22

*Grange Mut. Cas. Co. v. Mack*,
270 F. App'x 372 (6th Cir. 2008) ......................................................16, 22

*Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*,
No. 11-12557, 2013 WL 1688463 (E.D. Mich. Apr. 18, 2013) ...............8

*Johnson v. Perry*,
No. 15cv403, 2018 WL 6235742 (S.D.N.Y. Jan. 30, 2018), *aff'd*, 763 F.
App'x 81 (2d Cir. 2019)...........................................................................19

*Keck v. Graham Hotel Systems Inc.*,
566 F.3d 634 (6th Cir. 2009) ...................................................................22

*Morris v. Union Pac. R.R.*,
373 F.3d 896 (8th Cir. 2004) ...................................................................20

*Nuvasive, Inc. v. Madsen Med., Inc.*,
No. 13cv2077 BTM(RBB), 2016 WL 305096 (S.D. Cal. Jan. 26, 2016)...............................23

*Phillips v. Cohen*,
400 F.3d 388 (6th Cir. 2005) .........................................................................................16, 22

*Ross v. Home Depot USA Inc.*,
No. 2:12-cv-743, 2014 WL 2805094 (S.D. Ohio June 20, 2014)...........................................21

*Trimboli v. Maxim Crane Works, L.P.*,
No. 3:18-cv-00346, 2020 WL 3546810 (M.D. Tenn. June 30, 2020) ....................................22

*Yoe v. Crescent Sock Co.*,
No. 1:15-cv-3-SKL, 2017 WL 5479932 (E.D. Tenn. Nov. 14, 2017)....................................23

**RULES**

Fed. R. Civ. P.
26............................................................................................................................................8
26(b)(1) .................................................................................................................................15
37.......................................................................................................................................2, 15
37(e) ...............................................................................................................16, 20, 22, 23
37(e)(2) .......................................................................................................................16, 23
53(g)(3) ...............................................................................................................................24, 25

# I.    INTRODUCTION

For nearly two years, Plaintiff[1] has attacked Defendants' privilege assertions and privilege logs, largely to no avail.  This Court and two other federal judges have spent many hours analyzing Defendants' logs and reviewing withheld documents *in camera*, in each instance finding that Defendants' privilege review was adequate (and in some instances, above and beyond what is required) under the rules and case law, despite disagreeing with a tiny fraction of Defendants' privilege calls.  Defendants have fully cooperated in this process, admitted when errors in this large-scale, complex process were made, and produced a small number of documents that they determined not to be privileged upon a re-review of certain logged documents.  Plaintiff, for its part, has not used a single one of those documents in a deposition and does not specifically reference any of them in its instant Motion, ECF No. 314.  That is because they are not important to this case, favorable to Plaintiff, or unfavorable to Defendants.

Against this backdrop, Plaintiff makes the extraordinary request for an adverse inference sanction that would unfairly prejudice Defendants at trial.  Adverse inference sanctions are generally only awarded in the case of bad-faith spoliation of evidence, or where a party refuses to comply with explicit court orders to produce information.  Neither has occurred here.  Yet Plaintiff asks this Court to instruct the jury that Defendants engaged in wrongdoing, and therefore, that the jury may *presume* that Defendants have improperly hidden harmful evidence from the jury under the shield of "privilege," including evidence that Defendants engaged in fraud.  There is no basis in fact, law, or logic for such an unprecedented order.

Defendants have at all times sought to diligently comply with their discovery obligations

---

[1] "Plaintiff" is Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund. "Defendants" are CoreCivic, Inc. ("CoreCivic") f/k/a Corrections Corporation of America, Inc. ("CCA"), Damon T. Hininger, David M. Garfinkle, Todd Mullenger and Harley G. Lappin.

in good faith.  No decision-maker—not Magistrate Judge Frensley, not Special Master Hochberg, and not this Court—has found otherwise.  Plaintiff's opening brief grossly mischaracterizes the relevant history of this matter in an attempt to show supposedly abusive discovery behavior and bad faith justifying an adverse inference sanction.  Plaintiff cites a litany of cases (pre-dating the most recent amendments to Federal Rule of Civil Procedure 37) in which parties intentionally destroyed key evidence, simply failed to respond to discovery, or repeatedly disobeyed court orders commanding production of information.  Nothing of the sort happened here.  Plaintiff has not and cannot point to any court that has awarded an adverse inference sanction to resolve a privilege logging dispute; nor have Defendants located such a case.

Plaintiff can show no prejudice from not having had access to these documents, which are simply not central or critical to this case.  Instead, Plaintiff wants the Court to allow a jury to infer—without basis in fact—that, within the universe of withheld documents, there *must* be something harmful to Defendants.  But Plaintiff has offered no basis for such rank suspicion.  And this is even after Plaintiff had access to more than 1,100—over 10%—of Defendants' privileged documents through a vendor error.  Conversely, Defendants would be extremely and irreparably prejudiced by an adverse inference instruction to the jury anywhere close to the one Plaintiff proposes based on an outdated spoliation precedent.  The relief Plaintiff seeks is unwarranted, and Defendants respectfully request that the Court deny Plaintiff's Motion.

## II.     STATEMENT OF FACTS

Plaintiff first raised purported deficiencies with Defendants' privilege reviews and logs more than two years ago, then sat on the issue for a year before again raising it.  Since then, Defendants have repeatedly attempted to work collaboratively with Plaintiff to resolve these alleged issues, but have been rebuffed at every turn.  Instead, Plaintiff has brought repeated challenges to Defendants' privilege review and logging practices, but *not a single one* of those

challenges has uncovered any bad faith on the part of Defendants.

### A. Defendants Review More Than One Million Documents, Produce Over 420,000, And Withhold Fewer Than 8,800

In 2018, Plaintiff served 49 broad document requests on Defendants. Exs. A, B.[2] To respond to those requests, the parties agreed that Defendants would search 65 custodians' documents using numerous agreed-upon search terms. Pettis Decl. ¶ 4. In total, Defendants reviewed more than one million documents, produced more than 420,000 documents, and withheld fewer than 8,800 documents. *Id.* ¶ 5. This was an enormous undertaking that involved over 50 lawyers. *Id.* ¶ 6.



