# EXHIBIT A

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>  Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS |

PROPOUNDING PARTY: Amalgamated Bank, as Trustee for the LongView Collective Investment Fund

RESPONDING PARTIES: Defendants CoreCivic, Inc., f/k/a Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin

SET NUMBER: One

**I.     DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1. "ACA" means the American Correctional Association and any of its predecessors, successors, parents, subsidiaries, divisions, committees or affiliates, and their respective present and former officers, directors, executives, board of governors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing, including, but not limited to, the American Correctional Association Commission on Accreditation.

2. "Adams County Audit" means the Audit of the Federal Bureau of Prisons' Contract with CoreCivic, Inc. to Operate the Adams County Correctional Center in Natchez, Mississippi, published by the OIG on December 20, 2016.

3. "BOP" means the Federal Bureau of Prisons and any of its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

4. "BOP Prisons" means the prisons operated by CoreCivic under contract for the BOP, including Adams County Correctional Center, Cibola County Correctional Center, Eden Detention Center, McRae Correctional Facility and Northeast Ohio Correctional Center.

5. "CoreCivic" or "Company" refers to CoreCivic, Inc., f//k/a Corrections Corporation of America, and any of its predecessors, successors, parents, subsidiaries, divisions, operational units, facilities or affiliates, and their respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

6. "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes original and all non-identical copies of all documents, as defined

herein, sent by you or received by you from any person, as well as any documents reflecting or recording the content of any oral communications in any form (including, without limitation, inter- and intra-office memoranda, e-mail and other communications). "Communication(s)" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands or complaints, or press, publicity or trade releases.

7. "Concerning" means constituting, evidencing, reflecting, incorporating, effecting, including or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or request. Requests for "documents concerning" any subject matter include documents concerning communication regarding that subject matter.

8. "Defendants" refers to CoreCivic and the Individual Defendants (defined below), collectively.

9. "Document(s)" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence and includes, without limitation, all electronic data, databases and all communications or information that are stored or retrievable or recorded in any manner and also includes, without limitation, any writing (as "writings" is defined in Rule 1001 of the Federal Rules of Evidence) or other record of information or images, including, without limitation, prints, handwritings, photographs, videotapes, films and recordings (as "recordings" is defined in Rule 1001 of the Federal Rules of Evidence). "Document(s)" also includes, without limitation, drafts or non-identical copies of any document.

10. "DOJ" means the U.S. Department of Justice and any of its predecessors, successors, parents, subsidiaries, divisions or affiliates, including the Federal Bureau of Investigation, and their

respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

11. "Electronically stored information" or "ESI" refers to all documents stored electronically, including e-mails, voicemails, instant messages, text messages, documents, spreadsheets, databases, file fragments, metadata, digital images and digital diagrams.

12. "Employee" refers to any person who at any time acted or purported to act on your behalf or under your supervision, direction or control, including, without limitation, past and current directors, officers, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, attorneys, agents, trustees, independent contractors, assigns, businesses or similar persons or entities.

13. "Government entity" refers to any agency, committee, commission, panel, regulatory body or law enforcement agency of the United States or any state or local government and any predecessors, successors, parents, subsidiaries, divisions or affiliates, and respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

14. "Individual Defendants" means Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin, and their agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on their behalf.

15. "Joint Commission" refers to the Joint Commission on Accreditation of Healthcare Organizations and any of its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

- 3 -

16. "Meeting" refers to the contemporaneous presence of any natural persons (including by telephone) for any purpose, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

17. "National Commission" means the National Commission on Correctional Healthcare and any of its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

18. "OIG" means the Office of the Inspector General of the U.S. Department of Justice and any of its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons acting or purporting to act on behalf of the foregoing.

19. "Person" means any natural person or any business, legal or government entity or association.

20. "Plaintiff" refers to Amalgamated Bank, as Trustee For the LongView Collective Investment Fund.

21. "Requirements" includes any requirement, contract term, standard, policy, guidance or expectation set by the BOP, ACA, Joint Commission, National Commission, any government entry or any other person or entity, whether generally applicable or facility specific.

22. "Review" means the report entitled "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" issued by the OIG on August 11, 2016.

23. "Yates Memorandum" means the memorandum entitled "Reducing our Use of Private Prisons" issued by Deputy Attorney General Sally Q. Yates on August 18, 2016.

24. "You" or "your" refers to CoreCivic and the Individual Defendants.

25. "All" shall be construed as "any," and "any" shall be construed as "all."

26. "And" shall include "or," and "or" shall include "and," such that each document request calls for the production of the greatest number of documents.

