EXHIBIT 4
[Filed Under Seal]

```
 1    ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2                 A REALTIME ROUGH DRAFT IS AVAILABLE
      TO ALL COUNSEL.  RECEIPT OF SUCH IS ONLY
 3    AVAILABLE WITH A CERTIFIED COPY ORDER.  THERE IS
      AN ADDITIONAL CHARGE FOR THE ROUGH DRAFT.  THE
 4    REALTIME DRAFT IS UNEDITED AND UNCERTIFIED AND
      MAY CONTAIN UNTRANSLATED STENOGRAPHIC SYMBOLS,
 5    REPORTER NOTES, MISSPELLED PROPER NAMES AND/OR
      NONSENSICAL WORD COMBINATIONS.  ALL SUCH ENTRIES
 6    WILL BE CORRECTED ON THE FINAL CERTIFIED
      TRANSCRIPT.
 7

 8                 DUE TO THE NEED FOR THE REPORTER TO
      CORRECT ENTRIES PRIOR TO CERTIFICATION, IT IS
 9    AGREED THIS REALTIME DRAFT WILL BE USED SOLELY
      FOR THE PURPOSE OF AUGMENTING COUNSEL'S NOTES AND
10    NOT FOR USE, INCLUDING CITATION, IN ANY COURT
      PROCEEDING OR DISTRIBUTION TO ANY OTHER
11    PARTY(IES).

12

13                 WHEN PREPARED AS A ROUGH DRAFT
      TRANSCRIPT, THE TRANSCRIPT OF THE DEPOSITION MAY
14    NOT BE CERTIFIED AND MAY NOT BE USED, CITED, OR
      TRANSCRIBED AS THE CERTIFIED TRANSCRIPT OF THE
15    DEPOSITION PROCEEDINGS.  THE ROUGH DRAFT
      TRANSCRIPT MAY NOT BE CITED OR USED IN ANY WAY OR
16    AT ANY TIME TO REBUT OR CONTRADICT THE CERTIFIED
      TRANSCRIPT OF DEPOSITION PROCEEDINGS AS PROVIDED
17    BY THE DEPOSITION OFFICER.

18                 ************************

19

20

21

22

23
```

	24

	25

	1	ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
	2

	3	        VIDEO OPERATOR:  The time on the

	4	   record is 10:14 a.m.  Today's date is

	5	   October 15th 2020.  My name is Carrie Howard

	6	   of Aptus Court Reporting and the Court

	7	   Reporter today is Misty Klapper, both of

	8	   Aptus Court Reporting.

	9	        This begins the video-recorded

	10	   deposition of D. Scott Dodrill, testifying

	11	   in the matter of Nikki Bollinger Grae versus

	12	   Corrections Corporation of America et al.,

	13	   pending before the United States District

	14	   Court, Middle District of Tennessee.

	15	        This video is taken via Zoom video

	16	   conference, the physical recording in

	17	   Lexington, Kentucky.  The video and audio

	18	   recordings today will take place at all

	19	   times during this deposition unless all

	20	   counsel agree to go off the record.

                        Page 2

21           The beginning and end of each video
22      will be announced.
23           The Court Reporter will put on the
24      stenographic record the appearances and she
25      may now swear in or affirm the deponent.

                                                      3

1    ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
2              MS. REPORTER:  One moment.
3              (Witness sworn.  ).
4              MS. REPORTER:  Thank you, sir.
5                     EXAMINATION
6       BY MR. FORGE:
7       Q.   Good morning, Mr. Dodrill.
8       A.   Good morning.
9       Q.   Can you hear me all right, sir?
10      A.   I can.
11      Q.   Okay.  If there's -- if at any point
12   today you have technical difficulties, as I've
13   had, please just let us know.
14           Okay?
15      A.   I will.
16      Q.   Great.  Mr. Dodrill, you retired from
17   the BOP in December of 2010; is that right?

