# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

NIKKI BOLLINGER GRAE,                )
Individually and on Behalf of All    )
Others Similarly Situated,           )
                                     )
      Plaintiff,            )
                                     )
v.                                   )     **Case No. 3:16-cv-02267**
                                     )     **Judge Trauger/Frensley**
CORRECTIONS CORPORATION              )
OF AMERICA, et al.,                  )
                                     )
      Defendants.           )


## ORDER

## I.  INTRODUCTION

This is a securities class action brought by Nikki Bollinger Grae on behalf of herself and others who purchased securities issued by Defendant CoreCivic (formerly Corrections Corporation of America or "CCA") between February 27, 2012 and August 17, 2016.  Docket No. 57 (Amended Complaint).  Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated") alleges that CoreCivic and the "Individual Defendants" (current and former CoreCivic executives Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin) violated the Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*) by engaging in a scheme to defraud investors that involved making materially false and misleading statements and omissions regarding CoreCivic's business and operations.  *Id.*  Amalgamated alleges that these false statements included the assertion that CoreCivic's renewal rate on contracts was and would remain high because of the quality of

1

services it provided to government customers, including the Bureau of Prisons ("BOP").  *Id.*;

Docket No. 76, p. 14-19, 24-30.

This matter is now before the Court upon Amalgamated's Motion to Compel Further Interrogatory Responses and For Discovery Sanctions.  Docket No. 277.  Amalgamated has also filed a Supporting Memorandum and multiple supporting documents.  Docket Nos. 278; 279; 279-1 to 279-21; 280; 280-1 to 280-8.  CoreCivic has filed a Response in Opposition and multiple supporting documents.  Docket Nos. 285; 286; 286-1 to 286-14.  Amalgamated has filed a Reply.  Docket No. 299.  For the reasons set forth below, Amalgamated's Motion (Docket No. 277) is GRANTED IN PART and DENIED IN PART.

## II.  <u>LAW AND ANALYSIS</u>

### A.  <u>Discovery Requests and Motions to Compel</u>

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).  Interrogatories are used to help parties prepare for trial, narrow issues to help determine necessary evidence for trial, and reduce the likelihood of surprise at trial.  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2162, at 217 (2d ed. 1994).  "An interrogatory answer should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers."  *United States ex rel. Martin v. Life Care*

*Ctrs. of Am., Inc.*, No. 1:08-CV-251, 2016 U.S. Dist. LEXIS 79892, at *8 (E.D. Tenn. Mar. 24, 2016), *quoting United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) (internal quotation marks and citation omitted). But, interrogatories "are not intended to be used to elicit a narrative response of the opposing party's entire case." *Id.*

A party's characterization of interrogatories as "contention interrogatories" does not change the Court's analysis. Rule 33 explicitly authorizes such interrogatories:

> **(2) Scope.** An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2). *See also Am. Nat'l Prop. v. Campbell Ins., Inc.*, No. 3:08-0604, 2011 U.S. Dist. LEXIS 72616, at *3-4 (M.D. Tenn. July 6, 2011) (authorizing generally the use of contention interrogatories). But, "[c]ourts have stricken contention interrogatories which asked a party to describe 'all facts' that supported various allegations of the complaint, finding that to elicit a detailed narrative is an improper use of contention interrogatories." *Martin*, 2016 U.S. Dist. LEXIS 79892, at *8, *quoting Pasternak v. Kim*, 2011 U.S. Dist. LEXIS 113998, 2011 WL 4552389, at *2 (S.D.N.Y. Sept. 28, 2011).

In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery. Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*,

3

No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id.* (internal quotation marks and citation omitted).

Rule 37 gives courts the authority to impose sanctions when parties fail to cooperate with a court order, including discovery orders and other orders under Rule 26(f), 35, or 37(a). The court also has the inherent power to sanction a party for bad faith conduct at any point during the litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002).

