# EXHIBIT 8

Videotaped Deposition of

# Donna Mellendick

October 27, 2020

Grae

vs.

Corrections Corporation of America, et al.

**Confidential Pursuant to Protective Order**



```
 1                UNITED STATES DISTRICT COURT

 2                MIDDLE DISTRICT OF TENNESSEE

 3

 4   NIKKI BOLLINGER GRAE, Individually
     and on Behalf of All Others
     Similarly Situated,
 5
                Plaintiff,              Civil Action No.
 6
     vs.                                3:16-cv-02267
 7
     CORRECTIONS CORPORATION OF
 8   AMERICA, ET AL.,

 9              Defendants.

10   _____

11

12       CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13

14       VIDEOTAPED DEPOSITION OF DONNA MELLENDICK

15

16      Conducted virtually via remote videoconference

17                    October 27, 2020

18

19

20

21

22

23   Reported by:
     Misty Klapper, RMR, CRR
24   Job No.: 10073773

25
```

```
 1                UNITED STATES DISTRICT COURT

 2                MIDDLE DISTRICT OF TENNESSEE

 3

     NIKKI BOLLINGER GRAE, Individually
 4   and on Behalf of All Others
     Similarly Situated,
 5
              Plaintiff,                    Civil Action No.
 6
     vs.                                    3:16-cv-02267
 7
     CORRECTIONS CORPORATION OF
 8   AMERICA, ET AL.,

 9            Defendants.

10   _____

11

...

17        Videotaped deposition of DONNA MELLENDICK, taken on

18   behalf of Defendants, via Zoom remote videoconference,

19   beginning at 10:10 a.m. CST on Tuesday, October 27, 2020,

20   before Misty Klapper, RMR, CRR.
```

```
 1        APPEARANCES:

 2         (ALL APPEARANCES VIA ZOOM REMOTE VIDEOCONFERENCE)

 3        ON BEHALF OF PLAINTIFF:

 4                   CHRISTOPHER HAMP LYONS, ESQUIRE
                     ROBBINS GELLER RUDMAN & DOWD LLP
 5                   414 Union Street, Suite 900
                     Nashville, Tennessee 37219
 6                   (615) 244-2203
                     E-mail:  clyons@rgrdlaw.com
 7
                              AND
 8
                     JASON A. FORGE, ESQUIRE
 9                   ROBBINS GELLER RUDMAN & DOWD LLP
                     655 West Broadway, Suite 1900
10                   San Diego, California 92101
                     (619) 231-1058
11                   E-mail: jforge@rgrdlaw.com

12        ON BEHALF OF DEFENDANTS:

13
                     SARAH TOMKOWIAK, ESQUIRE
14                   LATHAM & WATKINS, LLP
                     555 Eleventh Street, N.W., Suite 1000
15                   Washington, D.C. 20004-1304
                     (202) 637-2335
16                   E-mail: sarah.tomkowiak@lw.com

17                            AND

18
                     ERIC CHARLES PETTIS, ESQUIRE
19                   LATHAM & WATKINS, LLP
                     355 South Grand Avenue, Suite 100
20                   Los Angeles, California 90071
                     (213) 485-1234
21                   E-mail: eric.pettis@lw.com

22


23     ALSO PRESENT:  DeSHAWN WHITE, VIDEO OPERATOR

24                    D. SCOTT DODRILL

25
```

Page 3
www.aptusCR.com
Case 3:16-cv-02267    Document 340-8    Filed 11/20/20    Page 5 of 17 PageID #: 11230

