UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONS CORPORATION OF AMERICA, et al., <br><br> Defendants. | Civil Action No. 3:16-cv-02267 <br><br> Honorable Aleta A. Trauger <br><br> MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF LUCY P. ALLEN |

- 1 -

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................3

III. LEGAL STANDARD ..............................................................................................6

IV. ARGUMENT ...........................................................................................................6

    A.    Allen's Conclusions Regarding the Yates Memo Are Directed Toward an Inapplicable Theory of Loss Causation, Invade the Province of the Jury, Have Already Been Rejected by This Court, and Should Be Excluded .................6

        1.    Allen's Opinion that the Yates Memo Did Not Correct the Alleged Misstatements Does Not Address the Relevant Inquiry – Whether the Yates Memo Manifested Concealed and Inadequately Disclosed Risks ...........................................................................................7

        2.    Whether Plaintiff Can Prove Loss Causation Is a Question for the Jury, but the Court Has Already Rejected Allen's Opinion that the Yates Memo Cannot Be Corrective for Purposes of Proving Loss Causation Because It Was Political ............................................................9

        3.    Regurgitating a Skewed Selection of Analyst Reports is Not Any Form of Expert Analysis and Should Be Excluded ...................................11

    B.    In Concluding that There Were No Statistically Significant Price Declines Associated with Disclosures of "Quality"-Related Issues During the Class Period, Allen Ignores, for the Second Time, the Complaint's Central Thesis .............................................................................................................12

V. CONCLUSION.......................................................................................................15

4823-7789-6914.v1

CASES

*Berry v. City of Detroit,*
    25 F.3d 1342 (6th Cir. 1994) .................................................................9

*Biotechnology Value Fund, L.P. v. Celera Corp.,*
    2015 WL 138168 (N.D. Cal. Jan. 9, 2015) .............................................11

*Birdwell v. Corso,*
    2010 WL 4312869 (M.D. Tenn. Oct. 25, 2010) ......................................15

*Bourjaily v. United States,*
    483 U.S. 171 (1987) ................................................................................6

*Bowman v. Corr. Corp. of Am.,*
    350 F.3d 537 (6th Cir. 2003) ................................................................15

*Caremark, Inc. v. Coram Healthcare Corp.,*
    113 F.3d 645 (7th Cir. 1997) ..................................................................2

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) .........................................................................1, 15

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................................1

*EP Medsystems, Inc. v. EchoCath, Inc.,*
    235 F.3d 865 (3d Cir. 2000) ....................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014) ..............................................................................10

*In re Diamond Foods, Inc.,*
    295 F.R.D. 240 (N.D. Cal. 2013) ............................................................2

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ................................................................................1

*Miller v. Asensio & Co.,*
    364 F.3d 223 (4th Cir. 2004) ..................................................................1

*Nelson v. Tenn. Gas Pipeline Co.,*
    243 F.3d 244 (6th Cir. 2001) ..................................................................6

4823-7789-6914.v1

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013) ...............................................................................................1

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  830 F.3d 376 (6th Cir. 2016) ...........................................................................................4, 7, 8

*Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc.*,
  2013 WL 12009694 (S.D. Fla. Nov. 14, 2013)..............................................................11

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3rd Cir. 2000) ...............................................................................................1

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
  784 F.3d 311 (6th Cir. 2015) ...............................................................................................6

## STATUTES, RULES AND REGULATIONS

Federal Rules of Evidence
  Rule 403 ...................................................................................................................................15
  Rule 702 ............................................................................................................................1, 6, 15
  Rule 703 ...................................................................................................................................11
  Rule 801(d)(2)............................................................................................................................6

Plaintiff[1] respectfully moves to exclude certain opinions and testimony of Defendants' expert, Lucy P. Allen ("Allen"), offered in her August 7, 2020 report ("Allen Rpt." or "Report"), as inadmissible under Rule 702 of the Federal Rules of Evidence and the related standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

