# EXHIBIT 6

# Grae vs. Corrections Corporation of America, et al.

## Videotaped Deposition of
## LUCY ALLEN
## October 10, 2018



Lucy Allen

Grae vs. Corrections
Corporation of America, et al.

Page 33

1 that is evidence that there is no price
2 impact. That is, as I understand, what
3 the -- how the Supreme Court described it.
4    Q.   If you turn to page 14 of your
5 report, you say that "Plaintiff claims
6 that CoreCivic made alleged
7 misrepresentations that purportedly
8 impacted and inflated the stock price on
9 33 separate dates. Alleged
10 misrepresentations claimed in the
11 complaint are listed in Appendix C."
12       Do you see that?
13    A.   Yes.
14       (Whereupon, Exhibit 3 is marked
15       for identification.)
16 BY MR. WOOD:
17    Q.   I'm going to pass you what's
18 been marked as Exhibit 3. This is a copy
19 of the Court's order in this case denying
20 Defendant's motion to dismiss.
21       And this is a document that you
22 list as a document that you considered in
23 drafting your report; is that correct?
24    A.   Correct.
25    Q.   And did you personally read the

Page 34

1 Court's order?
2    A.   I did.
3    Q.   Why don't you turn to page 18 of
4 the Court's order. Now, page 18 has a
5 section in bold in italics claims about
6 client relationships and contract
7 renewals. That's a -- that's a subsection
8 you'll see of a section that the Court
9 starts on page 14 called allegedly
10 actionable statements.
11       Are you with me?
12    A.   Yes.
13    Q.   Okay. So the bottom of page 18.
14 The Court is talking here, as the heading
15 shows, about claims about client
16 relationships and contract renewals.
17       Bottom of page 18, the Court
18 says, "On March 30, 2016, Hininger wrote
19 in his annual letter to shareholders every
20 day we remain focused on providing high
21 quality, safe and secure facilities that
22 meet the needs of our government partners.
23       "By consistently doing so, we've
24 experienced more than three decades of
25 continued growth and contract retention

Page 35

1 rates in excess of 90 percent.
2 Paragraph 35.
3       "The letter boasted the
4 CoreCivic's strong record of operational
5 excellence had earned CoreCivic the
6 confidence of our government partners."
7       Do you see that?
8    A.   Yes.
9    Q.   That's one of the statements
10 that you analyzed in your report?
11    A.   The alleged misrepresentation --
12 the alleged misrepresentations are listed,
13 as you say, in Appendix C. March 30,
14 2016.
15       I don't particularly see that as
16 a misrepresentation date in my alleged
17 misrepresentation, so.
18    Q.   So not one you looked at, huh?
19       MR. GLENNON: Objection.
20 Mischaracterizes the testimony.
21       THE WITNESS: No. So the -- I
22 don't believe the statement on that
23 day is listed as an alleged
24 misrepresentation statement in the
25 complaint, so I tried to be very

Page 36

1 careful and go through the complaint
2 and pick every date that were alleged
3 as misrepresentations.
4    And -- and there were, you know,
5 33 separate dates, and I have a chart
6 on page 8 of my report that lists each
7 of those 33 separate dates, and then I
8 have it as an appendix to my report.
9 I have the statements.
10    And as I recall the way the
11 complaint lists the alleged
12 misrepresentations was a bit -- the
13 complaint would say this -- this
14 statement, you know, was made and was
15 allegedly or -- misleading and it was
16 made on this date and they would quote
17 it, then they would say, A similar
18 statement was made on, and list a
19 whole bunch of other dates.
20    So that's sort of my
21 recollection of how -- it wasn't laid
22 out -- in my mind, it wasn't laid out
23 as -- it wasn't laid out by date,
24 which is the alleged misrepresentation
25 that is -- that the company made on

Lucy Allen

Grae vs. Corrections
Corporation of America, et al.

Page 49

1 released to the market on August 18, 2016?
2     MR. GLENNON: Objection. Vague.
3     THE WITNESS: Sure. There is
4 new information released to the market
5 on almost every day. And there was
6 surely new information released on
7 that day.
8 BY MR. WOOD:
9   Q. What was the new information
10 released to the market on August 18, 2016,
11 regarding CCA?
12     MR. GLENNON: Objection. Vague.
13     THE WITNESS: One piece of
14 information that was released that --
15 that as I describe in my report caused
16 uncertainty in the market was the
17 Yates memo, which Plaintiffs is
18 alleging is a corrective disclosure in
19 this matter.
20 BY MR. WOOD:
21   Q. Aside from the Yates memo, did
22 you find any other information -- any
23 other new information released to the
24 market regarding CCA on August 18, 2016?
25     MR. GLENNON: Objection.

Page 50

1 Assumes facts. Mischaracterizes the
2 testimony.
3     THE WITNESS: I don't recall
4 specifically finding additional
5 information that -- that the analysts
6 or the -- the company was focusing on,
7 on that particular day.
8 BY MR. WOOD:
9   Q. Did you find any -- any new
10 information at all, aside from whatever it
11 was the analysts were focusing on?
12     MR. GLENNON: Objection. Vague.
13 Assumes factors.
14     THE WITNESS: I don't -- let me
15 look and see if I --
16 BY MR. WOOD:
17   Q. Sure.
18   A. -- if I say anything about that.
19     (Pause in testimony.)
20     THE WITNESS: I recall there was
21 a conference call that I believe the
22 company had. I just don't recall what
23 date that was on. That's what I was
24 looking for.
25 ///

Page 51

1 BY MR. WOOD:
2   Q. I believe it's listed in your
3 appendix on the 19th under "conference
4 calls."
5   A. Thank you.
6     That's all I recall mentioning
7 in my report.
8   Q. Okay.
9     MR. WOOD: Why don't we take a
10 break.
11     THE VIDEOGRAPHER: The time is
12 10:35 a.m. We are going off the
13 record.
14     (Whereupon, a recess in the
15 proceedings was taken at
16 10:34 a.m.)
17     THE VIDEOGRAPHER: The time is
18 10:53 a.m. We are going back on the
19 record.
20 BY MR. WOOD:
21   Q. Could you turn to page 43 of
22 your report, please. In paragraph 68 in
23 your report in the middle, you say,
24 "Analyst commentary shows that the Yates
25 memo was considered by the market to

Page 52

1 signal a shift in the policy driven by
2 politics which created uncertainty around
3 CoreCivic's government contracts."
4     Do you see that?
5   A. Yes, I do now.
6   Q. Is it your conclusion then that
7 the stock price drop in CCA stock on
8 August 18, 2016, was driven by politics?
9     MR. GLENNON: Objection.
10 Foundation.
11     THE WITNESS: I don't think
12 that's an accurate characterization of
13 the sentence that you just read. I
14 would agree with the sentence that's
15 in my report.
16 BY MR. WOOD:
17   Q. Okay. Well, what caused the
18 stock price to drop -- CCA stock price to
19 drop on August 18, 2016?
20     MR. GLENNON: Same objection.
21     THE WITNESS: My analysis in
22 this case is on price impact and
23 whether the alleged misrepresentations
24 impacted the price.
25     One of the things that I have