UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>                         Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JUSTIN MARLOWE<br><br>**[FILED UNDER SEAL]** |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | LEGAL STANDARD | 3 |
| IV. | MARLOWE'S OPINIONS SHOULD BE EXCLUDED | 3 |
| | A. Marlowe Is Not Qualified to Provide Expert Testimony | 3 |
| | B. Marlowe's Opinions Are Unreliable and Speculative | 4 |
| | C. Marlowe's Opinions Are Not Helpful to a Jury, Irrelevant and Impermissible | 9 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Benton v. Ford Motor Co.*,
   492 F. Supp. 2d 874 (S.D. Ohio 2004) ...............................................................................4

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ............................................................................................11

*Bourjaily v. United States*,
   483 U.S. 171 (1987)............................................................................................................3

*Brainard v. Am. Skandia Life Assur. Corp.*,
   432 F.3d 655 (6th Cir. 2005) ..............................................................................................5

*Burges v. BancorpSouth, Inc.*,
   2015 WL 4198795 (M.D. Tenn. July 10, 2015) ...............................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)............................................................................................................1

*Helwig v. Vencor*,
   251 F.3d 540 (6th Cir. 2001) ............................................................................................10

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)............................................................................................................1

*Neal v. Fort*,
   2017 WL 395006 (M.D. Tenn. Jan. 30, 2017)..........................................................4, 5, 6

*Nelson v. Tenn. Gas Pipeline Co.*,
   243 F.3d 244 (6th Cir. 2001) ..............................................................................................3

*Pagan-Aponte v. McHugh*,
   2011 WL 1789962 (M.D. Tenn. May 10, 2011),
   *aff'd*, 510 F. App'x 438 (6th Cir. 2013)...........................................................................10

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) ..............................................................................................3

*United States v. Arrow-Med Ambulance, Inc.*,
   2018 WL 1902682 (E.D. Ky. Apr. 20, 2018) ...................................................................11

*Willis v. Big Lots, Inc.*,
   2016 WL 8199124 (S.D. Ohio Jan. 21, 2016) ..................................................................10

*Woods v. Lecureux*,
 110 F.3d 1215 (6th Cir. 1997) ..................................................................................................11

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
 Rule 26(a)..............................................................................................................................1, 5
 Rule 26(a)(2) .............................................................................................................................5
 Rule 26(a)(2)(B)(i).....................................................................................................................5
 Rule 37 ..................................................................................................................................1, 5

Federal Rules of Evidence
 Rule 402 .....................................................................................................................................1
 Rule 403 .....................................................................................................................................1
 Rule 702 .............................................................................................................................1, 3, 6
 Rule 702(a).............................................................................................................................1, 9
 Rule 702(c).................................................................................................................................5
 Rule 704 .....................................................................................................................................1
 Rule 801(d)(2)............................................................................................................................3

Cases\4848-6322-8370.v1-11/20/20

Pursuant to Federal Rules of Evidence 402, 403, 702 and 704, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and Federal Rules of Civil Procedure Rule 26(a) and 37, Plaintiff[1] respectfully submits this memorandum of law in support of Plaintiff's Motion to Exclude Expert Testimony of Justin Marlowe ("Marlowe").

## I.  INTRODUCTION

The first and most fundamental requirement for expert testimony to be admissible at trial under Federal Rule of Evidence 702 is that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Here, Defendants improperly seek to use Marlowe to interpret Defendants' statements for the jury, and to opine on the reasonableness of these statements relative to Defendants' internal records and the qualifiers Defendants used. *See, e.g.*, Ex. 1, ¶¶8-9.[2] Defendants made all their statements in the English language, so the jury does not need an interpreter. Nor is Marlowe any more qualified than an average juror to compare these statements to Defendants' internal records or to assess the impression these statements, including any qualifiers, conveyed.

Not only is Marlowe no more qualified than an average juror, his unqualified report fails to identify any discernable methodology or reliable basis for the opinions he offers. His opinions are also untethered to the facts of this case, irrelevant, and would confuse a jury because: (i) they do not address the actual statements and omissions in the case; (ii) whether the misrepresentations were

---

[1]  "Plaintiff" is Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund. "Defendants" are Corrections Corporation of America ("CCA") and certain of its executives. Following the filing of this action, Defendants rebranded CCA and now refer to it as CoreCivic.

[2]  All "Ex.\_" citations herein are to the Declaration of Willow E. Radcliffe, filed concurrently herewith, unless otherwise indicated.

- 1 -

material is subject to a reasonable investor standard (not an expert one); and (iii) any determination of whether Defendants had a good faith basis for their statements is an ultimate issue for the jury to decide.

