# EXHIBIT 90

```
1      IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF TENNESSEE
2
3
4      NIKKI BOLLINGER GRAE, Individually
       and Behalf of All Others Similarly
5      Situated,
6              Plaintiff,
vs.                        CASE NO.
7                          3:16-CV-02267
       CORRECTIONS CORPORATION OF
8      AMERICA, et al.,
9              Defendants.
10
11
12
13       VIDEO DEPOSITION OF DAMON HININGER
14                  Volume II
15       Reported Remotely through Videoconference
16                July 30, 2020
17
18
19
20   Reported by:
21   Elisabeth A. Miller Lorenz
22   RMR, CRR, LCR No. 66
23
24   Job No.:  10071103
25
```

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF TENNESSEE
 2
 3
 4   NIKKI BOLLINGER GRAE, Individually
     and Behalf of All Others Similarly
 5   Situated,
 6              Plaintiff,
vs.                              CASE NO.
 7                               3:16-CV-02267
     CORRECTIONS CORPORATION OF
 8   AMERICA, et al.,
 9              Defendants.
10
11
12
13
14
15
16
17       Video deposition of DAMON HININGER was taken
18   on behalf of Plaintiff, Reported Remotely through
19   Videoconference, at 10:37 a.m. CST, and ending at
20   2:02 p.m. CST, on Wednesday, July 30, 2020, before
21   Elisabeth A. Miller Lorenz, RMR, CRR, and LCR No.
22   66.
23
24
25
```

```
 1   APPEARANCES:
 2    For the Plaintiff:
 3       ROBBINS GELLER RUDMAN & DOWD
      BY:  CHRISTOPHER H. LYONS
 4       BY:  CHRISTOPHER WOOD
      14 Union Street
 5       Suite 900
      Nashville, Tennessee 37219
 6       615.252.3798
      clyons@rgrdlaw.com
 7       cwood@rgrlaw.com
 8       ROBBINS GELLER RUDMAN & DOWD
      BY:  JASON A. FORGE
 9       655 West Broadway
      Suite 1900
10       San Diego, California 92101
      619.231.1058
11       jforge@rgrdlaw.com
12       ROBBINS GELLER RUDMAN & DOWD
      BY:  WILLOW RADCLIFFE
13       One Montgomery Street
      Suite 1800
14       San Francisco, California 94104
      415.288.4545
15       wradcliffe@rgrdlaw.com
16
17    For the Defendants:
18       RILEY, WARNOCK & JACOBSON
      BY:  STEVEN A. RILEY
19       1906 West End Avenue
      Nashville, Tennessee 37203
20       615.320.3700
      sriley@rwjplc.com
21
      LATHAM & WATKINS
22       BY:  DAVID J. SCHINDLER
      BY:  NATHAN M. SAPER
23       355 South Grand Avenue
      Los Angeles, California 90071-1560
24       213.485.1234
      david.schindler@lw.com
25       nathan.saper@lw.com
```

1　APPEARANCES (Continued):

2　Also Present:

3　Spencer Benveniste, Videographer

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  witness.
2       MR. RILEY: And this is Steve Riley,
3  and I'm here on behalf of the witness as well as the
4  defendants.
5       THE VIDEOGRAPHER: The court reporter
6  today is Elisabeth Lorenz, and she may now swear in
7  the witness.
8            * * *
9        DAMON HININGER
10  was called as a witness, and after having been first
11  duly sworn, testified as follows:
12         E X A M I N A T I O N
13  BY MR. FORGE:
14  Q   Good morning, Mr. Hininger.
15  A   Good morning.
16  Q   Mr. Hininger --
17       MR. RILEY: Jason, before you get
18  started, we can't see you.
19       MR. FORGE: I know. I'm only going on
20  audio to preserve bandwidth.
21       MR. RILEY: Well, the witness can't see
22  you when you're asking questions.
23       MR. FORGE: I know. I'm only going on
24  audio so I can preserve bandwidth. I said that
25  before we went on the record, so I'm not sure why

1　there?
2　A　Yes.
3　Q　Is -- was that your -- did you typically use
4　bcc for your -- for communications just to make sure
5　folks didn't wind up, you know, replying to all when
6　they didn't intend to?
7　A　Yeah, that's a pretty customary practice of
8　mine.
9　Q　So I'm not going to go over this in detail
10　again because we went over it before.
