# EXHIBIT 92



U.S. Department of Justice

Federal Bureau of Prisons

*Washington, D.C. 20534*

January 9, 2015

Corrections Corporation of America
Attn: Natasha K. Metcalf, Vice President
Partnership Development
10 Burton Hills Boulevard
Nashville, TN 37215

RE: DJB1PC011, Cibola County Correctional Center(CCCC)

Dear Ms. Metcalf,

Pursuant to Federal Acquisition Regulation (FAR) 52.249-8(a)(2), this letter is hereby issued as Corrections Corporation of America (CCA) official Cure Notice.

## CURE NOTICE

CCA is notified that the Government considers the failure to perform in the area of Health Services a condition that is endangering performance of the contract. The government will utilize the CFM scheduled for April 21, 2015 through April 23, 2015 to aid the government in determining if the non-conformance has been cured. Therefore, unless the conditions are cured by April 21, 2015 the Government may terminate this contract under the terms and conditions of FAR 52.249-8 Default.

The Cibola County Correctional Center has numerous and repetitive items of critical non-conformance in the area of Health Services, specifically, Patient Care, and include the following:

1. **Inmates arriving at the institution with positive PPDs, are not receiving follow-up and treatment as per policy. (CCA 13-63; P6190-03; BOP Clinical Practice Guidelines).**

   - As stated in the October 21 – 23, 2014 CFM Follow Up Review the contractor is obligated to comply with CCA 13-6 Chronic Care & Disease Management, p 3, Sec. D(1)(a), which states

Case 3:16-cv-02267   Document 362-23   Filed 11/20/20   Page 2 of 11 PageID #: 15252

CONFIDENTIAL                                                    CORECIVIC_0038055

in relevant part: "Inmates/residents enrolled in chronic clinics will receive an initial visit within one (1) month of enrollment." P 3, Sec. D(1)(c), which states in relevant part: "At this facility (applicable to BOP contract), all initial chronic care visits will be seen/evaluated by a physician." P 8, Sec. F. (3), which states in relevant part: "Inmates/Residents diagnosed with TB or inmates/residents who are receiving TB prophylactic treatment will be monitored monthly by health services staff and enrolled in TB Chronic Care." P 11, Sec. I, which states in relevant part: "At this facility, (applicable to BOP contract only), will adhere to the guidelines of BOP P6190.03, Infectious Disease Manual."

- A review of 10 medical records of inmates arriving at the institution with positive or converted PPDs revealed that in four cases, the proper clinical follow-up was not completed. Clearance for general population and appropriate therapy were not always completed per policy. Examples are referenced in working papers 6.1.1 pp 1-115.
- This deficiency was identified in the four previous reviews, resulting in a four time repeat deficiency.
- There continues to be significant, repeat deficits in the treatment of active TB, positive TB conversion, and TB treatment, which can jeopardize inmate and staff health. In the May 2011 CFM review, 4 of 10 inmates did not receive appropriate follow-up and/or treatment by the physician and 1 of 10 inmates did not receive HIV testing. In the April 2012 review, 9 of 10 inmates did not receive appropriate follow-up and/or treatment by the physician and 2 of 10 inmates did not receive X-Ray testing after converting to a positive PPD. In the April 2013 review, 4 of 10 inmates did not receive appropriate follow-up and/or treatment by the physician. In the April 2014 CFM review and six month follow-up review conducted October 2014, 4 of 10 inmates did not receive appropriate follow-up and/or treatment by the physician.

## 2. Health appraisals are not completed as per policy.

- As stated in the October 21-23, 2014 CFM Follow up Review the contractor is obligated to comply with CCA 13-40 Health Appraisals, P 2, Sec. B. (1)(a), which states in relevant part: "A comprehensive health appraisal for each patient inmate/resident, excluding intra-system transfer, will be completed, by a physician or LIP, within 14 days of arrival to the facility." A comprehensive health appraisal should be conducted on every newly committed inmate within 14 days of arrival and must include: (1) referral to medical and mental health professional to determine past or recent

