# EXHIBIT 102



**Bart VerHulst**
*Vice President*
*Local and Federal Partnership Relations*

August 9, 2012

Wayne Holstine
Contracting Officer
Federal Bureau of Prisons
P. O. Box 3540
Milan, NM 87021

RE: CIBOLA COUNTY CORRECTIONAL CENTER – CONTRACT NO. DJB1PC011
NOTICE OF POTENTIAL DEDUCTION

Dear Mr. Holstine:

CCA is in receipt of your letter dated July 26, 2012 regarding a potential deduction associated with Health Services cited during the April 17-19, 2012 Contract Facility Monitoring (CFM) at the Cibola County Correctional Center (CCCC). CCA respectfully submits the following response and mitigating information for your consideration.

Many of the cited deficiencies are directly related to CCCC's failure to employ a full-time physician. CCA has aggressively recruited for the position using the aid fourteen national medical recruiting firms. CCA offered a very competitive salary and a substantial signing bonus to encourage candidates to apply for the position. In 2011 and 2012 CCCC interviewed eighteen applicants. In each instance applicants were either not licensed to practice medicine in the State of New Mexico and were unwilling to pursue licensure, failed to pass the background check or did not want to relocate to Cibola, New Mexico. On July 17, 2012 CCCC was successful in hiring full-time physician Stephen Vaughn to fulfill the requirements of the contract and ensure the proper care of inmates at the facility. In the absence of a physician, CCCC employed a full-time Certified Nurse Practitioner (CNP). A CNP in the State of Mexico in the scope of her practice is authorized to provide primary or acute, or chronic, or long-term, or end of life health care to meet the health care needs of individuals, families, and communities in any health care setting. They are also authorized to collaborate as necessary with other healthcare providers, including discussion of diagnosis and cooperation in managing and delivering health care. The CNP provided the necessary supervision of inmates in the absence of a physician.

HEALTH SERVICES
**CFM Deficiency: Inmates arriving at the institution with positive PPD were not receiving follow-up and treatment as per policy.**

CONFIDENTIAL                                                                                         CORECIVIC_2209170

CCA Response: A review of ten inmate medical charts found that one was evaluated by a physician and the remaining nine were reviewed by the Certified Nurse Practitioner (CNP). This deficiency is directly related to CCCC's inability to employ a full-time physician. Although all of the charts of inmates with PPD were not reviewed by a physician, all charts were reviewed by either a physician or a CNP who is within the scope of her licensure to provide this level of care. CCA submits that there was no loss of care in this area. Of the ten inmate charts reviewed two inmates did not receive chest x-rays prior to treatment for a positive PPD. This deficiency can be attributed to an oversight by the Health Services Department. All Health Services staff were re-trained on the importance of providing an inmate with an x-ray prior to beginning treatment for a positive PPD. A full-time physician in currently on staff at CCCC and will ensure that inmates with positive PPDs receive the proper treatment and follow-up care.

**CFM Deficiency: In most cases, the physician is not involved in the management and follow-up of off-site care (hospital and emergency room visits).**

CCA Response: A review of two inmate medical charts found that a physician did not provide management or follow-up off-site care to inmates and a review of seven inmate medical charts found that emergency room trips were not evaluated by a physician and there was no on-site physician follow-up care. This deficiency is directly related to CCCC's inability to employ a full-time physician. In both instances the inmate medical charts reflected that management and follow-up care were provided by the CNP who is within the scope of her licensure to provide this level of care. A full-time physician in currently on staff at CCCC and will ensure that there is appropriate management and follow-up of off-site medical care.

**CFM Deficiency: Health appraisals were not conducted as per policy.**

CCA Response: A review of ten inmate medical charts found that seven inmates had not received health appraisals upon arrival at CCCC. All seven inmates had received prior recent health appraisals at other CCA facilities. Prior to this audit it was the understanding of the CCCC Health Department that health appraisals completed at other CCA facilities were adequate and were not required to be repeated upon arrival at CCCC. A discussion with BOP officials determined that this was not an adequate practice and the CCCC Health Department has revised their practice to perform health appraisals on all incoming inmates regardless of previous evaluations. CCA submits there was no loss of care associated with this finding.

