# EXHIBIT 133

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF TENNESSEE
2
3
4    NIKKI BOLLINGER GRAE, Individually
     and Behalf of All Others Similarly
5    Situated,
6           Plaintiff,
vs.              CASE NO.
7                3:16-CV-02267
     CORRECTIONS CORPORATION OF
8    AMERICA, et al.,
9           Defendants.
10
11
12           CONFIDENTIAL
13   VIDEO DEPOSITION OF TODD J. MULLENGER
14           Nashville, Tennessee
15           March 13, 2020
16
17
18
19
20
21
22   Reported by:
23   Elisabeth A. Miller Lorenz
24   RMR, CRR, LCR No. 66
25   Job No.: 10066906

```
 1       IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF TENNESSEE
 2
 3
 4   NIKKI BOLLINGER GRAE, Individually
   and Behalf of All Others Similarly
 5   Situated,
 6              Plaintiff,
 vs.              CASE NO.
 7                3:16-CV-02267
   CORRECTIONS CORPORATION OF
 8   AMERICA, et al.,
 9              Defendants.
10
11
12
13
14
15
16
17       Video deposition of TODD J. MULLENGER was
18   taken on behalf of Plaintiff, at Riley, Warnock &
19   Jacobson, 1906 West End Avenue, Nashville,
20   Tennessee, beginning at 9:35 a.m., and ending at
21   3:03 p.m., on Friday, March 13, 2020, before
22   Elisabeth A. Miller Lorenz, RMR, CRR, and LCR No.
23   66.
24
25
```

```
 1    APPEARANCES:
 2
 3    For the Plaintiff:
 4       ROBBINS GELLER RUDMAN & DOWD
      BY:  CHRISTOPHER H. LYONS
 5       BY:  CHRISTOPHER WOOD
      414 Union Street
 6       Suite 900
      Nashville, Tennessee 37219
 7       615.252.3798
      clyons@rgrdlaw.com
 8       cwood@rgrlaw.com
 9
10    For the Defendants:
11       RILEY, WARNOCK & JACOBSON
      BY:  TREY McGEE
12       1906 West End Avenue
      Nashville, Tennessee 37203
13       615.320.3700
      tmcgee@rwjplc.com
14
      LATHAM & WATKINS
15       BY:  MORGAN E. WHITWORTH
      505 Montgomery Street
16       Suite 2000
      San Francisco, California 94111-6538
17       415.395.8011
      morgan.whitworth@lw.com
18
19
    Also Present:
20
    David Drumel, Videographer
21
22
23
24
25
```

1 defendants.
2       THE VIDEOGRAPHER: Thank you.
3       Will the court reporter please swear in
4 the witness.
5       * * *
6       TODD MULLENGER
7 was called as a witness, and after having been first
8 duly sworn, testified as follows:
9       E X A M I N A T I O N
10 BY MR. LYONS:
11 Q    Good morning, Mr. Mullenger.
12 A    Good morning.
13 Q    Have you ever had your deposition taken
14 before?
15 A    Yes, once many years ago.
16 Q    Do you remember what case that was in
17 connection with?
18 A    I do not.
19 Q    Do you remember generally what type of case
20 it was?
21 A    I do not.
22 Q    Were you -- were you a party in whatever
23 litigation?
24 A    I don't believe so.
25 Q    Did it have to do with a work matter or a

1   and reviewing the full presentation; is that right?
2   A   Yes.
3   Q   Who else -- I think you said -- well,
4   actually, I don't know if you said.
5       Who -- who else was involved in preparing
6   these?
7   A   It would depend on the presentation of
8   Patrick's team, perhaps people from Dave's
9   department. And if they needed input from other
10  departments, they would typically reach out to those
11  people.
12  Q   And would --
13  A   Karin Demler as well.
14  Q   And when you say the other departments they
15  would reach out to if they needed information, that
16  would include, like, partnership development and the
17  operational departments?
18  A   Yes.
19  Q   And would Mr. Hininger have input on the
20  document as well?
21  A   Yes.
22  Q   So this first bullet refers to annual cost
23  savings of 12 percent or more.
24      What was the basis for that statement?
25  A   As it's referenced here, a Temple University

1 study.

2 Q Anything else?

3 A I don't recall.

4 Q Now, that -- that was a study that CCA
5 funded, right?

6     MR. WHITWORTH: Object to the form.

7     THE WITNESS: I don't recall.

8 BY MR. LYONS:

9 Q If I refer you to the footnote at the bottom
10 where it says, This study received funding by
11 members of the private corrections industry, does
12 that refresh your recollection?

13 A That's what it states, yes.

14 Q You don't recall if that --

15 A I don't recall.

16 Q -- includes CCA at all?

17     Looking at the four -- no, third
18 bullet under the -- first bullet under the table on
19 this slide, it says, Reduce overcrowding, improve
20 safety, and inmate quality of life.

21     What was the basis for the statement that
22 CCA improved safety and inmate quality of life?

23 A Based on discussions with the subject matter
24 experts and the company. So corrections, for
25 example, a number of our government partners had

1 tremendous overcrowding in their facilities, which
2 they acknowledged themselves, created an unsafe
3 facility. Or they might be operating in an older
4 dilapidated facility, which creates an unsafe
5 environment for the inmates -- or it can.
6 Q So when you say corrections, does that -- is
7 it -- are you referring to a department within --
8 sorry.
9 You said, Based on discussions with the
10 subject matter experts and the company, so
11 corrections, for example.
12 Am I -- am I right in understanding you to
13 be saying that corrections is an example of the
14 subject matter experts within the company that you
15 would speak to?
16 A Yeah, so our corrections subject matter
17 experts.
18 Q So that would be, for example, the chief
19 corrections officer?
20 A Right, members of his team in the operations
21 department. Partnership development might have
22 perspective on that as well in discussions with
23 their current and potential clients.
24 Q Any individuals in particular that come to
25 mind from either of those departments --

1　A　No.

2　Q　-- that you spoke to?

3　A　No.

4　Q　What were -- were there specific analyses

5　that were done and provided to you with respect to

6　the relative safety and quality of life?

7　A　I -- I don't recall.

8　Q　Anybody else that comes to mind other

9　than -- than the partnership development department

10　and the corrections department that provided

11　information supporting this statement that CCA

12　improved safety and inmate quality of life?

13　A　Not that I recall.

14　Q　Turn to the next slide, bullet refers to the

15　compelling value proposition.

16　　What was the basis for the statement that

17　CCA had a compelling value proposition?

18　A　Well, as it indicates here, it was driven by

19　the privatized market penetration going higher.

20　Q　Is it your understanding that the market

21　penetration drove the value proposition or the --

22　A　No. The -- so the -- the cost savings were

23　providing either through lower cost of construction,

24　so if a government customer was looking at replacing

25　a facility, it was going to cost them hundreds of

```
 1              I, the undersigned, a Licensed Court
 2   Reporter of the State of Tennessee, do hereby
 3   certify:
 4              That the foregoing proceedings were
 5   taken before me at the time and place herein set
 6   forth; that any witnesses in the foregoing
 7   proceedings, prior to testifying, were duly sworn;
 8   that a record of the proceedings was made by me
 9   using machine shorthand, which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is a true record of the testimony given.
12              Further, that if the foregoing pertains
13   to the original transcript of a deposition in a
14   federal case, before completion of the proceedings,
15   review of the transcript was requested.
16              I further certify I am neither
17   financially interested in the action nor a relative
18   or employee of any attorney or party to this action.
19              IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: March 25, 2020
22
23   _____
24   Elisabeth A. Miller Lorenz
25   RMR, CRR, LCR No. 66
```