# EXHIBIT 141

You have 2 more free articles available this month. **Subscribe today (/subscribe/digital/)**.

# ✱ (/subscribe/digital/) Research Study Finding Benefits from Prison Privatization Funded by Private Prison Companies

Loaded on JUNE 15, 2013 published in Prison Legal News June, 2013 (/news/issue/24/6/), page 32
Filed under: Corrections Corporation of America/CoreCivic (/search/?selected_facets=tags:Corrections%20Corporation%20of%20America/CoreCivic), GEO Group/Wackenhut (/search/?selected_facets=tags:GEO%20Group/Wackenhut), Management and Training Corporation (/search/?selected_facets=tags:Management%20and%20Training%20Corporation), Crime/Demographics (/search/?selected_facets=tags:Crime/Demographics), Statistics/Trends (/search/?selected_facets=tags:Statistics/Trends). Location: Pennsylvania (/search/?selected_facets=locations:1512).

In April 2013, two professors at Temple University in Philadelphia released a study, titled "Cost Analysis of Public and Contractor Operated Prisons," that alleged financial savings through prison privatization and equal or better performance by private prison companies.

According to an April 29, 2013 press release issued by Temple University, the study lauding the benefits of prison privatization was funded by "members of the private corrections industry." However, the research study itself, produced by Temple's Center for Competitive Government, did not disclose that it was funded by private prison firms – including CCA, the GEO Group and MTC.

Further, the authors of the study, Professors Simon Hakim and Erwin A. Blackstone, submitted editorials regarding the results of their research that were published by newspapers in Oklahoma, Maine, Florida and Kentucky. Three of those four editorials likewise did not mention their study's private prison funding source.

Nor did Professors Hakim and Blackstone disclose that they have a predisposition to favor the private sector, as they both have previously advocated for privatization of government services, including privatizing certain police functions.

"Any published or publicly released research should identify all sources of funding in support of that research," said Prof. Edward L. Queen, J.D., Director of Leadership Education at the Emory University Center for Ethics. "Especially any sources of funding that produce or could produce a conflict of interest."

Prof. Charles Scott, former director of Vanderbilt University's Center for Ethics, agreed, stating, "An academic paper presents itself as providing objective knowledge. If that paper and research are funded by a for-profit business, then it is an ethical obligation of the authors to reveal that source of funding." He indicated that identifying the funding source in a press release, but not in the study

itself, would be ethically inadequate.

In an email sent to the Nashville Post, which had published an article about the inadequate disclosure of the Temple study's source of funding, Professors Hakim and Blackstone retorted, "We are always completely transparent about funding. This is the normal course of action for working papers. When it's formally published, we will yet again disclose the funding.... We feel strongly that our work has been and will continue to be handled transparently and ethically."

The Temple research is the latest in a series of studies and reports that have received funding from the private prison industry. For example, a 2008 study by Vanderbilt University, which found cost savings through a dual public and private prison system, was partially funded by CCA and the Association for Private Correctional and Treatment Organizations (APCTO), an industry trade group that represents private-sector companies and organizations that provide corrections and treatment services. According to its website, APCTO's founding members include "the major correctional firms that design, construct, finance, and manage correctional secure facilities."

Other research studies with favorable findings related to prison privatization have been produced by the Reason Foundation, a libertarian think-tank that is pro-privatization. Although the Reason Foundation receives funding from the private prison industry – CCA was included in Reason's 2009 donor list as a Gold level supporter while GEO Group was listed as a Platinum level supporter – Reason typically does not acknowledge such funding in its articles, reports or research related to prison privatization. [See: PLN, June 2010, p.16].

Additionally, an article published in the Harvard Law Review in May 2002 claimed favorable results from prison privatization but failed to mention that the author, Alexander Volokh, was previously employed as a policy analyst for the Reason Public Policy Institute – a division of the Reason Foundation. Volokh was an adjunct scholar for the Reason Foundation at the time he published his law review article.

"Private prison companies tend to fund research that – unsurprisingly – finds favorable outcomes or benefits from their business model of for-profit incarceration," noted PLN managing editor Alex Friedmann, who also serves as president of the Private Corrections Institute (PCI), a non-profit watchdog group that opposes prison privatization. "There apparently is no shortage of academics who are willing to sell out to the private companies that fund their studies, and who are willing to deliver the desired results. This is basically bought-and-paid-for research, which private prison firms then reference in their promotional materials."

CCA has cited the Temple research study in its 2013 investor presentation and promoted the study using Twitter, while GEO Group posted information about the study on its website.

Previously, in the 1990s, much of the research on the private prison industry was produced by Professor Charles Thomas, director of the Private Corrections Project at the University of Florida. It was subsequently discovered that Thomas owned stock in the private prison companies he was studying, sat on the board of Prison Realty Trust – a CCA spin-off – and had been paid $3 million by

Case 3:16-cv-02267   Document 363-37   Filed 11/20/20   Page 3 of 4 PageID #: 16019

Prison Realty/CCA. Thomas retired from his University position after those conflicts became known and was fined $20,000 by the Florida Commission on Ethics. [See: PLN, Dec. 2004, p.19; Feb. 1999, p.10].

"It is remarkable how research studies that are funded by private prison firms frequently find cost savings or other benefits through prison privatization, while research that does not receive industry funding – such as a recent report by the Arizona Auditor General's office – usually find no such benefits," said Friedmann, a former prisoner who served six years at a CCA-operated prison in the 1990s. "In fact, I'm unaware of any research funded by private prison companies that has failed to find favorable outcomes with respect to prison privatization."

A September 2010 report by Arizona's Office of the Auditor General determined that privately-managed prisons housing both minimum- and medium-security prisoners were more expensive to operate than state prisons, after adjusting for comparable costs. [See: PLN, July 2012, p.45].

Then again, government agencies that study private prisons do not receive funding from private prison companies, which have a vested interest – as well as an apparent conflict of interest – when they pay for such research themselves.

Sources: PCI press release (May 22, 2013), www.eurekalert.org, Nashville Post, www.apcto.org

As a digital subscriber to Prison Legal News, you can access full text and downloads for this and other premium content.

Subscribe today (/subscribe/digital/)

Already a subscriber? Login (/users/login/)