# EXHIBIT 7

1　　　IN THE UNITED STATES DISTRICT COURT
　　　FOR THE MIDDLE DISTRICT OF TENNESSEE
2
3
4　　NIKKI BOLLINGER GRAE, Individually
and Behalf of All Others Similarly
5　　Situated,
6　　　　　　　Plaintiff,
vs.　　　　　　　　CASE NO.
7　　　　　　　　　　3:16-CV-02267
CORRECTIONS CORPORATION OF
8　　AMERICA, et al.,
9　　　　　　　Defendants.
10
11
12　　　　　　　CONFIDENTIAL
13　　　VIDEO DEPOSITION OF WILLIAM DALIUS
14　　　　　　Nashville, Tennessee
15　　　　　　　February 26, 2020
16
17
18
19
20
21
22　Reported by:
23　Elisabeth A. Miller Lorenz
24　RMR, CRR, LCR No. 66
25　Job No.: 10066903

```
 1    APPEARANCES:
 2    For the Plaintiff:
 3       ROBBINS GELLER RUDMAN & DOWD
       BY:  WILLOW RADCLIFFE
 4       One Montgomery Street
       Suite 1800
 5       San Francisco, California 94104
       415.288.4545
 6       wradcliffe@rgrdlaw.com
 7       BY:  CHRISTOPHER H. LYONS
       414 Union Street
 8       Suite 900
       Nashville, Tennessee 37219
 9       615.252.3798
       clyons@rgrdlaw.com
10
11
     For the Defendants:
12
     RILEY, WARNOCK & JACOBSON
13       BY:  TREY McGEE
     1906 West End Avenue
14       Nashville, Tennessee 37203
     615.320.3700
15       tmcgee@rwjplc.com
16       LATHAM & WATKINS
     BY:  MORGAN E. WHITWORTH
17       505 Montgomery Street
     Suite 2000
18       San Francisco, California 94111-6538
     415.395.8011
19       morgan.whitworth@lw.com
20
21    Also Present:
22    David Drumel, Videographer
23
24
25
```

1  P R O C E E D I N G S

2          THE VIDEOGRAPHER:  Good morning.  Here

3  begins the video deposition of William Dalius taken

4  by the plaintiff in the matter of Grae versus CCA

5  filed in the United States District Court for the

6  Middle District of Tennessee.

7          This deposition is being held at Riley,

8  Warnock & Jacobson, 1906 West End Avenue in

9  Nashville, Tennessee.

10         My name is David Drumel.  I'm the

11  videographer.  The court reporter is

12  Elisabeth Lorenz.

13         We're on the record.  The date is

14  February 26, 2020, and the time is approximately

15  9:39 a.m.

16         Counsel, please state your appearances

17  for the record.

18         MS. RADCLIFFE:  Willow Radcliffe from

19  Robbins Geller for the plaintiffs.

20         MR. LYONS:  Christopher Lyons from

21  Robbins Geller for the plaintiff.

22         MR. McGEE:  Trey McGee, Riley,

23  Warnock & Jacobson, on behalf of defendants and the

24  witness.

25         MR. WHITWORTH:  Morgan Whitworth,

1   Latham & Watkins, on behalf of defendants and the
2   witness.
3   　　　　THE VIDEOGRAPHER: Thank you.
4   　　　　Will the court reporter please swear in
5   the witness.
6   　　　　　　* * *
7   　　　　WILLIAM DALIUS
8   was called as a witness, and after having been first
9   duly sworn, testified as follows:
10  　　　　E X A M I N A T I O N
11  BY MS. RADCLIFFE:
12  Q    Can you please spell your name for the
13  record?
14  A    William Dalius; W-I-L-L-I-A-M, D-A-L-I-U-S.
15  Q    And where do you presently reside?
16  A    In Nolensville, Tennessee.
17  Q    And have you been deposed before?
18  A    Yes, ma'am.
19  Q    How many times?
20  A    Several.
21  Q    When was the first time you were deposed?
22  A    I don't recall.
23  Q    What was the nature of the action if you
24  recall?
25  A    It was, geez, probably -- probably an EEO

