# EXHIBIT 13

1      UNITED STATES DISTRICT COURT
2      MIDDLE DISTRICT OF TENNESSEE
3
   NIKKI BOLLINGER GRAE, Individually
4    and on Behalf of All Others
   Similarly Situated,
5
         Plaintiff,       Civil Action No.
6
   vs.                3:16-cv-02267
7
   CORRECTIONS CORPORATION OF
8    AMERICA, ET AL.,
9         Defendants.
10   _____
11
12      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
13
14      VIDEOTAPED DEPOSITION OF DONNA MELLENDICK
15
16    Conducted virtually via remote videoconference
17           October 27, 2020
18
19
20
21
22
23    Reported by:
   Misty Klapper, RMR, CRR
24    Job No.: 10073773
25

```
1      APPEARANCES:
2      (ALL APPEARANCES VIA ZOOM REMOTE VIDEOCONFERENCE)
3      ON BEHALF OF PLAINTIFF:
4           CHRISTOPHER HAMP LYONS, ESQUIRE
          ROBBINS GELLER RUDMAN & DOWD LLP
5            414 Union Street, Suite 900
          Nashville, Tennessee 37219
6            (615) 244-2203
          E-mail:  clyons@rgrdlaw.com
7
                AND
8
          JASON A. FORGE, ESQUIRE
9            ROBBINS GELLER RUDMAN & DOWD LLP
          655 West Broadway, Suite 1900
10            San Diego, California 92101
          (619) 231-1058
11            E-mail: jforge@rgrdlaw.com
12     ON BEHALF OF DEFENDANTS:
13
          SARAH TOMKOWIAK, ESQUIRE
14            LATHAM & WATKINS, LLP
          555 Eleventh Street, N.W., Suite 1000
15            Washington, D.C. 20004-1304
          (202) 637-2335
16            E-mail: sarah.tomkowiak@lw.com
17                AND
18
          ERIC CHARLES PETTIS, ESQUIRE
19            LATHAM & WATKINS, LLP
          355 South Grand Avenue, Suite 100
20            Los Angeles, California 90071
          (213) 485-1234
21            E-mail: eric.pettis@lw.com
22
23     ALSO PRESENT:  DeSHAWN WHITE, VIDEO OPERATOR
24            D. SCOTT DODRILL
25
```

1　　　　　P R O C E E D I N G S

2　　　　　　VIDEO OPERATOR:  Okay.  The time on

3　　　the record is 10:10 a.m. Central Time.

4　　　Today's date is October 27, 2020.

5　　　　　　My name is DeShawn White of Aptus

6　　　Court Reporting.  The court reporter today

7　　　is Misty Klapper of Aptus Court Reporting,

8　　　located at 600 West Broadway, Suite 300,

9　　　San Diego, California, 92101.

10　　　　　　This begins the video-recorded

11　　　deposition of Donna Mellendick, testifying

12　　　in the matter of Nikki Bollinger Grae versus

13　　　Corrections Corporation of America, et al.,

14　　　pending in the United States District Court,

15　　　Middle District of Tennessee, case number

16　　　3:16-cv-02267, taken by Zoom video remote

17　　　conferencing, physical recording in

18　　　Culpeper, Virginia.

19　　　　　　The video and audio recordings will

20　　　take place at all times during this

21　　　deposition unless all counsel agree to go

22　　　off the record.  The beginning and end of

23　　　each video recording will be announced.

24　　　Counsel appearances will be on a

25　　　stenographic record.

1    The court reporter may now swear in
2    or affirm the deponent.
3         MS. REPORTER: One moment.
4
5    Whereupon:
6         DONNA MELLENDICK,
7    was called for examination, and, after being duly
8    sworn, was examined and testified as follows:
9         MS. REPORTER: Thank you.
10        You may proceed.
11   EXAMINATION BY COUNSEL FOR DEFENDANTS
12        BY MS. TOMKOWIAK:
13   Q.   Good morning, Ms. Mellendick.
14   A.   Good morning.
15   Q.   We -- we spoke before we went on the
16   record, but I don't think I introduced myself.
17   So my name is Sarah Tomkowiak and I represent the
18   defendants in this matter.
19        Have you been deposed before?
20   A.   I have not.
21   Q.   Okay. Well, this deposition is being
22   taken over Zoom, so it's even more important
23   than -- and when we're in person usually to try
24   not to talk over each other.
25        Your counsel might also object to my

