# EXHIBIT 1

1           UNITED STATES DISTRICT COURT

2           MIDDLE DISTRICT OF TENNESSEE

3

NIKKI BOLLINGER GRAE, Individually

4     and on Behalf of All Others

Similarly Situated,

5

        Plaintiff,          Civil Action No.

6

vs.                        3:16-cv-02267

7

CORRECTIONS CORPORATION OF

8     AMERICA, ET AL.,

9           Defendants.

10    _____

11

12        CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13

14        VIDEOTAPED DEPOSITION OF LUCY P. ALLEN

15

16     Conducted virtually via remote videoconference

17              October 14, 2020

18

19

20

21

22

23    Reported by:

Misty Klapper, RMR, CRR

24     Job No.: 10073527

25

1          UNITED STATES DISTRICT COURT

2          MIDDLE DISTRICT OF TENNESSEE

3

4     NIKKI BOLLINGER GRAE, Individually

  and on Behalf of All Others

5     Similarly Situated,

6          Plaintiff,          Civil Action No.

7     vs.                    3:16-cv-02267

8     CORRECTIONS CORPORATION OF

  AMERICA, ET AL.,

9

       Defendants.

10

   _____

11

12

13

14

15

16

17      Videotaped deposition of LUCY P. ALLEN, taken on

18     behalf of Plaintiff, via Zoom remote videoconference,

19     beginning at 10:02 a.m. EST on Wednesday, October 14, 2020,

20     before Misty Klapper, RMR, CRR.

21

22

23

24

25

1      APPEARANCES:
2      (ALL APPEARANCES VIA ZOOM REMOTE VIDEOCONFERENCE)
3      ON BEHALF OF PLAINTIFF:
4            CHRISTOPHER M. WOOD, ESQUIRE
       CHRISTOPHER HAMP LYONS, ESQUIRE
5            ROBBINS GELLER RUDMAN & DOWD LLP
       414 Union Street, Suite 900
6            Nashville, Tennessee 37219
       (615) 244-2203
7            E-mail: cwood@rgrdlaw.com
             clyons@rgrdlaw.com
8
9      ON BEHALF OF DEFENDANTS:
10           MILTON S. McGEE, III, ESQUIRE
       RILEY, WARNOCK & JACOBSON
11            1906 West End Avenue
       Nashville, Tennessee 37203
12            (615) 320-3700
       E-mail: tmcgee@rwjplc.com
13
                    AND
14
       MORGAN E. WHITWORTH, ESQUIRE
15            LATHAM & WATKINS, LLP
       505 Montgomery Street, Suite 2000
16            San Francisco, California 94111-2562
       (415) 391-0600
17            E-mail: morgan.whitworth@lw.com
18
19      ALSO PRESENT:  CARRIE HOWARD, VIDEO OPERATOR
20
21
22
23
24
25

1            P R O C E E D I N G S

2            VIDEO OPERATOR:  Okay.  The time on

3     the record is 10:02 a.m.  Today's date is

4     October 14, 2020.  My name is Carrie

5     Howard of Aptus Court Reporting and the

6     court reporter today is Misty Klapper of

7     Aptus Court Reporting.

8            This begins the video-recorded

9     deposition of Lucy P. Allen, testifying in

10     the matter of Nikki Bollinger Grae versus

11     Corrections Corporation of America, et al.

12            This video is taken via Zoom

13     videoconference, physical recording in

14     Lexington, Kentucky.  The video and audio

15     recordings today will take place at all

16     times during this deposition unless all

17     counsel agree to go off the record.  The

18     beginning and end of each video recording

19     will be announced.

20            The counsels' appearances will be on

21     the stenographic record.  The -- the court

22     reporter may now swear in or affirm the

23     deponent.

24            MS. REPORTER:  One moment, please.

25

1    Whereupon:

2              LUCY P. ALLEN,

3    was called for examination, and, after being duly

4    sworn, was examined and testified as follows:

5              MS. REPORTER:  Thank you.

6              You may proceed.

7          EXAMINATION BY COUNSEL FOR PLAINTIFF

8              BY MR. WOOD:

9       Q.    Good morning, Ms. Allen.

10      A.    Good morning.

11      Q.    Do you have any opinions that you

12   intend to testify about that are not contained in

13   your reports?

