# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

NIKKI BOLLINGER GRAE, Individually and
on Behalf of All Others Similarly Situated,

              Plaintiff,

    vs.

CORRECTIONS CORPORATION OF
AMERICA, et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:16-cv-02267

Honorable Aleta A. Trauger

Magistrate Judge Jeffrey S. Frensley

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

      A.    Lead Plaintiff's Trading In CoreCivic ..................................................2

      B.    Lead Plaintiff's Claims .........................................................................2

      C.    Class Certification.................................................................................4

III.  LEGAL STANDARD............................................................................................7

IV.   ARGUMENT ........................................................................................................7

      A.    Plaintiff Concedes It Is Not Entitled to Summary Judgment on Materiality,
            a Necessary Requirement for Invoking the Fraud-on-the-Market
            Presumption ...........................................................................................9

      B.    There Are Genuine Disputes of Material Fact Regarding Whether
            Defendants Can Rebut the Presumption of Reliance ............................12

            1.    The Evidence Demonstrates the Absence of Price Impact ........12

            2.    The Evidence Demonstrates That Lead Plaintiff Did Not Rely On
                  the Integrity of the Market Price When Trading Stock.............15

V.    CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alkire v. Irving*,
    330 F.3d 802 (6th Cir. 2003) ................................................................13

*Allan v. Penn. Higher Educ. Assistance Agency*,
    968 F.3d 567 (6th Cir. 2020) ................................................................7

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)................................................................14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................5, 8, 15

*Burges v. Bancorpsouth, Inc.*,
    No. 3:14-CV-1564, 2017 WL 2772122 (M.D. Tenn. June 26, 2017) ....................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................7, 10, 12

*Collins v. Nagle*,
    892 F.2d 489 (6th Cir. 1989) ................................................................7

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
    927 F. Supp. 2d 88 (S.D.N.Y. 2013), *aff'd sub nom. GAMCO Investors, Inc. v.
    Vivendi Universal, S.A.*, 838 F.3d 214 (2d Cir. 2016) ..........................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ................................................................17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)................................................................ *passim*

*Hsu v. Puma Biotechnology, Inc.*,
    No. SACV1500865AGJCGX, 2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ...................11, 12

*Hsu v. Puma Biotechnology, Inc.*,
    No. SACV1500865AGJCGX, 2019 WL 11637311 (C.D. Cal. May 22, 2019)...............16, 17

*Kenney v. Aspen Techs., Inc.*,
    965 F.3d 443 (6th Cir. 2020) ................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................7

*May v. Apricus Biosciences, Inc.*,
    No. 3:13-CV-00554, 2014 WL 4897938 (M.D. Tenn. Sept. 30, 2014), *aff'd*,
    650 F. App'x 893 (6th Cir. 2016) ............................................................................7

*In re PolyMedica Corp. Sec. Litig.*,
    432 F.3d 1 (1st Cir. 2005) ......................................................................................14

*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003) .............................................................................17

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ...............................................................................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
    123 F. Supp. 3d 424 (S.D.N.Y. 2015) ...................................................................16

*In re Vivendi Universal, S.A. Sec. Litig.*,
    183 F. Supp. 3d 458 (S.D.N.Y. 2016) .............................................................16, 17

*In re World Access, Inc. Sec. Litig.*,
    310 F. Supp. 2d 1281 (N.D. Ga. 2004) .................................................................17

## RULES

Fed. R. Civ. P. 23(b)(3) ......................................................................................................5

Fed. R. Civ. P 56(a) ...............................................................................................7, 9, 13

# I.    INTRODUCTION

Plaintiff asks the Court to find there is no genuine issue of material fact on the element of reliance, and that Plaintiff is therefore entitled to partial summary judgment as a matter of law. Plaintiff's motion for summary judgment is without merit for two independent reasons.

*First*, in order to invoke the *Basic v. Levinson* fraud-on-the-market presumption of reliance on which Plaintiff relies, Plaintiff has the burden to show—among other requirements—that Defendants' alleged misrepresentations were material. But Plaintiff *admits* that it is incapable of establishing materiality as a matter of law, a concession that alone ends the Rule 56 inquiry as to Plaintiff's requested relief.

