# EXHIBIT 104
# [Filed Under Seal]

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>               Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br>Magistrate Judge Jeffery S. Frensley<br><br><br>HARLEY LAPPIN'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES |

PROPOUNDING PARTY:      Amalgamated Bank, as Trustee for the LongView Collective Investment Fund

RESPONDING PARTY:        Harley G. Lappin

SET NUMBER:              One (Nos. 1-18)

Pursuant to Federal Rules of Civil Procedure 26 and 33, the applicable Local Rules of the United States District Court for the Middle District of Tennessee, and Administrative Order No. 174-1, Defendant Harley G. Lappin ("Mr. Lappin") by and through his undersigned counsel, hereby objects and responds to the First Set of Interrogatories to Defendants by Lead Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiffs") dated March 17, 2020 (the "Interrogatories").

## PRELIMINARY STATEMENT

The following responses are made in good faith after a preliminary inquiry within the timeframe provided. In responding to these Interrogatories, Mr. Lappin has not undertaken to search or review each and every file and record in the Company's possession, custody, or control, because to do so would be unduly burdensome, expensive, and not proportional to the needs of the case. Furthermore, the Interrogatories that ask Mr. Lappin to "[i]dentify all documents and communications that you relied upon" are unduly burdensome, expensive, and not proportional to the needs of the case. Defendants have produced hundreds of thousands of documents in this matter, totaling millions of pages, and the Interrogatories that ask Mr. Lappin to "[i]dentify all documents" requires a re-review of the entire production set. For these Interrogatories, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Lappin will specify the records that must be reviewed, in sufficient detail to allow Plaintiffs to locate and identify the documents requested.

Discovery, investigation, research, and analysis are ongoing in this case and may disclose the existence of additional facts, add meaning or interpretation to known facts or documents, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, and/or changes to these responses. Furthermore, these responses were prepared on Mr. Lappin's good faith interpretation and understanding of the definitions in the Interrogatories, and

are subject to correction for inadvertent errors or omissions, if any. Mr. Lappin reserves the right, but does not assume any obligation beyond the requirements of the Federal Rules, to amend or supplement the responses set forth herein if presently existing, different, or additional information is subsequently discovered. A full or partial response to an Interrogatory is not a waiver by Mr. Lappin of his right to object to any other part of the Interrogatory.

In objecting and responding to the Interrogatories, Mr. Lappin does not concede that any of the information provided is relevant, material, or admissible in evidence. No incidental or implied admissions are intended by the responses. Mr. Lappin reserves the right to challenge on evidentiary grounds any information provided in response to the Interrogatories.

Subject to the foregoing, Mr. Lappin responds as follows:

## OBJECTIONS TO INSTRUCTIONS

Mr. Lappin objects to Plaintiffs' Instruction Nos. 1 and 4 on the following bases:

1.      Mr. Lappin objects to Instruction No. 1 to the extent it seeks documents that are not within his possession, custody or control.

2.      Mr. Lappin objects to Instruction No. 4 as purporting to require disproportionate privilege logging beyond any applicable legal obligation. *See, e.g.*, Fed. R. Civ. P. 26; Admin Order No. 174-1, §8(b).

## OBJECTIONS TO DEFINITIONS

Mr. Lappin objects to Plaintiffs' Definition Nos. 2, 3, 6, 7, and 8 on the following bases:

1.      Mr. Lappin objects to Definition No. 2 "BOP" as overly broad, unduly burdensome, vague and ambiguous because the definition includes various unnamed persons and entities. Mr. Lappin will interpret the term "BOP facilities" herein to refer to Adams County Correctional Center, Cibola County Correctional Center, Eden Detention Center, McRae Correctional Facility, and Northeast Ohio Correctional Center.

2.      Mr. Lappin objects to Definition No. 3 "CCA" or the "Company" as overly broad, unduly burdensome, vague and ambiguous because the definition includes "any of its predecessors, successors, parents, subsidiaries, divisions or affiliates."  In responding to the Interrogatories, Mr. Lappin will interpret "CCA" or the "Company" as CoreCivic, Inc. and its current officers, directors, managers and employees and will respond using the terms "CoreCivic" or the "Company."

3.      Mr. Lappin objects to Definition No. 6 "Disciplinary Action" as vague, ambiguous, and overly broad in that it includes a "verbal reprimand."

