# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CORRECTIONS CORPORATION OF AMERICA, DAMON T. HINIGER, DAVID M. GARFINKLE, TODD J. MULLENGER, and HARLEY G. LAPPIN,** )<br>)<br>)<br>)<br>)<br>**Defendants.** ) | **Case No. 3:16-cv-2267**<br>**Judge Aleta A. Trauger** |

## MEMORANDUM & ORDER

Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated"), has filed a Motion to Preclude Defendants from Relying on an Advice of Counsel Defense (Doc. No. 265), to which CoreCivic, Inc.,[1] David M. Garfinkle, Damon T. Hininger, Harley G. Lappin, and Todd J. Mullenger have filed a Response (Doc. No. 289), and Amalgamated has filed a Reply (Doc. No. 300). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

### A. The Advice of Counsel Defense and this Litigation

This is a securities fraud class action based on allegations that CoreCivic and various of its high-ranking executives made false or misleading statements and omissions regarding facts material to CoreCivic's likelihood of continuing to do business with the federal Bureau of Prisons

---

[1] During this litigation, CoreCivic has also been frequently referred to by its old name, "CCA." The names are, for the purposes of this Memorandum, interchangeable.

("BOP"), leading to a significant loss in shareholder value when the BOP announced its decision to discontinue working with the company. Amalgamated is the lead plaintiff in this class action, and the various defendants, other than CoreCivic itself, are CoreCivic executives from the relevant period. At issue, with regard to this motion, is whether the defendants will be precluded from presenting certain facts or arguments at trial.

The Sixth Circuit has recognized that, for securities fraud claims requiring scienter, a defendant can, at least generally speaking, rely on an "advice of counsel defense"—effectively, an argument that the defendant did not act willfully or knowingly, because he was relying in good faith on the advice of attorneys. In order to do so, he must establish "(1) [that] full disclosure of all pertinent facts [was made] to counsel, and (2) [that the defendant acted in] good faith reliance on counsel's advice." *SEC v. Apostelos*, No. 1:15-CV-00699, 2019 WL 3944755, at *8 (S.D. Ohio Aug. 21, 2019) (citing *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994)). Reliance on an advice of counsel defense, however, carries a heavy price. Courts have uniformly held that "a party waives its attorney-client privilege by affirmatively injecting its attorney's advice into the case." *Amway Corp. v. Procter & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *2 (W.D. Mich. Apr. 3, 2001) (citing *Glemede Trust Co. v. Hutton*, 56 F.3d 476, 486–87 (3d Cir. 1995); *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) *Steelcase v. Haworth*, 954 F. Supp. 1195 (W.D. Mich. 1997)). Consistently with that principle, a party who wishes to assert a defense based on the advice of counsel also loses his right to assert privilege as a basis for withholding attorney-client communications that are relevant to that defense. *Id.*

As a result, if a party wishes to argue that he should not be held liable for fraud because he acted in good faith reliance on the advice of his attorneys, he must reveal his relevant communications with those attorneys—including, potentially, communications in which the

2

defendant, expecting to benefit from the typically nearly ironclad privilege associated with the attorney-client relationship, spoke with a level of candor about incriminating matters that he would not have used in ordinary communications. The choice between asserting privilege and pursuing an advice of counsel defense is, fundamentally, a strategic one, and it is up to any given defendant what choice it/he/she will make.

The parties agree that, throughout this litigation, the defendants have assured Amalgamated and the court that they do not intend to raise a defense based on the advice of counsel at trial, and both the parties and the court have acted in reliance on that assurance. As a result, the defendants have been permitted to assert attorney-client privilege to avoid producing potentially thousands of documents that would have been discoverable if privilege had been waived.

