UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA., *et al.*,<br><br>*Defendants*. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>Magistrate Judge Jeffrey S. Frensley |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DONNA MELLENDICK**

## TABLE OF CONTENTS

                                                        **Page**

I. INTRODUCTION .................................................................................................1

II. ARGUMENT ........................................................................................................1

        A. Mellendick's Experience Does Not Support Her Expert Opinions .........................1

        B. Mellendick's Quality Opinion Is Not Based Upon Industry Standards..................2

        C. Mellendick Lacks Expertise To Render Her Contract Opinion..............................3

        D. Mellendick's Cost Opinion, Even As Reframed, Should Not Be Admitted............5

III. CONCLUSION.....................................................................................................5

## I. INTRODUCTION

Plaintiff's Opposition to Defendants' motion to exclude Mellendick argues the merits of its case, concocts ill-conceived motives for bringing the Motion, and grossly distorts evidence that is wholly irrelevant to Rule 702 or *Daubert*. But it does not carry Plaintiff's burden of showing that Mellendick's proffered testimony meets the standard of admissibility. Indeed, Plaintiff largely ignores Mellendick's three opinions, and instead rewrites each of them in an effort to somehow tether them to her personal experience in the corrections industry at the BOP. ECF No. 388 ("Opp."). Mellendick's proffered opinions, however, lack foundation as they are not supported by industry standards or her actual experience. Each opinion is unreliable and should not be admitted.

## II. ARGUMENT

### A. Mellendick's Experience Does Not Support Her Expert Opinions

Defendants do not, as Plaintiff suggests, take the position that Mellendick is "limited to expert testimony."[1] Opp. 8. Defendants take the opposite position: Mellendick is a lay witness, who may be allowed to testify to her personal opinions as a BOP employee based on her first-hand knowledge of CoreCivic's performance and the BOP's processes for assessing private prison operators. Rule 701.[2] Perhaps Plaintiff could have designated Mellendick as a percipient expert witness pursuant to Rule 26(a)(2)(C) if those were the only opinions they wanted her to provide. But unlike Defendants' percipient expert witnesses, who may provide opinions on subjects that fall within the realm of "expert" testimony by virtue of each witness's specific personal experience at the BOP and CoreCivic, ECF No. 384, Plaintiff asks Mellendick to testify to subjects (*e.g.*, contract awards and cost) that she has no experience with, and gained no expertise in, during her tenure at the BOP. Because Plaintiff designated Mellendick as an expert under Rule 26(a)(2)(B)

---

[1] On March 11, 2020, Plaintiff supplemented its Initial Disclosures with Mellendick and 23 other current and/or former BOP employees. Plaintiff deposed two of those individuals (not Mellendick) in their lay witness capacity. On August 7, 2020, Plaintiff designated Mellendick as an expert.

[2] Plaintiff poses several rhetorical questions about what "personal opinion" means. Opp. 8 n.5. Rule 701(a) provides the answer: "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the witness's perception."

and Mellendick produced a report, her opinions must be evaluated under the standards reserved for retained experts. Mellendick's opinions do not satisfy those standards. ECF 336-1 ("Mot.").

### B. Mellendick's Quality Opinion Is Not Based Upon Industry Standards

Mellendick's first opinion is: "the quality of CCA's performance in the majority of their BOP private prison contracts, for the timeframe of this case, was largely deficient, particularly with respect to their obligation to provide quality healthcare and a safe and secure environment to the inmate population." Ex. 1 at 22 ("Quality Opinion"). Plaintiff does not effectively refute in its Opposition that this opinion must be excluded as unreliable and unhelpful.

Rather than directly respond to Defendants' arguments about Mellendick's performance standard, "largely deficient," Mot. 9-14, Plaintiff retorts that Mellendick should not be disqualified for using the adverb "largely." Opp. 10. But the issue is that there is no industry accepted definition of "largely deficient," and Mellendick does not define it, explain how it modifies the BOP's "deficient" designation, or tie it to another known industry benchmark. Ex. 3 at 121:13-122:9 (testifying that "largely deficient" has no definition); *id.* 120:3-121:11 (conceding there is no quantitative benchmark for "largely deficient"); *see also TBL Collectibles, Inc.*, 285 F. Supp. 3d 1170, 1190 (D. Colo. 2018) (excluding expert opinion when the jury was capable of interpreting evidence).[3] Plaintiff also does not refute the other fundamental problem with the standard "largely deficient": it cannot be reconciled with the quality standards actually used by the BOP (based on the term "satisfactory") to assess whether CoreCivic's performance met contractual requirements. Mot. 11 (showing that "largely deficient" cannot mean "below satisfactory" because three out of five CoreCivic facilities were never "below satisfactory" levels during the Class Period).[4]

---

[3] Plaintiff claims that Defendants "fail[ed] to provide a meaningful description of the facts of [this] case[]," Opp. 13, but *TBL Collectibles* analyzed the admissibility of two experts and the passages that Plaintiff cites concern a different expert than the passages Defendants cited, *i.e., the wrong expert*. *Compare id.* (citing analysis of expert testimony of John Craver, attorney) *with* Mot. 8 (citing analysis of expert testimony of David Young, public adjuster).

