# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>Magistrate Judge Jeffrey S. Frensley |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF SCOTT DALRYMPLE

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................1

    A.    Dalrymple's Yates Memo Inflation Estimate Is Unreliable ......................1

        **1.**    Dalrymple Primarily Claims Damages For Non-BOP Business ..................1

        **2.**    Dalrymple Fails to Account for Non-Fraud Causes of the Stock Drop ..................................................................................................3

    B.    Dalrymple's Cibola Non-Renewal Inflation Estimate Is Unreliable ........................4

    C.    Plaintiff Concedes Dalrymple Offers No Opinion On Loss Causation ...................5

## I. INTRODUCTION

Plaintiff offers Scott Dalrymple to measure damages purportedly caused by the foreseeable materialization of a risk from CoreCivic's allegedly deteriorating relationship with the BOP. But Dalrymple's damages opinion fails to use reliable principles and methods as applied to the facts of this case. He performs a simple subtraction exercise to claim that $6.62 of CoreCivic's stock price decline was fraud-related, but he offers no analysis of that number or how it is tied to Plaintiff's claims. He certainly provided no analysis that would explain how the risk of not obtaining future BOP contracts accounted for $6.62 of CoreCivic's stock price. Rather than assist the jurors, his testimony would only mislead them and invite them to speculate.

Next, despite conceding that Dalrymple does not have an opinion on loss causation, Plaintiff suggests his damages opinion might be "relevant" to causation. It is not. To the extent he comments on causation at all, he merely recites Plaintiff's allegations. Dalrymple's proffered testimony is not the product of the application of reliable principles and methods to the facts of this case. Defendants respectfully request that it be excluded.

## II. ARGUMENT

### A. Dalrymple's Yates Memo Inflation Estimate Is Unreliable

#### 1. Dalrymple Primarily Claims Damages For Non-BOP Business

Securities fraud damages are limited to those that "actually result from the materialization of" the alleged fraud. *In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017). Here, Plaintiff claims that Defendants fraudulently concealed "risks associated with [CoreCivic's] ***BOP contracts***," and agrees that the Yates Memo "only related to ***BOP contracts***," Opp. at 7 & n.8 (emphases added), so any claimed damages must as well. To reach his per-share inflation figure of $6.62, Dalrymple estimated the impact of the Yates Memo on CoreCivic's stock to be $8.06, then subtracted $1.44 from this amount—an offset that he says equates to the stock

price "value" of its BOP contracts and the amount the share price would have declined absent any fraud. ECF 340-4 ¶¶ 82–84 & n.123. The key flaw in Dalrymple's theory is not in his estimate of the Yates Memo's impact ($8.06) or the stock price "value" of CoreCivic's BOP contracts ($1.44); it is in his assumption, unsupported by any reliable analysis, that the remaining $6.62 price decline is all attributable to the risk that CoreCivic might not secure new BOP contracts. Mot. at 6–9.

Rather than address this debilitating flaw, Plaintiff claims that unspecified "principles of loss causation and proximate cause" permit Dalrymple to speculate that Defendants are liable for losses completely untethered from Plaintiff's BOP claims. Opp. at 6–7 & n.8. But Dalrymple offers no support for that argument, as he performed no analysis to connect his $6.62 inflation estimate to Plaintiff's BOP allegations. He conceded that "[s]ome portion of the $6.62 is attributable to the non-BOP customers," but he did not bother "calculat[ing] how much" (though he admitted he could have). ECF 340-1 at 134:4–24, 152:1–8. Even if one assumes that some of the post-Yates price decline related to a materialization of risk from a deteriorating relationship with the BOP, Dalrymple provides no discernible basis for claiming it is $6.62, or more than four times his own estimate of the value of the three remaining BOP facilities.[1] Plaintiff insists that Dalrymple's Yates Memo inflation estimates are "conservative" because he claims that only 82% of the maximum possible stock drop following the Yates Memo ($6.62 of $8.06), is attributable to fraud. Opp. at 3, 7 & n.7. But that misdirection does not remedy his failure to perform any analysis, reliable or otherwise, to support his conclusion that Plaintiff is entitled to damages of $6.62 per share for predominately non-BOP business neither implicated by the Yates Memo nor the fodder of Plaintiff's various allegations. Accordingly, Dalrymple did not reliably estimate the

---

[1] Defendants' objection to Dalrymple's methodology is to his failure to tether his damages model to the alleged fraud, Mot. at 6–9, not his "back casting" methodology, Opp. at 7–8. *See In re Nuveen Funds/City of Alameda Sec. Litig.*, 2011 WL 1842819, at *4–8 (N.D. Cal. May 16, 2011) (excluding expert who assumed "losses were caused by defendants' fraud" without "analysis").

inflation allegedly removed by the Yates Memo. *See Nuveen*, 2011 WL 1842819, at *4–8.

