# EXHIBIT 166

1　　　IN THE UNITED STATES DISTRICT COURT
　　　FOR THE MIDDLE DISTRICT OF TENNESSEE
2
3
4　　NIKKI BOLLINGER GRAE, Individually
　　and Behalf of All Others Similarly
5　　Situated,
6　　　　　　　Plaintiff,
vs.　　　　　　　　CASE NO.
7　　　　　　　　　　3:16-CV-02267
　　CORRECTIONS CORPORATION OF
8　　AMERICA, et al.,
9　　　　　　　Defendants.
10
11
12　　　　　　　CONFIDENTIAL
13　　　VIDEO DEPOSITION OF WILLIAM DALIUS
14　　　　　　Nashville, Tennessee
15　　　　　　February 26, 2020
16
17
18
19
20
21
22　　Reported by:
23　　Elisabeth A. Miller Lorenz
24　　RMR, CRR, LCR No. 66
25　　Job No.: 10066903

1        IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
2
3
4     NIKKI BOLLINGER GRAE, Individually
      and Behalf of All Others Similarly
5     Situated,
6              Plaintiff,
vs.                    CASE NO.
7                         3:16-CV-02267
      CORRECTIONS CORPORATION OF
8     AMERICA, et al.,
9              Defendants.
10
11
12
13
14
15
16
17      Video deposition of WILLIAM DALIUS was taken
18   on behalf of Plaintiff, at Riley, Warnock &
19   Jacobson, 1906 West End Avenue, Nashville,
20   Tennessee, beginning at 9:39 a.m., and ending at
21   1:37 p.m., on Tuesday, February 26, 2020, before
22   Elisabeth A. Miller Lorenz, RMR, CRR, and LCR No.
23   66.
24
25

```
 1     APPEARANCES:
 2      For the Plaintiff:
 3         ROBBINS GELLER RUDMAN & DOWD
        BY:  WILLOW RADCLIFFE
 4         One Montgomery Street
        Suite 1800
 5         San Francisco, California 94104
        415.288.4545
 6         wradcliffe@rgrdlaw.com
 7         BY:  CHRISTOPHER H. LYONS
        414 Union Street
 8         Suite 900
        Nashville, Tennessee 37219
 9         615.252.3798
        clyons@rgrdlaw.com
10
11
      For the Defendants:
12
        RILEY, WARNOCK & JACOBSON
13         BY:  TREY McGEE
        1906 West End Avenue
14         Nashville, Tennessee 37203
        615.320.3700
15         tmcgee@rwjplc.com
16         LATHAM & WATKINS
        BY:  MORGAN E. WHITWORTH
17         505 Montgomery Street
        Suite 2000
18         San Francisco, California 94111-6538
        415.395.8011
19         morgan.whitworth@lw.com
20
21       Also Present:
22       David Drumel, Videographer
23
24
25
```

1  Latham & Watkins, on behalf of defendants and the
2  witness.
3          THE VIDEOGRAPHER: Thank you.
4          Will the court reporter please swear in
5  the witness.
6               * * *
7            WILLIAM DALIUS
8  was called as a witness, and after having been first
9  duly sworn, testified as follows:
10            E X A M I N A T I O N
11  BY MS. RADCLIFFE:
12  Q    Can you please spell your name for the
13  record?
14  A    William Dalius; W-I-L-L-I-A-M, D-A-L-I-U-S.
15  Q    And where do you presently reside?
16  A    In Nolensville, Tennessee.
17  Q    And have you been deposed before?
18  A    Yes, ma'am.
19  Q    How many times?
20  A    Several.
21  Q    When was the first time you were deposed?
22  A    I don't recall.
23  Q    What was the nature of the action if you
24  recall?
25  A    It was, geez, probably -- probably an EEO

1   say I'd be surprised that any correctional facility

2   would get a deficiency. It's the nature of the

3   business we're in.

4   BY MS. RADCLIFFE:

5   Q     Can you describe, if you recall, what a

6   significant deficiency would mean with respect to

7   contract performance?

8   A     Not specifically --

9              MR. McGEE: Calls for speculation.

10             THE WITNESS: Not specifically I don't.

11             MR. McGEE: Give me a second.

12  BY MS. RADCLIFFE:

13  Q     Do you know what a cure notice is?

14  A     I know basically what a cure notice is.

15  Q     And what's your recollection of what a cure

16  notice is?

17  A     So a cure notice would be something that

18  occurs -- there's -- there's been a problem or an

19  issue found, and you've got so many days to cure the

20  problem, or so many months, whatever it may be,

21  depending on the issue.

22  Q     Do you recall whether cure notices were

23  rare?

24  A     It would seem to me they'd be rare no matter

25  where you're at, at what facility.

1  Q    Do you know who had the responsibility for
2  issuing a cure notice?
3  A    My understanding would be it would be the
4  contracting officer, in cooperation with the
5  operations folks.  It's a -- the -- basically the
6  team effort.
7  Q    We discussed a little bit earlier
8  Northeast Ohio.
9       Are you aware that CCA lost that contract
10 with the BOP in approximately 2014?
11 A    I was aware of that.
12 Q    Do you know why?
13 A    My understanding was, it was predominantly a
14 cost issue and the dual population issue.  That was
15 a dual population with BOP and marshals.
16 Q    And where did you learn that information
17 from?
18 A    Procurement staff.
19 Q    Are you aware of any other reasons --
20 A    No.
21 Q    -- the procurement staff indicated that
22 Northeast Ohio lost that contract?
23 A    No, ma'am.
24 Q    Would they be the individuals in the best
25 position to know why the Northeast Ohio contract had

1  been lost?
2  A   They would have had us sign off on it, so
3  they would have been a part of the process, with the
4  operations folks.  But they would actually have to
5  sign it, the procurement people.
6  Q   So the procurement staff and the operations
7  folks, they would be the individuals in the best
8  position to know why CCA had lost any contract; is
9  that fair to say?
10         MR. McGEE:  Objection, calls for
11  speculation.
12         THE WITNESS:  I would guess so.  I
13  don't know precisely, but -- because I didn't sign
14  any of the documents.
15  BY MS. RADCLIFFE:
16  Q   But the procurement staff would have been
17  the individuals who signed off on those documents,
18  correct?
19  A   That's my understanding.
20  Q   In 2016, do you recall that the population
21  at McRae was reduced?
22  A   Not directly, I don't recall that.
23  Q   Do you recall in 2017, while you were at
24  CCA, that the Eden facility was closed?
25  A   I was aware of that.

```
 1              I, the undersigned, a Licensed Court
 2   Reporter of the State of Tennessee, do hereby
 3   certify:
 4              That the foregoing proceedings were
 5   taken before me at the time and place herein set
 6   forth; that any witnesses in the foregoing
 7   proceedings, prior to testifying, were duly sworn;
 8   that a record of the proceedings was made by me
 9   using machine shorthand, which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is a true record of the testimony given.
12              Further, that if the foregoing pertains
13   to the original transcript of a deposition in a
14   federal case, before completion of the proceedings,
15   review of the transcript was requested.
16              I further certify I am neither
17   financially interested in the action nor a relative
18   or employee of any attorney or party to this action.
19              IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: March 11, 2020
22              [signature: Elisabeth A. Miller Lorenz]
23              _____
24              Elisabeth A. Miller Lorenz
25              RMR, CRR, LCR No. 66
```