UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>     Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JUSTIN MARLOWE<br><br>**[FILED UNDER SEAL]** |

  Defendants impermissibly seek to tell the jury that their statements to investors were reasonable using their purported expert Marlowe as a proxy for actual evidence.[1] The proffer of Marlowe as an expert is a thinly disguised effort to substitute his "opinions" for actual evidence to improperly influence the jury on an ultimate issue – did Defendants have a reasonable basis for their statements. But Marlowe is not an expert in anything pertinent to the "opinions" he offers and his testimony will be unhelpful to the jury. Defendants admit he has no experience with prisons or analyzing cost comparisons for prisons. Nor are his "opinions" grounded in reliable data or rigorous methodology; they are merely a story Defendants want jurors to believe because it is narrated by an "expert." "[Marlowe] does not analyze the facts; []he . . . regurgitates them and reaches conclusory opinions that are purportedly based on these facts. These facts should be presented to the jury directly; [the expert] assumes the role of [Defendants'] advocate in h[is] presentation of the facts and invades the province of the jury." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346

---

[1] All terms not defined herein have the same meaning as in Plaintiff's motion (ECF No. 358) ("Motion" or "Mot"). All "Ex. _" citations herein are to the Declaration of Willow E. Radcliffe (ECF No. 359) (Exhibits 1-12) previously filed with the Court and the Declaration of Willow E. Radcliffe filed concurrently herewith (Exhibit 13).

- 1 -

(S.D. Fla. 2010). Defendants have not met their burden of demonstrating Marlowe's admissibility and he should be excluded.

## I. Marlowe's "Opinions" Are Not Grounded in Any Expertise

Defendants have not met their burden of establishing Marlowe is qualified for the "opinions" he offers. Fed. R. Evid. 702. He is likely qualified to be an expert in something but he is not qualified as an expert for his "opinions" in this case. Marlowe concedes no experience with prisons generally, the BOP or private prisons so he is not testifying based on his experience. ECF No. 382 ("Opposition" or "Opp.") at 2.[2] More importantly, his testimony is unreliable because he did not perform any actual cost comparisons. *Compare id.* ("Marlowe did not seek to perform his own cost comparison"), *with e.g.*, *Lockridge v. Scripto-Tokai Corp*, 2005 U.S. Dist. LEXIS 47962, at *23 (M.D. Tenn. Mar. 17, 2005) (failing to "conduct any tests to validate his central hypothesis" grounds for exclusion). His experience in "comparing the costs of public or private service delivery models" does not qualify him as an expert for this case because he did not perform any such analysis. Opp. at 10.

According to Defendants, Marlowe is proffered as an expert to "understand [CCA's] methodology for cost comparison[s]." Opp. at 1. No matter how Defendants dress up his opinions, CCA's actual cost-comparison methodology (if one even exists) is fact-based testimony that CCA did not bother to produce or seek out during fact discovery. The opinion purportedly proffered is

---

[2] General industry experience alone does not qualify him to testify on the reasonableness of Defendants' cost comparisons of private prisons and the BOP – an area he and Defendants admit is highly complex. Opp. at 6 ("complex endeavor"); Ex. 1, ¶21 at 10 ("given the complexity in measuring and comparing costs"); *see also Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479 (6th Cir. 2008) (mechanic with expertise in "analyzing an automobile after an accident," was excluded where the issue "pertained to accident reconstruction."); *Berlin, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 536 (D. Md. 2002) (experience in newspaper publishing did not qualify an expert to opine regarding the relevant market was community newspapers).

also unsupported, given that Marlowe relies on, for example, an internal 2011 draft CCA document for support for what is purportedly CCA's "methodology." Mtn. at 8-9; *see also* Ex. 7.

## II. Marlowe's Unsupported Testimony Lacks Any Reliable Methodology and Will Not Assist the Trier of Fact

Defendants' Opposition highlights that Marlowe's opinions are unsupported by any reliable methodology or facts. The flaws with Marlowe's proffered testimony do not go to the weight of his opinions, they preclude their admissibility. "If everyone knows [a specific fact or statement], then [the court] do[es] not need an expert because the testimony will not 'assist the trier of fact.'" *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994)[3]; *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (noting that an "'expert must testify to something more than what is "obvious to the layperson" in order to be of any particular assistance to the [fact finder]'").

The jury will be tasked with determining whether Defendants materially misled investors and instructed that in doing so, the question to be answered is whether the statements and omissions at issue were materially misleading to a reasonable investor given the evidence. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). Thus, the relevant issue is whether, based on the reasonable investor standard, Defendants materially misled investors when they repeatedly touted CCA's business model as providing higher quality prison services while offering cost-savings, and discussing their relationship with the BOP. There were no "experts" provided to investors on the meaning of "terms of art" when CCA promised the market that CCA offered operational savings, was cost-effective or provided value, and none should be permitted now to influence a jury as to what Defendants really "meant" when they made their representations.

