UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>       Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................2

    A. There Is No Dispute that Plaintiff Must Prove Materiality......................2

    B. Defendants Have Failed to Identify a Genuine Dispute of Material Fact Regarding Price Impact.............................................................................3

    C. There Is No Evidence to Suggest that Plaintiff Did Not Rely on Integrity of the Market Price When Buying Its CCA Stock.....................................6

    D. Defendants Have Failed to Identify a Basis for Post-Trial Discovery of Absent Class Members ...........................................................................10

III. CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

**Page**

<mark>**CASES**</mark>

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................................. 1, 2, 3, 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) .................................................................................................. 2, 4, 6, 7

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
   2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ................................................................. 2

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) .................................................................................. 7

*In re K-V Pharm. Co. Sec. Litig.*,
   2012 WL 1570118 (E.D. Mo. May 3, 2012) ................................................................. 9

*In re Safeguard Scis.*,
   216 F.R.D. 577 (E.D. Pa. 2003) .................................................................................... 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
   123 F. Supp. 3d 424 (S.D.N.Y. 2015) ......................................................................... 8, 9

*In re World Access, Inc.*,
   310 F. Supp. 2d 1281 (N.D. Ga. 2004) ......................................................................... 9

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   2012 WL 4343223 (N.D. Ill. Sept. 21, 2012) ............................................................... 7

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
   332 F.R.D. 556 (M.D. Tenn. 2019),
   *order clarified*, 334 F.R.D. 118 (M.D. Tenn. 2019),
   *and leave to appeal denied sub nom. In re Cmty. Health Sys., Inc.*,
   2019 WL 5549319 (6th Cir. Oct. 23, 2019) .................................................................. 9

*PSC Indus., Inc. v. Johnson*,
   2020 WL 6365516 (M.D. Tenn. Aug. 12, 2020) ........................................................... 2

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019) ........................................................................................ 9

*Rosen v. Textron, Inc.*,
   369 F. Supp. 2d 204 (D.R.I. 2005) ................................................................................ 9

**Page**

*Silversman v. Motorola, Inc.*,
    259 F.R.D. 163 (N.D. Ill. 2009)...........................................................................................8

*Weiner v. Tivity Health, Inc.*,
    334 F.R.D. 123 (M.D. Tenn. 2020),
    *leave to appeal denied sub nom. In re Tivity Health, Inc.*,
    2020 WL 4218743 (6th Cir. July 23, 2020)........................................................................8, 9

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(a)..................................................................................................................................9

## I. INTRODUCTION[1]

Defendants fail to demonstrate a genuine dispute of material fact regarding reliance. As such, in order to narrow the issues for trial, partial summary judgment should be granted.

First, there is no dispute as to three of the four elements necessary for Plaintiff to invoke *Basic*'s fraud-on-the-market presumption of reliance. *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Likewise, there is no dispute that Plaintiff must prove materiality to prevail on its claims. *Id*. Plaintiff is entitled to partial summary judgment and a corresponding jury instruction reflecting this undisputed state of affairs.

Second, Defendants have failed to demonstrate a genuine dispute of material fact regarding price impact. Contrary to Defendants' contentions now, the Court did consider the merits of this defense at Class certification (over Plaintiff's objections) at Defendants' insistence. Defendants cannot point to any specific evidence in the record that would suggest the Court should revisit its prior holding.

Third, Defendants have failed to demonstrate a genuine dispute of material fact regarding Plaintiff's reliance. Neither Plaintiff's trading strategies, nor the fact that it purchased additional CCA shares following the corrective disclosures, provides any basis to suggest that it would have purchased CCA stock had it been aware of the fraud.

Finally, Defendants should not be allowed to delay entry of judgment through onerous absent Class members' discovery, which has never been suggested in the numerous case management schedules submitted in this case over the last three years. Nor have Defendants made any showing that such discovery would be proportional to the needs of the case.

For all of these reasons, partial summary judgment is warranted.

---

[1] All terms not defined herein have the same meaning as in Plaintiff's motion (ECF No. 348) ("Motion" or "MSJ").

