UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>REPLY IN SUPPORT OF STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff[1] hereby submits this reply to Defendants' Response to Plaintiff's Statement of Undisputed Material Facts and Statement of Additional Material Facts as to Which There Exists a Genuine Issue to Be Tried (ECF No. 394), filed January 22, 2021 ("Defendants' Statement").

## I. PLAINTIFF'S REPLY TO DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED

### A. Lead Plaintiff

45. Lead Plaintiff Amalgamated bank offers three types of investment funds: passively managed funds, which track stock indices; actively managed funds, which trade on the basis of quantitative algorithms; and alternative funds, which invest in private equity and real estate. Ex. A[2], 30(b)(6) Dep. Tr. of Eleanor Innes ("Innes Tr.") 138:16-140:1.

---

[1] "Plaintiff" is Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund. "Defendants" are Corrections Corporation of America ("CCA"), Damon T. Hininger, David M. Garfinkle, Todd Mullenger and Harley G. Lappin. Following the filing of this action, Defendants rebranded CCA and now refer to it as CoreCivic. All terms not defined herein have the same meaning as in Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment (ECF No. 349).

[2] All exhibits referenced . . . and labelled alphabetically [Exhibits A-G] are attached to the Declaration of Meryn C.N. Grant filed [as ECF No. 395].

**Response**: This statement is disputed to the extent it purports to be an exhaustive description of all of Plaintiff's investment funds, which the cited testimony did not purport to provide, but it is undisputed for purposes of summary judgment that Plaintiff offers passively managed funds, actively managed funds and alternative funds.

46. During the Class Period, the LongView family of funds were Plaintiff's only funds that owned CoreCivic stock. Ex. A, Innes Dep. Tr. 147:23-148:6.

**Response**: This statement is undisputed for purposes of summary judgment.

47. Certain of Plaintiff's funds that purchased CoreCivic stock were actively managed by Quantitative Management Associates LLC ("QMA"), which employed quantitative methods to make investment decisions on Plaintiff's behalf. Ex. A, Innes Dep. Tr. 148:14-149:5, 149:15-151:11; Ex. B, Pl.'s Responses to Def.'s First Set of Interrogatories, Interrogatory Response 3.

**Response**: This statement is undisputed for purposes of summary judgment.

48. Plaintiff does not have any input into designing QMA's quantitative investment model. Ex. A, Innes Dep. Tr. 152:8-10.

**Response**: This statement is undisputed for purposes of summary judgment.

49. During the Class Period, Plaintiff purchased 158,981.1657 shares of CoreCivic stock on 102 different dates. Plaintiff's Chart of Estimated Losses, ECF No. 40-3.

**Response**: This statement is undisputed for purposes of summary judgment.

50. Plaintiff does not know why QMA made specific transactions in CoreCivic stock. Ex. A, Innes Dep. Tr. 160:12-22; 163:20-164:4.

**Response**: This statement is disputed. Plaintiff knows QMA "has an investment universe. And they will rank those stocks based on different growth and value characteristics in addition to fundamental characteristics, such as corporate governance, the quality and diversity of a company's

- 2 -

4838-9006-1020.v1

Case 3:16-cv-02267    Document 429    Filed 02/19/21    Page 2 of 18 PageID #: 24202

board, public filings, news headlines, conference call information. They use certain characteristics like price to book, PE ratios, growth ratios. And then . . . those stocks are ranked by the quant model and a portfolio is created based on other parameters, such as a stock can't be plus or minus 1 percent over its benchmark weight, certain sector weights are taken into account, liquidity measures are taken into account, so the stock can easily be traded." Ex. 7 at 150:6-24.[3] The "quant model" will then "take all those factors into account – all those data points into account to create factors that they then create a portfolio." *Id*. at 151:4-11. Then "the model will indicate to buy or sell a security, and then the team will decide on how to implement that trade." *Id*. at 153:18-23. Plaintiff also explained that "the funds that purchased and sold [CCA] securities during the Class Period are index funds (LongView MidCap 400 Index Fund, LongView Large Cap 1000 Value Index Fund, LongView Large Cap 1000 Growth Index Fund and LongView Broad Market 3000 Index Fund) or quantitative funds (LongView Quantitative MidCap Fund, LongView Quantitative LargeCap Fund, and LongView Quantitative LargeCap Equity VEBA Fund)." Ex. 5 at 8-9. "Pursuant to their governing plan documents and investment objectives, the index funds purchased and sold [CCA] securities in order to track their respective indices." *Id*. at 9; *see also, e.g.*, Ex. 6 at -050. Eleanor Innes, Plaintiff's Senior Vice President and Director of Equities, testified that she personally weighted the securities in Plaintiff's index funds in order to match the target indices. Ex. 7 at 142:1-143:9. "Pursuant to their governing plan documents and investment objectives, the quantitative funds purchased and sold [CCA] securities based on proprietary computer-trading models that forecast growth patterns and provide analysis of the relative value among individual securities, seeking to outperform their respective indices." Ex. 5 at 9; *see also, e.g.*, Ex. 8 at -099. The quantitative funds

