EXHIBIT 6

PLAN OF
LONGVIEW MIDCAP 400 INDEX FUND

As of February 28, 2007
Revised August, 2011

CONFIDENTIAL                                          CCA_AB_00000042

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | ESTABLISHMENT, NAME AND PURPOSE OF THE FUND; DEFINITIONS... | 1 |
| SECTION 1.01 | Establishment | 1 |
| SECTION 1.02 | Name | 1 |
| SECTION 1.03 | Purpose | 1 |
| SECTION 1.04 | Definitions | 1 |
| SECTION 1.05 | Terms Generally | 2 |
| ARTICLE II | PARTICIPATION IN THE FUND | 3 |
| SECTION 2.01 | Trusts Eligible to Participate in the Fund | 3 |
| SECTION 2.02 | Persons Who May Not Invest in Participations in the Fund; Investment by the Bank | 4 |
| ARTICLE III | TITLE TO ASSETS; MANAGEMENT AND ADMINISTRATION; INVESTMENTS | 4 |
| SECTION 3.01 | Title to Assets | 4 |
| SECTION 3.02 | Management | 5 |
| SECTION 3.03 | Sub-Adviser's Duties for Assets in the Fund | 5 |
| SECTION 3.04 | Investment Objectives | 5 |
| SECTION 3.05 | Power to Administer Assets and Proxy Voting and Consent Rights | 6 |
| SECTION 3.06 | Registration of Securities or Other Property | 7 |
| SECTION 3.07 | Persons Dealing with the Trustee | 8 |
| SECTION 3.08 | Maintenance of Cash and Readily Marketable Securities | 8 |
| SECTION 3.09 | Transactions with Bank | 8 |
| SECTION 3.10 | ERISA Transaction | 8 |
| SECTION 3.11 | Appointment | 9 |
| SECTION 3.12 | Prohibited Transactions | 9 |
| SECTION 3.13 | Indemnification | 9 |
| ARTICLE IV | VALUATIONS | 9 |
| SECTION 4.01 | When Valuation Shall be Made | 9 |
| SECTION 4.02 | Method of Valuation | 9 |
| SECTION 4.03 | Value of the Fund | 11 |
| SECTION 4.04 | Accrued Interest | 11 |
| SECTION 4.05 | Division into Units | 11 |
| SECTION 4.06 | Valuation of Units | 11 |
| SECTION 4.07 | Time within Which Valuation Shall be Made; Records of Valuations; Statements of Condition | 11 |
| SECTION 4.08 | Allocation of Transaction Costs and Expenses | 12 |

i

CONFIDENTIAL
CCA_AB_00000043

ARTICLE V ADMISSION TO AND WITHDRAWAL FROM THE FUND......................   12

SECTION 5.01    Admissions and Withdrawals to be Based on Valuations .......   12
SECTION 5.02    Notice of Intention Required with Respect to Admissions and
                Withdrawals.................................................   12
SECTION 5.03    Withdrawal by Trustee......................................   12
SECTION 5.04    Manner of Payment or Satisfaction of Participation Withdrawn...........   12
SECTION 5.05    Disqualification of Participating Trust.....................   13

ARTICLE VI INCOME..........................................................   13

SECTION 6.01    Computation of Income .....................................   13
SECTION 6.02    Distribution of Gains and Income...........................   14

ARTICLE VII LIQUIDATING ACCOUNTS ..........................................   14

SECTION 7.01    Segregation of Investments.................................   14
SECTION 7.02    Powers and Duties of Trustee with Respect to Liquidating Accounts.....   14
SECTION 7.03    Limitation on Investment of Further Monies in a Liquidating Account..   14
SECTION 7.04    Distributions..............................................   14
SECTION 7.05    Audit of Liquidating Accounts .............................   15
SECTION 7.06    Effect of Segregation of an Asset into a Liquidating Account ...............   15
SECTION 7.07    Expenses ..................................................   15

ARTICLE VIII ACCOUNTS OF THE TRUSTEE AND AUDIT THEREOF.....................   15

SECTION 8.01    Record of Participants and Interests ......................   15
SECTION 8.02    Accounting Records.........................................   15
SECTION 8.03    Audit of Accounts..........................................   15
SECTION 8.04    Fees and Expenses of the Auditors ......................... .   16
SECTION 8.05    Liability of the Auditors..................................   16
SECTION 8.06    Annual Financial Report....................................   16
SECTION 8.07    Other Reports..............................................   16
SECTION 8.08    Filing of Tax Returns......................................   16

ARTICLE IX TAXES...........................................................   16

SECTION 9.01    Taxes Paid by the Trustee..................................   16
SECTION 9.02    Compliance with Tax Laws ..................................   16
SECTION 9.03    Information Required to be Supplied by the Trustee..............   17

ARTICLE X EXPENSES AND COMPENSATION OF THE TRUSTEE.........................   17

SECTION 10.01   Compensation ............................................. .   17
SECTION 10.02   Expenses .................................................   17

Case 3:16-cv-02267     Document 430-2     Filed 02/19/21     Page 4 of 25 PageID #: 24243

CONFIDENTIAL                                                    CCA_AB_00000044

ARTICLE XI AMENDMENTS AND TERMINATION.......................................................... 18

SECTION 11.01  Amendments and Termination................................................... 18
SECTION 11.02  Termination of the Fund ............................................................ 18

ARTICLE XII MISCELLANEOUS............................................................................... 18

SECTION 12.01  Discretion of the Trustee to be Absolute; How Exercised...................... 18
SECTION 12.02  Advice of Counsel.................................................................... 18
SECTION 12.03  The Trustee to Represent the Fund in Judicial Proceeding.................... 18
SECTION 12.04  Effect of Mistakes.................................................................... 19
SECTION 12.05  Prohibition Against Transfer........................................................ 19
SECTION 12.06  Controlling Law....................................................................... 19
SECTION 12.07  Notices and Proof of Service Thereof............................................. 19
SECTION 12.08  Titles and Subtitles.................................................................. 19
SECTION 12.09  Successors and Assigns.............................................................. 19
SECTION 12.10  Copy of Plan Available.............................................................. 19
SECTION 12.11  Invalidity of any Provision.......................................................... 19
SECTION 12.12  Effect of the Plan .................................................................... 19
SECTION 12.13  Effect of Statutes and Regulations................................................ 20

ARTICLE XIII EFFECTIVE DATE OF PLAN ............................................................... 20

-

Case 3:16-cv-02267    Document 430-2    Filed 02/19/21    Page 5 of 25 PageID #: 24244

CONFIDENTIAL
CCA_AB_00000045

# ARTICLE I

## ESTABLISHMENT, NAME AND PURPOSE OF THE FUND; DEFINITIONS

Section 1.01   Establishment. The Bank hereby declares that it is acting hereunder as trustee for participating trusts for the collective investment of assets of such trusts. The Fund (as described below) is created under the laws of the State of New York and shall be maintained at all times as a domestic trust in the United States.

