UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, ) | Civil Action No. 3:16-cv-02267 |
| ) | |
| Plaintiff, ) | Honorable Aleta A. Trauger |
| ) | |
| vs. ) | PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF SETTLEMENT; AND (II) APPROVAL OF NOTICE TO THE CLASS |
| ) | |
| CORRECTIONS CORPORATION OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................1

II.  SUMMARY OF THE LITIGATION ...............................................................3

III.  THE SETTLEMENT TERMS...........................................................................5

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............6

    A.  The Class Representative and Class Counsel Have Adequately
       Represented the Class ..........................................................................8

    B.  The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length
       Negotiation Process ............................................................................8

    C.  The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria..................10

       1.  The Settlement Is Adequate in Light of the Costs, Risks and Delay
          of Trial and Appeal ..................................................................10

       2.  The Method of Distributing Relief Is Effective.........................11

       3.  Attorneys' Fees and Expenses ................................................13

       4.  There Are No Agreements Other than with Respect to Opt Outs.............14

    D.  Class Members Are Treated Equitably .................................................14

    E.  The Judgment of Experienced Trial Counsel.........................................14

    F.  The Sixth Circuit's Public Interest Factor Is Satisfied...........................15

V.  The Proposed Notice Program Is Appropriate ...................................................16

VI.  Proposed Schedule of Events .......................................................................17

VII.  CONCLUSION..........................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981),
    *vacated on other grounds and modified*, 670 F.2d 71
    (6th Cir. 1982).................................................................................................................15

*Hyland v. HomeServices of Am., Inc.*,
    No. 3:05-CV-612-R, 2012 WL 122608
    (W.D. Ky. Jan. 17, 2012)................................................................................................10

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742
    (D. Nev. Oct. 19, 2012)....................................................................................................9

*In re Bear Stearns Cos.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)..............................................................................9

*In re Chemed Corp. Sec. Litig.*,
    No. 1:12-cv-00028-MRB, 2014 WL 12650629
    (S.D. Ohio Mar. 27, 2014)..............................................................................................17

*In re Genworth Fin. Sec. Litig.*,
    No. 3:14-cv-682-JAG, 2016 U.S. Dist. LEXIS 132269
    (E.D. Va. Sept. 26, 2016)................................................................................................13

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635
    (N.D. Cal. Mar. 3, 2015)..................................................................................................9

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167
    (E.D. Tenn. May 17, 2013)..............................................................................................13

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661
    (E.D. Tenn. June 30, 2014)..............................................................................................13

*In re Skelaxin Metaxalone Antitrust Litig.*,
    No. MDL 2343, 2014 U.S. Dist. LEXIS 60214
    (E.D. Tenn. Apr. 30, 2014)..............................................................................................15

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................................7

*IUE-CWA v. GMC*,
　238 F.R.D. 583 (E.D. Mich. 2006) ........................................................15

*Miracle v. Bullitt Cnty., Ky.*,
　No. 05-130-C, 2008 WL 3850477
　(W.D. Ky. Aug. 15, 2008) ........................................................10

*Motter v. O'Brien*,
　No. 2:13-cv-216, 2014 U.S. Dist. LEXIS 79982
　(S.D. Ohio June 12, 2014) ........................................................15

*NYS Teachers' Ret. Sys. v. GMC*,
　315 F.R.D. 226 (E.D. Mich. 2016),
　*aff'd sub nom. Marro v. NYS Teachers' Ret. Sys.*,
　No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ....................................12

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
　No. 3:05-cv-07393-JGC, slip op.
　(N.D. Ohio July 19, 2016) (Ex. 3) ........................................................17

*The Eshe Fund v. Fifth Third Bancorp*,
　No. 1:08-cv-00421, slip op.
　(S.D. Ohio Nov. 20, 2013) (Ex. 2) ........................................................13

*UAW v. GMC*,
　497 F.3d 615 (6th Cir. 2007) ........................................................15

*Williams v. Vukovich*,
　720 F.2d 909 (6th Cir. 1983) ........................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
　§78j(b)........................................................3
　§78t(a)........................................................3
　§78u-4(a)(4)........................................................5, 6, 14

