UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NIKKI BOLLINGER GRAE, Individually and
on Behalf of All Others Similarly Situated,

                 Plaintiff,

      vs.

CORRECTIONS CORPORATION OF
AMERICA, et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:16-cv-02267

Honorable Aleta A. Trauger

MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN
OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY ......................................................2

III.   THE SETTLEMENT WARRANTS FINAL APPROVAL....................................3

     A.    Legal Standards for Final Approval of Class Action Settlement...........................3

     B.    The Rule 23 and Sixth Circuit Factors Support Approval.......................................5

          1.    The Class Was Adequately Represented ....................................................5

          2.    The Absence of Fraud or Collusion Favors Approval ...............................6

          3.    The Relief Provided to the Class Is Adequate .............................................7

          4.    The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ...................................................................11

          5.    Class Counsel and Plaintiff Endorse the Settlement.................................12

          6.    The Reaction of the Class Supports Final Approval.................................13

          7.    Public Interest Favors Approval of the Settlement ...................................14

          8.    Other Rule 23(e)(2) Factors Support Final Approval ...............................14

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................16

V.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS............................................................................................16

VI.   CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*Arledge v. Domino's Pizza, Inc.*,
No. 3:16-cv-386-WHR, 2018 WL 5023950
(S.D. Ohio Oct. 17, 2018) ................................................................................................7

*Armstrong v. Gallia Metro. Hous. Auth.*,
No. 2:98-CV-373, 2001 WL 1842452
(S.D. Ohio Apr. 23, 2001) ..............................................................................................13

*Bartell v. LTF Club Operations Co.*,
No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682
(S.D. Ohio Aug. 7, 2020) ...............................................................................................10

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ..........................................................................13

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ...........................................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 15-90038, 2015 WL 10714013
(5th Cir. Nov. 4, 2015) .....................................................................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 3:02-cv-1152-M, 2018 WL 1942227
(N.D. Tex. Apr. 25, 2018) ...............................................................................................16

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ..........................................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................................9

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ..........................................................................................4

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983
(N.D. Cal. Dec. 18, 2018),
*aff'd sub nom. Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) .....................................................................................4

Case 3:16-cv-02267    Document 468    Filed 09/24/21    Page 3 of 28 PageID #: 24981

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-61542-CIV, 2011 WL 1585605
(S.D. Fla. Apr. 25, 2011),
*aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..........................................................................9

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ......................................................................14

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409
(W.D. Ky. Aug. 23, 2010) ...................................................................................8

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................7

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188
(E.D. Mich. Dec. 13, 2011)................................................................................16

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................5

*In re Prandin Direct Purchaser Antitrust Litig.*,
No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473
(E.D. Mich. Jan. 20, 2015).................................................................................7

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163
(E.D. Tenn. May 17, 2013)..............................................................................6, 8

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 WL 2155379
(E.D. Tenn. May 17, 2013)................................................................................13

*In re Skelaxin Metaxalone Antitrust Litig.*,
No. MDL 2343, 2014 U.S. Dist. LEXIS 60214
(E.D. Tenn. Apr. 30, 2014)................................................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd*, 838 F.3d 223 (2d Cir. 2016) ....................................................................9

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................9

*Indiana State District Council of Laborers and Hod Carriers*
   *Pension & Welfare Fund v. Omnicare, Inc., et al.*,
   No. 2:06-cv-00026, PageID.16147, slip op.
   (E.D. Ky. Jun. 27, 2019) ..............................................................................15

*IUE-CWA v. GMC*,
   238 F.R.D. 583 (E.D. Mich. 2006) ...........................................................12

*Karpik v. Huntington Bancshares Inc.*,
   No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641
   (S.D. Ohio Feb. 18, 2021) ............................................................6, 8, 13

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006),
   *aff'd sub nom. Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .......................................................................7

*New York State Tchrs.' Ret. Sys. v. GMC*,
   315 F.R.D. 226 (E.D. Mich. 2016),
   *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*,
   No. 16-1821, 2017 WL 6398014 (6th Cir. 2017) ............................... *passim*

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ................................................................8

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) .................................................................8, 13

*Robbins v. Koger Props. Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...................................................................9

