# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONS CORPORATION OF AMERICA, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 3:16-cv-02267

Honorable Aleta A. Trauger

MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   AWARD OF ATTORNEYS' FEES ......................................................4

      A.    Class Counsel Is Entitled to a Fee from the Common Fund It Obtained................4

      B.    The Court Should Award Attorneys' Fees Using the Percentage Approach...........5

      C.    The Requested Fee Award Is Within the Applicable Range of Percentage-of-the-Fund Awards ....................................................................7

      D.    The Fee Is Reasonable Under the Circumstances.....................................8

            1.    The Value of the Benefits Achieved ..........................................9

            2.    Public Policy Considerations ...............................................10

            3.    The Contingent Nature of the Fee............................................11

            4.    The Diligent Prosecution of the Litigation ................................12

            5.    The Complexity of the Litigation ..........................................14

            6.    The Quality of Representation .............................................15

      E.    Class Member Reaction ...........................................................17

III.  PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................18

IV.   PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE COSTS .............................................................................19

V.    CONCLUSION.......................................................................20

# TABLE OF AUTHORITIES

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ......................................................................2

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)............................................................................5, 10

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 899 F.2d 21 (11th Cir. 1990)............................................................9

*Bessey v. Packerland Plainwell, Inc.*,
No. 4:06-cv-95, 2007 WL 3173972
(W.D. Mich. Oct. 26, 2007) .......................................................................7

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................................5, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................................................................................5

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996)............................................................7

*Burges v. Bancorpsouth, Inc.*,
No. 3:14-cv-01564, slip op.
(M.D. Tenn. Sept. 21, 2018) ......................................................................6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ...................................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)....................................................................................5

*Denney v. Phillips & Buttorff Corp.*,
331 F.2d 249 (6th Cir. 1964) .....................................................................8

*Florin v. Nationsbank, N.A. of Ga.*,
34 F.3d 560 (7th Cir. 1994) .......................................................................6

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
No. 3:09-cv-00882-WJH, 2015 U.S. Dist. LEXIS 181943
(M.D. Tenn. Jan. 16, 2015)..................................................................6, 20

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ................................................................6

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) .......................................................14

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ....................................................................18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................12

*In re Arm Fin. Grp.*,
No. 3:99CV-539-H, 2006 U.S. Dist. LEXIS 63528
(W.D. Ky. Aug. 31, 2006) .....................................................................20

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)....................................................................6

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................4

*In re Charter Commc'ns, Inc.*,
No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772
(E.D. Mo. June 30, 2005).....................................................................17

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ................................................................11

*In re Delphi Corp. Sec., Derivative, & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ...........................................9, 16, 17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................16

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790
(S.D. Ohio May 27, 2009) .....................................................................14

*In re Nationwide Fin. Servs. Litig.*,
No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962
(S.D. Ohio Aug. 18, 2009).......................................................................................17

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010).......................................................................12

*In re Prandin Direct Purchaser Antitrust Litig.*,
No. 2:10-cv-12141-AC-DAS, 2015 U.S. Dist. LEXIS 5964
(E.D. Mich. Jan. 20, 2015)..........................................................................................7

*In re Ravisent Techs., Inc. Sec. Litig.*,
No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 19, 2005)................17

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)......................................................................................17

*In re Se. Milk Antitrust Litig.*,
No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167
(E.D. Tenn. May 17, 2013).........................................................................6, 7, 11, 18

*In re Sirrom Cap. Corp. Sec. Litig.*,
No. 3-98-0643, slip op.
(M.D. Tenn. Feb. 4, 2000)............................................................................................8

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2:12-CV-83, 2014 U.S. Dist. LEXIS 91661
(E.D. Tenn. June 30, 2014).........................................................................6, 7, 10

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)..........................................................................................6

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ......................................................................................6

*Internal Imp. Fund Trustees v. Greenough*,
105 U.S. 527 (1881).....................................................................................................5

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964).....................................................................................................5

*Manners v. Am. Gen. Life Ins. Co.*,
No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880
(M.D. Tenn. Aug. 11, 1999) ...........................................................................8

*Miller v. Woodmoor Corp.*,
No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
(D. Colo. Sept. 28, 1978) ..........................................................................14, 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989)..........................................................................................7

*Morse v. McWhorter*,
No. 3:97-0370, slip op.
(M.D. Tenn. Mar. 12, 2004)..............................................................................7

