UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>　　　　　　　　　Defendants. | Civil Action No. 3:16-cv-02267<br><br>Honorable Aleta A. Trauger<br><br>DECLARATION OF CHRISTOPHER M. WOOD FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES |

I, CHRISTOPHER M. WOOD, declare as follows:

1. I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of the Firm's application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Litigation").

2. This Firm is Lead Counsel for Plaintiff Amalgamated Bank, as Trustee for the LongView Collective Investment Fund and Class Counsel for the certified Class.

3. The information in this declaration regarding the Firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation, and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration. The purpose of this review was to confirm the accuracy of the entries on the printouts, as well as the necessity for, and the reasonableness of, the time and expenses invested in the Litigation. As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment. Based

on this review and the adjustments made, I believe the attorney and paraprofessional time set forth herein and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation. In addition, I believe these expenses are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.

4. After the reductions referred to above, the number of hours spent on the Litigation by the Firm exceeded 23,000.

5. The majority of the time, 14,756 hours, was spent on discovery-related matters, including: (i) drafting discovery requests and subpoenas and negotiating responses thereto; (ii) reviewing and evaluating over four million pages of documents; (iii) preparing for, taking and defending depositions; (iv) drafting discovery-related motions; and (v) evaluating and challenging claims of privilege. A detailed description of the work undertaken to complete the discovery process is set forth in the Declaration of Christopher M. Wood in Support of (i) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Wood Declaration") at ¶¶52-96.

6. A total of 3,096 hours were spent on matters related to potentially dispositive motions, including: (i) opposing defendants' motion to dismiss; (ii) obtaining class certification; (iii) briefing Fed. R. Civ. P. 23(f) petitions at the Sixth Circuit; and (iv) moving for and opposing summary judgment. A detailed description of the work undertaken related to potentially dispositive motions is set forth in the Wood Declaration at ¶¶41-51, 97-100.

7. A total of 1,702 hours were spent on trial preparation. A detailed description of the work undertaken to prepare this case for trial is set forth in the Wood Declaration at ¶¶121-124.

8. A total of 972 hours were spent consulting and working with Plaintiff's experts. A detailed description of the expert work necessary throughout this Litigation is set forth in the Wood Declaration at ¶¶101-113.

9. A total of 635 hours were spent preparing for mediations, participating in in-person and telephonic mediation efforts over a two-year period, and drafting and negotiating the Stipulation of Settlement and its supporting exhibits. A detailed description of the settlement and mediation efforts undertaken throughout this Litigation is set forth in the Wood Declaration at ¶¶131-135.

10. The remaining time, 2,091 hours, was spent on other matters related to the prosecution of the case, including: (i) preparing and filing pretrial motions which were adjudicated during this case; (ii) conducting legal research and discussing litigation strategy; (iii) investigating the claims at issue in the case and drafting the consolidated complaint; (iv) communications with the Lead Plaintiff as well as other members of the Class; and (v) preparing for and attending court hearings.

11. Given the nature of the firm's practice, my firm does not customarily charge its clients hourly rates for its services. Rather, we typically enter into contingency fee agreements for our work prosecuting securities class actions on behalf of our clients, and we request our fees be approved by the presiding court to be paid from common funds created by our efforts. Contingency fee agreements are also the prevailing, if not the exclusive, fee arrangements in this District and this Circuit for prosecuting securities fraud class actions. As set forth in detail in the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memo"), courts in this District and this Circuit overwhelming apply a percentage of the fund framework in awarding fees

in connection with securities class actions. Courts in the District and this Circuit have routinely approved fee requests of one-third of the settlement fund, and found such awards to be reasonable. Fee Memo at 7-8.

12. The Firm seeks an award of $1,947,432.70 in expenses and charges in connection with the prosecution of the Litigation. Those expenses and charges are summarized by category in Exhibit A attached hereto.

13. The following is additional information regarding certain of these expenses:

(a) **Filing, Witness and Other Fees**: $11,032.89. These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; or (ii) obtained copies of court documents for plaintiffs. The vendors who were paid for these services are set forth in Exhibit B attached hereto.

(b) **Class Action Notices/Business Wire**: $198,107.01. These charges include the cost of publishing the "early notice" required by the Private Securities Litigation Reform Act of 1995, as well as expenses for printing and mailing the Notice of Pendency of Class Action to Class Members and publishing a summary notice pursuant to the Court's Order of June 29, 2021 (ECF No. 464).

(c) **Transportation, Hotels and Meals**: $60,371.88. In connection with the prosecution of this case, the Firm has paid for travel expenses to, *inter alia*, attend Court hearings, meet with witnesses, mediators and opposing counsel and take or defend depositions. The date, destination and purpose of each trip is set forth in Exhibit C attached hereto.

