IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| NIKKI BOLLINGER GRAE, individually and on Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiffs*, | § § | Case No. 3:16-cv-02267 |
| v. | § § | Honorable Aleta A. Trauger |
| CORRECTIONS CORPORATION OF AMERICA, TENNESSEE, LLC, Et al., | § § § § § | Magistrate Judge Jeffrey S. Frensley |
| *Defendants*. | § § | |

**MOTION TO INTERVENE AND UNSEAL JUDICIAL DOCUMENTS AND EXHIBITS AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 24(b)(1), Marie Newby, on behalf of herself, and as Administrator of the Estate of Terry Childress, moves for permission from the Court to intervene in this case for the limited purpose of requesting that the Court unseal the parties' motions for class certification, for summary judgment, sealed portions of the parties' Daubert motions, responses, replies, and supporting documentation. (ECF Nos. 120, 121, 122, 336, 338, 347, 352, 358, 359, 386, 387, 388, 389, 396, 397, 398, 399, 400, 401, 422, and 423) (collectively "Sealed Materials".) In support, Ms. Newby states as follows:

**<u>Interested Parties</u>**

Marie Newby (hereinafter "Ms. Newby") is the mother and Administrator of the Estate of Terry Childress (hereinafter "Mr. Childress"). Mr. Childress was brutally murdered by his cellmate at Trousdale Turner Correctional Center, in Trousdale County, Tennessee just days after appearing

-1-

for a parole hearing.

CoreCivic[1] owns and operates Trousdale Turner Correctional Center, the private prison that enabled Mr. Childress's murder through a combination of understaffing, misclassification, and profit-motivated deliberate indifference to Mr. Childress's safety. CoreCivic operates Trousdale Turner under a contract with the Tennessee Department of Correction. In doing so, it does not merely offer a service to the public. It performs a public function typically reserved to governments. The function of imprisoning citizens of the United States is among those which must be subject to the highest level of public scrutiny because it routinely implicates both the fundamental human rights of those citizens and their explicit rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

On February 11, 2022, Ms. Newby, individually, and as Personal Representative of the estate of Mr. Childress (hereinafter "Interested Parties"), filed a lawsuit[2] against CoreCivic of Tennessee, LLC, as owner and operator of Trousdale Turner Correctional Center, Damon Hininger (hereinafter "Hininger"), Steve Conry (hereinafter "Conry"), Raymond Byrd (hereinafter "Byrd"), and Shawna Curtis (hereinafter "Curtis"), in the Middle District of Tennessee, Case No. 3:22-cv-00093. Ms. Newby alleged that CoreCivic, Hininger, Conry and Byrd knew that Trousdale Turner Correctional Center was chronically understaffed at the time of Mr. Childress's murder, that they were aware that this chronic understaffing created dangerous conditions, that those dangerous conditions led directly and foreseeably to the death of Mr. Childress, and that CoreCivic, Hininger, Conry, and Byrd knew or should have known of the threat posed by their dangerous levels of understaffing. Ms. Newby alleged that CoreCivic, Hininger, Conry, and Byrd willfully understaffed Trousdale Turner Correctional Center because doing so was and remains profitable

---

[1] Formerly known as the Corrections Corporation of America.
[2] A copy of Ms. Newby's lawsuit is hereto attached as **Exhibit A**.

and that the decision to understaff Trousdale Turner was part of an informal policy or custom of understaffing facilities in order to increase profits and part of a pattern of such understaffing at CoreCivic facilities in Tennessee in particular and across the country.

**Lead Plaintiff's Allegations Against Corrections Corporation of America**

According to Lead Plaintiff Nikki Bollinger Grae (hereinafter "Lead Plaintiff") Corrections Corporation of America (hereinafter "CCA") for years engaged in a scheme to defraud investors and made numerous materially false and misleading statements and omissions to regarding CCA's business and operations. (ECF No. 57, ¶ 3.) Lead Plaintiff rather alleges that CCA understaffing and the use of underqualified staff directly attributed to multiple CCA employee deaths and these instances of understaffing were far from isolated. (Id. at ¶ 4.) CCA's attempts at cost savings and "efficiencies" from understaffing and hiring underqualified staff, directly contributed to the serious safety and security issues at CCA facilities. (Id. at ¶ 117). The same allegations of understaffing and hiring underqualified staff are directly causal to the death of Mr. Newby in the Interested Parties' lawsuit.

