UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BOAZ PLEASANT-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number 3:19-CV-486 |
| ) | District Judge Aleta A. Trauger |
| STATE OF TENNESSEE, ) | Jury Demand |
| TENNESSEE DEPARTMENT ) | |
| OF CORRECTION, REVEREND ) | |
| BRIAN DARNELL, TONY ) | |
| PARKER, CORECIVIC, INC., ) | |
| JON SHONEBARGER, ) | |
| and RUSSELL WASHBURN, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

1. Plaintiff Boaz Pleasant-Bey ("Plaintiff" or "Pleasant-Bey") is incarcerated in the Trousdale Tuner Correctional Center ("Trousdale"), a facility operated by CoreCivic to house prisoners serving state charges for the Tennessee Department of Corrections ("TDOC"). He is a Muslim who is unable to exercise his religious beliefs at Trousdale Turner, while Christian inmates receive more favorable treatment, in violation of rights under the U.S. Constitution and federal statutes, including the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff also fears for his safety due to severe understaffing at Trousdale.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

3. This Court also has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57.

4. The Court has authority to grant injunctive relief under Fed. R. Civ. P. 65.

5. This Court has personal jurisdiction over each defendant. CoreCivic has a headquarters and principal place of business in Tennessee and operates Trousdale at issue in this litigation. Warden Washburn, Chaplain Shonebarger, Commissioner Parker, and Reverend Darnell (the "Individual Defendants") work in Tennessee and, upon information and belief, permanently reside in Tennessee. TDOC is a department of the State of Tennessee and is responsible for the constitutional housing of state prisoners.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants reside in or otherwise do business in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

7. **Boaz Pleasant Bey**: Plaintiff Boaz Pleasant-Bey is a prisoner who has been housed at Trousdale, located at 140 Macon Way, Hartsville, Tennessee from April 2018 to the present.

8. **CoreCivic**: Defendant CoreCivic is a Maryland corporation headquartered in Tennessee, with its principal place of business at 10 Burton Hills Boulevard, Nashville, Tennessee. It is a for-profit, publicly traded (NYSE:CXV) real estate investment trust that "specializes in owning, operating, and managing prisons and other correctional facilities," and has referred to itself as the nation's "largest owner of partnership correction and detention facilities and one of the largest prison operators in the United States." Its website boasts that the corporation operates more than 60 detention facilities, jails, and prisons holding more than 90,000 beds. It operates Trousdale and other Tennessee facilities under the full authority of the State of Tennessee pursuant

to T.C.A. §§ 41-24-101 *et seq.* and/or 41-8-101 *et seq.* At all times relevant to Plaintiff's Complaint, CoreCivic was acting under color of state law. CoreCivic is the entity charged by the State of Tennessee with authority to maintain Trousdale and has a non-delegable duty to ensure that all inmates are protected by the Constitutions and laws of the United States and the State of Tennessee. CoreCivic is responsible for the implementation of policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this action. At all relevant times, CoreCivic has operated Trousdale as instrumentalities of the State of the Tennessee in performing the TDOC's duty to house individuals serving state sentences during their terms of incarceration. At all relevant times, CoreCivic has received funding from the federal government, including but not limited to Medicare and/or Medicaid payments and payments for the housing of federal prisoners. CoreCivic is licensed to do business in Tennessee and may be served through its registered agent, CT Corporation System, 300 Montvue Rd. Knoxville, TN 37919-5546.

9. **Warden Washburn**: Defendant Warden Russell Washburn was, at all times relevant to this action, employed at Trousdale.

10. **Chaplain Shonebarger**: Defendant Chaplain Jon Shonebarger was, at all times relevant to this action, a Chaplain employed at Trousdale.

11. **Commissioner Parker**: Defendant Commissioner Tony Parker was, at all times relevant to this action, the Commissioner of the Tennessee Department of Corrections.

