IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| NIKKI BOLLINGER GRAE, individually and on Behalf of All Others Similarly Situated, | Case No. 3:16-cv-02267 |
| Plaintiffs, | Honorable Aleta A. Trauger |
| | Magistrate Judge Jeffrey S. Frensley |
| v. | |
| CORRECTIONS CORPORATION OF AMERICA, TENNESSEE, LLC, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE NASHVILLE BANNER'S MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 24(b)(1), the *Nashville Banner* moves for permission to intervene in this case for the limited purpose of requesting that the Court unseal all documents that have been sealed on the Court's docket. As explained below, both the First Amendment and the common law recognize a strong presumption favoring public access to judicial records. Here, however, the Court's sealing orders lack the requisite specific findings and conclusions justifying sealing, and the parties have not met their heavy burden of demonstrating compelling reasons for secrecy sufficient to overcome the strong presumption in favor of openness. Thus, the *Banner* should be permitted to intervene, and all documents that have been sealed on the Court's docket should be unsealed.

## BACKGROUND AND PROCEDURAL HISTORY

**A. The Class Action Litigation.** Defendant CoreCivic (previously, Corrections Corporation of America) operates private prisons and detention facilities pursuant to government contracts. CoreCivic's contracts with the federal Bureau of Prisons (BOP), however, were

-1-

terminated in 2016 following an audit by the Department of Justice's Office of Inspector General. That audit found significant "safety and security deficiencies" at CoreCivic and reported, among other things, that "CoreCivic facilities experienced substantially higher rates, relative to BOP institutions, of a number of unwelcome occurrences, such as inmate fights, inmate-on-inmate assaults, and suicide attempts and self-mutilations." *Grae v. Corr. Corp. of Am.*, 2017 WL 6442145, at *10 (M.D. Tenn. Dec. 18, 2017). CoreCivic's stock price plummeted, and this securities class action followed.

On February 12, 2018, this Court entered a stipulated protective order governing discovery in this action. ECF No. 86. The stipulated protective order permitted a party to designate certain materials exchanged in discovery as "confidential." *See id.*

Throughout the course of the litigation, hundreds of documents encompassing thousands of pages of records were filed under seal. The parties and the BOP, which had produced documents in the litigation, moved to seal documents submitted in connection with, among other things, motions to compel discovery, a motion for class certification, a motion for reconsideration of the certification decision, summary judgment motions, *Daubert* motions, and even a motion to extend deadlines. The Court granted every motion to seal, including motions in which the movant stated that it did "not believe grounds exist to overcome the strong presumption in favor of openness and thus to seal the documents." *See, e.g.*, ECF No. 119 at 2. The Court did not make specific factual findings or explain its reasoning for granting the motions to seal. Of the hundreds of documents filed under seal, only a handful of records were later unsealed. *See, e.g.*, ECF Nos. 434, 435 (unsealing documents that CoreCivic acknowledged did not contain any confidential information).

In addition, in its memorandum opinion granting reconsideration of its order denying class certification, the Court quoted some sealed information without redaction. In explaining its

decision to disclose the information, the Court stated that although it "ha[d], so far, honored the parties' confidentiality claims," it disagreed with certain of CoreCivic's confidentiality assertions and had "determined that it [was] necessary, in the interests of justice and transparency, to cite some covered communications and facts explicitly, without redaction." ECF No. 165 at 7. The Court further explained that it "discern[ed] no serious threat of unfair competition associated with disclosure of the relevant communications" and that "[n]one of the cited internal conversations reveal[s] any confidential CoreCivic strategies, practices, or research and development." *Id.*

After the Court decided the parties' cross-motions for summary judgment and *Daubert* motions, and less than one month before trial was scheduled to commence, CoreCivic settled the class's claims for $56 million. ECF No. 463. The Court approved the class settlement and entered final judgment on November 8, 2021. ECF Nos. 477–80.

Thousands of pages of materials filed on the docket now remain under seal, including materials that are publicly available elsewhere.