### B. Defendants Produce A Privilege Log To Plaintiff Less Than One Month After Substantially Completing Document Productions

Defendants informed Plaintiff in numerous meet and confer correspondence that Defendants would produce a privilege log after the deadline for substantial completion of document productions. Exs. C, D. As promised, Defendants provided Plaintiff with a privilege log on October 8, 2018, less than one month after substantially completing their document productions. Ex. E. Although Plaintiff has repeatedly asserted that this privilege log was untimely,

---

[2] Exhibits referenced herein refer to the concurrently filed October 16, 2020 Declaration of Eric C. Pettis ("Pettis Decl.").

Judge Frensley rejected Plaintiff's arguments and found that Plaintiff failed to "provid[e] any controlling case law dictating a particular schedule or deadline for the production of privilege logs." ECF No. 211 at 6. Judge Frensley ultimately ruled that "[t]he Court does not find that the timing of CoreCivic's initial privilege log was . . . belated." *Id.* at 7.

### C. Defendants Inadvertently Produce, And Then Claw Back And Log, Privileged Documents

In September 2018, and again in October 2019, Defendants learned that a total of more than 1,100 privileged documents had been produced to Plaintiff as a result of technical errors by Defendants' e-discovery vendor. ECF No. 202 ¶¶ 4-5. In other words, Plaintiff had in its possession roughly 1 out of every 8 documents that Defendants claim are privileged, and the Court allowed Plaintiff to choose a sample of those documents to support its later attacks on Defendants' privilege claims.

### D. Plaintiff Sporadically Raises Issues With Defendants' Privilege Logs, But Rebuffs Defendants' Offers To Resolve The Alleged Issues

On November 21, 2018, Plaintiff first alleged vague deficiencies in Defendants' log. ECF No. 196-13. Defendants requested that Plaintiff "compile and present these specific log entries to Defendants," so that they could address any specific issues. ECF No 316-1. Plaintiff ignored this offer and instead made different criticisms regarding Defendants' log. Ex. F. Defendants attempted to satisfy Plaintiff's ever-shifting requests by adding metadata fields at Plaintiff's request, Exhibit G, and reviewing certain privilege designations, Exhibit H. On December 22 and 28, 2018, Defendants provided Plaintiff with an updated privilege log.

An *entire year* passed by. Plaintiff resurfaced on December 20, 2019, claiming for the first

time that the December 2018 privilege log was still deficient.[3]  ECF No. 196-19.  Again, Plaintiff

chose not to provide a comprehensive list of the entries it believed were improperly logged or

withheld.  *Id.*  Still seeking to work cooperatively with Plaintiff, Defendants re-reviewed certain

categories of documents and produced documents that had been erroneously withheld, including

certain communications with Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") and the

Federal Bureau of Prisons ("BOP").  ECF No. 196-22.[4]

### E. Plaintiff Challenges Defendants' Privilege Logs Before Three Federal Judges, And All Three Find In Favor Of Defendants

Plaintiff has now raised issues related to Defendants' privilege logs with three federal

judges and have had their arguments rejected at each turn.  Judge Frensley denied Plaintiff's

motion to compel, ECF Nos. 195, 211; this Court upheld all but one of Judge Frensley's rulings,

ECF No. 221 at 21-22; and, most recently, the Honorable Faith S. Hochberg (ret.) acting as Special

Master found most of the random sample of documents she reviewed to be privileged, ECF No.

305.

### 1. Judge Frensley Determines Defendants' Logs Were Appropriate And Finds No Negligence Or Bad Faith

On February 27, 2020, Plaintiff filed a motion to compel on the grounds that Defendants

improperly withheld documents as privileged and that their privilege log was untimely and

inadequate, and Plaintiff demanded the extraordinary remedy of privilege waiver.  ECF No. 194.

The Court referred Plaintiff's motion to compel to Judge Frensley, ECF No. 197, and Judge

---

[3] During this one-year period, the Court issued a four-month stay on discovery.  *See* ECF Nos. 159, 180.  Plaintiff provides no justification or explanation for its delay—whether that delay is considered to be eight months or twelve—in seeking to resolve these issues.

[4] Plaintiff now seeks to punish Defendants for such attempts to resolve Plaintiff's specific privilege log challenges by arguing, for example, that Defendants' re-review and production of a mere 11 communications with the BOP indicates some broader, systemic problem with their privilege review.  Mem. of Law in Supp. of Pl.'s Mot. for Disc'y Sanctions at 7, ECF No. 315 ("Mot.").

Frensley issued a comprehensive opinion on April 30, 2020, ECF No. 211.

Judge Frensley reviewed, *in camera*, a sample of ten documents over which Defendants asserted privilege—five submitted by Plaintiff, five submitted by Defendant.[5] Judge Frensley found ***only one of ten*** of the submitted documents—an email to an in-house attorney, among others, which the Court determined did not constitute a request or provision of legal advice—was not privileged. *Id.* at 16-21. Judge Frensley also noted that, where privileged email chains contained arguably non-privileged portions, in many cases the non-privileged portions had been separately produced. *See, e.g.*, *id*. at 19 ("The Court need not evaluate whether the rest of the email chain is privileged . . . because the rest of the email chain has been produced to [Plaintiff].").

Judge Frensley also rejected Plaintiff's arguments related to Defendants' privilege log. As for whether the log was untimely, Judge Frensley noted that Plaintiff "has not provided any controlling case law dictating a particular schedule or deadline for the production of privilege logs or supporting the contention that failure to produce logs contemporaneously with document production constitutes waiver of privilege and work product protection." *Id*. at 6. Based on the facts, "[t]he Court d[id] not find that the timing of CoreCivic's initial privilege log production was . . . belated." *Id.* at 7.