## II.   INSTRUCTIONS

1. All documents shall be produced as they are maintained in the ordinary course of business and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2. In responding to these requests, you shall produce all responsive documents (including those stored electronically) that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3. Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiff *original* documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies that differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4. If production of documents is withheld on the ground of privilege, as to each such withheld document state the following information:

    (a)    which privilege is claimed;

    (b)    who is asserting the privilege;

(c) a precise statement of the facts upon which said claim of privilege is based; and

(d) the following information describing each purportedly privileged document:

(i) a brief description sufficient to identify its nature, *i.e.*, agreement, letter, memorandum, type, etc.;

(ii) a brief description sufficient to identify its subject matter and the purpose of the document;

(iii) the date it was prepared;

(iv) the date it bears;

(v) the date it was sent;

(vi) the date it was received;

(vii) the identity of the person preparing it;

(viii) the identity of the person sending it;

(ix) the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

(x) a statement as to whom each identified person represented or purported to represent at all relevant times;

(xi) all persons to whom its contents have been disclosed; and

(xii) a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

5. If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction No. 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

- 6 -

6.  If you contend that responding to these requests would impact a privilege claim by a third party, in addition to complying with Instruction No. 4 above, Defendants shall promptly inform such third party of these requests so that it will have notice and the opportunity to intervene and protect any interests, arguments or concerns it may have.

7.  You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instruction Nos. 4-6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.  Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not being produced.

9.  If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

    (i)    whether the document is missing or lost;

    (ii)    whether it has been destroyed;

    (iii)    whether the document has been transferred or delivered to another person and, if so, at whose request;

    (iv)    whether the document has been otherwise disposed of; and

    (v)    a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10. With respect to any category of documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

### III. FORM OF PRODUCTION – HARD COPY

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### IV. FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

1.   Electronically stored information should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video and spreadsheet-type files, including, without limitation, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .opt image cross-reference file should also be provided for all TIFF images.

2.   TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the

- 8 -

speaker's notes on the TIFF image. If an original document contains color, the document should be produced as single-page, 300 DPI, color JPG images.

3. If a document is produced in native format, a single-page Bates-numbered TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

4. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN field should list each Custodian, separated by a semicolon, who was a source of that document. To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

5. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, file type culling, near de-duplication, e-mail thread suppression or technology-assisted review). Use of these technologies to reduce the reviewable collection or production, other than as described within this document, requires the consent of the receiving party.

## V. RELEVANT TIME PERIOD

All requests herein refer to the time period from January 1, 2011 through March 1, 2017, unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the Relevant Time Period.

## VI. DOCUMENTS REQUESTED

<u>REQUEST NO. 1</u>:

All contracts between CoreCivic and the BOP or any subcontractor concerning the BOP Prisons, together with all: (i) exhibits to the agreement; (ii) documents incorporated by reference into the agreement; (iii) other agreements referenced in or affecting the terms of the contract, including side agreements; (iv) notices given or received pursuant to the agreement; and (v) modifications or amendments, or requested modifications or amendments, of the contract after it first became effective (including all documents reflecting the terms of any actual or attempted oral modification of the agreement).

<u>REQUEST NO. 2</u>:

All responses to BOP requests for proposals ("RFP"), responses to BOP requests for qualifications ("RFQ") or other proposals by CoreCivic for contracts to operate prisons on behalf of the BOP, together with all amendments or attachments thereto, and all communications regarding the RFP, RFQ or the proposal.

- 10 -
1358763_1
Case 3:16-cv-02267    Document 322-2    Filed 10/16/20    Page 12 of 20 PageID #: 10061

REQUEST NO. 3:

All documents used in connection with or distributed at or as a result of any meetings between management of CoreCivic or any of the BOP Prisons and the BOP concerning CoreCivic's services or performance.

REQUEST NO. 4:

Documents concerning the "monitor[ing]" of CoreCivic's "compliance with contractual requirements, as well as outside agency and accrediting organization standards and guidelines"[1] applicable to the BOP Prisons by CoreCivic's quality assurance department or division, including the tracking of efforts to deliver services and operations.

REQUEST NO. 5:

All approved staffing plans used at or otherwise relating to the BOP Prisons, together with any amendments or attachments thereto.

REQUEST NO. 6:

All contract facility monitoring reports, follow-up reports, oversight checklists, notices of concern, cure notices, audit reports and award fee determination letters received from the BOP, DOJ, OIG or any other government entity, or prepared internally, concerning any of the BOP Prisons.

REQUEST NO. 7:

All documents and communications provided to or received from the BOP, OIG or DOJ in connection with or concerning the Review, the Yates Memorandum or the Adams County Audit.