 9      is that if your opinion was unfavorable to the
10      defendants, you would not be getting any more
11      paychecks in the case, correct?
12              MR. GLENNON:  Objection, vague and
13          form.
14              THE WITNESS:  If -- I -- I would
15          speculate that if my opinions weren't
16          favorable to Latham & Watkins, that they
17          would probably settle the case and that
18          would leave me out.  I would be done.
19          BY MR. FORGE:
20      Q.    Now, you -- you provided a verbal
21      description of your opinion prior to writing a
22      report, correct?
23              MR. GLENNON:  Objection, vague and
24          I'm going to instruct the witness not to
25          answer because I think that calls for

                                                        15

 1      ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2          privileged information.
 3              MR. FORGE:  Actually, it doesn't.
 4          I'm not asking for the substance of what he
 5          said.  I'm just -- I'm just going through

Page 16

```
 6        the process, Brian.
 7                MR. GLENNON:  There's -- there's no
 8        way you can ask him what -- whether or not
 9        he previewed his opinion without getting
10        into the substance.  So my objection is
11        going to stand.  I'm going to instruct
12        him --
13                MR. FORGE:  I'm not going to ask him
14        what the preview opinion was.  I'm asking if
15        he did preview it.
16                MR. GLENNON:  But I'm still going
17        to -- I'm still going to instruct him not to
18        answer.
19           BY MR. FORGE:
20        Q.    Mr. Dodrill, did you think that
21   Latham & Watkins -- do you think Latham and
22   Watkins would have paid you to create a written
23   report if they were aware that that written
24   report was going to be critical of the
25   defendants?
```

♠

                                                        16

```
 1   ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2                MR. GLENNON:  Objection, calls for
```
Page 17

 9      Q.   Okay.  Now, given that description,

10      draft Adams CCC after-action report, do not

11      forward beyond addressees, is that enough

12      information for you to assess whether or not that

13      E-mail would be helpful to your assessment of

14      CCA's performance?

15           MR. GLENNON:  I -- I'm going to

16      object and instruct the witness not to

17      answer.

18           MR. FORGE:  On what basis?

19           MR. GLENNON:  On the basis that,

20      first of all, this is part of a much --

21      large -- a few bases.  Let me list them out

22      for you if I could.

23           MR. FORGE:  Well, no.  There's

24      only -- if it's not privileged, I don't want

25      to hear it.  Is it privileged?

                                                      119

 1   ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2           MR. GLENNON:  It's privileged.  We

 3      can't read the document, number one.  Number

 4      two, it's an incomplete hypothetical.

 5      Number three, we're taking your word for it.

                         Page 133

```
 6      Number four, this is part and parcel of a

 7      much larger discovery dispute, as you know,

 8      and I'm not going to have an industry expert

 9      testify about the ins and outs of the

10      adequacy of a privilege log.

11           So I'm going to instruct him not to

12      answer.  And I'm more than happy to meet and

13      confer once the privilege rulings have been

14      determined or, if you want to call the

15      judge, we can do that as well.  But my

16      objection stands.  My instruction stands.

17           MR. FORGE:  Okay.  So since the only

18      valid basis to instruct a witness not to

19      answer a question during a deposition is

20      privilege, I want to -- I want to know

21      specifically what is your privilege?  What

22      is the basis for your privilege instruction?

23           MR. GLENNON:  I've put my instruction

24      and my objection on -- on the record and

25      I've instructed the witness not to answer.
```

                                                                    120

```
 1   ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2              MR. FORGE:  Okay.  So I just want to
```

Page 134

dodrill101520

3      make 100 percent clear, you have absolutely

4      nothing to add for the basis for your

5      privilege instruction?

6           MR. GLENNON:  Correct.  And I

7      would -- other than to add it's not just

8      limited in the scope of privilege.  We're

9      talking about a privilege log.  But we're

10     talking about a much larger body of issues

11     and I'm instructing the witness not to

12     answer.

13           MR. FORGE:  Okay.

14         BY MR. FORGE:

15     Q.   Now, the next row, which is row 79,

16   Mr. Dodrill, contains a document that is dated

17   April 10th 2012.  And it lists a file name for

18   that document of being after-action report Adams

19   revision five.

20           Is -- were you aware that CCA was

21   working on its own after-action report for the

22   Adams County riot in August of 2012?

23           MR. GLENNON:  Object to form.

24           THE WITNESS:  No.

25

Page 135

```
1      ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
2              BY MR. FORGE:

3           Q.   Okay.  Is that file name,

4      after-action report, Adams revision five, is that

5      enough information for you to assess whether or

6      not this document would be helpful to your

7      overall assessment of CCA's performance?

8                MR. GLENNON:  I'm going to instruct

9           the witness not to answer on the same

10          grounds I articulated previously.

11               MR. FORGE:  Okay.  And I'm going to

12          add to that.

13    BY MR. FORGE:

14          Q.   If the privilege description that's

15     provided here is that this document, this

16     after-action report, Adams revision five, is

17     described in the privilege description as

18     attachment to communication with in-house counsel

19     seeking or receiving legal advice regarding

20     facility operations, does that additional

21     description provide you with enough information

22     to determine whether or not this document would

23     be helpful to assessing CCA's performance?
```

Page 136

 24           the knowledge of what's supposed to be going

 25           on and how it's supposed to happen and


                                                          162


 1    ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2            that's what I was using to make my opinions

 3            in this case on.  And I just wanted to

 4            clarify that I do have the knowledge.  I

 5            just don't have the hands-on knowledge that

 6            I was -- that I was thinking that you were

 7            talking about.