**B.  The Parties' Discovery Dispute**

Amalgamated contends that CoreCivic's and the Individual Defendants' responses to Amalgamated's Interrogatories Nos. 1-5 and 19-22 are inadequate.  Docket Nos. 277, 278.  Due to the alleged inadequacy of these responses, Amalgamated moves the Court to impose sanctions in the form of evidence preclusion, arguing that ordering Defendants to supplement their responses would be insufficient (except that Amalgamated does want CoreCivic only to supplement its responses to Interrogatories Nos. 19-22).  Docket No. 278, p. 24, 30-31.  Amalgamated also asks the Court to compel further responses from all Defendants to Interrogatories Nos. 6 and 8.  *Id.* at 28.  Defendants argue that their Interrogatory answers have been adequate and that, even if the Court finds that they are not, the appropriate remedy is supplementation, not sanctions.  Docket No. 285.  The Court will address the individual Interrogatories in turn.

**1.  Interrogatories Nos. 1-5**

These Interrogatories ask Defendants to identify all documents and communications that they relied on in making the statements about CoreCivic's business and operations that are the basis of Amalgamated's claims.  *See* Docket No. 57.

> **Interrogatory No. 1:**
>
> Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period that CCA provided quality corrections services; high standards of quality; high quality operations; "high-quality, safe and secure facilities"; or high-quality services to the BOP.
> . . .
>
> **Interrogatory No. 2:**
>
> Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period in SEC filings or investor

presentations that CCA had earned the confidence of the BOP as [a] result of its operational excellence.

. . .

**Interrogatory No. 3:**

Identify all documents or communications that you relied upon for any direct or indirect representation by you or CCA to investors during the Class Period, in SEC filings or during investor presentations that partnering with CCA to provide correctional services resulted in improvements to the quality of corrections services provided to BOP inmates.

. . .

**Interrogatory No. 4:**

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that:

> We believe our renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, the constrained supply of available beds within the U.S. correctional system, our ownership of the majority of the beds we operate, and the quality of our operations.

. . .

**Interrogatory No. 5:**

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: "We operate our facilities in accordance with both company and facility-specific policies and procedures."

Docket No. 279-3, p. 5-11.

CoreCivic and each of the Individual Defendants provided separate responses to these

Interrogatories:

**a) CoreCivic's Response to Interrogatories Nos. 1-5**

With minor and immaterial differences, CoreCivic provided the following response to

each of the above Interrogatories (quoted here is its response to Interrogatory No. 1):

> CoreCivic objects on the basis that the Interrogatory is unduly
> burdensome because it is redundant of one or more other
> Interrogatories. CoreCivic further objects to the Interrogatory on
> the basis that identifying "all documents and communications that
> you relied upon" is unduly burdensome, expensive, and not
> proportional to the needs of the case. CoreCivic will respond with
> sufficient detail to enable Plaintiffs to locate and identify the
> documents described in its response. *See* Fed. R. Civ. P. 33(d).
> CoreCivic further objects on the basis that "indirect
> representations" is vague, and they are not challenged in the
> Consolidated Complaint or identified in the Interrogatory.
> CoreCivic's response to Interrogatory No. 1 will address the direct
> representations regarding the quality of CoreCivic's services that
> are challenged in the Consolidated Complaint. CoreCivic further
> objects to the extent that the Interrogatory mischaracterizes the
> Company's public statements.

> Subject to and without waiving any objections, CoreCivic responds
> as follows: In making [the] representations at issue, CoreCivic
> relied upon, among other things, its historical contract retention
> rates (*e.g.*, CORECIVIC_0395027), the percentage of compliance
> in its Quality Assurance audits (*e.g.*, CORECIVIC_0050040), the
> staff and inmate climate surveys conducted annually at each BOP
> facility (*e.g.*, CORECIVIC_0050729), a variety of indicators from
> the BOP including the percentage of compliance in the Contract
> Facility Monitoring Reports (*e.g.*, CORECIVIC_0050222),
> Contractor Performance Assessment Reports (*e.g.*,
> CORECIVIC_1472457), BOP contract decisions, including the
> BOP's exercise of renewal options at the Company's BOP
> facilities (*e.g.*, CORECIVIC_1206412), contract monitor
> interviews (*see e.g.*, CORECIVIC_0125614), as well as its
> communications with the BOP – both written and oral – which
> were ongoing and consistent throughout the Class Period. The
> Company also relied upon the review, certifications, and
> accreditations from the Department of Justice (*e.g.*,
> CORECIVIC_0284254), Joint Commission on Accreditation of
> Healthcare Organizations (*e.g.*, CORECIVIC_1115583), and the
> American Correctional Association (*e.g.*, CORECIVIC_0123017).
> Finally, the Company employs a number of individuals who have
> Decades of experience in the public and private corrections
> industry (including, but not limited to, employment experience
> with the BOP) and it relied upon their experience in its

7

communications with government partners and in publicly
describing the quality of its services.