1　　　　　　　　The court reporter may now swear in
2　　　　or affirm the deponent.
3　　　　　　　　MS. REPORTER:  One moment.
4
5　　Whereupon:
6　　　　　　　　　　DONNA MELLENDICK,
7　　was called for examination, and, after being duly
8　　sworn, was examined and testified as follows:
9　　　　　　　　MS. REPORTER:  Thank you.
10　　　　　　　　You may proceed.
11　　　　　　EXAMINATION BY COUNSEL FOR DEFENDANTS
12　　　　　　　　BY MS. TOMKOWIAK:
13　　　　**Q.**　　**Good morning, Ms. Mellendick.**
14　　　　A.　　Good morning.
15　　　　**Q.**　　**We -- we spoke before we went on the**
16　　**record, but I don't think I introduced myself.**
17　　**So my name is Sarah Tomkowiak and I represent the**
18　　**defendants in this matter.**
19　　　　　　　　**Have you been deposed before?**
20　　　　A.　　I have not.
21　　　　**Q.**　　**Okay.  Well, this deposition is being**
22　　**taken over Zoom, so it's even more important**
23　　**than -- and when we're in person usually to try**
24　　**not to talk over each other.**
25　　　　　　　　**Your counsel might also object to my**

Page 6
Case 3:16-cv-02267　　Document 340-8　　Filed 11/20/20　　Page 6 of 17 PageID #: 11231
www.aptusCR.com

1  documents; is that fair?
2       A.   I believe it's about that figure.
3  I'd have to go back through my invoices to
4  determine an exact number for you, but yes.
5       Q.   And so does that mean you've spent
6  approximately 150 hours preparing your report and
7  preparing for today's deposition?
8       A.   That's very possible.  Again, I don't
9  have the exact numbers in front of me.  I'd have
10 to pull out invoices to provide that to you.
11      Q.   Yeah, understood.  And -- and -- and
12 neither do we, but just -- I just wanted to
13 understand the rough breakdown of that
14 approximately 250 hours.
15      A.   Yes.  It was putting -- it was
16 reviewing all documents and using those documents
17 to form my opinion and writing my report.
18           MS. TOMKOWIAK:  You can take that
19      document down.
20           BY MS. TOMKOWIAK:
21      Q.   Did you personally write your report?
22      A.   I did.
23      Q.   Every word?
24      A.   Every word.
25      Q.   Did anybody else review or revise

Confidential Pursuant to Protective Order

Donna Mellendick

Grae vs. Corrections Corporation of America, et al.

```
 1      your report?
 2          A.    I mean, it was reviewed by the law
 3      firm which I'm dealing with, but there were no
 4      revisions that I did not make myself.
 5          Q.    Okay.  Do you know who Scott
 6      Dalrymple is?
 7                MS. REPORTER:  Sorry?
 8                BY MS. TOMKOWIAK:
 9          Q.    Do you know who Scott Dalrymple -- I
10      might be butchering his name --
11      D-A-L-R-Y-M-P-L-E.
12          A.    I do not.
13          Q.    Okay.  So you don't understand that
14      Mr. Dalrymple is another expert that the
15      plaintiff's law firm has retained in this case?
16          A.    I'm not aware of that.
17          Q.    Okay.  Mr. Dalrymple submitted a
18      report in this case that refers to conversations
19      that he had with you.
20                Do you not recall those
21      conversations?
22          A.    Not by -- not with anyone by that
23      name.
24          Q.    Okay.  Did you have -- do you recall
25      any conversations that you had with any other
```

1  expert retained by the same law firm in this case
2  that retained you?
3      A.   I do not.
4      Q.   Other than counsel, have you spoken
5  with any other third party regarding the opinions
6  in your report?
7      A.   I have not.
8      Q.   Have you spoken with any third party
9  regarding the opinions in any other expert's
10 report?
11     A.   I'm sorry.  Repeat the question
12 again.
13     Q.   Yeah.
14          Other than counsel, have you spoken
15 with any third party about any other experts'
16 opinions in this matter?
17     A.   I have not.
18     Q.   What did you do to prepare for
19 today's deposition?
20     A.   Re-refreshed myself with my report
21 and Mr. Dodrill's reports.
22     Q.   Did you meet with counsel?
23     A.   I did speak with Mr. Forge, yes.
24     Q.   How many times did you speak with
25 Mr. Forge?