## I.     INTRODUCTION

Damages for securities fraud are generally determined based on the difference between the price an investor paid for stock and the price after the risks and conditions concealed by fraud are disclosed to the market.  *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005).  Plaintiff must therefore prove that the price declines on which the claimed damages are based were caused by the materialization or revelation of risk or information that was concealed.  *Id.* at 345-46.  Loss causation can take many forms, so long as the "relevant truth begins to leak out." *Id.* at 342.  This can occur when information contradicting prior public statements becomes public; it can occur when the financial consequences of conditions concealed by fraud are revealed; it can occur when the existence or magnitude of risks to future earnings become apparent.  The basic question in all of these cases is whether the information that caused the stock price declines that accompany these events revealed something that was concealed by the alleged fraud or whether the information was unrelated.[2]  *See Dura*, 544 U.S. at 342-43.

---

[1]     Plaintiff is Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund.  "Defendants" are Corrections Corporation of America ("CCA" or the "Company") and "Individual Defendants" Damon T. Hininger ("Hininger"), David M. Garfinkle ("Garfinkle"), Todd Mullenger ("Mullenger") and Harley G. Lappin ("Lappin"). Following the filing of this action, Defendants rebranded CCA and now refer to it as CoreCivic. Citations and footnotes are omitted and emphasis is added unless otherwise indicated.

[2]     Plaintiff's burden is to prove that the revelation of corrective information was the "substantial cause" of the drop. *E.g.*, *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119-20 (9th Cir. 2013); *Miller v. Asensio & Co.*, 364 F.3d 223, 229, 232 (4th Cir. 2004); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 186-87 (3rd Cir. 2000).  Once this showing is made, if

These questions are primarily for the jury to resolve, based on its findings as to what information was fraudulently concealed from the market and what information caused the price to decline. Economic experts can assist the jury in this inquiry by evaluating the efficiency of the market, analyzing the statistical significance of price reactions that accompany corrective events, and explaining how all that data can be used to calculate the damages suffered by the Class. *See, e.g.*, *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 251 (N.D. Cal. 2013). However, the questions of whether fraud was committed and whether the corrective events were sufficiently connected to the fraud is determined based on factual evidence, not the testimony of economists. As such, several of Allen's opinions must be excluded as they improperly intrude on the province of the jury and are untethered from the legal and factual issues in this case.

First, Allen's opinion that the Yates Memo[3] cannot constitute a disclosure for purposes of demonstrating loss causation, because it was considered a "political shift," has already been rejected by the Court in its orders regarding class certification. Allen's opinion is also improperly directed at a "corrective disclosure" theory of loss causation, rather than the "materialization of risk" theory at issue in this case. Therefore, Allen's opinion does not "fit" the case, is not relevant to adjudication of the claims, and will only confuse the jury with testimony directed at an inapplicable legal theory that the Court has already rejected. Further, Allen's proposed testimony summarizing the contents of self-selected analyst reports is not an expert analysis at all and should be rejected as an improper back-door attempt to introduce otherwise inadmissible evidence into the record.

---

Defendants want to prove that other factors contributed to the drop and should be excluded from damages, the burden is on them to come forward with evidence to prove it. *E.g.*, *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649-50 (7th Cir. 1997).

[3]  "Yates Memo" refers to the August 18, 2016 memorandum issued by Deputy Attorney General Sally Q. Yates, entitled, "Reducing Our Use of Private Prisons" (Ex. 2). All "Ex. _" references herein are to the Declaration of Christopher M. Wood ("Wood Decl."), filed concurrently herewith. The Allen Rpt. is attached as Exhibit 1 to the Wood Decl.

Second, Allen's opinion that Plaintiff cannot show loss causation or damages because CCA's stock price did not decline following the release of negative allegations regarding the quality of CCA's operations is unreliable because it intentionally ignores the central theory of the case – "that CoreCivic and its executives falsely touted its services as offering cost savings to governments while delivering an acceptable level of quality . . . *such that CoreCivic was an attractive option for continued and future government contracts*."  ECF No. 76 at 25-26.  Because Allen's opinion focuses on revelations of negative allegations regarding CCA that do not suggest undisclosed risks to its relationships, Allen's opinion does not "fit" the allegations of this case and is unreliable.  As if this were not bad enough, as she did in connection with her initial class certification report, Allen intentionally ignores one of the statements found by the Court to be most emblematic of Plaintiff's claims, rendering her opinion facially incomplete and misleading.