Accordingly, for the reasons set forth herein, Marlowe's expert opinions should be excluded.

## II. BACKGROUND

Marlowe purports to offer the following opinions in this case:

> [(i)] The statements CoreCivic made during the Class Period regarding cost savings relative to its government partners were supported by internal CoreCivic documents and publicly available information. The Company's cost comparison statements were limited to available information and reflected reasonable judgments on the cost data compared.
>
> [(ii)] CoreCivic made specific statements regarding cost savings and cost effectiveness, using terms that did not guarantee an absolute delivery of cost savings compared to BOP-run facilities under any and all assumptions, methodologies, and calculations. CoreCivic's claims about cost savings and cost effectiveness were reasonably and appropriately qualified in a manner consistent with research and literature on the privatization of correctional facilities.

Ex. 1, ¶¶8-9 (footnote omitted).

Marlowe spent a total of 27 hours preparing his opinion, 10 hours of which he spent communicating with Cornerstone (a consulting firm hired by Defendants). Ex. 2 at 33:4-6, 64:25-65:5, 66:2-6. He interviewed no one at the Federal Bureau of Prisons ("BOP") in preparation for his opinion or regarding the cost savings of using CCA facilities or other private prison operators. *Id*. at 52:20-53:10. Nor did he interview anyone at CCA regarding its cost savings compared to the BOP or its budget for staffing or expenditures for inmate health services. *Id*. at 53:11-25. Nor did he interview anyone at CCA regarding what the statements he reviewed were intended to convey to investors, what support Defendants relied on in making statements, the basis for the Individual Defendants' purported belief that statements were not misleading, or the facts supporting CCA's cost savings claims. *Id*. at 54:4-56:1. Even more troubling, and despite opining that CCA's internal

documents supported Defendants' statements, Marlowe relied on Cornerstone Research ("Cornerstone") to provide him with a selection of internal CCA documents and does not know what access Cornerstone had to CCA's documents or Cornerstone's relationship with CCA. *Id*. at 66:10-73:8.

## III. LEGAL STANDARD

Marlowe's proposed expert testimony is inadmissible. For expert testimony to be admissible under Rule 702 of the Federal Rules of Evidence: (i) the witness must be qualified by "knowledge, skill, experience, training, or education"; (ii) the witness's testimony must be reliable, *i.e.*, it must be "based on sufficient facts or data" and "the product of reliable principles and methods," which must be "reliably applied . . . to the facts of the case"; and (iii) the witness's testimony must be relevant, *i.e.*, it must """"assist the trier of fact to understand the evidence or to determine a fact in issue.""" *See* Fed. R. Evid. 702; *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015).[3] The burden of proving admissibility rests on the proponent of the witness. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (superseded on other grounds by amendment to Fed. R. Evid. 801(d)(2)); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Defendants cannot meet that burden here.

## IV. MARLOWE'S OPINIONS SHOULD BE EXCLUDED

### A. Marlowe Is Not Qualified to Provide Expert Testimony

An expert cannot offer an opinion if he or she is not qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Marlowe purports to have expertise "in public finance. That is the study of how communities determine what government will do and how government will be paid for" with "cost accounting for government services [his] . . . main

---

[3] Citations are omitted and emphasis is added throughout unless otherwise noted.

- 3 -

expertise." Ex. 2 at 12:2-21. But he is not qualified to render his opinions in this action, by his own testimony:

- "I'm not formally trained as economist . . . ." *Id*. at 12:22-25.

- "I've never actually prepared the budget or participated in the preparation of the budget for a private prison provider." *Id*. at 45:6-9.

- Outside of this engagement he never performed work on behalf of a private prison operator. *Id*. at 45:20-24.

- "I've never been employed by the Federal Bureau of Prisons." *Id*. at 44:10-14.

- Before this engagement, he did not have "particular information about CCA's budget process." *Id*. at 49:16-50:4.

- Before this engagement, he had not "looked specifically at information about CoreCivic's financial relation with the government" or CoreCivic's "competitors' relationships with the Bureau of Prisons." *Id*. at 47:23-48:19.

- He never "commented specifically on the benefits of private prisons" or "made any comment on . . . prison privatization generally." *Id*. at 46:10-47:12.

Having no experience with the BOP and its view of cost savings relevant to private prison operators, nor any experience with private prison operators and their costs, let alone any experience conveying such comparisons to investors or interpreting others' comparisons, Marlowe is unqualified to provide the opinions he offers in this case.