11　　　But in your -- in the originating e-mail,
12　the update to the board, you describe the
13　information that CCA learned during its debrief with
14　the BOP concerning the loss of Part A of CAR 15,
15　right?
16　A　I'm sorry, could you repeat that question?
17　Q　Sure.
18　　　In the first e-mail of this chain, the one
19　you sent at 9:00 a.m., that e-mail, at least in
20　part, describes the information that CCA learned
21　during its debrief with the BOP about the -- the
22　Part A of the CAR 15 procurement, correct?
23　A　That is correct.
24　Q　And what you describe in here is that during
25　the debrief, the BOP explained that CCA proposed a

1　lower price than GEO for Part A, but your total

2　proposal was unsuccessful because of two weaknesses,

3　right?

4　A　　Yes, I think I'm saying debriefing, and it

5　might have been from other sources, but, yeah, I

6　think that's generally correct.

7　Q　　And the first of the two weaknesses that the

8　BOP described in the debrief was concerns about our

9　performance in medical services at our Cibola,

10　New Mexico, and Eden, Texas, facilities, right?

11　A　　Yeah.  Again, I wasn't -- I don't believe I

12　was in a debrief, so I don't know if the information

13　came from the debrief or other -- other -- other

14　sources.  But, yeah, that's generally correct.

15　Q　　Your understanding at this time is that was

16　the information you received, because you start off

17　that paragraph, We asked for -- as customary for

18　these federal procurements, we asked for a

19　debriefing from the BOP, and we received it on

20　January 6th, right?

21　A　　That is correct.

22　Q　　So understand -- recognizing that you

23　weren't at that debrief, your understanding at the

24　time you sent this e-mail was that this was

25　information -- the information about the lower price

1  of GEO was information that the BOP provided during
2  the debrief, correct?
3  A   Correct, in addition to other sources.
4  Right.
5  Q   And the information about the total proposal
6  being unsuccessful because of two weaknesses was
7  also information that the BOP provided during the
8  debrief.
9      That was your understanding, correct?
10 A   My understanding and, again, from other
11 sources too.
12 Q   So other sources were consistent with the
13 information that you understood the BOP provided
14 during the debrief, correct?
15     MR. SCHINDLER:  Objection -- objection
16 as to form.
17     THE WITNESS:  I don't -- I can't say it
18 was exactly consistent.  I would say, yeah, there
19 was some -- some consistency from the various
20 sources.
21 BY MR. FORGE:
22 Q   And the -- the first of the two weaknesses
23 that you understood the BOP describe in the debrief
24 was concerns about performance in medical services
25 at our Cibola, New Mexico, and Eden, Texas,

1  facilities, correct?
2  A    Yes.  And I've got it listed here first.  I
3  don't know if that was the order that we received
4  the information, but it is obviously first here on
5  the page.
6  Q    They might have said this -- during the
7  debrief, they might have given the second one first
8  and the first one second, right?
9  A    Correct.
10 Q    I wasn't -- I wasn't trying to imply that
11 first meant that -- the BOP said that was the most
12 important.
13       It's just, as you listed it here, that --
14 that just happens to be the first of the two you
15 listed, right?
16 A    That's correct.
17 Q    Now, if you turn back to Exhibit 499, which
18 is Tab 1, and back to Page 13, and specifically
19 Interrogatory No. 9.  That interrogatory asks for
20 you to describe in detail all the reasons for the
21 loss of the Northeast Ohio Correctional Center
22 contract in or around 2014, including any
23 information conveyed by the BOP in any debriefing or
24 otherwise as to the reasons for the loss.
25       Do you see that?

1  A   I do.

2  Q   Would you agree with me, sir, that -- and

3  take your time to look at the response.

4      But the response does not include the

5  information from the debrief about the concerns over

6  past performance in medical services at the Cibola

7  and Eden facilities, correct?

8      MR. SCHINDLER:  Objection as to form.

9      THE WITNESS:  I'll look at that.  Thank

10 you.

11     Interrogatory No. 9, correct?

12 BY MR. FORGE:

13 Q   Correct.

14 A   Yes, sir.  Your question, I'm sorry, again.

15 Q   I was just asking you to confirm that your

16 response to Interrogatory No. 9 does not contain the

17 information that the BOP provided in the debrief

18 regarding one of the weaknesses that were the

19 reasons the proposal was unsuccessful were the

20 concerns over medical services at your Cibola and

21 Eden facilities, that's not contained within the

22 response to Interrogatory No. 9, correct?