CONFIDENTIAL                                                      CORECIVIC_0038056

history of alcohol and substance abuse, identify acute or
chronic care conditions, and to determine if there were any
pending consultations or referrals to specialists;
(2) Extensive dental examination to determine any pre-
existing and current dental problems such as tooth, gum and
other oral health abnormality; (3) Requests for necessary
laboratory and diagnostic tests.
- This deficiency was identified in the three previous
  reviews, resulting in a three time repeat deficiency.
- The review of 10 files revealed that 4 health appraisals
  were not completed within the required time frame of 14 days
  of arrival to the facility. Examples are referenced in
  working papers 6.3.4 pp 1-41.
- Failure to complete health appraisals within the timeframes
  required can significantly jeopardize inmate and staff
  health. In the April 2012 CFM review, 7 of 10 newly
  committed inmates did not have health appraisals completed
  within 14 days. In the April 2013 review, 3 of 10 newly
  committed inmates did not have health appraisal completed
  within 14 days. In the April 2014 review, 7 of 10 newly
  committed inmates did not have health appraisals completed
  within 14 days. In the October 2014 follow-up review, 4 of
  10 newly committed inmates did not have health appraisal
  completed within 14 days.

3. **Treatment for HIV inmates is not completed in accordance with policy.**

- As stated in the October 21 – 23, 2014 CFM Follow Up Review
  the contractor is obligated to comply with CCA 13-6, Chronic
  Care Clinic, P 3, Sec. a, which states in relevant part:…
  "Patient inmates/residents enrolled in chronic care clinics
  will receive an initial visit within one (1) month of
  enrollment. At BOP contract facilities, BOP
  inmates/residents arriving from other institutions that have
  a chronic care assignment will be seen by a physician within
  14 days of arrival to establish a treatment plan and follow-
  up intervals appropriate for the inmate/resident's medical
  needs." All inmates with HIV positive status should be
  offered treatment as soon as possible in order to avoid
  decompensation of his condition. Per CCA 13-6 P 3. Sec.
  (a), requires all inmates with chronic care assignment to be
  evaluated by a physician within 14 days of arrival to
  establish a treatment plan. Inmates diagnosed at the
  facility, need to be seen within a month. CD4 levels lower
  than 200 predispose HIV inmates to develop opportunistic
  infections like pneumonia and others that can be fatal. Per
  BOP Clinical Practice Guidelines for HIV infection P 13,
  Sec. 8. (a) and 8. (b) (continues on page 14) indicates that

Page 3 of 10

CONFIDENTIAL

CORECIVIC_0038057

CD4 is one of the most important factors in the decision to initiate therapy for HIV cases. It mentions that low CD4 count is an indication to rapid initiation of therapy. Note that CCA 13-6 P 6, states that BOP Clinical Practice Guidelines will be used.
- This deficiency was identified in the two previous reviews, making it a two time repeat deficiency.
- A review of four records of inmates with HIV revealed that in three cases treatment was not in accordance with policy. Examples are referenced in working papers 6.9.5 pp 1-56.
- All inmates with HIV positive status should be offered treatment as soon as possible in order to avoid decompensation of their condition. Failure to provide treatment according to policy to inmates with HIV can seriously jeopardize their health, and the health of other inmates and staff. In past reviews, records revealed that in April 2013 there was one inmate diagnosed with HIV in which evaluation, treatment and counseling were not completed in accordance with policy. In the April 2014 review there were two of three inmates diagnosed with HIV in which evaluation, treatment and counseling were not completed in accordance with policy. In October, 2014 a six month follow-up was conducted, and revealed three of four inmates diagnosed with HIV did not receive treatment in accordance with policy.

4. **Not all Medication Administration Records (MAR) are accurate.**

- As stated in the October 21 – 23, 2014 CFM Follow Up Review the contractor is obligated to comply with SOW, BOP National Formula, and CCA 13-70. Per SOW, P 56, Sec 2, which states in relevant part: "The contractor shall adhere to Part 1 of the Pharmacy TRM, the National Formulary." Per CCA 13-70, Pharmaceuticals, P 1, Sec. 6, (a)(f)(g)(j)(k), which states in relevant part: "Each prescription/medication order must contain the patient inmate/resident's name and ID number; administration instructions and duration of prescription." P 12, Sec. 4, which states in relevant part: "A Medication Administration Retirement will be initiated and medication will be administered and documented per policy." Per BOP National Formulary, P 9, which states in relevant part: "A staged administration of antiretroviral medications is recommended for most inmates. Complete adherence to antiretroviral medications is critical for treatment effectiveness."
- This deficiency was identified in a previous review, making it a repeat deficiency.