**CFM Deficiency: Physical examinations and findings on health appraisals were not referred nor reviewed by physician.**

CCA Response: A review of ten inmate medical charts found that five inmate health appraisals were not reviewed by a physician. This deficiency is directly related to CCCC's inability to employ a full-time

CONFIDENTIAL CORECIVIC_2209171

physician. Although five inmate medical charts were not reviewed by a physician they were reviewed by the CNP who provided referrals and was within the scope of her licensure to provide this level of care. A full-time physician in currently on staff at CCCC and will review all physical examinations and health appraisals. CCA submits there was no loss of care associated with this finding.

**CFM Deficiency: Patients housed in the observation room were released to general population without being seen by a physician.**

CCA Response: A review of five inmate medical charts found three inmates who had been in the observation room were released to general population without being seen by a physician. This deficiency is directly related to CCCC's inability to employ a full-time physician. Although all of the inmates were not seen by a physician prior to being released into the general population all were seen by a CNP who was within the scope of her licensure to provide this level of care. A full-time physician in currently on staff at CCCC and he will ensure that he sees all patients in the observation room prior to being released to general population. CCA submits there was no loss of care associated with this finding.

**CFM Deficiency: Off-site recommendations were not reviewed by an on-site physician.**

CCA Response: A review of ten inmate medical charts found that none of the off-site recommendations for inmate care were reviewed by an on-site physician. This deficiency is directly related to CCCC's inability to employ a full-time physician. Although off-site recommendations were not reviewed by an on-site physician, all charts were reviewed by the CNP. A full-time physician in currently on staff at CCCC and will review all off-site recommendations. CCA submits there was no loss of care associated with this finding.

**CFM Deficiency: Management and follow-up of oncology cases was not in accordance with policy.**

CCA Response: A review of four inmate medical charts found that none of them were managed by a physician. This deficiency is directly related to CCCC's inability to employ a full-time physician. Although management and follow-up care of oncology cases were not provided by a physician the charts found that all were provided management and follow-up for oncology care by the CNP who was within the scope of her licensure to provide this level of care. A full-time physician in currently on staff at CCCC who will manage and follow-up on all inmate oncology cases in accordance with policy.

**CFM Deficiency: Errors in inmate health records were not corrected as per policy.**

CCA Response: A review of four of fifteen inmate medical charts found that errors were not corrected by initialing and dating as well as drawing a line through the correction. Instead in four or the charts there

CONFIDENTIAL

CORECIVIC_2209172

was only a line and no initials or date. This was an error made by the Health Department staff who have been re-trained on the policy requirements for corrections of errors in inmate health records. CCA submits there was no loss of care to the inmates which resulted from this oversight.

**CFM Deficiency: Inmate privacy was not provided in R&D for medical intake screening.**

CCA Response: Medical intake screenings are currently and have always been conducted in a private room designated in the R&D area. At the time of the CFM blood pressure screening were being conducted in the open area of R&D. Blood pressure screening are now conducted behind a screen or curtain in the R&D area to ensure inmate privacy. CCA submits there was no loss of care to the inmates which resulted from this oversight.

Thank you for providing CCA the opportunity to present mitigating information in response to your concerns regarding health services at CCCC. We take seriously these findings and have worked to ensure future compliance with CCA policies and the contract. Although we acknowledge that CCCC's lack of a full-time physician was not optimal, CCA submits that in most instances there was no loss of care to the inmates. CCCC has employed a full-time physician to ensure compliance with CCA Policies and the Contract. For the foregoing reasons, CCA respectfully requests that a deduction not be applied for this deficiency. Please feel free to contact me if you have any questions or need any additional information.

Sincerely,


Bart VerHulst

CONFIDENTIAL
CORECIVIC_2209173