1   private companies versus the BOP, this per diem cost
2   is what you're referring to?
3   A    Yes. I used to complete it.
4   Q    And as I understand your testimony, the per
5   diem cost is not an apples-to-apples comparison; is
6   that correct?
7   A    That is correct.
8   Q    And then what about, have you seen any cost
9   comparisons of CCA versus its competitors?
10  A    Not that I recall specifically.
11  Q    And with respect to the per diem cost
12  that you -- that you completed, did that include any
13  analysis of the quality of performance of CCA?
14  A    No, it was strictly financial analysis.
15  Q    And I'll take it your answer to be saying
16  that it didn't include any analysis of the quality
17  of the performance of the BOP?
18  A    It was strictly per diem, financial.
19  Q    Do you recall what the purposes of
20  calculating the per diem cost was?
21  A    It was to show Congress comparisons of...
22  Q    And who did you work with in preparing those
23  per diem costs?
24  A    My budget staff.
25  Q    And did the budget staff substantially

1　assist you in preparing those per diem costs?
2　A　　They assisted me. I don't know about
3　substantially, but they definitely assisted me.
4　They had access to all the systems.
5　Q　　The information that you used to calculate
6　the per diem cost, was that all publicly available?
7　A　　I don't know the answer to that. I -- I
8　suspect.
9　Q　　I don't want you to guess.
10　A　　I know I can't guess, so I'm sorry. After I
11　said that, I thought --
12　Q　　So is --
13　A　　I -- I don't know then if -- if the
14　government documents are all public or not.
15　Q　　Do you recall what the criteria used were to
16　calculate the per diem cost?
17　A　　Yes.
18　Q　　And what was it?
19　A　　Well, there's a lot of criteria. I mean,
20　it's generally -- for the BOP prisons, the criteria
21　was just their annual operating budget. It excluded
22　things like construction costs, high
23　maintenance-type items, national expenses that would
24　be charged to all the prisons. And it was just kind
25　of prorated.

1  So if you did a true cost comparison, those
2  things were omitted from the per diem, the BOP's,
3  and that was just a decision made by the BOP years
4  ago to provide it that way.
5  Whereas, the privates, they have everything
6  included, the real estate taxes, the -- all the
7  salaries, all the retirement, everything, all the
8  construction, maintenance that goes into their
9  costs.
10 Q    So while at the BOP, for example, when
11 you -- the -- strike that.
12      The per diem costs, you calculated those
13 annually for the BOP?
14 A    Correct, at the end of each fiscal year.
15 Q    And did anybody have responsibilities for
16 reviewing your calculations prior to them being
17 published?
18 A    My budget staff and myself.
19 Q    And --
20 A    And the director signed off on it.
21 Q    And let's say, for example -- let's take the
22 year 2014.
23 A    Uh-huh.
24 Q    Without having access to the BOP documents,
25 would you be able to replicate exactly how you

Confidential

William Dalius

Grae vs. Corrections Corporation of America, et al.

```
 1              I, the undersigned, a Licensed Court
 2  Reporter of the State of Tennessee, do hereby
 3  certify:
 4              That the foregoing proceedings were
 5  taken before me at the time and place herein set
 6  forth; that any witnesses in the foregoing
 7  proceedings, prior to testifying, were duly sworn;
 8  that a record of the proceedings was made by me
 9  using machine shorthand, which was thereafter
10  transcribed under my direction; that the foregoing
11  transcript is a true record of the testimony given.
12              Further, that if the foregoing pertains
13  to the original transcript of a deposition in a
14  federal case, before completion of the proceedings,
15  review of the transcript was requested.
16              I further certify I am neither
17  financially interested in the action nor a relative
18  or employee of any attorney or party to this action.
19              IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21  Dated: March 11, 2020
22
23  _____
24          Elisabeth A. Miller Lorenz
25          RMR, CRR, LCR No. 66
```