1           BY MS. TOMKOWIAK:

2       Q.   All right. And I see that you also
3   follow the ACA, the American Correctional
4   Association.
5           What's that?
6       A.   American Correctional Association?
7       Q.   Um-hmm (affirmative).
8       A.   It's -- how do I describe it?
9           Mr. Dodrill talks about it in his
10  report, but it's a organization that is comprised
11  of correctional professionals that go out and
12  audit correctional facilities and provide a
13  certification that they're meeting all the
14  standards that the ACA has developed.
15      Q.   Why do you or did you at one point
16  follow them?
17      A.   I -- throughout my career I've dealt
18  with ACA in my position in the program review
19  division, worked closely with ACA accreditations,
20  et cetera. And -- and I know some -- or did know
21  some folks that are, you know, associated with
22  them, so --
23      Q.   Okay. And all BOP-operated
24  facilities are required to maintain ACA
25  accreditation; is that right?

1     A.    That is correct.
2     Q.    And same thing is true for all
3     privately operated facilities?
4     A.    Correct.
5     Q.    Okay. We are done with that exhibit,
6     so you can close that out if you want.
7           During the time that you worked as
8     PMB administrator, the BOP was under contract
9     with CCA for the housing of federal inmates in
10     five correctional facilities; is that right?
11     A.    That is right.
12     Q.    And those are the facilities that you
13     discuss in your report. They're Adams, Cibola,
14     Eden, McRae and Northeast Ohio?
15     A.    Yes.
16     Q.    In your role as PMB administrator,
17     you interacted with CCA and its employees, right?
18     A.    I did.
19     Q.    How frequently would you say those
20     interactions were?
21     A.    Mainly my staff were the ones that
22     interacted with CCA employees on a regular basis,
23     whether it be daily, weekly. I would say my
24     interactions were probably maybe -- maybe
25     monthly. I kind of think it depended on what was

1   going on at the time.
2       Q.   And what were the nature of those
3   interactions with CCA?
4       A.   My staff's or mine?
5       Q.   Yours.
6       A.   Typically it would be working
7   together to schedule partnering meetings and if
8   there were -- we had a -- let's step back a
9   minute.
10          So the Bureau of Prisons partnered
11  with our private providers.  We wanted to work
12  together.  We wanted our private partners to be
13  successful in providing these inmates with
14  confinement beds.  And the partnering process
15  involved staff at all levels in -- in my branch,
16  in the PCC section, in the CFM section to be able
17  to interact with one another.
18          So usually I didn't interact with
19  anyone at CCA unless it was something that
20  couldn't be resolved at a lower level or it was
21  just a higher level, whether we were looking to
22  try to organize our next partnering meeting, you
23  know, the logistics and -- and the agenda,
24  et cetera.
25      Q.   Okay.  And when it did rise to the

Page 61

1   level of your involvement, who are the people at
2   CCA on your same level that you would interact
3   with?
4       A.   I'm trying to remember their titles.
5   They -- they were usually like a vice president
6   or senior vice president.
7       Q.   Do you recall anybody's name?
8       A.   Yes, Jeb Beasley and Ron Thompson,
9   Mike Nalley, I think Bart VerHulst.
10      Q.   What about Keith Hall?
11      A.   Yes, Keith Hall.
12      Q.   Bill Dalius?
13      A.   Bill Dalius was still employed with
14  the Bureau of Prisons when I was the PMB
15  administrator. He was the assistant director for
16  the administration division.
17      Q.   I'm sorry, I didn't catch that. The
18  what division?
19      A.   Bill Dalius was the assistant
20  director for the administration division of the
21  Bureau of Prisons.
22      Q.   Was that a -- how did that position
23  compare to yours? Was that at the same level as
24  administrator?
25      A.   No, he would have been Mr. Dodrill's

```
 1                  CERTIFICATE OF NOTARY
 2              I, MISTY KLAPPER, the officer before
 3       whom the foregoing deposition was taken, do
 4       hereby certify that the witness whose
 5       testimony appears in the foregoing
 6       deposition was duly sworn by me; that the
 7       testimony of said witness was taken by me in
 8       shorthand and thereafter reduced to
 9       typewriting by me; that said deposition is a
10       true record of the testimony given by said
11       witness; that I am neither counsel for,
12       related to, nor employed by any of the
13       parties to the action in which this
14       deposition was taken; and, further, that I
15       am not a relative or employee of any
16       attorney or counsel employed by the parties
17       hereto, nor financially or otherwise
18       interested in the outcome of this action.
19              Further, that if the foregoing pertains to
20       the original transcript of a deposition in a federal
21  case, before completion of the proceedings, review
22  of the transcript [ X ] was [  ] was not requested.
23       Dated: November 3, 2020
24                                Misty Klapper, RMR, CRR
                                  and Notary Public
25
```

Page 176