14      A.    Since the issuance of my last

15   report -- so I believe we -- we had simultaneous

16   exchange of reports, so plaintiffs' expert,

17   Mr. Dalrymple, issued a report at the same time

18   as my rebuttal report.

19              So there -- I have not written

20   anything.  I had not seen that at the time that I

21   issued my report.  So that would be one topic

22   that I could imagine there's some additional

23   information.

24      Q.    Well, have you -- have you formed any

25   opinions about what you read in Mr. Dalrymple's

1          Do you see that?

2      A.    Yes.

3      Q.    And then on page 29, the next page,

4   the last full paragraph in -- in -- I'm -- well,

5   the -- the -- the start of the last paragraph

6   about two-thirds of the way down the page the

7   court writes, By the time Hininger made his

8   March 30, 2016 claim that CoreCivic's record of

9   operational excellence had earned it the

10   confidence of its government partners, CoreCivic

11   had already received numerous notices of concern

12   documenting chronic deficiencies related to,

13   among other things, inadequate health services

14   and understaffing in its BOP facilities.

15          Do you see that?

16      A.    Yes.

17      Q.    And if we go to page 33 in the

18   court's order, about a quarter of the way down

19   the page on page 33 the -- the court writes, The

20   question becomes if CoreCivic's executives had

21   known for a fact that the DOJ had such a low

22   assessment of CoreCivic's services that something

23   like the Yates memorandum was likely, would it

24   have been fraudulent to claim that CoreCivic's

25   history of quality services had earned it the

1        confidence of its government partners?  The

2        answer to that question seems to the court to be

3        yes.

4              Do you see that?

5        A.    Yes.

6        Q.    Okay.  One more.  On page 34 at the

7        end of the first paragraph, about halfway down,

8        the last sentence in the -- in that top paragraph

9        on page 34, the court says, CoreCivic and its

10       executives, instead, chose to affirmatively --

11       chose to state affirmatively or suggest that its

12       track record of high-quality services had

13       resulted in its clients' confidence.  An

14       assertion that, it is now difficult to dispute,

15       was shown to be incorrect, at least with regard

16       to the DOJ.

17             Do you see that?

18       A.    Yes.

19       Q.    So the court, as we just saw,

20       mentions paragraph 35 several times in its order

21       and talks about the statement about the

22       confidence of CoreCivic's clients.  And yet, you

23       didn't include paragraph 35 in Exhibit 1.  And --

24       and -- and why was that?

25             A.    For one, I'm not sure that the court

1       did cite paragraph 35 several times. I don't

2       know if you -- I -- I think you just -- maybe you

3       mentioned -- maybe we just read several times,

4       but I'm not sure if it was more than two.

5               And why is it not in Exhibit 1?

6       Exhibit 1 -- so in your complaint you have a

7       section -- your -- your complaint, as I recall,

8       is -- you know, is very long, I don't know,

9       150 pages or -- yeah, I -- I don't recall. It's

10      a very long complaint.

11              There's a section that's headed

12      something like misstatements and omissions. And

13      that section goes chronologically, I believe,

14      through all of the alleged misstatements. And

15      for each of the alleged misstatements in your

16      complaint, you write and it was, you know, false

17      and misleading or, you know, something along

18      those words, by failing to do one of these

19      categories.

20              And that's what these categories are.

21      These are the things that you have claimed in

22      your section misstatements and omissions, alleged

23      misstatements and omissions, what is -- what was

24      allegedly wrong with that -- with that statement.

25              You do not have that statement in

1       your entire section, which goes on and on for

2       pages, chronologically going through each of

3       these dates and saying what was false or

4       misleading about that statement.

5               So it's just not in your complaint.

6       It's not organized that way.  You haven't listed

7       it there.  And so you don't have a section that

8       says what are the reasons why that statement was

9       false or misleading.