*Second*, even if Plaintiff could satisfy its threshold burden to establish the fraud-on-the-market presumption, Plaintiff is still not entitled to summary judgment on the element of reliance because that presumption is rebuttable—and Defendants have evidence rebutting it. Under well-established Supreme Court precedent, any showing that severs the link between the alleged misrepresentations and the market price, or an individual class member's decision to trade at the market price, rebuts the presumption. Here, there is compelling evidence showing that the alleged misrepresentations had *no* impact on CoreCivic's stock price, which creates a genuine issue of material fact regarding class-wide reliance. There is also a genuine dispute of material fact regarding whether Plaintiff, individually, relied on the integrity of the market price when trading in CoreCivic stock. Indeed, the jury could find that Plaintiff would have invested in CoreCivic even if it had known the purported "truth," based on (among other evidence) the fact that Plaintiff *continued to buy more CoreCivic stock* after the fraud was allegedly revealed.

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's motion for summary judgment on the element of reliance be denied.

## II.     STATEMENT OF FACTS

### A.     Lead Plaintiff's Trading In CoreCivic

The Lead Plaintiff, Amalgamated Bank, offers three broad types of investment funds: passively managed funds, which track stock indices; actively managed funds, which trade on the basis of quantitative algorithms; and alternative funds, which invest in private equity and real estate.  Defs.' Response to Pl.'s Statement of Undisputed Material Facts and Statement of Additional Material Facts ("SUF Response") ¶ 45.  During the Class Period, Plaintiff's only funds that owned CoreCivic stock were the LongView family of funds, which were actively managed by an external advisor, Quantitative Management Associates, LLC.  SUF Response ¶¶ 46–47.  Using a quantitative model, the advisor made investment decisions on Plaintiff's behalf; Plaintiff did not have any input into that model or any involvement in the decision as to whether to purchase, hold, or sell CoreCivic stock.  SUF Response ¶¶ 47–48.

During the Class Period, Plaintiff purchased nearly 160,000 shares of CoreCivic stock on 102 different dates.  SUF Response ¶ 49.  Immediately after the Class Period, Plaintiff continued to invest in CoreCivic, and steadily increased its holding of CoreCivic stock each quarter for the next year.  SUF Response ¶¶ 51–55.  Plaintiff's Rule 30(b)(6) representative testified she did not know why the decision was made to purchase CoreCivic stock then, or at any point in time.  SUF Response ¶ 50.

### B.     Lead Plaintiff's Claims

Defendant CoreCivic owns, operates, and manages correctional facilities under contracts with federal, state, and local correctional authorities including the Federal Bureau of Prisons ("BOP").  SUF Response ¶¶ 56–57.  During the Class Period, CoreCivic had between 64 and 85 contracts to operate or manage correctional and detention facilities and its renewal rate for its contracts with its government partners averaged over 91%.  SUF Response ¶¶ 58–65. Within these

2

64-85 contracts, CoreCivic had contracts to operate five facilities for the BOP, which represented between 9% and 13.7% of the Company's revenue during the Class Period. SUF Response ¶¶ 66–67. The Individual Defendants are current and former executives of CoreCivic.

Plaintiff's Complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act by misleadingly touting CoreCivic's cost, quality, compliance, and contract renewal rates with its government partners, while omitting that *as to the BOP*, CoreCivic was supposedly not providing an adequate level of quality while offering cost savings. *See, e.g.*, Consolidated Compl. ¶¶ 3–9, ECF No. 57; Order on Motion to Dismiss at 21, 42, ECF No. 76. The Complaint alleges two dates on which the purported truth and risks previously concealed from investors were revealed to the market: August 11, 2016, when "the OIG released the Review" (the "OIG Review"), and August 18, 2016, when then-Deputy Attorney General Sally Yates released a memorandum entitled "Reducing our Use of Private Prisons" (the "Yates Memo"). ECF No. 57 ¶¶ 12–13, 196–200.

The OIG Review was published by the Department of Justice on August 11, 2016. SUF Response ¶ 75. It provided substantial information regarding the exact issues of quality and cost-effectiveness—of the private prison sector generally and of CoreCivic specifically—that form the basis of Plaintiff's Complaint. For example, the OIG Review stated:

- "We found that, in a majority of the categories we examined, contract prisons incurred more safety and security incidents per capita than comparable BOP institutions." ECF No. 361-28 at 4.

- "In recent years, disturbances in several federal contract prisons resulted in extensive property damage, bodily injury, and the death of a Correctional Officer." *Id.* at 3.

- "We found that the contract prisons had higher rates of inmate-on-inmate and inmate-on-staff assaults, as well as higher rates of staff uses of force." *Id.* at 25.

Despite the disclosure of this and additional information regarding CoreCivic's and other private

prison operators' purported quality and costs, the release of the OIG Review had no statistically significant impact on CoreCivic's stock price.  SUF Response ¶ 81.