4.      Mr. Lappin objects to Definition No. 7 "Identify" or "identifying" as overly broad, unduly burdensome and as purporting to impose requirements beyond those set forth in Fed. R. Civ. P. 33(d).

5.      Mr. Lappin objects to Definition No. 8 "Individual Defendants" as overly broad, unduly burdensome, vague and ambiguous because it includes "their agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on their behalf."  In responding to the Interrogatories, Mr. Lappin will interpret "Individual Defendants" as Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger and Harley G. Lappin.

## RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period that CCA provided quality corrections services; high standards of quality; high quality operations; "high-quality, safe

and secure facilities"; or high-quality services to the BOP.

## RESPONSE TO INTERROGATORY NO. 1:

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories.  Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case.  Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory.  Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Lappin responds as follows:  In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made.

## INTERROGATORY NO. 2:

Identify all documents and communications that you relied upon at the time of any direct or indirect representation by you or CCA to investors during the Class Period in SEC filings or investor presentations that CCA had earned the confidence of the BOP as result of its operational

excellence.

**RESPONSE TO INTERROGATORY NO. 2:**

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made.

**INTERROGATORY NO. 3:**

Identify all documents and communications that you relied upon for any direct or indirect representation by you or CCA to investors during the Class Period, in SEC filings or during investor presentations that partnering with CCA to provide correctional services resulted in improvements to the quality of corrections services provided to BOP inmates.

**RESPONSE TO INTERROGATORY NO. 3:**

Mr. Lappin objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Mr. Lappin further objects on the basis that "indirect representations" are not challenged in the Consolidated Complaint or identified in the Interrogatory. Finally, Mr. Lappin objects to the extent that the Interrogatory mischaracterizes the Company's public statements.

Subject to and without waiving any objections, Mr. Lappin responds as follows: In purportedly making the only alleged false or misleading statement(s) attributed to him in the Consolidated Complaint, *i.e.*, statement(s) in the October 2, 2013 "Analyst Day" presentation (as alleged in paragraphs 149-154 of the Consolidated Complaint), Mr. Lappin relied upon, among other things, decades of experience in the private and public corrections industry (including, but not limited to, extensive employment experience with the BOP), regular communications with the BOP, oversight of the Company's operations of corrections services during the Class Period, and feedback he received from various accreditation agencies as well as CoreCivic employees who directly or indirectly reported to him at the time the statement(s) at issue were purportedly made.

**INTERROGATORY NO. 4:**

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that:

> We believe our renewal rate on existing contracts remains high as a result of a variety of reasons including, but not limited to, the constrained supply of available beds within the U.S. correctional system, our ownership of the majority of the beds we operate, and the quality of our operations.

**RESPONSE TO INTERROGATORY NO. 4:**

Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that this Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 4, but he believes the statement identified in Interrogatory No. 4 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3.

**INTERROGATORY NO. 5:**

Identify all documents and communications that you relied upon for CCA's representations in its SEC filings during the Class Period that: "We operate our facilities in accordance with both company and facility-specific policies and procedures."

**RESPONSE TO INTERROGATORY NO. 5:**

Mr. Lappin objects on the basis that the statements listed in this Interrogatory are not attributed to him in the Consolidated Complaint. Mr. Lappin further objects on the basis that the Interrogatory is unduly burdensome because it is redundant of one or more other Interrogatories. Mr. Lappin further objects to the Interrogatory on the basis that identifying "all documents and communications that you relied upon" is unduly burdensome, expensive, and not proportional to

the needs of the case. Finally, Mr. Lappin objects to this Interrogatory to the extent it seeks information pertaining to CoreCivic's operation of facilities other than the BOP facilities at issue in this lawsuit.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin did not make any statements in the Company's SEC filings during the Class Period, including the statement identified in Interrogatory No. 5, but he believes the statement identified in Interrogatory No. 5 to be true and accurate based upon the same facts identified as support for his answers to Interrogatory Nos. 1-3.

**INTERROGATORY NO. 6:**

Describe in detail all reasons for the loss of the Adams County Correctional Center contract with the BOP in or around 2019, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 6:**

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and thus is overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation. Finally, Mr. Lappin objects on the basis that the Interrogatory seeks information about an event that transpired more than a year after he retired from the Company.