Attorney-client privilege has already been a vexing issue in this case and has given rise to substantial effort and expenditure in discovery. CoreCivic is a private prison operator, and, as a result, nearly every aspect of its business is rife with legal considerations. On one side of the business—the client side—CoreCivic makes bids to and contracts with government agencies, making it subject to all the legal responsibilities and oversight associated with the government contracting process. On the other side of CoreCivic's business—the operations side—CoreCivic stands in the shoes of governments and is responsible for the safety and well-being of thousands of incarcerated individuals, and it bears all of the legal obligations attendant to that responsibility. Finally, of course, CoreCivic, as a publicly traded company, must comply with the complex set of requirements imposed on it by modern securities law. It is, therefore, unsurprising that counsel plays a prominent role in CoreCivic's decisionmaking process and that, as a result, litigation challenging CoreCivic's actions and statements has raised difficult questions about the boundaries of attorney-client privilege. Although Amalgamated has aggressively challenged the defendants'

3

assertions of privilege—and has found some instances in which privilege was improperly asserted—this court has mostly upheld the defendants' attempts to withhold attorney-client materials. (*See* Doc. No. 381 (denying discovery sanctions).)

On August 10, 2020, Amalgamated filed a motion that it styled as a "Motion to Preclude Defendants from Relying on an Advice of Counsel Defense." (Doc. No. 265.) That title is something of a misnomer, given that the parties agree that the defendants will rely on no such defense. Amalgamated's motion is, rather, a request that the court impose a number of limitations on Amalgamated's presentation of its case at trial, in order to avoid what would be, in effect, a backdoor attempt to introduce a defense based on the advice of counsel in all but name. Specifically, Amalgamated asks the court to order that:

> 3. Defendants are precluded from asserting, or introducing evidence or testimony, or eliciting testimony from any witness, that any Defendant received, considered or relied on [the] CCA [General] Counsel's [O]ffice when determining what to disclose, and what not to disclose, to investors;
>
> 4. Defendants are precluded from asserting, or introducing evidence or testimony, or eliciting testimony from any witness, that any Defendant received, considered or relied on CCA's Disclosure Committee when determining what to disclose, and what not to disclose, to investors;
>
> 5. Defendants are precluded from asserting, or introducing evidence or testimony, or eliciting testimony from any witness, that any Defendant received, considered or relied on CCA's Audit or Risk Committees, or any departments or subsidiaries thereof on which Defendants purport to have relied, when determining what to disclose, and what not to disclose, to investors;
>
> 6. Defendants are precluded from asserting, or introducing evidence or testimony, or eliciting testimony from any witness, that any Defendant received, considered or relied on external counsel when determining what to disclose, and what not to disclose, to investors;
>
> 7. Defendants are precluded from asserting, or introducing evidence or testimony, or eliciting testimony from any witness, regarding the reasons for their stock transactions; and

> 8. Defendants are precluded from any assertion of the good faith defense to the extent such purported good faith relates to the advice of counsel.

(Doc. No. 265-1 at 1–2.)

**B. CoreCivic Committees at Issue**

Amalgamated's request addresses the admissibility of evidence regarding a number of particular internal bodies within CoreCivic's corporate structure. First is the Office of the General Counsel ("OGC"), the relevance of which to the issues raised by this motion is likely, for the most part, self-explanatory. OGC was CoreCivic's internal legal department and, as such, routinely engaged in privileged communications with CoreCivic employees and with outside counsel. Amalgamated, however, also cites a number of specific bodies within CoreCivic that either were associated with the OGC or involved the work of attorneys.

**1. Quality Assurance ("QA") Division.** The QA Division was a unit within CoreCivic that monitored quality at CoreCivic facilities. It reported directly to the OGC. (Doc. No. 267-1 at 101; Doc. No. 290-12 at 15–17.) CoreCivic Executive Vice President and Chief Corrections Officer Patrick Swindle described the QA Committee as "in our legal department." (Doc. No. 267-1 at 101.) The QA Division, however, also included "QA Teams," which, according to the defendants, were "almost entirely comprised of non-lawyers carrying out non-legal functions." (Doc. No. 289 at 2.) The defendants point out that they produced a large body of documents regarding QA activities, despite the formal internal relationship between the QA Teams and the OGC. (*Id.* at 15.)