[4] Defendants do not "complain[]" about Mellendick's honesty, so Plaintiff's soliloquy has no bearing on the Motion. Opp. 10-11. Plaintiff also argues that Defendants do not identify a methodology that Mellendick failed to employ, *id.* 14, but it is not *Defendants'* burden to do so. It is *Plaintiff's* burden to prove that Mellendick's opinions are reliable and should be admitted.

In an attempt to conflate the two experts, Plaintiff criticizes the methodology used by Defendants' expert, Dodrill, and argues that both parties can rely on cross-examination. Opp. 12. But unlike Mellendick, Dodrill measured CoreCivic's performance against actual standards used in the corrections industry. ECF 356-3 (Dodrill Report). Dodrill's methodology was not "completely made up by him." Opp. 12. Rather, he "analyzed how the Relevant Facilities measure against standards and requirements that are typically used to assess the quality of similar facilities. These include key contractual requirements, independent third-party evaluations and accreditations, and other federal, state, and local laws, regulations, codes, guidelines and policies." ECF 356-3 at 7. Mellendick, on the other hand, relied on what she called standards, but they are simply not used in the industry. Mot. 8-12. These fundamental flaws in Mellendick's opinions do not merely go to "weight." *See, e.g.*, *Neal v. Fort*, 2017 WL 455499, at *4 (M.D. Tenn. Jan. 20, 2017) (Trauger, J.) (rejecting defendant's argument that expert's flaws go to weight because "the absence of a methodology makes his testimony patently unreliable").

Finally, as Defendants showed and Mellendick conceded, the vast majority of her Quality Opinion is nothing more than an (incomplete) summary of evidence in chronological order. Mot. 13-14; Ex. 3 at 93:11-18, 94:8-10.[5] That is not an expert methodology. Plaintiff responds that this is like criticizing a "teacher for assembling an alphabetical class roll" based solely on student names, Opp. 10, but that only proves Defendants' point. Mellendick has no specialized knowledge that will assist the jurors here—they can organize evidence chronologically if they wish.

### C. Mellendick Lacks Expertise To Render Her Contract Opinion

Mellendick's second opinion is that "[t]he CAR XV awards in <u>late 2014</u> concretely determined the <u>BOP would not grant CCA a new contract based on their poor past performance</u>. However, in my opinion, the BOP <u>would have been reluctant to award a new contract to them, for</u>

---

[5] Plaintiff uses two pages of the Opposition to cite "Reliable Support for CCA's Failures and Deficiencies," but this discussion has no relevance to the Motion because Mellendick did not rely on any of the cited evidence to form her opinions. Mellendick testified that she did not consider *any* deposition testimony, *see* Ex. 3 at 17:13-16, and the email cited does not appear in Exhibit 1 to her Report, which lists all "Documents and Other Information Considered." Ex. 1.

3

this same reason, as far back as April 2013." Ex. 1 at 23 ("Contract Opinion"). But Mellendick has no personal experience upon which to base this opinion—she never worked in the Privatized Corrections Contracting Section, Ex. 1 at 1, or evaluated contract bids on the Technical Source Selection Evaluation Board or Source Selection Authority, Ex. 3 at 49:6-15, and has no expertise in the Federal Acquisition Regulations ("FAR") that govern the BOP's procurement process, *id*. 88:19-20 ("I'm not an expert on the FAR"). She is thus unqualified to give this opinion.

Plaintiff accuses Defendants of "reconstruct[ing]" this opinion, Opp. 14, but it is the other way around. The contrast between Mellendick's own words and Plaintiff's description of those words in the Opposition is striking. According to Plaintiff, the words underlined above mean that "Mellendick will be able to explain and show the jury the full range of time throughout which CCA's delivery of health services was just as deficient as it was in December 2014: April 2013 through the end of the Class Period in August 2016." *Id*. 15. By insisting that she has an opinion that is different than the opinion set forth in her Rule 26 disclosure (and explored in her deposition), Plaintiff seeks to reframe it as an opinion on the quality of CoreCivic's delivery of health services. But this just serves to make the point: Plaintiff cannot rebut the fact that Mellendick's opinion, as written by her, is without the needed support of personal experience. Because Mellendick had no role in evaluating competitive bids at the BOP, *see* Ex. 3 at 49:6-15 (testifying that she had no role "in selecting who won competitive procurements"), she lacks the experience necessary to offer her Contract Opinion. *See Berry v. City of Detroit*, 25 F.3d 1342, 1348-52 (6th Cir. 1994) (excluding expert in police practices who did not have specific experience in officer training from testifying that lack of discipline led to more use of force violations). Given this lack of foundation, it is unsurprising that Mellendick could not explain why she chose April 2013 as the date that the BOP became "reluctant" to award CoreCivic a new contract. Mot. 15-16. Plaintiff responds to this by simply changing Mellendick's opinion regarding April 2013 as the supposed start of the time period in which CoreCivic's delivery of health services was deficient. Opp. 15. But, that's not what Mellendick said. Plaintiff's attempt at misdirection also expands Mellendick's opinion beyond December 2014 through the end of the Class Period. *Id*. 15. Mellendick clearly testified