### 2.     Dalrymple Fails to Account for Non-Fraud Causes of the Stock Drop

Proving damages in a securities fraud case requires experts to isolate "the part of the price decline attributable to the dissipation of the fraud-induced inflation." *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 726 (11th Cir. 2012). That leaves Dalrymple with a GEO-sized problem: his damages methodology does not account for the fact that CoreCivic's stock price reaction to the Yates Memo was nearly identical to that of GEO, its only publicly traded competitor, even though he strenuously denies that GEO committed any fraud. ECF 340-2 ¶¶ 30–36; Mot. at 16. Dalrymple claims that considering GEO's price decline "would improperly subject the results [of his event study] to idiosyncratic and company-specific movements in GEO's stock price." Opp. at 16, n.18. But he does not say what those movements are, or why they are "idiosyncratic," and there is no evidence of any GEO-specific news the day the Yates Memo was released.[2] Plaintiff asserts that Dalrymple *did* account for GEO by controlling for "industry returns" in his event study. *Id*. at 15 n.16. Plaintiff is referencing the "broad market movements" Dalrymple controlled for using "market and industry" indices, *i.e.*, the performance of the S&P 500 and 400, and a real estate index. ECF 340-4 ¶ 46 & n.72. But Dalrymple conceded that he did not "control for GEO" because "that would not be appropriate," even though he agreed it was not "a coincidence" that GEO's stock dropped significantly after the release of the Yates Memo. ECF 340-1 at 200:13–202:18. Relying on index controls in an event study like Dalrymple's is insufficient to disaggregate non-fraud losses or reliably measure fraud-induced inflation where (as

---

[2] Plaintiff's argument about the PSLRA's 90-day lookback misses the point. Defendants do not contend, as Plaintiff suggests, "that damages should be reduced by increases in [CoreCivic's] stock price decline" after the 2016 presidential election. Opp. at 16. Defendants identify this event to show that non-fraud causes were clearly present in CoreCivic's stock price reaction to the Yates Memo, yet Dalrymple is claiming damages for them anyway.

3

here) specific non-fraud factors are likely driving down stock prices. *Hubbard*, 688 F.3d at 729.

Plaintiff speculates that "any number of reasons" could explain GEO's corollary price drop. Opp. at 15. But the fact that the Yates Memo had the same effect on both companies' stock, despite GEO and CoreCivic having (according to Dalrymple) very different relationships with the BOP (ECF 340-2 ¶¶ 30–36), only highlights the inescapable conclusion that CoreCivic's supposed fraud did not cause its stock drop. *See In re Williams Sec. Litig-WCG Subclass*, 558 F.3d 1130, 1135 (10th Cir. 2009) (excluding expert who did not "parse[] the effects" of fraud and non-fraud causes).

### B. Dalrymple's Cibola Non-Renewal Inflation Estimate Is Unreliable

Plaintiff does not meaningfully dispute that news of the Cibola non-renewal broke several days before CoreCivic's August 4, 2016 announcement to no statistically significant price reaction. Opp. at 8–9 & n.9. Instead, Plaintiff says "all 'news' from all sources is [not] instantly and completely reflected in a company's stock price." *Id.* at 8. This new and desperate argument contradicts the key assumption undergirding Plaintiff's theory of reliance: that markets incorporate "all publicly available information" "***quickly***." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (emphasis added). This Court agrees, ECF 165 at 19, 35, as does every economic expert who has testified in this case—including Dalrymple, ECF 340-4 ¶ 38; ECF 93-3 ¶ 36; ECF 340-5 ¶ 77. *See also* Mot. at 9–11. The August 1 and 2, 2016 articles announcing the Cibola non-renewal were released before CoreCivic's earnings announcement. They were available electronically, mentioned CoreCivic and Cibola by name, and were acknowledged by analysts. ECFs 363-4, 363-5; *see* ECF 340-5 ¶ 80. Even Dalrymple acknowledged that the articles were reflected in CoreCivic's stock price at the time of the August 4 announcement. ECF 340-1 at 91:24–92:24. Market absorption is incontestable under these circumstances, and Dalrymple's Cibola estimate is inadmissible because he "ignores the efficient market principle." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,

4

853 F Supp. 2d 181, 189–90 (D. Mass. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 274 (N.D. Tex. 2015) (finding market absorption under similar circumstances).[3]

### C. Plaintiff Concedes Dalrymple Offers No Opinion On Loss Causation

Plaintiff concedes Dalrymple has no opinion on loss causation, but argues that such an opinion is "improper for an expert to render" since it "resolve[s] an ultimate question of fact." Opp. at 17–18. Nonsense. Expert opinions on loss causation are routinely considered at summary judgment; indeed, courts often *require* such testimony. ECF 390 at 8 (citing cases).[4] None of Plaintiff's cited cases say otherwise.[5] Further, it is simply not true that Dalrymple "concluded" anything about whether Plaintiff's allegations "relate" to the purported materializations of risk. Opp. at 17. His "analysis" consisted of nothing more than regurgitating allegations and prior legal arguments based on what he "underst[ood] Plaintiff to allege" about the disclosures. ECF 340-4 ¶¶ 2, 10, 50-51, 70; ECF 340-1 at 81:11-15. Accordingly, to the extent he intends to offer any, Dalrymple's loss causation "opinions" would be "connected . . . only by [his] *ipse dixit*" and must be excluded as unreliable and unsupported. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