A review of Marlowe's opinions shows precisely why they should be precluded. First, Marlowe isolated certain phrases "within . . . challenged statements." Opp. at 5. A jury will be

---

[3] All citations and footnotes omitted unless otherwise indicated.

charged with finding whether statements – read in context along with CCA's promises of quality services – were materially false and misleading, and jurors are competent to review the challenged statements themselves; they don't need confusing cherry-picked summaries.[4] Defendants can provide fact testimony as to the various footnotes in their presentations that Marlowe claims are the source of CCA's cost-comparison statements but, again, a jury is equally as capable of reading the footnotes as Marlowe. They are also equally as qualified to review whether the assumptions CCA used in any cost-comparison methodology were sufficiently disclosed as to render their statements not misleading.

Second, Marlowe referenced certain cost-accounting guidelines and summarized certain "academic literature comparing costs of public and private prison operators" and evaluated the statements he had isolated. Opp. at 5-6. Again, he admittedly did not undertake his own cost comparison. *Id*. at 2.[5] This overview and evaluation is irrelevant given that he does not know what CCA's internal cost-comparison methodologies actually were. Ex. 2 at 124:8-126:4.[6] Rather, he simply relied on what CCA "disclosed" in its statements. Ex. 1, ¶¶31-32. Defendants claim that Marlowe "evaluated the cost comparisons performed, and resulting statements made, by [CCA], akin

---

[4] The challenged statements are not as Defendants mischaracterize them in their summary judgment papers but as Plaintiff spelled out for them in their interrogatory responses when asked. Ex. 3 at 7-144. For example, part of the context of CCA's October 2, 2013 presentation to investors was the promise that CCA delivered "'[o]ngoing operational cost savings without the loss of operational quality.'" *Id.* at 33.

[5] This is likely because there is no reliable methodology to compare costs and the data does not exist to do so. Mtn. at 7.

[6] Marlowe cites to the testimony of William ("Bill") Dalius for the proposition that "[t]o draw comparisons between the BOP's operating costs and its per diem, [CCA] used its own publicly disclosed data and the data publicly released by the BOP" (Ex. 1, ¶33 n. 63) but Dalius did not perform any cost comparisons for CCA during the Class Period (Ex. 13 at 90:13-93:21 (discussing August 20, 2016 e-mail regarding cost comparisons between the BOP and CCA and testifying he did not recall performing such analysis); *id.* at 95:14-19 (testifying he did not perform any analysis with respect to modeling the cost comparisons between the BOP and CCA other than what he had done at the BOP).

to a peer review of a third party's work." Opp. at 15. But, this "evaluation" amounts to nothing more than reviewing snippets of Defendants' representations and cross-checking the existence of the cited "sources" which is a task a jury is equally competent to perform. For example, a jury does not need an expert to tell it that Defendants claimed their representations were supported by a "'Temple University Study'" – putting aside the fact that the referenced "'Temple University Study'" was a CCA-manufactured piece of fiction disavowed by Temple. *Compare* Ex. 1, ¶31, *with* ECF No. 396 at 22 and ECF No. 397 at Plaintiff's Response Nos. 159-166. Further, a "peer review" of Defendants' cost-comparison statements is simply another way of Defendants trying to impermissibly use their expert to narrate a story without any factual foundation.

Marlowe also cannot assist jurors in "the calculations" to analyze CCA's statements because the calculations are irrelevant to Plaintiff's theory of the case. Opp. at 20. What Plaintiff contends is misleading was Defendants' failure to disclose systemic performance issues that negatively impacted CCA's relationship with the BOP and that CCA was not delivering on its value proposition. ECF No. 396 at 18. That the BOP's published per diem rates may be higher than the contracted prices per inmate that CCA calculated is irrelevant and fact-based testimony; it requires no expertise.

Third, Marlowe opines that CCA "'acknowledged and identified that its claims about cost savings were based on certain assumptions about how to define and measure cost effectiveness or cost savings' and '[t]hese assumptions were clearly articulated.'" Opp at 7. Again, no expertise is required for a jury to read the challenged statements and any purported disclosure of assumptions CCA used when Defendants spoke to investors to determine whether the challenged statements were materially misleading.

Fourth, Marlowe opines on the meaning of terms as "used and understood in the academic literature." Opp. at 8. This testimony is irrelevant because the question for a jury will be whether a

- 5 -

reasonable investor was misled when CCA claimed "cost savings" or "cost effectiveness," and investors are entitled to rely on Defendants' representations without surveying the academic literature to ascertain that what Defendants might have meant is different than the picture that they painted when they spoke.

### III. Conclusion

Marlowe should not be permitted to serve as CCA's mouthpiece as to the reasonableness of their actions based on stringing along "facts" that were not developed as part of the record in this case and should be excluded.

DATED: February 19, 2021 Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK

s/ Willow E Radcliffe
WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 19, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: willowr@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`