## II.   ARGUMENT

### A.   There Is No Dispute that Plaintiff Must Prove Materiality

Partial summary judgment allows the Court to "narrow the issues and therefore reduce the time needed for trial." *E.g.*, *PSC Indus., Inc. v. Johnson*, 2020 WL 6365516, at *2 (M.D. Tenn. Aug. 12, 2020).[2]

With respect to reliance, the parties agree that there is no genuine issue of material fact as to three of the four factors necessary to establish a presumption of reliance under *Basic*: "'(1) Defendants' alleged material misrepresentations were publicly known; (2) CCA securities traded in an efficient market during the Class Period; and (3) Plaintiff and the members of the Class traded their CCA securities between the time of Defendants' misrepresentations and the disclosure of the truth.'" ECF No. 393 ("Opposition" or "Opp.") at 10. Plaintiff does not dispute that the final factor, materiality, is an issue for trial. *Id.*[3]

Defendants' contention that the need to prove materiality renders partial summary judgment inappropriate is at best a semantic dispute. Opp. at 10-11.[4] Because Plaintiff must prove materiality in order to prevail on its claims regardless of the reliance requirement, there is no need for Plaintiff to separately prove, or for the jury to separately consider, reliance. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) ("*Halliburton II*") ("a failure to prove materiality would necessarily defeat every plaintiff's claim on the merits"). Indeed, while Defendants are correct that the Court in *Hsingching Hsu v. Puma Biotechnology, Inc.*, 2018 WL 4945703 (C.D. Cal. Oct. 5,

---

[2]   All citations and footnotes re omitted and emphasis added unless otherwise indicated.

[3]   As demonstrated in Plaintiff's opposition to Defendants' motion for summary judgment, Defendants have not demonstrated that they are entitled to summary judgment with respect to materiality. ECF No. 396 at §II.B.-C.

[4]   Plaintiff's Motion expressly recognizes that materiality would have to be proven separately. MSJ at 5.

- 2 -

4834-6129-8908.v1
Case 3:16-cv-02267   Document 428   Filed 02/19/21   Page 6 of 18 PageID #: 24188

2018) declined to grant summary judgment under similar circumstances, the jury instructions in that case nevertheless reflect the exact outcome Plaintiff seeks here:

**COURT'S INSTRUCTION NO. 31**

Plaintiffs do not have to prove that they justifiably relied on the alleged misrepresentations or omissions in deciding to purchase Puma stock if they meet the requirements for invoking a presumption that it relied on the integrity of the market price. The fraud-on-the-market presumption applies where: (1) the alleged misrepresentations or omissions were publicly known; (2) they were material; (3) the stock traded in an efficient market; and (4) [p]laintiffs traded the stock between when the misrepresentations or omissions were made and when the truth was revealed.

Before this trial began, the Court decided that elements (1), (3), and (4) have been established in [p]laintiffs' favor. You should treat these elements as having been proven by a preponderance of the evidence. Therefore, the fraud-on-the-market presumption applies if [p]laintiffs have proved by a preponderance of the evidence that [d]efendants made a Material misrepresentation or omission.

*Hsingching Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-00865 AG (JCGx), Final Jury Instructions at 35 (C.D. Cal. Jan. 29, 2019).

Regardless of the need to prove materiality, the Court should grant partial summary judgment so that "the fraud-on-the-market presumption applies if [p]laintiffs have proved by a preponderance of the evidence that [d]efendants made a Material misrepresentation or omission." *Id*.

### B. Defendants Have Failed to Identify a Genuine Dispute of Material Fact Regarding Price Impact

In certifying the Class, the Court held that "[CCA] has failed to rebut the *Basic* presumption by demonstrating a lack of price impact." ECF No. 165 at 35; MSJ at 7. While Defendants contend that the record demonstrates the absence of price impact, they offer the Court nothing beyond the same baseless contentions they advanced at Class certification, which this Court already rejected. Because Defendants have failed to establish a genuine dispute of material fact regarding price impact, Plaintiff is entitled to partial summary judgment on this issue.