---

[3] All "Ex. _" citations herein are to the Declaration of Christopher M. Wood (ECF No. 350) (Exhibits 1-4) and the Declaration of Christopher M. Wood filed concurrently herewith (Exhibits 5-9), unless otherwise indicated.

primarily purchased securities from their benchmark indices, and their models evaluated all public information about a company before weighting them for investment. Ex. 7 at 150:6-152:3; *see also, e.g.*, Ex. 8 at -099. Defendants did not, however, include the reasons "why QMA made specific transactions in CoreCivic stock" as a topic of examination in their Notice of Rule 30(b)(6) Deposition of Lead Plaintiff Amalgamated Bank, as Trustee for the Longview Collective Investment Fund. *See* Ex. 9. As a result, Defendants have no basis for contending that "Plaintiff does not know why QMA made specific transactions in CoreCivic Stock."

51. As of June 30, 2016, Plaintiff held 15,879 shares of CoreCivic stock. Ex. C, Amalgamated Bank Second Quarter 2016 13F Statement, signed Aug. 16, 2016.

**Response**: This statement is undisputed for purposes of summary judgment.

52. As of September 30, 2016, Plaintiff held 15,901 shares of CoreCivic stock. Ex. D, Amalgamated Bank Amended Third Quarter 2016 13F Statement, signed Nov. 15, 2016.

**Response**: This statement is undisputed for purposes of summary judgment.

53. As of December 31, 2016, Plaintiff held 17,982 shares of CoreCivic stock. Ex. E, Amalgamated Bank Fourth Quarter 2016 13F Statement, signed Feb. 13, 2017.

**Response**: This statement is undisputed for purposes of summary judgment.

54. As of March 31, 2017, Plaintiff held 18,527 shares of CoreCivic stock. Ex. F, Amalgamated Bank First Quarter 2017 13F Statement, signed May 12, 2017.

**Response**: This statement is undisputed for purposes of summary judgment.

55. As of June 30, 2017, Plaintiff held 21,867 shares of CoreCivic stock. Ex. G, Amalgamated Bank Second Quarter 2017 13F Statement, signed August 10, 2017.

**Response**: This statement is undisputed for purposes of summary judgment.

### B. CoreCivic's Business

56. CoreCivic, Inc. ("CoreCivic" f/k/a Corrections Corporation of America or CCA) specializes in owning, operating and managing prisons and other correctional facilities. ECF No. 367-1 at UF 1 (citing ECF No. 355-1; ECF No. 57 ¶33).

**Response**: This statement is undisputed.

57. CoreCivic's customers are federal, state and local correctional and detention authorities. ECF No. 367-1 at UF 2 (citing ECF No. 355-2; ECF No. 57 ¶34).

**Response**: This statement is undisputed.

58. During the Class Period, CoreCivic owned, controlled or managed between 64 and 85 correctional, detention, and residential reentry facilities pursuant to contracts with federal, state and local government partners. ECF No. 367-1 at UF 3 (citing ECF Nos. 355-1-6).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion.

59. During the Class Period, CoreCivic's contract retention rate across all government partners averaged over 91%. ECF No. 367-1 at UF 5 (citing ECF No. 360-1 at -308; ECF Nos. 360-2-3).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 5.[4]

---

[4] All "SUFr No. _" references are to Plaintiff's responses to Defendants' statements of purportedly undisputed material fact.

60. The Company's contract retention rate for 2011 was 100%. ECF No. 367-1 at UF 6 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 6.

61. The Company's contract retention rate for 2012 was 93.1%. ECF No. 367-1 at UF 7 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 7.

62. The Company's contract retention rate for 2013 was 87.8%. ECF No. 367-1 at UF 8 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 8.

63. The Company's contract retention rate for 2014 was 89.7%. ECF No. 367-1 at UF 9 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 9.