Section 1.02   Name. The name of this Plan is "Plan of LongView MidCap 400 Index Fund"

Section 1.03   Purpose. This Plan shall be maintained exclusively for the collective investment and reinvestment of funds of eligible trusts (as defined herein). Except for the payment of expenses as provided in this Plan, no part of the principal or income of the Fund (as defined below) which equitably belongs to any participating trust shall be used for or diverted to any purposes other than for the exclusive benefit of the employees or their beneficiaries or other individuals who are entitled to benefits under such participating trust; provided, however, that if such participating trust is a 457 Plan (as defined below), then such principal and income may remain subject to the claim of general creditors of the employers participating in such trust to the extent required by Section 457 of the Code.

Section 1.04   Definitions. The following terms shall have the meanings specified below unless the context otherwise requires:

(a)      "Bank" shall mean Amalgamated Bank, a New York banking corporation.

(b)      "business day" shall mean a day other than a Saturday or a Sunday on which both the Bank and the New York Stock Exchange are open for business.

(c)      "Code" shall mean the Internal Revenue Code of 1986, as amended.

(d)      "eligible trust" shall mean a trust satisfying the requirements of Section 2.01.

(e)      "ERISA" means the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or any successor thereto.

(f)      "fiduciary" shall refer to the Bank acting as trustee or co-trustee or as agent with respect to a participating trust.

(g)      "457 Plan" means a plan meeting the definition of "eligible deferred compensation plan" under Section 457 of the Code.

(h)      "Fund" shall mean "LongView MidCap 400 Index Fund," the collective investment fund established by this Plan.

1

CONFIDENTIAL

(i) "governmental unit" shall mean the government of the United States, or the government of any state or political subdivision thereof, or any agency or instrumentality of any of the foregoing.

(j) "liquidating account" shall mean a liquidating account established pursuant to the provisions of Section 7.01.

(k) "national securities exchange" shall mean any exchange registered as a national securities exchange under the Securities Exchange Act of 1934, as amended.

(l) "1940 Act" shall mean the Investment Company Act of 1940, as amended.

(m) "participating trust" shall mean any eligible trust, monies of which shall be invested in the Fund at the time and shall, where the context requires, be deemed to include any trust having any interest in a liquidating account.

(n) "participation" shall mean the units of participation of a participating trust in the Fund, but shall not include the units of participation of any participating trust in any liquidating account.

(o) "person" shall mean any natural person, corporation, partnership, limited liability company, trust, joint venture, association or government, or any agency or political subdivision thereof.

(p) "Trust Committee" shall refer to the trust committee, if any, elected by the Board of Directors of the Bank and charged with the supervision of the investment of the Fund's assets.

(q) "Trustee" shall refer to the Bank in its capacity as trustee for the Fund and in its capacity as administrator of each liquidating account.

(r) "Valuation Date" shall mean a date as of which the value of the Fund shall be determined pursuant to the provisions of Article IV of this Plan.

Section 1.05   <u>Terms Generally</u>. Except where the context requires otherwise, the definitions in Section 1.04 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation". Unless otherwise stated, references to Sections and Articles made herein are to Sections or Articles, as the case may be, of this Plan.

2

CONFIDENTIAL    CCA_AB_00000047

## ARTICLE II

## PARTICIPATION IN THE FUND

Section 2.01    Trusts Eligible to Participate in the Fund. A trust may be a participating trust in the Fund provided the following requirements are met:

(a)    The trust is created or organized in the United States and is maintained at all times as a domestic trust in the United States.

(b)    The trust forms a part of (i) a stock bonus, pension or profit-sharing plan which is intended to be exempt from income tax under Section 501(a) of the Code by reason of qualifying under Section 401(a) of the Code, (ii) a group trust fund which is exempt from income tax under Section 501(a) of the Code and which expressly limits participation to trusts forming part of employers' stock bonus, pension or profit-sharing plans which are exempt from income tax under Section 501(a) of the Code by reason of qualifying under Section 401(a) of the Code or to plans of governmental units within the meaning of (iii) immediately following, or (iii) a plan established and maintained by a governmental unit for the exclusive benefit of the employees of such governmental unit or their beneficiaries for the purpose of distributing to such employees or beneficiaries the corpus and income of the funds accumulated under such plan; provided that with respect to any such plan it is impossible, prior to the satisfaction of all liabilities with respect to such employees and their beneficiaries, for any part of the corpus or income to be used for, or diverted to, purposes other than the exclusive benefit of such employees or their beneficiaries. With respect to a group trust fund described in clause (ii) above, the trustee of such group trust fund shall submit to the Trustee evidence satisfactory to the Trustee that such trust fund is tax exempt and that participation in such trust fund is limited as described in clause (ii) above. Notwithstanding anything to the contrary in this Section 2.01(b), if a plan described in clause (iii) above is a 457 Plan, then the corpus and income of the funds accumulated under such plan may remain subject to claims of general creditors of the employers participating in such plan to the extent required by Section 457 of the Code.

(c)    The instrument establishing the trust shall authorize the trustee or trustees to invest monies or other assets of such trust in the Fund, either specifically or by general language which is descriptive of the Fund, and shall specifically or in substance and effect adopt this Plan as a part of the plan of which the trust is a part. In the case of a group trust fund (as described in subsection (b)(ii) of this Section 2.01), the instrument establishing the group trust shall specifically or in substance and effect (i) adopt this Plan as a part of the group trust fund and as a part of each employer's plan participating in the group trust fund, and (ii) provide that each employer's plan participating in the group trust fund shall, by adopting the group trust, be deemed to have incorporated this Plan as a part of such employer's plan.

(d)    The Bank is a trustee, managing agent or other fiduciary with respect to such trust.

(e)    A trust established to administer a stock bonus, pension or profit-sharing plan covering employees within the meaning of Section 401(c)(1) of the Code, and which satisfies the

3

CONFIDENTIAL

CCA_AB_00000048

requirements set forth in Sections 2.01(a) - (d) above, may be a participating trust in the Fund provided the following additional requirements are met: (i) The plan covers only employees of a single employer or employees of interrelated partnerships. (ii) The employer shall either (A) be a law firm, accounting firm, investment banking firm, pension consulting firm or investment advisory firm engaged in furnishing services of a type that involves such knowledge and experience in financial and business matters that the employer is able to represent adequately its interests and those of its employees, or (B) prior to adopting this Plan, have obtained advice concerning this Plan from a person or entity other than the Trustee or an affiliated person of the Trustee or a person with a material business relationship with the Trustee, and who is by virtue of knowledge and experience in financial and business matters able to represent adequately the interests of the employer and its employees.