Federal Rules of Civil Procedure
Rule 23 .................................................................................................................3
Rule 23(a)(2)..........................................................................................................3
Rule 23(e)...............................................................................................................7
Rule 23(e)(1)......................................................................................................3, 6
Rule 23(e)(2)...................................................................................................2, 6, 7
Rule 23(e)(2)(A)....................................................................................................8
Rule 23(e)(2)(B)....................................................................................................8
Rule 23(e)(2)(C)(i)...............................................................................................10
Rule 23(e)(2)(C)(ii)..............................................................................................11
Rule 23(e)(2)(C)(iii).............................................................................................13
Rule 23(e)(2)(C)(iv).............................................................................................14
Rule 23(e)(2)(D)...................................................................................................14
Rule 23(e)(3)..........................................................................................................7
Rule 23(f)...............................................................................................................8

Treasury Regulation
§1.468B-1................................................................................................................5

**SECONDARY AUTHORITIES**

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action
Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) ......................................2

Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Plaintiff"), on behalf of itself and each of the Class Members, submits this memorandum in support of preliminary approval of the Settling Parties' Stipulation of Settlement, dated June 24, 2021 (the "Stipulation"), which is being filed concurrently herewith, and moves for an order approving the form and manner of the settlement notice to Members of the Class and the scheduling of a hearing ("Final Approval Hearing" or "Settlement Hearing") on the final approval of the Settlement, the proposed Plan of Allocation and Class Counsel's application for an award of attorneys' fees and litigation expenses. The Settling Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Notice Order") is filed herewith.[1]

## I. INTRODUCTION

As set forth in the Stipulation, the Settlement provides for the payment of $56 million in cash to resolve this securities class action against all Defendants. This is a significant recovery for the Class obtained after five years of hard-fought litigation among sophisticated parties and experienced counsel and follows extensive, arm's-length mediation overseen by experienced mediators, the Honorable Layn R. Phillips (Ret.) and Gregory P. Lindstrom of Phillips ADR. With the benefit of substantial briefing, over two years of effort, and just weeks before trial, Judge Phillips and Mr. Lindstrom made, and on April 15, 2021, the Settling Parties accepted, a mediator's proposal to resolve the case for $56 million in cash.

The Settlement represents a significant percentage of estimated recoverable damages and was negotiated by counsel with extensive experience in securities class actions who carefully

---

[1]    All terms not otherwise defined herein have the same meanings as set forth in the Stipulation. Citations are omitted and emphasis is added throughout unless otherwise indicated.

evaluated the merits of Plaintiff's claims, including the risks to recovery and likelihood of ultimate success.

As set forth below, the proposed Settlement easily satisfies Rule 23(e)(2), as recently amended, and the Sixth Circuit's standards for settlement approval. The Settlement is fair, reasonable and adequate as it provides for the all-cash payment of $56 million, representing approximately 10% of Plaintiff's estimate of reasonably recoverable damages suffered by the Class. This result is over five times the median percentage recovery in securities class actions in 2020. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021), attached as Exhibit 1 to the Appendix of Unreported Authorities, submitted herewith.

Plaintiff and Class Counsel approve of the Settlement. Plaintiff is a sophisticated institutional investor with over $40 billion of assets under management and substantial experience in securities fraud litigation. Class Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has substantial securities litigation experience and has litigated hundreds of cases to resolution, and its attorneys are recognized as leading experts in the field. Plaintiff retained Robbins Geller specifically because of its expertise and acumen in large complex securities matters like this one, as well as its experience with this Court. In accepting the mediator's proposal, Plaintiff and Class Counsel understood that there were serious risks in continued litigation. Although Plaintiff believes very strongly in the merits of this case, Defendants do as well. At trial, Plaintiff would have had the burden of proving each of the elements of its securities claims over Defendants' defenses. Trial would have been very expensive, an inevitably lengthy claims process and appeal would have taken years, and either side could have prevailed.

At this stage, the Court need only determine that it will "likely" be able to approve the proposal under Rule 23(a)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained and the risks and expenses posed by a trial of this case, Plaintiff respectfully requests that the Court enter the Notice Order, which will, among other things:

- approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the Notice Order;

- find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995; and

- set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation or Class Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

As shown below, Plaintiff and Class Counsel believe the proposed Settlement represents an exceptional result for the Class, warranting this Court's entry of the Notice Order.

## II.    SUMMARY OF THE LITIGATION

The initial complaint in this action was filed on August 23, 2016. On January 10, 2017, the Court entered an order appointing Plaintiff as Lead Plaintiff and approving its selection of Lead Counsel. The Complaint, filed on March 13, 2017, alleges violations of federal securities laws, specifically §§10(b) and 20(a) of the Securities Exchange Act of 1934.