*Robinson v. Shelby Cnty. Bd. of Educ.*,
   566 F.3d 642 (6th Cir. 2009) .......................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................14

*UAW v. GMC*,
   497 F.3d 615 (6th Cir. 2007) .......................................................... *passim*

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992) .............................................................4, 14

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ......................................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ............................................................................................................1, 15
  §78u-4(a)(7) ..........................................................................................................17, 18

Federal Rules of Civil Procedure
  Rule 23 ............................................................................................................... *passim*
  Rule 23(a) ........................................................................................................................18
  Rule 23(b)(3) ...................................................................................................................18
  Rule 23(c)(2)(B) .................................................................................................16, 17, 18
  Rule 23(e) ....................................................................................................................1, 3
  Rule 23(e)(1)(B) ..............................................................................................................16
  Rule 23(e)(2) ...............................................................................................................3, 14
  Rule 23(e)(2)(A) ................................................................................................................5
  Rule 23(e)(2)(B) ................................................................................................................6
  Rule 23(e)(2)(C) ................................................................................................................7
  Rule 23(e)(2)(C)(ii), (iii), & (iv) ...................................................................................14
  Rule 23(e)(2)(D) ..............................................................................................................14
  Rule 23(e)(3) ......................................................................................................................3

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2020 Full Year Review*
  (NERA Jan. 25, 2021) .....................................................................................................11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff and Class Representative Amalgamated Bank, as Trustee for the Longview Collective Investment Fund ("Plaintiff") respectfully submits this memorandum in support of its motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I. INTRODUCTION

Plaintiff, through its counsel, has obtained a $56 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation. As described below and in the Wood Declaration, the Settlement, which was reached less than a month before the start of the scheduled trial, is a very good result for the Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. The Settlement is an extremely favorable result when compared to the median securities class action settlement. *See generally* Wood Decl.

Plaintiff's decision to settle the Litigation was well informed by an extensive investigation, hard-fought litigation by experienced counsel, substantial discovery efforts, and arm's-length settlement negotiations supervised by experienced mediators. *See* Wood Decl., ¶¶5-9, 36-135. While Plaintiff believes that its claims had merit and that it would prevail at trial, it also recognizes that had the Litigation continued, it faced substantial risks to obtaining (and collecting upon) any recovery for the Class, let alone a recovery greater than that afforded by the Settlement. Specifically, in addition to the inherent risks related to establishing Defendants' liability, when the

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated June 24, 2021 (the "Stipulation") (ECF No. 463) or in the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Wood Declaration" or "Wood Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

Settlement was reached, the parties' cross motions *in limine* were about to be filed and thus there was the risk that the Court would substantially narrow the evidence Plaintiff could introduce (or prohibit Defendants from introducing) at trial. There was also risk relating to appeals by Defendants and whether the Company would be able to satisfy any judgment after post-trial and appellate proceedings.

In light of these considerations, Plaintiff and Class Counsel believe that the $56 million Settlement is eminently fair, reasonable, adequate, easily satisfies the standards of approval under Fed. R. Civ. P. 23, and provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, potential Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order[2] and, to date, not a single Class Member has filed an objection. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. This Plan was prepared in consultation with Plaintiff's damages expert and governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objections have been filed to this straightforward method of allocation.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Wood Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's efforts on behalf of the Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

---

[2]    *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, ¶¶4-12 ("Murray Decl."), submitted herewith.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Legal Standards for Final Approval of Class Action Settlement

Federal Rule of Civil Procedure ("Rule") 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007).  "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

On December 1, 2018, amendments to Rule 23(e)(2) went into effect that provide the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee

Notes to the 2018 Amendments to the Federal Rules of Civil Procedure. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the [Sixth] Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). The Court considered these factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met. *See* ECF No. 464.

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

These factors should not be applied in a formalistic fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Likewise, "'[t]he district court enjoys wide discretion in assessing the weight and applicability of these factors.'" *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir.

1992); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. 2017).