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ............................................................................8

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006),
*aff'd sub nom. Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ......................................................................18, 20

*New York State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226 (E.D. Mich. 2016),
*aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*,
No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ........................5, 10, 14

*North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
No. 3:11-cv-00595, slip op.
(M.D. Tenn. May 12, 2014)...............................................................................6

*Pergament v. Kaiser-Frazer Corp.*,
224 F.2d 80 (6th Cir. 1955) ..............................................................................8

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ..........................................................................6

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. May 1, 2018).........................................................12

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ..........................................................................8

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................6, 8, 9

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992)...................................................................................17

*Schuh v. HCA Holdings, Inc.*,
  No. 3:11-cv-01033, 2016 U.S. Dist. LEXIS 140387
  (M.D. Tenn. Apr. 14, 2016) .............................................................................6, 16, 20

*Skeete v. Republic Schools Nashville*,
  No. 3:16-cv-00043, slip op.
  (M.D. Tenn. Feb. 26, 2018) ...................................................................................8

*Smillie v. Park Chem. Co.*,
  710 F.2d 271 (6th Cir. 1983) ...................................................................................8

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)...................................................................................5

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................5, 10, 11

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010),
  *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ...................................................................................6

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)...................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)...................................................................................6

*Winslow v. BancorpSouth, Inc.*,
  No. 3:10-cv-00463, slip op.
  (M.D. Tenn. Oct. 31, 2012) ...................................................................................6, 7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ...................................................................................................1, 4, 19
  §78u-4(a)(6) ...................................................................................................................5

Federal Rules of Civil Procedure
  Rule 23(f) .......................................................................................................................2

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*
  (NERA Jan. 25, 2021)......................................................................................................2

Stefan Boettrich & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*
  (NERA Jan. 29, 2018)....................................................................................................12

## LEGISLATIVE HISTORY

Private Securities Litigation Reform Act of 1995,
  H.R. Conf. Rep. No. 104-369, 1995 WL 709276 (Nov. 28, 1995) ..........................................4

Class Counsel submits this memorandum in support of its motion for an award of attorneys' fees and expenses, and in support of Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund's ("Plaintiff") request for an award of time and expenses in representing the Class pursuant to 15 U.S.C. §78u-4(a)(4).

## I.     INTRODUCTION

After more than four years of hard-fought litigation, getting to within a month of the scheduled trial date, and mediation efforts that spanned over two years, Plaintiff and Class Counsel have succeeded in obtaining a $56 million cash recovery for the benefit of the Class.[1]  This substantial and definite recovery was achieved through the skill, hard work, and persistent advocacy of Class Counsel.  Class Counsel now respectfully moves this Court, on behalf of Plaintiff's Counsel, for an award of attorneys' fees in the amount of one-third of the Settlement Amount and expenses incurred in prosecuting this Litigation of $1,949,862.24, plus interest earned on both amounts.

The requested fee award is within the range of percentages awarded in class actions in this District, in this Circuit and across the country and is warranted in light of the excellent result obtained for the Class.  The result is more than five times the median percentage recovery in securities class action settlements in 2020 according to data compiled by NERA Economic

---

[1]     Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Brief").  The Court is also respectfully referred to the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Wood Decl.") for a more detailed history of the Litigation, the extensive efforts of Class Counsel, and the factors bearing on the reasonableness of the requested award of attorneys' fees and expenses.  All terms capitalized herein are defined in the Stipulation of Settlement dated June 24, 2021 (the "Stipulation") (ECF No. 463), unless otherwise indicated.  Unless otherwise noted, all emphasis in quotations is added and citations and footnotes are omitted.

Consulting.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) ("NERA Report").

The fee award is also reasonable in light of the significant risks involved in bringing and prosecuting this action on behalf of the Class and the extensive effort of counsel in obtaining this result.  This action is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires a plaintiff to "thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