(d) **Court Hearing Transcripts and Deposition Reporting, Transcripts and Videography**: $88,603.86. The vendors who were paid for these services are listed in Exhibit D attached hereto.

(e) **Experts/Consultants/Investigators**: $1,071,982.60.

(i) The BVA Group, LLC ("BVA"): $596,705.89. Lead Plaintiff retained the services of consulting group BVA and one of its partners, W. Scott Dalrymple, CFA, concerning causation and damages. Mr. Dalrymple, with the assistance of other members of BVA, provided critical economic analysis and expert report/testimony in connection with summary judgment and in preparation for trial. BVA also assisted Lead Counsel in developing the Plan of Allocation following settlement of this action.

(ii) **Crowninshield Financial Research, Inc. ("Crowninshield")**: $221,797.00. Lead Plaintiff retained the services of economic consulting firm Crowninshield and its founder, Steven P. Feinstein, Ph.D., CFA, concerning market efficiency and damages in connection with Lead Plaintiff's claims under the Securities Exchange Act of 1934. Dr. Feinstein provided necessary expert testimony regarding market efficiency and the ability to calculate damages in this action and also analyzed the expert testimony of defendants' economic expert in connection with Lead Plaintiff's motion for class certification. Additionally, Crowninshield performed preliminary damages analysis in connection with mediation.

(iii) **D1 Corrections Consulting, LLC ("D1")**: $156,150.00. Lead Plaintiff retained the expert services of consulting firm D1 and its founder, Donna Mellendick, in connection with preparing the case for trial. Ms. Mellendick has over 30 years' experience in prison administration, including experience as an administrator for the Privatization Management Branch of the Federal Bureau of Prisons ("BOP"), where she oversaw more than 50 staff members responsible for the management and oversight of the BOP's contracted large correctional facilities. D1 and Ms. Mellendick provided vital expert analysis and testimony regarding, *inter alia*, the quality of Corrections Corporation of America, Inc.'s ("CCA") performance of its contracts with

the BOP and the impact of CCA's past performance on the likelihood that CCA would win any competitively bid BOP contract in connection with summary judgment and in preparation for trial.

(iv) **L.R. Hodges & Associates, Ltd. ("LRH&A")**: $41,463.25. Over nine months (October-December 2016, January-March 2017, February and December 2018 and January 2019), during which LRH&A provided investigative services to Lead Counsel, LRH&A expended 184.4 hours for combined fees of $36,587.50 and incurred related expenses of $4,875.75, for a total of $41,463.25. LRH&A's research staff expended 84.5 hours to research, identify and confirm the employment status of prospective witnesses, locating all key targets, as well as maintaining and updating an evolving witness list to support other investigative team members. This also involved research, retrieval and analysis of relevant documents, including SEC filings, media articles and court filings, as well as other materials related to case issues. The case manager and interviewing investigators expended a combined 99.9 hours to research, review and analyze materials in preparation for the investigation; contacted and conducted interviews with targeted third-party witnesses; and thereafter prepared comprehensive interview summaries and other case reports. In addition, these individuals were involved in analyzing key case issues, as well as establishing and executing the joint litigation-investigation team plan and participating in numerous strategy sessions and investigation briefings with Lead Counsel.

(v) **ValueEdge Advisors, LLC ("ValueEdge")**: $34,151.46. ValueEdge consulted with Robbins Geller regarding potential corporate governance issues at CCA in connection with mediation.

(vi) **Expert Institute**: $3,000.00. Lead Plaintiff retained the services of the Expert Institute to assist Lead Plaintiff in identifying potential expert witnesses.

(vii) **Eric Dillon Law Firm, PLLC**: $715.00. The Eric Dillon Law Firm, PLLC, and Mr. Dillon provided independent representation for key witness Deborah Temple in connection with this action. Mr. Dillon and his firm are located in Mississippi and previously provided representation to the family of deceased CCA correctional officer Catlin Carithers for his death during a prison riot at CCA's Adams facility in May 2012. Ms. Temple provided a July 17, 2014 affidavit in connection with the action brought by Mr. Carithers' family, which is cited in the operative complaint in this action at ¶¶45-46. The affidavit details Ms. Temple's eyewitness account as a correctional officer and victim of the riot at CCA's Adams facility. Lead Counsel anticipated that Ms. Temple would testify consistent with her affidavit, including providing details regarding the shortage of staffing at Adams leading up to the riot and Mr. Carithers' death. Mr. Dillon provided independent counsel to Ms. Temple in preparation for her trial testimony.