**The Stipulated Protective Order**

The Parties entered into a Stipulated Protective Order (ECF No. 86) on February 12, 2018. The Stipulated Protective Order governs "confidential material." In the stipulated order, the parties defined "confidential" material as

> any Discovery Material that [a party] believes in good faith contains: (i) trade secret or other confidential research, development, or commercial information, (ii) information the disclosure of which would, in the good faith judgment of the Producing Party, negatively impact the management of any corrections facility or be detrimental to the health and safety of inmates, corrections officers, or the public; or (iii) "protected health information" ("PHI") as defined in 45 C.F.R. §§ 160.103 and 164.501, which includes but is not limited to health information, including demographic information relating to either (a) the past, present, or future physical or mental condition of an individual, (B) the provision of care to an individual, or (c) the payment for care provided to any individual, which identifies the individual

or which reasonably could be expected to identify the individually (collectively, "Confidential Information")

(Id. at ¶ 2). Additionally, the parties also agreed to file any confidential material under seal. (Id. at ¶¶ 10(b), 12.)

The parties later amended the Stipulated Protective Order, although the key definitions and the agreement to file documents under seal were unchanged. (*See* ECF No. 117.)

### The Requested Sealed Documents

On October 26, 2018, Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated") filed its *Opposed Motion for Leave to File Under Seal* (ECF No. 119) an unredacted version of Plaintiff's reply in further support of its motion for class certification, appointment of class counsel and exhibits to that reply. In that motion, Plaintiff agreed with Ms. Newby that "the public has a strong interest in obtaining the information contained in the court record" (ECF No. 119, at PageID 3047) and did "not believe that its reply in further support of its motion for class certification, appointment of class presentative and appointment of counsel or the exhibits to that reply merit continued sealing from the public." (Id. at PageID 3048.) Subsequently and despite its opposition, Amalgamated filed the sealed Reply and exhibits. (ECF Nos. 120-122).

November 20, 2020, was filled with a plethora of filings, CoreCivic filed its *Motion to Exclude Testimony of Donna Mellendick* (ECF No. 336.) In support of this motion, CoreCivic attached the entire report of Donna Mellendick and sealed the report. (ECF No. 338). Additionally, it filed its *Motion for Summary Judgment* (ECF No. 352).

On that same day, Plaintiffs filed a Motion for Partial Summary Judgment (ECF No. 347) and their *Motion to Exclude Opinion Testimony of Defendants' Non-retained Experts William Dalius, Harley Lappin, Don Murray, and Kim White* (ECF No. 354) under seal. In support of that

motion, Plaintiffs filed their *Declaration of Christopher M. Wood* (ECF No. 356) under seal. Additionally, they filed their *Motion to Exclude Expert Testimony of Justin Marlowe* (ECF No. 357). Their *Memorandum of Law in Support of Plaintiffs Motion to Exclude Expert Testimony of Justin Marlowe* (ECF No. 358) was filed under seal, as well as the *Declaration of Willow E. Radcliffe in Support* (ECF No. 359).

Additionally on November 20, 2020, defendants filed a Motion for Summary Judgment (ECF No. 352).

On January 22, 2021, Plaintiffs filed their *Omnibus Motion Regarding Filing Documents Under Seal* (ECF No. 385). In this motion, Plaintiffs expressed their frustration with CoreCivic stating:

> Defendants have claimed virtually every document produced in this case should be treated as Confidential and remain under seal – even documents that are publicly available. They have done so even after the Court told Defendants more than a year ago:
>
> "The court has, so far, honored the parties' confidentiality claims in this case. Nevertheless, the court has now determined that it is necessary, in the interests of justice and transparency, to [unseal documents supporting class certification] . . . *The conversations cited may be awkward or embarrassing for CoreCivic to see disclosed, but that alone, is not enough to justify an unyielding seal in this case.*" ECF No. 165 at 7 n.2

(ECF No. 385, at PageID 19006) (emphasis added). Notwithstanding this frustration, Plaintiffs filed the following documents under seal:

> 1. Plaintiff's Opposition to Defendants' Motion for Summary Judgment (the "Opp.");
> 2. Declaration of Christopher M. Wood in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and exhibits thereto (the "MSJ Opp. Decl.")
> 3. Plaintiff's Response to Defendants' Statements of Undisputed Material Facts in Support of Their Motion for Summary Judgment;
> 4. Plaintiff's Opposition to Defendants' Motion to Exclude Testimony of Donna Mellendick;

> 5. Declaration of Jason A. Forge in Support of Plaintiff's Opposition to Defendants' Motion to Exclude Testimony of Donna Mellendick and exhibits thereto;
> 6. Plaintiff's Opposition to Defendants' Motion to Exclude Testimony of Scott Dalrymple; and
> 7. Declaration of Christopher M. Wood in Support of Plaintiff's Opposition to Defendants' Motion to Exclude Testimony of Scott Dalrymple and exhibits thereto.