12. **Reverend Darnell**: Defendant Reverend B. Darnell was, at all times relevant to this action, the TDOC Director of Religious Services.

13. **Tennessee Department of Corrections**: The Tennessee Department of Corrections ("TDOC") is a department of the State of Tennessee that, in relevant part, is responsible for housing individuals serving state sentences of incarceration. To perform this

governmental function, TDOC contracts with CoreCivic to operate certain facilities, including Trousdale at all times relevant to Plaintiff's Complaint. In delegating these functions, the TDOC contractually entrusts CoreCivic to operate as an instrumentality of the State of Tennessee.

## STATEMENT OF FACTS

### A. Access to Khufain

14. The Plaintiff believes that the Prophet Muhammad wore Khufain [Prayer Socks] while he was making Salah [Prayer], and this is also a tradition that he must follow. Not being able to wear Khufain during Salah places a substantial burden upon the Plaintiff's religious exercise because he is not in compliance with the practices of the Sunnah of Prophet Muhammad.

15. The Prophet Muhammad wore Khufain during Salah and when he wasn't in Salah. The way Khufain works is that the person who makes Salah wipes his feet during Wudu [Ablution] and he puts on Khufain. He wears Khufain even when he breaks Wudu by using the bathroom or breaking wind. However, before every Salah, Wudu must be performed again. When wearing Khufain, he only needs to wipe over his Khufain one time with water when making ablution as long as he has whipped his bare feet within 24 hours of putting on the Khufain. Thus, the Prophet wore Khufain in and out of Salah. Clearly, Khufain is part of the Sunnah of Prophet Muhammad, but the Defendants are stubbornly denying the Plaintiff of this religious exercise which is essential to Salah, and they have not explained why they deny it. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b).

16. Defendants Parker, Darnell, Washburn and Shonebarger have all deprived the Plaintiff of his ability to purchase Khufain. The Plaintiff has submitted several requests concerning the Khufain, but those Defendants persisted in denying the Plaintiff the Khufain, which are part of the Sunnah of Prophet Muhammad, who believed in the convenience of Salah. The Plaintiff

4

believes that he must wear the Khufain socks while making Salah because the Khufain is part of the Sunnah of Prophet Muhammad and denial of the Khufain places a substantial burden upon his religious exercise because he is not fully in compliance with the Sunnah of Prophet Muhammad while making Salah. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1.

### B. Wear Kifaya and Agal During Prayer

17. Defendants TDOC, CoreCivic, Parker, Darnell, Washburn, and Shonebarger have all placed a substantial burden upon the Plaintiff's religious exercise by totally banning Islamic attire worn in Salah designed to cover the arms and other body parts from materials that are in accordance with Islamic requirements for dress while in Salah. This substantial burden extends to them denying the Plaintiff a Kifiya [Towel-like Head-dress] and Agal [Designed to hold it in place] which was also worn by Prophet Muhammad and is part of the Sunnah that the Plaintiff follows. U. S. Const. Amend. l; 42 U.S.C. § 2000cc-1 (a)-(b) Appendix 1-17.

### C. Traditional Halal Foods During Ramadan and Id Feasts

18. The Plaintiff believes that eating is an act of worship in Islam once Bismillah [The Name of Allah] is said over the food. The Plaintiff believes that he must fast during the Holy Month of Ramadan, eat traditional Halal [Lawful] food during the Id Ul Fitr Feast at the completion of the Month of Ramadan, which is traditionally held from one to three days, and eat traditional Halal food during the Id Ul Adha [Feast of Sacrifice]. Those Id Celebrations have a Salah and Khutbah [Religious Sermon] that are traditionally held before the food is served. Also, while fasting during the Holy Month of Ramadan, the Plaintiff believes he must eat traditional Halal foods the entire month in order for the Fast to be in accordance with the Qur'an and Sunnah. Prophet Muhammad and his Companions all ate dates, drank whole milk, ate honey, Halal meats

[Lamb, Chicken, Beef, and Fish] with vegetables and natural fruits [not processed foods] both before and after he fasted every day during the Holy Month of Ramadan.