**B. The Newby and Tardy Motions.** Shortly after the securities litigation settled, Marie Newby, on behalf of herself and as administrator of the Estate of Terry Childress, moved to intervene for the limited purpose of unsealing the parties' motions for class certification, motions for summary judgment, and sealed portions of the parties' *Daubert* motions, responses, replies, and supporting documentation. ECF No. 481. Ms. Newby contended that the sealed documents would help her prove her claims in a separate wrongful death lawsuit she filed against CoreCivic following her son's death in a CoreCivic facility. In addition, Ms. Newby argued that the documents should be unsealed under the common law and First Amendment and because CoreCivic was engaged in a traditional government function. CoreCivic and the BOP partially opposed Ms. Newby's motion, and this Court unsealed the documents as to which CoreCivic and

-3-

BOP did not oppose unsealing. ECF No. 494. Ms. Newby then appealed, but she and CoreCivic settled before the Sixth Circuit resolved her appeal.

Eddie Tardy then moved to intervene and assume Ms. Newby's role in the appeal. He, like Ms. Newby, was preparing to file (and then did file) a lawsuit alleging the wrongful death of his child in a CoreCivic facility. Although Mr. Tardy "waived any claim that the denial of documents in this action hinders his ability to litigate his separate suit against CoreCivic," he sought "to vindicate the public's right of access to the judicial records." *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023)*.* The Sixth Circuit denied Mr. Tardy's motion, finding that Mr. Tardy lacked "standing to intervene on the public's behalf, having repeatedly disclaimed any need for the documents himself." *Id.*

**C. This Motion.** The *Nashville Banner* seeks to intervene for the limited purpose of unsealing all court filings that remain sealed on the docket. As set forth in the accompanying declaration, the *Banner* and its reporters are interested in reporting on CoreCivic and the conditions in its prisons, but the sealed nature of the documents in this matter adversely affects the *Banner*'s ability to report on this headline-grabbing case. *See generally* Decl. of Steve Cavendish (**Ex. 1**).

The *Banner* and its reporters have previously published stories about prisons in Tennessee and the conditions in those prisons. *See* Demetria Kalodimos, *State Releases Footage Henry Hodges' Attorneys Describe as 'Torture,'* THE NASHVILLE BANNER (Feb. 24, 2023), https://nashvillebanner.com/2023/02/24/state-releases-footage-henry-hodges-attorneys-describe-as-torture/; Demetria Kalodimos, *Death Row, Mental Illness and Henry Hodges*, THE NASHVILLE BANNER (Dec. 11, 2022), https://nashvillebanner.com/2022/12/11/death-row-mental-illness-and-henry-hodges/. To support its reporting on these issues, the *Banner* has previously intervened to unseal records filed in a case brought by a death-row inmate against prison officials, seeking public

access to records about a Tennessee prison's treatment of that inmate. *See* Order to Unseal Certain Portions of the Judicial Record at 1, *Hodges v. Helton et al.*, No. 22-1440-III (Tenn. Chancery Ct. Jan. 12, 2023), https://horwitz.law/wp-content/uploads/2023-01-12-Hodges-v.-Helton-Order-to-unseal-certain-portions-of-record.pdf. Before joining the *Banner*, the *Banner*'s reporters also reported extensively on prison conditions, including at CoreCivic facilities, while working for different media outlets. *See, e.g.,* Demetria Kalodimos, *Woman says she paid off gangs to keep son safe in prison,* WSMV (Oct. 5, 2017), https://perma.cc/VD5Z-CJF3.

The *Banner* thus seeks public access to the sealed documents here to report on the serious safety and security issues at private prisons such as CoreCivic facilities, but the sealed nature of the documents in this action adversely affects the Banner's ability to report. *See* Decl. of Steve Cavendish at ¶¶ 7, 9.

## ARGUMENT

I. **The *Banner*'s motion to intervene for the purpose of moving to unseal should be granted.**

**A.** The Sixth Circuit and other federal courts of appeals agree that permissive intervention pursuant to Federal Rule of Civil Procedure 24(b) may be granted where a third party seeks to obtain access to judicial records. *See Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987); *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) ("[E]very circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.").

Intervention poses no risk of delay or prejudice to the original parties, *see* Fed. R. Civ. P. 24(b)(3), where, as here, the underlying dispute between the parties has already been resolved. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994) (holding that a "district court may properly consider a motion to intervene permissively for the limited purpose of modifying [or

-5-

vacating] a [confidentiality] order even after the underlying dispute between the parties has long been settled"); *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) ("The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case."); *San Jose Mercury News*, 187 F.3d at 1101 (noting that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records"). Furthermore, because "[a] court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody[,]" an argument that a request to unseal the court records is untimely "is meritless because [the litigant] should not have needed to ask permission to review the records in the first place." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 307 (6th Cir. 2016).