Turning to the adequacy of Defendants' privilege log, Judge Frensley observed that CoreCivic's "privilege descriptions" were "cursory and categorical," but he noted that those privilege descriptions were *just one of eighteen fields of data* provided for the withheld documents, and that "taken together, *each entry contains sufficient information to evaluate the privilege claims asserted.*" *Id.* at 8 (emphasis added). Indeed, Judge Frensley found that Defendants' log contains

---

[5] As noted above, Plaintiff was in possession of more than 1,100 of Defendants' roughly 8,800 privileged documents as a result of errors by Defendants' e-discovery vendor. The Court allowed Plaintiff to choose five of these documents to submit for *in camera* review.

*more* information than is required under applicable law. *See id.* at 8-9 (noting that Defendants'
log "goes beyond the instruction that '[e]ach document in a privilege log should contain details
including: date, author and all recipients of the document, subject matter, and an explanation as
to why the document should be privileged and not produced in discovery'") (quoting *Auto-Owners
Ins. Co. v. A.G.O. Constr., Inc.*, 2015 U.S. Dist. LEXIS 195361, at *4 (M.D. Tenn. Sept. 10,
2015)). Judge Frensley *did* "*not find* that CoreCivic's privilege logs suffer from widespread
problems as to timeliness or form, or that the claims themselves (as asserted generally and in the
specific examples furnished to the Court) are insufficient[.]" *Id.* at 23 (emphasis added).

On the narrow issue of logged documents involving Natasha Metcalf, Judge Frensley noted
that Plaintiff's "concern about documents where Natasha Metcalf . . . is listed as 'Counsel and
Legal Staff Involved in Communication' may be valid where Ms. Metcalf is the only person
identified in that role for a given document," but that Plaintiff's argument was "undercut by the
specific example [Plaintiff] provide[d], where Ms. Metcalf is listed as 'counsel or legal staff' along
with two other people who are undisputedly attorneys acting as attorneys for CoreCivic." *Id.* at
11.

After considering the parties' briefing, the documents submitted for *in camera* review, and
entries on Defendants' privilege logs, Judge Frensley found he could not "conclude that there are
widespread problems with CoreCivic's designation of documents or portions of documents as
privileged," and

> [b]ased on the documents presented to the Court and the Parties' arguments,
> [Plaintiff] has not made a showing of a factual basis adequate to support a good
> faith belief by a reasonable person that an *in camera* review of the rest of
> CoreCivic's documents may reveal evidence to establish that they are not protected
> by the attorney-client privilege.

*Id*. at 21-22.[6]

**2.** <u>Plaintiff Seeks Reconsideration Of Judge Frensley's Order And Again Loses On Every Issue But One</u>

On May 15, 2020, Plaintiff filed a motion for this Court to review Judge Frensley's Order.

ECF No. 213. On review, this Court ruled in favor of Defendants, finding:

- Defendants' privilege log "entries are within ordinary and accepted practice for a privilege log involving a production of this size." ECF No. 221 at 16.

- Defendants properly withheld and logged documents shared with Akin Gump and Ernst & Young. *Id*. at 14-17.

- "[T]he magistrate judge reasonably applied recognized principles regarding waiver by inadvertent disclosure." *Id.* at 17.

- Judge Frensley properly denied Plaintiff's request that he order Defendants to produce purportedly non-privileged attachments to privileged emails. *Id.* at 19.

- There are "no grounds for reversal related to the work product assertions." *Id.* at 21.

- Regarding the ten documents Judge Frensley reviewed *in camera*, even if one were to disregard the five documents Defendants submitted, "the error rate would be only one in five, or 20%—and that is not 20% of a random sample, but 20% of the examples specifically selected by the party challenging privilege." *Id.* (citing *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, No. 11-12557, 2013 WL 1688463, at *2 (E.D. Mich. Apr. 18, 2013) (stating that disclosure would be required if "20% or more of . . . randomly selected attachments are not privileged")).

Regarding Plaintiff's oft-repeated assertion that Defendants' logs fail to "establish" their

entitlement to privilege, this Court explained,

> Rule 26 does place the burden on the party asserting the privilege, but it is perhaps a misnomer—or at least confusing—to say that the Rule creates a burden to 'establish' privilege . . . . What Rule 26 imposes is, instead, a burden to assert privilege with adequate particularity and context for the assertion to be evaluated.

ECF No. 221 at 8; *see also id.* at 19 ("Amalgamated faults the defendants for failing to produce

---

[6] As a technical matter, Judge Frensley instructed Defendants to list the "counsel and legal staff involved in communication" for email attachments on their log (in addition to the parent email, which already contained this information). *Id.* at 23. Defendants produced an updated privilege log to comply with this order seven days later. Ex. J.

evidence in support of their claims, but, as the court has held, that argument entails asking the court to apply an evidentiary burden at the assertion-of-privilege stage that Rule 26 does not require."). This Court agreed with Judge Frensley that Defendants' privilege logs satisfy these requirements.

The one substantive issue on which this Court disagreed with Judge Frensley was that further inquiry should be conducted into the documents where Natasha Metcalf was listed as the only attorney creating privilege. *Id.* at 22. The fact that Judge Frensley and this Court were able to isolate that population of documents as meriting further analysis demonstrates the propriety of Defendants' privilege logs.

Following the Court's Order, senior members of Defendants' trial team reviewed the 260 documents where Ms. Metcalf—an attorney who does not always act in a legal capacity at CoreCivic—was listed as the only attorney creating privilege.[7] Following that review, Defendants withdrew privilege assertions over 232 of those documents, and filed under seal the remaining Metcalf documents over which they continued to assert privilege, along with a declaration from Ms. Metcalf explaining the nature of her role and various "hats" worn at CoreCivic during her career. ECF Nos. 224, 225.