REQUEST NO. 8:

Documents sufficient to identify all lawsuits by any prisoner or inmate held at any of the BOP Prisons naming CoreCivic or any of its related entities or affiliates, or any of its employees, contractors or agents as defendants, including documents sufficient to identify: (i) the parties to the

---

[1] *See, e.g.*, CoreCivic's Form 10-K for the year ended December 31, 2011, at 7; CoreCivic's Form 10-K for the year ended December 31, 2012, at 8.

suit; (ii) the nature of the allegations underlying the suit; (iii) the procedural status or manner of resolution of the suit; and (iv) the terms of any settlements to resolve the suit, including the amount of any monetary payments made as a result of the suit.

REQUEST NO. 9:

All organizational charts showing the management structure or reporting lines of authority at CoreCivic or the BOP Prisons, or other documents sufficient to identify the management and describe the organizational structure of CoreCivic and the BOP Prisons.

REQUEST NO. 10:

All written job descriptions used or maintained by CoreCivic or any of the BOP Prisons relating to their: (i) executive management positions; (ii) finance and administration departments; (iii) quality assurance department or division; (iv) medical care or health services departments; (v) security or prison safety departments; (vi) facility administrators or wardens or assistant wardens at the BOP Prisons; and (vii) partnership development or business development department.

REQUEST NO. 11:

All employee directories, job rosters or similar documents identifying the employees of CoreCivic's corporate divisions or departments or the employees at the BOP Prisons.

REQUEST NO. 12:

A list of, or other documents sufficient to identify, all independent consultants CoreCivic has used or engaged to market its services to the BOP Prisons or any subcontractor concerning the BOP Prisons, including: (i) the identity of the individual or entity; (ii) the job description or responsibilities of the individual or entity; and (iii) contact information for said individual or entity.

REQUEST NO. 13:

All employee training, corporate and BOP Prison-specific policy and procedure manuals, including policies and procedures used by or provided to: (i) members of CoreCivic's senior management, (ii) CoreCivic's management with responsibility for the BOP Prisons, (iii) CoreCivic's

quality assurance department or division, (iv) CoreCivic's partnership development or business development department, or (v) any of CoreCivic's employees, consultants or contractors involved in: (a) tracking or reporting concerning the BOP Prisons; (b) medical, safety or healthcare services concerning the BOP Prisons; (c) quality assurance and compliance monitoring or reporting; (d) accounting, finance and administration; (e) information technology; or (f) marketing of CoreCivic's facilities or services to government entities, including the BOP.

REQUEST NO. 14:

CoreCivic's Code of Ethics, Corporate Social Responsibility Platform or similar policies, and Corporate Integrity Agreements, together with any amendments or attachments thereto.

DATED: January 30, 2018

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE

*/s/ Willow E. Radcliffe*

WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

Lead Counsel for Plaintiff

- 13 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

# TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/… | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| REDACTED | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. **Note:** E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

## DECLARATION OF SERVICE BY EMAIL AND MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, California 94104.

2. That on January 30, 2018, declarant caused to be served **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** by email to the parties as follows:

| **NAME** | **FIRM** | **EMAIL** |
|---|---|---|
| Brian T. Glennon | Latham & Watkins LLP | brian.glennon@lw.com |
| Anna E. Berces<br>Morgan E. Whitworth | Latham & Watkins LLP | anna.berces@lw.com<br>morgan.whitworth@lw.com |
| Trey McGee<br>Steven A. Riley | Riley Warnock & Jacobson, PLC | tmcgee@rwjplc.com<br>sriley@rwjplc.com |
| Jerry Martin | Barrett Johnston Martin & Garrison, LLC | jmartin@barrettjohnston.com |

3. That on January 30, 2018, declarant served **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

4. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 30, 2018, at San Francisco, California.

_____
PIERRE TIFFITH

CORRECTIONS CORP 16
Service List - 1/30/2018  (16-0117)
Page 1 of 2

**Counsel for Defendant(s)**

David J. Schindler
Brian T. Glennon
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
  213/485-1234
  213/891-8763(Fax)

Milton S. McGee III
Steven A. Riley
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
  615/320-3700
  615/320-3737(Fax)

Anna E. Berces
Morgan E. Whitworth
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
   415/391-0600
   415/395-8095 (Fax)

**Counsel for Plaintiff(s)**

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
  615/244-2202
  615/252-3798(Fax)

Paul Kent Bramlett
Robert Preston Bramlett
Bramlett Law Offices
P.O. Box 150734
Nashville, TN 37215-0734
  615/248-2828
  615/254-4116(Fax)

Michael Goldberg
Brian Schall
Goldberg Law PC
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
  800/977-7401
  800/536-0065(Fax)

Patrick V. Dahlstrom
Pomerantz LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
  312/377-1181
  312/377-1184(Fax)

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
  615/244-2203
  615/252-3798(Fax)


Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, NY  10016
  212/661-1100
  212/661-8665(Fax)

Darren J. Robbins
Danielle S. Myers
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
  619/231-1058
  619/231-7423(Fax)