 8                BY MR. FORGE:

 9            Q.   Okay.  So this so-called

 10    clarification does not change your earlier

 11    testimony that you did not have access to

 12    information that include assessments as to

 13    whether or not the medical treatment an inmate

 14    received before death did or did not meet

 15    community standards, does it?

 16            A.   You're talking about the -- the --

 17    the cases that -- at Adams?

 18            Q.   No.  I'm asking you that as part of

 19    your job at the BOP --

 20            A.   Yes.

                       Page 182

dodrill101520

 9       A.    I'm sorry, what tab was that?

10       Q.    Tab ten.

11       A.    Tab ten.  It's Exhibit 232?

12       Q.    Yes, and before you do that, let me

13   ask you:

14             Have you discussed -- I'm not asking

15   for the substance of it yet, but have you

16   discussed how to respond to any of the questions

17   during any -- any of the questions I've posed

18   today during any of the breaks we've had?

19             MR. GLENNON:  I'm going to object and

20        instruct him not to answer because even in

21        answering the questions, it -- it would

22        reveal the content of attorney/client

23        communication.

24             MR. FORGE:  I disagree with you, but

25        that's your -- your instruction stands.

                                                   167

 1   ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2         BY MR. FORGE:

 3       Q.    You're going to follow your

 4   attorney's instructions, sir?

 5             MR. GLENNON:  He will.

                  Page 187

```
 6              THE WITNESS:  I am.

 7              MR. FORGE:  I'll -- I'll let him

 8         answer for himself if that's okay.  I know

 9         it's inconvenient, but we'll let the witness

10         answer.

11              THE WITNESS:  I am.

12         BY MR. FORGE:

13    Q.    Okay.

14              Now -- so you're unwilling to testify

15    whether anyone at any point during this

16    deposition has suggested to you how to respond to

17    any of my questions?

18              MR. GLENNON:  Same -- same -- same --

19         same objection.  It calls for

20         attorney/client privilege.

21              I mean, if you're talking about

22         communications with somebody outside of one

23         of the lawyers who is representing you in

24         connection with this deposition,

25         Mr. Dodrill, you can -- you can answer.  But
```

                                                                168

```
1    ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
2              I don't think that's -- I'll leave it there.
```

Page 188

```
3            THE WITNESS:  I -- I -- there's
4       nobody here.  The only people around me
5       would be my attorneys in the -- in the
6       breakout room, and I -- so I've got -- I'm
7       not going to answer the question.
8          BY MR. FORGE:
9       Q.   And you refuse to answer the question
10   as to whether or not any of the answers you've
11   given have been influenced by any information you
12   received during the breaks?
13            MR. GLENNON:  We -- he -- he's not
14       refusing.  He's being instructed not to
15       answer.  I know, Jason, you're insinuating
16       that we coached him.  We -- we did not.
17       But --
18            (Crosstalk)
19            MR. FORGE:  Okay.  So you're
20       representing what occurred during the
21       breaks, Brian?
22            MR. GLENNON:  Look, I'm trying to
23       bring this to an end.  He's not refusing to
24       answer.  I'm instructing him not to
25       because --
```

Page 189

```
 1      ROUGH DRAFT - D. SCOTT DODRILL - 10-15-20
 2                 (Crosstalk)

 3                 MR. FORGE:  Great.

 4   BY MR. FORGE:

 5        Q.    If you're not refusing to answer,

 6      then answer me this question:

 7                 Have any of your answers today been

 8      influenced by anything anyone told you during any

 9      of the breaks during this deposition?

10                 MR. GLENNON:  Objection, vague and

11            still calls for the communication of -- or

12            the disclosure of attorney/client

13            communication.

14              BY MR. FORGE:

15        Q.    So are you refusing to answer, sir?

16                 MR. GLENNON:  No, he's been

17            instructed not to answer.  There's a

18            difference.

19              BY MR. FORGE:

20        Q.    And are you refusing to answer, sir?

21        A.    I'm heeding the advice of my

22      attorney.

23        Q.    And that advice is to refuse to
                      Page 190
```