*Id.* at 6-7.

Amalgamated objects to this response for several reasons. First, it takes issue with the open-ended language (e.g., "among other things" and "a variety of indicators . . . including . . .") that seems to leave the door open for CoreCivic to later introduce and attempt to use documents or communications that Amalgamated was not made aware of in discovery. Docket No. 299, p. 6. The Court agrees that this language is improper in the context of the Interrogatories at issue. CoreCivic must supplement its responses to remove the open-ended language. CoreCivic must also identify all "individuals" by name. If CoreCivic does not remember every document or communication that it relied on, it can answer accordingly, but it cannot simply leave the door open to any document or communication that it may later recall.

Second, Amalgamated objects to CoreCivic's method of responding by identifying "categories" of documents, communications, and individuals, and then identifying one example from each category. Docket No. 278, p. 27-28. Amalgamated argues that "[CoreCivic] should be precluded from asserting that [it] relied on any documents or communications beyond what is specifically identified in its responses to Interrogatory Nos. 1-5," i.e., "the documents that are specifically referenced by Bates numbers in [CoreCivic's] responses" because the responses "almost exclusively referenc[e] unspecified communications with unidentified individuals, broad categories of documents, and/or reliance on unspecified 'policies and procedures.'" Docket No. 278, p. 27-28. In response, CoreCivic argues that these "blockbuster interrogatories" are unduly burdensome because "[Amalgamated] asks for every shred of support for broad, sweeping statements regarding CoreCivic's correctional services and the operations of its facilities . . . ." Docket No. 285, p. 19. CoreCivic argues that:

> Statements made reflecting beliefs formed regarding the quality and cost-effectiveness of CoreCivic's services (*i.e.*, the very statements challenged here) spanning a four-year time period conceivably could be based on every email received during the course of the Individual Defendants' employment, every meeting regarding quality assurance, client services or operations, every communication with any CoreCivic employee involved in operations or in the provision of client services, every meeting or communication with the BOP (or other government partner), what was said or not said during those meetings, and any other communications regarding the same. In theory, any document or communication that did *not* contradict the challenged statements would also be responsive.

*Id.* at 20 (citation omitted).

Interrogatories Nos. 1-5 are certainly broad, and it is true that "[i]nterrogatories . . . are not intended to be used to elicit a narrative response of the opposing party's entire case." *Martin*, 2016 U.S. Dist. LEXIS 79892, at *8. But, such broad Interrogatories seem almost unavoidable in this case, where the central issue is whether CoreCivic and its executives committed fraud when they made statements essentially indicating that business was good. *See* Docket No. 57. The information sought is clearly relevant to the claims and defenses in the case. Other than characterizing the Interrogatories as "unduly burdensome," CoreCivic has not actually demonstrated that complying with the requests would be unduly burdensome or that the information sought is not otherwise not discoverable under the Federal Rules. *See Anderson*, 251 F.R.D. at 311 ("a general statement that the discovery is overly broad and unduly burdensome . . . by itself is insufficient to deny discovery.")

CoreCivic must therefore supplement its responses to Interrogatories Nos. 1-5. CoreCivic must identify, to the best of its ability, the documents and communications that it relied upon in making the statements at issue, and it must do so as specifically as possible. This is not, as CoreCivic suggests, a situation where Rule 33(d) applies. That Rule states:

**Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d)(1)-(2).

The answers to Interrogatories Nos. 1-5 may not be wholly determined by examining CoreCivic's business records, because only CoreCivic knows what it relied on in making the statements at issue (and upon which, presumably, CoreCivic intends to rely at trial and in dispositive motion briefing); Amalgamated cannot determine that by simply combing through all of CoreCivic's records, even if CoreCivic identifies a handful of examples. The answer requires a degree of judgment and discrimination by CoreCivic. Additionally, the burden of deriving the answer would not be the same for either party, because Amalgamated has no way of knowing which specific documents and communications are the ones upon which CoreCivic claims to have relied. If CoreCivic is unable to recall what it relied on, it may answer accordingly. But to the extent that CoreCivic has present knowledge of responsive documents or communications upon which it relied, it must identify those documents and communications specifically by Bates number, name (in the case of a person) or other specific identifier. If it later remembers or learns of other responsive items that were not originally identified, then it must supplement its responses as required by Rule 26(e). If CoreCivic (or any other Defendant) plans to rely on or

10

introduce any documents or communications at trial or in dispositive motion briefing, those documents or communications must be disclosed in discovery.

b) **The Individual Defendants's Responses to Interrogatories Nos. 1-5**

Amalgamated contends that the Individual Defendants "have refused to produce meaningful responses" and therefore "should be precluded from asserting that they relied on any documents or communications in connection with the representations set forth in Interrogatory Nos. 1-5." *Id.* at 24.

Further, Amalgamated argues that the deposition testimony of the Individual Defendants casts doubt on whether they participated meaningfully in the preparation of their responses. Docket No. 278, p. 25-26. Specifically, Amalgamated contends that "the deposition testimony of Garfinkle, Hininger and Lappin confirm that they made no good-faith effort to respond to these interrogatory requests, in spite of [Amalgamated's] counsel's agreement to an extension" and that they were "content to have their attorney dictate the extent of *their own personal knowledge*." Docket No. 278, p. 25 (emphasis in original). The Court will address each of the Individual Defendants' responses.

1. **Damon Hininger**

With minor and immaterial differences, Mr. Hininger provided the same responses as those given by CoreCivic and set forth above. *Compare* Docket Nos. 279-3, p. 6-7; 279-4, p. 6-14. Based on his deposition testimony, Amalgamated contends that:

> In sum: (i) someone else answered the [Interrogatories] for Hininger; (ii) Hininger spent a couple of hours (at most) reviewing those responses; (iii) notwithstanding a signed verification executed under penalty of perjury that his responses were "true and correct" based on his "personal knowledge," he had no idea whether any of the documents included in the answers were documents on which he had relied; (iv) 30% of the listed documents either post-date the Class Period or do not exist; and (v)

11

despite responding that he relied on "communications with" multiple categories of people, he could not identify a single written or verbal communication on which he relied.

Docket No. 278, p. 12.

As to the substance of Mr. Hininger's responses, the Court finds that he must supplement them in the same manner described above when analyzing CoreCivic's (nearly identical) responses, for the same reasons previously discussed. As to Amalgamated's concerns regarding Mr. Hininger's participation in creating those responses, the Court does not find anything remarkable about the fact that "someone else" (presumably, one of Mr. Hininger's attorneys) drafted the interrogatory responses. Nor is it particularly concerning that Mr. Hininger may have spent "a couple of hours" reviewing the responses. Amalgamated does not suggest how many hours (or other measure of time) would be an acceptable amount of time for reviewing the responses, and the Court is not inclined to impose a particular requirement. If Amalgamated contends that Mr. Hininger was not actually familiar with the documents and communications that he claims to have relied upon, or that those documents and communications post-date the Class Period or do not exist, Amalgamated will be free to point that out at trial or in dispositive motions. Delving into the specifics of any Party's process for responding to requests is an example of "discovery about discovery" that does not help obtain the information necessary for trial, nor does it make good use of the Court's or the Parties' time.

### 2. Harley Lappin

With minor and immaterial differences, Mr. Lappin provided the following response to each of Interrogatories Nos. 1-3 (quoted here is his response to Interrogatory No. 1):[1]

---

[1] Mr. Lappin also objected to all of the Interrogatories discussed herein, with objections that substantively mirror those of CoreCivic, set forth above. *See* Docket Nos. 279-7, p. 6-9; 279-3, p. 6.

Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made.

Docket No. 279-7, p. 6; *see id.* at 6-8.

With minor and immaterial differences, Mr. Lappin provided the following response to

Interrogatories Nos. 4 and 5 (quoted here is the response to Interrogatory No. 4):

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 4, but he believes the statement identified in Interrogatory No. 4 to be true and accurate based on the same facts identified as support for his answers to Interrogatories Nos. 1-3.