1  █████████████████████████████████

████████████████████████████████████████

████████████████████████

4           That award -- I mean, it was -- CCA

5       lost a very well-running facility, their

6       Northeast Ohio facility.  They actually bid that

7  ████████████████████████████████████████

████████████████████████████████████████

9       another provider.  So in my mind, that spoke

10      volumes.

11           Q.     And you weren't involved in that

12      decision, correct?

13           A.     I was not.

14           Q.     And so -- and your opinion is based

15      on your review of the source selection document?

16           A.     Based on the -- my review of the

17      source selection document and just my experience

18      in general in the position I was in.

19           Q.     And so by concretely determined,

20      are -- you're saying that the BOP did not grant

21      CCA the CAR XV award on that date; is that right?

22           A.     Correct.

23           Q.     So I just want to be clear.  You're

24      not speaking as you were in April 2013 about

25      hypothetical contracts that CCA may or may not

Page 145

Confidential Pursuant to Protective Order

Donna Mellendick

Grae vs. Corrections Corporation of America, et al.

```
 1          get in the future, you were just referring to the
 2          CAR XV award; is that right?
 3                      MR. FORGE:  Object --
 4                      THE WITNESS:  I was --
 5                      MR. FORGE:  -- as to form.
 6                      THE WITNESS:  I was referring to
 7          the CAR XV award.
 8                      BY MS. TOMKOWIAK:
 9              Q.      As of December 29, 2014, do you have
10          any opinion regarding how likely or not it would
11          have been for the BOP to award a different new
12          contract to CCA?
13                      MR. FORGE:  Object as to form.
14                      THE WITNESS:  Yeah, I'm not -- I'm
15          not sure I understood that question.
16          Could you repeat it?
17                      BY MS. TOMKOWIAK:
18              Q.      Sure.
19                      Do you have an opinion as to any
20          point after December 29, 2014 as to how likely or
21          not the BOP was to award CCA a new contract?
22                      MR. FORGE:  Object as to form.
23                      THE WITNESS:  I would think it
24          would depend on what period of time, but
25          what I think does speak volumes is the
```

Page 146

```
 1                fact that the bureau has awarded since
 2                that time another 15 -- more than 15,000
 3                bids and CCA has not won a competitively
 4                bidded contract with the Bureau of Prisons
 5                in nine years.  I believe 2011 was the
 6                last time they won one.
 7                       BY MS. TOMKOWIAK:
 8                Q.     Are you speaking just with respect to
 9         low security correctional facilities or are --
10         you're -- you're speaking about all type of
11         facilities?
12                A.     I'm speaking in regards to these CAR
13         facilities.
14                Q.     Okay.  Well, what I'm -- I guess what
15         I'm trying to understand is let's look at the
16         relevant time period.
17                       From December 29, 2014 to August
18         2016, do you have any opinion during that time
19         frame how likely or not it was for the BOP to
20         award CCA with a new contract?
21                       MR. FORGE:  Object as to form.
22                       THE WITNESS:  I believe it would
23         have been unlikely for the BOP to award to
24         CCA during that time frame.
25
```