Therefore, to the extent Defendants' motion for summary judgment is dependent on the Allen Report, it should be denied.  Further, Allen should be precluded from offering any affirmative opinion at trial beyond the opinion contained in ¶¶77-83 of her August 7, 2020 Report.

## II. BACKGROUND

This Court has addressed loss causation on three separate occasions in this action.

First, in denying Defendants' motion to dismiss, the Court held that Plaintiff had adequately alleged loss causation.  ECF No. 76 at 36-37.  As the Court reasoned:

> While it may be true that the Yates Memorandum would have had some negative effect on the value of CoreCivic's stock no matter what, the scope of that loss was determined by the degree to which the market was able to evaluate the probability of such a shift and therefore price that risk into its valuation of CoreCivic. Amalgamated's Complaint amply alleges that CoreCivic gave a misleadingly incomplete picture of the issues that ultimately resulted in the DOJ's shift, and CoreCivic concedes that it was that shift that caused the loss in value of its stock.

*Id.*

Second, in its initial ruling on class certification, the Court held that Plaintiff could rely on the "materialization of the risk" theory of loss causation, as endorsed by the Sixth Circuit in *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.* ("*OPERS*"), 830 F.3d 376 (6th Cir. 2016). The Court also held that, "as a categorical matter," the Yates Memo "could serve the purpose of corrective disclosure" and rejected Defendants' contention that the "Yates Memo[] did not reveal anything about the subjects of the defendants' alleged false statements . . . instead merely reveal[ing] a 'political decision' to move away from relying on private prisons." ECF No. 143 at 13-14.

> Nothing in the record, however, supports this vision of politics as an external force unrelated to the BOP's quality concerns. Indeed, the Yates Memorandum's own account of the DOJ's decision placed those concerns front and center. . . . Perhaps the Yates Memorandum did reflect a political decision – the political decision to not keep using such low-quality services.

*Id.* at 14.

Finally, in certifying the Class, the Court found that Defendants had failed to demonstrate a lack of price impact based on evidence that is also relevant to loss causation. The Court reaffirmed that "materialization of risk is a viable theory of loss causation" and found that the OIG Report was not corrective as it did not reveal the "relevant" truth and was "far less severe than the reality apparent from the CoreCivic correspondence." ECF No. 165 at 25-26 n.5, 32. And as the Court held, "[e]vidence of loss causation is relevant to price impact, because, if the plaintiff is to succeed, the price impact must be what caused the loss – the two become one and the same." *Id.* at 29. As discussed *infra*, the Court's prior orders, all of which applied settled Sixth Circuit law, inform the scope of relevant testimony regarding loss causation and damages in this case.

On August 7, 2020, Defendants disclosed that they had retained Allen "to analyze Plaintiffs' claim of loss causation and damages" and provided Plaintiff with her expert report purporting to

summarize her opinions.[4]  *See* Allen Rpt., ¶1.  In her Report, Allen contends that Plaintiff cannot demonstrate loss causation with respect to any of its claims and that because Plaintiff cannot demonstrate loss causation, there are necessarily no damages.

First, Allen contends that "there is no loss causation and no damages from the alleged misrepresentations."  Allen Rpt., ¶¶3, 17-45.  Allen asserts that because there was no statistically significant stock price reaction following a number of disclosures regarding CCA's alleged "'operational shortcomings'" and "'quality'-related 'deficiencies,'" and no statistically significant price decline following the release of the OIG Report, Plaintiff cannot demonstrate loss causation or damages.  *Id.*

Second, Allen contends that there was also "no loss causation and no damages associated with the Yates Memo."  *Id.*, ¶¶4, 46-76.  Rather, Allen asserts that the Yates Memo was "considered by the market to signal a shift in policy driven by politics and that this political shift (as opposed to any new information regarding the quality or cost-effectiveness of [CCA's] facilities) was the cause of the market reaction to the Yates Memo."  *Id.*