**B. Marlowe's Opinions Are Unreliable and Speculative**

An expert's theory must be testable, meaning that the "'expert's methodology must be well-defined and arrive at precise conclusions (which could in theory be tested against reality).'" *Neal v. Fort*, No. 3:15-cv-0425, 2017 WL 395006, at *3 (M.D. Tenn. Jan. 30, 2017) (Trauger, J.) (quoting 5 David L. Faigman et al., *Mod. Sci. Evidence* §42:10 (2016-2017 ed.) (citing *Benton v. Ford Motor Co.*, 492 F. Supp. 2d 874, 879 (S.D. Ohio 2004) ("*Daubert*'s test to determine reliability focuses on the capability of a methodology or theory to be tested and not necessarily on whether any given expert's conclusions have been tested.")). Indeed, "[w]ithout employing a discernible methodology

- 4 -

Cases\4848-6322-8370.v1-11/20/20
Case 3:16-cv-02267   Document 358   Filed 11/20/20   Page 8 of 19 PageID #: 12920

or sufficiently explaining how he reached these conclusions, the court is unable to examine the reliability of the analysis." *Id*. at *4. As such, "[i]t is 'well within' a district court's discretion to exclude expert testimony when there is an 'absence of meaningful analysis or reasoning.'" *Id.* (quoting *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (citations omitted)). Marlowe's opinions fail *Daubert*'s reliability test.

First, Marlowe's report specifies no discernable methodology for his opinions. *See generally* Ex. 1. Federal Rule of Civil Procedure 26(a)(2) required Marlowe's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed R. Civ. P. 26(a)(2)(B)(i). It did not.[4] Nor has Marlowe demonstrated by a preponderance of proof that his "testimony is the product of reliable principles and methods." Fed. R. Evid. 702(c). Marlowe's opinions consist of purportedly summarizing cost savings statements at issue (Ex. 1, ¶20),[5] a review of various literature and articles (*id.*, ¶¶21-29), and then conclusions regarding the reasonableness of CCA's statements and their meaning as he interprets it (*id.*, ¶¶31-61).

Marlowe fails to "'***explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts***.'" *Neal*, 2017 WL 395006, at *4. Indeed, Marlowe circled back to his report when asked how his "expertise" led to his conclusions or provided a sufficient basis for his opinions:

> I brought my expertise to bear on this, all of my experience, all of my understanding, all of my years of research and teaching governmental cost accounting and cost accounting for government services.· And that expertise drove the methodology that was used to evaluate those statements and I think that methodology is laid out clearly.

---

[4] Failure to do so can warrant exclusion under Federal Rule of Civil Procedure 37 as a sanction. *See, e.g.*, *Neal*, 2017 WL 395006, at *4 (granting motion to exclude expert whose "[r]eport does not comply with Rule 26(a) because, as discussed above, it fails to provide the 'how' and 'why' of his opinions").

[5] Marlowe fails to address the actual statements at issue, including those identified in Plaintiff's interrogatory responses (Ex. 3 at 5-144), and fails to consider them in context.

Ex. 2 at 243:1-15. Further, "[t]he basis for all of the opinions that I offer in this matter is the extensive analysis that I did of CoreCivic's statements that it made about costs and cost savings and bringing my own expertise to bear on examining those statements." *Id*. at 250:14-251:1.

But "'[t]he trial court's gatekeeping function requires more than simply "taking the expert's word for it,"'" which is all Marlowe offers. *Neal*, 2017 WL 395006, at *4 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). While Marlowe may be an expert in something, "nothing in the record or [r]eport describes how his experience led to his conclusions or explains how he reliably applied his experience to the facts of the case." *Id.*

Second, in addition to the absence of any discernable methodology identified in his report, cost comparisons of the BOP and private prison operators can vary widely depending on the assumptions used. Without the proper data (which Marlowe does not have), there is no sound methodology to compare costs. As explained in his report, Marlowe acknowledges that "comparing private and public correctional facilities costs is a complex endeavor, and . . . the precise measurement of cost savings may vary based on the methodology and assumptions employed." Ex. 1, ¶21. Further, "there is no one universally accepted methodology for comparing costs" and "[m]ethodologies used to assess costs vary study-by-study, including at the most basic level." *Id.*, ¶22. And "comparing costs across private and public correctional facilities requires making initial assumptions that can have a significant impact on the outcome of the analysis" with results "vary[ing] substantially depending on the choice of costs to measure and methodology employed." *Id*. Moreover, "the data needed to establish rigorous assumptions and perform a comparative analysis of even certain categories of costs across private and public facilities is not readily available." *Id.*, ¶25.