23     MR. SCHINDLER:  Objection as to form.

24     THE WITNESS:  So that -- make sure I'm

25 following your question.

1　　　　THE WITNESS: Yeah, my -- my answer is
2　　that -- what I stated in my response was the final
3　　reason, conclusion by the Bureau that was
4　　communicated to us on that procurement.
5　　BY MR. FORGE:
6　　Q　　Well, you understand the -- the debrief
7　　occurred after you had received the letter from
8　　which you quote a single sentence in this response,
9　　right?
10　 A　　That is correct.
11　 Q　　So in terms of the final explanation you
12　 received from the BOP, the debrief was after that
13　 letter, correct?
14　　　　MR. SCHINDLER: Objection as to form,
15　 vague and ambiguous.
16　　　　THE WITNESS: That was Exhibit [sic]
17　 64?
18　 BY MR. FORGE:
19　 Q　　Yes, sir.
20　 A　　Let me just double-check the dates here.
21　　　So, yes, my -- my e-mail to the board was
22　 January 22nd. The e-mail indicates that the debrief
23　 was on January 6. And the letter -- excuse me --
24　 letter and my response was December 29th.
25　 Q　　Right.

```
 1        So as far as the last word from the BOP on
 2   the reason for the loss, that occurred on
 3   January 6 --
 4        MR. SCHINDLER: Objection as to form.
 5   Objection as to form, argumentative.
 6        THE WITNESS: Yeah, that would not be
 7   correct. It would be -- the final word would be the
 8   December 29th letter.
 9   BY MR. FORGE:
10   Q    So in the interrogatory that refers to in
11   any -- including any information conveyed by the BOP
12   in any debriefing, did you decline to respond to
13   that portion of the interrogatory?
14   A    You know, the request is the reason for
15   the -- for the loss, so my answer would be in --
16   responsive to that -- to that request.
17   Q    Well, it actually says, All reasons for the
18   loss, not the reason.
19        Do you see that?
20   A    I do.
21   Q    You believed that one of the reasons for the
22   loss was, as the BOP described in the debrief, the
23   BOP's concerns over performance in medical services
24   at the Cibola and Eden facilities, correct?
25        MR. SCHINDLER: Objection as to form.
```

```
 1        THE WITNESS:  Yeah, the -- what -- what
 2   I'm conveying here is the reason for the loss, and
 3   that's the definitive statement from the
 4   December 29th letter.  Of course, when you have a
 5   procurement action like this, there's obviously
 6   additional information you receive.  But the kind of
 7   final conclusion, the reason is what's stated in
 8   that 29th of December letter.
 9   BY MR. FORGE:
10   Q    So is it true or false, one of the reasons
11   CCA's proposal for Part A in CAR 15 was unsuccessful
12   was because of the BOP's concerns regarding past
13   performance in medical services at the Cibola and
14   Eden facilities?
15        MR. SCHINDLER:  Objection as to form,
16   calls for speculation.
17        THE WITNESS:  Yeah, I -- I can't say.
18   That would obviously be a question for the Bureau.
19   BY MR. FORGE:
20   Q    Fair enough.  So let me modify that a little
21   bit.
22        True or false, one of the reasons that the
23   BOP stated during the January 6 debrief for why
24   CCA's proposal in Part A of CAR 15 was unsuccessful
25   was the BOP's concerns regarding past performance in
```

1　medical services at the Cibola and Eden facilities?
2　　　　MR. SCHINDLER: Objection as to form.
3　　　　THE WITNESS: Yeah, again, the final
4　answer from the Bureau is what was conveyed on
5　the -- on the 29th. You know, feedback that we
6　received either via the debrief or, you know,
7　other -- other communications between individuals in
8　the company and the Bureau, I can't say what -- what
9　factors that had, if any, in the minds of the
10　Bureau.
11　BY MR. FORGE:
12　Q　And I'm not asking you to say whether they
13　were sincere in what they expressed.
14　　　　But they did express that one of the reasons
15　CCA's proposal in Part A of CAR 15 was unsuccessful
16　was because of the BOP's concerns regarding past
17　performance in medical services at the Cibola and
18　Eden facilities, correct?
19　　　　MR. SCHINDLER: Objection as to form.
20　　　　THE WITNESS: Forgive me.
21　　　　Would you mind repeating that question?
22　BY MR. FORGE:
23　Q　Sure.
24　　　　I'm not asking you to speculate about the
25　sincerity of the BOP's explanation during the

1      (Marked Exhibit No. 501.)