- A review of 10 prescriptions made by a physician, MLP, or nurse revealed six records for prescriptions administered to inmates were not accurate. In addition to inaccuracies in quantity and dates, in some cases documentation did not show the medication was actually provided to the inmate as ordered. Examples are referenced in working papers 6.9.14 pp 1-20.
- Documentation in the MAR is crucial for the medical management of inmates. Giving extra amounts of medications can confuse the inmate in terms of how much he should take, and can cause him to take more than prescribed, resulting in an overdose. On the other hand, not providing the ordered medications to a diabetic inmate may cause him to develop serious problems such as retinopathy and nephropathy. In the case of HIV inmates, delayed treatment can give opportunity for the virus to spread, resulting in an increased viral load and decreased CD4. High viral load and low CD4 predispose the HIV patient to opportunistic infections that can be fatal. Medications for hyperlipidemia are also important because they help to decrease the risk factors for coronary artery disease. In April 2014 a random review of the MARs revealed documentation was not accurate in 4 of 10 cases, particularly the quantity of medications and dates they were provided. In October 2014, a six month follow-up was conducted. A random review of MARs revealed documentation was not accurate in 6 of 10 cases.

## 5. **Preventive care evaluations are not completed as per policy.**

- As stated in the October 21 – 23, 2014 CFM Follow Up Review the contractor is obligated to comply with SOW and BOP Clinical Practice Guidelines. Per SOW, Sec. 5, p 57 which states in relevant part: "The contractor shall provide preventive health care to include immunizations and medical screening procedures consistent with those recommended by the United State Preventive Services Health Task Force." The U.S. Preventive Services Health Task Force is an independent panel of experts in primary care and prevention who systematically review the evidence of effectiveness of services and develop recommendations for clinical preventive services.
- This deficiency was identified in a previous review, making it a repeat deficiency.
- A random review of 10 inmate records revealed 7 of 10 cases where the prevention baseline evaluations were not completed in accordance with policy. Examples are referenced in working papers 6.9.20 pp 1-22.

CONFIDENTIAL                                                                                         CORECIVIC_0038059

- Preventive care evaluations are essential in order to
  identify and manage inmates at risk of certain medical
  conditions including, but not limited to diabetes, colon
  cancer, hyperlipidemia, tuberculosis, HIV and hepatitis C.
  Screening tests required by policies (SOW, US Health Task
  Force, CDC and BOP Clinical Practice Guidelines) will assist
  medical practitioners in identifying those cases.
  Immunizations are of vital importance in decreasing the
  occurrence of serious infectious diseases particularly in
  inmates with medical conditions such as HIV, diabetes,
  asthma and hepatitis C. A baseline preventive care
  evaluation can also help in identifying inmates who may have
  potentially serious conditions that can be a threat to the
  wellbeing of the general population e.g. TB and MRSA.
  Previous reviews revealed that in April 2014, 10 out of 10
  records were not completed as required by policy.
  Specifically, there were no initial preventive baseline
  evaluations completed and inmates were missing immunizations
  and other risk based studies and tests. In October 2014, a
  six month follow-up was conducted, and a review of 10 random
  records revealed that in seven cases the preventive baseline
  evaluations were not completed as required by policy. As in
  the previous reviews, inmates were missing records of the
  initial preventive baseline evaluations, immunizations and
  risk based studies and tests.

6. <u>**Documentation in HIV health records is poor.**</u>

- As stated in the October 21 – 23, 2014 CFM Follow Up Review
  many HIV health records reveal poor legibility, inadequate
  correction of errors, and missing inmate names and dates on
  many pages/forms. Specific examples are listed in the
  working papers from the October 21 – 23, 2014 CFM Follow Up
  Review, Step 6.2.1 pp 1-23. This was listed as deficient
  during the April 2014 CFM review, and noted in the general
  comments section of the October 2014 CFM review.
- These discrepancies can jeopardize inmate health care by not
  clearly providing accurate and complete information to staff
  and community health care providers.