10              That's why it's not in this

11      Exhibit 1.  This Exhibit 1 is going

12       systematically through what you had in the

13       section of your complaint called misstatements

14       and omissions and what did you say -- what

15       category of issue did you pinpoint or category

16       for each misstatement.

17               So that's what this is doing.  It's

18       just cataloging what you did in pages and pages

19       under misstatements and omissions of your

20       complaint, which is not to say that I did not

21       analyze the claims that were made in paragraph 35

22       of the complaint.  I have as -- as the alleged

23       misstatements in my report, I have that.  I have

24       that as a specific number and I cite

25       paragraph 35.

1              So it's not to say that I haven't

2       analyzed it, but the way you wrote your

3       complaint, you have a large section labeled

4       alleged misstatements and omissions.  It goes

5       chronologically through all the various

6       statements and it claims what is -- what -- there

7       are -- I think it's something like four

8       categories of -- of types of issues that you say

9       are wrong with each of these statements.

10             And you did not put that statement in

11       that whole section of your complaint.  So I

12       just -- you know, organizationally I didn't know

13       what to do with it.  You didn't -- you didn't put

14       it in your section.  You didn't have a -- a

15       description of why it was false and misleading.

16       Q.    Okay.  So even though the court

17       relies on paragraph 35 in denying the defendants'

18       motion to dismiss, even though I accused you of

19       ignoring paragraph 35 in your class cert report

20       and you subsequently addressed it in your

21       previous supplemental report, it's still not in

22       Exhibit 1, right?

23             MR. WHITWORTH:  Object to the form.

24             THE WITNESS:  I have explained to

25       you it is -- it is analyzed in my report.

1          It is mentioned as an alleged

2          misrepresentation in my report.

3               It does not fit into category 1

4          because of the way that you wrote your

5          complaint.  You have a section that's called

6          something like alleged misstatements and

7          omissions.  It goes on and on for pages.

8          And for each alleged misstatement in your

9          complaint, you say why you claim that

10          alleged statement is false or misleading.

11               What -- what Exhibit 1 does is take

12          each of the reasons that you say that the

13          alleged misstatements are false and

14          misleading and rather than doing it as -- in

15          the order that you have done it, which is by

16          misstatement, it takes each category of --

17          of misstatement and puts them by category.

18               You did not categorize the -- the

19          sentence or sentences in paragraph 35 and

20          say why they were allegedly false or

21          misleading, so it does not fit into

22          Exhibit 1.  Exhibit 1 is putting your claims

23          of why statements are allegedly false and

24          misleading into a -- a table.

25               So I feel the -- I have analyzed your

1         claims.  I have reviewed the judge's

2         decision.  And your -- your question about

3         my table 1 is really a question about why

4         did you write the -- if this was such an

5         important alleged misstatement, why is it

6         not under your section of misstatements and

7         why did you not say in the complaint a

8         category and -- or set of categories of what

9         made this particular statement false or

10        misleading.

11             So that's what Exhibit 1 is doing.

12        It's just reorganizing what you have alleged

13        in the complaint.

14             BY MR. WOOD:

15        Q.    Is there anywhere in your August

16    report, anywhere, that you cite to paragraph 35,

17    other than in M30 or whichever one it is of the

18    alleged misrepresentations?

19             MR. WHITWORTH:  Object to the form.

20        You're -- you're still just talking about

21        the numbered paragraph 35?

22             MR. WOOD:  Yep.

23             MR. WHITWORTH:  Okay.

24             THE WITNESS:  So I see it cited

25        twice, for example, on page 24 of

1          Appendix C.

2              BY MR. WOOD:

3          Q.     Right.

4          A.     I don't believe so.  I don't see

5     other of the alleged misrepresentations being

6     cited multiple times either, though, so --

7          Q.     Isn't it true, Ms. Allen, that you

8     intentionally ignored the statement in

9     paragraph 35 in your class cert report and in

10     this report because if you had actually analyzed

11     it, it would have undermined your conclusions?