The Yates Memo is a two-page memorandum dated August 18, 2016, from then-Deputy Attorney General Sally Yates to the Acting Director of the BOP.  SUF Response ¶ 76.  Citing the OIG Review, the Yates Memo stated that private prisons "do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, they do not maintain the same level of safety and security."  ECF No. 363-16 at 3.  The Yates Memo also described a decline in the federal prison population from "nearly 220,000 inmates in 2013 to fewer than 195,000 inmates today" and "rehabilitative services that the Bureau provides" but private prisons do not.  *Id.*  The Yates Memo stated that "[f]or all these reasons," Yates was "directing that, as each [private prison] contract reaches the end of its term, the Bureau should either decline to renew that contract or substantially reduce its scope in a manner consistent with law and the overall decline of the Bureau's inmate population."  *Id.* at 4.  The day the Yates Memo was released, CoreCivic's stock price decreased by 35.5%.  SUF Response ¶ 82.  The stock price of CoreCivic's only publicly traded competitor, GEO Group, decreased by 39.6%.  SUF Response ¶ 83.

### C.    Class Certification

At class certification, Plaintiff abandoned its original contention that the OIG Review was a corrective disclosure and argued instead that CoreCivic's August 3, 2016, announcement that the BOP had declined to renew a contract at CoreCivic's Cibola County Correctional Center ("Cibola") was a materialization of a concealed risk.  ECF No. 150 at 1 ("[T]he OIG Review [was not] a complete disclosure of the relevant truth."), 12 ("[T]he price decline resulting from the loss of the Cibola contract was a partial . . . disclosure of the fraud.").  The BOP informed CoreCivic that it declined to renew the Cibola contract on July 29, 2016.  SUF Response ¶ 72.  Multiple news

articles reported the non-renewal on August 1 and 2, 2016. SUF Response ¶ 73. And, as Plaintiff's economic expert W. Scott Dalrymple agrees, on August 2 and 3, 2016—following the market learning about Cibola's non-renewal—there was no statistically significant decrease in CoreCivic's stock price. SUF Response ¶¶ 77–78; *see* Dalrymple Dep. 91:24–92:24, ECF No. 340-1 ("On August 2nd and 3rd, there was not a statistically significant share price decline" even though "[t]he information that was known about the loss of the contract at that time was reflected in its share price on those days."). CoreCivic referenced the non-renewal in its second quarter Form 10-Q filed on August 4, 2016, which also disclosed CoreCivic's quarterly earnings and that a major contract with Immigration and Customs Enforcement ("ICE") was being renegotiated. SUF Response ¶ 74. Following release of the Form 10-Q, CoreCivic's share price dropped by 6.2%. SUF Response ¶ 79. Analysts covering CoreCivic stock attributed this drop in price primarily to the renegotiation with ICE. SUF Response ¶ 80.

In opposing class certification, Defendants argued that Plaintiff failed to establish that common issues would predominate over individual issues, as required under Federal Rule of Civil Procedure 23(b)(3). Plaintiff relied on the fraud-on-the-market presumption to meet its burden to show that the element of reliance was capable of class-wide determination, and Defendants argued that they rebutted that presumption by demonstrating that the challenged statements had no impact on CoreCivic's stock price. *See* ECF No. 98 at 8–9; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff. . . rebut[s] the presumption of reliance."). Defendants' price impact argument was straightforward: when the alleged misrepresentations were made, CoreCivic's stock price did not go up; when the alleged misrepresentations were corrected, CoreCivic's stock price did not go down; and the Yates Memo, which did precipitate a significant

stock drop, included no new "corrective" information that had not already been publicly disclosed. ECF No. 98 at 1–2. The Court originally denied Plaintiff's motion for class certification, holding that after the publication of the OIG Review, "[t]here was no concealed truth . . . for the Yates Memorandum to disclose." ECF No. 143 at 17. Plaintiff filed a motion for reconsideration arguing, for the first time, that the OIG Review was not a complete disclosure of the relevant truth. *Compare* ECF No. 150 at 7 (arguing, on reconsideration, that "the OIG Review could not have fully revealed the relevant truth") *with* ECF No. 121 at 17 (arguing, in its original class certification motion, that the "market did not immediately and fully understand the implications of the OIG Review's observations"). The Court granted Plaintiff's motion for reconsideration because it found that, based on the record then before the Court, it was not indisputable that all of the allegedly concealed information was publicly known before release of the Yates Memo, and therefore the Yates Memo could provide evidence of price impact. ECF No. 165 at 32–33.[1]