**INTERROGATORY NO. 7:**

Describe in detail all reasons for the loss of the Cibola County Correctional Center contract with the BOP in or around 2016, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 7:**

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The BOP informed the Company on or around July 29, 2016 (*see* CORECIVIC_0031085), that the BOP did not exercise its option to renew the Cibola County Correctional Center contract on the following grounds: "This action is a result of market research, which included cost and other factors." *Id.*

**INTERROGATORY NO. 8:**

Describe in detail all reasons for the loss of the Eden Detention Center contract with the BOP in or around 2017, including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 8:**

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period, well beyond the August 18, 2016 Memorandum for the Acting Director of the Federal Bureau of Prisons titled Reducing our Use of Private Prisons, and is thus overbroad and unduly burdensome as it is not

relevant to the claims or defenses at issue in this litigation.

**INTERROGATORY NO. 9:**

Describe in detail all reasons for the loss of the Northeast Ohio Correctional Center contract in or around 2014 including any information conveyed by the BOP in any debriefing or otherwise as to the reasons for the loss.

**RESPONSE TO INTERROGATORY NO. 9:**

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The BOP informed the Company on or around December 29, 2014 (*see* CORECIVIC_0035976) that the BOP did not award Northeast Ohio with the CAR XV contract on the following grounds: "As the offeror's evaluated prices were assessed against the evaluation results of the Non-Price areas, it was determined that the proposal submitted by GEO was the best value to the Government." *Id.*

**INTERROGATORY NO. 10:**

Identify all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011 through December 31, 2016, inclusive.

**RESPONSE TO INTERROGATORY NO. 10:**

Mr. Lappin objects to this Interrogatory on the basis that it requests information outside of the Class Period and seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin has retired, and he does not have an independent recollection of "all bids or RFPs for contracts to provide correctional services with the BOP that CCA lost from January 1, 2011

10

through December 31, 2016, inclusive[.]" Therefore, Mr. Lappin believes that the Company would be the best source of responsive information.

**INTERROGATORY NO. 11:**

Describe in detail all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise.

**RESPONSE TO INTERROGATORY NO. 11:**

Mr. Lappin objects to this Interrogatory on the basis that it calls for speculation because the requested information should be sought from the BOP. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period and to the extent that is seeks information pertaining to CoreCivic's operations of facilities other than the BOP facilities at issue in this lawsuit and is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Lappin responds as follows: Mr. Lappin has retired, and he does not have an independent recollection of "all reasons why CCA was not awarded the contracts (as identified in response to Interrogatory No. 10) including those reasons conveyed by the BOP in any debriefing or otherwise[.]" Therefore, Mr. Lappin believes that the Company would be the best source of responsive information.

**INTERROGATORY NO. 12:**

Describe in detail any discipline received by you or anyone at CCA during the Class Period for the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP.

**RESPONSE TO INTERROGATORY NO. 12:**

Mr. Lappin objects to this Interrogatory on the basis that the term "discipline" and the

phrase "failure of CCA to provide contractual services to the BOP" are vague, ambiguous, overbroad, unduly burdensome, and not reasonably tailored to the claims or defenses at issue in this litigation. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of information or documents which are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving any objections, Mr. Lappin responds as follows: During the Class Period, to the extent the Company's policies or procedures were violated in a manner that required disciplinary action, Mr. Lappin believes that such action was appropriately taken. Mr. Lappin cannot recall a specific instance in which disciplinary action was taken solely and specifically because of "the failure of CCA to provide contractual services to the BOP in conformance with the terms of any CCA contract with the BOP" because of the passage of time, and because that is not how the Company's policies and procedures were written, interpreted, applied or documented. Mr. Lappin notes that he was never subjected to disciplinary action for "failure . . . to provide contractual services to the BOP[,]" either by the BOP or the Company.

**INTERROGATORY NO. 13:**

Identify all instances where CCA's trading window was closed for its executive officers subject to Section 16 of the Securities and Exchange Act of 1934 and for what period of time.

**RESPONSE TO INTERROGATORY NO. 13:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period and that the Consolidated Complaint contains no allegations, nor has the discovery record developed any evidence, of trading on the basis of material, non-public information; the Interrogatory is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Lappin responds as follows: During the Class Period, Mr. Lappin understands that the Company had extensive policies, procedures, and internal controls that ensured that Mr. Lappin's trading window was closed at the appropriate times. Mr. Lappin does not have an independent recollection of "all instances where CCA's trading window was closed for its executive officers subject to Section 16 of the Securities and Exchange Act of 1934 and for what period of time[.]" Therefore, Mr. Lappin believes that the Company would be the best source of responsive information.