**2. Disclosure Committee.** The Disclosure Committee was a committee, consisting of high-level executives from a number of departments, that oversaw CoreCivic's actual and potential mandatory disclosures under securities laws. (Doc. No. 267-1 at 73; Doc. No. 267-4 at 15.) At least some portions of the Disclosure Committee meetings were led by CoreCivic's General

5

Counsel. (Doc. No. 267-1 at 73; Doc. No. 290-12 at 251–52.) Former CoreCivic Chief Financial Officer Todd Mullenger testified that whether a disclosure would be made was determined by the "advice of counsel." When asked whether any factors other than advice of counsel went into the decision, he could not recall any. (Doc. No. 267-2 at 94–95.) In his deposition, CoreCivic Chief Executive Officer Damon Hininger conceded that it would be difficult to distinguish between which Disclosure Committee communications "directly involved the lawyers" and which did not. (Doc. No. 267-3 at 367–68.)

**3. Audit and Risk Committees.** Amalgamated provides limited information regarding its understanding of the role of these Committees, but it points to information from the defendants' document productions and assertions of privilege that confirms that attorneys, including the General Counsel, appear to have played roles in the business of these Committees. (*See* Doc. No. 266 at 19–20.) The defendants, however, state that no attorneys actually sat on these committees. (Doc. No. 289 at 2.)

## II. ANALYSIS

Before the court considers Amalgamated's specific requests, a preliminary observation is important—namely, that exclusion of evidence and argument is not the only tool available to the court for enforcing the defendants' waiver of an advice of counsel defense and, moreover, would almost certainly be insufficient, alone, for doing so. The idea that one could evaluate the wrongfulness of the statements in this case *without* considering the role of counsel is, to say the least, counter-intuitive. Indeed, if one were focused only on making a thorough accounting of what, if anything, went wrong with CoreCivic's statements regarding the BOP—without any regard for privilege—then the actions and statements of counsel would almost certainly be a siginificant focus. The only way for the court to guide a jury effectively around these issues is by instructing

6

the jury directly. In the view of the court, this is not an instance in which the court can simply rely on circumscribing the evidence to prevent the jury from opening a door that, despite its obvious relevance, the law forbids the jury from opening. The court's rulings on this motion, therefore, are not intended to be, and cannot be, the only ways that the court will act to prevent CoreCivic from improperly benefiting from a *de facto* advice of counsel defense.

That said, it is, without a doubt, true that the categories that Amalgamated has identified would include at least some evidence and argument that would be inappropriate for the defendants to present, in light of their decision to retain their attorney-client privilege. Under the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It would be especially problematic to allow a party to withhold certain communications and then assert a defense based on his supposed reliance on those communications; in such an instance, the party would not only be relying on materials that he failed to produce, but he would also be depriving the jury of the opportunity to compare his claims to the underlying communications themselves in order to judge the reasonableness of his reliance.

Amalgamated is, moreover, correct that such an outcome cannot be avoided *solely* by informing the jury that the defendant has formally disclaimed any reliance on an advice of counsel defense, if the defendants are nevertheless permitted to present evidence that counsel was consulted. The parties appear, at least broadly, to agree on two things: first, that at least some defendants are likely to argue, at trial, that they acted in good faith; and, second, that a detailed, unedited recounting of CoreCivic's internal processes for making statements and disclosures (or nondisclosures) would include evidence that counsel was consulted. When a defendant relies on

7

"consultations with counsel as a basis for its good faith," however, it "transform[s] the defense of good faith into a 'good faith reliance on counsel' defense,'" whether or not one uses that term or cites to the associated caselaw. *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 470 (E.D. Mich. 2008). An ordinary juror who is attempting to determine whether an executive making a statement was acting in good faith would be reasonable in giving weight to whether the executive consulted with attorneys beforehand, even if the juror has been warned that reliance on counsel's advice is not, in and of itself, a defense. Consulting with an attorney is evidence of a sound decisionmaking process. But if the defendants wished to take advantage of that evidence, they should have opened the communications themselves up to the scrutiny that litigation requires. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *Ross v. City of Memphis*, 423 F.3d 596, 604 (6th Cir. 2005) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). Amalgamated, therefore, is entitled to some safeguards to prevent the defendants from surreptitiously putting information in front of the jury that would support a positive inference in their favor based on their consultation with counsel. However, the restrictions that Amalgamated has requested are plainly overbroad.