that she was **_not_** opining on the likelihood that CoreCivic would win a new contract **_at any point after December 2014._**  Ex. 3 at 149:16-150:10.  Plaintiff cannot change her opinion.

When it comes to Mellendick's actual Contract Opinion, Plaintiff concedes that "no expert is necessary" to come to the conclusion that Mellendick reaches.  *See* Opp. 15 (arguing that after CoreCivic lost the CAR XV bid in December 2014, "CCA had necessarily reached a point where it was unlikely to win a competitively bid BOP prison contract unless it improved.  *No expert is necessary to see that.*").  Either "no expert is necessary" and Mellendick's opinion is superfluous, or if expertise is needed, Mellendick does not have it and her opinion is unhelpful.  Mot. 17.

### D. Mellendick's Cost Opinion, Even As Reframed, Should Not Be Admitted

Plaintiff describes Mellendick's third opinion as an opinion on the "Disparity Between BOP Prisons and CCA's Prisons."  Opp. 15.  This is misleading.  Mellendick's opinion starts from her *premise* that there are "vast differences among the services" offered by the BOP and CoreCivic, and *concludes*: "it is my opinion it is impossible to make an apples-to-apples cost comparison. … Therefore, it would not be accurate to claim that contracting with CCA did and/or would save the BOP money."  Ex. 1 at 265 ("Cost Opinion").  Defendants showed that this opinion is *ipse dixit* because Mellendick did not attempt to make any cost comparisons. Mot. 17-18.  Plaintiff concedes this but asserts that only a person with Mellendick's experience would know the differences in services provided by private and BOP facilities.  Opp. 15-17.  Identifying such differences (the extent of Mellendick's expertise) is not a cost comparison, it is at most the first step in a reliable cost comparison (as academic scholars have done, but Mellendick has not).  *See* ECF No. 382.

Defendants also showed that Mellendick's Cost Opinion is improper because the jury must decide whether Defendants' claims of cost-savings were accurate, MTD Order 31, and Mellendick tells the jury what result to reach.  Mot. 19.  Instead of defending the opinion at issue, Plaintiff poses a hypothetical in which the expert opinion could permit a jury *to draw an inference as to* the ultimate issue, Opp. 18, but that is a far cry from telling the jury what result to reach.

### III. CONCLUSION

Defendants respectfully request that the Court exclude the testimony of Donna Mellendick.

DATED: February 19, 2021	Respectfully submitted:

  /s/ *Steven A. Riley*
Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #024150)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
sriley@rwjplc.com
tmcgee@rwjplc.com

David J. Schindler (admitted *pro hac vice*)
Brian T. Glennon (admitted *pro hac vice*)
Meryn C. N. Grant (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
T: (213) 485-1234
F: (213) 891-8763
david.schindler@lw.com
brian.glennon@lw.com
meryn.grant@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: (202) 637-2335
F: (415) 637-2201
sarah.tomkowiak@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: (415) 391-0600
F: (415) 395-8095
morgan.whitworth@lw.com

*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

# CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union St. Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Jason A. Forge
ROBBINS GELLER RUDMAN
& DOWD LLP
655 W Broadway, Suite 1900
San Diego, CA 92101
jforge@rgrdlaw.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery St, Suite 1800
San Francisco, CA 94104
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union St., Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 S. La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Ave. of the Stars, Suite 1100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

| | |
|---|---|
| James A. Holifield , Jr.<br>HOLIFIELD JANICH RACHAL &<br>ASSOCIATES, PLLC<br>11907 Kingston Pike,  Suite 201<br>Knoxville, TN 37934<br>aholifield@holifieldlaw.com<br><br>Mark H. Wildasin<br>FEDERAL BUREAU OF PRISONS<br>110 9th Avenue South, Suite A-961<br>Nashville, TN 37203<br>mark.wildasin@usdoj.gov | Christopher T. Cain<br>SCOTT & CAIN<br>550 W Main Ave., Suite 601<br>Knoxville, TN 37902<br>cain@scottandcain.com |

this 19th day of February, 2021.

                                                                                            /s/ *Steven A. Riley*
                                                                                            Steven A. Riley