---

[3] Plaintiff fails to cite any precedent for Dalrymple's alternative method of calculating inflation for the Cibola non-renewal, *see Nuveen*, 2011 WL 1842819, at *4, and cannot reconcile the inconsistencies between his methods for the Cibola non-renewal and the Yates Memo. Dalrymple is happy to use CoreCivic's stock price change following the Yates Memo, when it maximizes potential damages. The lone case Plaintiff cites is inapt. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, 278 F. Supp. 3d 1128, 1132 (W.D. Ark. 2017) (plaintiff exclusively "present[ed] an alternative method for calculating damages" not based on the "market price").

[4] Plaintiff's previous economic expert agreed that expert testimony on loss causation is permitted. *See* ECF 120-1 ¶ 7. So do Plaintiff's counsel—when they can find experts willing to sponsor it. *See, e.g., Hsu v. Puma Biotechnology, Inc. et al.*, 2018 WL 4945703, at *10 (C.D. Cal. Oct. 5, 2018) (expert opined on whether disclosures were a "substantial cause" of stock price drop); *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 995 (D. Ariz. 2015) (expert opined that "the 'very facts' allegedly omitted by Defendants . . . led to a drop in stock price"); *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods.* Co., 827 F. Supp. 2d 559, 571 (D.S.C. 2011) (expert opined that the "alleged misrepresentations were a substantial cause of . . . stock price drops").

[5] Most of the cases have nothing to do with the securities laws, and thus do not address expert testimony on loss causation at all. Opp. at 11, 18 (citing cases concerning Section 1983, the Confrontation Clause, and the Federal Employers' Liability Act). The other two are pleading-stage decisions, meaning expert testimony was never considered. *Id.* at 18–19.

DATED: February 19, 2021		Respectfully submitted:

	/s/ *Steven A. Riley*
	Steven A. Riley (TN #6258)
	Milton S. McGee, III (TN #024150)
	RILEY WARNOCK & JACOBSON, PLC
	1906 West End Avenue
	Nashville, TN 37203
	T: (615) 320-3700
	F: (615) 320-3737
	sriley@rwjplc.com
	tmcgee@rwjplc.com

	David J. Schindler (admitted *pro hac vice*)
	Brian T. Glennon (admitted *pro hac vice*)
	Meryn C. N. Grant (admitted *pro hac vice*)
	LATHAM & WATKINS LLP
	355 South Grand Avenue, Suite 100
	Los Angeles, CA 90071
	T: (213) 485-1234
	F: (213) 891-8763
	david.schindler@lw.com
	brian.glennon@lw.com
	meryn.grant@lw.com

	Morgan E. Whitworth (admitted *pro hac vice*)
	LATHAM & WATKINS LLP
	505 Montgomery Street, Suite 2000
	San Francisco, CA 94111
	T: (415) 391-0600
	F: (415) 395-8095
	morgan.whitworth@lw.com

	Sarah A. Tomkowiak (admitted *pro hac vice*)
	LATHAM & WATKINS LLP
	555 Eleventh Street, NW, Suite 1000
	Washington, DC 20004-1304
	T: (202) 637-2335
	F: (415) 637-2201
	sarah.tomkowiak@lw.com

	*Attorneys for Defendants Corrections Corporation of America, Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin*

6

# CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon the following Filing Users through the Electronic Filing System:

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union St. Suite 900
Nashville, TN 37219
clyons@rgrdlaw.com
cwood@rgrdlaw.com

Jason A. Forge
ROBBINS GELLER RUDMAN
& DOWD LLP
655 W Broadway, Suite 1900
San Diego, CA 92101
jforge@rgrdlaw.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery St, Suite 1800
San Francisco, CA 94104
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN &
GARRISON, LLC
Bank of America Plaza
414 Union St., Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com

James A. Holifield , Jr.
HOLIFIELD JANICH RACHAL &
ASSOCIATES, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
aholifield@holifieldlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
POMERANTZ LLP
600 Third Ave., 20th Floor
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 S. La Salle St., Suite 3505
Chicago, IL 60603
pdahlstrom@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

Michael Goldberg
Brian Schall
GOLDBERG LAW PC
1999 Ave. of the Stars, Suite 1100
Los Angeles, CA 90067
michael@goldberglawpc.com
brian@goldberglawpc.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Ave., Suite 601
Knoxville, TN 37902
cain@scottandcain.com

Mark H. Wildasin
FEDERAL BUREAU OF PRISONS
110 9th Avenue South, Suite A-961
Nashville, TN 37203
mark.wildasin@usdoj.gov

this 19th day of February, 2021.

                                                        /s/ *Steven A. Riley*
                                                        Steven A. Riley