- 3 -

4834-6129-8908.v1
Case 3:16-cv-02267 Document 428 Filed 02/19/21 Page 7 of 18 PageID #: 24189

First, Defendants' contention that courts "do not – and cannot – consider the merits of a case on class certification" (Opp. at 14) might be more credible had they not argued strenuously at Class certification that the Court *must* consider evidence of price impact even when such evidence is relevant to the merits. ECF No. 160 at 16 ("To be clear, the fact that the same evidence might be relevant to the merits on the issue of loss causation does not mean the Court erred in considering it to determine lack of price impact."). The Court adopted the approach urged by Defendants, citing *Halliburton II*. ECF No. 165 at 28-29 ("[L]oss causation, materiality, and price impact – are, in essence, slightly different takes on the same fundamental question: Did a statement matter? . . . Taking a piece of evidence and placing it in any of the three boxes, to the exclusion of the others, would be an artificial and logically questionable exercise."); *Halliburton II*, 573 U.S. at 283 ("we see no reason to artificially limit the inquiry at the certification stage to indirect evidence of price impact"). Nothing has changed since Class certification. Defendants failed to demonstrate a lack of price impact by (at least) the preponderance of the evidence at Class certification and have similarly failed to demonstrate a genuine dispute of material fact regarding price impact now.

Second, Defendants' contention that there was no price impact when the extent of the concealed risks was disclosed (Opp. at 13) has already been considered and rejected by the Court. ECF No. 165 at 30-33. While Defendants contend that "the parties continue to dispute whether the August 18, 2016 Yates Memo was a materialization of a concealed risk" (Opp. at 13), that is a question of loss causation (whether the Yates Memo was within the zone of the risk concealed), not price impact.

Finally, while the Court's decision to certify the Class occurred "more than a year before the close of discovery" (*id*. at 14-15), the record has not meaningfully changed since then as relates to price impact. Defendants identify ***nothing*** new in the documents, written discovery, deposition

4834-6129-8908.v1

testimony or expert reports that bears upon the fundamental premise of their price impact challenge – that the OIG Report supposedly disclosed the allegedly concealed risks. *See* ECF No. 165 at 30-33.

Defendants' contention that Plaintiff's theory of "what was 'corrective,' (or not) has fundamentally shifted" is simply not true. Opp. at 15. Again, the only bases Defendants have ever raised to support a ***complete*** lack of price impact are that: (i) the OIG Report revealed the allegedly concealed risk, which the Court rejected as inconsistent with the plain text of the OIG Report and with Defendants' own e-mails showing just how far CCA's relationship with the BOP had in fact deteriorated (ECF No. 165 at 30-33); and (ii) the Yates Memo represented a political shift unrelated to quality, a notion that the Court also rejected as inconsistent with the record. ECF No. 143 at 14 ("the record suggests that, insofar as the Yates Memo[] can be said to reflect a political decision, that political decision was driven by precisely the deficiencies that [Plaintiff] has highlighted").

As to these issues, nothing has changed, and Defendants present no new evidence. The limitations of the OIG Report persist, and Defendants have offered no credible evidence, beyond their own denials and the baseless inadmissible speculation of cheerleading analysts, to suggest that the Yates Memo was a political decision untethered to CCA's deficiencies. If anything, Plaintiff's evidence has only grown stronger, demonstrating that CCA's BOP facilities were the worst ***in the entire private prison industry*** and that, even after the Yates Memo was rescinded, CCA ***continued to lose facilities*** to its competitors and as of today has failed to win a competitively bid prison contract with the BOP since 2011. ECF No. 401-19 at 21 (Mellendick Report); ECF No. 400-12 at 211:16-212:13 (Lappin Depo.).

In short, while Defendants contend the record has fundamentally changed "with respect to the evidence that ***Defendants***, who are entitled to rebut the presumption, have since obtained" (Opp. at 15), they fail to identify what this supposed evidence actually is because, in fact, there is none.

Having failed to demonstrate a genuine issue of disputed fact as to price impact, Plaintiff is entitled to summary judgment on this issue.

### C. There Is No Evidence to Suggest that Plaintiff Did Not Rely on Integrity of the Market Price When Buying Its CCA Stock

"*Basic* [affords] defendants an opportunity to rebut the presumption of reliance with respect to an individual plaintiff by showing that he did not rely on the integrity of the market price in trading stock." *Halliburton II*, 573 U.S. at 276. In order to do so, a defendant must prove "that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud." *Id*. at 269.

Defendants suggest that they should be entitled to rebut the presumption of reliance on an individual basis as to Plaintiff at trial, yet they failed to so much as raise this contention in connection with Class certification (where such arguments are typically made), and they have failed to adduce *any* evidence in their Opposition to suggest that Plaintiff did not rely on the integrity of CCA's stock price. Defendants' contentions blatantly misrepresent the marginal discovery they took regarding Plaintiff's investment decisions, and the record demonstrates that Plaintiff is a prototypical investor for whom the integrity of CCA's stock price was of fundamental importance.