64. The Company's contract retention rate for 2015 was 92.3%. ECF No. 367-1 at UF 10 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 10.

65. The Company's contract retention rate for 2016 was 93.5%. ECF No. 367-1 at UF 11 (citing ECF No. 360-1 at -308).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802. Plaintiff further responds that this is not a material fact in the context of this Motion. Plaintiff also notes that the quoted "retention rate" is itself a misleading statistic because it excludes instances where government customers chose not to renew CCA contracts after their final option periods. *See* ECF No. 397 at SUFr No. 11.

**C.    Corecivic's BOP Contracts**

66. During the Class Period, CoreCivic had contracts to operate five correctional facilities housing BOP inmates: Adams County Correctional Center ("Adams"), Cibola County Correctional Center ("Cibola"), Eden Detention Center ("Eden"), McRae Correctional Facility ("McRae"), and

the Northeast Ohio Correctional Center ("NEOCC") (collectively, the "BOP Facilities"). ECF No. 367-1 at UF 15 (citing Compl. ¶¶ 42 n.2, 43, 68, 87, 108, ECF No. 57).

**Response**: This statement is undisputed.

67. During the Class Period, the revenue derived from contracts with the BOP made up between 9% and 13.7% of the Company's total revenue. ECF No. 367-1 at UF 16 (citing ECF Nos. 355-1-5; ECF Nos. 360-1, 5-7, 9-12; ECF No 367-2).

**Response**: This statement is undisputed for purposes of summary judgment only.

68. CoreCivic's performance at McRae and NEOCC was above satisfactory, throughout the Class Period. ECF No. 367-1 at UF 197 (citing ECF No. 367-16; ECF Nos. 367-26-29; ECF Nos. 367-47-51).

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 402, 602, 802. This statement is also disputed because the CPARs for NEOCC and McRae show ratings that were only "Satisfactory" (not "above satisfactory") in multiple categories (including "Quality") and during multiple rating periods. *See* ECF No. 397 SUFr Nos. 98-99, 138, 197.

### D.  Cibola County Correctional Facility

69. CoreCivic's Cibola County Correctional Facility is located in Milan, New Mexico. ECF No. 367- at UF 8 (citing ECF No. 367-7-8; Compl. ¶68, ECF No. 57).

**Response**: This statement is undisputed.

70. The BOP awarded Cibola the DJB1PC011 contract (the "Cibola Contract") resulting from Requests for Proposals (RFP)-PCC-0014 (Criminal Alien Requirement 10) on January 12, 2010. The Cibola Contract was to house BOP inmates for a four-year base period, with up to three two-year option periods that could be exercised by the BOP. ECF No. 367-1 at UF 29 (citing ECF No. 360-15).

- 8 -

**Response**: This statement is undisputed for purposes of summary judgment only.

71. On October 1, 2014, the BOP exercised Option Period 1 for the Cibola Contract. ECF No. 367-1 at UF 30 (citing ECF No. 360-39).

**Response**: This statement is undisputed for purposes of summary judgment only.

72. On July 29, 2016, the BOP notified CoreCivic that it would not be exercising Option Period 2 for the Cibola Contract. ECF No. 367-1 at UF 31 (citing ECF No. 360-40).

**Response**: This statement is disputed to the extent that it implies July 29, 2016 was the first notification to CCA that the BOP would not renew the Cibola contract, but it is undisputed that on July 29, 2016, the BOP sent CCA a formal letter "to notify Corrections Corporation of America (CCA) that the Bureau of Prisons (BOP) will not be exercising option period two of contract DJB1PC-011." ECF No. 360-40 at -085.

73. News articles published on August 1 and 2, 2016, reported that the BOP had decided not to renew the Cibola contract. ECF No. 367-1 at UF 130 (citing ECF Nos. 363-4-5; ECF No. 362-7-10).

**Response**: This statement is disputed because Defendants have not presented any admissible evidence that the cited articles were, in fact, published on August 1 and 2, 2016. This statement is also irrelevant because Defendants have not provided any evidence or asserted that the articles were disseminated in any way that made them likely to be noticed by investors or that any investor in fact noticed them and because the articles themselves are ambiguous as to the finality of the decision. *See, e.g.*, ECF No. 363-5 at 2 ("'We're hoping this is just a power play between the county and CCA, but we won't know until it's finally said and done.'"); *see also* ECF No. 397 at SUFr No. 130.