Section 2.02   <u>Persons Who May Not Invest in Participations in the Fund; Investment by the Bank</u>. No person shall be permitted to invest in the Fund other than an eligible trust. The Bank shall not invest any of their own monies in the Fund nor shall they have any interest in the assets held in the Fund other than the Bank in its capacity as Trustee or the Bank as a fiduciary of a participating trust, except to the extent permitted for a temporary period pursuant to this Section. If, because of a creditor relationship or any other reason, the Bank shall at any time acquire any interest in a participation, the participation to the extent necessary to liquidate such interest shall be withdrawn on the first Valuation Date on which such withdrawal can be effected. Except for temporary net cash overdrafts or as otherwise specifically provided herein or as permitted under applicable law, the Bank shall not lend money to the Fund, sell property to the Fund or purchase property from the Fund. The Bank shall not make any loan on the security of a participation in the Fund. The Bank shall not be deemed to have an interest in assets held in the Fund merely because it is designated or is acting as trustee, depository or in any other capacity pursuant to any deed of trust, mortgage indenture, deposit agreement or other instrument under which any of the assets of the Fund have been issued or are being held.


# ARTICLE III

## TITLE TO ASSETS; MANAGEMENT AND ADMINISTRATION; INVESTMENTS

Section 3.01   <u>Title to Assets</u>. The title to each asset of the Fund and each asset held in any liquidating account shall be vested in the Trustee and all such assets shall be deemed to be held by the Bank in a fiduciary capacity. Fund assets shall be kept separate and apart from all other property belonging to or in the custody of the Bank, except for cash which may be held by or on deposit with the Bank. Each participation in the Fund shall have a proportionate undivided interest in the Fund and shall share ratably with other participations in the income, expenses, profits and losses of the Fund, and no participation shall have any prior or preferential interest over any other participation in the Fund. Neither any participating trust nor any person whether or not having any interest in any participating trust or liquidating account shall have or be deemed to have any ownership interest in any particular asset of the Fund or of any liquidating account.

Section 3.02   <u>Management</u>. The Fund and each liquidating account shall be under the exclusive management and control of the Trustee. Subject to the foregoing, and provided the

4

CONFIDENTIAL

CCA_AB_00000049

Trustee deems such retention to be in accordance with all of the other provisions of this Plan, the Trustee, in its sole discretion, may delegate investment management duties and authority to an investment adviser selected by the Trustee in its discretion, or may retain one or more persons, which may be affiliated with the Trustee, to provide investment advisory services, proxy voting services, accounting, bookkeeping, recordkeeping or reporting services, and brokerage, banking, custodial or safekeeping and other ancillary services required for the administration of the Fund or any liquidating account. The Trustee may delegate to a custodian or other person its obligations thereunder to value the assets of the Fund.

Section 3.03    <u>Sub-Adviser's Duties for Assets in the Fund</u>. Where applicable, the sub-adviser of the Fund (the "Sub-Adviser") shall (i) manage the assets in accordance with the investment objective and policies of the Fund as stated herein in Sec. 3.04 as well as in the Disclosure Statement of the Fund, as the same may be amended or supplemented from time to time (the "Disclosure Statement"); and subject to the Bank's approval; (ii) supervise and direct the investment of the assets on a discretionary basis; (A) buy, sell, exchange, convert and otherwise trade in stocks, bonds and other securities and (B) establish and deal through accounts with one or more securities brokerage firms, dealers or banks.

Section 3.04    <u>Investment Objectives</u>. The Trustee may have invested and reinvested monies or properties of the Fund in such securities, investments and other properties as the Trustee, in its discretion, may deem proper without being limited to investments now or hereafter designated by statute or decisions of court as "legal investments" for funds held by fiduciaries. In investing and reinvesting as herein above provided, the primary objective of the Fund is to provide investment results that approximate the aggregate performance of the Standard & Poor's 400 Composite Stock Price Index. To accomplish this objective, the Trustee will have the Fund invest and reinvest in common stocks included in such index in approximately the same proportions as they are represented in such index. Notwithstanding the foregoing, the Trustee may have investments made in substantially similar collective investment funds (provided that, to the extent assets of the Fund are invested in another collective investment fund, such assets of the Fund shall be subject to the provisions of the declaration of trust creating such collective investment fund) or in other equity securities, including warrants or rights to subscribe to or securities convertible into such common stock or securities, short-term fixed income securities, including obligations of the U.S. Government and its agencies or instrumentalities, money market mutual funds registered under the 1940 Act, commercial paper, bank certificates of deposit, bankers' acceptances and repurchase agreements collateralized by such securities, stock index futures, options on stock index futures, options on securities indexes or such other investments as the Trustee in its sole discretion shall decide, provided that the Fund may engage in transactions with respect to stock index futures, options on stock index futures and options on securities indexes only to the extent the same are permitted by, and are in compliance with, the regulations under the Commodity Exchange Act applicable to persons who are not commodity pool operators.

(a)    In the event that a particular security is or shall be de-listed from an index in which the Fund invests, such security may be liquidated and the proceeds returned to the Fund; provided, however, that with respect to a security that has been or shall be de-listed from an index, that is or shall be subject to a shareholder proposal, an amount of such listed or de-listed security not less than $2,500 may be retained in a separate account in the name of the Bank as Trustee of the Fund

5

CONFIDENTIAL    CCA_AB_00000050

in compliance with applicable Securities and Exchange Commission holding requirements until the satisfaction of such holding requirements, at which time the separately retained amount shall be liquidated in its entirety and the proceeds paid to the Fund along with any additional compensation that may be necessary to account for a decrease in the price of the security during such holding period.

(b)     The decision of the Trustee as to whether or not an investment is of a type which may be purchased for the Fund shall be conclusive. Pending the selection and purchase of suitable investments, or the payment of expenses or other anticipated distributions, the Trustee may retain in cash, without liability for interest, such portion of the Fund as it shall deem reasonable under the circumstances. In exercising its discretion with respect to the acquisition, retention or disposition of any investments, the Trustee shall act in good faith and in accordance with the rule of prudence applicable to trustees in general as well as with any applicable limitations imposed under ERISA. (c) Notwithstanding any other provision of this Plan, (i) the Trustee shall not have invested any assets of the Fund in any investment or in any manner which will cause any participating trust to lose its status as an exempt trust under Sections 401(a) and 501(a) of the Code or similar provisions of subsequent Federal revenue laws and (ii) the Trustee shall not purchase for the Fund any property owned by a participating trust, nor shall the Trustee sell any property owned by the Fund to a participating trust.

Section 3.05     <u>Power to Administer Assets and Proxy Voting and Consent Rights</u>.