Between February 15, 2018 and June 16, 2020, Plaintiff obtained over 3.7 million pages of documents from Defendants and non-parties and took 30 fact depositions (and defended one) over 706 days (in part as a result of discovery stays). The parties designated experts, exchanged reports and conducted seven expert depositions.

On March 26, 2019, after initially denying Plaintiff's motion for class certification, the Court reconsidered its prior order and certified Plaintiff's proposed Class. ECF No. 165. On October 30, 2020, the Court approved the form and method of providing the Notice of Pendency of Class Action ("Notice of Pendency") to the Class. The Notice of Pendency disclosed the rights of Members of the Class to exclude themselves from the Class, as well as the deadline and procedure for doing so, and warned of the binding effect on Members of the Class who did not exclude themselves. Over 185,000 Notices of Pendency were mailed to potential Class Members and Nominees, and only 56 purported exclusions were submitted.

On November 20, 2020, Plaintiff filed a motion for partial summary judgment and moved to exclude the testimony of six of Defendants' experts, including four purportedly percipient or lay experts. On the same day, Defendants moved for summary judgment and filed motions to exclude two of Plaintiff's experts. On January 22, 2021, the parties opposed each other's respective motions filed on November 20, 2020, and filed reply briefs on February 19, 2021. On March 17, 2021, the Court granted in part and denied in part one of Plaintiff's and one of Defendants' motions to exclude and denied the remainder. On March 23, 2021, the Court granted in part and denied in part the respective motions for summary judgment.

In an effort to resolve the Litigation, the parties engaged the mediation services of Judge Phillips and Mr. Lindstrom. The parties participated in in-person mediation sessions on February 28, 2019 and May 31, 2019. While these mediation sessions were unsuccessful, the parties continued to have periodic communications with the mediators regarding the case. Ultimately, these efforts culminated with the parties agreeing to settle the Litigation for $56 million, subject to the negotiation of the terms of a Stipulation of Settlement and approval by this Court. The

Stipulation (together with the Exhibits thereto), which is submitted herewith, reflects the final and binding agreement between the parties.

## III. THE SETTLEMENT TERMS

This Settlement requires Defendants to pay $56 million into the Escrow Account, which amount comprises the Settlement Fund.

Notice to the Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. Stipulation, ¶2.9. Plaintiff proposes that a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), which the Court previously approved to administer the Notice of Pendency of class certification, be retained here. The proposed notice plan and plan for claims processing is discussed below in §V.

Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Plaintiff intends to request an amount not to exceed $42,000 pursuant to 15 U.S.C.§78u-4(a)(4) in connection with its representation of the Class. Any such amounts the Court awards shall be paid from the Settlement Fund.

Class Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of one-third of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation of as much as $2.3 million; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.

5

Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses and any award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. The Plan of Allocation treats all Class Members equitably based on the timing of their purchases, acquisitions and sales of CCA securities.

The Settling Parties have entered into a Supplemental Agreement providing that if, prior to the Final Approval Hearing, the value of valid claims pursuant to the Plan of Allocation by Persons who would otherwise be Members of the Class, but who request exclusion from the Class, exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants relating to or arising from both: (i) the purchase and/or acquisition of CCA securities during the Class Period; and (ii) the facts, matters, events, transactions, acts, occurrences, statements, representations, misrepresentations and/or omissions that were or could have been alleged in the Litigation. Stipulation, ¶1.23.

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

(2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

6

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

        (i)     the costs, risks, and delay of trial and appeal;

        (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)     the terms of the proposed award of attorney's fees, including timing of payment; and

        (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, "[w]hen determining whether the proposed settlement is fair, adequate, and reasonable," courts in the Sixth Circuit take into account the following factors (several of which overlap with Rule 23(e)(2)):

(1)     the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(2)     the complexity, expense and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the judgment of experienced trial counsel;

(5)     the nature of the negotiations;

(6)     the objections raised by the class members; and

(7)     the public interest.

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

The proposed Settlement for $56 million in cash easily satisfies Rule 23(e), as well as the Sixth Circuit's factors, each of which is addressed below (some together, to the extent they overlap).