### B. The Rule 23 and Sixth Circuit Factors Support Approval

#### 1. The Class Was Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have easily been met here. Plaintiff's claims are typical of and co-extensive with the claims of the Class, and it has no antagonistic interests with respect to the Class as a whole. Indeed, in certifying the Class following adversarial briefing, this Court previously recognized that Plaintiff was an adequate class representative meeting the requirements that of a "general commonality of interests" with the class and that it would "vigorously prosecute the interests of the class through qualified counsel." ECF No. 165 at 36. Since then, Plaintiff has amply demonstrated that it has an interest in obtaining the largest possible recovery in this Litigation, as do the other absent Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Additionally, as detailed in its declaration, Plaintiff was highly involved in each stage of the Litigation and worked closely with Class Counsel throughout the pendency of this action to achieve the best possible result for itself and the Class. *See* Declaration of Amalgamated Bank Executive Vice President and General Counsel Deborah Silodor ("Silodor Decl."), submitted herewith.

Class Counsel has also adequately represented the Class. Class Counsel is highly experienced in securities litigation, with a long and successful track record representing investors in cases in courts throughout the country. *See* Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), Ex. E, submitted herewith. Class Counsel had a strong appreciation of the strengths and weaknesses of the case before agreeing to the Settlement, and believes it is in the best interest of the Class. Here, Class Counsel incurred over $1,900,000 in expenses and expended over 23,000 hours during a span of over four years vigorously pursuing the Litigation. RGRD Decl., ¶¶4-13. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "*was willing to, and indeed did, commit substantial 'resources . . . to represent[ ] the class[ ]*'").

### 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163, at *20 (E.D. Tenn. May 17, 2013). *See also Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *15 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

Here, the proposed Settlement was reached after more than four years of litigation, with both sides vigorously advocating their respective positions. Indeed, the Settlement was reached only after arm's-length negotiations facilitated by two experienced and well-respected mediators the Honorable Layn R. Phillips (Ret.) and Gregory P. Lindstrom of Phillips ADR. Wood Decl., ¶8. The Settlement

negotiations were extensive, and included the exchange of multiple briefs, two separate in-person mediation sessions, then follow-up discussions. *Id.* The parties' negotiation efforts spanned nearly two years and they ultimately agreed to settle only after Judge Phillips and Mr. Lindstrom provided a mediator's proposal. As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'" *See Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3. The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors. This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense and likely duration of the litigation; and (ii) the likelihood of success on the merits. Each of these factors supports approval.

#### a. The Complexity, Expense and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to loss causation and damages. The case also involves the private prison industry, which involves technical and complex analysis, necessitating expert testimony and analysis. Indeed, Class Counsel retained experts to provide reports and deposition testimony regarding these issues, which would be fiercely contested at trial.

This Litigation was filed five years ago. When the case settled, trial was less than a month away. This Settlement avoids the risks of a lengthy trial, and the certain appeal by the non-prevailing party.[3] "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *See GMC*, 315 F.R.D. at 236.

### b.     The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *19 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement. *UAW*, 497 F.3d at 631.

---

[3]     *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *Se. Milk*, 2013 U.S. Dist. LEXIS 70163, at *15 ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *19 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

Plaintiff believes that the evidence establishes that: Defendants participated in a fraudulent scheme by deceiving investors about the quality and cost savings of CCA's correctional services and CCA's client relationships and ability to win contract renewals from government customers or partners (Wood Decl., ¶6), and that Defendants' fraudulent scheme caused CCA's publicly traded securities to trade at inflated prices, thereby causing harm to Class Members when the risks and conditions concealed by Defendants' misrepresentations and omissions, or the economic consequences thereof, materialized. *Id.*, ¶7.

Plaintiff alleged that Defendants' misrepresentations concealed material risks to the Company's business, which were revealed through public disclosures on August 4, 2016 with CCA's announcement that the BOP contract for its Cibola County Correctional Center would not be renewed, and on August 18, 2016, with the memorandum released by Deputy Attorney General Sally Yates, titled "Reducing Our Use of Private Prisons" (the "Yates Memo"), causing the prices of CCA securities to fall, injuring members of the Class. *Id.* Nevertheless, Plaintiff is also cognizant of the fact that there was no guarantee that it would prevail at trial. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]

---

[4] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 15-90038, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third