In addition to the significant risks in prosecuting this Litigation under the PSLRA, the skill and effort to achieve the Settlement was substantial.  Class Counsel marshaled considerable resources and committed substantial amounts of time and expense to prosecuting the Litigation.  As set forth in the Wood Declaration, the Settlement was not achieved until Class Counsel: (1) conducted an in-depth investigation regarding CCA and the alleged misconduct, including identifying and interviewing several former CCA employees and securing critical documents from the U.S. Bureau of Prisons ("BOP") through Freedom of Information Act requests, completing a review and analysis of SEC filings, conference call transcripts, press releases, and financial analyst research reports concerning the Company; (2) filed a detailed amended complaint sufficient to meet the PSLRA's particularized pleading standards; (3) comprehensively briefed Defendants' motion to dismiss, which the Court denied; (4) achieved class certification over Defendants' strenuous opposition, following a successful motion for reconsideration and Defendants' unsuccessful Rule 23(f) petition; (5) undertook the review and analysis of over 3.7 million pages of documents; (6) took 24 fact depositions; (7) filed more than a half-dozen discovery motions, including motions related to Defendants' interrogatory responses, as well as Defendants' claims of privilege, which

resulted in the appointment of a special master; (8) retained experts in the fields of performance of private prison operators and economics to prepare opening expert and supplemental expert reports; (9) completed expert discovery, including taking eight depositions of Defendants' designated experts and defending Plaintiff's two experts; (10) prepared and filed *Daubert* motions to exclude most of Defendants' expert witnesses and opposed Defendants' motions to exclude Plaintiff's experts; (11) successfully moved for partial summary judgment; (12) opposed Defendants' motion for summary judgment; (13) prepared the case for trial, including drafting motions *in limine*, jury instructions and other pretrial materials, exchanging trial exhibits and deposition designations with Defendants, and negotiating evidentiary objections; (14) assessed the risks of prevailing on Plaintiff's claims at trial and the Class's ability to collect on any judgment awarded; and (15) engaged in settlement negotiations over the course of two years, ultimately resulting in the Settlement. *See generally* Wood Decl.

Class Counsel undertook the representation of the Class on a contingent fee basis, and no payment has been made to Class Counsel to date for its services or for the litigation expenses it has incurred on behalf of the Class. Additionally, Class Counsel invested more than $1,900,000, carrying much of that cost for years without compensation. Class Counsel firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as a firm that will not waver in its dedication to the interests of class members, and that is committed to zealously prosecuting a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues that were vigorously opposed by highly skilled and experienced defense counsel, Class Counsel succeeded in securing a very favorable result for the Class. Significantly, the fee and expense request is supported by Plaintiff. *See* Declaration of Amalgamated Bank Executive Vice President and General Counsel Deborah Silodor ("Silodor

Decl."), ¶5, filed herewith. Plaintiff is an institutional investor and paradigmatic fiduciary of the type Congress envisioned in enacting the PSLRA.[2] Plaintiff was actively involved in the Litigation, including the difficult class certification proceedings and the protracted settlement discussions. Silodor Decl., ¶3. Because of this involvement, now, at the end of the case, Plaintiff is in a unique position to evaluate this multi-million dollar result and assess whether the fee request is fair and reasonable and should be awarded. As the Third Circuit held in *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001), "courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel."

As discussed herein, and for the reasons detailed in the Settlement Brief and the Wood Declaration, the requested fee is fair and reasonable when considered under applicable Sixth Circuit standards and is within the range of awards in class actions approved by courts in this Circuit and nationwide. Moreover, the requested expenses and charges are reasonable in amount and were necessarily incurred for the successful prosecution of this Litigation. Finally, an award of $17,525 pursuant to 15 U.S.C. §78u-4(a)(4) for Plaintiff's time spent in representing the Class is eminently reasonable. No objections to these requests have been received by Class Counsel.

## II. AWARD OF ATTORNEYS' FEES

### A. Class Counsel Is Entitled to a Fee from the Common Fund It Obtained

This Settlement has created a common fund. The Supreme Court has long recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees.

---

[2] Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to assume control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *See* Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. No. 104-369, 1995 WL 709276, at *32 (Nov. 28, 1995).

*Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881). The rationale for the common fund

principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980):

> [A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to

protect the rights of those who have small claims. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96

n.4 (2013). This is particularly applicable to claims brought under the federal securities laws, as the

Supreme Court has emphasized that private actions provide "'a most effective weapon in the

enforcement' of the securities laws and are 'a necessary supplement to [SEC] Commission action.'"

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v.*

*Borak*, 377 U.S. 426, 432 (1964)).[3]

### B. The Court Should Award Attorneys' Fees Using the Percentage Approach

Class Counsel's efforts have resulted in the creation of a $56 million common fund. Courts

favor awarding fees from a common fund based on "a percentage of the fund bestowed on the class."