(viii) **Confidential Outside Expert Consultant**: $18,000.00. Lead Plaintiff retained the consulting services of a confidential expert consultant to provide non-testifying expertise. This expert has a Ph.D. in economics and a J.D. He/she is a university professor and has authored several publications regarding private prisons. This expert provided analysis regarding the support for cost comparisons made by CCA and crucial analysis of the expert reports of D. Scott Dodrill and Justin Marlowe.

(f) **Special Master for Discovery (Hochberg ADR LLC)**: $42,737.50. Judge Hochberg was appointed as Special Master by the Court to assist in resolving certain disputes related to defendants' privilege logs (ECF No. 246).

(g) **Online Legal and Financial Research**: $23,732.57. This category includes vendors such as LexisNexis Products, PACER, Thomson Financial, Transunion and Westlaw. These resources were used to obtain access to SEC filings, factual databases legal

research and for cite checking of briefs. This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation. The charges for these vendors vary depending on the type of services requested. For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services. When Robbins Geller uses online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *à la carte* use of such services, which some law firms pass on to their clients. For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(h) **eDiscovery Database Hosting**: $322,827.16. Robbins Geller requests $322,827.16 for hosting eDiscovery related to this Litigation. Robbins Geller has installed top-tier software, infrastructure and security. The platform implemented, Relativity, is offered by over 100 vendors and is currently being used by 198 of the AmLaw200. Over 30 servers are dedicated to Robbins Geller's Relativity hosting environment, with all data stored in a secure SSAE 16 Type II data center, with automatic replication to a datacenter located in a different geographic location. By hosting in-house, Robbins Geller is able to charge a reduced, all-in rate that includes many services often charged as extra fees when hosted by a third-party vendor. Robbins Geller's hosting fee includes user logins, ingestion, processing, OCRing, TIFFing, Bates stamping, productions and archiving, all at no additional cost. Also included is unlimited structured and

conceptual analytics (*i.e.*, e-mail threading, inclusive detection, near-dupe detection, concept searching, assisted review, clustering and more). Robbins Geller is able to provide all these services for a rate that is typically much lower than outsourcing to a third-party vendor. Using a secure, advanced platform in-house has allowed Robbins Geller to prosecute actions more efficiently and has reduced the time and expense associated with maintaining and searching electronic discovery databases. Similar to third-party vendors, Robbins Geller uses a tiered rate system to calculate hosting charges. The amount requested reflects charges for the hosting of over 3.7 million pages of documents produced by defendants, plaintiffs and non-parties in this action.

(i) **Mediation Fees (Phillips ADR Enterprises, P.C.)**: $52,400.00. These are the fees of the mediators, Hon. Layn Phillips (Ret.) and Gregory P. Lindstrom, who conducted two in-person mediation sessions, as well as numerous follow-up telephonic conferences with the parties leading to the settlement of the Litigation.

14. The expenses pertaining to this case are reflected in the books and records of the Firm. These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

15. The identification and background of the Firm and its partners is contained in Exhibit E attached hereto.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of September 2021, at Nashville, Tennessee.

*s/Christopher M. Wood*
CHRISTOPHER M. WOOD

- 9 -
Case 3:16-cv-02267 Document 473 Filed 09/24/21 Page 9 of 12 PageID #: 25185

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 24, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
 & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-02267 Grae v. Corrections Corporation of America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth J. Black**
  kennyb@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Christopher T. Cain**
  cain@scottandcain.com,ambrose@scottandcain.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com

- **Brian T. Glennon**
  brian.glennon@lw.com

- **Michael Goldberg**
  michael@goldberglawpc.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Meryn C.N. Grant**
  Meryn.Grant@lw.com

- **Dennis J. Herman**
  dherman@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,rachelj@ecf.courtdrive.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,nlakosil@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,KennyB@rgrdlaw.com,e_file_sd@rgrdlaw.com,clyons@ecf.courtdrive.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,ealexander@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Faraz Mohammadi**
  faraz.mohammadi@lw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,WillowR@ecf.courtdrive.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian Schall**
  brian@schallfirm.com

- **David J. Schindler**
  david.schindler@lw.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sarah A. Tomkowiak**
  sarah.tomkowiak@lw.com

- **Morgan E. Whitworth**
  morgan.whitworth@lw.com,morgan-whitworth-8044@ecf.pacerpro.com

- **Mark H. Wildasin**
  mark.wildasin@usdoj.gov,liz.lopes@usdoj.gov,melissa.russell@usdoj.gov,dkGeorge@bop.gov,othomas@bop.gov,CaseView.ECF@usdoj.gov,regina.taylor2@usdoj.go

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@rgrdlaw.coom,willowr@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,morgank@ecf.courtdrive.com,smc

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`