(ECF No. 386-389, 396-401). On that same day, CoreCivic filed a Response (ECF No. 393) to Plaintiffs' partial motion for summary judgment.

On February 19, 2021, CoreCivic filed their *Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment* (ECF No. 422) and their *Response to Plaintiff's Statement of Additional Material Facts that Present Genuine Issues to be Tried* (ECF No. 423) under seal. While Plaintiff filed their *Reply in Support of Plaintiffs' Motion to Exclude Opinion Testimony of Defendants Non-retained Experts William Dalius, Harley Lappin, Don Murray, and Kim White* (ECF No. 425), *Reply in Support of Plaintiffs' Motion to Exclude Expert Testimony of Justin Marlowe* (ECF No. 426), and *Declaration of Willow E. Radcliffe in Support of Reply in Support of Plaintiffs' Motion to Exclude Expert Testimony of Justin Marlowe* (ECF No. 427) under seal.

Although it is impossible to know the contents of the class certification, summary judgment, and Daubert/expert materials because they are under seal, the allegations in the Lead Plaintiff's complaint and the information that is available raises concerns about shielding these documents from public scrutiny. CoreCivic should not be able to perpetrate a fraud associated with taxpayer funds and hide behind the veil of secrecy in filings with this Court. Ms. Newby avers that each of these filed documents and their accompanying exhibits is likely to hold information that is pertinent to or likely to aid her in discovery information that is pertinent to her claims of deliberate indifference, understaffing, underqualified staffing, and policy decisions by CoreCivic and its executives that recklessly sought to increase profits at the risk of human lives. But Ms. Newby's interests extend beyond those of a litigant. She has a right as a citizen and the mother of a person

who died in CoreCivic's custody to inspect court records in an effort to understand whether CoreCivic's policies and contracts to operate private prisons should be challenged in the political arena, not merely the legal system. CoreCivic, though a private company, performs a function with which state and federal governments are explicitly tasked, and they should be subject to no less scrutiny in litigation than would the governmental entities whose duties are delegated to them.

## Argument

### A. Interested Parties Should Be Permitted to Intervene Because Their Motion is Timely and the Claims Share Common Questions of Law and Fact

Under Federal Rule of Civil Procedure 24, on timely motion, the Court may permit anyone to intervene in an action who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Whether a motion to intervene is timely is "determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973); *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990) (timeliness is evaluated in the "context of all relevant circumstances") (citing *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987). Relevant factors include the following:

> (1) The point at which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonable should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Jansen, 904 F.2d at 340 (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). Here, the Interested Parties' motion to intervene is timely under this standard.

First, the fact that the Lead Plaintiff and CoreCivic have settled the main action does not weigh against intervention. The Court approved the settlement less than 3 months ago on November 8, 2021. Here Interested Parties seek to intervene for the limited purpose of unsealing

the summary judgment materials and will not assert claims, defenses, or otherwise litigate any issues in this case. Courts frequently permit parties to intervene in cases after settlement, both to seek other remedies and to request documents be unsealed. *See, e.g. United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 503 (6th Cir. 1993) (permitting intervention to seek preliminary injunction nine (9) months after the parties settled); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987) (reversing district court's decision denying motion to intervene to unseal tapes of recorded conversations seven months after the parties settled the case); *see also, e.g. United Nuclear Corp. v. Cranford, Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (permitting intervention three (3) years after the parties settled, nothing that "[t]he most important circumstances in this case is that intervention was not on the merits, but for the sole purpose of challenging a protective order"); *Bank of Am. Nat'l Trust and Savings Assoc. v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1051-52 (3d Cir. 1988) (holding that motion to intervene was not untimely two years after the case was settled).

Second, the Interested Parties seek to intervene for the limited purpose of unsealing documents submitted to the Court in connection with the parties' motions for summary judgment. The Interested Parties do not seek to disturb the settlement agreement, any order of this Court, the challenge the merits of any parties' positions in the case.

Interested parties are permitted to intervene for the limited purpose of unsealing judicial documents. *E.g., Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.* 823 F.2d 159, 162 (6th Cir. 1987); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1169 (6th Cir. 1983); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("[T]he procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidential orders entered in that action.")