19. Defendants TDOC, CoreCivic, Darnell, Washburn, and Shonebarger have prevented Plaintiff from eating traditional Halal foods during Ramadan and the Id feasts in 2018 and 2019, in violation of RLUIPA.

**D. <u>Access to Prayer Oil</u>**

20. Defendants TDOC, CoreCivic, Parker, Darnell, Washburn and Shonebarger have forced the Plaintiff to purchase Islamic prayer oil from a Christian Vendor and a unislamic vendor. The Plaintiff's religious exercise of traditional Islamic Practices of purchasing Islamic Prayer Oil from an Islamic Vendor is being substantially burdened by the Defendants barring him from purchasing Islamic Prayer Oil from an Islamic Vendor, and purchasing Prayer Oil from Union Supply, a Christian Vendor, and from a unislamic vendor [Access]. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b). The Defendants have not given any compelling governmental interest for why they place such substantial burdens upon Plaintiff's religious exercise. In this case, the least restrictive means of furthering any compelling governmental interest would be to allow the Plaintiff to purchase Islamic Prayer Oil from Islamic Vendors.

**E. <u>Restriction on Donation of Islamic Religious Items</u>**

21. Defendants TDOC, CoreCivic, Parker, Darnell, Washburn and Shonebarger have all violated the Establishment Clause and Equal Protection Clause of the First and Fourteenth Amendments by showing special treatments to Christian inmates by allowing Kiros and Men of Valor to be able to enter TDOC and Core Civic America facilities to donate outside foods, hygiene products, and have religious meals brought into the prisons for Christmas and Easter Celebrations for all inmates [despite their religious preferences] every year, but deprive the Plaintiff of the

6

ability to have traditional Halal Foods, Islamic Prayer Oil and Halal hygiene products donated to TDOC, and TDOC Contracted Facilities. This behavior demonstrates that Christianity is preferred over Islam and that participants of the Islamic Faith have disadvantaged treatments. It also demonstrates that the Defendants have discriminatory intentions against the Islamic Faith by depriving them of traditional foods and religious items for their religious celebrations, while allowing Christians to receive traditional foods and religious items for their religious celebrations. Moreover, depriving the Plaintiff of the ability to have Halal Foods donated to TDOC and TDOC Contracted CCA Prisons places a substantial burden on his religious exercise.

22. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1 and 17; *Cutter v. Wilkinson,* 554 U.S. 709, 724-725 (2005) (Singling out a certain religion for "special treatment" violates the Establishment Clause of the First Amendment to the United States Constitution.); *Perez v. Frank*, 433 F. Supp. 2d 955, 996 (W.D. Wis. 2006) ("To the extent petitioner contends that the religious traditions of other inmates are being accommodated while Islamic traditions are not... states a claim under the Establishment Clause."); U.S. Const. Amend. 1*; Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 532 (1993) (A law may not discriminate against "some or all religious beliefs."); *Davis v. Prison Health Services*, 679 F. 3d 433, 438 (6th Cir. 2012) ("The Equal Protection Clause of the Fourteenth Amendment protects against invidious discrimination among similarly situated individuals or implicating fundamental rights."); *Lindell v. Casperson*, 360 F. Supp. 2d 932, 958 (W.D. Wis. 2005) (Holding that "the denial of a privilege to adherents of one religion while granting it to others is discrimination on the basis of religion in violation of the Equal Protection Clause of the Constitution.").

### F. Lack of Group Accommodations for Muslim Inmates

23. Defendants TDOC, CoreCivic, Washburn, Darnell and Shonebarger have all violated the Establishment Clause of the First Amendment to the United States Constitution by allowing the Men of Valor to have a Christian based program pod at Trousdale, but denying the Plaintiff's request for a Unit for Muslims to be able to practice their religion with a program designed to better themselves with the assistance of outside Muslim sponsors.