**B.** A proposed intervenor must have standing to seek unsealing under Sixth Circuit precedent,[1] *Grae*, 57 F.4th at 569, which requires "an injury in fact" that is "concrete and particularized," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Whereas the Sixth Circuit held that Mr. Tardy lacked standing to intervene, *see Grae*, 57 F.4th at 572, that decision poses no impediment to the *Banner*'s motion.

As the Sixth Circuit explained in *Grae*, "the denial of information" may satisfy the concreteness requirement. *Grae*, 57 F.4th at 569. For example, in *FEC v. Akins*, 524 U.S. 11 (1998), the plaintiffs lawsuit sought from the Federal Election Commission information about an organization's political activities, which the plaintiff alleged the Commission was required to

---

[1] Curiously, to intervene permissively, intervenors do not otherwise need to demonstrate standing necessary to initiate a lawsuit under Sixth Circuit precedent. *See, e.g., Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) ("a party seeking to intervene need not possess the standing necessary to initiate a lawsuit."); *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) ("an intervenor need not have the same standing necessary to initiate a lawsuit.") (citing *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *Purnell*, 925 F.2d at 948).

-6-

publicly disclose under the Federal Election Campaign Act. The Supreme Court held that the plaintiffs had standing based on their "informational injury," which satisfied the injury-in-fact requirement. 524 U.S. at 21. Similarly, in *Public Citizen v. DOJ*, 491 U.S. 440 (1989), the plaintiffs sought information that they alleged the Department of Justice was required to disclose under the Federal Advisory Committee Act. The Supreme Court held that the plaintiffs had suffered Article III injury because the Department's refusal to disclose the information prevented the plaintiffs from "scrutiniz[ing]" the advisory committee's activities to the extent that the Federal Advisory Committee Act allows. *Id.* at 449. In both *Akins* and *Public Citizen*, the Supreme Court held that informational injury satisfies the injury-in-fact requirement even where the injury is widely shared. *Akins*, 524 U.S. at 24; *Public Citizen*, 491 U.S. at 448–50.

In *Grae*, the Sixth Circuit held that, "to have standing, litigants must have suffered adverse effects from the denial of information." *Grae*, 57 F.4th at 571. Although the court declined to explain what it meant by "adverse effects," *id.*, it noted that adverse effects include "the denial of documents adversely affect[ing] [media organizations'] ability to report," *id.* (discussing *Price v. Dunn*, 139 S. Ct. 2764 (2019)), and a plaintiff's "interest in using the information beyond bringing his lawsuit," *id.* (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)).

Here, the sealing of the many documents filed in this case impedes the *Banner*'s reporting on private prisons, including CoreCivic facilities. Thus, the *Banner* has suffered adverse effects recognized as sufficient in *Grae*. *See* CoreCivic Rehr'g Resp. at 16 ("Article III standing … plainly exist[s] for newspapers and media organization[s]" because "denying access will directly impede their ability to report the news.").

## II. The sealed and redacted filings in this case should be unsealed and unredacted.

The Sixth Circuit has reiterated time and again its recognition of the "'strong presumption in favor of openness' regarding court records." *Rudd Equip. Co. v. John Deere Constr. & Forestry*

-7-

*Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)). The public's "right of access to court filings" springs from two sources, the common law and the First Amendment, and applies to civil and criminal cases alike. *Id.* at 595; *see Brown & Williamson*, 710 F.2d at 1178–80.

In light of the strong presumption in favor of openness of court records, the sealing of all court filings is "generally impermissible." *In re National Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019). As the Sixth Circuit has explained, there is a "'stark difference' between court orders entered to preserve the secrecy of proprietary information while the parties trade discovery, and the sealing of the court's docket and filings." *Rudd Equip.*, 834 F.3d at 593. "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Shane Grp.*, 825 F.3d at 305. "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* "That interest rests on several grounds," including "the litigation's result," the public's "entitle[ment] to assess for itself the merits of judicial decisions," and "the conduct giving rise to the case," for "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* (quoting *Brown & Williamson*, 710 F.2d at 1180).