Following Defendants' production of the 232 Metcalf documents, Plaintiff has not used a single one of them in subsequent depositions and none of them appeared on the lists of materials considered by their experts. Even so, Plaintiff requested and obtained a hearing before this Court to request further review of documents withheld by Defendants as privileged. At Plaintiff's request, this Court ordered a Special Master to review a random sample of entries on Defendants'

---

[7] Ms. Metcalf's name appears on the privilege log nearly 2,500 times in entries where she is listed alongside in-house and outside counsel.

privilege log to test the correctness of Defendants' remaining privilege assertions. ECF No. 236.

**3.** <u>The Special Master Finds Most Withheld Documents To Be Privileged</u>

The Court appointed the Honorable Faith S. Hochberg (ret.) as Special Master for the privilege review, ECF No. 243, and left the specific procedures to her discretion. The parties agreed on a randomization method, and after applying that method, Defendants provided Judge Hochberg with a random sample of 202 documents from their privilege log. ECF No. 305 at 1; Pettis Decl. ¶ 22 At Judge Hochberg's request, if the sampled document was an email or attachment that was part of a "family," Defendants also provided all documents in the family so that the Special Master could review and understand the full context of the sampled document. *Id.* Therefore, the Special Master ended up reviewing substantially more than just the 202 documents randomly sampled for review. The Special Master also asked Defendants to provide additional information regarding, for example, the roles of certain individuals who were involved in the sampled communications, which Defendants promptly provided.

In her Report and Recommendation, ECF No. 305, the Special Master divided the sampled documents into eight categories:

| Category No. | Description | Finding | No. of Documents |
|---|---|---|---|
| 1 | "[E]mail[s] to or from counsel that contain[] a request for, or the rendering of, legal advice." *Id.* at 3. | Properly withheld as privileged. *Id.* | 66 of 202 (33%) |
| 2 | "[E]mail chain[s] that began with a non-privileged email from a third-party that was then forwarded among CCA employees in a confidential communication with counsel, where legal advice was requested or rendered." *Id.* | While some litigants may redact the privileged portions of such emails and produce the non-privileged portions, "it *was not incorrect* to withhold the entire email chain," and hence the documents were properly withheld. *Id.* at 4-5. | 10 of 202 (5%) |

| Category No. | Description | Finding | No. of Documents |
|---|---|---|---|
| 3 | "[E]mail[s] among non-lawyers that discuss[] a request for, or the rendering of, legal advice from counsel." *Id.* at 5. | Properly withheld as privileged. *Id.* | 12 of 202 (6%) |
| 4 | "[E]mail chain[s] that began with a request for, or the rendering of, legal advice, which was later forwarded among non-lawyers, where the remainder of the email discussion does not reflect any reference to or discussion of the privileged content." *Id.* at 6. | Although "there is not yet a uniform rule or practice regarding the approach to such documents," the Special Master "recommend[ed] that Defendants again review the documents in this category . . . to determine whether the portions of the emails that do not reflect or reveal any legal advice contain information that is responsive to any document request and thus should be produced (with the privilege content redacted)." *Id.* at 6-7. The Special Master did *not* find that the documents in Category 4 were not privileged (or that the non-privileged portions were responsive). *Id.* | 10 of 202 (5%) |
| 5 | "[E]mail[s] which, despite including counsel as recipients of some portion of the email chain, do[] not contain or reflect any request for, or rendering of, legal advice." *Id.* at 7. | Not privileged. *Id.* | 12 of 202 (6%) |
| 6 | "[E]mail attachment[s], sent to, or received from counsel, where the attachment relates to or reflects advice requested or rendered in the email." *Id.* at 11. | Properly withheld as privileged. *Id.* | 63 of 202 (31%) |
| 7 | Email attachments that "relate[] to or reflect[] ongoing legal advice by counsel," and that were "sent or forwarded among non-lawyers." *Id.* | Properly withheld as privileged. *Id.* | 17 of 202 (8%) |

| Category No. | Description | Finding | No. of Documents |
|---|---|---|---|
| 8 | "[A]ttachment[s] to an email sent to or by counsel, but the attachment does not relate to, or reflect, any request for, or rendering of, legal advice." *Id.* at 12. | The sampled documents were not privileged but "legal advice related to [the documents] may have been involved in a separate communication." *Id.* at 12.[8] | 11 of 202 (5%) |
| Misc. | One "standalone document from Defendants' electronic database." *Id.* at 13. | Properly withheld as privileged. *Id.* | 1 of 202 (<1%) |

In sum, the Special Master found that, of the 202 sampled documents, 179 (89%) were properly withheld as privileged under any standard, 12 (6%) included counsel but did not reflect legal advice and hence were not privileged, and 11 (5%) were attachments to privileged emails that Defendants had withheld because, where one member of a family was privileged, Defendants withheld the entire family, and although the Special Master acknowledged that such an approach was not improper, she suggested producing the non-privileged attachments. Importantly, the Special Master did *not* find that Defendants' privilege reviews or logs suffered from systemic deficiencies, or that Defendants at any point acted in bad faith.

Furthermore, many of the sampled documents that Judge Hochberg found should be produced *had already been produced to Plaintiff.* As is common when dealing with large volumes

---

[8] The Special Master noted that Defendants, in their privilege reviews and logging, took the "position that 'if any document within the family was privileged, Defendants asserted privilege over the full family, even if each document within that family was not, independently, privileged.'" *Id.* at 8. Plaintiff, on the other hand, contended "that a non-privileged attachment becomes privileged only 'when a client sends it to his attorney with a request for legal guidance concerning its contents.'" *Id.* The Special Master explained that "[a] number of courts have addressed this question," but "there is no bright line rule set by the current caselaw that sets forth a definitive rule for counsel to follow for 'email families.' It would certainly make life easier for Magistrate Judges if there were." *Id.* at 8-9. Nevertheless, the Special Master decided to apply a rule closer to Plaintiff's position, and on that basis found that the 11 documents in Category 8 are not privileged. *Id.* at 12.