Docket No. 279-7, p. 9.

Amalgamated contends that Mr. Lappin's responses "do not identify a single document or a single written or verbal communication," and that his deposition testimony revealed that "he never received the [Interrogatories] independent of the responses someone else had already drafted, and that those responses never changed." Docket No. 278, p. 14. Amalgamated also argues that during Mr. Lappin's deposition, his attorney improperly instructed him not to answer questions about the preparation of his Interrogatory responses. *Id.* at 14-15. Defendants respond that Mr. Lappin and Mr. Hininger "testified that while they did not draft the responses, they reviewed them, had an opportunity to (and where applicable did) make changes, and discussed the

13

responses with counsel."  Docket No. 285, p. 12.

The Court finds that Mr. Lappin has provided a substantive response to Interrogatories Nos. 1-3, and has explained why he essentially has no substantive response to Interrogatories Nos. 4 and 5.  If Mr. Lappin has present knowledge of any specific documents or communications upon which he relied, he must supplement his responses to identify them specifically as discussed above. For the same reasons set forth above in discussing Mr. Hininger's responses, the Court does not find that Amalgamated has presented evidence of any sanctionable conduct with regard to the preparation of Mr. Lappin's responses or his attorney's objections to deposition questions about that process.

### 3.  David Garfinkle

With minor and immaterial differences, Mr. Garfinkle provided the following response to Interrogatories Nos. 1-5 (quoted here is his response to Interrogatory No. 1):[2]

> Subject to and without waiving any objections, Mr. Garfinkle responds as follows: The only allegedly false or misleading statements attributed to Mr. Garfinkle in the Consolidated Complaint are statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between May 8, 2014, and August 4, 2016, which Mr. Garfinkle allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications.  In allegedly making these statements, Mr. Garfinkle relied upon, among other things, his decades of experience in public accounting, corporate finance, real estate investment trusts, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

---

[2] Mr. Garfinkle also objected to all of the Interrogatories discussed herein, with objections that substantively mirror those of CoreCivic, set forth above.  *See* Docket Nos. 279-5, p. 6-11; 279-3, p. 6.

14

*See* Docket No. 279-5, p. 6; *see id.* at 6-11.

Amalgamated contends that Mr. Garfinkle's responses "do not identify a single document or a single written or verbal communication." Docket No. 278, p. 17. Additionally, Amalgamated argues that Mr. Garfinkle's deposition testimony establishes that "Garfinkle did not prepare his responses, the responses contradict his testimony and he cannot identify a single communication he relied on when making the representations at issue." *Id.* at 19.

The Court finds that Mr. Garfinkle has provided substantive responses to Interrogatories Nos. 1-5. If Mr. Garfinkle has present knowledge of any specific documents or communications upon which he relied, he must supplement his response to identify them specifically as discussed above. In terms of Amalgamated's argument regarding Mr. Garfinkle's participation in the preparing the Interrogatory responses, the Court finds as above that nothing that has been presented indicates that sanctions are warranted.

### 4. <u>Todd Mullenger</u>

With minor and immaterial differences, Mr. Mullenger provided the following response to Interrogatories Nos. 1-5 (quoted here is the response to Interrogatory No. 1):[3]

> Subject to and without waiving any objections, Mr. Mullenger responds as follows: The only allegedly false or misleading statements attributed to Mr. Mullenger in the Consolidated Complaint are (i) statements contained in annual and quarterly reports filed with the Securities and Exchange Commission between February 27, 2012, and May 1, 2014, which Mr. Mullenger allegedly "made" by virtue of his signing the reports and the accompanying Sarbanes-Oxley Act certifications; and (ii) statement(s) contained in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated

---

[3] Mr. Mullenger also objected to all of the Interrogatories discussed herein, with objections that substantively mirror those of CoreCivic, set forth above. *See* Docket Nos. 279-6, p. 6-11; 279-3, p. 6.

15

Complaint). In allegedly making these statements, Mr. Mullenger relied upon, among other things, his decades of experience in public accounting, corporate finance, and the private corrections industry; regular communications with CoreCivic's accounting, finance, operations, quality assurance, policies and procedures, and partnership development teams, in-house and outside counsel, and the Company's external auditors; participation in disclosure committee meetings; and feedback from CoreCivic employees who directly or indirectly reported to him at the time the statements at issue were purportedly made.