Page 147

```
 1                    BY MS. TOMKOWIAK:
 2            Q.      So in your opinion, at -- at no point
 3       after the CAR XV awards was it possible for CCA
 4       to turn their performance around?
 5                    MR. FORGE:  Object as to form.
 6                    THE WITNESS:  No, I'm not saying
 7            that.
 8                    BY MS. TOMKOWIAK:
 9            Q.      Okay.  Well, in your opinion, could
10       CCA have turned things around at some point after
11       the CAR XV awards?
12                    MR. FORGE:  Object as to form.
13                    THE WITNESS:  We hoped that CCA
14            would have turned things around at any
15            time.
16                    BY MS. TOMKOWIAK:
17            Q.      You mention in your report the -- the
18       cure notice that was issued to the -- to Cibola
19       in 2015.
20                    Do you recall that?
21            A.      I do.
22            Q.      And you're aware that CCA
23       successfully responded to that cure notice and
24       that it was lifted a -- a few months later?
25                    Is that a fair summary?
```

```
 1                    MR. FORGE:  Object as to form.
 2                    THE WITNESS:  I recall that it was
 3            lifted because they corrected the majority
 4            of the issues that were outlined in the
 5            cure notice.
 6                    BY MS. TOMKOWIAK:
 7            Q.      And at that point in time, was it --
 8       was the BOP more or less likely to award CCA a
 9       new contract?
10                    MR. FORGE:  Object as to form.
11                    THE WITNESS:  I would have to
12            reanalyze all of the performance
13            information amongst their facilities to
14            provide an opinion on that.
15                    BY MS. TOMKOWIAK:
16            Q.      Well, if that's the case, if I asked
17       you how likely it was for the BOP to -- for the
18       BOP to award CCA a new contract at any point
19       during the period of December 2014 to August
20       2016, is it your testimony that you would have to
21       look at the performance documentation at that
22       particular point in time in order to be able to
23       render an opinion on that?
24                    MR. FORGE:  Object as to form.
25                    THE WITNESS:  I would have to
```

Page 149

1      rereview my notes to offer an opinion on
2      that.
3               BY MS. TOMKOWIAK:
4      Q.    Okay.  So your opinion might change
5   based on the specific date and time that you were
6   asked to opine on?
7               MR. FORGE:  Object --
8               THE WITNESS:  It --
9               MR. FORGE:  -- as to form.
10              THE WITNESS:  -- it -- it may.  But
11     what stands out in my mind is that there
12     were subsequent competitively bid
13     contracts and CCA did not receive any of
14     them.
15              BY MS. TOMKOWIAK:
16     Q.    To your knowledge, did anybody at the
17  BOP tell CCA after December 2014 that it was
18  unlikely that they would win any new contract
19  with the BOP?
20     A.    Not to my knowledge.
21     Q.    You mentioned that you -- this
22  opinion is based on the source selection
23  decision -- or I should say at least in part on
24  the source selection decision; is that right?
25     A.    Can you refresh my -- refresh me on

Page 150

```
 1      which opinion you -- you're referencing or
 2      what --
 3            Q.    Your second -- your second opinion
 4      relating to the CAR XV award.
 5            A.    It is based on the source selection
 6      decision.  It is based on my review of all of the
 7      documents for this relevant time period.  It's
 8      based on my recollection of their performance in
 9      my capacity as PMB administrator.
10            Q.    And -- and you're aware, based on
11      your review of all those materials and your
12      experience, that past performance was not the
13      only non-price consideration in CAR XV?
```

[lines 14–24 redacted]

```
25            Q.    Did you consider that in forming your
```

```
 1                  CERTIFICATE OF NOTARY
 2              I, MISTY KLAPPER, the officer before
 3      whom the foregoing deposition was taken, do
 4      hereby certify that the witness whose
 5      testimony appears in the foregoing
 6      deposition was duly sworn by me; that the
 7      testimony of said witness was taken by me in
 8      shorthand and thereafter reduced to
 9      typewriting by me; that said deposition is a
10      true record of the testimony given by said
11      witness; that I am neither counsel for,
12      related to, nor employed by any of the
13      parties to the action in which this
14      deposition was taken; and, further, that I
15      am not a relative or employee of any
16      attorney or counsel employed by the parties
17      hereto, nor financially or otherwise
18      interested in the outcome of this action.
19              Further, that if the foregoing pertains to
20      the original transcript of a deposition in a federal
21 case, before completion of the proceedings, review
22 of the transcript [ X ] was [  ] was not requested.
23      Dated: November 3, 2020
24                                _____
                                  Misty Klapper, RMR, CRR
                                  and Notary Public
25
```