Finally, Allen contends that "there is no loss causation and no damages associated with CoreCivic's August 3, 2016 announcement that the BOP had declined to renew its contract with [CCA's] Cibola County Correctional Center."  *Id.*, ¶¶5, 46-76.  Allen contends "that news of the Cibola non-renewal was publicly reported ***before*** August 3" and that "the price decline following the August 3 announcement was due to news of the renegotiation of CoreCivic's South Texas Family

---

[4]  Allen had previously submitted reports on behalf of Defendants in connection with class certification.

Residential Center contract," not the Company's announcement of the Cibola non-renewal.[5]  *Id.* (emphasis in original).

## III.    LEGAL STANDARD

Allen's proposed expert testimony regarding the Yates Memo and loss causation related to the alleged misrepresentations is inadmissible.  For expert testimony to be admissible under Rule 702 of the Federal Rules of Evidence: (1) the witness must be qualified by "knowledge, skill, experience, training, or education"; (2) the witness's testimony must be reliable, *i.e.*, it must be "based on sufficient facts or data" and "the product of reliable principles and methods," which must be "reliably applied . . . to the facts of the case"; and (3) the witness's testimony must be relevant, *i.e.*, it must """assist the trier of fact to understand the evidence or to determine a fact in issue.""" *See* Fed. R. Evid. 702; *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015).  The burden of proving admissibility rests on the proponent of the witness.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (superseded on other grounds by amendment to Fed. R. Evid. 801(d)(2)); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Defendants cannot meet that burden here.

## IV.    ARGUMENT

### A.    Allen's Conclusions Regarding the Yates Memo Are Directed Toward an Inapplicable Theory of Loss Causation, Invade the Province of the Jury, Have Already Been Rejected by This Court, and Should Be Excluded

The Yates Memo was publicly released on August 18, 2016.  Ex. 2.  By the end of that day, CCA's stock price had declined over 35%, one of the largest single-day declines in its history.  There is no dispute that the Yates Memo constituted "new news."  Ex. 5 at 93:2-9.  And there is no dispute

---

[5]    As set forth in detail in the Dalrymple Report and the Dalrymple Rebuttal, Allen's opinion regarding the Cibola closure cannot be squared with basic economic principles.  *See* Ex. 3, ¶¶52-53, 60-69, 80-82, 85, 88-91, 94-95, Ex. 1; Ex. 4, ¶¶37-39.  However, Plaintiff is not seeking to exclude this specific opinion at this time.

that no **other** news was released on August 18, 2016 that could have contributed to CCA's stock price decline aside from the Yates Memo. Ex. 6 at 49:21-50:7. In other words, it is undisputed that the Yates Memo was the sole cause of CCA's 35% stock price decline on August 18, 2016.

Nevertheless, Allen contends that the Yates Memo does not demonstrate loss causation because, according to Allen, it was considered by the market to be a shift driven by politics, rather than a disclosure correcting prior misinformation regarding CCA's quality and costs.[6] Allen Rpt., ¶¶4, 59-74. Allen's opinion should be excluded because it is premised on a theory of loss causation that is not at issue in this case; her opinion has already been rejected by the Court; and expert testimony is improper and not helpful for the jury to determine whether the Yates Memo can serve as a disclosure for purposes of loss causation.

### 1. Allen's Opinion that the Yates Memo Did Not Correct the Alleged Misstatements Does Not Address the Relevant Inquiry – Whether the Yates Memo Manifested Concealed and Inadequately Disclosed Risks

"'Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" *OPERS*, 830 F.3d at 384; ECF No. 76 at 36. The Sixth Circuit has expressly endorsed at least two ways to plead and prove loss causation.[7] The first is through a "corrective disclosure," wherein a plaintiff alleges "'that the market reacted negatively to a corrective disclosure of fraud.'" *Id.* at 384. Mindful, however, "of the dangerous incentive that is created when the success of any loss causation argument is made contingent upon a defendant's

---

[6]    To be clear, Allen's position is that the Yates Memo was not corrective of the specific alleged misstatements and omissions in this case as she understood them, not that it could not be corrective under any circumstances. *E.g.*, Ex. 5 at 156:19-158:4. However, because Allen did not analyze one of the most central misstatements at issue or even acknowledge the central theory of the case as articulated by this Court, it is hard to understand how she could have reliably reached such a conclusion.