- 6 -
Cases\4848-6322-8370.v1-11/20/20
Case 3:16-cv-02267  Document 358  Filed 11/20/20  Page 10 of 19 PageID #: 12922

In addition, internal evidence shows that CCA knew that there may be ***no reliable*** methodology for the comparisons which are the subject of CCA's representations: "It's . . . nearly impossible to ever get an apples-to-apples comparison, no matter how hard you try to capture all the public cost/factors." Ex. 4 at BLACKSTONE000081-82. And an October 2007 United States Government Accountability Office ("GAO") report concluded that "[w]ithout comparable [private prison] data, the BOP is not able to evaluate and justify whether confining inmates in private facilities is more cost-effective than other confinement alternatives such as building new BOP facilities." Ex. 5 at MARLOWE_0005924; *see also* Ex. 1, App. C at 4 (Marlowe citing). The GAO explained that "***[i]t is not currently feasible to conduct a methodologically sound cost comparison of BOP and private and low minimum security facilities*** because these facilities differ in several characteristics and BOP does not collect comparable data to determine the impact of these differences on cost." Ex. 5 at MARLOWE_0005930. Private contractors agreed, telling the GAO that "the data are not readily available or in a format that would enable a methodologically sound cost comparison at this time." *Id.* at MARLOWE_0005931.

Further, Marlowe fails to address the quality of services provided by CCA to the BOP. The GAO reports that any comparative study of "private and public prisons calls for the comparison to be based not just on operational costs, but on a variety of factors including selection of facilities with similar characteristics . . . and quality of service." *Id.* at MARLOWE_0005930. Likewise, a 2005 BOP report (by defendant Lappin, among others) concluded that "cost and performance issues should be seen as opposite sides of the same coin and jointly" when comparing private and BOP facilities. Ex. 6 at 1, 89; *see also* Ex. 1, App. C at 4 (Marlowe citing). In sum, Marlowe offers an opinion on the reasonableness of cost comparisons, without developing his own sound methodology

- 7 -
Cases\4848-6322-8370.v1-11/20/20
Case 3:16-cv-02267   Document 358   Filed 11/20/20   Page 11 of 19 PageID #: 12923

or determining that others have developed a sound methodology, while simultaneously failing to meaningfully analyze costs in conjunction with the quality of CCA's services.

Marlowe's opinion is also unreliable because it fails to consider the cost or quality services of CCA's competitors. As this Court has previously explained:

> The government, as a matter of law, needs 100,000 units of commodity daily, but it only has the capacity to supply 90,000 units of its own power. Company A learns how to make the commodity itself, although its version costs the government about the same amount and is of a markedly lower quality. The government might buy from Company A as long as the government is suffering a shortage, but there is no reason to expect Company A's business to continue if the shortage ends. If Company B, however, can make units of the commodity that are as good or better than the government's version for less than the government pays to make the commodity itself, then Company B can expect to keep selling to the government, regardless of whether there is a shortage.

ECF No. 76 at 31.

Third, Marlowe's opinions are not supported by the facts. For example, Marlowe indicates that to draw comparisons between the BOP's operating costs and its per diem, CCA referenced its data sources "in the footnotes of the published cost comparisons." Ex. 1, ¶33; *see also id.*, ¶33 n.64. Yet, when asked where this data was referenced in CCA's FY11 Form 10-K, Marlowe could not point to anything in the 10-K that references "per diem" rates or the source of any cost comparisons. Ex. 2 at 303:17-305:11.[6] Neither his report nor his testimony supports the claim that there were any disclosures regarding the data sources CCA used in its Forms 10-K or 10-Q for cost comparisons.[7]

Likewise, Marlowe's reference to internal CCA documents supporting his opinions is belied by his own references. In deposition, he referenced his citation to footnote 79 as an example of internal CCA documents that supported the cost statements. Ex. 2 at 232:19-233:2. Yet, the sole

---

[6] This is after testifying that "with the SEC filings [I] was able to, for every one of these, glance at it, but then be able to, where necessary, very quickly go to information that was necessary to – to formulate an opinion." Ex. 2 at 58:2-10.

[7] Even if there were disclosures in these documents, the review of the statements in isolation would not be helpful to a jury.

document referenced is a draft document created months before the start of the Class Period. Ex. 7. CCA apparently failed to provide this information to Cornerstone. It provides no support for Marlowe's opinions.

Another example of the unreliability of Marlowe's opinion is his claim that CCA referenced "a publicly available study published by two Temple University economists" with respect to alleged false statements Defendants made during an April 2013 CCA presentation. Ex. 1, ¶31; *id*., Ex. 2.1. Yet, that study (which internal evidence shows CCA not only paid for but heavily influenced) was not actually published until June of 2014, as reflected by Marlowe's own report. Ex. 1, ¶31 n.61; Exs. 4, 8-12. Thus, it could not provide support for this representation in April 2013, or at any time prior to June 2014.