2  BY MR. FORGE:

3  Q    If you click on that link, does it open up

4  anything?

5  A    It looks like I'm getting the same --

6  unfortunately, the same thing happened last time.

7  The link opens up into a new box, but it's -- it's a

8  blank page.

9         MR. FORGE:  I just put the PDF in

10  there.

11         MR. SCHINDLER:  Elisabeth, actually,

12  we're going to be done in four minutes, so if you

13  can wait for four minutes.

14         MR. FORGE:  So the PDF -- I just

15  dropped the PDF in there that we're going to mark as

16  Exhibit 501.

17  BY MR. FORGE:

18  Q    Do you see that, sir?

19  A    I do.  I'm looking to pull it up now here.

20       Yes, sir, I do have it.

21  Q    And does that appear to be the public

22  solicitation for CAR 15?

23       You can look at Page 3 of the document

24  itself.  It has the solicitation, offer, award, and

25  in the upper right-hand corner, it lists CAR 15.

1　A　I do see that.
2　Q　If you -- if you can, if you can scroll down
3　all the way to -- I believe it's Page 74 of 78.
4　　　And it should -- if you're on the right
5　page, it should say Page 74 of 78, and there should
6　be headings in there for M.3 and M.4.
7　A　Yes, sir, I see it.
8　Q　And do you see the heading M.4 says, Overall
9　Relative Importance of Other and then
10　parenthetically it says (Nonprice), Evaluation
11　Criteria and Price?  Do you see that?
12　A　Yes.
13　Q　And then the next heading says, Nonprice
14　Evaluation Criteria, right?
15　A　Correct.
16　Q　And then it says, The nonprice evaluation
17　criteria are listed below in descending order of
18　importance with Environmental and Small Disadvantage
19　Business Utilization equal in order of importance.
20　　　Do you see that?
21　A　I do.
22　Q　So it's -- in descending order of
23　importance, what is the -- what, then, is the No. 1
24　most important criteria?
25　A　No. 1 shows past performance.

1    MR. FORGE: I'd love to have some more
2 time, but I realize I don't have any more today.
3 And I don't want to try and start something in less
4 than two minutes.
5         So I appreciate your time,
6 Mr. Hininger. That concludes the questioning for
7 today.
8         THE WITNESS: Thank you.
9         MR. FORGE: Thank you.
10        THE VIDEOGRAPHER: Off the record,
11 everybody?
12        MR. SCHINDLER: We can go off the
13 record.
14        THE VIDEOGRAPHER: The time is
15 1:53 p.m. This is the end of the videotaped
16 deposition of Damon T. Hininger, Volume 2, dated
17 July 30, 2020. We are off the record.
18        (Recess observed.)
19        THE VIDEOGRAPHER: We are back on the
20 record, and the time is 2:01 p.m.
21        MR. FORGE: Mr. Hininger, thank you
22 again for your time today. Your counsel has
23 indicated that he has no questions for you. Both
24 sides have agreed that we will simply follow the
25 Federal Rules of Civil Procedure regarding your

Volume II
Damon Hininger

Grae vs.
Corrections Corporation of America, et al.

1       I, the undersigned, a Licensed Court
2  Reporter of the State of Tennessee, do hereby
3  certify:
4       That the foregoing proceedings were
5  taken before me at the time and place herein set
6  forth; that any witnesses in the foregoing
7  proceedings, prior to testifying, were duly sworn;
8  that a record of the proceedings was made by me
9  using machine shorthand, which was thereafter
10 transcribed under my direction; that the foregoing
11 transcript is a true record of the testimony given.
12      Further, that if the foregoing pertains
13 to the original transcript of a deposition in a
14 federal case, before completion of the proceedings,
15 review of the transcript [ X ] was [ ] was not
16 requested.
17      I further certify I am neither
18 financially interested in the action nor a relative
19 or employee of any attorney or party to this action.
20      IN WITNESS WHEREOF, I have this date
21 subscribed my name.
22 Dated: August 3, 2020    *[signature]*
23                         _____
24                         Elisabeth A. Miller Lorenz
                           RMR, CRR, LCR No. 66
25                         Georgia CR No. 5266-8739-6377-3952