7. <u>**Medical management prior to an inmate's death was not in accordance with policy.**</u>

  - As stated in the October 21 –
    23, 2014 CFM Follow Up Review the contractor is obligated
    to comply with SOW and CCA 13-34, Medical Emergency
    Response. Per SOW, P 54, Sec. 19, which states in
    relevant part: "24/7 access to urgent/emergency medical

Page 6 of 10

CONFIDENTIAL                                                                                                CORECIVIC_0038060

treatment, including medical, mental health and dental emergencies." Per CCA 13-34, P 1, Sec. 3, which states in relevant part: "Clinical Emergency: The sudden development of a clinical situation requiring urgent evaluation and/or treatment when delayed would reasonably be expected to threaten life, limb, or bodily functions." And p 2, Sec. A (1), which states in relevant part: "Emergency services (medical, dental, and mental health) will be provided 24 hours a day. At a minimum, services will include." And p 2, Sec. A. (3)(a), which states in relevant part: "24/7 On-Call Schedules will be prepared each month to ensure that an LIP is on-call at all times to provide sufficient formal supervision and consultation for Qualified Health Care Provider (QHCP)." And p 3, Sec. A. (4) (b), which states in relevant part: "When life-threatening conditions exist, inmates/residents will be transported to the nearest emergency institution via EMS. Facility staff will assist responding EMS personnel until the inmate(s)/resident(s) is safely in the emergency vehicle." And p 3, Sec. 1 (i)(ii)(iii), which states in relevant part: "Recognizing the need for emergency care and intervention in life-threatening situations (e.g. absence of breath and/or pulse); recognition of signs and symptoms, and knowledge of action that is required in potential emergency situations; administration of basic first-aid."

- There was one death at Cibola since the previous CFM monitoring. In this case, emergency medical care prior to an inmate's death was not provided by on-site medical staff as required by policy. Several issues in the medical management of this inmate were identified: (1) the response time by medical staff was not documented. It is not known at what time medical staff arrived at scene. It is essential that medical staff arrive within four minutes in order to perform life saving measures; (2) the only medical staff on duty left the scene during CPR and did not return. She should have remained at the scene during the CPR administration. (3) the on-site nurse did not start an IV access. An IV access was started by EMS personnel 26 minutes after CPR was started. Earlier placement of an IV access by onsite nurse would have facilitated earlier administration of emergency medications; (4) documentation is not specific in regard to what the inmate was doing prior to the incident, e.g., assaulted, or engaged in physical activity; (5) the names of the officers who provided CPR are not documented, and they did not provide memos of their participation in the

CONFIDENTIAL

CORECIVIC_0038061

CPR. Examples are referenced in working papers 6.9.19 pp 1-22.
- Early intervention is crucial in the management of cardiac arrest cases. In addition to saving the subject inmate's life, it is vital that the inmate population believe competent emergency medical care will be provided to them when necessary.

Health Services contract requirements are stated in Contract DJB1PC011, Performance Objectives, Section N, Pages 52-60.

On Page 52, Lines 19-26 the contract states the following: "The BOP has established standards of medical care to be provided to all individuals for whom they are responsible, regardless of the setting in which they receive such care. These standards are articulated through BOP Program Statements (P.S.), Operations Memoranda (OM), Technical Reference Manuals (TRM) and clinical practice guidelines. The contractor shall establish policies, procedures, and protocols which assure the services it provides meet these standards".
In regards to the above statement the following BOP Program Statement, and BOP Clinical Guidelines shall be followed:
- P.S. 5310.12 Psychology Services Manual, dated 3/7/95
- P.S. 6010.01 Psychiatric Treatment and Medication, Administration Safeguards for, dated 9/21/95
- P.S. 6010.02 Health Services Administration, dated 1/15/05
- P.S. 6013.01 Health Services Quality Improvement, dated 1/15/05
- P.S. 6027.01 Health Care Provider Credential Verification,
- Privileges, and Practice Agreement Program, dated 1/15/05
- P.S. 6031.01 Patient Care, dated 1/15/05
- P.S. 6080.01 Autopsies, dated 5/27/94
- P.S. 6090.01 Health Information Management, dated 1/15/05
- P.S. 6190.03 Infectious Disease Management, dated 6/28/05
- P.S. 6270.01 Medical Designations and Referral Services for Federal Prisoners, dated 1/15/05
- P.S. 6340.04 Psychiatric Services, dated 1/15/05
- P.S. 6360.01 Pharmacy Services, dated 1/15/05
- P.S. 6370.01 Laboratory Services, dated 1/15/05
- P.S. 6400.02 Dental Services, dated 1/15/05
- PRG G6000I.04 Program Review Guidelines – Health Services
- Institution, dated 4/26/06
- TRM 6001.03 SENTRY Sensitive Medical Data/Medical Duty
- Status/Acuity Status, dated 6/8/99
- TRM 6501.06 Pharmacy, dated 2/28/01