12              MR. WHITWORTH:  Object to the form.

13              THE WITNESS:  Absolutely not true.

14              BY MR. WOOD:

15          Q.     Can you point me to anywhere in your

16     August 2020 report where you analyze the

17     statements in paragraph 35?

18              MR. WHITWORTH:  Object to the form.

19     You still don't want to show her the

20     statements in paragraph 35?

21              MR. WOOD:  No, that's fine.

22              Let's introduce the complaint.  So

23     it's tab 11.  And tab 11's going to be

24     Exhibit 538.

25

1                    (Thereupon, Allen Exhibit

2               Number 538 was marked for

3               identification.)

4          BY MR. WOOD:

5      Q.    And paragraph 35 is on pages 9

6    through 10.

7               So, Ms. Allen, you're welcome to

8    review that and when you're ready, you can answer

9    my question, which I will repeat, which is can

10     you point me to anywhere in your August 2020

11     report where you analyze the statements in

12     paragraph 35?

13     A.    So I have in my -- I haven't opened

14   the -- the chat to look at the complaint, I

15   guess, but I -- I have a statement, which is the

16   alleged misrepresentations, number M30 in my

17   report.

18               Is it more than that statement?

19     Q.    Well, that's a good question.  Let's

20   take a look.

21               I -- I -- I don't want to

22   characterize it.  I -- they're roughly the same.

23   If -- if you want to look at both -- I mean,

24   you -- you can look at what's in M30 if you want

25   and -- and -- and use that to answer my question,

1          which is where in your August 2020 report do you

2          analyze the statements in -- in M30.

3              A.    Sure.

4                   So my entire report addresses this

5          issue.  Plaintiffs are alleging that -- I mean, I

6          think -- you just look at the table of contents

7          of my report.  The first section within Roman

8          numeral VII is Plaintiffs allege that

9          misrepresentations about quality and cost of

10          CoreCivic's facilities inflated the company's

11          stock price and that investors in CoreCivic

12          suffered economic losses and damages when the

13          truth about the alleged misrepresentations was

14          revealed to the market.  So that's -- that

15          particular statement is certainly addressed

16          within that.

17                   It's addressed within Section B, the

18          disclosures of quality-related issues during the

19          class period, including the OIG report, Adams

20          riot, Cibola cure notice and other BOP notices

21          related to staffing and medical care, did not

22          cause a decline in CoreCivic's stock price.

23                   So I think every single section here

24          is relevant and is -- is relevant to analyzing

25          that claim.

1          Q.    I'm specifically interested in the

2     portion of the statement that the court called

3     out in its motion to dismiss order.  And on

4     page 28 that we just looked at of the court's

5     order, the court says, The connection between

6     CoreCivic's claims of quality and its client

7     relationships is implicit in many of the

8     company's statements, but was perhaps most

9     clearly drawn by Hininger's boast that

10     CoreCivic's strong record of operational

11     excellence had earned it the confidence of its

12     government partners.  And then the court cites

13     paragraph 35.

14              Where -- where in your report do you

15     analyze the company's statements about having the

16     confidence of its government partners?

17          A.    The -- the -- again, the entire

18     report.  What plaintiffs are claiming is that

19     because of issues related to quality and cost,

20     the -- the relationship with the BOP was

21     deteriorating or not as strong as the company

22     claimed.

23              And that is what -- that is what my

24     report is analyzing, is plaintiffs' allegations.

25          Q.    Okay.  Do you have any other -- any

1          other response to that question or is that your

2          complete response?

3                    MR. WHITWORTH:  Object to the form.

4                    THE WITNESS:  I -- I think --

5               again, I think just about every section of

6               my report speaks to that claim.  The --

7               the statement that the company made that

8               is in paragraph -- that I believe is in

9               paragraph 35 or is in paragraph 35 and

10               is -- that -- and that the court quoted

11               is, Every day we remain focused on

12               providing high-quality, safe and secure

13               facilities that meet the needs of our

14               government partners.  By consistently

15               doing so, we've experienced more than

16               three decades of continued growth and

17               contract retention rates in excess of

18               90 percent.