Since the Court's Order granting class certification, the parties have spent more than a year conducting discovery. Defendants produced over 400,000 documents and the BOP produced an additional 189,000 documents to Plaintiff. Grant Decl. ¶ 2. Plaintiff deposed CoreCivic witnesses for 102 hours, and the parties spent an additional 13 hours on the record deposing third party witnesses including BOP officials. Grant Decl. ¶ 3. The parties collectively retained five expert witnesses who prepared 447 pages worth of reports. Grant Decl. ¶ 4. And the parties exchanged hundreds of pages of written discovery, during which Plaintiff was compelled by Magistrate Judge Frensley to explain its latest theory of loss causation. *See* ECF No. 312 at 33–34 (requiring

---

[1] The Court noted that Plaintiff failed to raise these arguments in its original class certification motion but gave Plaintiff leeway because it was "seeking to represent a class [and] the rights of parties other than [Plaintiff] are at stake." ECF No. 165 at 16. "Refusing to consider a meritorious argument simply because [Plaintiff's] counsel failed to raise it earlier risks punishing unnamed parties who had no role in the earlier litigation decisions." *Id.*

6

Plaintiff to supplement its interrogatory responses because while "[Plaintiff] seemed certain that its expert report(s) would provide the additional information . . . , it seems that such is not the case."); Grant Decl. ¶ 5.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) allows Plaintiff to move for partial summary judgment on "an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P 56(a). For purposes of such a motion, any "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable" to Defendants, as the "party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only proper if Plaintiff can demonstrate "that there is no genuine dispute as to any material fact" to be resolved at trial. Fed. R. Civ. P. 56(a); *see also Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989); *Allan v. Penn. Higher Educ. Assistance Agency*, 968 F.3d 567, 570-71 (6th Cir. 2020) (moving party must demonstrate that "no reasonable trier of fact could find other than" in its favor on the element). If there is any evidence that "presents a sufficient disagreement to require submission to a jury," summary judgment is not warranted. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).

## IV.    ARGUMENT

To prevail on its Section 10(b) claims, Plaintiff must prove (among other things) that it relied upon Defendants' alleged misrepresentations. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263 (2014) ("*Halliburton II*"). To prove reliance, Plaintiff must show that "but for" Defendants' alleged misrepresentations, it would not have purchased CoreCivic stock. *See May v. Apricus Biosciences, Inc.*, No. 3:13-CV-00554, 2014 WL 4897938, at *9 (M.D. Tenn. Sept. 30, 2014), *aff'd*, 650 F. App'x 893 (6th Cir. 2016).

Plaintiff lacks direct evidence that it relied on any of the alleged misrepresentations. It

therefore seeks to invoke the rebuttable fraud-on-the-market presumption of reliance that the Supreme Court recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). The fraud-on-the-market presumption is based on the theory "that the market price of shares traded on well-developed markets reflects all publicly available information," and therefore "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.* at 246-47. To invoke this presumption, Plaintiff must initially prove "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that [CoreCivic's] stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268.

But the analysis does not end there: the fraud-on-the-market presumption is rebuttable, and a securities defendant is entitled to show there was no reliance in a particular case. Any showing by Defendants "that severs the link between the alleged misrepresentation and either" (1) "the price received (or paid) by" Plaintiff, or (2) Plaintiff's "decision to trade at a fair market price," will rebut the presumption. *Halliburton II*, 573 U.S. at 269; *see Basic*, 485 U.S. at 248. Defendants are entitled to rebut the presumption on a class-wide basis by, for example, showing that an alleged misrepresentation had no impact on CoreCivic's stock price. *Basic*, 485 U.S. at 248–49. Defendants are likewise entitled to rebut the presumption on an individual basis by showing that Plaintiff (or any other class member) chose to purchase CoreCivic securities for reasons unrelated to the integrity of the market price. *Id.* at 249; *Halliburton II*, 573 U.S. at 276.

Plaintiff suggests, erroneously, that Defendants can "defeat summary judgment ***only if***" they sufficiently show a genuine dispute of material fact regarding their ability to rebut the fraud-on-the-market presumption. Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, ECF No. 348 ("Mem."), at 6 (emphasis added). That is not the law. Because

Plaintiff bears the burden of proof at trial on the element of reliance, Plaintiff must establish that "there is no genuine dispute as to any material fact" regarding reliance to obtain summary judgment. Fed. R. Civ. P. 56(a). Plaintiff cannot meet this burden. *First*, Plaintiff concedes it cannot establish materiality as a matter of law, one of the prerequisites to invoke the fraud-on-the-market presumption of class-wide reliance. Mem. at 5. The analysis ends there, and Plaintiff's Motion should be denied. *Second*, even if Plaintiff were correct about Defendants' burden at summary judgment, there is evidence sufficient to give rise to genuine issues of material fact regarding whether Defendants can rebut the presumption, on a class-wide basis and as to Plaintiff individually. Summary judgment on the element of reliance is thus inappropriate.