**INTERROGATORY NO. 14:**

For all instances where CCA's trading window was closed (as identified in response to Interrogatory No. 13) describe in detail the reasons why, including identifying any material information that formed the basis for the closure of the trading window.

**RESPONSE TO INTERROGATORY NO. 14:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory on the basis that it requests information outside of the Class Period and that the Consolidated Complaint contains no allegations, nor has the discovery record developed any evidence, of trading on the basis of material, non-public information; the Interrogatory is thus overbroad and unduly burdensome as it is not relevant to the claims or defenses at issue in this litigation.

Subject to and without waiving any objections, Mr. Lappin responds as follows: During the Class Period, Mr. Lappin understands that the Company had extensive policies, procedures, and internal controls that ensured that Mr. Lappin's trading window was closed at the appropriate times. Mr. Lappin does not have an independent recollection of "all instances where CCA's trading window was closed (as identified in response to Interrogatory No. 13)," nor does he have a sufficient independent recollection to "describe in detail the reasons why, including identifying

any material information that formed the basis for the closure of the trading window." Therefore, Mr. Lappin believes that the Company would be the best source of responsive information.

**INTERROGATORY NO. 15:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the cure notice it received with respect to its Cibola facility on or about January 9, 2015, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 15:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Finally, Mr. Lappin objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The Company historically did not disclose detailed information regarding the aspect of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 16:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the significant findings it received from the BOP with respect to CCA's contract performance, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 16:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of

information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Finally, Mr. Lappin objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The Company historically did not disclose detailed information regarding the aspect of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 17:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the repeat deficiencies it received from the BOP with respect to CCA's contract performance, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 17:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Finally, Mr. Lappin objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The Company historically did not disclose detailed information regarding the aspect of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

**INTERROGATORY NO. 18:**

Describe in detail the reasons why CCA did not publicly disclose during the Class Period the amount of staffing vacancy-related fines issued against it by the BOP or the amount of staffing vacancy-related fines issued against it by all government partners, including all persons you relied on in deciding not to disclose such information.

**RESPONSE TO INTERROGATORY NO. 18:**

Mr. Lappin objects on the basis that this Interrogatory is more properly directed at the Company. Mr. Lappin further objects to this Interrogatory to the extent it seeks the disclosure of information which is protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Finally, Mr. Lappin objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving any objections, Mr. Lappin responds as follows: The Company historically did not disclose detailed information regarding the aspect of operational performance listed in this Interrogatory at a facility level. During the Class Period, CoreCivic operated between 62 and 85 facilities. The BOP facilities, individually and collectively, represented a relatively small fraction of the Company's business.

DATED: May 1, 2020                Respectfully submitted:

                                             */s/ Steven A. Riley*
                                             Steven A. Riley (TN #6258)
                                             Milton S. McGee, III (TN #024150)
  W. Russell Taber, III (TN #024741)
  RILEY WARNOCK & JACOBSON, PLC
  1906 West End. Ave.
  Nashville, TN 37203
  T: (615) 320-3700
  F: (615) 320-3737
  sriley@rwjplc.com
  tmcgee@rwjplc.com

David J. Schindler
Brian T. Glennon
LATHAM & WATKINS LLP
355 South Grand Ave.
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com

Morgan E. Whitworth
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T:  (415) 391-0600
F:  (415) 395-8095
morgan.whitworth@lw.com

*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 3:16-cv-02267 |
| Plaintiff, | Honorable Aleta A. Trauger<br>Magistrate Judge Jeffery S. Frensley |
| vs. | VERIFICATION FOR HARLEY LAPPIN RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES |
| CORRECTIONS CORPORATION OF AMERICA, et al., | |
| Defendants. | |

I, Harley G. Lappin, based upon my personal knowledge, verify under penalty of perjury that my Responses to Plaintiffs' First Set of Interrogatories as served on May 1, 2020 are true and correct.

Executed this 27 day of April 2020.

Harley G. Lappin

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2020, this notice was served by email on the following counsel for Plaintiff:

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)


ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
Lead Counsel for Plaintiff


BARRETT JOHNSTON MARTIN
& GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)
Local Counsel

/s/ Eleanor L. Eaton<br>
Eleanor L. Eaton