Amalgamated argues that the wide exclusions that they have proposed are justified because, as the Southern District of New York has put it in another setting, it is "difficult to imagine that a good faith defense . . . raised by as large and as sophisticated [a corporation] . . . would not involve the advice of its legal department." *Xuedan Wang v. Hearst Corp.*, No. 12 CV 793 HB, 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012) (discussing the FLSA). In this context, though, it is possible—if not necessarily easy—to consider the question of good faith wholly apart from the issue of legal advice. As the parties appear to agree, the securities fraud claims in this case are ultimately about whether the defendants made statements or omissions that they knew, or should

8

have realized, were false or misleading. That is a question distinct from whether they made statements that they believed were legally permissible. A good faith defense can be pursued by comparing the defendants' statements with the truth and their own knowledge of the truth at the time they spoke. A case to that effect can be presented without ever going into the topic of whether the defendants' counsel told them, at the time, that the statements were, based on counsel's interpretation of the law, *true enough* to be lawful.

Accordingly, for example, the defendants' assertions of privilege provide no basis for, as Amalgamated has requested, precluding the defendants from offering *any* testimony "regarding the reasons for their stock transactions." Certainly, the defendants could not testify that they bought or sold stock on advice of counsel. But any reasons other than the advice of counsel would, if relevant to a material contested issue at trial and otherwise admissible, be an appropriate matter to present to the jury.

The most difficult issue identified by the parties is whether the defendants should be permitted to present evidence that materials, particularly disclosures, were reviewed by counsel, as long as the defendants do not introduce evidence of what counsel advised—for example, whether counsel approved a disclosure or did not—or whether defendants actually relied on that advice. The defendants identify a number of district court cases that allowed at least some limited version of such evidence to be presented in connection with securities fraud allegations. *See, e.g.*, *Smilovits v. First Solar, Inc.*, No. CV12-0555-PHX-DGC, 2019 WL 6698199, at \*2 (D. Ariz. Dec. 9, 2019); *Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 924 (S.D. Cal. 2019); *City of Pontiac Gen. Employees' Ret. Sys. v. Holley*, No. 5:17-CV-5053, 2018 WL 4183243, at \*4 (W.D. Ark. Mar. 29, 2018).

The cited cases, however, typically relied on detail-focused, case-specific issues and, in some instances, even acknowledged that the scope of excluded evidence might need to be expanded as more details were revealed. *See Smilovits*, 2019 WL 6698199, at *2 ("The Court must draw precise lines during trial, but its current view is that Defendants may present evidence that counsel reviewed corporate disclosures and stock-sale plans or attended meetings, but may not present evidence that counsel approved the disclosures or plans or that Defendants relied on what the lawyers said about the disclosures or plans."); *City of Pontiac*, 2018 WL 4183243, at *4 ("[A]lthough it may become evident at a later date that Wal-Mart's theory of the case implicates the advice of counsel or that Wal-Mart otherwise put the advice of counsel at issue, the Court is not convinced that the advice of counsel has been put at issue at this juncture."). Even when evidence of counsel's involvement was permitted in the cited cases, courts typically acknowledged the necessity of ensuring that the evidence was not presented in a way that would allow the defendants to, as one court put it, "leave the impression that the lawyers provided unqualified approval of all that Defendants did, without actually disclosing what the lawyers said or did not say and without affording Plaintiffs the opportunity to know, test, or address the actual communications." *Smilovits*, 2019 WL 6698199, at *2.