Plaintiff's Class Period transactions in CCA stock were made through its index funds (LongView MidCap 400 Index Fund, LongView Large Cap 1000 Value Index Fund, LongView Large Cap 1000 Growth Index Fund and LongView Broad Market 3000 Index Fund) and quantitative funds (LongView Quantitative MidCap Fund, LongView Quantitative LargeCap Fund and LongView Quantitative LargeCap Equity VEBA Fund). SAMFr No. 50.[5]

---

[5] All "SAMFr No. _" citations herein are to Plaintiff's responses in the Reply in Support of Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, filed concurrently herewith.

- 6 -

Pursuant to their governing plan documents and investment objectives, Plaintiff's index funds purchased and sold CCA securities in order to track their respective indices. *Id*. There is no evidence to suggest that Plaintiff's index funds, the existence of which Defendants *fail to so much as acknowledge in their Opposition*, did not rely on the integrity of CCA's stock price in making their transactions. Courts have squarely rejected identical contentions from securities fraud defendants, holding that index funds in fact "rely *exclusively* upon the market to impound any representations (including misrepresentations) into securities' prices." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009).

As Judge Guzman explained in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2012 WL 4343223, at *3 (N.D. Ill. Sept. 21, 2012), one of the only securities fraud class actions to go to trial in recent years, "indexes rely on investor opinion as reflected in market price to assign weight to stocks. Likewise, the index funds, which adjust their portfolios to match a target index, rely on investor opinion as reflected in stock price each time they make an adjustment." The *only* testimony in this case is consistent with Judge Guzman's observation. Eleanor Innes, Plaintiff's Senior Vice President and Director of Equities, testified that she personally weighted the securities in Plaintiff's index funds in order to match the target indices. SAMFr No. 50.

Plaintiff's quantitative funds also relied on the integrity of CCA's stock price. Pursuant to their governing plan documents and investment objectives, the quantitative funds purchased and sold CCA securities based on proprietary computer-trading models that forecast growth patterns and analyze the relative value among individual securities, seeking to outperform their respective indices. *Id.* The quantitative funds primarily purchased securities from their benchmark indices, and their models evaluated all public information about a company before weighting them for investment. *Id.* Again, Defendants have adduced no evidence suggesting that Plaintiff did not rely

- 7 -

4834-6129-8908.v1
Case 3:16-cv-02267    Document 428    Filed 02/19/21    Page 11 of 18 PageID #: 24193

on the market price in purchasing CCA stock or would have purchased CCA stock had it known of the alleged fraud.

Defendants contend that the alleged fraud was irrelevant to Plaintiff because it continued to purchase CCA shares following the corrective disclosures. Opp. at 16-17. This makes no sense factually and is irrelevant as a matter of law. "'As numerous courts have held, the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period.'" *Silversman v. Motorola, Inc*., 259 F.R.D. 163, 172 (N.D. Ill. 2009) (collecting cases). Judge Crenshaw reached this same conclusion last year, finding that post-class period purchases "may not even be relevant" as a matter of law, as "'a party may believe a stock to be a bargain after such deflation, and may believe that it is now trading at a price with defendants' fraud removed from it.'" *Weiner v. Tivity Health, Inc*., 334 F.R.D. 123, 130 (M.D. Tenn. 2020) (collecting cases), *leave to appeal denied sub nom. In re Tivity Health, Inc*., 2020 WL 4218743 (6th Cir. July 23, 2020).

Defendants' own authority illustrates their failure to identify a genuine dispute of material fact regarding Plaintiff's reliance. In *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424 (S.D.N.Y. 2015), the investor at issue admitted that it did not rely on the integrity of the market, had access to "a wealth of information, experience, and expertise that the average investor lacks," had itself previously owned some of the very assets alleged to have been inflated by the defendants, "'spoke to and met with Vivendi insiders, such as the CEO and CFO,'" ultimately owned "***over forty-five percent*** of Vivendi's total outstanding ADSs" following the end of the class period and testified that it was not misled by the alleged fraud: "'I had it right the whole time . . . . I was not misled on the level of debt.'" *Id*. at 429, 438 nn.117, 122. *Vivendi* was "'sharply limited to its

- 8 -

unusual facts'" and was therefore one of those cases "'as rare as hen's teeth,'" where the defendant was able to rebut the presumption of reliance as to a small number of individual class members. *Id*. at 431, 432 n.71. If anything, *Vivendi* demonstrates the almost insurmountable evidentiary burden a defendant faces to rebut the presumption of reliance; it does not remotely suggest that an investor such as Plaintiff, which utilized conservative and common index matching and quantitative strategies, could possibly be subject to such an attack.[6]

In short, Defendants do not even begin to explain how Plaintiff's post-Class Period purchases suggest it would have purchased CCA's stock knowing its price was inflated by fraud. Because there is no evidence suggesting that Plaintiff would have purchased CCA stock had it known it was paying a fraud-inflated price, Defendants have failed to identify a genuine issue of material fact

---

[6] To the extent that *In re World Access, Inc.*, 310 F. Supp. 2d 1281, 1300 (N.D. Ga. 2004), and *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003), considered a plaintiff's post-class period purchases, in combination with other factors, sufficient to rebut the presumption of reliance, such opinions are "against 'the weight of authority,' a 'deviat[ion] from th[e] general rule,' and 'not generally accepted.'" *Tivity*, 334 F.R.D. at 130. *See also Rosen v. Textron, Inc*., 369 F. Supp. 2d 204, 209 (D.R.I. 2005) (declining to rely on *Safeguard Scis*. and holding that "the fact that Bear Stearns concluded, for example, that Textron stock was a good buy at $32.77, following full disclosure, is essentially irrelevant to the question of whether it relied on misleading information in buying Textron stock at, for example, $50.51 during the [c]lass [p]eriod"); *see also In re K-V Pharm. Co. Sec. Litig.*, 2012 WL 1570118, at *6 (E.D. Mo. May 3, 2012) ("Courts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements in a fraud-on-the-market suit."); *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 77 (D.N.J. 2019) ("Defendants have failed to demonstrate that those post-disclosure purchases negate or even undermine [l]ead [p]laintiff's allegations that its members relied on the relevant misrepresentations when they made stock-purchasing decisions during the [c]lass [p]eriod."). The fact that some of these decisions were in the context of class certification, rather than summary judgment, does nothing to diminish the force of their reasoning. On the contrary, if post-class period purchases are not enough to raise the ***possibility*** that a proposed class representative could be subject to attack based on a lack of reliance, they cannot be sufficient standing alone to demonstrate a genuine issue of material fact, either. *See Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc*., 332 F.R.D. 556, 568 (M.D. Tenn. 2019), *order clarified*, 334 F.R.D. 118 (M.D. Tenn. 2019), *and leave to appeal denied sub nom. In re Cmty. Health Sys., Inc.*, 2019 WL 5549319 (6th Cir. Oct. 23, 2019) ("Defendants do not have to prove a unique defense against the proposed class representatives to defeat certification. It is problem enough that the proposed representatives are 'subject to such defenses,' which 'renders their claims atypical of other class members.'").

regarding Plaintiff's reliance, and Plaintiff is entitled to partial summary judgment with respect to whether Defendants can rebut the presumption of reliance as to Plaintiff.

### D. Defendants Have Failed to Identify a Basis for Post-Trial Discovery of Absent Class Members

In a footnote, Defendants suggest that, assuming a verdict in Plaintiff's favor, they should be allowed to take discovery from absent Class members in an attempt to rebut the presumption of reliance on an individual basis. Opp. at 17 n.3. Not so. This Court entered the Initial Case Management Order over three years ago. ECF No. 88. As the Court is well aware, it has been amended on numerous occasions since that time. Never once on those numerous occasions have Defendants included a schedule for additional post-trial discovery. Moreover, while some courts have allowed for such a post-trial process, because Defendants have not shown any basis to believe that discovery of absent Class members would result in the exclusion of *any* Class members, much less that it would be proportional to the needs of the case, there is no basis on this record to afford Defendants an opportunity for absent Class member discovery, which could delay resolution and judgment in this action by *years*.

## III. CONCLUSION

For the foregoing reasons, the Motion should be granted.

DATED: February 19, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853

　　　s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
 & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

- 11 -
4834-6129-8908.v1
Case 3:16-cv-02267 Document 428 Filed 02/19/21 Page 15 of 18 PageID #: 24197

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 19, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`