74. On August 4, 2016, CoreCivic's Form 10-Q for the second quarter of 2016, reflected in ECF No. 355-11, also stated that the BOP was not renewing the Cibola contract and that ICE was

- 9 -

4838-9006-1020.v1

Case 3:16-cv-02267   Document 429   Filed 02/19/21   Page 9 of 18 PageID #: 24209

renegotiating the South Texas Residential Center contract. ECF No. 367-1 at UF 131 (citing ECF No. 355-11 at 43-44).

**Response**: This statement is undisputed.

### E. The OIG Review

75. On August 11, 2016, the Department of Justice publicly released a report titled, "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" (the "OIG Review"), reflected in ECF Nos. 361-28-29. The OIG Review documented findings which included that: (i) in a majority of categories, contract prisons incur more safety and security incidents per capita than comparable BOP institutions; (ii) past disturbances in contract prisons had caused property damage, injury, and the death of one Correctional Officer; and (iii) contract prisons had higher rates of assaults and staff uses of force than comparable BOP institutions. ECF No. 367-1 at UF 139 (citing ECF No. 363-15; ECF Nos. 361-28-29; ECF Nos. 362-7-8; ECF Nos. 57 ¶¶12, 38-39).

**Response**: This statement is disputed because it is incomplete. It is undisputed for purposes of summary judgment only that the OIG Review was issued on August 11, 2016 and that it stated that: "in most key areas, contract prisons [specifically including CCA] incurred more safety and security incidents *per capita* than comparable BOP institutions"; that contract prisons (including CCA) "had more frequent incidents of contraband finds, assaults, uses of force, lockdowns, guilty findings on inmate discipline charges, and selected categories of grievances"; and that the OIG "d[id] not draw, and caution[ed] against drawing the conclusion . . . that contract prisons are necessarily lower cost than BOP institutions on an overall basis." ECF Nos. 361-28-29 at i, 11-12, 44. The OIG Review also suggested that the BOP would continue using private prisons. *E.g.*, *id.* at iii (making "recommendations to the BOP to improve the monitoring and oversight of its contract prisons"). *See also* ECF No. 397 at SUFr No. 139.

### F. The Yates Memo

76. On August 18, 2016, the Department of Justice released a two-page memorandum from Deputy Attorney General Sally Yates addressed to the Acting Director of the BOP (the "Yates Memo"), reflected in ECF No. 363-16. ECF No. 367-1 at UF 140 (citing ECF No. 363-16; ECF No. 57 ¶13).

**Response**: This statement is disputed because it is incomplete. In addition to the Yates Memo being released on August 18, 2016, the Yates Memo noted that, before that date, the BOP was "already taking steps in this direction. Three weeks ago, the Bureau declined to renew a contract for approximately 1,200 beds." ECF No. 363-16 at -914. This was a reference to Cibola. *See also* ECF No. 397 at SUFr No. 140.

### G. CoreCivic's Stock Price Movements

77. There was no statistically significant reaction in CoreCivic's stock price on August 2, 2016. ECF No. 367-1 at UF 191 (citing ECF No. 363-19; ECF Nos. 362-7-10).

**Response**: This statement is undisputed for purposes of summary judgment only.

78. There was no statistically significant reaction in CoreCivic's stock price on August 3, 2016. ECF No. 367-1 at UF 192 (citing ECF No. 363-19; ECF Nos. 362-9-10).

**Response**: This statement is undisputed for purposes of summary judgment only.

79. CoreCivic's stock price dropped 6.2% on August 4, 2016. ECF No. 367-1 at UF 193 (citing ECF No. 363-19; ECF Nos. 362-9-10).

**Response**: This statement is undisputed for purposes of summary judgment only.

80. Analysts attributed the 6.2% stock drop on August 4, 2016 primarily to the renegotiations with ICE. ECF No. 365-14; ECF Nos. 355-17-18.

**Response**: This statement is disputed because it is not supported by admissible evidence. Fed. R. Evid. 802, 901. Even if the analyst reports were admissible, such analysts had conflicts and material financial relationships with CCA. For example:

- Wells Fargo Securities, LLC maintains a market in the common stock of Corrections Corporation of America.

- Wells Fargo Securities, LLC or its affiliates managed or co-managed a public offering of securities for Corrections Corporation of America within the past 12 months.

- Wells Fargo Securities, LLC or its affiliates intends to seek or expects to receive compensation for investment banking services in the next three months from Corrections Corporation of America.

- Wells Fargo Securities, LLC or its affiliates received compensation for investment banking services from Corrections Corporation of America in the past 12 months.

- Corrections Corporation of America currently is, or during the 12-month period preceding the date of distribution of the research report was, a client of Wells Fargo Securities, LLC. Wells Fargo Securities, LLC provided investment banking services to Corrections Corporation of America.

\* \* \*

- Wells Fargo Securities, LLC received compensation for products or services other than investment banking services from Corrections Corporation of America in the past 12 months.

- Wells Fargo Securities, LLC or its affiliates has a significant financial interest in Corrections Corporation of America.

ECF No. 365-14 at -137. Defendants have opted not to take any affirmative discovery in this case and, as a result, have no admissible evidence (much less a representative sample of analyst viewpoints) on this issue. Dalrymple calculated that the release of CCA's 2Q16 earnings results, which included the Company's announcement that the BOP had elected not to renew the Company's contract to operate the Cibola facility in New Mexico, resulted in a $1.82 per share abnormal return in CCA's stock price on August 4, 2016. ECF No. 340-4, ¶¶52-53; *id*. at Ex. 1. Dalrymple concluded that a portion of this decline was attributable to factors unrelated to the Cibola non-

renewal, such as CCA's contemporaneous announcement that its contract to operate the South Texas Family Residential Center on behalf of U.S. Immigration and Customs Enforcement was being renegotiated. *Id*., ¶¶60-69. Applying well established valuation principles, Dalrymple isolated the inflation caused by Defendants' alleged failure to disclose the risks associated with the Cibola contact by multiplying the expected funds from operations ("FFO") associated with the Cibola contract before the August 4, 2016 disclosure by CCA's stock price multiple. *Id*. After accounting for the possibility that the announcement of the Cibola contract loss might have caused some decline in CCA's stock price even if the alleged risks had not been concealed by Defendants (consistent with the approach to measuring inflation associated with the Yates Memo), Dalrymple concluded that the risks allegedly concealed through Defendants' fraud caused CCA's stock price to be inflated by an additional $0.32 per share prior to the disclosure of the Cibola contract loss. *Id*., ¶89. Defendants have not rebutted this analysis.

81. There was no statistically significant reaction in CoreCivic's stock price on August 11, 2016. ECF No. 367-1 at UF 194 (citing ECF No. 363-19; ECF Nos. 362-7-8; ECF No. 120-1).

**Response**: This statement is undisputed for purposes of summary judgment only.

82. On August 18, 2016, CoreCivic's stock priced decreased by 35.5%. ECF No. 367-1 at UF 195 (citing ECF No. 363-19; ECF Nos. 362-7-10).

**Response**: This statement is undisputed for purposes of summary judgment only.

83. On August 18, 2016, GEO Group's stock price decreased by 39.6%. ECF No. 367-1 at UF 196 (citing ECF No. 360-4; ECF Nos. 362-7-8).

**Response**: This statement is disputed it is incomplete and lacks the necessary context that GEO's stock price closed at $13.00 per share on August 18, 2016 and at $16.61 per share on

December 31, 2019, an increase of 24.9%.  CCA's stock price closed at $17.57 per share on August 18, 2016 and at $17.38 per share on December 31, 2019, a decrease of 1.1%.  ECF No. 397 at SUFr No. 196.

| | |
|---|---|
| DATED: February 19, 2021 | ROBBINS GELLER RUDMAN & DOWD LLP<br>CHRISTOPHER M. WOOD, #032977<br>CHRISTOPHER H. LYONS, #034853<br><br>    s/ Christopher M. Wood<br>CHRISTOPHER M. WOOD<br><br>414 Union Street, Suite 900<br>Nashville, TN  37219<br>Telephone: 800/449-4900<br>615/252-3798 (fax)<br>cwood@rgrdlaw.com<br>clyons@rgrdlaw.com<br><br>ROBBINS GELLER RUDMAN & DOWD LLP<br>DENNIS J. HERMAN<br>WILLOW E. RADCLIFFE<br>KENNETH J. BLACK<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA  94104<br>Telephone: 415/288-4545<br>415/288-4534 (fax)<br>dennish@rgrdlaw.com<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com<br><br>ROBBINS GELLER RUDMAN & DOWD LLP<br>JASON A. FORGE<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone: 619/231-1058<br>619/231-7423 (fax)<br>jforge@rgrdlaw.com<br><br>Lead Counsel for Plaintiff |

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone: 615/244-2202
615/252-3798 (fax)

Local Counsel

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 19, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@goldberglawpc.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,smorris@rgrdlaw.com,CWood@ecf.courtdrive.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`