(a)     The Trustee shall have, in respect of the management, control and disposition of any and all assets of the Fund, the same rights, powers and privileges as if the Trustee were the absolute owner of such assets, including, without limitation, the following powers:

(i)     to sell (at public or private sale, and for cash and/or property or upon credit, or partly for cash and/or property and partly upon credit), exchange, lease, convert, grant options or enter into other transactions with respect to such assets at any time and from time to time;

(ii)     to vote by proxy or otherwise, or consent for any purpose, in respect of any securities or other property at any time held in the Fund;

(iii)     to commence, participate in or defend against any action, suit or proceeding in respect of any investment or asset of the Fund;

(iv)     to consent to or participate in any plan of reorganization, recapitalization, dissolution, merger or consolidation of any corporation, and in connection therewith to deposit any securities with, and to delegate discretionary or other powers to, any depository, committee or voting trustee, and to pay assessments and other charges, and, pursuant to any right created or granted by any such plan, to receive in exchange for any security another security or any other property, whether or not the same be of a character authorized by this Plan for the investment of the Fund or by the law of any jurisdiction for the investment of trust funds;

(v)     to borrow money and to mortgage or pledge any assets of the Fund as security for such borrowing;

6

CONFIDENTIAL

(vi)   to lend securities for such consideration and upon such terms and conditions as the Trustee, in its discretion, deems appropriate;

(vii)   to exercise any conversion privilege, subscription rights or other options pertaining to or in connection with securities or other property held by it; (viii) to allocate any property received or charge incurred to principal or income, or partly to each, as the Trustee may consider proper; (ix) to employ such counsel, accountants, sub-custodians, depositors, brokers, appraisers and agents as it shall deem advisable, and to pay out of the assets of the Fund their reasonable expenses and compensation; and (x) to exercise all such rights and privileges, and to do all other acts consistent with law and the terms of this Plan as the Trustee may deem necessary to control, manage and carry out the purposes of the Fund. (b) It is an objective of the Fund to exercise voting rights appurtenant to securities held by the Fund. Such voting or consent rights shall be exercised by the Trustee in the economic best interests of the participating trusts as the Trustee shall determine in its sole discretion. The Trustee may publish guidelines or criteria for the exercise of voting or consent rights. Any such guidelines or criteria may be amended by the Trustee at any time in its sole discretion. In exercising its discretion with respect to the exercise of voting or consent rights, the Trustee shall act in good faith and in accordance with the rule of prudence applicable to trustees in general and with the applicable requirements of ERISA.

Section 3.06   Registration of Securities or Other Property. The Trustee shall have the power to cause any security or other property at any time held in the Fund or in any liquidating account to be registered or held in the name of a nominee of the Trustee, or to be deposited with a centralized securities depository system, or to be held in such form that the same shall pass by delivery; and such registration, deposit or holding shall neither increase nor decrease the liability of the Trustee. Any corporation or other issuer, whose stocks, bonds or other securities or obligations are so registered, or its transfer agent or registrar may, without responsibility of investigation, treat such nominee as the actual owner thereof.

Section 3.07   Persons Dealing with the Trustee. No person dealing with the Trustee shall have any duty to inquire into the expediency, propriety, validity or necessity of any action taken by the Trustee, or be required to see to, or be liable for, the application of any money paid or property transferred or delivered to the Trustee.

Section 3.08   Maintenance of Cash and Readily Marketable Securities. The Trustee shall maintain in cash and readily marketable investments such percentage of the assets of the Fund as it shall deem necessary to provide adequately for the liquidity needs of the Fund and to prevent inequities among participating trusts having an interest therein.

Section 3.09   Transactions with Bank. No assets of the Fund shall be invested in stock or obligations, including time or savings deposits, of the Bank or any of its affiliates; provided, however, that such deposits may be made of funds awaiting investment or distribution. Assets of the Fund awaiting investment, may also be invested in money market mutual funds registered under the 1940 Act, including such funds from which the Bank receives certain fees, provided that the pro rata portion of such fees paid to the Bank attributable to the investment of the Fund are credited to the Fund.

CONFIDENTIAL                                                                 CCA_AB_00000052

Section 3.10    ERISA Transaction. Solely with respect to any participant that is subject to Title I of ERISA, the Trustee hereby acknowledges that it is a fiduciary within the meaning of Section 3(21) of ERISA and agrees to discharge its duties hereunder solely in the interest of the participating trusts, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of any enterprise of a like character and with like aims; provided that the Trustee shall not be liable for any act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is allocated to such other person by this Plan or pursuant to a procedure established in or pursuant to the plan, trust or agreement establishing the participating trust, except to the extent that:

       (i)    the Trustee participated knowingly in, or knowingly undertook to conceal, an act or omission of such person, knowing such act or omission to be a breach of fiduciary responsibility;

       (ii)    the Trustee, by its failure to act in a manner which would be consistent with Section 404(a)(1) of ERISA in the administration of its specific responsibilities which give rise to its status as a fiduciary, has enabled such other person to commit a breach of fiduciary responsibility; or

       (iii)    the Trustee has knowledge of a breach of fiduciary responsibility by such other person, unless the Trustee makes reasonable efforts under the circumstances to remedy the breach.

Section 3.11    Appointment. Each eligible trust subject to ERISA shall appoint and acknowledge in writing that the Trustee shall be an "Investment Manager" as defined in Section 3(38) of ERISA with respect to the assets of such eligible trust invested in the Fund and appoint the Trustee as a "named fiduciary" within the meaning of Section 402(c)(3) of ERISA for the limited purpose of appointing any Sub-Adviser(s) as an "investment manager" as that term is defined in Section 3(38) of ERISA.

Section 3.12    Prohibited Transactions. Unless appropriate exemptions shall have been provided or shall have been obtained under Section 408 of ERISA and Section 4975 of the Code, the Trustee and any Sub-Adviser shall not knowingly permit the Fund to engage in any transaction which would be prohibited under Section 406 of ERISA or Section 4975 of the Code if engaged in directly by a participating trust instead of by the Trustee on behalf of the Fund.

Section 3.13    Indemnification.

       (a)    To the extent permitted by law, the Trustee, its directors, officers and employees and its agents and their directors, officers and employees shall be indemnified and held harmless by the Fund from and against any and all claims of liability arising under or in connection with this Plan or the operation of the Fund or property held by the Fund to which the Trustee or other indemnified persons shall be subject by reason of any act or omission, including all expenses reasonably incurred in the defense of such act or omission, unless it shall be established by a final

8

CONFIDENTIAL                                                          CCA_AB_00000053

judgment of a court of competent jurisdiction that such act or omission involved a violation of any fiduciary duties of such persons, including duties imposed by part 4 of Title I of ERISA where applicable to a participant that is subject to Title I of ERISA. (b) The Fund shall pay expenses (including attorneys' fees and disbursements), judgments, fines and amounts paid in settlement incurred by the Trustee or other indemnified persons described in subsection (a) above in advance of final adjudication of such proceedings, provided that the Trustee or other indemnified person shall repay such advances to the Fund if it is established by a final judgment of a court of competent jurisdiction that the Trustee or other indemnified person violated any fiduciary duty, including duties imposed under Part 4 of Title I of ERISA, owed to a participant that is subject to Title I of ERISA.

## ARTICLE IV

## VALUATIONS

Section 4.01 <u>When Valuation Shall be Made</u>. The Fund and the assets thereof shall be valued by the Trustee or a custodian or sub-custodian to which the valuation obligation has been delegated, as of the close of business on a business day at such times as the Trustee shall determine, but not less frequently than once during every three months.

Section 4.02 <u>Method of Valuation</u>. The Trustee shall use the following method in determining the fair market value of the Fund and its assets (reference in this Article IV to "value" shall mean "fair market value"):

(a) the value of any security listed on any national securities exchange or quoted in the National Market System of NASDAQ ("NASDAQ/NMS") shall be determined by taking the last quoted sales price on the Valuation Date on the exchange where the security is primarily traded (or, in the discretion of the Trustee, as reported on the New York Stock Exchange ("NYSE") Composite Transactions Tape), or on NASDAQ, as the case may be, unless no sale has been reported for that date, in which event the mean between the closing bid and asked prices, if any, on such day on such exchange (or, in the discretion of the Trustee, as reported on the NYSE Composite Transactions Tape) or on NASDAQ shall be used, or if there be no such bid and asked prices, then the value as determined by the Trustee shall be used;

(b) except as provided in paragraph (c) below, the value of any security not listed on any national securities exchange or quoted in the NASDAQ/NMS shall be determined by taking the mean between the bid and asked prices, if any, by reputable brokers of or dealers in such security reported for the Valuation Date, or if there be no such bid and asked prices, then the value as determined by the Trustee shall be used;

(c) United States Treasury bonds and other obligations, and obligations of Federal governmental and quasi-governmental agencies, shall be valued at the bid prices on the Valuation Date;

9

CONFIDENTIAL

CCA_AB_00000054

(d)     the value of any asset other than assets referred to in subsections (a), (b) and (c) immediately above, or the value of an asset so referred to which for some reason cannot be valued pursuant to such subsections, shall be the value thereof as of the close of business on the Valuation Date, as determined by the Trustee. In determining such value, the Trustee may obtain and consider a quotation from a reputable source, such as a pricing or quotation service, a security dealer, a broker, or an investment banker; the value of comparable property; an appraisal; or such other information as it deems pertinent;

(e)     subject to Section 4.08, (i) if the purchase price of an investment purchased has not been paid, such investment shall be valued as a security held, and the cash account shall have deducted therefrom the purchase price including brokers' commissions and other expenses; (ii) an investment sold but not delivered pending receipt of the proceeds shall be valued at the net sales price; and (iii) for the purpose of valuation of an investment, except an investment sold but not delivered, it shall not be necessary to deduct from the value ascertained brokers' commissions or other expenses which would be incurred upon a sale; and

(f)     notwithstanding anything herein to the contrary, (i) the Trustee may accept, for valuation purposes, the valuation placed on investments held in the Fund as of any Valuation Date by any recognized statistical valuation service selected by the Trustee for the purpose of making such valuations; provided that the Trustee shall make such periodic checks of the valuations provided from time to time by any such service as shall be necessary to satisfy itself that such valuations are accurate and reliable; (ii) with respect to any security which the Fund then owns in order to meet an objective of providing a total return equivalent to the return on a specific index which includes such security, as described in Section 3.04, the Trustee may in its discretion determine the value of such security in the same manner as is followed by the sponsors of such index in determining the return thereon, as long as the Trustee determines in its sole discretion that such manner of determining value is reasonable, appropriate and practicable under the circumstances; and (iii) the Trustee may make such other adjustments in the method of determining the value of the Fund and the assets thereof and in such value as it shall determine are reasonable and necessary to achieve proper tracking of any index, the return on which the Fund is attempting to replicate as described in Section 3.04, provided that such adjustments are made in good faith and in the exercise of due care. For the purposes of this Section 4.02, sales and bid and asked prices reported in newspapers of general circulation in New York City, or in standard financial periodicals, or in the records of such exchanges, may be selected by the Trustee.

Section 4.03     Value of the Fund. The value of the Fund as of a Valuation Date shall be deemed to be the excess of:

(a)     the sum obtained by adding together (i) the aggregate value, as determined pursuant to Section 4.02, of all assets, other than cash, included in the Fund on such Valuation Date, (ii) the amount of cash held in the principal account of the Fund and (iii) the amount of all interest which, under the provisions of Section 4.04 of this Plan, are to be treated as accrued as of each Valuation Date; over

(b)     the amount of all income of the Fund which the Trustee has determined pursuant to Section 6.02 of this Plan to distribute to participating trusts and all unpaid liabilities,

10

CONFIDENTIAL                                                CCA_AB_00000055

charges, expenses and taxes of the Fund which are due or which the Trustee in its discretion shall determine to be accrued as of such Valuation Date. For the purposes of such valuation the amount of all such liabilities, charges, expenses and taxes which are unliquidated or unascertained shall be such amount as shall be determined by the Trustee in its discretion.

Section 4.04 <u>Accrued Interest</u>. For the purpose of valuation of the Fund and determining the income thereof, except insofar as the following would be inconsistent with the provisions of Section 4.02(a) and (f) to the extent the same is then applicable, the amount of all current interest accrued but not then due or payable shall be treated as accrued unless in the judgment of the Trustee such interest shall not be paid when due. For purposes of valuation of any security transferred to the Fund, there shall be included as part of the value of such security the amount of all current interest accrued as of the date of such transfer which, in the judgment of the Trustee, shall be paid when due.

Section 4.05 <u>Division into Units</u>. In determining the proportionate interest of each participating trust in the Fund, the Fund shall at all times be divided into units of equal value, and the proportionate interest of each participating trust shall be expressed by the number of such units allocated to such trust. The Trustee may, from time to time, determine the total number of units into which the Fund will be divided and the consequent change in the value per unit. No part of a participation shall be withdrawn unless the amount so withdrawn is equal to the then value of one or more of such units.

Section 4.06 <u>Valuation of Units</u>. The value on any Valuation Date of each unit into which the Fund is divided, as hereinafter provided, shall be determined by dividing the then value of the Fund by the number of units then outstanding; provided, however, that fractions of a cent may be omitted.

Section 4.07 <u>Time within Which Valuation Shall be Made; Records of Valuations; Statements of Condition</u>. The value of the Fund and of each unit into which the Fund shall have been divided shall be determined, pursuant to the provisions of this Article IV, within such reasonable time (which in usual circumstances should not exceed ten business days) after each Valuation Date, and records of such determination of value shall be prepared and preserved in such form or manner, and such statements of condition of the Fund shall be prepared and preserved, as shall be determined by the Trustee.

Section 4.08 <u>Allocation of Transaction Costs and Expenses</u>. Notwithstanding the provisions of Section 4.02(e), if transaction costs and expenses (including brokerage commissions and any loss on sale of securities necessitated by a withdrawal) are incurred upon the purchase or sale of any asset occasioned by the admission to or withdrawal from the Fund of one or more participations, then such costs and expenses may be allocated to such participations if the Trustee determines that such allocation is reasonably necessary in order to implement the Fund's investment strategy and meet the Fund's investment objective, as described in Section 3.04, as long as such allocation is made in a fair, consistent and equitable manner.

11

CONFIDENTIAL    CCA_AB_00000056

# ARTICLE V

## ADMISSION TO AND WITHDRAWAL FROM THE FUND

Section 5.01   Admissions and Withdrawals to be Based on Valuations. Except as provided in Section 4.08, no participant shall be admitted to or withdrawn from the Fund except on the basis of the value of the Fund and of the units into which it is divided, determined as provided in Article IV hereof, as of the Valuation Date for which such determination is made. No part of a participation shall be withdrawn unless the amount so withdrawn is equal to the value at such time of one or more whole units.

Section 5.02   Notice of Intention Required with Respect to Admissions and Withdrawals. No participation shall be admitted to or withdrawn from the Fund unless a written request for or notice of intention of taking such action shall have been entered in the records of the Trustee and approved by the Trustee by such time prior to the Valuation Date concerned as the Trustee shall specify, and no such request or notice may be canceled or countermanded after such Valuation Date or such earlier time as the Trustee shall specify; provided, that, the Trustee may in its discretion waive the foregoing requirements.

Section 5.03   Withdrawal by Trustee. The participating interest of any trust in the Fund may be withdrawn in whole or in part by the Trustee, in its sole discretion; subject, however, to all of the requirements and provisions of this Plan with respect to the withdrawal of participations in the Fund.

Section 5.04   Manner of Payment or Satisfaction of Participation Withdrawn. Subject to the provisions hereinafter stated, upon the withdrawal of a participation, there shall be paid or transferred out of the Fund to the participating trust an amount equal to the value, as determined in Article IV, of the participation withdrawn on the date as of which such withdrawal is effected. The Trustee in its sole discretion may make any such payment to a participating trust promptly after settlement of any transactions necessitated by such withdrawal. The Trustee may, however, in its sole discretion, withhold and retain from the value of any such participation withdrawn, such amount as shall represent part or all of the income accrued thereon but not actually collected by the Trustee as of the date of such withdrawal, provided that no such accrued income shall be withheld as to any one or more participating trusts withdrawing as of any one date unless such accrued income shall be withheld with respect to all participating trusts withdrawing as of that date. Within a reasonable time after such withheld income is actually collected, such withheld income shall be distributed to the participating trust. Any transaction costs necessitated by the withdrawing of the participation may be charged to the withdrawing participating trust.

In the event that any income accrued but not actually collected by the Trustee shall be distributed to a participating trust upon the withdrawal of a participation in the Fund, and thereafter such accrued income shall not actually be collected by the Trustee in whole or in part on its due date or within a reasonable time thereafter, the Trustee shall have the right to charge to and recover from such participating trust the amount of such accrued income so distributed which shall then not be actually collected, but if such participating trust shall have then terminated or been

12

CONFIDENTIAL                                                                CCA_AB_00000057

distributed, the Trustee may, in its sole discretion, charge the same to the Fund as current operating loss.

Any withdrawal from the Fund may, at the option of the Trustee, be made in cash or in kind, or partly in cash and partly in kind.

Section 5.05   Disqualification of Participating Trust. Notwithstanding any other provision of this Plan, if the Trustee receives notice that any participating trust is not qualified or ceases to be eligible to participate in the Plan pursuant to Section 2.01, or that the instrument governing any participating trust no longer authorizes participating in the Fund, or if the Bank ceases to be a fiduciary of any participating trust, all interest in the Fund of such participating trust shall be withdrawn on the Valuation Date coincident with or next succeeding the date of receipt by the Trustee of such notice or the date the Bank ceases to be a fiduciary.

## ARTICLE VI

## INCOME

Section 6.01   Computation of Income. On each Valuation Date, the Trustee shall determine the net investment income collected or accrued since the last preceding Valuation Date. For the purpose of determining the net investment income interests of the beneficiaries of any participating trust, the investment income earned by the Fund between dates of income distribution or between Valuation Dates shall be deemed to accrue at an equal rate day to day, and the Trustee shall not be required by the trustee of any participating trust or any person having any interest therein to make any calculation for the purpose of determining the amount of investment income actually earned or accrued for any period other than a full period between such distribution or Valuation Dates. Any investment income actually collected by the Trustee which, because of doubt as to its payment on its due date or for any other reasons, shall not have theretofore been accrued (in accordance with Section 4.04) in respect of any participating trust or be payable thereto as provided herein, shall be credited ratably among the trusts participating during the period such income shall have accrued, but if any such participating trust shall have then terminated or been distributed, the Trustee may, in its sole discretion, credit the amount to which the same would otherwise be entitled to the Fund as current operating profit.

Section 6.02   Distribution of Gains and Income. Any capital gains or income in the Fund may be distributed by the Trustee to participating trusts in such amounts and at such times as the Trustee in its sole discretion shall decide.

## ARTICLE VII

## LIQUIDATING ACCOUNTS

Section 7.01   Segregation of Investments. The Trustee may at any time segregate and place in a liquidating account any investment which the Trustee, in its discretion, deems advisable to

CONFIDENTIAL                                                                              CCA_AB_00000058

distribute in kind or to liquidate in order to prevent any participating trust from suffering any loss or prejudice because of any withdrawal of a participation or part thereof from the Fund. If, for any reason, an investment is withdrawn in kind from the Fund for the benefit of all participants at the time of such withdrawal and such investment is not distributed ratably in kind, it shall be segregated and administered or realized upon for the benefit ratably of all participants in the Fund at the time of withdrawal.

Section 7.02    Powers and Duties of Trustee with Respect to Liquidating Accounts. Each liquidating account established by the segregation of an investment, as set forth in Section 7.01, shall be maintained and administered solely for the benefit of, and the proceeds thereof shall be distributed solely to, the trusts participating in the Fund at the time such liquidating account is established. Each distribution from any such liquidating account shall be made ratably in accordance with the respective interests of the participating trusts having an interest in such liquidating account. The Trustee shall have, with respect to any asset held in any such liquidating account, or any asset received in exchange therefore, whether the same be real or personal property, the same powers and authority as are set forth in Article III with respect to assets of the Fund. It shall be the duty of the Trustee to effect liquidation of the investments held in any liquidating account when, but not until, it deems such liquidation to be in the best interests of the participating trusts interested therein.

Section 7.03    Limitation on Investment of Further Monies in a Liquidating Account. No money in a liquidating account shall be invested, other than in short term investments designated in Section 3.04 pending distribution, nor shall the Trustee invest any money from the Fund in a liquidating account except that, in order to protect any investment held therein, the Trustee may borrow monies from others on the security of the investments held in the liquidating account or may advance its own money.

Section 7.04    Distributions. Upon the final liquidation of all investments in any liquidating account, the Trustee shall, after paying all reasonable expenses relating to liquidation of the account and after repaying any loans or advances made for the protection of any investment held therein, distribute all monies then held by it in such liquidating account as soon as practicable thereafter. Distribution of cash received by way of income or partial liquidation of any investment held in a liquidating account shall be made at such convenient intervals as the Trustee deems appropriate, and no asset, whether in cash or in kind, shall be withdrawn from any such liquidating account to pay or satisfy in whole or in part any share therein, except upon like proportionate distribution to all participating trusts having any interest therein.

Section 7.05    Audit of Liquidating Accounts. Each liquidating account shall be audited in the manner provided in Article VIII, except that the report of such audit need not show the valuation of any item in such liquidating account. The report of such audit shall be required to be sent or made available only to those persons to whom an accounting would ordinarily be rendered, as provided in Section 8.06, of each participating trust interested in such liquidating account.

Section 7.06    Effect of Segregation of an Asset into a Liquidating Account. After an asset of the Fund has been segregated and set apart in a liquidating account, it shall not be considered part of the Fund for the purpose of calculating the valuation of the Fund in connection with any

14

CONFIDENTIAL

CCA_AB_00000059

admission or withdrawal but shall in all other respects continue to be subject to and be governed by all the provisions of this Plan, so far as the same may be applicable thereto.

Section 7.07 <u>Expenses</u>. The Trustee shall not receive any compensation for managing liquidating accounts, but all expenses incurred by the Trustee in the administration of liquidating accounts, which would be chargeable to the respective participating trusts if incurred in the administration of such trusts, may be charged to the liquidating accounts.

# ARTICLE VIII

## ACCOUNTS OF THE TRUSTEE AND AUDIT THEREOF

Section 8.01 <u>Record of Participants and Interests.</u> A separate account will be maintained to reflect the interest of each participating trust, including separate accounting for contributions to the Fund by each such participating trust, disbursements made from each such participating trust's account, and the investment experience of the Fund as allocable to that account. Certificates of interest or participation in the Fund shall not be issued.

Section 8.02 <u>Accounting Records</u>. The Trustee shall record all transactions with respect to the Fund and each liquidating account. Such accounts shall be kept in such form as the Trustee may determine, subject to the provisions of applicable law.

Section 8.03 <u>Audit of Accounts</u>. Within 90 days after the end of each fiscal year of the Fund, the Trustee shall cause an audit to be made of the Fund by independent public accountants responsible only to the Board of Directors of the Trustee. A report of such audit shall be prepared promptly upon the completion of such audit, and within such 90-day period, which shall include a list of the investments comprising the Fund on the last day of the period covered by such audit, showing the cost and current market value of each investment; a statement for the period since the preceding report showing purchases, with cost; sales, with profit or loss and any other investment changes; all income and disbursements during the period to which the audit relates; and appropriate comments as to any investments in default as to principal or interest.

Section 8.04 <u>Fees and Expenses of the Auditors</u>. The auditors shall be entitled to receive compensation for their services on the basis of the compensation customarily paid for similar services and shall also be entitled to be reimbursed for any expenses incurred by them in connection with the services rendered.

The compensation and expenses of the auditors for their services with respect to the Fund shall be paid by the Trustee out of the assets of the Fund, and for their services with respect to any liquidating account shall be paid out of such liquidating account.

Section 8.05 <u>Liability of the Auditors</u>. In auditing the accounts of the Fund, the auditors shall be required to make such examination of the accounts and records as they deem reasonably necessary. The auditors shall incur no liability for any act done or suffered by them in good faith and in the exercise of reasonable care.

CONFIDENTIAL

CCA_AB_00000060

Section 8.06   Annual Financial Report. A copy of the report of each audit prepared pursuant to Section 8.03 shall be furnished, or notice shall be given that a copy of such report is available and shall be furnished without charge upon request, to each person to whom a regular periodic accounting with respect to any participating trust would ordinarily then be rendered. The cost of printing, publication and distribution of such reports shall be borne by the Bank. In addition, a copy of such report shall be furnished upon request to any person for a reasonable charge and may be furnished to prospective participating trusts.

Section 8.07   Other Reports. The Trustee shall prepare, at least once each year, a report on the voting of proxies appurtenant to shares of stock held by the Fund, and a copy of each such report shall be furnished, or notice shall be given that a copy of such report is available and will be furnished without charge upon request, to each person who would then be entitled to receive the annual financial report referred to in Section 8.06. The cost of printing, publication and distribution of such reports shall be borne by the Bank. In addition, copies of such reports may be furnished to prospective participating trusts and such other persons as the Trustee shall deem appropriate.

Section 8.08   Filing of Tax Returns. The Trustee or its designated agent shall prepare and file, or cause the accountants to prepare and file, any required Federal information tax return and any required state and local income tax and information returns for each tax year of the Fund.


# ARTICLE IX

# TAXES

Section 9.01   Taxes Paid by the Trustee. All taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws upon or in respect of the assets of the Fund or the income thereof shall be a charge against the Fund.

Section 9.02   Compliance with Tax Laws. If any of the provisions of this Plan are in any way contrary to or inconsistent with any law of the United States or any rule or regulation of the Internal Revenue Service or the United States Treasury Department, prevailing from time to time, with respect to (i) the computation or payment of Federal income taxes, (ii) the keeping of the accounts of the Trustee for the computation of such taxes, or (iii) the distribution among the participating trusts of any income or deduction or profits or losses of the Fund in connection with such taxes, the Trustee shall incur no liability in complying with any such law, rule or regulation. If any of the provisions of this Plan are in any way contrary to or inconsistent with any applicable state law, or any applicable rule or regulation of the taxing authorities of the State of New York, or of any other state, or any political subdivision thereof, prevailing from time to time with respect to (1) the computation or payment of any tax or taxes due such states, or any political subdivision thereof, (2) the keeping of the accounts of the Trustee for the computation of such taxes, or the charging of the same against the income or principal of the Fund or (3) the distribution among the participating trusts of any income or deductions or profits or losses of the Fund in connection with such taxes, the Trustee shall incur no liability in complying with any such law, rule or regulation.

16

CONFIDENTIAL                                                                                    CCA_AB_00000061

Section 9.03 <u>Information Required to be Supplied by the Trustee</u>. The Trustee shall report to the trustee of each participating trust such information as may be necessary concerning the share of such participating trust in the income and profits earned by the Fund during each fiscal year and the sources thereof to enable such trusts to make such income tax returns or reports as may be required of them by the Federal government, or any state or political subdivision thereof. The Trustee, at its option, may report directly to the United States Department of Labor such information as may be required to fulfill each participating trust's annual reporting obligation to the United States Department of Labor with respect to its investment in the Fund.

## ARTICLE X

## EXPENSES AND COMPENSATION OF THE TRUSTEE

Section 10.01 <u>Compensation</u>. The Bank may assess each participating trust a fee in connection with its individual account with the Bank. The Bank shall not at any time receive any fee or compensation for its services as Trustee of the Fund or receive, either from the Fund or from any participating trust, any additional fees or commissions by reason of the fact that such trust is a participating trust.

Section 10.02 <u>Expenses</u>. The Trustee shall not pay out of the Fund any fee, commission or compensation for management thereof, but the Trustee may charge against the Fund the reasonable compensation for services in respect of the Fund rendered by accountants and brokers and expenses incident to such services, in conformity with applicable law. The Trustee may also reimburse itself out of the Fund for such reasonable expenses incurred by it in the administration thereof as would have been chargeable to the respective participating trusts if incurred in the separate administration of their funds, in conformity with applicable law. Notwithstanding the foregoing, the Trustee shall not charge the Fund for the costs of organizing the Fund or for any fee to any investment or proxy voting adviser, except fees paid to the advisers of money market mutual funds registered under the 1940 Act in which the Fund may invest short term balances awaiting investment or distribution (other than as provided by Section 3.09 of this Plan).

## ARTICLE XI

## AMENDMENTS AND TERMINATION

Section 11.01 <u>Amendments and Termination</u>. This Plan may be amended from time to time by the Bank. Any such amendment shall be filed with the original Plan, together with a certified copy of the resolution of the Board of Directors or Trust Committee of the Bank approving the same, and shall be effective ten days after the same shall be so filed. Notice of such amendment shall be sent by the Bank to each person to whom a regular periodic accounting with respect to any participating trust ordinarily would be rendered, and also, in the case of any amendment affecting liquidating accounts, to each person to whom would be ordinarily rendered a regular periodic

17

CONFIDENTIAL                                                                CCA_AB_00000062

accounting with respect to any trust which shall have been a trust participating in the Fund on the date of establishment of any liquidating account so affected.

Section 11.02 <u>Termination of the Fund</u>. The Bank may at any time, in its discretion, when authorized to do so by its Board of Directors or the Trust Committee, direct the termination and liquidation of the Fund. The Trustee shall send notice of the adoption of such resolution to each person acting as a trustee with respect to any participating trust in the Fund and to applicable regulatory authorities. Thereafter, no further trusts shall be admitted thereto, and all of the assets then held in the Fund shall thereupon be deemed to be transferred to a liquidating account as provided in Section 7.01, and shall be held and disposed of as provided in Article VII.

# ARTICLE XII

## MISCELLANEOUS

Section 12.01 <u>Discretion of the Trustee to be Absolute; How Exercised</u>. Whenever this Plan provides that any power may be exercised by the Trustee in its discretion, or any action may be taken by the Trustee in its discretion, the discretion of the Trustee, when exercised in good faith and with reasonable care, shall be absolute and binding upon all participating trusts and all persons having or claiming any interest in the Fund or in any liquidating account.

Section 12.02 <u>Advice of Counsel</u>. The Trustee may, but shall not be required to, advise with qualified legal counsel, selected with due care, with respect to the meaning and construction of this Plan or any provision hereof, or concerning its powers or obligations hereunder, and shall be protected for any action taken or omitted by it in good faith, pursuant to the opinion of such counsel.

Section 12.03 <u>The Trustee to Represent the Fund in Judicial Proceeding</u>. In any judicial proceeding affecting any property or security constituting in whole or in part the Fund or any liquidating account, each participating trust and each and every person having or claiming to have any interest in any participating trust and in the Fund or in any liquidating account, shall be deemed to be fully represented by the Trustee for all purposes if the Trustee shall be a party to such proceeding before the tribunal in which such proceeding shall be pending.

Section 12.04 <u>Effect of Mistakes</u>. No mistake made in good faith and in the exercise of due care in connection with the administration of the Fund or any liquidating account shall be deemed to be a violation of this Plan, or of any applicable law or regulation, if, promptly after the discovery of the mistake, the Trustee shall take whatever action may be practicable in the circumstances to remedy the mistake.

Section 12.05 <u>Prohibition Against Transfer</u>. No participating trust shall have the right to transfer, assign, pledge or otherwise encumber or dispose of all or any part of its equity or interest in the Fund, and any attempt to make any such transfer, assignment, pledge, encumbrance or disposal shall be regarded as a withdrawal of the participation of such trust, whereupon the provisions of Section 5.03 shall be applied.

18

CONFIDENTIAL

CCA_AB_00000063

Section 12.06 <u>Controlling Law</u>. The terms, provisions and effect of this Plan shall be governed by and construed in accordance with the law of the State of New York, to the extent that federal law does not control and without giving effect to the principles of conflict of laws.

Section 12.07 <u>Notices and Proof of Service Thereof</u>. Whenever any notice or report is required to be given under this Plan to any person, such notice or report shall be deemed to be properly given either by service thereof upon such person personally, or by depositing the same in a United States Post Office or letter box, postage prepaid, or by overnight courier, in each case addressed to such person at his last known address.

Section 12.08 <u>Titles and Subtitles</u>. Titles of the Articles and Sections are for the convenience of reference only, and in case of any conflict, the text of this Plan, other than such titles or subtitles, shall in each and every instance be controlling.

Section 12.09 <u>Successors and Assigns</u>. This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the Trustee and its successors, the trustees of each participating trust and their successors, and each person having or claiming to have any interest vested or contingent in any participating trust, the Fund or any liquidating account, his executors, administrators, successors, heirs and assigns.

Section 12.10 <u>Copy of Plan Available</u>. A copy of this Plan shall be available at the principal office of the Trustee for inspection during all banking hours and upon request a copy of the Plan shall be furnished to any person entitled thereto under the rules and regulations prevailing from time to time of such regulatory bodies as have jurisdiction.

Section 12.11 <u>Invalidity of any Provision</u>. In the event any clause, provision, or provisions of this Plan prove to be or are adjudged invalid or void for any reason, such void or invalid clause, provision or provisions shall not affect any of the other provisions of this instrument, but the balance of the provisions hereof shall remain operative and shall be carried into effect as far as legally possible.

Section 12.12 <u>Effect of the Plan</u>. With respect to any monies invested in the Fund by any participating trust, the trustee of such participating trust and all persons interested therein shall be bound by the provisions of this Plan as the same may be amended from time to time pursuant to its terms.

Section 12.13 <u>Effect of Statutes and Regulations</u>. Notwithstanding any of the provisions of this Plan, the Fund shall be administered in conformity with applicable state laws and the laws of the United States, and all rules and regulations from time to time promulgated thereunder, pertaining to the collective investment of trust funds by the Bank and, to the extent the Bank deems it appropriate even if the same are not required to be observed by the Bank, the rules and regulations of the Comptroller of the Currency pertaining to the collective investment of trust funds by national banks, all of which shall be deemed to be part of this Plan.

CONFIDENTIAL                                                                                          CCA_AB_00000064

## ARTICLE XIII

## EFFECTIVE DATE OF PLAN

The effective date of this Plan shall be the date declared by the President or a Senior Vice President of the Bank.

IN WITNESS WHEREOF, the Bank has caused this Plan to be signed and its seal to be hereunto affixed and duly attested by its proper officers thereunto duly authorized, this _ th day of September, 2011.

AMALGAMATED BANK,

By: _____

Name: Edward Grebow

Title: President & CEO

[Seal]

Attest:

_____

Name: Deborah Silodor

Title: Deputy General Counsel & Senior Vice President

20

CONFIDENTIAL

CCA_AB_00000065