### A. The Class Representative and Class Counsel Have Adequately Represented the Class

Since 2016, Plaintiff and its counsel have adequately represented the Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's closely related third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf. This includes, among other things: drafting the operative complaint; opposing Defendants' motion to dismiss; obtaining class certification; successfully opposing a Fed. R. Civ. P. 23(f) petition to the Sixth Circuit; obtaining, reviewing and analyzing over 3.7 million pages of documents; completing 31 fact witness depositions and 7 expert witness depositions; litigating numerous disputes regarding Defendants' document production; partially defeating Defendants' motion for summary judgment and *Daubert* motions; obtaining partial summary judgment on behalf of the Class; preparing for an imminent trial; and engaging in a two-year mediation process with Judge Phillips and Mr. Lindstrom. Moreover, Plaintiff and Class Counsel have achieved a Settlement of $56 million, which will provide significant relief to the Class.

### B. The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length Negotiation Process

After two years of arm's-length negotiations with the assistance of experienced mediators, Judge Phillips and Mr. Lindstrom, Plaintiff and Class Counsel reached an agreement with Defendants to settle for $56 million in cash. Accordingly, Rule 23(e)(2)(B) (the proposal was negotiated at arm's length) and the Sixth Circuit's overlapping fifth factor (the nature of the negotiations) are clearly satisfied.

8

The parties attended two face-to-face mediations on February 28, 2019 and May 31, 2019.[2] Following the May 31, 2019 mediation, which was unsuccessful, the parties continued to vigorously litigate this case while also having periodic communications with the mediators regarding the case. On April 12, 2021, less than a month before the trial in this case was set to begin, the mediators presented the parties with a mediator's proposal, which was accepted by both parties on April 15, 2021.

The negotiations were at arm's length and well informed by, among other things, years of extensive investigation and litigation by Class Counsel, including: (i) analysis of publicly available information about Defendants; (ii) analysis of the Company's financial condition and ability to sustain a judgment or pay a settlement; (iii) contentious motion practice seeking dismissal of the claims; (iv) the initial denial and ultimate granting of class certification; (v) review and analysis of over 2.2 million pages of documents produced by Defendants in response to Plaintiff's discovery requests and over 1.46 million pages of documents produced by third parties; (vi) depositions of 17 CCA executives and directors, including Defendants; (vii) extensive briefing on summary judgment and *Daubert* challenges, which were ultimately granted in part and denied in part as to both Defendants' and Plaintiff's respective motions; (viii) arduous preparation for trial, which was scheduled to begin less than a month after the parties agreed to resolve the case; and

---

[2]   Numerous courts have found that the participation of Judge Phillips, a former federal district judge and a highly qualified mediator, supports a finding that negotiations were conducted at arm's length and without collusion. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635, at *7 (N.D. Cal. Mar. 3, 2015) (finding Judge Phillips to be "an experienced mediator"); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips").

(ix) consultation with Plaintiff's consultants and experts regarding the quality of CCA's Federal Bureau of Prisons ("BOP") prison facilities, loss causation and damages. Indeed, short of a jury verdict, Plaintiff and Class Counsel could not have been better informed regarding the strengths and weaknesses of their case. *See Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612-R, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (when determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval'"); *see also Miracle v. Bullitt Cnty., Ky.*, No. 05-130-C, 2008 WL 3850477, at *5 (W.D. Ky. Aug. 15, 2008) (evaluating preliminary approval of a settlement based on whether negotiations were at arm's length, whether there was evidence of collusion, and whether there was preferential treatment to segments of the class).

### C. The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

#### 1. The Settlement Is Adequate in Light of the Costs, Risks and Delay of Trial and Appeal

The proposed Settlement satisfies the Rule 23(e)(2)(C)(i) adequacy standard, taking into account the costs, risks and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense and likely duration of the litigation). The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount). It provides an immediate and substantial benefit for the Class – $56 million in cash – which is approximately 10% of reasonably recoverable damages suffered by Class Members.

Given the complexities of this Litigation, the many issues in contention, the amount in controversy and the substantial risks of continued litigation, Class Counsel believes the Settlement

represents a favorable resolution of this Litigation. Importantly, the Settlement eliminates the risk that Plaintiff and the Class might recover nothing, or might not recover as much as obtained in the Settlement, if the Litigation were to continue.

While Plaintiff is confident in the strength of the case, it is aware of the defenses available to Defendants and the inherent risks and delays of litigation. For example, Defendants sought to extinguish the Litigation by asserting that Plaintiff's losses were not related to the alleged fraud. While Plaintiff disputed Defendants' negative causation defenses, the Court declined to exclude Defendants' experts from presenting such theories to the jury, and there was no guarantee that Plaintiff's arguments would have ultimately prevailed.

Likewise, on the merits, Plaintiff would have faced significant challenges. As set forth at length in Defendants' class certification and summary judgment briefing, Defendants would have challenged whether the alleged misstatements and omissions were material to investors, whether Defendants had any reason to believe that their BOP contracts were in jeopardy and whether the August 18, 2016 memorandum entitled "Reducing Our Use of Private Prisons" issued by Deputy Attorney General Sally Q. Yates was in fact the result of CCA's poor quality prisons or instead the fruition of a previously disclosed risk to which CCA had alerted the market. Class Counsel was fully informed of the strengths and weaknesses of Plaintiff's case, including the complicated and nuanced legal issues. Given these and other risks faced by the Class, a positive result was far from assured.

### 2. The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §V and includes direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice

in *The Wall Street Journal* and over a national newswire service. Gilardi will use time-tested methods to ensure Class Members who hold CCA securities in their own names, as well as those who hold CCA securities in street name, will receive a copy of the Notice of Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release ("Proof of Claim") (collectively, "Claim Package"), just as they did with the class certification notice. First, Gilardi has already obtained the names of Class Members who hold CCA securities in their own names from CCA's transfer agent. In addition, Gilardi will contact the brokers, banks and other institutions known as Nominee Holders. Based on experience locating class members who hold securities in street name, Gilardi has developed a proprietary list of approximately 250 Nominee Holders, to whom it will send a Claim Package and cover letter.[3] Lastly, Gilardi will update the previously established case-specific website and post important documents regarding the Settlement, including the Claim Package, and will update the information found on the previously established toll-free number that Class Members can call to make inquiries about the Settlement. This notice program has regularly been found to satisfy due process. *See NYS Teachers' Ret. Sys. v. GMC*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. NYS Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately,

---

[3]  Gilardi will also send a Claim Package and cover letter to the approximately 4,500 financial institutions registered with the SEC as potential Nominee Holders. In addition, Gilardi will send additional copies of the Claim Package to those Nominee Holders who indicate they will directly send the Claim Package to their clients who may be Class Members.

how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Plaintiff's damages consultants and is based on the expert reports submitted as part of Plaintiff's pretrial expert disclosures. A thorough claim review process is explained in the Stipulation and the Notice.

### 3. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Class Counsel intends to seek. As discussed above in §III, Class Counsel intends to request fees in the amount of one-third of the Settlement Amount and expenses in an amount not to exceed $2.3 million, plus interest on both amounts. This is in line with similar fee requests granted by courts in the Sixth Circuit. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *5 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of $73 million recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167, at *15-*16 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *The Eshe Fund v. Fifth Third Bancorp*, No. 1:08-cv-00421, slip op. at 1 (S.D. Ohio Nov. 20, 2013) (awarding one-third of $16 million recovery) (Ex. 2).[4] In addition, Class Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682-JAG, 2016 U.S. Dist. LEXIS 132269, at *28 (E.D. Va. Sept. 26, 2016)

---

[4] All unreported authorities are attached to the Appendix of Unreported Authorities, submitted herewith.

(ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

Further, Plaintiff intends to request an amount not to exceed $42,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

### 4. There Are No Agreements Other than with Respect to Opt Outs

Rule 23(e)(2)(C)(iv) requires that the parties identify any agreements between them. The Settling Parties have entered into a standard supplemental agreement providing that if Class Members opt out of the Settlement such that the Recognized Loss under the Plan of Allocation of such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3.

### D. Class Members Are Treated Equitably

As reflected in the Plan of Allocation (Stipulation, Ex. A-1 at 14-23), the Settlement treats Class Members equitably relative to each other, based on the timing of their purchase or acquisition of CCA securities and their subsequent disposition of such securities, if any, by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses. Accordingly, Rule 23(e)(2)(D) is satisfied.

### E. The Judgment of Experienced Trial Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied. Plaintiff, through its counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Defendants; the likelihood of prevailing on the claims; the risk, expense, and duration of continued litigation; and any appeals and subsequent proceedings, has concluded that the Settlement is fair, reasonable and in the best interest of the Class.

14

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer to the judgment of experienced counsel who have evaluated the strength of plaintiff's case); *In re Skelaxin Metaxalone Antitrust Litig.*, No. MDL 2343, 2014 U.S. Dist. LEXIS 60214, at \*16 (E.D. Tenn. Apr. 30, 2014) (when a "'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair"'); *IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). Here, Class Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action recoveries throughout the country, including in this District and within the Sixth Circuit. *See* www.rgrdlaw.com. Given the experience possessed by Class Counsel, weight should be given to its determination that, taking into account the strength of the claims alongside the time, expense, complexity of the issues, and uncertainty of trial and any appeals, the Settlement set forth in the Stipulation is a good result that confers substantial, immediate benefits on the Class.

### F. The Sixth Circuit's Public Interest Factor Is Satisfied

The public interest factor supports approval of the Settlement. Indeed, as a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this. *See, e.g.*, *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("the law generally favors and encourages the settlement of class actions"), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982); *Motter v. O'Brien*, No. 2:13-cv-216, 2014 U.S. Dist. LEXIS 79982, at \*2 (S.D. Ohio June 12, 2014) ("The Court further recognizes that 'the law

favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $56 million recovery are clear. Given the litigation risks involved, the $56 million Settlement is a great result for the Class. It could not have been achieved without full commitment by Plaintiff and its counsel. Plaintiff and Class Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be sent to the Class.

## V. The Proposed Notice Program Is Appropriate

As outlined in the agreed-upon form of proposed Notice Order and described above, Plaintiff will notify Members of the Class by mailing the Notice and Proof of Claim to all Members of the Class who can be identified with reasonable effort, using multiple sources of data, including: (i) those Class Members who received the Notice of Pendency; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers and other nominees and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Class of: (i) the essential terms of the Settlement; and (ii) information regarding Class Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time and location of the Settlement Hearing and set forth the procedures and deadlines for submitting valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation, opting out of the Class, and objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses.

In addition to mailing the Notice and Proof of Claim, the Claims Administrator will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. This notice plan is similar, if not more robust, than notice plans used

16

in numerous securities class actions in this Circuit and in courts nationwide. *See, e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-07393-JGC, slip op. (N.D. Ohio July 19, 2016) (Ex. 3) (court-approved settlement in which notice was mailed to individual class members and nominees, including major brokerage houses, and notice was published in *The Wall Street Journal* and *Investor's Business Daily* and transmitted over the *PR Newswire*); *In re Chemed Corp. Sec. Litig.*, No. 1:12-cv-00028-MRB, 2014 WL 12650629 (S.D. Ohio Mar. 27, 2014) (court-approved settlement in which notice was sent to individual class members and nominees, including major brokerage houses, and notice was published in *Investor's Business Daily* and transmitted over the *Business Wire*).

## VI. Proposed Schedule of Events

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice and deadlines for objecting to the Settlement, opting out of the Class and filing papers in support of the Settlement. The Settling Parties propose the following schedule:

| Event | Date |
|---|---|
| Notice and Proof of Claim be mailed to Class Members ("Notice Date") | 21 calendar days after the Court enters the Notice Order |
| Summary Notice to be published | 7 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation and request for an award of attorneys' fees and expenses | 35 calendar days before the Final Approval Hearing |
| Deadline (i) for objecting to the Settlement, Plan of Allocation and/or attorneys' fees and expenses; and (ii) for opting out of the Class | 21 calendar days before the Final Approval Hearing |
| Deadline for filing reply papers in response to any objections | 7 calendar days before the Final Approval Hearing |
| Deadline for submitting Proofs of Claim | 120 calendar days after the Notice Date |
| Final Approval Hearing | At the Court's convenience at least 100 calendar days after the Court enters the Notice Order |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Class Members with respect to their rights concerning the Settlement.

## VII. CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court enter the Notice Order, which approves the proposed form and manner of notice to be given to the Class, and schedules a hearing on Plaintiff's motion for final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses.

DATED: June 24, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ELLEN GUSIKOFF STEWART
JASON A. FORGE
RACHEL L. JENSEN
NATALIE F. LAKOSIL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
    & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 24, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,rachelj@ecf.courtdrive.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,nlakosil@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@schallfirm.com

- **David J. Schindler**
  david.schindler@lw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,willowr@rgrdlaw.com,CWood@ecf.courtdrive.com,morgank@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,MKuwashima

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)