9

Here, as detailed in the Wood Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Class. Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants have maintained that the evidence will establish at trial that their statements were true to the best of their knowledge; that the risks had all been disclosed or were unknown to Defendants at the time their statements were made or, to the extent that Defendants did fail to disclose a material risk, that the risk had never in fact materialized; and that Class Members' losses were instead due to a political shift rather than the materialization of the risks arising from the poor quality of CCA's services. Wood Decl., ¶12.[5] Class Counsel was fully informed of the strengths and weaknesses of Plaintiff's case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Plaintiff's favor in order to achieve a successful result.[6] In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682, at *11-*12 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as

---

interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

[5]  The parties also anticipated a battle of experts at trial on the disputed issues. Wood Decl., ¶15. Each side had retained experts who were expected to offer opposing testimony about: (i) the quality of CCA's corrections services; (ii) CCA's relationship with the BOP and the likelihood of retaining or winning new business from the BOP; and (iii) loss causation and damages. *Id.* There is no guarantee that the jury would accept Plaintiff's experts' testimony over Defendants.

[6]  Motions concerning the admissibility of certain evidence were about to be filed at the time the Settlement was reached. The outcome of those motions could have severely affected evidence available for the jury to evaluate.

to the merits of Plaintiff's claims creates substantial risk to the Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").[7]

Despite these risks, Plaintiff obtained a very favorable recovery. The Settlement far exceeds the median recovery in securities class action settlements in 2020 according to data from NERA. *See, e.g.*, Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full Year Review*, at 17, Figure 15 (NERA Jan. 25, 2021) (showing the median settlement in §10(b) cases in 2020 was $13 million). Indeed, courts in this Circuit have routinely approved settlements with similar or smaller recoveries. *See, e.g.*, *GMC*, 315 F.R.D. at 237-38 (compiling cases approving settlements representing as little as 3.8% of total damages). Accordingly, the proposed Settlement is a very good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *Id.* at 236. Here, Class Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Plaintiff's claims. During the Litigation, Class Counsel had, among other things:

- researched and drafted the Complaint;

- successfully opposed Defendants' motion to dismiss the Complaint;

---

[7] Even if Plaintiff prevailed at trial, there was a real risk of collectability on a judgment. Not only had CCA not won a competitively bid BOP contract in years, but newly inaugurated President Biden issued an executive order on January 26, 2021 indicating the intent to phase out the federal government's reliance on private prison operators. Wood Decl., ¶17. CCA's credit rating was downgraded in March 2021, and in April 2021 it refinanced outstanding debt at a significantly increased interest rate. *Id.* As a result, had Plaintiff recovered all of the damages it sought, the Company may not have been able to satisfy the judgment, forcing the Company into bankruptcy. *Id.*

- obtained class certification over Defendants' strenuous objections;

- completed nearly four years of fact discovery, including reviewing and analyzing more than 3.7 million pages of documentary evidence produced by CCA and more than 20 third parties and taking 24 fact depositions;

- filed more than a half-dozen discovery motions, including motions related to Defendants' interrogatory responses and claims of privilege;

- retained experts in the fields of the performance of private prison operators and economics to prepare opening and supplemental reports;

- completed trial expert discovery, including taking eight depositions of Defendants' designated trial experts and defending Plaintiff's two trial experts;

- prepared and filed *Daubert* motions to exclude most of Defendants' expert witnesses and opposed Defendants' motions to exclude Plaintiff's experts;

- successfully moved for partial summary judgment;

- successfully opposed Defendants' motion for summary judgment;

- prepared the case for trial, including drafting motions *in limine*, jury instructions and other pretrial materials, exchanging trial exhibits and deposition designations with Defendants, and negotiating evidentiary objections;

- engaged in settlement negotiations with nationally recognized mediators; and

- assessed the risks of prevailing on Plaintiff's claims at trial and the Class's ability to collect on any judgment awarded.

Wood Decl., ¶5.

There can be no question that by the time the Settlement was reached, Plaintiff and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

### 5. Class Counsel and Plaintiff Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider counsel's endorsement of the settlement, which "is entitled to significant deference." *Id.* at 238; *accord IUE-CWA v. GMC*,

238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, No. 2:98-CV-373, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the settlement evaluation process, Class Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation. Based on these considerations, Class Counsel concluded that the Settlement is not only fair and reasonable but is a highly favorable result for the Class. Wood Decl., ¶¶10-19, 125-137; *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *21. Likewise, Plaintiff approves the Settlement. *See* Silidor Decl., ¶4. "Their support also favors approval." *Karpik*, 2021 U.S. Dist. LEXIS at 38641, at *22. Accordingly, this factor supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013). Here, as detailed *infra*, Section V, as of September 24, 2021, the Claims Administrator has disseminated over 175,000 Notices to potential Class Members. To date not one Class Member has

objected to any aspect of the Settlement.[8]  Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'"  *GMC*, 315 F.R.D. at 241-42.  As discussed herein, the Settlement provides $56 million in cash, plus interest.  The Settlement puts an end to this five-year-old Litigation, which, absent settlement would have continued in this Court and in the Sixth Circuit.  Thus, the Settlement also furthers public policy by conserving judicial resources.  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8. Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D).  Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential

---

[8]    As set forth in the Notice, the deadline to provide counsel with objections is October 8, 2021.

14

Class Members and efficiently distributing the Net Settlement Fund.  Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV.  *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

*Second*, as discussed in the accompanying fee and expense memorandum, Class Counsel is applying for an award of one-third of the common fund fee award as compensation for the services it rendered on behalf of the Class, as well as payment of litigation costs and expenses.  The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a one-third award is consistent with attorneys' fee percentages that courts have approved in similar cases.  *See, e.g.*, *Indiana State District Council of Laborers and Hod Carriers Pension & Welfare Fund v. Omnicare, Inc., et al.*, No. 2:06-cv-00026, PageID.16147, slip op. at ¶3 (E.D. Ky. Jun. 27, 2019) (awarding 33% of a $20 million recovery) (Ex. 1).[9]  Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees.  *See* Stipulation, ECF No. 463, ¶6.4.

*Third*, the Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves.  Stipulation, ECF No. 463, ¶7.3.  This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See*

---

[9]    Additional jurisprudence supporting this award is included in the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), submitted herewith.

*Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

**Fourth**, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011). "'"Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."'" *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Plaintiff's damages expert, is fair, reasonable and adequate. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss. Wood Decl., ¶¶138-142. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act. Moreover, the Plan of Allocation was disclosed in the Notice mailed to potential Class Members and nominees and, to date, there have been no objections to the Plan of Allocation. *See* Murray Decl., Ex. A. Thus, the Plan of Allocation is fair and reasonable.

## V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further

requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel*, 534 F.3d at 514. The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 175,000 copies of the Notice and Proof of Claim and Release via First-Class Mail to potential Class Members and nominees. *See* Murray Decl., ¶¶4-11, submitted herewith. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *Business Wire*. *Id.*, ¶12. In addition, the previously-established dedicated toll-free telephone number and website were updated to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional

information about the Litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. A.

Plaintiff and its counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement"); *In re Skelaxin Metaxalone Antitrust Litig.*, No. MDL 2343, 2014 U.S. Dist. LEXIS 60214, at *14 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) approve the Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

DATED:  September 24, 2021                    Respectfully submitted,

                                              ROBBINS GELLER RUDMAN & DOWD LLP
                                              CHRISTOPHER M. WOOD, #032977
                                              CHRISTOPHER H. LYONS, #034853


                                              _s/Christopher M. Wood_
                                              CHRISTOPHER M. WOOD

                                              414 Union Street, Suite 900
                                              Nashville, TN  37219
                                              Telephone:  800/449-4900
                                              615/252-3798 (fax)
                                              cwood@rgrdlaw.com
                                              clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ELLEN GUSIKOFF STEWART
JASON A. FORGE
RACHEL L. JENSEN
NATALIE F. LAKOSIL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 24, 2021, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
 & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,rachelj@ecf.courtdrive.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,nlakosil@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,ealexander@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@schallfirm.com

- **David J. Schindler**
  david.schindler@lw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@rgrdlaw.coom,willowr@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,morgank@ecf.courtdrive.com,smo

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)