*See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S.

116, 124-25 (1885); *Greenough*, 105 U.S. at 532; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-

66 (1939). Congress followed the Supreme Court's lead and endorsed the efficacy of the

percentage-of-the-fund approach to fee awards in the context of common fund PSLRA cases. *See*

15 U.S.C. §78u-4(a)(6); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 243 (E.D. Mich.

2016) ("[B]ecause the PSLRA refers to an award of attorneys' fees and expenses in relation to 'a

---

[3]     *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (noting that the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

reasonable percentage of the amount of any damages . . . actually paid to the class,' the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead Counsel's fee award."), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

District courts in this Circuit overwhelmingly apply the percentage method, endorsed by the Sixth Circuit in *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993), in awarding fees in common fund cases,[4] recognizing that "the percentage-of-the-fund approach more accurately reflects the result achieved [and] . . . has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at \*4.[5] The percentage-of-the-fund method also "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done,

---

[4] *Burges v. Bancorpsouth, Inc.*, No. 3:14-cv-01564, slip op. at ¶3 (M.D. Tenn. Sept. 21, 2018) (using "'percentage-of-recovery'" to award class counsel fees in §10b-5 case) (Ex. 1); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, 2016 U.S. Dist. LEXIS 140387, at \*32 (M.D. Tenn. Apr. 14, 2016); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882-WJH, 2015 U.S. Dist. LEXIS 181943, at \*6 (M.D. Tenn. Jan. 16, 2015) (same); *North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, No. 3:11-cv-00595, slip op. at ¶3 (M.D. Tenn. May 12, 2014) (same) (Ex. 2); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, slip op. at ¶3 (M.D. Tenn. Oct. 31, 2012) (same) (Ex. 3); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 U.S. Dist. LEXIS 91661, at \*4 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167, at \*14 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

[5] The Sixth Circuit is not alone in its adoption of the percentage approach. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Florin v. Nationsbank, N.A. of Ga.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

### C. The Requested Fee Award Is Within the Applicable Range of Percentage-of-the-Fund Awards

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of one-third of the recovery. *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

The fee requested here is "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit." *Se. Milk*, 2013 U.S. Dist. LEXIS 70167, at *15-*16; *Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at *5 ("The Court finds that the requested counsel fee of one third [of $73 million recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 U.S. Dist. LEXIS 5964 (E.D. Mich. Jan. 20, 2015) (awarding one-third of common fund as attorneys' fees); *Fushi Copper Weld*, slip op. at 1(awarding 33-1/3% of settlement in §10b-5 case) (Ex. 2); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding one-third of common fund and noting that "'[e]mpirical studies show that . . . fee awards in class actions average around one-third of the recovery'").

The judges of the Middle District are in accord. *BancorpSouth*, slip op. at 1 (Ex. 1); *Morse v. McWhorter*, No. 3:97-0370, slip op. at 1 (M.D. Tenn. Mar. 12, 2004) (Higgins, J.) (awarding a

33-1/3% fee plus expenses) (Ex. 4); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *88 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."); *In re Sirrom Cap. Corp. Sec. Litig.*, No. 3-98-0643, slip op. at 6 (M.D. Tenn. Feb. 4, 2000) (Campbell, J.) (awarding 33-1/3% of $15 million settlement) (Ex. 5); *Skeete v. Republic Schools Nashville*, No. 3:16-cv-00043, slip op. at ¶14 (M.D. Tenn. Feb. 26, 2018) (Ex. 6) (ECF Nos. 105, 112) (approving one-third fee).

### D. The Fee Is Reasonable Under the Circumstances

The touchstone of an appropriate fee award in common fund cases is whether the award is reasonable under the circumstances. *See Rawlings*, 9 F.3d at 517. The Sixth Circuit grants a district court "'considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court.'" *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In determining the reasonableness of attorneys' fees, the Sixth Circuit over the years has identified several relevant factors that District Courts "[o]ften, but by no means invariably," consider. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). These have included "the complexity of the legal questions involved, the results accomplished, the professional standing of [counsel], and the professional standing of [defendants'] lawyers," the effort expended, and the public policy aspect of the case. *Denney v. Phillips & Buttorff Corp.*, 331 F.2d 249, 251 (6th Cir. 1964); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). Courts also consider "'[t]he extent and nature of the services; the labor, time and trouble involved; the results achieved; the character and importance of the matter in hand; the value of the property or the amount of money involved; the learning, skill and experience exercised; whether the fee is absolute or contingent; and the ability to pay.'" *Pergament v. Kaiser-Frazer Corp.*, 224 F.2d 80, 83 (6th Cir. 1955). Application of the factors articulated by the Sixth Circuit support the requested fee award here.

### 1.     The Value of the Benefits Achieved

Class Counsel has secured a recovery that provides for a substantial (and definite) cash payment of $56 million.  Courts have consistently recognized that in making a fee award the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).[6] This outstanding Settlement was achieved as a direct result of the skill, effort, and tenacity of Class Counsel in prosecuting this action.  There is no question counsel overcame numerous obstacles and took significant risks in obtaining this highly favorable result for the Class.

While Class Counsel believes Plaintiff's claims have substantial merit, if litigation were to proceed to trial there is nonetheless a significant risk that the Class could recover less than the amount of the Settlement or nothing at all.  Indeed, at the time the Settlement was reached, the parties were less than a month from trial and success before a jury was less than certain.

Defendants consistently maintained that Plaintiff could not establish liability or damages and challenged virtually every factual and legal issue in this Litigation in an effort to defeat Plaintiff's claims.  Wood Decl., ¶¶12-16.  Plaintiff anticipated a battle of experts on all disputed issues.  *Id.*, ¶15.  It is impossible to predict the outcome of such a battle.

Plaintiff also faced the risk of recovering on a judgment had one been obtained.  Not only had CCA not won a competitively bid BOP contract in years, but newly-elected President Biden issued an executive order on January 26, 2021 indicating the intent to phase out the federal government's reliance on private prison operators.  *Id.*, ¶17.  In March 2021, Moody's downgraded CCA's corporate family rating, senior unsecured debt rating, and senior secured credit facility rating to Ba2 from Ba1, and revised its outlook to "negative."  *Id.*  In April 2021, CCA announced an

---

[6]     *Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *In re Delphi Corp. Sec., Derivative, & ERISA Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

offering of new senior notes paying 8.25% interest, a significant increase from the 5% and 4.625% senior notes they replaced, reflecting the Company's increasing credit risk. *Id.* As a result, Plaintiff was faced with the real risk that should it be awarded damages it sought, CCA would not have the resources to fund the judgment and might seek the protection of the bankruptcy courts to avoid paying any judgment. *Id.*

Faced with these substantial risks, and with a keen recognition of the delay and costs to the Class that would be involved in overcoming these risks, Class Counsel was able to achieve a highly favorable settlement on behalf of the Class. Indeed, this result is more than five times the median percentage recovery in securities class action settlements in 2020 according to data from NERA. *See* NERA Report, *supra*. Accordingly, the proposed Settlement is an excellent recovery for the Class, fully justifying a fee award "within the range of fees ordinarily awarded" in this District and Circuit. *Skelaxin*, 2014 U.S. Dist. LEXIS 91661, at *5.

### 2. Public Policy Considerations

The Supreme Court has emphasized that private securities actions such as this one provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310; *Tellabs*, 551 U.S. at 313. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. Without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and expensive class actions such as this one. *GMC*, 315 F.R.D. at 244 ("The federal securities laws are remedial in nature and adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors.").

Without the willingness of Class Counsel to assume the risks associated with litigation such as this one, members of the Class may not have recovered anything. Because actionable securities

fraud exists and society benefits from strong advocacy on behalf of investors, public policy favors the granting of reasonable fee and expense applications such as this one. *See Tellabs*, 551 U.S. at 313 (the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions"); *Se. Milk*, 2013 U.S. Dist. LEXIS 70167, at *23-*24 (Attorney fee awards "are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.").

### 3. The Contingent Nature of the Fee

Class Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave counsel uncompensated. Wood Decl., ¶¶152-156. This risk encompasses not only the risk of zero payment but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992).

Unlike counsel for Defendants, who are typically paid an hourly rate and reimbursed for their out-of-pocket expenses on a regular basis, and thereby assumed no risk of non-payment, Class Counsel has not been compensated for any of its time or over $1.9 million in expenses since litigation of this case began over four years ago. Courts have consistently and rightly recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Se. Milk*, 2013 U.S. Dist. LEXIS 70167, at *22 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.").

While high-stakes complex class actions are inherently difficult to prosecute, the PSLRA's heightened pleading standards and mandatory discovery stay make securities fraud class actions especially arduous. According to data from NERA Economic Consulting, motions to dismiss are granted, either in whole or in part, in 75% of all securities class actions, sometimes years after a case

is filed.[7]  Even when cases proceed past a motion to dismiss, the risk of no recovery is very real.

There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet

received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *Pompano*

*Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. May 1,

2018) (summary judgment granted in favor of defendants in securities fraud action after seven years

of litigation); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D.

Cal. June 16, 2009) (summary judgment granted in favor of defendants after eight years of litigation

and after plaintiffs' counsel incurred over $6 million in expenses and worked over 100,000 hours),

*aff'd*, 627 F.3d 376 (9th Cir. 2010).  Even plaintiffs who get past summary judgment and succeed at

trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  For example,

in *Bank Atlantic*, the Eleventh Circuit upheld a lower court's decision overturning a jury verdict in

favor of the lead plaintiff on the issue of loss causation.  *See Hubbard v. BankAtlantic Bancorp, Inc.*,

688 F.3d 713 (11th Cir. 2012).  The contingent nature of the representation supports the reasonable

fee sought here.

### 4.    The Diligent Prosecution of the Litigation

As discussed in more detail in the Wood Declaration, this Litigation was highly contentious,

involving disputes as to practically all elements of the case.  In order to obtain the $56 million

recovery on behalf of the Class, Class Counsel: (1) conducted an in-depth investigation regarding

CCA and the alleged misconduct, including identifying and interviewing several former CCA

employees and securing critical documents from the BOP through Freedom of Information Act

requests, completing a review and analysis of SEC filings, conference call transcripts, press releases,

---

[7]    Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*, at 19 (NERA Jan. 29, 2018), available at nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf.

and financial analyst research reports concerning the Company; (2) filed a detailed amended complaint sufficient to meet the PSLRA's particularized pleading standards; (3) comprehensively briefed Defendants' motion to dismiss, which the Court denied; (4) achieved class certification over Defendants' strenuous opposition and only after a successful motion for reconsideration; (5) undertook the review and analysis of over 3.7 million pages of documents; (6) took 24 fact depositions; (7) filed more than a half-dozen discovery motions, including motions related to Defendants' interrogatory responses, as well as Defendants' claims of privilege, which resulted in the appointment of a special master; (8) retained experts in the fields of performance of private prison operators and economics to prepare opening and supplemental reports; (9) completed expert discovery, including taking eight depositions of Defendants' designated experts and defending Plaintiff's two experts; (10) prepared and filed *Daubert* motions to exclude most of Defendants' expert witnesses and opposed Defendants' motions to exclude Plaintiff's experts; (11) successfully moved for partial summary judgment; (12) opposed Defendants' motion for summary judgment; (13) prepared the case for trial, including drafting motions *in limine*, jury instructions and other pretrial materials, exchanging trial exhibits and deposition designations with Defendants, and negotiating evidentiary objections; (14) assessed the risks of prevailing on Plaintiff's claims at trial and the Class's ability to collect on any judgment awarded; and (15) engaged in settlement negotiations over the course of two years, ultimately resulting in the Settlement. *See generally* Wood Decl.

The Settlement was achieved only by Class Counsel's tenacious advocacy and diligent prosecution. The significant resources devoted by Class Counsel reflect the effort required to bring this difficult Litigation to a successful conclusion less than a month from trial and warrants approval of the requested fee.

### 5. The Complexity of the Litigation

The complexity of the issues is a significant factor to be considered in making a fee award. Courts, including this one in this case, have long recognized that securities class actions present inherently complex and novel issues. *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 498 (M.D. Tenn. 2019) (characterizing case law surrounding price impact "confusing," and the reasoning of recent relevant Supreme Court precedent "difficult to reconcile"); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790, at *20-*21 (S.D. Ohio May 27, 2009); *GMC*, 315 F.R.D. at 244. As Judge Finesilver noted four decades ago in *Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234 (D. Colo. Sept. 28, 1978):

> The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty of the case. . . .
>
> Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action. . . .
>
> The complexity of a case is compounded when it is certified as a class action. . . . Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Id.* at *11-*12.

Judge Finesilver's comments ring even more true today. Despite the fact that Plaintiff believes it has uncovered sufficient evidence to sustain a jury verdict in Plaintiff's favor (Wood Decl., ¶11), Defendants believe they have evidence to prove at trial that their statements were true to the best of their knowledge, that all risks had been disclosed, and even if they hadn't, none materialized, and the Class Members' losses were instead the result of a political shift rather than the materialization of the risks arising from CCA's systematically bad performance. *Id.*, ¶12.

At the time the Settlement was reached, motions concerning the admissibility of evidence necessary to Plaintiff's ability to prove its claims at trial were unresolved. *Id.*

The complexity of proving and recovering full damages here cannot be overstated. If, for example, the jury credited Plaintiff's allegations that Defendants misleadingly concealed CCA's deteriorating relationship with the BOP but found that Defendants generally told the truth about the quality of CCA's services (or vice versa), that could have significantly reduced the amount of damages recoverable by the Class. *Id.*, ¶13. Damages could also have been similarly reduced if the jury found the fraud did not commence until some point after the start of the Class Period such that fewer shares were purchased at inflated prices or the amount of the inflation in the shares was less than Plaintiff's experts estimated. *Id.* This could have occurred, for example, if the jury found Defendants misled investors about the deteriorating relationship with the BOP, but not until December 2014, when CCA lost its BOP contract for the Northeast Ohio facility. *Id.* Therefore, risks concerning the establishment of damages subjected the Class to a reduced recovery. *Id.* There also were real risks regarding the recovery of any judgment from the Defendants given the current state of CCA's operations. *Id.*, ¶17.

These legal and factual complexities required skill and resources to deal with efficiently and made the case more difficult and uncertain, as an inherently uncertain "battle of experts" would undoubtedly affect the outcome of the upcoming trial. These complexities support the requested award.

### 6.     The Quality of Representation

Class Counsel include locally and nationally known leaders in the fields of securities class actions and complex litigation. Robbins Geller has either served or is serving as lead counsel in each of the largest and most significant securities class actions in this Circuit and District. Robbins Geller served as lead counsel in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. H-01-3624 (MH)

(S.D. Tex.), in which it secured the largest recovery ever obtained in a shareholder class action. Specifically, commenting on counsel's "clearly superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide," the court in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008), stated, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *Id.* at 789-90, 797. Robbins Geller served as sole lead counsel in *In re Cardinal Health Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio), obtaining the then-largest securities settlement in the Sixth Circuit. In approving the requested attorneys' fees, the court noted that "[t]he quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). Robbins Geller also served as lead counsel in *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.), obtaining a $215 million recovery on behalf of the class – the largest securities class action recovery ever in Tennessee.

But the quality of representation here is best demonstrated by the amount of the Settlement – far above the average of similar securities class actions. Class Counsel used its considerable skill, experience, and reputation for tenacity to negotiate a highly favorable result for the Class that eliminates the substantial delay and risk associated with trial and inevitable appeal.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See Delphi*, 248 F.R.D. at 504 ("The ability of [Class] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Defendants here were represented by extremely capable attorneys from Riley Warnock & Jacobson, PLC and Latham & Watkins LLP, law firms with reputations for vigorous advocacy in the defense of complex civil cases. As detailed in the

16

Wood Declaration, Defendants' Counsel asserted an arsenal of arguments and litigation strategies in an attempt to obtain the dismissal of this case and to minimize their clients' exposure. The ability of Class Counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of its work.

      **E.**      **Class Member Reaction**

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Id.* at 504; *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at *39 (S.D. Ohio Aug. 18, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award.").[8] To date, there have been no objections to Class Counsel's fee request.[9] Even a small number of objections by class members is evidence that the requested fee is fair. *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request).

There can be no dispute that all of the factors discussed above weigh in favor of the requested fee award.

---

[8]     *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at *37 (E.D. Pa. Apr. 19, 2005) (absence of objections supports award of requested fee); *In re Charter Commc'ns, Inc.*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at *59 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request).

[9]     As set forth in the Notice, the deadline to provide counsel with objections is October 8, 2021. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A.

## III. PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel also requests payment of expenses and charges incurred by it and Local Counsel in connection with the prosecution of this Litigation in the amount of $1,949,862.24. *Se. Milk*, 2013 U.S. Dist. LEXIS 70167, at *32 ("'Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.'"); *see* accompanying Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl.") and Declaration of Jerry Martin Filed on Behalf of Barrett Johnston Martin & Garrison, LLC in Support of Application for Award of Attorneys' Fees and Expenses ("Barrett Johnston Decl."), attesting to the accuracy of Class Counsel's and Local Counsel's expenses. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[10] The categories of expenses for which counsel seek payment here are precisely the type of expenses routinely charged in similar cases and, therefore, are properly awarded from the common fund.

A significant component of Class Counsel's expenses are the costs of experts, consultants and investigators. In light of the PSLRA discovery stay, the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions to dismiss is frequently a necessity. These private investigators conducted a substantial amount of work on behalf of the Class and were important in helping Class Counsel achieve this

---

[10] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *see also New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'"), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

result. Similarly, the retention of experts with significant experience in private prison operations, economic analysis and damages in securities class actions was essential to understanding the relevant issues. *See* RGRD Decl., ¶13(e).

In addition, the number of documents produced in the Litigation (the electronic equivalent of over 3.7 million pages) required the use of Relativity, a sophisticated database management program for the hosting, review, and analysis of documents collected or produced in the Litigation. RGRD Decl., ¶13(h). Class Counsel was required to travel in connection with this Litigation and thus incurred the related costs of transportation, lodging, and meals. *Id.*, ¶13(c) and Ex. C thereto. Class Counsel also incurred the costs of electronic legal research. *Id.*, ¶13(g); Barrett Johnston Decl., ¶7(a). It is standard practice for attorneys to use these services to assist them in researching legal and factual issues. Other expenses and charges that were necessarily incurred in the prosecution of this Litigation include expenses for mediation fees, photocopying, filing and witness fees, postage and overnight delivery. Because these were all necessary expenses incurred by Class Counsel, they should be paid from the Settlement Fund. These expenses are described in detail in the accompanying declarations of Class Counsel and Local Counsel. *See generally* RGRD Decl. and Barrett Johnston Decl.

## IV.    PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE COSTS

Plaintiff also seeks approval for an award of $17,525 to compensate it for the time spent directly relating to its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Numerous courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class. *See, e.g.*, *BancorpSouth*, slip

op. at 2 (Ex. 1); *HCA*, 2016 U.S. Dist. LEXIS 140387, at *33 (awarding lead plaintiff $6,081.25 as payment for its time spent in representing the class); *Garden City Emps.' Ret. Sys.*, 2015 U.S. Dist. LEXIS 181943, at *7 (awarding lead plaintiff more than $20,000 for payment of its time spent and costs incurred in representing the class); *In re Arm Fin. Grp.*, No. 3:99CV-539-H, 2006 U.S. Dist. LEXIS 63528, at *21 (W.D. Ky. Aug. 31, 2006) (plaintiff awarded $6,150 for reimbursement of his costs and expenses directly related to representation of the class); *Fruit of the Loom*, 234 F.R.D. at 635 (awarding individual lead plaintiffs $7,500 each for time and expenses pursuant to the PSLRA).

As set forth in the Silodor Declaration, Plaintiff took an active role in the prosecution of the Litigation, including communicating with Class Counsel regarding issues and developments in the Litigation; reviewing certain documents filed in the case, including the operative Complaint; producing relevant documents; providing deposition testimony; and consulting with Class Counsel concerning the Litigation and settlement strategy. Silodor Decl., ¶3. Pursuant to the PSLRA, Plaintiff's request of $17,525 is based on the value of the hours expended participating in and managing this Litigation on behalf of Plaintiff and the Class. *Id.*, ¶6. The Notice informed potential Class Members that such expenses would be sought (Murray Decl., Ex. A), and no objections have been filed to date.

## V. CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully requests that the Court approve its motion for an award of attorneys' fees and expenses and Plaintiff's request for reimbursement of its time and expenses in representing the Class.

DATED:  September 24, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977
CHRISTOPHER H. LYONS, #034853


_____
        *s/Christopher M. Wood*
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
WILLOW E. RADCLIFFE
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ELLEN GUSIKOFF STEWART
JASON A. FORGE
RACHEL L. JENSEN
NATALIE F. LAKOSIL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 24, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
  & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,rachelj@ecf.courtdrive.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,nlakosil@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,ealexander@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@schallfirm.com

- **David J. Schindler**
  david.schindler@lw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@rgrdlaw.coom,willowr@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,morgank@ecf.courtdrive.com,smc

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)