"[E]very circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *Equal Employment Opp. Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir 1998)

Third, the Interested Parties learned of their limited interest in this case only recently and acted promptly. Mr. Childress was murdered on February 23, 2021. Following a lengthy investigation and an effort at mediation with CoreCivic, Ms. Newby filed her suit on behalf of herself and the Estate of Terry Childress on February 11, 2022. The mere fact that Lead Plaintiff commenced a securities class action against CoreCivic was not, by itself, enough to alert the Interested Parties to the overlapping factual and legal questions in the two cases.

Fourth, permitting the Interested Parties to intervene cannot prejudice either Lead Plaintiff or CoreCivic. The case is closed. *See Pub. Citizen v. Liggett Group,* 858 F.2d 775, 786 (1st Cir. 1988) (considering prejudice in the context of a motion to intervene filed twelve (12) weeks after adjudication on the merits, noting that "[b]ecause [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case").

The Interested Parties' also have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The key issue of fact in the Interested Parties' lawsuit against CoreCivic is the adequacy of CoreCivic's staffing and training. Lead Plaintiff has alleged that CoreCivic for years has mislead investors, auditors, and the government, both state and federal, about CoreCivic's staffing practices. The summary judgment materials currently under seal include a plethora of evidence regarding staffing and quality issues at CoreCivic facilities. There exists a plenitude of overlapping questions of key facts.

Ultimately, the Interested Parties' motion to intervene is timely and their claims share

common questions of fact and law with the main action. The Interested Parties should thus be permitted to intervene for the limited purpose of requesting the Court unseal the Sealed Materials.

> B. **The Sealed Materials Should be Publicly Available Because the Public Has a Right of Access to Judicial Documents Under Common Law**

Courts have discretion over their own records and files, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This discretion is "circumscribed by a long-established legal tradition," *Brown & Williamson Tobacco Corp. v. Fed. Trade* Comm'n, 710 F.2d 1165, 1177 (6th Cir. 1983). This longstanding tradition is the "presumptive right of the public to inspect and copy judicial documents and files." *In re Knoxville News-Sentinel Co., Inc.* 723 F.2d 470, 474 (6th Cir. 1983) (citing *Nixon*, 435 U.S. at 597); *In re Application of Nat'l Broadcasting Co., Inc.(United States v. Criden I)*, 648 F.2d 814, 819 (3d Cir. 1981); *In re Nat'l Broadcasting Co., Inc. (United States v. Myers)*, 635 F.2d 945, 949 (2d Cir. 1980); *United States v. Mitchell*, 551 F.2d 1252, 1258-60) (D.C. Cir. 1976), *rev'd on other grounds sub nom, Nixon*, 435 U.S. at 607-08). The right of access of the public to judicial documents and files goes back over two-hundred (200) years, when the D.C. Circuit Court of Appeals acknowledged that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record." *Ex Parte Drawbraugh*, 2 App. D.C. 404, 407 (1894).

A fundamental public policy of a democracy is the presumption of favor to judicial documents. The Second Circuit Court of Appeals put it best:

> The presumption of access is based on the need for federal courts, although independent--indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise power under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. [ . . .] [P]rofessional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover,

> the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The Sixth Circuit Court of Appeals has stated access to judicial documents is necessary to "analyze and critique the reasoning of the court." *Brown v. Williamson*, 710 F.2d at 1178 (quotation omitted). Judicial decisions will be "more readily accepted, or corrected if erroneous," the Sixth Circuit noted, "if the public has an opportunity to review the facts presented to the court." *Id.* This need for public access includes civil lawsuits, because "the resolution of private disputes frequently involves issues and remedies affecting third parties or the general public." *Id.*; *see also Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (recognizing the longstanding tradition of public access to judicial documents).

The moment the parties made the Sealed Material a part of the court's documents, only the "most compelling reason" can warrant "total foreclosure of public and professional scrutiny." *Brown & Williamson*, 710 F.2d at 1180 (quotation omitted); *see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part, dissenting in part) ("Sealing court records . . . is a drastic step, and only the most compelling reasons should ever justify nondisclosure of judicial records."); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons.*") (emphasis added); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006). The burden to overcome the presumption in favor of public access is on the party opposing access. *United States v. Beckham*, 789 F.2d 401, 419 (6th Cir. 1986). CoreCivic cannot overcome this presumption.

### C. The Sealed Materials Should be Publicly Available Because the Public Has a Right of Access to Judicial Documents under the First Amendment to the U.S. Constitution

The Interested Parties have a right to access judicial documents under the First Amendment as well. *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177; *Applications of Nat'l Broadcasting Co., Inc.*, 828 F.2d 340, 343 (6th Cir. 1987). The U.S. Supreme Court established a two-part test to determine whether a First Amendment right to judicial documents exist: experience and logic. *Press-Enterprise Co. v. Sup. Ct.*, 478 U.S. 1, 8 (1986); *In re Search of Fair Finance*, 692 F.3d 424, 429 (6th Cir. 2012) ("[C]ourts have also applied the 'experience and logic' test to determine whether a First Amendment right of access.") Courts consider whether a document has historically been available to the press and the public under the experience portion of the test. *Press-Enterprise Co.*, 478 U.S. at 8. Courts consider "whether public access plays a significant role in the functioning of the particular process in question" *Id.* under the logic portion of the test.

The First Amendment right of access to judicial documents and materials applies to documents and exhibits submitted in connection with motions for summary judgment. *See Lugosch*, 435 F.3d at 124 (concluding that "there exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion"); *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (noting that "[o]ther circuits that have addressed this question have construed the constitutional right of access apply to *written documents submitted in connection with judicial proceedings* that themselves implicate the right of access."; *Joy*, 692 F.2d at 893 (summary judgment proceedings implicate the right of access). The public has a right to access the Sealed Materials, absent a compelling reason. *Id.* ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.") CoreCivic cannot offer a compelling reason, and the summary judgment documents should be unsealed.

### D. The Sealed Material Should be Publicly Available Because CoreCivic is Engaged in a Traditional Government Function Warranting Public Scrutiny

CoreCivic/CCA and this Court relied upon the legal principle that "sources of business information that might harm [a Company's] competitive standing" may be placed under seal. *Nixon, 435 U.S. at* 598. In making such a decision, however, the Court must balance the interests of the public against those of the party seeking to maintain records under seal, and "trial courts have [] the power to seal their records when interests of [a litigant's] privacy outweigh the public's right to know. *In re Knoxville News-Sentinel Co.,* 273 F.2d 470, 474 (6th Cir. 1983). Here, the very nature of the allegations raises the public's interests above those of CoreCivic or its shareholders. The documents at issue appear to contain or refer to specific materials with bearing on CoreCivic's compliance with its contracts, its compliance with generally accepted principles of prison management, and whether it made decisions that were constitutionally inadequate to protect the safety of prisoners remanded to its care, custody, and control. These issues implicate the Eighth and Fourteenth Amendments to the United States Constitution, which must outweigh the financial interests of a single company and its shareholders. Though a citizen of the United States my be stripped of the access to the political process and their freedom, they cannot be stripped of their right to access the courts or their protections under the Eighth Amendment. On balance, the "public's right to know" how the prisons that confine American citizens operate outweighs the ever-diminishing risk that revealing information that is now years out-of-date might harm CoreCivic's "competitive standing."

## Conclusion

For the foregoing reasons, the Interested Parties respectfully request that the Court permit the Interested Parties to intervene for purposes of asserting the common law and First Amendment rights of access and enter the Interested Parties' proposed unsealing order, submitted with this memorandum. In the alternative, if this Court should rule that the documents are sensitive and should not be unsealed to the general public, the Interested Parties respectfully request that these judicial documents be released to the Interested Parties subject to a protective order for use in their lawsuit.

Respectfully submitted,

*/s/ Brice M. Timmons*
Brice M. Timmons #29582
Craig A. Edgington #38205
DONATI LAW, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com
craig@donatilaw.com

Daniel A. Horwitz, BPR #032176
Lindsay E. Smith, BPR #035937
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing document has been served upon all counsel of record in this cause electronically through the Court's ECF filing system, on this the 18th day of February, 2022.

/s/*Brice M. Timmons*

## CERTIFICATE OF CONSULTATION

Counsel for Ms. Newby transmitted a copy of their motion to intervene to all counsel of record in this case via email on February 15, 2022, and informed counsel that if their position on the motion was not transmitted by close of business Thursday, February 17, 2022, the Court would be informed that party did not consent to the motion. Attorney Chris Wood for the plaintiffs took no position on our motion. Attorney Brian Glennon, for Defendants responded on February 16th and 17th but ultimately did not provide Defendants' position on the motion. As such, Ms. Newby avers that Defendants oppose the relief sought in this motion.

/s/*Brice M. Timmons*