24. The Plaintiff submitted a program called Al Andalus to Chaplain Jon Shonebarger in 2018, and the Plaintiff has not received any response from the Rev. B. Darnell concerning the group accommodations request. Also concerning a violation of the Establishment Clause, the Plaintiff submitted a request to start a Qur'anic Arabic Studies Group in 2018 on the group accommodations request form, and Chaplain Jon Shonebarger has not provided any response from the Director of Religious Services, Rev. B. Darnell. Chaplain Shonebarger mentioned that he recommended that the class be denied by the religious activities committee despite the fact that there is a Hebrew/Greek Bible Study Group for Christians available at Trousdale. Clearly, this demonstrates that the Defendants show "special treatment" to Christian inmates, and disfavorable treatments to Muslim inmates concerning the same opportunities. U.S. Const. Amend. 1.

### G. Qur'an Ban

25. Defendants CoreCivic and Washburn have printed a memorandum unfairly banning the Qur'an from entering Trousdale but allowing the Bible to be ordered from Union Supply. There is no purpose for this memorandum other than to give more favorable treatments and to promote Christianity while showing disfavoring beliefs towards Islam, the religion of the Plaintiff.

### H. Cruel and Unusual Punishment

26. Plaintiff alleges that, based on the totality of conditions, practices, and incidents that have occurred at Trousdale, the conditions at Trousdale violate the Eighth Amendment and these violations are pursuant to a pattern or practice of resistance to the full enjoyment of rights protected by the Eighth Amendment.

27. Specifically, Plaintiff alleges that Tony Parker and CoreCivic violated and are continuing to violate the Eighth Amendment rights of prisoners housed at Trousdale by failing to protect them from prisoner-on-prisoner violence, prisoner-on-prisoner sexual abuse, and by failing to provide safe conditions. These violations are severe, systemic, and exacerbated by serious deficiencies in staffing and supervision; inadequate incident reporting; inability to control the flow of contraband into and within the prisons, including illegal drugs and weapons; ineffective prison management and training; and a high level of violence that is too common, cruel, of an unusual nature, and pervasive.

28. Since it began accepting state prisoners on January 4, 2016, Trousdale has been highly understaffed. In its November 2017 Performance Audit Report ("2017 Performance Audit Report") covering the period from July 1, 2014 through August 31, 2017, the Tennessee Comptroller of the Treasury found that:

- Trousdale Turner Correctional Center, managed by CoreCivic, operated with fewer than approved correctional officer staff, did not have all staffing rosters, did not follow staffing pattern guidelines, and left critical posts unstaffed;

- Core Civic staffing reports for two Trousdale Turner Correctional Center contained numerous errors, so information about hires, terminations, and vacancies may not be reliable; and

9

- Trousdale Turner Correctional Center management's continued noncompliance with contract requirements and department policies challenges the department's ability to effectively monitor the private prison.[1]

29. As a result of this understaffing, inmates at Trousdale experience a high level of violence and fear for their future safety. Plaintiff is personally aware of multiple instances of extreme violence. The shortage of staff issue is such a problem at Trousdale that the Plaintiff has witnessed groups of inmates stabbing each other in Echo Alpha Unit for about 20 minutes without any officers coming in the housing unit to stop the stabbings. During another incident, an inmate was stabbed 17 times by a domestic terrorist group while he was sitting in his cell. He went without medical attention and any assistance for about 15 minutes as he bled, limping to the medical unit for medical assistance. There were no officers in the pod at the time because of the shortage of staff issue. Several staff members have been brutally stabbed by domestic terrorist groups and inmates since Trousdale has been open. In early September 2019, a mental health worker was raped, sodomized, and brutally stabbed over 12 times for over 30 minutes without any officer interference by an inmate. Also, in September 2019, an inmate in Delta Unit was stabbed in his neck while in his cell by another inmate.

30. On June 10, 2019, the Human Rights Defense Center and No Exceptions Prison Collective reported that from 2014 through June 2019, there were twice as many murders in the four Tennessee prisons operated by CoreCivic than in the 10 prisons run by TDOC.[2] Also, the homicide rate in CoreCivic facilities was over four times higher than the rate for TDOC prisons.

---

[1] *See* Tennessee Comptroller of the Treasury's November 2017 Performance Audit Report, available at https://comptroller.tn.gov/content/dam/cot/sa/advanced-search/2017/pa17275.pdf.

[2] "CoreCivic Prisons in Tennessee Have Twice as Many Murders, Four Times the Homicide Rate as State-Run Facilities," Prison Legal News, Aug. 6, 2019, available at: https://www.prisonlegalnews.org/news/2019/aug/6/corecivic-prisons-tennessee-have-twice-many-murders-four-times-homicide-rate-state-run-facilities/.

This was despite the fact that during that time period, TDOC facilities held, on average, 70% of the state's prison population – including prisoners with higher security levels than in CoreCivic prisons.[3]

31. On June 15, 2019, Trousdale inmate Ernest Edward Hill, 42, was found unconscious by prison officials.[4] Life-saving measures were attempted, but Hill was pronounced dead at the hospital.[5] After an investigation by the Tennessee Bureau of Investigation, Hill's cellmate was indicted on a second-degree murder charge.[6]

32. On January 25, 2020, Trousdale inmate Frank Lundy was found injured at the entrance to the housing unit.[7] Lundy was pronounced dead at the hospital.[8] Reports indicate Lundy was stabbed in the neck, resulting in a fatal injury.[9]

---

[3] *Id*.

[4] Hineman, Brinley, "Murfreesboro man charged in death of prison cellmate at Trousdale Turner Correctional Facility," Feb. 20, 2020, available at:
https://www.dnj.com/story/news/2020/02/20/murfreesboro-man-jacob-kado-charged-death-prison-cell-mate-ernest-hill-trousdale-turner/4818354002/.

[5] *Id*.

[6] *Id*.

[7] Gregory, Chris, "Inmate killed in assault at Trousdale prison," The Lebanon Democrat, January 30, 2020, available at https://www.lebanondemocrat.com/hartsville/inmate-killed-in-assault-at-trousdale-prison/article_4808fd72-b736-5dba-8607-e510d899e1e2.html.

[8] *Id.*

[9] *Id*.

11

33. Former inmates and friends and families of inmates have complained of the extreme violence Trousdale.[10] Trousdale employees have been assaulted.[11] There are reports of rampant gang activity and sexual assault at Trousdale.[12]

34. Trousdale staff refuse to properly document stabbings and other violent incidents. The 2020 Performance Audit found that health staff at Trousdale did not record any serious accidents or injuries in a state database during the 1.5-year audit period.[13] The auditors wrote: "Given the nature of the correctional environment and when compared to other correctional facilities, it is unlikely that a facility would have no serious incidents to report."[14]

---

[10] *See e.g.* "Prisons for profit: Concerns mount about Trousdale Turner Correctional Center, operator CoreCivic," NewsChannel5 Nashville, June 13, 2019, available at https://www.newschannel5.com/longform/prisons-for-profit-concerns-mount-about-trousdale-turner-correctional-center-operator-corecivic; Facebook Page, "Trousdale Turner—Close it Down," available at https://www.facebook.com/hartsville.tn.prison/.

[11] *See e.g.* Gregory, Chris, "Assault at Hartsville prison lands employee in hospital," The Lebanon Democrat, Mar. 26, 2020, available at https://www.lebanondemocrat.com/hartsville/assault-at-hartsville-prison-lands-employee-in-hospital/article_b7a35957-c316-5ce7-ba57-17a4076f72f4.html; Gregory, Chris, "Inmate indicted for assault on TTCC employee," The Lebanon Democrat, Jan. 22, 2020, available at https://www.lebanondemocrat.com/hartsville/inmate-indicted-for-assault-on-ttcc-employee/article_c24dd2de-14b4-5367-a5e2-5f58002f2d0e.html.

[12] *See e.g.* Hale, Steven, "Tennessee's Largest Prison Still Appears as Troubled as Ever," Nashville Scene, available at https://www.nashvillescene.com/news/features/article/21047078/tennessees-largest-prison-still-appears-as-troubled-as-ever; Kalodimos, Demetria, "Gang activity, security a concern at Trousdale Turner facility," WSMV News 4 Nashville, available at https://www.wsmv.com/news/gang-activity-security-a-concern-at-trousdale-turner-facility/article_df82a358-7073-552e-b5e4-9feb2e9cf8bc.html; Amons, Nancy, "Family questions inmate's death in Trousdale Co. prison," WSMV News 4 Nashville, available at https://www.wsmv.com/news/davidson_county/family-questions-inmates-death-in-trousdale-co-prison/article_d781fc30-3977-11ea-affd-cbade3eed916.html. "Inmate files suit against Trousdale prison run by CoreCivic" WKRN, Feb 22, 2019, available at https://www.wkrn.com/news/inmate-files-suit-against-trousdale-prison-run-by-corecivic/1800562147/.

[13] *Id.* at 39.

[14] *Id.*

12

35. The 2020 Performance Audit found numerous other reporting violations occurred at Trousdale. For example:[15]

> At Trousdale Turner Correctional Center, we found the following:
>
> - For 3 of 25 items (12%), facility staff did not enter the incident information into TOMIS within 8 hours of occurrence or discovery.
> - For 7 of 25 items (28%), the body of the draft incident report did not match the information staff entered into TOMIS. Because Trousdale is a CoreCivic facility, we compared the CoreCivic 5-1a and 5-1c forms to TOMIS.
> - For 24 of 25 items (96%), staff did not report the incident to the CCC within 30 minutes of occurrence or discovery.
> - For 4 of 25 items (16%), staff did not hold a disciplinary hearing within 7 calendar days of the incident.
> - For 2 of 25 items (8%), staff could not locate the Staff Assault Incident Review Report.
> - For 7 of 25 items (28%), staff did not submit a Use of Force report to the warden within 8 hours or by the end of shift.
> - For 9 of 25 items (36%), staff did not enter all required information related to the incident into TOMIS; specifically, staff did not include lists of disciplinary infractions, names of all persons involved, and descriptions of homemade weapons.

36. Using a random sampling of Prison Rape Elimination Act ("PREA") allegations, auditors found that Trousdale staff entered allegations into the PREA Allegation System ten days late, on average.[16] These late-entered allegations had a high percentage of errors.[17]

37. Trousdale staff have demonstrated an inability to control the flow of contraband into and within Trousdale, including illegal drugs and weapons, increasing the frequency and risks of violent encounters. Employees have been caught smuggling contraband into the facility.[18]

---

[15] *Id.* at 69.
[16] *Id.* at 82.
[17] *Id.*
[18] *See e.g.* Gregory, Chris, "Trousdale Turner employee charged with smuggling contraband," The Lebanon Democrat, April 23, 2020, available at:

13

Recently, an unauthorized individual was permitted to enter the facility and remain for hours before being discovered.[19] Homemade weapons appear to be very easy for Trousdale prisoners to produce or procure. Many of the incidents already described demonstrate the widespread availability of such weapons.

38. Illegal drugs contribute to the ongoing violence and pose a substantial risk of future violence, yet Trousdale staff has routinely failed to conduct the required inmate drug screening.[20] In its January 2020 Performance Audit Report ("2020 Performance Audit Report") covering the period from October 1, 2017 through July 31, 2019, the Tennessee Comptroller of the Treasury found that Trousdale did not conduct the minimally required random drug screenings of the inmate population.[21] The report described an interview with the drug testing coordinator at Trousdale:[22]

> Based on our interview with the drug testing coordinator at Trousdale Turner Correctional Center, the coordinator informed us that he did not test the minimally required 2.5% of the inmate population for either March or April 2019. According to the drug testing coordinator, when he was given the responsibility for conducting the drug screenings in March 2019, he received on-the-job training from the former drug testing coordinator. He went on to state that he did not have access to TOMIS at that time and had to attend a critical incident response team class.

---

https://www.lebanondemocrat.com/hartsville/trousdale-turner-employee-charged-with-smuggling-contraband/article_6b865daf-fbc8-5a59-9a35-e84b61ace2e4.html.

[19] Gregory, Chris, "CoreCivic investigating security breach at Hartsville prison," The Lebanon Democrat, Jul. 30, 2020, available at:
https://www.lebanondemocrat.com/hartsville/corecivic-investigating-security-breach-at-hartsville-prison/article_ae6dd86e-3f6f-58e9-9d5f-ee68d8967e68.html.

[20] *See* Tennessee Comptroller of the Treasury's January 2020 Performance Audit Report, available at https://comptroller.tn.gov/content/dam/cot/sa/advanced-search/2020/pa19032.pdf.

[21] *Id* at 167.

[22] *Id* at 168.

Case 3:23-cv-00093 Document 61-2 Filed 02/18/22 Page 14 of 20 PageID #: 534

The auditors state, "By not performing the minimum number of monthly random drug screenings, facility management faces an increased risk that inmate alcohol or drug use could go undetected, creating an environment for increased violent behavior."[23]

39. Trousdale's administration of prescription drugs poses similar problems. The 2020 Performance Audit Report found multiple issues surrounding Trousdale employees' distribution of prescription medication.[24] The report notes the same problems in inmates' medical records:

> We determined that for all 13 medical files tested (100%), health services staff did not include key information about inmates' medication on the medication administration record, including the start and stop date, dosage, order date, number of [keep on person] pills given, name of the prescribing doctor, and discontinue date.[25]

40. Plaintiff has attempted to address issues by using Trousdale's grievance process but has found that Trousdale regularly fails to follow its own policies and procedures.

41. Plaintiff is concerned for his safety and well-being. Without the proper staffing, his life is in great danger because there are not enough officers to monitor whether a medical emergency or violent assault occurs at Trousdale.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**
**FREE EXERCISE CLAUSE**
**(42 U.S.C. § 1983)**

42. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

43. Defendants Parker, Darnell, Washburn, and Shonebarger prevented Plaintiff from purchasing Khufain in violation of the Free Exercise Clause of the First Amendment.

---

[23] *Id.*
[24] *Id.* at 105.
[25] *Id.* at 118.

15

44. Defendants Parker, Darnell, CoreCivic, Washburn, and Shonebarger did not permit Plaintiff to wear Islamic attire during prayer, including a Kifaya and Agal, in violation of the Free Exercise Clause.

45. Defendants Parker, Darnell, CoreCivic, Washburn, and Shonebarger prevented Plaintiff from purchasing prayer oil from an Islamic vendor in violation of the Free Exercise Clause.

## COUNT II

### VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
### ESTABLISHMENT CLAUSE
### (42 U.S.C. § 1983)

46. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

47. Defendants Parker, Darnell, CoreCivic, Washburn, and Shonebarger did not permit Plaintiff to receive donated Islamic religious items from Muslim organizations in violation of the Establishment Clause of the First Amendment.

48. Defendants CoreCivic, Washburn, Darnell, and Shonebarger prevented Plaintiff from participating in religious group accommodations equivalent to those for Christian inmates in violation of the Establishment Clause.

49. Defendants CoreCivic and Washburn prevented a Qur'an from entering the facility in violation of the Establishment Clause.

## COUNT III

### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### EQUAL PROTECTION CLAUSE
### (42 U.S.C. § 1983)

50. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

16

51. Defendants Parker, Darnell, CoreCivic, Washburn, and Shonebarger did not permit Plaintiff to receive donated Islamic religious items from Muslim organizations in violation of the Equal Protection Clause of the Fourteenth Amendment.

## COUNT IV

**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
CRUEL AND UNUSUAL PUNISHMENT
(42 U.S.C. § 1983)
(Against Parker and CoreCivic for Injunctive Relief Only)**

52. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

53. Plaintiff alleges that, based on the totality of conditions, practices, and incidents that have occurred at Trousdale, the conditions at Trousdale violate the Eighth Amendment and these violations are pursuant to a pattern or practice of resistance to the full enjoyment of rights protected by the Eighth Amendment.

54. Plaintiff alleges that Defendants Tony Parker and CoreCivic violated and are continuing to violate the Eighth Amendment rights of prisoners housed at Trousdale by failing to protect them from prisoner-on-prisoner violence, prisoner-on-prisoner sexual abuse, and by failing to provide safe conditions. These violations are severe, systemic, and exacerbated by serious deficiencies in staffing and supervision; inadequate incident reporting; inability to control the flow of contraband into and within the prisons, including illegal drugs and weapons; ineffective prison management and training; and a high level of violence that is too common, cruel, of an unusual nature, and pervasive.

55. Tony Parker and CoreCivic have failed to protect Trousdale inmates, including Plaintiff, from a serious harm and a substantial risk of serious harm.

17

# COUNT V

## VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA")
### (42 U.S.C. § 2000cc-1(a))

56. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

57. Defendants Parker, Darnell, Washburn, and Shonebarger prevented Plaintiff from purchasing Khufain in violation of RLUIPA.

58. Defendants TDOC, Parker, Darnell, CoreCivic, Washburn, and Shonebarger prevented Plaintiff from wearing Islamic attire during prayer, including a Kifaya and Agal in violation of RLUIPA.

59. Defendants TDOC, Parker, CoreCivic, Darnell, Washburn, and Shonebarger refused to allow Plaintiff to eat traditional Halal foods during Ramadan and the Id feasts in 2018 and 2019 in violation of RLUIPA.

60. Defendants TDOC Parker, Darnell, CoreCivic, Washburn, and Shonebarger prevented Plaintiff from purchasing prayer oil from an Islamic vendor in violation of RLUIPA.

## RELIEF SOUGHT

Wherefore, Plaintiff requests that this District Court enter judgment as follows:

1. Damages in an amount to be determined at trial.

2. Punitive Damages.

3. Declaratory Judgment.

4. Temporary and permanent injunctive relief, as deemed necessary and appropriate by the Court.

5. Attorney's fees and costs pursuant to 42 U.S.C. 1988.

18

6. Any and all other relief the Court finds just and appropriate.

Dated: November 30, 2020

Respectfully submitted,

*/s/ Tricia Herzfeld*
Tricia Herzfeld (BPR #26014)
**Branstetter, Stranch & Jennings, PLLC**
223 Rosa L. Parks Ave.
Suite 200
Nashville, TN 37203
Ph: 615-254-8801
Fax: 615-255-5419
triciah@bsjfirm.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 30, 2020 a true and correct copy of the foregoing document was served by way of the Court's CM/ECF system upon the following:

Thomas J. Aumann
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207
(615) 532-2551
Fax: (615) 532-2541
Email: thomas.aumann@ag.tn.gov

Erin Palmer Polly
Joseph F. Welborn , III
Terrence M. McKelvey
Butler Snow LLP (Nashville)
The Pinnacle at Symphony Place
150 Third Avenue South
Suite 1600
Nashville, TN 37201
(615) 651-6700
Email: Erin.Polly@butlersnow.com
Email: Joe.Welborn@butlersnow.com
Email: terrence.mckelvey@butlersnow.com

/s/ Tricia Herzfeld
Tricia Herzfeld