For two reasons, all the sealed filings in this case should be unsealed. First, the Court's sealing orders do not contain the required specific factual findings and legal conclusions justifying nondisclosure. Second, the parties have failed to meet their heavy burden to demonstrate that a compelling reason justifies sealing.[2]

---

[2] In its April Order, the Court described Ms. Newby's motion as the "equivalent of a motion to intervene for the purpose of asking the court to reconsider those earlier determinations." ECF 494 at 4. Treating a motion to unseal as a motion for reconsideration, however, misconstrues the operative presumption. Reconsideration attempts to strike an appropriate "balance … between stability and reaching the right decision." Wright & Miller, *Federal Practice and Procedure*

**A. The sealing orders must be vacated because they lack the requisite specific findings and conclusions justifying nondisclosure.**

"Only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp.,* 825 F.3d at 305 (internal marks and citations omitted). Even where such a reason exists, "the seal itself must be narrowly tailored to serve that reason and should analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations," *Rudd Equip.*, 834 F.3d at 594 (cleaned up). Critically, "a district court that chooses to seal court records must set forth specific findings and conclusions 'which justify nondisclosure to the public' … even if neither party objects to the motion to seal." *Shane Grp.*, 825 F.3d at 306 (quoting *Brown & Williamson*, 810 F.2d at 1176). Even where a court "weigh[ed] … all relevant interests and with a presumption of open access" before granting the sealing motions, April 8, 2022, Order on Newby's Unsealing Mot. (hereafter, April Order) at 3, ECF No. 494, the "court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary—is itself grounds to vacate an order to seal," *Shane Grp.*, 825 F.3d at 306.

---

§ 4478.1, *Law of the Case—Trial Courts*. In contrast, in the context of unsealing, there is no thumb on the scale for the "stability" of prior court orders. *Id.* Instead, the strong presumption is in favor of public access. The Sixth Circuit has accordingly rejected the position that information should be sealed because there is no "need" for it to be public, explaining that such a position "gets exactly backwards our operative presumption, which is that '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Woods v. DEA*, 895 F.3d 891, 893 (6th Cir. 2018) (emphasis removed).

Moreover, unlike a reconsideration motion, the burden is not on the movant in an unsealing motion. Instead, the burden rests on the party seeking sealing. *Shane Grp.*, 825 F.3d at 305 (stating that "[t]he burden of overcoming th[e] presumption [in favor of public access] is borne by the party that seeks to seal them") It is not the *Banner's* burden to identify reasons for this Court to unseal the information. Instead, the parties seeking sealing—here, CoreCivic and the BOP—bear the burden of demonstrating that compelling reasons justify nondisclosure of the court records.

Accordingly, in multiple cases, the Sixth Circuit has vacated sealing orders that lacked the required findings and conclusions. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939; *Shane Grp.,* 825 F.3d at 307; *Rudd*, 834 F.3d at 594. For example, in *Shane Group*, the district court's initial sealing orders granted sealing in a "perfunctory pattern, usually with the same one-sentence justification." 825 F.3d at 307. The Sixth Circuit explained that these brief orders were insufficient to justify sealing and that "every document that was sealed in the district court was sealed improperly." *Id.* Similarly, in *Rudd*, this Sixth Circuit affirmed the district court's vacatur of sealing orders because "the district court erred in failing to make any findings or legal conclusions in support of the initial seal." 834 F.3d at 594.

In this case, none of the Court's sealing orders contains the "specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 834 F.3d at 594. The sealing orders are frequently two-word sentences that simply grant the sealing motion. *See, e.g.*, ECF No. 128 ("Motion GRANTED."). Because the sealing orders do not explain "why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary," *Shane Grp.*, 834 F.3d at 594, the sealed documents were improperly sealed.

As to the subset of the sealed documents sought by Ms. Newby and Mr. Tardy, the Court's April 2022 Order maintaining its earlier sealing orders also did not contain the requisite findings and conclusions justifying nondisclosure to the public. The Court did not explain why sealing remained justified, instead stating that it had previously determined that sealing was warranted in its initial orders and that "the court already considered [the general public interest in open dockets] and found that, with regard to these particular materials, it should not prevail." *Id.* at 5. Thus, like

-10-

the initial sealing orders, the April Order did not provide a basis for the continued sealing of court records.

### B. The parties seeking sealing have not met their heavy burden to demonstrate compelling reasons for nondisclosure.

Pursuant to Local Rule 5.03(a), a motion to seal "must demonstrate compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons by specifically analyzing in detail, document by document, the propriety of secrecy, providing factual support and legal citations." Sixth Circuit precedent also instructs that a showing "that specific information in the court record meets the demanding requirements for a seal" must be demonstrated "on a document-by-document, line-by-line basis[.]" *Shane Grp.*, 825 F.3d at 308.

The party seeking sealing bears a "heavy" burden: "Only the most compelling reasons can justify non-disclosure of judicial records." *Id.* at 305 (internal marks and citations omitted). "Generally, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access." Local Civ. R. 5.03(a); *see Rudd Equip.*, 834 F.3d at 594–95 (similar); *see also Brown & Williamson*, 710 F.2d at 1180 (stating that "a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records"). In contrast, "serious business consequences" or that "the information would harm the company's reputation" are "not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Rudd Equip.*, 834 F.3d at 594 (citation omitted); *see Brown & Williamson*, 710 F.2d at 1180 (stating that the "disclosure of poor management in the past" is not a compelling reason justifying sealing).

"Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 305. As this Court has correctly recognized, the parties' burden is even "higher" in this case because "[t]he public's interests in accessing the materials at issue in this case are stronger than in most ordinary litigation between private parties." April Order at 4. Both "the conduct giving rise to the case" (the allegations of fraud and misconduct at one of the largest private prison companies) and the fact that the case was a class action (where "by definition[,] some members of the public are also parties to the case") mean that "the standards for denying public access to the record … should be applied with … particular strictness." *Shane Grp.*, 825 F.3d at 305.

Here, the parties failed to meet their heavy burden. For example, in arguing against unsealing some of the court records sought by Ms. Newby, CoreCivic did not provide any reason justifying secrecy beyond asserting that the documents contained "confidential information." ECF No. 492 at 8, 9. That the parties cannot meet their burden is reflected in the sealing of information that is publicly available elsewhere. For example, a publicly available memorandum from then-Deputy Attorney General Sally Yates is sealed in some parts of the docket but not others, and another sealed document was publicly disclosed in substantially unredacted form in response to a FOIA request and is also quoted and discussed in a publicly available Department of Justice Office of Inspector General audit.[3] Moreover, this Court has summarized or quoted, without redaction, some of the information that was sealed, finding no basis to keep that information secret. *See* ECF No. 165.

---

[3] The BOP's July 27, 2012, After-Action Report is available at https://www.prisonlegalnews.org/media/publications/Adams%20County%20After%20Action%20Report%2C%20fBOP%2C%202012.pdf. The December 2016 OIG audit is available at https://oig.justice.gov/reports/2016/a1708.pdf.

Further, the assertions that CoreCivic and the BOP have previously made to justify secrecy—in support of the Court's initial sealing orders or in response to Ms. Newby's unsealing motion—are insufficient to overcome the strong presumption in favor of openness. For example, CoreCivic and the BOP sought to seal documents on the basis that the disclosure of the information "could harm [CoreCivic's] competitive standing in the marketplace." ECF No. 155 at 2; ECF No. 234 at 2; *see also* ECF No. 413 at 7–9; ECF No. 288; ECF No. 410. A desire, however, "to shield … information contained in judicial records from competitors and the public" is not enough to justify sealing. *Brown & Williamson*, 710 F.2d at 1180; *see Rudd Equip.*, 834 F.3d at 594 (stating that "serious business consequences" or that "the information would harm the company's reputation" are insufficient). Instead, only "legitimate trade secrets" overcome the strong presumption in favor of public access. *Brown & Williamson*, 710 F.2d at 1180. CoreCivic and the BOP do not contend that the sealed information constitutes trade secrets.

In addition, the BOP contends that the Federal Acquisition Regulation (FAR), 48 C.F.R. § 3.104-4(a) requires that all the information that it designated as "source selection information" be kept confidential. *See, e.g.*, ECF Nos. 410, 490. That regulation provides: "Except as specifically provided for in this subsection, no person or other entity may disclose contractor bid or proposal information or source selection information to any person other than a person authorized … to receive such information." The FAR implements the Procurement Integrity Act (PIA), 41 U.S.C. § 2102, which provides, "Except as provided by law, a person described in paragraph (3) shall not knowingly disclose contractor bid or proposal information or source selection information *before the award of a Federal agency procurement contract to which the information relates*." *Id.* § 2102(a)(1) (emphasis added). The PIA defines "source selection

information" as information in one of ten enumerated categories. 41 U.S.C. § 2101(7); *see* FAR § 2.101.[4]

Here, the BOP does not identify which of the ten categories it asserts as its basis for claiming that the sealed information is "source selection information"; instead, the BOP simply asserts that it has designated the sealed information as "source selection information." *See, e.g.*, ECF No. 410 at 4-5. The BOP's mere say-so, however, is not sufficient. *See Am. Small Bus. League v. Dep't of Def.*, 372 F. Supp. 3d 1018, 1025 (N.D. Cal. 2019) (finding that information was not exempt in a Freedom of Information Act case because "the government has not sufficiently shown that the redacted information constitutes 'source selection information' within the PIA's definition"); *Legal & Safety Emp. Rsch., Inc. v. U.S. Dep't of the Army*, 2001 WL 34098652, at *4 (E.D. Cal. May 4, 2001) (finding that information was not source selection information and ordering public disclosure under FOIA). Nor do the BOP's assertions appear to be correct. For example, the BOP stated that the After Action Report is "source selection information" because it

_____

[4] The PIA defines "source selection information" as

> any of the following information prepared for use by a Federal agency to evaluate a bid or proposal to enter into a Federal agency procurement contract, if that information previously has not been made available to the public or disclosed publicly: (A) Bid prices submitted in response to a Federal agency solicitation for sealed bids, or lists of those bid prices before public bid opening; (B) Proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices; (C) Source selection plans; (D) Technical evaluation plans; (E) Technical evaluations of proposals; (F) Cost or price evaluations of proposals; (G) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract; (H) Rankings of bids, proposals, or competitors; (I) Reports and evaluations of source selection panels, boards, or advisory councils; (J) Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, the head's designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates."

41 U.S.C. § 2101(7).

-14-

was so "marked," ECF No. 410 at 6, but there is no such marking on the face of that document, which is publicly available online. *See supra* at 12 n.3. Further, the contractor past-performance records that the BOP asserts are source selection information, *see* ECF No. 490 at 8, are not the kind of bid, pricing, or technical evaluation information that is covered by the term's definition.

Moreover, the PIA provision limiting disclosure of source selection information applies only "*before* the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(a)(1) (emphasis added); *see also* 48 C.F.R. §§ 3.104-4(e) & (f) (providing for disclosure of source selection information, both pre-award and post-award, in certain circumstances). Here, any contracts associated with the sealed information were *already* awarded to CoreCivic (and have since been terminated).[5] In such circumstances, the information is outside the scope of the PIA provision and the FAR provision implementing it. *See Am. Small Bus. League*, 372 F. Supp. 3d at 1026–27 (concluding that "information related to [a contractor's] past performance in connection with already-awarded contracts fall outside the scope of the PIA"). The BOP asserts that the past performance evaluations must be kept secret and cites 48 C.F.R. § 42.1503(d), which provides in relevant part that "[t]he evaluation shall not be released to other than Government personnel and the contractor whose performance is being evaluated during the period the information may be used to provide source selection information." That provision, however, does not limit disclosure *after* "the period the information may be used to provide source selection information." *Id.*

---

[5] *See* White House, Executive Order on Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities (Jan. 26, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/26/executive-order-reforming-our-incarceration-system-to-eliminate-the-use-of-privately-operated-criminal-detention-facilities/.[5]

-15-

In any event, the BOP and CoreCivic's prior assertions for secrecy do not support continued sealing. "[C]ontinued sealing must be based on current evidence" demonstrating a compelling reason for nondisclosure. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993) (internal marks omitted). Where the reasons supporting sealing "have either passed or weakened," a court should unseal that information and allow public access. *In re Cendant Corp.*, 260 F.3d 183, 196 (3d Cir. 2001). Here, the information at issue is stale because it is years old, and the BOP has since ended its contracts with CoreCivic. In these circumstances, even if sealing was initially proper as to some subset of the documents, it is no longer justified. *See, e.g.*, *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 71 (11th Cir. 2013) (stating that "the passage of time had altered the balance enough so that the value of public access … exceeded the value of confidentiality"); *In re Cendant Corp.*, 260 F.3d at 196 ("Even if a sealing order was proper at the time when it was initially imposed, the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain.").

* * *

Because there is no compelling reason justifying nondisclosure of the Sealed Documents, the strong presumption in favor of openness demands public access to all sealed court filings.

## CONCLUSION

For the foregoing reasons, the *Banner*'s motion should be granted, and the Court should direct that the Clerk unseal all filings on the court docket that remain sealed.

-16-

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
MELISSA K. DIX, BPR #038535
LINDSAY SMITH, BPR #035937
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for the Nashville Banner*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on November 1, 2023, service of the foregoing document was made upon the following Filing Users through the Court's Electronic Filing System:

Michael Goldberg
GOLDBERG LAW, PC
1999 Avenue of the Starts, Suite 1100
Los Angeles, CA 90067
Email: michael@goldberglawpc.com

Jeremy A. Lieberman
J. Alexander Hood, II
Marc C. Gorrie
POMERANTZ, LLP
600 Third Ave., 20th Floor
New York, NY 10016
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: mgorrie@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Email: pknashlaw@aol.com
Email: robert@bramlettlawoffices.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue, Suite 601
Knoxville, TN 37902
Email: cain@scottandcain.com

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN &
DOWD, LLP
414 Union Street, Suite 900
Nashville, TN 37219
Email: clyons@rgrdlaw.com
Email: cwood@rgrdlaw.com

-18-

Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Email: jmartin@barrettjohnston.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN &
DOWD, LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Email: dherman@rgrdlaw.com
Email: willowr@rgrdlaw.com
Email: kennyb@rgrdlaw.com

Brian T. Glennon
David J. Schindler
Faraz Mohammadi
Meryn C.N. Grant
LATHAM & WATKINS, LLP (LA Office)
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071
Email: brian.glennon@lw.com
Email: david.schindler@lw.com
Email: faraz.mohammadi@lw.com
Email: Meryn.Grant@lw.com

Morgan E. Whitworth
LATHAM & WATKINS
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Email: morgan.whitworth@lw.com

Elizabeth O. Gonser
Milton S. McGee, III
Steven Allen Riley
RILEY, WARNOCK & JACOBSON
1906 West End Avenue
Nashville, TN 37203
Email: tmcgee@rwjplc.com
Email: sriley@rwjplc.com

Email: egonser@rwjplc.com

James A. Holifield, Jr.
HOLIFIELD, JANICH, RACHAL, & ASSOCIATES, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
Email: aholifield@holifieldlaw.com

Sarah A. Tomkowiak
LATHAM & WATKINS LLP (DC Office)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Email: sarah.tomkowiak@lw.com

Patrick V. Dahlstrom
POMERANTZ, LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
Email: pdahlstrom@pomlaw.com

Ellen Gusikoff Stewart
Jason A. Forge
Natalie F. Lakosil
Rachel L. Jensen
ROBBINS GELLER RUDMAN &
DOWD, LLP (San Diego)
655 W Broadway, Suite 1900
San Diego, CA 92101
Email: elleng@rgrdlaw.com
Email: jforge@rgrdlaw.com
Email: nlakosil@rgrdlaw.com
Email: rachelj@rgrdlaw.com

Brian Schall
Schall Law Firm
2049 Century Park East Suite 2460 Los Angeles, CA 90067
Email: brian@schallfirm.com

Brice M. Timmons #29582
Craig A. Edgington #38205
DONATI LAW, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com

craig@donatilaw.com

WYNN M. SHUFORD
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, TN 37203
Telephone: (615) 736-5151
Facsimile: (615) 401-6626
Email: wynn.shuford@usdoj.gov

By:     /s/ Daniel A. Horwitz_____
        Daniel A. Horwitz, Esq.