of electronically stored information, many documents appeared in Defendants' e-discovery database in duplicate (or triplicate, or more), as a result of a document being attached to multiple different email chains (some of which may be privileged and others unprivileged), or being collected from multiple custodians, or for other reasons. Of the eleven documents in Category 8 (non-privileged attachments to privileged families), *eight were already produced to Plaintiff*:

| Tab Number | Priv. Log Entry | Relevant Portion Produced Elsewhere |
|---|---|---|
| **11** | 492 | No |
| **18** | 966 | No |
| **34** | 1682 | CORECIVIC_0029289 CORECIVIC_0030563 CORECIVIC_0030669 |
| **52** | 2075 | CORECIVIC_0030623 CORECIVIC_0030634 CORECIVIC_0042345 |
| **70** | 3188 | No |
| **95** | 3939 | CORECIVIC_1341640 CORECIVIC_1341852 |
| **158** | 6698 | CORECIVIC_1390073 |
| **162** | 6851 | CORECIVIC_1446472 |
| **177** | 7309 | CORECIVIC_0025408 CORECIVIC_2165681 |
| **183** | 7616 | CORECIVIC_0997570 CORECIVIC_0871170 |
| **201** | | CORECIVIC_2166375 |

Pettis Decl. ¶ 15. Similarly, of the twelve documents in Category 5 that Judge Hochberg determined were not privileged despite the inclusion of counsel, Defendants had *already produced relevant portions of nine of them*:

| Tab Number | Relevant Portion Produced Elsewhere |
|---|---|
| **41** | CORECIVIC_0200625 CORECIVIC_0200626 |
| **45** | CORECIVIC_0308081 |
| **54** | CORECIVIC_0674373 |
| **81** | CORECIVIC_0080048 |
| **83** | CORECIVIC_2171466 CORECIVIC_2171470 |
| **103** | No |
| **108** | No |
| **117** | CORECIVIC_0707766 |

| Tab Number | Relevant Portion Produced Elsewhere |
|------------|-------------------------------------|
| **139** | CORECIVIC_0049135 CORECIVIC_0054441 |
| **151** | No |
| **157** | CORECIVIC_1481915 |
| **185** | CORECIVIC_2029494 CORECIVIC_0303117 |

Pettis Decl. ¶ 16. Therefore, of the 202 documents comprising Judge Hochberg's random review sample, ***only six (3%) that Judge Hochberg determined not to be privileged (despite the presence of counsel or a privileged parent email) had not already been produced to Plaintiff.***[9]

Significantly, in the midst of Judge Hochberg's review, Plaintiff accused Defendants of improperly withholding the BOP's After Action Report, simply because their log contained references to an "After Action Report." Defendants informed Plaintiff that this was not a reference to the BOP's After Action Report, but Plaintiff raised it to this Court, and at Plaintiff's request this issue was added to the Special Master's scope of work. The Special Master reviewed 14 additional documents logged by Defendants, and found that "[n]othing in the materials the Special Master's review indicates that CCA had access to the BOP report, or its contents." ECF No. 305 at 15. The Special Master also concluded that all but one of those 14 documents was privileged. *Id*. at 13-15.

Following receipt of the Special Master's Report and Recommendation, Plaintiff did not request that Defendants produce any of the six documents that had not already been produced to them. On September 25, the parties participated in a conference call with the Court to discuss the Special Master's findings. On that call, Plaintiff mischaracterized the Special Master's report as supportive of sanctionable discovery conduct, and indicated its intention to move for sanctions

---

[9] While recognizing the complexity of Judge Hochberg's assignment, Defendants respectfully disagree with a number of her conclusions that certain documents are not privileged.

rather than seek further privilege review.

Given Plaintiff's increasingly hyperbolic and vague challenges to a privilege process that had been reviewed and found overwhelmingly to be sufficient (in some cases, exceeding requirements) by no fewer than three federal judges at this point, Defendants offered to review in good faith individual documents on Defendants' privilege log that Plaintiff in good faith identified as ones that, based on the descriptions in the log, are not privileged and also are important to resolve the issues in the case, and at the Court's suggestion, put that offer in writing the next business day. Ex. K. In response, Plaintiff refused to identify *any* documents—whether from the Special Master's report or otherwise—that they wished for Defendants to re-review, but instead flatly rejected Defendants' offer as purportedly nothing more than "a last minute attempt to avoid sanctions." Ex. L at 2, 4. On October 8, Defendants again wrote to Plaintiff and offered to discuss the issue further. Ex. M. Plaintiff never responded to that letter. On October 9, Plaintiff filed the instant motion for "discovery sanctions" in the form of an "adverse inference" instruction similar to that found by another court for "spoliation."[10]

## III.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Among the factors relevant to whether discovery is proportional are "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Courts have the power under Federal Rule of Civil Procedure 37 to sanction parties for failure to comply with a court order, failure to make required disclosures, failure to respond to discovery, or failure to preserve

---

[10] Plaintiff's present request for an adverse inference instruction appears to be a fallback position, given that Plaintiff initially suggested during a telephonic hearing before the Court that default or terminating sanctions were warranted, Pettis Decl. ¶ 20, an even more extraordinary suggestion than the relief they request here, and just as unsupported by fact or law.

relevant information.  *Id*.

When a party contends that electronically stored information ("ESI") has been spoliated, which Plaintiff repeatedly contends is analogous to the current dispute, Rule 37(e) limits the Court's inherent authority to issue sanctions.  *Id*.; *see also id.* at advisory committee's note to 2015 amendment (stating that the amended Rule 37(e) "forecloses reliance on inherent authority . . . to determine when certain measures should be used").  Before issuing an adverse inference sanction based on the spoliation of ESI, the Court must find that:  (i) the ESI was "lost because a party failed to take reasonable steps to preserve it"; (ii) the ESI "cannot be restored or replaced through additional discovery"; and (iii) the spoliating party "acted with the *intent* to deprive another party of the information's use."  Fed. R. Civ. P. 37(e), (e)(2) (emphasis added).  When explaining the rationale for these stringent requirements, the Advisory Committee stated that "[n]egligent or even grossly negligent behavior does not logically support [an adverse] inference."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Even under the pre-2015, non-ESI common law regarding the Court's inherent authority to issue sanctions, adverse inference sanctions are generally only awarded in the case of spoliation of evidence, or where a party refuses to comply with explicit court orders to produce information.  *See, e.g., Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005); *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 373 (6th Cir. 2008) (per curiam).  No law provides for an adverse inference as a remedy for a privilege logging dispute.  "An adverse inference instruction 'is an extreme sanction and should not be imposed lightly.'"  *E.E.O.C. v. New Breed Logistics*, No. 10-2696 STA/TMP, 2012 WL 4361449, at *7 (W.D. Tenn. Sept. 25, 2012) (citation omitted).  "[T]he court must consider, in addition to the conduct of the spoliating party, whether any missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence."

*Id.* (citation omitted). Showing that "the destroyed evidence would have been responsive to a document request" is not enough; "[t]he innocent party must also show that the evidence would have been helpful in proving its claims or defense—i.e., that the innocent party is prejudiced without that evidence." *Id.* at *7-8 (denying adverse inference sanction because moving party "has not shown whether any emails that may have been destroyed were relevant, nor has it shown that it has suffered prejudice").

## IV.    ARGUMENT

Plaintiff has failed to demonstrate that it is entitled to any sanction against Defendants— and certainly not an extreme sanction like an adverse inference instruction that would be confusing, disproportionate and wildly prejudicial to Defendants. No judge has found that Defendants acted in bad faith, or failed to comply with their discovery obligations. An adverse inference is not warranted and would be highly prejudicial, essentially allowing Plaintiff to win the case without proving any of the elements of its claims.

### A.    Defendants Have Not Acted In Bad Faith; Defendants Complied With Their Discovery Obligations—As Three Federal Judges Have Found

As three federal judges have concluded, Defendants complied with their discovery obligations. No judge has found that Defendants acted in bad faith. Despite Plaintiff's increasingly vague complaints, Defendants' privilege log complies with applicable law. Both Judge Frensley and this Court found that Defendants' logs comport with the requirements of the Federal Rules of Civil Procedure and this Circuit. Although the sufficiency of Defendants' privilege log was not before Special Master Hochberg, Plaintiff claims that Judge Hochberg's request for additional information (for example, the roles of certain individuals on sampled communications) in order to reach her determinations regarding certain documents is further proof that Defendants' log entries were deficient. But, as this Court explained, a privilege log need not

set forth every piece of information that might be necessary for a judge to resolve a privilege challenge; sometimes, additional information, and/or an *in camera* review, is required. *See* ECF No. 221 at 9 (when a party challenges another party's privilege assertions on a privilege log, a court must "consider, within the court's discretion, what additional information or evidence, if any, is necessary" to test the producing party's privilege claims). Defendants' privilege log provides no basis whatsoever for discovery sanctions.

Similarly, every decision-maker to have evaluated a sample of Defendants' privilege determinations (including documents chosen by Plaintiff) has concluded that the vast majority of Defendants' privilege calls were appropriate. In one instance, Judge Frensley disagreed with Defendants' privilege assertion over an email that included in-house counsel. ECF No. 211 at 16-21. In 12 instances, Judge Hochberg disagreed with Defendants' assertions that legal, not business, advice was being sought or rendered, and with respect to 11 documents, she disagreed with Defendants' approach to withholding non-privileged documents when connected to privileged family members (Defendants did not assert that the non-privileged family members were independently privileged). No judge has ever found wholesale deficiencies in Defendants' privilege review or bad faith on Defendants' part. To the contrary, Judge Frensley explicitly *did "not* find that CoreCivic's privilege logs suffer from widespread problems as to timeliness or form, or that the claims themselves . . . are insufficient," *id.* at 23 (emphasis added); this Court overwhelmingly agreed with Judge Frensley, ECF No. 221 at 14-21; and Judge Hochberg found that only a small portion of the documents she reviewed arguably should not have been withheld (but, given the irrelevant content of those emails, Plaintiff cannot claim any prejudice), ECF No. 305 at 7.

Plaintiff claims that Defendants' production of 232 documents where the inclusion of

Natasha Metcalf was the only initially asserted basis for privilege shows Defendants' bad faith. Mot. at 21. But it does no such thing. Defendants initially withheld 260 documents where Ms. Metcalf was the only attorney listed, out of a total of approximately 8,800 documents Defendants logged as privileged. Ms. Metcalf is an attorney who works at CoreCivic. ECF No. 225. Determining whether communications with in-house attorneys are legal or business in nature is one of the most complex issues in any document review. The Metcalf documents—like the other more than one million documents reviewed in this case—were initially reviewed by a team comprised of over 50 lawyers. Pettis Decl. ¶ 6. Later, senior members of Defendants' trial team reviewed the Metcalf documents, determined many of them were not privileged, and produced them. Ex. N. Plaintiff provides no basis to suggest that the complex privilege issues regarding the Metcalf documents, long since resolved, necessarily imply that other aspects of Defendants' privilege review were in any way deficient.

In sum, the basic premise of Plaintiff's motion—that Defendants' "discovery abuses" must be "punished"—is fundamentally wrong because no such abuses have occurred. Plaintiff's motion should be denied on this basis alone.

### B.   An Adverse Inference Sanction Based On Spoliation Precedent Is Not Warranted And Would Be Highly Prejudicial

Even if this Court were to conclude (contrary to Judge Frensley, the Special Master, and this Court's prior findings) that Defendants have "withheld relevant documents from Plaintiff under the guise of unsubstantiated and improper claims," an adverse inference sanction would still not be warranted on the facts—and most certainly not an adverse inference grounded in principles of spoliation, which indisputably has not happened here. Contrary to Plaintiff's contention, "[e]ven a permissive adverse inference is a severe remedy, as it informs the jury of a party's potential misconduct, which 'may be difficult for a party to overcome.'" *Johnson v. Perry*, No.

15cv403, 2018 WL 6235742, at *5 (S.D.N.Y. Jan. 30, 2018) (citation omitted), *aff'd*, 763 F. App'x 81 (2d Cir. 2019). As the Eighth Circuit explained, an adverse inference instruction "necessarily opens the door to a certain degree of speculation by the jury . . . [and], when not warranted, creates a substantial danger of unfair prejudice." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900-03 (8th Cir. 2004) (granting new trial due to unwarranted permissive adverse inference instruction).

To be clear, ESI spoliation refers to the bad-faith loss or destruction of relevant evidence; it has nothing to do with disputes over privilege. Fed. R. Civ. P. 37(e). Spoliation is categorically different from a privilege dispute, because in a privilege dispute, *the evidence still exists*: the parties can litigate the privilege calls (as they have done here), judges can rule on the adequacy of the privilege assertions (and whether the documents withheld are, in fact, privileged) (as they have done here), and if a document is found to be improperly withheld, a court can order a party to produce it or be deemed to have waived privilege. Indeed, even Plaintiff recognizes that those are the "traditional" remedies for improper privilege assertions, and for that reason, sought those very remedies in its Motion to Compel. ECF No. 195 at 20. Plaintiff's only basis for abandoning its prior request now is its complaint that this remedy would be "too late" because the parties are on the eve of summary judgement. Mot. at 18. But that's a problem of its own making. Plaintiff waited years to raise this dispute with the Court.

The fact that Plaintiff now admits it has no interest in the withheld documents speaks for itself. Instead, Plaintiff requests the following permissive adverse inference, subject to "any modifications the Court finds appropriate":

> The Court has found, and you must accept this finding to be true, that Defendants negligently failed to produce evidence—that is, they withheld relevant evidence pursuant to erroneous claims that the evidence was privileged even though two current judges and one retired judge examined sample sets of withheld documents and found each set contained documents that were not privileged; the percentage of improperly withheld documents varied from sample to sample but each was over 10%, and Defendants continue to

> withhold as privileged over 8,000 documents that no judge has reviewed.
>
> From this Court's findings, you are allowed to infer, or conclude, that Defendants withheld relevant evidence that would have shown something favorable to the Plaintiff and unfavorable to Defendants.
>
> I am not telling you that you have to reach that conclusion, only that you can if you think it reasonable. Whether or not you do so is solely a matter within your collective discretion based on your consideration of this instruction and all of the other evidence in the case.

Mot. at 23 (citation omitted). This instruction is demonstrably not, as Plaintiff contends, "narrowly tailored" to the circumstances here. This instruction is modeled upon an instruction given in *Ross v. Home Depot USA Inc.*, No. 2:12-cv-743, 2014 WL 2805094, at *1 (S.D. Ohio June 20, 2014), a personal injury case in which a key element of the plaintiff's claim was that the defendant's store was in an unsafe condition; defendants failed to preserve surveillance video relevant to the accident in its store; and so the appropriate remedy was an instruction to the jury that it would be reasonable to infer that the videotape, if available, would show that the defendant's store was in an unsafe condition.[11]

The situation could not be more different here. First, Plaintiff has not even *attempted* to articulate what kinds of adverse information it suspects may exist in Defendants' privileged documents that "would have shown something favorable to the Plaintiff and unfavorable to the Defendants," Mot. at 23, like the video surveillance footage so obviously relevant in *Ross*. Indeed, Plaintiff itself had approximately 1,100 of the privileged documents and it used five of them in support of its motion to compel. ECF No. 195. Yet, Plaintiff wants this Court to instruct members of the jury that they "may" infer that Defendants withheld *thousands of* relevant pieces of evidence

---

[11] A similar situation occurred in *Clemons v. Corrections Corp. of America*, No. 1:11-CV-339, 2014 WL 3507299, at *1-2 (E.D. Tenn. July 14, 2014), in which a part-time worker at a CoreCivic facility duplicated the surveillance video from the wrong day, and hence relevant video evidence was lost.

pursuant to "erroneous" privilege claims, and the jury "can conclude" that those thousands of documents contain *some kind*—or *any kind*—of adverse information, relevant to any issue at all in the case, whether an element of Plaintiff's claim on which it bears the burden of proof or an affirmative defense that Defendants must prove. (But, only if the jury thinks that would be "reasonable.") There is no support in law or logic for such a broad, unsupported, confusing and misleading jury instruction. And it would be unfair to the jury, and to Defendants, to expect the jurors to figure out what is "reasonable" to conclude based on the misleading and truncated description of the parties' privilege dispute and the Court's prior findings.

All of Plaintiff's cases imposing an adverse inference sanction are inapposite. This is not a case where Defendants destroyed key documents, such as documents regarding employee promotions that went to the heart of a plaintiff's employment discrimination claim. *See, e.g., Phillips*, 400 F.3d at 395-96, 401-402. Nor is this a case where Defendants failed to comply with multiple court orders compelling the production of documents, *see, e.g., Grange*, 270 F. App'x at 373, or concealed the identity of 93 witnesses, *Evans v. Port Authority of New York & New Jersey*, 201 F.R.D. 96, 99-100 (S.D.N.Y. 2001), or hid information regarding a key piece of physical evidence vital to determining liability, *Trimboli v. Maxim Crane Works, L.P.*, No. 3:18-cv-00346, 2020 WL 3546810, at *1 (M.D. Tenn. June 30, 2020) (Trauger, J.), or simply refused to produce clearly relevant non-privileged discovery, *see, e.g., Keck v. Graham Hotel Systems Inc.*, 566 F.3d 634, 640 (6th Cir. 2009). To the contrary, Defendants have from the beginning of this case sought to comply with their discovery obligations, and to address any concerns Plaintiff raised in good faith. Nothing has been lost. Nothing has been destroyed.

Furthermore, many of the authorities Plaintiff cites awarding adverse inference sanctions for spoliation are inapposite for the additional reason that the cases predate the 2015 amendments

to Federal Rule of Civil Procedure 37(e), which now provides that, in the case of electronically stored information (the type of information at issue here), a court may *only* issue a permissive or mandatory adverse inference sanction "upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation[.]"  Fed. R. Civ. P. 37(e)(2) (emphasis added); *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (a "showing of negligence or even gross negligence will not do the trick"); *Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13cv2077 BTM(RBB), 2016 WL 305096, at *1-2 (S.D. Cal. Jan. 26, 2016) (finding of intentional spoliation required for adverse inference instruction).  Indeed, the Advisory Committee noted the severity of the sanction to justify the amendment.  *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (noting that even a permissive adverse inference is a "very severe measure[]"); *Yoe v. Crescent Sock Co.*, No. 1:15-cv-3-SKL, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017) ("Rule 37(e) now reserves the harshest sanctions, such as adverse inference instructions, summary judgment or dismissals, only for cases in which the court can 'find that the spoliating party acted with the intent to deprive another party of the information's use in the litigation.'") (alterations omitted).  Because Defendants have not acted with any improper intent to deprive Plaintiff of non-privileged information relevant to the disputed issues in this case, Plaintiff cannot receive an adverse inference sanction under the Federal Rules.

Finally, even assuming that the Sixth Circuit's "*Beaven*" test for non-ESI spoliation has any relevance here, the spoliation case law in this Circuit is clear that "[t]he party seeking the sanction must show sufficient *evidence* from which a reasonable trier of fact could infer that the unavailable documents are 'of the nature' that the non-spoliating party alleges them to be."  *In re Black Diamond Mining Co., LLC*, 514 B.R. 230, 241-42 (E.D. Ky. 2014) (emphasis added) (citation omitted) (holding adverse inference sanction unwarranted for lost email attachments

because challenging party "wholly failed to produce any evidence suggesting that the missing email attachments related to her claims"); *see Beaven v. U.S. Dep't of Just.,* 622 F.3d 540, 553 (6th Cir. 2010). Plaintiff has not even attempted to assert what Defendants' withheld documents contain or how they are relevant to the issues in this case, and therefore Plaintiff is not entitled to an adverse inference instruction. *See, e.g.*, *Courser v. Mich. House of Representatives*, No. 19-1840, 2020 WL 5909505, at *20 (6th Cir. Oct. 6, 2020) (affirming denial of motion for sanctions because moving party did not "even attempt to explain what information was deleted and what may have been useful"). To the extent Plaintiff tries to argue that it cannot make such a showing on the basis of a privilege log alone, that only highlights the disconnect between the issues Plaintiff complains of here and any proposed adverse inference sanction.

Plaintiff's true motive in asking for an adverse inference sanction is obvious. Such an inference would be vastly more valuable to Plaintiff in this case than the withheld documents themselves—although it would do nothing to advance the search for truth or assist the trier of fact to determine whether Defendants made false or misleading statements, with the requisite intent, that caused Plaintiff and other investors losses. Such an instruction would allow the jury to speculate that evidence appropriately withheld on grounds of attorney client privilege or work product is somehow favorable to Plaintiff's claims that Defendants committed securities fraud. The substantial danger of unfair prejudice to Defendants from the jury instruction requested by Plaintiff (with or without modifications) is not justified by the record. Far from "evening the playing field," as Plaintiff suggests (Mot. at 17), it would throw the entire game in Plaintiff's favor.

## C. Plaintiff Should Pay All Of The Special Master Fees

The Court has reserved decision on the allocation of Special Master fees between Plaintiff and Defendants. Defendants request that Special Master Hochberg's fees and expenses be

allocated to Plaintiff alone, or at minimum, that the parties split the Special Master's fees 50/50.

Under Rule 53(g)(3) of the Federal Rules of Civil Procedure, when considering the appropriate allocation, this Court must consider "the extent to which any party is more responsible than other parties for the reference to a master." *Id.* Plaintiff overreaches in suggesting that Defendants' "sanctionable discovery abuses" led directly to the reference to a master, or that Special Master Hochberg's findings justify allocating her fees to Defendants alone. Far from confirming Plaintiff's baseless suspicions, the Special Master's review confirmed that the vast majority of Defendants' privilege calls were correct, and the handful of instances in which she disagreed with Defendants arose from complex issues or issues on which courts do not endorse a uniform approach.[12]

These facts all support allocating the Special Master fees to Plaintiff alone, or at a minimum, splitting the fees 50/50, but under no circumstances should Defendants be required to bear that burden alone. Even Plaintiff's cited authorities indicate that some apportionment of fees to Plaintiff, the party that requested the Special Master, is reasonable. *See, e.g.*, *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2018 WL 1542020, at *28 (M.D. Tenn. Mar. 29, 2018) (apportioning 75% of Special Master fees to party responsible for numerous preservation and production deficiencies, and 25% to party that requested the Special Master).

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion and order Plaintiff to pay the Special Master's fees, or at minimum, apportion the Special Master's fees between Plaintiff and Defendants equally.

---

[12] The Special Master also incurred additional fees engaging in an expanded fishing expedition regarding the BOP After Action Report, at Plaintiff's request, after Defendants made numerous representations to Plaintiff that the "After Action Report" referenced in their privilege log was *not* the BOP After Action Report, which the Special Master confirmed.

DATED: October 16, 2020          Respectfully submitted:

                    /s/ *Steven A. Riley*
Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Meryn C. N. Grant (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Ave., Suite 100
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
meryn.grant@lw.com

Morgan E. Whitworth (admitted pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: (202) 637-2335
F: (415) 637-2201
sarah.tomkowiak@lw.com
*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

David J. Schindler
Brian T. Glennon
Morgan E. Whitworth
LATHAM & WATKINS LLP
355 South Grand Ave.
Los Angeles, CA 90071
david.schindler@lw.com
brian.glennon@lw.com
morgan.whitworth@lw.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Avenue of the Stars, Suite 100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue
Suite 601
Knoxville, TN 37902
cain@scottandcain.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL &
ASSOCIATES, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER
RUDMAN & DOWD LLP
414 Union Street
Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union Street
Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

this 16th day of October, 2020.

/s/ *Steven A. Riley*
Steven A. Riley