*See* Docket No. 279-6, p. 6; *see id.* at 6-11.

Amalgamated contends that Mr. Mullenger's responses "do not identify a single document or a single written or verbal communication." Docket No. 278, p. 19. Based on his deposition testimony, Amalgamated contends that "Mullenger has not identified, and cannot now identify, a single communication on which he relied when making representations at issue in this case." Docket No. 278, p. 20.

The Court finds that Mr. Mullenger has provided substantive responses to Interrogatories Nos. 1-5. If Mr. Mullenger has present knowledge of any specific documents or communications upon which he relied, he must supplement his responses to identify them specifically as discussed above. In terms of Amalgamated's argument regarding Mr. Mullenger's role in the preparing the Interrogatory responses, the Court finds as above that nothing that has been presented indicates that sanctions are warranted.

**2. Interrogatories Nos. 6 and 8**

**Interrogatory No. 6:**

Describe in detail all reasons for the loss of the Adams County Correctional Center contract with the BOP in or around 2019, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

. . .

16

**Interrogatory No. 8:**

>Describe in detail all reasons for the loss of the Eden Detention Center contract with the BOP in or around 2017, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

Docket No. 279-3, p. 12-13.

CoreCivic provided the following response to both Interrogatories Nos. 6 and 8 (quoted is the response to Interrogatory No. 6):

>CoreCivic objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. CoreCivic further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

*Id.* at 13. With minor and immaterial differences, all of the individual Defendants provided the same response as that given by CoreCivic.[4] *See* Docket Nos. 279-4, p. 14-15; 279-5, p. 11-12; 279-6, p. 11-12; 279-7, p. 10-11;

Amalgamated contends that it is entitled to a substantive response to these two Interrogatories because "the loss of the Eden and Adams contracts is directly relevant to [Amalgamated's] claims and [CoreCivic's] defenses." Docket No. 278, p. 29. While conceding that the loss of those contracts took place outside the Class Period, Amalgamated argues that the facts related to those events are still relevant because:

>The BOP considers past performance in considering whether to award contracts. Thus, the loss of the Adams and Eden contracts

---

[4] Mr. Lappin and Mr. Mullenger also objected to Interrogatory No. 6, and Mr. Mullenger objected to Interrogatory No. 8, on the basis that the Interrogatories seek information about an event that took place a year or more after their retirement from CoreCivic. *See* Docket No. 279-7, p. 10; Docket No. 279-6, p. 11-13.

> are directly related to the quality of CoreCivic's services to the
> BOP during the Class Period. The fact that CoreCivic continued to
> lose contracts after the Yates Memorandum was rescinded is also
> relevant to rebut [CoreCivic's] baseless contention that the Yates
> Memorandum was merely a political shift rather than a
> consequence of [CoreCivic's] poor-quality services.

Further, Amalgamated asserts that:

> Defendants have injected the notion that the Yates Memorandum
> was not the materialization of the risk of [CoreCivic's] poor
> performance and quality but rather a 'political shift.' *See, e.g.*, Ex.
> 1 at 24-25; Ex. 3. Defendants have done so in part by contending
> that it was rescinded after the Class Period. ECF No. 76 at 20. It
> is Defendants who have put facts from beyond the Class Period at
> issue . . . .

*Id.* at 29 (citation omitted).

CoreCivic responds that Interrogatories Nos. 6 and 8 "call for speculation by seeking the basis for the BOP's decisions, and because this particular information (the BOP's decision not to renew these two contracts in 2017 and 2019) is utterly irrelevant to either party's claims or defenses with respect to loss causation." Docket No. 285, p. 26-27.

Given the broad definition of relevance for the purpose of discovery, the Court finds that Interrogatories Nos. 6 and 8 seek information that is relevant to the Parties' claims and defenses. Defendants have not argued that responding to these Interrogatories would impose an undue burden. *See* Docket No. 285, p. 26-28. To the extent that Defendants do not have some of the requested information (for instance, information that they contend is known only to the BOP), they can respond by stating as much. The Rules only require that a party provide relevant and responsive discovery that is within its possession, custody, or control. Fed. R. Civ. P. 34. Otherwise, Defendants must answer the Interrogatories.

### 3. Interrogatories Nos. 19-22[5]

**Interrogatory No. 19:**

Identify all facts, documents, testimony and communications that support any contention made by Defendants in this action that the Yates Memorandum represented a political shift, change or decision, including those contentions made by Defendants in this action that "the Yates Memorandum announced an unanticipated political shift" (ECF No. 98 at 6); "the Yates Memorandum was the result of a political decision" (*id.* at 18); "there was a direct political motivation that resulted in that memo being released" (Deposition Transcript of Patrick Swindle as CCA's Rule 30(b)(6) designee, dated January 9, 2019 at 36:4-5); or the Yates Memorandum announced or reflected a "policy shift" (*see, e.g.*, ECF No. 98 at 6, ECF No. 160 at 9-11).

**Interrogatory No. 20:**

Describe in detail what Defendants mean by unanticipated political shift, change or decision in the context of the Yates Memorandum including identifying what precisely was the shift, change or decision announced in the Yates Memorandum, how it was tied to politics, what political factors explained the shift, change or decision, and why it was unanticipated.

**Interrogatory No. 21:**

Identify all facts, documents, testimony and communications that support Defendants' response to Interrogatory No. 20.

**Interrogatory No. 22:**

Identify all facts, documents, testimony and communications that support any contention by Defendants that it was public knowledge prior to the announcement of the Yates Memorandum that CCA's performance with respect to its BOP contracts was deficient.

Docket No. 279-8, p. 5-6.

---

[5] As will be further discussed below, the Parties are in a dispute as to whether the responses to these Interrogatories are those of all Defendants, or CoreCivic alone. That issue aside, the responses to the Second Set of Interrogatories, and Interrogatories Nos. 19-22 in particular, are voluminous and so are not produced here in full. *See* Docket No. 279-8.

The Parties' fundamental dispute regarding these Interrogatories is whether the Individual Defendants have even responded. Amalgamated argues that "Mullenger, Garfinkle, Hininger and Lappin have failed to respond to these Interrogatories," and should therefore be "precluded from providing any evidence or testimony on topics responsive to [the Interrogatories]." Amalgamated's position seems to be based, at least in part, on its contention that "[n]one of the Individual Defendants even bothered to verify their responses to [Amalgamated's] second set of interrogatories . . ." (which includes Interrogatories Nos. 19-22). Docket No. 278, p. 7.[6] *Id.* at 30. Meanwhile, CoreCivic takes the position that all Defendants simply responded jointly to the one Second Set of Interrogatories that they received:

> CoreCivic (via a representative) provided a sworn verification to Defendants' collective responses to the Second Set of Interrogatories, at the time the responses were served. Defendants took this approach because, unlike [Amalgamated's] First Set of Interrogatories (which were directed to "[CoreCivic] and the Individual Defendants"), [Amalgamated's] Second Set of Interrogatories was directed to "All Defendants," so Defendants responded collectively and submitted one verification.

Docket No. 285, p. 29 (internal citation and footnote omitted), *citing* "Wood Decl. Ex. 2 at 2; *id.* Ex. 8 at 2." Additionally, CoreCivic asserts that "to address [Amalgamated's] concern, the Individual Defendants have now provided these verifications, too." Docket No. 285, p. 7.

The Court does not fully understand why Defendants perceived the First Set of Interrogatories to be addressed to "CoreCivic and the Individual Defendants" and the Second Set

---

[6] Amalgamated also contends that "counsel instructed [Mr.] Lappin not to answer questions about [the Interrogatories'] preparation, and on one occasion objected, falsely asserting that [Mr.] Lappin had verified his responses to the SSI, when he had not." Docket No. 278, p. 16-17. On the evidence before it, the Court does not find that counsel's objections were improper, and the dispute regarding counsel's assertion that Mr. Lappin had verified the responses seems to be based upon the same disagreement (discussed above) over whether the responses were furnished and verified on behalf of all Defendants, or CoreCivic alone.

to be addressed to "All Defendants."  Assuming that "Wood Decl. Ex. 2 at 2; *id.* Ex. 8 at 2" refers to Docket Nos. 279-2, p. 4 (page 2 in Amalgamated's numbering) and 279-8, p. 4 (same), the documents appear to be addressed identically to "CCA and the Individual Defendants (defined below) collectively."  *Id.*

Nevertheless, Amalgamated has provided no controlling authority for the proposition that multiple defendants who are jointly represented and receive discovery directed to "all defendants" cannot respond jointly and include one verification.  *See* Docket Nos. 278, 299.  In any event, the Individual Defendants essentially contend that CoreCivic's responses to these Interrogatories *are* their responses.  *See* Docket No. 285, p. 29-31.  Amalgamated seems to argue that such a collective response would only be appropriate if all Defendants swore on the record that they all would be bound by the answers and that they have failed to do so in a sense by not providing individual verifications.  Docket No. 299, p. 9.  But, Amalgamated provides no authority for this proposition, and it is undisputed that the individual verifications have now been provided as Amalgamated requested.  *Id.*  It appears to the Court that the Parties' dispute regarding Interrogatories Nos. 19-22 is the result of a misunderstanding, which should have been amenable to resolution through the meet-and-confer process.  Regardless, Amalgamated has now received verified answers to Interrogatories Nos. 19-22 on behalf of all Defendants, and there is no reason to preclude the Individual Defendants from testifying on the topics responsive to the Interrogatories.

Amalgamated also asks the Court to preclude CoreCivic from "relying on evidence not set forth in its response to Interrogatories 19-22."  Docket No. 278, p. 31.  At the same time, Amalgamated asserts that CoreCivic "should be required to supplement these disclosures to more specifically identify and describe the testimony to which it refers."  *Id.*  The Court finds that in some instances, CoreCivic has sufficiently identified the testimony that it claims to have relied on,

by indicating the deposition page and line numbers where that testimony may be found. *See*, *e.g.*, Docket No. 279-9, p. 11. In other instances, "testimony" is referred to by mentioning a person and a topic, but no other identification is provided. *See, e.g.*, *id.* at 10. In those instances, CoreCivic must supplement its responses to identify specific testimony. Additionally, like CoreCivic's responses to Interrogatories Nos. 1-5, the responses to Interrogatories Nos. 21 and 22 contain open-ended language that renders them vague and opens the door for potential surprises. Therefore, CoreCivic must remove the term "including" wherever it is found. For the reasons set forth above and discussed more fully below, the Court will not preclude CoreCivic from presenting evidence at this time.

**5. Amalgamated's Request for Discovery Sanctions**

Amalgamated contends that "any supplementation would be prejudicial to [Amalgamated], and it is too little too late." Docket No. 278, p. 26. Yet it is unclear why this would be the case, or how supplementation would be "more akin to a reward." *Id.* Presumably, receiving more information would benefit Amalgamated, enabling it to better prepare for dispositive motion briefing and trial. The Court can provide a timeline for that information to be provided even though the deadline for fact discovery has passed.

While evidence preclusion is permitted as a sanction for failure to provide or permit discovery, such a sanction is discretionary. Fed. R. Civ. P. 37(d)(2)(A)(ii). Here, the Court finds that its discretion is better exercised in ordering CoreCivic and the Individual Defendants to supplement their responses, as discussed herein. Amalgamated has not provided any authority for the proposition that the Court must preclude CoreCivic or the Individual Defendants from offering evidence at trial or dispositive motion briefing before offering Defendants the opportunity to cure their discovery shortcomings. This Motion to Compel is the first time the Court has become

involved in this particular set of discovery disputes; Amalgamated does not contend that Defendants have violated an order of the Court. *See* Docket Nos. 278, 299. Pursuant to Rule 37, violations of this order compelling further discovery may lead to future sanctions. In addition, as previously stated, any documents or communications that Defendants intend to use at trial or in dispositive motion briefing must be disclosed in discovery to prevent unfair surprise. Failure to do so may result in evidence preclusion.

## III. **CONCLUSION**

For the foregoing reasons, Amalgamated's Motion (Docket No. 277) is GRANTED IN PART and DENIED IN PART. Where indicated, Defendants must supplement their interrogatory responses within 14 days of this Order's entry.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**