[7]    There may in fact be many more, as the Sixth Circuit has "recogniz[ed] the viability of alternative theories of loss causation," without limitation to a corrective disclosure or the materialization of the risk. *OPERS*, 830 F.3d at 385.

acknowledgement that it misled investors," the Sixth Circuit has also recognized the "materialization of the risk" theory. *Id*. at 385. As this Court previously held, "'[m]aterialization of risk' refers to a situation where a party's fraud is revealed, not by an express disclosure of the truth, but by a fraudulently concealed risk's coming to fruition." ECF No. 165 at 25-26 n.5.

Allen's opinion should be excluded for the straightforward reason that it is directed toward a "corrective disclosure" theory of loss causation, not the materialization of risk theory at issue in this case. Specifically, Allen contends that because the market did not understand the Yates Memo to have corrected any misstatements regarding the quality or costs of CCA's services, the Yates Memo cannot have been corrective. Allen Rpt., ¶47 ("the Yates Memo did not provide the market with any new and/or corrective information about the quality or cost-effectiveness of CoreCivic's facilities"); ¶52 ("There is no indication that the Yates Memo changed or 'corrected' analysts' opinions of the quality or cost effectiveness of CoreCivic's facilities."); *id*. ("the Yates Memo was not corrective of the alleged misrepresentations"); ¶54 ("A review of analyst reports published after the 2016 Presidential Election . . . contradicts Plaintiffs' claim that the Yates Memo was corrective of the alleged misrepresentations.").

But under the materialization of the risk theory at issue here, whether or not a disclosure corrected prior misstatements is not the central inquiry. Rather, "'a misstatement or omission is the "proximate cause" of an investment loss if the risk that caused the loss was within the zone of risk ***concealed*** by the misrepresentations and omissions alleged by a disappointed investor.'" *OPERS*, 830 F.3d at 384 (emphasis in original). Or, as the Court previously put it, "[t]he 'materialization of risk' theory of demonstrating loss causation flows from the common sense assumption that concealed risks are sometimes revealed by events, not admissions." ECF No. 143 at 12. On its face, the Yates Memo revealed that the Federal Bureau of Prisons ("BOP") was going to reduce and

- 8 -

ultimately eliminate the use of private prisons, including prisons operated by CCA, because they compared poorly to the BOP facilities for a host of reasons. Ex. 2. Whether or not CCA admitted to committing fraud, and what securities analysts stated were their subjective beliefs or speculation regarding the Yates Memo's origins, are all irrelevant to the question whether the Yates Memo was the manifestation of risks Defendants had improperly concealed or downplayed throughout the Class Period.[8] Because Allen's opinion is simply not directed at the relevant theory of loss causation, it is irrelevant, would confuse the jury, and should be excluded.

> **2.      Whether Plaintiff Can Prove Loss Causation Is a Question for the Jury, but the Court Has Already Rejected Allen's Opinion that the Yates Memo Cannot Be Corrective for Purposes of Proving Loss Causation Because It Was Political**

Whether Plaintiff can prove loss causation is ultimately a question for the jury, not an expert. *See EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000) (holding that loss causation is fact-intensive inquiry best resolved by trier of fact). Indeed, Allen's opinion that Plaintiff cannot demonstrate loss causation because the Yates Memo was understood to represent a political shift is on its face an improper legal conclusion about what can constitute a disclosure for purposes of proving loss causation, which must be excluded under well settled Sixth Circuit law. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (an expert opinion that expresses a legal conclusion must be excluded). Even if this were not the case, Allen's opinion that the Yates Memo cannot have been corrective because it was understood to represent a political shift was ***categorically rejected*** by this Court almost two years ago and therefore must be excluded as irrelevant and confusing to the jury.

---

[8]    Contrary to Allen's contentions, to the extent securities analysts still expressed a belief in the quality of CCA's operations, at least as they related to the BOP, following the Yates Memo this would not disprove loss causation. To the contrary, it would suggest that CCA's stock price was ***still partially inflated*** by an inaccurate opinion of the Company's operations.

Specifically, the Court has already rejected CCA's argument "that the 'politics' of the federal government's private prison use are somehow separable from . . . whether [CCA] was able to meet the BOP's basic quality expectations."[9] ECF No. 143 at 14. And the Court specifically rejected Allen's functionally identical analysis of "market analysts who characterized the BOP's proposed shift away from private prisons as 'political,'" in the context of class certification, holding that:

> A decision's being, in some sense, "political," however, is not mutually exclusive with its being related to the quality concerns that Amalgamated has raised. To the contrary, the record suggests that, insofar as the Yates Memorandum can be said to reflect a political decision, that political decision was driven by precisely the deficiencies that Amalgamated has highlighted.

*Id.*

While the Court's prior orders were directed toward price impact, its holdings are ***necessarily*** applicable to loss causation. Indeed, Plaintiff specifically objected to the Court engaging in such analysis at class certification ***precisely*** because it was inseparable from questions of loss causation. ECF No. 150 at 14 ("whether the disclosures at issue are causally connected to the alleged fraud are questions of materiality and loss causation"). Yet the Court found it appropriate to examine those questions pursuant to *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), ***expressly*** holding that "[e]vidence of loss causation is relevant to price impact, because, if the plaintiff is to succeed, the price impact must be what caused the loss – ***the two become one and the same***."[10] ECF No. 165 at 29. Having failed to show a lack of price impact by characterizing the Yates Memo as

---

[9] Consistent with the Court's analysis, during her October 30, 2020, deposition, Kim White, CCA's former Executive Vice President, Human Resources, confirmed that a decision could be characterized as "political," yet still be targeted to remediate critical failures in the prison industry, and make progress toward solving them. Ms. White testified that the Prison Rape Elimination Act was an example of something that was "political" yet "trying to address an important issue and – improving performance in the industry." Ex. 7 at 102:2-104:11.

[10] *See also* ECF No. 165 at 32 ("While this reasoning unavoidably involves going far down the road toward considering issues relevant to the merits of Amalgamated's claims, it was CoreCivic, in its attempt to demonstrate a lack of price impact, that made such an inquiry necessary.").

"political," at class certification, Defendants cannot now be allowed to recycle to a jury the same contentions this Court has already rejected as a matter of law under the guise of an improper expert opinion.

Here, the only inquiry relevant to whether the Yates Memo represented "the materialization of the risk" necessary to "serve as the equivalent of a corrective disclosure" is whether Defendants in fact failed to disclose the risks to CCA's BOP business or, as the Court stated in denying Defendant's motion to dismiss, whether "CoreCivic gave a misleadingly incomplete picture of the issues that ultimately resulted in the DOJ's shift." ECF No. 76 at 37. That is a question for a trier of fact. Because Allen's opinion is irrelevant and would be confusing to the resolution of that inquiry, it should be excluded.

### 3. Regurgitating a Skewed Selection of Analyst Reports is Not Any Form of Expert Analysis and Should Be Excluded

In addition to being irrelevant, Allen's opinion regarding what the market understood to have driven the Yates Memo is not based on any scientific or expert principles, improperly excludes information that does not support her conclusion, and is unreliable. *See* Allen Rpt., ¶¶4, 59-61. On its face, this portion of Allen's opinion is based on nothing more than reading selected analyst reports and parroting their statements. *Id*. There is no methodology or scientific basis for such a so-called "analysis," and it is therefore not an appropriate topic for expert testimony. *See Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc*., 2013 WL 12009694, at *12 (S.D. Fla. Nov. 14, 2013) (excluding opinion that "consists of nothing more than a summary of the analysts' reports . . . [b]ecause [the expert] did not actually render an opinion . . . and Defendants' attempt to gain admissibility of the hearsay analysts' reports through Rule 703 to rebut the SEC's securities fraud claims fails"); *see also Biotechnology Value Fund, L.P. v. Celera Corp*., 2015 WL 138168, at *2 (N.D. Cal. Jan. 9, 2015) ("where the expert does little more than read depositions and deposition

exhibits and other such materials, and then proposes to render findings to the jury as to what happened, we should draw the line and bar such testimony").

In any event, Allen's opinion is unreliable. While claiming that securities analysts attributed the Yates memo to a shift in politics, Allen ignores the myriad national publications that reported on the Yates Memo and its conclusions regarding the lack of quality of private prisons without suggesting in any way it was political. Exs. 8-10. Allen's one-sided summary of public reports is not a legitimate expert opinion and further supports exclusion of Allen's opinion.

### B. In Concluding that There Were No Statistically Significant Price Declines Associated with Disclosures of "Quality"-Related Issues During the Class Period, Allen Ignores, for the Second Time, the Complaint's Central Thesis

In addition to improperly opining that the Yates Memo cannot demonstrate loss causation, Allen contends that "there is no loss causation and no damages from the alleged misrepresentations" because there was no statistically significant stock price reaction following a number of allegations regarding CCA's "'operational shortcomings'" and "'quality'-related 'deficiencies'" and no statistically significant price decline following the release of the OIG Report. Allen Rpt., ¶¶3, 17-45. This opinion should be excluded because it is unreliable and untethered to the facts at issue in this case. Simply put, because Allen did not analyze all of the alleged misrepresentations, let alone even acknowledge the "central theory of liability," her opinion is irrelevant and lacks any indicia of reliability.

In denying Defendants' motion to dismiss, the Court explained Plaintiff's falsity allegations as follows:

> Although CoreCivic's allegedly false statements are numerous, they are offered by Amalgamated in service of a single, central theory of liability: that CoreCivic and its executives falsely touted its services as offering cost savings to governments while delivering an acceptable level of quality – defined, in some instances, in relation to compliance with particular standards – *such that CoreCivic was an attractive option for continued and future government contracts*. The

- 12 -

reality, Amalgamated alleges, is that CoreCivic did not offer significant savings and frequently delivered substandard services, which had caused its relationship with at least one major client, the BOP, to fray considerably over the years leading up to the publication of the OIG Review and Yates Memorandum.

ECF No. 76 at 25-26.  In addition, on no less than *seven* occasions, the Court emphasized or alluded to one specific alleged false statement by Hininger:

- "The connection between CoreCivic's claims of quality and its client relationships is implicit in many of the company's statements, but was perhaps most clearly drawn by Hininger's boast that CoreCivic's 'strong record of operational excellence' had 'earned [it] the confidence of [its] government partners.'" *Id.* at 28 (quoting ECF No. 57, ¶35).

- "On March 30, 2016, Hininger wrote, in his annual letter to shareholders: 'Every day we remain focused on providing high-quality, safe and secure facilities that meet the needs of our government partners.  By consistently doing so, we have experienced more than three decades of continued growth and contract retention rates in excess of 90 percent.'  The letter boasted that CoreCivic's 'strong record of operational excellence' had 'earned [CoreCivic] the confidence of our government partners.'" *Id.* at 18-19.

- "By the time Hininger made his March 30, 2016 claim that CoreCivic's 'record of operational excellence' had 'earned [it] the confidence of [its] government partners,' CoreCivic had already received numerous Notices of Concern documenting chronic deficiencies related to, among other things, inadequate health services and understaffing in its BOP facilities." *Id.* at 29.

- "If CoreCivic had lost the confidence of one or two small local governments, it could be argued that those minor aberrations did not rise to the level of materiality under Section 10(b).  Failing to acknowledge and disclose the dire status of its relationship with a client as large and important as the BOP, however, is not 'speak[ing] fully and truthfully on th[e] subject' of its client relationships and reputation for quality." *Id.* at 32.

- "The question becomes: If CoreCivic's executives had known, for a fact, that the DOJ had such a low assessment of CoreCivic's services that something like the Yates Memorandum was likely, would it have been fraudulent to claim that CoreCivic's history of quality services had earned it the confidence of its government partners?  The answer to that question seems, to the court, to be 'yes.'" *Id* at 33.

- "CoreCivic and its executives, instead, chose to state affirmatively or suggest that its track record of high-quality services had resulted in its clients' confidence – an assertion that, it is now difficult to dispute, was shown to be incorrect, at least with regard to the DOJ." *Id.* at 34.

- "CoreCivic could have stated that it strove to meet client expectations, that it wished to gain its clients' confidence, or that it sought to provide governments a compelling alternative to public prisons regardless of overcrowding. Instead, it chose to couch its statements in terms of its actual history of performance and its clients' historical and contemporaneous assessments thereof. In so doing, it assumed a duty to present those matters accurately." *Id*. at 35.

In spite of the Court's clear articulation of the "single, central theory of liability" and repeated emphasis on CCA's statements regarding the strengths of its relationships, Allen ***completely*** fails to even acknowledge these theories of liability in her Report, let alone analyze whether the Yates Memo could have revealed risks concealed by these misstatements.[11] Nor does Allen so much as acknowledge what the Court characterized as Plaintiff's "central theory of liability" ECF No. 76 at 25-26. Instead, Allen spends approximately 13 pages in her Report attempting to defeat a strawman – contending that numerous allegations regarding the poor quality of CCA's operations did not cause a decline in the Company's stock price, ostensibly to show that CCA's stock price was not inflated by the alleged fraud. Meanwhile, she ignores the central thesis of the case, namely that CCA's poor quality was impairing its relationship with the BOP.

Allen's failure to analyze this statement, and her failure to provide an opinion relevant to Plaintiff's "central theory of liability," is no mere accident. In her report submitted in connection with class certification, Allen ***also*** failed to examine this statement, as Plaintiff's counsel pointed out directly during her deposition in 2018. Ex. 6 at 34:13-35:21 (Q: "So not one you looked at, huh?" A: "No."). During her second deposition in 2020, Allen had no credible explanation for why she ***again*** failed to analyze this statement, in spite of the Court's extensive discussion of this statement in its order denying Defendants' motion to dismiss, and in spite of having been previously criticized by

---

[11]   While Allen lists the March 30, 2016 statement in an Appendix of "Alleged Misrepresentations," (Allen Rpt., Appendix C at 23-24), it does not appear ***anywhere*** else in her Report, including in her Exhibit 1, which purports to list the "[a]lleged [m]isrepresentations [c]ompared to [s]tatements in OIG Report, Yates Memo and [o]ther [d]isclosures." *Id*. at Ex. 1. Allen's testimony during her deposition that she did in fact analyze this statement in her Report is simply false.

Plaintiff for ignoring it in her 2018 report.  Instead, Allen attempted to blame Plaintiff for her failure, suggesting that the complaint should have been organized differently.  *E.g.*, Ex. 5 at 37:16-19.

In short, Allen's refusal to address a key misstatement in this case, and her refusal to analyze Plaintiff's central thesis, renders her analysis unreliable, unhelpful and inadmissible.

## V.  CONCLUSION

Rule 702's "paramount consideration, as explicitly stated in [the rule] is whether the proffered testimony will assist the trier of fact." *Birdwell v. Corso*, 2010 WL 4312869, at *2 (M.D. Tenn. Oct. 25, 2010).  This requires "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  Allen's opinions will "confus[e] the issues, mislead[] the jury . . . [and] needlessly present[] cumulative evidence."  Fed. R. Evid. 403; *see also Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 547 (6th Cir. 2003).

To the extent Defendants' motion for summary judgment is dependent on the Allen Report, it should be denied.  Further, Allen should be precluded from offering any affirmative opinion at trial beyond the opinion contained in ¶¶77-83 of her August 7, 2020 Report.

DATED:  November 20, 2020                  Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853


                                      s/ Christopher M. Wood
                      CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

4823-7789-6914.v1

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 20, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)