In sum, Marlowe's opinions should be excluded as unreliable.

### C. Marlowe's Opinions Are Not Helpful to a Jury, Irrelevant, and Impermissible

To be admissible, an expert's testimony must be such that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As set forth above, Marlowe has no knowledge or experience concerning private prison cost comparisons, let alone experience making or interpreting others' public statements regarding such comparisons. As such, his proposed testimony fails the first part of this requirement. It also fails the latter part in that it would ***not*** "help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. No qualified juror needs expert assistance to read, hear, and understand Defendants' English-language statements, including whatever qualifiers Defendants used, or to compare such statements to Defendants' internal records. Nor should a juror, as the trier of fact, be presented with expert opinion on these ultimate issues in the litigation, or that provides legal conclusions, as Marlowe's opinions seek to do.

Another way to look at this is that the "proposed testimony must be relevant" in that "there must be a 'fit' between the proposed testimony and the questions presented by the case at bar."

- 9 -

*Pagan-Aponte v. McHugh*, No. 3:09-cv-0800, 2011 WL 1789962, at *1 (M.D. Tenn. May 10, 2011), *aff'd*, 510 F. App'x 438 (6th Cir. 2013). Marlowe's opinions are not tethered to the facts of the case or the questions presented by the case. This action involves material misrepresentations and omissions regarding the quality of CCA's services at a cost savings to its government partners, and CCA's corresponding ability to retain business from those government partners. The complaint pleads that CCA's BOP prisons were not offering higher quality at a lower cost, undermining the purported competitive advantage Defendants repeatedly misrepresented to investors. *See* ECF No. 57, §VI. Indeed, this Court has acknowledged that the "[t]wo themes that appeared throughout [CCA's] communications were (1) [CCA's] providing detention and incarceration services at a level of quality that its government clients would consider satisfactory and (2) its ability to offer cost savings while doing so." ECF No. 76 at 14. Marlowe's opinions are based on the isolation of tidbits of "cost" language without the context of quality. Ex. 1, Exs. 2.1 and 2.2. They stand at odds with the theory of the case which alleges that cost must be viewed in the context of quality.[8] When a defendant speaks and omits "issues that would call into question the viability of [the issuer's] business model or the integrity of its . . . operations," those statements and omissions are actionable. *Willis v. Big Lots, Inc.*, No. 2:12-cv-604, 2016 WL 8199124, at *27 (S.D. Ohio Jan. 21, 2016).

Moreover, it is irrelevant to this case whether CCA used "terms that did not guarantee an absolute delivery of cost savings compared to BOP-run facilities under any and all assumptions, methodologies, and calculations." Ex. 1, ¶9. CCA had a duty to not materially mislead investors. "[A]n omission is actionable when disclosure of information is necessary to make the statements made, in light of the circumstances under which they were made, not misleading." *Burges v. BancorpSouth, Inc.*, No. 3-14-1564, 2015 WL 4198795, at *4 (M.D. Tenn. July 10, 2015); *Helwig v. Vencor*, 251 F.3d 540, 560-61 (6th Cir. 2001) (same). Having spoken, the duty was to provide all material information necessary not to mislead investors. *See* ECF No. 76 at 14-19, 24-30. The

---

[8] Marlowe also failed to address the actual challenged statements. *Compare* Ex. 3 at 5-144, *with* Ex. 1, Exs. 2.1 and 2.2.

proper inquiry is whether a reasonable investor would have been misled by the misrepresentations, not a purported expert in cost accounting.

Finally, Defendants seek to confuse the jury with Marlowe's opinions regarding the reasonableness of certain statements in order to assert they were not materially false or misleading and that Defendants had a reasonable basis for their statements. As such, Marlowe's opinions should be excluded as legal conclusions. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (an expert opinion that expresses a legal conclusion must be excluded). "Telling jurors defendants acted 'reasonably' is precisely such inadmissible expert testimony." *United States v. Arrow-Med Ambulance, Inc.*, No. 17-CR-73-JMH, 2018 WL 1902682, at *4 (E.D. Ky. Apr. 20, 2018) (quoting *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("[T]estimony offering nothing more than a legal conclusion – i.e., testimony that does little more than tell the jury what result to reach – is properly excludable under the Rules.")).

## V. CONCLUSION

For the reasons set forth herein, Marlowe's opinions should be excluded.

DATED: November 20, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

- 11 -
Cases\4848-6322-8370.v1-11/20/20
Case 3:16-cv-02267 Document 358 Filed 11/20/20 Page 15 of 19 PageID #: 12927

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 20, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: willowr@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`