CONFIDENTIAL

CORECIVIC_0038062

On page 52, Lines 27-31 the contract states the following:
"The List below is provided for reference. There are portions of particular BOP Program Statements included in this **list for which compliance is mandatory (e.g., mortality review, testing for tuberculosis and other infectious diseases)**. The sections and the specific requirements are outlined later in the SOW."
The specific requirements are listed on Page 56, Lines 6-36, and Page 57, Lines 1-3 and they state the following:
"**Infectious Disease Management Program**
The contractor shall comply with all Occupational Safety and Health Administration (OSHA) regulations in the delivery of health care services. The contractor shall ensure all inmates are tested in accordance with P.S. 6190.03, Infectious Disease Management, dated 6/28/05.
The contractor shall comply with the most recent Centers for Disease Control and Prevention/Morbidity and Mortality Weekly Report (CDC/MMWR) "Prevention and Control of Tuberculosis in Correctional Facilities: Recommendations of the Advisory Council for the Elimination of Tuberculosis" and "Guidelines for Preventing Transmission of Mycobacterium Tuberculosis in Healthcare Facilities."
The contractor shall comply with the most resent Department of Health and Human Services (DHHS) and United States Public Health Service (USPHS) guidelines related to the treatment of HIV and AIDS. These Guidelines are available at www.aidsinfo.nih.gov . Specific Guidelines include:
- "Guidelines for the Use of Antiretroviral Agents in HIV-Infected Adults and Adolescents"
- "Guidelines for the Prevention of Opportunistic Infections in Persons Infected with HIV"
- "Guidelines for the Management of Occupational Exposures to HBV, HCV, and HIV and Recommendations for Post exposure Prophylaxis"
- "Management of Possible Sexual, Injecting-Drug-Use, or other Nonoccupational Exposure to HIV, Including Considerations Related to Antiretroviral Therapy"
- Prevention and Treatment of Tuberculosis Among Patients Infected with Human Immunodeficiency Virus: Principles of Therapy and Revised Recommendations"

The contractor shall comply with the most recent National Institutes of Health (NIH) "Consensus Development Conference Statement on the Management of Hepatitis C.""


On page 59 Lines 18 – 31 states the following:
"**Medical Records**


Page **9** of **10**

CONFIDENTIAL
CORECIVIC_0038063

Consistency in content and format of medical records of inmates transferring between contract and BOP facilities is a critical component of care for inmates.

The contractor shall adhere to P.S. 6090.01 <u>Health Information Management</u>, dated 1/15/05, in preparing, formatting, documenting, maintaining, releasing of information and all medico-legal aspects of an inmate's medical record. The contractor is responsible for supplying medical record folders, consistent with the specification provided by the BOP, only for those inmates who are new designations into the facility or in cases where transferred medical records cannot be located. The Government shall provide the contractor a copy of all applicable Government forms necessary to document an inmate's medical record."

Failure to provide proper healthcare in accordance with the contract requirements can seriously jeopardize inmate, staff, and public health. The failure of CCA in correcting the deficiencies, some of which have been noted deficient back to 2011 are cause for the Federal Bureau Of Prisons to issue this Cure Notice, and is considered appropriate at this time.

Unless these conditions are cured by April 21, 2015 the Government is considering a termination for default of this contract under the terms and conditions of FAR 52.249-8 Default. CCA must notify the BOP of how it plans to address these performance issues by January 19, 2015.

If you have any questions please contact me a 505-285-4982, or j1bishop@bop.gov.

Sincerely,

*[signature]*

Jerry Bishop,
Contracting Officer


cc:  Robert Bland, Chief PCC
     Michael Bodine, SCO PCC
     Leonardo Otero, SSIM CCCC
     Joe Pryor, Warden CCA, CCCC

Case 3:16-cv-02267   Document 362-23   Filed 11/20/20   Page 11 of 11 PageID #: 15261

CONFIDENTIAL

CORECIVIC_0038064