19                    The -- my report addresses the --

20               the -- the alleged misstatements and the

21               alleged corrective disclosures and the

22               alleged concealed information regarding the

23               quality, the safe and secure facilities

24               meeting the needs of our government

25               partners.

1              As I understand it, all of

2        CoreCivic's customers are government,

3        government partners of one kind.  And the --

4        this particular statement that we've

5        experienced more than three decades of

6        continued growth and contract retention

7        rates in excess of 90 percent is a -- a

8        statement about the -- the retention to

9        date.  And I'm not -- I don't understand

10        that plaintiffs are claiming that those are

11        not the correct retention rates.

12              The retention rates -- at the end of

13        the class period, the -- the -- the company

14        says something similar, and they're -- I

15        believe they're talking about an average of

16        over five years and the retention rates are

17        still in excess of 90 percent.  Its average

18        five-year retention rates remain at these

19        levels and are, if anything, better at the

20        end of the class period than they were at

21        the beginning of the class period.

22        Q.    Okay.  Anything else?

23        A.    Again, my entire report addresses

24     these issues.  I think that plaintiffs' claim, as

25     I believe one of your experts said, or -- is --

1      is a unified theory and I have analyzed and

2      addressed this unified theory.

3              And I think pointing to one alleged

4      misrepresentation that plaintiffs failed to put

5      in the proper section of their complaint and

6      saying that I haven't analyzed it is just not

7      true.  I have analyzed that claim.

8              And the fact that it -- it -- it

9      doesn't show up in certain sections of my report

10      is really due to the organization of the

11      complaint and not -- not that this is not a claim

12      that I have failed to analyze and certainly not a

13      claim that I think that there's -- that -- that

14      an analysis would come to a different conclusion

15      than I have.

16        Q.    Do you think that the court, you

17      know, really failed to organize its motion to

18      dismiss order in a way that would let you analyze

19      the court's findings in denying defendants'

20      motion to dismiss?

21          MR. WHITWORTH:  Object to the form

22          and the mischaracterization of the court

23          order.

24              THE WITNESS:  I am not in any way

25          criticizing the organization of what the

1        court has done.  I do think that your

2        complaint -- that if you have an alleged

3        misrepresentation and reasons why the

4        alleged misrepresentation is false and

5        misleading, to not put it in the many,

6        many page sections that's titled alleged

7        misrepresentations and omissions but it

8        goes through and says why they are, that,

9        I do think, is -- is a -- is not a

10        well-organized complaint and there was an

11        oversight on -- on your part.

12            I'm not in any way criticizing what

13        the court has done.  I have analyzed the

14        alleged misrepresentations in the complaint,

15        including the ones that you didn't put in

16        the -- in the -- in the -- the section that

17        is clearly labeled and didn't -- so I -- I

18        have no criticism of the -- the court.

19            And the court has not done a -- yeah,

20        I'm not in -- I'm not in any way -- I

21        don't -- I don't -- I have no criticism of

22        the organization of the court's motion to

23        dismiss --

24        Q.    And the court --

25        A.    -- opinion.

1          Q.    Okay.  The -- the court didn't

2     dismiss the statements in paragraph 35 as

3     inadequately pled, right?

4               MR. WHITWORTH:  Object to the form.

5               THE WITNESS:  I don't know if the

6     court dismissed -- I -- I don't know.  I

7     mean, I just -- I don't -- I don't know if

8     any statements were dismissed as

9     inadequately pled or if that was a -- I

10     don't know.

11               BY MR. WOOD:

12          Q.    And you agree --

13          A.    Whether -- whether statements were

14     adequately pled or not adequately pled or -- I'm

15     not saying there's a -- there's a legal

16     inadequacy in the way you have written the

17     complaint.  I'm saying from an organizational

18     standpoint when I did my first report in this

19     case and listed the alleged misrepresentations,

20     it was not under there.

21               So I -- I think that any normal --

22     any analyst reading through, you know, tens or

23     hundreds of pages would have had trouble finding

24     that alleged misrepresentation, given it was not

25     put under the section titled misrepresentations.

1          Q.    And -- but you agree that the last

2     time I deposed you in this case I criticized you

3     for not analyzing paragraph 35 in your class

4     certification report, right?

5               MR. WHITWORTH:  Object to the form.

6               THE WITNESS:  You criticized me for

7          not listing it as an alleged

8          misrepresentation.  I don't believe I said

9          I didn't analyze it.  I have listed it and

10          analyzed it in my reports on damages and

11          loss causation.

12               BY MR. WOOD:

13          Q.    Well, in your initial report you were

14     looking at the alleged misstatements and you were

15     looking at whether or not there was any price

16     impact attributable to the alleged misstatements

17     in your class cert report, right?

18               MR. WHITWORTH:  Object to the form.

19               THE WITNESS:  I was analyzing price

20          impact from the alleged misstatements in

21          my first report, that's correct.

22               BY MR. WOOD:

23          Q.    And -- but you didn't analyze price

24     impact in paragraph 35, which is why -- in your

25     opening report, which I criticized you for, and

1        that's why you did it in your supplemental report

2        that we just looked at for the class cert, right?

3            A.      So I'm not sure I'm going to agree

4        with your characterization of that.  I think I

5        did analyze it.  I think I didn't list it as an

6        alleged misrepresentation because, again, it was

7        not under the -- the section called Defendants

8        made numerous fraudulent statements and omissions

9        during the class period.

10           Q.      All right.  We'll --

11           A.      And it was under the background

12       section.

13           Q.      We will let the reports --

14           A.      And -- and so what I say in my

15       supplemental report is there was no new

16       information in the March 30th statement that was

17       not already included in plaintiffs' other alleged

18       misrepresentations and not already analyzed in

19       the Allen report.

20           Q.      All right.  We'll let the reports

21       speak for themselves.

22               Do you have an opinion on market

23       efficiency in this case?

24           A.      I have not been asked to -- I guess

25       the question is -- is whether -- I have some

1       findings about whether plaintiffs' experts'

2       claims are consistent with their claim of market

3       efficiency.  I have not been asked to analyze,

4       nor have I, whether CoreCivic stock was efficient

5       during the class period.

6            Q.    Okay.  And so just to be clear,

7       because you haven't been asked to analyze whether

8       CoreCivic's stock was efficient during the class

9       period, you don't have an opinion on whether

10       CoreCivic's stock was efficient during the class

11       period, right?

12            A.    I don't have a finding on whether it

13       was a -- yeah, I think that's correct.

14            Q.    Okay.  And in Mr. Dalrymple's opening

15       report in this case, his August 2020 report, he

16       has a -- a -- a section in one of his appendices

17       on market efficiency.

18                Do you remember that?

19            A.    I have his report.

20            Q.    Let's -- well, let -- if you're going

21       to look at something, let's -- let's introduce it

22       into evidence, because I don't want to just look

23       at random documents --

24            A.    Okay.

25            Q.    -- separately.

Lucy P. Allen

Confidential Pursuant to Protective Order                Grae vs.
Corrections Corporation of America, et al.

```
 1
 2
 3                    CERTIFICATE OF NOTARY
 4           I, MISTY KLAPPER, the officer before
 5      whom the foregoing deposition was taken, do
 6      hereby certify that the witness whose
 7      testimony appears in the foregoing
 8      deposition was duly sworn by me; that the
 9      testimony of said witness was taken by me in
10      shorthand and thereafter reduced to
11      typewriting by me; that said deposition is a
12      true record of the testimony given by said
13      witness; that I am neither counsel for,
14      related to, nor employed by any of the
15      parties to the action in which this
16      deposition was taken; and, further, that I
17      am not a relative or employee of any
18      attorney or counsel employed by the parties
19      hereto, nor financially or otherwise
20      interested in the outcome of this action.
21      Dated: October 22, 2020
22                           _____
23                           Misty Klapper, RMR, CRR
                             and Notary Public
24
25
```

www.aptusCR.com