### A. Plaintiff Concedes It Is Not Entitled to Summary Judgment on Materiality, a Necessary Requirement for Invoking the Fraud-on-the-Market Presumption

As Plaintiff acknowledges, it can avail itself of the fraud-on-the-market presumption only if it can establish that the alleged misrepresentations were "material" to purchasers of CoreCivic stock. Mem. at 4–5 (recognizing that materiality of the alleged misrepresentations is a prerequisite to invoking the presumption); *see Halliburton II*, 573 U.S. at 277–28 (identifying materiality as a core requirement for the *Basic* presumption, because if the alleged misrepresentations were immaterial, "then [they] could not have distorted the stock's market price" and the presumption collapses). Plaintiff also expressly concedes it cannot establish that Defendants' challenged statements were material as a matter of law. Plaintiff is unequivocal: "***With respect to the materiality of Defendants' misrepresentations, that issue will be decided separately by the jury***." Mem. at 5 (emphasis added).[2]

---

[2] Defendants disagree that the materiality issue must be decided by a jury, because, as explained in Defendants' motion for summary judgment, the undisputed factual record supports summary judgment in Defendants' favor on the element of materiality, which renders Plaintiff's motion for partial summary judgment on the element of reliance moot. ECF No. 367 at 12–19.

Plaintiff argues that there is no genuine dispute of material fact regarding the three other predicates needed to invoke the presumption: "(1) Defendants' alleged material misrepresentations were publicly known; (2) CCA securities traded in an efficient market during the Class Period; and (3) Plaintiff and members of the Class traded their CCA securities between the time of Defendants' misrepresentations and the disclosure of the truth." Mem. at 1 (footnotes omitted). Defendants agree, as to these three predicates. But three out of four is insufficient as a matter of law. Plaintiff cites no authority for the proposition that it can obtain summary judgment on the element of reliance while simultaneously conceding that it cannot establish a core factual predicate of that element.

Plaintiff advances an unpersuasive argument to avoid this straightforward conclusion. Plaintiff suggests that because materiality is also a separate element of its Section 10(b) claim, the jury simply can decide the issue of materiality in that context, rendering a separate finding of materiality to invoke the fraud-on-the-market presumption superfluous. *Id.* at 5. That ignores Plaintiff's burden under Rule 56 altogether. The fact that Plaintiff will need to prove materiality as a distinct element of its Section 10(b) claim *at trial* (if the Court does not grant summary judgment in favor of Defendants) does not mean it is somehow excused from establishing materiality in order to obtain *summary judgment* on the separate element of reliance. Summary judgment is not appropriate unless Plaintiff can establish that there are no material factual disputes over any of the four predicates for invoking the fraud-on-the-market presumption of reliance, and Plaintiff admits it cannot do so. *See Halliburton II*, 573 U.S. at 277–78; *Celotex*, 477 U.S. at 322–23.

Indeed, another district court in a securities fraud case rejected an identical argument that was advanced by the same counsel representing Plaintiff in this action. The court explained:

> The parties agree that materiality remains in dispute, with evidence
> supporting both sides. . . .  This dispute prevents the Court from
> entering summary judgment on the fraud-on-the-market
> presumption and, thus, the element of reliance for Plaintiff's 10b-5
> claim.  The Court isn't persuaded by Plaintiffs' argument that
> summary judgment on the reliance element is appropriate despite
> the parties' materiality dispute.  Plaintiffs rely on the notion that
> the test for fraud-on-the-market and the test for securities fraud under
> Rule 10b-5 overlap. . . .  This argument, though creative, doesn't
> address Rule 56's clear parameters for summary judgment.  If
> there's a genuine dispute of material fact—as there is here on
> materiality—the Court can't enter summary judgment. . . .  Because
> of the parties' genuine dispute about whether [defendant's]
> misstatements were material, the Court declines to enter summary
> judgment on the fraud-on-the-market presumption or the broader
> issue of Plaintiffs' reliance.

*Hsu v. Puma Biotechnology, Inc.*, No. SACV1500865AGJCGX, 2018 WL 4945703, at *5 (C.D. Cal. Oct. 5, 2018) ("*Puma I*").  So too, should this Court reject Plaintiff's attempt to end-run Rule 56.

Plaintiff's acknowledgment that it cannot show a lack of factual dispute as to materiality is hardly surprising.  If anything, the evidence makes clear that the alleged misstatements were *not* material to investors' decisions to buy CoreCivic stock.  *See* ECF No. 367 at 12–19.  To prove materiality, Plaintiff must show there is a "substantial likelihood" that omitted facts about discrete performance issues at three of CoreCivic's BOP facilities (out of the 64 to 85 facilities it operated during the class period) would have "significantly altered the 'total mix' of information made available" to the market regarding CoreCivic's quality, cost effectiveness, and contract renewals.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see* SUF Response ¶¶ 66, 68.  The record is replete with evidence that none of these issues significantly altered the total mix of information available regarding CoreCivic's performance or relationships with its government partners.  As explained in Defendants' motion for summary judgment, Defendants are entitled to summary judgment because Plaintiff cannot prove any materially false or misleading statement as a matter of law.  *See* ECF No. 367 at 12–19. If the Court disagrees with Defendants, however (and

does not grant summary judgment in Defendants' favor on some other element, such as scienter or loss causation), there will be genuine issues of disputed fact regarding materiality to be resolved at trial, as Plaintiff concedes. Plaintiff therefore cannot invoke the fraud-on-the-market presumption at this stage, and it is not entitled to summary judgment on reliance.

### B. There Are Genuine Disputes of Material Fact Regarding Whether Defendants Can Rebut the Presumption of Reliance

Because Plaintiff has not established all of the elements of the fraud-on-the-market presumption of reliance as a matter of law, the Court's analysis can and should end there. *Puma I*, 2018 WL 4945703, at *5 (denying summary judgment on the element of reliance and finding that because "Plaintiffs haven't established beyond dispute all elements of the fraud-on-the-market presumption, . . . the Court need not address whether Defendants have sufficient evidence to rebut that presumption at this time"). But even if Plaintiff could establish all four of the threshold requirements for invoking the fraud-on-the-market presumption, including materiality (which it concedes it cannot), Plaintiff would still not be entitled to summary judgment because Defendants are entitled to *rebut* that presumption on a class-wide and individual basis. *See Halliburton II*, 573 U.S. at 268–69; *Celotex*, 477 U.S. at 322–23. As to the former, the record is replete with evidence showing that Defendants' challenged statements did not impact the price of CoreCivic's stock at all. As to the latter, there is (at a minimum) a genuine dispute regarding whether Plaintiff relied on the integrity of the market price when trading in CoreCivic stock.

### 1. The Evidence Demonstrates the Absence of Price Impact

In its Motion, Plaintiff emphasizes its expert's finding that CoreCivic's stock traded in an efficient market. But just because a stock traded in an efficient market does not automatically entitle a plaintiff to rely on the fraud-on-the-market presumption. As Plaintiff acknowledges, Defendants may rebut the presumption on a class-wide basis with evidence that the alleged

misrepresentation, or its correction, did not affect the price of the stock. Mem. at 6.

To rebut the presumption of reliance on a class-wide basis, Defendants have evidence showing there was no price impact when the alleged misrepresentations were corrected and/or the allegedly concealed risks materialized. As Defendants argue in their motion for summary judgment, the information Plaintiff contends Defendants concealed was repeatedly disclosed during the Class Period to no price impact. ECF No. 367 at 24–26. For example, as Plaintiff's damages expert concedes, when news of Cibola's non-renewal reached the market on August 1, 2016, there was no immediate price impact. SUF Response ¶ 77; *see* Dalrymple Dep. 91:24–92:24, ECF No. 340-1. It was not until August 4, 2016, when CoreCivic released its quarterly earnings, that CoreCivic's share price declined, and Defendants have put forth evidence showing that analysts attributed that decline primarily to renegotiations with ICE. SUF Response ¶¶ 79–80. Similarly, when the OIG Review was published on August 11, 2016, there was no statistically significant change in CoreCivic's stock price. SUF Response ¶ 81. And the parties continue to dispute whether the August 18, 2016, Yates Memo was a materialization of a concealed risk or, conversely, if it was a political shift unrelated to CoreCivic's quality as an operator of detention facilities. *See* ECF No. 367 at 9 (noting that the Yates Memo "does not mention CoreCivic").

Plaintiff points to the Court's conclusion, at class certification, that CoreCivic had "failed to rebut the *Basic* presumption by demonstrating a lack of price impact," ECF No. 165 at 35, and then declares that "[n]othing in the record has changed since the Court certified the Class that could support a different result now." Mem. at 7. This is wrong. For one thing, the burden of proof has changed. To prevail at class certification, Plaintiff only had to show that the requirements of Rule 23, including common questions of law or fact, were met. *See Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003). To prevail on summary judgment, however, Plaintiff

must demonstrate that there are no genuine issues of material fact. Fed. R. Civ. P. 56(a). The Court's certification under Rule 23 does not *de facto* entitle Plaintiff to summary judgment under Rule 56 because the Court was not asked to (and did not) make the factual determinations essential to deciding summary judgment. *See* ECF No. 150 at 2, 16–17 (Plaintiff arguing that the Court could not consider the merits during class certification); ECF No. 165 at 1 n. 1 ("[N]one of the factual assertions relevant solely to the merits of [Plaintiff's] claims has yet been contested.").

Accepting Plaintiff's argument would improperly convert Rule 23 from a procedural rule designed to efficiently litigate large disputes into a determination of the parties' substantive rights with respect to securities fraud. But courts do not—and cannot—consider the merits of a case on class certification. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Nor is the Court's ruling on class certification somehow law of the case that precludes Defendants from attempting to rebut the fraud-on-the-market presumption at trial. *See, e.g.*, *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 17 (1st Cir. 2005) ("[A]pplication of the fraud-on-the-market presumption only establishes just that—a presumption of reliance. That reliance can be rebutted at trial."); *see also Burges v. Bancorpsouth, Inc.*, No. 3:14-CV-1564, 2017 WL 2772122, at *9 (M.D. Tenn. June 26, 2017) ("[T]he presumption of reliance [can] be rebutted at trial.").

More importantly, the Court's decision to certify the class occurred *more than a year* before the close of discovery. ECF No. 165, ECF No. 208. The reality is, plenty in the record "has changed" that "could support a different result" by a jury now. Mem. at 7. The BOP and CoreCivic collectively produced more than 500,000 documents, the parties have exchanged hundreds of pages of written discovery, CoreCivic employees have testified on the record for more than 100 hours, and expert witnesses have submitted reports and been deposed. Grant Decl. ¶¶ 2–5. None

of this evidence was available to Defendants (or the Court) at the class certification stage. And as Defendants argue in their motion for summary judgment, this discovery proves the absence of any price impact. ECF No. 367 at 24–26. Plaintiff's own theory of what was "corrective" (or not) has fundamentally shifted since the Court last considered the issue at class certification. And Plaintiff's expert (who is different than the expert Plaintiff proffered at class certification) rendered no analysis on the issue at all. Instead, and as explained at length in Defendants' Motion to Exclude W. Scott Dalrymple, Mr. Dalrymple simply *assumes* losses were caused by the alleged fraud, and then attempts to quantify those losses using inconsistent and unreliable methods that fail to account for relevant facts and allegations. ECF No. 339-1 at 17–24 ("Mr. Dalrymple *assumes* loss causation, and every other element of liability, and only attempts to estimate damages—a fact Mr. Dalrymple also acknowledged at his deposition."). In other words, Plaintiff's claim that nothing in the record has changed since class certification is not true with respect to even the evidence that *Plaintiff* intends to present at trial, let alone with respect to the evidence that *Defendants*, who are entitled to rebut the presumption, have since obtained.

## 2. The Evidence Demonstrates That Lead Plaintiff Did Not Rely On the Integrity of the Market Price When Trading Stock

Defendants are also entitled to rebut the presumption of reliance on an individualized basis. *See Basic*, 485 U.S. at 249; *see also Halliburton II*, 573 U.S. at 276 ("[A] defendant might . . . pick off the occasional class member . . . through [an] individualized rebuttal."). Defendants have more than enough evidence to create a genuine issue of material fact as to Plaintiff's individual reliance, which is yet another reason why Plaintiff is not entitled to summary judgment.

As set forth above, any showing that "severs the link" between the price received or paid by Plaintiff and its decision to trade at CoreCivic's market price is sufficient to rebut the presumption. *Halliburton II*, 573 U.S. at 269; *Basic*, 485 U.S. at 248. That link is unquestionably

severed where, as here, Plaintiff "would have transacted in [CoreCivic stock] regardless of what was known or not known about [CoreCivic] or its stock." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 99 (S.D.N.Y. 2013), *aff'd sub nom. GAMCO Investors, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214 (2d Cir. 2016). That is, the fraud-on-the-market presumption may be rebutted for investors, such as Plaintiff, that are "indifferent to" the alleged fraud. *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 466 (S.D.N.Y. 2016) (granting defendant's motion for summary judgment on reliance where investor was indifferent to alleged fraud); *see also GAMCO*, 927 F. Supp. 2d at 97, 101 (evidence that misrepresentation was irrelevant to plaintiff's decision to invest was sufficient to rebut presumption); *Hsu v. Puma Biotechnology, Inc.*, No. SACV1500865AGJCGX, 2019 WL 11637311, at *1 (C.D. Cal. May 22, 2019) ("*Puma II*") ("Defendants may rebut the presumption [of reliance] as to absent class members. And Defendants have a right to challenge reliance on an individualized basis.").

Here, Plaintiff was indifferent to the alleged fraud and would have purchased CoreCivic shares even if it had known of the allegedly omitted information or the concealed "risk" to CoreCivic's relationship with the BOP. Plaintiff testified that its only funds which owned CoreCivic stock during the Class Period were managed by an external advisor that employed quantitative trading strategies. SUF Response ¶ 47. After the alleged risk materialized and became known to the market, this advisor *continued to purchase CoreCivic's stock*, steadily increasing Plaintiff's position in CoreCivic quarter-after-quarter in the year following the supposed revelation of fraud. SUF Response ¶¶ 51–55. These repeated purchases make clear that the alleged misrepresentations at the heart of this case did not matter to Plaintiff at all, thereby severing any link between the alleged misrepresentations and Plaintiff's stock purchases and rebutting the fraud-on-the-market presumption as to Plaintiff itself. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*,

123 F. Supp. 3d 424, 436 (S.D.N.Y. 2015) (weighing post-disclosure investments in favor of rebutting the presumption at summary judgment); *In re World Access, Inc. Sec. Litig.*, 310 F. Supp. 2d 1281, 1300 (N.D. Ga. 2004) (granting summary judgment on reliance to defendants where plaintiff continued to purchase stock after corrective disclosure); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (finding "compelling reason to rebut the reliance presumption" based on plaintiff's post-corrective disclosure purchases). Defendants have the right to present this evidence at trial, from which a reasonable trier of fact could find that Defendants have rebutted the presumption as to Plaintiff.[3]

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to deny Plaintiff's motion for partial summary judgment.

DATED:  January 22, 2021                    Respectfully submitted:

                                            /s/ Steven A. Riley
                                            Steven A. Riley (TN #6258)
                                            Milton S. McGee, III (TN #024150)
                                            RILEY WARNOCK & JACOBSON, PLC
                                            1906 West End Avenue
                                            Nashville, TN 37203
                                            T: (615) 320-3700
                                            F: (615) 320-3737
                                            sriley@rwjplc.com
                                            tmcgee@rwjplc.com

---

[3] At the appropriate time, should Plaintiff otherwise succeed on the merits at trial, Defendants also have, and reserve, the right to seek similar evidence from absent class members. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 430–32 (7th Cir. 2015) (allowing defendants to conduct a second phase of discovery aimed specifically at rebutting the presumption of reliance for particular members of the plaintiff class); *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 463–67 (S.D.N.Y. 2016) (holding defendant successfully demonstrated, in a post-trial proceeding, that a large institutional investor "was indifferent to the fraud," and hence defendant "rebutted the *Basic* presumption of reliance with respect to the [institutional investor's] claims"); *Puma II*, 2019 WL 11637311, at *1 ("[T]he verdict doesn't settle the question of whether Defendants may rebut the presumption as to absent class members. And Defendants have a right to challenge reliance on an individualized basis.").

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Meryn C. N. Grant (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
meryn.grant@lw.com

Morgan E. Whitworth (admitted pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: (202) 637-2335
F: (415) 637-2201
sarah.tomkowiak@lw.com

*Attorneys for Defendants Corrections Corporation
of America, Damon T. Hininger, David M.
Garfinkle, Todd J. Mullenger, and Harley G.
Lappin*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union St. Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Jason A. Forge
ROBBINS GELLER RUDMAN
& DOWD LLP
655 W Broadway, Suite 1900
San Diego, CA 92101
jforge@rgrdlaw.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 S. La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery St, Suite 1800
San Francisco, CA 94104
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

Paul Kent Bramlett
Robert P. Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union St., Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Ave. of the Stars, Suite 1100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL &
ASSOCIATES, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Ave., Suite 601
Knoxville, TN 37902
cain@scottandcain.com

this 22nd day of January, 2021.

/s/ *Steven A. Riley*
Steven A. Riley