At least in the context of this case—which involves a line of business in which issues of legal compliance are so central that a reasonable juror would be likely to understandably assume that legal advice was heeded—the court does not see how the defendants could present evidence that counsel was involved in decisionmaking without implicitly suggesting that counsel approved the ultimate decisions. *See SEC v. Mapp*, No. 4:16-CV-00246, 2017 WL 8780604, at *2 (E.D. Tex. Dec. 4, 2017) ("[T]he jury could improperly infer that the mere presence of counsel is evidence that [the defendant] lacked any intent to defraud."). Moreover, since the defendants are not relying

10

on an advice of counsel defense, evidence of counsel's participation would not be relevant for any permissible purpose. The risk that the evidence would provide an improper benefit to the defendants would far outweigh any relevance. *See SEC v. Lek Sec. Corp.*, No. 17CV1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) ("[R]eferences to counsel's communications are not relevant in the absence of an advice-of-counsel defense and should be excluded as well pursuant to Rule 403, Fed. R. Evid."). The court, therefore, will require the defendants to present their case without informing the jury of counsel's involvement in the decisions at issue. That does not mean that the defendants cannot present evidence of CoreCivic's internal processes. They can, for example, put on evidence that CoreCivic had a Disclosure Committee that reviewed disclosures, and they can discuss information exchanged through that Committee. They simply cannot present evidence informing the jury that that Committee's involvement included legal review of the disclosures by attorneys.

The court will grant Amalgamated's motion, insofar as it seeks some formal preliminary guardrails concerning what can be presented at trial. The court, however, will seek to restrict the defendants more narrowly, so that relevant communications unrelated to an advice of counsel defense will remain admissible. For example, it is apparent that many communications made in the context of the Disclosure Committee were privileged, and it is likely that many of those communications—such as advice from the General Counsel and conclusions regarding the legality of statements or nondisclosures—would have little value outside of an advice of counsel defense and would be highly prejudicial if admitted otherwise. If, however, individual defendants received particular information from non-attorney personnel in the Disclosure Committee context, and that information was relevant to the defendant's factual—not legal—understanding of relevant underlying facts, then it may be appropriate for admission at trial. The court will attempt to limit

11

the testimony and argument regarding the Disclosure Committee and other committees accordingly, without preventing the defendants from presenting relevant evidence.

The court's reformulated version of the restrictions may leave more room for debate than the broad, bright-line rules that Amalgamated seeks, and the court is under no illusion that this Order will wholly prevent the necessity of considering this same issue, as it applies to specific pieces of testimony, again at trial. That, however, is simply a reflection of the unfortunate limitations of a court's ability to decide difficult, high-stakes admissibility issues in advance. The court will order the defendants' evidence and arguments to be limited as described below and will resolve any more specific questions at trial. And, while the parties, so far, have not been able to come to an agreement regarding a stipulation regarding the issue of advice of counsel, the court is hopeful that this ruling may assist them in reaching common ground. The court will, accordingly, order the parties to resume their discussions on the matter.

## II. CONCLUSION

For the foregoing reasons, Amalgamated's Motion to Preclude Defendants from Relying on an Advice of Counsel Defense (Doc. No. 265) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that (1) the defendants are precluded from asserting any affirmative defense that they relied on the advice of counsel; (2) the defendants, at trial, shall not assert, argue, introduce evidence or testimony, or elicit testimony from any witness that any defendant sought, received, considered, or relied on legal advice regarding statements, omissions, disclosures, nondisclosures, or any other actions relevant to Amalgamated's claims, whether from outside counsel, the CoreCivic Office of General Counsel or any division thereof, the Disclosure, Risk, or Audit Committee, or any other person, committee, or body; and (3) the defendants shall not be permitted to present evidence or testimony that counsel reviewed corporate disclosures or attended

12

meetings where corporate disclosures were discussed. The parties are **ORDERED** to make all reasonable efforts to reach an agreed stipulation consistent with this Memorandum regarding the extent of the defenses available to the defendants regarding good faith or lack of scienter, in light of the arguments waived by the defendants' assertions of privilege. The agreed stipulation may include language explaining that the lack of evidence that the defendants consulted with attorneys should not be construed as evidence that no such consultation occurred, but rather merely that the defendants have elected to exercise their rights to attorney-client privilege and that, therefore, any such consultations are, as a matter of law, outside the scope of facts that the jury may consider.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge